## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., *et al.*,      ) | |
|      ) | |
|     Plaintiffs,      ) | |
|      ) | |
|      vs.      ) | Case No. 1:21-cv-02131-CJN |
|      ) | |
| PATRICK BYRNE,      ) | |
|      ) | |
|     Defendant.      ) | |

## ANSWER AND DEFENSES OF
## DEFENDANT PATRICK BYRNE TO COMPLAINT

Defendant Patrick Byrne ("Byrne"), by counsel, and pursuant to Rules 8 and 12 of the

Federal Rules of Civil Procedure, submits the following as his Answer and Defenses to the

Complaint filed by Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion

Voting Systems Corporation (collectively, the "Plaintiffs" or "Dominion").

## ANSWER

Byrne generally and specifically denies all claims to the extent they suggest he

committed any wrongdoing or violation of law, to include defamation. Byrne denies that

Plaintiffs are entitled to relief or any general damages, special damages, presumed damages, or

punitive damages. Byrne denies that Plaintiffs are entitled to pre-judgment or post-judgment

interest, and Byrne denies that Plaintiffs are entitled to any other relief sought in the Complaint

against Byrne.

In addition, Byrne denies all allegations in the Complaint that are not specifically

admitted in the paragraphs below. Byrne denies any allegations in the Complaint that relate to

the actions of third parties, as he lacks knowledge or information sufficient to form a belief about

their truth or falsity. Byrne states the Complaint contains section headings that are argument and

1

do not require a response. The Complaint also includes footnotes for which no response is required. To the extent a response is required to the section headings or footnotes, Byrne denies them. Byrne reserves the right to amend his answer or grounds of defense.

In response to the numbered paragraphs of the Complaint, Byrne pleads as follows:

1.      Byrne states Paragraph 1 is a narrative that does not require a response. To the extent a response is required, Byrne admits he was the founder and former CEO and director of Overstock.com. Byrne admits he resigned from Overstock on or about August 22, 2019. The remaining allegations in this paragraph are denied.

2.      Byrne states the allegations in Paragraph 2 concern parties other than Byrne. As such, Byrne lacks sufficient information to form a belief as to the truth of such allegations, and therefore Byrne denies them. To the extent this paragraph concerns the actions of Byrne, Byrne denies those allegations.

3.      Byrne states the allegations in Paragraph 3 concern parties other than Byrne. As such, Byrne lacks sufficient information to form a belief as to the truth of such allegations, and therefore Byrne denies them. To the extent this paragraph concerns the actions of Byrne, Byrne denies those allegations.

4.      Denied.

5.      Denied.

6.      Denied.

7.      Byrne admits he met President Trump at the White House. The remaining allegations in Paragraph 7 are denied.

8.      Denied.

9.      Byrne admits he is a Dartmouth-educated Marshall Scholar. Byrne admits he holds a PhD in Philosophy from Stanford University. Byrne admits he was the founder and former CEO and director of Overstock until he resigned in August 2019. Byrne admits he met President Trump at the White House. The remaining allegations in Paragraph 9 are denied.

10.      Byrne states the allegations in Paragraph 10 include legal conclusions for which no response is required. To the extent a response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

11.      Byrne states the allegations in Paragraph 11 purport to quote or characterize a court document from the matter styled *Nazerali v. Mitchell, et al.* before the Supreme Court of British Columbia, Canada as Citation Number 2016 BCSC 810. This court document speaks for itself, and Byrne denies any allegations inconsistent with the written provisions or legal effect of such document. Byrne denies the allegation that he is "a serial liar." Any remaining allegations contained in this paragraph are denied.

12.      Byrne states the allegations in Paragraph 12 are characterizations of the relief Plaintiffs seek in this action, which do not require a response. To the extent a response is required, Byrne denies all claims to the extent they suggest he committed any wrongdoing or violation of law, to include defamation. Byrne denies that Plaintiffs are entitled to relief or any general damages, special damages, presumed damages, or punitive damages. Byrne denies that Plaintiffs are entitled to pre-judgment or post-judgment interest. Byrne denies that Plaintiffs are entitled to any other relief sought in the Complaint against Byrne.

**As to Parties and Relevant Non-Parties**

13.     The allegations in Paragraph 13 concern US Dominion, Inc., which is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them.

14.     The allegations in Paragraph 14 concern Dominion Voting Systems, Inc., which is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them.

15.     The allegations in Paragraph 15 concern Dominion Voting Systems Corporation, which is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them.

16.     Byrne admits he is a natural person who used to be a resident of Utah. Byrne admits he at times visited Washington, DC. Byrne admits he briefly served as Chairman or CEO of Defending the Republic, Inc. ("DTR"). Byrne admits he resigned as Chairman or CEO of DTR on or about April 9, 2021. As to the allegations in Paragraph 16 that purport to quote or characterize an affidavit filed in the civil action styled *Dominion, Inc. v. Sidney Powell, et al.* bearing Case No. 1:21-cv-00040-CJN before the U.S. District Court for the District of Columbia, this affidavit speaks for itself, and Byrne denies any allegations inconsistent with the written provisions or legal effect of this affidavit. Any remaining allegations contained in this paragraph are denied.

17.     The allegations in Paragraph 17 concern General Michael Flynn ("Flynn"), who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them.

18.     The allegations in Paragraph 18 concern Sidney Powell ("Powell"), and then-Attorney General Barr ("Barr"), who are parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. The remaining allegations in this paragraph purport to quote or characterize filings in post-election lawsuits, which speak for themselves, and Byrne denies any allegations inconsistent with the written provisions or legal effect of such filings. Any remaining allegations contained in this paragraph are denied.

19.     The allegations in Paragraph 19 concern Rudy Giuliani ("Giuliani"), who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them.

20.     The allegations in Paragraph 20 concern Mike Lindell ("Lindell"), who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them.

**As to Jurisdiction and Venue**

21.     Byrne states the allegations in Paragraph 21 call for legal conclusions regarding subject matter jurisdiction that do not require a response. To the extent this paragraph can be construed as alleging any facts against Byrne, they are denied. Further, to the extent an additional response is required, Byrne does not contest subject matter jurisdiction in this case based on the present allegations of the Complaint.

22.     Byrne states the allegations in Paragraph 22 call for legal conclusions regarding personal jurisdiction that do not require a response. To the extent this paragraph can be construed as alleging any facts against Byrne, they are denied. Further, to the extent an additional response

is required, Byrne does not contest personal jurisdiction in this case based on the present allegations of the Complaint.

23.     Byrne states the allegations in Paragraph 23 call for legal conclusions regarding personal jurisdiction that do not require a response. To the extent this paragraph can be construed as alleging any facts against Byrne, they are denied. Further, to the extent an additional response is required, Byrne does not contest personal jurisdiction in this case based on the present allegations of the Complaint.

24.     Byrne states the allegations in Paragraph 24 call for legal conclusions regarding venue that do not require a response. To the extent this paragraph can be construed as alleging any facts against Byrne, they are denied. Further, to the extent an additional response is required, Byrne does not contest venue in this case based on the present allegations of the Complaint.

## As to Factual Allegations

### John Poulos Founds and Builds a Company That
### Allows Local Election Officials to Easily Audit Paper Ballots

25.     Byrne states Paragraph 25 is a narrative that does not require a response. To the extent a response is required, Byrne states the allegations of this paragraph concern Dominion and John Poulos ("Poulos"), which are parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations.

26.     Byrne states Paragraph 26 is a narrative that does not require a response. To the extent a response is required, Byrne states the allegations of this paragraph concern Dominion, which is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a

belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies

them. Further, to the extent an additional response is required and to the extent the allegations of

this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations.

27.     Byrne states Paragraph 27 is a narrative that does not require a response. To the

extent a response is required, Byrne states the allegations of this paragraph concern Dominion

Voting Systems Corporation, Dominion Voting Systems, Inc., and Poulos, which are parties

other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the

truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to

the extent an additional response is required and to the extent the allegations of this paragraph

infer any wrongdoing by Byrne, Byrne denies such allegations.

28.     Byrne states Paragraph 28 is a narrative that does not require a response. To the

extent a response is required, Byrne states the allegations of this paragraph concern Dominion,

which is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a

belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies

them. Further, to the extent an additional response is required and to the extent the allegations of

this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations.

29.     Byrne states the allegations in Paragraph 29 concern US Dominion Inc. and its

two wholly-owned subsidiaries, Dominion Voting Systems, Inc. and Dominion Voting Systems

Corporation, which are parties other than Byrne. As such, Byrne states he lacks sufficient

information to form a belief as to the truth of the allegations contained in this paragraph, and

therefore Byrne denies them.

30.     Byrne states the allegations in Paragraph 30 concern Dominion, which is a party

other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the

truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations.

31.     Byrne states the allegations in Paragraph 31 concern Dominion, which is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations.

32.     Byrne states Paragraph 32 is a narrative that does not require a response. To the extent a response is required, Byrne states the allegations of this paragraph concern Dominion, which is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Regarding the allegations of this paragraph that purport to quote or summarize a written document from The Atlantic, that document speaks for itself, and no response is required. To the extent these allegations seek to characterize that written document, such allegations are denied.

### *Patrick Byrne Blows Up His Previous Career*
### *By Having An Affair With a Russian Spy*

33.     Admitted that Byrne attended Dartmouth College, where he received his Bachelor of Arts in Chinese studies. Admitted that Byrne attended Cambridge University as a Marshall Scholar, where he earned a master's degree. Admitted that Byrne attended Stanford University, where he received his PhD in Philosophy. Admitted that Byrne served as a teaching fellow at Stanford University and later managed different companies before Byrne became the CEO of Overstock in 1999. Any remaining allegations contained in Paragraph 33 are denied as stated.

34.     Admitted only that Byrne resigned as CEO of Overstock in 2019. The remaining allegations in Paragraph 34 purport to quote or summarize articles from The New York Times and Washington Post, which speak for themselves, and no response is required. To the extent these allegations seek to characterize these written documents, such allegations are denied. Any remaining allegations contained in this paragraph are denied.

### *Byrne Has Invested In and Promoted Blockchain Voting Technology*

35.     Admitted only that Byrne has long recognized the transformational potential that blockchain technology might offer. The remaining allegations contained in Paragraph 35 are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, or ill profit motives, Byrne denies such allegations.

36.     Byrne states the allegations in Paragraph 36 purport to quote or summarize articles from The New Yorker and PC Mag, which speak for themselves, and no response is required. To the extent these allegations seek to characterize these written documents, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, or ill profit motives, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

37.     Byrne states the allegations in Paragraph 37 purport to quote or summarize written documents from MIT, which speak for themselves, and no response is required. To the extent these allegations seek to characterize these written documents, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, or ill profit motives, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

38.    Admitted only that Medici Ventures was a wholly-owned subsidiary of Overstock, which launched in 2014 with a focus on the growth and promotion of groundbreaking blockchain technology. The remaining allegations in Paragraph 38 purport to quote or summarize an article from Forbes, which speaks for itself, and no response is required. To the extent these allegations seek to characterize that written document, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, or ill profit motives, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

39.    Admitted only that Byrne has long recognized the transformational potential that blockchain technology might offer. The remaining allegations contained in Paragraph 39 are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, or ill profit motives, Byrne denies such allegations.

### Byrne Commits to the Preconceived Narrative that the Election Will be Stolen and Bankrolls a Team to Manufacture the "Evidence" to Support His Claim

40.    Byrne states the allegations in Paragraph 40 purport to quote or characterize a court document from the matter styled *Nazerali v. Mitchell, et al.* before the Supreme Court of British Columbia, Canada as Citation Number 2016 BCSC 810. This court document speaks for itself, and Byrne denies any allegations inconsistent with the written provisions or legal effect of such document. Byrne denies the allegation that he is "a serial defamer." Any remaining allegations contained in this paragraph are denied.

41.    Byrne states the allegations in Paragraph 41 purport to quote or summarize a written document or website, which speaks for itself, and no response is required. To the extent these allegations seek to characterize that written document or website, such allegations are

denied. Byrne denies the allegation that he committed to a "preconceived narrative." Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations.

42. Denied.

43. Denied.

44. Byrne states the allegations in Paragraph 44 purport to quote or summarize a written document, video-recorded statement, or website, which speak for themselves, and no response is required. To the extent these allegations seek to characterize that written document, video-recorded statement, or website, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations.

45. Byrne states the allegations in Paragraph 45 concern Russell Ramsland ("Ramsland"), who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

46. Byrne states the allegations in Paragraph 46 concern Ramsland, who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those

allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

47.     Byrne states the allegations in Paragraph 47 concern Ramsland, who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

48.     Byrne states the allegations in Paragraph 48 concern Ramsland, who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

Regarding the three bullet-point subparagraphs that follow Paragraph 48, Byrne states these allegations concern Dominion, which is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in these subparagraphs, and therefore Byrne denies them. To the extent these three bullet-point subparagraphs concern Byrne's knowledge, intentions, or actions, Byrne denies those allegations. As to those allegations in the three bullet-point subparagraphs following Paragraph

48 that purport to quote or summarize a written document, video-recorded statement, or website, that written document, video-recorded statement, or website speaks for itself, and no response is required. To the extent these allegations seek to characterize that written document, video-recorded statement, or website, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations in the three bullet-point subparagraphs following Paragraph 48 infer any wrongdoing by Byrne, Byrne denies such allegations.

49.     Byrne states the allegations in Paragraph 49 concern Ramsland, who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. As to the allegations in Paragraph 49 that purport to quote or characterize an affidavit filed in the civil action styled *Page v. Oath Inc.* bearing Case No. S20C-07-030 before the Delaware Superior Court, this affidavit speaks for itself, and Byrne denies any allegations inconsistent with the written provisions or legal effect of this affidavit. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

50.     Denied.

51.     Admitted only that in Antrim County, Michigan, where Dominion voting machines were used, thousands of votes were discovered to have been wrongly tallied between the presidential candidates. The remaining allegations contained in Paragraph 51 purport to quote or summarize a written document, video-recorded statement, or website, which speak for themselves, and no response is required. To the extent these allegations seek to characterize that

written document, video-recorded statement, or website, such allegations are denied. Any remaining allegations contained in this paragraph are denied.

52.     Byrne states the allegations in Paragraph 52 concern Ramsland, who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. As to those allegations contained in this paragraph that purport to quote or summarize a written document or website, that written document or website speaks for itself, and no response is required. To the extent these allegations seek to characterize that written document or website, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

53.     Byrne states the allegations contained in Paragraph 53 purport to quote or summarize the "Ramsland report" and other written documents or websites, which speak for themselves, and no response is required. To the extent these allegations seek to characterize those written documents or websites, such allegations are denied. As to those allegations in this paragraph that purport to be Dominion's rebuttal points to the "Ramsland report," such allegations are argument and legal conclusions for which no response is required. To the extent a response is required, such allegations are denied. Any remaining allegations contained in this paragraph are denied.

54.     Byrne states the allegations in Paragraph 54 purport to quote or summarize articles from the Associated Press and Detroit Free Press, among other written documents or websites, which speak for themselves, and no response is required. To the extent these

allegations seek to characterize these articles, written documents, or websites, such allegations are denied. Any remaining allegations contained in this paragraph are denied.

55.     Byrne states the allegations in Paragraph 55 concern Michigan State Senator Ed McBroom ("McBroom"), who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Regarding the allegations in this paragraph that purport to quote or summarize a written document, recorded statement, or text, that written document, recorded statement, or text speaks for itself, and no response is required. To the extent these allegations seek to characterize that written document, recorded statement, or text, such allegations are denied. Any remaining allegations contained in this paragraph are denied.

56.     To the extent the allegations in Paragraph 56 concern Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

57.     To the extent the allegations in Paragraph 57 concern Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

***Independent Audits, Hand Recounts, Trump Appointees, and Republican Officials Disprove and Debunk the False Election Fraud Narrative Promoted by Byrne and His Collaborators***

58.     Byrne lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 58, and therefore Byrne denies them.

15

59.     Byrne states the allegations in Paragraph 59 concern Georgia Voting System Implementation Manager Gabriel Sterling, who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Regarding the allegations in this paragraph that purport to quote or summarize written documents or websites, those written documents or websites speaks for themselves, and no response is required. To the extent these allegations seek to characterize those written documents or websites, such allegations are denied. Any remaining allegations contained in this paragraph are denied.

60.     Byrne states the allegations in Paragraph 60 purport to quote or summarize an article from The New York Times, which speaks for itself, and no response is required. To the extent these allegations seek to characterize that article, such allegations are denied. Any remaining allegations contained in this paragraph are denied.

61.     Byrne states the allegations in Paragraph 61 concern Kansas Secretary of State Scott Schwab ("Schwab"), who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Regarding the allegations in this paragraph that purport to quote or summarize a article from The New York Times, that article speaks for itself, and no response is required. To the extent these allegations seek to characterize that article, such allegations are denied. Any remaining allegations contained in this paragraph are denied.

62.     Byrne states the allegations in Paragraph 62 purport to quote or summarize an article from The New York Times, which speaks for itself, and no response is required. To the extent these allegations seek to characterize that article, such allegations are denied. Any remaining allegations contained in this paragraph are denied.

16

63.     Byrne states the allegations in Paragraph 63 concern the Cybersecurity &
Infrastructure Security Agency ("CISA"), which is a party other than Byrne. As such, Byrne
states he lacks sufficient information to form a belief as to the truth of the allegations contained
in this paragraph, and therefore Byrne denies them. Regarding the allegations in this paragraph
that purport to quote or summarize a written document or website, that written document or
website, speaks for itself, and no response is required. To the extent these allegations seek to
characterize that written document or website, such allegations are denied. Any remaining
allegations contained in this paragraph are denied.

64.     Byrne states the allegations in Paragraph 64 purport to quote or characterize a
court document from the matter styled *Constantino v. City of Detroit* before the Third Judicial
Circuit Court of Michigan in Wayne County as Case No. 20-014780. This court document
speaks for itself, and Byrne denies any allegations inconsistent with the written provisions or
legal effect of such document. Any remaining allegations contained in this paragraph are denied.

65.     Byrne states the allegations in Paragraph 65 purport to quote or summarize an
article from The New York Times and a written document from Joseph Lorenzo Hall's website,
which speak for themselves, and no response is required. To the extent these allegations seek to
characterize that article or written document, such allegations are denied. Any remaining
allegations contained in this paragraph are denied.

66.     Byrne states the allegations in Paragraph 66 concern the Republican chairman of
the Maricopa County Board of Supervisors, who is a party other than Byrne. As such, Byrne
states he lacks sufficient information to form a belief as to the truth of the allegations contained
in this paragraph, and therefore Byrne denies them. Regarding the allegations in this paragraph
that purport to quote or summarize an article from Fox 61 and a written document from a

website, that article and written document speak for themselves, and no response is required. To

the extent these allegations seek to characterize that article and written document, such

allegations are denied. Any remaining allegations contained in this paragraph are denied.

67.     Byrne states the allegations in Paragraph 67 purport to quote or summarize an

article from the Associated Press, which speaks for itself, and no response is required. To the

extent these allegations seek to characterize that article, such allegations are denied. Any

remaining allegations contained in this paragraph are denied.

68.     Byrne states the allegations in Paragraph 68 purport to quote or summarize an

article from The Wall Street Journal, which speaks for itself, and no response is required. To the

extent these allegations seek to characterize that article, such allegations are denied. Any

remaining allegations contained in this paragraph are denied.

69.     Byrne states the allegations in Paragraph 69 purport to quote or summarize an

article from The Wall Street Journal Editorial Board, which speaks for itself, and no response is

required. To the extent these allegations seek to characterize that article, such allegations are

denied. Any remaining allegations contained in this paragraph are denied.

70.     Byrne states the allegations in Paragraph 70 concern Georgia Secretary of State

Raffensperger, who is a party other than Byrne. As such, Byrne states he lacks sufficient

information to form a belief as to the truth of the allegations contained in this paragraph, and

therefore Byrne denies them. Regarding the allegations in this paragraph that purport to quote or

summarize a written document or website from the Georgia Secretary of State, that written

document or website speaks for itself, and no response is required. To the extent these

allegations seek to characterize that written document or website, such allegations are denied.

Any remaining allegations contained in this paragraph are denied.

***Byrne's Collaborator Sidney Powell is Called Out for Failing to Produce Evidence
and the Trump Campaign Disavows Her***

71.    Byrne states the allegations in Paragraph 71 concern Sidney Powell and

Fox News's Tucker Carlson, who are parties other than Byrne. As such, Byrne states he lacks

sufficient information to form a belief as to the truth of the allegations contained in this

paragraph, and therefore Byrne denies them. Regarding the allegations in this paragraph that

purport to quote or summarize a written document, video-recorded statement, or website, that

written document, video-recorded statement, or website speaks for itself, and no response is

required. To the extent these allegations seek to characterize that written document, video-

recorded statement, or website, such allegations are denied. Further, to the extent an additional

response is required and to the extent the allegations of this paragraph infer any wrongdoing by

Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are

denied.

72.    Byrne states the allegations in Paragraph 72 concern the Trump Campaign, which

is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief

as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them.

Regarding the allegations in this paragraph that purport to quote or summarize a written

statement from the Trump Campaign, or article from The New York Times, that written

statement or article speaks for itself, and no response is required. To the extent these allegations

seek to characterize that written statement or article, such allegations are denied. Further, to the

extent an additional response is required and to the extent the allegations of this paragraph infer

any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained

in this paragraph are denied.

***Intentionally Disregarding the Independent Audits, Hand Recounts, Trump Appointees, and
Republican Elected Officials That Debunked His False Election Narrative,
Byrne Goes on Television to Promote His Lies***

73.     To the extent the allegations in Paragraph 73 concern Byrne's knowledge,
intentions, or actions, Byrne denies those allegations. Further, to the extent an additional
response is required and to the extent the allegations of this paragraph infer any wrongdoing by
Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are
denied.

74.     Byrne admits he appeared on the Newsmax show *National Report*, which aired on
or about November 17, 2020. To the extent the allegations in Paragraph 74 purport to quote or
summarize video-recorded programs, documents, or written text, those video recordings,
documents, or written text speak for themselves, and no response is required. To the extent these
allegations seek to characterize those video recordings, documents, or written text, such
allegations are denied. To the extent these allegations state the legal effect of those video
recordings, documents, or written text, such allegations are denied. Byrne also denies any
characterizations or summaries of those video recordings, documents, or written text that are
incomplete or lacking. To the extent this paragraph concerns Byrne's knowledge, intentions, or
actions, Byrne denies those allegations. Further, to the extent an additional response is required
and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies
such allegations. Any remaining allegations contained in this paragraph are denied.

75.     Byrne admits he appeared on a segment of *Operation Freedom Insider Insight*
with Dr. Dave Janda, which aired on or about November 23, 2020. In addition, Byrne admits he
appeared on the OAN show *OAN Breaking News Live with Patrick Hussion*, during which Byrne
appeared in a self-contained taped news report—otherwise known as a news package—that

played pre-recorded snippets of Byrne with reporter Chanel Rion, which aired on or about November 23, 2020. To the extent the allegations in Paragraph 75 purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

76.     Byrne admits he appeared on a segment of *The McFiles* show with Christopher McDonald, which aired on or about November 24, 2020. To the extent the allegations in Paragraph 76 purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required

and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

77.     Byrne admits he appeared on a segment of the talk-radio show *The Naked Truth Report* with Kathleen Wells, which aired on or about November 29, 2020. To the extent the allegations in Paragraph 77 purport to quote or summarize audio-recorded programs, documents, or written text, those audio recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those audio recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those audio recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those audio recordings, documents, or written text that are incomplete or lacking. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

78.     Byrne states the allegations in Paragraph 78 concern Attorney General Barr, who is a party other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Regarding the allegations in this paragraph that purport to quote or summarize a statement from Attorney General Barr, or article from the Associated Press, that statement or article speaks for itself, and no response is required. To the extent these allegations seek to characterize that statement or article, such allegations are denied. Further, to the extent an additional response is

required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

79.     Byrne lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 79, and therefore Byrne denies them.

80.     Byrne admits he appeared on a segment of *Operation Freedom Insider Insight* with Dr. Dave Janda, which aired on or about December 8, 2020. To the extent the allegations in Paragraph 80 purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

81.     Byrne states the allegations in Paragraph 81 purport to quote or summarize video-recorded programs, documents, or written text, which speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. To the extent this paragraph concerns Byrne's knowledge, intentions, or

actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

82.      Byrne admits he attended a rally in Washington, DC on December 12, 2020 concerning the 2020 presidential election. As to those allegations in Paragraph 82 that purport to quote or summarize a screenshot of a tweet dated December 12, 2020 from the Twitter handle @PatrickByrne, Byrne no longer has access to Twitter and cannot confirm the accuracy or authenticity of the tweet referenced in this paragraph. Notwithstanding, the tweet is a document that speaks itself, and no response is required. To the extent the allegations in this paragraph seek to characterize the tweet, such allegations are denied. To the extent these allegations state the legal effect of the tweet, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

### President Trump's Own Senior Advisors Explicitly Inform Byrne and Powell That Their Accusations Are Nonsensical and Inherently Improbable

83.      Byrne admits he met President Trump at the White House. As to those allegations in Paragraph 83 that purport to quote or summarize an article from Axios, that article is a document that speaks itself, and no response is required. To the extent these allegations seek to characterize that article, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

84.      Byrne lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 84 regarding the alleged due diligence White House staff had done, and therefore Byrne denies them. Further, to the extent an additional response is required and to the

extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

85.     Byrne states the allegations in Paragraph 85 purport to quote or summarize an article from Axios, which speaks for itself, and no response is required. To the extent these allegations seek to characterize that article, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

86.     Byrne states the allegations in Paragraph 86 purport to quote or summarize an article from Axios, which speaks for itself, and no response is required. To the extent these allegations seek to characterize that article, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

87.      Byrne states the allegations in Paragraph 87 purport to quote or summarize an article from Axios, which speaks for itself, and no response is required. To the extent these allegations seek to characterize that article, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

88.     Byrne admits he met President Trump at the White House. Any remaining allegations contained in Paragraph 88 are denied.

***After Trump's Senior Advisors Reject Byrne's False Claims,***
***Byrne Continues Pushing the Disinformation Campaign,***
***and Encourages People to Take Action on January 6***

89.     Byrne admits he appeared on a segment of the show *Steel Truth* with Ann Vandersteel, which aired on or about December 22, 2020. To the extent the allegations in Paragraph 89 purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

90.     Byrne admits he attended a rally in Washington, DC on January 5, 2021, where he spoke. As to those allegations in Paragraph 90 that purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any

wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

91.     Byrne admits he attended a rally in Washington, DC on January 6, 2021 on the Ellipse. Byrne admits that a mob of people attacked the Capitol Building in Washington, DC, disrupting the joint session of Congress assembled to count electoral votes. Regarding those allegations in Paragraph 91 that purport to quote or summarize a screenshot of a segment of CNN news coverage of rioters at the Capitol Building, the screenshot speaks for itself, and no response is required. To the extent these allegations seek to characterize the screenshot, such allegations are denied. To the extent these allegations state the legal effect of the screenshot, such allegations are denied. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

***After Losing Access to the President,
Byrne Passes a Fake Spreadsheet To Mike Lindell***

92.     Byrne states the allegations in Paragraph 92 purport to quote or summarize a video-recorded segment of the show *The Eric Metaxas Radio Show* with Eric Metaxas, which aired on or about July 6, 2021. That video recording speaks for itself, and no response is required. To the extent these allegations seek to characterize that video recording, such allegations are denied. To the extent these allegations state the legal effect of the video recording, such allegations are denied. Byrne also denies any characterizations or summaries of the video recording that are incomplete or lacking. Further, to the extent an additional response is

required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

93.     Byrne states the allegations in Paragraph 93 purport to quote or summarize a "spreadsheet," as well as articles from the Washington Post, PC Magazine, and IEEE Standards Association, which speak for themselves, and no response is required. To the extent these allegations seek to characterize the spreadsheet or articles, such allegations are denied. To the extent these allegations state the legal effect of the spreadsheet or articles, such allegations are denied. Byrne also denies any characterizations or summaries of the spreadsheet or articles that are incomplete or lacking. As to those allegations in this paragraph that purport to be Dominion's rebuttal points to the "spreadsheet," such allegations are argument and legal conclusions for which no response is required. As to those allegations in this paragraph that concern Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

94.     Byrne denies the allegations in Paragraph 94. Regarding the eleven bullet-point subparagraphs that follow Paragraph 94, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in these subparagraphs, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in Paragraph 94 or its subparagraphs infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in these paragraphs that are directed to Byrne are denied.

***After Being Banned from Twitter and Failing to Prevent Joe Biden's Inauguration,
Byrne Publishes a Blog Series Featuring Fake Evidence and Discredited Experts***

95.      Byrne admits that the user account for the Twitter handle @PatrickByrne was suspended from Twitter. Any remaining allegations contained in this paragraph are denied.

96.      Admitted.

97.      Byrne admits he authored a series of writings titled "How DJT Lost the White House" on the DeepCapture website. To the extent the allegations in Paragraph 97 characterize any writings as publications, Byrne states that publication is a legal concept in a defamation case, rendering those allegations legal conclusions for which no response is required. Regarding those allegations in this paragraph that purport to quote or summarize the contents of any documents, websites, or written text, such documents, websites, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those documents, websites, or written text, such allegations are denied. To the extent these allegations state the legal effect of those documents, websites, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those documents, websites, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

98.      Byrne states the allegations in Paragraph 98 purport to quote or summarize the contents of writings, which speak for themselves, and no response is required. To the extent these allegations seek to characterize those writings, such allegations are denied. To the extent these allegations state the legal effect of those writings, such allegations are denied. Byrne also denies any characterizations or summaries of those writings that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations in this

29

paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

99.     Byrne states the allegations in Paragraph 99 purport to quote or summarize the contents of writings and photographs, which speak for themselves, and no response is required. To the extent these allegations seek to characterize those writings or photographs, such allegations are denied. To the extent these allegations state the legal effect of those writings or photographs, such allegations are denied. Byrne also denies any characterizations or summaries of those writings or photographs that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

100.    Byrne states the allegations in Paragraph 100 purport to quote or summarize the contents of certain documents, written communications, photographs, and other writings, which speak for themselves, and no response is required. To the extent these allegations seek to characterize those documents, communications, photographs, or writings, such allegations are denied. To the extent these allegations state the legal effect of those documents, communications, photographs, or writings, such allegations are denied. Byrne also denies any characterizations or summaries of those documents, communications, photographs, or writings that are incomplete or lacking. To the extent this paragraph concerns Byrne's knowledge, intentions, or actions, Byrne denies those allegations. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

101.    Byrne states the allegations in Paragraph 101 purport to quote or summarize the contents of certain documents, public records, video recordings, written communications, and other written text, which speak for themselves, and no response is required. To the extent these allegations seek to characterize those documents, public records, video recordings, communications, or text, such allegations are denied. To the extent these allegations state the legal effect of those documents, public records, video recordings, communications, or text, such allegations are denied. Byrne also denies any characterizations or summaries of those documents, public records, video recordings, communications, or text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

102.    Byrne states the allegations in Paragraph 102 purport to quote or summarize a written document or website, in addition to statements issued by public officials with the State of Georgia, which speak for themselves, and no response is required. To the extent these allegations seek to characterize that written document, website, or statement, such allegations are denied. To the extent these allegations state the legal effect of that written document, website, or statement, such allegations are denied. Byrne also denies any characterizations or summaries of that written document, website, or statement that are incomplete or lacking. As to those allegations in this paragraph that purport to be Dominion's rebuttal points regarding the reliability of Jovan Pulitzer, the U.S. Election Assistance Commission, National Institute of Standards and Technology, or Georgia Secretary of State, such allegations are argument and no response is required. To the extent a response is required, however, Byrne lacks sufficient information to form a belief as to the truth of such allegations, and therefore Byrne denies them. Further, to the

extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

103.    Denied.

104.    Byrne states the allegations in Paragraph 104 purport to quote or summarize the contents of documents, websites, or written text, as well as articles from the Washington Post or The New Yorker, which speak for themselves, and no response is required. To the extent these allegations seek to characterize those documents, websites, written text, or articles, such allegations are denied. To the extent these allegations state the legal effect of those documents, websites, written text, or articles, such allegations are denied. Byrne also denies any characterizations or summaries of those documents, websites, written text, or articles that are incomplete or lacking. As to those allegations in this paragraph that purport to be Dominion's rebuttal points regarding the reliability of Josh Merritt, such allegations are argument and no response is required. To the extent a response is required, however, Byrne lacks sufficient information to form a belief as to the truth of such allegations, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

105.    Byrne states the allegations in Paragraph 105 purport to quote or summarize the contents of documents, websites, or written text, which speak for themselves, and no response is required. To the extent these allegations seek to characterize those documents, websites, or written text, such documents, such allegations are denied. To the extent these allegations state the legal effect of those documents, websites, or written text, such allegations are denied. Byrne

also denies any characterizations or summaries of those documents, websites, or written text that are incomplete or lacking. As to those allegations in this paragraph that characterize any writings as publications, Byrne states that publication is a legal concept in a defamation case, rendering those allegations legal conclusions for which no response is required. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

106.    Byrne states the allegations in Paragraph 106 purport to quote or summarize the contents of documents, websites, or written text, which speak for themselves, and no response is required. To the extent these allegations seek to characterize those documents, websites, or written text, such documents, such allegations are denied. To the extent these allegations state the legal effect of those documents, websites, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those documents, websites, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

107.    Byrne denies the allegations in Paragraph 107. As to those allegations in this paragraph that purport to quote or summarize the contents of an article from The New York Times, the article speaks for itself and no response is required. To the extent these allegations seek to characterize the article, such allegations are denied. To the extent these allegations state the legal effect of the article, such allegations are denied. Byrne also denies any characterizations or summaries of the article that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by

Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

108.     Byrne states the allegations in Paragraph 108 purport to quote or summarize the contents of an article from PolitiFact, the article speaks for itself, and no response is required. To the extent these allegations seek to characterize the article, such allegations are denied. To the extent these allegations state the legal effect of the article, such allegations are denied. Byrne also denies any characterizations or summaries of the article that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

109.     Denied.

110.     Byrne admits he authored the book titled *The Deep Rig: How Election Fraud Cost Donald J. Trump the White House, By a Man Who did not Vote For Him*. Byrne admits that the book can be purchased as an eBook on Amazon.com. As to those allegations in Paragraph 110 that purport to quote or summarize the book, the book speaks for itself, and no response is required. To the extent these allegations seek to characterize the book, such allegations are denied. To the extent these allegations state the legal effect of the book, such allegations are denied. Byrne also denies any characterizations or summaries of the book that are incomplete or lacking. Any remaining allegations contained in this paragraph are denied.

### Byrne Becomes the Purported Chairman and CEO of Sidney Powell's Fundraising Website Just Long Enough to Submit an Affidavit to This Court

111.     Byrne admits he briefly served as Chairman or CEO of DTR. Byrne admits he resigned as Chairman or CEO of DTR on or about April 9, 2021. As to the allegations in Paragraph 111 that purport to quote or characterize an affidavit filed in the civil action styled

*Dominion, Inc. v. Sidney Powell, et al.* bearing Case No. 1:21-cv-00040-CJN before the U.S. District Court for the District of Columbia, this affidavit speaks for itself, and Byrne denies any allegations inconsistent with the written provisions or legal effect of this affidavit. As to the allegations in this paragraph that purport to quote or characterize DTR's public corporate records, Byrne denies any allegations inconsistent with the written provisions or legal effect of such documents. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

### *Byrne Repeats the Antrim County Strategy in Maricopa County*

112.    Byrne admits that Dominion purports to have sent a letter to Byrne dated March 31, 2021. To the extent the allegations contained in Paragraph 112 purport to quote or summarize the letter, the letter speaks for itself, and no response is required. To the extent these allegations seek to characterize the letter, such allegations are denied. To the extent these allegations state the legal effect of the letter, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

113.    Byrne states that retraction is a legal concept in a defamation case. Therefore, the allegations contained in Paragraph 113 are legal conclusions to which no response is required. To the extent the allegations contained in this paragraph purport to quote or summarize the March 31, 2021 letter from Dominion, the letter speaks for itself, and no response is required. To the extent these allegations seek to characterize the letter, such allegations are denied. To the extent these allegations state the legal effect of the letter, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations in this paragraph

infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

114.    Denied.

115.    Byrne states the allegations in Paragraph 115 concern "Doug Logan and his Cyber Ninjas," who are parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

116.    Byrne states the allegations in Paragraph 116 concern Doug Logan, Cyber Ninjas, and Maricopa County Board of Supervisors Republican Chairman Jack Sellers, who are parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

117.    Byrne states the allegations in Paragraph 117 concern Cyber Ninjas, former Kentucky Republican Secretary of State Trey Grayson, and Dr. Barry C. Burden of the University of Wisconsin-Madison, who are parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne,

Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

118.    Byrne lacks sufficient information to form a belief as to the truth of the allegations contained in Paragraph 118, and therefore Byrne denies them.

119.    Byrne admits he is a founder of the non-profit organization called The America Project. Byrne admits that The America Project has donated money to support an election audit in Arizona. Byrne admits attending the Bitcoin Conference 2021 in June 2021. As to those allegations in Paragraph 119 that purport to quote or summarize an article from Forbes regarding statements Byrne allegedly made about blockchain technology at the Bitcoin Conference 2021, the article speaks for itself, and no response is required. To the extent these allegations seek to characterize the article or summarize Byrne's statements at the conference, such allegations are denied. To the extent these allegations state the legal effect of the article or Byrne's statements, such allegations are denied. Byrne denies having an ill profit motive against Plaintiffs. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

### Byrne's Lies Are Again Debunked by Respected Republicans

120.    Byrne states the allegations in Paragraph 120 concern parties other than Byrne. As such, Byrne lacks sufficient information to form a belief as to the truth of such allegations, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

121.     Byrne states the allegations in Paragraph 121 concern parties other than Byrne. As such, Byrne lacks sufficient information to form a belief as to the truth of such allegations, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

122.     Byrne states the allegations in Paragraph 122 concern parties other than Byrne. As such, Byrne lacks sufficient information to form a belief as to the truth of such allegations, and therefore Byrne denies them. As to those allegations in this paragraph that purport to quote or characterize a court document from the matter styled *O'Rourke, et al. v. Dominion Voting Systems, Inc., et al.* before the U.S. District Court for the District of Colorado as Case No. 20-cv-03747, this court document speaks for itself, and Byrne denies any allegations inconsistent with the written provisions or legal effect of such document. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

### Byrne Creates a Defamatory Film About Dominion

123.     Byrne admits that Dominion purports to have sent a letter to Byrne dated June 18, 2021. To the extent the allegations contained in Paragraph 123 purport to quote or summarize the letter, the letter speaks for itself, and no response is required. To the extent these allegations seek to characterize the letter, such allegations are denied. To the extent these allegations state the legal effect of the letter, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne,

Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

124.    Byrne admits that "The Deep Rig" movie premiered on or about June 26, 2021 in Maricopa County, Arizona. To the extent the allegations in Paragraph 124 purport to quote or summarize this movie, the movie speaks for itself, and no response is required. To the extent these allegations seek to characterize the movie, such allegations are denied. To the extent these allegations state the legal effect of the movie, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

125.    Denied.

### Dominion Has Suffered Enormous Harm

126.    Denied.

127.    Denied.

128.    Byrne lacks sufficient information to form a belief as to truth of the allegations in Paragraph 128, and therefore Byrne denies them.

129.    Byrne lacks sufficient information to form a belief as to truth of the allegations in Paragraph 129, and therefore Byrne denies them.

130.    Byrne lacks sufficient information to form a belief as to truth of the allegations in Paragraph 130, and therefore Byrne denies them.

131.    Byrne lacks sufficient information to form a belief as to truth of the allegations in Paragraph 131, and therefore Byrne denies them.

132.    Byrne lacks sufficient information to form a belief as to truth of the allegations in Paragraph 132, and therefore Byrne denies them.

133.    Byrne lacks sufficient information to form a belief as to truth of the allegations in Paragraph 133, and therefore Byrne denies them.

134.    Byrne lacks sufficient information to form a belief as to truth of the allegations in Paragraph 134, and therefore Byrne denies them.

135.    Byrne lacks sufficient information to form a belief as to truth of the allegations in Paragraph 135, and therefore Byrne denies them.

136.    Denied.

137.    The allegations in Paragraph 137 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. As to that allegation in this paragraph that claims "Dominion has suffered enormous and irreparable economic harm," Byrne denies the allegation. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

138.    The allegations in Paragraph 138 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

139.    The allegations in Paragraph 139 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

140.    The allegations in Paragraph 140 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

141.    The allegations in Paragraph 141 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

142.    The allegations in Paragraph 142 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by

Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

143.    The allegations in Paragraph 143 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

144.    The allegations in Paragraph 144 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

145.    Denied.

146.    Denied.

147.    The allegations in Paragraph 147 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

148.     The allegations in Paragraph 148 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

149.     The allegations in Paragraph 149 concern parties other than Byrne. As such, Byrne states he lacks sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore Byrne denies them. Further, to the extent an additional response is required and to the extent the allegations in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph that are directed to Byrne are denied.

150.     Denied.

151.     Denied.

## As to Claims for Relief

### Count One – Defamation Per Se

152.     Byrne restates and incorporates each of its responses to the allegations in the preceding paragraphs 1 through 151 as if fully set forth herein.

153.     Byrne states the allegations in Paragraph 153 and its subparagraphs (a) through (r) assert legal claims regarding publication, falsity, defamatory meaning, among other legal concepts in a defamation case, which render those allegations legal conclusions for which no response is required. To the extent a response is required and to the extent the allegations infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

a.      Regarding the allegations in Paragraph 153a, Byrne admits he appeared on the Newsmax show *National Report*, which aired on or about November 17, 2020. To the extent the allegations contained in this paragraph purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

b.      Regarding the allegations in Paragraph 153b, Byrne admits he appeared on BizTV with John Tabacco. To the extent the allegations contained in this paragraph purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this

paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

   c.      Regarding the allegations in Paragraph 153c, Byrne admits he appeared on the OAN show *OAN Breaking News Live with Patrick Hussion*, during which Byrne appeared in a self-contained taped news report—otherwise known as a news package— that played pre-recorded snippets of Byrne with reporter Chanel Rion, which aired on or about November 23, 2020. To the extent the allegations contained in this paragraph purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

   d.      Regarding Paragraph 153d, Byrne admits he appeared on a segment of *Operation Freedom Insider Insight* with Dr. Dave Janda, which aired on or about November 23, 2020. To the extent the allegations in this paragraph purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or

written text, such allegations are denied. To the extent these allegations state the legal

effect of those video recordings, documents, or written text, such allegations are denied.

Byrne also denies any characterizations or summaries of those video recordings,

documents, or written text that are incomplete or lacking. Further, to the extent an

additional response is required and to the extent the allegations of this paragraph infer

any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations

contained in this paragraph are denied.

     e.     Regarding Paragraph 153e, Byrne admits he authored the blog article

titled "Evidence Grows: '20 Election Was Rigged" dated November 24, 2020 on the

DeepCapture website. To the extent the allegations in this paragraph purport to quote or

summarize the article, documents, written text, or website, the article, documents, written

text, or website speak for themselves, and no response is required. To the extent these

allegations seek to characterize the article, documents, written text, or website, such

allegations are denied. To the extent these allegations state the legal effect of the article,

documents, written text, or website, such allegations are denied. Byrne also denies any

characterizations or summaries of the article, documents, written text, or website that are

incomplete or lacking. Further, to the extent an additional response is required and to the

extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies

such allegations. Any remaining allegations contained in this paragraph are denied.

     f.     Regarding Paragraph 153f, Byrne admits he appeared on a segment of *The*

*McFiles* show with Christopher McDonald, which aired on or about November 24, 2020.

To the extent the allegations in this paragraph purport to quote or summarize video-

recorded programs, documents, or written text, those video recordings, documents, or

written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

g.      Regarding Paragraph 153g, Byrne admits he appeared on a segment of the talk-radio show *The Naked Truth Report* with Kathleen Wells, which aired on or about November 29, 2020. To the extent the allegations in this paragraph purport to quote or summarize audio-recorded programs, documents, or written text, those audio recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those audio recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those audio recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those audio recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

h.      Regarding Paragraph 153h, Byrne admits he appeared on a segment of the *Glenn Beck Radio Program* talk-radio show with Glenn Beck, which aired on or about

December 2, 2020. To the extent the allegations in this paragraph purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those audio recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

i.      Regarding Paragraph 153i, Byrne admits he appeared on a segment of *Operation Freedom Insider Insight* with Dr. Dave Janda, which aired on or about December 8, 2020. To the extent the allegations in this paragraph purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer

any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

      j.      Regarding Paragraph 153j, Byrne admits he authored the blog article titled "BOMBSHELL: Antrim County Computer Forensic Report" dated December 14, 2020 on the DeepCapture website. To the extent the allegations in this paragraph purport to quote or summarize the article, documents, written text, or website, the article, documents, written text, or website speak for themselves, and no response is required. To the extent these allegations seek to characterize the article, documents, written text, or website, such allegations are denied. To the extent these allegations state the legal effect of the article, documents, written text, or website, such allegations are denied. Byrne also denies any characterizations or summaries of the article, documents, written text, or website that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

      k.      Regarding Paragraph 153k, Byrne admits he appeared on a segment of the show *Steel Truth* with Ann Vandersteel, which aired on or about December 22, 2020. To the extent the allegations in this paragraph purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any

characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

l.      Regarding Paragraph 153l, Byrne admits he appeared on a segment of the *Pete Santilli Show* with Pete Santilli, which aired on or about December 24, 2020. To the extent the allegations in this paragraph purport to quote or summarize video-recorded programs, documents, or written text, those video recordings, documents, or written text speak for themselves, and no response is required. To the extent these allegations seek to characterize those video recordings, documents, or written text, such allegations are denied. To the extent these allegations state the legal effect of those video recordings, documents, or written text, such allegations are denied. Byrne also denies any characterizations or summaries of those video recordings, documents, or written text that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

m.      Regarding Paragraph 153m, Byrne states the allegations purport to quote or summarize a screenshot of a retweet dated December 26, 2020 from the Twitter handle @PatrickByrne. Byrne no longer has access to Twitter and cannot confirm the accuracy or authenticity of the retweet referenced in this paragraph. Notwithstanding, the screenshot of the retweet is a document that speaks for itself, and no response is required. To the extent the allegations in this paragraph seek to characterize the screenshot of the retweet, such allegations are denied. To the extent these allegations state the legal effect

of the retweet, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

n.      Regarding Paragraph 153n, Byrne admits he authored the blog article titled "How DJT Lost the White House, Chapter 1: All the President's Teams (11/3 – 12/17)" dated January 27, 2021 on the DeepCapture website. To the extent the allegations in this paragraph purport to quote or summarize the article, documents, written text, or website, the article, documents, written text, or website speak for themselves, and no response is required. To the extent these allegations seek to characterize the article, documents, written text, or website, such allegations are denied. To the extent these allegations state the legal effect of the article, documents, written text, or website, such allegations are denied. Byrne also denies any characterizations or summaries of the article, documents, written text, or website that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

o.      Regarding Paragraph 153o, Byrne admits he authored the blog article titled "How DJT Lost the White House, Chapter 2: Was there Foreign Interference in this Election? You Make the Call." dated January 31, 2021 on the DeepCapture website. To the extent the allegations in this paragraph purport to quote or summarize the article, documents, written text, or website, the article, documents, written text, or website speak for themselves, and no response is required. To the extent these allegations seek to

characterize the article, documents, written text, or website, such allegations are denied. To the extent these allegations state the legal effect of the article, documents, written text, or website, such allegations are denied. Byrne also denies any characterizations or summaries of the article, documents, written text, or website that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

p.      Regarding Paragraph 153p, Byrne admits he authored the blog article titled "How DJT Lost the White House, Chapter 4: The Christmas Doldrums (December 23 – noon January 6)" dated February 4, 2021 on the DeepCapture website. To the extent the allegations in this paragraph purport to quote or summarize the article, documents, written text, or website, the article, documents, written text, or website speak for themselves, and no response is required. To the extent these allegations seek to characterize the article, documents, written text, or website, such allegations are denied. To the extent these allegations state the legal effect of the article, documents, written text, or website, such allegations are denied. Byrne also denies any characterizations or summaries of the article, documents, written text, or website that are incomplete or lacking. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

q.      Regarding Paragraph 153q, Byrne admits he authored the book titled *The Deep Rig: How Election Fraud Cost Donald J. Trump the White House, By a Man Who did not Vote For Him*. To the extent the allegations in this paragraph purport to quote or

summarize the book, the book speaks for itself, and no response is required. To the extent

these allegations seek to characterize the book, such allegations are denied. To the extent

these allegations state the legal effect of the book, such allegations are denied. Byrne also

denies any characterizations or summaries of the book that are incomplete or lacking.

Further, to the extent an additional response is required and to the extent the allegations

in this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any

remaining allegations contained in this paragraph are denied.

     r.     Regarding Paragraph 153r, Byrne admits that "The Deep Rig" movie

premiered on or about June 26, 2021 in Maricopa County, Arizona. To the extent the

allegations in this paragraph purport to quote or summarize the movie, the movie speaks

for itself, and no response is required. To the extent these allegations seek to characterize

the movie, such allegations are denied. To the extent these allegations state the legal

effect of the movie, such allegations are denied. Byrne also denies any characterizations

or summaries of the movie that are incomplete or lacking. Further, to the extent an

additional response is required and to the extent the allegations in this paragraph infer any

wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations

contained in this paragraph are denied.

154.     Byrne states that publication and actual malice are legal concepts in a defamation

case. Therefore, the allegations contained in Paragraph 154 are legal conclusions for which no

response is required. To the extent a response is required, such allegations are denied. Further, to

the extent an additional response is required and to the extent the allegations of this paragraph

infer any wrongdoing by Byrne, Byrne denies such allegations.

155.     Byrne states that the issue of whether a particular statement is reasonably understood to be a statement of fact is a legal concept in a defamation case. Therefore, the allegations contained in Paragraph 155 are legal conclusions for which no response is required. To the extent a response is required, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

156.     Byrne states that the issue of falsity is a legal concept in a defamation case. Therefore, the allegations contained in Paragraph 156 are legal conclusions for which no response is required. To the extent a response is required, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

157.     Byrne states that the issue of privilege is a legal concept in a defamation case. Therefore, the allegations contained in Paragraph 157 are legal conclusions for which no response is required. To the extent a response is required, such allegations are denied. Further, to the extent an additional response is required and to the extent the allegations of this paragraph infer any wrongdoing by Byrne, Byrne denies such allegations. Any remaining allegations contained in this paragraph are denied.

158.     Denied.

159.     Denied.

160.     Denied.

161.     Denied.

162.    Byrne lacks sufficient information to form a belief as to truth of the allegations in Paragraph 162 regarding the alleged harassment of Dominion's employees, and therefore Byrne denies them. Any remaining allegations contained in this paragraph are denied.

163.    Denied.

### As to Prayer for Relief

Byrne states that the prayer for relief beginning with "WHEREFORE" following Paragraph 163 is a legal conclusion and characterization of the relief Plaintiffs seek in this action. As such, it does not require a response. However, to the extent this prayer for relief can be construed as alleging any facts that concern or are asserted against Byrne, Byrne states they are denied. Further, Byrne denies that Plaintiffs are entitled to any general damages, special damages, presumed damages, or punitive damages. Byrne also denies that Plaintiffs are entitled to lost profits, lost goodwill and enterprise value, security expenses, other expenses, or other economic losses. Byrne denies that Plaintiffs are entitled to pre-judgment or post-judgment interest, and Byrne denies that Plaintiffs are entitled to any other relief sought in the Complaint against Byrne.

### As to Jury Demand

The jury trial demand contained in the Complaint calls for a legal conclusion that does not require a response.

### As to any Remaining Factual Allegations

Any remaining factual allegations contained in the Complaint that are directed to Byrne, and are not specifically admitted or otherwise answered above, are hereby generally and specifically denied.

## DEFENSES AND AFFIRMATIVE DEFENSES

By way of further response to the Complaint, Byrne asserts the following defenses or affirmative defenses, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In asserting these defenses, Byrne does not assume the burden of proof with respect to any issue or defense as to which applicable law places the burden of proof upon Plaintiffs. Plaintiffs bear the burden of proof on all elements of their claims. Byrne expressly reserves the right to supplement or amend any or all of the following defenses and to allege additional defenses as warranted by discovery or investigation, or as justice may require.

1.      The Complaint fails in whole or in part to state a claim upon which relief can be granted.

2.      Plaintiffs cannot recover to the extent that some or all of their claims are barred under the doctrines of res judicata, collateral estoppel, equitable estoppel, unclean hands, and by way of the applicable statute of limitations, and other statutes relevant to the limitation of actions, should discovery and subsequent investigation prove such defenses warranted.

3.      Plaintiffs' claims are barred or diminished in whole or in part by the applicable single publication rule.

4.      Plaintiffs' claims are barred or diminished in whole or in part by the incremental harm doctrine because the alleged defamatory statements attributable to Byrne failed to cause incremental harm to Plaintiffs, and are therefore not actionable.

5.      Plaintiffs' claims are barred or diminished in whole or in part by the defamation-proof plaintiff doctrine because the alleged defamatory statements attributable to Byrne failed to cause Plaintiffs any harm or damages, as Plaintiffs' reputation had already been sullied by

negative press and third-party statements that any false or defamatory statement attributable to Byrne could not lower Plaintiffs in the eyes of the community any further.

6.    Plaintiffs' claims are barred or diminished in whole or in part to the extent Plaintiffs failed to take proper and reasonable steps to avoid, minimize, prevent, or otherwise mitigate any and all alleged damages.

7.    Plaintiffs' claims are barred or diminished in whole or in part to the extent that Plaintiffs' own acts, rather than Byrne's acts, caused or are responsible for Plaintiffs' alleged injury.

8.    Plaintiffs' alleged damages, if any, are speculative and hypothetical and are not cognizable as a matter of law.

9.    Plaintiffs' alleged damages, if any, are not causally connected to Byrne's alleged conduct.

10.   Plaintiffs' alleged damages, if any, were proximately caused by the acts or omissions of third parties or others for whom Byrne is not responsible.

11.   Plaintiffs failed to plead special damages such as lost profits under the heightened pleading requirements of Fed. R. Civ. P. 9(g).

12.   Plaintiffs' claim for punitive damages is barred or diminished to the extent any such award would be impermissible under the Due Process Clause of the Fifth or Fourteenth Amendment of the United States Constitution, or the Excessive Fines Clause of the Eighth Amendment of the United States Constitution. Further, Plaintiffs cannot recover from Byrne any punitive damages that would violate the constitutional standards under the Constitution of the State of Colorado.

13.     Plaintiffs' claims are barred in whole or in part by the First Amendment to the United States Constitution.

14.     Plaintiffs' claims are barred in whole or in part by Article II, Section 10 of the Constitution of the State of Colorado.

15.     Plaintiffs' claims are subject to Colorado defamation law as Colorado state law governs here based on applicable choice of law analysis. This is so because, among other reasons, Colorado is the place where the injury (if any) primarily occurred and Dominion resides in Colorado.

16.     Plaintiffs' claims are barred in whole or in part under both state law and the First Amendment to the United States Constitution because Byrne is not liable for allegedly defamatory statements by third parties.

17.     Plaintiffs' claims are barred in whole or in part under both state law and the First Amendment to the United States Constitution because the alleged defamatory statements attributable to Byrne are not "of and concerning" Plaintiffs.

18.     Plaintiffs' claims are barred in whole or in part under both state law and the First Amendment to the United States Constitution because the alleged defamatory statements attributable to Byrne are not capable of defamatory meaning.

19.     Plaintiffs' claims are barred in whole or in part under both state law and the First Amendment to the United States Constitution because the alleged defamatory statements attributable to Byrne are statements of opinion.

20.     Plaintiffs' claims are barred in whole or in part under both state law and the First Amendment to the United States Constitution because the alleged defamatory statements attributable to Byrne that concern Plaintiffs are not false.

21.    Plaintiffs' claims are barred in whole or in part under both state law and the First Amendment to the United States Constitution because the alleged defamatory statements attributable to Byrne are substantially true.

22.    Plaintiffs' claims are barred in whole or in part under both state law and the First Amendment to the United States Constitution because the alleged defamatory statements attributable to Byrne are protected by the fair report privilege.

23.    Plaintiffs' claims are barred in whole or in part because the alleged defamatory statements attributable to Byrne are protected by the federal Communications Decency Act, 47 U.S.C. § 230, which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," *id.* at § 230(c)(1), and expressly preempts any state law to the contrary, *id.* at § 230(e)(3), to include state-law defamation claims.

24.    Plaintiffs' claims are barred in whole or in part under both state law and the First Amendment to the United States Constitution because Plaintiffs are public figures and Plaintiffs cannot carry their burden to prove that any alleged defamatory statements attributable to Byrne were made by him with actual malice.

25.    Plaintiffs' claims are barred in whole or in part on the grounds of the court decision in *Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103 (Colo. 1982), wherein the Colorado Supreme Court held that the actual malice standard for fault in a defamation case applies as long as the speech at issue involved a matter of public concern, regardless of whether the plaintiff is a public figure.

## **<u>DEFENDANT'S DEMAND FOR JURY TRIAL</u>**

Byrne demands a trial by jury on all claims and issues so triable of right, and Byrne respectfully requests a jury of twelve members.

WHEREFORE, having fully answered and otherwise responded to the allegations in the Complaint, Byrne denies liability to Plaintiffs for any sum, and Byrne requests that this Court enter an Order that: (a) dismisses the Complaint in whole or in part with prejudice; (b) grants judgment in favor of Byrne; and (c) grants Byrne such other and further relief as this Court deems just and proper.

Dated: May 11, 2022                                    Respectfully submitted,

/s/Robert N. Driscoll
Robert N. Driscoll (DC Bar #486451)
Alfred D. Carry (DC Bar #1011877)
McGlinchey Stafford PLLC
1275 Pennsylvania Avenue NW, Suite 420
Washington, DC 20004
Tel: (202) 802-9999
Fax: (202) 318-1084
rdriscoll@mcglinchey.com
acarry@mcglinchey.com
*Counsel for Defendant Patrick Byrne*