# Exhibit 1

(ESI Protocol)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| US DOMINION, INC., et al.,<br><br>    *Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>SIDNEY POWELL, et al.,<br><br>    *Defendants/Counter-Plaintiffs*. | Civil Action No. 1:21-cv-00040 (CJN) |
| US DOMINION, INC., et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>RUDOLPH W. GIULIANI,<br><br>    *Defendant*. | Civil Action No. 1:21-cv-00213 (CJN) |
| US DOMINION, INC., et al.,<br><br>    *Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>MY PILLOW, INC., et al.,<br><br>    *Defendants/ Counter- and Third-Party Plaintiffs*,<br><br>v.<br><br>SMARTMATIC USA CORP., et al.,<br><br>    *Third-Party Defendants*. | Civil Action No. 1:21-cv-00445 (CJN) |

1

| | |
|---|---|
| US DOMINION, INC., et al.,<br>    *Plaintiffs*,<br><br>v.<br><br>PATRICK BYRNE,<br><br>    *Defendant*. | Civil Action No. 1:21-cv-02131 (CJN) |
| US DOMINION, INC., *et al.,*<br>    *Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>HERRING NETWORKS, INC. *et al.,*<br>    *Defendants/ Counter- and*<br>    *Third-Party Plaintiffs*,<br><br>v.<br><br>AT&T SERVICES, *et al.,*<br>    *Third-Party Defendants.* | Civil Action No. 1:21-cv-02130 (CJN) |

### [PROPOSED] ORDER AND STIPULATION REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS

Pursuant to the Federal Rules of Civil Procedure and Local Civil Rule 16.6, Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation ("Dominion") and Defendants Sidney Powell, Sidney Powell, P.C., Defending the Republic, Inc., Rudolph W. Giuliani, Michael J. Lindell, My Pillow, Inc., Patrick Byrne, Herring Networks, Inc. d/b/a One America News Network, Charles Herring, Robert Herring, Sr., Chanel Rion, and Christina Bobb ("Defendants"), whose cases have been consolidated, or who are voluntarily coordinating, for purposes of discovery, hereby stipulate and agree to be governed by this Order and Stipulation Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol").

2

I.   **GENERAL PROVISIONS**

A.   **Applicability**: This ESI Protocol will govern the production of electronically stored information and paper documents.

B.   **Limitations & Non-Waiver**: Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of information produced in discovery. All objections to the authenticity or admissibility of any documents are preserved and may be asserted at any time. Pursuant to the terms of this ESI Protocol, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but a Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from disclosure, including foreign data protection laws. All Parties preserve all such privileges and protections, and all Parties reserve the right to object to any such privileges and protections.

C.   **Deadlines:** References to schedules and deadlines in this ESI Protocol shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

D.   **Definitions**:

   1.   Plaintiffs and Defendants, as well as their officers, and employees, are referred to as the "Parties" solely for the purposes of this ESI Protocol. A single Plaintiff or Defendant, as well as, where applicable, its respective officers, and employees, may also be referred to as a "Party" solely for the purposes of this ESI Protocol.

   2.   To avoid misunderstandings about terms, all Parties should consult the most current edition of The Sedona Conference Glossary.

E.   **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Confidential Discovery Material or Highly Confidential/Attorneys' Eyes Only material under any Protective Order entered in this matter.

F.   **Preservation:** The Parties agree that they shall continue to take reasonable steps to preserve relevant documents and ESI that may exist for a document or ESI, in accordance with their obligations under applicable law. By preserving information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

II.   **GENERAL PRODUCTION FORMAT PROTOCOLS**

A.   **TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding

multi-page text and necessary load files. Each image will have a file name that is the unique "Bates" or document control number of that image, pursuant to ¶ II(F). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks. Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format (e.g., items identified in II(C) below), may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

B.  **Text Files:** Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

   1.  **OCR:** A producing Party may make paper documents available for inspection and copying/scanning in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, scan and OCR paper documents. Where OCR is used, the Parties will endeavour to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals or the existence of handwriting on a document, not all documents lend themselves to the generation of accurate OCR. In that case, a non-producing party may request that a physical copy of the document be provided. If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.

   2.  **ESI:** Except for redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, Parties shall provide OCR text in accordance with the specifications in Section II.B(l).

C.  **Production of Native Items:** The Parties agree that ESI shall be produced as TIFF images consistent with the format described in Section II(A) with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be the following:

   1.  Spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced only in native format. In the case of personal database (e.g., MS Access) files containing

confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced bearing that item's Bates number and confidentiality designation. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the Parties agree to meet and confer as needed in connection with producing native file types other than spreadsheet application files and multimedia audio/visual file types such as .wav, .mpeg and .avi. Prior to processing non-standard native files for production, the producing Party shall disclose the file type to and meet and confer with the requesting Party on a reasonably useable production format as needed. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data.

D. **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

E. **Native Integrity and Confidentiality:** Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata. The requesting Party shall also ensure that the confidentiality assigned to the document follows the native pursuant to Section II.K.

F. **Bates or Document Control Numbering**:

1. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters, or embedded spaces, except for hyphens or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2. If a Bates number or set of Bates numbers is intentionally skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

|      |      |
|------|------|
| 3. | The producing Party will take reasonable efforts to brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images. |

G. **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

H. **Entire Document Families:** Subject to Paragraphs Il(L)(l) and Il(L)(2) below, entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, except the following:

   1. junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the Parties);

   2. documents that are withheld on the basis of privilege and in compliance with the Parties' stipulation or the Court's order on or local rules concerning such assertions of privilege; and

I. **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC00l.DAT). The volume names should be consecutive (i.e., ABC00I, ABC002, et. seq.). There should be one row in the load file per TIFF image. Every image in the delivery volume should be contained in the image load file. The image key should be named the same as the Bates number of the page. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered. The data load file (i.e., the .DAT file) should use standard Concordance delimiters: Comma - ¶ (ASCII 20); Quote - p (ASCII 254); and Newline - ® (ASCII I 74). The first record should contain the field names in the order of the data. All date fields should be produced in mm/dd/yyyy format. Use carriage-return line-feed to indicate the start of the next record. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered. The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC00l.DAT). The volume names should be consecutive to the extent possible (i.e., ABC00I, ABC002, et. seq.). If Foreign Language *I* Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format. Load files should not be split across volumes

regardless of delivery media.

J.  **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this paragraph will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

K.  **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of any Protective Order entered by the Court in the Litigation, or a stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images to the extent practicable. This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting Parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol, any Protective Order or confidentiality order, or any confidential stipulation shall not waive any protection or confidential treatment. The Parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The Parties agree to work together on an as-needed (and per document or category of document) basis to address any potential over (or under) designation.

L.  **Redactions**:

   1.  **Personal Data Redactions:** A producing Party may redact personal information consistent with the parties' Stipulation Regarding Discovery Matters or any order entered by the Court.

   2.  **Privilege Redactions:** a producing Party may redact information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, protection, or immunity recognized by U.S. law.

M.  **Production Media & Protocol:** A producing Party may produce documents via email,

readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), or via file-sharing service, including any network-based secure file transfer mechanism or SFTP. Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media. The producing Party must encrypt Production Media, and will provide a decryption key to the requesting Party in a communication separate from the production itself.

N.  **Foreign Language Documents:** To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the producing Party shall produce all such documents or ESI in the original language(s), as well as any English translations of such documents or ESI and certifications of such translations that are readily available and stored by the party in the ordinary course (i.e., that were not created specifically by a Party for the Litigation).

### III.    PAPER DOCUMENT PRODUCTION PROTOCOLS

A.  **Scanning:** A producing Party may make paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, OCR paper documents. Where OCR is used, the Parties agree that the following ¶¶ III(B)-(C) shall apply.

B.  **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, and (f) Confidentiality.

C.  **Unitization of Paper Documents:** Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly.

   1.  **Unitization:** Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable. The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable. The Parties will make their best efforts to unitize documents correctly. However, non-responsive documents within a folder, clipped bundle, or binder need not be produced.

   2.  **Identification:** Where a document, or a document group-such as folder, clipped bundle, or binder has-an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

D. **Custodian Identification:** The Parties will utilize best efforts to ensure that paper records for a particular custodian are produced in consecutive Bates stamp order. *See* ¶ II(F) above.

IV. **ESI METADATA FORMAT AND PROCESSING ISSUES**

A. **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files if they clearly do not have user-created content.

B. **Metadata Fields and Processing**:

1. **Time Zone:** To the extent reasonably practicable, ESI items shall be processed using a consistent time zone, and the time zone (e.g., GMT) used shall be disclosed to the requesting Party.

2. **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

3. Except as otherwise set forth in this ESI Protocol, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

4. The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, and (f) Confidentiality.

C. **Redaction:**
1. The Parties agree that generally, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C) above. Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format.

2. If the items redacted and partially withheld from production on the basis of privilege are Excel-type spreadsheets as addressed in ¶ II(C) above and native items are also withheld, to the extent reasonably practicable, each entire ESI item

9

            must be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that does not print when opened as last saved by the custodian or end-user.

      3.      If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Parties shall meet and confer as needed to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

D.      **Email Collection and Processing:**

      1.      **Email Threading:** Email threads are email communications that contain prior or lesser included email communications. A most inclusive email thread is one that contains all of the prior or lesser included emails and attachments including each branch of the email thread. A producing Party may use email thread suppression to exclude email from production, provided however, that an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser included version of an email that does not include the attachment or content, even if all remaining content in the email is identical. The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. If the sender, recipient(s) (including any ccs or bccs), and date information on suppressed threads is unreadable in the produced inclusive thread, the producing Party shall provide a .csv or .xls file containing the metadata for the suppressed threads to the extent that the suppressed threads are within the scope of the collection and/or custodians.

E.      **De-Duplication:** To the extent consistent with the below subparts, the producing Party need only produce a single copy of a particular electronic document.

      1.      **Vertical De-Duplication.** A producing Party may de-duplicate ESI vertically by custodian, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include identical content in the BCC or other blind copy field, even if all remaining content in the email is identical.

      2.      **Horizontal De-Duplication.** A producing Party may de-duplicate ESI horizontally (globally) across the population of records, and provided further that: (a) an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all custodians who were in possession of a de-duplicated document must

    be identified.

  3. Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents.

  4. Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments. Email families bearing an identical value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

F. **Zero-byte Files:** The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

G. **Hidden Text:** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows or worksheets.

H. **Embedded Objects:** The parties agree that if a particular produced record contains an embedded object that is not readable in embedded format, the party receiving the record reserves the right to request production of the embedded object as a stand-alone record.

I. **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .z, .RAR, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

J. **Password-Protected, Encrypted, or Proprietary Software Files:** If the requesting party believes that non-duplicative information cannot be reviewed because a document that has been produced by a party is password-protected or encrypted, the requesting party may request that the producing party take reasonable efforts to identify the password for the ESI item or unencrypt the ESI item so that it can be reviewed. If proprietary software is necessary to view the ESI, the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

V.  **PRODUCTION OF PRIVILEGE LOGS.**

   1.  Except as provided below, for any Document redacted or withheld in its entirety, the producing Party shall produce privilege logs in MS Excel format or any other agreed-upon format that permits electronic sorting and searching.

   2.  **Exclusions from Logging Potentially Privileged Documents:** Pursuant to the following sections (a) and (b), documents need not be reflected in a producing Party's privilege log, unless good cause exists to require that a Party do so or the Parties otherwise agree:

       (a)  Communications or work product after January 8, 2021, exclusively between a producing Party and its corporate in-house counsel (including consultants) regarding this litigation.

       (b)  Communications or work product after January 8, 2021, exclusively between a producing Party, including its in-house counsel (including consultants), and its outside counsel.  This provision is not intended to expand or contract the ability of a party to assert a claim of privilege. Each party will provide all other parties with a list of outside counsel at the time of producing a privilege log.

       (c)  Attorney-client privileged communications or work product of a party dated after the filing of the above-captioned litigation as to that party. Each party utilizing this exclusion will provide a list of all senders or recipients of communications that are not logged at the time of producing a privilege log.

   3.  **Privilege Log Requirements:** Consistent with Fed. R. Civ. P. 26(b) and the Local Rules, and unless otherwise agreed by the Parties or Ordered by the Court, Privilege Logs shall contain the following information for each Document withheld or redacted on grounds other than those specified in ¶ II.L.1(1)-(2) above:

       (a)  a sequential number associated with each privilege log record;

       (b)  the date of the Document or ESI (if any);

       (c)  the Bates number of the Documents or ESI redacted;

       (d)  for the latest in time communication in any thread, the identity of persons who sent (and, if a document, the identity of the author of) the Document or ESI and, if a communication, the addressees, recipients, copyees, and blind copyees (with senders, authors, addressees/recipients, copyees, and blind copyees, each separately identified by those categories as applicable);

 (e) the subject line of a communication or title of a document unless the subject line or title reveal privileged information in which case a description of the communication or documents may be used, although the parties reserve all rights to challenge redaction of subject lines or the sufficiency of a description if used in lieu of subject line;

 (f) the type or nature of the privilege or immunity asserted (i.e., attorney-client privilege or work-product doctrine); and

 (g) an indication of whether the Document has been redacted or withheld in its entirety.

 (h) Where available for any category specified in ¶ V.3, objective metadata may be used to populate the values on a producing Party's Privilege Log, as long as such metadata is reasonably comprehensible.

4. **Challenges to Privilege Claims:** Should a receiving Party, in good faith, have reason to believe a particular entry or category of entries on a Privilege Log or its associated Document does not reflect privileged information, or that the entry does not provide sufficient information to assess any such claim of privilege, the receiving Party may request additional information, and the producing Party will not unreasonably refuse to provide more information about the basis of the asserted privilege in compliance with Fed. Rule Civ. P. 26(b). Should a receiving Party, in good faith, have reason to believe a particular redaction or withheld Document is responsive and does not reflect privileged or protected discoverable information after the producing Party has provided the additional information, the requesting Party shall provide (i) the producing Party with its justification for believing the redaction or withheld Document may be responsive and not privileged or protected, and (ii) the producing Party an opportunity to re-consider its assertion of privilege or protection on the redaction or Document. The Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court. The requesting Party shall not challenge the producing Party's privilege log or any individual entries thereon without following the procedures set forth in this protocol, unless based solely on material non-compliance with this ESI Protocol. The withdrawal of an asserted privilege or protection following a challenge and subsequent meet and confer shall not be a basis to challenge other Documents included in the privilege log, except for duplicate documents.

## VI. MISCELLANEOUS PROVISIONS

A. **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented

       to the Court for resolution.

B.      **Variations or Modifications:** Variations from this ESI Protocol may be required. Any practice or procedure set forth herein may be varied by agreement of the parties, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, the Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

**IT IS SO ORDERED**.

                                                                              _____
                                                                              HON. CARL J. NICHOLS
                                                                              United States District Court Judge

DATE: October \_\_\_, 2023

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name[1] | Field Description |
|---|---|
| BegBates | Control Numbers. |
| EndBates | Control Numbers. |
| BegAttach | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | Custodian name *(ex. John Doe)*. |
| AllCustodians | Inclusive of the "Custodian" field value for any given document in a native upload |
| FilePath | The directory structure of the original file(s). Any container name is included in the path. |
| FileName | File name of the edoc or email. |
| NativeFile | Native File Link. |
| EmailSubject | Subject line of email. |
| DateSent | Date email was sent. |
| TimeSent | Time email was sent. |
| To / Recipients | All recipients that were included on the "To" line of the email. |
| From | The name and email address of the sender of the email. |
| CC | All recipients that were included on the "CC" line of the email. |
| BCC | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Date the document was created. |
| DateLast Modified | Date the document was last modified |
| Title | Any value populated in the Title field of the document properties. |
| Subject | Any value populated in the Subject field of the document properties. |
| Author | Any value populated in the Author field of the document properties. |
| TextPath | Relative path to the document level text file. |
| Legend / Confidentiality | Indicates if document has been designated as Confidential Discovery Material under the Protective Order. |
| Time Zone | Time zone the metadata was processed in. Each party will use its own method with respect to this field and will advise the other parties as to its method. |
| Hash | Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) |

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol.

15