IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 1:21-cv-02131-CJN |
| | ) |
| PATRICK BYRNE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM IN OPPOSITION TO**
**DOMINION'S MOTION FOR ENTRY OF DISCOVERY STIPULATION**

Dominion has produced more than 830,000 documents to Patrick Byrne that total over four million pages. 8406 of these documents contain the word "Byrne." Of the 7800 that have been reviewed to date, 723 are responsive. That equates to a responsiveness rate of 9.26%. The other 90.74%? Those documents aren't responsive because they are about Agnes Byrne, Allyse Byrne, Andrea Byrne, Anita Byrne, Bolivia Byrne, Brendan Byrne, Carissa Byrne, Christopher Byrne, David Byrne, Edward Byrne, John Byrne, Katarina Byrne, Michael Byrne, Rita Byrne, Thomas Byrne, and many other Byrnes who are not *Patrick Byrne*. Surely Dominion reviewed these nonresponsive documents to screen for privilege. But Dominion chose to produce them anyway merely because they hit on the search term "Byrne." The question for the Court is which party should have to review Dominion's several hundred thousand documents to identify those that are actually responsive to Patrick Byrne's requests. Precedent, the federal rules, and hornbook law all have the same answer: Dominion does.

Dominion's motion seeking the entry of its document discovery protocol doesn't oppose or object to what Byrne and the other named defendants in the related cases have proposed in terms of discovery. After all the defense proposal is bog standard civil litigation fare that tracks

1

the federal rules. Rather, Dominion predicts problems and projects its anxieties relating to hypothetical issues that have not occurred and likely won't. To fix a nonexistent problem, Dominion seeks to abandon the federal rules, micromanage discovery, dump millions of nonresponsive pages on Byrne, and disclaim any obligation of Dominion to sort through its own documents to make a determination that its millions of pages of documents are actually responsive and relevant prior to production.

Dominion tells this Court it's interested in efficiency and transparency, but its lengthy brief says otherwise and cannot obscure its true goal: to bury an opponent in paper and electronic documents to force an individual defendant to incur great expense in order to inflict significant damage via its lawsuit regardless of the outcome. Dominion pretends it is in an "impossible bind" (Dominion's Mot. at 15- 16.) – that Dominion doesn't know what Byrne and the other defendants want.[1] Yet, it is obvious. This is a defamation case. Discovery should concern what, specifically, are the alleged defamatory statements at issue? What evidence does Dominion have to support its allegation that the statements in question are false? What evidence does Dominion possess to show that that the defendant either knew the statements in question were false or demonstrated reckless disregard (actual malice) as to their falsity at the time the statements were made? And what proof of damages does Dominion have?

A close examination of Dominion's proposed discovery protocol reveals the truth. Dominion seeks to make the process the punishment. It wishes to dump hundreds of thousands of documents on an individual defendant to review at great expense if he hopes of finding a needle

---

[1] In this brief, "(Dominion's Mot.)" refers to the Memorandum in Support of Dominion's Motion for Entry of Discovery Stipulation, filed at Record Document 107-1 in Case No. 1:21-cv-00040-CJN (DDC). References to Dominion's supporting memorandum are denoted with the relevant page number.

in the haystack. Sampling shows that over 90% of the documents reviewed thus far are neither relevant or responsive to Byrne's requests. As to the other "stipulations" in Dominion's proposed discovery protocol, Dominion desires to set its own rules which again require Byrne to take action beyond what is required of him under the federal rules. Dominion does so not out of efficiency, cooperation, or transparency, but to shift all the burdens of discovery onto Byrne.

While Dominion's many cases against the other defendants have been consolidated for discovery purposes, the case against Byrne has not been. Out of a courtesy, however, and actually in pursuit of efficiency and cooperation, Byrne agreed to enter onto a concurrent discovery track with the other defendants in the related cases. Now, Dominion appears to weaponize Byrne's courtesies against him. Indeed, before Byrne even served his first set of written discovery requests on Dominion in August of 2023, Dominion had already produced *seven volumes* of documents months prior in June of 2023. What were they responsive to? Not Byrne's requests; again, they hadn't been propounded. Yet, Dominion seems to believe that because Byrne agreed to coordinate discovery and proceed on a concurrent track, he also agreed to relinquish his discovery rights.

It is Dominion that chose to bring multiple independent lawsuits, each for billions of dollars. And its complaint that reviewing its own documents or adhering to the federal rules for each case is too burdensome a path to collect alleged money damages rings hollow. Dominion's motion for the entry of its proposed discovery protocol should be denied.[2]

---

[2] As filed, Dominion's 55-page brief, including 10 pages dedicated to cover pages, a table of contents, table of authorities, and two different indices, was submitted in the *US Dominion Inc., et al. v. Powell, et al.* matter, not this one. (*See* Dominion's Mot. for Entry of Discovery Stipulation, at Record Document 107 in Case No. 1:21-cv-00040-CJN (DDC).) This case is not consolidated with the Powell matter or any other related defamation case commenced by Dominion. Moreover, there is no assigned consolidated or related case number. Further still, Dominion has not obtained leave of court to late file its motion and brief in this action. The only

I.   ARGUMENT

Byrne takes issue with multiple aspects of Dominion's motion. Though styled as a motion to seek the entry of a proposed discovery protocol, in impact, it asks for much more.

*First*, it seeks to compel items that the federal rules do not require (e.g., hit reports and micromanaged custodian interviews).³ *Second*, it seeks a preemptive protective order concerning date ranges over its own documents without clearing the hurdle of meeting and conferring with each defense counsel concerning their respective written discovery requests. In this way, Defendants' proposal is more consistent with the federal rules in that it leaves room for each defendant to negotiate applicable date ranges over Dominion's different documents, appreciating that different date ranges will apply to different document requests (e.g., documents regarding Dominion's corporate history, products, valuation, profit, loss, financial condition, damages, and business operations must all necessarily fall outside of Dominion's proposed and forced document date range of November 3, 2020 and August 10, 2021). *Third*, it seeks a protective order so that Dominion may be relieved from its discovery obligation to produce reasonably

---

motion concerning the entry of a proposed discovery protocol in this case is Byrne's. Should the Court choose to overlook Dominion's noncompliance with the federal rules and consider Dominion's motion in this case, however, the instant submission serves as Byrne's response in opposition.

³ *See*, *e.g.*, *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 4547039, at *1 (S.D.N.Y. Feb. 12, 2014) (denying request for the production of hit reports, as compelling a search-term hit report was just another attempt at the loathed "discovery on discovery."); *Ameriwood Indus., Inc. v. Liberman*, 2007 WL 685623, at *1 (E.D. Mo. Feb. 23, 2007) (denying plaintiff's request for "information regarding the 'hits' generated by [the defendant's] searches."); *Procaps S.A. v. Patheon, Inc.*, 2014 WL 800468, at *2 (S.D. Fla. Feb. 28, 2014) (only permitting a search-term hit report where the court has found some discovery misconduct or shortfall); *Integrated Serv. Solutions, Inc. v. Rodman*, 2008 WL 4791654, at *4 (E.D. Pa. Nov. 3, 2008) (declining to order the production of a search-term hit report where there was no "showing of bad faith or any other indicia of unreliability in the representation" of counsel that no relevant information was obtained through the search for documents).

accessible documents that are relevant and responsive to a pending request. Dominion is not entitled to this relief.

Dominion states the defense proposal errs by seeking to invert the balance of discovery. What balance is inverted between Dominion and Byrne? For his part, Byrne has no issue responding to each request for production propounded by Dominion. Byrne has no issue organizing his production to correspond to the category of documents requested. These are basic discovery obligations. The weight of discovery must fall on the shoulders of all parties. Document dumps tip the scales out of balance – and this is what Dominion wishes to do here: ignore and be relieved from the federal rules in favor of a protocol that permits Dominion to dump on all defendants.

Even under the most liberal interpretations of the federal rules, there must be some rational organization to produced documents that will allow the requesting party to search and discern where to find responsive documents. Despite admitting that Dominion is in fact reviewing all produced documents for privilege, Dominion has made the conscious decision to ignore any relevance or responsiveness review and allow obviously irrelevant and nonresponsive documents to be produced.

As a result, Byrne has been forced to sort through stacks of irrelevant documents, often simply because someone shared a surname with him. This is not hyperbole. Because Byrne rationally offered his last name as a proposed search term for communications or documents in Dominion's possession, Dominion has sought to discharge its obligation simply by running a search of its document review workspace and producing all hits on the term "Byrne," including voter roll entries and other documents and communications involving anyone with the same last name. In Dominion's world, it is up to defense counsel to separate the wheat of responsive and

5

relevant documents from the chaff of voter registration logs and voter rolls mentioning other Byrnes. This untenable reality is the path upon which Dominion wishes to continue. Byrne does not. Unfortunately, now the Court must step in and put each party on the same footing – recognizing an obligation to do a responsiveness and relevance review prior to production.

> A. **The Court Should Adopt the Defendants' Proposal Regarding Search Methodology**

Dominion argues it is after transparency and following the federal rules – yet the rules and the case law is overwhelming that some level of a responsiveness review or organization is required. Generally, when a party claims it has already provided responsive documents to a challenged discovery request, the party must provide relevant bates-label numbers. *CUCS Unlimited Contracting Servs., Inc. v. Comdata Inc.*, 2019 WL 483313, at *7 (M.D. Tenn. Feb. 7, 2019) (citing *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 509–10 (N.D. Tex. 2016) (requiring defendants to provide the bates numbers of responsive documents after defendants referenced hundreds of pages of seemingly irrelevant documents in response to plaintiffs' production requests)). A party's production of documents that does not include such references, otherwise known as a "document dump," does not comply with its discovery obligations. *Neale v. Coloplast Corp.*, 2020 WL 6948361, at *6 (E.D. Tenn. Nov. 2, 2020) (citing *Stooksbury v. Ross*, 528 F. App'x 547, 550 (6th Cir. 2013)); *Strategic Cap. Bancorp, Inc. v. St. Paul Mercury Ins. Co.*, 2015 WL 5675015, at *3 (C.D. Ill. Sept. 24, 2015) (voluminous and largely unresponsive document dump is a discovery violation); *Graske v. Auto Owners Ins. Co.*, 647 F. Supp. 2d 1105, 1108 (D. Ne. 2009) (finding violation of meet Rule 34 standard when the documents were not accompanied by an adequate guide to enable the requesting party to locate responsive documents).

Dominion argues that it need not conduct a responsiveness review because it need only "locate the potentially responsive ESI using . . . search terms, custodians, and time periods." (*See* Dominion's Protocol at 5.) There is no case that stands for this proposition, particularly where the other party has not agreed to such a variance of the federal rules.

Dominion also argues it need not identify bates labels or organize its documents to correspond to the categories in the request if they are produced as they are kept in the usual course of business. Yet the mere fact that documents were produced as they are kept in the ordinary course of business (which is in dispute here) does not give a party free reign to dump hundreds of thousands of documents without any organization. Generally, the reason for the rule permitting production of documents "in the usual course of business" is that there is a belief that if documents are truly kept in the ordinary course of business, they will be organized in some way that is useful. *United States for Use and Benefit of A&C Construction & Installation Co. WLL v. Zurich American*, 2019 WL 195025, at *3 (N.D. Ill. Jan. 15, 2019) (citing *In re Sulfuric Antitrust Litigation*, 231 F.R.D. 351, 362 (N.D. Ill. 2005). However, it is not enough for a party who produces documents as they are kept in the ordinary course of business to simply invite the requesting party to sift through its file cabinets in an effort to locate those documents that are responsive to its requests. *Oklahoma, ex rel. Edmondson*, 2007 WL 1498973, at *5 (N.D. Okla. May 17, 2007). It is not enough to engage in a wholesale "document dump" with an instruction to the requesting party to "go fish." *Residential Constructors, LLC v. ACE Property and Cas. Ins. Co.*, 2006 WL 1582122, at *2 (D. Nev. June 5, 2006); *U.S. Commodities Futures Trading*

*Commission v. American Derivatives Corp.*, 2007 WL 1020838, at *2 (N.D. Ga. March 30, 2007).[4]

Rather, a producing party "must either direct the responding party to the locations within its files where documents responsive to the specific requests may be found, or provide a key or index to assist the responding party in locating the responsive documents." *Alford v. Aaron Rents, Inc.*, 2010 WL 2765260, at *22 (S.D. Ill. May 17, 2010) (given fact the responding party is the party most familiar with its own business records, Rule 34 requires the documents produced as kept in the ordinary course of business to be accompanied by an "indices or other tool" to guide the requesting party; absent such tool the production is akin to a "blanket 'dump' of documents" [and] is deficient.").

Document dumps performed in the manner here are not adequate discovery responses. *District of Columbia ex rel. Z-Modular, LLC v. MCN Build, Inc.*, 2020 WL 4001458, at *5 (D.D.C. July 15, 2020); *Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 278–79 (D. Md. 2012) ("A document dump of thousands of documents will not suffice."). Indeed, Byrne has found an abundance of nonresponsive documents. Dominion's purported index is wholly

---

[4] *See also Oklahoma*, 2007 WL 1498973, at *4 (N.D. Okla., May 17, 2007) ("Defendants do not satisfy their Rule 34 obligations by merely opening their files, and leaving Plaintiff to sift through documents in an effort to locate those that are responsive to its requests. Rather, Defendants are obligated to provide some reasonable assistance to Plaintiff in the location of responsive documents. Thus, Defendants must either direct Plaintiff to the specific location or locations within its files where documents responsive to each of their requests may be found, or provide a key or index to assist Plaintiff in locating the responsive documents"); *In re Mentor Obtape Transobturator Sling Products Liability*, 2009 WL 152495, at *2 (M.D. Ga. Jan. 22, 2009) (party producing records as they are kept in the usual course of business, "has an obligation to organize the documents in such a manner that [the requesting party] may obtain, with reasonable effort, the documents responsive to their requests" which essentially requires the documents be "render[ed] usable by the requesting party"; in this regard "merely categorizing the documents produced does not, without some further explanation, satisfy the requirement that they be produced as kept in the usual course of business.").

8

inadequate. Byrne cannot discern if responsive documents have been produced in response to his requests, some, or none. Perhaps most importantly, Byrne must wade through thousands upon thousands of unresponsive material to simply determine where the responsive information lives.

Parties suffer prejudice when their access to relevant information and documents impairs their ability conduct discovery and to prepare for trial; they incur prejudice because they do not have the benefits of the documents while selecting deponents, taking depositions, conducting third party discovery, and preparing their trial strategy and pre-trial documents. *DR Distributors LLC*, 513 F. Supp. 3d at 973. Dominion, on the other hand, states:

> Dominion believes that, where a party elects to use search terms, custodians, and time frames to identify responsive documents, the best practice in cases such as these is for the producing party to forego any secondary responsiveness review, as such supplemental reviews increase the risk that a producing party will fail to produce certain documents that are indeed responsive to a document request because, in the producing party's view, the documents are not relevant.

(Dominion's Mot. at 26.)[5]

Not so. There is a glaring reason why this section of their brief contains Dominion's "belief" and not any actual case law support. It is a belief that is not grounded in the law and realities surrounding discovery. Certainly if parties agree to use only search terms, custodians, and time frames to identify responsive documents, the producing party may forego a responsiveness review. Yet Byrne and the other parties here have made no such agreement.

## II. CONCLUSION

Dominion cannot hide from the realities that are the federal rules. All that Byrne and the other defendants ask is that Dominion follow such rules. Doing less has proven untenable. Doing

---

[5] Dominion's use of the phrase "secondary responsiveness review" is deceptive. It never conducted a first one, and contrary to Dominion's claim, the "use of search terms, custodians, and time frames" does not constitute a responsiveness review.

less has resulted in the production of hundreds of thousands of documents (*millions of pages*) which are unrelated to this case. Defendants' proposed discovery protocol is in line with the federal rules. Dominion's rhetoric does not change that. Respectfully, and with a watchful eye on Rules 26 and 34 of the Federal Rules of Civil Procedure and their progeny, this Court should adopt and enter defendants' proposed discovery protocol.

Dated: October 31, 2023                                       Respectfully submitted,

/s/Alfred D. Carry
Robert N. Driscoll (DC Bar #486451)
Alfred D. Carry (DC Bar #1011877)
McGlinchey Stafford PLLC
1275 Pennsylvania Avenue NW, Suite 420
Washington, DC 20004
Tel: (202) 802-9999
Fax: (202) 318-1084
rdriscoll@mcglinchey.com
acarry@mcglinchey.com

Daniel Thomas Plunkett (admitted *pro hac vice*)
McGlinchey Stafford PLLC
601 Poydras Street, Suite 1200
New Orleans, LA 70130
Tel: (504) 596-2778
Fax: (504) 910-9542
dplunkett@mcglinchey.com

*Counsel for Defendant Patrick Byrne*