# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al.,<br>　　　　　*Plaintiffs*,<br><br>　　v.<br><br>PATRICK BYRNE,<br><br>　　　　　*Defendant*. | Civil Action No. 1:21-cv-02131 (CJN) |

## DOMINION'S EMERGENCY MOTION FOR PROTECTIVE RELIEF AND TO DISQUALIFY COUNSEL

# TABLE OF CONTENTS

I. BACKGROUND ....................................................................................................7

  A. The parties agreed to a robust protective order in light of the heightened concern regarding potential disclosure of information in this case. .........................................................................................................7

  B. Supposed Counsel for Patrick Byrne, Stefanie Lambert, violated the protective order at Byrne's direction. ........................................................9

  C. Lambert refuses to provide information about the scope of her breach and refuses to confirm she will abide by the Protective Order going forward. ..........................................................................................................12

  D. Lambert has a history of misconduct in her campaign against Dominion. .....................................................................................................13

II. ARGUMENT .....................................................................................................17

  A. The Court should immediately enter an emergency order prohibiting Lambert and Byrne from accessing Dominion's confidential information. ..................................................................................................17

  B. The Court should disqualify Lambert from serving as counsel for Byrne. ..........................................................................................................19

    1. Lambert has violated the D.C. Rules of Professional Conduct .................20

    2. Lambert's egregious conduct warrants disqualification because lesser sanctions will not protect the integrity of this litigation. .................21

  C. Dominion reserves the right to move for additional sanctions against Byrne and any other party or non-party found to have violated the Court's Protective Order. .......................................................................23

III. CONCLUSION ...................................................................................................23

Dominion seeks the Court's immediate assistance in addressing a flagrant and ongoing breach of this Court's order that has already, and will continue to, irreparably harm Dominion, including, but not limited to, jeopardizing the physical safety of Dominion employees.  The facts are as follows.

Unbeknownst to Dominion, Defendant Patrick Byrne provided attorney Stefanie Lambert with access to Documents produced by Dominion in this case. Prior to three days ago, Lambert was not an attorney of record in this case and Dominion had no knowledge that she was working with Byrne. Lambert has a well-documented history of violating court orders and improperly accessing voting information, activities that have resulted in disciplinary referrals, an indictment, and an open bench warrant. She never should have been entrusted with these documents in the first instance—and particularly not without notice to Dominion and this Court. Were there any doubt, her own explanation of her subsequent actions confirms this: According to Lambert, Byrne instructed her to share an unknown number of Dominion's documents, including documents stamped "Confidential" pursuant to the Court's governing protective order, with individuals outside of this case. Lambert did so. This instruction, and Lambert's willing compliance, are clear violations of this Court's order.

But Lambert's misconduct does not end there. Not only did Lambert follow her client's instruction to share Dominion's documents with an unknown number of individuals, she also filed dozens of them publicly in an unrelated proceeding (to which Dominion is not a party), and they have now been viewed by tens of thousands of users on social media. This too is a clear violation of this Court's Order. Indeed, these documents are now being used for the specific purpose of spreading yet more lies about Dominion.

Predictably, Lambert's actions have led to new threats to Dominion employees, including, by way of example only, a voicemail left on Saturday, March 9, accusing Dominion of "breaking our elections" and stating that "America should just fucking hang all you motherfuckers," and the below social media post:



Ex. 1 (redacted). This is not the first time Dominion and its employees have been subjected to online harassment, or even direct physical threats. Far from it. From social media calls to lynch Dominion personnel to a man armed with a rifle who came to their offices,[1] Dominion's employees have directly suffered the consequences of the lies spread by Byrne and his fellow defendants. They now fear further threats due to conduct of his counsel done at his direction.

When confronted with her breach, Lambert did not claim confusion about what was or was not permitted under this Court's Order. Rather, she claimed her contempt of court was required given that—in her warped view—the documents show evidence of "criminal activity."  Ex. 2. Never mind that courts have repeatedly, emphatically rejected the notion that Dominion did anything other than facilitate a secure election in 2020. Or that the documents Lambert disclosed show absolutely no evidence whatsoever of any "criminal activity." (Best Dominion can tell, Byrne

---

[1] *See* https://www.9news.com/article/news/politics/elections/judge-grants-restraining-order-dominion-ceo-after-threats/73-0936af88-365c-4c2c-b8b9-9e65f391ea38.

and Lambert's xenophobic conclusion is that any email from non-US-based Dominion personnel is conclusive evidence of criminal activity.)

Rather than answer Dominion's questions about what documents she shared and with whom, Lambert's reaction to Dominion's inquirers was to accuse Dominion's attorneys of record in this case of themselves being criminals:

> I had assumed that you, as counsel, were unaware of the criminal acts contained in discovery. These acts include, but are not limited to, perjury, fraud is services, wire fraud, and international interference in an election.
>
> If you were aware of the criminal acts, I will need to address fraud on the court and potentially accessory after the fact with threats of violating a protective order that does not extend to criminal acts committed by your client.
>
> My client insisted the evidence of criminal acts be provided to law enforcement.
>
> I'm happy to address this with the court.
>
> Please let me know if you need anything else.
>
> Sincerely,
>
> Stefanie

Ex. 2.

Meanwhile, Lambert's client has not shown remorse, but rather took to X to brag about having personally funded and "authorized" ***another*** effort to misuse confidential information—former Mesa County Election Clerk Tina Peters' publication of data regarding Dominion's voting systems, for which Peters has been criminally indicted.



Ex. 4 (emphasis added). And he has publicly acknowledged Lambert for her violation of the Protective Order.



Ex. 5.

These actions should shock the conscience. They reflect a total disregard for this Court's orders, to say nothing of the safety of Dominion employees. This Court should not permit this flagrant disregard for judicial process and the Professional Rules of Conduct.

For these reasons, and the reasons articulated below, Dominion requests that Lambert, who only appeared as counsel of record for Byrne this week, be promptly disqualified. Dominion further requests the Court's guidance on a process for briefing what sanctions should befall

Lambert, Byrne, and any other lawyers or individuals whose conduct, following a full accounting of those acts, warrants it. Dominion does not take lightly a request to disqualify counsel. But no other remedy is appropriate given these incredible circumstances.

In sum, Dominion respectfully requests that the Court immediately enter an emergency order: (1) Requiring Patrick Byrne and his counsel Stefanie Lambert to return or destroy any copies of Dominion documents in their personal possession; (2) Prohibiting Byrne and Lambert from accessing Dominion's confidential documents housed by third-party vendors until the Court has ruled upon Dominion's motions to disqualify Lambert and anticipated motion for sanctions; and (3) Ordering Byrne, Lambert, and Byrne's prior counsel from the firm of McGlinchey Stafford PLLC to provide an accounting concerning the breach's scope and extent. Dominion further requests that the Court disqualify Lambert as counsel in this case.

## I.     BACKGROUND

### A.     The parties agreed to a robust protective order in light of the heightened concern regarding potential disclosure of information in this case.

Given the national security concerns regarding voting machine information and the personal security concerns for Dominion employees—many of whom have been the subject of threats in the past—Dominion negotiated, and the Court entered, a strict Protective Order in this case. Specifically, that order provides that discovery material produced in the litigation (whether stamped confidential or not) will be used "solely for purposes of this Litigation and no Receiving Party will provide Discovery Material to any person or entity (including for any other litigation) or make any Discovery Material public except as permitted by this Order and in this Litigation." Ex. 6, ¶ 1. The Order provides specific carve-outs for Dominion's production in its litigation against Fox News Network, Fox Corporation, and Newsmax, and for Sydney Powell's use in the

disciplinary proceeding against her (subject to a notice requirement) but does not otherwise permit parties to disclose discovery materials in any other litigation. *Id*.

In addition, under no circumstances can a party unilaterally publicly file materials that have been marked "Confidential" by the producing party. *See id*., ¶¶ 12–15, 27.

The Protective Order specifically states that the parties reserve the right to apply "for an order seeking additional safeguards with respect to the use and handling of Discovery Material or to modify the terms of this Order." *Id*., ¶17.

The Order contains specific requirements in the event of a breach of its terms. Specifically, it provides that in the event confidential material "is disclosed to any person other than in the manner authorized by this Order," or that any party's counsel (or other non-party) learns "there was or is likely to be" a breach, the responsible counsel "will immediately inform the Designating and Producing Party of all pertinent facts relating to the disclosure or loss of confidentiality, including, if known, the name, address, and employer of each person to whom the disclosure was made." *Id*., ¶ 27. The counsel "responsible for the disclosure or loss of confidentiality will also make reasonable efforts to prevent disclosure of Confidential or Attorneys' Eyes Only Discovery Material by each unauthorized person who receives the information." *Id*.

Finally, unlike a typical protective order, this one explicitly provides for the availability of sanctions in the event of a violation, stating:

> If a Party violates this Order by releasing, leaking, or otherwise disclosing Confidential or Attorneys' Eyes Only Discovery Material to persons or entities not entitled to such Discovery Material under this Order, the Court will have authority to impose sanctions under Rule 37(b)(2)(A)(i)-(vi).

*Id*., ¶ 29. While defendants objected to this language, Dominion insisted on its inclusion given its serious concerns about the security of its information, the safety of its employees, and the history of court order violations by some of the defendants.

The Court retains jurisdiction over all persons subject to the Protective Order to enforce any obligations arising under it or to impose sanctions for violations. *Id*., ¶ 30.

**B.      Supposed Counsel for Patrick Byrne, Stefanie Lambert, violated the protective order at Byrne's direction.**

This past Monday, March 11, 2024, shortly before close of business, then-counsel of record for Byrne, Robert Driscoll, notified Dominion via email that "Confidential Discovery Material produced by Dominion in this case has been disclosed in a public filing in Michigan by Stefanie Lambert." Ex. 7. Driscoll explained that Lambert—who at the time had never appeared in this case—had access to this material "as an attorney for Patrick Byrne who was assisting in this litigation." *Id*. Lambert had signed the Protective Order governing this case, and Driscoll's email attached her signed undertaking of the order. *See* Ex. 8. Driscoll further stated that Lambert shared Dominion's Confidential Discovery Material with a non-party (Sheriff Dar Leaf of Barry County, Michigan) and publicly disclosed Dominion's Confidential Information as part of a filing she made in the criminal case *People of the State of Michigan vs. Stefanie Lynn Lambert Junttila*, currently pending before the Sixth Circuit Court in Oakland County, Michigan. Ex. 7.

Lambert's leak had immediate consequences: ***thousands*** of social media users have viewed Dominion's confidential information. As indicated below, a social media post embedding an email between Dominion employees marked as "Confidential" and included among the documents Lambert disclosed had at least ***13,600 views*** as of the date of this filing—and is being cited to stir up anti-Dominion sentiment.



Ex. 9 (redacted). The social media user who posted the emails also posted a call for Dominion's

CEO, John Poulos, to be "hung for sedition," embedding an affidavit from Dar Leaf that cites to

the Dominion emails provided by Lambert (and indicates Leaf has possession of an undisclosed

number of other Dominion documents). This post has been viewed by at least *81,000* users.



Ex. 1 (redacted).

      Counsel for Dominion responded to Driscoll the same day that he provided notice of Lambert's violation of the protective order requesting full information regarding the extent of her breach and seeking assurance that Lambert no longer had access to Dominion's confidential discovery material. Ex. 10. Prior to answering all of Dominion's questions, Driscoll and the other

attorneys from his firm withdrew from the case the following day—Tuesday, March 12, 2024. *See* Dkt. 72.

> ### C.    Lambert refuses to provide information about the scope of her breach and refuses to confirm she will abide by the Protective Order going forward.

The same day that Driscoll and his colleagues from the McGlinchey firm withdrew—one day after their close-of-business disclosure of Lambert's blatant breach of the Protective Order— Lambert entered her appearance as counsel for Byrne. Dkt. 71. That morning, prior to the McGlinchey firm's withdrawal, Dominion met and conferred with counsel for all of the individual defendants in related litigation before this Court over zoom and informed them that Dominion intended to raise Lambert's violation with the Court. Lambert, presumably invited to that call by the McGlinchey team, joined for the tail end of the conference. Also that day, Dominion's counsel emailed Lambert and Byrne's withdrawn attorneys requesting a list of all persons that they or their client had given access to Dominion's documents produced in this litigation (other than what Byrne's withdrawn counsel had already disclosed the day before). Ex. 11. Counsel for Byrne did not provide the requested information. Instead, Lambert responded by accusing Dominion's counsel of aiding nonexistent "criminal activity." Ex. 2.

To date, Lambert has not provided Dominion with the requested information regarding to whom she has disclosed Dominion's discovery material—as required under the Protective Order— nor has she confirmed that she will abide by the Protective Order moving forward (not that any such confirmation would hold any weight at this juncture). Accordingly, out of serious concern regarding the safety of its confidential information, and its employees, Dominion sent letters to the third-party vendors hosting Dominion's Confidential Discovery information on March 14, notifying them of Lambert's breach and of the instant request for relief and asking them not to provide Lambert, Byrne, or members of their team access to Dominion's confidential information

until the Court has provided further guidance. Exs. 12 & 13. Dominion provided notice to Byrne's counsel (past and present). Lambert responded with her own letters to those vendors the following day, claiming that Dominion's confidential discovery materials produced in this litigation are "not covered by the Amended Protective Order" because again, in Lambert's view, they are "evidence of criminal violations." Exs. 14 & 15.

### D.    Lambert has a history of misconduct in her campaign against Dominion.

Lambert's leaking of Dominion's confidential information produced in this litigation is only the latest in a long string of conduct demonstrating Lambert's vendetta against Dominion and her disregard for the rule of law. Lambert is involved in efforts across at least multiple states to access information stored in Dominion voting machines, and she has consistently violated court and ethical rules in the process. The following provides only a sample of her conduct.

After becoming a "Kraken" team attorney in failed efforts to overturn the 2020 presidential election results in Michigan, which included an effort to impound voting machines, Lambert (who has also gone by the names Stefanie Junttila and Stefanie Lambert Junttila) was one of nine attorneys who were reprimanded and referred for sanctions by Judge Linda Parker for "exploit[ing] their privilege and access to the judicial process" to "disseminate allegations of fraud unsupported by law or fact." *King v. Whitmer*, 556 F. Supp. 3d 680, 688 (E.D. Mich. 2021), *aff'd in part, rev'd in part*, 71 F.4th 511 (6th Cir. 2023) *and aff'd in part, rev'd in part*, 71 F.4th 511 (6th Cir. 2023). Judge Parker's scathing ruling described their efforts as a "profound and historic abuse of the judicial process." *Id*. The Sixth Circuit reversed sanctions as to Lambert not because the district court erred in its finding regarding the baseless nature of the litigation Lambert chose to associate herself with, but because she simply appeared too late in the case. *See King v. Whitmer*, 71 F.4th 511, 531 (6th Cir. 2023).

In August 2022, Michigan's governor, attorney general, and secretary of state submitted a complaint to the Michigan Attorney Grievance Commission calling for disciplinary action and potential disbarment against Lambert, noting that she and others "orchestrated a coordinated plan to gain access to voting tabulators" in four Michigan counties. Ex. 16 at 2. Lambert is now facing a felony indictment on multiple charges related to alleged tampering with voting systems following the 2020 election, including a charge for "undue possession of a voting machine," with a criminal trial scheduled for April 2024. Ex. 17. Earlier this month, an Oakland County Circuit Court judge issued a bench warrant for Lambert's arrest after multiple failures to appear and comply with court orders in the case.[2]

Lambert's effort to gain access to Dominion information by any means possible—and her disregard for judicial rules in the process—has not been limited to Michigan. Lambert served as counsel in a Pennsylvania state case involving a decision by two Fulton County commissioners to allow unauthorized access to and copying of voting systems and data. *See generally Cnty. of Fulton v. Sec'y of Commonwealth*, 292 A.3d 974 (Pa. 2023). In April 2023, the Pennsylvania Supreme Court issued sanctions against the county and its attorneys based on repeated violations of a court protective order prohibiting unauthorized voting machine inspections and referred Lambert (whose *pro hac vice* application had been repeatedly rejected and who therefore never

---

[2] A copy of the bench warrant was not available in time for this filing, but it is referenced on the case docket accessible at https://courtexplorer.oakgov.com/OaklandCounty/SearchCases/ViewAction?CaseNo=9UFUJkd XZ3J5uZ7u9W2zOA%3D%3D, and has been reported on by multiple news publications. *See, e.g.*, Danielle Ferguson, LAW360, "Atty Who Skipped Vote-Tampering Hearing Can't Ditch Warrant" (March 13, 2024), *available at* https://www.law360.com/pulse/courts/articles/1813432/atty-who-skipped-vote-tampering-hearing-can-t-ditch-warrant; Jon King, MICHIGAN ADVANCE, "Warrant for Lambert Junttila remains as she misses another hearing in tabulator tampering case" (March 13, 2024), *available at* https://michiganadvance.com/2024/03/13/warrant-for-lambert-junttila-remains-as-she-misses-another-hearing-in-tabulator-tampering-case/#:~:text=Matis%20issued%20the%20warrant%20for,as%20directed%20by%20the%20court.

appeared) for disciplinary review in Michigan. *Id.* at 1019–20 (noting that even without her formal admission, the Court was "not powerless to call attention to Attorney Lambert's own role in the misconduct"). The Pennsylvania Supreme Court found that the county "and its various attorneys" had "engaged in a sustained, deliberate pattern of dilatory, obdurate and vexatious conduct and have acted in bad faith throughout these sanction proceedings." *Id.* at 979.

Because access to or release of Dominion's voting equipment and software implicates both Dominion's proprietary concerns and election integrity in general, the Pennsylvania Supreme Court ordered that "[a]ny effort to seek access to, or release of, the voting equipment" must be directed to the court." *Id.* at 1020. Yet despite this clear order that any future permission to provide access to or release of the voting equipment (including its software) be requested from the court, Lambert's client Fulton County publicly voted to allow a forensic report regarding Dominion's systems and other confidential evidence to be used by other "clients of Stefanie Lambert with common interests." Ex. 18. Dominion was forced to file an emergency motion to enforce the Pennsylvania Supreme Court's order. The court granted the motion, enjoining dissemination of Dominion's confidential information to Lambert's clients. Ex. 19.

As yet a final example of Lambert's misuse of Dominion information, in *Curling v. Raffensperger*, No. 1:17-CV-2989-AT, 2023 WL 7463462 (N.D. Ga. Nov. 10, 2023), the court found that Lambert directed the transmission of a disc drive with forensic material copied at the Coffee County Elections Office—which uses Dominion Voting equipment and software—to a private investigator in her employ, compromising that county's election equipment and data. *Id.* at *23. Lambert further disseminated the information on that drive, sharing it with a "digital security firm." *Id.*

Repeatedly failing in the courts, Lambert has taken her campaign against Dominion to social media—including as recently as March 15, 2024, when she publicly posted an email exchange involving one of Dominion's vendors to the "X" social media platform in a post claiming "subversion and vote shifting." Ex. 3. Previously, in a December 28, 2023, letter posted widely across the "X" social media platform, Lambert asked U.S. Congressman Jim Jordan to investigate a bizarre (and nonexistent) conspiracy involving Dominion voting machines, former U.S. Attorney General Bill Barr, and the federal U.S. Election Assistance Commission. Ex. 20. And in February 2024, she again took to X to falsely accuse Dominion CEO John Poulos of perjury during his December 2020 testimony before the Michigan Senate Oversight Committee— even though this same committee found no evidence of machine fraud or company wrongdoing in its 2021 report on the 2020 election. Ex. 21.

Lambert's representation to Dominion that she violated the Protective Order at Byrne's direction continues a pattern of willful misconduct not only by Lambert, but also by Byrne. According to a March 9, 2024, post by Byrne on X, he "authorized" the activity of Mesa County clerk Tina Peters, who has been indicted for her involvement in the internet publication of confidential digital images of Dominion Voting Systems equipment and related passwords, Ex. 22 at 6, and he paid the "cyber-forensics" person who assisted her. Ex. 5 (screenshot *supra*, p.6). As with Lambert, Dominion has not received any information regarding to whom Byrne has disclosed Dominion's confidential information nor any assurances that he will abide by the terms of the Protective Order going forward—though any such assurances would ring hollow given repeated past misconduct.

## II.   ARGUMENT

### A.   The Court should immediately enter an emergency order prohibiting Lambert and Byrne from accessing Dominion's confidential information.

The Court "has inherent authority to prevent misconduct under the discovery rules." *Lebron v. Powell*, 217 F.R.D. 72, 77 (D.D.C. 2003); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (a "primary aspect" of a court's inherent power "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process"). Indeed, this "inherent power extends to a full range of litigation abuses." *Chambers*, 501 U.S. at 46; *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 65 (D.D.C. 2003) (citing courts' "inherent power to impose sanctions for abusive litigation practices undertaken in bad faith").

Both Lambert and Byrne have abused the discovery process and willfully violated the protective order entered by this Court. Lambert does not deny this: on the contrary, she ***admits*** that she disclosed Dominion's confidential documents produced in discovery and that she did so pursuant to directions from of her client and her unilateral assessment—based on false claims that have been rejected by every court to consider Dominion's involvement in the 2020 election—that those documents somehow relate to "criminal acts." Ex. 2. Meanwhile, Dominion's confidential documents have been viewed by ***tens of thousands*** of users on social media due to Lambert's wanton disregard for her obligations under the protective order entered by this Court—a copy of which ***Lambert herself signed***. It is not the case that she was unaware of the Court's order (nor does she claim otherwise). Given Lambert's knowing breach of the Protective Order and her continued refusal to abide by its requirements and provide Dominion with full information regarding dissemination of Dominion's discovery material by her and her client, Dominion is deeply concerned about further disclosures in violation of the Protective Order. This includes disclosure not only of sensitive business information, but of personal information about Dominion

employees that could be publicly posted to "dox" those employees and put them and their families at risk—as has happened in the past.

The Court should exercise its inherent authority to ensure compliance with its orders and immediately enter an emergency order (1) requiring Lambert and Byrne to return or destroy any copies of Dominion discovery material in their possession, (2) prohibiting Lambert and Byrne from accessing Dominion's confidential documents housed by third-party vendors until the Court has ruled upon Dominion's motion to disqualify and forthcoming motion for sanctions, and (3) ordering Byrne and Lambert to provide a full accounting—in the form of a sworn affidavit— detailing the scope and extent of their breach, as previously requested in Dominion's March 12, 2024 correspondence. Specifically:

- The date of any fee agreement between Lambert and Byrne and the scope of representation or, if no such agreement exists, the date on which Lambert and Byrne understand that a lawyer/client relationship began so that Dominion can assess whether Lambert was entitled to receive access to Dominion's confidential discovery information in the first instance;

- A complete and accurate list of all Dominion-produced documents and information Byrne reviewed and the method and date of access;

- An accounting from Byrne's outside vendor showing what documents Byrne and or Lambert accessed, on what date, and whether they were downloaded; as well as any other data the vendor indicates may be helpful to Dominion's or this Court's efforts to understand the breach;

- A complete and accurate list of all Dominion-produced documents and information Lambert received and the method and date of access;

- An account of every step Lambert and Byrne's prior counsel from the McGlinchey firm, has already undertaken or that is underway to determine the scope of the breach and to ensure it is not continuing; and

- An accounting attesting (i) to whom Lambert and/or Byrne leaked, released, or otherwise disclosed documents or information protected by the Protective Order (including in court filings in any cases outside of this case); (ii) how and when they provided it; (iii) every occasion on which they did so; and (iv) for each such instance, what specifically was leaked, released, or otherwise disclosed.

**B.      The Court should disqualify Lambert from serving as counsel for Byrne.**

"[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers*, 501 U.S. at 43 (citing *Ex parte Burr*, 9 Wheat. 529, 531, 6 L.Ed. 152 (1824)). "[T]he district court bears responsibility for supervising the members of its bar and its exercise of this supervisory duty is discretionary." *Groper v. Taff*, 717 F.2d 1415, 1418 (D.C. Cir. 1983).

As one court in this district has explained,

[m]otions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.

*Paul v. Judicial Watch, Inc*., 571 F. Supp. 2d 17, 20 (D.D.C. 2008) (citation omitted). The District of Columbia Rules of Professional Conduct govern the practice of law in this District. *Id*.

If the Court finds that an attorney violated the rules, the D.C. Circuit has held that disqualification is appropriate where the lawyer's "ability to act as a zealous and effective advocate for the client" is compromised, or if the representation poses "a substantial possibility of an unfair

advantage to the current client because of counsel's prior representation of the opposing party." *Koller v. Richardson-Merrell, Inc*., 737 F.2d 1038, 1056 (D.C. Cir. 1984), *vacated on other grounds*, 472 U.S. 424 (1985). Absent these circumstances, a court should grant disqualification only "in cases of truly egregious misconduct likely to infect future proceedings." *Id*. This is that "truly egregious case."

### 1.    Lambert has violated the D.C. Rules of Professional Conduct.

D.C. Rule of Professional Conduct 3.4(c) states that a lawyer shall not "[k]nowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Lambert has willfully violated this rule.

Lambert knew of her obligations under the Protective Order: she signed a copy acknowledging as much. Ex. 8. Despite this, she both directly shared Dominion's confidential information with an unauthorized third party and publicly filed dozens of pages of it in another, separate matter (to which Dominion was not a party). *See* Ex. 7. When confronted with her violation, she did not feign ignorance of her duties under the Court's order. Instead, she claimed that she had provided "evidence of criminal acts" to "law enforcement," at Byrne's direction. Ex. 2; *see also* Exs. 14 & 15. And she has further failed to comply with Protective Order by refusing to provide Dominion with full information regarding the persons to whom she has disclosed information obtained from Dominion in discovery. *See* Ex. 6, ¶ 27.

Lambert does not, and cannot, contest the requirements set forth in the Protective Order, which itself contemplates sanctions if breached. Rather, she apparently believes that she has the unilateral authority to decide whether or not she needs to comply. As a barred, licensed attorney, Lambert is well aware that court orders are not optional (and, lest she had any doubt, the disciplinary referrals, bench warrant, and sanctions entered against her by various courts have

surely apprised her of that fact). The only question for this Court, then, is whether her violation warrants disqualification. It does.

> **2.      Lambert's egregious conduct warrants disqualification because lesser sanctions will not protect the integrity of this litigation.**

Motions to disqualify arise rarely, and hardly ever outside the context of conflicts of interest. But the facts of this case are not ordinary. Given Lambert's well-documented historical efforts to obtain and misuse Dominion confidential information, her pattern of disregard for judicial rules, and her willful and ongoing violation of the Protective Order in this case, the only way to ensure the integrity of this litigation moving forward is to remove Lambert from this case.

In *Koller*, the D.C. Circuit explained that disqualification should be granted only in exceptional cases because "less prejudicial" means are "ordinarily available to deal with ethical improprieties by counsel." *Koller*, 737 F.2d at 1056. Specifically, the Circuit Court listed such alternative sanctions:

> [T]he court may issue a formal reprimand or, in more serious cases, a contempt citation either during or after the proceedings; it may also refer possible ethical improprieties to the disciplinary bodies of the local bar or, in the case of attorneys admitted *pro hac vice*, to the bar of the attorney's home state.

*Id*. at 1056 n.49. This illustrates precisely why disqualification is appropriate—and necessary— here. Courts have imposed not just ***one*** of these lesser sanctions on Lambert for her misconduct in pursuit of her campaign against Dominion and her misuse of its information—she has been subject to ***all of them***. Specifically, courts have:

- Referred Lambert for disciplinary review in Michigan for her role in misconduct involving repeated protective order violations in a Pennsylvania case, *Cnty. of Fulton*, 292 A.3d at 1019;

- Reprimanded her and referred her for sanctions for "disseminat[ing] allegations of fraud" by Dominion "unsupported by law or fact," *King*, 556 F. Supp. 3d at 688; and

- Issued a bench warrant for Lambert's arrest after multiple failures to comply with court orders in a case related to alleged tampering with voting systems following the 2020 election, *supra*, p.14;

As her "pattern of dilatory, obdurate and vexatious conduct" shows, *Cnty. of Fulton*, 292 A.3d at 979, Stefanie Lambert is entirely unfazed by court reprimands and disciplinary proceedings. Her knowing, ongoing, violation of the Protective Order further confirms this.

Lambert's conduct plainly meets the requirements for civil contempt,[3] but an order holding Lambert in contempt does not provide any meaningful relief to Dominion. Having demonstrated that she has no qualms about violating this Court's orders (or those of any other court), Dominion cannot be in the position of entrusting Lambert with highly sensitive, confidential information that impacts its business, and the safety of its own employees and our nation's election workers. This is particularly so given the widespread conspiracy theories about Dominion already pervading the internet (thanks to the defamatory campaigns of the defendants in this case). Information about Dominion now draws interest, and social media allows for its viral dissemination. Just one week after Lambert leaked Dominion's confidential emails, they have been viewed by thousands of social media users, and even just a single post referencing those emails has been viewed by tens of thousands more. *See* Exs. 1 & 9. The only viable means of ensuring the security of Dominion's confidential information and the safety of its employees is to disqualify Lambert from serving as counsel in this case.

---

[3] Civil contempt sanctions may be imposed when a party "violates a definite and specific court order" of which the party is aware. *Pigford v. Veneman*, 307 F. Supp. 2d 51, 55–56 (D.D.C. 2004).

**C.      Dominion reserves the right to move for additional sanctions against Byrne and any other party or non-party found to have violated the Court's Protective Order.**

Lambert has represented that she violated the Protective Order at the direction of Patrick Byrne. Ex. 2.  Like Lambert, Byrne has yet to provide Dominion with any information regarding any other persons to whom he has disclosed Dominion's discovery material—though he has publicly acknowledged his attorney for her improper disclosure. Ex. 5. Dominion does not presently have sufficient information about Byrne's conduct to determine what sanctions it intends to seek. However, Dominion insisted on an express provision in the Protective Order empowering the Court to impose severe sanctions for leaking confidential information because it feared precisely this scenario. Dominion reserves the right to seek sanctions from Byrne and any other persons bound by the Protective Order that it learns have violated its terms. Dominion will raise a schedule for such motion with the Court during the hearing set for Monday, March 18, 2024.

## III.    CONCLUSION

For the reasons set forth here, Dominion respectfully requests that the Court immediately enter an emergency order (1) requiring Patrick Byrne and counsel Stefanie Lambert to return or destroy any copies of Dominion confidential documents in their personal possession, (2) prohibiting Byrne and Lambert from accessing Dominion's confidential documents housed by third-party vendors until the Court has ruled upon Dominion's motions to disqualify Lambert and anticipated motion for sanctions as to Byrne, and (3) ordering Byrne and Lambert to provide the information listed *supra*, pp.18–19. Dominion further requests that this Court disqualify Lambert as counsel in this case.

Dated: March 15, 2024                                   Respectfully submitted,

                                                    By:   */s/ Davida Brook*
                                                          Davida Brook (D.C. Bar No. CA00117)

23

**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
dbrook@susmangodfrey.com

Laranda Walker (D.C. Bar No. TX0028)
Mary K. Sammons (D.C. Bar No. TX0030)
Jonathan Ross (D.C. Bar No. TX0027)
Elizabeth Hadaway (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
jross@susmangodfrey.com
ehadaway@susmangodfrey.com

Stephen Shackelford, Jr.
(D.C. Bar No. NY0443)
Eve Levin (D.C. Bar No. 1672808)
Mark Hatch-Miller (*Admitted pro hac vice*)
Christina Dieckmann (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
sshackelford@susmangodfrey.com
elevin@susmangodfrey.com
mhatch-miller@susmangodfrey.com
cdieckmann@susmangodfrey.com

Edgar Sargent (*Admitted pro hac vice*)
Katherine Peaslee (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com
kpeaslee@susmangodfrey.com

*Attorneys for Plaintiffs/Counter-Defendants*

## CERTIFICATE OF SERVICE

I, Davida Brook, hereby certify that on March 15, 2024, true and correct copies of the forgoing was served via email on counsel of record for every party in *US Dominion, et al. v. Patrick Byrne* No. 1:21-cv-02131 (CJN).

/s/ Davida Brook