```
1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2

3    * * * * * * * * * * * * * *    )
     U.S. DOMINION, INC., et al.,   )    Civil Action
4                                   )    No. 21-00445
                 Plaintiffs,        )
5                                   )
        vs.                         )
6                                   )
     MY PILLOW, INC., et al.,       )    Washington, D.C.
7                                   )    March 18, 2024
                 Defendants.        )    3:08 p.m.
8                                   )
     * * * * * * * * * * * * * *    )
9

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - -

11   * * * * * * * * * * * * * *    )
     U.S. DOMINION, INC., et al.,   )    Civil Action
12                                  )    No. 21-02131
                 Plaintiffs,        )
13                                  )
        vs.                         )
14                                  )
     PATRICK BYRNE,                 )    Washington, D.C.
15                                  )    March 18, 2024
                 Defendant.         )    3:08 p.m.
16                                  )
     * * * * * * * * * * * * * *    )
17

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - -

19   * * * * * * * * * * * * * *    )
     U.S. DOMINION, INC., et al.,   )    Civil Action
20                                  )    No. 21-02130
                 Plaintiffs,        )
21                                  )
        vs.                         )
22                                  )
     HERRING NETWORKS, INC., et al.,)    Washington, D.C.
23                                  )    March 18, 2024
                 Defendants.        )    3:08 p.m.
24                                  )
     * * * * * * * * * * * * * *    )
25
```

```
1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
2

3      * * * * * * * * * * * * * * *   )
       U.S. DOMINION, INC., et al.,    )      Civil Action
4                                      )      No. 21-00445
                     Plaintiffs,       )
5                                      )
           vs.                         )
6                                      )
       SIDNEY POWELL, et al.,          )      Washington, D.C.
7                                      )      March 18, 2024
                     Defendants.       )      3:08 p.m.
8                                      )
       * * * * * * * * * * * * * * *   )
9

10                    TRANSCRIPT OF STATUS CONFERENCE
             (TRANSCRIBED FROM THE FTR-GOLD AUDIO RECORDING)
11            BEFORE THE HONORABLE MOXILA A. UPADHYAYA
                    UNITED STATES MAGISTRATE JUDGE
12

13
       APPEARANCES:
14
       FOR THE PLAINTIFFS:     DAVIDA BROOK, ESQ.
15                             SUSMAN GODFREY, LLP
                               1900 Avenue of the Stars
16                             Suite 1400
                               Los Angeles, California 90067
17
                               STEPHEN SHACKELFORD, ESQ.
18                             CHRISTINA DIECKMANN, ESQ.
                               SUSMAN GODFREY, LLP
19                             305 Ninth Avenue
                               50th Floor
20                             New York, New York 10001

21                             JONATHAN J. ROSS, ESQ.
                               SUSMAN GODFREY, LLP
22                             1000 Louisiana Street
                               Suite 5100
23                             Houston, Texas 77002

24     FOR THE DEFENDANTS      ABRAHAM S. KAPLAN, ESQ.
       MY PILLOW AND           PARKER, DANIELS, KIBORT, LLC
25     MICHAEL J. LINDELL:     123 North Third Street
                               Minneapolis, Minnesota 55401
```

```
 1      APPEARANCES, CONT'D:

 2      FOR THE DEFENDANT        STEFANIE L. LAMBERT JUNTTILA, ESQ.
            PATRICK BYRNE:       LAW OFFICE OF STEFANIE L. LAMBERT
 3                               400 Renaissance Center
                                 26th Floor
 4                               Detroit, Michigan 48243

 5      FOR THE OAN             CHARLES BABCOCK, ESQ.
            DEFENDANTS:         JACKSON WALKER, LLP
 6                              1401 McKinney
                                Suite 1900
 7                              Houston, Texas 77010

 8                              MINOO S. BLAESCHE, ESQ.
                                JONATHAN D. NEERMAN, ESQ.
 9                              JACKSON WALKER, LLP
                                2323 Ross Avenue
10                              Suite 600
                                Dallas, Texas 75201
11
        FOR THE DEFENDANT       GREGORY M. SINGER, ESQ.
12          CHRISTINA BOBB:     LAURO & SINGER
                                400 North Tampa Street
13                              15th Floor
                                Tampa, Florida 33602
14
        FOR THE POWELL          MARC CASARINO, ESQ.
15          DEFENDANTS:         KENNEDYS CMK, LLP
                                919 North Market Street
16                              Suite 1550
                                Wilmington, Delaware 19801
17
                                JOSHUA A. MOONEY, ESQ.
18                              KENNEDYS CMK, LLP
                                1600 Market Street
19                              Suite 1410
                                Philadelphia, Pennsylvania 19103
20
        FOR THE DEFENDANT       DAVID C. TOBIN, ESQ.
21      DEFENDING THE REPUBLIC: TOBIN, O'CONNOR & EWING
                                5335 Wisconsin Avenue
22                              Suite 400
                                Washington, D.C. 20015
23

24

25
```

```
 1     TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
                                Official Court Reporter
 2                              United States District Court for the
                                  District of Columbia
 3                              333 Constitution Avenue, Northwest
                                Room 6706
 4                              Washington, D.C. 20001
                                (202) 354-3269
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              THE COURTROOM DEPUTY:  Good afternoon, your Honor.
2     This is Civil Case No. 21-445, U.S. Dominion, Inc., et al.,
3     versus My Pillow, Inc., et al.
4              This is Civil Case No. 21-2131, U.S. Dominion,
5     Inc., et al., versus Byrne; Civil Case No. 21-2130, U.S.
6     Dominion, Inc., et al., versus Herring Networks, Inc.,
7     et al.; and Civil Case No. 21-40, U.S. Dominion, Inc., et
8     al., versus Powell, et al.
9              All four matters are set for a status conference.
10             Parties, please introduce yourselves for the
11    record, stating with Plaintiffs' counsel.
12             MS. BROOK:  Good afternoon, your Honor.  May it
13    please the Court, Davida Brook of Susman, Godfrey on behalf
14    of the Dominion Plaintiffs.  And with me are my colleagues
15    Stephen Shackelford, Jonathan Ross and Christina Dieckmann.
16             THE COURT:  Good afternoon, counsel.
17             MR. CASARINO:  Good afternoon, your Honor.  Marc
18    Casarino of Kennedys CMK on behalf of the Powell Defendants.
19    And I have with me my partner, Joshua Mooney.
20             THE COURT:  Good afternoon.
21             MR. KAPLAN:  Good afternoon, your Honor.  Abraham
22    Kaplan of the law firm Parker, Daniels, Kibort on behalf of
23    My Pillow and Mike Lindell.
24             And I'm joined by counsel Chris Kachouroff and
25    Deborah McIlhenny of the law firm McSweeney, Cynkar &
```

1    Kachouroff, whose admission before this Court is pending.

2              THE COURT:  Okay.  Good afternoon, counsel.

3              MS. LAMBERT JUNTTILA:  Good afternoon, your Honor.

4    Stefanie Lambert Junttila appearing on behalf of Mr. Byrne.

5              THE COURT:  Good afternoon, Ms. Lambert.

6              MR. TOBIN:  Good morning, your Honor.  David Tobin

7    on behalf of Defending the Republic.

8              THE COURT:  Good afternoon, Ms. Tobin.

9              MR. TOBIN:  Nice to see you, your Honor.

10             THE COURT:  I believe I know you from a prior

11   life.

12             MR. TOBIN:  I believe so.

13             MR. SINGER:  Good afternoon, your Honor.  Greg

14   Singer on behalf of Defendant Christina Bobb.

15             THE COURT:  Good afternoon.

16             Mr. Babcock?

17             MR. BABCOCK:  Good afternoon, your Honor.  Chip

18   Babcock representing Herring Networks and Robert Herring,

19   Sr., Charles Herring and Chanel Rion, who we refer to as the

20   OAN Defendants.

21             THE COURT:  Okay.

22             MR. BABCOCK:  And I've got some bad news.

23             I know how much you appreciate listening to me.

24   But today, my partners Minoo Blaesche and Jonathan Neerman

25   will be addressing the Court.  And hopefully I'll sit in the

1     back row and keep my mouth shut.

2              THE COURT:  That would be a great event if that

3     were to happen.

4              MR. BABCOCK:  I knew you would approve of that way

5     of proceeding.  Thank you, your Honor.

6              THE COURT:  Thank you, sir.

7              Thank you, counsel.

8              Does everyone who is going to be speaking today

9     have a seat at counsel table?  Or are you all comfortable?

10    Okay.  Mr. Neerman?  Okay.

11             All right.  Anyone else?

12             Okay.  It's my preference to try to have just one

13    counsel per party addressing the Court.  And we're going to

14    do this in a very orderly fashion today.  I know there's a

15    lot of filings that have been happening and some issues that

16    the parties wish to bring to my attention.  We'll do it, as

17    I mentioned, very orderly.  And I'm not necessarily going to

18    be hearing extended argument today, but we will set a

19    procedure for how to handle some of these matters going

20    forward.

21             So the first issue on the agenda just by virtue of

22    the fact that it's the most recently raised is Dominion's

23    request for emergency relief pursuant to an alleged

24    violation of the protective order.

25             So, Ms. Brook, I'll have you approach, and just

1    very briefly you can address it; and I'll give Ms. Lambert

2    an opportunity to respond as well.

3            Again, I'm not having full argument, but what I

4    would like to know from the parties -- and I'll have

5    questions for both of you -- is while we take this matter

6    under advisement what, if any, interim relief is Dominion

7    seeking, so that the Court can take up this issue in an

8    orderly fashion and give both sides an opportunity to fully

9    address this in oral argument.

10           MS. BROOK:  Thank you, your Honor.

11           Again, Davida brook on behalf of Dominion.  I'll

12   try to keep my remarks to a few minutes or less.

13           Your Honor, it has been nearly four years.  When

14   does it stop?  Dominion brought these very lawsuits to stop

15   the spread of false information about it, false information

16   which transformed a previously unknown voting machine

17   company into a household name that more than half of our

18   country associates with treason.  False information that

19   gutted Dominion's business, false information that resulted

20   in horrific threats to Dominion employees, that prompted an

21   armed man to attempt to gain access to Dominion's Denver

22   offices to do God knows what.

23           These wrongs are what these lawsuits were designed

24   to address, to stop the lies, to end the threats of

25   violence.  And yet Patrick Byrne and his attorney,

1    Ms. Lambert, are now using these very lawsuits to perpetuate

2    more wrongs against Dominion.  They are using documents

3    produced in this litigation to spread yet more lies and to

4    cause yet more harm.

5          More, Mr. Byrne and Ms. Lambert are saying it

6    wasn't them.  To the contrary, rather than taking the

7    weekend to respond to Dominion's request for an accounting

8    of who they shared Dominion's information with and when,

9    they spent it on the internet proudly taking credit for what

10   they'd done.

11         They have made clear, including by virtue of the

12   responsive brief that was filed just before this hearing,

13   which we have had an opportunity to review, that they took

14   these actions intentionally, that they don't care that this

15   Court's order provides for the contrary and that they have

16   no intention of stopping, regardless of what it means to our

17   national trust in our elections or the safety of Dominion

18   employees and anyone associated with Dominion.

19         There should be zero tolerance for these acts.

20   Zero.

21         So as our motion put forth, we are asking that

22   Stefanie Lambert be promptly disqualified from this case.

23   And it needs to be prompt, because her acts are continuing.

24         THE COURT:  Disqualification is a severe remedy.

25   Under the law of this circuit, the Court does not consider

1    disqualification lightly, doesn't take that lightly.  And

2    however promptly Dominion may wish for the Court to consider

3    a motion to disqualify, it's something that the attorney

4    who's being sought to be disqualified has the right to

5    respond and be heard.

6          And, you know, I don't think this is something

7    that the Court can do on a day's notice.

8          MS. BROOK:  Dominion agrees, your Honor.  We agree

9    with everything your Honor just said, including that

10   disqualification is a severe remedy and that it shouldn't be

11   handed out lightly.  But if ever there was a case that

12   called for it, Dominion thinks this is the case.

13         The reason for which we think that the action does

14   have to be prompt -- and we recognize it's not going to be

15   today -- is because the bad acts are continuing.

16         THE COURT:  Is the sole basis for Dominion's

17   request to disqualify Ms. Lambert the violation of the

18   protective order or are there -- the alleged violation of

19   the protective order or are there other reasons?

20         MS. BROOK:  I would say, your Honor, as the

21   numerous alleged violations of the protective order, which

22   we think are ongoing.  As recently as the last 24 hours,

23   sheriff Dar Leaf, who Ms. Lambert has admitted to giving the

24   Dominion documents to, has essentially created a Twitter

25   account, because he did not have one prior to these leaks,

 1     and he's made approximately 40 posts featuring Dominion's

 2     documents.  And these tweets have been viewed -- I checked

 3     before entering the courthouse -- more than 150,000 times.

 4     And we all know what's going to happen next in the comments

 5     and the comments and comments to those posts.

 6            So for all of these reasons, as well as the

 7     reasons articulated in the motion, we are asking the Court

 8     to enter an order for disqualification after full

 9     consideration of the issues as well as, as the Court

10     mentioned in its opening remarks, some interim relief to

11     protect the status quo in the meantime.

12            And to answer your Honor's question directly, the

13     specific interim relief that we are seeking is laid out in

14     the proposed order that we filed and provided to the Court

15     on Friday.  And I'm happy to go through those specific

16     things now, if it would be helpful.

17            THE COURT:  Is there a reason you did not file

18     that -- file that motion under seal, as Ms. Lambert alleges

19     must be done under the protective order?

20            MS. BROOK:  I disagree with Ms. Lambert's reading

21     of that provision of the protective order and frankly most

22     of the protective order, your Honor.

23            The provision she cites says that if you are

24     challenging whether or not a document was appropriately

25     marked "confidential," then of course you shouldn't blast

1      that document publicly throughout the world.

2            This is not a case where Dominion brought a motion

3      because Mr. Byrne or any of the other Defendants in this

4      case stamped something as confidential or AEO and Dominion

5      wanted to challenge that, and therefore in putting the

6      document before the Court should absolutely have filed it

7      under seal so that the Court has an opportunity to consider

8      the confidentiality designation before it becomes public.

9            This is a situation where Dominion was addressing

10     a breach of the protective order relating to Dominion's own

11     documents that have already been made public.  The cat's out

12     of the bag.

13           THE COURT:  Well, why don't you recount what

14     Dominion would request that the Court order as interim

15     relief pending the resolution of the motions.

16           Now, the motion for disqualification, having just

17     been filed, has not been referred to me.  There is a

18     question as to whether the breach of the protective order --

19     I do think that likely falls within a discovery issue that

20     Judge Nichols has referred.  But as of today, the motion for

21     disqualification has not yet been referred to me.

22           But in light of the allegation that -- and I will

23     hear -- as I said, I will hear from Ms. Lambert and give her

24     a full and fair opportunity to respond.  If alleged

25     confidential information has been disseminated, there should

1    be a way to prevent any further bleeding, so to speak, or

2    further dissemination pending a resolution on the motion for

3    sanctions or the motion for disqualification.

4            So what does Dominion propose for the Court's

5    consideration?

6            MS. BROOK:  Thank you, your Honor.

7            And Dominion of course will take up the issue in

8    whatever way the Court prefers.

9            Dominion has suggested six specific things in

10   order to maintain the status quo while the Court takes up

11   the question of whether or not Ms. Lambert should be

12   disqualified.

13           The first is, we have asked for the date of any

14   fee agreement between Ms. Lambert and Mr. Byrne and the

15   scope of representation or, if no such agreement exists, the

16   date on which Lambert and Byrne understood that a

17   lawyer-client relationship exists.  And this is relevant to

18   whether or not it was proper to share the documents with

19   Ms. Lambert in the first place under the protective order.

20           THE COURT:  Well, that's not going to -- that

21   doesn't help you get to stopping any additional

22   dissemination.

23           MS. BROOK:  No, your Honor.  Our goals with these

24   six specific requests are twofold.  One is, as your Honor

25   pointed out, to stop any additional dissemination.

1          The other is to fully understand what went wrong

2     so that, as the Court evaluates Dominion's request for

3     sanctions and as Dominion previewed in its motion, to the

4     extent Dominion seeks additional requests for sanctions,

5     whether relating to Ms. Lambert or others, we have the most

6     and best information possible.

7          THE COURT:  Okay.  Well, go ahead.  But I don't

8     think that this is -- I don't think that that's -- I'm

9     looking at measures to try to stop further dissemination and

10    to try to understand where and in whose possession

11    confidential information currently is.

12          So --

13          MS. BROOK:  Let me focus on those, then, your

14    Honor.

15          So we have asked for a complete and accurate list

16    of all Dominion-produced documents and information that

17    Patrick Byrne or Ms. Lambert had access to.

18          We've asked for an accounting from Mr. Byrne's

19    outside vendor showing what documents he and Ms. Lambert had

20    access to, on what date, whether they were downloaded as

21    well as any other data the vendor indicates may be helpful

22    in understanding exactly the issue the Court just addressed.

23          We've asked for a complete and accurate list of

24    all Dominion-produced documents and information that

25    Ms. Lambert received and the method and date of access.

1        We've asked for an account of every step

2    Ms. Lambert or Mr. Byrne's prior counsel from the McGlinchey

3    firm has already undertaken or that is underway to determine

4    the scope of the breach and to ensure it is not continuing.

5        And we've asked for an attestation under oath from

6    both Mr. Byrne and Ms. Lambert for to whom Lambert and/or

7    Mr. Byrne leaked, released or otherwise disclosed documents

8    or information protected by the protective order, how and

9    when they provided it, every occasion on which they did so

10   and, for each such instance, what specifically was leaked,

11   released or otherwise disclosed.

12       As the Court knows from the briefing, we have also

13   sent letters to both the original outside document vendor

14   for Mr. Byrne and the current outside document vendor for

15   Mr. Byrne.  Our understanding is that the documents are in

16   the process of being migrated from one outside vendor to the

17   other, asking them not to provide Ms. Lambert or Mr. Byrne

18   with access to those documents unless and until this Court

19   decides this issue.

20       THE COURT:  And about what's the volume of the

21   documents?

22       MS. BROOK:  Dominion has produced more than a

23   million documents in this case, your Honor.

24       THE COURT:  No, no.  What's the volume of the

25   documents that have been released to a third party as far as

1    you know?

2            MS. BROOK:  The short answer is, I don't know,

3    because despite the protective order requiring that such

4    information be shared if and when there is an alleged

5    breach, Ms. Lambert nor Mr. Byrne's prior counsel have not

6    provided that information.

7            So what I do know, your Honor, from the public

8    tweeting is that I believe as of today -- and my team will

9    correct me if I have it wrong -- 2700 pages of Dominion's

10   confidential information have been publicly tweeted out.

11           I will say that Sheriff Leaf -- sorry.  I have my

12   little dyslexia.  It's 2,173.  I flipped the seven and the

13   one.  2,173 pages have been publicly tweeted.  To be clear,

14   what Sheriff Leaf did is he literally made them available

15   for download via a Google Drive on the internet that people

16   can click on and download.  So those 2,173 pages have been

17   shared God knows how many times at this point.

18           And when Sheriff Leaf made that tweet, he referred

19   to it as the, quote, "first tranche."

20           THE COURT:  Okay.  How could the Court do anything

21   to prevent that further dissemination by Sheriff Leaf?

22           MS. BROOK:  I don't believe the Court necessarily

23   can.  To the extent the Court believes it has any authority

24   over Sheriff Leaf, we welcome it to take any actions.

25           But what the Court does have authority over is

```
1     Ms. Lambert, her client, Mr. Byrne, and the previous

2     attorneys who can at least provide fulsome information about

3     what was shared and when and why.

4             THE COURT:  Okay.  Thank you, ma'am.

5             Ms. Lambert.

6             MS. LAMBERT JUNTTILA:  Thank you.

7             THE COURT:  Can I ask, is Mr. Driscoll in the

8     courtroom?  And is Mr. Byrne in the courtroom, Ms. Lambert?

9             MS. LAMBERT JUNTTILA:  [Indiscernible.]

10            THE COURT:  Okay.  Thank you.

11            Ms. Lambert, you may respond.  I'd like to

12    understand in addition to anything you'd like to say in

13    response -- I'm not entertaining full argument right now,

14    but anything you'd like to say in response.  I'd like to

15    understand where these documents are currently located and

16    in whose possession as far as you're aware.

17            But why don't you first respond to the argument

18    that --

19            MS. LAMBERT JUNTTILA:  Thank you, your Honor.

20            Your Honor, my client, Mr. Byrne, did not bring

21    this lawsuit; Dominion did.  And when Dominion sued

22    Mr. Byrne, they sued a national intelligence asset.

23            Mr. Byrne has an obligation, as do I as an officer

24    of the Court, to report criminal activity.  In this

25    discovery, your Honor --
```

1          THE COURT:  So you don't deny that you

2     disseminated documents marked "confidential" in this

3     litigation after filing -- after signing an undertaking --

4          MS. LAMBERT JUNTTILA:  Your Honor --

5          THE COURT:  -- correct?

6          MS. LAMBERT JUNTTILA:  -- I did turn the documents

7     over to law enforcement.  And there is no law that would

8     prevent me from turning documents under a protective order

9     to law enforcement as I'm reviewing them.  It's law

10    enforcement's job to determine if there's a crime that's

11    been committed, investigate it and pursue it.  Just as if

12    Dominion had provided to me documents along with a dead

13    body, I'd be required to turn that in to the police as well

14    and not hide it and conceal it in a closet under a

15    protective order.

16          There's a different analysis with what is --

17          THE COURT:  What's your best authority for that

18    proposition?

19          MS. LAMBERT JUNTTILA:  I've done research, your

20    Honor.  There is no law that I can find that would prevent

21    me from turning in evidence of a crime.  And that is because

22    law enforcement needs to investigate that, and a civil

23    process should never interfere with it.

24          The Court can look at case law -- and I can

25    provide that when I do full argument -- that analyzes

1    contracts.  For example, in contract, if you waive criminal

2    liability, that's not a valid term of a contract.

3              The criminal aspect is entirely separate.

4              So when Dominion sued --

5              THE COURT:  Ms. Lambert, hold on.  I'd just -- I'd

6    like to get a few things on the timing --

7              MS. LAMBERT JUNTTILA:  Sure.

8              THE COURT:  -- down.

9              So you entered your appearance in this case -- I

10   believe it was the 11th or the 12th.

11             MS. LAMBERT JUNTTILA:  I'm not sure of the exact

12   date, your Honor.  But when I have an opportunity to do full

13   argument before Judge Nichols, I think it would be

14   appropriate to decide first what is protected by

15   attorney-client privilege and what information that the

16   Court can obtain regarding Mr. Byrne's representation.

17             THE COURT:  Okay.  My understanding is that you

18   entered your appearance on the 12th.  And you did sign an

19   undertaking pursuant to the protective order, did you not?

20             MS. LAMBERT JUNTTILA:  I did, your Honor.

21             THE COURT:  Okay.  And what date is the date of

22   the undertaking that you signed?

23             MS. LAMBERT JUNTTILA:  I don't have that with me,

24   your Honor.  But I think that's where the judge would need

25   to do an analysis as to -- at what point -- what information

1    would be available for the Court that's not protected by

2    attorney-client privilege.

3              I think that we need to have a determination there

4    as to whether anything regarding the retainer and the

5    representation for Mr. Byrne --

6              THE COURT:  Yes.  I'm not talking about the

7    retainer.  What I'm trying to understand -- does anyone --

8    Ms. Brook, do you have the date of the undertaking that

9    Ms. Lambert signed?

10             MS. BROOK:  I can find it.  Yes.  It's an exhibit

11   to our motion.

12             THE COURT:  Okay.

13             MS. LAMBERT JUNTTILA:  And for the record, your

14   Honor, I did not provide that to counsel.  That must have

15   been provided by Mr. Byrne's previous counsel.  And I'm not

16   waiving attorney-client privilege with regards to

17   documentation provided by counsel.

18             THE COURT:  Okay.  You're claiming that the

19   undertaking that you signed, which is an exhibit to the

20   protective order in this case, in which you certified as an

21   officer of the Court that you would keep all documents

22   confidential and/or comply with the terms of the protective

23   order, you're claiming attorney-client privilege over that

24   document?

25             MS. LAMBERT JUNTTILA:  No, your Honor.

1        I did sign a protective order.  What I'm -- there

2    has been communication that I believe is inappropriate from

3    Mr. Byrne's previous counsel after they'd been terminated

4    with Dominion's counsel.

5        THE COURT:  Okay.  I don't -- I'm not privy to

6    those communications.  I don't know which communications

7    you're referring to.  And I don't want to wade into any

8    attorney-client-privileged communications if there are any

9    that you're referring to.

10        I'm trying to get a timeline here.  I'd like to

11    know the date -- so there is no dispute that you signed an

12    undertaking.  I'd like to know the date that you signed the

13    undertaking.

14        Ms. Brook seems to have it.

15        And, Ms. Brook, before you say on the record,

16    please give Ms. Lambert an opportunity to look at it to

17    confirm that that is her signature.

18        MS. LAMBERT JUNTTILA:  Sure.  And I can expedite

19    this for the Court.  I signed a protective order.  And after

20    signing the protective order, I reviewed very thoroughly the

21    discovery turned over --

22        THE COURT:  Ma'am, I just want to know the date.

23        MS. LAMBERT JUNTTILA:  Okay.  Right.

24        THE COURT:  Let's just take this step by step.

25        MS. LAMBERT JUNTTILA:  And then I turned it over

1       to law enforcement.

2                   THE COURT:  Okay.  Well, we're going to get to

3       that part in a second.  Okay?

4                   But I need to know the date of this undertaking.

5                   MS. BROOK:  That's correct.  December 12th, your

6       Honor.

7                   THE COURT:  Okay.  And that is your signature?

8                   MS. LAMBERT JUNTTILA:  Yes.

9                   THE COURT:  All right.  This is the copy that has

10      been sent to the Court; is that correct?

11                  MS. BROOK:  Correct, your Honor.  It is Exhibit 2

12      to Dominion's brief.  And it says December 12th, 2023.

13                  THE COURT:  Okay.  So on that date, you were not

14      counsel of record for Mr. Byrne.  Correct?

15                  MS. LAMBERT JUNTTILA:  Mr. Byrne had hired me and

16      I was in the process of taking over for the previous firm.

17                  THE COURT:  Okay.  But given that you entered your

18      appearance in this case about three months later, you were

19      not counsel of record at that time.

20                  MS. LAMBERT JUNTTILA:  Correct.

21                  THE COURT:  So do I understand it correctly that

22      after that time that you signed the undertaking, you then

23      gave I don't know how many pages of documents, but a tranche

24      of documents that were clearly marked "confidential" in this

25      case, to a third party?

```
 1                    MS. LAMBERT JUNTTILA:  To law enforcement, your
 2       Honor.
 3                    THE COURT:  Okay.  To whom specifically?
 4                    MS. LAMBERT JUNTTILA:  I've given it to sheriff's
 5       departments and it's under review through Mr. Byrne by the
 6       United States Attorney's Office.
 7                    THE COURT:  I need names.
 8                    MS. LAMBERT JUNTTILA:  Sheriff Dar Leaf.
 9                    THE COURT:  And when did you give that information
10       over to Sheriff Dar Leaf?
11                    MS. LAMBERT JUNTTILA:  I'm not sure exactly of the
12       date.  I'd have to review the records.
13                    THE COURT:  Month?
14                    MS. LAMBERT JUNTTILA:  No.  More recent than that.
15                    THE COURT:  No; I'm saying, do you know the month
16       that you gave it over?
17                    MS. LAMBERT JUNTTILA:  Oh.  This month, your
18       Honor.
19                    THE COURT:  This month?
20                    MS. LAMBERT JUNTTILA:  Yes.
21                    THE COURT:  Okay.  Who else did you give the
22       information over to?
23                    MS. LAMBERT JUNTTILA:  I've given it to --
24       Mr. Byrne has it.  And he is working with the U.S.
25       Attorney's Office.
```

```
 1                 THE COURT:  So which --
 2                 MS. LAMBERT JUNTTILA:  And I don't have the names.
 3                 THE COURT:  Which district?
 4                 MS. LAMBERT JUNTTILA:  I'm not sure.  That would
 5      be a question for Mr. Byrne.
 6                 THE COURT:  He's your client, ma'am.  And you
 7      are -- and you have the obligation to be apprised of what is
 8      happening with --
 9                 MS. LAMBERT JUNTTILA:  I --
10                 THE COURT:  -- this confidential -- let me finish,
11      please.
12                 MS. LAMBERT JUNTTILA:  Yes.
13                 THE COURT:  And I'm just going to say this to
14      everyone:  I know everyone's heated.  I know there's a lot
15      going on.  But you've got to let the Court finish so that we
16      have a good transcript.  You'll thank me later.
17                 So you don't know to whom Mr. Byrne has disclosed
18      this information other than --
19                 MS. LAMBERT JUNTTILA:  To the government, your
20      Honor.
21                 THE COURT:  Okay.  Well, to the --
22                 MS. LAMBERT JUNTTILA:  And I don't know -- I don't
23      have that information with me and I don't know that I'll be
24      able to provide it, given that it's an ongoing confidential
25      investigation.
```

1      THE COURT:  Okay.  Who else did you give this

2    information to other than Sheriff Dar Leaf?

3      MS. LAMBERT JUNTTILA:  No one.

4      THE COURT:  Okay.  Did you attempt to give it to

5    any members of the press?

6      MS. LAMBERT JUNTTILA:  No.

7      THE COURT:  Have you attempted to give this

8    information to any other law enforcement officers?

9      MS. LAMBERT JUNTTILA:  No, your Honor.

10      And -- but Mr. Leaf, Sheriff Leaf, is working with

11    other sheriffs doing an investigation, as he's entitled to

12    do.  That's his job:  to investigate crime.  And he has --

13    there's a misrepresentation of Mr. Leaf posting on social

14    media.  It's not a mere post on social media.  Your Honor,

15    he wrote a letter to Congress asking Congress to do a very

16    serious investigation in light of what was in his possession

17    and to immediately take testimony given the public interest

18    involved in what was in his file.

19      THE COURT:  Ms. Lambert, you are aware that there

20    is a mechanism if you disagree that the information should

21    not be kept confidential.  There is a mechanism for you to

22    challenge that information and to come to this Court and

23    seek de-designation of that information, are you not?

24      MS. LAMBERT JUNTTILA:  Your Honor, I believe

25    that's for the civil lens on the information.

1          I don't believe that's appropriate with anything

2     criminal.  If it were literally a dead body, I don't think

3     I'd bring the dead body to the Court and ask the Court what

4     to do --

5          THE COURT:  That's such a hyperbole.  Okay?  We're

6     talking about documents that are clearly covered by a

7     protective order of this Court or at least were designated.

8     I'm not deciding today whether the documents were in fact

9     covered.  Okay?

10          But you have cited no authority, you can cite no

11    authority to this Court, that you can unilaterally disclose

12    this information without seeking to at least come to this

13    Court and have those documents de-designated for the purpose

14    of disseminating them.  And the analogy of the dead body, it

15    just -- it rings hollow to me, because there are exigencies

16    when you have a dead body.

17          Was there a particular exigency that required you

18    to go disclose this information right this instant --

19          MS. LAMBERT JUNTTILA:  Well, your Honor --

20          THE COURT:  -- as opposed to seeking emergency

21    review by this Court and challenging the documents and

22    seeking the Court's permission to disclose these documents

23    outside of the parties that are subject to the protective

24    order?

25          MS. LAMBERT JUNTTILA:  Absolutely, your Honor.

1          The evidence reflects -- and I can't go through

2     all of it; it's over a million documents -- but it reflects

3     foreign nationals entering our election system in realtime

4     while votes are being counted, being directed and tasked by

5     U.S. Dominion employees.  It reflects the honest services

6     fraud, where certain equipment and software was represented

7     to the EAC while they're communicating and lying and

8     providing a different product to --

9          THE COURT:  When did you get the documents?

10    December?

11          MS. LAMBERT JUNTTILA:  No.

12          THE COURT:  Well, you signed the undertaking in

13    December.  When --

14          MS. LAMBERT JUNTTILA:  Correct.  It took quite

15    some time, much after the holidays, when I received the

16    documents.

17          THE COURT:  Okay.  So sometime in January?

18          MS. LAMBERT JUNTTILA:  I would have to look, your

19    Honor.  I'm not exactly sure.  But I went through them.

20          And it's very important that Congress and law

21    enforcement immediately start investigating everything

22    that's contained in this -- in these files, because there's

23    ongoing elections that would absolutely be impacted

24    throughout this country by what is in the file.

25          THE COURT:  The elections that are forthcoming in

 1    November?  Is that what you're referring to?

 2              MS. LAMBERT JUNTTILA:  Well, there's primary

 3    elections, your Honor.  There's local elections being run.

 4              THE COURT:  So you received --

 5              MS. LAMBERT JUNTTILA:  It's a national public --

 6              THE COURT:  Ma'am, you received the documents

 7    in -- sometime in January or sometime after the holidays.

 8    It took you two months or several weeks to disclose them to

 9    law enforcement.

10              You mean to tell me you couldn't come to this

11    Court and seek a challenge or make a challenge to the

12    confidential designation of these documents?  One of the

13    arguments you make -- and I haven't had an opportunity,

14    since you just filed your response about an hour ago or

15    about an hour and a half ago -- that one of the arguments

16    you make is that they -- that the documents themselves or

17    the protective order is only meant to cover trade secrets.

18              And if you really had an issue with these

19    documents and did not think they were confidential, the

20    protective order gives you a full and fair opportunity to

21    challenge that and bring that before the Court and let the

22    Court decide.

23              MS. LAMBERT JUNTTILA:  With all due respect, your

24    Honor, I think that's asking the Court to function in a dual

25    role:  one, preside over the civil matter; and, two, act as

1    law enforcement and evaluate whether or not in a narrow

2    scope whether or not the Court believes that it be a crime,

3    when there's already active investigations going on with law

4    enforcement that would have a full picture to evaluate the

5    evidence that's corroborating it.

6              THE COURT:  No.  No.  What it does is if you have

7    authority, which you don't have right now or can't point the

8    Court to right now that the documents could be released to a

9    third party, then you could have cited that to the Court;

10   you could have sought emergency relief; you could have taken

11   the position as you do now that these documents don't

12   constitute trade secrets or other sensitive confidential --

13   or commercial information.

14             But you didn't do any of that.  You had the

15   documents for several weeks and then you released them

16   without any notice.  In fact, you didn't even notify any

17   other party to the protective order.  It was your

18   predecessor counsel that did so.

19             MS. LAMBERT JUNTTILA:  Well, that would result in

20   obstruction of justice, your Honor.  And that's exactly what

21   happened.

22             The minute that the Dominion attorneys found out

23   that law enforcement was backing up and preserving the

24   files, they obstructed that investigation and notified the

25   vendor to lock me as counsel out.  I'm currently locked out

1    of the vendor.  I have no access to my client's discovery to

2    continue to defend him.

3           And I think that the reason there's no authority

4    to cite to the Court, it's essentially asking me to find

5    authority that water is wet.  I don't believe it's ever

6    appropriate for a civil court to interfere or evaluate a

7    criminal investigation that is separate.

8           And I believe that's why that authority doesn't

9    exist.

10          THE COURT:  Okay.  Well, I think the authority

11   doesn't exist for another reason.  But I'm not going to

12   prejudge that right now.

13          I will allow you all to make your arguments and

14   consider whether it's me or whether it's Judge Nichols to

15   consider the motion for sanctions and motion to disqualify.

16   As I mentioned, that is a severe remedy.  The law of this

17   circuit is clear.  So that's something that the Court needs

18   to do taking its time and thinking very seriously about

19   that.

20          But what I would like to know now on the record is

21   where -- I'd like you to walk me through, ma'am, where the

22   documents currently are located -- all the places in your

23   possession that these documents are currently located,

24   because while the Court takes this issue under advisement

25   and holds a hearing or sets a hearing on the motion, we need

1    to ensure that the status quo is maintained.  And it may

2    very well be after full hearing and argument that you're

3    right.

4            But until that time, these documents need to be,

5    to the extent they can be, we need to prevent any further

6    disclosure because they are marked "confidential" and

7    because you did not challenge their confidentiality

8    designation before the Court.  We could have been in a much

9    different position if you had actually come to the Court and

10   challenged their designation.  But be that you didn't do

11   that and didn't follow that procedure, I have to at least

12   try to stop any further dissemination by you or your client

13   while this issue is taken up and while we hear further

14   argument.

15           So first walk me through, Ms. Lambert, where and

16   on what devices you have these documents in your possession.

17           MS. LAMBERT JUNTTILA:  I am currently locked out

18   of the vendor site, your Honor.  So --

19           THE COURT:  Do you have any documents printed out

20   anywhere?

21           MS. LAMBERT JUNTTILA:  The documents have been

22   provided to law enforcement, and they are now locked out of

23   the vendor site as well.

24           THE COURT:  When you say they are locked out, law

25   enforcement?

1          MS. LAMBERT JUNTTILA:  Correct.

2          THE COURT:  When you say law enforcement, can you

3     be more specific?  Do you mean Sheriff Leaf?

4          MS. LAMBERT JUNTTILA:  Correct.

5          THE COURT:  Okay.  Did you print out any documents

6     at any time?

7          MS. LAMBERT JUNTTILA:  I have printed out some

8     documents.

9          THE COURT:  And where are they located?

10         MS. LAMBERT JUNTTILA:  They're in my home.

11         THE COURT:  Okay.  And about how many documents

12    did you print out?  Or do you know which specific documents

13    you printed out?

14         MS. LAMBERT JUNTTILA:  Some of the discovery.  I

15    don't know which ones, your Honor.  I viewed them and

16    they're in possession of Dar Leaf.  So I -- I did not print

17    many documents.  I have a small --

18         THE COURT:  Can you give me a ballpark of how

19    many?

20         MS. LAMBERT JUNTTILA:  Maybe 50.

21         THE COURT:  50.

22         And who has access to those documents in your

23    home?

24         MS. LAMBERT JUNTTILA:  Just me.

25         THE COURT:  Are they kept in a safe?

1           MS. LAMBERT JUNTTILA:  No.  They're kept locked in

2      my office.

3           THE COURT:  Okay.  Does anyone have a key to that

4      office --

5           MS. LAMBERT JUNTTILA:  No.

6           THE COURT:  -- other than you?

7           MS. LAMBERT JUNTTILA:  No.

8           THE COURT:  And it's a home office?

9           MS. LAMBERT JUNTTILA:  Yes.

10          THE COURT:  Okay.  Do you have a laptop?

11          MS. LAMBERT JUNTTILA:  I do.

12          THE COURT:  And do you have any of the documents

13     downloaded on any laptop or desktop anywhere?

14          MS. LAMBERT JUNTTILA:  No.

15          THE COURT:  Nowhere?

16          MS. LAMBERT JUNTTILA:  No.

17          THE COURT:  Not even one page?

18          MS. LAMBERT JUNTTILA:  No.  No.  I've had laptop

19     issues lately.

20          THE COURT:  Okay.  Do you have any documents

21     downloaded on your phone or any tablet or any electronic

22     device?

23          MS. LAMBERT JUNTTILA:  I don't think they're

24     downloaded.  I viewed the documents.

25          THE COURT:  Okay.  Through the repository?

1          MS. LAMBERT JUNTTILA:  Yes.

2          THE COURT:  Okay.  And that's the one that you

3    don't have access to right now?

4          MS. LAMBERT JUNTTILA:  Correct.

5          THE COURT:  Do you have any notes of these

6    documents that you've kept of these documents reflecting

7    confidential information?

8          MS. LAMBERT JUNTTILA:  I -- yes.  I've taken

9    work-product attorney-client-privileged notes.

10          THE COURT:  And where are those notes?

11          MS. LAMBERT JUNTTILA:  In my private

12    communications.

13          THE COURT:  Okay.  Where are they stored?  I don't

14    want the contents.  I don't want the contents of your work

15    product.  I just --

16          MS. LAMBERT JUNTTILA:  On my device.

17          THE COURT:  Which device?

18          MS. LAMBERT JUNTTILA:  My phone.

19          THE COURT:  Okay.  How many phones do you have,

20    ma'am?

21          MS. LAMBERT JUNTTILA:  I have one phone.

22          THE COURT:  Okay.  And are there any -- and those

23    are just notes that you took after reviewing the documents

24    or --

25          MS. LAMBERT JUNTTILA:  Correct.

 1                 THE COURT:  -- while reviewing the documents?

 2                 Does anyone have access to those notes?

 3                 MS. LAMBERT JUNTTILA:  My legal team.

 4                 THE COURT:  Okay.  When you say your legal team,

 5       who are you referring to?  Your staff?

 6                 MS. LAMBERT JUNTTILA:  Anyone working for me.

 7       Yes.

 8                 THE COURT:  And how many staff members do you

 9       have?

10                 MS. LAMBERT JUNTTILA:  Well, I have one assistant

11       and...

12                 THE COURT:  What's the assistant's name?

13                 MS. LAMBERT JUNTTILA:  And another attorney.

14                 THE COURT:  Okay.  That's in your law practice?

15                 MS. LAMBERT JUNTTILA:  Correct.  Yes.

16                 THE COURT:  And they have access to your notes?

17                 MS. LAMBERT JUNTTILA:  The attorney I don't think

18       has access to the notes.  No.

19                 THE COURT:  What's your assistant's name?

20                 MS. LAMBERT JUNTTILA:  Stephanie.

21                 THE COURT:  Last name?

22                 MS. LAMBERT JUNTTILA:  Scott.

23                 THE COURT:  And is that P-H-A-N-I-E?

24                 MS. LAMBERT JUNTTILA:  Yes.

25                 THE COURT:  Okay.  And so she has the ability to

```
 1    get into -- excuse me -- your notes on your phone?

 2             MS. LAMBERT JUNTTILA:  No.  We've exchanged

 3    information.

 4             THE COURT:  Okay.  And the attorney in your

 5    office's name?

 6             MS. LAMBERT JUNTTILA:  Russell.

 7             THE COURT:  Okay.  Can you give me a last name?

 8             MS. LAMBERT JUNTTILA:  Newman.

 9             THE COURT:  Sorry?

10             MS. LAMBERT JUNTTILA:  Yes.  Newman.

11             THE COURT:  Newman?

12             MS. LAMBERT JUNTTILA:  Yes.

13             THE COURT:  Is that the traditional spelling?

14             MS. LAMBERT JUNTTILA:  Yes.

15             THE COURT:  Okay.  And you don't believe that

16    Mr. Newman has access to those notes?

17             MS. LAMBERT JUNTTILA:  No.  I don't believe so.

18             THE COURT:  Okay.  Are there any other places that

19    either any of the confidential information, any other place

20    where the confidential information is located or notes about

21    the confidential information is located?

22             MS. LAMBERT JUNTTILA:  Not that I can recall at

23    this time.

24             THE COURT:  Okay.  Do you know whether Mr. Byrne

25    has printed out any documents?
```

1          MS. LAMBERT JUNTTILA:  I don't know.

2          THE COURT:  Okay.  Have you spoken to him about

3    it?

4          MS. LAMBERT JUNTTILA:  I've spoken to him about

5    the discovery, yes.

6          THE COURT:  Okay.  Do you know whether he has

7    given the information to any third party?

8          MS. LAMBERT JUNTTILA:  I believe law enforcement.

9          THE COURT:  Okay.  The U.S. Attorney's --

10         MS. LAMBERT JUNTTILA:  And I have no further

11   information about that at this time.

12         THE COURT:  Okay.  All right.  Any other places

13   that you think that any of this confidential information is

14   located either between you or your counsel -- you or your

15   client of which you're aware?

16         MS. LAMBERT JUNTTILA:  No.  Not that I'm aware of

17   that I can recall at this time.

18         THE COURT:  I'll ask you to just have a seat,

19   ma'am, while I'll ask Ms. Brook whether she has any

20   questions about where there might be any other additional

21   information.

22         As I mentioned, for now, the concern is while the

23   Court considers the substantive issue as to whether you were

24   entitled to disclose this information and have a full and

25   fair argument on this and the motion for sanctions and

1    disqualification, the Court is concerned about maintaining

2    the status quo.

3              So, Ms. Brook, is there any question that you

4    have?

5              MS. BROOK:  Briefly, your Honor.

6              THE COURT:  Thank you, Ms. Lambert.

7              MS. BROOK:  Thank you, your Honor.

8              Three quick points.  This is the first -- well,

9    first point.  We were --

10             THE COURT:  I'm sorry.  Can you start with any

11   followup questions that you have to ensure that I've

12   captured the full universe of any documents in Ms. Lambert

13   or Mr. Byrne's possession, custody or control, so that we

14   can try to put a lock on those?

15             MS. BROOK:  That's precisely my intent, your

16   Honor.

17             THE COURT:  Okay.

18             MS. BROOK:  So the first question I have is, in an

19   email to us from Mr. Byrne's exited attorneys, which is

20   Exhibit 7 to our motion, they say that Stefanie Lambert --

21   and I quote -- "publicly disclosed by her as part of a

22   filing she made in the criminal case styled *People of the*

23   *State of Michigan versus Stefanie Lynn Lambert Junttila*,

24   which is currently pending before the Sixth Circuit Court in

25   Oakland county, Michigan, as case number" -- and then it

1    provides the case number, closed quote.

2           So they said that in addition to providing the

3    documents to Sheriff Leaf, Ms. Lambert also herself filed

4    these documents publicly in an action in which she is the

5    Defendant.

6           So to the extent -- I would assume she has copies,

7    electronic and otherwise, in her possession of that filing,

8    where she attached some of these documents.  So that's the

9    first location, your Honor, that I know of that I don't

10   think was provided for in the accounting that was just made

11   by Ms. Lambert.

12          The second question I have, your Honor, if you'd

13   like me to continue -- or I can pause there.

14          The second question I had, your Honor,

15   Ms. Lambert's remarks today was the first I ever heard if I

16   understood her correctly that they've actually provided a

17   log-in and credentials to Sheriff Dar Leaf.  We had not

18   heard that before.  If I heard correctly, she says that's

19   currently closed off.

20          But did anyone else from the sheriff's office get

21   a log-in and credentials?  Who else has log-in and

22   credentials to either the old or the new document repository

23   so that we can make sure, as the Court said, the status quo

24   is protected?  We need to know that that is all turned off.

25          I had the --

1          THE COURT:  Who --

2          MS. BROOK:  -- same questions as the Court --

3     sorry?

4          THE COURT:  Who controls the document repository?

5          MS. BROOK:  Not Dominion, your Honor.  It is a

6     document repository paid for by Patrick Byrne, engaged by

7     Patrick Byrne, I would imagine, unless he has someone else

8     footing the bill.

9          THE COURT:  Okay.

10         MS. BROOK:  So it was her own filing which we were

11    told she attached these documents to.  It is a full

12    accounting of who had access to the document repository,

13    including whether the assistant and associate in her firm

14    that she mentioned had access.  We would think again it

15    should all just be paused pending this Court's

16    determination.

17         That answers the Court's questions that were

18    directed to me.

19         And then I just had one other point I wanted to

20    make very briefly, if allowed.

21         THE COURT:  Yes.

22         MS. BROOK:  I appreciate the Court's focus on the

23    fact that these documents were marked "confidential."  From

24    what I have seen, most if not all of the documents that

25    Ms. Lambert leaked were marked "confidential."

1          But I want to be clear that the governing

2     protective order in this case doesn't allow the sharing of

3     documents produced in discovery by any of the parties,

4     regardless of whether they were marked "confidential" or

5     not.

6          And the reason for that, your Honor, was plain:

7     We did not want these cases to be litigated in the press.

8     We wanted them to be litigated in the courtroom.

9          So I'll just briefly point the Court to Paragraph

10    1 of the protective order, which is Exhibit 6 to Dominion's

11    motion.  And it says, plain as day -- and this was a

12    negotiated point between the parties:  "Any discovery

13    material produced in the litigation will be used except by

14    the producing party solely for purposes of this litigation,

15    and no receiving party will provide discovery material to

16    any person or entity, including for any other litigation, or

17    make any discovery material public except as permitted by

18    this order and in this litigation."

19          So I just wanted to clarify that for the Court's

20    reference.

21          THE COURT:  Well, do you know whether the

22    documents that were filed on the public record in the

23    Michigan case were all marked "confidential"?

24          MS. BROOK:  I don't know whether they all were.  I

25    know that some of them certainly were, your Honor.

1          THE COURT:  Okay.  Thank you.

2          MS. BROOK:  Thank you.

3          THE COURT:  Well, Ms. -- actually, Ms. Brook, what

4  would -- other than returning or destroying the documents or

5  placing them -- placing them in escrow with a third party,

6  is there anything that Dominion is seeking for interim

7  relief to -- just to maintain the status quo while the Court

8  takes up this issue?  Anything that Dominion is asking the

9  Court to do with respect to, say, attorney notes which, you

10  know, if they are work product, Dominion's not entitled to?

11         MS. BROOK:  Your Honor, to answer your question

12  directly, in terms of maintaining the status quo, we think

13  it should be clear that neither Ms. Lambert nor anyone

14  working with her as well as her client, Mr. Byrne, or anyone

15  working with him should have access to any of the vendors

16  right now.

17      And to the extent they've given these documents to

18  experts or anyone, it should all be cut off, which is I

19  think what the Court is trying to get at, frozen, during the

20  pendency of this decision that the Court has before it.

21      The other request -- and I want to be clear, your

22  Honor, that we think, Dominion thinks, that that order

23  should apply with equal force to Ms. Lambert and her client,

24  Mr. Byrne.

25      The other requests that I delineated earlier and

 1    that are included in our proposed order, they go more

 2    towards understanding the harm versus maintaining the status

 3    quo.

 4              I think there's information that's not

 5    attorney-client privileged, that's not work product, in the

 6    possession of, for example, the document vendors, in the

 7    possession of Mr. Byrne's now outgoing counsel and in the

 8    possession of Ms. Lambert and Mr. Byrne that would be

 9    helpful to all in understanding the scope of the breach

10    here.

11              And those are the other requests delineated in our

12    proposed order.

13              THE COURT:  Okay.  Thank you.

14              Ms. Lambert, who has control of this document

15    repository?

16              MS. LAMBERT JUNTTILA:  Your Honor, if I could

17    respond to some of the things that counsel said.

18              THE COURT:  Who has control of the document -- you

19    can, but just --

20              MS. LAMBERT JUNTTILA:  Right.

21              THE COURT:  -- can you answer my question?

22              MS. LAMBERT JUNTTILA:  No one has access to the

23    documents at this time, your Honor.

24              And counsel misrepresented that I filed the

25    documents in my own case.  There was an affidavit from the

1    sheriff that he received a subpoena to provide the documents

2    in a case, and he responded with an affidavit and

3    attachments to the affidavit.  That was not my filing; that

4    was an affidavit from the sheriff.

5            So that was --

6            THE COURT:  You gave the documents to the sheriff,

7    did you not?

8            MS. LAMBERT JUNTTILA:  And he had an open

9    investigation, and he responded with an affidavit saying he

10   was going to seek to quash the subpoena in a large extent.

11           So, your Honor, the sheriff's office, the

12   appropriate chain of custody, the best chain of custody,

13   would be to obtain the documents from my log-in.

14           I was giving an -- and I find it very ironic that

15   Dominion sued the national intelligence asset and is

16   complaining about a breach when he's turned in evidence of

17   national security breaches done by Dominion.

18           Dominion had Serbian foreign nationals in our

19   elections system that they admit in this documentation, your

20   Honor, they couldn't do background checks on.  These could

21   be Serbian foreign military --

22           THE COURT:  We're getting --

23           MS. LAMBERT JUNTTILA:  -- and this is outrageous.

24           THE COURT:  We're getting into the underlying --

25           MS. LAMBERT JUNTTILA:  Sure.

1          THE COURT:  -- underlying arguments, which I

2     will -- Ms. Lambert, as I mentioned, I haven't had a chance

3     to read the filing, which I do appreciate you making and --

4          MS. LAMBERT JUNTTILA:  Sure.

5          THE COURT:  -- and getting in today.  But because

6     it came in so late, I haven't had the opportunity to review

7     everything except -- that's why I asked for your principal

8     authority today --

9          MS. LAMBERT JUNTTILA:  Sure.

10          THE COURT:  -- as to what you were relying on,

11     which I don't have any case that you're relying on that you

12     say allowed you to do this.  So I want to give you the

13     opportunity to make your full argument at a later time,

14     where you can present that.

15          But as far as the documents go, they're attached

16     to an affidavit by the sheriff in your case in Michigan.  Is

17     there a way that you can confer with -- or your lawyers --

18     who are you represented by in that case?

19          MS. LAMBERT JUNTTILA:  Daniel J. Hartman.

20          THE COURT:  Sorry.  Could you give me the --

21          MS. LAMBERT JUNTTILA:  Daniel J. Hartman.

22          THE COURT:  Okay.  So those documents are on the

23     public record in that case; is that correct?  I know you say

24     you didn't file them, but they were posted by the sheriff?

25          MS. LAMBERT JUNTTILA:  I attached his affidavit to

1    a filing.  Yes, I did.  And it was an affidavit -- he had

2    received a subpoena that he was -- that he needed to comply

3    with.  And he was stating in the affidavit to the Court that

4    he was going to file a motion to quash and that he had a

5    very serious investigation underway.

6            THE COURT:  Did he -- all right.  So everyone

7    needs -- I need everyone to speak to me very directly,

8    because you just led me to believe that you did not make the

9    filing, that it was the sheriff who made the filing.

10           So it was a filing that you made or that your

11   lawyers made on your behalf that attached the sheriff's

12   affidavit?  And then were the documents attached to his

13   affidavit?

14           MS. LAMBERT JUNTTILA:  They were exhibits to his

15   affidavit.

16           THE COURT:  Okay.

17           MS. LAMBERT JUNTTILA:  Right.  It's his affidavit,

18   though, your Honor.

19           THE COURT:  Okay.  So they were filed by your

20   counsel?

21           MS. LAMBERT JUNTTILA:  Correct.

22           THE COURT:  Okay.  So those documents are

23   currently in the public domain?

24           MS. LAMBERT JUNTTILA:  Correct.

25           THE COURT:  Okay.  At a minimum, while this

1    dispute is underway, I'm going to order you to request that

2    those documents be filed under seal or that those documents

3    be made under seal for the pendency of this dispute.  Okay?

4            MS. LAMBERT JUNTTILA:  Yes, Judge.

5            THE COURT:  Okay.  And I need Mr. Byrne to appear

6    at the next hearing in this case, because I need to

7    understand the full scope of what he -- what, if any,

8    dissemination he has made of confidential information.

9    Again, this is an interim order to maintain the status quo

10   until I can hear your arguments, hear his arguments and hear

11   Dominion's arguments.

12           With respect to the documents that are -- I just

13   want to take these one at a time.

14           So with respect to the documents that are the 50

15   or so documents that are printed out in your office, I will

16   order you to -- they can stay in Ms. Lambert's office if you

17   can verify that no one else will have access to them and

18   that you will not be further disseminating --

19           MS. LAMBERT JUNTTILA:  I keep my office locked,

20   your Honor.

21           THE COURT:  Okay.  So I'm taking your

22   representation as an officer of the Court that you are the

23   only person that has a key to that office and that no other

24   person is going to have access to that.

25           Is that -- is that sufficient for Dominion for

1    these 50 printed-out documents?

2              MS. BROOK:  Yes, your Honor.  That's fine.

3              THE COURT:  Okay.  With respect to the notes on

4    your phone, ma'am, I'm going to ask that you direct

5    Ms. Scott to destroy any communications that she had with

6    you that reflect your impressions or your notes based on

7    those documents.

8              And what would Dominion's request be with respect

9    to that?

10             My inclination would be, ma'am, that you put that

11   in a segregated file and that you have to -- that you cannot

12   discuss, share, disseminate those notes or refer to them at

13   all except with perhaps your counsel in your other case.

14             MS. BROOK:  Your Honor, respectfully, if I may, I

15   would -- Dominion would prefer that they not be destroyed

16   but instead segregated.  I don't want to jump ahead, but I

17   do believe there might be a crime fraud issue here.  And to

18   the extent there are communications where individuals were

19   talking about how to violate a court order or violate the

20   law, then those documents should frankly be preserved, as

21   they may become evidence in a future proceeding.

22             But we would request an oral order that Ms. Scott,

23   Ms. Lambert and anyone else segregate them in a file and not

24   access them again and of course not share them or

25   disseminate them during the pendency of the Court's review.

```
1                   THE COURT:  Okay.

2                   MS. BROOK:  Can --

3                   MS. LAMBERT JUNTTILA:  Well, your Honor, I'll do

4       whatever the Court asks me to do.  But I take exception with

5       that, given that Dominion has directed a vendor to obstruct

6       an investigation.  And I believe that Dominion has

7       represented fraud to the Court with its defamation suit.

8                   But I'll follow the Court's order.

9                   THE COURT:  Thank you.

10                  Whatever arguments writ large either party has

11      about obstruction or, you know, whether Dominion has

12      instituted a fraud on the Court in the defamation case will

13      play out in the course of this case.  I can guarantee you

14      that both I and Judge Nichols will allow those arguments to

15      be played out and we'll consider all of those arguments

16      seriously.

17                  I'm dealing with the micro-issue of trying to

18      ensure that this information that's in your possession,

19      custody or control or that's in your client's possession,

20      custody or control are not further disseminated pending the

21      resolution so that I can consider your argument thoroughly

22      and give time and attention to your argument, ma'am, because

23      I do take it seriously.

24                  MS. LAMBERT JUNTTILA:  Thank you, Judge.

25                  THE COURT:  So just so that everyone's clear on
```

1    the record, the documents that you have with Ms. Scott, any

2    communications that you have with your assistant, Ms. Scott,

3    I'd like you to direct her to put that in a -- if she can,

4    in a locked or password-protected file on her computer or on

5    her phone, wherever they are located, wherever she was

6    communicating with you.  If they're both on a tablet -- or

7    if they're on a tablet, a phone, a computer, they need to be

8    locked down in all of those places.  And the same with your

9    side of the document -- or your side of the communications

10   that you may have had with Ms. Scott.

11           I also would like you to verify that Mr. Newman

12   does not have and never has had access to any of these

13   documents or to any of your -- and was not subject to any

14   communications or notes about these documents.

15           With respect to the documents in Michigan, I would

16   like you to request that your counsel in the Michigan case

17   speak with the prosecutor and explain the basis -- and I

18   will give you a copy of an order -- explain the basis for

19   the request of sealing of that filing pending further

20   resolution of this dispute and that you make the effort to

21   seal those documents pending further resolution of this

22   dispute, as they are currently subject to the protective

23   order, because, as I said before, you did not seek to

24   challenge them and have them de-designated, which you could

25   have easily come to this Court and done.  But you did not do

1    that.

2              Okay.  Now, with respect to the document

3    repository, you don't have access -- you don't have --

4              MS. LAMBERT JUNTTILA:  I'm currently locked out,

5    your Honor.

6              THE COURT:  Okay.  But do you know who controls

7    that?  Dominion's saying that your client controls that

8    repository.

9              MS. LAMBERT JUNTTILA:  I believe that it's

10   Relativity --

11             THE COURT:  Okay.

12             MS. LAMBERT JUNTTILA:  -- is the vendor.

13             THE COURT:  Who is Relativity acting at the

14   direction of in this -- for those documents?

15             MS. LAMBERT JUNTTILA:  Well, the previous counsel

16   was moving the documents over to a different vendor.  So

17   I'll have to take a look at the contract and see who

18   currently has the documents with the vendor.  But I'm locked

19   out of both, the vendor that it was initially with, and then

20   I never had access to the new vendor.

21             THE COURT:  Okay.  I need to get some clarity from

22   the parties.  So I would ask you all to file within -- it's

23   4:00 -- by 9:00 tomorrow morning some detail, because no one

24   seems to know who's controlling this Relativity database.

25             MS. BROOK:  I believe my colleague Mr. Ross may

1    have information relevant to that, if the Court would like

2    to hear it.

3              THE COURT:  Yes.

4              Mr. Ross?

5              Thank you, Ms. Lambert.

6              MR. ROSS:  Thank you, your Honor.  Jonathan Ross.

7              I'm the one who wrote the letters to the vendor,

8    so I have some insight on this.

9              So my understanding is that they were -- one

10   vendor was in the process of migrating the discovery in this

11   case that had been produced to another vendor at the

12   direction of Ms. Lambert's client.

13             I sent the letters Friday after having had

14   conversations with prior counsel, who said that they

15   couldn't do anything, and said, Please do not continue

16   disseminating or allowing any dissemination of this

17   information until we have a hearing on Monday and the Court

18   can decide what the Court wants to do.

19             The vendor who originally had the information, who

20   was in the process of migrating it, their chief operating

21   officer called me on Friday and said:  We have stopped the

22   process.  We are not giving anybody access, and we'll wait

23   until the Court tells us what we should or should not do.

24             That's the status.  The information is no longer

25   available to anybody.  It is no longer being migrated to the

1    new vendor.  And they are awaiting this Court's ruling as to

2    what, if anything, they should do.

3              THE COURT:  Okay.  So if there is, say,

4    theoretically -- so do all of you have one repository or --

5              MR. ROSS:  No.

6              THE COURT:  -- each side has their own Relativity

7    database?

8              MR. ROSS:  Each party has their own vendor who

9    then when we -- for example, when we produced to the D.C.

10   Defendants, all of this group, they all get the production.

11   They can then download it with whatever vendor they're using

12   and then set it up in whichever type of database they choose

13   to do.

14             THE COURT:  Okay.  But you only have an allegation

15   against Mr. Byrne and Ms. Lambert.  Correct?

16             MR. ROSS:  Absolutely.

17             THE COURT:  So that database -- are you saying

18   that that database is -- no one has access to?

19             MR. ROSS:  My understanding is that their original

20   database vendor was migrating their information, unrelated

21   to this issue today, to a new one.

22             I sent letters to both on Friday saying, Please

23   stop until the Court can address this issue.

24             My understanding from my conversation with the COO

25   of the initial database vendor, who was in the process of

1    doing the migrating, was that they have stopped, that nobody

2    has access to the information and that they will await

3    further instruction from us or the Court as to what they

4    should or should not do.

5              THE COURT:  Okay.  So would that -- so just

6    playing that out, if there is, say, some third party who has

7    received a log-in and password for that database and that

8    that third party has received a log-in, say, from

9    Mr. Byrne -- I'm not saying that's what happened; I'm just

10   hypothetically speaking, or Ms. Lambert -- that person

11   cannot get into that database right now?

12             MR. ROSS:  From my conversation -- and I did not

13   have any understanding that they -- Ms. Lambert had actually

14   given out passwords and access to other third parties.  But

15   from my understanding from my conversation with the COO,

16   that he has stopped anyone from having access to these

17   documents pending this hearing today.

18             THE COURT:  Okay.  All right.  Thank you.

19             MR. ROSS:  Thank you, your Honor.

20             THE COURT:  Thank you.

21             All right.  Ms. Lambert, I would -- I assume you

22   have an objection to that database being under lock and key

23   for now.  But I am going to order that no one have access to

24   those documents until we can sort this issue out.

25             Do you have any --

1      MS. LAMBERT JUNTTILA:  I do, your Honor.  I do

2    have an objection [indiscernible].

3      THE COURT:  I assumed you did.  But that is the

4    only way that the Court can understand -- or can at least

5    stop further dissemination until the Court considers next

6    steps.  Okay.

7      What I would like -- now that I have an

8    understanding of that, what I would like is for the parties

9    to send me a proposed order.

10      I'm not going to at this time request -- grant

11   Dominion's request to get information about the details of

12   any fee arrangement or any fee agreement between Ms. Lambert

13   and her client.  That is not at this time, I think, what I'm

14   focused on.  I'm focused on trying to prevent -- trying to

15   prevent any further dissemination while we figure this out.

16      And the -- Ms. Byrne [sic], you're going to have

17   to direct your client to comply with this order as well.

18   And I will seek a verification from lawyer and client that

19   these steps were taken pending the resolution of this -- of

20   this dispute, given that there is -- that you all -- that

21   you've conceded that that information has been disseminated,

22   although you do have an argument as to why.  I will deal

23   with the "why" later.  But for now, I need to maintain the

24   status quo.

25      MS. BROOK:  Your Honor, may Dominion make one more

1    suggestion for that proposed order?

2              THE COURT:  Yes.

3              MS. BROOK:  We would also seek an instruction that

4    Ms. Lambert, Mr. Byrne and anyone else under the Court's

5    authority preserve all documents relating to this issue and

6    this dispute, including Mr. Byrne's prior counsel, who the

7    Court retains jurisdiction over under the protective order.

8              THE COURT:  Yes.  Again, please -- please draft a

9    proposed order.  I do want Mr. Driscoll and his firm covered

10   by this if they have any documents.

11             Of course, I assume that Mr. Driscoll had -- he

12   was entitled to review these documents.  So the fact that

13   prior counsel has them in their possession, I'm sure you

14   have a mechanism if you withdraw as counsel as to any return

15   of confidential information or destruction.  But for now, I

16   think any documents related to this dispute should be

17   preserved.

18             But you're not making the argument that

19   Mr. Driscoll was in possession of any documents improperly,

20   are you?

21             MS. BROOK:  No, your Honor.

22             And for the record, I would like to thank

23   Mr. Driscoll for his prompt notification of the issue to

24   Dominion.

25             THE COURT:  Okay.  Thank you.

1          I'd ask you to please draft that order to share

2     with Ms. Lambert and submit it to the Court as soon as

3     possible, no later than -- I will look at it tonight if I

4     get it by tonight.  But certainly no later than 9:00

5     tomorrow morning.

6          Okay.  I reviewed -- as for some of the other

7     issues on the agenda for today, here's what I'm going to do

8     in terms of how I'm going to handle this:

9          With respect to the deposition protocol -- I

10    appreciate you all sending in your Round 1 and Round 2

11    disputes.

12         With respect to the deposition protocol, all I

13    would like to just know very briefly is:  What is the

14    remaining dispute about remote depositions?  Because if I

15    can resolve that now, I will.  I understand that each party

16    may have a different position.  But I would just -- very

17    briefly.  Otherwise, I will do it on the papers.  If it

18    turns into full-blown argument, you'd better believe I'm

19    going to stop it.  So -- Mr. Babcock knows that for sure.

20         So can someone just tell me what the dispute is

21    about remote depositions?  Ms. Brook.

22         MS. BROOK:  Yes, your Honor.

23         And I'm sorry.  Before we move off the protective

24    order issue, the Court had mentioned that it was also going

25    to address a briefing schedule or anything like that.  Is

1    there something the Court would like us to include in the

2    draft proposed order?

3                THE COURT:  The draft proposed order should

4    address all the items we've discussed now about dealing with

5    kind of just maintaining the status quo on the documents;

6    and it should cover Mr. Byrne, Ms. Lambert and include the

7    components I've stated on the record.

8                With respect to briefing, we have -- we have a

9    response, which I do appreciate Ms. Lambert; I'm sure that

10   was -- took a great effort on your part to get that in.  So

11   I do appreciate the response to the emergency motion.

12               To the extent that Dominion wishes to file a

13   reply, I would order Dominion to do so by Friday at 5:00

14   p.m.

15               And then you will get a further order from -- I

16   mean, at that point, the exigency in terms of the

17   dissemination of documents to the extent it can be cabined

18   has been -- will hopefully be done.  And we can have a --

19   we'll set a briefing schedule -- I mean, oral argument, if

20   necessary.

21               And it will -- at this time, I'm trying to deal

22   with the emergency issue.  I will -- it will be either

23   before Judge Nichols or before me.  He has not had the

24   opportunity yet to decide whether this is a matter that will

25   be referred to me.

```
 1            MS. BROOK:  Thank you, your Honor.
 2            Switching hats, I will say it as briefly and
 3     hopefully, frankly, as neutrally as possible.
 4            In order to schedule all the depositions that need
 5     to happen in this case, Dominion proposes that they be
 6     remote unless the Defendants ask and we oblige for them to
 7     be in person.  And we've told them we're happy to do that
 8     for the ones that they want within reason.
 9            They have the opposite request.  They want the
10     default to be in person, and they've said they'd oblige if
11     we want them to be remote.
12            THE COURT:  Why would there -- why would these
13     depositions need to be remote?
14            MS. BROOK:  Your Honor, Dominion's opinion is
15     these depositions need to be remote because, if not,
16     scheduling is going to preclude them getting done on the
17     order set by the Court.
18            All Dominion wants is to move this case towards
19     trial as quickly as possible and bothering the Court as
20     little as possible.
21            As of today's date, standing before you right now,
22     Defendants and Dominion have already collectively flagged 86
23     different depositions that they want to happen.  Most of
24     them, the majority, are requests from Defendants for
25     Dominion witnesses.
```

1          As you can see just practically, there are a lot

2     of attorneys involved in these cases.  There are a lot of

3     attorneys located in a lot of different places involved in

4     these cases.  And if every time we schedule one of these

5     depositions we're building in travel time and coordinating

6     around so many different schedules that even with everyone

7     operating in the utmost of best faith, I think it's fairly

8     easy to predict that we're going to run into scheduling

9     issues.

10          So remote deposition technology makes it perfectly

11    able to do these depositions remotely.  We took all but I

12    think three of the depositions in the Dominion-Fox case

13    remotely without any issues.

14          But like we said, if there are certain ones where

15    they really want to sit down opposite these folks and talk

16    to them, we'll work with them on that.  But we think that

17    because of that -- and frankly, your Honor, because of some

18    of the trauma that the Dominion witnesses have suffered,

19    there are some of them, too, that walking into a conference

20    room with 30 attorneys sitting around it who they're

21    naturally going to view as being hostile to them is a big

22    ask.

23          THE COURT:  Well, I can understand that.  But this

24    is your case.  You've brought this case.  And remote

25    depositions are not the norm.  So if you all -- if there are

1    parties that -- well, first of all, the only parties as far

2    as I'm concerned that should be involved in dealing with

3    scheduling is the party that noticed the deposition and the

4    party that -- whose witness it is.  Okay?

5            Any of the other parties, if they can make it,

6    great.  If not, as far as I'm concerned, I don't think other

7    parties all get a say in every single deposition that's

8    scheduled.

9            So if it's a Dominion -- let's say it's a Dominion

10   witness and Mr. Lindell notices that deposition.  The only

11   two attorneys that should be conferring on that and when it

12   takes place and where are Mr. Lindell's counsel and

13   Dominion.

14           So is -- are you saying that everyone else is

15   trying to get a say in on this?

16           MS. BROOK:  Yes, as is their right, your Honor,

17   under the deposition protocol that we've agreed to.

18           So we've agreed, to avoid putting disputes in

19   front of your Honor, that they each get a certain number of

20   hours for these witnesses.  So even though OAN might have

21   requested a specific witness, there's a protocol that

22   everyone's agreed to, we worked out, where each of them can

23   take a certain number of hours and our person will sit for

24   that whole time so that we can get it done within one swoop

25   right there and then.

1          So while you're absolutely right that it means

2     just one Defendant who's the one making the specific

3     request, they do all have a right to participate.  And as

4     we've begun to schedule depositions already, this is what's

5     coming up.  Someone can make it that day; someone can't,

6     et cetera, et cetera.

7          And so again, your Honor, as evidenced in our

8     briefing, our main reason for this is simply speed.  There

9     are a lot of depositions.  There are going to be even more

10    as we get into third parties and all of that.  And there's

11    no reason why they can't just default happen remote so that

12    we're not frankly coordinating this many different schedules

13    eight times a week.

14         And again, if there are certain people that they

15    really want in person, we frankly invited them.  We said:

16    Hey, you've already noticed 13 depositions for April -- or

17    requested, I should say -- 13 depositions for April.  Which

18    of those 13 would you really like in person?  Let us know.

19         And we'll agree right here right now that those

20    subset can be in person.

21         And their response to that was:  We want all 13 in

22    person.

23         So we're just trying to go fast, not bother the

24    Court.  And we think that having the default be remote is

25    the way to do that, whereas if the default is in person,

1    we're going to be back before your Honor requesting

2    extensions, which we don't want to do, Dominion does not

3    want to do.

4            And perhaps, your Honor, the best evidence of this

5    is we had a meet-and-confer on Friday.  Dominion reached out

6    to Defendants and said, Hey, we're all gearing up for this

7    hearing.  Is there anything else we can knock out and let

8    the Court know we have figured it out like adults and don't

9    need to bother her with?

10           And we talked about this.

11           And one of the counsel for Defendants themselves

12   said:  Well, if the Court grants Defendants' request for

13   in-person depositions, then we'll need more time in the

14   schedule in order to schedule all those depositions.

15           And so it's exactly our point, which is just that

16   if they are in person, it's going to slow things down,

17   whereas if they are remote, it will keep things moving.  And

18   we've made every assurance, and I say it here again on the

19   record, that if there are specific ones they want in person,

20   we're happy to oblige.

21           THE COURT:  Okay.  Thank you.

22           Is there one person that can speak on behalf of

23   the Defendants, if that's possible --

24           MR. CASARINO:  I'll try to do that --

25           THE COURT:  -- on this issue.

```
 1              MR. CASARINO:  Marc Casarino for the Powell
 2     Defendants, your Honor.
 3              So --
 4              THE COURT:  I'm sorry, sir.  Which Defendants?
 5              MR. CASARINO:  For Sidney Powell and Sidney
 6     Powell, P.C.
 7              THE COURT:  Okay.
 8              MR. CASARINO:  Your Honor, in terms of the concern
 9     we just heard about, scheduling nightmares, that's an
10     incredible red herring, because the protocol already
11     addresses that.  It addresses that dates are exchanged.  If
12     there can't be agreement on the dates, then the date of
13     the -- counsel for the witness and the person requesting the
14     deposition pick the date and everyone else has to show up or
15     be foreclosed.
16              So everything we just heard is actually not a
17     concern.  I don't know where they got that from, because
18     that's not actually what we agreed on in the protocol.
19     We've already agreed on how to address that in the protocol,
20     your Honor.
21              And your Honor is absolutely correct that
22     in-person is the standard.  We want to depose these people
23     in person.  They chose to bring these cases, six separate
24     cases, against a bunch of Defendants in a very public way.
25     We want to depose these witnesses in person.  And that's the
```

1      default.  And it's our right.

2              And if they have good cause for specific witnesses

3      as to why they should be remote, we'll hear them and we'll

4      meet and confer.  And where -- on those few that we can't

5      agree, if there is going to be those few that we can't

6      agree, we'll come to the Court and get decisions.

7              THE COURT:  Oh, if you come to the Court, I

8      guarantee it will not go well for anybody.

9              MR. CASARINO:  I --

10             THE COURT:  If you're going to --

11             MR. CASARINO:  I --

12             THE COURT:  -- come to me about who gets taken

13     over Zoom versus who gets to be taken in person, it's not

14     going to be a good day for anybody.

15             MR. CASARINO:  I've taken clear note of that, your

16     Honor.

17             THE COURT:  I spent the first several years of my

18     career traveling to all manner of random places to take

19     depositions.  So I mean, you've just got to work this out.

20             MR. CASARINO:  And on the defense side, we're

21     perfectly happy to do that, your Honor.  We're trying to do

22     them in person.  If they want to attend by remote or other

23     people want to attend by remote, that's on them.  That's

24     fine.  But my client wants me to take these depositions in

25     person.

 1          THE COURT:  Well, I mean, if you have a one-hour

 2     deposition, do you really need that to be taken in person?

 3     You can't -- you can't confer and try to --

 4          MR. CASARINO:  Those --

 5          THE COURT:  -- see if you can get that done over

 6     Zoom?

 7          MR. CASARINO:  Those are the one-off situations

 8     where we'd meet and confer.  But the default -- they want

 9     the default to be flipped on its head, the default to be

10     remote, unless the Defendants come to the Court for good

11     cause to --

12          THE COURT:  No.  The default is in person.

13          MR. CASARINO:  Thank you, your Honor.

14          THE COURT:  So that said, however, you all have

15     the obligation under Federal Rule of Civil Procedure 1.

16          If anyone can tell what that rule says, you get

17     brownie points, is probably the -- does someone know?

18     Anyone?

19          UNIDENTIFIED SPEAKER:  [Indiscernible.]

20          THE COURT:  Thank you.  Okay.  Someone must have

21     read a previous transcript.

22          UNIDENTIFIED SPEAKER:  We did, your Honor.

23          THE COURT:  Okay.  Because usually not that many

24     people can say it.

25          UNIDENTIFIED SPEAKER:  All three.

1          THE COURT:  So you all have the obligation to do

2    that, as do I.  And I take the concern seriously.  I do.

3    But the rules do allow in-person questioning.  And being a

4    former trial lawyer myself, there is a benefit to

5    questioning someone in person.

6          However, if this is a minor witness, if there's a

7    real reason that this person should not be taken in person,

8    I expect the Defendants aren't doing this just for the sport

9    of it.  Okay?

10          If there is a particular trauma, you guys can talk

11    amongst yourselves that maybe doing it by Zoom is not really

12    going to yield any real benefit to Defendants and would

13    be -- would yield a benefit to that particular witness, you

14    know.  You all need -- you all have the obligation to and

15    need to talk about this in person.

16          And I expect that no one is going to be bringing a

17    dispute such as whether a witness needs to be taken in

18    person or over Zoom.  And if it's a party, I really don't

19    want to hear that dispute.  Okay?  If it's a party, a

20    Defendant, a Plaintiff, that person gets to have their

21    deposition taken however the noticing party requests it.

22    Okay?  Unless there's a compelling reason.

23          All right.  So that issue is resolved --

24          MR. CASARINO:  Thank you.

25          THE COURT:  -- but with the asterisk that I'm

1   expecting counsel to be working cooperatively on those

2   issues and not just doing this, you know, gratuitously.

3   Okay?

4          MR. CASARINO:  Understood, your Honor.

5          THE COURT:  And I'm not saying anyone is.  I'm

6   just saying that --

7          MR. CASARINO:  Understood.

8          THE COURT:  Okay.  All right.  So then can I get

9   the parties to send me a Word version of the deposition

10  protocol with that change made?  And if you all can send

11  that jointly to chambers, I will review it and enter that

12  deposition protocol order.

13         With respect to the discovery protocol, there are

14  a number of issues that I will take up.  It may be that I --

15  excuse me -- that I deal with these on the papers.  If I

16  need any argument, I will let you all know.

17         And then my understanding is that there are a

18  number of disputes that are OAN-specific disputes.  And so

19  if there are still some live discovery disputes, I will set

20  those down for a hearing.

21         And some of you all have appeared before me, so

22  you know how this works.  I don't allow full briefing if I

23  can resolve the dispute short of full briefing.  So I do

24  have a template that I have created that I wish the parties

25  to fill out jointly that's very -- should be hopefully not a

1      heavy lift, but essentially the request at issue, what the

2      objection to the request is, and then each party gets the

3      opportunity to say very briefly what their respective

4      argument is.

5             I come from the school of thought that if you

6      can't tell me in three pages why you need this discovery,

7      then you're going to have a hard time convincing me to give

8      you more space unless it's a particularly complicated issue.

9      And then I will, you know, consider giving you more space.

10            So I will send that -- I will have my chambers

11     send that template to you all so you all know how I like to

12     have these briefed up.  And that document gets submitted as

13     a joint submission so that there's not back-and-forth

14     briefing, which, you know, takes a lot of attorney time when

15     I could just get to the heart of the matter by looking at

16     that document and having a brief hearing.

17            So I will set a further hearing on that issue as

18     well.

19            Are there any issues that have been mooted that

20     weren't -- that were in the March 13th joint report?  And

21     I'll let anyone come up if they need to to address this.

22            MS. BROOK:  I think, your Honor -- so first of

23     all, we did read the previous orders and we were cognizant

24     that if any major issue was mooted we would alert the Court

25     so the Court did not waste its time.

1              I think one minor issue that was mooted was the

2    privilege log provision in the disputed discovery protocol.

3              MR. CASARINO:  That's correct.

4              MS. BROOK:  It turns out we were seeing eye to eye

5    and just talking past each other.  So maybe if I can propose

6    it, we will just send in Word doc or frankly in an email the

7    exact language that the parties have agreed to as to that

8    dueling provision.

9              THE COURT:  Do you know which number -- this is in

10   the discovery protocol?

11             MS. BROOK:  Yeah.  It's No. 9, I believe.

12             THE COURT:  Okay.  Very well.

13             MS. BROOK:  And then there was further conferences

14   before the discovery protocol.

15             Was there anything else?

16             MR. CASARINO:  Your Honor, I do believe also at

17   least for the Powell Defendants on the custodians we agreed

18   on who the custodian would be:  Ms. Powell.

19             THE COURT:  Okay.

20             MR. CASARINO:  A surprise.

21             THE COURT:  There's the one custodian --

22             MR. CASARINO:  A spoiler alert for your Honor.

23             THE COURT:  Okay.

24             MR. CASARINO:  Ms. Powell.

25             THE COURT:  All right.

1          MR. CASARINO:  So that one is off the list for

2    Ms. Powell, anyway.

3          MS. BROOK:  And I think unfortunately that was all

4    that the parties were able to further resolve by virtue of

5    the Zoom conference that we had on Friday.

6          THE COURT:  Okay.  Thank you.

7          And the request for a discovery deadline, it may

8    have -- that has not yet been referred to me.  It may very

9    well be that Judge Nichols does refer it to me.  But at this

10   time, I will confer with him and decide how that's going to

11   proceed forward.

12         And then I think the only -- I mean, unless I'm

13   mistaken, the only party with specific discovery disputes is

14   OAN.  Is that correct?  Mr. Neerman or Mr. Ross?

15         MR. ROSS:  We submitted a joint email.  Actually,

16   it was to Judge Nichols -- excuse me -- the day he then

17   referred everything to you.  And then we resubmitted it to

18   you.

19         THE COURT:  Probably --

20         MR. ROSS:  Four of those --

21         THE COURT:  That's probably why he referred it --

22         MR. ROSS:  It may have been the final match stick.

23   But four out of the five are OAN concerns about things that

24   we are objecting to.

25         The last one is our concern about something

 1    they're objecting to, which will be familiar to you, because

 2    it has to do with financial information.  That same issue is

 3    in front of you in the *Smartmatic* case.  They've -- just so

 4    you know, they've also agreed and the parties have agreed

 5    based on your order in the *Smartmatic* case that anything

 6    that is produced in the *Smartmatic* case by OAN is being

 7    produced to us in this case and vice versa.

 8              So your -- I think that motion is still pending in

 9    front of you in the *Smartmatic* case.  And your resolution of

10    that may resolve it for us as well.

11              THE COURT:  Okay.

12              MR. ROSS:  Because they're very similar.  That's

13    my only point.

14              THE COURT:  Okay.

15              MR. ROSS:  But at some point, when we do submit --

16              THE COURT:  That's the financial document issue?

17              MR. ROSS:  Correct.

18              THE COURT:  Okay.

19              MR. ROSS:  At some point, when we do submit it,

20    we'll submit our views on it as well.  But it may be moot by

21    the time -- if you've already ordered that information,

22    because then we're going to get it as well.

23              THE COURT:  Okay.  All right.  I see.  Well, that

24    is a somewhat orderly way to deal with it.

25              But let me let Mr. Neerman or --

```
 1              MR. ROSS:  Of course.

 2              THE COURT:  Thank you.

 3              If OAN wishes to respond.

 4              MR. NEERMAN:  Hi, Judge.

 5              THE COURT:  You finally get to say something.

 6              MR. NEERMAN:  I know.

 7              THE COURT:  Do you disagree with that?

 8              MR. NEERMAN:  Well, as much as I'd like to, I

 9      think Mr. Ross is correct.  I know that we've been meeting

10      and conferring on various issues, and I think there's a

11      further meet-and-confer set for this Thursday to discuss

12      OAN's issues.

13              And then with respect to the Smartmatic case that

14      Mr. Ross referenced, OAN and Smartmatic are continuing to

15      confer on that issue.  So it's still before your Honor, but

16      I don't think it's ripe yet because we're still conferring.

17              THE COURT:  Oh, okay.  Well, so then the issues

18      that are there in the joint status report at the very end,

19      the No. 5, OAN-specific disputes, those are issues you're

20      still going to confer on on Thursday?

21              MR. NEERMAN:  That is correct, your Honor.

22              THE COURT:  Then can you all let me know, then, by

23      Monday?  So I won't actually take these under advisement yet

24      or order further briefing yet until you all tell me which

25      were still live issues.
```

1          MR. NEERMAN:  I think that's right, your Honor.

2          THE COURT:  Okay.

3          MR. NEERMAN:  And I don't think -- I don't think

4    we anticipated you being able to get to those today anyway

5    because of the various issues you were dealing with.

6          THE COURT:  Yes.

7          MR. NEERMAN:  And so we're continuing to confer on

8    those issues.

9          MR. ROSS:  But we're happy to let you know the

10   results.  I think at best we may narrow them down a little

11   bit.  I think there may still be some information for you to

12   take --

13         THE COURT:  Well, some of you know how to deal

14   with discovery and how I interpret the rules.  So I hope

15   that you all are able to resolve them.

16         And so I will not order the submission of those --

17   of that template document until I hear from you.  So if you

18   could let me know by Monday at 5:00 p.m. and just file a

19   supplemental joint status report as to these OAN-specific

20   disputes and let the Court know which ones are still live

21   disputes.

22         MR. ROSS:  Yes, your Honor.

23         THE COURT:  Okay.  Thank you.

24         MR. NEERMAN:  Thank you, Judge.

25         THE COURT:  Okay.  Just a moment.

```
 1                     Mr. Babcock I knew --
 2                MR. BABCOCK:  [Indiscernible.]
 3                THE COURT:  Well, of course.  I told you I didn't
 4      think it was --
 5                MR. BABCOCK:  I know you told me.
 6                Just in fairness to Smartmatic, that's not here,
 7      we have been talking about the financial documents, but it's
 8      been in fits and starts with me on our side and different
 9      lawyers on their side.
10                I'm going to resolve myself next week to bite into
11      that and see if we can't get it done.  And I think we can.
12      But...
13                THE COURT:  Okay.
14                MR. BABCOCK:  But I think if they were here they
15      would say, Oh, no.  He hasn't called us back.
16                THE COURT:  Okay.
17                MR. BABCOCK:  Which is fair.
18                THE COURT:  Well, let's -- we won't wade too much
19      into that since they're not here.
20                MR. BABCOCK:  Okay.
21                THE COURT:  But I appreciate that.
22                MR. BABCOCK:  Thank you, your Honor.
23                THE COURT:  Thank you.
24                Okay.  Just a moment.
25                (Pause in the audio recording.)
```

1          THE COURT:  Okay.  Is there anything further,

2     then, from Dominion?

3          MS. BROOK:  Your Honor, if it's all right with the

4     Court, can I just tick through the things that the Court is

5     expecting from us so that we --

6          THE COURT:  Yes.

7          MS. BROOK:  -- are sure we're all on the same page

8     before we leave here today?

9          THE COURT:  Yes.

10          MS. BROOK:  So the first one I have is that the

11     parties are to draft a joint -- we're to draft a proposed

12     order regarding the issue of Ms. Lambert and Mr. Byrne.  We

13     are to get that to the Court as soon as practicable, but in

14     no event later than 9:00 a.m. tomorrow morning.

15          THE COURT:  Yes.

16          MS. BROOK:  The second one I have is that we are

17     to get the Court a Word version of the depo protocol with

18     the default set as the Court has ordered today.

19          The third one -- and we'll do that via email, I

20     presume.

21          THE COURT:  Yes.  You can email my chambers.

22          MS. BROOK:  Thank you.

23          The third one I have, which I'm going to expand a

24     little with the Court's permission, is we will clarify again

25     via an email to chambers the privilege log issue that the

1    parties have agreed on relating to the deposition -- the

2    discovery protocol.  And to the extent there are any other

3    little things like custodians or timeframes which we're able

4    to reach agreement on, we'll update the Court of that at

5    that time as well.

6              The fourth one --

7              THE COURT:  And that's by -- what date did you

8    have?

9              MS. BROOK:  I don't know that you gave us a

10   timeline.

11             THE COURT:  I don't think I set it.  Yes.

12             Wednesday?

13             MS. BROOK:  That's fine.

14             THE COURT:  5:00 p.m.  Does that work for you all?

15             MR. CASARINO:  That works fine, your Honor.  Thank

16   you.

17             THE COURT:  Okay.  Thank you.

18             MS. BROOK:  The next one I have is that the Court

19   requested an update on the ongoing meets and confers with

20   OAN so that the Court knows what issues are still in dispute

21   or not.  And we're meeting and conferring about that on

22   Thursday.  And so I believe we can provide the Court with an

23   update on Friday or Monday, whenever is --

24             THE COURT:  Yes.  No later than Monday at 5:00

25   p.m.

```
 1                 MS. BROOK:  Monday at 5:00 p.m.

 2                 THE COURT:  Yes.

 3                 MS. BROOK:  Thank you.  I like rules.

 4                 THE COURT:  So do I.

 5                 MS. BROOK:  They help.

 6                 THE COURT:  And now all of you know Rule 1, which

 7      just makes me very happy.

 8                 MS. BROOK:  And then Dominion can file a reply

 9      brief on the Lambert-Byrne issue by no later than this

10      Friday --

11                 THE COURT:  Right.

12                 MS. BROOK:  -- on those issues.

13                 So then the only other housekeeping agenda item

14      that Dominion has to raise with the Court, Docket No. 149 in

15      the OAN case -- that's the 2130 case -- that is a fully

16      agreed-upon amended protective order that we would

17      appreciate the Court entering.  And the only reason we're

18      bugging you at all is because it has increased protections

19      for third parties.

20                 THE COURT:  Yes.

21                 MS. BROOK:  And as we start doing third-party

22      productions, we want to make sure we're all on the same

23      page.

24                 THE COURT:  Right.  And I was aware of that, and I

25      will take that up in short order as well.
```

1              MS. BROOK:  Thank you, your Honor.

2              THE COURT:  Okay.  Thank you.

3              Anything from Defendants?  Anyone?

4              MR. CASARINO:  No, your Honor.  Thank you.

5              THE COURT:  Thank you all for your time.

6              I'd like just to clear the courtroom, please, as

7    soon as practicable except I have one unrelated matter with

8    Ms. Lambert, if you could hang back.  Thank you.

9              If there's any court personnel, they can stay.

10             Thank you all.  Have a good day.

11             MR. CASARINO:  Thank you, your Honor.

12             MR. ROSS:  Thank you, your Honor.

13             THE COURT:  Thank you.

14             (Proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25

1                              <u>**CERTIFICATE**</u>

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4       certify that the foregoing constitutes a true and accurate

5       transcript of my stenographic notes, and is a full, true,

6       and complete transcript of the proceedings produced to the

7       best of my ability.

8

9

10                   Dated this 20th day of March, 2024.

11

12              <u>/s/ Lisa Edwards, RDR, CRR</u>
                Official Court Reporter
13              United States District Court for the
                  District of Columbia
14              333 Constitution Avenue, Northwest
                Washington, D.C. 20001
15              (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 80:12

## 1

**1** [4] - 41:10, 57:10, 66:15, 78:6
**1000** [1] - 2:22
**10001** [1] - 2:20
**11th** [1] - 19:10
**123** [1] - 2:25
**12th** [4] - 19:10, 19:18, 22:5, 22:12
**13** [4] - 62:16, 62:17, 62:18, 62:21
**13th** [1] - 69:20
**1400** [1] - 2:16
**1401** [1] - 3:6
**1410** [1] - 3:19
**149** [1] - 78:14
**150,000** [1] - 11:3
**1550** [1] - 3:16
**15th** [1] - 3:13
**1600** [1] - 3:18
**18** [4] - 1:7, 1:15, 1:23, 2:7
**1900** [2] - 2:15, 3:6
**19103** [1] - 3:19
**19801** [1] - 3:16

## 2

**2** [2] - 22:11, 57:10
**2,173** [3] - 16:12, 16:13, 16:16
**20001** [2] - 4:4, 80:14
**20015** [1] - 3:22
**202** [2] - 4:4, 80:15
**2023** [1] - 22:12
**2024** [5] - 1:7, 1:15, 1:23, 2:7, 80:10
**20th** [1] - 80:10
**21-00445** [2] - 1:4, 2:4
**21-02130** [1] - 1:20
**21-02131** [1] - 1:12
**21-2130** [1] - 5:5
**21-2131** [1] - 5:4
**21-40** [1] - 5:7
**21-445** [1] - 5:2
**2130** [1] - 78:15
**2323** [1] - 3:9
**24** [1] - 10:22
**26th** [1] - 3:3
**2700** [1] - 16:9

## 3

**30** [1] - 60:20
**305** [1] - 2:19
**333** [2] - 4:3, 80:14
**33602** [1] - 3:13
**354-3269** [2] - 4:4, 80:15
**3:08** [4] - 1:7, 1:15, 1:23, 2:7

## 4

**40** [1] - 11:1
**400** [3] - 3:3, 3:12, 3:22
**48243** [1] - 3:4
**4:00** [1] - 51:23

## 5

**5** [1] - 73:19
**50** [4] - 32:20, 32:21, 47:14, 48:1
**50th** [1] - 2:19
**5100** [1] - 2:22
**5335** [1] - 3:21
**55401** [1] - 2:25
**5:00** [3] - 58:13, 74:18, 77:14, 77:24, 78:1

## 6

**6** [1] - 41:10
**600** [1] - 3:10
**6706** [1] - 4:3

## 7

**7** [1] - 38:20
**75201** [1] - 3:10
**77002** [1] - 2:23
**77010** [1] - 3:7

## 8

**86** [1] - 59:22

## 9

**9** [1] - 70:11
**90067** [1] - 2:16
**919** [1] - 3:15
**9:00** [3] - 51:23, 57:4, 76:14

## A

**a.m** [1] - 76:14
**ability** [2] - 35:25, 80:7
**able** [6] - 24:24, 60:11, 71:4, 74:4, 74:15, 77:3
**Abraham** [1] - 5:21
**ABRAHAM** [1] - 2:24
**absolutely** [6] - 12:6, 26:25, 27:23, 53:16, 62:1, 64:21
**access** [28] - 8:21, 14:17, 14:20, 14:25, 15:18, 30:1, 32:22, 34:3, 35:2, 35:16, 35:18, 36:16, 40:12, 40:14, 42:15, 43:22, 47:17, 47:24, 48:24, 50:12, 51:3, 51:20, 52:22, 53:18, 54:2, 54:14, 54:16, 54:23
**account** [2] - 10:25, 15:1
**accounting** [4] - 9:7, 14:18, 39:10, 40:12
**accurate** [3] - 14:15, 14:23, 80:4
**act** [1] - 28:25
**acting** [1] - 51:13
**action** [2] - 10:13, 39:4
**Action** [4] - 1:3, 1:11, 1:19, 2:3
**actions** [2] - 9:14, 16:24
**active** [1] - 29:3
**activity** [1] - 17:24
**acts** [3] - 9:19, 9:23, 10:15
**addition** [2] - 17:12, 39:2
**additional** [4] - 13:21, 13:25, 14:4, 37:20
**address** [8] - 8:1, 8:9, 8:24, 53:23, 57:25, 58:4, 64:19, 69:21
**addressed** [1] - 14:22
**addresses** [2] - 64:11
**addressing** [3] - 6:25, 7:13, 12:9
**admission** [1] - 6:1
**admit** [1] - 44:19
**admitted** [1] - 10:23
**adults** [1] - 63:8
**advisement** [3] - 8:6, 30:24, 73:23
**AEO** [1] - 12:4
**affidavit** [13] - 43:25, 44:2, 44:3, 44:4, 44:9, 45:16, 45:25, 46:1, 46:3, 46:12, 46:13, 46:15, 46:17
**afternoon** [13] - 5:1, 5:12, 5:16, 5:17, 5:20, 5:21, 6:2, 6:3, 6:5, 6:8, 6:13, 6:15, 6:17
**agenda** [3] - 7:21, 57:7, 78:13
**ago** [2] - 28:14, 28:15
**agree** [4] - 10:8, 62:19, 65:5, 65:6
**agreed** [11] - 61:17, 61:18, 61:22, 64:18, 64:19, 70:7, 70:17, 72:4, 77:1, 78:16
**agreed-upon** [1] - 78:16
**agreement** [5] - 13:14, 13:15, 55:12, 64:12, 77:4
**agrees** [1] - 10:8
**ahead** [2] - 14:7, 48:16
**al** [14] - 1:3, 1:6, 1:11, 1:19, 1:22, 2:3, 2:6, 5:2, 5:3, 5:5, 5:6, 5:7, 5:8
**alert** [2] - 69:24, 70:22
**allegation** [2] - 12:22, 53:14
**alleged** [5] - 7:23, 10:18, 10:21, 12:24, 16:4
**alleges** [1] - 11:18
**allow** [3] - 30:13, 41:2, 49:14, 67:3, 68:22
**allowed** [2] - 40:20, 45:12
**allowing** [1] - 52:16
**amended** [1] - 78:16
**analogy** [1] - 26:14
**analysis** [2] - 18:16, 19:25
**analyzes** [1] - 18:25
**AND** [1] - 2:24
**and..** [1] - 35:11
**Angeles** [1] - 2:16
**answer** [4] - 11:12,
**16:2, 42:11, 43:21**
**answers** [1] - 40:17
**anticipated** [1] - 74:4
**anyway** [2] - 71:2, 74:4
**appear** [1] - 47:5
**appearance** [3] - 19:9, 19:18, 22:18
**aPPEARANCES** [1] - 2:13
**APPEARANCES** [1] - 3:1
**appeared** [1] - 68:21
**appearing** [1] - 6:4
**apply** [1] - 42:23
**appreciate** [8] - 6:23, 40:22, 45:3, 57:10, 58:9, 58:11, 75:21, 78:17
**apprised** [1] - 24:7
**approach** [1] - 7:25
**appropriate** [4] - 19:14, 26:1, 30:6, 44:12
**appropriately** [1] - 11:24
**approve** [1] - 7:4
**April** [2] - 62:16, 62:17
**argument** [19] - 7:18, 8:3, 8:9, 17:13, 17:17, 18:25, 19:13, 31:2, 31:14, 37:25, 45:13, 49:21, 49:22, 55:22, 56:18, 57:18, 58:19, 68:16, 69:4
**arguments** [10] - 28:13, 28:15, 30:13, 45:1, 47:10, 47:11, 49:10, 49:14, 49:15
**armed** [1] - 8:21
**arrangement** [1] - 55:12
**articulated** [1] - 11:7
**aspect** [1] - 19:3
**asset** [2] - 17:22, 44:15
**assistant** [3] - 35:10, 40:13, 50:2
**assistant's** [2] - 35:12, 35:19
**associate** [1] - 40:13
**associated** [1] - 9:18
**associates** [1] - 8:18
**assume** [3] - 39:6, 54:21, 56:11
**assumed** [1] - 55:3
**assurance** [1] - 63:18
**asterisk** [1] - 67:25

**attached** [6] - 39:8, 40:11, 45:15, 45:25, 46:11, 46:12
**attachments** [1] - 44:3
**attempt** [2] - 8:21, 25:4
**attempted** [1] - 25:7
**attend** [2] - 65:22, 65:23
**attention** [2] - 7:16, 49:22
**attestation** [1] - 15:5
**attorney** [14] - 8:25, 10:3, 19:15, 20:2, 20:16, 20:23, 21:8, 34:9, 35:13, 35:17, 36:4, 42:9, 43:5, 69:14
**Attorney's** [3] - 23:6, 23:25, 37:9
**attorney-client** [5] - 19:15, 20:2, 20:16, 20:23, 43:5
**attorney-client-privileged** [2] - 21:8, 34:9
**attorneys** [7] - 17:2, 29:22, 38:19, 60:2, 60:3, 60:20, 61:11
**audio** [1] - 75:25
**AUDIO** [1] - 2:10
**authority** [12] - 16:23, 16:25, 18:17, 26:10, 26:11, 29:7, 30:3, 30:5, 30:8, 30:10, 45:8, 56:5
**available** [3] - 16:14, 20:1, 52:25
**Avenue** [6] - 2:15, 2:19, 3:9, 3:21, 4:3, 80:14
**avoid** [1] - 61:18
**await** [1] - 54:2
**awaiting** [1] - 53:1
**aware** [5] - 17:16, 25:19, 37:15, 37:16, 78:24

**B**

**Babcock** [4] - 6:16, 6:18, 57:19, 75:1
**BABCOCK** [10] - 3:5, 6:17, 6:22, 7:4, 75:2, 75:5, 75:14, 75:17, 75:20, 75:22
**back-and-forth** [1] - 69:13

**background** [1] - 44:20
**backing** [1] - 29:23
**bad** [2] - 6:22, 10:15
**bag** [1] - 12:12
**ballpark** [1] - 32:18
**based** [2] - 48:6, 72:5
**basis** [3] - 10:16, 50:17, 50:18
**become** [1] - 48:21
**becomes** [1] - 12:8
**BEFORE** [1] - 2:11
**begun** [1] - 62:4
**behalf** [9] - 5:13, 5:18, 5:22, 6:4, 6:7, 6:14, 8:11, 46:11, 63:22
**believes** [2] - 16:23, 29:2
**benefit** [3] - 67:4, 67:12, 67:13
**best** [7] - 14:6, 18:17, 44:12, 60:7, 63:4, 74:10, 80:7
**better** [1] - 57:18
**between** [4] - 13:14, 37:14, 41:12, 55:12
**big** [1] - 60:21
**bill** [1] - 40:8
**bit** [1] - 74:11
**bite** [1] - 75:10
**Blaesche** [1] - 6:24
**BLAESCHE** [1] - 3:8
**blast** [1] - 11:25
**bleeding** [1] - 13:1
**blown** [1] - 57:18
**BOBB** [1] - 3:12
**Bobb** [1] - 6:14
**body** [5] - 18:13, 26:2, 26:3, 26:14, 26:16
**bother** [2] - 62:23, 63:9
**bothering** [1] - 59:19
**breach** [2] - 12:10, 12:18, 15:4, 16:5, 43:9, 44:16
**breaches** [1] - 44:17
**brief** [4] - 9:12, 22:12, 69:16, 78:9
**briefed** [1] - 69:12
**briefing** [9] - 15:12, 57:25, 58:8, 58:19, 62:8, 68:22, 68:23, 69:14, 73:24
**briefly** [8] - 8:1, 38:5, 40:20, 41:9, 57:13, 57:17, 59:2, 69:3
**bring** [5] - 7:16,

17:20, 26:3, 28:21, 64:23
**bringing** [1] - 67:16
**Brook** [1] - 5:13
**BROOK** [57] - 2:14, 5:12, 8:10, 10:8, 10:20, 11:20, 13:6, 13:23, 14:13, 15:22, 16:2, 16:22, 20:10, 22:5, 22:11, 38:5, 38:7, 38:15, 38:18, 40:2, 40:5, 40:10, 40:22, 41:24, 42:2, 42:11, 48:2, 48:14, 49:2, 51:25, 55:25, 56:3, 56:21, 57:22, 59:1, 59:14, 61:16, 69:22, 70:4, 70:11, 70:13, 71:3, 76:3, 76:7, 76:10, 76:16, 76:22, 77:9, 77:13, 77:18, 78:1, 78:3, 78:5, 78:8, 78:12, 78:21, 79:1
**brook** [9] - 7:25, 8:11, 20:8, 21:14, 21:15, 37:19, 38:3, 42:3, 57:21
**brought** [3] - 8:14, 12:2, 60:24
**brownie** [1] - 66:17
**bugging** [1] - 78:18
**building** [1] - 60:5
**bunch** [1] - 64:24
**business** [1] - 8:19
**but..** [1] - 75:12
**BY** [1] - 4:1
**BYRNE** [2] - 1:14, 3:2
**Byrne** [39] - 5:5, 6:4, 8:25, 9:5, 12:3, 13:14, 13:16, 14:17, 15:6, 15:7, 15:14, 15:15, 15:17, 17:1, 17:8, 17:20, 17:22, 17:23, 20:5, 22:14, 22:15, 23:5, 23:24, 24:5, 24:17, 36:24, 40:6, 40:7, 42:14, 42:24, 43:8, 47:5, 53:15, 54:9, 55:16, 56:4, 58:6, 76:12, 78:9
**Byrne's** [10] - 14:18, 15:2, 16:5, 19:16, 20:15, 21:3, 38:13, 38:19, 43:7, 56:6

**C**

**cabined** [1] - 58:17

California [1] - 2:16
**cannot** [2] - 48:11, 54:11
**captured** [1] - 38:12
**care** [1] - 9:14
**career** [1] - 65:18
**Casarino** [2] - 5:18, 64:1
**CASARINO** [25] - 3:14, 5:17, 63:24, 64:1, 64:5, 64:8, 65:9, 65:11, 65:15, 65:20, 66:4, 66:7, 66:13, 67:24, 68:4, 68:7, 70:3, 70:16, 70:20, 70:22, 70:24, 71:1, 77:15, 79:4, 79:11
**case** [41] - 9:22, 10:11, 10:12, 12:2, 12:4, 15:23, 18:24, 19:9, 20:20, 22:18, 22:25, 38:22, 38:25, 39:1, 41:2, 41:23, 43:25, 44:2, 45:11, 45:16, 45:18, 45:23, 47:6, 48:13, 49:12, 49:13, 50:16, 52:11, 59:5, 59:18, 60:12, 60:24, 72:3, 72:5, 72:6, 72:7, 72:9, 73:13, 78:15
**Case** [4] - 5:2, 5:4, 5:5, 5:7
**cases** [5] - 41:7, 60:2, 60:4, 64:23, 64:24
**cat's** [1] - 12:11
**Center** [1] - 3:3
**certain** [5] - 27:6, 60:14, 61:19, 61:23, 62:14
**certainly** [2] - 41:25, 57:4
**CERTIFICATE** [1] - 80:1
**certified** [1] - 20:20
**certify** [1] - 80:4
**cetera** [2] - 62:6
**chain** [2] - 44:12
**challenge** [7] - 12:5, 25:22, 28:11, 28:21, 31:7, 50:24
**challenged** [1] - 31:10
**challenging** [2] - 11:24, 26:21
**chambers** [4] - 68:11, 69:10, 76:21, 76:25
**chance** [1] - 45:2

Chanel [1] - 6:19
**change** [1] - 68:10
**Charles** [1] - 6:19
**CHARLES** [1] - 3:5
**checked** [1] - 11:2
**checks** [1] - 44:20
**chief** [1] - 52:20
**chip** [1] - 6:17
**choose** [1] - 53:12
**chose** [1] - 64:23
**Chris** [1] - 5:24
**CHRISTINA** [1] - 2:18, 3:12
**Christina** [2] - 5:15, 6:14
**Circuit** [1] - 38:24
**circuit** [2] - 9:25, 30:17
**cite** [2] - 26:10, 30:4
**cited** [2] - 26:10, 29:9
**cites** [1] - 11:23
**civil** [4] - 18:22, 25:25, 28:25, 30:6
**Civil** [9] - 1:3, 1:11, 1:19, 2:3, 5:2, 5:4, 5:5, 5:7, 66:15
**claiming** [2] - 20:18, 20:23
**clarify** [2] - 41:19, 76:24
**clarity** [1] - 51:21
**clear** [9] - 9:11, 16:13, 30:17, 41:1, 42:13, 42:21, 49:25, 65:15, 79:6
**clearly** [2] - 22:24, 26:6
**click** [1] - 16:16
**client** [21] - 13:17, 17:1, 17:20, 19:15, 20:2, 20:16, 20:23, 21:8, 24:6, 31:12, 34:9, 37:15, 42:14, 42:23, 43:5, 51:7, 52:12, 55:13, 55:17, 55:18, 65:24
**client's** [2] - 30:1, 49:19
**closed** [2] - 39:1, 39:19
**closet** [1] - 18:14
**CMK** [3] - 3:15, 3:18, 5:18
**cognizant** [1] - 69:23
**colleague** [1] - 51:25
**colleagues** [1] - 5:14
**collectively** [1] - 59:22
**Columbia** [2] - 4:2,

80:13
**COLUMBIA** [2] - 1:1, 2:1
**comfortable** [1] - 7:9
**coming** [1] - 62:5
**comments** [3] - 11:4, 11:5
**commercial** [1] - 29:13
**committed** [1] - 18:11
**communicating** [2] - 27:7, 50:6
**communication** [1] - 21:2
**communications** [9] - 21:6, 21:8, 34:12, 48:5, 48:18, 50:2, 50:9, 50:14
**company** [1] - 8:17
**compelling** [1] - 67:22
**complaining** [1] - 44:16
**complete** [3] - 14:15, 14:23, 80:6
**complicated** [1] - 69:8
**comply** [3] - 20:22, 46:2, 55:17
**components** [1] - 58:7
**computer** [2] - 50:4, 50:7
**conceal** [1] - 18:14
**conceded** [1] - 55:21
**concern** [5] - 37:22, 64:8, 64:17, 67:2, 71:25
**concerned** [3] - 38:1, 61:2, 61:6
**concerns** [1] - 71:23
**concluded** [1] - 79:14
**confer** [10] - 45:17, 63:5, 65:4, 66:3, 66:8, 71:10, 73:11, 73:15, 73:20, 74:7
**CONFERENCE** [1] - 2:10
**conference** [3] - 5:9, 60:19, 71:5
**conferences** [1] - 70:13
**conferring** [4] - 61:11, 73:10, 73:16, 77:21
**confers** [1] - 77:19
**confidential** [26] - 11:25, 12:4, 12:25,

14:11, 16:10, 18:2, 20:22, 22:24, 24:10, 24:24, 25:21, 28:12, 28:19, 29:12, 31:6, 34:7, 36:19, 36:20, 36:21, 37:13, 40:23, 40:25, 41:4, 41:23, 47:8, 56:15
**confidentiality** [2] - 12:8, 31:7
**confirm** [1] - 21:17
**Congress** [3] - 25:15, 27:20
**consider** [8] - 9:25, 10:2, 12:7, 30:14, 30:15, 49:15, 49:21, 69:9
**consideration** [2] - 11:9, 13:5
**considers** [2] - 37:23, 55:5
**constitute** [1] - 29:12
**constitutes** [1] - 80:4
**Constitution** [2] - 4:3, 80:14
**CONT'D** [1] - 3:1
**contained** [1] - 27:22
**contents** [2] - 34:14
**continue** [1] - 30:2, 39:13, 52:15
**continuing** [5] - 9:23, 10:15, 15:4, 73:14, 74:7
**contract** [3] - 19:1, 19:2, 51:17
**contracts** [1] - 19:1
**contrary** [2] - 9:6, 9:15
**control** [5] - 38:13, 43:14, 43:18, 49:19, 49:20
**controlling** [1] - 51:24
**controls** [3] - 40:4, 51:6, 51:7
**conversation** [3] - 53:24, 54:12, 54:15
**conversations** [1] - 52:14
**convincing** [1] - 69:7
**COO** [2] - 53:24, 54:15
**cooperatively** [1] - 68:1
**coordinating** [2] - 60:5, 62:12
**copies** [1] - 39:6
**copy** [2] - 22:9, 50:18
**correct** [23] - 16:9,

18:5, 22:5, 22:10, 22:11, 22:14, 22:20, 27:14, 32:1, 32:4, 34:4, 34:25, 35:15, 45:23, 46:21, 46:24, 53:15, 64:21, 70:3, 71:14, 72:17, 73:9, 73:21
**correctly** [3] - 22:21, 39:16, 39:18
**corroborating** [1] - 29:5
**counsel** [34] - 5:11, 5:16, 5:24, 6:2, 7:7, 7:9, 7:13, 15:2, 16:5, 20:14, 20:15, 20:17, 21:3, 21:4, 22:14, 22:19, 29:18, 29:25, 37:14, 43:7, 43:17, 43:24, 46:20, 48:13, 50:16, 51:15, 52:14, 56:6, 56:13, 56:14, 61:12, 63:11, 64:13, 68:1
**counted** [1] - 27:4
**country** [2] - 8:18, 27:24
**county** [1] - 38:25
**course** [7] - 11:25, 13:7, 48:24, 49:13, 56:11, 73:1, 75:3
**COURT** [236] - 1:1, 2:1, 5:16, 5:20, 6:2, 6:5, 6:8, 6:10, 6:15, 6:21, 7:2, 7:6, 9:24, 10:16, 11:17, 12:13, 13:20, 14:7, 15:20, 15:24, 16:20, 17:4, 17:7, 17:10, 18:1, 18:5, 18:17, 19:5, 19:8, 19:17, 19:21, 20:6, 20:12, 20:18, 21:5, 21:22, 21:24, 22:2, 22:7, 22:9, 22:13, 22:17, 22:21, 23:3, 23:7, 23:9, 23:13, 23:15, 23:19, 23:21, 24:1, 24:3, 24:6, 24:10, 24:13, 24:21, 25:1, 25:4, 25:7, 25:19, 26:5, 26:20, 27:9, 27:12, 27:17, 27:25, 28:4, 28:6, 29:6, 30:10, 31:19, 31:24, 32:2, 32:5, 32:9, 32:11, 32:18, 32:21, 32:25, 33:3, 33:6, 33:8, 33:10, 33:12, 33:15, 33:17, 33:20, 33:25,

34:2, 34:5, 34:10, 34:13, 34:17, 34:19, 34:22, 35:1, 35:4, 35:8, 35:12, 35:14, 35:16, 35:19, 35:21, 35:23, 35:25, 36:4, 36:7, 36:9, 36:11, 36:13, 36:15, 36:18, 36:24, 37:2, 37:6, 37:9, 37:12, 37:18, 38:6, 38:10, 38:17, 40:1, 40:4, 40:9, 40:21, 41:21, 42:1, 42:3, 43:13, 43:18, 43:21, 44:6, 44:22, 44:24, 45:1, 45:5, 45:10, 45:20, 45:22, 46:6, 46:16, 46:19, 46:22, 46:25, 47:5, 47:21, 48:3, 49:1, 49:9, 49:25, 51:6, 51:11, 51:13, 51:21, 52:3, 53:3, 53:6, 53:14, 53:17, 54:5, 54:18, 54:20, 55:3, 56:2, 56:8, 56:25, 58:3, 59:12, 60:23, 63:21, 63:25, 64:4, 64:7, 65:7, 65:10, 65:12, 65:17, 66:1, 66:5, 66:12, 66:14, 66:20, 66:23, 67:1, 67:25, 68:5, 68:8, 70:9, 70:12, 70:19, 70:21, 70:23, 70:25, 71:6, 71:19, 71:21, 72:11, 72:14, 72:16, 72:18, 72:23, 73:2, 73:5, 73:7, 73:17, 73:22, 74:2, 74:6, 74:13, 74:23, 74:25, 75:3, 75:13, 75:16, 75:18, 75:21, 75:23, 76:1, 76:6, 76:9, 76:15, 76:21, 77:7, 77:11, 77:14, 77:17, 77:24, 78:2, 78:4, 78:6, 78:11, 78:20, 78:24, 79:2, 79:5, 79:13
**court** [3] - 30:6, 48:19, 79:9
**Court** [105] - 4:1, 4:2, 5:13, 6:1, 6:25, 7:13, 8:7, 9:25, 10:2, 10:7, 11:7, 11:9, 11:14, 12:6, 12:7, 12:14, 13:8, 13:10, 14:2, 14:22, 15:12, 15:18, 16:20, 16:22, 16:23, 16:25, 17:24, 18:24,

19:16, 20:1, 20:21, 21:19, 22:10, 24:15, 25:22, 26:3, 26:7, 26:11, 26:13, 26:21, 28:11, 28:21, 28:22, 28:24, 29:2, 29:8, 29:9, 30:4, 30:17, 30:24, 31:8, 31:9, 37:23, 38:1, 38:24, 39:23, 40:2, 41:9, 42:7, 42:9, 42:19, 42:20, 46:3, 47:22, 49:4, 49:7, 49:12, 50:25, 52:1, 52:17, 52:18, 52:23, 53:23, 54:3, 55:4, 55:5, 56:7, 57:2, 57:24, 58:1, 59:17, 59:19, 62:24, 63:8, 63:12, 65:6, 65:7, 66:10, 69:24, 69:25, 74:20, 76:4, 76:13, 76:17, 76:18, 77:4, 77:18, 77:20, 77:22, 78:14, 78:17, 80:12, 80:13
**Court's** [12] - 9:15, 13:4, 26:22, 40:15, 40:17, 40:22, 41:19, 48:25, 49:8, 53:1, 56:4, 76:24
**courthouse** [1] - 11:3
**courtroom** [4] - 17:8, 41:8, 79:6
**COURTROOM** [1] - 5:1
**cover** [2] - 28:17, 58:6
**covered** [3] - 26:6, 26:9, 56:9
**created** [2] - 10:24, 68:24
**credentials** [3] - 39:17, 39:21, 39:22
**credit** [1] - 9:9
**crime** [5] - 18:10, 18:21, 25:12, 29:2, 48:17
**criminal** [6] - 17:24, 19:1, 19:3, 26:2, 30:7, 38:22
**CRR** [3] - 4:1, 80:3, 80:12
**current** [1] - 15:14
**custodian** [2] - 70:18, 70:21
**custodians** [2] - 70:17, 77:3
**custody** [5] - 38:13, 44:12, 49:19, 49:20

**cut** [1] - 42:18
**Cynkar** [1] - 5:25

# D

**D.C** [8] - 1:6, 1:14, 1:22, 2:6, 3:22, 4:4, 53:9, 80:14
**Dallas** [1] - 3:10
**Daniel** [2] - 45:19, 45:21
**Daniels** [1] - 5:22
**DANIELS** [1] - 2:24
**Dar** [6] - 10:23, 23:8, 23:10, 25:2, 32:16, 39:17
**data** [1] - 14:21
**database** [10] - 51:24, 53:7, 53:12, 53:17, 53:18, 53:20, 53:25, 54:7, 54:11, 54:22
**date** [18] - 13:13, 13:16, 14:20, 14:25, 19:12, 19:21, 20:8, 21:11, 21:12, 21:22, 22:4, 22:13, 23:12, 59:21, 64:12, 64:14, 77:7
**Dated** [1] - 80:10
**dates** [2] - 64:11, 64:12
**DAVID** [1] - 3:20
**David** [1] - 6:6
**DAVIDA** [1] - 2:14
**Davida** [2] - 5:13, 8:11
**day's** [1] - 10:7
**de** [3] - 25:23, 26:13, 50:24
**de-designated** [2] - 26:13, 50:24
**de-designation** [1] - 25:23
**dead** [5] - 18:12, 26:2, 26:3, 26:14, 26:16
**deadline** [1] - 71:7
**deal** [5] - 55:22, 58:21, 68:15, 72:24, 74:13
**dealing** [4] - 49:17, 58:4, 61:2, 74:5
**Deborah** [1] - 5:25
**December** [4] - 22:5, 22:12, 27:10, 27:13
**decide** [5] - 19:14, 28:22, 52:18, 58:24, 71:10

**decides** [1] - 15:19
**deciding** [1] - 26:8
**decision** [1] - 42:20
**decisions** [1] - 65:6
**defamation** [2] - 49:7, 49:12
**default** [10] - 59:10, 62:11, 62:24, 62:25, 65:1, 66:8, 66:9, 66:12, 76:18
**defend** [1] - 30:2
**DEFENDANT** [3] - 3:2, 3:11, 3:20
**Defendant** [5] - 1:15, 6:14, 39:5, 62:2, 67:20
**DEFENDANTS** [3] - 2:24, 3:5, 3:15
**Defendants** [21] - 1:7, 1:23, 2:7, 5:18, 6:20, 12:3, 53:10, 59:6, 59:22, 59:24, 63:6, 63:11, 63:23, 64:2, 64:4, 64:24, 66:10, 67:8, 67:12, 70:17, 79:3
**Defendants'** [1] - 63:12
**DEFENDING** [1] - 3:21
**Defending** [1] - 6:7
**defense** [1] - 65:20
**Delaware** [1] - 3:16
**delineated** [2] - 42:25, 43:11
**Denver** [1] - 8:21
**deny** [1] - 18:1
**departments** [1] - 23:5
**depo** [1] - 76:17
**depose** [2] - 64:22, 64:25
**deposition** [13] - 57:9, 57:12, 60:10, 61:3, 61:7, 61:10, 61:17, 64:14, 66:2, 67:21, 68:9, 68:12, 77:1
**depositions** [18] - 57:14, 57:21, 59:4, 59:13, 59:15, 59:23, 60:5, 60:11, 60:12, 60:25, 62:4, 62:9, 62:16, 62:17, 63:13, 63:14, 65:19, 65:24
**DEPUTY** [1] - 5:1
**designated** [3] - 26:7, 26:13, 50:24
**designation** [5] - 12:8, 25:23, 28:12,

31:8, 31:10
**designed** [1] - 8:23
**desktop** [1] - 33:13
**despite** [1] - 16:3
**destroy** [1] - 48:5
**destroyed** [1] - 48:15
**destroying** [1] - 42:4
**destruction** [1] - 66:15
**detail** [1] - 51:23
**details** [1] - 55:11
**determination** [2] - 20:3, 40:16
**determine** [1] - 15:3, 18:10
**Detroit** [1] - 3:4
**device** [3] - 33:22, 34:16, 34:17
**devices** [1] - 31:16
**Dieckmann** [1] - 5:15
**DIECKMANN** [1] - 2:18
**different** [18] - 18:16, 27:8, 31:9, 51:16, 57:16, 59:23, 60:3, 60:6, 62:12, 75:8
**direct** [3] - 48:4, 50:3, 55:17
**directed** [3] - 27:4, 40:18, 49:5
**direction** [2] - 51:14, 52:12
**directly** [3] - 11:12, 42:12, 46:7
**disagree** [3] - 11:20, 25:20, 73:7
**disclose** [5] - 26:11, 26:18, 26:22, 28:8, 37:24
**disclosed** [4] - 15:7, 15:11, 24:17, 38:21
**disclosure** [1] - 31:6
**discovery** [21] - 12:19, 17:25, 21:21, 30:1, 32:14, 37:5, 41:3, 41:12, 41:15, 41:17, 52:10, 68:13, 68:19, 69:6, 70:2, 70:10, 70:14, 71:7, 71:13, 74:14, 77:2
**discuss** [2] - 48:12, 73:11
**discussed** [1] - 58:4
**dispute** [14] - 21:11, 47:1, 47:3, 50:20, 50:22, 55:20, 56:6, 56:16, 57:14, 57:20, 67:17, 67:19, 68:23, 77:20
**disputed** [1] - 70:2

**disputes** [9] - 57:11, 61:18, 68:18, 68:19, 71:13, 73:19, 74:20, 74:21
**disqualification** [8] - 9:24, 10:1, 10:10, 11:8, 12:16, 12:21, 13:3, 38:1
**disqualified** [3] - 9:22, 10:4, 13:12
**disqualify** [3] - 10:3, 10:17, 30:15
**disseminate** [2] - 48:12, 48:25
**disseminated** [4] - 12:25, 18:2, 49:20, 55:21
**disseminating** [3] - 26:14, 47:18, 52:16
**dissemination** [11] - 13:2, 13:22, 13:25, 14:9, 16:21, 31:12, 47:8, 52:16, 55:5, 55:15, 58:17
**District** [3] - 4:2, 4:2, 80:13
**district** [2] - 24:3, 80:13
**DISTRICT** [4] - 1:1, 1:1, 2:1, 2:1
**doc** [1] - 70:6
**Docket** [1] - 78:14
**document** [19] - 11:24, 12:1, 12:6, 15:13, 15:14, 20:24, 39:22, 40:4, 40:6, 40:12, 43:6, 43:14, 43:18, 50:9, 51:2, 69:12, 69:16, 72:16, 74:17
**documentation** [2] - 20:17, 44:19
**documents** [103] - 9:2, 10:24, 11:2, 12:11, 13:18, 14:16, 14:19, 14:24, 15:7, 15:15, 15:18, 15:21, 15:23, 15:25, 17:15, 18:2, 18:6, 18:8, 18:12, 20:21, 22:23, 22:24, 26:6, 26:8, 26:13, 26:21, 26:22, 27:2, 27:9, 27:16, 28:6, 28:12, 28:16, 28:19, 29:8, 29:11, 29:15, 30:22, 30:23, 31:4, 31:16, 31:19, 31:21, 32:5, 32:8, 32:11, 32:12, 32:17, 32:22, 33:12, 33:20,

33:24, 34:6, 34:23, 35:1, 36:25, 38:12, 39:3, 39:4, 39:8, 40:11, 40:23, 40:24, 41:3, 41:22, 42:4, 42:17, 43:23, 43:25, 44:1, 44:6, 44:13, 45:15, 45:22, 46:12, 46:22, 47:2, 47:12, 47:14, 47:15, 48:1, 48:7, 48:20, 50:1, 50:13, 50:14, 50:15, 50:21, 51:14, 51:16, 51:18, 54:17, 54:24, 56:5, 56:10, 56:12, 56:16, 56:19, 58:5, 58:17, 75:7
**domain** [1] - 46:23
**DOMINION** [4] - 1:3, 1:11, 1:19, 2:3
**Dominion** [64] - 5:2, 5:4, 5:6, 5:7, 5:14, 8:6, 8:11, 8:14, 8:20, 9:2, 9:17, 9:18, 10:2, 10:8, 10:12, 10:24, 12:2, 12:4, 12:9, 12:14, 13:4, 13:7, 13:9, 14:3, 14:4, 14:16, 14:24, 15:22, 17:21, 18:12, 19:4, 27:5, 29:22, 40:5, 42:6, 42:8, 42:22, 44:15, 44:17, 44:18, 47:25, 48:15, 49:5, 49:6, 49:11, 55:25, 56:24, 58:12, 58:13, 59:5, 59:18, 59:22, 59:25, 60:12, 60:18, 61:9, 61:13, 63:2, 63:5, 76:2, 78:8, 78:14
**Dominion's** [19] - 7:22, 8:19, 8:21, 9:7, 9:8, 10:16, 11:1, 12:10, 14:2, 16:9, 21:4, 22:12, 41:10, 42:10, 47:11, 48:8, 51:7, 55:11, 59:14
**Dominion-Fox** [1] - 60:12
**Dominion-produced** [2] - 14:16, 14:24
**done** [10] - 9:10, 11:19, 18:19, 44:17, 50:25, 58:18, 59:16, 61:24, 66:5, 75:11
**down** [6] - 19:8, 50:8, 60:15, 63:16, 68:20, 74:10

download [3] -
16:15, 16:16, 53:11
downloaded [4] -
14:20, 33:13, 33:21,
33:24
draft [6] - 56:8, 57:1,
58:2, 58:3, 76:11
Driscoll [5] - 17:7,
56:9, 56:11, 56:19,
56:23
Drive [1] - 16:15
dual [1] - 28:24
due [1] - 28:23
dueling [1] - 70:8
during [2] - 42:19,
48:25
dyslexia [1] - 16:12

**E**

EAC [1] - 27:7
easily [1] - 50:25
easy [1] - 60:8
Edwards [1] - 80:12
EDWARDS [2] - 4:1,
80:3
effort [2] - 50:20,
58:10
eight [1] - 62:13
either [5] - 36:19,
37:14, 39:22, 49:10,
58:22
election [1] - 27:3
elections [6] - 9:17,
27:23, 27:25, 28:3,
44:19
electronic [2] -
33:21, 39:7
email [6] - 38:19,
70:6, 71:15, 76:19,
76:21, 76:25
emergency [5] -
7:23, 26:20, 29:10,
58:11, 58:22
employees [3] -
8:20, 9:18, 27:5
end [2] - 8:24, 73:18
enforcement [15] -
18:7, 18:9, 18:22,
22:1, 23:1, 25:8,
27:21, 28:9, 29:1,
29:4, 29:23, 31:22,
31:25, 32:2, 37:8
enforcement's [1] -
18:10
engaged [1] - 40:6
ensure [4] - 15:4,
31:1, 38:11, 49:18
enter [2] - 11:8,

68:11
entered [3] - 19:9,
19:18, 22:17
entering [3] - 11:3,
27:3, 78:17
entertaining [1] -
17:13
entirely [1] - 19:3
entitled [4] - 25:11,
37:24, 42:10, 56:12
entity [1] - 41:16
equal [1] - 42:23
equipment [1] - 27:6
escrow [1] - 42:5
ESQ [13] - 2:14, 2:17,
2:18, 2:21, 2:24, 3:2,
3:5, 3:8, 3:8, 3:11,
3:14, 3:17, 3:20
essentially [3] -
10:24, 30:4, 69:1
et [16] - 1:3, 1:6,
1:11, 1:19, 1:22, 2:3,
2:6, 5:2, 5:3, 5:5, 5:6,
5:7, 5:8, 62:6
evaluate [3] - 29:1,
29:4, 30:6
evaluates [1] - 14:2
event [2] - 7:2, 76:14
evidence [6] - 18:21,
27:1, 29:5, 44:16,
48:21, 63:4
evidenced [1] - 62:7
EWING [1] - 3:21
exact [2] - 19:11,
70:7
exactly [5] - 14:22,
23:11, 27:19, 29:20,
63:15
example [3] - 19:1,
43:6, 53:9
except [5] - 41:13,
41:17, 45:7, 48:13,
79:7
exception [1] - 49:4
exchanged [2] -
36:2, 64:11
excuse [3] - 36:1,
68:15, 71:16
exhibit [2] - 20:10,
20:19
Exhibit [3] - 22:11,
38:20, 41:10
exhibits [1] - 46:14
exigencies [1] -
26:15
exigency [2] - 26:17,
58:16
exist [2] - 30:9, 30:11
exists [2] - 13:15,
13:17

exited [1] - 38:19
expand [1] - 76:23
expect [2] - 67:8,
67:16
expecting [2] - 68:1,
76:5
expedite [1] - 21:18
experts [1] - 42:18
explain [2] - 50:17,
50:18
extended [1] - 7:18
extensions [1] - 63:2
extent [10] - 14:4,
16:23, 31:5, 39:6,
42:17, 44:10, 48:18,
58:12, 58:17, 77:2
eye [2] - 70:4

**F**

fact [5] - 7:22, 26:8,
29:16, 40:23, 56:12
fair [4] - 12:24,
28:20, 37:25, 75:17
fairly [1] - 60:7
fairness [1] - 75:6
faith [1] - 60:7
falls [1] - 12:19
false [4] - 8:15, 8:18,
8:19
familiar [1] - 72:1
far [5] - 15:25, 17:16,
45:15, 61:1, 61:6
fashion [2] - 7:14,
8:8
fast [1] - 62:23
featuring [1] - 11:1
Federal [1] - 66:15
fee [3] - 13:14, 55:12
few [4] - 8:12, 19:6,
65:4, 65:5
figure [1] - 55:15
figured [1] - 63:8
file [13] - 11:17,
11:18, 25:18, 27:24,
45:24, 46:4, 48:11,
48:23, 50:4, 51:22,
58:12, 74:18, 78:8
filed [10] - 9:12,
11:14, 12:6, 12:17,
28:14, 39:3, 41:22,
43:24, 46:19, 47:22
files [2] - 27:22,
29:24
filing [11] - 18:3,
38:22, 39:7, 40:10,
44:3, 45:3, 46:1, 46:9,
46:10, 50:19
filings [1] - 7:15

fill [1] - 68:25
final [1] - 71:22
finally [1] - 73:5
financial [3] - 72:2,
72:16, 75:7
fine [4] - 48:2, 65:24,
77:13, 77:15
finish [2] - 24:10,
24:15
firm [6] - 5:22, 5:25,
15:3, 22:16, 40:13,
56:9
first [6] - 7:21,
13:13, 13:19, 16:19,
17:17, 19:14, 31:15,
38:8, 38:9, 38:18,
39:9, 39:15, 61:1,
65:17, 69:22, 76:10
fits [1] - 75:8
five [1] - 71:23
flagged [1] - 59:22
flipped [2] - 16:12,
66:9
Floor [3] - 2:19, 3:3,
3:13
Florida [1] - 3:13
focus [2] - 14:13,
40:22
focused [2] - 55:14
folks [1] - 60:15
follow [2] - 31:11,
49:8
followup [1] - 38:11
footing [1] - 40:8
FOR [9] - 1:1, 2:1,
2:14, 2:24, 3:2, 3:5,
3:11, 3:14, 3:20
force [1] - 42:23
foreclosed [1] -
64:15
foregoing [1] - 80:4
foreign [3] - 27:3,
44:18, 44:21
former [1] - 67:4
forth [2] - 9:21, 69:13
forthcoming [1] -
27:25
forward [2] - 7:20,
71:11
four [4] - 5:9, 8:13,
71:20, 71:23
fourth [1] - 77:6
Fox [1] - 60:12
frankly [7] - 11:21,
48:20, 59:3, 60:17,
62:12, 62:15, 70:6
fraud [4] - 27:6,
48:17, 49:7, 49:12
Friday [9] - 11:15,
52:13, 52:21, 53:22,

58:13, 63:5, 71:5,
77:23, 78:10
FROM [1] - 2:10
front [3] - 61:19,
72:3, 72:9
frozen [1] - 42:19
FTR [1] - 2:10
FTR-GOLD [1] - 2:10
full [18] - 8:3, 11:8,
12:24, 17:13, 18:25,
19:12, 28:20, 29:4,
31:2, 37:24, 38:12,
40:11, 45:13, 47:7,
57:18, 68:22, 68:23,
80:5
full-blown [1] - 57:18
fully [3] - 8:8, 14:1,
78:15
fulsome [1] - 17:2
function [1] - 28:24
future [1] - 48:21

**G**

gain [1] - 8:21
gearing [1] - 63:6
given [10] - 22:17,
23:4, 23:23, 24:24,
25:17, 37:7, 42:17,
49:5, 54:14, 55:20
goals [1] - 13:23
God [2] - 8:22, 16:17
GODFREY [3] - 2:15,
2:18, 2:21
Godfrey [1] - 5:13
GOLD [1] - 2:10
Google [1] - 16:15
governing [1] - 41:1
government [1] -
24:19
grant [1] - 55:10
grants [1] - 63:12
gratuitously [1] -
68:2
great [3] - 7:2, 58:10,
61:6
Greg [1] - 6:13
GREGORY [1] - 3:11
group [1] - 53:10
guarantee [2] -
49:13, 65:8
gutted [1] - 8:19
guys [1] - 67:10

**H**

half [2] - 8:17, 28:15
handed [1] - 10:11

**handle** [2] - 7:19, 57:8
**hang** [1] - 79:8
**happy** [6] - 11:15, 59:7, 63:20, 65:21, 74:9, 78:7
**hard** [1] - 69:7
**harm** [2] - 9:4, 43:2
**Hartman** [2] - 45:19, 45:21
**hats** [1] - 59:2
**head** [1] - 66:9
**hear** [10] - 12:23, 31:13, 47:10, 52:2, 65:3, 67:19, 74:17
**heard** [6] - 10:5, 39:15, 39:18, 64:9, 64:16
**hearing** [12] - 7:18, 9:12, 30:25, 31:2, 47:6, 52:17, 54:17, 63:7, 68:20, 69:16, 69:17
**heart** [1] - 69:15
**heated** [1] - 24:14
**heavy** [1] - 69:1
**help** [2] - 13:21, 78:5
**helpful** [3] - 11:16, 14:21, 43:9
**hereby** [1] - 80:3
**Herring** [4] - 5:6, 6:18, 6:19
**herring** [1] - 64:10
**HERRING** [1] - 1:22
**herself** [1] - 39:3
**hi** [1] - 73:4
**hide** [1] - 18:14
**hired** [1] - 22:15
**hold** [1] - 19:5
**holds** [1] - 30:25
**holidays** [2] - 27:15, 28:7
**hollow** [1] - 26:15
**home** [3] - 32:10, 32:23, 33:8
**honest** [1] - 27:5
**Honor** [106] - 5:1, 5:12, 5:17, 5:21, 6:3, 6:6, 6:9, 6:13, 6:17, 7:5, 8:10, 8:13, 10:8, 10:9, 10:20, 11:22, 13:6, 13:23, 13:24, 14:14, 15:23, 16:7, 17:19, 17:20, 17:25, 18:4, 18:20, 19:12, 19:20, 19:24, 20:14, 20:25, 22:6, 22:11, 23:2, 23:18, 24:20, 25:9, 25:14, 25:24, 26:19, 26:25, 27:19,

28:3, 28:24, 29:20, 31:18, 32:15, 38:5, 38:7, 38:16, 39:9, 39:12, 39:14, 40:5, 41:6, 41:25, 42:11, 42:22, 43:16, 43:23, 44:11, 44:20, 46:18, 47:20, 48:2, 48:14, 49:3, 51:5, 52:6, 54:19, 55:1, 55:25, 56:21, 57:22, 59:1, 59:14, 60:17, 61:16, 61:19, 62:7, 63:1, 63:4, 64:2, 64:8, 64:20, 64:21, 65:16, 65:21, 66:13, 66:22, 68:4, 69:22, 70:16, 70:22, 73:15, 73:21, 74:1, 74:22, 75:22, 76:3, 77:15, 79:1, 79:4, 79:11, 79:12
**Honor's** [1] - 11:12
**HONORABLE** [1] - 2:11
**hope** [1] - 74:14
**hopefully** [4] - 6:25, 58:18, 59:3, 68:25
**horrific** [1] - 8:20
**hostile** [1] - 60:21
**hour** [3] - 28:14, 28:15, 66:1
**hours** [3] - 10:22, 61:20, 61:23
**household** [1] - 8:17
**housekeeping** [1] - 78:13
**Houston** [2] - 2:23, 3:7
**hyperbole** [1] - 26:5
**hypothetically** [1] - 54:10

## I

**imagine** [1] - 40:7
**immediately** [2] - 25:17, 27:21
**impacted** [1] - 27:23
**important** [1] - 27:20
**impressions** [1] - 48:6
**improperly** [1] - 56:19
**in-person** [3] - 63:13, 64:22, 67:3
**inappropriate** [1] - 21:2
**Inc** [6] - 5:2, 5:3, 5:5, 5:6, 5:7

**INC** [6] - 1:3, 1:6, 1:11, 1:19, 1:22, 2:3
**inclination** [1] - 48:10
**include** [2] - 58:1, 58:6
**included** [1] - 43:1
**including** [5] - 9:11, 10:9, 40:13, 41:16, 56:6
**increased** [1] - 78:18
**incredible** [1] - 64:10
**indicates** [1] - 14:21
**indiscernible** [3] - 17:9, 66:19, 75:2
**indiscernible]** [1] - 55:2
**individuals** [1] - 48:18
**information** [55] - 8:15, 8:18, 8:19, 9:8, 12:25, 14:6, 14:11, 14:16, 14:24, 15:8, 16:4, 16:6, 16:10, 17:2, 19:15, 19:25, 23:9, 23:22, 24:18, 24:23, 25:2, 25:8, 25:20, 25:22, 25:23, 25:25, 26:12, 26:18, 29:13, 34:7, 36:3, 36:19, 36:20, 36:21, 37:7, 37:11, 37:13, 37:21, 37:24, 43:4, 47:8, 49:18, 52:1, 52:17, 52:19, 52:24, 53:20, 54:2, 55:11, 55:21, 56:15, 72:2, 72:21, 74:11
**initial** [1] - 53:25
**insight** [1] - 52:8
**instance** [1] - 15:10
**instant** [1] - 26:18
**instead** [1] - 48:16
**instituted** [1] - 49:12
**instruction** [2] - 54:3, 56:3
**intelligence** [2] - 17:22, 44:15
**intent** [1] - 38:15
**intention** [1] - 9:16
**intentionally** [1] - 9:14
**interest** [1] - 25:17
**interfere** [2] - 18:23, 30:6
**interim** [6] - 8:6, 11:10, 11:13, 12:14, 42:6, 47:9
**internet** [2] - 9:9, 16:15

**interpret** [1] - 74:14
**introduce** [1] - 5:10
**investigate** [3] - 18:11, 18:22, 25:12
**investigating** [1] - 27:21
**investigation** [8] - 24:25, 25:11, 25:16, 25:29, 29:24, 30:7, 44:9, 46:5, 49:6
**investigations** [1] - 29:3
**invited** [1] - 62:15
**involved** [4] - 25:18, 60:2, 60:3, 61:2
**ironic** [1] - 44:14
**issue** [33] - 7:21, 8:7, 12:19, 13:7, 14:22, 15:19, 28:18, 30:24, 31:13, 37:23, 42:8, 48:17, 49:17, 53:21, 53:23, 54:24, 56:5, 56:23, 57:24, 58:22, 63:25, 67:23, 69:1, 69:8, 69:17, 69:24, 70:1, 72:2, 72:16, 73:15, 76:12, 76:25, 78:9
**issues** [18] - 7:15, 11:9, 33:19, 57:7, 60:9, 60:13, 68:2, 68:14, 69:19, 73:10, 73:12, 73:17, 73:19, 73:25, 74:5, 74:8, 77:20, 78:12
**item** [1] - 78:13
**items** [1] - 58:4

## J

**JACKSON** [2] - 3:5, 3:9
**January** [2] - 27:17, 28:7
**job** [2] - 18:10, 25:12
**joined** [1] - 5:24
**joint** [6] - 69:13, 69:20, 71:15, 73:18, 74:19, 76:11
**jointly** [2] - 68:11, 68:25
**JONATHAN** [2] - 2:21, 3:8
**Jonathan** [3] - 5:15, 6:24, 52:6
**JOSHUA** [1] - 3:17
**Joshua** [1] - 5:19
**judge** [1] - 19:24
**JUDGE** [1] - 2:11

**Judge** [11] - 12:20, 19:13, 30:14, 47:4, 49:14, 49:24, 58:23, 71:9, 71:16, 73:4, 74:24
**jump** [1] - 48:16
**Junttila** [2] - 6:4, 38:23
**JUNTTILA** [119] - 3:2, 6:3, 17:6, 17:9, 17:19, 18:4, 18:6, 18:19, 19:7, 19:11, 19:20, 19:23, 20:13, 20:25, 21:18, 21:23, 21:25, 22:8, 22:15, 22:20, 23:1, 23:4, 23:8, 23:11, 23:14, 23:17, 23:20, 23:23, 24:2, 24:4, 24:9, 24:12, 24:19, 24:22, 25:3, 25:6, 25:9, 25:24, 26:19, 26:25, 27:11, 27:14, 27:18, 28:2, 28:5, 28:23, 29:19, 31:17, 31:21, 32:1, 32:4, 32:7, 32:10, 32:14, 32:20, 32:24, 33:1, 33:5, 33:7, 33:9, 33:11, 33:14, 33:16, 33:18, 33:23, 34:1, 34:4, 34:8, 34:11, 34:16, 34:18, 34:21, 34:25, 35:3, 35:6, 35:10, 35:13, 35:15, 35:17, 35:20, 35:22, 35:24, 36:2, 36:6, 36:8, 36:10, 36:12, 36:14, 36:17, 36:22, 37:1, 37:4, 37:8, 37:10, 37:16, 43:16, 43:20, 43:22, 44:8, 44:23, 44:25, 45:4, 45:9, 45:19, 45:21, 45:25, 46:14, 46:17, 46:21, 46:24, 47:4, 47:19, 49:3, 49:24, 51:4, 51:9, 51:12, 51:15, 55:1
**jurisdiction** [1] - 56:7
**justice** [1] - 29:20

## K

**Kachouroff** [2] - 5:24, 6:1
**KAPLAN** [2] - 2:24, 5:21
**Kaplan** [1] - 5:22
**keep** [5] - 7:1, 8:12,

20:21, 47:19, 63:17
**KENNEDYS** [2] -
3:15, 3:18
**Kennedys** [1] - 5:18
**kept** [4] - 25:21,
32:25, 33:1, 34:6
**key** [3] - 33:3, 47:23,
54:22
**KIBORT** [1] - 2:24
**Kibort** [1] - 5:22
**kind** [1] - 58:5
**knock** [1] - 63:7
**knows** [5] - 8:22,
15:12, 16:17, 57:19,
77:20

## L

**laid** [1] - 11:13
**Lambert** [58] - 6:4,
6:5, 8:1, 9:1, 9:5,
9:22, 10:17, 10:23,
11:18, 12:23, 13:11,
13:14, 13:16, 13:19,
14:5, 14:17, 14:19,
14:25, 15:2, 15:6,
15:17, 16:5, 17:1,
17:5, 17:8, 17:11,
19:5, 20:9, 21:16,
25:19, 31:15, 38:6,
38:12, 38:20, 38:23,
39:3, 39:11, 40:25,
42:13, 42:23, 43:8,
43:14, 45:2, 48:23,
52:5, 53:15, 54:10,
54:13, 54:21, 55:12,
56:4, 57:2, 58:6, 58:9,
76:12, 78:9, 79:8
**LAMBERT** [120] -
3:2, 3:2, 6:3, 17:6,
17:9, 17:19, 18:4,
18:6, 18:19, 19:7,
19:11, 19:20, 19:23,
20:13, 20:25, 21:18,
21:23, 21:25, 22:8,
22:15, 22:20, 23:1,
23:4, 23:8, 23:11,
23:14, 23:17, 23:20,
23:23, 24:2, 24:4,
24:9, 24:12, 24:19,
24:22, 25:3, 25:6,
25:9, 25:24, 26:19,
26:25, 27:11, 27:14,
27:18, 28:2, 28:5,
28:23, 29:19, 31:17,
31:21, 32:1, 32:4,
32:7, 32:10, 32:14,
32:20, 32:24, 33:1,
33:5, 33:7, 33:9,
33:11, 33:14, 33:16,

33:18, 33:23, 34:1,
34:4, 34:8, 34:11,
34:16, 34:18, 34:21,
34:25, 35:3, 35:6,
35:10, 35:13, 35:15,
35:17, 35:20, 35:22,
35:24, 36:2, 36:6,
36:8, 36:10, 36:12,
36:14, 36:17, 36:22,
37:1, 37:4, 37:8,
37:10, 37:16, 43:16,
43:20, 43:22, 44:8,
44:23, 44:25, 45:4,
45:9, 45:19, 45:21,
45:25, 46:14, 46:17,
46:21, 46:24, 47:4,
47:19, 49:3, 49:24,
51:4, 51:9, 51:12,
51:15, 55:1
**Lambert's** [4] -
11:20, 39:15, 47:16,
52:12
**Lambert-Byrne** [1] -
78:9
**language** [1] - 70:7
**laptop** [3] - 33:10,
33:13, 33:18
**large** [2] - 44:10,
49:10
**last** [4] - 10:22,
35:21, 36:7, 71:25
**late** [1] - 45:6
**lately** [1] - 33:19
**LAURO** [1] - 3:12
**LAW** [1] - 3:2
**law** [25] - 5:22, 5:25,
9:25, 18:7, 18:9,
18:20, 18:22, 18:24,
22:1, 23:1, 25:8,
27:20, 28:9, 29:1,
29:3, 29:23, 30:16,
31:22, 31:24, 32:2,
35:14, 37:8, 48:20
**lawsuit** [1] - 17:21
**lawsuits** [3] - 8:14,
8:23, 9:1
**lawyer** [3] - 13:17,
55:18, 67:4
**lawyer-client** [1] -
13:17
**lawyers** [3] - 45:17,
46:11, 75:9
**Leaf** [14] - 10:23,
16:11, 16:14, 16:18,
16:21, 16:24, 23:8,
23:10, 25:2, 25:10,
32:3, 32:16, 39:3,
39:17
**leaf** [2] - 25:10, 25:13
**leaked** [3] - 15:7,

15:10, 40:25
**leaks** [1] - 10:25
**least** [6] - 17:2, 26:7,
26:12, 31:11, 55:4,
70:17
**leave** [1] - 76:8
**led** [1] - 46:8
**legal** [2] - 35:3, 35:4
**lens** [1] - 25:25
**less** [1] - 8:12
**letter** [1] - 13:11
**letters** [4] - 15:13,
52:7, 52:13, 53:22
**liability** [1] - 19:2
**lies** [2] - 8:24, 9:3
**life** [1] - 6:11
**lift** [1] - 69:1
**light** [2] - 12:22,
25:16
**lightly** [3] - 10:1,
10:11
**likely** [1] - 12:19
**LINDELL** [1] - 2:25
**Lindell** [2] - 5:23,
61:10
**Lindell's** [1] - 61:12
**Lisa** [1] - 80:12
**LISA** [2] - 4:1, 80:3
**list** [3] - 14:15, 14:23,
71:1
**listening** [1] - 6:23
**literally** [2] - 16:14,
26:2
**litigated** [2] - 41:7,
41:8
**litigation** [6] - 9:3,
18:3, 41:13, 41:14,
41:16, 41:18
**live** [3] - 68:19,
73:25, 74:20
**LLC** [1] - 2:24
**LLP** [7] - 2:15, 2:18,
2:21, 3:5, 3:9, 3:15,
3:18
**local** [1] - 28:3
**located** [9] - 17:15,
30:22, 30:23, 32:9,
36:20, 36:21, 37:14,
50:5, 60:3
**location** [1] - 39:9
**lock** [3] - 29:25,
31:17, 31:22, 31:24,
33:1, 47:19, 50:4,
50:8, 51:4, 51:18
**log** [8] - 39:17,
39:21, 44:13, 54:7,
54:8, 70:2, 76:25
**log-in** [6] - 39:17,

39:21, 44:13, 54:7,
54:8
**look** [5] - 18:24,
21:16, 27:18, 51:17,
57:3
**looking** [2] - 14:9,
69:15
**Los** [1] - 2:16
**Louisiana** [1] - 2:22
**lying** [1] - 27:7
**Lynn** [1] - 38:23

## M

**ma'am** [10] - 17:4,
21:22, 24:6, 28:6,
30:21, 34:20, 37:19,
48:4, 48:10, 49:22
**machine** [1] - 8:16
**MAGISTRATE** [1] -
2:11
**main** [1] - 62:8
**maintain** [4] - 13:10,
42:7, 47:9, 55:23
**maintained** [1] - 31:1
**maintaining** [4] -
38:1, 42:12, 43:2,
58:5
**major** [1] - 69:24
**majority** [1] - 59:24
**man** [1] - 8:21
**manner** [1] - 65:18
**MARC** [1] - 3:14
**marc** [2] - 5:17, 64:1
**March** [6] - 1:7, 1:15,
1:23, 2:7, 69:20,
80:10
**marked** [8] - 11:25,
18:2, 22:24, 31:6,
40:23, 40:25, 41:4,
41:23
**Market** [2] - 3:15,
3:18
**match** [1] - 71:22
**material** [3] - 41:13,
41:15, 41:17
**matter** [5] - 8:5,
28:25, 58:24, 69:15,
79:7
**matters** [2] - 5:9,
7:19
**McGlinchey** [1] -
15:2
**McIlhenny** [1] - 5:25
**McKinney** [1] - 3:6
**McSweeney** [1] -
5:25
**mean** [7] - 28:10,
32:3, 58:16, 58:19,

65:19, 66:1, 71:12
**means** [2] - 9:16,
62:1
**meant** [1] - 28:17
**meantime** [1] - 11:11
**measures** [1] - 14:9
**mechanism** [3] -
25:20, 25:21, 56:14
**media** [2] - 25:14
**meet** [4] - 63:5, 65:4,
66:8, 73:11
**meet-and-confer** [2]
- 63:5, 73:11
**meeting** [2] - 73:9,
77:21
**meets** [1] - 77:19
**members** [2] - 25:5,
35:8
**mentioned** [7] - 7:17,
11:10, 30:16, 37:22,
40:14, 45:2, 57:24
**mere** [1] - 25:14
**method** [1] - 14:25
**MICHAEL** [1] - 2:25
**Michigan** [7] - 3:4,
38:23, 38:25, 41:23,
45:16, 50:15, 50:16
**micro** [1] - 49:17
**micro-issue** [1] -
49:17
**might** [3] - 37:20,
48:17, 61:20
**migrated** [2] - 15:16,
52:25
**migrating** [4] -
52:10, 52:20, 53:20,
54:1
**Mike** [1] - 5:23
**military** [1] - 44:21
**million** [2] - 15:23,
27:2
**minimum** [1] - 46:25
**Minneapolis** [1] -
2:25
**Minnesota** [1] - 2:25
**MINOO** [1] - 3:8
**Minoo** [1] - 6:24
**minor** [2] - 67:6, 70:1
**minute** [1] - 29:22
**minutes** [1] - 8:12
**misrepresentation**
[1] - 25:13
**misrepresented** [1] -
43:24
**mistaken** [1] - 71:13
**moment** [2] - 74:25,
75:24
**Monday** [6] - 52:17,
73:23, 74:18, 77:23,
77:24, 78:1

month [4] - 23:13, 23:15, 23:17, 23:19
months [2] - 22:18, 28:8
MOONEY [1] - 3:17
Mooney [1] - 5:19
moot [1] - 72:20
mooted [3] - 69:19, 69:24, 70:1
morning [4] - 6:6, 51:23, 57:5, 76:14
most [5] - 7:22, 11:21, 14:5, 40:24, 59:23
motion [20] - 9:21, 10:3, 11:7, 11:18, 12:2, 12:16, 12:20, 13:2, 13:3, 14:3, 20:11, 30:15, 30:25, 37:25, 38:20, 41:11, 46:4, 58:11, 72:8
motions [1] - 12:15
mouth [1] - 7:1
move [2] - 57:23, 59:18
moving [2] - 51:16, 63:17
MOXILA [1] - 2:11
MR [64] - 5:17, 5:21, 6:6, 6:9, 6:12, 6:13, 6:17, 6:22, 7:4, 52:6, 53:5, 53:8, 53:16, 53:19, 54:12, 54:19, 63:24, 64:1, 64:5, 64:8, 65:9, 65:11, 65:15, 65:20, 66:4, 66:7, 66:13, 67:24, 68:4, 68:7, 70:3, 70:16, 70:20, 70:22, 70:24, 71:1, 71:15, 71:20, 71:22, 72:12, 72:15, 72:17, 72:19, 73:1, 73:4, 73:6, 73:8, 73:21, 74:1, 74:3, 74:7, 74:9, 74:22, 74:24, 75:2, 75:5, 75:14, 75:17, 75:20, 75:22, 77:15, 79:4, 79:11, 79:12
MS [174] - 5:12, 6:3, 8:10, 10:8, 10:20, 11:20, 13:6, 13:23, 14:13, 15:22, 16:2, 16:22, 17:6, 17:9, 17:19, 18:4, 18:6, 18:19, 19:7, 19:11, 19:20, 19:23, 20:10, 20:13, 20:25, 21:18, 21:23, 21:25, 22:5, 22:8, 22:11, 22:15,

22:20, 23:1, 23:4, 23:8, 23:11, 23:14, 23:17, 23:20, 23:23, 24:2, 24:4, 24:9, 24:12, 24:19, 24:22, 25:3, 25:6, 25:9, 25:24, 26:19, 26:25, 27:11, 27:14, 27:18, 28:2, 28:5, 28:23, 29:19, 31:17, 31:21, 32:1, 32:4, 32:7, 32:10, 32:14, 32:20, 32:24, 33:1, 33:5, 33:7, 33:9, 33:11, 33:14, 33:16, 33:18, 33:23, 34:1, 34:4, 34:8, 34:11, 34:16, 34:18, 34:21, 34:25, 35:3, 35:6, 35:10, 35:13, 35:15, 35:17, 35:20, 35:22, 35:24, 36:2, 36:6, 36:8, 36:10, 36:12, 36:14, 36:17, 36:22, 37:1, 37:4, 37:8, 37:10, 37:16, 38:5, 38:7, 38:15, 38:18, 40:2, 40:5, 40:10, 40:22, 41:24, 42:2, 42:11, 43:16, 43:20, 43:22, 44:8, 44:23, 44:25, 45:4, 45:9, 45:19, 45:21, 45:25, 46:14, 46:17, 46:21, 46:24, 47:4, 47:19, 48:2, 48:14, 49:2, 49:3, 49:24, 51:4, 51:9, 51:12, 51:15, 51:25, 55:1, 55:25, 56:3, 56:21, 57:22, 59:1, 59:14, 61:16, 69:22, 70:4, 70:11, 70:13, 71:3, 76:3, 76:7, 76:10, 76:16, 76:22, 77:9, 77:13, 77:18, 78:1, 78:3, 78:5, 78:8, 78:12, 78:21, 79:1
must [3] - 11:19, 20:14, 66:20
MY [2] - 1:6, 2:24

N

name [6] - 8:17, 35:12, 35:19, 35:21, 36:5, 36:7
names [2] - 23:7, 24:2
narrow [2] - 29:1, 74:10

national [5] - 9:17, 17:22, 28:5, 44:15, 44:17
nationals [2] - 27:3, 44:18
naturally [1] - 60:21
nearly [1] - 8:13
necessarily [2] - 7:17, 16:22
necessary [1] - 58:20
need [25] - 19:24, 20:3, 22:4, 23:7, 30:25, 31:4, 31:5, 39:24, 46:7, 47:5, 47:6, 50:7, 51:21, 55:23, 59:4, 59:13, 59:15, 63:9, 63:13, 66:2, 67:14, 67:15, 68:16, 69:6, 69:21
needed [1] - 46:2
needs [5] - 9:23, 18:22, 30:17, 46:7, 67:17
Neerman [4] - 6:24, 7:10, 71:14, 72:25
NEERMAN [9] - 3:8, 73:4, 73:6, 73:8, 73:21, 74:1, 74:3, 74:7, 74:24
negotiated [1] - 41:12
Networks [2] - 5:6, 6:18
NETWORKS [1] - 1:22
neutrally [1] - 59:3
never [3] - 18:23, 50:12, 51:20
new [4] - 39:22, 51:20, 53:1, 53:21
New [2] - 2:20
newman [1] - 36:8
Newman [4] - 36:10, 36:11, 36:16, 50:11
news [1] - 6:22
next [5] - 11:4, 47:6, 55:5, 75:10, 77:18
nice [1] - 6:9
Nichols [7] - 12:20, 19:13, 30:14, 49:14, 58:23, 71:9, 71:16
nightmares [1] - 64:9
Ninth [1] - 2:19
nobody [1] - 54:1
norm [1] - 60:25
North [2] - 2:25, 3:12, 3:15
Northwest [2] - 4:3,

80:14
note [1] - 65:15
notes [16] - 34:5, 34:9, 34:10, 34:23, 35:2, 35:16, 35:18, 36:1, 36:16, 36:20, 42:9, 48:3, 48:6, 48:12, 50:14, 80:5
notice [2] - 10:7, 29:16
noticed [2] - 61:3, 62:16
notices [1] - 61:10
noticing [1] - 67:21
notification [1] - 56:23
notified [1] - 29:24
notify [1] - 29:16
November [1] - 28:1
nowhere [1] - 33:15
number [7] - 38:25, 39:1, 61:19, 61:23, 68:14, 68:18, 70:9
numerous [1] - 10:21

O

O'CONNOR [1] - 3:21
Oakland [1] - 38:25
OAN [13] - 3:5, 6:20, 61:20, 68:18, 71:14, 71:23, 72:6, 73:3, 73:14, 73:19, 74:19, 77:20, 78:15
OAN's [1] - 73:12
OAN-specific [3] - 68:18, 73:19, 74:19
oath [1] - 15:5
objecting [2] - 71:24, 72:1
objection [3] - 54:22, 55:2, 69:2
obligation [5] - 17:23, 24:7, 66:15, 67:1, 67:14
oblige [1] - 59:6, 59:10, 63:20
obstruct [1] - 49:5
obstructed [1] - 29:24
obstruction [2] - 29:20, 49:11
obtain [2] - 19:16, 44:13
occasion [1] - 15:9
OF [4] - 1:1, 2:1, 2:10, 3:2

office [9] - 33:2, 33:4, 33:8, 39:20, 44:11, 47:15, 47:16, 47:19, 47:23
Office [2] - 23:6, 23:25
OFFICE [1] - 3:2
office's [1] - 36:5
officer [4] - 17:23, 20:21, 47:22, 52:21
officers [1] - 25:8
offices [1] - 8:22
Official [1] - 4:1
official [1] - 80:12
old [1] - 39:22
one [45] - 7:12, 10:25, 13:24, 15:16, 16:13, 25:3, 28:12, 28:15, 28:25, 33:17, 34:2, 34:21, 35:10, 40:19, 43:22, 47:13, 47:17, 51:23, 52:7, 52:9, 53:4, 53:18, 53:21, 54:23, 55:25, 60:4, 61:24, 62:2, 63:11, 63:22, 66:1, 66:7, 67:16, 70:1, 70:21, 71:1, 71:25, 76:10, 76:16, 76:19, 76:23, 77:6, 77:18, 79:7
one-hour [1] - 66:1
one-off [1] - 66:7
ones [5] - 32:15, 59:8, 60:14, 63:19, 74:20
ongoing [4] - 10:22, 24:24, 27:23, 77:19
open [1] - 44:8
opening [1] - 11:10
operating [2] - 52:20, 60:7
opinion [1] - 59:14
opportunity [13] - 8:2, 8:8, 9:13, 12:7, 12:24, 19:12, 21:16, 28:13, 28:20, 45:6, 45:13, 58:24, 69:3
opposed [1] - 26:20
opposite [2] - 59:9, 60:15
oral [3] - 8:9, 48:22, 58:19
order [66] - 7:24, 9:15, 10:18, 10:19, 10:21, 11:8, 11:14, 11:19, 11:21, 11:22, 12:10, 12:14, 12:18, 13:10, 13:19, 15:8, 16:3, 18:8, 18:15,

19:19, 20:20, 20:23, 21:1, 21:19, 21:20, 26:7, 26:24, 28:17, 28:20, 29:17, 41:2, 41:10, 41:18, 42:22, 43:1, 43:12, 47:1, 47:9, 47:16, 48:19, 48:22, 49:8, 50:18, 50:23, 54:23, 55:9, 55:17, 56:1, 56:7, 56:9, 57:1, 57:24, 58:2, 58:3, 58:13, 58:15, 59:4, 59:17, 63:14, 68:12, 72:5, 73:24, 74:16, 76:12, 78:16, 78:25
**ordered** [2] - 72:21, 76:18
**orderly** [4] - 7:14, 7:17, 8:8, 72:24
**orders** [1] - 69:23
**original** [2] - 15:13, 53:19
**originally** [1] - 52:19
**otherwise** [4] - 15:7, 15:11, 39:7, 57:17
**outgoing** [1] - 43:7
**outrageous** [1] - 44:23
**outside** [5] - 14:19, 15:13, 15:14, 15:16, 26:23
**own** [5] - 12:10, 40:10, 43:25, 53:6, 53:8

## P

**P.C** [1] - 64:6
**p.m** [9] - 1:7, 1:15, 1:23, 2:7, 58:14, 74:18, 77:14, 77:25, 78:1
**page** [3] - 33:17, 76:7, 78:23
**pages** [5] - 16:9, 16:13, 16:16, 22:23, 69:6
**paid** [1] - 40:6
**papers** [2] - 57:17, 68:15
**Paragraph** [1] - 41:9
**Parker** [1] - 5:22
**PARKER** [1] - 2:24
**part** [3] - 22:3, 38:21, 58:10
**participate** [1] - 62:3
**particular** [3] - 26:17, 67:10, 67:13

**particularly** [1] - 69:8
**parties** [22] - 5:10, 7:16, 8:4, 26:23, 41:3, 41:12, 51:22, 54:14, 55:8, 61:1, 61:5, 61:7, 62:10, 68:9, 68:24, 70:7, 71:4, 72:4, 76:11, 77:1, 78:19
**partner** [1] - 5:19
**partners** [1] - 6:24
**party** [22] - 7:13, 15:25, 22:25, 29:9, 29:17, 37:7, 41:14, 41:15, 42:5, 49:10, 53:8, 54:6, 54:8, 57:15, 61:3, 61:4, 67:18, 67:19, 67:21, 69:2, 71:13, 78:21
**password** [2] - 50:4, 54:7
**password-protected** [1] - 50:4
**passwords** [1] - 54:14
**past** [1] - 70:5
**Patrick** [4] - 8:25, 14:17, 40:6, 40:7
**PATRICK** [2] - 1:14, 3:2
**pause** [2] - 39:13, 75:25
**paused** [1] - 40:15
**pendency** [3] - 42:20, 47:3, 48:25
**pending** [11] - 6:1, 12:15, 13:2, 38:24, 40:15, 49:20, 50:19, 50:21, 54:17, 55:19, 72:8
**Pennsylvania** [1] - 3:19
**people** [5] - 16:15, 62:14, 64:22, 65:23, 66:24
**People** [1] - 38:22
**per** [1] - 7:13
**perfectly** [2] - 60:10, 65:21
**perhaps** [2] - 48:13, 63:4
**permission** [2] - 26:22, 76:24
**permitted** [1] - 41:17
**perpetuate** [1] - 9:1
**person** [32] - 41:16, 47:23, 47:24, 54:10, 59:7, 59:10, 61:23, 62:15, 62:18, 62:20, 62:22, 62:25, 63:13,

63:16, 63:19, 63:22, 64:13, 64:22, 64:23, 64:25, 65:13, 65:22, 65:25, 66:2, 66:12, 67:3, 67:5, 67:7, 67:15, 67:18, 67:20
**personnel** [1] - 79:9
**PHANIE** [1] - 35:23
**Philadelphia** [1] - 3:19
**phone** [7] - 33:21, 34:18, 34:21, 36:1, 48:4, 50:5, 50:7
**phones** [1] - 34:19
**pick** [1] - 64:14
**picture** [1] - 29:4
**Pillow** [2] - 5:3, 5:23
**PILLOW** [2] - 1:6, 2:24
**place** [3] - 13:19, 36:19, 61:12
**places** [6] - 30:22, 36:18, 37:12, 50:8, 60:3, 65:18
**placing** [2] - 42:5
**plain** [2] - 41:6, 41:11
**Plaintiff** [1] - 67:20
**Plaintiffs** [5] - 1:4, 1:12, 1:20, 2:4, 5:14
**PLAINTIFFS** [1] - 2:14
**Plaintiffs'** [1] - 5:11
**play** [1] - 49:13
**played** [1] - 49:15
**playing** [1] - 54:6
**point** [12] - 16:17, 19:25, 29:7, 38:9, 40:19, 41:9, 41:12, 58:16, 63:15, 72:13, 72:15, 72:19
**pointed** [1] - 13:25
**points** [2] - 38:8, 66:17
**police** [1] - 18:13
**position** [3] - 29:11, 31:9, 57:16
**possession** [5] - 14:10, 17:16, 25:16, 30:23, 31:16, 32:16, 38:13, 39:7, 43:6, 43:7, 43:8, 49:18, 49:19, 56:13, 56:19
**possible** [6] - 14:6, 57:3, 59:3, 59:19, 59:20, 63:23
**post** [1] - 25:14
**posted** [1] - 45:24
**posting** [1] - 25:13
**posts** [2] - 11:1, 11:5

**Powell** [9] - 5:8, 5:18, 64:1, 64:5, 64:6, 70:17, 70:18, 70:24, 71:2
**POWELL** [2] - 2:6, 3:14
**practicable** [2] - 76:13, 79:7
**practically** [1] - 60:1
**practice** [1] - 35:14
**precisely** [1] - 38:15
**preclude** [1] - 59:16
**predecessor** [1] - 29:18
**predict** [1] - 60:8
**prefer** [1] - 48:15
**preference** [1] - 7:12
**prefers** [1] - 13:8
**prejudge** [1] - 30:12
**present** [1] - 45:14
**preserve** [1] - 56:5
**preserved** [2] - 48:20, 56:17
**preserving** [1] - 29:23
**preside** [1] - 28:25
**press** [2] - 25:5, 41:7
**presume** [1] - 76:20
**prevent** [7] - 13:1, 16:21, 18:8, 18:20, 31:5, 55:14, 55:15
**previewed** [1] - 14:3
**previous** [7] - 17:1, 20:15, 21:3, 22:16, 51:15, 66:21, 69:23
**previously** [1] - 8:16
**primary** [1] - 28:2
**principal** [1] - 45:7
**print** [3] - 32:5, 32:12, 32:16
**printed** [6] - 31:19, 32:7, 32:13, 36:25, 47:15, 48:1
**printed-out** [1] - 48:1
**private** [1] - 34:11
**privilege** [6] - 19:15, 20:2, 20:16, 20:23, 70:2, 76:25
**privileged** [3] - 21:8, 34:9, 43:5
**privy** [1] - 21:5
**Procedure** [1] - 66:15
**procedure** [2] - 7:19, 31:11
**proceed** [1] - 71:11
**proceeding** [2] - 7:5, 48:21
**proceedings** [2] - 79:14, 80:6

**Powell** — **process** [7] - 15:16, 18:23, 22:16, 52:10, 52:20, 52:22, 53:25
**produced** [11] - 9:3, 14:16, 14:24, 15:22, 41:3, 41:13, 52:11, 53:9, 72:6, 72:7, 80:6
**producing** [1] - 41:14
**product** [5] - 27:8, 34:9, 34:15, 42:10, 43:5
**production** [1] - 53:10
**productions** [1] - 78:22
**prompt** [3] - 9:23, 10:14, 56:23
**prompted** [1] - 8:20
**promptly** [2] - 9:22, 10:2
**proper** [1] - 13:18
**propose** [2] - 13:4, 70:5
**proposed** [9] - 11:14, 43:1, 43:12, 55:9, 56:1, 56:9, 58:2, 58:3, 76:11
**proposes** [1] - 59:5
**proposition** [1] - 18:18
**prosecutor** [1] - 50:17
**protect** [1] - 11:11
**protected** [5] - 15:8, 19:14, 20:1, 39:24, 50:4
**protections** [1] - 78:18
**protective** [31] - 7:24, 10:18, 10:19, 10:21, 11:19, 11:21, 11:22, 12:10, 12:18, 13:19, 15:8, 16:3, 18:8, 18:15, 19:19, 20:20, 20:22, 21:1, 21:19, 21:20, 26:7, 26:23, 28:17, 28:20, 29:17, 41:2, 41:10, 50:22, 56:7, 57:23, 78:16
**protocol** [15] - 57:9, 57:12, 61:17, 61:21, 64:10, 64:18, 64:19, 68:10, 68:12, 68:13, 70:2, 70:10, 70:14, 76:17, 77:2
**proudly** [1] - 9:9
**provide** [8] - 15:17, 17:2, 18:25, 20:14,

24:24, 41:15, 44:1,
77:22
  **provided** [9] - 11:14,
15:9, 16:6, 18:12,
20:15, 20:17, 31:22,
39:10, 39:16
  **provides** [2] - 9:15,
39:1
  **providing** [1] - 27:8,
39:2
  **provision** [4] - 11:21,
11:23, 70:2, 70:8
  **public** [10] - 12:8,
12:11, 16:7, 25:17,
28:5, 41:17, 41:22,
45:23, 46:23, 64:24
  **publicly** [5] - 12:1,
16:10, 16:13, 38:21,
39:4
  **purpose** [1] - 26:13
  **purposes** [1] - 41:14
  **pursuant** [2] - 7:23,
19:19
  **pursue** [1] - 18:11
  **put** [4] - 9:21, 38:14,
48:10, 50:3
  **putting** [1] - 12:5,
61:18

## Q

  **quash** [2] - 44:10,
46:4
  **questioning** [2] -
67:3, 67:5
  **questions** [5] - 8:5,
37:20, 38:11, 40:2,
40:17
  **quick** [1] - 38:8
  **quickly** [1] - 59:19
  **quite** [1] - 27:14
  **quo** [1] - 11:11,
13:10, 31:1, 38:2,
39:23, 42:7, 42:12,
43:3, 47:9, 55:24,
58:5
  **quote** [3] - 16:19,
38:21, 39:1

## R

  **raise** [1] - 78:14
  **raised** [1] - 7:22
  **random** [1] - 65:18
  **rather** [1] - 9:6
  **RDR** [3] - 4:1, 80:3,
80:12
  **reach** [1] - 77:4
  **reached** [1] - 63:5

  **read** [3] - 45:3,
66:21, 69:23
  **reading** [1] - 11:20
  **real** [2] - 67:7, 67:12
  **really** [7] - 28:18,
60:15, 62:15, 62:18,
66:2, 67:11, 67:18
  **realtime** [1] - 27:3
  **reason** [11] - 10:13,
11:17, 30:3, 30:11,
41:6, 59:8, 62:8,
62:11, 67:7, 67:22,
78:17
  **reasons** [3] - 10:19,
11:6, 11:7
  **received** [8] - 14:25,
27:15, 28:4, 28:6,
44:1, 46:2, 54:7, 54:8
  **receiving** [1] - 41:15
  **recent** [1] - 23:14
  **recently** [2] - 7:22,
10:22
  **recognize** [1] - 10:14
  **record** [12] - 5:11,
20:13, 21:15, 22:14,
22:19, 30:20, 41:22,
45:23, 50:1, 56:22,
58:7, 63:19
  **RECORDING** [1] -
2:10
  **recording** - 75:25
  **records** [1] - 23:12
  **recount** [1] - 12:13
  **red** [1] - 64:10
  **refer** [3] - 6:19,
48:12, 71:9
  **reference** [1] - 41:20
  **referenced** [1] -
73:14
  **referred** [8] - 12:17,
12:20, 12:21, 16:18,
58:25, 71:8, 71:17,
71:21
  **referring** [4] - 21:7,
21:9, 28:1, 35:5
  **reflect** [1] - 48:6
  **reflecting** [1] - 34:6
  **reflects** [3] - 27:1,
27:2, 27:5
  **regarding** [3] -
19:16, 20:4, 76:12
  **regardless** [2] - 9:16,
41:4
  **regards** [1] - 20:16
  **related** [1] - 56:16
  **relating** [4] - 12:10,
14:5, 56:5, 77:1
  **relationship** [1] -
13:17
  **Relativity** [4] - 51:10,

51:13, 51:24, 53:6
  **released** [5] - 15:7,
15:11, 15:25, 29:8,
29:15
  **relevant** [2] - 13:17,
52:1
  **relief** [7] - 7:23, 8:6,
11:10, 11:13, 12:15,
29:10, 42:7
  **relying** [2] - 45:10,
45:11
  **remaining** [1] - 57:14
  **remarks** [3] - 8:12,
11:10, 39:15
  **remedy** [3] - 9:24,
10:10, 30:16
  **remote** [15] - 57:14,
57:21, 59:6, 59:11,
59:13, 59:15, 60:10,
60:24, 62:11, 62:24,
63:17, 65:3, 65:22,
65:23, 66:10
  **remotely** [2] - 60:11,
60:13
  **Renaissance** [1] -
3:3
  **reply** [2] - 58:13,
78:8
  **report** [4] - 17:24,
69:20, 73:18, 74:19
  **Reporter** [2] - 4:1,
80:12
  **repository** [9] -
33:25, 39:22, 40:4,
40:6, 40:12, 43:15,
51:3, 51:8, 53:4
  **representation** [4] -
13:15, 19:16, 20:5,
47:22
  **represented** [3] -
27:6, 45:18, 49:7
  **representing** [1] -
6:18
  **REPUBLIC** [1] - 3:21
  **Republic** [1] - 6:7
  **request** [19] - 7:23,
9:7, 10:17, 12:14,
14:2, 42:21, 47:1,
48:8, 48:22, 50:16,
50:19, 55:10, 55:11,
59:9, 62:3, 63:12,
69:1, 69:2, 71:7
  **requested** [3] -
61:21, 62:17, 77:19
  **requesting** [2] -
63:1, 64:13
  **requests** [6] - 13:24,
14:4, 42:25, 43:11,
59:24, 67:21
  **required** [2] - 18:13,

26:17
  **requiring** [1] - 16:3
  **research** [1] - 18:19
  **resolution** [7] -
12:15, 13:2, 49:21,
50:20, 50:21, 55:19,
72:9
  **resolve** [6] - 57:15,
68:23, 71:4, 72:10,
74:15, 75:10
  **resolved** [1] - 67:23
  **respect** [13] - 28:23,
42:9, 47:12, 47:14,
48:3, 48:8, 50:15,
51:2, 57:9, 57:12,
58:8, 68:13, 73:13
  **respectfully** [1] -
48:14
  **respective** [1] - 69:3
  **respond** [8] - 8:2,
9:7, 10:5, 12:24,
17:11, 17:17, 43:17,
73:3
  **responded** [2] -
44:2, 44:9
  **response** [6] - 17:13,
17:14, 28:14, 58:9,
58:11, 62:21
  **responsive** [1] - 9:12
  **resubmitted** [1] -
71:17
  **result** [1] - 29:19
  **resulted** [1] - 8:19
  **results** [1] - 74:10
  **retainer** [2] - 20:4,
20:7
  **retains** [1] - 56:7
  **return** [1] - 56:14
  **returning** [1] - 42:4
  **review** [8] - 9:13,
23:5, 23:12, 26:21,
45:6, 48:25, 56:12,
68:11
  **reviewed** [2] - 21:20,
57:6
  **reviewing** [3] - 18:9,
34:23, 35:1
  **rings** [1] - 26:15
  **Rion** [1] - 6:19
  **ripe** [1] - 73:16
  **Robert** [1] - 6:18
  **role** [1] - 28:25
  **room** [1] - 60:20
  **Room** [1] - 4:3
  **ROSS** [19] - 2:21,
52:6, 53:5, 53:8,
53:16, 53:19, 54:12,
54:19, 71:15, 71:20,
71:22, 72:12, 72:15,
72:17, 72:19, 73:1,

74:9, 74:22, 79:12
  **Ross** [8] - 3:9, 5:15,
51:25, 52:4, 52:6,
71:14, 73:9, 73:14
  **Round** [2] - 57:10
  **row** [1] - 7:1
  **Rule** [2] - 66:15, 78:6
  **rule** [1] - 66:16
  **rules** [3] - 67:3,
74:14, 78:3
  **ruling** [1] - 53:1
  **run** [2] - 28:3, 60:8
  **Russell** [1] - 36:6

## S

  **safe** [1] - 32:25
  **safety** [1] - 9:17
  **sanctions** [5] - 13:3,
14:3, 14:4, 30:15,
37:25
  **schedule** [7] - 57:25,
58:19, 59:4, 60:4,
62:4, 63:14
  **scheduled** [1] - 61:8
  **schedules** [2] - 60:6,
62:12
  **scheduling** [4] -
59:16, 60:8, 61:3,
64:9
  **school** [1] - 69:5
  **scope** [5] - 13:15,
15:4, 29:2, 43:9, 47:7
  **Scott** [6] - 35:22,
48:5, 48:22, 50:1,
50:2, 50:10
  **seal** [5] - 11:18, 12:7,
47:2, 47:3, 50:21
  **sealing** [1] - 50:19
  **seat** [2] - 7:9, 37:18
  **second** [4] - 22:3,
39:12, 39:14, 76:16
  **secrets** [2] - 28:17,
29:12
  **security** [1] - 44:17
  **see** [6] - 6:9, 51:17,
60:1, 66:5, 72:23,
75:11
  **seeing** [1] - 70:4
  **seek** [6] - 25:23,
28:11, 44:10, 50:23,
55:18, 56:3
  **seeking** [6] - 8:7,
11:13, 26:12, 26:20,
26:22, 42:6
  **seeks** [1] - 14:4
  **segregate** [1] - 48:23
  **segregated** [2] -
48:11, 48:16

**send** [6] - 55:9, 68:9, 68:10, 69:10, 69:11, 70:6

**sending** [1] - 57:10

**sensitive** [1] - 29:12

**sent** [4] - 15:13, 22:10, 52:13, 53:22

**separate** [3] - 19:3, 30:7, 64:23

**Serbian** [2] - 44:18, 44:21

**serious** [2] - 25:16, 46:5

**seriously** [4] - 30:18, 49:16, 49:23, 67:2

**services** [1] - 27:5

**set** [10] - 5:9, 7:18, 53:12, 58:19, 59:17, 68:19, 69:17, 73:11, 76:18, 77:11

**sets** [1] - 30:25

**seven** [1] - 16:12

**several** [3] - 28:8, 29:15, 65:17

**severe** [3] - 9:24, 10:10, 30:16

**SHACKELFORD** [1] - 2:17

**Shackelford** [1] - 5:15

**share** [4] - 13:18, 48:12, 48:24, 57:1

**shared** [4] - 9:8, 16:4, 16:17, 17:3

**sharing** [1] - 41:2

**sheriff** [8] - 10:23, 23:8, 44:1, 44:4, 44:6, 45:16, 45:24, 46:9

**Sheriff** [11] - 16:11, 16:14, 16:18, 16:21, 16:24, 23:10, 25:2, 25:10, 32:3, 39:3, 39:17

**sheriff's** [4] - 23:4, 39:20, 44:11, 46:11

**sheriffs** [1] - 25:11

**short** [3] - 16:2, 68:23, 78:25

**show** [1] - 64:14

**showing** [1] - 14:19

**shut** [1] - 7:1

**sic** [1] - 55:16

**side** [6] - 50:9, 53:6, 65:20, 75:8, 75:9

**sides** [1] - 8:8

**Sidney** [2] - 64:5

**SIDNEY** [1] - 2:6

**sign** [2] - 19:18, 21:1

**signature** [2] - 21:17, 22:7

**signed** [8] - 19:22, 20:9, 20:19, 21:11, 21:12, 21:19, 22:22, 27:12

**signing** [2] - 18:3, 21:20

**similar** [1] - 72:12

**simply** [1] - 62:8

**Singer** [1] - 6:14

**SINGER** [3] - 3:11, 3:12, 6:13

**single** [1] - 61:7

**sit** [3] - 6:25, 60:15, 61:23

**site** [2] - 31:18, 31:23

**sitting** [1] - 60:20

**situation** [1] - 12:9

**situations** [1] - 66:7

**six** [3] - 13:9, 13:24, 64:23

**Sixth** [1] - 38:24

**slow** [1] - 63:16

**small** [1] - 32:17

**Smartmatic** [7] - 72:3, 72:5, 72:6, 72:9, 73:13, 73:14, 75:6

**social** [2] - 25:13, 25:14

**software** [1] - 27:6

**sole** [1] - 10:16

**solely** [1] - 41:14

**someone** [7] - 40:7, 57:20, 62:5, 66:17, 66:20, 67:5

**sometime** [3] - 27:17, 28:7

**somewhat** [1] - 72:24

**soon** [3] - 57:2, 76:13, 79:7

**sorry** [7] - 16:11, 36:9, 38:10, 40:3, 45:20, 57:23, 64:4

**sort** [1] - 54:24

**sought** [2] - 10:4, 29:10

**space** [2] - 69:8, 69:9

**SPEAKER** [3] - 66:19, 66:22, 66:25

**speaking** [2] - 7:8, 54:10

**specific** [14] - 11:13, 11:15, 13:9, 13:24, 32:3, 32:12, 61:21, 62:2, 63:19, 65:2, 68:18, 71:13, 73:19, 74:19

**specifically** [2] - 15:10, 23:3

**speed** [1] - 62:8

**spelling** [1] - 36:13

**spent** [2] - 9:9, 65:17

**spoiler** [1] - 70:22

**spoken** [2] - 37:2, 37:4

**sport** [1] - 67:8

**spread** [2] - 8:15, 9:3

**Sr** [1] - 6:19

**staff** [2] - 35:5, 35:8

**stamped** [1] - 12:4

**standard** [1] - 64:22

**standing** [1] - 59:21

**Stars** [1] - 2:15

**start** [3] - 27:21, 38:10, 78:21

**starts** [1] - 75:8

**State** [1] - 38:23

**States** [3] - 4:2, 23:6, 80:13

**STATES** [3] - 1:1, 2:1, 2:11

**stating** [2] - 5:11, 46:3

**STATUS** [1] - 2:10

**status** [15] - 5:9, 11:11, 13:10, 31:1, 38:2, 39:23, 42:7, 42:12, 43:2, 47:9, 52:24, 55:24, 58:5, 73:18, 74:19

**stay** [2] - 47:16, 79:9

**Stefanie** [4] - 6:4, 9:22, 38:20, 38:23

**STEFANIE** [2] - 3:2, 3:2

**stenographic** [1] - 80:5

**step** [2] - 15:1, 21:24

**Stephanie** [1] - 35:20

**Stephen** [1] - 5:15

**STEPHEN** [1] - 2:17

**steps** [2] - 55:6, 55:19

**stick** [1] - 71:22

**still** [9] - 68:19, 72:8, 73:15, 73:16, 73:20, 73:25, 74:11, 74:20, 77:20

**stop** [9] - 8:14, 8:24, 13:25, 14:9, 31:12, 53:23, 55:5, 57:19

**stopped** [2] - 52:21, 54:1, 54:16

**stopping** [2] - 9:16, 13:21

**stored** [1] - 34:13

**Street** [5] - 2:22, 2:25, 3:12, 3:15, 3:18

**styled** [1] - 38:22

**subject** [3] - 26:23,

50:13, 50:22

**submission** [2] - 69:13, 74:16

**submit** [4] - 57:2, 72:15, 72:19, 72:20

**submitted** [2] - 69:12, 71:15

**subpoena** [3] - 44:1, 44:10, 46:2

**subset** [1] - 62:20

**substantive** [1] - 37:23

**sued** [4] - 17:21, 17:22, 19:4, 44:15

**suffered** [1] - 60:18

**sufficient** [1] - 47:25

**suggested** [1] - 13:9

**suggestion** [1] - 56:1

**suit** [1] - 49:7

**Suite** [7] - 2:16, 2:22, 3:6, 3:10, 3:16, 3:19, 3:22

**supplemental** [1] - 74:19

**surprise** [1] - 70:20

**SUSMAN** [3] - 2:15, 2:18, 2:21

**Susman** [1] - 5:13

**switching** [1] - 59:2

**swoop** [1] - 61:24

**system** [2] - 27:3, 44:19

## T

**table** [1] - 7:9

**tablet** [3] - 33:21, 50:6, 50:7

**Tampa** [2] - 3:12, 3:13

**tasked** [1] - 27:4

**team** [3] - 16:8, 35:3, 35:4

**technology** [1] - 60:10

**template** [3] - 68:24, 69:11, 74:17

**term** [1] - 19:2

**terminated** [1] - 21:3

**terms** [5] - 20:22, 42:12, 57:8, 58:16, 64:8

**testimony** [1] - 25:17

**Texas** [3] - 2:23, 3:7, 3:10

**THE** [247] - 1:1, 2:1, 2:10, 2:11, 2:14, 2:24, 3:2, 3:5, 3:11, 3:14, 3:20, 3:21, 5:1, 5:16,

5:20, 6:2, 6:5, 6:8, 6:10, 6:15, 6:21, 7:2, 7:6, 9:24, 10:16, 11:17, 12:13, 13:20, 14:7, 15:20, 15:24, 16:20, 17:4, 17:7, 17:10, 18:1, 18:5, 18:17, 19:5, 19:8, 19:17, 19:21, 20:6, 20:12, 20:18, 21:5, 21:22, 21:24, 22:2, 22:7, 22:9, 22:13, 22:17, 22:21, 23:3, 23:7, 23:9, 23:13, 23:15, 23:19, 23:21, 24:1, 24:3, 24:6, 24:10, 24:13, 24:21, 25:1, 25:4, 25:7, 25:19, 26:5, 26:20, 27:9, 27:12, 27:17, 27:25, 28:4, 28:6, 29:6, 30:10, 31:19, 31:24, 32:2, 32:5, 32:9, 32:11, 32:18, 32:21, 32:25, 33:3, 33:6, 33:8, 33:10, 33:12, 33:15, 33:17, 33:20, 33:25, 34:2, 34:5, 34:10, 34:13, 34:17, 34:19, 34:22, 35:1, 35:4, 35:8, 35:12, 35:14, 35:16, 35:19, 35:21, 35:23, 35:25, 36:4, 36:7, 36:9, 36:11, 36:13, 36:15, 36:18, 36:24, 37:2, 37:6, 37:9, 37:12, 37:18, 38:6, 38:10, 38:17, 40:1, 40:4, 40:9, 40:21, 41:21, 42:1, 42:3, 43:13, 43:18, 43:21, 44:6, 44:22, 44:24, 45:1, 45:5, 45:10, 45:20, 45:22, 46:6, 46:16, 46:19, 46:22, 46:25, 47:5, 47:21, 48:3, 49:1, 49:9, 49:25, 51:6, 51:11, 51:13, 51:21, 52:3, 53:3, 53:6, 53:14, 53:17, 54:5, 54:18, 54:20, 55:3, 56:2, 56:8, 56:25, 58:3, 59:12, 60:23, 63:21, 63:25, 64:4, 64:7, 65:7, 65:10, 65:12, 65:17, 66:1, 66:5, 66:12, 66:14, 66:20, 66:23, 67:1, 67:25, 68:5, 68:8, 70:9,

70:12, 70:19, 70:21, 70:23, 70:25, 71:6, 71:19, 71:21, 72:11, 72:14, 72:16, 72:18, 72:23, 73:2, 73:5, 73:7, 73:17, 73:22, 74:2, 74:6, 74:13, 74:23, 74:25, 75:3, 75:13, 75:16, 75:18, 75:21, 75:23, 76:1, 76:6, 76:9, 76:15, 76:21, 77:7, 77:11, 77:14, 77:17, 77:24, 78:2, 78:4, 78:6, 78:11, 78:20, 78:24, 79:2, 79:5, 79:13

**themselves** [2] - 28:16, 63:11

**theoretically** [1] - 53:4

**therefore** [1] - 12:5

**they've** [5] - 39:16, 42:17, 59:10, 72:3, 72:4

**thinking** [1] - 30:18

**thinks** [2] - 10:12, 42:22

**third** [13] - 15:25, 22:25, 29:9, 37:7, 42:5, 54:6, 54:8, 54:14, 62:10, 76:19, 76:23, 78:19, 78:21

**Third** [1] - 2:25

**third-party** [1] - 78:21

**thoroughly** [2] - 21:20, 49:21

**threats** [2] - 8:20, 8:24

**three** [5] - 22:18, 38:8, 60:12, 66:25, 69:6

**throughout** [2] - 12:1, 27:24

**Thursday** [3] - 73:11, 73:20, 77:22

**tick** [1] - 76:4

**timeframes** [1] - 77:3

**timeline** [2] - 21:10, 77:10

**timing** [1] - 19:6

**Tobin** [2] - 6:6, 6:8

**TOBIN** [5] - 3:20, 3:21, 6:6, 6:9, 6:12

**today** [17] - 6:24, 7:8, 7:14, 7:18, 10:15, 12:20, 16:8, 26:8, 39:15, 45:5, 45:8, 53:21, 54:17, 57:7, 74:4, 76:8, 76:18

**today's** [1] - 59:21

**tolerance** [1] - 9:19

**tomorrow** [4] - 51:23, 57:5, 76:14

**tonight** [2] - 57:3, 57:4

**took** [6] - 9:13, 27:14, 28:8, 34:23, 58:10, 60:11

**towards** [2] - 43:2, 59:18

**trade** [2] - 28:17, 29:12

**traditional** [1] - 36:13

**tranche** [2] - 16:19, 22:23

**TRANSCRIBED** [2] - 2:10, 4:1

**transcript** [4] - 24:16, 66:21, 80:5, 80:6

**TRANSCRIPT** [1] - 2:10

**transformed** [1] - 8:16

**trauma** [2] - 60:18, 67:10

**travel** [1] - 60:5

**traveling** [1] - 65:18

**treason** [1] - 8:18

**trial** [2] - 59:19, 67:4

**true** [2] - 80:4, 80:5

**trust** [1] - 9:17

**try** [8] - 7:12, 8:12, 14:9, 14:10, 31:12, 38:14, 63:24, 66:3

**trying** [10] - 20:7, 21:10, 42:19, 49:17, 55:14, 58:21, 61:15, 62:23, 65:21

**turn** [2] - 18:6, 18:13

**turned** [4] - 21:21, 21:25, 39:24, 44:16

**turning** [2] - 18:8, 18:21

**turns** [2] - 57:18, 70:4

**tweet** [1] - 16:18

**tweeted** [2] - 16:10, 16:13

**tweeting** [1] - 16:8

**tweets** [1] - 11:2

**Twitter** [1] - 10:24

**two** [3] - 28:8, 28:25, 61:11

**twofold** [1] - 13:24

**type** [1] - 53:12

**U**

**U.S** [11] - 1:3, 1:11, 1:19, 2:3, 5:2, 5:4, 5:5, 5:7, 23:24, 27:5, 37:9

**under** [19] - 8:6, 9:25, 11:18, 11:19, 12:7, 13:19, 15:5, 18:8, 18:14, 23:5, 30:24, 47:2, 47:3, 54:22, 56:4, 56:7, 61:17, 66:15, 73:23

**underlying** [2] - 44:24, 45:1

**understood** [4] - 13:16, 39:16, 68:4, 68:7

**undertaken** [1] - 15:3

**undertaking** [10] - 18:3, 19:19, 19:22, 20:8, 20:19, 21:12, 21:13, 22:4, 22:22, 27:12

**underway** [3] - 15:3, 46:5, 47:1

**unfortunately** [1] - 71:3

**UNIDENTIFIED** [3] - 66:19, 66:22, 66:25

**unilaterally** [1] - 26:11

**united** [1] - 4:2

**United** [2] - 23:6, 80:13

**UNITED** [3] - 1:1, 2:1, 2:11

**universe** [1] - 38:12

**unknown** [1] - 8:16

**unless** [7] - 15:18, 40:7, 59:6, 66:10, 67:22, 69:8, 71:12

**unrelated** [2] - 53:20, 79:7

**up** [14] - 8:7, 13:7, 13:10, 29:23, 31:13, 42:8, 53:12, 62:5, 63:6, 64:14, 68:14, 69:12, 69:21, 78:25

**UPADHYAYA** [1] - 2:11

**update** [3] - 77:12, 77:19, 77:23

**utmost** [1] - 60:7

**V**

**valid** [1] - 19:2

**various** [2] - 73:10, 74:5

**vendor** [24] - 14:19, 14:21, 15:13, 15:14, 15:16, 29:25, 30:1, 31:18, 31:23, 49:5, 51:12, 51:16, 51:18, 51:19, 51:20, 52:7, 52:10, 52:11, 52:19, 53:1, 53:8, 53:11, 53:20, 53:25

**vendors** [2] - 42:15, 43:6

**verification** [1] - 55:18

**verify** [2] - 47:17, 50:11

**versa** [1] - 72:7

**version** [2] - 68:9, 76:17

**versus** [7] - 5:3, 5:5, 5:6, 5:8, 38:23, 43:2, 65:13

**via** [3] - 16:15, 76:19, 76:25

**vice** [1] - 72:7

**view** [1] - 60:21

**viewed** [3] - 11:2, 32:15, 33:24

**views** [1] - 72:20

**violate** [2] - 48:19

**violation** [3] - 7:24, 10:17, 10:18

**violations** [1] - 10:21

**violence** [1] - 8:25

**virtue** [3] - 7:21, 9:11, 71:4

**volume** [2] - 15:20, 15:24

**votes** [1] - 27:4

**voting** [1] - 8:16

**vs** [4] - 1:5, 1:13, 1:21, 2:5

**W**

**wade** [2] - 21:7, 75:18

**wait** [1] - 52:22

**waive** [1] - 19:1

**waiving** [1] - 20:16

**walk** [2] - 30:21, 31:15

**WALKER** [2] - 3:5, 3:9

**walking** [1] - 60:19

**wants** [3] - 52:18, 59:18, 65:24

**Washington** [7] -

**waste** [1] - 69:25

**water** [1] - 30:5

**Wednesday** [1] - 77:12

**week** [2] - 62:13, 75:10

**weekend** [1] - 9:7

**weeks** [2] - 28:8, 29:15

**welcome** [1] - 16:24

**wet** [1] - 30:5

**whereas** [2] - 62:25, 63:17

**whichever** [1] - 53:12

**whole** [1] - 61:24

**Wilmington** [1] - 3:16

**Wisconsin** [1] - 3:21

**wish** [3] - 7:16, 10:2, 68:24

**wishes** [2] - 58:12, 73:3

**withdraw** [1] - 56:14

**witness** [7] - 61:4, 61:10, 61:21, 64:13, 67:6, 67:13, 67:17

**witnesses** [5] - 59:25, 60:18, 61:20, 64:25, 65:2

**Word** [2] - 68:9, 70:6, 76:17

**work-product** [1] - 34:9

**works** [2] - 68:22, 77:15

**world** [1] - 12:1

**writ** [1] - 49:10

**wrongs** [2] - 8:23, 9:2

**wrote** [2] - 25:15, 52:7

**Y**

**years** [2] - 8:13, 65:17

**yield** [2] - 67:12, 67:13

**York** [1] - 2:20

**yourselves** [2] - 5:10, 67:11

**Z**

**zero** [2] - 9:19, 9:20

1:6, 1:14, 1:22, 2:6, 3:22, 4:4, 80:14

**Zoom** [5] - 65:13, 66:6, 67:11, 67:18, 71:5