IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

U.S. DOMINION, INC., et al.,

   *Plaintiffs / Counter-Defendants*,
Civil Action 1:21-cv-02131 (CJN / MAU) v

PATRICK BYRNE,

   *Defendant.*

<u>DEFENDANT, DR. PATRICK BYRNE'S SUR-REPLY
TO PLAINTIFF'S REPLY (DOCKET NO. 82)</u>

    Comes now Defendant, Dr. Patrick Byrne, by and through undersigned, and for his sur-reply to Plaintiff Dominion's Reply to Dr. Byrne's Response to Dominion's Motion to Disqualify Counsel and Emergency Motion for Protective Relief, provides the following.

1

Dr. Byrne's sur-reply has been arbitrarily limited to 5 pages, even though he pointed out in his motion to file said sur-reply that (1) Dominion improperly consolidated two motions when they sought to disqualify Mr. Byrne's chosen counsel *and* sought protective relief because Dominion alleges Mr. Byrne's counsel had violated this court's order when evidence of law violations were reported to law enforcement when criminal activity had been discovered in reviewing Dominion's records (records that were not trade secret or intellectual property); and (2) Dominion has taken liberties to litigate the questions before Your Honor in *ex parte* email and correspondence communications that have addressed substantive issues related to Dominion's improperly consolidated motions without proper procedures being adhered to (namely without providing the Dr. Byrne and the other parties an opportunity respond or participate).

These subsequent infractions on the part of Dominion warrant greater than 5 pages for a sur-reply and to address the additional conduct on the part of Dominion and its counsel. In any event, Dr. Byrne takes this opportunity to point out that there is a jurisdictional defect in Dominion's filing. The District of Columbia Circuit Court has not definitively ruled that counsel in litigation have grounds or standing even to seek disqualification of opposing counsel. Clearly, there are significant concerns in allowing opposing parties to be allowed to dictate through disqualification motions who their opponents may have representing them. Dominion might not like

undersigned counsel because she is the most qualified and knowledgeable about election fraud/election law and has exposed the truth of Dominion's shortcomings time and again in other litigation, and has persisted in seeking justice. Indeed, because of the knowledge of election related cases, coupled with her time as a prosecutor, undersigned is the most competent in the country to address the issues facing Dr. Byrne in this lawsuit. But, this does not give Dominion the right to seek disqualification of counsel as the remedy, and in any event, this Court not the opposing counsel presides over the case. Dominion simply cannot dictate who Dr. Byrne has as his counsel.

A finer point to this is that Dominion tries to distinguish the two protective orders; the one entered in *U.S. Dominion, et al. v. Lindell, et al.*, Case No. 1:21-cv00445 (CJN), Docket No. 145, and this one. But, as explained in Dr. Byrne's brief in response to Dominion's improperly consolidated and combined motions to disqualify counsel and to seek protective relief, the impetus for Dominion's seeking a protective order in the first place were pertaining to the subpoena issued– and Dominion overreaches by saying that the two protective orders (the one issued in the Lindell case) and the one at issue here are different – they are in effect identical – Dominion tried to "tailor" the other protective orders to cover all material based on its desire to protect what was only proprietary and sensitive commercial information. Dominion writes one sentence on p. 18 saying that the general protective order is

3

different, but wisely refrains from analyzing the identical language. And, Dominion's exhortation that the court simply "disregard all portions" of Dr. Byrne's arguments to this effect is disingenuous at best since a Court must examine the intent and meaning of the protective orders based on the actions and intent of the parties, which, in this case, was Dominion's ostensible desire to protect what it represents are commercially sensitive proprietary information and trade secrets despite performing governmental functions for election clerks. Dominion then used the protective order inappropriately to place false labels on all documents and classify all documents as confidential trade secret/intellectual property in order to prevent the law violations from seeing the light of day. The law violations were ongoing and continuous, and alerting the Dominion that its employees were under active criminal investigation would cause destruction and loss of evidence and witnesses. This is the very reason that law enforcement conducts investigations quietly until search warrants and arrests are made. Dominion should not be permitted to conceal evidence of law violations under false labels of trade secret or intellectual property especially where those documents evidence the interference and disruption of our Democracy and involve ongoing national security concerns.

    Secondary to this point is the fact that at the hearing held on March 18, 2024, the Court asked counsel whether there was any circumstance in which a lawyer would be able to disclose the existence of criminal conduct. The answer is that a lawyer may

disclose information where doing so might prevent substantial injury to the financial interests or property of another.  Hicks v. United States, 2010 U.S. Dist. LEXIS 137268. criminal activity found in as civil litigation's discovery and the answer is that in [date][ when the lawyer believes that the disclosure of certain information is necessary to prevent reasonably certain death or substantial bodily harm, or to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interests or property of another Hicks v. United States, 2010 U.S. Dist. LEXIS 137268.

    Dominion's self-serving response tries to argue that because the protective order does not mention county sheriffs, United States attorneys, or members of congress, etc., see Dominion's brief, p. 16, that this means the protective order absolutely excludes a party's ability to disclose criminal activity to these individuals. Of course, Dominion could not force someone not to turn over evidence of criminal activity that threatens national security and the integrity of national elections – foreign interference in elections is still occurring to this day and it is for all intents and purposes a direct attack on Democracy.  If this type of activity cannot be reported to law enforcement officers, the Department of Justice, and/or members of Congress, just because there is a strategically filed protective order that purports to cover trade secret and intellectual property, and false labels were utilized to provide evidence of law violations to opposing counsel. That is absurd.  What Dominion can do is try and

get this Court to disqualify undersigned and prevent Dr. Byrne from having the most experience and qualified counsel of his choice defend him in this litigation.

Respectfully submitted,

/s/ Stefanie Lambert

_____

Stefanie Lambert Junttila
Law Offices of Stefanie L. Lambert, PLLC
400 Renaissance Drive, FLOOR 26
Detroit, MI 48243 StefanieLambert.com
attorneylambert@protonmail.com Date:

May 1, 2024

## CERTIFICATE OF SERVICE

I, Stefanie Lambert, hereby certify that on May 1, 2024, true and correct copies of the foregoing were served via electronic filing on counsel in *US Dominion, et al. v. Patrick Byrne*, Case No. 1:21-cv-02131 (CJN).

        Respectfully submitted,

        /s/ Stefanie Lambert

        _____

        Stefanie Lambert Juntilla
        Law Offices of Stefanie L. Lambert, PLLC
        400 Renaissance Drive, FLOOR 26
        Detroit, MI 48243 StefanieLambert.com
        attorneylambert@protonmail.com Date:

May 1, 2024