# EXHIBIT 58

156 F.R.D. 96
United States District Court, D. New Jersey.

Steven M. KRAMER, Plaintiff,

v.

Laurence H. TRIBE, Harvard Law School, Jonathan Massey, Kenneth Chesebro and Ira Karasick.

Civ. A. No. 93–5361 (WGB).
|
July 15, 1994.

**Synopsis**
Attorney which had represented client on trial brought suit against client's appellate counsel, challenging amount of fees. Defendants moved for sanctions. The District Court, Bassler, J., held that attorney's conduct warranted dismissal of complaint, payment of appellate counsel's attorney fees, submission to attorney disciplinary authorities, and submission to criminal authorities.

Sanctions ordered.

**Attorneys and Law Firms**

 *97  Steven M. Kramer, pro se.

Ira Karasick, Hoboken, NJ, for Laurence H. Tribe, Jonathan S. Massey, and Kenneth J. Chesebro.

Sterns & Weinroth, Joel Sterns, Michael S. Stein, Trenton, NJ, for Laurence H. Tribe, Jonathan S. Massey, and Kenneth J. Chesebro.

Allan A. Ryan, Jr., Office of Gen. Counsel, Cambridge, MA, for Harvard Law School.

OPINION

BASSLER, District Judge:

This matter comes before the Court on the motion of Defendants, Laurence H. Tribe, Esq., Jonathan S. Massey, Esq., and Kenneth J. Chesebro, Esq., former appellate counsel for Lightning Lube, Inc. (collectively referred to as "Appellate Counsel"), for sanctions against the Plaintiff, Steven M. Kramer, Esq., former trial counsel for Lightning Lube, Inc. ("Lightning Lube"), pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927 and the Court's inherent authority to supervise and monitor the conduct of attorneys admitted to practice. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the following reasons, the Court will grant Defendants' motion.

*I. BACKGROUND*

In 1987, Plaintiff, Steven M. Kramer, Esq., was retained by Ralph Venuto, the principal of Lightning Lube, as trial counsel in the matter of *Lightning Lube, Inc. v. Witco Corp. et al.,* 802 F.Supp. 1180 (D.N.J.1992) *aff'd* 4 F.3d 1153 (3d Cir.1993). In April of 1991, Kramer met Defendant Laurence Tribe in connection with the unrelated case of *Fineman v. Armstrong World Industries, Inc.,* 774 F.Supp. 225 (D.N.J.1991), *rev'd in part,* 980 F.2d 171 (3d Cir.1992), *cert. denied* **98** 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993). (Second Amended Complaint ("Compl."), ¶ 3).

Kramer litigated a three-month jury trial in *Lightning Lube v. Witco* before this Court in the spring of 1992, resulting in a May 4, 1992 jury verdict in favor of Lightning Lube and against the Witco Corporation ("Witco") for approximately $11.5 million in compensatory damages and $50 million in punitive damages. *Lightning Lube v. Witco,* 4 F.3d at 1161.[1]

[1] Venuto and Lightning Lube subsequently sued Witco's counsel for malicious prosecution. This Court dismissed the Complaint in an unpublished Opinion. The Third Circuit affirmed this Court's ruling in *Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart,* 11 F.3d 385 (3d Cir.1993).

On June 23, 1992, Lightning Lube entered into an "Agreement of Representation" (the "Agreement") with Defendant, Laurence H. Tribe, to which Kramer alleged in this action he was a third party beneficiary. (Compl., ¶ 5). The Agreement was signed by Ralph Venuto, on behalf of Lightning Lube, Steven Kramer, Esq., and Laurence Tribe. (Compl., Ex. 1).

In response to Witco's post-trial motion for a judgment as a matter of law and a new trial in *Lightning Lube v. Witco,* this Court issued an Opinion and Order on September 2, 1992, granting the motion in part, and reducing Lightning Lube's recovery to $11.5 million. *Lightning Lube v. Witco,* 802 F.Supp. at 1203. Witco had also moved for a new trial based upon Kramer's witness tampering. This Court denied that motion, finding that, although Kramer had improperly approached witnesses, Witco failed to establish sufficient

prejudice arising from Kramer's actions to warrant a new trial. *Id.* at 1201.

On September 10, 1993, the United States Court of Appeals for the Third Circuit filed an Opinion and Order affirming this Court's September 2, 1992 Judgment Order in its entirety. *Lightning Lube v. Witco,* 4 F.3d 1153 (3d Cir.1993). On October 8, 1993, upon application to this Court for an Order granting it leave to do so, Witco deposited the sum of $11,547,542.79 in the Court Registry, pursuant to Federal Rule of Civil Procedure 67, Local Rule 35 and 28 U.S.C. § 2041.

Shortly after the money was deposited, numerous applications laying claim to the judgment proceeds were filed with this Court. Among those claims were Lightning Lube's motion for withdrawal of the entire amount, Kramer's claim for his disputed fee of $2,330,031.01, and the disputed claim for appellate counsel fees of Laurence H. Tribe, Esq., Jonathan S. Massey, Esq., and Kenneth J. Chesebro, Esq., in the amount of $2.75 million. [2]

[2] The judgment proceeds were ultimately distributed by this Court's Opinion and Distribution Order of January 27, 1994. The only amount remaining in the Court Registry is the $2.75 million claimed by Tribe, Massey and Chesebro. After numerous problems regarding the forum in which Appellate Counsel's fee dispute was to be decided, this Court issued an oral Opinion on June 13, 1994, and an Order, to which the parties consented, on June 14, 1994, memorializing the parties' agreement to have the matter submitted to binding arbitration before a mutually agreed upon neutral arbitrator. The $2.75 million will remain in the Court Registry until the resolution of that arbitration.

In the midst of the debate over the distribution of the judgment proceeds, on December 2, 1993, Kramer served a copy of his initial Complaint in this action, naming only Laurence Tribe, as a defendant. In January of 1994, Kramer added Massey, Chesebro, Ira Karasick and Harvard Law School. On March 29, 1994, in response to a motion for Rule 11 sanctions made on behalf of Appellate Counsel, Kramer filed his "Second Amended Complaint" (the "Complaint"), which deleted Ira Karasick as a defendant. [3]

[3] In response to Kramer's letter of March 4, 1994, and Michael S. Stein's responding letter of March 7, 1994, regarding Defendants' Motion for Sanctions, this Court entered a Letter Order on March 16, 1994. The effect of this Order was to allow Kramer 21 days within which he could withdraw or correct the submissions on which Defendants based their Motion for Sanctions under Federal Rule of Civil Procedure 11, as amended and made effective December 1, 1993. In response to the Court's Order, Kramer submitted a document to the Court entitled "Second Amended Complaint." This Complaint differs from Kramer's Amended Complaint only in that it deletes Ira Karasick as a defendant. The Court interpreted Kramer's Second Amended Complaint as a response to its March 16, 1994 Order and as a Notice of Dismissal of Kramer's Complaint against Ira Karasick. (May 10, 1994 Opinion & Order).

**\*99** The Seven Count Complaint against Tribe, Chesebro, Massey and Harvard University, alleged: (1) Breach of Contract against only defendants Tribe and Harvard Law School; (2) Fraud, against all of the named defendants; (3) Breach of Fiduciary Duty, against all of the named defendants; (4) Breach of Implied Covenant of Good Faith and Fair Dealing, against all of the named defendants; (5) Slander, against all of the named defendants; (6) Tortious Interference with Contract, against all of the named defendants; and (7) Negligence, against Harvard Law School.

In the early Spring of 1994, the parties submitted a number of motions with regard to Kramer's action against Appellate Counsel and Harvard Law School, including motions to dismiss, filed on behalf of both Appellate Counsel and Harvard, and Appellate Counsel's Motion for Sanctions against Kramer. By Opinion and Order of May 10, 1994, this Court granted both Harvard Law School's and Appellate Counsels' motions to dismiss on the merits, and reserved decision on Appellate Counsel's Motion for Sanctions pending receipt of supplemental materials requested at oral argument.

Defendants have since submitted the following supplemental materials: (1) "Certification of Mark D. Schorr In Support of Application For Attorney's Fees"; (2) "Certification of Kenneth J. Chesebro, Esq."; (3) "Affidavit of Jonathan S. Massey, Esq."; (4) "Affidavit of Laurence H. Tribe"; (5) "Certification of Ira Karasick"; and (6) a Letter Reply to Kramer's objection to the supplemental materials submitted by Defendants. Kramer submitted a Letter Opposition on May 16, 1994. Having received the supplemental materials

requested at oral argument, the Court can now address Appellate Counsel's Motion for Sanctions.

## II. DISCUSSION

*A. Appellate Counsel's Motion for Sanctions*

Defendants filed this Motion for Sanctions against Plaintiff, Steven M. Kramer, arguing that Kramer's self-proclaimed reason for filing this suit was to coerce the defendants into settlement regarding their fees in the *Lightning Lube v. Witco* matter. Kramer's settlement with Venuto and Lightning Lube in his own fee dispute included an agreement that Kramer would receive 25% of any amount by which Kramer could reduce Appellate Counsels' fees from $2.75 million. The means by which Kramer anticipated effecting this reduction was apparently the filing of this action. Defendants argue that Kramer's entire action was frivolous and was filed both in bad faith and for an improper purpose.

In this sanction motion Defendants seek the following relief:

(1) outright, immediate dismissal of this lawsuit, with prejudice;

(2) an order requiring Kramer to pay all expenses and attorney's fees incurred by defendants due to the filing of his complaint pursuant to Rule 11 and 28 U.S.C. § 1927;

(3) an order requiring Kramer to pay a sanction of $537,500—that is, a sum equivalent to the profit Kramer expected to gain if he succeeded with his extortionate strategy—into the Court registry pursuant to F.R.C.P. 11(c)(2);

(4) a referral to the Chief Judge of this Court and to the appropriate disciplinary authorities in all other jurisdictions (both federal and state) in which Kramer is a member of the bar for disciplinary proceedings pursuant to Local Rule 7 of the Federal District Court of New Jersey;

(5) a referral to law enforcement authorities for New York and New Jersey, both state and federal, including the U.S. Attorney for the Southern District of New York and the U.S. Attorney for the District of New Jersey, for investigation into possible violations of 18 U.S.C. § 1951(a), and New Jersey Code of Criminal Justice 2C:5–1 and 2C:20–5, and other state and federal criminal laws; and

(6) further relief as deemed appropriate by this Court.

(Defs.' R. 11 Br., at 2–3). Defendants seek sanctions against Steven Kramer under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927 and the Court's inherent power to **\*100** supervise and monitor the conduct of attorneys admitted to practice.

### 1. *Federal Rule of Civil Procedure 11*

Federal Rule of Civil Procedure 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *Lieb v. Topstone Indus. Inc.,* 788 F.2d 151, 157 (3d Cir.1986). When deciding whether to impose sanctions under Rule 11, a district court must evaluate the reasonableness of the signer's conduct at the time the pleading, motion, or other paper was submitted. *Dura Systems, Inc. v. Rothbury Investments, Ltd.,* 886 F.2d 551 (3d Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990).

The Third Circuit recognized in *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988) that the primary purpose of Rule 11 is to deter abuses of the legal system. Although a court may not impose a sanction that is punitive or that might drive an attorney out of practice, *id.,* the sanction imposed should be " 'the minimum that will serve to adequately deter the undesired behavior.'" *Id.* at 196 (quoting *Eastway Construction Corp. v. City of New York,* 637 F.Supp. 558, 565 (E.D.N.Y.1986), *order modified,* 821 F.2d 121 (2d Cir.1987), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)).

In *Lieb,* 788 F.2d at 158, the Third Circuit emphasized the discretion of the district court in tailoring an appropriate sanction:

> influenced by the particular facts of a case, the court may decide that the circumstances warrant imposition of only part of the adversary's expenses or perhaps only a reprimand. In other cases, reference to a bar association grievance committee may be appropriate. The compensatory, punitive, and deterrent aspects of sanctions may have varying claims to priority, depending on the nature of the

case and the violation, as well as on the standing of parties and counsel.

In *Langer v. Monarch Life Insurance Co.,* 966 F.2d 786, 810 (3d Cir.1992), the Third Circuit reiterated the broad scope of this discretion:

> the district court retains broad discretion in determining the "appropriate" sanction under the rule. What is "appropriate" may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances. Whatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose.

The recently amended Rule 11 incorporates these holdings and provides as follows:

> (b) **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

> (c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions state below, impose an appropriate sanction upon the attorneys ... that have violated subdivision (b)....

> *101 (2) **Nature of Sanction; Limitations.** A sanction imposed for a violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.... [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed.R.Civ.P. 11.

The Committee Notes on the revision of Rule 11 recognize that "the court has available a variety of possible sanctions to impose for violations, such as ... referring the matter to disciplinary authorities." Fed.R.Civ.P. 11 Committee Notes, 146 F.R.D. 583, 587 (1993).

As already noted by the Third Circuit, a district court has authority to dismiss an action "for reasons of deterrence and punishment." *Lightning Lube v. Witco,* 4 F.3d at 1179, n. 15 (citing *Guyer v. Beard,* 907 F.2d 1424, 1429 (3d Cir.1990) (under our jurisprudence district court may dismiss cases where party or counsel has "engaged in contumacious conduct" and where "the ends of justice would [not] be better served by a lesser sanction"); *TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir.1987) ("[c]ourts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices"); and *Shea v. Donohoe Const. Co.,* 795 F.2d 1071, 1077 (D.C.Cir.1986) (district court may dismiss case to "sanction conduct that is disrespectful to the court and to deter similar misconduct in the future" even absent showing of prejudice to other party)).

The applicable case law and the language of Rule 11, gives this Court the authority to impose all of the sanctions requested by Appellate Counsel, should the Court find that

Kramer acted in violation of the proscriptions contained in the Rule.

### 2. Title 28 U.S.C. § 1927

As Steven Kramer is both party and attorney in this action, it is also appropriate for the Court to consider the elements of 28 U.S.C. § 1927, briefly mentioned in defendants' requested relief. (Defs.' Br. at 2). Defendants apparently seek attorneys fees and excess costs from Kramer under 28 U.S.C. § 1927. Section 1927 provides in its entirety:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The Supreme Court stated in *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* at 422, 98 S.Ct. at 701. The fact that a plaintiff ultimately loses his case is not sufficient justification for an award of attorney's fees. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980).

As noted in this Court's May 10, 1994 Opinion and Order, Kramer's Complaint is meritless. Title 28 U.S.C. § 1927, therefore, specifically authorizes the Court to impose costs and award attorneys fees.

### 3. The Court's Inherent Disciplinary Authority

The Court also has inherent disciplinary authority to supervise and monitor the conduct of attorneys admitted to practice. *Chambers v. Nasco, Inc.,* 501 U.S. 32, 43–46, 111 S.Ct. 2123, 2132–34, 115 L.Ed.2d 27 (1991). "While this power 'ought to be exercised with great caution,' it is nevertheless 'incidental to all courts.'" *Id.,* at 43, 111 S.Ct. at 2132.

**\*102** Local Rule 7(E) codifies the courts' traditional authority over attorneys admitted to practice, and provides that:

> [w]hen misconduct or allegations of misconduct which, if substantiated, would warrant discipline of an attorney, shall come to the attention of a Judge of this Court, and the applicable procedure is not otherwise mandated by these Rules, that Judge shall refer the matter in writing to the Chief Judge.

Local Rule 7(E)(2). Defendants have requested that this Court refer this matter to the Chief Judge as well as to law enforcement and disciplinary authorities. Local Rule 7(E)(2) requires this Court to perform that duty if it becomes aware of misconduct on the part of a practicing attorney.

All of the relief requested by the Defendants is, therefore, within the Court's power under the standards articulated above. The Court reviews Kramer's conduct in light of these standards in order to determine: (1) whether his actions are sanctionable; and (2) if so, the appropriate sanction to be imposed.

### B. Steven M. Kramer's Sanctionable Conduct

Defendants are essentially arguing that Kramer filed this law suit to extort a share of Appellate Counsels' fee and to embarrass the Defendants, specifically Laurence Tribe. Defendants claim that Kramer launched a campaign against Tribe by sending copies of his Complaint to newspapers, law journals and other publications, while concomitantly distributing copies to members of the legal community, and that this campaign was designed to force Appellate Counsel to reduce their requested fee. A review of the chronology of events is appropriate to determine whether Kramer's actions are indicative of an improper and sanctionable motive.

Shortly after the November 12, 1993 oral argument on the post-judgment applications for release of the judgment proceeds in *Lightning Lube, Inc. v. Witco Corp.,* 802 F.Supp. 1180 (D.N.J.1992), *aff'd* 4 F.3d 1153 (3d Cir.1993), including the $2.75 million in fees to which Appellate Counsel asserts they are entitled, Kramer telephoned Ira Karasick, Esq., and threatened lawsuits and unfavorable publicity for Tribe, Chesebro and Massey, if they did not settle with Lightning Lube for a fee in the $600,000.00 range. (Karasick Cert. (1/10/94), ¶ 4). Kramer did not, at that time, have any authority to negotiate on behalf of Lightning Lube. (Stein Cert. (1/10/94), ¶ 3).

On November 24, 1993, Kramer faxed Mr. Karasick a "courtesy copy" of the first Complaint in this action, naming only Laurence Tribe as a defendant. (Karasick Cert. (1/10/94), ¶ 3). In separate telephone calls on December 16, 1993, Kramer told Mr. Karasick and Michael Stein, Esq., also counsel for Appellate Counsel, that he would "go to the press and ruin Mr. Tribe's reputation, and provide damaging information about Professor Tribe to Senator Hatch," if Appellate Counsel failed to accept a substantially reduced fee. (Karasick Cert. (1/10/94), ¶ 4; Stein Cert. (1/10/94), ¶ 2).

On December 22, 1993, Kramer called Karasick and threatened to add Kenneth Chesebro and Jonathan Massey as defendants in the action against Tribe if Appellate Counsel did not accept a settlement in the $600,000.00 range. (Karasick Cert. (1/10/94), ¶ 5). During this telephone conversation, Kramer also stated that "he and Ralph Venuto 'agreed' that [Karasick's] clients were wholly responsible for the loss of $650,000 prejudgment interest." (*Id.*)

On December 28, 1993, Kramer faxed to Jonathan Massey a notice to depose Ralph Venuto under the caption "*Steven M. Kramer v. Laurence Tribe, Jonathan Massey, and Kenneth Chesebro,* Civil Action No. 93–5361 (WGB)." (*Id.*) At that time, there had been no such action filed with the Court.

In December of 1993, Kramer contacted the Court numerous times to request release of his fee, then being held in the Court Registry, claiming that he had settled with Lightning Lube and Ralph Venuto. Ira Karasick, Esq., on behalf of Appellate Counsel, objected to the proposed distribution of any of the judgment proceeds in the Court Registry.[4] On or about December 30, 1993, Kramer **\*103** and Ralph Venuto entered into a settlement agreement in the action of *Lightning Lube v. Kramer,* Civ. Action No. 93–3878(JHR) which had been consolidated with *Kramer v. Lightning Lube,* 93–5021(WGB) before the Honorable Joseph H. Rodriguez, U.S.D.J., in the United States District Court for the District of New Jersey, in the Camden vicinage.[5]

[4] Mr. Karasick had filed a letter objection with the Court on December 6, 1993, arguing that none of the money in the Court registry should be released until after Appellate Counsel were paid, since the terms of the agreement of representation between Tribe and Venuto stated that all other claims were subordinate to Appellate Counsel's fee.

[5] The stipulations of dismissal disposing of both *Kramer v. Lightning Lube,* Civ. Action No. 93–5021 (WGB) and *Lightning Lube v. Kramer,* Civ. Action No. 93–3878 (JHR), were filed with the Clerk's Office in the United States District Court for the District of New Jersey, in the Camden vicinage, on January 5, 1994.

The agreement between Kramer and Venuto promises Kramer 25% of any amount of money by which he can reduce Appellate Counsel's fee from the requested $2.75 million. For example, if Kramer can compel Appellate Counsel to settle with Lightning Lube for $1.75 million, then Kramer would be entitled to $250,000.00 under his settlement agreement with Venuto.

On January 4, 1994, Kramer faxed Ira Karasick a draft of an Amended Complaint, in which Jonathan Massey, Kenneth Chesebro and Harvard Law School were added as defendants. (Karasick Cert. (1/10/94), ¶ 7). Kramer followed the facsimile transmission with a telephone call in which he told Karasick "that he would drop everything that he was doing and sue [Karasick] if [he] did not immediately call the Court and withdraw [his] objection to the release of Mr. Kramer's fee." (*Id.,* ¶ 8). On January 6, 1994, Kramer faxed Mr. Karasick a revised First Amended Complaint, adding Ira Karasick as a defendant. This revised Amended Complaint was filed with the Office of the Clerk on January 11, 1994.

On January 21, 1994, Appellate Counsel and Ira Karasick served a motion to dismiss the Complaint pursuant to Local Rule 12N. Appellate Counsel also filed a Motion for Sanctions with the Court. In response to the Motion for Sanctions and an Order from this Court, Ira Karasick was eventually dropped as a defendant. Because of delays caused primarily by Kramer, Appellate Counsel's motions were not heard by the Court until April 25, 1994.

Between Appellate Counsel's service of the Motion to Dismiss and the date of the oral argument, Kramer began litigating this case in the press, sending copies of his Complaint to newspapers and journals, including student-run newspapers at Harvard. Kramer engineered front-page stories in the February 11, 1994 editions of the *Harvard Crimson* and the *Harvard Law Record,* entitled: "Tribe Sued for Fraud, Slander, Negligence," and "Tribe, HLS Facing $5 Million Lawsuit," respectively. (Karasick Cert. (2/25/94), Ex. 3). Articles related to this litigation also appeared in the *Wall Street Journal* and the *New Jersey Law Journal,* among others.

Appellate Counsel and their attorneys have also received inquiries from an *American Lawyer* reporter and a law professor from the University of Minnesota, who had received copies of Kramer's Complaint. (*Id.,* Ex. 4). There is no way to be certain exactly how many publications, reporters and members of the legal community Kramer has contacted. The Court is confident, however, that not all of his actions in this matter have yet come to light.

Kramer has never contested these underlying facts. In his submission entitled "Reply of Steven M. Kramer in Support of Striking Tribe's Sanction Motion and for Costs," Kramer stated:

> In his opposition, Tribe states that Mr. Kramer "does not dispute our description of his actions and motives, or in fact any of our central points." (Opposition, p. 2). This statement is ludicrous. Tribe's baseless attacks on Mr. Kramer are so absurd that they do not warrant a dignified response. These ad hominem attacks on Mr. Kramer only bespeak the intellectual poverty of Tribe's legal arguments and are an insult to this Court, for it suggests that this Court would be distracted by such an **\*104** unprofessional argument. That Mr. Kramer's central focus in filing the complaint was the bona fide exercise of his legal rights is indisputable.

(Kramer's Reply, at 2). Contrary to Kramer's conclusory argument, Defendants' assertion that their "description of Kramer's actions and motives is undisputed," does "warrant a dignified response." Kramer has failed or refused to provide any response to Appellate Counsel's substantiated recitation of the facts, let alone a dignified one. The Court, therefore, finds the factual summary set forth above to be a true and accurate representation of Kramer's conduct in this matter and will judge his actions accordingly.

*C. Steven M. Kramer's History of Improper Conduct*

Defendants forcefully argue that Kramer's more than 36 publicly reported instances of violating rules of professional conduct should weigh in favor of sanctioning him in this instance. (Defs.' Br. at 12–20 citing *e.g. Kingsepp v. Wesleyan University,* 142 F.R.D. 597, 600–602 (S.D.N.Y.1992); *Fineman v. Armstrong World Industries, Inc.,* 774 F.Supp. at 275; *In the Matter of Steven M. Kramer,* 193 A.D.2d 222, 602 N.Y.S.2d 831 (N.Y.A.D. 1st Dept., 1993); *In the Matter of Steven M. Kramer,* 130 N.J. 536, 617 A.2d 663 (1993) and *Lightning Lube, Inc. v. Witco Corp.,* 802 F.Supp. 1180, 1201 n. 10 (D.N.J.1992), *aff'd* 4 F.3d 1153, 1179 n. 15 (3d Cir.1993)).

As discussed, both the case law interpreting Rule 11 and the amendments make clear that the purpose of sanctions is to deter future violations, and that sanctions should not be more severe than those necessary to deter repeated violations of the rule. *See* Fed.R.Civ.P. 11(c)(2); *Doering,* 857 F.2d at 194–96. It is, therefore, appropriate to consider past conduct in determining both whether sanctions should be imposed and the nature of any sanctions to be imposed.

With what the Court can only conclude was a significant investment of time and resources, Defendants assembled an appendix containing a history of Kramer's career in published and unpublished cases, beginning with the year he was admitted to the Bar. (*See* "Appendix in Support of Defendants' Motion for Sanctions," A–1 through A–36). This history is summarized below:

(1) In *Giordano v. Witzer,* 558 F.Supp. 1261, 1262 (E.D.Pa.1983), the plaintiff, who was represented by Kramer, had his Complaint dismissed. Chief Judge Luongo opined that: "The pleadings in this case are, to say the least, frightful. In excess of one hundred pages of exhibits are appended to the amended complaint. Included in this morass of paper are the agreement of sale for Seller's assets and the supporting documentation." *Id.* at 1262. The court concluded that the agreement clearly demonstrated the parties' desire to litigate any disputes over the agreement in the Court of Common Pleas for Delaware County, rather than a federal district court, and dismissed the amended complaint accordingly. (A–1).

(2) In *International Mining Co. v. Allen & Co.,* 567 F.Supp. 777, 789–90 (S.D.N.Y.1983), Judge Sweet dismissed International Mining Company's ("IMCO's"), Complaint under Federal Rule of Civil Procedure 37(b)(2)(C), for failure to respond to discovery. Kramer was IMCO's counsel. In making his ruling, Judge Sweet stated that:

> IMCO's complete failure to produce documents, after representation of its counsel in open court that production was forthcoming, can only be described as willful and shows its disrespect not only for its discovery obligations, but also for this court. Its intransigence in supplying adequate answers to Allen's interrogatories rises at least to the level of gross negligence.

*Id.* at 789. (A–2).

(3) In *LeMaster v. Bull,* 581 F.Supp. 1170, 1173 (E.D.Pa.1984), the Honorable Louis H. Pollak, U.S.D.J., assessed attorney's fees under 15 U.S.C. § 77k against defendants represented by Kramer, "due to the clear lack of merit and frivolous nature of the defenses raised." (A–3).

(4) In *Rubin v. Buckman,* 727 F.2d 71, 72 (3d Cir.1984), the Third Circuit vacated the district court's order, but affirmed its finding that "plaintiff or his attorneys [Kramer among them] had either intentionally deceived **\*105** the court, 'so as to be in a position to nullify any adverse judgment,' or had been reckless, and in either event had committed 'a flagrant violation' of Fed.R.Civ.P. 11." (A–4).

(5) In *Caplan v. Fairchild Publications Corp.,* 13 Media L.Rep. 1571, 1573, 1986 WL 10782 (E.D.Pa.1986), *aff'd* 815 F.2d 693 and 815 F.2d 694 (3d Cir.1987), the district court dismissed plaintiff's complaint in accordance with Federal Rule of Civil Procedure 37(b), finding that "the record establishes willful disobedience and bad faith on the part of plaintiff and his counsel," in providing discovery and failing to abide by the court's orders. The Court further found that "the imposition of attorney's fees incurred by defendant is not an effective deterrent," as that sanction had twice been imposed "with no apparent effect." *Id.* (A–5).

(6) In *Pearline Gregory v. Saks & Co.,* 1986 WL 10666, No. 85–1853, slip. op. (E.D.Pa. Sept. 25, 1986), the district court criticized Kramer for accusing defendants' witnesses of perjury in his summation, advising him at a sidebar colloquy with counsel, that "this is not the way we try a case in federal court." (A–6).

(7) In *In re E.F. Hutton Banking Practices Litigation,* 663 F.Supp. 123, 125 (S.D.N.Y.1987), the court dismissed a fraud/RICO complaint filed by Kramer, given "the absence of any colorable allegation of misrepresentation, omission or deceptive conduct of any kind." (A–7).

(8) In *Silverman v. Weil,* 662 F.Supp. 1195, 1201 & n. 14 (D.D.C.1987) *aff'd without opinion,* 839 F.2d 824 (D.C.Cir.1988), the court dismissed another fraud/RICO complaint filed by Kramer after he had "been given four opportunities to draft an adequate complaint" and had repeatedly "made gross and misleading misrepresentations in various pleadings and statements to this Court." (A–8).

(9) In *Seiffert v. Green,* 1987 WL 26670, Civ. No. 81–1956, slip. op. (E.D.Pa. Dec. 8, 1987) the court both assessed attorney's fees and costs against Kramer and limited his client's proof at trial as sanctions for Kramer's "noncompliance with discovery requests and this Court's Order." (A–9).

(10) Also in *Seiffert v. Green,* 1988 WL 2068, Civ. No. 81–1956, slip. op. (E.D.Pa. Jan 13, 1988), the court noted that a fee application submitted by Kramer made statements "directly contradictory" to those he made in open court, concerning whether he had written a 20–page brief, and finding it "utterly incomprehensible" that it took Kramer 4.8 hours to prepare a "scratched out and pasted up brief" of 8 pages drawn from a boilerplate motion in another case. (A–10).

(11) In *Kravinsky v. Wolk,* 1988 WL 84748, Civ. No. 86–4820, slip. op. (E.D.Pa. Aug. 11, 1988), *aff'd without opinion,* 869 F.2d 589 (3d Cir.1989), the court stated that Kramer's "failure to comply with orders and rules of this court," including his failure to attend a scheduled court appearance or offer any explanation for his absence, would fully justify imposing sanctions on him, but declined to impose sanctions given absence of proof that his client acquiesced in the wrongdoing. (A–11).

(12) In *Flip Side Productions v. Jam Productions,* 843 F.2d 1024, 1036–37 (7th Cir.) *cert. denied* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988), the Seventh Circuit affirmed an award of $42,496.25 in attorney's fees against Kramer's client, Flip Side, because at the conclusion of discovery, Flip Side failed to dismiss Tempo as a defendant even though it should have been clear that it had no evidence of any anti-trust violation. (A–12).

(13) In *Astron v. Nationwide Lending Co., Inc.,* 1989 WL 35414, Civ. No. 87–4729, slip. op. (E.D.Pa. Apr. 10, 1989), the district court denied Kramer's motion for a new trial on the grounds that it lacked "even a semblance of merit." (A–13).

(14) In *Getaway Travel, Inc. v. City of Philadelphia,* 1989 WL 24859, Civ. No. 88–3126, slip. op. (E.D.Pa. Mar. 15, 1989) the district court dismissed an anti-trust action in which the court found that Kramer's client could not possibly succeed, where Kramer had asserted state law claims having "no basis in law." (A–14).

**\*106** (15) In *Gray v. Home Shopping Network, Inc.,* 1989 WL 52439, Civ. No. 88–5159, slip. op. (E.D.Pa. May 17, 1989), the district court granted summary judgment against the plaintiff, represented by Kramer, because he offered only hearsay evidence in opposition to the motion. The court noted that "it is at least questionable whether the claim for punitive damages ... could have been made in good faith." (A–15).

(16) In *Matthews v. Freedman,* 128 F.R.D. 194, 202–04 (E.D.Pa.1989), *aff'd sub. nom., Appeal of Kramer,* 919 F.2d 135 (3d Cir.1990), the district court reprimanded Kramer and ordered him to pay $9,404.53 in attorneys' fees for advancing "frivolous legal assertions." The court also referred the matter to the disciplinary review board of the Supreme Court of Pennsylvania for whatever action they deemed appropriate. In imposing sanctions and reprimanding Kramer, Judge Gawthrop stated that "[r]eview of public court orders and opinions reveals that attorney Kramer, individually or jointly with his clients, has been sanctioned on numerous occasions for violations of the Federal Rules, including Rule 11." (citations omitted).

(17) In *Matthews v. Freedman,* 882 F.2d 83 (3d Cir.1989), the Third Circuit fined Kramer $250.00 for refusing to concede an appeal in light of a Supreme Court decision "patently dispositive of the issues." The Third Circuit stated further that "[t]he absence of a specific appellate rule comparable to Fed.R.Civ.P. 11 does not give counsel the privilege to file a frivolous appeal or maintain one after subsequent and binding precedent demonstrates that the appeal no longer has merit," and warned Kramer that it would "not hesitate to apply sanctions in a sequential manner" against him in the future. (A–17).

(18) In *Schwartz v. Hosp. of the Univ. of Pennsylvania,* 1989 WL 64286, Civ. No. 88–4865 (E.D.Pa. June 12, 1989), the district court awarded the defendants attorneys' fees and costs based upon a finding that Kramer and his client had both "acted in bad faith" in attempting to renege on a settlement agreement. (A–18).

(19) Again in the matter of *Schwartz v. Hosp. of the Univ. of Pennsylvania,* 1989 WL 80322, Civ. No. 88–4865 (E.D.Pa. July 18, 1989), the district court stated that "[t]he plaintiffs, along with Kramer, have unreasonably increased the cost of litigation in this matter." (A–19).

(20) In *Cellar Door Productions, Inc. v. Kay,* 897 F.2d 1375, 1379 & n. 3 (6th Cir.) *cert. denied* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 38 (1990), the Sixth Circuit affirmed an award of attorneys' fees and costs for the failure of plaintiff's counsel, Kramer, to disclose the related prior action "in violation of the rules of this Court and the clear directives of the [filing] form." (A–20).

(21) In *Lightning Lube, Inc. v. Witco Corp.,* Civ. No. 87–3243, slip op., 9–11 (D.N.J. May 4, 1990), the Honorable Jerome B. Simandle, U.S.M.J. (now District Judge Simandle), sanctioned Kramer for obtaining "proprietary and confidential" information from Witco that he was under court order not to disclose, and then "violat[ing] the court's protective order" by leaking it to the press. Kramer was ordered to pay Witco's attorneys' fees and costs because of his "harassing misuse of discovery." The court noted that Kramer's actions were apparently "calculated to harass and harm Witco, with the hope of possibly coercing favorable settlement from Witco, based upon the prominent disclosure of confidential information," and that he had ignored explicit warnings from his adversaries to avoid such conduct. (A–21).

(22) For a third time in the matter of *Schwartz v. Hosp. of the Univ. of Pennsylvania,* 1990 WL 198750, Civ. No. 88–4865 (E.D.Pa. Nov. 30, 1990), Kramer's clients were sanctioned and prohibited from introducing designated matters into evidence after repeated failures to respond to discovery. (A–22).

(23) In a matter emerging from *Flip Side Productions v. Jam Productions,* 1991 WL 61467, Civ. No. 82 C 3684 (N.D.Ill. Apr. 16, 1991), after Kramer's former clients, Flip Side, brought an action against him to pay in excess of $90,000.00 in Rule 11 sanctions for a frivolous RICO/antitrust suit, Kramer moved to disqualify Flip Side's new attorney on the grounds that he supposedly represented Kramer as well. In denying the motion, **\*107** the district court noted that

the baseless motion was "somewhat bizarre" and "at best disingenuous." (A–23).

(24) In the district court's decision on the merits of Flip Side's action against Kramer in *Flip Side Productions v. Jam Productions,* 1991 WL 277617, Civ. No. 82 C 3684 (N.D.Ill. Dec. 20, 1991), it found in Flip Side's favor and against Kramer, "as it is and always has been clear that Kramer was the principal architect of plaintiff's misguided efforts" to continue to pursue frivolous litigation. (A–24).

(25) In *Fineman v. Armstrong World Industries, Inc.,* 774 F.Supp. 266, 269, 274–75 & nn. 13–16 (D.N.J.1991) *aff'd in relevant part,* 980 F.2d 171 (3d Cir.1992), the district court noted that "Kramer's conduct throughout the course of this trial has led to the imposition of a restraining order, consideration of motions for a mistrial, delays resulting therefrom, and more," and ultimately concluded that "that plaintiffs' counsel deliberately set out to sabotage Armstrong's defense in every way possible, without regard to rules of conduct, rules of law, and orders and directions from this Court."

The court also noted that:

> In a further, bizarre development which just came to the Court's attention, a circumstance which might even be considered humorous if presented in isolation, the Court has learned that, since October 11, 1990, Mr. Kramer has been unauthorized to practice law in the State of New Jersey for failure to make his required contributions to the Clients' Security Fund. Considered in the context of Mr. Kramer's other conduct in connection with this case, however, both inside and outside the courtroom, this development is but further evidence of Mr. Kramer's complete disregard for rules and procedures governing the propriety and civility of an attorney's conduct. Regretfully, his transgressions of this sort have not been limited to the present matter.

*Id.* at 275. (citations omitted). (A–25).

(26) Again in *Lightning Lube, Inc. v. Witco Corp.,* Civ. No. 87–3243, slip op., 3–4 (D.N.J. June 10, 1991), Kramer was sanctioned, this time for writing to the Security Exchange Commission, in violation of Local Rule 36, with a prediction that Witco could suffer a $200+ million verdict. The Honorable Joseph H. Rodriguez, U.S.D.J., entered an order compelling Kramer to cease such conduct in order to "guarantee the defendant a fair trial by a panel of impartial jurors," observing that "[o]n two prior occasions Kramer was ordered by courts in this District to abide by Rule 36." Judge Rodriguez characterized Kramer's intolerable behavior as indicative of a " 'settle or I will tell' philosophy" through actions which "reflect an intent to threaten and coerce a settlement and to disseminate to the public the amount of damages he claims will be recovered." (A–26).

(27) In *Kingsepp v. Wesleyan University,* 142 F.R.D. 597, 600, 602 (S.D.N.Y.1992), the district court disqualified Kramer from serving as class counsel given his "documented failures to comply with ... court orders, statutory requirements, and the Federal Rules of Civil Procedure," and his pervasive misconduct in the case. The court stated that Kramer "is not an attorney to be entrusted to conduct the proposed litigation." (A–27).

(28) For a third time in *Lightning Lube, Inc. v. Witco Corp.,* 802 F.Supp. 1180 (D.N.J.1992), Kramer's misconduct was at issue. In its motion for a new trial, Witco's relied upon Kramer's improper conduct. Although this Court denied Witco's motion, there was no doubt in the Court's mind that Kramer had, in fact, approached witnesses in an attempt to improperly influence their testimony. *Id.* at 1201, n. 10. (A–28).

(29) Also in *Lightning Lube, Inc. v. Witco Corp.,* 144 F.R.D. 662, 668, 671 (D.N.J.1992), this Court was faced with Lightning Lube's motion for attorneys' fees and costs, filed by Kramer against Witco, for its allegedly unfounded assertion of a counterclaim. This Court denied Lightning Lube's motion in light of Kramer's own "pernicious" and "egregious misconduct" at trial. (A–29).

(30) In *Schwartz v. Steven Kramer and Associates,* Civ. No. 90–4943 (E. D.Pa. Sept. 30, 1992), the district court denied Kramer's motion to dismiss his former client's malpractice **\*108** action against him, finding that the complaint adequately stated a cause of action against Kramer "arising

from a purported fraudulent scheme to induce plaintiffs into settling litigation." (A–30).

(31) In *Vangarelli v. Witco Corp.,* 808 F.Supp. 387, 389–90 & n. 4 (D.N.J.1992) the district court was forced to "direct its resources to deciding ... a motion for recusal, when even a cursory investigation of the facts would have revealed the spuriousness of the allegations." Kramer claimed that former Governor Byrne, a member of defense counsel's firm, had appointed Judge Rodriguez to a commission, when, in fact, Judge Rodriguez had been appointed by another governor. In denying the motion, Judge Rodriguez noted that "this is not the first time Mr. Kramer has alleged that I have a conflict of interest, based on patently erroneous grounds." (A–31).

(32) In *In the Matter of Steven M. Kramer,* 130 N.J. 536, 617 A.2d 663 (1993), Kramer was publicly reprimanded for "gross neglect," "failure to act with reasonable diligence," "failure to withdraw as counsel when discharged," and "failure to cooperate with the ethics authorities." (A–32).

(33) Again, in *Fineman v. Armstrong World Industries, Inc.,* No. 84–3837, slip op., 1993 WL 414752 (D.N.J.1993), the Honorable John W. Bissell, U.S.D.J., condemned Kramer, holding that his "actions in contacting the press about a motion which was objectively baseless, before filing and service had been accomplished, on the eve of the annual meeting [of the defendant's stockholders], raises the inescapable inference that he perverted that motion to harass [the defendant] and/or generate settlement leverage." Judge Bissell ordered a new trial and required co-counsel to be prepared to take over the entire case given the likelihood that during the retrial Kramer's "meddlesome, diversionary, malicious communications" with government and industry organizations, and his "improper remarks and attacks before the jury" would resume. (A–33).

(34) In *In the Matter of Steven M. Kramer,* 193 A.D.2d 222, 602 N.Y.S.2d 831 (N.Y.A.D. 1st Dept.1993), Kramer was censured for "acts of professional misconduct." The New York Court of Appeals stated that he "neglected a legal matter entrusted to him," "represent[ed] the client after he ha[d] been disqualified by court order," and "fail[ed] to cooperate with the disciplinary committee." (A–35).

(35) In *Lightning Lube v. Kramer,* Civil Action No. 93–3878 (JHR), which has since been settled, the Honorable Jerome B. Simandle, U.S.D.J., entered an Order to Show Cause with Temporary Restraints against Kramer, on August 27, 1993, prohibiting him from forcing his former client, Lightning Lube, into involuntary bankruptcy. Judge Simandle's order also restrained Kramer from divulging any confidential information about his former client. (A–35).

(36) Finally, on September 10, 1993, the United States Court of Appeals for the Third Circuit affirmed this Court's decision in the matter of *Lightning Lube, Inc. v. Witco Corp.,* 802 F.Supp. 1180 (D.N.J.1992), *aff'd* 4 F.3d 1153, 1179 n. 15 (3d Cir.1993). In its Opinion, the Third Circuit admonished Kramer for his unethical conduct at trial, stating:

> We do not ignore the seriousness of Kramer's attempt to interfere with opposing witnesses. This conduct threatened to undermine the integrity of the trial proceedings and demonstrated a complete disregard of his obligations as an officer of the court.

*Lightning Lube v. Witco,* 4 F.3d at 1178. After deciding to uphold this Court's decision to deny the post-trial motion of Witco Corporation ("Witco") for a new trial on account of Kramer's improper conduct, the Third Circuit unequivocally warned Kramer that through his actions he risks having claims that he takes to court dismissed, whether there is prejudice or not, stating that:

> In these circumstances, even though we do not think Witco was prejudiced by Kramer's conduct, it might well be that we should simply dismiss this action for reasons of deterrence and punishment.... [citations omitted]. But after most careful consideration, we have decided not to take that step because the remedy for misconduct should be decided by the district court and that court did not dismiss the **\*109** case. The message which we do not wish to send is that misconduct which is not prejudicial may never

lead to dismissal of a complaint or suppression of defenses.

*Id.,* at 1179, n. 15.

Less than a year after the Third Circuit's warning, Kramer is before this Court to again defend against allegations that he has engaged in unethical and inappropriate conduct in this related action.

*D. Sanctions Necessary for Deterrence and Punishment*

In reviewing the factual background detailed above, Kramer's history of unethical conduct before this and other courts of law, the existing precedents and the provisions of Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927 and the Court's inherent disciplinary authority, the Court finds that: (1) Kramer's attempts to prosecute this action against Appellate Counsel and Harvard Law School were for an improper purpose under Federal Rule of Civil Procedure 11(b)(1); (2) Kramer has argued an unmeritorious claim long after it should have been obvious that it had no support in violation of Rule 11(b)(2) (as set forth in this Court's May 10, 1994 Opinion); (3) Kramer has demonstrated before this Court, his improper motives in implementing litigation strategies, which included, broadcasting his dispute with Tribe for no other purpose than to make good on a threat and "ruin Mr. Tribe's reputation"; (4) Kramer multiplied the proceedings in the case unreasonably and vexatiously in violation of 28 U.S.C. § 1927; and (5) his litigation practices in this case, and in other cases, have been abusive and harassing.

Having found Kramer's conduct sanctionable, the Court must now address the issue of the appropriate sanctions under the circumstances. In fashioning the appropriate sanctions here, the Court recognizes the need for sanctions that not only punish Kramer, but deter similar conduct by him and others in the future. The Court recognizes the need to send a message that actions like those that Kramer seems disposed to take, are unacceptable in the practice of law.[6]

---

[6] The Court is mindful of the perceived loss of integrity in the legal profession in recent years. In his new book, *The Betrayed Profession,* Sol M. Linowitz, Esq., focuses on the decline in professionalism during the course of the past five decades in which he has been involved in the practice of law. Mr. Linowitz cites some alarming statistics:

> The American Bar Association's Commission on Professionalism reported in 1986 that only 6 percent of corporations rated "all or most" lawyers as deserving to be called "professionals." Only 7 percent thought professionalism was increasing among lawyers, and 68 percent thought it was decreasing. No fewer than 55 percent of the nation's state and federal judges responded to a similar questionnaire with the view that lawyer professionalism was in decline. A 1993 poll by the *National Law Journal* found that almost a third of Americans thought lawyers were "less honest than most people."

Sol M. Linowitz, *The Betrayed Profession, Lawyering at the End of the Twentieth Century* 24 (1994). Mr. Linowitz asks, in the face of society's evident negative perception of the profession, "Can we really live with those numbers?" As is clear to Mr. Linowitz, and as is clear to this Court, we cannot live with these numbers. We must do all that we can to restore the country's faith in its system of justice. We must not allow justice to sink into the depths of the primitive wergeld system it is so often perceived to be.

The Court notes with dismay that Kramer's apparent approach to litigating this case and negotiating its settlement, not in the court room, but in the media, is not an isolated incident in his career, nor, by and large, in the legal profession.[7] With increased frequency practicing attorneys are utilizing the media to publicize their cases as a litigation tactic. This must stop if the integrity of the judicial enterprise is to be preserved. Not only is it disruptive, wasteful and inherently prejudicial, but it is also a **\*110** clear violation of the Rules of Professional Conduct. *See e.g.* RPC 3.6(a) and RPC 8.4.[8]

---

[7] *See* Jan Hoffman, *May It Please the Public,* N.Y. Times, April 22, 1994, at B1, B7 (citing Bruce Cutler's defense of John Gotti (Cutler was convicted of criminal contempt); Ira D. London's defense of Joel Steinberg (Although the order was overturned, the trial court ordered London and other attorneys in the case to stop talking to reporters); Eric Nailburg's defense of Amy Fisher (Nailburg was one of several attorneys barred from

speaking to the media until the statutory rape charges against Joey Buttafuoco were resolved); and William M. Kunstler's defense of Colin Ferguson (both Kunstler, as defense counsel, and the prosecution were restricted from speaking to the press about the Long Island Rail Road shootings for which Ferguson was to be tried).

8   RPC 3.6(a) provides as follows:
   (a) A lawyer shall not make an extrajudicial statement that a reasonable lawyer would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.
   RPC 8.4 provides as follows:
      It is professional misconduct for a lawyer to:
   (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice;
   (e) state or imply an ability to influence improperly a government agency or official;
   (f) knowingly assist a judge or judicial officer in conduct that is a violation of the Code of Judicial Conduct or other law;
   (g) engage, in a professional capacity, in conduct involving discrimination (except employment discrimination unless resulting in a final agency or judicial determination) because of race, color, religion, age, sex, sexual orientation, national origin, marital status, socioeconomic status, or handicap, where the conduct is intended or likely to cause harm.

Kramer's actions reveal a pattern of behavior wherein he takes whatever steps are necessary to dragoon a settlement. He has threatened his adversaries with meritless harassing law suits and when those threats fail to motivate them to act in conformity with his desires, files the suits, resulting in a waste of time and resources for the parties as well as the courts. His conduct is in clear violation of RPC 3.1 and RPC 3.2.[9] This kind of conduct cannot be tolerated from a practicing attorney. The Court can only conclude, based upon the record before it, that Kramer has either lost the capacity to practice law in the discerning and responsible manner required of practicing attorneys, or that he has purposely ignored his responsibilities as an officer of the court. In either case, sanctions are appropriate and necessary to protect the parties, the public and the judicial process.

9   With regard to civil matters, RPC 3.1 provides as follows:
   A lawyer shall not bring or defend a proceeding, nor assert or controvert an issue therein unless the lawyer knows or reasonably believes there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.
      RPC 3.2 provides as follows:
   A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client and shall treat with courtesy and consideration all persons involved in the legal process.

Kramer's litigation tactics in this case and others amount to more than simply a lack of professional civility which the Seventh Circuit found so distressing in its Final Report of the Committee on Civility of the Seventh Federal Judicial Circuit.[10] For over a decade Kramer has adopted a "Rambo"-style approach to litigation, by manipulating his clients, the courts, juries, adverse parties and attorneys. This motion for sanctions is only the most recent of a long stream of such applications to the courts.

10   The Committee stated that:
      A lack of civility can escalate clients' litigation costs while failing to advance their interests or bring them closer to their ultimate goal of ending disputes. Time expended in "Rambo"-style discovery can hinder or prevent litigation parties [sic] from getting to the heart of the important contested issues. Furthermore, with today's overcrowded dockets, judicial time is wasted resolving needless (often petty) disputes, which, in turn, deprives those litigants who are ready for trial of the opportunity for a more expeditious hearing. Everyone is harmed.
   (Final Report, at 6).

The practice of law requires respect for, and adherence to, standards of conduct. It is compliance with those standards that serve to define what it means to be a member of a profession. It is the obligation of every attorney to ensure that the public's trust in the judicial process is maintained. It is also the obligation of every judge.

*III. CONCLUSION*

In light of the Third Circuit's recent admonition, it should come as no surprise to Kramer, that, with respect to his actions in this case, for purposes of deterrence and **\*111** punishment pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927 and the Court's inherent power, this Court will: (1) dismiss his Complaint, as an alternative grounds for dismissal, since this Court already dismissed the action on the merits in its May 10, 1994 Opinion and Order; (2) refer the matter to the Chief Judge of the United States District Court for the District of New Jersey for disciplinary proceedings pursuant to Local Rule 7; (3) refer the matter to the Office of Attorney Ethics for the State of New Jersey, for disciplinary proceedings; (4) with respect to the alleged violations of 18 U.S.C. §§ 875(d), 876, and 1951(a), and New Jersey Code of Criminal Justice 2C:5–1 and 2C:20–5 (extortion and attempted extortion), and other state and federal criminal laws, the Court will refer the matter to the U.S. Attorney for the Southern District of New York and the U.S. Attorney for the District of New Jersey, for investigation; and (5) order Kramer to pay attorneys' fees and costs to Appellate Counsel in the total amount of $70,289.00 ($37,320.00 (Schorr Cert., ¶ 4) + $32,969.00 (Karasick Cert., ¶ 6)).[11] *See Garr v. U.S. HealthCare, Inc.,* 22 F.3d 1274, 1277–78, No. 93–1754, slip. op. at 8 (3d Cir. April 29, 1994). An appropriate Order follows.

[11] Although requested, the Court will not award attorneys fees to Tribe, Massey and Chesebro, as they were parties here and did not sign any of the submissions as attorneys of record. An award of attorneys' fees is exactly that, an award to the attorney of record in a litigation. None of the defendants qualify in this instance.

*ORDER*

This matter having come before the Court by way of a motion for sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927 and the Court's inherent disciplinary authority, brought on behalf of Defendants, Laurence H. Tribe, Esq., Jonathan S. Massey, Esq., and Kenneth J. Chesebro, Esq., (former appellate counsel for Lightning Lube, Inc. in the matter of *Lightning Lube, Inc. v. Witco Corp. et al.,* 802 F.Supp. 1180 (D.N.J.1992) *aff'd* 4 F.3d 1153 (3d Cir.1993)), against Plaintiff, Steven M. Kramer, Esq., (former trial counsel for Lightning Lube, Inc.) for his improper and unethical conduct in this case; and

The Court having reviewed the submissions of the parties and heard the oral argument of counsel on April 25, 1994; and the Court having dismissed the Complaint on the merits by Order of May 10, 1994; and the Court having reserved decision on Defendants Motion for Sanctions against Plaintiff, pending receipt of supplemental materials; and the Court having received and reviewed the supplemental materials; and

For the reasons set forth in the Court's opinion filed this day; and

For good cause shown;

It is on this 14th day of July, 1994 ORDERED as follows:

1. Defendants' Motion for Sanctions is hereby GRANTED;

2. The Complaint of Steven M. Kramer against the Defendants, Laurence H. Tribe, Esq., Jonathan S. Massey, Esq., Kenneth J. Chesebro, Esq. and Harvard Law School, is hereby DISMISSED, with prejudice, for purposes of deterrence and punishment;

3. Plaintiff, Steven M. Kramer, Esq., shall pay expenses and attorney's fees incurred by Defendants due to the filing of his Complaint pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, in the amount of $70,289.00 ($37,320.00 to Stearns & Weinroth and $32,969.00 to Ira Karasick, Esq);

4. This matter shall be referred to Chief Judge John F. Gerry of the United States District Court for the District of New Jersey, for appropriate disciplinary action, pursuant to Local Rule 7;

5. This matter shall be referred to the United States Attorney for the Southern District of New York and the United States Attorney for the District of New Jersey, for investigation into possible violations of 18 U.S.C. §§ 875(d), 876, and 1951(a);

6. The Clerk of the Court shall terminate this action on the docket.

**All Citations**

156 F.R.D. 96

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

52 F.3d 315 (Table)
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. The Third Circuit provides by rule for the reporting of opinions having "precedential or institutional value. An opinion which appears to have value only to the trial court or the parties is ordinarily not published." The Federal Reporter tables are prepared from lists of cases terminated by judgment orders, unpublished per curiam opinions and unpublished signed opinions, indicating the disposition of each case, transmitted by the Court. Third Circuit Rules, App. 1, Internal Operating Procedures, Ch. 5, sec. 5.1, 28 U.S.C.A.)
United States Court of Appeals,
Third Circuit.

Steven M. Kramer
v.
Laurence Tribe, Harvard Law School, Jonathan Massey, Kenneth Chesebro, Ira Karasick

NOS. 94-5304, 94-5504
|
Mar 20, 1995

**Synopsis**
Appeal From: D.N.J., No. 93-cv-05361, Bassler, J.,
156 F.R.D. 96

**Opinion**
AFFIRMED.

**All Citations**

52 F.3d 315 (Table)