# EXHIBIT 59

248 F.3d 698
United States Court of Appeals,
Seventh Circuit.

Thomas G. VOLLMER, Peggy R. Pospeshil, Mary Kennah, et al., Plaintiffs–Appellees,

v.

PUBLISHERS CLEARING HOUSE and Campus Subscriptions, Incorporated, a New York corporation, Defendants–Appellees, Appeals of Frederick L. Hawk, Putative Intervenor, Lynde Selden II, Attorney, Richard H. Rosenthal, Attorney.

Nos. 99–3993, 00–1562 and 00–1610.
|
Argued Sept. 6, 2000.
|
Decided April 27, 2001.

**Synopsis**
Following proposed settlement in removed class action against magazine seller for alleged violations of Illinois consumer protection laws, past customer of seller moved to intervene. The United States District Court for the Southern District of Illinois, G. Patrick Murphy, J., 194 F.R.D. 637, denied motion to intervene, and subsequently approved settlement and imposed $50,000 in sanctions on customer's attorneys. Customer and attorneys appealed. The Court of Appeals, Ripple, Circuit Judge, held that: (1) customer failed to show that his interests in action were inadequately represented by class counsel, as required for intervention as of right; (2) customer was not entitled to permissive intervention; (3) customer could not appeal fairness of class settlement; and (4) remand for reconsideration of Rule 11 sanction was required.

Affirmed in part and vacated and remanded in part.

**Procedural Posture(s):** On Appeal.

**Attorneys and Law Firms**

 **\*701** Steven A. Katz (argued), Carr, Korein, Tilery, Kunin, Montroy, Cates, Katz & Glass, Belleville, IL, for Plaintiffs–Appellees.

Rebecca Jackson, Bryan Cave, St. Louis, MO, Richard A Mescon, David Leichtman (argued), Joseph P. Cyr, Morgan, Lewis & Bockius, New York City, Richard H. Rosenthal, Carmel, CA, Lynde Selden, II (argued), San Diego, CA, Paul A. Levy (argued), Public Citizens Litigation Group, Washington, DC, for Defendants–Appellees.

Before CUDAHY, COFFEY and RIPPLE, Circuit Judges.

**Opinion**

RIPPLE, Circuit Judge.

Mr. Frederick L. Hawk, represented by his attorneys Lynde Selden II and Richard H. Rosenthal, attempted to intervene in this class action. The district court denied Mr. Hawk's motion to intervene under Federal Rules of Civil Procedure 24(a) and (b) ("Rule 24(a) and 24(b)").

The district court also found that Mr. Selden and Mr. Rosenthal did not investigate appropriately Mr. Hawk's claims and that they filed pleadings on Mr. Hawk's behalf to interfere with and delay the administration of justice. Consequently, on its own initiative, the court entered an order directing Mr. Selden and Mr. Rosenthal to show cause as to why they should not be sanctioned under Federal Rule of Civil Procedure 11 ("Rule 11") and later imposed $50,000 in sanctions on the attorneys.

For the reasons set forth in the following opinion, we affirm the district court's denial of the motion to intervene. We vacate the decision to impose Rule 11 sanctions, and we remand that decision to the district court for proceedings consistent with this opinion.

I

BACKGROUND

**A. Facts**
On February 3, 1998, Thomas G. Vollmer filed this class action lawsuit against Publishers Clearing House ("PCH") and its competitor American Family Publishers ("AFP") in Illinois state court.[1] PCH is a **\*702** New York limited partnership that sells magazine subscriptions and other merchandise through direct mail advertising, and it often personalizes its solicitation materials to include specific information about the recipient. Since 1967, PCH has also operated the "Publishers Clearing House Sweepstakes" ("the Sweepstakes"), which offers prospective customers the

ability to win cash and prizes as a method of drawing attention to its mailings. No purchase of PCH merchandise is necessary to enter or improve one's chances of winning the Sweepstakes.

1     The Illinois state court later severed Mr. Vollmer's claims against AFP from his claims against PCH alleged in this action. Due to the similar nature of their businesses, PCH and AFP are often confused with each other. PCH is perhaps best known for its "Prize Patrol," which makes unannounced visits to the homes of its Sweepstakes winners to surprise them with their winnings. AFP, on the other hand, is most often associated with its spokespersons, television personalities Ed McMahon and Dick Clark.

Mr. Vollmer's suit, one of a number against PCH at the time, alleged violations of Illinois state consumer protection law. His complaint charged that PCH fraudulently induced customers to purchase magazines and other items. The complaint claimed that PCH did so by falsely suggesting in its advertising that customers could increase their chances of winning the Sweepstakes by making purchases, and Mr. Vollmer sought to certify a class of Illinois residents who had been deceived by PCH mailings into making unwanted purchases. The complaint was later amended on June 21, 1999, to include the additional named plaintiffs and to add Campus Subscriptions, Inc. ("CSI") as an additional defendant.[2] It was also amended to allege violations of federal racketeering laws, which led to the removal of the case to the district court, pursuant to its federal question jurisdiction.

2     CSI is a wholly owned subsidiary of PCH that markets similar products to students and educators on college campuses. For purposes of convenience, the defendants in this action will be referred to collectively as "PCH" or "the defendants."

After negotiations between class counsel and PCH, the parties entered into a stipulation of settlement, filed with the district court on June 23, 1999. One week later, the district court conditionally certified a class for settlement purposes that included all persons in the United States who received a PCH solicitation between February 3, 1992, and June 30, 1999. This certification also included a subclass of class members who purchased PCH merchandise during the class period.[3] Additionally, the district court granted preliminary approval of the settlement. The settlement included remedial undertakings by PCH aimed at addressing the allegations raised in Mr. Vollmer's complaint[4] and also provided monetary relief in the form of refunds for subclass members who filed a claim during the claims period. Initially, the settlement contained a cap on these refunds of $10 million, less costs, other refunds and attorneys' fees that could have reduced the total amount to as low as $4 million. One month after Mr. Hawk had attempted to intervene in this action, when it became clear that claims would exceed this $10 million figure, PCH agreed to pay **\*703** all approved claims in full. The amount of those claims would eventually reach approximately $18 million to $21 million.

3     The settlement class was estimated to include hundreds of millions of people, although PCH cannot provide information as to the names of those persons who simply received its mailings but did not respond to them. The subclass of those who did make purchases included over 42 million people.

4     The injunctive relief in the settlement included: (1) an Ironclad Guarantee in PCH's future solicitation materials containing various statements and information alerting customers that no purchase is necessary to enter the Sweepstakes, (2) further revision of PCH's business practices to ensure that customers understand that ordering is not necessary to win the Sweepstakes and (3) PCH's commitment to furnish customer assistance and education services designed to protect the public from entities committing sweepstakes fraud and assist persons who respond inappropriately to sweepstakes promotions.

Mr. Hawk, a farm equipment salesman from San Diego, California, was a past customer of PCH and had received a notice of the settlement in early August of 1999. Mr. Hawk testified that soon after, he contacted Mr. Selden regarding the notice. He knew Mr. Selden because Mr. Hawk's wife was an administrator in Mr. Selden's office. Mr. Selden, later joined by Mr. Rosenthal, contacted class counsel requesting information and access to documents regarding the settlement, ostensibly to determine whether it would be in Mr. Hawk's best interest to opt out of the settlement class. These requests were denied by class counsel.

As a result, on September 13, 1999, Mr. Hawk filed a "Petition to Intervene for Limited Purposes of Viewing Document Depository," which noted that "[b]efore Intervenor accepts the proffered settlement ... [he] wants to view the document

depository defendant has made available to class counsel." R.44 at 1. Mr. Hawk claimed that intervention of right under Rule 24(a) was appropriate because class counsel had not considered the impact of the settlement upon Mr. Hawk in comparison to the relief Mr. Hawk could achieve under California's consumer protection laws. Additionally, he claimed that permissive intervention was appropriate under Rule 24(b) for basically the same reason.

Both class counsel and the defendants opposed this motion. Among its arguments in this regard, class counsel asserted that Mr. Selden and Mr. Rosenthal were "professional objectors" or "claim jumpers" who filed such claims often in the past, usually without merit. To bolster this theory, they cited a number of cases and a newspaper article describing the attorneys' involvement in contesting class action settlements, some of which cast Mr. Selden and Mr. Rosenthal in an unflattering light. *See* R.45 at 1–2. Class counsel and the defendants also disputed Mr. Hawk's assertion that greater monetary relief could be gained under California law, and argued that, because he had not decided whether to request exclusion from the settlement, Mr. Hawk could not properly seek intervention under Federal Rule of Civil Procedure 23(c)(2)(C).

**B. District Court Proceedings**

**1.**

The district court, noting that difficulties can arise with intervention in major class action litigation, required Mr. Hawk and two other proposed intervenors to appear before the court to explain their objections to the settlement. On October 4, 1999, the day he was scheduled to appear, Mr. Hawk filed "Intervenor's Motion to Intervene," which requested the ability to "intervene into this preliminarily approved class action, appoint purported Intervenor's counsel as co-class counsel and such other relief as the court deems proper." R.56 at 1–2. In a memorandum in support of that motion, Mr. Hawk maintained that his interests were inadequately represented by class counsel because (1) the temporal proximity of the filing of class counsel's Second Amended Complaint and the agreement to the settlement suggested collusion between class counsel and defendants, (2) no meaningful discovery had been undertaken by class counsel and (3) the monetary and injunctive relief in the settlement was inadequate.

Later that morning, the district court held a hearing regarding the motions to intervene. The court was alerted by Mr. Selden that, in addition to his motion to intervene for the limited purpose of discovery, Mr. Hawk had also filed a more general *704 motion to intervene that morning. The following exchange ensued:

> THE COURT: All right. So are you withdrawing your ... petition to intervene for a limited purpose ... ?
>
> MR. SELDEN: No, your Honor. We're supplementing it.
>
> THE COURT: Well, do you want in for all purposes or for a limited purpose?
>
> MR. SELDEN: All purposes.
>
> THE COURT: All right. When you say you're supplementing it, what do you wish for me to do with this paper, the one for a limited purpose?
>
> MR. SELDEN: I would wish that that would be granted and then the motion to intervene would come on and you would grant that. That would be my wish.

Tr.6 at 4–5. At this point, the court seemed inclined to believe that Mr. Hawk now meant to intervene to represent others in the action, not primarily to conduct discovery regarding the settlement. It noted that "[w]hat they do once they get here, if I let them intervene, is a whole different matter as to whether I'm going to let them conduct discovery." *Id.* at 6.

Mr. Hawk then testified. He claimed that he believed that the monetary relief for refunds in the settlement, at that point capped at a maximum of $10 million, was insufficient. He also asserted that he sought legal counsel in this case on his own initiative. However, Mr. Hawk also demonstrated great unfamiliarity with the nature of his complaint. He lacked any knowledge of the injunctive relief agreed to in the settlement, the mechanics of the refund process described in the notice, the settlement's $3 million cap on attorneys' fees and the amount that he had personally spent on PCH merchandise. Moreover, Mr. Hawk did not recall ever reading the "Motion to Intervene" filed on his behalf prior to that morning and could not articulate his basis for asking to intervene on behalf of other individuals in the lawsuit. He also was not familiar with Mr. Rosenthal and was unaware that Mr. Rosenthal was representing him in the case. Lastly, Mr. Hawk confirmed that he was unsure as to whether he would opt out of the class and did not know what information he would need to ultimately make such a decision.

The district court thereafter denied Mr. Hawk's motions to intervene in this case. It determined that Mr. Hawk had not shown that intervention of right was appropriate under Rule 24(a) because he could not demonstrate that his interests were inadequately represented by class counsel. Additionally, the court ruled that permissive intervention under Rule 24(b) was not justified because it would unduly delay and prejudice the rights of the class. The district court also made it clear that, after hearing Mr. Hawk, it now believed that he was not "here because [he] ha[d] serious questions about the injunctive relief that the Court has authored," but that the "intervention was for purposes of conducting discovery." Tr.7 at 24–25. The district court also determined that Mr. Hawk's lack of a "passing understanding" about the nature of the lawsuit, *id.* at 25, showed that he was put forward by Mr. Selden and Mr. Rosenthal to cause delay and increase the cost of the litigation. As a result, on its own initiative, the court ordered the attorneys to show cause as to why they had not violated Rule 11(b) and should not be sanctioned.

Subsequently, on January 25, 2000, the district court held a final fairness hearing regarding the settlement, at which Mr. Selden and Mr. Rosenthal appeared on behalf of Mr. Hawk. Before the hearing, the district court noted that "it was never this Court's intention to deny anyone the opportunity to intervene and preserve their appellate rights." Tr.16 at 9. Instead, **\*705** it maintained that it had denied Mr. Hawk's motions to intervene because it "became clear to the Court" that "these proposed intervenors wanted to intervene [for a limited purpose] and conduct discovery to see if they did wish to intervene for all purposes" and because it did not find Mr. Hawk to be a proper class representative or his attorneys to be proper class counsel. *Id.* at 148–50. When asked if they wished to make any argument against the settlement, Mr. Selden and Mr. Rosenthal declared that they would rest on their pleadings. The district court queried at the end of the hearing if Mr. Hawk still wished to intervene, but Mr. Selden responded that because the hearing was over, such a motion would serve no purpose. The district court subsequently approved the settlement on February 18, 2000.

**2.**

On February 25, 2000, the district court held a hearing on Mr. Selden and Mr. Rosenthal's objection to the imposition of Rule 11 sanctions. There the court said that Mr. Hawk's lack of knowledge regarding the settlement and his personal relationship with Mr. Selden led it to believe that the attorneys recruited Mr. Hawk to intervene so that they could extract a fee from the proceedings. It believed that Mr. Hawk's discovery request was a ploy to "see how much is here and what we can get out of it." Tr.18 at 13. Moreover, in referring to Mr. Selden and Mr. Rosenthal, the court claimed that they "are not real class action lawyers" but instead that "they follow people around the country, ... and then they stick their nose in [a case] and they extract money." *Id.* at 7.

Additionally, the district court asserted that it had "made it the court's business to find out all I can" about the attorneys' legal practice and that "I haven't been able to find anyone anywhere that say these are recognized class counsel." *Id.* at 15. Ultimately, the court levied sanctions in the amount of $50,000. To arrive at that figure, it used the attorneys' fees that class counsel and the defendants' counsel generated in response to the motions to intervene as a "marker", but not a dispositive one. *Id.* at 20. It directed that the fees were to be paid directly to the Greater East St. Louis Community Fund, Inc., a local charitable organization.

Mr. Hawk appealed the denial of his motion to intervene and the judgment certifying the class and approving the settlement. Mr. Selden and Mr. Rosenthal appealed the imposition of Rule 11 sanctions. All three appeals were consolidated into the present case.

II

DISCUSSION

**A. Motion to Intervene**

**1.**

Mr. Hawk sought to intervene as of right under Rule 24(a), which required him to (1) make a timely application, (2) have an interest relating to the subject matter of the action, (3) be at risk that that interest will be impaired by the action's disposition and (4) demonstrate a lack of adequate representation of the interest by the existing parties. *See Nissei Sangyo America, Ltd. v. United States,* 31 F.3d 435, 438 (7th Cir.1994). Mr. Hawk is required to prove each of these four elements; the lack of one element requires that the motion to intervene be denied. *See Keith v. Daley,* 764 F.2d 1265, 1268 (7th Cir.1985). The district court denied this motion on the

ground that Mr. Hawk had not shown that his interests were inadequately represented by class counsel. With the exception of the first factor, which relates to the timeliness of the intervention **\*706** and is reviewed for abuse of discretion, we review de novo the denial of an intervention of right. *See Nissei Sangyo,* 31 F.3d at 438. However, it is clear that the district court based much of its determination regarding this issue on its assessment of Mr. Hawk's testimony, a finding to which we owe deference. *See Rush v. Martin Petersen Co.,* 83 F.3d 894, 896 (7th Cir.1996) (regarding factual finding, deference given to district judge "who had the opportunity to observe the witnesses firsthand, to assess their credibility and weigh their testimony"). The district court determined that Mr. Hawk had failed to articulate reasons as to why he was not represented adequately by class counsel.

Ample evidence exists to support the district court's conclusion that Mr. Hawk could not demonstrate why he was represented inadequately in this action. Although both of his motions to intervene argue that the settlement's terms were unfair, Mr. Hawk showed a lack of familiarity with the content of those terms. He did not know when he was required to decide to opt out of the settlement, was unclear on the amount of attorneys' fees sought by class counsel and PCH's counsel and he showed general unfamiliarity with the motions to intervene filed on his behalf. He thought, incorrectly, that to receive a refund under the settlement he must return the actual magazines that he had purchased from PCH.[5] Also worrisome was Mr. Hawk's ignorance of the terms of the injunctive relief contained in the settlement. When asked whether he had "any concept of what PCH is willing to do to change the message to customers," Mr. Hawk replied "No." Tr.6 at 20. Lastly, when asked whether he had any basis, other than what Mr. Selden had told him, to believe that class counsel was inadequately representing him in the suit, Mr. Hawk again responded "No." *Id.* at 28.

[5]  In fact, the notice Mr. Hawk had received described a method by which refunds could be garnered without the return of actual merchandise. When asked by PCH's counsel if knowledge of this fact changed his mind about the fairness of the settlement, Mr. Hawk replied, "I don't know." Tr.6 at 30.

Moreover, although Mr. Hawk indicated that he wanted to intervene to represent other members of the class, he could not articulate why he wished to do so. When asked by PCH's counsel what his basis for intervention was, the following exchange occurred:

Q [PCH counsel]: What's your basis for asking to represent other individuals in this lawsuit?

A [Mr. Hawk]: I don't know.

Q: You don't have a basis; do you?

A: I don't know.

*Id.* at 34. The district court was thus presented with a proposed intervenor in the lawsuit who could not explain his basis for wishing to intervene on behalf of other class members.[6] Its determination that Mr. Hawk could not meet Rule 24(a)'s requirements was therefore well supported by the facts.

[6]  Mr. Hawk also repeatedly indicated that he had not yet determined whether he wished to opt out of the proposed settlement, at the same time that he was requesting to intervene in this litigation. It is unclear if a party may request intervention under Rule 24 without first deciding that it wishes to be a part of the settlement class. *See, e.g., In re Potash Antitrust Litig.,* 162 F.R.D. 559, 561 (D.Minn.1995) (holding that to make an appearance in a class action lawsuit, Rule 23(c)(2)(c) requires that a party must have decided not to opt out of the class). We need not reach this issue, however, as we have determined that Mr. Hawk's motions to intervene were properly denied on the merits.

The district court also denied Mr. Hawk's request for permissive intervention under Rule 24(b). Relevant factors **\*707** to consider in ruling on a motion for permissive intervention include whether the request is timely and whether it would unduly delay or prejudice the adjudication of the rights of the original parties. *See Southmark Corp. v. Cagan,* 950 F.2d 416, 419 (7th Cir.1991). We shall reverse a denial of permissive intervention only if the district court abused its discretion. *See Keith,* 764 F.2d at 1272.

For similar reasons to those supporting the denial of Mr. Hawk's intervention under Rule 24(a), the district court did not abuse its discretion in denying permissive intervention in this matter. In light of its examination of Mr. Hawk, the court's ruling that his entry as a party would unduly delay and prejudice the adjudication of the lawsuit was eminently reasonable.

**2.**

Because Mr. Hawk's motion to intervene was properly denied, under the law of this Circuit, he cannot appeal the fairness of the settlement. *See Felzen v. Andreas,* 134 F.3d 873, 876 (7th Cir.1998), *aff'd. by an equally divided court, California Pub. Employees' Ret. Sys. v. Felzen,* 525 U.S. 315, 119 S.Ct. 720, 142 L.Ed.2d 766 (1999). We have noted that, because only those who intervene in a class action may appeal such a settlement, "it is vital that district courts freely allow the intervention of unnamed class members who object to proposed settlements and want an option to appeal an adverse decision." *Crawford v. Equifax Payment Servs., Inc.,* 201 F.3d 877, 881 (7th Cir.2000). However, in this case, the district court was on solid ground in concluding that Mr. Hawk's real purpose in intervening was to conduct discovery, not to preserve his appellate rights regarding the fairness of the settlement. Numerous times after the court denied Mr. Hawk's motions to intervene, it clarified that it did so because it believed Mr. Hawk's intention was solely to gain access to settlement-related documents. The court repeatedly emphasized that it did not intend to deny class members the right to intervene to protect their appellate rights. When reminded of this point at the fairness hearing and asked if he still wished to intervene, Mr. Selden replied that he was "at a loss" as to what such intervention would accomplish. Tr.16 at 151.

Given the chance, repeatedly, Mr. Hawk's attorneys never moved to intervene to protect Mr. Hawk's appellate rights.[7] As a result, the district court was **\*708** entitled to believe that Mr. Hawk's motions to intervene were for the primary purpose of obtaining discovery of the settlement negotiations.

[7]  Mr. Hawk now argues that his attorneys did not make such a motion because they believed that their appeal of the district court's denial of their initial motions to intervene divested the district court of jurisdiction to grant a future motion to intervene for a limited purpose. This assertion was apparently first made, not by Mr. Selden or Mr. Rosenthal during the course of the litigation leading up to the settlement's approval, but by their attorney during a later hearing on the issue of Rule 11 sanctions. *See* Tr.18 at 19 ("About the declining of the invitations to intervene. The denial of leave to intervene was, at that time, on appeal. I think that divested the court of jurisdiction ... [as to] the intervention question. I think that's why they declined.").

However, a district court is not divested of jurisdiction to grant a motion to intervene until an appeal has been filed on a final judgment in the entire case. *See, e.g., Roe v. Town of Highland,* 909 F.2d 1097, 1099–1100 (7th Cir.1990); *Armstrong v. Board of Sch. Directors of the City of Milwaukee,* 616 F.2d 305, 327 (7th Cir.1980), *overruled on other grounds, Felzen v. Andreas,* 134 F.3d 873 (7th Cir.1998), *aff'd by an equally divided court, California Pub. Employees' Ret. Sys. v. Felzen,* 525 U.S. 315, 119 S.Ct. 720, 142 L.Ed.2d 766 (1999). So long as they are not duplicative, there is no bar to filing more than one motion to intervene during litigation such as this. *See, e.g., B.H. v. McDonald,* 49 F.3d 294, 297 n. 3 (7th Cir.1995); *Heyman v. Exchange Nat. Bank of Chicago,* 615 F.2d 1190, 1193 (7th Cir.1980).

The district court made it clear on numerous occasions, before it made a final judgment on the settlement, that it had characterized both of Mr. Hawk's earlier motions to intervene as ones seeking discovery. Therefore, Mr. Hawk was on notice that if he wished to intervene for the limited purpose of preserving his appellate rights, he could do so and that the district court would likely look favorably on such a motion. *See* Tr.16 at 149 (district court notes at fairness hearing that "I tried to make that clear, at several of the hearings, that I wasn't and didn't intend to prevent someone from simply intervening as an objector to protect their appellate rights" and asks Mr. Selden if he still wishes to move to intervene). The court also remarked at the fairness hearing that "of course ... a motion to intervene can be granted at any time as long as I have jurisdiction over this case." *Id.* at 151. Therefore, this attempted justification cannot excuse Mr. Hawk's failure to move for intervention to preserve his appellate rights.

Discovery of settlement negotiations in a case such as this one is difficult to obtain because of the potential for undermining the settlement process. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago,* 834 F.2d 677, 684 (7th Cir.1987). It is only proper where "the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive." *Id.* Mr. Hawk claimed that collusion existed

between class counsel and PCH's counsel, due primarily to (1) the close time frame between the amendment of Mr. Vollmer's complaint to allege federal claims and the agreement to the settlement and (2) the lack of "meaningful adversarial discovery" undertaken before settlement. R.57 at 8. The timing of a settlement in relation to the start of litigation is an important indicator in determining whether collusion occurred. *See Mars Steel,* 834 F.2d at 684 (noting timing as an important factor and finding no suggestion of collusion when settlement reached less than a year after suit filed by party to settlement); *White v. National Football League,* 822 F.Supp. 1389, 1407 (D.Minn.1993) (collusion not suggested when settlement occurred after "five and one-half years of frequently acrimonious litigation"). The initial suit in this case against PCH and AFP was filed well over a year before the settlement, and class counsel's investigation of the claims surrounding this suit began in 1997.[8] Although settlement negotiations were ongoing during much of the period after the lawsuit was brought, class counsel's efforts demonstrate a zealous representation of the class's interests, sufficient to prevent any inference of collusion with PCH.

[8]   The district court described this investigation in the following way:
    The investigation included interviewing hundreds of PCH customers and reviewing PCH mailings, meeting with members of the Florida Attorney General's office concerning its investigation of AFP, reviewing files that the Florida Attorney General had accumulated, meeting with the Illinois Attorney General, and discussing the case with a national expert on marketing psychology and direct mail marketing.... In addition, after entering into a Court-approved Protective Order, class counsel was given access to thousands of pages of documents containing internal and proprietary PCH information. PCH also produced numerous officers and employees to answer questions about its internal operations, customer purchasing histories, composition and conduct of mailings, computer and database issues, and customer contacts and complaints.
    R.227 at 20–21.

In sum, therefore, the district court was correct in characterizing Mr. Hawk's motions to intervene as attempts to gain discovery, not motions seeking to maintain his right to appeal. It was also correct in denying those motions. Moreover, the **\*709** court repeatedly gave Mr. Hawk the chance to protect his right to appeal, an approach counseled by our decision in *Crawford,* 201 F.3d at 881, but Mr. Hawk failed to do so. As a result, Mr. Hawk cannot now appeal the merits of the settlement. Nevertheless, we note that Mr. Hawk did have the opportunity to present his objections at the fairness hearing and also presented them to this court in his appellate briefs. We believe that his substantive objections, even if they were properly before us, would not merit a disruption of the settlement in this case.

## B. Rule 11 Sanctions

Rule 11 provides that if an attorney presents a motion to a court for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," monetary sanctions may be imposed. *See* Fed.R.Civ.P. 11(b)(1) & (c). The district court found that Mr. Selden and Mr. Rosenthal encouraged Mr. Hawk to intervene for such purposes, solely to enable themselves to receive a fee as part of this litigation. As a result, the court imposed monetary sanctions on its own initiative under Rule 11(c)(1)(B), requiring Mr. Selden and Mr. Rosenthal to pay $50,000 to a local charity. We review all aspects of the district court's decision to impose Rule 11 sanctions for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Independent Lift Truck Builders Union v. NACCO Materials Handling Group, Inc.,* 202 F.3d 965, 968 (7th Cir.2000).

The record certainly contains some evidence to support the district court's determination to impose sanctions on Mr. Selden and Mr. Rosenthal. Mr. Hawk's marked unfamiliarity with basic components of the settlement supports the court's finding that he was put forward by his attorneys solely to enable them to collect fees in this action. On its own, Mr. Hawk's testimony and the circumstances surrounding it would provide sufficient justification for the imposition of Rule 11 sanctions.

The district court, however, also took into account the nature of Mr. Selden and Mr. Rosenthal's legal practice in deciding to impose sanctions and in determining the amount of the fine. In doing so, it appeared to consider not only information provided by class counsel regarding Mr. Selden and Mr. Rosenthal's past actions,[9] but also information about the attorneys that the court gathered in ex parte conversations. This latter source was suggested when the district court maintained that it had "made it the court's business to find out all I can" about Mr. Selden and Mr. Rosenthal's legal practice

and that "I haven't been able to find anyone anywhere **\*710** that say these are recognized class counsel." Tr.18 at 15.

9    In an earlier memorandum opposing Mr. Hawk's initial motion to intervene, class counsel cited a number of sources to show that Mr. Hawk's lawyers were "professional objectors." These included a *Wall Street Journal* article describing the potentially lucrative nature of challenging class action settlements, which quotes Mr. Rosenthal describing his involvement in one such matter. *See* Richard B. Schmitt, *Objecting to Class–Action Pacts Can Be Lucrative for Attorneys,* Wall Street Journal, Jan. 10, 1997, at B1 (also noting that the judge who approved the fee in that case found it " 'a reasonable amount' "). This article was later noted disapprovingly by another court, in a case where Mr. Selden and Mr. Rosenthal were involved in a fee dispute with other attorneys, and where the court also stated that a part of Mr. Rosenthal's testimony had been "somewhat hyperbolic at best, and somewhat false at worst." *French v. Selden,* 59 F.Supp.2d 1152, 1156, 1160 (D.Kan.1999). The other references made by class counsel were to cases involving Mr. Selden and/or Mr. Rosenthal in which the attorneys simply represented objectors to class actions or, in one matter, in which Mr. Selden himself opted out of a settlement.

Rule 11 was designed to ensure due process and to give the potentially offending party a "full and fair opportunity to respond and show cause before sanctions are imposed." *Divane v. Krull Elec. Co.,* 200 F.3d 1020, 1025 (7th Cir.1999); *see also* Fed.R.Civ.P. 11, Advisory Committee's Notes (1993 Amendments) (noting that when court acts on own initiative under Rule 11(c)(1)(B), a show cause order must be granted to "provide[ ] the person with notice and an opportunity to respond"); *Johnson v. Waddell & Reed, Inc.,* 74 F.3d 147, 151 (7th Cir.1996). In reviewing this sanction, we must be able to look to information in the record that justifies the imposition of sanctions articulated by the district court. *See Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 118 (7th Cir.1994). Additionally, although not all ex parte contacts by the district court are prohibited, if they render it impossible for the district court to fairly consider a plaintiff's arguments, or are not made a matter of record in the case and do not provide an opportunity for a plaintiff to respond to them, those contacts threaten that plaintiff's due process rights. *See Simer v. Rios,* 661 F.2d 655, 680–81 (7th Cir.1981); *see also Blumenfeld v. Stuppi,* 921 F.2d 116, 118 n* (7th Cir.1990).

The district court was permitted to consider Mr. Selden and Mr. Rosenthal's past conduct in fashioning Rule 11 sanctions, as the decision to impose such sanctions and their form may be influenced by consideration of a party's past misconduct. *See, e.g.,* Fed.R.Civ.P. 11, Advisory Committee's Notes (1993 Amendments) (noting that "in deciding whether to impose a sanction or what sanctions would be appropriate," factors to consider include whether conduct "was part of a pattern of activity" or "whether the person has engaged in similar conduct in other litigation"); *Pope v. Federal Exp. Corp.,* 49 F.3d 1327, 1328 (8th Cir.1995); *Lockheed Martin Energy Sys., Inc. v. Slavin,* 190 F.R.D. 449, 459 (E.D.Tenn.1999); *see also Cheek v. Doe,* 828 F.2d 395, 398 (7th Cir.1989) (per curiam) (considering past improper conduct as relevant factor in Rule 11 fee determination). However, Rule 11 and our case law also mandate that this evidence must be stated with some specificity in the record, and the offending party must be given a full and fair opportunity to respond to the charges. Here, there is evidence suggesting that the district court, in considering information regarding Mr. Selden and Mr. Rosenthal's reputation or past conduct, utilized sources not disclosed to the attorneys or presented in the record. Use of such information to fashion a Rule 11 sanction would be inappropriate. 10

10    We note that it is possible, though perhaps difficult, to read the district court's statements that "I've made it the court's business to find out all I can about [the attorneys'] legal practice" or that "I haven't been able to find anyone anywhere that say these are recognized class counsel" to mean that, based on information presented in the record, the district court drew these conclusions. Tr.18 at 15. It is precisely because of this uncertainty that we require a more explicit justification for the district court's determination as to the basis for the sanction.

Adding to our concern in this regard, the $50,000 sanction is extremely large, as compared to other Rule 11 sua sponte sanctions that this court has reviewed. *See, e.g., Powers v. Duckworth,* No. 90–2492, 1995 WL 496751, at \*3 (7th Cir.1995) (upholding $500 sua sponte sanction); *Burda v. M. Ecker Co.,* 2 F.3d 769, 776 (7th Cir.1993) (reducing sua sponte sanction from $2,500 to $1,000). Rule 11 requires that the least severe sanction adequate **\*711** to serve the purpose of the penalty should be imposed. *See Johnson v. A.W. Chesterton Co.,* 18 F.3d 1362, 1366 (7th Cir.1994). There may

be cases in which a $50,000 sanction under Rule 11(c)(1)(B) is appropriate, if such a significant penalty is warranted for effective deterrence of such conduct in the future. See Fed.R.Civ.P. 11(c)(2). Indeed, the district court suggested as much in this case, stating that because of the huge fees available in class action litigation, sanctions for misconduct in the filing of intervention motions must be similarly weighty. Yet when the district court is cursory or unclear about its reasoning for imposing significant monetary sanctions, we have required that a more detailed explanation be provided. See Katz v. Household Intern., Inc., 36 F.3d 670, 673 (7th Cir.1994); Kotsilieris v. Chalmers, 966 F.2d 1181, 1187 (7th Cir.1992).

The district court took information into account regarding Mr. Selden and Mr. Rosenthal's past legal practice, information that Mr. Selden or Mr. Rosenthal may not have been aware of or may not have had the opportunity to respond to. It then used that information, in part, to find that the imposition of an extraordinarily large sanction was appropriate. The record in this case does not provide us with sufficient information to determine all of the sources for the district court's consideration of Mr. Selden and Mr. Rosenthal's past relevant conduct. Therefore, the district court should reconsider its decision regarding the appropriateness and, if necessary, the amount of Rule 11 sanctions. In doing so, it must afford counsel an adequate opportunity to reply to the information upon which the court relies. It also must state explicitly the evidence that it relies upon to determine the appropriateness, and, if necessary, the amount of the sanction.[11] The court may not consider any information that has not been adequately introduced into the record or to which Mr. Selden or Mr. Rosenthal have not had the ability to respond.

---

[11] Two other aspects of the district court's imposition of sanctions are problematic. First, Rule 11(c)(2) allows for a penalty requiring the payment of attorneys' fees by a party only if the sanctions were initiated by motion; a district court would abuse its discretion if, on its own initiative, it imposed a sanction based on attorneys' fees. See Divane, 200 F.3d at 1030. We have noted that Rule 11(c)(2) was amended to limit the extent that attorneys' fees may be used as a measure of sanctions, so as to more precisely focus on the Rule's primary goal of deterrence. See id. at 1030–31; see also Fed.R.Civ.P. 11, Advisory Committee's Notes (1993 Amendments) ("Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into the court as a penalty."). Here the district court initially indicated that Mr. Selden and Mr. Rosenthal would be required to pay a sanction based on the attorneys' fees of class counsel and PCH's counsel; when alerted that such a ruling would be improper under Rule 11(c)(2), the court nevertheless used those fees as "a marker but not dispositive" in its sanction determination. Tr.18 at 20. In light of the intent of Rule 11(c)(2), in reflecting on the amount of the sanction in this case, the district court should not consider attorneys' fees at all. Instead, it should only take into account those factors relating to effective deterrence of such misconduct in the future.

Secondly, the district court ordered that the sanctions be paid to the Greater East St. Louis Community Fund, Inc., a local charity. Yet where sanctions are imposed under Rule 11(c)(1)(B) by the district judge on his own initiative, Rule 11(c)(2) provides that payment of sanctions may be directed only to the court as a penalty. See Johnson, 74 F.3d at 152 n. 3 (where judge awarded such sanctions payable to financial services corporation and to United States, Rule 11(c)(2) was violated). As a result, when this issue is reconsidered on remand, if the district court again determines that sanctions are warranted, it must direct that they be paid only to the court.

*712 **Conclusion**

For the foregoing reasons, we affirm the district court's denial of Mr. Hawk's motions to intervene. We vacate the imposition of Rule 11 sanctions and remand that matter to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, VACATED and REMANDED in part.

**All Citations**

248 F.3d 698, 49 Fed.R.Serv.3d 1360

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.