1               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA

2

3  US DOMINION, INC., et al.,  )
                         )

4       Plaintiffs,     )
                         )

5      vs.            ) CASE NO. 1:21-cv-02131(CJN)
                         )

6  PATRICK BYRNE,         )
                         )

7       Defendant.      )
  _____ )

8

9          TRANSCRIPT OF MOTION HEARING [ECF 75]
   **BEFORE THE HONORABLE MOXILA A. UPADHYAYA, U.S. MAGISTRATE JUDGE**

10               May 16, 2024
           10:00 a.m. - 11:46 a.m.

11             Washington, DC

12  **FOR THE PLAINTIFFS:**
     SUSMAN GODFREY, LLP

13     BY:  Davida Brook, Christina Dieckmann,
        Stephen Shackelford, Jr. and Jonathan Ross

14     1900 Avenue of the Stars, Suite 1400
     Los Angeles, California 90067

15     (310) 789-3100

16

17  **FOR THE DEFENDANT:**
     LAW OFFICE OF STEFANIE L. LAMBERT, PLLC

18     BY:  Stefanie L. Lambert
     400 Renaissance Center, Suite Fl.26

19     Detroit, Michigan 48243
     (313) 410-6872

20

21

22               **SONJA L. REEVES**
        **Registered Diplomate Reporter**

23         **Certified Realtime Reporter**
       **Federal Official Court Reporter**

24        333 Constitution Avenue, NW
        Washington, DC 20001

25     Transcript Produced from the Digital Record

1    **ALSO PRESENT:**

2    **PREVIOUS COUNSEL FOR THE DEFENDANT:**
         McGLINCHEY STAFFORD, PLLC
3        BY:  Robert Driscoll, Alfred Carry and Daniel Plunkett
         1275 Pennsylvania Avenue, NW, Suite 420
4        Washington, DC 20004
         (202) 802-9950

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    (Call to Order of the Court at 10:00 a.m.)

 2               DEPUTY CLERK:  All rise.  This court is now in

 3    session, The Honorable Moxila A. Upadhyaya presiding.

 4               Please be seated and come to order.

 5               Good morning, Your Honor.  This is Civil Case No.

 6    21-2131, US Dominion, Inc., et al. versus Byrne.  This matter

 7    is set for a motion hearing.

 8               Parties, please introduce yourselves for the record,

 9    starting with the government -- sorry, plaintiffs' counsel.

10               MS. BROOK:  Good morning.  Davida Brook of Susman

11    Godfrey on behalf of the plaintiffs, Dominion.

12               THE COURT:  Good morning.

13               MR. SHACKELFORD:  Stephen Shackelford on behalf of

14    Dominion.

15               MS. DIECKMANN:  Christina Dieckmann for Dominion.

16               MR. ROSS:  And Jonathan Ross for Dominion.

17               MS. LAMBERT:  Good morning, Your Honor, Stefanie

18    Lambert appearing on behalf of Mr. Byrne, who is present and to

19    my left.

20               THE COURT:  Good morning.

21               Good morning, Mr. Byrne.

22               MR. PLUNKETT:  Daniel Plunkett from McGlinchey

23    Stafford Law Firm.  We were prior counsel to Mr. Byrne.  With

24    me are Mr. Driscoll and Mr. Carry.

25               THE COURT:  Okay.  Good morning.  Just a moment.
```

1          (Pause)

2          THE COURT:  Okay.  We're here for -- we're here on

3  Dominion's emergency motion, which I heard initially in March

4  and issued a status quo order.  I would like -- each side will

5  have 30 minutes to argue.  I'm going to -- barring any

6  questions I have, which I'll take on my own time, I would

7  like -- I have sufficient briefing on the questions of whether

8  the documents themselves are covered by the protective order,

9  and I believe there is no dispute that defendant, Mr. Byrne and

10  Ms. Lambert disseminated that information, although if you wish

11  to address that, you can.  So I would like Dominion to focus

12  on, and the parties to focus on two specific issues, and then

13  if you wish to address anything else, you can do so with your

14  remaining time.

15          I would like you to focus on the requested sanction of

16  disqualification and the case law that supports that sanction,

17  as well as any evidence of subsequent alleged breaches of the

18  protective order or of my status quo order that I issued in

19  March.

20          So Ms. Brook, will you be arguing?

21          MS. BROOK:  Yes, Your Honor.

22          THE COURT:  Okay.  You may approach.

23          MS. BROOK:  Good morning, Your Honor.  Davida Brook of

24  Susman Godfrey on behalf of the Dominion plaintiffs.

25          May it please the Court, we have a slide deck that we

1   would like to use with our presentation.

2          THE COURT:  That's fine.

3          MS. BROOK:  I have copies of it if folks would like.

4          THE COURT:  That's fine.

5          MS. BROOK:  As Your Honor already mentioned, we are

6   here today on Dominion's motion to disqualify counsel, Stefanie

7   Lambert.  And I actually wanted to begin, Your Honor, exactly

8   where you have asked us to, which is with the case law and the

9   standard for disqualification, which Dominion completely

10   embraces, recognizing that it is a high standard.

11          Speaking personally for myself, I have never before

12   sought the disqualification of any attorney.

13          THE COURT:  I have, and I lost.

14          MS. BROOK:  But the case for Ms. Lambert's

15   disqualification, Your Honor, we think is clear under the case

16   law.  Her actions in the short time that she's been counsel in

17   this case constitute what the case law requires, which is, to

18   quote the *Koller* case, truly egregious misconduct.  And that

19   truly egregious misconduct, Your Honor, has already and will

20   continue to infect this and, frankly, all of Dominion's other

21   proceedings.

22          It's equally clear, Your Honor, that unfortunately no

23   lesser sanction will suffice.  And what I would like to do

24   today is I think pretty much what Your Honor asked, which is to

25   briefly recap what has happened and then focus on the new

1  breaches that have occurred and why together those constitute a

2  need for disqualification under the case law.

3          As an overview, Your Honor, Ms. Lambert has violated

4  no less than two rules of professional conduct, DC Rule of

5  Professional Conduct 3.4(c), "a lawyer shall not knowingly

6  disobey an obligation under the rules of a tribunal except for

7  an open refusal based on an assertion that no valid obligation

8  exists," and DC Rule of Professional Conduct 8.4(d).

9          She has also made numerous violations of the

10 protective order governing this case, including paragraphs 1,

11 8, 11, 15 and 27, as well as Your Honor's status quo order,

12 including paragraphs 1, 3 and 8.

13         So how did we get here?  I will focus on three

14 distinct time periods:  Pre March 15, 2024, the period leading

15 up to Dominion's motion for disqualification; post March 18,

16 2024, the period after this Court entered the status quo order;

17 as well as a very brief discussion of Ms. Lambert's relevant

18 history in other matters, because the case law tells us that

19 that is to be considered.

20         This all began because sometime in March 2020,

21 Ms. Lambert gave Sheriff Dar Leaf access to the document

22 discovery posting all of Dominion's documents produced in this

23 case; confidential, AEO, didn't matter.  She simply handed over

24 her login credentials.

25         Around this same time, on March 8th, Ms. Lambert

1   herself filed 48 pages of Dominion's documents on the public

2   docket of a criminal case pending against her in the State of

3   Michigan.

4           THE COURT:  Has that been taken down pursuant to my

5   order?

6           MS. BROOK:  No, it has not, Your Honor, and I will be

7   addressing that in my presentation.

8           Finally, on March 12th, in response to an email from

9   Dominion asking Ms. Lambert to provide an accounting of

10  everything she had done with its documents, Ms. Lambert

11  responds, not by claiming ignorance of the protective order or

12  by denying that she was the source of the improper disclosures

13  this Court has already noted, rather she accuses Dominion's

14  attorneys of being accessories after the fact and ignores our

15  requests for information.

16          These actions were clear violations of the protective

17  order governing this case.  Specifically, she violated

18  paragraph one by using discovery material for purposes outside

19  this litigation, and by providing that discovery material to

20  persons not permitted to receive it under that order.

21          And as explained at the last hearing, Your Honor, on

22  this matter, this provision applies to all documents,

23  confidential or not, and was heavily negotiated, briefed and

24  entered by Judge Nichols over the objection of some of the

25  defendants in these cases, specifically because Dominion

1   foresaw just this risk.

2           THE COURT:  Did Mr. Byrne object?

3           MS. BROOK:  Mr. Byrne did not object to the entry of

4   the protective order, Your Honor; though, to be clear, it did

5   not apply to him when it was initially briefed, but then when

6   it came time to enter the protective order in his matter, his

7   attorney stipulated to it without any objection.  And I believe

8   that's Docket 45 in the Byrne case, the stipulated entry of the

9   protective order.

10          She also violated paragraph eight of the protective

11  order, which discusses the prohibition of sharing Dominion's

12  confidential discovery material, and she also violated

13  paragraph 27, by not notifying Dominion of her impermissible

14  disclosure and refusing our repeated requests to provide us

15  with basic information of the details surrounding it.

16          There are other paragraphs in the protective order

17  Ms. Lambert no doubt violated, but the point is the same, she

18  clearly gave no regard to the fact that the Court had entered

19  the protective order in this matter, rather she rushed to

20  release as many of Dominion's documents to the public as

21  possible.

22          In response, as the Court knows, Dominion promptly

23  moved for relief, and this Court held a hearing on March 18th.

24  At that hearing, Your Honor made clear that she had not yet

25  been given the authority to decide this issue, and she was not

1  going to pre-judge it in any way, but that they wanted to enter

2  a status quo order to essentially stop the bleeding, if you

3  will.

4         The Court did that orally at that March 18th hearing,

5  and lest there be any confusion, the Court followed up with a

6  minute entry that same day and with a written order the next

7  day, March 19, 2024.

8         This Court's written order, which I will refer to as

9  the "status quo order," was crystal clear that, among other

10  things, Ms. Lambert and Mr. Byrne were to, quote, "Immediately

11  desist from sharing, distributing, providing access to or

12  discussing," end quote, any of the discovery material received

13  in connection with this case.

14         Ms. Lambert was also to, quote, "Immediately confer

15  with her counsel in the criminal matter and undertake every

16  reasonable effort to remove such documents from the public

17  record and file them under seal instead," end quote.

18         And Ms. Lambert and Mr. Byrne were to provide a signed

19  verification to this Court by no later than 5:00 p.m. on

20  March 21st confirming they had done these things.

21         Your Honor, you asked me to address the subsequent

22  violations, and that's what I intend to do.  Ms. Lambert has

23  violated every single one of the status quo provisions that I

24  just went through, and Mr. Byrne has violated every one that

25  applies to him.

1        First, you asked about whether or not the documents in

2   the criminal case have been sealed; they have not, Your Honor.

3   But it gets worse.  As far as Dominion can tell, Ms. Lambert

4   has not undertaken any reasonable effort to remove Dominion's

5   documents from the public record and file them under seal.  In

6   fact, it appears she's taken no effort.  There is no excuse for

7   her inaction.

8        What does Dominion base this on?  Dominion has been

9   tracking the docket in the relevant criminal matter and has not

10  seen any change indicating its documents have been filed under

11  seal.  Seeing nothing on the public docket, we sent an email to

12  one of the prosecutors overseeing Ms. Lambert's criminal case

13  yesterday afternoon asking his office to confirm what we were

14  seeing on the public docket.

15       I would like to read from his email.  Quote, "All

16  documents filed by Ms. Lambert in the Oakland County Circuit

17  Court and the Michigan Court of Appeals remain public.  This

18  includes documents that appear to be connected to your

19  litigation and have been deemed by our office as being

20  irrelevant in our pending criminal case.  Neither Ms. Lambert

21  nor her attorney, nor anyone acting on her behalf has reached

22  out to our office to attempt to seal any filings she has made

23  in the court of appeals or in the trial court.  The attorney of

24  record for Ms. Lambert in her criminal case is Attorney Daniel

25  Hartman.  Ms. Lambert has been appearing on her own behalf in

1   the court of appeals," and then I skip ahead.

2        "We are unaware of any other action being taken to

3   limit the public disclosure of the documents filed by

4   Ms. Lambert," end quote.

5        In the final paragraph of that email, Your Honor, and

6   I do have a copy of that email if the Court would like it, the

7   office also makes clear that they would be, of course, happy to

8   cooperate with any request by Ms. Lambert or any orders from

9   this Court pursuant to their own Michigan Rules of Professional

10  Conduct, which require doing so.

11       So no, Your Honor, as far as Dominion can tell, she

12  made no effort to seal its documents.

13       Moving on, both Ms. Lambert and Mr. Byrne failed to

14  meet the verification deadline set by this Court, nor did they

15  contact the Court or Dominion in advance to indicate that they

16  would be late.  Rather, they waited until the day after the

17  deadline to file an extension request that -- and this is

18  critical -- implies that as of that point in time, which was

19  several days after the issuance of the status quo order,

20  Ms. Lambert had not yet even conferred with Mr. Byrne about

21  this Court's order.  This delay, Your Honor, is inexcusable.

22  And this isn't us nitpicking.  The delay mattered.

23       As you can see from slide 19, in the few days that

24  Ms. Lambert apparently failed to communicate with her client,

25  Mr. Byrne was very busy posting about Dominion all over the

1    internet, including making specific reference to information

2    released by him and Ms. Lambert through Sheriff Dar Leaf.

3            It is also worth pointing out, Your Honor, that any

4    claim by Ms. Lambert or Mr. Byrne that these two did not have

5    time to connect during this period is demonstrably false.  If

6    they had time to do all this posting, if they had time to file

7    a multi-page request for an extension, they had time to have a

8    simple conversation about the Court's order.

9            And yet it goes on.  "Adding to Ms. Lambert's failure

10   to take every reasonable effort to immediately seal the

11   documents she filed publicly, adding to her and Mr. Byrne's

12   failure to abide by the verification process, Ms. Lambert also

13   violated the Court's order requiring that Dominion's discovery

14   material not be discussed.

15           Quite frankly, Your Honor, Dominion does not have the

16   time at this hearing to detail all of the social media posts

17   and interviews that Ms. Lambert and Mr. Byrne have given on the

18   subject of their improper disclosure since the March 18th

19   hearing, nor do I imagine I have managed to collect them all,

20   but I want to bring a few of note to the Court's attention, and

21   we have prepared a timeline of all of them that we could find,

22   to the extent the Court would like it.

23           As one example, on March 19th, Ms. Lambert provided a

24   statement to ABC News, the day after this Court's hearing,

25   where she again defends her actions, fine, but she also

1  summarizes what she contends is contained in the impermissibly

2  disclosed documents.

3        As a second example, on March 22nd, Ms. Lambert sat

4  for an interview on Joe Oltmann Live, and, in that interview,

5  Mr. Oltmann turns to her at 42:25 and he says, "We have

6  evidence from Dar Leaf, and way more that has not been

7  released," and when he starts to discuss the evidence, he

8  hesitates and he turns to Ms. Lambert and he says, quote,

9  "Stefanie, I didn't get it from you, I got it from Twitter, X,"

10 end quote.  And Ms. Lambert does nothing to stop him from then

11 launching into a discussion of the documents.

12        In fact, Ms. Lambert follows up by telling Mr. Oltmann

13 that he should have Dar on the show himself, because he can go

14 through the investigation.  And when Mr. Oltmann asks

15 Ms. Lambert if Sheriff Dar Leaf is allowed to discuss his

16 investigation and evidence, Lambert says, "Sheriff Dar Leaf can

17 do whatever he wants, it's his investigation."

18        Next, Your Honor, as a third example, on April 7th,

19 Ms. Lambert sits for another interview, this time on

20 Mr. Lindell's Frank Speech platform in a segment entitled,

21 "Surviving attacks for standing up for fair elections with

22 Stefanie Lambert," end quote.  In it, she discusses the leaked

23 documents at various points and falsely claims Dominion's

24 attorneys had a security officer present false claims to this

25 Court, to Your Honor, to get her arrested last March.

1          Taken together, not only did Ms. Lambert violate two

2     court orders, numerous times in numerous ways, but she also

3     made material misrepresentations to this Court.  Perhaps most

4     notably, as we have already discussed, she provided a signed

5     verification saying she had undertaken all reasonable efforts

6     to seal a filing when the prosecutor says she hasn't so much as

7     picked up the phone.

8          But it doesn't end there, Your Honor.  Ms. Lambert

9     told this Court on March 18th, when she was standing at this

10    very podium, that the only folks who had access to the relevant

11    materials besides herself were a woman named Stephanie Smith

12    and a man named Russell Newman.

13         Now, I want to be very clear here.  The Court has

14    asked us to be precise, and I intend to be.  This is part of a

15    discussion where the Court is asking Ms. Lambert about notes,

16    but the Court's implication was clear, it wanted to know who

17    had access to the documents.

18         Well, it turns out in a letter we get some weeks later

19    from the McGlinchey firm, Mr. Byrne's prior counsel, that there

20    was another attorney, a gentleman named Michael Smith, who was

21    also given access.  Why didn't Ms. Lambert tell Dominion or

22    really this Court about Michael Smith?  Has Mr. Smith been

23    advised of the status quo order?  Has Mr. Smith been following

24    this?  Is he here today?

25              THE COURT:  Who is Mr. Smith?

1          MS. BROOK:  I don't know.

2          And yet another example, Your Honor, Ms. Lambert and

3   Mr. Byrne cannot even get their story straight on who directed

4   the impermissible disclosure, with Ms. Lambert telling Dominion

5   in writing that Mr. Byrne, quote, "insisted," end quote, on it,

6   while Mr. Byrne says, quote, "It wasn't at my instruction; she

7   felt a need to do it," end quote.

8          These misrepresentations, Your Honor, raise the real

9   elephant in this room, which is everything we do not know.

10  While Dominion contends the evidence it does know and has put

11  into this record is more than enough to grant its request for

12  disqualification, there is no doubt that there is more to this

13  story and more Dominion needs to learn in order to assess what

14  sanctions it should seek against Mr. Byrne, including, Your

15  Honor, notably what coordination has been happening between

16  Ms. Lambert, Mr. Byrne and Sheriff Dar Leaf, who, by the way,

17  Ms. Lambert apparently is an attorney for, and, therefore, when

18  another party subpoenaed Mr. Dar Leaf's office for documents,

19  he refused -- sorry, not subpoenaed, FOIAed, he refused to

20  produce the documents claiming attorney-client privilege with

21  Stefanie Lambert.

22          What we do know, Your Honor, however, and it's

23  relevant to the Court's analysis here, is this:  Ms. Lambert

24  and Mr. Byrne have shown no remorse for their actions.  To the

25  contrary, they are defiant that they did the right thing and

1   that they would do it again.  Here is a slide of Ms. Lambert

2   proudly announcing that she gave the evidence to law

3   enforcement.  And here is Mr. Byrne, Your Honor, saying out

4   loud in no uncertain terms exactly what he intends to do.

5         This is a transcript.  We have it certified,

6   transcribed should the Court like a copy, from a video that

7   Mr. Byrne uploaded on April 2nd.  And I'll read it into the

8   record.

9         "And I'm telling you here, and, Judge, with all due

10  respect, you decide what you want.  We're giving you the honor

11  this time of going through the steps that Stefanie evidently

12  was supposed to do last time, but there is no chance in hell

13  I'm not going to make this public.  I mean, I'm giving -- so

14  you can throw me in prison as long as you want.  I am going to

15  make this stuff public.  So I hope you make the right decision,

16  but I'm not going to keep this quiet.  I'm going to give you

17  time to make the right decision, and if you make the wrong

18  decision, I'm just going to do the right thing anyway and you

19  throw me in jail."  Expletive "you," end quote.

20        Your Honor, Mr. Byrne's words are shocking, but they

21  should come as no surprise to his attorney, or really to any of

22  us.  They are part of a pattern he has made very clear to

23  anyone who is willing to listen, namely that he will make

24  public whatever he thinks should be made public regardless of

25  what any judge says to the contrary.

1          Indeed, on slide 28, beyond his statement I just read

2    into the record, here are two recent posts he made to X, where,

3    as you can see, a judge in another matter ordered that certain

4    information not be shared by a party on social media, so what

5    does Mr. Byrne do?  He joins a movement to defy that judge's

6    order, spreading the information himself.

7          And Mr. Byrne has indicated he intends to do the same

8    thing here as well.  Take this post on slide 29 where you can

9    see him practically planning out what he will do with

10   Dominion's source code if it's produced in this case.

11         THE COURT:  He has the right to say these things on

12   Twitter, doesn't he?

13         MS. BROOK:  He has the right to say whatever he wants

14   to say on Twitter, Your Honor; however, I think that what he is

15   saying should be taken seriously.  They are his words and we

16   should believe him when he says he's going to do the things

17   he's going to do.

18         As this Court explained at the last --

19         THE COURT:  None of the, at least the past few posts

20   you have shown me are not a dissemination of any of the

21   confidential information in this case, are they?

22         MS. BROOK:  Let's get to that, Your Honor, no.  Here

23   are all of the posts we could find Mr. Byrne did since your

24   status quo order that talk about Dominion.  Not all of them

25   specifically reference a confidential document, but they are

1   all talking about Dominion, and many of them get to violating

2   Your Honor's order.

3        For example, at slide 32, here is a post Mr. Byrne

4   made immediately after the status quo hearing where he is

5   reposting the very letter from Sheriff Dar Leaf that kicked off

6   Sheriff Dar Leaf's exposure of all of the Dominion documents on

7   Twitter.  And while this document itself may not mention the

8   documents, it is obviously an effort by Mr. Byrne to promote

9   Sheriff Dar Leaf's letter, to send users to Sheriff Dar Leaf's

10  website, where as he knows, as this Court knows, anyone can

11  download an entire Google drive of Dominion documents to this

12  day.

13       Here is one from March 18, 2024, Your Honor.

14  Apparently he posted some video where he may very well have

15  been talking about the documents, including an apology to the

16  judge in DC, but he took it down, he deleted it.  That too,

17  Your Honor, is a violation of this Court's status quo order,

18  which said to preserve everything related to this issue.

19       I reached out to Ms. Lambert repeatedly and I asked

20  for this video and she said it was gone.  And here, Your Honor,

21  is I think exactly what you were asking for.  On slide 34, you

22  have Mr. Byrne making a post just some days ago, May 8, 2024,

23  where he is literally reposting one of the confidential

24  documents that were leaked by his attorney through Sheriff Dar

25  Leaf.  So yes, Your Honor, he has posted the very document that

1  Your Honor said he should not be discussing.

2         To the surprise of no one, and as flagged in

3  Dominion's papers and the earlier hearing on the subject, all

4  this activity has and will continue to lead to very serious

5  threats to Dominion's employees, to their safety, to their

6  families' safety, to say nothing of the erosion of public trust

7  in our elections.

8         To recap, Your Honor, what orders have they violated?

9  Ms. Lambert has violated the governing protective order

10  numerous times in numerous ways and indicated no interest in

11  stopping.  She has likewise violated the status quo order

12  numerous times in numerous ways and indicated no interest in

13  stopping.

14         She has misrepresented the truth to this Court and to

15  Dominion by submitting a signed verification saying that she

16  has and will comply with the status quo order, when she has

17  not.  And she also has sat back and done nothing as her client

18  has repeatedly violated this Court's orders.

19         Your Honor, as I started with, the case law standard

20  is truly egregious conduct that will infect this proceeding.

21  If this does not suffice as truly egregious conduct that will

22  infect this proceeding, I don't know what else will.

23         As Your Honor knows, the other thing the case law

24  talks about is because these disqualification motions usually

25  come up in the context of a conflict is whether or not it

 1   impacts the allegedly conflicted attorney from zealously

 2   representing their client.

 3          Well, I can tell you that having Ms. Lambert on this

 4   case is impacting my ability to represent my client.  Every

 5   email I send to the joint defense group now, every document I

 6   produce, every person I put up for deposition, I have no good

 7   faith reason to believe that the person on the other side, the

 8   attorney on the other side is going to follow the Court's

 9   orders in this case.  That hampers my ability to do my job to

10   zealously represent my client.

11          And let's be clear, Your Honor --

12          THE COURT:  Is that the standard though for

13   disqualification?

14          MS. BROOK:  The standard for disqualification is

15   usually looking at whether the attorney with the conflict is

16   going to be hindered, but, Your Honor, I don't think there is

17   another case like this where you have an attorney that has

18   violated protective orders and other court orders so many times

19   that it might actually violate -- that it might actually hinder

20   the other side's ability to do their job, but I think the more

21   apt standard for this scenario is the truly egregious

22   misconduct standard.

23          THE COURT:  What is your best case supporting

24   disqualification under these circumstances?

25          MS. BROOK:  I think the *Paul v. Judicial Watch* case,

1   Your Honor, as well as the *Koller v. Richardson* case.  While in

2   *Koller*, the Court ended up not disqualifying, as I'm sure Your

3   Honor knows, the articulation and the explanation of the

4   standard there is very thorough, and I think as applied to the

5   facts here would have come out the other way.

6          Your Honor, the other issue I wanted to address in

7   terms of the case law is whether a lesser sanction would

8   suffice, and the answer is it would not.  First of all, as I

9   have gone through in some detail just now, Ms. Lambert has

10  shown repeatedly that she will not adhere to court orders.

11  There is nothing she could say in court today to convince us

12  that if Your Honor says, "I'm not going to throw you off this

13  case, but you got to follow the protective order going

14  forward," she will do that.

15         But more importantly perhaps, lesser sanctions will

16  not protect the integrity of this litigation because they have

17  already been doled out.  I'm not going to go into detail into

18  Ms. Lambert's history, it's in our briefing, which I am sure

19  the Court read, but Ms. Lambert has been the recipient of quite

20  serious sanctions in multiple other courts in multiple other

21  jurisdictions and it is clear she has not learned her lesson.

22         And one thing I didn't include in our briefing, Your

23  Honor, but to the extent it would be helpful, is there is case

24  law showing that, I couldn't find it in a disqualification

25  context, but in a Rule 11 context that you explicitly are

1    allowed to look outside the four corners of one case, one

2    representation, when disciplining, when sanctioning an

3    attorney.  The case law says that of course there should be

4    independent grounds within the confines of the case itself, but

5    you can also look at pattern and practice behavior.

6              THE COURT:  I would like that case law, please.

7              MS. BROOK:  I can hand it up to you and the others.

8              THE COURT:  Just make sure Ms. Lambert gets a copy of

9    it as well.

10             MS. BROOK:  Of course.

11             Your Honor, the other reason it's important to

12   disqualify here is because the other defendants are watching.

13   The other defendants that Dominion sued in this case are

14   watching, and they are noting what is happening, and this is

15   what they are saying.  They are saying, quote, "It takes heroes

16   like Sheriff Dar Leaf and Stefanie Lambert to save our

17   country," end quote.

18             The message needs to be clear to Ms. Lambert, to

19   Mr. Byrne, and to everyone pending before this Court that these

20   types of actions will not be tolerated, will not be sanctioned

21   and will have zero tolerance policy.

22             THE COURT:  I mean statements like that, you know,

23   Mr. Lindell has the right to make those.  I don't see how those

24   are as pertinent.  Anyone has a right to -- any defendant has a

25   right, within the confines of any orders that the Court sets,

 1    to comment about litigation or express their views freely.

 2            MS. BROOK:  Agree, Your Honor, but any defendant

 3    doesn't have the right to break this Court's orders, to violate

 4    those Court's orders, and their attorneys do not have the right

 5    to not abide by the rules of professional conduct.  And what

 6    I'm using those slides to show, Your Honor, is not that

 7    Mr. Lindell doesn't have a right to say that himself, but that

 8    I have a very real concern that if Ms. Lambert is not

 9    appropriately sanctioned for what she did, we are -- we will

10    see similar conduct from similar defendants in due time.

11            THE COURT:  Do you have any case from anywhere in the

12    country where a Court ordered disqualification as a sanction as

13    opposed to in a conflict setting?

14            MS. BROOK:  I believe so, Your Honor.  The *Paul* case

15    itself I think --

16            THE COURT:  I mean other than *Paul*.

17            MS. BROOK:  Not that I can think of off the top of my

18    head, Your Honor, but I would suggest that the reason for that

19    is not because Courts don't want to do that, Courts aren't

20    willing -- I don't think any Court ever wants to disqualify an

21    attorney.  It's not something anyone takes any joy or pleasure

22    in, but I think that the other reason that we don't find many

23    cases like that -- so I see my colleague handing me up one

24    other, which is right, the *In Re Bell South*.  It's in our reply

25    brief, the *In Re Bell South* case is another one of those cases.

1   You don't get this type of pattern of misconduct.  You just

2   don't.

3         This isn't her first offense in this court, even

4   though she's only been counsel of record for two months.  She

5   violated the protective order.  We came before this Court

6   several weeks ago and this Court gave her what I would call a

7   second chance.  It entered a status quo order.  And it might

8   have been a different story if standing up here today

9   Ms. Lambert had not violated that status quo order left, right

10  and center, if Mr. Byrne had not violated that status quo order

11  left, right and center, if in their own words since the status

12  quo order was entered, they have said, "We're going to violate

13  it again.  It doesn't matter what the Court does, we're going

14  to violate it."

15        Again, he's free to say that, but he's not free to do

16  it.  And so this Court gave Ms. Lambert a second chance and she

17  didn't take it; instead she went on TV and she said -- and she

18  found ways to continue directing, promoting, and pushing

19  viewers to the documents that she herself had leaked through

20  Sheriff Dar Leaf.

21        Your Honor, I'll be blunt.  My concern is this:  If

22  she's not removed from this case, all that will have happened

23  is they will have gotten smarter about how to do this leak in

24  the future.

25        I don't think that we would know what we knew today if

1   it wasn't for the fact that Mr. Byrne's exiting attorneys

2   alerted us to what had happened.  And since apparently

3   Ms. Lambert is also representing Sheriff Dar Leaf in another

4   action, she can try to claim attorney-client privilege over

5   anything she --

6           THE COURT:  What action is that?

7           MS. BROOK:  Some criminal -- I believe it's related to

8   the same criminal proceeding where she is a named defendant,

9   but my understanding actually is she is represented --

10          THE COURT:  There is two criminal proceedings in

11  Michigan, are there not?

12          MS. BROOK:  There are two criminal proceedings pending

13  right now against Ms. Lambert in Michigan, but my research

14  revealed actually, Your Honor, that Ms. Lambert has been

15  representing Sheriff Dar Leaf going back to, I believe, 2020.

16  I do not know in what cases.  I would love to know.

17          So, Your Honor, we're here today to re-up our request

18  that she be disqualified, that after disqualification, to be

19  clear, she remain banned from accessing Dominion's discovery

20  material.  I'll remind this Court that she gained access to

21  that discovery material before she appeared as counsel of

22  record in this case.  And so we're not suggesting she just not

23  be counsel of record in this case but still be allowed to

24  review and do what she wants with our discovery material.

25          We also renew our request for the other information

1    that we outlined in our proposed order.  And I would add to our

2    request in our proposed order, Your Honor, that we would like

3    information, discovery into the communications between

4    Mr. Byrne, Ms. Lambert, Sheriff Dar Leaf and their associates,

5    as we believe there is more to this story and we are trying to

6    decide what is an appropriate request as to Mr. Byrne and the

7    best way to do that is with information.

8            THE COURT:  Okay.  Thank you.

9            MS. BROOK:  Thank you.

10           THE COURT:  Do I have Mr. Driscoll here?

11           UNIDENTIFIED SPEAKER:  Mr. Driscoll is present in

12   court, Your Honor.

13           THE COURT:  Could you approach, please?  You can just

14   approach the podium.  Thank you.

15           I would like to get some information from the

16   McGlinchey firm, however you want -- I just picked Mr. Driscoll

17   as the author of the initial email -- to explain to the Court

18   how you came to learn about the -- without -- I'll make it very

19   clear, I'm not looking for any privileged communications or any

20   attorney work product protected information, but would like to

21   learn how you came to know about Ms. Lambert's dissemination of

22   confidential information.

23           MR. DRISCOLL:  Your Honor, we discovered the criminal

24   court Michigan filing on Twitter, I believe.  It was on a

25   social media site, there was a link to the filing.  And when we

1 clicked through the link, there were exhibits to the filing

2 that appeared that they might implicate the order.

3          THE COURT:  Did you know about Ms. Lambert's work on

4 the case up to that point or was she acting in a consultant

5 capacity?

6          MR. DRISCOLL:  I want to be careful, Your Honor,

7 because, obviously, I can't unring bells with this.

8          THE COURT:  I understand that.

9          MR. DRISCOLL:  I'll say that --

10          THE COURT:  Before you speak further, let me just say,

11 I know, and Ms. Lambert has admitted, that she signed an

12 undertaking in December of 2023, so we know that somehow she

13 got access to this information without having yet entered her

14 appearance in the case.

15          MR. DRISCOLL:  We were aware of that undertaking.  We

16 provided it.  It was returned to us.

17          THE COURT:  Okay.  Did you provide her information?

18 Did you provide her access to the database?

19          MR. DRISCOLL:  Yes, after the undertaking was signed.

20          THE COURT:  And was she retained as Mr. Byrne's

21 counsel at that point?

22          MR. DRISCOLL:  I believe so, Your Honor.

23          THE COURT:  That you know of.  Okay.

24          And so you came to learn about these documents being

25 filed in her criminal matter, correct?

1          MR. DRISCOLL:  Correct.

2          THE COURT:  And that's what we have seen here in the

3    slide deck where she's filed some documents pro se?  Is that

4    the same filing?

5          MR. DRISCOLL:  I believe so.  There was -- again, we

6    saw it on social media, which referenced the criminal matter.

7          THE COURT:  Okay.  Is it at that point in which you

8    reached out to Susman Godfrey?

9          MR. DRISCOLL:  Yes.

10         THE COURT:  Okay.  And do you know, again, without

11   revealing any confidential or privileged information,

12   particularly here in open court, beyond that post or beyond

13   that filing she made, rather, in her Michigan criminal case,

14   what the scope of her dissemination -- alleged dissemination

15   is?

16         MR. DRISCOLL:  No information on that, Your Honor.

17         THE COURT:  Okay.  And you all represent Mr. Byrne in

18   other matters; is that correct?

19         MR. DRISCOLL:  We do.  We're not counsel in this

20   matter.  We do represent him in some other matters.

21         THE COURT:  Okay.  I will address -- I know that you

22   have written a letter to the Court seeking some guidance on

23   what you can and can't do.  I will address that in the future,

24   but wanted to understand very clearly what the scope of your

25   knowledge was.  So did you -- I'm trying to understand the

1    timing.

2            After you alerted Dominion's counsel to this filing

3    that Ms. Lambert made, is that about the time that you withdrew

4    from the case?

5            MR. DRISCOLL:  Mr. Byrne made a change in counsel, and

6    so we withdrew when Ms. Lambert entered an appearance.

7            THE COURT:  Okay.  And I just want to confirm because

8    I haven't seen this in the record, but I would like you to

9    confirm that while you were representing Mr. Byrne, you never

10   sought to come to the Court to seek to lift the protective

11   order or seek to de-designate any documents or seek any relief

12   whatsoever from the protective order on behalf of Mr. Byrne?

13           MR. DRISCOLL:  We did not, Your Honor.

14           THE COURT:  All right.  Thank you very much.  You may

15   be seated.

16           All right.  Ms. Lambert?  Why don't you start with,

17   ma'am, responding to the allegation that you did not follow

18   this Court's March 18th order.

19           MS. LAMBERT:  Thank you, Judge.

20           I have a response from my attorney, Daniel J.

21   Hartman.  I did comply.  I did reach out to Daniel J. Hartman.

22           Without waiving attorney-client privilege, Daniel J.

23   Hartman stated that he could not ask the Court in good faith,

24   that the documents contained some of the most serious crimes in

25   national history and are a matter of national security.

1          THE COURT:  Well, you say that, and you have not cited

2     to me one single case anywhere in the country that supports

3     your position for that proposition.

4          MS. LAMBERT:  May I finish, Your Honor?  I want to

5     give the Court information regarding -- I complied with what

6     the Court said, to reach out to my attorney.  He said that he's

7     unable, he would be misleading the Court that these documents

8     contained any confidential information, that they are not trade

9     secret, that they are not intellectual property, and, in fact,

10    they have a matter of public interest, not only for the

11    sheriff's investigation, for the congressional investigation,

12    for the numerous investigations that were already taking place

13    by prosecutors, sheriffs and Congress across the United States,

14    that there would be no legal basis under the court rules and

15    Michigan law for him to file such a motion.

16          So I did comply with the Court's request, and I did --

17          THE COURT:  I didn't order -- Ms. Lambert, I don't

18    mean to cut you off, but we have limited time here today.

19    Shockingly, I have other matters to tend to other than this

20    case.

21          And the dissemination that has been made and what

22    appears to be the flagrant violations of my order, I

23    have received no communication from you that you were not able

24    to take care of that, and I didn't -- and my order didn't say

25    that you're supposed to contact your attorney.  My order said

1   you're supposed to take all reasonable steps to take that down.

2          And your attorney himself is objecting to getting

3   those documents filed under seal?  I'm not asking that you

4   withdraw them from that case.  I was ordering that you put them

5   under seal so that the confidential nature of them could be

6   protected pending a final order from this Court.

7          MS. LAMBERT:  My attorney stated -- first of all, Your

8   Honor, there has been material misrepresentations of fact to

9   this Court by Dominion's counsel.  Okay.  I need to correct

10  those because that's significant for the Court to be able to

11  make a determination.

12         What Dominion states is that I provided those

13  documents to the Court.  They were filed as an attachment of an

14  affidavit from the sheriff.

15         THE COURT:  Ma'am, I'm not going to waste time doing

16  it.  We went through this last time.  The reason I'm cutting

17  you off is because you, frankly, misrepresented to the Court

18  last time that you did not file these.

19         You were representing yourself pro se at that time,

20  were you not?

21         MS. LAMBERT:  This is the sheriff's affidavit.

22         THE COURT:  Just answer my question.

23         MS. LAMBERT:  That's correct, Your Honor.

24         THE COURT:  So as an attorney representing herself in

25  a criminal matter, you filed documents that were attached to

1   someone else's affidavit, but you made the filing, didn't you?

2            MS. LAMBERT:  Your Honor, the sheriff attached the

3   documents to his affidavit to support --

4            THE COURT:  In support of your case.

5            MS. LAMBERT:  No.

6            THE COURT:  While you were acting pro se.

7            MS. LAMBERT:  That's incorrect.

8            THE COURT:  Okay.

9            MS. LAMBERT:  He received a request for documents from

10  the prosecutor, which he's previously filed civil suits related

11  to the attorney general of Michigan.

12           Your Honor, as of May 16th --

13           THE COURT:  Ma'am, I'm going to ask you to be very

14  careful about representations you make to this Court today.

15           MS. LAMBERT:  My representations are accurate, Your

16  Honor, and I can provide documentation that support each and

17  every one.

18           As of today, May 16, 2024, I am an attorney in good

19  standing in the State of Michigan and otherwise.  I have never

20  had a bar grievance prior to entering my appearance against the

21  attorney general of the State of Michigan on a federal case in

22  December of 2020 as appellate counsel, local counsel to Sidney

23  Powell.

24           At that point, I received a request for sanctions,

25  which I won; I received a bar grievance, which I won.  And from

1    that point forward, Dominion and the Michigan attorney general

2    have sought to tarnish my reputation as a lawyer to prevent me

3    from representing clients throughout the country.

4             THE COURT:  All right.  Let's stay focused on this

5    case.

6             MS. LAMBERT:  I am focused on this case, Your Honor.

7    Dominion --

8             THE COURT:  Ma'am, I'm talking.

9             MS. LAMBERT:  Thank you, Judge.

10            THE COURT:  Okay.  I would like you to respond,

11   because I do, in the limited time we have today, I do want to

12   get your response to the allegations that you saw in the slide

13   deck about the interviews that you were on and any posts that

14   you made.

15            Do you contest that those things happened?  That's

16   just the baseline question.

17            MS. LAMBERT:  I want to answer each question that the

18   Court has, but there are many --

19            THE COURT:  Ma'am.  Ma'am, you have got to let me

20   finish, okay.  Let's just have a clear record.  Let me finish

21   and then you can respond.  It's a yes or no answer.

22            Do you contest that those things happened?  I

23   understand you may have justification or substantive responses

24   to why you did them.

25            Do you contest that you made any of the posts or

1    appeared on those interviews?

2         MS. LAMBERT:  Well, Your Honor, I was not provided the

3    posts in advance of today's hearing that Dominion wanted to

4    provide to the Court.  I'm seeing a slide deck for the first

5    time.  I have spoken publicly about this case, as has Dominion

6    on its website.

7         Dominion continues to silence media and others by

8    posting on its own website --

9         THE COURT:  Is that a yes, that you did -- that those

10   posts are --

11        MS. LAMBERT:  I have spoken --

12        THE COURT:  I mean, they are your own posts.  You

13   know, you're saying you don't have notice of them, they are

14   your own posts and your own comments.  So I just want to

15   clarify whether you have any dispute that those things actually

16   occurred.

17        MS. LAMBERT:  I dispute that I disseminated documents.

18   I have clearly informed the Court from day one that documents

19   were provided directly to law enforcement.  How law enforcement

20   and Congress, where they already had open investigations --

21   there is a prosecutor in the State of Michigan, Pete Lucido,

22   who was a senator at the time he cross-examined John Poulos,

23   the CEO of Dominion.  He has publicly stated that there is an

24   open investigation regarding perjury and that the CEO of

25   Dominion has committed perjury.

1          These have been ongoing matters that Congress,

2    senators, law enforcement, have been reviewing now for years,

3    and as a result of Dominion's continuous misrepresentations and

4    attempts to control who's counsel on the case that they oppose,

5    the matters have not been able to be fully investigated to

6    date.

7          And election cycle after election cycle has taken

8    place with the most serious national security crimes that have

9    ever been committed on U.S. soil taking place in this file.

10         THE COURT:  Okay.  You don't contest -- all right.  I

11   have heard no response, so I'm going to assume that you concede

12   that the posts that you made and the comments you have made

13   publicly and the interviews that you have allegedly appeared

14   on, that those actually happened, because I have heard no

15   specific response to any of those.

16         But you also don't contest that you gave those

17   documents to Sheriff Leaf and to others, correct?  I know you

18   say you had a reason for doing so, and I'll get to that in a

19   minute, but you don't contest that you gave those documents --

20         MS. LAMBERT:  I do not, and to provide further

21   information, he was given direct access to allow for chain of

22   custody to be protected so there was no dispute as to the

23   validity and source of the documents, that they were Dominion's

24   documents, which Dominion has subsequently agreed with.

25         THE COURT:  Okay.  What's your best case, because I

1 didn't see any case supporting -- legal authority supporting

2 your position that you could bypass the order that Judge

3 Nichols set and the order of this Court and give access to

4 documents to a third party not involved in the case?

5     MS. LAMBERT:  Well, Your Honor, it would be the

6 ethical rules and my oath as an attorney.  My oath as an

7 attorney is to the Constitution --

8     THE COURT:  Which oath?

9     MS. LAMBERT:  The oath that I take when I am barred as

10 an attorney.

11     THE COURT:  Okay.  Which oath?

12     MS. LAMBERT:  In Michigan, and the federal bar has a

13 similar oath that I must uphold the Constitution.

14     THE COURT:  Anything other than your oath?

15     MS. LAMBERT:  And Dominion has continuously violated

16 the ethical rules, 4.1, regarding truthfulness.  It continues

17 to make material misstatements of law and fact to control who

18 Mr. Byrne's attorneys are.

19     THE COURT:  Do you have any -- you know, you have said

20 it's so clear that you were entitled to disseminate this

21 information, and there is no dispute that it's confidential

22 information, there is no dispute that you did it.  The dispute

23 is whether you were allowed to do it, or that's your position.

24     MS. LAMBERT:  There is a dispute, Your Honor.  I don't

25 agree that it was confidential information.  Dominion turned

 1  over --

 2          THE COURT:  Well, they were documents in the

 3  litigation and the protective order that your client agreed to

 4  and that Judge Nichols entered said that any document -- said

 5  that any documents in the case should not be used for any

 6  purpose other than litigation.

 7          MS. LAMBERT:  My client did not agree to false labels

 8  being placed on the documents by Dominion.

 9          THE COURT:  And there is a mechanism for your client

10  and for you, which at this point I'm not really sure who you're

11  here on behalf of, ma'am.  I think there is a plausible

12  narrative here that you got involved in this case in order to

13  publicly disclose these documents, and that's very troubling

14  for the Court.

15          But there is a mechanism if there is an objection to

16  these documents not being -- you know, if you wanted to release

17  these, you could have come to this Court, I said that last

18  time, and you had access to these documents apparently for

19  months and you didn't come to this Court seeking any sort of

20  relief from the protective order.

21          MS. LAMBERT:  Your Honor, as I have previously stated,

22  the protective order applies to a civil case.  What is

23  contained in these documents is lies and criminal acts from

24  Dominion where Dominion has lied specifically to Congress.

25          Dominion stated that this is a U.S.-based company.

1    This is a -- Denver, the headquarters, is a front.  Dominion

2    states in these emails that 75 percent of its source code --

3              THE COURT:  Hold on.  Hold on.  Hold on.  Hold on.

4              MS. LAMBERT:  -- comes from --

5              THE COURT:  Stop.  Ma'am, we have an open courtroom.

6    So if we're going to talk about the contents of any document,

7    I'm going to seal the courtroom.  So let's stop short -- and

8    this goes for all counsel, let's stop short of talking about

9    what's in the documents or else I'm happy to clear the

10   courtroom and seal the courtroom, but I'm not going to allow

11   this to be a forum for you to continue to talk about what's

12   confidential in this case and what's meant to be protected by

13   Judge Nichols' order.

14             MS. LAMBERT:  Your Honor, in order to come to that

15   conclusion, the Court would need to review each document and

16   the Court would see that Dominion put a false and fraudulent

17   label on the document reflecting that it was trade secret,

18   intellectual property or confidential.

19             Dominion sought to silence media for several years

20   with these lawsuits, which was effective.

21             THE COURT:  Ma'am, I have heard your position.  I

22   really would like you to give me any authority, legal

23   authority, whatsoever, other than the oath that you took as an

24   attorney in Michigan, to support the proposition that you could

25   unilaterally bypass, or your client could unilaterally bypass

1   the order of this Court and disseminate this information to a

2   third party.  All I'm looking for, ma'am, because I'm trying to

3   come to some conclusion on this request by Dominion, I'm

4   looking for authority.  I'm asking you to help me.  Do you have

5   any case law?

6        MS. LAMBERT:  Your Honor, there is not one case that

7   says that a Court can prevent the report of a crime.  And I

8   reviewed numerous crimes.

9        THE COURT:  What is the case -- I asked you this at

10  the last hearing and I asked that you be prepared at this

11  hearing to answer this, if you could you.  And if you can't,

12  then you need to say you can't.

13       Is there any case that stands for the proposition that

14  you unilaterally can bypass the protective order, even when

15  there is a mechanism in protective order for to you come to the

16  Court and try to seek relief from it?  You ignored that.  Your

17  client ignored that.  There is no real dispute that both of you

18  did it.

19       So I'm looking for any legal authority that supports

20  the proposition that you can do that if you unilaterally

21  believe that there is evidence of a crime in those documents.

22       MS. LAMBERT:  There are numerous statutes, Your Honor,

23  that address obstruction.  If the Court were to rule that I was

24  not able to report criminal acts with ongoing investigations

25  already in place with Congress, law enforcement, prosecutors'

1    offices, that would be obstruction.  It's difficult --

2           THE COURT:  Other than obstruction laws.

3           MS. LAMBERT:  Right.  There are no cases --

4           THE COURT:  And I don't necessarily agree with that,

5    but other than general obstruction laws, do you have a case?

6           MS. LAMBERT:  There is no case that says there

7    is water -- that water is wet, Your Honor, and that's what we

8    have here.  I have an obligation to report criminal acts that I

9    reviewed in this discovery that are black and white and clear.

10   I can see fraud of services in these documents.  I can see

11   conspiracy in these documents.  I can look at the transcripts

12   of what Dominion testified before Congress and before the

13   Michigan Senate and the statements they made and the documents

14   contradicted, it's black and white.

15          THE COURT:  So if you were acting in good faith,

16   ma'am, why didn't you come to this Court and seek relief?

17          MS. LAMBERT:  Because I believe that would be

18   inappropriate to ask a civil court whether or not I can report

19   a crime.  And that's why I can't find a law that says or a case

20   that says that's how it works.  Everyone can go to law

21   enforcement and report crimes, and I have an oath and an

22   obligation to do that.

23          THE COURT:  All right.  Do you have any response to

24   Dominion's arguments about your and your client's subsequent

25   violations of my March 18th order?

1          MS. LAMBERT:  Absolutely, and I would like to get to

2     that.  Dominion has made material misstatements of fact

3     regarding pattern of conduct.  Every time I enter my appearance

4     on one of these cases, Dominion or the attorney general comes

5     up with a new sham accusation.  For example --

6          THE COURT:  Which attorney general are you talking

7     about?

8          MS. LAMBERT:  The Michigan attorney general.

9          THE COURT:  Someone who is not before this Court and

10    has nothing to do with this case?

11         MS. LAMBERT:  Well, Your Honor, Dominion is seeking to

12    use my case in Michigan for this Court to consider, and that

13    has nothing to do with this case.  That case, Your Honor, I

14    need to give background on, since Dominion wants the Court to

15    consider it.  That case, the prosecutor had to file a dec

16    action to ask the Court what is the law, because they were

17    seeking to do something new and unique to me and my co-counsel,

18    Matt DePerno, and a state representative in Michigan.

19         We were opposing counsel on litigation in Michigan,

20    and every single time we enter an appearance, there is a new

21    criminal accusation or some type of bar grievance that is filed

22    that we ultimately prevail on.  They have attacked us over and

23    over and over again, and each time we win, but their goal is to

24    prevent us from being a voice for our clients and having

25    Dr. Byrne have an attorney that understands election law, that

1    has worked as a prosecutor for 12 years and has been in private

2    practice and understands exactly what she's looking at in order

3    to be his zealous advocate.

4         For example, in Pennsylvania, Dominion objected to my

5    pro hac vice application.  I have been admitted in numerous

6    states pro hac vice.  Dominion cited at the time the sanctions

7    and the bar grievance that I ultimately won to prevent me from

8    being counsel there.

9         Dominion has the pattern of seeking to prevent me from

10   being an attorney for my clients because I know too much and I

11   understand too much.  And despite all of the targeting that

12   takes place, I continue to win.

13        For example, my client, Clerk Scott, that we talked

14   about the last time I was here in court, her and I were charged

15   prior to this hearing.  In fact, we had to appear in court on

16   Monday.

17        THE COURT:  You told me she was your assistant at the

18   last hearing.

19        MS. LAMBERT:  She is my assistant.  She's a former

20   clerk.  I hired someone that intimately understands --

21        THE COURT:  I think I got half the story last time.

22        MS. LAMBERT:  Right.  So I hired someone that

23   intimately understands what I'm working on for my clients.  We

24   were just charged after we have announced that the attorney

25   general was under investigation, and I had to appear and delay

1    this court proceeding as a result of that.

2         The prosecutor in that case, after communicating with

3    Dominion, sought to have me removed from all election cases,

4    election-related cases throughout the country.  They do not

5    want me -- and he compared me to a habitual child molester.

6    The Court saw through it.  The Court rolled its eyes and said

7    no.

8         THE COURT:  Ma'am.  Ma'am, when I interrupt you, you

9    need to stop talking so that I can -- this is going off the

10   rails.  I need you to address the particular allegations made

11   against you.

12        Now, I understand if you don't want to, that's fine.

13   Do you have any response to any of the case law that Dominion

14   has cited in support of its DQ motion?

15        MS. LAMBERT:  I do, Your Honor.  There is no pattern

16   of conduct.  I have won everything that they have made an

17   accusation related to.  There is no gag order in this case.

18   There is a protective order that was designed to protect

19   intellectual property and trade secret, none of which was

20   disseminated.  I dispute the word "disseminated."

21        THE COURT:  The order is broader than that, ma'am.

22   The order is broader than trade secrets.  And this is an order

23   that was briefed.  Your client willingly agreed to it before

24   you joined the case and stipulated to it.  You just heard that

25   here in open court.  And it was litigated.  And Judge Nichols

1    entered it.

2           MS. LAMBERT:  I'm not sure that my client --

3           THE COURT:  Ma'am.  Ma'am, Judge Nichols --

4           MS. LAMBERT:  -- reviewed the protective order with

5    prior counsel.

6           THE COURT:  He did stipulate to it.  There is nothing

7    in the record that I have seen where your client objected to

8    the entry of the protective order, and even if he did, Judge

9    Nichols entered it over any objections.

10          But I need to know going forward what your position is

11   as to whether or not, if you come and gain access to any of the

12   documents in this case, whether you intend to follow the

13   protective order, simple as that.

14          MS. LAMBERT:  I will follow any orders that this Court

15   gives.  I want the Court to know that --

16          THE COURT:  Subject to what -- subject to your own

17   unilateral views as to what can and can't be disseminated?

18          MS. LAMBERT:  I will follow all specific orders that

19   this Court gives.

20          THE COURT:  What does that mean?

21          MS. LAMBERT:  That means anything that the Court

22   orders, I will follow.

23          THE COURT:  I haven't seen any evidence of that thus

24   far.  You violated the protective order.  You apparently have

25   no response.  I think it's conceded that you went on after my

1    March 18th order to continue to violate.

2              MS. LAMBERT:  I did not discuss confidential documents

3    after --

4              THE COURT:  You stood by while those documents were

5    discussed or others were directed to those documents, did you

6    not?

7              MS. LAMBERT:  Your Honor, I don't have an obligation

8    to anyone else but Dr. Byrne.  I can't control what others do.

9              THE COURT:  You have an obligation to the Court by the

10   oath that you just referenced.

11             MS. LAMBERT:  That's correct, but I can't stop law

12   enforcement from investigating.  I can't stop people from

13   discussing the matter, but I can defend --

14             THE COURT:  Let me pose -- this is a simple question.

15   I hope you'll answer it directly.

16             If you have access to any confidential documents in

17   this case in the future, and in your view, or your client's

18   view, those documents reflect some evidence of some crime, do

19   you intend to come to this Court and seek permission to

20   disseminate those, or do you intend to not feel bound by the

21   protective order in this case and disseminate it to third

22   parties, including law enforcement, as you're saying?

23             MS. LAMBERT:  I will come to this Court.

24             THE COURT:  Okay.  You haven't done that to date.  How

25   can I be sure of that, ma'am?

1           MS. LAMBERT:  Well, Your Honor, as the Court knows, I

2    did everything in good faith prior to this.  And --

3           THE COURT:  I don't know that, ma'am.

4           MS. LAMBERT:  Okay.  Well, I'm trying to reassure the

5    Court of that, that what I thought and what I viewed, and maybe

6    in time the Court will understand, are some of the most serious

7    national security issues that have ever taken place in this

8    country.

9           So if the Court wants me to come with any question I

10   might have about whether or not a document contains evidence of

11   a crime, I will do that.  I will not provide it to law

12   enforcement, I will come directly to this Court.

13          THE COURT:  All right.  Do you have anything else --

14   any case law you want to cite me to, any response to any

15   specific case cited by Dominion?

16          MS. LAMBERT:  Your Honor, everything that Dominion has

17   told this Court, in my opinion, has been a material

18   misstatement of fact that I had wanted to address, but the

19   Court, I think, had questions that were specific and I answered

20   them.

21          I did file a brief.  I did do thorough research.  In

22   my opinion, this is a request that I find a case that says

23   water is wet.  I see it slightly different than this Court, but

24   I want to reassure this Court, that the Court would like me to

25   come to this Court before providing any document to law

1    enforcement, and I will do just that.

2            THE COURT:  What was on your client's April 3rd, 2024

3    video?

4            MS. LAMBERT:  Your Honor, I'm not -- Dr. Byrne

5    travels --

6            THE COURT:  Have you seen it?

7            MS. LAMBERT:  -- frequently.

8            I have seen some of his videos.

9            THE COURT:  Have you seen that video?

10           MS. LAMBERT:  I did not watch the entire thing.  I

11   know I sent him a message that said, "Please pull down

12   anything.  We have a hearing coming up."

13           THE COURT:  Have you seen -- so you have seen parts of

14   it?

15           MS. LAMBERT:  I had saw that he did something that

16   appeared to address this Court.  He has many cases and has for

17   years been involved in a number of different investigations.  I

18   assumed it was related to this.  I sent him a message that

19   said, "Please pull that down," and he did.

20           THE COURT:  Okay.  Well, what was on the video?

21           MS. LAMBERT:  I'm sorry?

22           THE COURT:  It's not privileged information.  What was

23   on the video?

24           MS. LAMBERT:  I think he was addressing that he wanted

25   to comply with what the Court is ordering and that he believed

1   that we hadn't done anything wrong.  That's what I -- but I

2   said, "Just stop discussing it until we go to court."

3          THE COURT:  Is there any discussion of any of the

4   confidential information on that video, and I'm going to remind

5   you you're addressing the Court.

6          MS. LAMBERT:  I did not see that, but as I stated,

7   Your Honor, my client posts frequently about many, many topics.

8   I do not have time, nor do I want to bill him for babysitting

9   his social media.  That was one post that I notified him to

10  please pull down.

11         THE COURT:  Well, then -- so, you know, you say that

12  you're going to -- you would comply even if you yourself

13  thought that there was evidence of some crime in any

14  confidential documents or any documents in the case.

15         Let me just note that when I refer to "documents in

16  the case," the protective order that Judge Nichols has entered

17  has said -- I'll just repeat this -- that any documents that

18  are produced in this case are to be used for the litigation of

19  this case.  And so any use beyond that, you were obliged, or

20  your client was obliged, to come to this Court if you wished to

21  use them in any other way.

22         Is your client going to comply with the protective

23  order in the future if he's given access to any documents in

24  this case?

25         MS. LAMBERT:  Absolutely.  And, Your Honor, I would

1    like to point out at the time that --

2         THE COURT:  Again, what possible faith can I have

3    given what's happened thus far and what's undisputed thus far

4    that that will occur in the future?

5         MS. LAMBERT:  Well, Your Honor, I think you can

6    appreciate that we never anticipated, and I'm sure when I was

7    not counsel on this case, that Dr. Byrne never appreciated that

8    he would be given evidence of criminal acts from Dominion.

9    That has happened.

10        So now that we have sorted through how the Court would

11   like us to handle this, we will comply, so the Court can order

12   Dr. Byrne to comply with its order today.  He's present in

13   court, and we will absolutely comply and file motions to

14   address what Judge Nichols knew at the time he signed that

15   order and any requests that we have.

16        THE COURT:  What if a witness testifies at a

17   deposition and your or your client's view is that that reflects

18   some sort of evidence of a crime, is that something, that

19   deposition testimony something you would share publicly?

20        MS. LAMBERT:  We will file a motion before Judge

21   Nichols.

22        THE COURT:  Well, Judge Nichols has referred all

23   discovery matters to me in this case, so --

24        MS. LAMBERT:  Then we will file any issue before this

25   Court.

1          THE COURT:  All right.  Do you have anything else,

2     ma'am?

3          MS. LAMBERT:  No, Your Honor.  If the Court has any

4     further questions as to how we will satisfy and comply with any

5     further orders, I'm happy to address it.

6          THE COURT:  Okay.  Thank you.

7          Ms. Brook?

8          MS. BROOK:  Thank you, Your Honor.  I'll try to be as

9     concise as possible.

10          You asked Ms. Lambert months ago for any authority for

11    what she did prior to March 18, 2024.  She had none then.  She

12    has none now.  That's despite this Court giving her numerous

13    opportunities, really every opportunity to find it, including a

14    very late sur-reply.

15          The reason she has no authority is because you just

16    are not allowed to do what she did.  And let's be clear about

17    what she did.  She did not give documents to law enforcement.

18    I reject that phrasing.  She did not hand a folder of documents

19    to law enforcement.  She gave Sheriff Dar Leaf, and please

20    correct me if this is wrong, her personal login credential to

21    an entire database of documents so that he could, for all we

22    know, download the entire thing and sift through it as he

23    delights and for the next two years as this case is proceeding

24    towards trial, leak, leak, leak as he likes.

25          And, Your Honor, to that end, there is another

1    document I would like to provide to Ms. Lambert, of course, as

2    well as to this Court, this is a chart that we took pains to

3    create that lists every document, Dominion document, Sheriff

4    Dar Leaf has posted on his so-called Twitter account.  I have

5    no idea if it's his X account or not.  And the date in which he

6    posts it.  He has posted new information, new documents, as

7    recently as May 13th.

8              THE COURT:  How does he have access to those?

9              MS. BROOK:  Because for all we know, he downloaded the

10   entire thing.  That's the issue, Your Honor.  Of course she

11   says to you now that she'll come to the Court if she finds new

12   evidence of criminal activity because she doesn't have to

13   anymore.  For all we know, he has every single document we have

14   produced in this case.  She never needs to come to you again.

15             THE COURT:  Do you want to hand that up?  Do you have

16   a copy of that to hand up to the clerk?

17      (Pause)

18             MS. BROOK:  And worse yet, Your Honor, and this goes

19   to that legal standard to infecting the integrity of this

20   proceeding, I will never know which documents she gave to

21   Sheriff Dar Leaf or not, because even if this Court grants my

22   request, which I urge it to do, to have the document vendor

23   provide me with a full accounting of who logged in and when and

24   who downloaded what, it's all going to be under her name

25   because she gave her login.  So it's not like I'll be able to

1    say, "Oh, well, this one is presumably in Ms. Lambert's

2    possession, but this one is in Sheriff Dar Leaf's possession."

3    She gave him her login credentials to cover her tracks, not to

4    protect the chain of custody.

5           And she did not hand over documents.  She handed over

6    an entire repository of more than a million documents.  Is her

7    contention that all one million documents show the greatest

8    crimes in the history of the world?

9           On that point, Your Honor, too, as to why we should

10   suddenly believe her when she says she'll follow your Court's

11   orders, the only explanation I heard is that she and her client

12   never believed that Dominion's documents would show evidence of

13   criminal acts.  And so now that that's been sorted out, and

14   they know what to do if they find that evidence, she'll follow

15   the rules.

16          I'm sorry, if there is anything I can give Ms. Lambert

17   and Mr. Byrne credit for, they have been consistent for the

18   last four years that Dominion is responsible for the greatest

19   crimes in the history of this country.  They have been begging

20   Dominion to sue them.  They have been telling the world, as

21   Your Honor mentioned, as is their right apparently, they are

22   saying whatever they want to say, accusing my client of having

23   done these terrible things.

24          So to say that the reason she'll behave differently

25   now is because she was just so caught off guard before when the

1    documents showed apparently exactly what she and her client

2    have been saying the documents would show, it's just not

3    credible.

4         So, Your Honor, no authority for what she already did,

5    which is looking increasingly like an intentional effort to

6    launder these documents to Sheriff Dar Leaf.

7         Last point on that one, Your Honor, if she really

8    believed that they showed evidence of a crime and she didn't

9    think that this Court had jurisdiction over the criminal court,

10   go to law enforcement and report a crime.  There is no

11   explanation for why she gave Sheriff Dar Leaf her login to an

12   entire document repository, unless she wanted to do exactly

13   what she achieved, which is to give him presumably -- and I'm

14   going to presume it at this point -- access to every single

15   document Dominion has produced in this case thus far, that he

16   may very well have downloaded and have in his possession.

17        Your Honor, she also has no response to the violations

18   of the status quo order that I listed in my opening remarks.

19   As to the criminal proceeding where she was supposed to seal, I

20   won't go into detail on her lawyer's response as to whether or

21   not he did it or not, but I think the points in response are

22   obvious.

23        One, she represents herself pro se, she could have

24   picked up the phone herself and called the prosecutor's office

25   and asked them to seal these documents.  But, two, and, again,

1   this goes to why no lesser sanction will suffice, if she
2   believed her attorney, giving her every benefit of the doubt,
3   that he couldn't do this thing, it would be against his oath to
4   the Court, then the right thing to do under the rules of this
5   Court, under DC Rules of Professional Conduct, Rule 3.3, the
6   duty of candor to the Court, let us know, pick up the phone,
7   send something to the Court to say, "I am updating the Court
8   that I made a request of my attorney to do X, Y, and Z, and he
9   said no way."

10          That is what an attorney should have done in this
11   situation if, giving her every benefit of the doubt, she
12   believed him.  And it's that failure, that refusal to act in
13   that way that's going to continue to infect every single
14   dispute we have in this case.

15          Your Honor, lastly, she told Mr. Byrne, I think she
16   said, to pull down the video, because we have a hearing coming
17   up.  The status quo order said to preserve all documents
18   surrounding this dispute.  And I know she didn't instruct her
19   client to pull it down and preserve it, because, again, I
20   emailed her probably six or seven times on this issue and
21   reiterated, "I understand he pulled it down, but does he have a
22   copy on his phone that he used to upload, did he send it to a
23   friend, anything," and she made clear it's gone.

24          So that's yet another violation of the status quo
25   order that we learned about in her response.

1          THE COURT:  If I order disqualification, what would be

2     the need for any discovery -- why would Dominion need any

3     discovery into this alleged dispute?

4          MS. BROOK:  Because, Your Honor, we intend to bring a

5     motion as to Mr. Byrne as well, and I think it would benefit

6     both this Court and Dominion if we knew more about what he had

7     done.  If it turns out that Mr. Byrne has been coordinating

8     with Sheriff Dar Leaf in Sheriff Dar Leaf's posts, I believe

9     that is a fact that is not privileged, and that would bear on

10    this Court's decision as to whether any sanctions should fall

11    on Mr. Byrne.

12         So it's not necessary for you to disqualify

13    Ms. Lambert.  Like I said, we think the evidence that exists in

14    the record as of right now is more than enough to satisfy the

15    egregious misconduct standard as to her actions, but we do

16    intend to seek sanctions as to Mr. Byrne.

17         And I say this genuinely, I don't want to be here

18    doing this.  I have a really busy case to work on to try to

19    show that these folks lied about Dominion in 2020 and to bring

20    this case to trial as quickly as possible.  I would like to

21    bring as targeted and focused and helpful a motion as possible,

22    and in order to do that, I need to know.  And frankly I'm

23    entitled to know under Judge Nichols' protective order.

24         It says -- it's why I assume that Mr. Byrne's former

25    lawyers did what they did and informed us of the breach -- "If

1    you become aware of a breach, you're supposed to inform the

2    other side and you're supposed to provide information about

3    it."  So I'm not even asking for information we're not entitled

4    to really.  I just am saying I no longer really trust what they

5    are going to say, so I would like the documents to back it up.

6         And that really is where this ends, Your Honor, which

7    is the key question I think you asked Ms. Lambert, which is,

8    you know, will you follow my orders going forward.  And while I

9    appreciate she is saying she'll follow specific orders or

10   she'll follow any orders requiring to a specific thing, I just

11   at this point cannot go back to my client and tell them that I

12   can believe that and that I can believe that there is

13   information -- that we can produce more information, yet more

14   information to that side, and that I have any faith at all that

15   it won't be shared or that frankly other future breaches of

16   this Court's orders will go into effect.

17             THE COURT:  Okay.

18             MS. BROOK:  I was just going to say, the other things

19   I have for opposing counsel and for Your Honor, should you like

20   it, is the full email from the prosecutor's office in Michigan

21   if we could provide that.  And then the cases I mentioned,

22   which I'm happy to provide to both, we have them here today,

23   opposing counsel and Your Honor, that talk about looking beyond

24   the four corners, again, you need evidence within the four

25   corners as well are *Atkins v. Fischer*, 232 F.R.D. 116, that's

1    D.D.C. 2005.  We're also providing *Vollmer v. Publishers*

2    *Clearing House*, 248 F.3d 698.  That's a Seventh Circuit case,

3    2011.  And *Kramer v. Tribe*, 156 F.R.D. 96, the District of New

4    Jersey, 1994.

5            THE COURT:  Okay.  Thank you.

6            Ms. Lambert, is there a copy of this video anywhere,

7    the April 3rd video?

8            MS. LAMBERT:  No, Your Honor.  And I wanted to provide

9    further information about that.  I asked my client to take it

10   down, not to have it deleted.  I did not understand when I was

11   asking him to remove it from social media that it was not

12   preserved.

13           Apparently, it's posted on some platform where the

14   videos are not preserved.  He does not have a copy.  I did let

15   Dominion know that when they asked by email if there was a

16   copy, and I told him -- told them unfortunately, there wasn't.

17   And I didn't know that.

18           THE COURT:  Isn't it your obligation to ensure

19   preservation?

20           MS. LAMBERT:  Your Honor, I --

21           THE COURT:  Especially given my specific -- I mean, it

22   exists no matter what, but then specifically my order.

23           MS. LAMBERT:  I don't know, Your Honor, number one, as

24   a threshold consideration whether or not it discussed any

25   documents in violation of the order.  I don't know that.  I

1    just asked him to stop talking about it when I saw the post

2    come up.

3            THE COURT:  My question is:

4            Isn't it your obligation to ensure that everything is

5    preserved whether or not -- regardless of what's in it,

6    given --

7            MS. LAMBERT:  I did communicate that to my client

8    after the hearing, Your Honor.  And I did not know that it

9    would not be preserved.  Apparently -- and he didn't know that

10   either when he removed it from a public post that it is not

11   preserved.  So we just didn't know that, Your Honor.

12           To correct a few things, I am not pro se in my case.

13   I have an attorney representing me.  I am for the first time in

14   receipt of this email today in court that was sent on May 15th

15   that was not forwarded to me, and it also was not -- my

16   attorney was not copied on it -- to engage in conversation with

17   Dominion, nor did the prosecutor appear to forward it to my

18   attorney.  I am represented by counsel.  So I am in receipt of

19   this, but I wanted the Court to have that further information.

20           With regard to any questions that the Court might have

21   with us following further orders, everything that I did on

22   behalf of Dr. Byrne was in good faith and was consistent with

23   what I believed the laws and the rules and the ethical

24   obligations to be.

25           THE COURT:  Did you read the protective order at any

1  time --

2          MS. LAMBERT:  I did, and I --

3          THE COURT:  Just let me finish.

4          -- prior to Dominion filing its emergency motion?

5          MS. LAMBERT:  Yes, and signed it, and I provided it to

6  Mr. Driscoll's office.

7          THE COURT:  Right.  It's undisputed that you signed an

8  undertaking, so I'm assuming that you read it and you saw that

9  there were mechanisms that would have avoided this entire

10  situation.

11          MS. LAMBERT:  As I further stated, and I had wanted to

12  address with the Court, Your Honor, we did not anticipate the

13  discovery to contain evidence of criminal acts.  I believe this

14  is, in my view, but I understand the Court's view, asking for

15  water is wet.  If I were to go to the counsel for the criminals

16  and let them know that I believe there is evidence of a crime

17  that I want to report to the police, that could result in a

18  destruction of evidence, criminal actors fleeing, hiding, so --

19          THE COURT:  Ma'am --

20          MS. LAMBERT:  -- I want to follow any order that the

21  Court gives moving forward, but the Court needs to understand

22  my mindset was in good faith, and the Court does have the

23  ability to issue sanctions or remove me from the case should I

24  do anything inconsistent moving forward with a Court order.

25          THE COURT:  All right.  Ma'am, I have given you ample

1   opportunity to respond to any of the specific events that have

2   occurred.  I haven't really heard any response other than what

3   you said.  I'm going to take a brief break and I'll be back.

4          MS. LAMBERT:  Thank you, Judge.

5          THE COURT:  Thank you.

6          DEPUTY CLERK:  All rise.  Court stands in recess.

7       (Recessed from 11:17 a.m. to 11:38 a.m.)

8          DEPUTY CLERK:  All rise.  This Honorable Court is now

9   reconvened.

10          Please be seated and come to order.

11          THE COURT:  Okay.  A few matters that I would like to

12   address before wrapping up.

13          I would like to, for Ms. Lambert and Mr. Byrne's

14   benefit, just reiterate my status quo order.

15          Paragraph one states -- and this is at ECF No. 77 for

16   reference -- that pending any resolution by this Court, and

17   until further order of the Court, that Mr. Byrne and his

18   counsel, Ms. Lambert, are to immediately desist from sharing,

19   distributing, providing access to or discussing any discovery

20   material received in connection with the following cases, and

21   it goes on to list the related cases here.

22          Now, discovery material, as I reference it in that

23   order, is discovery material as is defined in Judge Nichols'

24   interim -- or Judge Nichols' protective order.  I want to make

25   it very clear that going forward if I see any evidence that

1    violates this order, I'm going to take that into account in my

2    final resolution.  And I'll be very clear, some of the things I

3    have seen since March are a violation of this, as I see it,

4    some of what I have seen today.

5         And so I would like you both to come up and confirm

6    that you understand that.  Now is the opportunity to ask me if

7    you have any questions.

8         I would like Mr. Byrne to confirm that he understands

9    this order and that he intends to comply with it as well.

10        So I'll let you go first, Ms. Lambert.  Do you

11   understand this order?

12        MS. LAMBERT:  I do, Your Honor, and I will comply with

13   it.

14        THE COURT:  Okay.  If there are any questions, are you

15   going to come to the Court?

16        MS. LAMBERT:  Absolutely.

17        THE COURT:  Instead of taking unilateral action?

18        MS. LAMBERT:  Correct.

19        THE COURT:  Okay.

20        Mr. Byrne, I just don't want you to say anything more

21   beyond whether or not you understand this order.

22        MR. BYRNE:  I do.

23        THE COURT:  And are you prepared to comply with it,

24   sir?

25        MR. BYRNE:  Yes.

1          THE COURT:  All right.  Thank you.  You may be seated.

2          Well, actually, let me ask instead of -- are you going

3     to comply with it?

4          MR. BYRNE:  Yes.

5          THE COURT:  Okay.  Thank you.

6          MR. BYRNE:  Actually, I have one question.  You asked

7     if I had a question?

8          THE COURT:  You probably want to ask your lawyer so

9     that you can ask me -- and she can ask me, if you'd like.

10    Would you like to ask her and have her ask me?

11       (Pause)

12         MS. LAMBERT:  Your Honor, if Dr. Byrne is requested by

13    Congress or the DOJ or law enforcement to cooperate with an

14    investigation, how should he proceed?

15         THE COURT:  Well, if it involves discovery material in

16    this case, follow the mechanism in the protective order for

17    bringing it to the Court's attention, and, if it's

18    confidential, you can seek to file something before this Court.

19         But I'll just be very clear, some of the actions that

20    appear to have been taken in the name of law enforcement aren't

21    entirely supported, so that's why I'm saying you need to follow

22    the strict guidelines of Judge Nichols' order and come to the

23    Court if there are any such requests.

24         MS. LAMBERT:  Thank you, Judge.

25         THE COURT:  Thank you.

1          All right.  Just to clarify, as I mentioned, Judge

2    Nichols' protective order defines what discovery material is

3    and it applies to all discovery.  That's paragraph one of his

4    order, so I'm not slicing and dicing, and whatever positions

5    anyone is taking that something is or is not a trade secret,

6    his order, which he entered over objection, is much broader

7    than that, and that's how I'm going to define "any discovery

8    material" is the definition he's applied to it at paragraph one

9    of the protective order.

10          I would like to just address the McGlinchey firm's

11   questions.  I think there were some questions that the prior

12   counsel had for the Court or requests as to future cases.

13          MR. PLUNKETT:  Thank you, Judge.  Dan Plunkett from

14   the McGlinchey firm's office of general counsel.  We submitted

15   some proposed edits to clarify your order that are pretty

16   straightforward.  One, that it be limited to the documents

17   received from Dominion as opposed to documents produced by

18   Mr. Byrne to Dominion, and that he's free, of course, to use

19   his own documents in whatever fashion he may choose to do so,

20   and that the order restricts his ability to use, disseminate,

21   et cetera, Dominion's documents.

22          THE COURT:  I believe that's what the protective order

23   says.

24          Ms. Brook, is there any objection to that reading of

25   the protective order?

1          MS. BROOK:  No objection, Your Honor.

2          THE COURT:  So that's correct.  I think that, if I

3     recall correctly, the protective order says that any person's

4     own documents are their own and it's really material that you

5     gain as a result of the discovery process from another party

6     that's restricted.

7          MR. PLUNKETT:  Of course, Your Honor.  That is how we

8     read it as well, but out of an abundance of caution, we sought

9     the clarifications.

10         THE COURT:  I appreciate that.  Thank you.

11         MR. PLUNKETT:  Thank you, Ms. Brook.

12         THE COURT:  Okay.  Yes, Mr. Driscoll?

13         MR. DRISCOLL:  The other clarification is the status

14    quo order I believe had the document firms under an obligation

15    to let the Court know if anyone tried to access any documents

16    being held on behalf of Dr. Byrne.  And we want to make sure

17    that the Court clarified that that only applies to this case,

18    because there are other cases for which that same document firm

19    holds documents that have nothing to do with Dominion.  It's

20    parallel to what Mr. Plunkett discussed earlier, that that

21    obligation of the document firm applies only to the Dominion

22    matter.

23         THE COURT:  Well, to the cases here.  It's more than

24    just one matter, but, yes, I can't issue orders in those other

25    cases and so --

1          MR. DRISCOLL:  As long as we're not violating your

2     status quo order.

3          THE COURT:  I have to say I appreciate you -- I would

4     much rather you come out of an abundance of caution to the

5     Court, and I urge all parties to adhere to the manner in

6     which -- use your approach as a model for how to come to the

7     Court and try to get some clarification.

8          But, yeah, if there are other documents in other

9     cases, I can't restrict those, of course.

10         MR. DRISCOLL:  We thought it was clear, but we just

11    wanted to make sure.  Thank you, Your Honor.

12         THE COURT:  I appreciate that.  Thank you.

13         Okay.  I am going to take the matter under advisement.

14    I would ask that Dominion -- I would like to get a supplement

15    filed with your slide deck and any documents or posts, or if

16    there are videos that are cited in the slide deck, can you file

17    those as kind of an addendum to the slide deck?

18         MS. BROOK:  Of course, Your Honor.  I also have them

19    all printed out here too, in case Your Honor would like them,

20    and I have already provided everything I have in my hand to

21    Ms. Lambert.

22         THE COURT:  Is that a copy for the Court then?

23         MS. BROOK:  Yes, Your Honor.

24         THE COURT:  Okay.  I would like to take that, but we

25    would like to get it filed into the record, so if you could do

1   that no later than close of business tomorrow, does that work?

2          MS. BROOK:  Absolutely.  So just the pieces of

3   evidence essentially that we addressed today?

4          THE COURT:  Yes.  And you can mark them as subsequent

5   exhibit numbers beyond the exhibit numbers in your filings so

6   that we can keep track of everything.

7          Okay.  As I mentioned, I will take this matter under

8   advisement.  Is there anything else at this time, anyone?

9          All right.  Thank you all for your argument.  I

10  appreciate you being here.  Thank you, Mr. Byrne for being

11  here.  You are all excused.

12         DEPUTY CLERK:  All rise.  Court is now adjourned.

13      (Proceedings concluded at 11:46 a.m.)

14

15                       CERTIFICATE

16     I, Sonja L. Reeves, Federal Official Court Reporter in and
    for the United States District Court of the District of
17  Columbia, do hereby certify that the foregoing transcript is a
    true and accurate transcript from the original digital record
18  in the above-entitled matter and that the transcript page
    format is in conformance with the regulations of the Judicial
19  Conference of the United States.

20     Dated this 18th day of May, 2024.

21

22                            /s/ Sonja L. Reeves
                           SONJA L. REEVES, RDR-CRR
23                         FEDERAL OFFICIAL COURT REPORTER

24

25

## /

**/s** [1] - 66:22

## 1

**1** [2] - 6:10, 6:12
**10:00** [2] - 1:10, 3:1
**11** [2] - 6:11, 21:25
**116** [1] - 56:25
**11:17** [1] - 60:7
**11:38** [1] - 60:7
**11:46** [2] - 1:10, 66:13
**12** [1] - 42:1
**1275** [1] - 2:3
**12th** [1] - 7:8
**13th** [1] - 51:7
**1400** [1] - 1:14
**15** [2] - 6:11, 6:14
**156** [1] - 57:3
**15th** [1] - 58:14
**16** [2] - 1:10, 32:18
**16th** [1] - 32:12
**18** [3] - 6:15, 18:13, 50:11
**18th** [8] - 8:23, 9:4, 12:18, 14:9, 29:18, 40:25, 45:1, 66:20
**19** [2] - 9:7, 11:23
**1900** [1] - 1:14
**1994** [1] - 57:4
**19th** [1] - 12:23
**1:21-cv-02131(CJN** [1] - 1:5

## 2

**20001** [1] - 1:24
**20004** [1] - 2:4
**2005** [1] - 57:1
**2011** [1] - 57:3
**202** [1] - 2:4
**2020** [4] - 6:20, 25:15, 32:22, 55:19
**2023** [1] - 27:12
**2024** [10] - 1:10, 6:14, 6:16, 9:7, 18:13, 18:22, 32:18, 47:2, 50:11, 66:20
**21-2131** [1] - 3:6
**21st** [1] - 9:20
**22nd** [1] - 13:3
**232** [1] - 56:25
**248** [1] - 57:2
**27** [2] - 6:11, 8:13
**28** [1] - 17:1
**29** [1] - 17:8
**2nd** [1] - 16:7

## 3

**3** [1] - 6:12
**3.3** [1] - 54:5
**3.4(c** [1] - 6:5
**30** [1] - 4:5
**310** [1] - 1:15
**313** [1] - 1:19
**32** [1] - 18:3
**333** [1] - 1:24
**34** [1] - 18:21
**3rd** [2] - 47:2, 57:7

## 4

**4.1** [1] - 36:16
**400** [1] - 1:18
**410-6872** [1] - 1:19
**420** [1] - 2:3
**42:25** [1] - 13:5
**45** [1] - 8:8
**48** [1] - 7:1
**48243** [1] - 1:19

## 5

**5:00** [1] - 9:19

## 6

**698** [1] - 57:2

## 7

**75** [1] - 9:19, 38:2
**77** [1] - 60:15
**789-3100** [1] - 1:15
**7th** [1] - 13:18

## 8

**8** [3] - 6:11, 6:12, 18:22
**8.4(d)** [1] - 6:8
**802-9950** [1] - 2:4
**8th** [1] - 6:25

## 9

**90067** [1] - 1:14
**96** [1] - 57:3

## A

**a.m** [6] - 1:10, 3:1, 60:7, 66:13
**ABC** [1] - 12:24
**abide** [2] - 12:12, 23:5
**ability** [5] - 20:4,

**20:9, 20:20, 59:23, 63:20
**able** [5] - 30:23, 31:10, 35:5, 39:24, 51:25
**above-entitled** [1] - 66:18
**absolutely** [5] - 41:1, 48:25, 49:13, 61:16, 66:2
**abundance** [2] - 64:8, 65:4
**access** [18] - 6:21, 9:11, 14:10, 14:17, 14:21, 25:20, 27:13, 27:18, 35:21, 36:3, 37:18, 44:11, 45:16, 48:23, 51:8, 53:14, 60:19, 64:15
**accessing** [1] - 25:19
**accessories** [1] - 7:14
**account** [2] - 51:4, 51:5, 61:1
**accounting** [2] - 7:9, 51:23
**accurate** [2] - 32:15, 66:17
**accusation** [3] - 41:5, 41:21, 43:17
**accuses** [1] - 7:13
**accusing** [1] - 52:22
**achieved** [1] - 53:13
**act** [1] - 54:12
**acting** [1] - 10:21, 27:4, 32:6, 40:15
**action** [5] - 11:2, 25:4, 25:6, 41:16, 61:17
**actions** [7] - 5:16, 7:16, 12:25, 15:24, 22:20, 55:15, 62:19
**activity** [2] - 19:4, 51:12
**actors** [1] - 59:18
**acts** [6] - 37:23, 39:24, 40:8, 49:8, 52:13, 59:13
**add** [1] - 26:1
**addendum** [1] - 65:17
**adding** [2] - 12:9, 12:11
**address** [15] - 4:11, 4:13, 9:21, 21:6, 28:21, 28:23, 39:23, 43:10, 46:18, 47:16, 49:14, 50:5, 59:12, 60:12, 63:10

**addressed** [1] - 66:3
**addressing** [3] - 7:7, 47:24, 48:5
**adhere** [2] - 21:10, 65:5
**adjourned** [1] - 66:12
**admitted** [2] - 27:11, 42:5
**advance** [1] - 11:15, 34:3
**advised** [1] - 14:23
**advisement** [2] - 65:13, 66:8
**advocate** [1] - 42:3
**AEO** [1] - 6:23
**affidavit** [4] - 31:14, 31:21, 32:1, 32:3
**afternoon** [1] - 10:13
**ago** [3] - 18:22, 24:6, 50:10
**agree** [4] - 23:2, 36:25, 37:7, 40:4
**agreed** [3] - 35:24, 37:3, 43:23
**ahead** [1] - 11:1
**al** [2] - 1:3, 3:6
**alerted** [2] - 25:2, 29:2
**Alfred** [1] - 2:3
**allegation** [1] - 29:17
**allegations** [2] - 33:12, 43:10
**alleged** [3] - 4:17, 28:14, 55:3
**allegedly** [2] - 20:1, 35:13
**allow** [2] - 35:21, 38:10
**allowed** [5] - 13:15, 22:1, 25:23, 36:23, 50:16
**ALSO** [2] - 2:1
**ample** [1] - 59:25
**analysis** [1] - 15:23
**Angeles** [1] - 1:14
**announced** [1] - 42:24
**announcing** [1] - 16:2
**answer** [6] - 21:8, 31:22, 33:17, 33:21, 39:11, 45:15
**answered** [1] - 46:19
**anticipate** [1] - 59:12
**anticipated** [1] - 49:6
**anyway** [1] - 16:18
**apology** [1] - 18:15
**Appeals** [1] - 10:17
**appeals** [2] - 10:23,

**11:1
**appear** [5] - 10:18, 42:15, 42:25, 58:17, 62:20
**appearance** [5] - 27:14, 29:6, 32:20, 41:3, 41:20
**appeared** [5] - 25:21, 27:2, 34:1, 35:13, 47:16
**appearing** [2] - 3:18, 10:25
**appellate** [1] - 32:22
**application** [1] - 42:5
**applied** [2] - 21:4, 63:8
**applies** [6] - 7:22, 9:25, 37:22, 63:3, 64:17, 64:21
**apply** [1] - 8:5
**appreciate** [6] - 49:6, 56:9, 64:10, 65:3, 65:12, 66:10
**appreciated** [1] - 49:7
**approach** [4] - 4:22, 26:13, 26:14, 65:6
**appropriate** [1] - 26:6
**appropriately** [1] - 23:9
**April** [4] - 13:18, 16:7, 47:2, 57:7
**apt** [1] - 20:21
**argue** [1] - 4:5
**arguing** [1] - 4:20
**argument** [1] - 66:9
**arguments** [1] - 40:24
**arrested** [1] - 13:25
**articulation** [1] - 21:3
**assertion** [1] - 6:7
**assess** [1] - 15:13
**assistant** [2] - 42:17, 42:19
**associates** [1] - 26:4
**assume** [2] - 35:11, 55:24
**assumed** [1] - 47:18
**assuming** [1] - 59:8
**Atkins** [1] - 56:25
**attached** [2] - 31:25, 32:2
**attachment** [1] - 31:13
**attacked** [1] - 41:22
**attacks** [1] - 13:21
**attempt** [1] - 10:22
**attempts** [1] - 35:4

**attention** [2] - 12:20, 62:17
**attorney** [44] - 5:12, 8:7, 10:21, 10:23, 14:20, 15:17, 15:20, 16:21, 18:24, 20:1, 20:8, 20:15, 20:17, 22:3, 23:21, 25:4, 26:20, 29:20, 29:22, 30:6, 30:25, 31:2, 31:7, 31:24, 32:11, 32:18, 32:21, 33:1, 36:6, 36:7, 36:10, 38:24, 41:4, 41:6, 41:8, 41:25, 42:10, 42:24, 54:2, 54:8, 54:10, 58:13, 58:16, 58:18
**Attorney** [1] - 10:24
**attorney-client** [3] - 15:20, 25:4, 29:22
**attorneys** [5] - 7:14, 13:24, 23:4, 25:1, 36:18
**author** [1] - 26:17
**authority** [9] - 8:25, 36:1, 38:22, 38:23, 39:4, 39:19, 50:10, 50:15, 53:4
**Avenue** [3] - 1:14, 1:24, 2:3
**avoided** [1] - 59:9
**aware** [2] - 27:15, 56:1

## B

**babysitting** [1] - 48:8
**background** [1] - 41:14
**banned** [1] - 25:19
**bar** [5] - 32:20, 32:25, 36:12, 41:21, 42:7
**barred** [1] - 36:9
**barring** [1] - 4:5
**base** [1] - 10:8
**based** [1] - 6:7
**baseline** [1] - 33:16
**basic** [1] - 8:15
**basis** [1] - 30:14
**bear** [1] - 55:9
**become** [1] - 56:1
**BEFORE** [1] - 1:9
**began** [1] - 6:20
**begging** [1] - 52:19
**begin** [1] - 5:7
**behalf** [10] - 3:11, 3:13, 3:18, 4:24, 10:21, 10:25, 29:12,

37:11, 58:22, 64:16
**behave** [1] - 52:24
**behavior** [1] - 22:5
**Bell** [2] - 23:24, 23:25
**bells** [1] - 27:7
**benefit** [4] - 54:2, 54:11, 55:5, 60:14
**best** [3] - 20:23, 26:7, 35:25
**between** [2] - 15:15, 26:3
**beyond** [7] - 17:1, 28:12, 48:19, 56:23, 61:21, 66:5
**bill** [1] - 48:8
**black** [2] - 40:9, 40:14
**bleeding** [1] - 9:2
**blunt** [1] - 24:21
**bound** [1] - 45:20
**breach** [2] - 55:25, 56:1
**breaches** [3] - 4:17, 6:1, 56:15
**break** [2] - 23:3, 60:3
**brief** [4] - 6:17, 23:25, 46:21, 60:3
**briefed** [1] - 7:23, 8:5, 43:23
**briefing** [3] - 4:7, 21:18, 21:22
**briefly** [1] - 5:25
**bring** [4] - 12:20, 55:4, 55:19, 55:21
**bringing** [1] - 62:17
**broader** [3] - 43:21, 43:22, 63:6
**Brook** [3] - 1:13, 3:10, 4:23
**brook** [4] - 4:20, 50:7, 63:24, 64:11
**BROOK** [30] - 3:10, 4:21, 4:23, 5:3, 5:5, 5:14, 7:6, 8:3, 15:1, 17:13, 17:22, 20:14, 20:25, 22:7, 22:10, 23:2, 23:14, 23:17, 25:7, 25:12, 26:9, 50:8, 51:9, 51:18, 55:4, 56:18, 64:1, 65:18, 65:23, 66:2
**business** [1] - 66:1
**busy** [2] - 11:25, 55:18
**BY** [3] - 1:13, 1:18, 2:3
**bypass** [4] - 36:2, 38:25, 39:14
**Byrne** [57] - 3:6,

3:18, 3:21, 3:23, 4:9, 8:2, 8:3, 8:8, 9:10, 9:18, 9:24, 11:13, 11:20, 11:25, 12:4, 12:17, 15:3, 15:5, 15:6, 15:14, 15:16, 15:24, 16:3, 16:7, 17:5, 17:7, 17:23, 18:3, 18:8, 18:22, 22:19, 24:10, 26:4, 26:6, 28:17, 29:5, 29:9, 29:12, 41:25, 45:8, 47:4, 49:7, 49:12, 52:17, 54:15, 55:5, 55:7, 55:11, 55:16, 58:22, 60:17, 61:8, 61:20, 62:12, 63:18, 64:16, 66:10
**BYRNE** [5] - 1:6, 61:22, 61:25, 62:4, 62:6
**Byrne's** [8] - 12:11, 14:19, 16:20, 25:1, 27:20, 36:18, 55:24, 60:13

## C

**California** [1] - 1:14
**candor** [1] - 54:6
**cannot** [2] - 15:3, 56:11
**capacity** [1] - 27:5
**care** [1] - 30:24
**careful** [2] - 27:6, 32:14
**Carry** [2] - 2:3, 3:24
**Case** [1] - 3:5
**CASE** [1] - 1:5
**case** [104] - 4:16, 5:8, 5:14, 5:15, 5:17, 5:18, 6:2, 6:10, 6:18, 6:23, 7:2, 7:17, 8:8, 9:13, 10:2, 10:12, 10:20, 10:24, 17:10, 17:21, 19:19, 19:23, 20:4, 20:9, 20:17, 20:23, 20:25, 21:1, 21:7, 21:13, 21:23, 22:1, 22:3, 22:4, 22:6, 22:13, 23:11, 23:14, 23:25, 24:22, 25:22, 25:23, 27:4, 27:14, 28:13, 29:4, 30:2, 30:20, 31:4, 32:4, 32:21, 33:5, 33:6, 34:5, 35:4, 35:25, 36:1, 36:4, 37:5, 37:12, 37:22, 38:12, 39:5, 39:6, 39:9,

39:13, 40:5, 40:6, 40:19, 41:10, 41:12, 41:13, 41:15, 43:2, 43:13, 43:17, 43:24, 44:12, 45:17, 45:21, 46:14, 46:15, 46:22, 48:14, 48:16, 48:18, 48:19, 48:24, 49:7, 49:23, 50:23, 51:14, 53:15, 54:14, 55:18, 55:20, 57:2, 58:12, 59:23, 62:16, 64:17, 65:19
**cases** [17] - 7:25, 23:23, 23:25, 25:16, 40:3, 41:4, 43:3, 43:4, 47:16, 56:21, 60:20, 60:21, 63:12, 64:18, 64:23, 64:25, 65:9
**caught** [1] - 52:25
**caution** [2] - 64:8, 65:4
**Center** [1] - 1:18
**center** [2] - 24:10, 24:11
**CEO** [2] - 34:23, 34:24
**certain** [1] - 17:3
**CERTIFICATE** [1] - 66:15
**Certified** [1] - 1:23
**certified** [1] - 16:5
**certify** [1] - 66:17
**cetera** [1] - 63:21
**chain** [2] - 35:21, 52:4
**chance** [3] - 16:12, 24:7, 24:16
**change** [2] - 10:10, 29:5
**charged** [2] - 42:14, 42:24
**chart** [1] - 51:2
**child** [1] - 43:5
**choose** [1] - 63:19
**Christina** [2] - 1:13, 3:15
**Circuit** [2] - 10:16, 57:2
**circumstances** [1] - 20:24
**cite** [1] - 46:14
**cited** [5] - 30:1, 42:6, 43:14, 46:15, 65:16
**Civil** [1] - 3:5
**civil** [3] - 32:10, 37:22, 40:18
**claim** [2] - 12:4, 25:4
**claiming** [2] - 7:11, 15:20

**claims** [2] - 13:23, 13:24
**clarification** [2] - 64:13, 65:7
**clarifications** [1] - 64:9
**clarified** [1] - 64:17
**clarify** [3] - 34:15, 63:1, 63:15
**clear** [25] - 5:15, 5:22, 7:16, 8:4, 8:24, 9:9, 11:7, 14:13, 14:16, 16:22, 20:11, 21:21, 22:18, 25:19, 26:19, 33:20, 36:20, 38:9, 40:9, 50:16, 54:23, 60:25, 61:2, 62:19, 65:10
**Clearing** [1] - 57:2
**clearly** [3] - 8:18, 28:24, 34:18
**CLERK** [4] - 3:2, 60:6, 60:8, 66:12
**Clerk** [1] - 42:13
**clerk** [2] - 42:20, 51:16
**clicked** [1] - 27:1
**client** [27] - 11:24, 15:20, 19:17, 20:2, 20:4, 20:10, 25:4, 29:22, 37:3, 37:7, 37:9, 38:25, 39:17, 42:13, 43:23, 44:2, 44:7, 48:7, 48:20, 48:22, 52:11, 52:22, 53:1, 54:19, 56:11, 57:9, 58:7
**client's** [4] - 40:24, 45:17, 47:2, 49:17
**clients** [4] - 33:3, 41:24, 42:10, 42:23
**close** [1] - 66:1
**co** [1] - 41:17
**co-counsel** [1] - 41:17
**code** [2] - 17:10, 38:25
**colleague** [1] - 23:23
**collect** [1] - 12:19
**COLUMBIA** [1] - 1:1
**Columbia** [1] - 66:17
**coming** [2] - 47:12, 54:16
**comment** [1] - 23:1
**comments** [2] - 34:14, 35:12
**committed** [2] - 34:25, 35:9
**communicate** [2] - 11:24, 58:7

**communicating** [1] - 43:2

**communication** [1] - 30:23

**communications** [2] - 26:3, 26:19

**company** [1] - 37:25

**compared** [1] - 43:5

**completely** [1] - 5:9

**complied** [1] - 30:5

**comply** [14] - 19:16, 29:21, 30:16, 47:25, 48:12, 48:22, 49:11, 49:12, 49:13, 50:4, 61:9, 61:12, 61:23, 62:3

**concede** [1] - 35:11

**conceded** [1] - 44:25

**concern** [2] - 23:8, 24:21

**concise** [1] - 50:9

**concluded** [1] - 66:13

**conclusion** [2] - 38:15, 39:3

**conduct** [7] - 6:4, 19:20, 19:21, 23:5, 23:10, 41:3, 43:16

**Conduct** [4] - 6:5, 6:8, 11:10, 54:5

**confer** [1] - 9:14

**Conference** [1] - 66:19

**conferred** [1] - 11:20

**confidential** [19] - 6:23, 7:23, 8:12, 17:21, 17:25, 18:23, 26:22, 28:11, 30:8, 31:5, 36:21, 36:25, 38:12, 38:18, 45:2, 45:16, 48:4, 48:14, 62:18

**confines** [2] - 22:4, 22:25

**confirm** [5] - 10:13, 29:7, 29:9, 61:5, 61:8

**confirming** [1] - 9:20

**conflict** [3] - 19:25, 20:15, 23:13

**conflicted** [1] - 20:1

**conformance** [1] - 66:18

**confusion** [1] - 9:5

**Congress** [7] - 30:13, 34:20, 35:1, 37:24, 39:25, 40:12, 62:13

**congressional** [1] - 30:11

**connect** [1] - 12:5

**connected** [1] - 10:18

**connection** [2] - 9:13, 60:20

**consider** [2] - 41:12, 41:15

**consideration** [1] - 57:24

**considered** [1] - 6:19

**consistent** [2] - 52:17, 58:22

**conspiracy** [1] - 40:11

**constitute** [2] - 5:17, 6:1

**Constitution** [3] - 1:24, 36:7, 36:13

**consultant** [1] - 27:4

**contact** [2] - 11:15, 30:25

**contain** [1] - 59:13

**contained** [4] - 13:1, 29:24, 30:8, 37:23

**contains** [2] - 46:10

**contends** [2] - 13:1, 15:10

**contention** [2] - 52:7

**contents** [1] - 38:6

**contest** [6] - 33:15, 33:22, 33:25, 35:10, 35:16, 35:19

**context** [3] - 19:25, 21:25

**continue** [7] - 5:20, 19:4, 24:18, 38:11, 42:12, 45:1, 54:13

**continues** [1] - 34:7, 36:16

**continuous** [1] - 35:3

**continuously** [1] - 36:15

**contradicted** [1] - 40:14

**contrary** [2] - 15:25, 16:25

**control** [3] - 35:4, 36:17, 45:8

**conversation** [2] - 12:8, 58:16

**convince** [1] - 21:11

**cooperate** [2] - 11:8, 62:13

**coordinating** [1] - 55:7

**coordination** [1] - 15:15

**copied** [1] - 58:16

**copies** [1] - 5:3

**copy** [9] - 11:6, 16:6,

22:8, 51:16, 54:22, 57:6, 57:14, 57:16, 65:22

**corners** [3] - 22:1, 56:24, 56:25

**correct** [11] - 27:25, 28:1, 28:18, 31:9, 31:23, 35:17, 45:11, 50:20, 58:12, 61:18, 64:2

**correctly** [1] - 64:3

**counsel** [30] - 3:9, 3:23, 5:6, 5:16, 9:15, 14:19, 24:4, 25:21, 25:23, 27:21, 28:19, 29:2, 29:5, 31:9, 32:22, 35:4, 38:8, 41:17, 41:19, 42:8, 44:5, 49:7, 56:19, 56:23, 58:18, 59:15, 60:18, 63:12, 63:14

**COUNSEL** [1] - 2:2

**country** [7] - 22:17, 23:12, 30:2, 33:3, 43:4, 46:8, 52:19

**County** [1] - 10:16

**course** [9] - 11:7, 22:3, 22:10, 51:1, 51:10, 63:18, 64:7, 65:9, 65:18

**Court** [130] - 1:23, 3:1, 4:25, 6:16, 7:13, 8:18, 8:22, 8:23, 9:4, 9:5, 9:19, 10:17, 11:6, 11:9, 11:14, 11:15, 12:22, 13:25, 14:3, 14:9, 14:13, 14:15, 14:22, 16:6, 17:18, 18:10, 19:14, 21:2, 21:19, 22:19, 22:25, 23:12, 23:20, 24:5, 24:6, 24:13, 24:16, 25:20, 26:17, 28:22, 29:10, 29:23, 30:5, 30:6, 30:7, 31:6, 31:9, 31:10, 31:13, 31:17, 32:14, 33:18, 34:4, 34:18, 36:3, 37:14, 37:17, 37:19, 38:15, 38:16, 39:1, 39:7, 39:16, 39:23, 40:16, 41:9, 41:12, 41:14, 41:16, 43:6, 44:14, 44:15, 44:19, 44:21, 45:9, 45:19, 45:23, 46:1, 46:5, 46:6, 46:9, 46:12, 46:17, 46:19, 46:23, 46:24, 46:25, 47:16, 47:25, 48:5, 48:20, 49:10, 49:11,

49:15, 50:3, 50:12, 51:2, 51:11, 51:21, 53:9, 54:4, 54:5, 54:6, 54:7, 55:6, 58:19, 58:20, 59:12, 59:21, 59:22, 59:24, 60:8, 60:16, 60:17, 61:15, 62:18, 62:23, 63:12, 64:15, 64:17, 65:5, 65:7, 65:22, 66:16, 66:16

**COURT** [135] - 1:1, 3:12, 3:20, 3:25, 4:2, 4:22, 5:2, 5:4, 5:13, 7:4, 8:2, 14:25, 17:11, 17:19, 20:12, 20:23, 22:6, 22:8, 22:22, 23:11, 23:16, 25:6, 25:10, 26:8, 26:10, 26:13, 27:3, 27:8, 27:10, 27:17, 27:20, 27:23, 28:2, 28:7, 28:10, 28:17, 28:21, 29:7, 29:14, 30:1, 30:17, 31:15, 31:22, 31:24, 32:4, 32:6, 32:8, 32:13, 33:4, 33:8, 33:10, 33:19, 34:9, 34:12, 35:10, 35:25, 36:8, 36:11, 36:14, 36:19, 37:2, 37:9, 38:3, 38:5, 38:21, 39:9, 40:2, 40:4, 40:15, 40:23, 41:6, 41:9, 42:17, 42:21, 43:8, 43:21, 44:3, 44:6, 44:16, 44:20, 44:23, 45:4, 45:9, 45:14, 45:24, 46:3, 46:13, 47:2, 47:6, 47:9, 47:13, 47:20, 47:22, 48:3, 48:11, 49:2, 49:16, 49:22, 50:1, 50:6, 51:8, 51:15, 55:1, 56:17, 57:5, 57:18, 57:21, 58:3, 58:25, 59:3, 59:7, 59:19, 59:25, 60:5, 60:11, 61:14, 61:17, 61:19, 61:23, 62:1, 62:5, 62:8, 62:15, 62:25, 63:22, 64:2, 64:10, 64:12, 64:23, 65:3, 65:12, 65:22, 65:24, 66:4, 66:23

**court** [24] - 3:2, 10:23, 11:1, 14:2, 20:18, 21:10, 21:11, 24:3, 26:12, 26:24, 28:12, 30:14, 40:18,

42:14, 42:15, 43:1, 43:25, 48:2, 49:13, 53:9, 58:14, 60:6, 66:12

**Court's** [20] - 9:8, 11:21, 12:8, 12:13, 12:20, 12:24, 14:16, 15:23, 18:17, 19:18, 20:8, 23:3, 23:4, 29:18, 30:16, 52:10, 55:10, 56:16, 59:14, 62:17

**courtroom** [4] - 38:5, 38:7, 38:10

**Courts** [2] - 23:19

**courts** [1] - 21:20

**cover** [1] - 52:3

**covered** [1] - 4:8

**create** [1] - 51:3

**credential** [1] - 50:20

**credentials** [2] - 6:24, 52:3

**credible** [1] - 53:3

**credit** [1] - 52:17

**crime** [10] - 39:7, 39:21, 40:19, 45:18, 46:11, 48:13, 49:18, 53:8, 53:10, 59:16

**crimes** [6] - 29:24, 35:8, 39:8, 40:21, 52:8, 52:19

**criminal** [27] - 7:2, 9:15, 10:2, 10:9, 10:12, 10:20, 10:24, 25:7, 25:8, 25:10, 25:12, 26:23, 27:25, 28:6, 28:13, 31:25, 37:23, 39:24, 40:8, 41:21, 49:8, 51:12, 52:13, 53:9, 53:19, 59:13, 59:18

**criminals** [1] - 59:15

**critical** [1] - 11:18

**cross** [1] - 34:22

**cross-examined** [1] - 34:22

**CRR** [1] - 66:22

**crystal** [1] - 9:9

**custody** [2] - 35:22, 52:4

**cut** [1] - 30:18

**cutting** [1] - 31:16

**cycle** [2] - 35:7

## D

**D.D.C** [1] - 57:1

**Dan** [1] - 63:13

**Daniel** [6] - 2:3, 3:22, 10:24, 29:20, 29:21,

29:22
**Dar** [26] - 6:21, 12:2, 13:6, 13:13, 13:15, 13:16, 15:16, 15:18, 18:5, 18:6, 18:9, 18:24, 22:16, 24:20, 25:3, 25:15, 26:4, 50:19, 51:4, 51:21, 52:2, 53:6, 53:11, 55:8
**database** [2] - 27:18, 50:21
**date** [3] - 35:6, 45:24, 51:5
**Dated** [1] - 66:20
**Davida** [2] - 3:10, 4:23
**davida** [1] - 1:13
**days** [3] - 11:19, 11:23, 18:22
**DC** [7] - 1:11, 1:24, 2:4, 6:4, 6:8, 18:16, 54:5
**de** [1] - 29:11
**de-designate** [1] - 29:11
**deadline** [2] - 11:14, 11:17
**dec** [1] - 41:15
**December** [2] - 27:12, 32:22
**decide** [3] - 8:25, 16:10, 26:6
**decision** [4] - 16:15, 16:17, 16:18, 55:10
**deck** [7] - 4:25, 28:3, 33:13, 34:4, 65:15, 65:16, 65:17
**deemed** [1] - 10:19
**defend** [1] - 45:13
**DEFENDANT** [2] - 1:17, 2:2
**Defendant** [1] - 1:7
**defendant** [4] - 4:9, 22:24, 23:2, 25:8
**defendants** [4] - 7:25, 22:12, 22:13, 23:10
**defends** [1] - 12:25
**defense** [1] - 20:5
**defiant** [1] - 15:25
**define** [1] - 63:7
**defined** [1] - 60:23
**defines** [1] - 63:2
**definition** [1] - 63:8
**defy** [1] - 17:5
**delay** [3] - 11:21, 11:22, 42:25
**deleted** [2] - 18:16, 57:10

delights [1] - 50:23
**demonstrably** [1] - 12:5
**Denver** [1] - 38:1
**denying** [1] - 7:12
**DePerno** [1] - 41:18
**deposition** [3] - 20:6, 49:17, 49:19
**DEPUTY** [4] - 3:2, 60:6, 60:8, 66:12
**designate** [1] - 29:11
**designed** [1] - 43:18
**desist** [2] - 9:11, 60:18
**despite** [2] - 42:11, 50:12
**destruction** [1] - 59:18
**detail** [4] - 12:16, 21:9, 21:17, 53:20
**details** [1] - 8:15
**determination** [1] - 31:11
**Detroit** [1] - 1:19
**dicing** [1] - 63:4
**DIECKMANN** [1] - 3:15
**Dieckmann** [2] - 1:13, 3:15
**different** [3] - 24:8, 46:23, 47:17
**differently** [1] - 52:24
**difficult** [1] - 40:1
**Digital** [1] - 1:25
**digital** [1] - 66:17
**Diplomate** [1] - 1:22
**direct** [1] - 35:21
**directed** [2] - 15:3, 45:5
**directing** [1] - 24:18
**directly** [3] - 34:19, 45:15, 46:12
**disciplining** [1] - 22:2
**disclose** [1] - 37:13
**disclosed** [1] - 13:2
**disclosure** [4] - 8:14, 11:3, 12:18, 15:4
**disclosures** [1] - 7:12
**discovered** [1] - 26:23
**discovery** [23] - 6:22, 7:18, 7:19, 8:12, 9:12, 12:13, 25:19, 25:21, 25:24, 26:3, 40:9, 49:23, 55:2, 55:3, 59:13, 60:19, 60:22, 60:23, 62:15, 63:2,

63:3, 63:7, 64:5
**discuss** [3] - 13:7, 13:15, 45:2
**discussed** [5] - 12:14, 14:4, 45:5, 57:24, 64:20
**discusses** [2] - 8:11, 13:22
**discussing** [5] - 9:12, 19:1, 45:13, 48:2, 60:19
**discussion** [4] - 6:17, 13:11, 14:15, 48:3
**disobey** [1] - 6:6
**dispute** [13] - 4:9, 34:15, 34:17, 35:22, 36:21, 36:22, 36:24, 39:17, 43:20, 54:14, 54:18, 55:3
**disqualification** [15] - 4:16, 5:9, 5:12, 5:15, 6:2, 6:15, 15:12, 19:24, 20:13, 20:14, 20:24, 21:24, 23:12, 25:18, 55:1
**disqualified** [1] - 25:18
**disqualify** [4] - 5:6, 22:12, 23:20, 55:12
**disqualifying** [1] - 21:2
**disseminate** [5] - 36:20, 39:1, 45:20, 45:21, 63:20
**disseminated** [5] - 4:10, 34:17, 43:20, 44:17
**dissemination** [5] - 17:20, 26:21, 28:14, 30:21
**distinct** [1] - 6:14
**distributing** [2] - 9:11, 60:19
**District** [3] - 57:3, 66:16
**DISTRICT** [2] - 1:1, 1:1
**docket** [4] - 7:2, 10:9, 10:11, 10:14
**Docket** [1] - 8:8
**document** [21] - 6:21, 17:25, 18:7, 18:25, 20:5, 37:4, 38:6, 38:15, 38:17, 46:10, 46:25, 51:1, 51:3, 51:13, 51:22, 53:12, 53:15, 64:14, 64:18, 64:21
**documentation** [1] -

32:16
**documents** [92] - 4:8, 6:22, 7:1, 7:10, 7:22, 8:20, 9:16, 10:1, 10:5, 10:10, 10:16, 10:18, 11:3, 11:12, 12:11, 13:2, 13:11, 13:23, 14:17, 15:18, 15:20, 18:6, 18:8, 18:11, 18:15, 18:24, 24:19, 27:24, 28:3, 29:11, 29:24, 30:7, 31:3, 31:13, 31:25, 32:3, 32:9, 34:17, 34:18, 35:17, 35:19, 35:23, 35:24, 36:4, 37:2, 37:5, 37:8, 37:13, 37:16, 37:18, 37:23, 38:9, 39:21, 40:10, 40:11, 40:13, 44:12, 45:2, 45:4, 45:5, 45:16, 45:18, 48:14, 48:15, 48:17, 48:23, 50:17, 50:18, 50:21, 51:6, 51:20, 52:5, 52:6, 52:7, 52:12, 53:1, 53:2, 53:6, 53:25, 54:17, 56:5, 57:25, 63:16, 63:17, 63:19, 63:21, 64:4, 64:15, 64:19, 65:8, 65:15
**DOJ** [1] - 62:13
**doled** [1] - 21:17
**DOMINION** [1] - 1:3
**Dominion** [76] - 3:6, 3:11, 3:14, 3:15, 3:16, 4:11, 4:24, 5:9, 7:9, 7:25, 8:13, 8:22, 10:3, 10:8, 11:11, 11:15, 11:25, 12:15, 14:21, 15:4, 15:10, 15:13, 17:24, 18:1, 18:6, 18:11, 19:15, 22:13, 31:12, 33:1, 33:7, 34:3, 34:5, 34:7, 34:23, 34:25, 35:24, 36:15, 36:25, 37:8, 37:24, 37:25, 38:1, 38:16, 38:19, 39:3, 40:12, 41:2, 41:4, 41:11, 41:14, 42:4, 42:6, 42:9, 43:3, 43:13, 46:15, 46:16, 49:8, 51:3, 52:18, 52:20, 53:15, 55:2, 55:6, 55:19, 57:15, 58:17, 59:4, 63:17, 63:18, 64:19, 64:21, 65:14

**Dominion's** [23] - 4:3, 5:6, 5:20, 6:15, 6:22, 7:1, 7:13, 8:11, 8:20, 10:4, 12:13, 13:23, 17:10, 19:3, 19:5, 25:19, 29:2, 31:9, 35:3, 35:23, 40:24, 52:12, 63:21
**done** [8] - 7:10, 9:20, 9:17, 45:24, 48:1, 52:23, 54:10, 55:7
**doubt** [4] - 8:17, 15:12, 54:2, 54:11
**down** [10] - 7:4, 18:16, 31:1, 47:11, 47:19, 48:10, 54:16, 54:19, 54:21, 57:10
**download** [2] - 18:11, 50:22
**downloaded** [3] - 51:9, 51:24, 53:16
**DQ** [1] - 43:14
**Dr** [8] - 41:25, 45:8, 47:4, 49:7, 49:12, 58:22, 62:12, 64:16
**DRISCOLL** [16] - 26:23, 27:6, 27:9, 27:15, 27:19, 27:22, 28:1, 28:5, 28:9, 28:16, 28:19, 29:5, 29:13, 64:13, 65:1, 65:10
**Driscoll** [6] - 2:3, 3:24, 26:10, 26:11, 26:16, 64:12
**Driscoll's** [1] - 59:6
**drive** [1] - 18:11
**due** [2] - 16:9, 23:10
**during** [1] - 12:5
**duty** [1] - 54:6

**E**

**ECF** [2] - 1:9, 60:15
**edits** [1] - 63:15
**effect** [1] - 56:16
**effective** [1] - 38:20
**effort** [7] - 9:16, 10:4, 10:6, 11:12, 12:10, 18:8, 53:5
**efforts** [1] - 14:5
**egregious** [6] - 5:18, 5:19, 19:20, 19:21, 20:21, 55:15
**eight** [1] - 8:10
**either** [1] - 58:10
**election** [5] - 35:7, 41:25, 43:3, 43:4
**election-related** [1] - 43:4

**elections** [2] - 13:21, 19:7
**elephant** [1] - 15:9
**email** [10] - 7:8, 10:11, 10:15, 11:5, 11:6, 20:5, 26:17, 56:20, 57:15, 58:14
**emailed** [1] - 54:20
**emails** [1] - 38:2
**embraces** [1] - 5:10
**emergency** [2] - 4:3, 59:4
**employees** [1] - 19:5
**end** [11] - 9:12, 9:17, 11:4, 13:10, 13:22, 14:8, 15:5, 15:7, 16:19, 22:17, 50:25
**ended** [1] - 21:2
**ends** [1] - 56:6
**enforcement** [15] - 16:3, 34:19, 35:2, 39:25, 40:21, 45:12, 45:22, 46:12, 47:1, 50:17, 50:19, 53:10, 62:13, 62:20
**engage** [1] - 58:16
**ensure** [2] - 57:18, 58:4
**enter** [4] - 8:6, 9:1, 41:3, 41:20
**entered** [12] - 6:16, 7:24, 8:18, 24:7, 24:12, 27:13, 29:6, 37:4, 44:1, 44:9, 48:16, 63:6
**entering** [1] - 32:20
**entire** [8] - 18:11, 47:10, 50:21, 50:22, 51:10, 52:6, 53:12, 59:9
**entirely** [1] - 62:21
**entitled** [5] - 13:20, 36:20, 55:23, 56:3, 66:18
**entry** [4] - 8:3, 8:8, 9:6, 44:8
**equally** [1] - 5:22
**erosion** [1] - 19:6
**especially** [1] - 57:21
**essentially** [2] - 9:2, 66:3
**et** [3] - 1:3, 3:6, 63:21
**ethical** [3] - 36:6, 36:16, 58:23
**events** [1] - 60:1
**evidence** [24] - 4:17, 13:6, 13:7, 13:16, 15:10, 16:2, 39:21, 44:23, 45:18, 46:10, 48:13, 49:8, 49:18,

51:12, 52:12, 52:14, 53:8, 55:13, 56:24, 59:13, 59:16, 59:18, 60:25, 66:3
**evidently** [1] - 16:11
**exactly** [6] - 5:7, 16:4, 18:21, 42:2, 53:1, 53:12
**examined** [1] - 34:22
**example** [8] - 12:23, 13:3, 13:18, 15:2, 18:3, 41:5, 42:4, 42:13
**except** [1] - 6:6
**excuse** [1] - 10:6
**excused** [1] - 66:11
**exhibit** [2] - 66:5
**exhibits** [1] - 27:1
**exists** [3] - 6:8, 55:13, 57:22
**exiting** [1] - 25:1
**explain** [1] - 26:17
**explained** [2] - 7:21, 17:18
**explanation** [3] - 21:3, 52:11, 53:11
**Expletive** [1] - 16:19
**explicitly** [1] - 21:25
**exposure** [1] - 18:6
**express** [1] - 23:1
**extension** [2] - 11:17, 12:7
**extent** [2] - 12:22, 21:23
**eyes** [1] - 43:6

**F**

**F.3d** [1] - 57:2
**F.R.D** [2] - 56:25, 57:3
**fact** [12] - 7:14, 8:18, 10:6, 13:12, 25:1, 30:9, 31:8, 36:17, 41:2, 42:15, 46:18, 55:9
**facts** [1] - 21:5
**failed** [2] - 11:13, 11:24
**failure** [3] - 12:9, 12:12, 54:12
**fair** [1] - 13:21
**faith** [8] - 20:7, 29:23, 40:15, 46:2, 49:2, 56:14, 58:22, 59:22
**fall** [1] - 55:10
**false** [4] - 12:5, 13:24, 37:7, 38:16
**falsely** [1] - 13:23

**families'** [1] - 19:6
**far** [6] - 10:3, 11:11, 44:24, 49:3, 53:15
**fashion** [1] - 63:19
**federal** [3] - 1:23, 32:21, 36:12
**Federal** [1] - 66:16
**FEDERAL** [1] - 66:23
**felt** [1] - 15:7
**few** [5] - 11:23, 12:20, 17:19, 58:12, 60:11
**file** [14] - 9:17, 10:5, 11:17, 12:6, 30:15, 31:18, 35:9, 41:15, 46:21, 49:13, 49:20, 49:24, 62:18, 65:16
**filed** [14] - 7:1, 10:10, 10:16, 11:3, 12:11, 27:25, 28:3, 31:3, 31:13, 31:25, 32:10, 41:21, 65:15, 65:25
**filing** [9] - 14:6, 26:24, 26:25, 27:1, 28:4, 28:13, 29:2, 32:1, 59:4
**filings** [2] - 10:22, 66:5
**final** [3] - 11:5, 31:6, 61:2
**finally** [1] - 7:8
**fine** [4] - 5:2, 5:4, 12:25, 43:12
**finish** [4] - 30:4, 33:20, 59:3
**Firm** [1] - 3:23
**firm** [4] - 14:19, 26:16, 64:18, 64:21
**firm's** [2] - 63:10, 63:14
**firms** [1] - 64:14
**first** [7] - 10:1, 21:8, 24:3, 31:7, 34:4, 58:13, 61:10
**Fischer** [1] - 56:25
**Fl.26** [1] - 1:18
**flagged** [1] - 19:2
**flagrant** [1] - 30:22
**fleeing** [1] - 59:18
**focus** [5] - 4:11, 4:12, 4:15, 5:25, 6:13
**focused** [3] - 33:4, 33:6, 55:21
**FOIAed** [1] - 15:19
**folder** [1] - 50:18
**folks** [3] - 5:3, 14:10, 55:19
**follow** [15] - 20:8, 21:13, 29:17, 44:12, 44:14, 44:18, 44:22,

52:10, 52:14, 56:8, 56:9, 56:10, 59:20, 62:16, 62:21
**followed** [1] - 9:5
**following** [3] - 14:23, 58:21, 60:20
**follows** [1] - 13:12
**FOR** [4] - 1:1, 1:12, 1:17, 2:2
**foregoing** [1] - 66:17
**foresaw** [1] - 8:1
**format** [1] - 66:18
**former** [2] - 42:19, 55:24
**forum** [1] - 38:11
**forward** [8] - 21:14, 33:1, 44:10, 56:8, 58:17, 59:21, 59:24, 60:25
**forwarded** [1] - 58:15
**four** [4] - 22:1, 52:18, 56:24
**Frank** [1] - 13:20
**frankly** [5] - 5:20, 12:15, 31:17, 55:22, 56:15
**fraud** [1] - 40:10
**fraudulent** [1] - 38:16
**free** [3] - 24:15, 63:18
**freely** [1] - 23:1
**frequently** [2] - 47:7, 48:7
**friend** [1] - 54:23
**front** [1] - 38:1
**full** [2] - 51:23, 56:20
**fully** [1] - 35:5
**future** [7] - 24:24, 28:23, 45:17, 48:23, 49:4, 56:15, 63:12

**G**

**gag** [1] - 43:17
**gain** [2] - 44:11, 64:5
**gained** [1] - 25:20
**general** [9] - 32:11, 32:21, 33:1, 40:5, 41:4, 41:6, 41:8, 42:25, 63:14
**gentleman** [1] - 14:20
**genuinely** [1] - 55:17
**given** [10] - 8:25, 12:17, 14:21, 35:21, 48:23, 49:3, 49:8, 57:21, 58:6, 59:25
**goal** [1] - 41:23

**Godfrey** [3] - 3:11, 4:24, 28:8
**GODFREY** [1] - 1:12
**Google** [1] - 18:11
**governing** [3] - 6:10, 7:17, 19:9
**government** [1] - 3:9
**grant** [1] - 15:11
**grants** [1] - 51:21
**greatest** [2] - 52:7, 52:18
**grievance** [4] - 32:20, 32:25, 41:21, 42:7
**grounds** [1] - 22:4
**group** [1] - 20:5
**guard** [1] - 52:25
**guidance** [1] - 28:22
**guidelines** [1] - 62:22

**H**

**habitual** [1] - 43:5
**hac** [2] - 42:5, 42:6
**half** [1] - 42:21
**hampers** [1] - 20:9
**hand** [6] - 22:7, 50:18, 51:15, 51:16, 52:5, 65:20
**handed** [2] - 6:23, 52:5
**handing** [1] - 23:23
**handle** [1] - 49:11
**happy** [4] - 11:7, 38:9, 50:5, 56:22
**Hartman** [1] - 10:25, 29:21, 29:23
**head** [1] - 23:18
**headquarters** [1] - 38:1
**heard** [7] - 4:3, 35:11, 35:14, 38:21, 43:24, 52:11, 60:2
**HEARING** [1] - 1:9
**hearing** [18] - 3:7, 7:21, 8:23, 8:24, 9:4, 12:16, 12:19, 12:24, 18:4, 19:3, 34:3, 39:10, 39:11, 42:15, 42:18, 47:12, 54:16, 58:8
**heavily** [1] - 7:23
**held** [2] - 8:23, 64:16
**hell** [1] - 16:12
**help** [1] - 39:4
**helpful** [2] - 21:23, 55:21
**hereby** [1] - 66:17
**heroes** [1] - 22:15

**herself** [6] - 7:1, 14:11, 24:19, 31:24, 53:23, 53:24
**hesitates** [1] - 13:8
**hiding** [1] - 59:18
**high** [1] - 5:10
**himself** [4] - 13:13, 17:6, 23:7, 31:2
**hinder** [1] - 20:19
**hindered** [1] - 20:16
**hired** [2] - 42:20, 42:22
**history** [5] - 6:18, 21:18, 29:25, 52:8, 52:19
**hold** [4] - 38:3
**holds** [1] - 64:19
**Honor** [117] - 3:5, 3:17, 4:21, 4:23, 5:5, 5:7, 5:15, 5:19, 5:22, 5:24, 6:3, 7:6, 7:21, 8:4, 8:24, 9:21, 10:2, 11:5, 11:11, 11:21, 12:3, 12:15, 13:18, 13:25, 14:8, 15:2, 15:8, 15:15, 15:22, 16:3, 16:20, 17:14, 17:22, 18:13, 18:17, 18:20, 18:25, 19:1, 19:8, 19:19, 19:23, 20:11, 20:16, 21:1, 21:3, 21:6, 21:12, 21:23, 22:11, 23:2, 23:6, 23:14, 23:18, 24:21, 25:14, 25:17, 26:2, 26:12, 26:23, 27:6, 27:22, 28:16, 29:13, 30:4, 31:8, 31:23, 32:2, 32:12, 32:16, 33:6, 34:2, 36:5, 36:24, 37:21, 38:14, 39:6, 39:22, 40:7, 41:11, 41:13, 43:15, 45:7, 46:1, 46:16, 47:4, 48:7, 48:25, 49:5, 50:3, 50:8, 50:25, 51:10, 51:18, 52:9, 52:21, 53:4, 53:7, 53:17, 54:15, 55:4, 56:6, 56:19, 56:23, 57:8, 57:20, 57:23, 58:8, 58:11, 59:12, 61:12, 62:12, 64:1, 64:7, 65:11, 65:18, 65:19, 65:23
**honor** [1] - 16:10
**Honor's** [2] - 6:11, 18:2
**Honorable** [2] - 3:3,

60:8
**HONORABLE** [1] - 1:9
**hope** [2] - 16:15, 45:15
**House** [1] - 57:2

**I**

**idea** [1] - 51:5
**ignorance** [1] - 7:11
**ignored** [2] - 39:16, 39:17
**ignores** [1] - 7:14
**imagine** [1] - 12:19
**immediately** [5] - 9:10, 9:14, 12:10, 18:4, 60:18
**impacting** [1] - 20:4
**impacts** [1] - 20:1
**impermissible** [2] - 8:13, 15:4
**impermissibly** [1] - 13:1
**implicate** [1] - 27:2
**implication** [1] - 14:16
**implies** [1] - 11:18
**important** [1] - 22:11
**importantly** [1] - 21:15
**improper** [2] - 7:12, 12:18
**inaction** [1] - 10:7
**inappropriate** [1] - 40:18
**INC** [1] - 1:3
**Inc** [1] - 3:6
**include** [1] - 21:22
**includes** [1] - 10:18
**including** [7] - 6:10, 6:12, 12:1, 15:14, 18:15, 45:22, 50:13
**inconsistent** [1] - 59:24
**incorrect** [1] - 32:7
**increasingly** [1] - 53:5
**indeed** [1] - 17:1
**independent** [1] - 22:4
**indicate** [1] - 11:15
**indicated** [3] - 17:7, 19:10, 19:12
**indicating** [1] - 10:10
**inexcusable** [1] - 11:21
**infect** [4] - 5:20, 19:20, 19:22, 54:13
**infecting** [1] - 51:19

**inform** [1] - 56:1
**information** [34] - 4:10, 7:15, 8:15, 12:1, 17:4, 17:6, 17:21, 25:25, 26:3, 26:7, 26:15, 26:20, 26:22, 27:13, 27:17, 28:11, 28:16, 30:5, 30:8, 35:21, 36:21, 36:22, 36:25, 39:1, 47:22, 48:4, 51:6, 56:2, 56:3, 56:13, 56:14, 57:9, 58:19
**informed** [2] - 34:18, 55:25
**initial** [1] - 26:17
**insisted** [1] - 15:5
**instead** [4] - 9:17, 24:17, 61:17, 62:2
**instruct** [1] - 54:18
**instruction** [1] - 15:6
**integrity** [2] - 21:16, 51:19
**intellectual** [3] - 30:9, 38:18, 43:19
**intend** [7] - 9:22, 14:14, 44:12, 45:19, 45:20, 55:4, 55:16
**intends** [3] - 16:4, 17:7, 61:9
**intentional** [1] - 53:5
**interest** [3] - 19:10, 19:12, 30:10
**interim** [1] - 60:24
**internet** [1] - 12:1
**interrupt** [1] - 43:8
**interview** [3] - 13:4, 13:19
**interviews** [4] - 12:17, 33:13, 34:1, 35:13
**intimately** [2] - 42:20, 42:23
**introduce** [1] - 3:8
**investigated** [1] - 35:5
**investigating** [1] - 45:12
**investigation** [8] - 13:14, 13:16, 13:17, 30:11, 34:24, 42:25, 62:14
**investigations** [4] - 30:12, 34:20, 39:24, 47:17
**involved** [3] - 36:4, 37:12, 47:17
**involves** [1] - 62:15
**irrelevant** [1] - 10:20
**issuance** [1] - 11:19

**issue** [8] - 8:25, 18:18, 21:6, 49:24, 51:10, 54:20, 59:23, 64:24
**issued** [2] - 4:4, 4:18
**issues** [2] - 4:12, 46:7
**itself** [3] - 18:7, 22:4, 23:15

**J**

**jail** [1] - 16:19
**Jersey** [1] - 57:4
**job** [2] - 20:9, 20:20
**Joe** [1] - 13:4
**John** [1] - 34:22
**joined** [1] - 43:24
**joins** [1] - 17:5
**joint** [1] - 20:5
**Jonathan** [2] - 1:13, 3:16
**joy** [1] - 23:21
**Jr** [1] - 1:13
**Judge** [22] - 7:24, 16:9, 29:19, 33:9, 36:2, 37:4, 38:13, 43:25, 44:3, 44:8, 48:16, 49:14, 49:20, 49:22, 55:23, 60:4, 60:23, 60:24, 62:22, 62:24, 63:1, 63:13
**JUDGE** [1] - 1:9
**judge** [4] - 9:1, 16:25, 17:3, 18:16
**judge's** [1] - 17:5
**Judicial** [2] - 20:25, 66:18
**jurisdiction** [1] - 53:9
**jurisdictions** [1] - 21:21
**justification** [1] - 33:23

**K**

**keep** [2] - 16:16, 66:6
**key** [1] - 56:7
**kicked** [1] - 18:5
**kind** [1] - 65:17
**knowingly** [1] - 6:5
**knowledge** [1] - 28:25
**knows** [6] - 8:22, 18:10, 19:23, 21:3, 46:1
**Koller** [3] - 5:18, 21:1, 21:2
**Kramer** [1] - 57:3

**L**

**label** [1] - 38:17
**labels** [1] - 37:7
**LAMBERT** [77] - 1:17, 3:17, 29:19, 30:4, 31:7, 31:21, 31:23, 32:2, 32:5, 32:7, 32:9, 32:15, 33:6, 33:9, 33:17, 34:2, 34:11, 34:17, 35:20, 36:5, 36:9, 36:12, 36:15, 36:24, 37:7, 37:21, 38:4, 38:14, 39:6, 39:22, 40:3, 40:6, 40:17, 41:1, 41:8, 41:11, 42:19, 42:22, 43:15, 44:2, 44:4, 44:14, 44:18, 44:21, 45:2, 45:7, 45:11, 45:23, 46:1, 46:4, 46:16, 47:4, 47:7, 47:10, 47:15, 47:21, 47:24, 48:6, 48:25, 49:5, 49:20, 49:24, 50:3, 57:8, 57:20, 57:23, 58:7, 59:2, 59:5, 59:11, 59:20, 60:4, 61:12, 61:16, 61:18, 62:12, 62:24
**Lambert** [78] - 1:18, 3:18, 4:10, 5:7, 6:3, 6:21, 6:25, 7:9, 7:10, 8:17, 9:10, 9:14, 9:18, 9:22, 10:3, 10:16, 10:20, 10:24, 10:25, 11:4, 11:18, 11:13, 11:20, 11:24, 12:2, 12:4, 12:12, 12:17, 12:23, 13:3, 13:8, 13:10, 13:12, 13:15, 13:16, 13:19, 13:22, 14:1, 14:8, 14:15, 14:21, 15:2, 15:4, 15:16, 15:17, 15:21, 15:23, 16:1, 18:19, 19:9, 20:3, 21:9, 21:19, 22:8, 22:16, 22:18, 23:8, 24:9, 24:16, 25:3, 25:13, 25:14, 26:4, 27:11, 29:3, 29:6, 29:16, 30:17, 50:10, 51:1, 52:16, 55:13, 56:7, 57:6, 60:13, 60:18, 61:10, 65:21
**Lambert's** [8] - 5:14, 6:17, 10:12, 12:9, 21:18, 26:21, 27:3,

52:1
**last** [13] - 7:21, 13:25, 16:12, 17:18, 31:16, 31:18, 37:17, 39:10, 42:14, 42:18, 42:21, 52:18, 53:7
**lastly** [1] - 54:15
**late** [2] - 11:16, 50:14
**launching** [1] - 13:11
**launder** [1] - 53:6
**LAW** [1] - 1:17
**law** [35] - 4:16, 5:8, 5:16, 5:17, 6:2, 6:18, 16:2, 19:19, 19:23, 21:7, 21:24, 22:3, 22:6, 30:15, 34:19, 35:2, 36:17, 39:5, 39:25, 40:19, 40:20, 41:16, 41:25, 43:13, 45:11, 45:22, 46:11, 46:14, 46:25, 50:17, 50:19, 53:10, 62:13, 62:20
**Law** [1] - 3:23
**laws** [3] - 40:2, 40:5, 58:23
**lawsuits** [1] - 38:20
**lawyer** [3] - 6:5, 33:2, 62:8
**lawyer's** [1] - 53:20
**lawyers** [1] - 55:25
**lead** [1] - 19:4
**leading** [1] - 6:14
**Leaf** [20] - 6:21, 12:2, 13:6, 13:15, 13:16, 15:16, 18:5, 18:25, 22:16, 24:20, 25:3, 25:15, 26:4, 35:17, 50:19, 51:4, 51:21, 53:6, 53:11, 55:8
**Leaf's** [6] - 15:18, 18:6, 18:9, 52:2, 55:8
**leak** [4] - 24:23, 50:24
**leaked** [3] - 13:22, 18:24, 24:19
**learn** [4] - 15:13, 26:18, 26:21, 27:24
**learned** [2] - 21:21, 54:25
**least** [1] - 17:19
**left** [3] - 3:19, 24:9, 24:11
**legal** [5] - 30:14, 36:1, 38:22, 39:19, 51:19
**less** [1] - 6:4
**lesser** [4] - 5:23, 21:7, 21:15, 54:1
**lesson** [1] - 21:21

**lest** [1] - 9:5
**letter** [4] - 14:18, 18:5, 18:9, 28:22
**lied** [2] - 37:24, 55:19
**lies** [1] - 37:23
**lift** [1] - 29:10
**likewise** [1] - 19:11
**limit** [1] - 11:3
**limited** [3] - 30:18, 33:11, 63:16
**Lindell** [2] - 22:23, 23:7
**Lindell's** [1] - 13:20
**link** [2] - 26:25, 27:1
**list** [1] - 60:21
**listed** [1] - 53:18
**listen** [1] - 16:23
**lists** [1] - 51:3
**literally** [1] - 18:23
**litigated** [1] - 43:25
**litigation** [8] - 7:19, 10:19, 21:16, 23:1, 37:3, 37:6, 41:19, 48:18
**Live** [1] - 13:4
**LLP** [1] - 1:12
**local** [1] - 32:22
**logged** [1] - 51:23
**login** [5] - 6:24, 50:20, 51:25, 52:3, 53:11
**look** [3] - 22:1, 22:5, 40:11
**looking** [8] - 20:15, 26:19, 39:2, 39:4, 39:19, 42:2, 53:5, 56:23
**Los** [1] - 1:14
**lost** [1] - 5:13
**loud** [1] - 16:4
**love** [1] - 25:16
**Lucido** [1] - 34:21

**M**

**ma'am** [21] - 29:17, 31:15, 32:13, 33:8, 33:19, 37:11, 38:5, 38:21, 39:2, 40:16, 43:8, 43:21, 44:3, 45:25, 46:3, 50:2, 59:19, 59:25
**MAGISTRATE** [1] - 1:9
**man** [1] - 14:12
**managed** [1] - 12:19
**manner** [1] - 65:5
**March** [22] - 4:3, 4:19, 6:14, 6:15, 6:20, 6:25, 7:8, 8:23, 9:4,

9:7, 9:20, 12:18, 12:23, 13:3, 13:25, 14:9, 18:13, 29:18, 40:25, 45:1, 50:11, 61:3
**mark** [1] - 66:4
**material** [20] - 7:18, 7:19, 8:12, 9:12, 12:14, 14:3, 25:20, 25:21, 25:24, 31:8, 36:17, 41:2, 46:17, 60:20, 60:22, 60:23, 62:15, 63:2, 63:8, 64:4
**materials** [1] - 14:11
**Matt** [1] - 41:18
**matter** [22] - 3:6, 6:23, 7:22, 8:6, 8:19, 9:15, 10:9, 17:3, 24:13, 27:25, 28:6, 28:20, 29:25, 30:10, 31:25, 45:13, 57:22, 64:22, 64:24, 65:13, 66:7, 66:18
**mattered** [1] - 11:22
**matters** [8] - 6:18, 28:18, 28:20, 30:19, 35:1, 35:5, 49:23, 60:11
**McGlinchey** [6] - 2:2, 3:22, 14:19, 26:16, 63:10, 63:14
**mean** [7] - 16:13, 22:22, 23:16, 30:18, 34:12, 44:20, 57:21
**means** [1] - 44:21
**meant** [1] - 38:12
**mechanism** [4] - 37:9, 37:15, 39:15, 62:16
**mechanisms** [1] - 59:9
**media** [8] - 12:16, 17:4, 26:25, 28:6, 34:7, 38:19, 48:9, 57:11
**meet** [1] - 11:14
**mention** [1] - 18:7
**mentioned** [5] - 5:5, 52:21, 56:21, 63:1, 66:7
**message** [3] - 22:18, 47:11, 47:18
**Michael** [2] - 14:20, 14:22
**Michigan** [22] - 1:19, 7:3, 10:17, 11:9, 25:11, 25:13, 26:24, 28:13, 30:15, 32:11, 32:19, 32:21, 33:1,

34:21, 36:12, 38:24, 40:13, 41:8, 41:12, 41:18, 41:19, 56:20
**might** [6] - 20:19, 24:7, 27:2, 46:10, 58:20
**million** [2] - 52:6, 52:7
**mindset** [1] - 59:22
**minute** [2] - 9:6, 35:19
**minutes** [1] - 4:5
**misconduct** [5] - 5:18, 5:19, 22:20, 24:1, 55:15
**misleading** [1] - 30:7
**misrepresentations** [4] - 14:3, 15:8, 31:8, 35:3
**misrepresented** [2] - 19:14, 31:17
**misstatement** [1] - 46:18
**misstatements** [2] - 36:17, 41:2
**model** [1] - 65:6
**molester** [1] - 43:5
**moment** [1] - 3:25
**Monday** [1] - 42:16
**months** [3] - 24:4, 37:19, 50:10
**morning** [8] - 3:5, 3:10, 3:12, 3:17, 3:20, 3:21, 3:25, 4:23
**most** [4] - 14:3, 29:24, 35:8, 46:6
**MOTION** [1] - 1:9
**motion** [10] - 3:7, 4:3, 5:6, 6:15, 30:15, 43:14, 49:20, 55:5, 55:21, 59:4
**motions** [2] - 19:24, 49:13
**moved** [1] - 8:23
**movement** [1] - 17:5
**moving** [3] - 11:13, 59:21, 59:24
**MOXILA** [1] - 1:9
**Moxila** [1] - 3:3
**MR** [26] - 3:13, 3:16, 3:22, 26:23, 27:6, 27:9, 27:15, 27:19, 27:22, 28:1, 28:5, 28:9, 28:16, 28:19, 29:5, 29:13, 61:22, 61:25, 62:4, 62:6, 63:13, 64:7, 64:11, 64:13, 65:1, 65:10
**MS** [107] - 3:10, 3:15, 3:17, 4:21, 4:23, 5:3,

5:5, 5:14, 7:6, 8:3, 15:1, 17:13, 17:22, 20:14, 20:25, 22:7, 22:10, 23:2, 23:14, 23:17, 25:7, 25:12, 26:9, 29:19, 30:4, 31:7, 31:21, 31:23, 32:2, 32:5, 32:7, 32:9, 32:15, 33:6, 33:9, 33:17, 34:2, 34:11, 34:17, 35:20, 36:5, 36:9, 36:12, 36:15, 36:24, 37:7, 37:21, 38:4, 38:14, 39:6, 39:22, 40:3, 40:6, 40:17, 41:1, 41:8, 41:11, 42:19, 42:22, 43:15, 44:2, 44:4, 44:14, 44:18, 44:21, 45:2, 45:7, 45:11, 45:23, 46:1, 46:4, 46:16, 47:4, 47:7, 47:10, 47:15, 47:21, 47:24, 48:6, 48:25, 49:5, 49:20, 49:24, 50:3, 50:8, 51:9, 51:18, 55:4, 56:18, 57:8, 57:20, 57:23, 58:7, 59:2, 59:5, 59:11, 59:20, 60:4, 61:12, 61:16, 61:18, 62:12, 62:24, 64:1, 65:18, 65:23, 66:2
**multi** [1] - 12:7
**multi-page** [1] - 12:7
**multiple** [2] - 21:20
**must** [1] - 36:13

**N**

**name** [2] - 51:24, 62:20
**named** [4] - 14:11, 14:12, 14:20, 25:8
**namely** [1] - 16:23
**narrative** [1] - 37:12
**national** [4] - 29:25, 35:8, 46:7
**nature** [1] - 31:5
**necessarily** [1] - 40:4
**necessary** [1] - 55:12
**need** [14] - 6:2, 15:7, 31:9, 38:15, 39:12, 41:14, 43:9, 43:10, 44:10, 55:2, 55:22, 56:24, 62:21
**needs** [4] - 15:13, 22:18, 51:14, 59:21

negotiated [1] - 7:23
never [8] - 5:11, 29:9, 32:19, 49:6, 49:7, 51:14, 51:20, 52:12
New [1] - 57:3
new [7] - 5:25, 41:5, 41:17, 41:20, 51:6, 51:11
Newman [1] - 14:12
News [1] - 12:24
next [3] - 9:6, 13:18, 50:23
Nichols [10] - 7:24, 36:3, 37:4, 43:25, 44:3, 44:9, 48:16, 49:14, 49:21, 49:22
Nichols' [6] - 38:13, 55:23, 60:23, 60:24, 62:22, 63:2
nitpicking [1] - 11:22
NO [1] - 1:5
none [4] - 17:19, 43:19, 50:11, 50:12
notably [2] - 14:4, 15:15
note [2] - 12:20, 48:15
noted [1] - 7:13
notes [1] - 14:15
nothing [9] - 10:11, 13:10, 19:6, 19:17, 21:11, 41:10, 41:13, 44:6, 64:19
notice [1] - 34:13
notified [1] - 48:9
notifying [1] - 8:13
noting [1] - 22:14
number [2] - 47:17, 57:23
numbers [2] - 66:5
numerous [12] - 6:9, 14:2, 19:10, 19:12, 30:12, 39:8, 39:22, 42:5, 50:12
NW [2] - 1:24, 2:3

O

Oakland [1] - 10:16
oath [11] - 36:6, 36:8, 36:9, 36:11, 36:13, 36:14, 38:23, 40:21, 45:10, 54:3
object [2] - 8:2, 8:3
objected [2] - 42:4, 44:7
objecting [1] - 31:2
objection [6] - 7:24, 8:7, 37:15, 63:6,

63:24, 64:1
objections [1] - 44:9
obligation [10] - 6:6, 6:7, 40:8, 40:22, 45:7, 45:9, 57:18, 58:4, 64:14, 64:21
obligations [1] - 58:24
obliged [2] - 48:19, 48:20
obstruction [4] - 39:23, 40:1, 40:2, 40:5
obvious [1] - 53:22
obviously [2] - 18:8, 27:7
occur [1] - 49:4
occurred [2] - 6:1, 34:16, 60:2
OF [3] - 1:1, 1:9, 1:17
offense [1] - 24:3
OFFICE [1] - 1:17
office [9] - 10:13, 10:19, 10:22, 11:7, 15:18, 53:24, 56:20, 59:6, 63:14
officer [1] - 13:24
offices [1] - 40:1
OFFICIAL [1] - 66:23
Official [2] - 1:23, 66:16
Oltmann [4] - 13:4, 13:5, 13:12, 13:14
one [31] - 7:18, 9:23, 9:24, 10:12, 12:23, 18:13, 18:23, 19:2, 21:22, 22:1, 23:23, 23:25, 30:2, 32:17, 34:18, 39:6, 41:4, 48:9, 52:1, 52:2, 52:7, 53:7, 53:23, 57:23, 60:15, 62:6, 63:3, 63:8, 63:16, 64:24
ongoing [2] - 35:1, 39:24
open [6] - 6:7, 28:12, 34:20, 34:24, 38:5, 43:25
opening [1] - 53:18
opinion [2] - 46:17, 46:22
opportunities [1] - 50:13
opportunity [3] - 50:13, 60:1, 61:6
oppose [1] - 35:4
opposed [2] - 23:13, 63:17
opposing [3] - 41:19, 56:19, 56:23

orally [1] - 9:4
order [114] - 3:4, 4:4, 4:8, 4:18, 6:10, 6:11, 6:16, 7:5, 7:11, 7:17, 7:20, 8:4, 8:6, 8:9, 8:11, 8:16, 8:19, 9:2, 9:6, 9:8, 9:9, 11:19, 11:21, 12:8, 12:13, 14:23, 15:13, 17:6, 17:24, 18:2, 18:17, 19:9, 19:11, 19:16, 21:13, 24:5, 24:7, 24:9, 24:10, 24:12, 26:1, 26:2, 27:2, 29:11, 29:12, 29:18, 30:17, 30:22, 30:24, 30:25, 31:6, 36:2, 36:3, 37:3, 37:12, 37:20, 37:22, 38:13, 38:14, 39:1, 39:14, 39:15, 40:25, 42:2, 43:17, 43:18, 43:21, 43:22, 44:4, 44:8, 44:13, 44:24, 45:1, 45:21, 48:16, 48:23, 49:11, 49:12, 49:15, 53:18, 54:17, 54:25, 55:1, 55:22, 55:23, 57:22, 57:25, 58:25, 59:20, 59:24, 60:10, 60:14, 60:17, 60:23, 60:24, 61:1, 61:9, 61:11, 61:21, 62:16, 62:22, 63:2, 63:4, 63:6, 63:9, 63:15, 63:20, 63:22, 63:25, 64:3, 64:14, 65:2
Order [1] - 3:1
ordered [2] - 17:3, 23:12
ordering [2] - 31:4, 47:25
orders [22] - 11:8, 14:2, 19:8, 19:18, 20:9, 20:18, 21:10, 22:25, 23:3, 23:4, 44:14, 44:18, 44:22, 50:5, 52:11, 56:8, 56:9, 56:10, 56:16, 58:21, 64:24
original [1] - 66:17
otherwise [1] - 32:19
outlined [1] - 26:1
outside [2] - 7:18, 22:1
overseeing [1] - 10:12
overview [1] - 6:3
own [12] - 4:6, 10:25, 11:9, 24:11, 34:8,

34:12, 34:14, 44:16, 63:19, 64:4

P

p.m [1] - 9:19
page [2] - 12:7, 66:18
pages [1] - 7:1
pains [1] - 51:2
papers [1] - 19:3
paragraph [7] - 7:18, 8:10, 8:13, 11:5, 60:15, 63:3, 63:8
paragraphs [3] - 6:10, 6:12, 8:16
parallel [1] - 64:20
part [2] - 14:14, 16:22
particular [1] - 43:10
particularly [1] - 28:12
parties [4] - 3:8, 4:12, 45:22, 65:5
parts [1] - 47:13
party [5] - 15:18, 17:4, 36:4, 39:2, 64:5
past [1] - 17:19
PATRICK [1] - 1:6
pattern [6] - 16:22, 22:5, 24:1, 41:3, 42:9, 43:15
Paul [3] - 20:25, 23:14, 23:16
Pause [3] - 4:1, 51:17, 62:11
pending [6] - 7:2, 10:20, 22:19, 25:12, 31:6, 60:16
Pennsylvania [2] - 2:3, 42:4
people [1] - 45:12
percent [1] - 38:2
perhaps [2] - 14:3, 21:15
period [3] - 6:14, 6:16, 12:5
periods [1] - 6:14
perjury [2] - 34:24, 34:25
permission [1] - 45:19
permitted [1] - 7:20
person [2] - 20:6, 20:7
person's [1] - 64:3
personal [1] - 50:20
personally [1] - 5:11
persons [1] - 7:20
pertinent [1] - 22:24

Pete [1] - 34:21
phone [4] - 14:7, 53:24, 54:6, 54:22
phrasing [1] - 50:18
pick [1] - 54:6
picked [3] - 14:7, 26:16, 53:24
pieces [1] - 66:2
place [6] - 30:12, 35:8, 35:9, 39:25, 42:12, 46:7
placed [1] - 37:8
Plaintiffs [1] - 1:4
plaintiffs [2] - 3:11, 4:24
PLAINTIFFS [1] - 1:12
plaintiffs' [1] - 3:9
planning [1] - 17:9
platform [2] - 13:20, 57:13
plausible [1] - 37:11
pleasure [1] - 23:21
PLLC [2] - 1:17, 2:2
plunkett [1] - 64:20
PLUNKETT [4] - 3:22, 63:13, 64:7, 64:11
Plunkett [3] - 2:3, 3:22, 63:13
podium [2] - 14:10, 26:14
point [8] - 8:17, 11:18, 27:4, 27:21, 28:7, 32:24, 33:1, 37:10, 49:1, 52:9, 53:7, 53:14, 56:11
pointing [1] - 12:3
points [2] - 13:23, 53:21
police [1] - 59:17
policy [1] - 22:21
pose [1] - 45:14
position [5] - 30:3, 36:2, 36:23, 38:21, 44:10
positions [1] - 63:4
possession [3] - 52:2, 53:16
possible [5] - 8:21, 49:2, 50:9, 55:20, 55:21
post [8] - 6:15, 17:8, 18:3, 18:22, 28:12, 48:9, 58:1, 58:10
posted [5] - 18:14, 18:25, 51:4, 51:6, 57:13
posting [4] - 6:22, 11:25, 12:6, 34:8,

**posts** [15] - 12:16, 17:2, 17:19, 17:23, 33:13, 33:25, 34:3, 34:10, 34:12, 34:14, 35:12, 48:7, 51:6, 55:8, 65:15
**Poulos** [1] - 34:22
**Powell** [1] - 32:23
**practically** [1] - 17:9
**practice** [2] - 22:5, 42:2
**pre** [2] - 6:14, 9:1
**pre-judge** [1] - 9:1
**precise** [1] - 14:14
**prepared** [3] - 12:21, 39:10, 61:23
**present** [4] - 3:18, 13:24, 26:11, 49:12
**PRESENT** [1] - 2:1
**presentation** [2] - 5:1, 7:7
**preservation** [1] - 57:19
**preserve** [3] - 18:18, 54:17, 54:19
**preserved** [5] - 57:12, 57:14, 58:5, 58:9, 58:11
**presiding** [1] - 3:3
**presumably** [2] - 52:1, 53:13
**presume** [1] - 53:14
**pretty** [2] - 5:24, 63:15
**prevail** [1] - 41:22
**prevent** [5] - 33:2, 39:7, 41:24, 42:7, 42:9
**PREVIOUS** [1] - 2:2
**previously** [2] - 32:10, 37:21
**printed** [1] - 65:19
**prison** [1] - 16:14
**private** [1] - 42:1
**privilege** [3] - 15:20, 25:4, 29:22
**privileged** [4] - 26:19, 28:11, 47:22, 55:9
**pro** [7] - 28:3, 31:19, 32:6, 42:5, 42:6, 53:23, 58:12
**proceed** [1] - 62:14
**proceeding** [7] - 19:20, 19:22, 25:8, 43:1, 50:23, 51:20, 53:19
**proceedings** [3] - 5:21, 25:10, 25:12
**Proceedings** [1] -

66:13
**process** [2] - 12:12, 64:5
**produce** [3] - 15:20, 20:6, 56:13
**produced** [6] - 6:22, 17:10, 48:18, 51:14, 53:15, 63:17
**Produced** [1] - 1:25
**product** [1] - 26:20
**professional** [2] - 6:4, 23:5
**Professional** [4] - 6:5, 6:8, 11:9, 54:5
**prohibition** [1] - 8:11
**promote** [1] - 18:8
**promoting** [1] - 24:18
**promptly** [1] - 8:22
**property** [3] - 30:9, 38:18, 43:19
**proposed** [3] - 26:1, 26:2, 63:15
**proposition** [4] - 30:3, 38:24, 39:13, 39:20
**prosecutor** [7] - 14:6, 32:10, 34:21, 41:15, 42:1, 43:2, 58:17
**prosecutor's** [2] - 53:24, 56:20
**prosecutors** [2] - 10:12, 30:13
**prosecutors'** [1] - 39:25
**protect** [3] - 21:16, 43:18, 52:4
**protected** [4] - 26:20, 31:6, 35:22, 38:12
**protective** [39] - 4:8, 4:18, 6:10, 7:11, 7:16, 8:4, 8:6, 8:9, 8:10, 8:16, 8:19, 19:9, 20:18, 21:13, 24:5, 29:10, 29:12, 37:3, 37:20, 37:22, 39:14, 39:15, 43:18, 44:4, 44:8, 44:13, 44:24, 45:21, 48:16, 48:22, 55:23, 58:25, 60:24, 62:16, 63:2, 63:9, 63:22, 63:25, 64:3
**proudly** [1] - 16:2
**provide** [15] - 7:9, 8:14, 9:18, 27:17, 27:18, 32:16, 34:4, 35:20, 46:11, 51:1, 51:23, 56:2, 56:21,

56:22, 57:8
**provided** [8] - 12:23, 14:4, 27:16, 31:12, 34:2, 34:19, 59:5, 65:20
**providing** [5] - 7:19, 9:11, 46:25, 57:1, 60:19
**provision** [1] - 7:22
**provisions** [1] - 9:23
**public** [15] - 7:1, 8:20, 9:16, 10:5, 10:11, 10:14, 10:17, 11:3, 16:13, 16:15, 16:24, 19:6, 30:10, 58:10
**publicly** [6] - 12:11, 34:5, 34:23, 35:13, 37:13, 49:19
**Publishers** [1] - 57:1
**pull** [5] - 47:11, 47:19, 48:10, 54:16, 54:19
**pulled** [1] - 54:21
**purpose** [1] - 37:6
**purposes** [1] - 7:18
**pursuant** [2] - 7:4, 11:9
**pushing** [1] - 24:18
**put** [4] - 15:10, 20:6, 31:4, 38:16

**Q**

**questions** [9] - 4:6, 4:7, 46:19, 50:4, 58:20, 61:7, 61:14, 63:11
**quickly** [1] - 55:20
**quiet** [1] - 16:16
**quite** [2] - 12:15, 21:19
**quo** [24] - 4:4, 4:18, 6:11, 6:16, 9:2, 9:9, 9:23, 11:19, 14:23, 17:24, 18:4, 18:17, 19:11, 19:16, 24:7, 24:9, 24:10, 24:12, 53:18, 54:17, 54:24, 60:14, 64:14, 65:2
**quote** [17] - 5:18, 9:10, 9:12, 9:14, 9:17, 10:15, 11:4, 13:8, 13:10, 13:22, 15:5, 15:6, 15:7, 16:19, 22:15, 22:17

**R**

**rails** [1] - 43:10

**raise** [1] - 15:8
**rather** [5] - 7:13, 8:19, 11:16, 28:13, 65:4
**RDR** [1] - 66:22
**RDR-CRR** [1] - 66:22
**Re** [2] - 23:24, 23:25
**re** [1] - 25:17
**re-up** [1] - 25:17
**reach** [2] - 29:21, 30:6
**reached** [3] - 10:21, 18:19, 28:8
**read** [7] - 10:15, 16:7, 17:1, 21:19, 58:25, 59:8, 64:8
**reading** [1] - 63:24
**real** [3] - 15:8, 23:8, 39:17
**really** [12] - 14:22, 16:21, 37:10, 38:22, 50:13, 53:7, 55:18, 56:4, 56:6, 60:2, 64:4
**Realtime** [1] - 1:23
**reason** [8] - 20:7, 22:11, 23:18, 23:22, 31:16, 35:18, 50:15, 52:24
**reasonable** [5] - 9:16, 10:4, 12:10, 14:5, 31:1
**reassure** [2] - 46:4, 46:24
**recap** [2] - 5:25, 19:8
**receipt** [2] - 58:14, 58:18
**receive** [1] - 7:20
**received** [7] - 9:12, 30:23, 32:9, 32:24, 32:25, 60:20, 63:17
**recent** [1] - 17:2
**recently** [1] - 51:7
**recess** [1] - 60:6
**Recessed** [1] - 60:7
**recipient** [1] - 21:19
**recognizing** [1] - 5:10
**reconvened** [1] - 60:9
**record** [16] - 3:8, 9:17, 10:5, 10:24, 15:11, 16:8, 17:2, 24:4, 25:22, 25:23, 29:8, 33:20, 44:7, 55:14, 65:25, 66:17
**Record** [1] - 1:25
**Reeves** [2] - 66:16, 66:22
**REEVES** [2] - 1:22, 66:22

**refer** [2] - 9:8, 48:15
**reference** [4] - 12:1, 17:25, 60:16, 60:22
**referenced** [2] - 28:6, 45:10
**referred** [1] - 49:22
**reflect** [1] - 45:18
**reflecting** [1] - 38:17
**reflects** [1] - 49:17
**refusal** [2] - 6:7, 54:12
**refused** [2] - 15:19
**refusing** [1] - 8:14
**regard** [2] - 8:18, 58:20
**regarding** [4] - 30:5, 34:24, 36:16, 41:3
**regardless** [2] - 16:24, 58:5
**Registered** [1] - 1:22
**regulations** [1] - 66:18
**reiterate** [1] - 60:14
**reiterated** [1] - 54:21
**reject** [1] - 50:18
**related** [7] - 18:18, 25:7, 32:10, 43:4, 43:17, 47:18, 60:21
**release** [2] - 8:20, 37:16
**released** [2] - 12:2, 13:7
**relevant** [4] - 6:17, 10:9, 14:10, 15:23
**relief** [5] - 8:23, 29:11, 37:20, 39:16, 40:16
**remain** [2] - 10:17, 25:19
**remaining** [1] - 4:14
**remarks** [1] - 53:18
**remind** [2] - 25:20, 48:4
**remorse** [1] - 15:24
**remove** [4] - 9:16, 10:4, 57:11, 59:23
**removed** [3] - 24:22, 43:3, 58:10
**Renaissance** [1] - 1:18
**renew** [1] - 25:25
**repeat** [1] - 48:17
**repeated** [1] - 8:14
**repeatedly** [3] - 18:19, 19:18, 21:10
**reply** [2] - 23:24, 50:14
**report** [7] - 39:7, 39:24, 40:8, 40:18, 40:21, 53:10, 59:17

**REPORTER** [1] - 66:23

**Reporter** [4] - 1:22, 1:23, 1:23, 66:16

**repository** [2] - 52:6, 53:12

**reposting** [2] - 18:5, 18:23

**represent** [4] - 20:4, 20:10, 28:17, 28:20

**representation** [1] - 22:2

**representations** [2] - 32:14, 32:15

**representative** [1] - 41:18

**represented** [2] - 25:9, 58:18

**representing** [8] - 20:2, 25:3, 25:15, 29:9, 31:19, 31:24, 33:3, 58:13

**represents** [1] - 53:23

**reputation** [1] - 33:2

**request** [15] - 11:8, 11:17, 12:7, 15:11, 25:17, 25:25, 26:2, 26:6, 30:16, 32:9, 32:24, 39:3, 46:22, 51:22, 54:8

**requested** [2] - 4:15, 62:12

**requests** [5] - 7:15, 8:14, 49:15, 62:23, 63:12

**require** [1] - 11:10

**requires** [1] - 5:17

**requiring** [2] - 12:13, 56:10

**research** [2] - 25:13, 46:21

**resolution** [2] - 60:16, 61:2

**respect** [1] - 16:10

**respond** [3] - 33:10, 33:21, 60:1

**responding** [1] - 29:17

**responds** [1] - 7:11

**response** [15] - 7:8, 8:22, 29:20, 33:12, 35:11, 35:15, 40:23, 43:13, 44:25, 46:14, 53:17, 53:20, 53:21, 54:25, 60:2

**responses** [1] - 33:23

**responsible** [1] - 52:18

**restrict** [1] - 65:9

**restricted** [1] - 64:6

**restricts** [1] - 63:20

**result** [4] - 35:3, 43:1, 59:17, 64:5

**retained** [1] - 27:20

**returned** [1] - 27:16

**revealed** [1] - 25:14

**revealing** [1] - 28:11

**review** [2] - 25:24, 38:15

**reviewed** [3] - 39:8, 40:9, 44:4

**reviewing** [1] - 35:2

**Richardson** [1] - 21:1

**rise** [4] - 3:2, 60:6, 60:8, 66:12

**risk** [1] - 8:1

**Robert** [1] - 2:3

**rolled** [1] - 43:6

**room** [1] - 15:9

**Ross** [1] - 1:13, 3:16

**ROSS** [1] - 3:16

**Rule** [4] - 6:4, 6:8, 21:25, 54:5

**rule** [1] - 39:23

**rules** [9] - 6:4, 6:6, 23:5, 30:14, 36:6, 36:16, 52:15, 54:4, 58:23

**Rules** [2] - 11:9, 54:5

**rushed** [1] - 8:19

**Russell** [1] - 14:12

---

**S**

**safety** [2] - 19:5, 19:6

**sanction** [6] - 4:15, 4:16, 5:23, 21:7, 23:12, 54:1

**sanctioned** [2] - 22:20, 23:9

**sanctioning** [1] - 22:2

**sanctions** [8] - 15:14, 21:15, 21:20, 32:24, 42:6, 55:10, 55:16, 59:23

**sat** [2] - 13:3, 19:17

**satisfy** [2] - 50:4, 55:14

**save** [1] - 22:16

**saw** [6] - 28:6, 33:12, 43:6, 47:15, 58:1, 59:8

**scenario** [1] - 20:21

**scope** [2] - 28:14, 28:24

**Scott** [1] - 42:13

**se** [5] - 28:3, 31:19, 32:6, 53:23, 58:12

**seal** [13] - 9:17, 10:5, 10:11, 10:22, 11:12, 12:10, 14:6, 31:3, 31:5, 38:7, 38:10, 53:19, 53:25

**sealed** [1] - 10:2

**seated** [4] - 3:4, 29:15, 60:10, 62:1

**second** [3] - 13:3, 24:7, 24:16

**secret** [4] - 30:9, 38:17, 43:19, 63:5

**secrets** [1] - 43:22

**security** [4] - 13:24, 29:25, 35:8, 46:7

**see** [14] - 11:23, 17:3, 17:9, 22:23, 23:10, 23:23, 36:1, 38:16, 40:10, 46:23, 48:6, 60:25, 61:3

**seeing** [3] - 10:11, 10:14, 34:4

**seek** [9] - 15:14, 29:10, 29:11, 39:16, 40:16, 45:19, 55:16, 62:18

**seeking** [5] - 28:22, 37:19, 41:11, 41:17, 42:9

**segment** [1] - 13:20

**Senate** [1] - 40:13

**senator** [1] - 34:22

**senators** [1] - 35:2

**send** [4] - 18:9, 20:5, 54:7, 54:22

**sent** [4] - 10:11, 47:11, 47:18, 58:14

**serious** [5] - 19:4, 21:20, 29:24, 35:8, 46:6

**seriously** [1] - 17:15

**services** [1] - 40:10

**session** [1] - 3:3

**set** [3] - 3:7, 11:14, 36:3

**sets** [1] - 22:25

**setting** [1] - 23:13

**seven** [1] - 54:20

**Seventh** [1] - 57:2

**several** [3] - 11:19, 24:6, 38:19

**Shackelford** [2] - 1:13, 3:13

**SHACKELFORD** [1] - 3:13

**shall** [1] - 6:5

**sham** [1] - 41:5

**share** [1] - 49:19

**shared** [2] - 17:4, 56:15

**sharing** [3] - 8:11, 9:11, 60:18

**sheriff** [2] - 31:14, 32:2

**Sheriff** [24] - 6:21, 12:2, 13:15, 13:16, 15:16, 18:5, 18:6, 18:9, 18:24, 22:16, 24:20, 25:3, 25:15, 26:4, 35:17, 50:19, 51:3, 51:21, 52:2, 53:6, 53:11, 55:8

**sheriff's** [2] - 30:11, 31:21

**sheriffs** [1] - 30:13

**shocking** [1] - 16:20

**shockingly** [1] - 30:19

**short** [3] - 5:16, 38:7, 38:8

**show** [6] - 13:13, 23:6, 52:7, 52:12, 53:2, 55:19

**showed** [2] - 53:1, 53:8

**showing** [1] - 21:24

**shown** [3] - 15:24, 17:20, 21:10

**side** [5] - 4:4, 20:7, 20:8, 56:2, 56:14

**side's** [1] - 20:20

**Sidney** [1] - 32:22

**sift** [1] - 50:22

**signed** [8] - 9:18, 14:4, 19:15, 27:11, 27:19, 49:14, 59:5, 59:7

**significant** [1] - 31:10

**silence** [1] - 34:7, 38:19

**similar** [3] - 23:10, 36:13

**simple** [3] - 12:8, 44:13, 45:14

**simply** [1] - 6:23

**single** [6] - 9:23, 30:2, 41:20, 51:13, 53:14, 54:13

**site** [1] - 26:25

**sits** [1] - 13:19

**situation** [3] - 54:11, 59:10

**six** [1] - 54:20

**skip** [1] - 11:1

**slicing** [1] - 63:4

**slide** [13] - 4:25, 11:23, 16:1, 17:1,

17:8, 18:3, 18:21, 28:3, 33:12, 34:4, 65:15, 65:16, 65:17

**slides** [1] - 23:6

**slightly** [1] - 46:23

**smarter** [1] - 24:23

**Smith** [6] - 14:11, 14:20, 14:22, 14:23, 14:25

**so-called** [1] - 51:4

**social** [6] - 12:16, 17:4, 26:25, 28:6, 48:9, 57:11

**soil** [1] - 35:9

**someone** [4] - 32:1, 41:9, 42:20, 42:22

**sometime** [1] - 6:20

**Sonja** [2] - 66:16, 66:22

**SONJA** [2] - 1:22, 66:22

**sorry** [4] - 3:9, 15:19, 47:21, 52:16

**sort** [2] - 37:19, 49:18

**sorted** [2] - 49:10, 52:13

**sought** [6] - 5:12, 29:10, 33:2, 38:19, 43:3, 64:8

**source** [4] - 7:12, 17:10, 35:23, 38:2

**South** [2] - 23:24, 23:25

**SPEAKER** [1] - 26:11

**speaking** [1] - 5:11

**specific** [10] - 4:12, 12:1, 35:15, 44:18, 46:15, 46:19, 56:9, 56:10, 57:21, 60:1

**specifically** [5] - 7:17, 7:25, 17:25, 37:24, 57:22

**Speech** [1] - 13:20

**spoken** [2] - 34:5, 34:11

**spreading** [1] - 17:6

**STAFFORD** [1] - 2:2

**Stafford** [1] - 3:23

**standard** [10] - 5:9, 5:10, 19:19, 20:12, 20:14, 20:21, 20:22, 21:4, 51:19, 55:15

**standing** [4] - 13:21, 14:9, 24:8, 32:19

**stands** [2] - 39:13, 60:6

**Stars** [1] - 1:14

**start** [1] - 29:16

**started** [1] - 19:19

**starting** [1] - 3:9
**starts** [1] - 13:7
**state** [1] - 41:18
**State** [4] - 7:2, 32:19, 32:21, 34:21
**statement** [2] - 12:24, 17:1
**statements** [2] - 22:22, 40:13
**STATES** [1] - 1:1
**States** [3] - 30:13, 66:16, 66:19
**states** [4] - 31:12, 38:2, 42:6, 60:15
**status** [24] - 4:4, 4:18, 6:11, 6:16, 9:2, 9:9, 9:23, 11:19, 14:23, 17:24, 18:4, 18:17, 19:11, 19:16, 24:7, 24:9, 24:10, 24:11, 53:18, 54:17, 54:24, 60:14, 64:13, 65:2
**statutes** [1] - 39:22
**stay** [1] - 33:4
**STEFANIE** [1] - 1:17
**Stefanie** [7] - 3:17, 5:6, 13:9, 13:22, 15:21, 16:11, 22:16
**stefanie** [1] - 1:18
**Stephanie** [1] - 14:11
**Stephen** [2] - 1:13, 3:13
**steps** [2] - 16:11, 31:1
**still** [1] - 25:23
**stipulate** [1] - 44:6
**stipulated** [3] - 8:7, 8:8, 43:24
**stood** [1] - 45:4
**stop** [10] - 9:2, 13:10, 38:5, 38:7, 38:8, 43:9, 45:11, 45:12, 48:2, 58:1
**stopping** [2] - 19:11, 19:13
**story** [5] - 15:3, 15:13, 24:8, 26:5, 42:21
**straight** [1] - 15:3
**straightforward** [1] - 63:16
**strict** [1] - 62:22
**stuff** [1] - 16:15
**subject** [4] - 12:18, 19:3, 44:16
**submitted** [1] - 63:14
**submitting** [1] - 19:15
**subpoenaed** [2] -

15:18, 15:19
**subsequent** [4] - 4:17, 9:21, 40:24, 66:4
**subsequently** [1] - 35:24
**substantive** [1] - 33:23
**suddenly** [1] - 52:10
**sue** [1] - 52:20
**sued** [1] - 22:13
**suffice** [4] - 5:23, 19:21, 21:8, 54:1
**sufficient** [1] - 4:7
**suggest** [1] - 23:18
**suggesting** [1] - 25:22
**Suite** [3] - 1:14, 1:18, 2:3
**suits** [1] - 32:10
**summarizes** [1] - 13:1
**supplement** [1] - 65:14
**support** [5] - 32:3, 32:4, 32:16, 38:24, 43:14
**supported** [1] - 62:21
**supporting** [3] - 20:23, 36:1
**supports** [3] - 4:16, 30:2, 39:19
**supposed** [6] - 16:12, 30:25, 31:1, 53:19, 56:1, 56:2
**sur** [1] - 50:14
**sur-reply** [1] - 50:14
**surprise** [2] - 16:21, 19:2
**surrounding** [2] - 8:15, 54:18
**surviving** [1] - 13:21
**SUSMAN** [1] - 1:12
**Susman** [3] - 3:10, 4:24, 28:8

**T**

**talks** [1] - 19:24
**targeted** [1] - 55:21
**targeting** [1] - 42:11
**tarnish** [1] - 33:2
**tend** [1] - 30:19
**terms** [2] - 16:4, 21:7
**terrible** [1] - 52:23
**testified** [1] - 40:12
**testifies** [1] - 49:16
**testimony** [2] - 49:19
**THE** [138] - 1:1, 1:9,

1:12, 1:17, 2:2, 3:12, 3:20, 3:25, 4:2, 4:22, 5:2, 5:4, 5:13, 7:4, 8:2, 14:25, 17:11, 17:19, 20:12, 20:23, 22:6, 22:8, 22:22, 23:11, 23:16, 25:6, 25:10, 26:8, 26:10, 26:13, 27:3, 27:8, 27:10, 27:17, 27:20, 27:23, 28:2, 28:7, 28:10, 28:17, 28:21, 29:7, 29:14, 30:1, 30:17, 31:15, 31:22, 31:24, 32:4, 32:6, 32:8, 32:13, 33:4, 33:8, 33:10, 33:19, 34:9, 34:12, 35:10, 35:25, 36:8, 36:11, 36:14, 36:19, 37:2, 37:9, 38:3, 38:5, 38:21, 39:9, 40:2, 40:4, 40:15, 40:23, 41:6, 41:9, 42:17, 42:21, 43:8, 43:21, 44:3, 44:6, 44:16, 44:20, 44:23, 45:4, 45:9, 45:14, 45:24, 46:3, 46:13, 47:2, 47:6, 47:9, 47:13, 47:20, 47:22, 48:3, 48:11, 49:2, 49:16, 49:22, 50:1, 50:6, 51:8, 51:15, 55:1, 56:17, 57:5, 57:18, 57:21, 58:3, 58:25, 59:3, 59:7, 59:19, 59:25, 60:5, 60:11, 61:14, 61:17, 61:19, 61:23, 62:1, 62:5, 62:8, 62:15, 62:25, 63:22, 64:2, 64:10, 64:12, 64:23, 65:3, 65:12, 65:22, 65:24, 66:4
**themselves** [1] - 4:8
**therefore** [1] - 15:17
**thinks** [1] - 16:24
**third** [4] - 13:18, 36:4, 39:2, 45:21
**thorough** [2] - 21:4, 46:21
**threats** [1] - 19:5
**three** [1] - 6:13
**threshold** [1] - 57:24
**throughout** [2] - 33:3, 43:4
**throw** [1] - 16:14, 16:19, 21:12
**timeline** [1] - 12:21

**timing** [1] - 29:1
**today** [16] - 5:6, 5:24, 14:24, 21:11, 24:8, 24:25, 25:17, 30:18, 32:14, 32:18, 33:11, 49:12, 56:22, 58:14, 61:4, 66:3
**today's** [1] - 34:3
**together** [2] - 6:1, 14:1
**tolerance** [1] - 22:21
**tolerated** [1] - 22:20
**tomorrow** [1] - 66:1
**took** [3] - 18:16, 38:23, 51:2
**top** [1] - 23:17
**topics** [1] - 48:7
**towards** [1] - 50:24
**track** [1] - 66:6
**tracking** [1] - 10:9
**tracks** [1] - 52:3
**trade** [5] - 30:8, 38:17, 43:19, 43:22, 63:5
**transcribed** [1] - 16:6
**TRANSCRIPT** [1] - 1:9
**Transcript** [1] - 1:25
**transcript** [4] - 16:5, 66:17, 66:17, 66:18
**transcripts** [1] - 40:11
**travels** [1] - 47:5
**trial** [3] - 10:23, 50:24, 55:20
**tribe** [1] - 57:3
**tribunal** [1] - 6:6
**tried** [1] - 64:15
**troubling** [1] - 37:13
**true** [1] - 66:17
**truly** [5] - 5:18, 5:19, 19:20, 19:21, 20:21
**trust** [2] - 19:6, 56:4
**truth** [1] - 19:14
**truthfulness** [1] - 36:16
**try** [5] - 25:4, 39:16, 50:8, 55:18, 65:7
**trying** [4] - 26:5, 28:25, 39:2, 46:4
**turned** [1] - 36:25
**turns** [4] - 13:5, 13:8, 14:18, 55:7
**TV** [1] - 24:17
**Twitter** [6] - 13:9, 17:12, 17:14, 18:7, 26:24, 51:4
**two** [10] - 4:12, 6:4, 12:4, 14:1, 17:2, 24:4,

25:10, 25:12, 50:23, 53:25
**type** [2] - 24:1, 41:21
**types** [1] - 22:20

**U**

**U.S** [2] - 1:9, 35:9
**U.S.-based** [1] - 37:25
**ultimately** [2] - 41:22, 42:7
**unable** [1] - 30:7
**unaware** [1] - 11:2
**uncertain** [1] - 16:4
**under** [19] - 5:15, 6:2, 6:6, 7:20, 9:17, 10:5, 10:10, 20:24, 30:14, 31:3, 31:5, 42:25, 51:24, 54:4, 54:5, 55:23, 64:14, 65:13, 66:7
**undertake** [1] - 9:15
**undertaken** [2] - 10:4, 14:5
**undertaking** [4] - 27:12, 27:15, 27:19, 59:8
**undisputed** [2] - 49:3, 59:7
**unfortunately** [2] - 5:22, 57:16
**UNIDENTIFIED** [1] - 26:11
**unilateral** [2] - 44:17, 61:17
**unilaterally** [4] - 38:25, 39:14, 39:20
**unique** [1] - 41:17
**UNITED** [1] - 1:1
**United** [3] - 30:13, 66:16, 66:19
**unless** [1] - 53:12
**unring** [1] - 27:7
**up** [24] - 6:15, 9:5, 13:12, 13:21, 14:7, 19:25, 20:6, 21:2, 22:7, 23:23, 24:8, 25:17, 27:4, 41:5, 47:12, 51:15, 51:16, 53:24, 54:6, 54:17, 56:5, 58:2, 60:12, 61:5
**UPADHYAYA** [1] - 1:9
**Upadhyaya** [1] - 3:3
**updating** [1] - 54:7
**uphold** [1] - 36:13
**upload** [1] - 54:22
**uploaded** [1] - 16:7

**urge** [2] - 51:22, 65:5
**US** [2] - 1:3, 3:6
**users** [1] - 18:9

## V

**valid** [1] - 6:7
**validity** [1] - 35:23
**various** [1] - 13:23
**vendor** [1] - 51:22
**verification** [5] - 9:19, 11:14, 12:12, 14:5, 19:15
**versus** [1] - 3:6
**vice** [2] - 42:5, 42:6
**video** [11] - 16:6, 18:14, 18:20, 47:3, 47:9, 47:20, 47:23, 48:4, 54:16, 57:6, 57:7
**videos** [3] - 47:8, 57:14, 65:16
**view** [5] - 45:17, 45:18, 49:17, 59:14
**viewed** [1] - 46:5
**viewers** [1] - 24:19
**views** [2] - 23:1, 44:17
**violate** [6] - 14:1, 20:19, 23:3, 24:12, 24:14, 45:1
**violated** [18] - 6:3, 7:17, 8:10, 8:12, 8:17, 9:23, 9:24, 12:13, 19:8, 19:9, 19:11, 19:18, 20:18, 24:5, 24:9, 24:10, 36:15, 44:24
**violates** [1] - 61:1
**violating** [2] - 18:1, 65:1
**violation** [4] - 18:17, 54:24, 57:25, 61:3
**violations** [6] - 6:9, 7:16, 9:22, 30:22, 40:25, 53:17
**voice** [1] - 41:24
**Vollmer** [1] - 57:1
**vs** [1] - 1:5

## W

**waited** [1] - 11:16
**waiving** [1] - 29:22
**wants** [6] - 13:17, 17:13, 23:20, 25:24, 41:14, 46:9
**Washington** [3] - 1:11, 1:24, 2:4
**waste** [1] - 31:15

**Watch** [1] - 20:25
**watch** [1] - 47:10
**watching** [2] - 22:12, 22:14
**water** [4] - 40:7, 46:23, 59:15
**ways** [4] - 14:2, 19:10, 19:12, 24:18
**website** [3] - 18:10, 34:6, 34:8
**weeks** [2] - 14:18, 24:6
**wet** [3] - 40:7, 46:23, 59:15
**whatsoever** [2] - 29:12, 38:23
**white** [2] - 40:9, 40:14
**willing** [2] - 16:23, 23:20
**willingly** [1] - 43:23
**win** [2] - 41:23, 42:12
**wish** [2] - 4:10, 4:13
**wished** [1] - 48:20
**withdraw** [1] - 31:4
**withdrew** [2] - 29:3, 29:6
**witness** [1] - 49:16
**woman** [1] - 14:11
**won** [4] - 32:25, 42:7, 43:16
**word** [1] - 43:20
**words** [3] - 16:20, 17:15, 24:11
**works** [1] - 40:20
**world** [2] - 52:8, 52:20
**worse** [2] - 10:3, 51:18
**worth** [1] - 12:3
**wrapping** [1] - 60:12
**writing** [1] - 15:5
**written** [3] - 9:6, 9:8, 28:22

## Y

**years** [6] - 35:2, 38:19, 42:1, 47:17, 50:23, 52:18
**yesterday** [1] - 10:13
**yourself** [2] - 31:19, 48:12
**yourselves** [1] - 3:8

## Z

**zealous** [1] - 42:3
**zealously** [2] - 20:1, 20:10

**zero** [1] - 22:21