IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> PATRICK BYRNE, <br><br> Defendant. | Civil Action No. 1:21-cv-02131-CJN-MAU <br><br> Magistrate Judge Moxila A. Upadhyaya <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFFS' MOTION TO ENFORCE THE
PROTECTIVE AND STATUS QUO ORDERS**

### I.   INTRODUCTION

Plaintiffs US Dominion Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Plaintiffs" or "Dominion") respectfully move the Court to enforce the governing Protective Order and the March 19, 2024, Status Quo Order. Dkt. No. 79 ("Protective Order"); Dkt. No. 77 ("Status Quo Order"). Counsel Stefanie Lambert and her client Patrick Byrne appear to have once again violated both the letter and the spirit of this Court's orders. Specifically, to the best of Dominion's knowledge, Ms. Lambert has failed to object to a subpoena she received for documents and testimony from this case, as required by Paragraph 26 of the governing Protective Order. Dkt. No. 79 ("If any person in possession of Confidential or Attorneys' Eyes Only Discovery Material receives a subpoena or other compulsory process seeking the production or other disclosure of Confidential or Attorneys' Eyes Only Material the person neither produced nor designated, the person will give written notice . . . *and must object to the production of the Confidential or Attorneys' Eyes Only Discovery Material on the grounds of the existence of this Order*.") (emphasis added)).

1

While Ms. Lambert was of course responsible for familiarizing herself with the requirements in the governing Protective Order (particularly given her history of past violations), as soon as Dominion learned of the subpoena from Ms. Lambert, it brought Paragraph 26's obligation to her attention, and repeatedly asked her to confirm her compliance therewith. Ex. A.[1] There can thus be no doubt that Ms. Lambert's violation was willful.

Worse yet, the entire subpoena process appears to have been orchestrated by Ms. Lambert and Mr. Byrne to improperly release yet more discovery information from this case. This kind of surreptitious activity is precisely what Dominion predicted would happen at the hearing on the pending motion to disqualify Ms. Lambert. Ex. B ("May 16, 2024, Hearing Tr.") at 24:21–24 (Counsel for Dominion: "Your Honor, I'll be blunt. My concern is this: If she's not removed from this case, all that will have happened is they will have gotten smarter about how to do this leak in the future.").

Ms. Lambert and Mr. Byrne's continued refusal to comply with basic orders of this Court continues to threaten the integrity of this proceeding. Dominion respectfully requests that the Court urgently order Ms. Lambert to comply with the clear terms of the Protective Order.

## II.  BACKGROUND

**A.  The Lambert Subpoena**

On Monday, July 1, at 9:38 AM ET, Ms. Lambert advised Dominion via email that she had been served with a subpoena to testify and produce documents in the pending criminal matter against Tina Peters, *People v. Tina Peters*, Case No. 2022-CR-371 (Colo. Dist. Ct.).[2] Ex. C. Just

---

[1] All exhibits are attached to the Declaration of Davida Brook In Support of Plaintiffs' Motion to Enforce the Protective and Status Quo Orders ("Brook Decl.") filed herewith.

[2] Ms. Peters, a known election denier and the former Mesa County Clerk, has been charged with multiple felonies and misdemeanors arising out of her alleged facilitation of a security breach of Mesa County's election system. Specifically, she is accused of taking actions in 2021 to grant an

over an hour later, at 10:45 AM ET, Dominion responded to Ms. Lambert and asked her to confirm that both she and her client "will abide by the Protective and Status Quo Orders and not provide or discuss any materials produced in this litigation to anyone (including pursuant to this subpoena)." Ex. A. While it is of course Ms. Lambert's responsibility to have familiarized herself with this Court's orders, Dominion also made clear to Ms. Lambert that: "pursuant to the Protective Order, you must object to producing any confidential or [Attorneys' Eyes Only] material on the ground of the existence of that Order." *Id*. While Ms. Lambert promptly replied to say she and her client will abide by the terms of the Protective Order (she was silent as to the Status Quo Order), *see* Ex. D, shortly thereafter she sent another email explaining that her "recollection" was that it was Dominion who must file objections within 48 hours if Dominion is opposed to complying with the subpoena. Ms. Lambert then suggested: "Let's review the order again." Ex. E. Dominion responded within an hour to again make clear what a plain reading of the Protective Order provides, specifically: "Paragraph 26 of the governing Protective Order says the person who received the subpoena 'must object to the production of the Confidential or Attorney's Eyes Only Discovery Material on the grounds of the existence of this Order.'" Ex. F. Dominion also again asked that Ms. Lambert confirm her compliance. *Id*.

  The rest of the day passed, but in contrast to the morning's back-and-forth, Ms. Lambert fell radio silent. She would not acknowledge the plain language of the Protective Order, let alone agree that she and her client would comply with it.

---

unauthorized third party access to an upgrade of the County's voting equipment, which resulted in Mesa County election system passwords being leaked online. *See, e.g.*, Jesse Paul, The Colorado Sun, Mesa County Clerk Tina Peters Indicted on Felony Charges, https://coloradosun.com/2022/03/09/tina-peters-indicted-grand-jury/ (Mar. 9, 2022).

Late that evening, Dominion followed up with Ms. Lambert for a third time in 24 hours, again seeking confirmation that she understood her obligation to object to the subpoena and would abide by it. Ex. G. Dominion asked for a response by no later than 5:00 PM ET on Tuesday, July 2nd. *Id*. Ms. Lambert did not respond for the entirety of July 2, and Dominion reiterated its request that evening. Ex. H. Ms. Lambert did not respond until the next morning, at which point she wrote that she had "already responded"—without confirming that she understood her obligation to object to the subpoena. Ex. I. Dominion responded by pointing out that Ms. Lambert had not confirmed that she had objected or would object to the subpoena, would provide Dominion any confirmation that she had objected to the subpoena, and had not and would not produce any documents subject to it. Ex. J. Dominion further advised Ms. Lambert that absent a response to those substantive questions by 2:00 PM ET that afternoon, Dominion would have no choice but to go to the Court. *Id.*

At 2:57 PM ET that day, more than 48 hours and ten emails into the exchange, Ms. Lambert responded raising the allegation for the first time that "documents have been improperly labeled by [Dominion] as 'confidential' or 'attorneys eyes only.'" Ex. K. She *still* refused to answer whether she had objected or would object to the subpoena, instead repeating the generic affirmation that she would "follow the protective order"—an affirmation that carried even less weight considering her unilateral assertion that documents had been improperly designated. *Id*. Four minutes later, Dominion responded by reiterating that Ms. Lambert had still not responded to the questions, that Dominion needed immediate confirmation that Ms. Lambert had or would object to the subpoena, and would not produce documents subject to it and had not done so. Ex. L.

As of this filing, Ms. Lambert has not responded, acknowledged her obligation to object, nor provided a copy of the required objection. Brook Decl. ¶ 22. A review of the docket in the

4

Colorado case indicates that as of filing, Ms. Lambert has not lodged the required objection. *See* Ex. V.

**B.     The Poulos Subpoena**

As evident from Dominion's numerous emails to Ms. Lambert (*see, e.g.*, Ex. G), Dominion's concerns with Ms. Lambert's and her client's recent behavior are not limited to their refusal to comply with Paragraph 26 of the Protective Order. Rather, it has become clear that either Ms. Lambert, Mr. Byrne, or both, have been sharing information with Tina Peters' legal team (and perhaps others) about the location of ongoing depositions in this case, including so that Dominion employees could be served with plainly improper subpoenas on their way into questioning.

Specifically, on the morning of Thursday, June 27, which was the third of four days of consecutive deposition of Dominion's CEO in this matter, John Poulos was approached in the lobby by an individual named Yehuda Miller. Mr. Miller handed Mr. Poulos a subpoena supposedly issued by the Court overseeing Tina Peters' case. Mr. Miller also filmed the entire interaction, including the address of the location where Mr. Poulos was presently located.

There is no need for a declaration establishing these facts as, within minutes, Mr. Byrne (to be clear—not Mr. Miller) posted to X the video Mr. Miller had taken of Mr. Poulos. Mr. Byrne presumably received the video, which to the best of Dominion's knowledge had not otherwise been made public, directly from Mr. Miller.

Mr. Byrne posted the video to his own X page with the following caption: "Yahuda [sic] Miller just served Dominion CEO John Poulos a subpoena. Sharp dresser. Gotta give him that." Dominion cannot include a screenshot of this tweet as, in yet another violation of this Court's orders (and a violation that was specifically addressed at the last hearing before this Court, *see*

May 16, 2024, Hearing Tr. at 57:6–62:7), Mr. Byrne has since deleted this tweet from his X page.

He did not, however, take the time to delete it from his Telegram page:



Ex. M.

Other users also reposted Mr. Byrne's tweet before he deleted it. For example:



Ex. N.

For his part, Mr. Poulos proceeded to his deposition where he continued to answer questions, including from Ms. Lambert. Meanwhile, that same day, counsel for Dominion sent all

defense counsel an email asking:

> Counsel,
>
> Please provide responses to the below by no later than 1 pm est tmr:
>
> 1. Whether you (including anyone at your firm) or your client disclosed the fact that John Poulos was being deposed this week to anyone outside of the relevant court reporting agency or counsel of record in this matter for your client;
>
> 2. Whether you (including anyone at your firm) or your client shared the location of John Poulos's deposition with anyone outside of the relevant court reporting agency or counsel of record in this matter for your client;
>
> 3. Whether you (including anyone at your firm) or your client have had any communications with Yehuda Miller regarding Dominion or Mr. Poulos;
>
> 4. To the extent the answer to any of the above questions is yes – what you disclosed, when, and to whom.

Ex. O. As of this filing, and despite numerous requests, Ms. Lambert has refused to confirm either in writing or via phone/zoom that she (and/or her client) did not share any information about deposition locations. Brook Decl. ¶ 23.

C.  **Connection Between Lambert, Byrne, Peters, & Miller**

While to date Ms. Lambert has refused to confirm that she and/or her client did not share the deposition location for Mr. Poulos (to say nothing of other Dominion employees), there can be little doubt it was them. To begin, Mr. Byrne has publicly bragged about the fact that he is helping fund Ms. Peters' defense,[3] has publicly claimed that he "authorized" her criminal activity, and has announced that if Colorado "[d]rop[s] all charges against Tina" he will "take all responsibility":

---

[3] *See* @NHSouthernGirl, X.com, https://x.com/NHSouthernGirl/status/1780816555422412894 (Apr. 18, 2024) (embedding video in which Mr. Byrne brags that he paid a million dollars of Ms. Peters' legal fees).

8



Ex. P.

Mr. Byrne has likewise made clear that the individual who approached and filmed Mr. Poulos on June 27 is an "operative" of his company the America Project.



Ex. Q. And, as explained above, Mr. Byrne posted Mr. Miller's video within minutes of Mr. Miller's making it. *See supra* at 5–6.

The Lambert Subpoena strongly suggests this connection, too. Ms. Lambert is the only defense counsel across all the pending actions to be served with a subpoena in the Tina Peters case. And yet the information sought has nothing to do with Ms. Lambert or Mr. Byrne specifically, but rather Dominion. Ex. C. Moreover, the subpoena is drafted to allow *Ms. Lambert* (the putative target of the subpoena) virtually unfettered, unilateral discretion to produce *all* of the documents produced by Dominion in this matter—and anything else she deems "relevant to the defense of Tina Peters." *Id.* at 4.

### III.  ARGUMENT

The Tina Peters subpoena, and Ms. Lambert's refusal to follow the clear procedure set out by the Protective Order, is just Ms. Lambert's latest gambit to release Dominion's confidential documents. This Court has given Ms. Lambert multiple chances to course correct and simply comply with its Orders. At the initial March hearing, the Court explained to Ms. Lambert that she and her client would need to "stop any further dissemination," Ex. U at 31:12–13. They, however, did the opposite, violating the Status Quo Order in numerous ways, as detailed by Dominion at the later May 16, 2024, hearing. At that same May 16 hearing, the Court again questioned Ms. Lambert who again confirmed she would follow "specific" orders going forward. May 16, 2024, Hearing Tr. at 44:18–19 ("I will follow all specific orders that this Court gives."). As did her client. *Id.* at 61:20–62:5 (confirming that he understood, was prepared to comply with, and would comply with the Status Quo Order). But these latest actions by Ms. Lambert and Mr. Byrne show their true intentions: to come up with ever more creative ways to purposefully evade this Court's orders.

And this is not just any violation. This is a highly-orchestrated scheme to do the precise thing this Court has now twice prohibited Ms. Lambert and Mr. Byrne from doing—that is, laundering Dominion's documents to individuals who are not authorized to receive them. It also had the entirely intentional additional negative impact of further harassing Dominion's employees.

One may ask, is it harassing to be served with a subpoena? In this context, the answer is yes for any of the following reasons:

- The subpoena—to provide documents and testimony in a criminal proceeding pending in state court in Colorado—is plainly unenforceable and thus on its face was not served for any legitimate purpose;

- The subpoena was delivered not by an anonymous process server but instead a known election denier whose presence would be recognized (and concerning) to certain Dominion employees;
- The service was videotaped, and the videographer captured not just a recording of the Dominion employee but also his physical location;
- The videotape was then uploaded to X where, entirely predictably, it sparked calls for violence and rampant speculation, including about what other businesses were in the location of the deposition. *See, e.g.*, Exs. R; S; T.

Mr. Byrne and Ms. Lambert are keenly aware that Dominion employees have been subject to vicious attacks and death threats for years. Their conduct amounts to intentional harassment directed at a group of people trying to properly use the courts to effectuate their rights.

## IV. CONCLUSION

Dominion seeks the Court's prompt attention to this critical issue. Indeed, Dominion is concerned that with every passing day Ms. Lambert and Mr. Byrne will feel more justified in complying with the plainly improper subpoena "served" on them. The Court should order Ms. Lambert to comply with the Protective Order and Status Quo Order—including ordering her to object to the subpoena issued to her in the Tina Peters case and to refrain from producing any documents thereunder unless and until this Court confirms otherwise.

Dated: July 5, 2024

Respectfully submitted,

By:  */s/ Davida Brook*
Davida Brook (D.C. Bar No. CA00117)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

12

Tel: (310) 789-3100
dbrook@susmangodfrey.com

Laranda Walker (D.C. Bar No. TX0028)
Mary K. Sammons (D.C. Bar No. TX0030)
Jonathan Ross (D.C. Bar No. TX0027)
Elizabeth Hadaway (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
jross@susmangodfrey.com
ehadaway@susmangodfrey.com

Stephen Shackelford, Jr.
(D.C. Bar No. NY0443)
Mark Hatch-Miller (*Admitted pro hac vice*)
Eve Levin (D.C. Bar No. 1672808)
Christina Dieckmann (*Admitted pro hac vice)*
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Tel: (212) 336-8330
sshackelford@susmangodfrey.com
mhatch-miller@susmangodfrey.com
elevin@susmangodfrey.com
cdieckmann@susmangodfrey.com

Edgar Sargent (*Admitted pro hac vice*)
Katherine Peaslee (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com
kpeaslee@susmangodfrey.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of July 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/ Davida Brook*
Davida Brook