# Exhibit B

```
 1                      UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
 2

 3   US DOMINION, INC., et al.,    )
                                   )
 4           Plaintiffs,           )
                                   )
 5       vs.                       ) CASE NO. 1:21-cv-02131(CJN)
                                   )
 6   PATRICK BYRNE,                )
                                   )
 7           Defendant.            )
     _____)
 8

 9              TRANSCRIPT OF MOTION HEARING [ECF 75]
       BEFORE THE HONORABLE MOXILA A. UPADHYAYA, U.S. MAGISTRATE JUDGE
10                         May 16, 2024
                      10:00 a.m. - 11:46 a.m.
11                         Washington, DC

12   FOR THE PLAINTIFFS:
         SUSMAN GODFREY, LLP
13       BY:  Davida Brook, Christina Dieckmann,
              Stephen Shackelford, Jr. and Jonathan Ross
14       1900 Avenue of the Stars, Suite 1400
         Los Angeles, California 90067
15       (310) 789-3100

16

17   FOR THE DEFENDANT:
         LAW OFFICE OF STEFANIE L. LAMBERT, PLLC
18       BY:  Stefanie L. Lambert
         400 Renaissance Center, Suite Fl.26
19       Detroit, Michigan 48243
         (313) 410-6872
20

21
     _____
22                         SONJA L. REEVES
                    Registered Diplomate Reporter
23                   Certified Realtime Reporter
                    Federal Official Court Reporter
24                   333 Constitution Avenue, NW
                         Washington, DC 20001
25          Transcript Produced from the Digital Record
```

1  You don't get this type of pattern of misconduct.  You just
2  don't.
3         This isn't her first offense in this court, even
4  though she's only been counsel of record for two months.  She
5  violated the protective order.  We came before this Court
6  several weeks ago and this Court gave her what I would call a
7  second chance.  It entered a status quo order.  And it might
8  have been a different story if standing up here today
9  Ms. Lambert had not violated that status quo order left, right
10 and center, if Mr. Byrne had not violated that status quo order
11 left, right and center, if in their own words since the status
12 quo order was entered, they have said, "We're going to violate
13 it again.  It doesn't matter what the Court does, we're going
14 to violate it."
15        Again, he's free to say that, but he's not free to do
16 it.  And so this Court gave Ms. Lambert a second chance and she
17 didn't take it; instead she went on TV and she said -- and she
18 found ways to continue directing, promoting, and pushing
19 viewers to the documents that she herself had leaked through
20 Sheriff Dar Leaf.
21        Your Honor, I'll be blunt.  My concern is this:  If
22 she's not removed from this case, all that will have happened
23 is they will have gotten smarter about how to do this leak in
24 the future.
25        I don't think that we would know what we knew today if

1  entered it.

2             MS. LAMBERT:  I'm not sure that my client --

3             THE COURT:  Ma'am.  Ma'am, Judge Nichols --

4             MS. LAMBERT:  -- reviewed the protective order with

5  prior counsel.

6             THE COURT:  He did stipulate to it.  There is nothing

7  in the record that I have seen where your client objected to

8  the entry of the protective order, and even if he did, Judge

9  Nichols entered it over any objections.

10            But I need to know going forward what your position is

11 as to whether or not, if you come and gain access to any of the

12 documents in this case, whether you intend to follow the

13 protective order, simple as that.

14            MS. LAMBERT:  I will follow any orders that this Court

15 gives.  I want the Court to know that --

16            THE COURT:  Subject to what -- subject to your own

17 unilateral views as to what can and can't be disseminated?

18            MS. LAMBERT:  I will follow all specific orders that

19 this Court gives.

20            THE COURT:  What does that mean?

21            MS. LAMBERT:  That means anything that the Court

22 orders, I will follow.

23            THE COURT:  I haven't seen any evidence of that thus

24 far.  You violated the protective order.  You apparently have

25 no response.  I think it's conceded that you went on after my

1  D.D.C. 2005.  We're also providing *Vollmer v. Publishers*
2  *Clearing House*, 248 F.3d 698.  That's a Seventh Circuit case,
3  2011.  And *Kramer v. Tribe*, 156 F.R.D. 96, the District of New
4  Jersey, 1994.
5              THE COURT:  Okay.  Thank you.
6              Ms. Lambert, is there a copy of this video anywhere,
7  the April 3rd video?
8              MS. LAMBERT:  No, Your Honor.  And I wanted to provide
9  further information about that.  I asked my client to take it
10 down, not to have it deleted.  I did not understand when I was
11 asking him to remove it from social media that it was not
12 preserved.
13             Apparently, it's posted on some platform where the
14 videos are not preserved.  He does not have a copy.  I did let
15 Dominion know that when they asked by email if there was a
16 copy, and I told him -- told them unfortunately, there wasn't.
17 And I didn't know that.
18             THE COURT:  Isn't it your obligation to ensure
19 preservation?
20             MS. LAMBERT:  Your Honor, I --
21             THE COURT:  Especially given my specific -- I mean, it
22 exists no matter what, but then specifically my order.
23             MS. LAMBERT:  I don't know, Your Honor, number one, as
24 a threshold consideration whether or not it discussed any
25 documents in violation of the order.  I don't know that.  I

1  just asked him to stop talking about it when I saw the post
2  come up.
3              THE COURT:  My question is:
4              Isn't it your obligation to ensure that everything is
5  preserved whether or not -- regardless of what's in it,
6  given --
7              MS. LAMBERT:  I did communicate that to my client
8  after the hearing, Your Honor.  And I did not know that it
9  would not be preserved.  Apparently -- and he didn't know that
10 either when he removed it from a public post that it is not
11 preserved.  So we just didn't know that, Your Honor.
12             To correct a few things, I am not pro se in my case.
13 I have an attorney representing me.  I am for the first time in
14 receipt of this email today in court that was sent on May 15th
15 that was not forwarded to me, and it also was not -- my
16 attorney was not copied on it -- to engage in conversation with
17 Dominion, nor did the prosecutor appear to forward it to my
18 attorney.  I am represented by counsel.  So I am in receipt of
19 this, but I wanted the Court to have that further information.
20             With regard to any questions that the Court might have
21 with us following further orders, everything that I did on
22 behalf of Dr. Byrne was in good faith and was consistent with
23 what I believed the laws and the rules and the ethical
24 obligations to be.
25             THE COURT:  Did you read the protective order at any

```
 1   time --
 2          MS. LAMBERT:  I did, and I --
 3          THE COURT:  Just let me finish.
 4          -- prior to Dominion filing its emergency motion?
 5          MS. LAMBERT:  Yes, and signed it, and I provided it to
 6   Mr. Driscoll's office.
 7          THE COURT:  Right.  It's undisputed that you signed an
 8   undertaking, so I'm assuming that you read it and you saw that
 9   there were mechanisms that would have avoided this entire
10   situation.
11          MS. LAMBERT:  As I further stated, and I had wanted to
12   address with the Court, Your Honor, we did not anticipate the
13   discovery to contain evidence of criminal acts.  I believe this
14   is, in my view, but I understand the Court's view, asking for
15   water is wet.  If I were to go to the counsel for the criminals
16   and let them know that I believe there is evidence of a crime
17   that I want to report to the police, that could result in a
18   destruction of evidence, criminal actors fleeing, hiding, so --
19          THE COURT:  Ma'am --
20          MS. LAMBERT:  -- I want to follow any order that the
21   Court gives moving forward, but the Court needs to understand
22   my mindset was in good faith, and the Court does have the
23   ability to issue sanctions or remove me from the case should I
24   do anything inconsistent moving forward with a Court order.
25          THE COURT:  All right.  Ma'am, I have given you ample
```

1  opportunity to respond to any of the specific events that have
2  occurred.  I haven't really heard any response other than what
3  you said.  I'm going to take a brief break and I'll be back.
4         MS. LAMBERT:  Thank you, Judge.
5         THE COURT:  Thank you.
6         DEPUTY CLERK:  All rise.  Court stands in recess.
7     (Recessed from 11:17 a.m. to 11:38 a.m.)
8         DEPUTY CLERK:  All rise.  This Honorable Court is now
9  reconvened.
10        Please be seated and come to order.
11        THE COURT:  Okay.  A few matters that I would like to
12 address before wrapping up.
13        I would like to, for Ms. Lambert and Mr. Byrne's
14 benefit, just reiterate my status quo order.
15        Paragraph one states -- and this is at ECF No. 77 for
16 reference -- that pending any resolution by this Court, and
17 until further order of the Court, that Mr. Byrne and his
18 counsel, Ms. Lambert, are to immediately desist from sharing,
19 distributing, providing access to or discussing any discovery
20 material received in connection with the following cases, and
21 it goes on to list the related cases here.
22        Now, discovery material, as I reference it in that
23 order, is discovery material as is defined in Judge Nichols'
24 interim -- or Judge Nichols' protective order.  I want to make
25 it very clear that going forward if I see any evidence that

1  violates this order, I'm going to take that into account in my
2  final resolution.  And I'll be very clear, some of the things I
3  have seen since March are a violation of this, as I see it,
4  some of what I have seen today.
5          And so I would like you both to come up and confirm
6  that you understand that.  Now is the opportunity to ask me if
7  you have any questions.
8          I would like Mr. Byrne to confirm that he understands
9  this order and that he intends to comply with it as well.
10         So I'll let you go first, Ms. Lambert.  Do you
11 understand this order?
12         MS. LAMBERT:  I do, Your Honor, and I will comply with
13 it.
14         THE COURT:  Okay.  If there are any questions, are you
15 going to come to the Court?
16         MS. LAMBERT:  Absolutely.
17         THE COURT:  Instead of taking unilateral action?
18         MS. LAMBERT:  Correct.
19         THE COURT:  Okay.
20         Mr. Byrne, I just don't want you to say anything more
21 beyond whether or not you understand this order.
22         MR. BYRNE:  I do.
23         THE COURT:  And are you prepared to comply with it,
24 sir?
25         MR. BYRNE:  Yes.

1               THE COURT:  All right.  Thank you.  You may be seated.
2          Well, actually, let me ask instead of -- are you going
3    to comply with it?
4               MR. BYRNE:  Yes.
5               THE COURT:  Okay.  Thank you.
6               MR. BYRNE:  Actually, I have one question.  You asked
7    if I had a question?
8               THE COURT:  You probably want to ask your lawyer so
9    that you can ask me -- and she can ask me, if you'd like.
10   Would you like to ask her and have her ask me?
11      (Pause)
12              MS. LAMBERT:  Your Honor, if Dr. Byrne is requested by
13   Congress or the DOJ or law enforcement to cooperate with an
14   investigation, how should he proceed?
15              THE COURT:  Well, if it involves discovery material in
16   this case, follow the mechanism in the protective order for
17   bringing it to the Court's attention, and, if it's
18   confidential, you can seek to file something before this Court.
19              But I'll just be very clear, some of the actions that
20   appear to have been taken in the name of law enforcement aren't
21   entirely supported, so that's why I'm saying you need to follow
22   the strict guidelines of Judge Nichols' order and come to the
23   Court if there are any such requests.
24              MS. LAMBERT:  Thank you, Judge.
25              THE COURT:  Thank you.

1  that no later than close of business tomorrow, does that work?

2          MS. BROOK:  Absolutely.  So just the pieces of

3  evidence essentially that we addressed today?

4          THE COURT:  Yes.  And you can mark them as subsequent

5  exhibit numbers beyond the exhibit numbers in your filings so

6  that we can keep track of everything.

7          Okay.  As I mentioned, I will take this matter under

8  advisement.  Is there anything else at this time, anyone?

9          All right.  Thank you all for your argument.  I

10 appreciate you being here.  Thank you, Mr. Byrne for being

11 here.  You are all excused.

12         DEPUTY CLERK:  All rise.  Court is now adjourned.

13     (Proceedings concluded at 11:46 a.m.)

14

15                          CERTIFICATE

16    I, Sonja L. Reeves, Federal Official Court Reporter in and
   for the United States District Court of the District of
17 Columbia, do hereby certify that the foregoing transcript is a
   true and accurate transcript from the original digital record
18 in the above-entitled matter and that the transcript page
   format is in conformance with the regulations of the Judicial
19 Conference of the United States.

20    Dated this 18th day of May, 2024.

21

22                              /s/ Sonja L. Reeves
                                SONJA L. REEVES, RDR-CRR
23                              FEDERAL OFFICIAL COURT REPORTER

24

25