IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>PATRICK BYRNE,<br><br>*Defendant*. | No. 1:21-cv-02131-CJN-MAU<br><br>Judge Carl J. Nichols<br><br>Hon. Magistrate Moxila A. Upadhyaya |

**SUPPLEMENTAL BRIEF IN SUPPORT OF DOMINION'S CURRENTLY PENDING MOTION TO DISQUALIFY AND MOTION TO ENFORCE PROTECTIVE AND STATUS QUO ORDERS**

Plaintiffs US Dominion Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion") file this supplemental brief in support of their pending Emergency Motion for Protective Relief and to Disqualify Counsel (Dkt. 75) and Motion to Enforce the Protective and Status Quo Orders (Dkt. 108) because Defendant Patrick Byrne and his counsel Stefanie Lambert appear to have violated this Court's orders yet again.

Previously unknown to Dominion or this Court, a Colorado attorney named John Case, who is working with Ms. Lambert on Mr. Byrne's defense in this case, has reviewed Dominion Discovery Material.[1] Mr. Case is also currently defending Mesa County, CO clerk Tina Peters on criminal charges. In a recent public filing in that criminal case, he purported to reference and

---

[1] "Discovery Material" is defined in the Protective Order as "documents, testimony (in any form whether by affidavit, declaration, or deposition), exhibits, transcripts, written discovery requests, interrogatory responses, responses to requests for admission, responses to requests for documents, and any other information or material produced, given, or exchanged, including any information contained therein or derived therefrom." Dkt. 79 at 2; Dkt. 46 at 1 (same).

1

incorrectly characterized Dominion Discovery Material.  Mr. Case is the same attorney who subpoenaed the production of Dominion Discovery Material from Ms. Lambert, as set forth in Dominion's Motion to Enforce (Dkt. 108).  Yet neither Mr. Byrne nor Ms. Lambert notified the Court of these facts, just as neither has done anything to stop Mr. Case.

Ms. Lambert's and Mr. Byrne's seemingly collusive efforts to defy orders entered by this Court are harmful to Dominion.  They are also destructive to the integrity of the judicial process, including to Dominion's ability to litigate this case.  Based on the entirety of the record to date, as supplemented by these additional facts, Dominion asks the Court to disqualify Ms. Lambert and enter the other protective relief detailed in Dominion's proposed order on its Motion to Disqualify (Dkt. 75-24).  Dominion also asks the Court to grant Dominion's Motion to Enforce the Protective and Status Quo Orders (Dkt. 108-24).  Any lesser remedy will not suffice.

I.

This Court is familiar with the record of Ms. Lambert's and Mr. Byrne's non-compliance with the Status Quo Order and Protective Order, and Dominion incorporates that extensive record by reference.  *See* Dkt. 75, Motion to Disqualify (Mar. 15, 2024); Dkt. 82, Reply in Support of Motion to Disqualify (Mar. 22, 2024); Dkt. 102, Supplemental Declaration of Davida Brook (May 17, 2024); Dkt. 105, Response to Order of Court (May 21, 2024); Dkt. 108, Motion to Enforce (July 5, 2024).

Mr. Byrne and Ms. Lambert appear to continue to violate both orders.  Last week, Dominion learned that yet another person working with Ms. Lambert—other than those Ms. Lambert previously disclosed to this Court—accessed Dominion Discovery Material.  This happened even though at the March 18 hearing, the Court told Ms. Lambert in no uncertain terms, "I am going to order that no one have access to those documents until we can sort this issue out."

Ex. 1, March 18, 2024 Hearing Transcript ("March 18 Tr."), 54:23-24.  And at two separate hearings, the Court and counsel for Dominion sought to get a complete picture from Ms. Lambert as to who is working with her on this case and who has access to Dominion's documents.  *See, e.g.*, Ex. 1, March 18 Tr., 31:15-37:17; Ex. 2, May 16, 2024 Hearing Transcript ("May 16 Tr."), 14:8-15:21.[2]  Yet, at neither the March 18 hearing nor May 16 hearing, nor in any brief, has Ms. Lambert disclosed that she is working with Mr. Case or that he accessed Discovery Material.

On June 10, 2024, while representing Ms. Peters on criminal charges ("the Peters Criminal Case"), Mr. Case made a filing that attached a declaration admitting that he ***"reviewed" emails produced by Dominion in this case***.  In his filing, Mr. Case also ***purported to discuss the contents of Dominion's emails***.  Mr. Case made this filing in opposition to a motion to quash the subpoena to testify and produce documents his office had served on Dominion's former General Counsel Mike Frontera.

Mr. Case is the same attorney who signed the subpoena to testify and produce documents issued in the Peters Criminal Case to Ms. Lambert.  *See* Dkt. 108-4, Subpoena to Lambert.  He also signed the subpoena to testify issued in the Peters Criminal Case to Dominion's CEO John Poulos.  And as recounted in Dominion's Motion to Enforce, Mr. Poulos was served with that subpoena last month as he entered a building to be deposed in this case, and Mr. Byrne posted a video of Mr. Poulos being served to his X account.  *See* Dkt. 108, Motion to Enforce at 5-8.

---

[2] At the March 18 hearing, the Court questioned Ms. Lambert extensively about all known locations of Dominion Discovery Material.  At that time, Ms. Lambert responded that she was not aware of any location she had not previously disclosed.  Ex. 1, March 18 Tr., 36:18-23, 37:12-17 ("THE COURT: Okay.  All right.  Any other places that you think that any of this confidential information is located either between you or your counsel -- you or your client of which you're aware?  MS. LAMBERT JUNTTILA: No.  Not that I'm aware of that I can recall at this time.").

***Despite the fact that Ms. Lambert clearly knows Mr. Case, clearly knows Mr. Case accessed Dominion documents, and clearly knows about the filing in which Mr. Case (inaccurately) purported to describe what the documents show, she never told this Court about any of this.***

Mr. Case's statements in his July 10 filing are damning to Ms. Lambert, Mr. Byrne, and his legal team.  Mr. Case admits he has "already seen many of the documents relevant to Clerk Peters' defense that were produced by Dominion Voting Systems Inc. in case number 1:21-cv-02131 (CJN), U.S. District Court for the District of Columbia, captioned *U.S. Dominion Inc., et al v. Byrne*." Ex. 3, Response to Motion to Quash Subpoena, *People of the State of Colorado v. Tina Peters*, Case No. 22CR371 (July 10, 2024) ("Response to MTQ") at ¶ 2.

Then, in an accompanying declaration, he admits he is "assisting Stefanie Lambert in her defense of Patrick Byrne" in this case, has signed the Protective Order's Undertaking, and has "reviewed emails produced by Dominion in 1:21-cv-02131." Ex. 4, Declaration of John Case in Support of Response to Motion to Quash ("Decl. of John Case") at ¶ 3.

He then falsely asserts that the documents somehow "corroborated" long-debunked conspiracy theories, *inter alia*, that Dominion's voting systems "are capable of manipulating ballots and vote tabulations, which violates federal and state law," and "show, in [his] opinion, that Dominion was aware it was violating election laws." Ex. 4, Decl. of John Case at ¶ 2.

On July 11, 2024, as soon as Dominion's team learned of Mr. Case's filing, Dominion's counsel emailed Ms. Lambert seeking additional information:

4

> Please answer each of these questions in line, below. If you need to consult with Mr. Case, we trust you will do so as apparently you are working together.
>
> 1. Who is Mr. Case?
> 2. How long has he been "assisting" you in the Dominion v. Byrne case?
> 3. Provide his signed undertaking.
> 4. What Dominion documents has he accessed?
> 5. When did he access them?
> 6. Via what means? (Document vendor, a download of files, something else?)
> 7. Is there anyone else assisting you in the Dominion v. Byrne case?
> 8. If yes, please disclose them and answer questions 3-6 on their behalf as well.
> 9. We need answers to these questions, in writing, before close of business today.

Ex. 5, July 11, 2024 Email from Davida Brook to Stefanie Lambert ("July 11 Brook Email").

When she replied, Ms. Lambert tellingly did not profess to be unaware of Mr. Case's access to Discovery Material, but instead simply refused to provide any of the information Dominion requested:

> From: AttorneyLambert (via Dominion list)
> To: Davida Brook
> Cc: Dominion SG Simplelist; OANService; Chris Kachouroff; Marc Eisenstein
> Subject: Re: Dominion/Byrne - Please review / respond by cob today
> Date: Thursday, July 11, 2024 2:04:13 PM
> Attachments: image001.png
>
> **EXTERNAL Email**
> Dear Ms. Brooks,
>
> Thank you for your email. I am unable to provide information protected by privilege/work product.
>
> Mr. Poulos testified at his deposition ▮▮▮▮▮▮▮▮▮▮
>
> Please advise if your client is willing to remove the confidential/attorney eyes only label from any of the documents provided by Dominion in the course of discovery.
>
> Thank you,
>
> Stefanie
>
> Sent from Proton Mail for iOS

*Id.*

Already, the Colorado court has rejected the merits of Mr. Case's opposition to the motion to quash the subpoena to Mr. Frontera. On July 12, the Colorado court granted the motion to quash and noted, "I do not find the requested materials are evidentiary or relevant." Ex. 6, Order Re: Motion to Quash SDT (filed July 12, 2024) ("Order on MTQ") at 4. The Court identified as a

5

"reoccurring theme" Mr. Case's use of the criminal proceeding to argue conspiracy theories against Dominion:

> The issue herein seems to be a reoccurring theme: Defendant wanting to make the case about the security of voting machines, purported collusion between Dominion and government authorities, and the like. This Court has yet to see an evidentiary basis for the admission of this type of evidence. And as I have said before, it appears the only basis for the admission of such evidence is not to show that Defendant didn't do what she is charged with, but rather to make the focus of the trial something separate from what the jury will be charged with deciding. This makes the information sought irrelevant, misleading, and likely to confuse the issues.
>
> Accordingly, the motion to quash is **GRANTED**.

Ex. 6, Order on MTQ at 5-6. But the Colorado court's order quashing the subpoena to Mr. Frontera will not stop ***Ms. Lambert*** from ***voluntarily*** complying with the subpoena to produce documents and testify that Mr. Case served on her for Dominion Discovery Material. That possibility is the primary focus of Dominion's pending Motion to Enforce. *See* Dkt. 108, Motion to Enforce.

Dominion's concerns are well founded. The public's response to Mr. Case's mischaracterization of Dominion Discovery Material in his filing was quick. For example, one popular X account posted Mr. Case's declaration online, noting it was obtained by Yehuda Miller:



Ex. 7, MJTruthUltra, https://twitter.com/MJTruthUltra/status/1811755146633675036.

The post has over 400k views.  Individuals quickly responded to the MJTruthUltra posting with comments such as "Hang them all for treason JMO…" and other anti-Dominion sentiment:



Ex. 7, MJTruthUltra, https://twitter.com/MJTruthUltra/status/1811755146633675036.

Nor did the events of last week end with those postings.  At 2:06pm CT Friday, July 12, Dominion's counsel received an email from Ms. Lambert stating that she had "received a request for the transcript of Mr. Poulos testimony at deposition" from a "Michigan State Representative." Ex. 8, July 12, 2024 Email from Stefanie Lambert to Davida Brook ("July 12 Lambert Email"). Within ten minutes, Dominion's counsel Jonathan Ross responded, stating, "We object to your sharing any Discovery Material in this litigation with anyone, as both the protective order and the Court's other orders prohibit.  That includes Mr[.] Poulos's deposition transcript and video and any other transcripts/videos." Ex. 9, July 12, 2024 Email from Jonathan Ross to Stefanie Lambert ("July 12 Ross Email") at 2-3.  Hearing nothing, Mr. Ross followed up again at 3:41pm CT: "Please confirm you will not share." *Id.* at 2.

Ms. Lambert replied, incorrectly, that this was "not a person requesting the transcript in his individual capacity. This is a request by the government. The Michigan legislature." *Id.* at 2. As explained below, that was untrue. Regardless, Dominion's counsel asked again that Ms. Lambert confirm she would abide by the Protective Order. Ms. Lambert's next response was a demand that Dominion "advise by close of business if Dominion intends to review the transcript and de-designate it as confidential pursuant to the protective order." *Id.* at 1. Mr. Ross's answer again reminded Ms. Lambert of the Court's orders that prohibit her from sharing Discovery Material regardless of whether designated "confidential"; designated the transcript as confidential to avoid any confusion; and, for a third time, requested Ms. Lambert's confirmation that she would "not disseminate it." *Id.* Ms. Lambert did not respond.

Of course, Ms. Lambert's statement that the Michigan legislature requested Mr. Poulos's deposition transcript is false. The request came from Michigan State Representative James DeSana. Ex. 8, July 12 Lambert Email. The difference is important. Mr. DeSana does not say he is making a request for the Michigan legislature. He claims to need the transcript for his proposed "criminal complaint against John Poulos." And in fact, Mr. DeSana and a few other current and former state legislators already asked that a criminal complaint be brought against Mr. Poulos and, nearly three months ago, the Michigan Attorney General declined their request. Ex. 10, *Press Release: AG Nessel Rejects Call from Conspiracist Legislators for Renewed 2020 Election Investigation*, Apr. 25, 2024, https://www.michigan.gov/ag/news/press-releases/2024/04/25/ag-nessel-rejects-call-from-conspiracist-legislators-for-renewed-2020-election-investigation.

Regardless, Ms. Lambert full well knows that a request by the government does not vitiate this Court's orders, including because she asked about precisely this scenario at the May 16 hearing, and the Court made clear that she must "follow the mechanism in the protective order":

8

> MS. LAMBERT: Your Honor, if Dr. Byrne is requested by Congress or the DOJ or law enforcement to cooperate with an investigation, how should he proceed?
>
> THE COURT: ***Well, if it involves discovery material in this case, follow the mechanism in the protective order for bringing it to the Court's attention, and, if it's confidential, you can seek to file something before this Court.***
>
> But I'll just be very clear, some of the actions that appear to have been taken in the name of law enforcement aren't entirely supported, so that's why I'm saying you need to follow the strict guidelines of Judge Nichols' order and come to the Court if there are any such requests.
>
> MS. LAMBERT: Thank you, Judge.

Ex. 2, May 16 Tr., 62:12-24 (emphasis added).

Lest there be doubt, this Court confirmed the same in its July 12, 2024 Minute Order:

> MINUTE ORDER: As the Court has repeatedly ordered, Counsel and Parties are expressly prohibited from sharing any discovery materials subject to the Protective Order, ECF No. [79], outside of this case unless expressly authorized by this Court or in the relevant orders. ***To avoid any doubt, Defendant and Defendant's Counsel are expressly prohibited from sharing with any third party the deposition transcript or testimony that is the subject of the Parties' emails to the Court today pending briefing and further order of the Court.*** There are no exceptions. Violation of this Order may subject the party or counsel to the full range of available sanctions, including potential sanctions for contempt of court. SO ORDERED. Signed by Magistrate Judge Moxila A. Upadhyaya on 07/12/2024

July 12, 2024 Minute Order, *U.S. Dominion Inc. v. Patrick Byrne*, 1:21-cv-02131-CJN-MAU (emphasis added).

## II.

These events indicate at least four apparent violations by Mr. Byrne and his counsel of the letter and spirit of the Court's orders, for which they must be held to account:

1. **<u>Status Quo Order, Paragraph 6</u>**: None of Mr. Byrne's attorneys or Mr. Byrne notified the Court that Mr. Case accessed Dominion documents, which means they failed for an unknown period of time to abide by the Status Quo Order's requirement at Paragraph 6 that

Mr. Byrne and his counsel "immediately notify the Court" of any "Dominion Litigation Documents, *existing in any form whatsoever*" that were "not already accounted to the Court on March 18, 202[4]" discovered to be in the possession any "associate" or "affiliate" of Ms. Lambert. Dkt. 77, Status Quo Order at ¶ 6 (emphasis added). The language of the Court's order would include Mr. Case, who is supposedly "assisting" Ms. Lambert "in her defense of Patrick Byrne." Ex. 4, Decl. of John Case at ¶ 3.

2. **Status Quo and Protective Orders, Paragraph 1**: Despite admitting that he has signed the Protective Order's Undertaking as part of his assistance to Ms. Lambert with Mr. Byrne's representation, Mr. Case is purporting to use information about Discovery Material in a public filing outside this litigation. Ex. 3, Response to MTQ at ¶ 2; Ex. 4, Decl. of John Case at ¶ 2. Not only does his false assertion of what that Discovery Material "shows" violate the spirit of Paragraph 1 of the Status Quo Order, it also reflects a concerted effort by Mr. Byrne's legal team to defy Paragraph 1 of the governing Protective Order. That provision states that "no Receiving Party will provide Discovery Material to any person or entity (including for any other litigation) or make any Discovery Material public except as permitted by this Order and in this Litigation." Dkt. 79, Protective Order at ¶ 1.

3. **Protective Order, Paragraph 27**: Further, contrary to Paragraph 27 of the Protective Order, Ms. Lambert has not taken "reasonable efforts to prevent disclosure" by "each unauthorized person who receives the information." Dkt. 79, Protective Order at ¶ 27. Having obtained access to leaked Discovery Material, Mr. Case then publicly stated that at trial in the Peters Criminal Case he "intend[s] to offer as exhibits emails authored by Dominion officers . . . ." He "understand[s] that these emails were produced by Dominion and its counsel in U.S. Dominion Inc. et al v. Byrne." Ex. 4, Decl. of John Case at ¶ 13. Ms. Lambert and Mr. Byrne have not raised

any objection—in the criminal proceeding or to this Court—to Mr. Case doing so. They had a duty to do so under Paragraph 27 of the Protective Order, just as they had a duty under Paragraph 26 of the Protective Order to object to the subpoena Ms. Lambert received from Mr. Case, as detailed in Dominion's Motion to Enforce. *See* Dkt. 108, Motion to Enforce.

4. **Status Quo Order, Paragraph 1**: Finally, it appears Ms. Lambert may have understated to the Court at the March 18 hearing the universe of those who had access to Dominion Discovery Material. Alternatively, it is possible Mr. Case later accessed leaked documents, possibly under the guise of "assisting" Ms. Lambert for Mr. Byrne. We do not know which is the case because Ms. Lambert has not informed the Court or Dominion about the facts of Mr. Case's access and instead has (improperly) claimed "privilege / work product" over that information. Ex. 5, July 11 Brook Email. By whatever means Mr. Case accessed the documents, Ms. Lambert violated the spirit of Paragraph 1 of the Status Quo Order because she is allowing a member of Mr. Byrne's legal team to "shar[e], distribut[e], provid[e] access to or discuss[] any Discovery Material received in connection with" this case. Dkt. 77, Status Quo Order at ¶1.

Simply put, Ms. Lambert and Mr. Byrne both confirmed to this Court that they understood and would comply with the Court's orders. *See* Ex. 1, March 18 Tr., 44:6-46:12 (Ms. Lambert promising the Court she will "come directly to the Court" instead of violating the Protective Order); Ex. 2, May 16 Tr., 61:5-62:4 (Ms. Lambert and Mr. Byrne re-confirming they understood the Status Quo Order and would comply); *see also* Dkt. 84, Verifications. Yet not once over the past four months has Ms. Lambert informed the Court about Mr. Case or updated any of her prior statements. She has had ample opportunity to do so—including in hearings and as part of her various written submissions. Instead, it appears that she and Mr. Byrne have found brazen new ways to try to defy the Court's orders.

11

III.

Dominion respectfully asks that this Court disqualify Ms. Lambert, grant the other protective relief Dominion has sought in its Motion to Disqualify, and enforce compliance with the Protective and Status Quo Orders.

It is appropriate that a litigant's choice of counsel may be overridden in just these circumstances where "the client's selection . . . impede[s] or disrupt[s] the orderly administration of justice." *Douglas v. United States*, 488 A.2d 121, 143 (D.C. Ct. of App. 1985) (quoting *Harling v. United States*, 387 A.2d 1101, 1104 (D.C. Ct. of App. 1978)). The history of the case demonstrates that "truly egregious misconduct [is] likely to infect future proceedings." *Koller v. Richardson-Merrell, Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984), *vacated on other grounds*, 472 U.S. 424 (1985); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (a "primary aspect" of a court's inherent power "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process"). Significantly, this Court already warned Ms. Lambert that evidence of violations of the Status Quo Order would be taken into account in support of Dominion's Motion to Disqualify: "I want to make it very clear that ***going forward if I see any evidence that violates this order, I'm going to take that into account in my final resolution.***" Ex. 2, May 16 Tr., 60:24-61:2 (emphasis added).

Here, Mr. Byrne and Ms. Lambert's violations and attempts to circumvent the Court's orders have been a danger and a distraction. And they have further confirmed exactly what Dominion feared and predicted in the May 16 hearing on the pending Motion to Disqualify Ms. Lambert:

> Counsel for Dominion: Your Honor, I'll be blunt. My concern is this: If she's not removed from this case, all that will have happened is they will have gotten smarter about how to do this leak in the future.

12

Ex. 2, May 16 Tr., 24:21-24.

A lesser remedy will not suffice. *See In re BellSouth*, 334 F.3d 941, 963 (11th Cir. 2003) (upholding the disqualification of defendant's counsel after finding that the lawyer, a close relative of the judge, had been brought on for the sole purpose of forcing the judge's recusal).

The other relief Dominion has sought in its Motion to Disqualify is also vitally important as Dominion needs to understand the extent of Mr. Byrne's and Ms. Lambert's misdeeds, which is a gating issue to containing them. For example, we now know that at least Mr. Byrne, Ms. Lambert, and Mr. Case appear to have colluded with the wrongful purpose of disseminating Dominion Discovery Material. Their actions reinforce the need not only for disqualification but also for all the protective relief Dominion sought in its Proposed Order on its Motion to Disqualify (Dkt. 75-24), including a full accounting, in the form of sworn affidavits from Mr. Byrne and Ms. Lambert, that provide:

- The date of any fee agreement between Lambert and Byrne and the scope of representation or, if no such agreement exists, the date on which Lambert and Byrne understand that a lawyer/client relationship;

- A complete and accurate list of all Dominion-produced documents and information Byrne reviewed and the method and date of access;

- An accounting from Byrne's outside vendor showing what documents Byrne and or Lambert accessed, on what date, and whether they were downloaded; as well as any other data the vendor indicates may be helpful to Dominion's or this Court's efforts to understand the breach;

- A complete and accurate list of all Dominion-produced documents and information Lambert received and the method and date of access;

- An account of every step Lambert, Byrne's prior counsel from the McGlinchey firm, has already undertaken or that is underway to determine the scope of the breach and to ensure it is not continuing; and

- An accounting attesting (i) to whom Lambert and/or Byrne leaked, released, or otherwise disclosed documents or information protected by the Protective Order (including in court filings in any cases outside of this case); (ii) how and when they

13

provided it; (iii) every occasion on which they did so; and (iv) for each such instance, what specifically was leaked, released, or otherwise disclosed.

Dkt. 75-24, Proposed Order on Motion to Disqualify.

Finally, enforcement of this Court's Status Quo Order and Protective Order is necessary and appropriate to stop Ms. Lambert and Mr. Byrne from continuing to find new ways to try to disseminate Dominion Discovery Material and to protect the integrity of the judicial process.

IV.

Dominion respectfully and urgently requests that this Court enter an order (1) disqualifying Ms. Lambert and granting the protective relief sought in Dominion's Motion to Disqualify (Dkt. 75-24), (2) enforcing the Court's Status Quo Order and Protective Order (Dkt. 108-24), and (3) granting supplemental relief to account for the new factual developments in this filing.

Dated: July 23, 2024

Respectfully submitted,

By: */s/ Davida Brook*
Laranda Walker (D.C. Bar No. TX0028)
Mary K. Sammons (D.C. Bar No. TX0030)
Jonathan Ross (D.C. Bar No. TX0027)
Elizabeth Hadaway (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
jross@susmangodfrey.com
ehadaway@susmangodfrey.com

Stephen Shackelford, Jr. (D.C. Bar No. NY0443)
Eve Levin (D.C. Bar No. 1672808)
Mark Hatch-Miller (*Admitted pro hac vice*)
Christina Dieckmann (*Admitted pro hac vice)*
**SUSMAN GODFREY L.L.P.**

One Manhattan West, 50th Floor
New York, NY 10001
Tel: (212) 336-8330
sshackelford@susmangodfrey.com
elevin@susmangodfrey.com
mhatch-miller@susmangodfrey.com
cdieckmann@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
dbrook@susmangodfrey.com

Edgar Sargent (*Admitted pro hac vice*)
Katherine Peaslee (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com
kpeaslee@susmangodfrey.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of July 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/ Davida Brook*
