# Exhibit 4

# DECLARATION OF JOHN CASE

JOHN CASE declares under penalty of perjury that the following is true and correct.

1. My full name is John McLean Case. I am a practicing attorney licensed in Colorado more than 50 years. I am admitted to all Colorado Courts, U.S. District Court for the District of Colorado, U.S. Court of Appeals for the 10th Circuit, and U. S. Supreme Court. I have represented the former clerks and recorders of Elbert County and Mesa County, as well as county commissioners and voters from other counties, in civil litigation challenging voting systems sold in Colorado by Dominion Voting Systems, Inc. I currently represent former Mesa County Clerk and Recorder Tina Peters in 22CR371, District Court of Mesa County, the criminal case scheduled for jury trial July 30, 2024. I also represent Clerk Peters as plaintiff-appellant in civil litigation, case numbers 1:23-cv-03014-NNYW, U. S. District Court for the District of Colorado, and 24-1013 U.S. Court of Appeals for the 10th Circuit.

2. I have spoken with and read reports of nationally recognized computer cybersecurity experts who examined forensic images from the hard drives of Dominion voting systems computers. Those experts, including J. Alex Halderman, Walter C. Daugherity, and Clay Parikh, have independently concluded, based on their own scientific research, that Dominion voting systems (1) are not auditable, as required by federal and state law (2) they can connect to the internet during elections, which violates federal and state law; and (3) they are capable of manipulating ballots and vote

1

tabulations, which violates federal and state law; (4) the software overwrites Windows Operating System log files that are recorded during elections, which are required by federal and state law to be preserved.  All these deficiencies make Dominion voting systems illegal to use in Colorado elections.  The independent expert findings are corroborated by Dominion emails I reviewed in 1:21-cv-02131, which show, in my opinion, that Dominion was aware it was violating election laws.

3.   I am assisting Stefanie Lambert in her defense of Patrick Byrne in 1:21-cv-02131.  I signed Exhibit A to Protective Order, the "Undertaking" in which I agreed to "access and use Discovery Material, Confidential Material, and Attorneys Eyes Only Material only as the [Protective] Order permits."  I reviewed emails produced by Dominion in 1:21-cv-02131.  The emails appear to be mis-labeled "Confidential," because their contents do not meet the definition of "Confidential Material" in paragraph 2 of the Protective Order 6/16/23.

4.   Paragraph 2 of the Protective Order defines "Confidential Discovery Material" as follows:

> Confidential Discovery Material is defined as material that consists of non-public customer information or information that is proprietary or otherwise commercially sensitive.

The emails that are essential to Clerk Peters' defense do not meet the definition of "Confidential Discovery Material."  They are <u>not</u> non-public customer information, because they contain no customer information.  They are <u>not</u> proprietary, because they

2

contain no trade-secret or software information.  They are <u>not</u> commercially sensitive, because they do not relate to sales or commercial activity.  Therefore, they were mislabeled by Dominion and/or its counsel and should be open to public view.

5. Even if the emails meet the definition of Confidential Discovery Material, which they do not, the jury in Mesa County should be allowed to see them under appropriate instructions from the trial court, because they are essential to Clerk Peters' defense in a criminal case in which at least one Dominion employee has been listed as a "will call" witness by the prosecution, and she faces possible incarceration if convicted.

6. I have not disclosed the Dominion emails to my client Tina Peters, or to anyone else.  I believe that I have an ethical obligation to disclose the emails to my client, and to present them as evidence in 22CR371, because the Dominion emails contain exculpatory material that is vital to Clerk Peters' defense.

7. Starting in December 2020, Mesa County voters, including County Commissioner Cody Davis, asked Clerk Peters to conduct audits of the November 2020 election results in Mesa County, and the April 2021 municipal election in Grand Junction.  Constituents claimed the results tabulated on Dominion machines were improbable.

8. 52 U.S.C §20701 requires all officers of election, including Clerk Peters, to preserve election records for 22 months after any federal election.  There is a criminal penalty for violating this statute.  Department of Justice publication 7/28/21 titled

"Federal Law Constraints on Post-Election Audits" states in pertinent part: "Jurisdictions must therefore also retain and preserve records created in digital or electronic form."

9. The charges against Clerk Peters in 22CR371 arise out of a forensic image of the Mesa County election management server hard drive that was made on May 23, 2021. Colorado Deputy Secretary of State, Chris Beall, has admitted in sworn testimony that no statute or rule prohibited imaging the server at the time that the image was made.

10. Clerk Peters engaged a qualified cybersecurity consultant to make a forensic image of the server before the Trusted Build, then observe the Trusted Build, and make a second forensic image of the server after the Trusted Build. This was necessary to perform her public duty, under statutes and the U.S. and Colorado Constitutions, to preserve digital election records, and to investigate what Secretary of State personnel did to the Mesa County voting computers during the Trusted Build.

11. Imaging the server before the Trusted Build preserved all digital data still available on the hard drive that had been generated during the November 2020 election and the April 2021 Grand Junction municipal election. I say *still available on the server* because Dominion's recommended settings for its software causes Windows operating system log files to be overwritten during election ballot processing, which violates election record preservation laws. Comparison of the forensic image made before the

Trusted Build to the forensic image made after the Trusted Build showed that the Trusted Build erased over 29,000 digital election files, which is an election crime. This comparison confirmed the observations of the cybersecurity consultant that Secretary of State personnel erased digital election records during the Trusted Build, which again is a crime.

12.   Dominion apparently demanded that the Colorado Secretary of State coordinate with federal and state law enforcement agencies including the FBI, DOJ, Colorado Attorney General, and the District Attorney of Mesa County to investigate and prosecute Clerk Peters. I believe, based on documents I have seen, that because of pressure from Dominion, law enforcement officials convened federal and state grand juries in Colorado. Clerk Peters was indicted by the Mesa County Grand Jury on March 8, 2022.

13.   One of Clerk Peters' affirmative defenses in 2022CR371 is execution of a public duty. The jury will want to hear evidence explaining why the government is prosecuting Clerk Peters if she was performing a public duty. On this issue, I intend to offer as exhibits emails authored by Dominion officers Kay Stimson, Director of Government Relations, Mike Frontera, in-house counsel, and John Poulos, Dominion CEO, as well as other Dominion employees. I understand that these emails were produced by Dominion and its counsel in *U.S. Dominion Inc. et al v. Byrne*. The emails

are exculpatory evidence that is vital to Clerk Peters' defense in the trial that begins July 30, 2024.

14. In my opinion, Dominion has a financial motive to help convict Clerk Peters, by preventing its own emails from being used in her defense at trial. If Clerk Peters' trial results in conviction, Dominion's secrets may remain buried. If a jury acquits Clerk Peters after hearing evidence in a nationally televised trial that Dominion was violating election laws, the company could lose its voting system revenue not only in Mesa County, but throughout Colorado and the nation.

15. On July 1, 2024, my office served a subpoena to testify and produce documents on Dominion's in house counsel, Michael Frontera. The documents commanded to be produced to the Court include documents that Dominion disclosed in this case, which were mislabeled "Confidential." Today, July 10, 2024, Dominion's counsel filed a motion to quash the subpoena, alleging that the subpoena was a "fishing expedition." In order to establish that the subpoena is not a "fishing expedition," and that the materials exist, I would ask respectfully that the DC Court rule quickly on whether the documents are mislabeled "Confidential."

I declare under penalty of perjury that the foregoing is true and correct.

Executed July 10, 2024.

/s/ *John Case*

John Case