**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | No. 1:21-cv-02131-CJN-MAU |
| *Plaintiffs*, | ) ) ) | Judge Carl J. Nichols |
| v. | ) ) | Hon. Magistrate Moxila A. Upadhyaya |
| PATRICK BYRNE, | ) ) | |
| *Defendant*. | ) ) | |

**OPPOSITION TO DEFENDANT PATRICK BYRNE'S OBJECTION TO
<u>MEMORANDUM OPINION AND DISQUALIFICATION ORDER</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ..............................................................................................1

II.    BACKGROUND .............................................................................................3

       A.    The parties agreed to a robust Protective Order..........................................3

       B.    March 11-15, 2024: Dominion discovers Lambert has violated the
             Protective Order and moves for emergency protective relief
             disqualifying her as counsel. ....................................................................5

       C.    March 18, 2024: Magistrate Judge Upadhyaya holds a hearing on
             Dominion's emergency motion and enters the Status Quo Order. ..........7

       D.    March 19-May 15, 2024: Lambert continues to violate the Protective
             Order and violates the Status Quo Order. ................................................8

       E.    May 16, 2024: Magistrate Judge Upadhyaya holds a hearing on
             Dominion's emergency motion...............................................................10

       F.    May 17-August 13, 2024: Lambert and Byrne continue their efforts to
             circumvent the Protective and Status Quo Orders. ................................11

       G.    August 13, 2024: Magistrate Judge Upadhyaya disqualifies Lambert. ................13

III.   STANDARD OF REVIEW ............................................................................14

IV.    ARGUMENT ................................................................................................15

       A.    Byrne fails to rebut Magistrate Judge Upadhyaya's detailed findings of
             fact establishing that Lambert violated numerous provisions of the
             Protective and Status Quo Orders and the D.C. Rules of Professional
             Conduct. .................................................................................................16

             1.    *Byrne does not contest numerous findings of fact that support
                   Lambert's disqualification.* ...........................................................16

             2.    *Lambert continues her pattern of misrepresenting the facts to the
                   Court.* ...........................................................................................20

       B.    Lambert misstates the law on disqualification and fails to provide any
             legal authority supporting Lambert's conduct. ......................................23

             1.    *Disqualification is warranted outside the context of attorney
                   conflicts.* ......................................................................................24

             2.    *Lambert cites no authority supporting her intentional breaches
                   of the Protective Order.* ................................................................24

3. *The Protective Order covers the materials Byrne and Lambert leaked.* .................................................................25

4. *There is no law enforcement or public interest exception to the Protective Order.* ..............................................27

C. Lambert continues to violate the Protective and Status Quo Orders. ...................31

D. Byrne's myriad of ancillary arguments are equally meritless. ............................31

1. *Byrne's attacks on Magistrate Judge Upadhyaya are offensive and baseless.* ..............................................31

2. *The disqualification order does not violate the attorney-client privilege.* ..................................................34

3. *Magistrate Judge Upadhyaya considered less drastic alternatives* .................................................................35

V. CONCLUSION .........................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
  821 F.2d 139 (2d Cir. 1987) ................................................................................28

*Alexander v. F.B.I. (Alexander I)*,
  186 F.R.D. 54 (D.D.C. 1998) ..............................................................................29

*Alexander v. F.B.I. (Alexander II)*,
  186 F.R.D. 99 (D.D.C. 1998) ..............................................................................28

*Bancor Grp. Inc. v. Rodriguez*,
  No. 22-CV-20201, 2023 WL 6310269 (S.D. Fla. May 18, 2023) .........................15

*Bond v. Utreras*,
  585 F.3d 1061 (7th Cir. 2009) .............................................................................28

*Comuso v. Nat'l R.R. Passenger Corp.*,
  No. CIV A 97-7891, 2000 WL 502707 (E.D. Pa. Apr. 26, 2000) .........................24

*Danzy v. IATSE Loc. 22*,
  No. 17-CV-02083-RCL, 2021 WL 5416630 (D.D.C. Nov. 19, 2021) ...................15

*Davis v. CenturyLink, Inc.*,
  No. 3:22-CV-00038, 2023 WL 2401697 (S.D. Tex. Mar. 8, 2023) .......................15

*Dunn v. Blumstein*,
  405 U.S. 330 (1972) .............................................................................................29

*Galloway v. Cnty. of Nassau*,
  589 F. Supp. 3d 271 (E.D.N.Y. 2022) ..................................................................15

*Groper v. Taff*,
  717 F.2d 1415 (D.C. Cir. 1983) ...........................................................................24

*Hammerschmidt v. United States*,
  265 U.S. 182 (1924) .............................................................................................29

*Harper v. Virginia State Bd. of Elections*,
  383 U.S. 663 (1966) .............................................................................................29

*Kessenich v. Commodity Futures Trading Comm'n*,
  684 F.2d 88 (D.C. Cir. 1982) ...............................................................................24

*Klayman v. Jud. Watch, Inc.*,
628 F. Supp. 2d 84 (D.D.C. 2009) ........................................................................15

*Koller By & Through Koller v. Richardson-Merrell Inc.*,
737 F.2d 1038 (D.C. Cir. 1984) ................................................................3, 24, 35

*Mathews v. Diaz*,
426 U.S. 67 (1976) ...............................................................................................29

*Matylewicz v. Cnty. of Lackawanna Transit Sys. Auth.*,
No. 3:19-CV-1169, 2020 WL 5095933 (M.D. Pa. Aug. 28, 2020) .......................15

*Medgyesy v. Medgyesy*,
988 F. Supp. 2d 843 (N.D. Ill. 2013) ..................................................................15

*Moore v. Ford Motor Co.*,
755 F.3d 802 (5th Cir. 2014) ...............................................................................27

*Myers v. United States*,
272 U.S. 52 (1926) ...............................................................................................30

*Mynette Techs., Inc. v. United States*,
163 Fed. Cl. 733 (2022) .......................................................................................27

*Nobrega v. Troy-Bilt, LLC*,
No. CV 22-4204 (JXN) (JBC), 2024 WL 3549045 (D.N.J. July 25, 2024) ............15

*Paul v. Jud. Watch, Inc.*,
571 F. Supp. 2d 17 (D.D.C. 2008) .......................................................................24

*People v. Tina Peters*,
Case No. 2022-CR-371 (Colo. Dist. Ct.) ........................................................11, 18

*Plyler v. Doe*,
457 U.S. 202 (1982) ..............................................................................................29

*Reynolds v. Sims*,
377 U.S. 533 (1964) ..............................................................................................29

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) ...............................................................................................28

*SEC v. TheStreet.com*,
273 F.3d 222 (2d Cir. 2001) .................................................................................28

*Skilling v. United States*,
561 U.S. 358 (2010) ..............................................................................................29

*Smith v. D.C.*,
  249 F. Supp. 3d 106 (D.D.C. 2017) ...................................................................15

*Tanner v. United States*,
  483 U.S. 107 (1987) ..........................................................................................29

*United Pub. Workers of Am. (C.I.O.) v. Mitchell*,
  330 U.S. 75 (1947) ............................................................................................30

*United States v. Caldwell*,
  989 F.2d 1056 (9th Cir. 1993) ..........................................................................29

*United States v. Classic*,
  313 U.S. 299 (1941) ..........................................................................................29

*United States v. Falcón-Nieves*,
  79 F.4th 116 (1st Cir. 2023) ..............................................................................29

*United States v. Kanchanalak*,
  41 F.Supp.2d 1 (D.D.C. 1999) ..........................................................................29

*United States v. O'Donovan*,
  683 F. Supp. 3d 78 (D. Mass. 2023) ................................................................29

*United States v. Ogbenna*,
  No. 1:21-CR-672 (TNM), 2023 WL 7384884 (D.D.C. Nov. 8, 2023) ..............29

*United States v. Sawyer*,
  85 F.3d 713 (1st Cir. 1996) ...............................................................................29

*United States v. Singh*,
  924 F3d 1030 (9th Cir. 2019) ............................................................................29

*Wilk v. Am. Med. Ass'n*,
  635 F.2d 1295 (7th Cir. 1980) ..........................................................................28

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*,
  501 F. Supp. 326 (D.D.C. 1980) .......................................................................24

*Woods v. Covington County Bank*,
  537 F.2d 804 (5th Cir. 1976) ............................................................................24

*Yablonski v. United Mine Workers of Am.*,
  448 F.2d 1175 (D.C. Cir. 1971) ........................................................................24

*Yick Wo v. Hopkins*,
  118 U.S. 356 (1886) ..........................................................................................29

**Statutes**

18 U.S.C. § 371 .................................................................................................29

18 U.S.C. § 1346 ...............................................................................................29

52 U.S.C. § 10308 .............................................................................................29

52 U.S.C. § 20511 .............................................................................................29

**Rules**

Fed. R. Civ. Pro. 5 ............................................................................................28

Fed. R. Civ. Pro. 72 ..........................................................................................15

L. Civ. R. 72.2 ..................................................................................................15

**Constitional Provisions**

U.S. Const., amends. I, IX, XIV, XV ................................................................30

## I.   INTRODUCTION

After holding two hearings, reviewing over 2,500 pages of briefs and exhibits, and providing attorney Stefanie Lambert with a period of 148 days to demonstrate that she could in fact abide by this Court's rules and orders, Magistrate Judge Upadhyaya issued a 61-page Memorandum Opinion disqualifying Lambert as counsel to Defendant Patrick Byrne.   While acknowledging that "disqualification is a rare sanction" reserved for "truly egregious" misconduct, Dkt. No. 126 ("Mem. Op.") at 51, the Court found that "the record clearly shows that Lambert deliberately violated multiple court rules and orders and continues to do so despite having had ample warning of the consequences and assuring the Court she would comply," *id.* at 3.   The Court likewise found that "Lambert's repeated misconduct raises the serious concern that she became involved in this litigation for the sheer purpose of gaining access to and publicly sharing Dominion's protected discovery."   *Id.*   And that "[b]ecause Lambert's 'truly egregious misconduct' has already and will undoubtedly continue to 'infect future proceedings,' this is the rare case in which disqualification is warranted."   *Id.* (quoting *Koller By & Through Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984), *vacated on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985)).

By his Objection, Byrne does not state the standard for overturning that order—"clearly erroneous or is contrary to law"—let alone come anywhere close to meeting it.   To the contrary, Byrne's brief, prepared and signed by Lambert, further confirms that Lambert "clearly views compliance with Court Orders with which she does not agree as optional, which is incompatible with our judicial system."   Mem. Op. at 54.   And that "[a]llowing Lambert to continue as Byrne's counsel when she has already demonstrated a willingness, if not determination, to do whatever it takes to advance her theories infects this proceeding and jeopardizes this Court's ability to depend on counsel and parties adhering to their rules, obligations, and the law."   *Id.*

To take it in pieces, by his Objection:

(1)   Byrne does not contest that Lambert intentionally, and with his blessing, leaked all of Dominion's documents produced in this case to persons not authorized to receive them under this Court's Protective Order.   (Nor do Byrne or Lambert show any remorse for having done so.) In Dominion's view, this fact alone would be enough to end the inquiry.  But it does not.  Following their massive leak, Magistrate Judge Upadhyaya gave Lambert and her client not one but multiple opportunities to demonstrate they could abide by this Court's rules and orders on a going forward basis.  Though Byrne's Objection attempts to explain how Lambert did that, the excuses are belied by easily verifiable facts.

(2)   Byrne misstates the law on disqualification and continues to offer zero legal authority supporting the decision to intentionally breach the governing Protective and Status Quo Orders.  While this should be fatal to Byrne's Objection, it is of no surprise—as no such authority exists.  To the contrary, the unrebutted caselaw supports that this is one of those rare cases where, even absent the showing of a conflict of interest, disqualification is warranted.

(3)   Byrne—through Lambert who authored and signed his brief—continues to violate this Court's orders.  Most notably, at several different points in the brief, they discuss the leaked discovery materials, in plain contravention of the Protective and Status Quo Orders.  *See* Dkt. No. 134 ("Objection") at 23, 29, 33, 37, 38–40.

Rather than answer to the facts or provide relevant caselaw, Byrne's brief doubles down on the same meritless arguments considered and rejected by the Magistrate Judge, including that: (i) the Protective Order does not prohibit the disclosure at issue (wrong); (ii) there is a general exception to violating any court order when in possession of documents showing criminal conduct (wrong *and* based on a fiction); and (iii) Byrne has a right to select the counsel of his choosing

(wrong when he chose Lambert because of her willingness to violate court orders). Otherwise, Byrne/Lambert adds a myriad of ancillary arguments implying that they were not given the opportunity to fully respond to Dominion's arguments (belied by the record), and/or that the Magistrate Judge timed her decision to maximally harm Byrne (need we say it—false).

Dominion fully acknowledges that disqualification is rarely warranted and should be granted (absent a conflict of interest) only "in cases of truly egregious misconduct likely to infect future proceedings." *Koller*, 737 F.2d at 1056. But that is exactly the circumstance presented to the Court.

Indeed, the Court has before it an attorney who—despite multiple opportunities—has shown time and again that she lacks respect for the law and this Court's orders, who appears to have entered this case for the express purpose of violating this Court's orders, and who will continue to violate this Court's orders if she is permitted to remain counsel. On this record, there can be no question that the Magistrate Judge's Order is anything but clearly erroneous or contrary to law and should be upheld.

## II.     BACKGROUND

### A.     The parties agreed to a robust Protective Order.

Given the national security concerns regarding voting machine information and the personal security concerns for Dominion employees—many of whom have been the subject of vicious threats following the defamation campaign at issue in this suit—Dominion negotiated, and the Court entered, a strict Protective Order in this case.[1] Specifically, that order provides that, with certain enumerated exceptions, discovery material produced in the litigation (whether stamped confidential or not) will be used "solely for purposes of this Litigation and no Receiving Party will

---

[1] The Court initially entered the Protective Order on December 6, 2022, in three related cases. Dkt. No. 152 in Case No. 21-cv-445 (applying to Case Nos. 21-cv-445; 21-cv-213; and 21-cv-40).

provide Discovery Material to any person or entity (including for any other litigation) or make any Discovery Material public except as permitted by this Order and in this Litigation."  Dkt. No. 79 at ¶ 1.  Notably, Byrne never raised any objection to this or any other provision in the Protective Order.  To the contrary, on June 8, 2023, Dominion and Byrne jointly moved the Court to enter the Protective Order in this case, with Byrne expressly agreeing to abide by it.  Dkt. No. 45.

In addition to the language quoted above, relevant here, the Protective Order further provides:

- Under no circumstances can a party unilaterally publicly file materials that have been marked "Confidential" by the producing party.  *See id*. at ¶¶ 12–15, 27.  The parties reserve the right to apply "for an order seeking additional safeguards with respect to the use and handling of Discovery Material or to modify the terms of this Order."  *Id.* at ¶ 17.

- "If any person in possession of Confidential or Attorneys' Eyes Only Discovery Material receives a subpoena or other compulsory process seeking the production or other disclosure of Confidential or Attorneys' Eyes Only Material the person neither produced nor designated, the person will give written notice . . . and must object to the production of the Confidential or Attorneys' Eyes Only Discovery Material on the grounds of the existence of this Order."  *Id.* at ¶ 26.

- In the event confidential material "is disclosed to any person other than in the manner authorized by this Order," or that any party's counsel (or other non-party) learns "there was or is likely to be" a breach, the responsible counsel "will immediately inform the Designating and Producing Party of all pertinent facts relating to the disclosure or loss of confidentiality, including, if known, the name, address, and employer of each person

to whom the disclosure was made." *Id.* at ¶ 27.  The counsel "responsible for the disclosure or loss of confidentiality will also make reasonable efforts to prevent disclosure of Confidential or Attorneys' Eyes Only Discovery Material by each unauthorized person who receives the information." *Id.*

Finally, unlike a typical protective order, this one explicitly provides for the availability of sanctions in the event of a violation, stating:

> If a Party violates this Order by releasing, leaking, or otherwise disclosing Confidential or Attorneys' Eyes Only Discovery Material to persons or entities not entitled to such Discovery Material under this Order, the Court will have authority to impose sanctions under Rule 37(b)(2)(A)(i)-(vi).

*Id.* at ¶ 29.  The Court likewise retains jurisdiction over all persons subject to the Protective Order to enforce any obligations arising under it or to impose sanctions for violations.  *Id.* at ¶ 30.

**B.**   **March 11-15, 2024: Dominion discovers Lambert has violated the Protective Order and moves for emergency protective relief disqualifying her as counsel.**

Prior to March of 2024, Dominion freely produced many millions of pages of documents to the Defendants across these consolidated cases.  To the best of Dominion's knowledge, all Defendants and their counsel, which included Byrne's prior counsel at McGlinchey Stafford PLLC, had the opportunity to review these files and yet were fully capable of adhering to the governing Protective Order.  All this changed when, on March 11, 2024, shortly before close of business, then-counsel of record for Byrne, Robert Driscoll, notified Dominion via email that "Confidential Discovery Material produced by Dominion in this case has been disclosed in a public filing in Michigan by Stefanie Lambert."  Dkt. No. 75-8, Ex. 7.  Driscoll explained that Lambert— who at the time had never appeared in this or any of the other consolidated cases—had access to this material "as an attorney for Patrick Byrne who was assisting in this litigation." *Id.*  Lambert had signed the Protective Order governing this case, and Driscoll's email attached her signed undertaking of the order.  *See* Dkt. No. 75-9, Ex. 8.  Driscoll further stated that Lambert shared:

> Dominion's Confidential Discovery Material appears to have been shared with a non-party (i.e., Sheriff Dar Leaf of Barry County, Michigan) by Stefanie Lambert and publicly disclosed by her as part of a filing she made in the criminal case styled *People of the State of Michigan vs. Stefanie Lynn Lambert* Junttila, which is currently pending before the Sixth Circuit Court in Oakland County, Michigan as Case Number 2023-285759-FH. A

Dkt. No. 75-8, Ex. 7.

Counsel for Dominion responded to Driscoll that same day, requesting full information regarding the extent of the breach and seeking assurance that Lambert no longer had access to Dominion's confidential discovery material. Ex. 10. Prior to answering all of Dominion's questions, the following day—Tuesday, March 12, 2024—Driscoll and the other attorneys from his firm withdrew from the case. *See* Dkt. No. 72.

Also on March 12, 2024, Dominion's counsel emailed both Lambert and Byrne's withdrawn attorneys requesting a list of all persons they or their client had given access to Dominion's documents produced in this litigation (other than what Byrne's withdrawn counsel had already disclosed the day before). Dkt. No. 75-12, Ex. 11. Nobody would provide (and still has not provided) the requested information. Instead, Lambert responded by accusing Dominion's counsel of aiding nonexistent "criminal activity." Dkt. No. 75-3, Ex. 2. She also stated that the Protective Order "does not extend to criminal acts committed by your client," and that "[m]y client insisted the evidence of criminal acts be provided to law enforcement." *Id.*

Lambert's leak had immediate consequences. Predictably, after Sheriff Dar Leaf gained access to Dominion's discovery materials, Sheriff Dar Leaf created an X account and shared links so that the public could download the documents. Dkt. No. 82 at 6–7. As a result, thousands of social media users have viewed Dominion's confidential information.

Worse, by March 15, 2024, some social media users who had viewed Dominion's leaked discovery materials began threatening Dominion employees:



Dkt. Nos. 75-2, Ex. 1 (redacted).  This was not the first time Dominion and its employees faced

online harassment or physical threats.  From social media calls to lynch Dominion personnel, to

an armed man scoping Dominion's offices,[2] Dominion's employees have directly suffered the

consequences of the lies spread by Byrne and his fellow defendants.  They now fear further threats

due to conduct of his counsel done at his direction.

On March 15, 2024, Dominion moved for emergency protective relief disqualifying

Lambert as counsel.  Dkt. No. 75.

**C.**     **March 18, 2024: Magistrate Judge Upadhyaya holds a hearing on Dominion's emergency motion and enters the Status Quo Order.**

On March 18, 2024, three days after Dominion moved to disqualify Lambert, Magistrate

Judge Upadhyaya held an in-person hearing attended by, among others, counsel for Dominion,

Lambert, and Byrne's prior counsel from the McGlinchey firm.  *See* Minute Entry, March 18,

2024.  During the March 18 hearing, Lambert "did not dispute that she: 1) signed an Undertaking

verifying that she would comply with the Protective Order; 2) gained access to Dominion's

Litigation Documents; and 3) disseminated those documents in the manner Dominion alleged."

Mem. Op. at 12.  Along with other questions discussed below, Magistrate Judge Upadhyaya asked

---

[2]     *See*     https://www.9news.com/article/news/politics/elections/judge-grants-restraining-order-dominion-ceo-after-threats/73-0936af88-365c-4c2c-b8b9-9e65f391ea38.

Lambert for her "best authority for th[e] proposition" she could unilaterally leak Dominion's discovery materials without first seeking guidance from the Court because she thought there was evidence of a crime.  Dkt. No. 78, March 18, 2024, Hearing Tr. at 18:17–18.  Lambert had "no authority to cite to the Court," arguing that "it's essentially asking me to find authority that water is wet."  *Id.* at 30:3–5.  Magistrate Judge Upadhyaya informed Lambert that the Court must "at least try to stop any further dissemination by you or your client while this issue is taken up and while we hear further argument."  *Id.* at 31:11–14.

The following day, on March 19, 2024, Magistrate Judge Upadhyaya entered the Status Quo Order, which ordered (among other things): (i) Byrne and Lambert must desist from publicly sharing or discussing Dominion's discovery materials; (ii) Lambert must confer with counsel in her Michigan criminal case and undertake every reasonable effort to remove Dominion's discovery materials from the public record; (iii) Lambert and Byrne must preserve all documents and communications relating to Dominion's motion to disqualify; (iv) Lambert must "immediately notify the Court" of any discovery documents in the possession of any other "associate or affiliate of Ms. Lambert or Mr. Byrne" who were not "already accounted to the Court" during the March 18 hearing; and (v) No later than 5:00 p.m. EST March 21, 2024, Lambert and Byrne must file verifications that they have and will comply with their obligations under the Status Quo Order. Dkt. No. 77 at ¶¶ 1, 3, 6–8.

**D.      March 19-May 15, 2024: Lambert continues to violate the Protective Order and violates the Status Quo Order.**

Despite the March 18 hearing and Status Quo Order, the very next day, Lambert gave statements to ABC News describing Dominion's discovery materials:  "There was no leak of data. I provided evidence of criminal acts to law enforcement.  The Dominion file contained evidence of perjury by John Poulos, Dominion CEO, Honest Service Fraud, Wire fraud, etc.  I'm on my

way back to Michigan, and I look forward to truth and transparency for everyone." Dkt. No. 82 at 14 & n.2. A few days after that, on March 21, 2024, Lambert appeared on Joe Oltmann's podcast with Conservative Daily News, where Lambert sat by while Oltmann encouraged his listeners to download the Dominion documents Lambert had leaked to Sheriff Dar Leaf. Dkt. No. 102-9 at 29 (pdf pagination); Dkt. No. 103, May 16, 2024, Hearing Tr. at 13:3–7.

While finding the time to violate the Court's orders at least twice more, Lambert and Byrne missed their deadline to file the Court-ordered verifications confirming they would abide by the Court's orders. They also missed their extended deadline to dot the same. Eventually filing them after 5:00 p.m. on March 29, 2024. Dkt. No. 84.

Despite signing the verifications, the misconduct continued. Between April 2 and May 16, 2024, Byrne participated in interviews and emphasized and shared social media posts discussing the leaked Dominion discovery materials. *See* Dkt. No. 102, Supp. Decl. of D. Brook at ¶¶ 4, 7(a)–(k); *see also* Dkt. No. 102-5 (timeline of some of the public appearances and statements relevant to the leak of Dominion documents). By way of just one example, on May 8, 2024, Byrne posted the following on X concerning Dominion's discovery materials and Lambert's involvement in the leak of those documents through Sheriff Dar Leaf:



Dkt. No. 102-15, Ex. 55 at 6 (pdf pagination).

### E.   May 16, 2024: Magistrate Judge Upadhyaya holds a hearing on Dominion's emergency motion.

On May 16, 2024, Magistrate Judge Upadhyaya held a second hearing on Dominion's emergency motion to disqualify.  Minute Entry, May 16, 2024.  Lambert and Byrne had ample notice of this hearing, which was in fact delayed at the last minute to accommodate Lambert.  *See* Minute Entry, May 10, 2024.

During the hearing, counsel for Dominion went through in detail all of the post-March 15, 2024 breaches by Lambert and her client (at least those it was aware of).  Dkt. No. 103, May 16, 2024, Hearing Tr. at 5:5–26:7.  Lambert "did not dispute either the underlying conduct or the authenticity of any of the documents Dominion cited in its presentation" chronicling Lambert's breaches of the Protective and Status Quo Orders, including the more recent breaches after the first

hearing described above.  Mem. Op. at 18.  Magistrate Judge Upadhyaya again asked Lambert for "legal authority supporting your position that you could bypass the order that Judge Nichols set and the order of this Court and give access to documents to a third party not involved in the case." Dkt. No. 103, May 16, 2024, Hearing Tr. at 36:1–4.  Lambert again offered no authority but stated, "[i]n my opinion, this is a request that I find a case that says water is wet."  *Id.* at 46:21–23. Lambert also admitted during the hearing that she failed to preserve evidence of Byrne's more recent breaches of the Protective and Status Quo Orders—and in fact specifically instructed him to delete certain posts on X.  Mem. Op. at 34–35.

**F.    May 17-August 13, 2024: Lambert and Byrne continue their efforts to circumvent the Protective and Status Quo Orders.**

After the second hearing, Lambert and Byrne's efforts to disseminate Dominion's discovery materials continued.  On July 1, 2024, Lambert advised Dominion via email that she had been served with a subpoena to testify and produce documents in the pending criminal matter against Tina Peters, *People v. Tina Peters*, Case No. 2022-CR-371 (Colo. Dist. Ct.), a Mesa CO clerk who was then facing criminal charges (and has since been convicted) for her conduct relating to a security breach of a Dominion machine.  Dominion responded to Lambert and asked her to confirm that both she and her client will abide by the Protective and Status Quo Orders and not produce or discuss materials in response to the subpoena and will also object to producing any confidential or AEO material on the grounds of the existence of the Protective Order pursuant to Paragraph 26 of that order.  Dkt. No. 108, Mot. to Enforce at 2–4.  Lambert refused to fulsomely respond, leaving Dominion no choice but to move to enforce the Protective and Status Quo Orders. *Id.*

In that motion, Dominion also detailed another deeply concerning instance in which Lambert and Byrne colluded with a third-party to serve a plainly unenforceable subpoena on

Dominion CEO John Poulos just as he was entering the offices of Susman Godfrey for the second day of his depositions in this and the other consolidated and coordinated matters. *Id.* at 5–10. Within minutes of Mr. Poulos being served by the third-party, Byrne was posting video footage of that process—as well as Mr. Poulos' physical location—to X. *Id.* at 5–6 (citing Dkt. No. 108-14, Ex. M).

After filing that motion, Dominion learned about yet more concerning conduct of Lambert and Byrne.  As detailed in a July 16, 2024, supplemental brief, a Colorado attorney named John Case—who Lambert did not identify as having accessed Dominion's discovery materials in either the March 16 or May 18 hearings (Dkt. Nos. 78, 103)—was working with Lambert on Byrne's defense in this case, had reviewed Dominion's discovery materials, and was also defending Mesa County, CO clerk Peters.  Dkt. No. 113 at 1–3.  In a public filing in that criminal matter, Case referenced and described (incorrectly characterizing) Dominion's discovery materials.  *Id.*  This is the same attorney who then served a subpoena on Lambert for all the Dominion discovery material—yet another plain attempt by Lambert to circumvent this Court's orders.  *Id.* at 2.

Clearly then as now, Lambert was colluding with third parties to circumvent both the letter and spirit of the Protective and Status Quo Orders.  This is precisely what Dominion predicted would happen at the May 16 hearing if Lambert was not disqualified.  Dkt. No. 103, May 16, 2024, Hearing Tr. at 24:21–24 (Counsel for Dominion: "Your Honor, I'll be blunt. My concern is this: If she's not removed from this case, all that will have happened is they will have gotten smarter about how to do this leak in the future.").

And as demonstrated below, Byrne and Lambert were provided every opportunity to respond to Dominion's supplements.  Magistrate Judge Upadhyaya, in fact, granted Byrne leave to file a sur-reply in response to Dominion's motion to enforce (Dkt. No. 108) even though he

offered no "justification" for a "sur-reply," and even though the Court previously "admonished that 'no further sur-replies and/or belated filings will be allowed on the pending motions absent exigent circumstances.'" *See* Minute Order of July 28, 2024. With each filing, though, including the belated sur-reply, Byrne and Lambert failed to deny the core claims being made against Lambert.

**G.    August 13, 2024: Magistrate Judge Upadhyaya disqualifies Lambert.**

On August 13, 2024, in a 61-page Memorandum Opinion, Magistrate Judge Upadhyaya disqualified Lambert as counsel for Byrne, finding that "the record clearly shows that Lambert deliberately violated multiple court rules and orders and continues to do so despite having had ample warning of the consequences and assuring the Court she would comply," that "Lambert's repeated misconduct raises the serious concern that she became involved in this litigation for the sheer purpose of gaining access to and publicly sharing Dominion's protected discovery," and that "[b]ecause Lambert's 'truly egregious misconduct' has already and will undoubtedly continue to 'infect future proceedings,' this is the rare case in which disqualification is warranted." Mem. Op. at 3 (quoting *Koller*, 737 F.2d at 1056).

Magistrate Judge Upadhyaya also outlined how Lambert had engaged in a "concerning pattern of conduct" "before she [had] entered her appearance in this case," which gave "the Court pause that she would follow its orders." *Id.* at 25. That pattern involved instances where Lambert's misconduct was admonished or discussed by courts in election-related cases in which she pursued or assisted in pursuing baseless claims concerning Dominion's voting machines and the 2020 Presidential Election. *Id.* at 25–27. As Magistrate Judge Upadhyaya explained, "Lambert's conduct in these cases reflects a concern that she has a personal stake in advancing her claims against Dominion, and that personal stake overrides her regard for court orders and rules even in the face of such admonishment." *Id.* at 27; *see also id.* at 55.

Lambert's disqualification, per the accompanying order, was "effective immediately." Dkt. No. 125 at 3. The disqualification order also required Lambert and Byrne to "each provide a full accounting, in the form of sworn affidavits, by no later than August 20, 2024 at 5:00 p.m. EST," of certain information relating to their breaches of the Protective and Status Quo Orders. *Id.*

Despite the immediate effect of her disqualification, Lambert responded by moving for an extension of time to file an unrelated joint status report, Dkt. No. 127, and for a stay of all proceedings, in all the consolidated and coordinated actions, pending resolution of Byrne's forthcoming objections to the disqualification order, Dkt. No. 130. In separate Minute Orders, the Court struck the first motion for an extension because Lambert's disqualification was "effective immediately," but granted-in-part and denied-in-part the second motion to stay, declining to stay all cases but "allow[ing] Defendant and/or Ms. Lambert to pursue any objections to the District Court." Minute Orders of August 23, 2024.

Byrne's deadline to object was August 27. In separate filings, Lambert filed Byrne's objections on August 27 and the exhibits in support of those objections on August 28, 2024. Dkt. Nos. 133, 134.[3]

### III.   STANDARD OF REVIEW

"A court may refer nondispositive matters … to a Magistrate Judge for resolution pursuant

---

[3] The record is replete with evidence and argument demonstrating Lambert and Byrne's non-compliance with the Protective and Status Quo Orders, and Dominion incorporates that extensive record by reference. *See* Dkt. No. 75, Mot. to Disqualify (Mar. 15, 2024); Dkt. No. 82, Reply in Support of Mot. to Disqualify (Mar. 22, 2024); Dkt. No. 102, Supp. Decl. of D. Brook (May 17, 2024); Dkt. No. 105, Resp. to Order of Court (May 21, 2024); Dkt. No. 108, Mot. to Enforce (July 5, 2024); Dkt. No. 113, Suppl. Br. in Support of Mot. to Disqualify (July 23, 2024). Except that Magistrate Judge Upadhyaya denied two of Dominion's motions for leave to file supplements, which had alerted the Court to even more recent misconduct, including physical threats levied by Byrne himself. Mem. Op. at 30 (denying Dkt. Nos. 118 & 122). Magistrate Judge Upadhyaya explained: "Despite the severity of the conduct alleged therein, the Court denies Dominion's latest motions to supplement in the interests of ending the ongoing cycle of alleged misconduct by resolving this underlying Motion." *Id.* Dominion therefore does not rely on or incorporate by reference those filings here though they are available at Dkt. Nos. 118 and 122.

to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2." *Smith v. D.C.*, 249 F. Supp. 3d 106, 109 (D.D.C. 2017). "The cases are uniform in holding that a motion to disqualify counsel is a nondispositive matter." *Medgyesy v. Medgyesy*, 988 F. Supp. 2d 843, 845 (N.D. Ill. 2013) (collecting cases).[4] If a party objects to a magistrate judge's decision on a non-dispositive matter, the district judge "can only modify or set aside any part of the order that is 'clearly erroneous or is contrary to law.'" *Danzy v. IATSE Loc. 22*, No. 17-CV-02083-RCL, 2021 WL 5416630, at *2 (D.D.C. Nov. 19, 2021) (quoting Fed. R. Civ. P. 72(a)). "A party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a). Under the clear-error standard, "[t]he magistrate's decision is 'entitled to great deference.'" *Danzy*, 2021 WL 5416630, at *2 (quoting *Beale v. District of Columbia*, 545 F. Supp. 2d 8, 13 (D.D.C. 2008)). To find clear error, the court must be "left with the definite and firm conviction that a mistake has been committed." *Klayman v. Jud. Watch, Inc.*, 628 F. Supp. 2d 84, 94 (D.D.C. 2009) (citations omitted).

## IV.   ARGUMENT

Byrne's brief, filed and signed by Lambert, ignores the legal standard articulated above, and perhaps not surprisingly, therefore, does not present this Court with argument or evidence that would leave the Court with a "definite and firm conviction that a mistake has been committed." *Klayman*, 628 F. Supp. 2d at 94. This is, of course, reflective of Lambert's continued pattern of ignoring rules, orders, procedures, and caselaw. *See id.* at 95 ("Klayman's continued failure to conform his Objections to the requirements of the local rules of this Court—despite the Court's repeated admonishment to Klayman that his objections are in violation of LCvR 72.2(b)—is yet

---

[4] *See also Nobrega v. Troy-Bilt, LLC*, No. CV 22-4204 (JXN) (JBC), 2024 WL 3549045, at *3 (D.N.J. July 25, 2024); *Bancor Grp. Inc. v. Rodriguez*, No. 22-CV-20201, 2023 WL 6310269, at *1 (S.D. Fla. May 18, 2023); *Davis v. CenturyLink, Inc.*, No. 3:22-CV-00038, 2023 WL 2401697, at *1 (S.D. Tex. Mar. 8, 2023); *Galloway v. Cnty. of Nassau*, 589 F. Supp. 3d 271, 277 (E.D.N.Y. 2022); *Matylewicz v. Cnty. of Lackawanna Transit Sys. Auth.*, No. 3:19-CV-1169, 2020 WL 5095933, at *4 (M.D. Pa. Aug. 28, 2020).

another example of Klayman's disregard for this Court and its Orders.").   Nevertheless, below
Dominion addresses the arguments Lambert does advance, as well as the arguments that are
noticeably lacking.

**A.    Byrne fails to rebut Magistrate Judge Upadhyaya's detailed findings of fact
establishing that Lambert violated numerous provisions of the Protective and Status
Quo Orders and the D.C. Rules of Professional Conduct.**

Byrne devotes roughly 6 pages of his 45-page brief to attempting to convince this Court
that the Magistrate Judge got her facts wrong.   These pages are notable both for what Byrne and
Lambert do not contest, and where they do contest, how their words reflect a continued willingness
to misstate the facts to this Court.   Dominion takes each in turn.

*1.      Byrne does not contest numerous findings of fact that support Lambert's
disqualification.*

Via the brief she filed on behalf of her client Byrne, Lambert does not contest she leaked
Dominion's discovery materials without first seeking the Court's guidance or authorization, failed
to notify the Court and Dominion of this breach, failed to preserve evidence concerning her client's
ongoing breaches, and engaged in a coordinated effort with other counsel to bypass the Protective
and Status Quo Orders in order to disseminate Dominion's discovery materials.   In particular,
Lambert does not dispute:

- Lambert leaked *all* of Dominion's discovery materials to Sheriff Dar Leaf, including by
  giving "*him a username and password to the entire repository of Dominion's Litigation
  Documents.*" Mem. Op. at 12 (emphasis in original).   Sheriff Dar Leaf then shared some
  of those documents via an X account with the public. *Id.* at 12–13.

- Most, if not all, of the Dominion discovery materials that Lambert publicly disseminated
  were marked confidential. *Id.* at 31 n.18.   Before leaking these documents to Sheriff Dar
  Leaf and filing them in her Michigan criminal case, Lambert did not seek de-designation

of these documents pursuant to the Protective Order.  *Id.* at 10.  Nor did Lambert otherwise move to amend or lift the Protective Order or seek guidance from the Court. *Id.*

- Lambert did not notify Dominion or Byrne's other counsel at the McGlinchey firm that she intended to, and did, publicly disseminate Dominion's discovery materials.  *Id.* at 13. Lambert concealed her conduct from Dominion and McGlinchey.  *Id.* at 60.

- After McGlinchey learned about Lambert's breach of the Protective Order, McGlinchey— not Lambert—notified Dominion that Lambert leaked Dominion's discovery materials.  *Id.* at 32.

- Byrne and Lambert missed their original and extended deadlines to file their verifications—without providing any excuse or first seeking extensions.  *Id.* at 14.

- Following the March 18 hearing, Byrne continued to emphasize posts on X discussing and disseminating Dominion's discovery materials, *id.* at 16–18, and Lambert took the position that she "do[es] not have time" and does not "want to bill him for babysitting his social media," *id.* at 35, 58.

- During the May 16 hearing, Lambert "did not dispute either the underlying conduct or the authenticity of any of the documents Dominion cited in its presentation" chronicling Lambert's breaches of the Protective and Status Quo Orders.  *Id.* at 18.

- During the May 16 hearing, Lambert admitted that she failed to preserve evidence of Byrne's more recent breaches of the Protective and Status Quo Orders—and in fact specifically instructed him to delete certain posts on X.  *Id.* at 34–35.

- After the May 16 hearing, Byrne continued to emphasize and share posts on X describing Dominion's discovery materials, and Lambert justified his conduct by arguing, "*Dr. Byrne did not post any new information, and the reposts constituted information that was already*

*in the public sphere.*" *Id.* at 19–20 (quoting Dkt. No. 106 at 1–2) (emphasis in original).
This information, of course, was in the public sphere specifically because Lambert had
leaked it in violation of the Protective Order.  *Id.* at 20.

- After the May 16 hearing, "Lambert attempted or threatened to disclose Dominion's
  Litigation Documents in response to a subpoena in Colorado's criminal case against Peters,
  *State of Colorado v. Tina Peters*, Case No. 2022-CR-371 (Colo. Dist. Ct.)." *Id.* at 21.  In
  particular, Peter's counsel John Case, who is also Lambert's colleague, served a subpoena
  on Lambert for Dominion's discovery materials so that Case could use them in Peters'
  public trial. *Id.* at 21, 23–24.  In other words, Lambert and Case "orchestrated" service of
  the Peters subpoena on Lambert in an attempt "to disseminate Dominion's Litigation
  Documents and other discovery publicly in contravention of this Court's orders." *Id.* at 60.

- Lambert concealed Case's involvement in this action from Dominion and the Court, and
  she has refused to provide Dominion and the Court any information concerning Case's
  access to Dominion's discovery materials.  *Id.* at 22–23.

- After the May 16 hearing, "Lambert attempted to disclose deposition testimony from
  Dominion CEO John Poulos ('Poulos') in response to a request from a Michigan State
  Representative, James DeSana."  *Id.* at 22.   In particular, after Dominion objected to
  Lambert sharing Poulos's deposition testimony, "Lambert asserted that this situation was
  different as it was 'not a person requesting the transcript in his individual capacity.  This is
  a request by the government.  The Michigan legislature.'"  *Id.*  Lambert, in other words,
  "contest[ed] that the Protective and Status Quo Orders apply to all discovery materials,
  despite the Court ordering otherwise."  *Id.*  This required the Court to, yet again, enter an

order instructing Lambert not to share Dominion's discovery materials with anyone absent specific Court approval.  *Id.* at 21–22.

- "Lambert has apparently refused to object to subpoenas that she has received for Dominion's Litigation Documents," and "does not assert that she has objected to these subpoenas."  *Id.* at 32.

- Lambert and Byrne's conduct has caused significant harm to Dominion.  Together, they have caused Dominion's discovery materials to be viewed at least thousands of times by an unknown number of unauthorized individuals.  *Id.* at 24–25.  Some of these individuals have foreseeably threatened Dominion and its employees with death or grievous bodily harm.  *Id.*  These threats are based on the false claim, pushed by Byrne and Lambert, that Dominion rigged the 2020 Presidential Election.  *Id.*

- Lambert and Byrne's conduct has harmed the integrity of these proceedings, including by hampering Dominion's ability to conduct discovery in the coordinated and consolidated actions, and by leaving the Court with no confidence that Lambert will follow its rulings and orders going forward.  *Id.* at 56, 61.

These detailed findings paint a disturbing pattern of misconduct and demonstrate that Lambert violated numerous provisions of the Protective and Status Quo Orders—including Paragraphs 1, 8, 11, 15, 16, 26, and 27 of the Protective Order, and Paragraphs 1, 3, 5, 7, and 8 of the Status Quo Order—to say nothing of the D.C. Rules of Professional Conduct.  Worse, Lambert does not dispute, much less rebut with evidence, the finding that "Lambert's repeated misconduct raises the serious concern that she became involved in this litigation for the sheer purpose of gaining access to and publicly sharing Dominion's protected discovery."  Mem. Op. at 3.  With these findings unrebutted, Lambert cannot show the Magistrate Judge Upadhyaya committed clear

error in ruling as she did—that Lambert's "truly egregious misconduct" makes this "the rare case in which disqualification is warranted." *Id.*

     **2.**    ***Lambert continues her pattern of misrepresenting the facts to the Court.***

Where Lambert does contest Magistrate Judge Upadhyaya's findings, her arguments reflect a continued willingness to misstate the facts and ignore contrary evidence. In particular:

- Magistrate Judge Upadhyaya found that "Lambert represented that her attorneys had publicly filed the motion in her Michigan criminal case attaching Dominion's discovery materials, when in fact it was Lambert herself who filed the motion *pro se*." Mem. Op. at 36. Lambert disputes this finding by doubling down on her misrepresentation that her counsel filed the documents. Objection at 38 ("She gave detail that the documents were attached to the Sheriff's affidavit and filed in *her* case. this information – her counsel filed the motion and attached the Sheriff's affidavit.").

  - But this was clearly a *pro se* filing, as reflected in the filing itself:



Dkt. No. 75-8, Ex. 7 at 5 (pdf pagination). To be clear, whether Lambert or her counsel filed Dominion's discovery materials is not really the point. Either way,

Lambert violated the Protective Order by filing or causing to be filed Dominion's discovery materials on a public docket. The point here is that Lambert misrepresented to Magistrate Judge Upadhyaya that her counsel made the filing; and continues to double down on that misrepresentation in this objection to Judge Nichols.

- Magistrate Judge Upadhyaya found that Lambert did not make any meaningful attempt to seal Dominion's discovery materials in her Michigan criminal case. Mem. Op. at 16, 37–38. According to Lambert, she did make such efforts but her "defense counsel had stated that he could not seek to have this evidence sealed or removed because of the gravity of the facts alleged in the Sheriff's affidavit and that the Sheriff had reported the documents to Congress in a public fashion." Objection at 40.

  o Lambert cites no efforts *she* took to have the filing sealed, such as by instructing her counsel to do so or, as an attorney, by doing so herself. Nor does Lambert's finger-pointing excuse her failure to "inform the Court that she failed to comply with this requirement." Mem. Op. at 16; *see also id.* at 37–38 ("Even if Lambert had a legitimate reason to disregard the Court's order (the Court has yet to hear one), she still misrepresented to the Court that she had complied with this requirement.").

- Magistrate Judge Upadhyaya found that Lambert violated the Protective and Status Quo Orders when making extra-judicial statements concerning Dominion's discovery materials. Mem. Op. at 14–16. Without citing any evidence, Lambert argues that "in every interview referred to Lambert specifically stated that she could not discuss the details because of the protective order." Objection at 40.

- o The interviews themselves reflect otherwise.  Here is what Lambert told ABC News on March 19, 2024:

  > There was no leak of data ... I provided evidence of criminal acts to law enforcement.  *The Dominion file contained evidence of perjury by John Poulos, Dominion CEO, Honest Service Fraud, Wire fraud, etc.*  I'm on my way back to Michigan, and I look forward to truth and transparency for everyone.

  Mem. Op. at 15 (quoting Dkt. No. 82 at 14 & n.2) (emphasis in original).  Lambert also appeared on a podcast on March 22, 2024, where the podcast host encouraged people to download Dominion's discovery materials that Sheriff Dar Leaf had leaked on X, and where Lambert encouraged the host to discuss the materials with Sheriff Dar Leaf because "'Sheriff Dar Leaf can do whatever he wants, it's his investigation.'"  Mem. Op. at 15 (quoting Dkt. No. 103, May 16, 2024, Hearing Tr. at 13:3–7, and then citing Dkt. No. 102-9 at 29).  This is exactly the opposite of "mak[ing] reasonable efforts to prevent disclosure of Confidential or Attorneys' Eyes Only Discovery Material by each unauthorized person who receives the information," as Paragraph 27 of the Protective Order required.

- Magistrate Judge Upadhyaya found that Lambert violated her duty of candor to the Court and the Status Quo Order by concealing or misrepresenting John Case's involvement in this matter.  Mem. Op. at 36–37.  Without citing any evidence, Lambert argues that there was no misrepresentation or concealment, and that "[t]he protective order clearly states how Lambert can work with assistants on Dr. Byrne's case. Lambert did just that and did not violate the order, nor did Mr. Case."  Objection at 40.

  - o No one disputes that the Protective Order allows attorneys to work with assistants— that is not the point.  The point is that Lambert *either* concealed Case's involvement

at the March 18 hearing *or* disclosed Dominion's discovery materials to him after

the hearing in violation of the Status Quo Order:

> [T]he Court learned through Dominion's Supplement that there is another attorney assisting with Byrne's defense, Case. ECF No. 113. If Case was involved at the time of the March and May Hearings, Lambert misrepresented to the Court the entire universe of people with whom she shared Dominion's Litigation Documents. ECF No. 78 at 35:1–36:23. If Lambert gave Case access to Dominion's Litigation Documents after those hearings, she violated the Status Quo Order. ECF No. 77 ¶¶ 1, 6. Because Lambert refuses to provide any information on Case's involvement, the Court has no way of assessing which is true. In either scenario, however, Lambert has made material omissions to the Court.

Mem. Op. at 36–37.

In sum, Lambert does not, and cannot, credibly contest that she filed Dominion's discovery

materials *pro se* in her Michigan criminal case, failed to take reasonable efforts to seal the filing,

made extra-judicial statements concerning Dominion's discovery materials after she was

specifically admonished to stop doing so, encouraged a podcast host to discuss the materials with

Sheriff Dar Leaf, and concealed from the Court John Case's apparent involvement in this matter.

Not only does the evidence clearly show that Lambert engaged in a pattern of misconduct, but

Lambert cites no evidence to the contrary and resorts to misrepresenting the record.

What's more, it speaks volumes that in contesting Magistrate Judge Upadhyaya's findings,

neither Lambert nor Byrne attach an affidavit testifying under oath to their conduct.  Worse yet,

while baselessly accusing Dominion of seeking Lambert's disqualification "to prevent the truth

from being further exposed," Objection at 25, Lambert refuses to produce *any* evidence concerning

the actions she took before and after leaking Dominion's discovery materials.

**B.     Lambert misstates the law on disqualification and fails to provide any legal authority supporting Lambert's conduct.**

### 1.       Disqualification is warranted outside the context of attorney conflicts.

To begin, Lambert repeatedly misstates the standard for disqualification, limiting it only to circumstances of conflict of interest.  Objection at 9–11 (citing *Koller*, 737 F.2d at 1056).  This is not the law, which clearly provides for removal "in cases of truly egregious misconduct likely to infect future proceedings."  *Koller*, 737 F.2d at 1056; *see also Paul v. Jud. Watch, Inc.*, 571 F. Supp. 2d 17, 24 (D.D.C. 2008) (explaining that *Koller* "did not prohibit disqualification outside of" circumstances of conflict of interest); *see also Comuso v. Nat'l R.R. Passenger Corp.*, No. CIV A 97-7891, 2000 WL 502707, at *6 (E.D. Pa. Apr. 26, 2000) (disqualifying counsel based on a "pattern of misconduct").

None of the other cases Lambert cites in Byrne's brief hold otherwise.  Objection at 10–11 (citing *Groper v. Taff*, 717 F.2d 1415 (D.C. Cir. 1983); *Yablonski v. United Mine Workers of Am.*, 448 F.2d 1175 (D.C. Cir. 1971); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 501 F. Supp. 326 (D.D.C. 1980); *Kessenich v. Commodity Futures Trading Comm'n*, 684 F.2d 88 (D.C. Cir. 1982); *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976)).  Indeed, *Koller* extensively cited and substantively analyzed *Groper*, *Yablonski*, *Williamsburg*, and *Kessenich* before concluding that disqualification is appropriate "in cases of truly egregious misconduct likely to infect future proceedings."  *Koller*, 737 F.2d at 1056.  *Woods*, meanwhile, concerned the standards for disqualification of former government employees, *Woods*, 537 F.2d at 814—and the court did not hold, as Lambert urges, that disqualification is warranted only for conflicts.

### 2.       Lambert cites no authority supporting her intentional breaches of the Protective Order.

Despite being given numerous opportunities, Lambert *still* has not cited a *single* authority supporting her conduct.  During the March 18 hearing, Lambert "did not dispute that she: 1) signed an Undertaking verifying that she would comply with the Protective Order; 2) gained access to

Dominion's Litigation Documents; and 3) disseminated those documents in the manner Dominion alleged." Mem. Op. at 12. During both the March 18 and May 16 hearings, Magistrate Judge Upadhyaya asked Lambert for "legal authority supporting your position that you could bypass the order that Judge Nichols set and the order of this Court and give access to documents to a third party not involved in the case." Dkt. No. 103, May 16, 2024, Hearing Tr. at 36:1–4; *see also* Dkt. No. 78, March 18, 2024, Hearing Tr. at 18:17–18 ("What's your best authority for that proposition?"). At both hearings, Lambert agreed she had "no authority to cite to the Court," but argued that "it's essentially asking me to find authority that water is wet." Dkt. No. 78, March 18, 2024, Hearing Tr. at 30:3–5; Dkt. No. 103, May 16, 2024, Hearing Tr. at 46:21–23 ("MS. LAMBERT: … I did file a brief. I did do thorough research. In my opinion, this is a request that I find a case that says water is wet."). Of course, there is no authority justifying her conduct.

Nevertheless, Lambert takes the implausible position that there was no violation at all because the materials Lambert leaked were not covered by the Protective Order, and that, even if they were, there is an exception for disclosures to law enforcement and in the public interest. Dominion takes each in turn.

### 3. *The Protective Order covers the materials Byrne and Lambert leaked.*

Lambert repeatedly misstates the scope of the Protective Order, arguing that it protects only commercially sensitive information such as trade secrets. Objection at 5–6, 16–17, 22, 37–38. Before Magistrate Judge Upadhyaya, Lambert argued that the materials she leaked were not covered by the Protective Order because of Dominion's motion for an entirely separate third-party protective order in *U.S. Dominion et al. v. Michael J. Lindell et al.*, Case No. 1:21-cv-00445(CJN), Dkt. No. 145. *See* Dkt. No. 76 at 14–18, 21–23, Attachment 4. As Magistrate Judge Upadhyaya explained, this "argument is based on a fundamental misunderstanding of the two separate protective orders." Mem. Op. at 29. "The argument here is not only meritless, it borders on

frivolous, purposefully ignores contrary evidence and authority, and contradicts Byrne's own representations to the Court in his June 2023 stipulation."  *Id.*

Byrne and Lambert appear to double down yet again—despite being give "ample opportunity to correct their clearly implausible argument."  *Id.* at 29 n.17.  While this time they do not cite the third-party protective order in *Lindell*, they continue to argue that "Dominion only intended to protect trade secrets and proprietary information not general communications by Dominion concerning basic administrative operations."  Objection at 22.

Their argument is still meritless.  The very first paragraph of the Protective Order provides that "[a]ny Discovery Material produced in the Litigation will be used … solely for purposes of this Litigation and no Receiving Party will provide Discovery Material to any person or entity … or make any Discovery Material public except as permitted by this Order and in this Litigation."  Dkt. No. 79 at ¶ 1.  Dominion specifically requested this provision because it foresaw the risk that certain Defendants in the consolidated and coordinated actions might misuse their access to Dominion's discovery materials.  At the September 16, 2022 hearing, Dominion's counsel argued:

> The problem here in the lawsuit is based over these public figures making very public lies about Dominion and those are what Dominion has sued over. Unfortunately, the lies have continued as has the focus [on] Dominion in the face of the lawsuit, which is what gives us pause about the protective order and why we're here today.

Dkt. No. 216 in Case No. 21-cv-445, September 16, 2022, Hearing Tr. at 8:7–12.  Counsel for Dominion then identified the risk posed by those who might seek to exploit their access to Dominion's documents and other discovery material:

> And the reason, of course that we want this is because we are concerned that leaks to the press in this case or leaks to other cases or leaks to followers or anybody else could cause, not just harm to the process of moving forward in the case, but also *harm to Dominion and its employees.*

*Id.* at 9:24–10:4 (emphasis added).

It was against the backdrop of these arguments that the Court entered Paragraph 1 of the Protective Order.  It is thus simply untrue that the materials Lambert leaked were neither covered nor intended to be covered by the Protective Order.

### 4.       There is no law enforcement or public interest exception to the Protective Order.

Without citing any relevant authority, and after being asked repeatedly to do so, Lambert argues that "there is an exception which would allow the disclosure to law enforcement" and a "public interest exception which even the judiciary has a constitutional obligation to acknowledge." Objection at 24.  Pursuant to these exceptions, Byrne and Lambert may unilaterally disclose Dominion's discovery materials whenever and to whomever they please so long as *they* believe there is evidence of crime.

Nothing in the Protective Order permits such a sweeping exception.  As Lambert seems to acknowledge, a protective order's "plain and ordinary meaning" "controls," and "[a] protective order will not be construed to satisfy the purposes of only one of the parties to it" when the text unambiguously holds otherwise.  Objection at 21–22 (citing *Ross-Hime Designs, Inc. v. United States*, 109 Fed. Cl. 725, 733 (2013); *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014); *Mynette Techs., Inc. v. United States*, 163 Fed. Cl. 733, 751 (2022).  As explained above, the Protective Order plainly prohibits disclosure of "[a]ny Discovery Material produced in the Litigation" to "any person or entity," and plainly prohibits receiving parties from "mak[ing] any Discovery Material public *except as permitted by this Order and in this Litigation*." Dkt. No. 79 at ¶ 1.  Lambert cites *nothing* in the Protective Order itself that would recognize her exceptions. Because there is none.

And despite being given ample opportunity, Lambert still fails to cite a single authority supporting these exceptions.  Instead, Lambert repeatedly argues that "all litigation and discovery

is subject to public view and access."  Objection at 21 (citing *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139 (2d Cir. 1987); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775 (1st Cir. 1988); *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295 (7th Cir. 1980); *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594 (7th Cir. 1978); *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 101 F.R.D. 34 (C.D. Cal. 1984)).

Of course, arguing that the public has a right to all discovery after the Court entered the Protective Order it entered is nothing more than an attempt to re-litigate the Protective Order—in other words, these cases cannot excuse Lambert's decision to intentionally violate the Protective or Status Quo Orders or support her sweeping exceptions to those orders.

In any event, Lambert is misstating the law and ignoring more recent developments. *Agent Orange*, *Public Citizen*, *Wilk*, and *American Telephone* "were based on a prior version of Rule 5(d) of the Federal Rules of Civil Procedure" and "have been superseded by the 2000 amendment to" that rule. *Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009); *SEC v. TheStreet.com*, 273 F.3d 222, 233 n.11 (2d Cir. 2001).  The current rule is clear: "the public has no constitutional, statutory (rule-based), or common-law right of access to unfiled discovery." *Bond*, 585 F.3d at 1073; *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (holding there is no First Amendment right to disseminate pre-trial materials obtained in civil discovery when a protective order was entered on a showing of good cause).

Accordingly, once a protective order is entered, "there is a strong presumption against the modification of a protective order," and it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *TheStreet.Com*, 273 F.3d at 230; *see also Alexander v. F.B.I. (Alexander II)*, 186 F.R.D. 99, 100 (D.D.C. 1998) ("Once the court has entered a protective order, it may be modified upon a showing

of good cause."); *Alexander v. F.B.I. (Alexander I)*, 186 F.R.D. 54, 57 (D.D.C. 1998) (explaining

that the party seeking to modify a protective order bears the burden proving that good cause

supports its modification); *United States v. Ogbenna*, No. 1:21-CR-672 (TNM), 2023 WL

7384884, at *2 (D.D.C. Nov. 8, 2023).

Unsurprisingly, Lambert ignores all this adverse authority.  Instead, she spills considerable

ink to mischaracterizing the leaked documents, while cramming the brief with a litany of irrelevant

authority addressing federal criminal statutes,[5] the uncontroversial proposition that the right to

vote is fundamental to American democracy,[6] and other general constitutional and legal principles

---

[5] Objection at 26–28, citing 52 U.S.C. § 20511 (criminal penalties for acts interfering with certain election-related activities); 52 U.S.C. § 10308 (civil and criminal sanctions for specific actions relating to violating or interfering with the right to vote); *United States v. Singh*, 924 F3d 1030 (9th Cir. 2019) (affirming in large part two defendants' convictions under various campaign finance and record-keeping laws); Objection at 28–29, citing 18 U.S.C. § 1846 (there is no 18 U.S.C. § 1846; it appears the intended section is 18 U.S.C. § 1346); *Skilling v. United States*, 561 U.S. 358 (2010) (reversing defendant's conviction of honest services fraud); *United States v. O'Donovan*, 683 F. Supp. 3d 78 (D. Mass. 2023) (denying defendant's motion to dismiss honest services fraud charge); *United States v. Sawyer*, 85 F.3d 713 (1st Cir. 1996) (reversing defendant's convictions for mail and wire fraud because jury instruction was legally erroneous as to one of several potential bases for conviction, and it was impossible to tell upon which basis jury had convicted); *United States v. Falcón-Nieves*, 79 F.4th 116, 126 (1st Cir. 2023) (vacating and/or reversing two defendants' convictions for honest services fraud on various grounds); Objection at 30–31, citing 18 U.S.C. § 371 (conspiracy to commit an offense against or to defraud the United States); *Tanner v. United States*, 483 U.S. 107 (1987) (considering defendants' various claims of error at their trial on charges of conspiracy to defraud the United States); *United States v. Caldwell*, 989 F.2d 1056 (9th Cir. 1993) (reversing defendant's conviction of conspiring to defraud the United States); *Hammerschmidt v. United States*, 265 U.S. 182 (1924) (reversing defendants' convictions of conspiring to impair a lawful function of the government); *United States v. Kanchanalak*, 41 F.Supp.2d 1 (D.D.C. 1999) (denying defendant's motion to dismiss count of indictment charging a conspiracy to impair the lawful functions of the Federal Election Commission).

[6] Objection at 28, 30, 34–36, citing *Ex Parte Yarbrough*, 110 U.S. 651 (1884) (upholding convictions of 8 people who had beaten an African-American man to prevent him from voting); *United States v. Classic*, 313 U.S. 299 (1941) (reinstating criminal charges relating to conspiracy to prevent the counting of ballots in a congressional election); *Reynolds v. Sims*, 377 U.S. 533 (1964) (holding that state electoral districts must be apportioned equally by population, under the equal protection clause of the 14th Amendment); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (invalidating, as violating the 14th Amendment's equal protection clause, the unequal application on the basis of race of San Francisco's law concerning permits to operate laundries in wooden buildings; mentioning the right to vote in dictum); *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966) (holding Virginia's poll to tax to be unconstitutional); *Mathews v. Diaz*, 426 U.S. 67 (1976) (upholding a federal law that conditions non-citizen eligibility for Medicare Part B on five years of residency and admission as a permanent resident); *Dunn v. Blumstein*, 405 U.S. 330 (1972) (finding Tennessee's voter registration durational residency requirements to be an unconstitutional burden on the right to travel); *Plyler v. Doe*, 457 U.S. 202 (1982) (holding that a Texas law authorizing the school districts to deny enrollment to children not "legally admitted" to United States violates the equal protection clause).

that have no discernable relevance to the issues here.[7]

To be clear, the Protective Order does not prevent law enforcement and legislatures from investigating Dominion should they have a reason to do so.  But the Protective Order prohibits Lambert and Byrne from publicly disclosing Dominion's discovery materials simply because they feel like it.

Further, even if Lambert truly felt compelled to act in response to Dominion's discovery materials, she was not without recourse.  In other words, her argument for sweeping law enforcement and public interest exceptions rests on a fiction—that Lambert was in a Catch 22, of sorts, and could either (a) sit on evidence of supposed criminal conduct or (b) violate a court order. But nothing prevented Lambert from moving to lift or modify the Protective Order or otherwise seek the Court's guidance *before* leaking Dominion's discovery materials in violation of the Protective and Status Quo Orders.  Nor did anything prevent Lambert from following the Protective Order's procedure for objecting to continued restriction on public access and for de-designating materials she thought were not truly confidential.  Dkt. No. 79 at ¶¶ 15–16.  Instead, Lambert leaked all Dominion's discovery materials first and then, after being admonished and ordered to stop, continued to do so and engaged in a coordinated effort to circumvent the Court's clear orders.[8]

---

[7] Objection at 36–37, citing *Marbury v. Madison*, 5 U.S. 137 (1803) (establishing judicial review of federal statutes); *Myers v. United States*, 272 U.S. 52 (1926) (holding the president may remove certain executive branch officials at will); United Pub. Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75 (1947) (upholding the Hatch Act of 1939); U.S. Const., amends. I, IX, XIV, XV.

[8] It was not until April 18 and July 19, 2024, that Byrne moved to lift the Protective Order.  Dkt. No. 90, 110.  His motions are fully briefed and should be denied, particularly in light of Byrne's recent campaign of harassment, intimation, and threats to Dominion's employees and anyone who opposes him.  Dkt. No. 120, Opp. to Def.'s Mot. to Lift at 1; Dkt. No. 120-3, Ex. 2.

### C.     Lambert continues to violate the Protective and Status Quo Orders.

The Court might reasonably wonder: Now that Magistrate Judge Upadhyaya has disqualified Lambert, will Lambert finally understand the gravity of her misconduct and take seriously her obligations as an officer of the Court?  The brief demonstrates she won't.

At several points in the publicly filed brief, Lambert discusses the leaked discovery materials, in plain contravention of the Protective and Status Quo Orders.  *See* Objection at 23, 29, 33, 37, 38–40.  She also attaches purported "expert reports" to her brief, and she argues that those reports, which make false claims about Dominion, are confirmed by "the information contained in the discovery."  *Id.* at 39.

This is astonishing.  While Lambert discusses Dominion's discovery materials at a high level, Magistrate Judge Upadhyaya specifically held that Lambert violated the Protective and Status Quo Orders by discussing these materials in like manner.  Mem. Op. at 33 (discussing Lambert's discussion with ABC News).  Lambert's response is to put these statements in a public filing, as opposed to a sealed filing, in yet another violation of the Court's orders.

That is not all.  Lambert's filing also fails to conform to this Court's rules and procedures in other ways, too.  As noted above, Lambert fails even to cite the appropriate legal standard in challenging the disqualification order (clearly erroneous or is contrary to law).  Further, it appears that Lambert may have filed her brief one-day late.  Lambert also failed to include a "Table of Contents and Table of Authorities" in her 45-page brief, in violation of this Court's Standing Order.  Dkt. No. 15 at ¶ 8(b).  While this last one may seem trivial, it reflects Ms. Lambert's pattern of selectively complying with the Court's rules and procedures.

### D.     Byrne's myriad of ancillary arguments are equally meritless.

#### *1.     Byrne's attacks on Magistrate Judge Upadhyaya are offensive and baseless.*

Throughout the brief, Byrne, via Lambert, level offensive and baseless attacks on this

Court.

*First*, Byrne baselessly accuses Magistrate Judge Upadhyaya of purposely timing Lambert's disqualification to maximize the harm it would cause Byrne. "Curiously," Lambert says, "after months of lingering on the Magistrate's docket (Dominion's motion to disqualify was filed in March), the Magistrate disqualified Dr. Byrne's counsel during two crucial weeks in the discovery proceedings and just before two critical depositions that are critical to Dr. Byrne's affirmative defense and at the same time corroborate Dominion's criminal activity." Objection at 2. Then, on Lambert's telling, Magistrate Judge Upadhyaya "steamrolled this case over Dr. Byrne's rights knowing full well that she removed any legal representation." *Id.* at 11.

It should go without saying, but here we are, that Magistrate Judge Upadhyaya did not time the disqualification order to maximally harm Byrne. In fact, as Byrne and Lambert know, Magistrate Judge Upadhyaya had no way of knowing when any, let alone so-called "critical," depositions were occurring. Magistrate Judge Upadhyaya also obviously did not "steamroll[]" over Byrne's rights. Byrne has other highly capable counsel of the McGlinchey firm, which previously represented Byrne in this matter. Magistrate Judge Upadhyaya, in fact, served notice of proceedings and orders on Byrne through the McGlinchey firm—something Lambert now claims is "a severe ethical violation." Objection at 12. Unsurprisingly, Lambert cites no such ethical rule.

*Second*, Lambert argues that Magistrate Judge Upadhyaya should have held a *third* hearing to address Lambert's more recent misconduct. Objection at 41. While under no obligation to hold any hearing, Magistrate Judge Upadhyaya held two hearings and considered thousands of pages of briefing and exhibits before disqualifying Lambert. Mem. Op. at 57. Those hearings and filings placed substantial and undue burdens on Dominion and the Court, forcing Dominion and the Court

to collectively invest untold hours—likely in the thousands—to investigating and remedying Lambert's misconduct.  This, of course, all while Dominion was trying to focus on discovery in these consolidated cases.  Lambert's demand for more hearings and more arguments to address her misconduct is simply another reason why her continued involvement in this case will infect all future proceedings.

And as the docket clearly reflects, Magistrate Judge Upadhyaya bent over backwards to accommodate Byrne and Lambert's right to be heard, by granting numerous extensions, postponing hearings, and excusing procedural deficiencies, all requested by Byrne and Lambert. *See* Minute Orders of March 25, 2024; April 4, 2024, April 15, 2024, April 25, 2024, April 26, 2024, May 10, 2024, July 24, 2024, July 28, 2024, July 29, 2024.  For example, Magistrate Judge Upadhyaya twice postponed the May 16 hearing to accommodate Byrne and Lambert.  *See* Minute Entries of April 25 and May 10, 2024.  More recently, on July 28, 2024, Magistrate Judge Upadhyaya granted Byrne leave to file a sur-reply in response to Dominion's motion to enforce the Protective and Status Quo Orders (Dkt. No. 108)—even though the motion offered no "justification … to file a sur-reply," and even though the Court previously "admonished that 'no further sur-replies and/or belated filings will be allowed on the pending motions absent exigent circumstances.'"  *See* Minute Order of July 28, 2024.  Notably, when Byrne filed the sur-reply on July 29, 2024, he did not request the third hearing he now so desperately wants.  Dkt. No. 117.

A third hearing, moreover, would have accomplished nothing—indeed, Byrne/Lambert does not even say what new information or legal authority they would have provided to Magistrate Judge Upadhyaya had such a hearing occurred.  In all their briefing, and at both hearings, Lambert hardly contested Dominion's recitation of her conduct.  Instead, her briefing was not much different than her objections to Magistrate Judge Upadhyaya's disqualification order—consisting

of baseless and irrelevant accusations against Dominion, coupled with zero citations to relevant legal authority.[9]

### 2.   *The disqualification order does not violate the attorney-client privilege.*

Throughout Byrne's brief Lambert suggests that Magistrate Judge Upadhyaya's disqualification order violates the attorney-client privilege.  Objection at 44.  As with her other arguments, Lambert does not cite any legal authority to support this argument.

The argument is flatly wrong in any event.  In light of Lambert's breaches of the Protective and Status Quo Orders, Magistrate Judge Upadhyaya ordered Byrne and Lambert to "provide a full accounting, in the form of sworn affidavits … detailing": (a) when Byrne and Lambert entered into a lawyer/client relationship; (b) which Dominion discovery materials Byrne and Lambert had accessed; (c) which Dominion discovery materials Lambert had received and the date of her access; (d) the steps Lambert has taken to determine the scope of her and Byrne's breach and to ensure it is not continuing; and (e) to whom, how, and when Lambert and/or Byrne leaked Dominion's discovery materials.  Dkt. No. 125 at 2.  None of this information requires the disclosure of attorney-client communications or work product.

Regardless, Magistrate Judge Upadhyaya was sensitive to that concern, ordering: "To the extent Lambert or Byrne claim any of the material above is protected by the attorney-client privilege or work product doctrine, Lambert shall provide a detailed privilege log setting forth all sufficient detail of the communication to allow Dominion to assess the claim of privilege."  Dkt. No. 125 at 3.

---

[9] Lambert also accuses Dominion of engaging in improper *ex parte* communications with the Court concerning Lambert's misconduct.  Objection at 41.  Though far from clear, Lambert appears to be referencing an instance where the Clerk rejected a filing and instructed Dominion to refile using the correct format.  Mem. Op. at 20 n.12.  This is a common procedure and does not constitute an improper *ex parte* communication.

###### 3.   *Magistrate Judge Upadhyaya considered less drastic alternatives.*

Byrne/Lambert argues that Magistrate Judge Upadhyaya failed to consider how "Ms. Lambert's disqualification … might impact Dr. Byrne."  Objection at 42.  Not so.  Magistrate Judge Upadhyaya considered this factor when she acknowledged that disqualification is a "rare sanction," reserved for instances of "'truly egregious'" misconduct, and when she considered whether "lesser sanctions" could remedy the harm caused by Lambert's truly egregious misconduct.  Mem. Op. at 51, 55–56 (quoting *Koller*, 737 F.2d at 1056).  Magistrate Judge Upadhyaya found, particularly in light of Byrne's failure to argue otherwise, that any lesser sanction would be insufficient.  There is nothing clearly erroneous about this finding, and that conclusion is confirmed by Byrne's continued failure to identify a lesser sanction.

## V.   CONCLUSION

Dominion acknowledges that disqualification is a severe remedy.  It is and should be reserved for "cases of truly egregious misconduct."  *Koller*, 737 F.2d at 1056.  But that is exactly what has occurred here.  The Court has before it an attorney who has a personal vendetta against her opponent and believes she can follow—or not follow—rules and orders.  This philosophy is simply "incompatible with our judicial system" and the rule of law.  Mem. Op. at 54.  If the facts here do not warrant disqualification, then Dominion struggles to understand what would.  For those reasons, Byrne's objections fail to carry his burden to show that Magistrate Judge Upadhyaya's findings and disqualification order were clearly erroneous or contrary to law.


Dated: September 11, 2024                    Respectfully submitted,

                                             By:   */s/Davida Brook*
                                                   Laranda Walker (D.C. Bar No. TX0028)
                                                   Mary K. Sammons (D.C. Bar No. TX0030)
                                                   Jonathan Ross (D.C. Bar No. TX0027)
                                                   Elizabeth Hadaway (*Admitted pro hac vice*)

**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
jross@susmangodfrey.com
ehadaway@susmangodfrey.com

Stephen Shackelford, Jr. (D.C. Bar No.
NY0443)
Eve Levin (D.C. Bar No. 1672808)
Mark Hatch-Miller (*Admitted pro hac vice*)
Christina Dieckmann (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Tel: (212) 336-8330
sshackelford@susmangodfrey.com
elevin@susmangodfrey.com
mhatch-miller@susmangodfrey.com
cdieckmann@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
dbrook@susmangodfrey.com

Edgar Sargent (*Admitted pro hac vice*)
Katherine Peaslee (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com
kpeaslee@susmangodfrey.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/Davida Brook*