UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
_____

| | |
|---|---|
| U.S. DOMINION, INC., et al., <br><br> *Plaintiffs / Counter-Defendants*, <br><br> v <br><br> PATRICK BYRNE, <br><br> *Defendant*. | Civil Action 1:21-cv-02131(CJN) |

_____

REPLY TO DOMINION'S RESPONSE TO DR. BYRNE'S OBJECTION TO MEMORANDUM OPINION AND ORDER OF MAGISTRATE JUDGE DIQUALIFYING COUNSEL AND IMPOSING ADDITIONAL REQUIREMENTS REGARDING DISCOVERY

Comes Now Defendant, Doctor Patrick Byrne, by and through undersigned, and hereby files this reply to Dominion's Response (Docket No. 135) to Dr. Byrne's Objection to the Magistrate's Memorandum Opinion and Order Disqualifying Counsel, stating as follows.

1

## INTRODUCTION

Dominion continues to obfuscate its criminal activities by misleading this Court as to the progression of events that occurred leading to the Magistrate's ruling to disqualify Dr. Byrne's chosen counsel and by seeking to impose additional onerous requirements on Dr. Byrne (when he has not agreed to represent himself). By having misled the Court, Dominion has continued to obtain favorable discovery orders and take actions and make decisions *knowing full well* that Dr. Byrne is not represented by counsel, is not a lawyer, and cannot represent himself.

Dr. Byrne specifically noted in his motion objecting to the Magistrate's order that this was occurring, and yet, no action has been taken, and Dominion has been allowed to exploit the time in which Dr. Byrne has been without legal representation. Indeed, the discovery process has continued to play out at the urging of Dominion, who removed Dr. Byrne's counsel from the case, disallowed her filings, ignored Dr. Byrne's formal objections to the discovery's continuation, refused to recognize that he has declared he wants undersigned as his attorney and does not wish to represent himself, and has continued to unilaterally contact Dr. Byrne and his prior counsel knowing full well that Dr. Byrne is unrepresented.  Meanwhile, Dominion has compelled numerous witnesses to appear for depositions in his case, and not the co-defendants' cases, knowing that he is unpresented and unable to appear and

participate. At this point, this constitutes a court sanctioned violation of Dr. Byrne's constitutional rights to due process and to defend himself in a civil lawsuit in which Dominion is seeking over 1.6 billion dollars in damages.

Dominion has steamrolled the discovery, holding depositions without Dr. Byrne's ability to participate and be represented by counsel of his choice. Simply allowing Dr. Byrne to file an objection, without waiting for a ruling from the Court on that objection, was an empty gesture because Dominion has been dictating the entire discovery process.

Again, this is a defamation claim against Dr. Byrne for 1.6 billion dollars, and Dominion is taking full advantage of the violation of Dr. Byrne's constitutional rights and conducting critical discovery without him. The following is a reply to Dominion's response.

### 1. Dr. Byrne Cited the Legal Authority Justifying Disclosures of Protected Information Under Certain Critical Circumstances

Dominion claims that Dr. Byrne cited no legal principles justifying the disclosure of information ostensibly protected by the court's civil protective order. First, and most importantly, there is nothing in the protective order that exempts the information disclosed from *criminal investigations*. If law enforcement could not investigate potential crimes because a protective order in a civil case could be used to shield the perpetrators, then the courts would become a safe haven for criminals.

Second, Dr. Byrne's objection made clear that in matters of health, safety, welfare, and national security there are exceptions that have been recognized in which information ostensibly protected by a civil protective order have been disclosed to law enforcement and public authorities to immediately and fundamentally change the course of action due to the imminent danger to society. Dr. Byrne cited the examples of agent orange, tobacco, and pharmaceutical cases in which, in a very similar strategy to that being engaged in by Dominion, certain companies and industries, after imposing criminally dangerous elements upon society, affirmatively sought to hide the nature of information that exposed threats to life and safety of the citizens of the United States, and people worldwide for that matter. The imminent harm to the public in those cases was seen as justifying the exposure of this information despite it being subject to "civil" protection. Here, not only is the information that was disclosed an imminent threat to national security – the integrity and viability of national elections in the United States, which constitutionally require that the electorate (that is the legally registered citizen voters of the United States of America) are allowed to freely and fairly choose who they want to represent them. If the processes available for that constitutional guarantee cannot be trusted, and can be adulterated and manipulated at will by foreign actors, then Americans no longer have the constitutional right that is the most fundamental

3

of all – the right to vote, to have one's vote counted, and *not to have* it diluted by fraudulent votes is the fundamental, constitutional right preservative of all other rights.

According to the United States Constitution, and as affirmed by the Supreme Court, every legally registered citizen voter is guaranteed the fundamental right to vote, to have their vote counted properly, and to not have their vote diluted, deleted, or otherwise adulterated by fraud, mistake, neglect, or other malfeasance, misfeasance, or malfunction in the running and operating of elections. *United States v. Classic*, 313 U.S. 299, 314; 61 S. Ct. 1031; 85 L. Ed. 1368 (1941); *Reynolds v. Sims*, 377 U.S. 533, 560-563; 84 S. Ct. 1362; 12 L. Ed. 2d 506 (1964). No constitutional right is more fundamental than the right to vote, for if that is lost to fraud, deceit, mistake, and/or basic neglect and incompetence, then all of the other fundamental, individual, constitutional rights guaranteed to every citizen of the United States is rendered irrelevant and meaningless. The Supreme Court of the United States has recognized the "political franchise" of voting as a "fundamental political right, because preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 371; 6 S. Ct. 1064; 30 L. Ed. 220 (1886). "[T]he right…is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political

rights." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667; 6 S. Ct. 1079, 1085 (1966). A vote cast is an assurance to the one exercising that right that their choice of who will represent them will be properly recorded. See, e.g., *Reynolds*, 377 U.S. at 560-563. If the government cannot guarantee that this sacred right will be protected, and not destroyed or threatened, then there is no basic security or safety in the placing of any trust in those who claim to be elected to represent the people. *Id.*, see also, *Harper*, supra and *Classic*, 313 U.S. at 314; citing, inter alia, *Yarbrough*, 110 U.S. at 662

Dominion has clearly sought to disqualify Dr. Byrne's counsel during the critical stages of his defamation case because they know that she understands the issues and has successfully exposed the defects, flaws, collusion, and corruption in the use and exploitation by foreign entities and foreign nationals of Dominion's voting machine systems throughout the country. Moreover, Dr. Byrne's defense is based in part on the truth of the matters he is exposing, and for which Dominion is seeking to claim defamation and recover an enormous sum of money. If he is not being allowed to participate in his case, if his chosen counsel, who is a nationally recognized expert in these matters is not allowed to participate, and the discovery process is being allowed to continue in his absence, then it cannot be claimed that Dr. Byrne has been provided with his constitutional right to defend himself in a court

of law. The court cannot sanction the stripping away of a citizen's constitutional rights to the benefit and advantage of another party. If such were the case, then the word justice has no meaning.

Further, Dominion claims that there is a threat to national security. Interestingly enough, Dr. Byrne himself claimed this in his objection to the Magistrate's order. But, the national security threat is not in an ostensible breach of the protective order to law enforcement and congressional task forces, it is rather allowing criminal elements to be involved in national elections – that is a threat to national security because foreign actors can manipulate U.S. elections at will, influence and change election results, and do so for the highest bidder, or simply to cause chaos and uncertainty among the population. Dominion has hidden this information from the public. Dr. Byrne certainly agrees that the national security of the United States of America is at stake and the government is entitled to information pertaining to these ***actual and current*** national security threats.

As noted in Dr. Byrne's objection, numerous indictments were just filed related to multiple Smartmatic employees and developers. Smartmatic people still work for Dominion. On August 8, 2024, JUAN ANDRES DONATO BAUTISTA, ROGER ALEJANDRO PINATE MARTINEZ, JORGE MIGUEL VASQUEZ, and

EMILIO MORENO were indicted by the United States Department of Justice. Attachment 4 to Dr. Byrne's Objection.

In 2005, Smartmatic purchased Sequoia. In 2009 Dominion purchased Sequoia. There is little difference given the overlap and involvement by and between Dominion and Smartmatic given the number of former Smartmatic employees now working for Dominion. David Moreno (of Dominion) is the brother of Emilio (of SMARTMATIC), who was recently indicted. David Moreno is also brother-in-law to another of the indicted defendants. These facts and circumstances are real and it is not Dr. Byrne's or Dr. Byrne's counsel's imagination that these criminal elements are intertwined and involved with Dominion. No less than 25 individuals who were with Smartmatic remain with Dominion today.

Critical assets are supposed to be protected from foreign interference and attack. The fact that Dominion is using the civil litigation process as a weapon to attempt to silence critics, and continue to hide the truth demonstrates their true intentions. This also shows an intent on its part to hide the truth because the truth is a defense to the allegations lodged against Dr. Byrne.

Dominion uses its significant advantage from all scrutiny to run roughshod over Dr. Byrne's rights, and attempts to smugly convince Your Honor to enter an order further extending the time in which Dr. Byrne will be unrepresented, and to

7

simply deny the objection. It cannot be stressed enough that Dr. Byrne has filed multiple motions and requests to lift the protective order from March to the present, and those motions were never ruled on, despite the fact that Dr. Byrne and his counsel were at all times complying with the protective order, and following the Magistrate's instructions to seek relief. Conveniently, there were no hearings or rulings by the Magistrate on these motions and Dominion's "emergency" motion filed in March, was not ruled upon until August. Conveniently, this was right at the time that Dr. Byrne's counsel was to depose key witnesses and glean critical information pertinent to his defense. The Magistrate has been misled by Dominion at the expense of Dr. Byrne's rights in keeping with Dominion's strategy.

When Dr. Byrne's counsel deposed John Poulos, the Dominion CEO under investigation for perjury, he walked out of the deposition without completing it and refusing to answer questions, and Dominion canceled the deposition. Goran Obradovic, is the president of the Canadian-Serbian business association (CANSEE) and a leader in developing a "digital" silk road/ one belt one road initiative with China. was to be deposed that same week. That deposition was also canceled as it became clear that Obradovic should not enter the United States to answer Dr. Byrne's counsel's questions under oath due to the exposure of the involvement of

8

Obradovic and these foreign nationals who are also meddling in elections with the help of Dominion.

Dominion attempts to make it look like the Magistrate was addressing the matters pertinent to its "emergency" motion, but in reality, Dominion was misleading and distracting the Magistrate by seeking supplemental orders continuing to make allegations against Dr. Byrne and his counsel.

In fact, Dominion exploited the Magistrate by distracting and misleading her and to keep her from addressing Dr. Byrne's motions to lift the protective orders and seek further relief, and all of the the pertinent arguments, information, and evidence he presented therein during the March through August 2024 time frame (the time that Dominion's "emergency" motion was pending) and the Magistrate's allowances for Dominion to file supplement after supplement, for which no hearings were held, but which evidence and information was referred to again and again by Dominion (and the Magistrate) as factual allegations and arguments that have not been refuted. What better way to prevent someone from defending themselves but to be able to rely on unilateral assertions without any hearings.  Dr. Byrne was not given the opportunity to respond to all of Dominion's supplemental filings.  Unfortunately, Dr. Byrne's motions to lift or for relief were never ruled on because Dominion

9

misled the Magistrate and distracted her by filing its supplemental filings, and Dr. Byrne was not given an opportunity to respond.

The Magistrate's ruling depended on a case which was not a published opinion to conclude that the disqualification may occur outside the context of irreconcilable attorney-client conflicts.  This is not the case.  As clearly explained in Dr. Byrne's brief, at pages 10 through 11, the case cited as justifying the Magistrate's recommendation WAS IN FACT REVERSED and the attorney reinstated. See *Koller by and through Koller v. Richardson-Merrell, Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984), vacated on other grounds, *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985). There, the Court reiterated that "[t]he attorney is the client's choice" and "disqualification is wasteful and time-consuming." *Koller v. Richardson-Merrell*, 737 F.2d at 1056. And, the Court said that the only time counsel should be disqualified is "where there is…a serious question as to counsel's ability to act as a zealous and effective advocate for the client, see, e.g., *Groper v. Taff*, 717 F.2d 1415, 1418 (D.C. Cir. 1983); *Yablonski v. UMW*, 448 F.2d 1175, 1179 (D.C. Cir. 1971), or a substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party, *cf. Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 501 F. Supp. 326, 329 (D.C. Cir. 1980),

or prior responsibility as a government official, see *Kessenich v. Commodity Futures Trading Com.*, 221 U.S. App. D.C. 314, 684 F.2d 88, 97 (1982).

Here, the effects of this disqualification has occurred under these specious circumstances where it has never been allowed before. Combined with the fact that that there has been no pause or relief pending the outcome only exacerbates the failures to protect a litigant's rights. The fact that the Magistrate found no case in which disqualification was warranted under the circumstances demonstrates *de facto* that the Magistrate's decision was patently erroneous and must be reversed on the question of disqualification.

A word about the "clear error" standard that Dominion advances as applicable here. Again, Dominion fails to cite the underlying rationale of its position – it posits that the decision by *a Magistrate* to disqualify counsel being a non-dispositive matter, is subject only to the "clear error" standard. This is another half-truth obfuscation by Dominion designed to sound good, but with no real substance once the underlying foundations of the reasoning is examined. A decision by a Magistrate that has jurisdiction only over discovery matters to disqualify the counsel of choice of a litigant cannot be reviewed for clear error because that decision is fundamentally without the auspices of the magistrate's powers and authority. The judge of the Article III court must decide the issue de novo, and that would be the same standard

of review on appeal as well. In the context of discovery proceedings, a decision disqualifying counsel has no place to be ultimately and dispositively decided by the Magistrate – it is not the type of non-dispositive *discovery* matter within the scope of the Magistrate's powers. Further, where the district court's position (here the Magistrate) does not provide it with significant advantage over the reviewing appellate court and it is not in a position to be automatically protective of the constitutional rights of the litigants because its efforts are focused on a secondary issue (here discovery), the de novo standard is applied. *United States v. Evanson*, 584 F. 3d 904 (10 CA 2009).

The decision to disqualify counsel is reviewed de novo, and the cases holding so emphasize that disqualification motions are viewed skeptically due to their potential for abuse to secure tactical advantage. The legal interpretation of ethical norms in disqualification cases is reviewed de novo, especially when important constitutional rights are implicated. *United States v. Bolden*, 353 F.3d 870 (10 CA 2003). Clearly, the fact that Dominion sought to disqualify Dr. Byrne's counsel during the most critical aspects of discovery, and the fact that the Magistrate ruled on the issue during this most critical time proves that Dominion was doing this purely for strategical reasons – the exact reason that motions to disqualify are

12

reviewed with great skepticism and only granted where there is a glaring conflict of interest in the representation of the lawyer under scrutiny and his or her client.

In summary, the standard of review for disqualification of counsel is de novo, particularly when the decision involves the interpretation of ethical rules or constitutional principles, as supported by multiple cases across different jurisdictions. Clear error cannot be the standard applied by this Court to the significant question of disqualification, especially where the Magistrate does not control the substantive legal matters in the case beyond discovery and that are deserving of full attention of the Article III judge presiding over the interpretation and application of the law and legal rulings that must be made to protect the substantial rights of all parties in the litigation. Like so many of its other arguments, Dominion "wishes" for the standard of review to be "clear error" and believes that it will be so, without providing any substance beneath its bald and brazen assertions. It is not surprise, since Dominion has launched attacks and affirmative suits against everyone and anyone that dares to expose the truth behind its failed and flawed criminal enterprise.

### *2. Dominion Continues to Mislead with its Assertions of Fact*

In addition to the legal principles supported by Dr. Byrne's objection, there are factual allegations made by Dominion that are false and which have been discredited by Dr. Byrne and his counsel.

As detailed in Dr. Byrne's objection, and as further explained herein, Dr. Byrne and undersigned complied with the requirements that counsel and staff who were working on the case had signed verifications agreeing to comply and abide by the protective order. Dominion simply repeats its unilateral and unsupported assertions that the fact that staff and other attorneys working with Dr. Byrne and his chosen counsel had access (or may have had access to) information from discovery pertinent to Dr. Byrne's defense that this somehow constituted a violation – where Dr. Byrne's undersigned and others who were assisting Dr. Byrne signed the verification and agreed not to violate the protective order.

Dominion again asserts that Dr. Byrne's counsel misrepresented that an attorney filed a pleading for her instead of her, while she was changing counsel in her case in Michigan. Again, Dominion embellishes and hides the exact details provided by Dr. Byrne's counsel – the fact that a caption may have shown a pro se label attached to undersigned's name while she was changing lawyers did not mean that her new lawyer did not facilitate the filings.

Dominion lifts a partial sound byte quote from the Magistrate's opinion and makes it appear that Dr. Byrne's counsel gave the information to law enforcement unilaterally and without compulsion. First, as explained on numerous occasions by Dr. Byrne's counsel, as an attorney in Michigan (as all attorneys do) she had an obligation to report crimes to law enforcement. She did this and turned over evidence thereof to a law enforcement official who was already conducting an investigation.

Dr. Byrne's counsel did not destroy evidence, and did not do so by directing Dr. Byrne to delete anything on his social media accounts – because doing so would not and does not destroy evidence – this is belied by the fact that the record contains the social media posts and their content. Again, Dominion dresses up factual assertions to make them appear to be what they are not.

Responding to subpoena in criminal cases is not prohibited by the protective order, and it could not be, as Dr. Byrne and his counsel have explained on many occasions, the compulsion to produce evidence of criminal conduct in criminal cases cannot be thwarted by the strategic filing of civil proceedings and litigation. This was demonstrated in the cases cited in Dr. Byrne's objection, where the courts refused to protect information that had a direct and imminent bearing on the health, safety, and welfare of the public.

WHEREFORE, for the foregoing reasons, the Court should deny and reverse the Magistrate's disqualification order and further order an immediate halt to all discovery proceedings involving Dr. Byrne and the Dominion case against him.

If the Court has any questions, then the Court should order a hearing to fully understand the facts and to allow Dr. Byrne's counsel to present the evidence contrary to Dominion's misleading assertions.

Respectfully submitted,

/s/ Stefanie Lambert

_____

Stefanie Lambert Juntilla
Law Offices of Stefanie L. Lambert, PLLC
400 Renaissance Drive, FLOOR 26
Detroit, MI 48243
attorneylambert@protonmail.com

Dated:  September 18, 2024

CERTIFICATE OF SERVICE

I, Stefanie Lambert, hereby certify that on September 18, 2024, true and correct copies of the foregoing were served via email on counsel of record for every party in *US Dominion, et al. v. Patrick Byrne*, Case No. 1:21-cv-02131 (CJN / MAU).

Respectfully submitted,

/s/ Stefanie Lambert

_____
Stefanie Lambert Juntilla
Law Offices of Stefanie L. Lambert, PLLC
400 Renaissance Drive, FLOOR 26
Detroit, MI 48243
attorneylambert@protonmail.com