UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

US DOMINION, INC., *et al.*,

        *Plaintiffs*,

  v.

PATRICK BYRNE,

        *Defendant*.

Civil Action No. 1:21-cv-02131 (CJN)

## ORDER

On June 8, 2023, the parties jointly moved for an order to govern the handling of information shared through discovery. *See* ECF 45. The Court thereafter entered a Protective Order expressly mandating (among other things) that:

> *Any Discovery Material produced in the Litigation will be used … solely for purposes of this Litigation and no Receiving Party will provide Discovery Material to any person or entity (including for any other litigation) or make any Discovery material public except as permitted by this Order and in this Litigation.*

ECF 46 at 3 (emphasis added). The Protective Order also requires that, if a party receives a subpoena to produce certain discovery material, it must inform the other party and object to producing the material.[1] *Id.* at 18–19.

On March 12, 2024, attorney Stefanie Lambert entered her appearance on behalf of Defendant Patrick Byrne. Three days later, Plaintiffs moved to disqualify Lambert, accusing her of violating the Court's Protective Order by (1) publicly filing, in a Michigan criminal case against

---

[1] This requirement applies to subpoenas seeking material that the producing party has designated as confidential or "attorneys' eyes only." The Protective Order creates avenues for challenging such a designation. *See id.* at 3–4, 13–14.

her, documents that were produced here pursuant to that Order; and (2) providing to a Michigan sheriff her username and password so that he could access the discovery database (which included documents produced pursuant to the Order).  *See* ECF 75 at 9.  Lambert did not deny that she disclosed the documents, that the Michigan sheriff accessed the database, or that the materials were thereafter viewed thousands of times, but she asserted that the documents were not protected by the Order and that, even if they were, she was entitled to give them to law enforcement.  *See* ECF 76 at 28.

Magistrate Judge Upadhyaya thereafter entered a so-called Status Quo Order, which was intended both to cure (to the extent possible) the dissemination of materials subject to the Court's Protective Order and to prevent further violations during the pendency of Plaintiffs' motion.[2]  *See generally* ECF 77.  Five months later, Judge Upadhyaya disqualified Lambert, holding in a lengthy and thoughtful opinion that Lambert violated both the Protective Order and the Status Quo Order and that no lesser sanction was appropriate.  *See* ECF 126.  Lambert challenges that decision.

**Analysis**

Putting aside a few exceptions not relevant here, disqualification is appropriate only "in cases of truly egregious misconduct likely to infect future proceedings."  *Koller ex rel. Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984), *vacated on other grounds*, *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985).  The parties dispute what standard of review applies to Judge Upadhyaya's decision that disqualification was appropriate here. But the Court need not resolve that dispute, since it would affirm that decision even if it were reviewing the disqualification *de novo*.

---

[2] The Court referred all discovery disputes in this case to Judge Upadhyaya.  *See* Minute Order, January 31, 2024.  The Court also referred to her the motion to disqualify Lambert.  *See* Minute Order, April 15, 2024.

To begin, Judge Upadhyaya correctly decided that Lambert violated the Protective Order. That Order expressly provides that discovery material can be used "solely for purposes of this Litigation," that it will not be given "to any person or entity (including for any other litigation)," and that it will not be made "public except as permitted by this Order and in this Litigation." Lambert, however, gave a sheriff unrestricted access to the entire discovery database. And even if, as Lambert argues, an implied exception to the Protective Order allowed her to disclose the materials to law enforcement officers (it did not), that exception would not excuse her having filed the documents on a public docket. To the extent Lambert believed the public had a right to access the discovery materials, she was required to seek approval from the Court for that disclosure. Instead, after agreeing to use discovery material only as permitted by the Protective Order, *see* ECF 75-9, she unilaterally decided to disseminate it publicly.

It's possible that disqualification would not have been warranted had things stopped there; a lesser sanction might have sufficed if, for example, Lambert demonstrated that she had made a genuine mistake about the Protective Order and that she would comply with it in the future. But Judge Upadhyaya did not disqualify Lambert solely for her initial acts. Instead, Judge Upadhyaya entered the Status Quo Order and gave Lambert five months to show that she would not continue to jeopardize the confidentiality of discovery materials. *See* Tr. 5/16/2024 at 60:24-61:2 ("I want to make it very clear that going forward if I see any evidence that violates this [status quo] order, I'm going to take that into account in my final resolution [of Plaintiffs' motion]."). Lambert failed to do so.

It is true that Lambert's misconduct during the status quo period was not as egregious as her initial violations, at least insofar as she did not leak any new documents. But during that period, the bar for compliance had become higher; for good reason, the Status Quo Order imposed

additional obligations.  For example, that Order required that Lambert "undertake every reasonable effort to remove" the filings in the Michigan docket "from the public record and file them under seal instead."  ECF 77 at 2.  Lambert claims that she raised the issue with her counsel in that case; but when her counsel refused to file the documents under seal, Lambert apparently stopped attempting to comply with the requirement and did not inform Judge Upadhyaya of her unsuccessful attempt.  *See* ECF 126 at 37–38; Tr. 5/16/2024 at 29–31.  That half-hearted effort falls far short of taking "every reasonable effort" to remove the documents from the public record and file them under seal.

The Status Quo Order also required that Lambert "immediately desist from sharing, distributing, providing access to or discussing any discovery material."  ECF 77 at 1.  However, the day after the hearing at which Judge Upadhyaya issued that Order, Lambert stated to ABC News that "[t]he Dominion file contained evidence of perjury … Honest Service Fraud, Wire fraud, etc."  ECF 126 at 15 (emphasis omitted).  And just a few weeks later, Lambert again discussed the discovery material during an interview.  *See* ECF 102-1 at 23 ("I was immediately able to spot a number of different criminal pieces of evidence—a lot, ok? Not just one document or two.").[3]

During this later period, Lambert also ignored (if not violated) at least two parts of the original Protective Order.  First, that Order obligates Lambert to "make reasonable efforts to prevent disclosure of … Discovery Material by each unauthorized person who receive[d] the information" she leaked.  ECF 46 at 20.  When Lambert appeared on a podcast and the host began discussing the leaked documents, Lambert did not attempt to stop him.  Instead, she encouraged

---

[3] For convenience, the Court cites to Plaintiffs' transcripts of Lambert's interviews.  The Court has watched the interviews and verified that the transcripts are accurate.

the host to invite onto the show the sheriff to whom she had provided access to the discovery database.  ECF 102-1 at 22.  Second, the Protective Order obligates any party who "receives a subpoena or other compulsory process seeking the production" of confidential discovery material to "object to the production of" that material "on the grounds of the existence of this Order."  ECF 46 at 18–19.  When Lambert informed Plaintiffs that she had received a subpoena to produce confidential material, she indicated that it was Plaintiffs' burden to object.  *See* ECF 108-9 at 6.  After Plaintiffs pointed her to the Protective Order's clear language to the contrary, Lambert repeatedly failed to confirm that she would object to the subpoena.  *See* ECF 108 at 3–4; *see generally* ECF 108-9.

In short, after it became clear that Lambert had engaged in egregious violations of the Protective Order, she should have taken every step possible to show that those would remain isolated incidents.  Instead, she violated the Status Quo Order and, at best, skirted around the edges of the Protective Order.  That conduct—combined with Lambert's view, expressed both before Judge Upadhyaya and now before this Court during the October 17, 2024 hearing, that she was entitled to leak discovery materials because she believed doing so to be in the public interest— creates a real and continuing risk that Lambert might again leak confidential information.  Judge Upadhyaya thus correctly concluded that Lambert's continued violations were "likely to infect future proceedings," *Koller*, 737 F.3d at 1056, and that no sanction short of disqualification would suffice.

Accordingly, it is **ORDERED** that Defendant's Motion for Order, ECF 133, is **DENIED**.

DATE:  October 22, 2024

_____
CARL J. NICHOLS
United States District Judge

5