# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| U.S. DOMINION, INC., et al., | |
| *Plaintiffs / Counter-Defendants*, | Civil Action 1:21-cv-02131 (CJN) |
| v | |
| PATRICK BYRNE, | |
| *Defendant*. | |

---

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION FOR RELIEF FROM ORDER (DOCKET NO. 144)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................iii

INTRODUCTION ......................................................... 5

DISCUSSION AND ANALYSIS ................................................ 7

CONCLUSION AND REQUESTED RELIEF ........................................... 23

TABLE OF AUTHORITIES

**Cases**

*Bisig v. Time Warner Cable, Inc.*,
    940 F.3d 205 (6th Cir. 2019) ...................................................................8

*Cmty. Dental Servs. v. Tani*,
    282 F.3d 1164 (9th Cir. 2002) ...............................................................22

*Gilbert v. West Caribbean Airways*,
    715 F.3d 1290 (11 CA 2013) ..................................................................14

*Groper v. Taff*,
    717 F.2d 1415 (D.C. Cir. 1983) .............................................................23

*In re "Agent Orange" Product Liability Litigation*,
    821 F.2d 139 (2d Cir.)............................................................................18

*Kessenich v. Commodity Futures Trading Com.*, ....................................
    221 U.S. App. D.C. 314, 684 F.2d 88 (1982).......................................23

*Koller by and through Koller v. Richardson-Merrell, Inc.*,
    737 F.2d 1038 (D.C. Cir. 1984).............................................................23

*Murray v. Metro Life Ins. Co.*,
    583 F.3d 173 (CA 2, 2009) ......................................................................8

*Pub. Citizen v. Liggett Grp., Inc.*,
    858 F.2d 775 (1st Cir. 1988)..................................................................18

*Static Media LLC v. Leader Access. LLC*,
    38 F.4th 1042 (Fed. Cir. 2022) ..............................................................11

*Stough v. Mayville Cmty. Schs.*,
    138 F.3d 612 (6th Cir. 1998) ...................................................................8

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*,
   501 F. Supp. 326 (D.C. Cir. 1980)..........................................................................23

*Woods v. Covington County Bank*,
   537 F.2d 804 (5th Cir. 1976) ...............................................................................23

**Rules**

Fed. R. Civ. P. 60 .............................................................................. 14, 22

<u>INTRODUCTION</u>

Defendant, Patrick Byrne, herein requests relief from this Court's Order issued Tuesday, October 22nd, which ordered the removal of Dr. Byrne's counsel from these proceedings. (Docket No. 144). This motion for relief from that order is based on additional evidence of which the Court was not made aware and the legal standard applied to the unique circumstances of this matter, which caused the Court to err in its ruling.

The motion is also brought because of the legal standard applied to the question concerning release of information governed by the protective order in this case. The Court erred in its conclusion to include governmental entities (including law enforcement) among the entities with which information covered by the protective order *could not be shared under any circumstance*.

Contrary to the Court's findings, Dr. Byrne's counsel did not divulge or otherwise share information that was governed by the protective order when speaking about the case during interviews and podcasts. Dominion has once again misled the court as to what was stated. Ms. Lambert did discuss the legal standards applicable to the release of the information to law enforcement and governmental entities, but did not violate the protective order during those interviews. Moreover,

Ms. Lambert has other cases in which Dominion is the opposing party, and she spoke about those cases as well.

There is also exculpatory evidence that had been intentionally withheld concerning Dr. Byrne's counsel in her case in Michigan, which evidence was just revealed on Sunday, October 20, 2024. The fact that Dominion continued to implicate Dr. Byrne's counsel in the criminal allegations in Michigan improperly skewed the Court's decision to disqualify her from representing Dr. Byrne. The exact reasons that motions to disqualify counsel are viewed with great skepticism is because they are interposed for tactical purposes and that has been patently manifest in this case in the way in which Dominion has misled the court as to the facts, as well as Dominion's constant interjection of the weaponization of corrupt criminal justice system being used against Dr. Byrne's counsel. Not only has Dominion attempted to hide its crimes, but it has provided the court with false and misleading information concerning these matters. Dr. Byrne chose undersigned because she is a leading attorney with expertise in the areas concerning the allegations that have been lodged by Dominion. Dominion is well aware of this, and it is why Dominion has sought to disqualify her from representing Dr. Byrne.

Dominion has utilized the process of disqualification of counsel as a matter of its strategy and tactics in this defamation case. Clearly, Dr. Byrne chose his counsel

due to her expertise and experience in the subject matter underlying Dominion's claims. This choice of counsel is paramount to Dr. Byrne's rights to have counsel of his choice represent him, especially in a lawsuit claiming over 1.6 billion dollars in damages. The ordinary legal standards applicable to disqualification of counsel are rightly reserved *only* for situations in which the court must protect the represented party from the risks where their chosen counsel has insurmountable conflicts of interest and cannot be allowed to serve as the party's counsel. Here, Dominion's strategy has been to skew the court's understanding of the facts concerning the release of information only to law enforcement and for the purposes of legitimate ongoing investigations into matters concerning Dominion's national and international activities. Moreover, Dominion has injected false and factually incorrect information to disparage Dr. Byrne's counsel of choice, which has misled the court to view said counsel in an improper light. Moreover, additional exculpatory evidence that has been withheld from Dr. Byrne's counsel has been discovered, which refutes Dominion's narrative, and which therefore must be assessed by this Court.

## DISCUSSION AND ANALYSIS

In assessing a motion for relief from judgment, a court will consider whether in issuing the order or judgment, it relied on *clearly erroneous findings of fact*,

*improperly applied the law*, or *used an erroneous legal standard*." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019) (emphasis supplied) (quoting *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998)).

The first legal standard with which to orient the Court's focus on the disqualification of counsel is that while parties have standing to seek disqualification of counsel for the opposite party on conflict-of-interest grounds, courts must guard against the tactical use of motions to disqualify counsel when other reasons are cited. *Murray v. Metro Life Ins. Co.*, 583 F.3d 173, 178-79 (CA 2, 2009) (internal citations omitted). The key factor in identifying the sincere motion to disqualify from those that are used for strategic and tactical purposes to get rid of counsel lies in the cited reasons. Where concern that a lawyer has irreconcilable conflicts of interest and cannot represent a client without there being an appearance of impropriety is an easy litmus test to apply. In such cases, the concern and focus is generally protecting the *client* from the conflicted representation, or, in rare cases, protecting the opposing party who may be the ones affected by a conflict of interest. The judge in such a case can easily discern whether there is a conflict of interest, and if it is appropriate to allow the representation to go forward. These situations can also involve the client's input. Where there is no conflict of interest, and the *client* has clearly stated his or her preference that a lawyer represent them, the case for disqualification

8

essentially disappears.  There is no scenario where a lawyer is disqualified because the movant does not want them representing the opposition.  In such cases, and presumptions go *against* disqualification because it will be clear that the reason the movant is seeking to disqualify counsel is because they are disadvantaged by that lawyer's representation of their opponent.  All other *reasons* for disqualification fall upon the court, and generally, the court's decline to issue disqualification at the behest of the movant because doing so would be taking sides and propagating the unethical strategy of kneecapping the opposition by taking away their chosen legal representative, which will presumably be the best advocate for the opposition *against* the movan.  Therefore, such motions are subject to strict scrutiny, and a lawyer can *only* be disqualified if the movant proves the necessary grounds by "clear and convincing evidence."  *Murray*, *supra* at 178-179.

Here, Dominion has failed to prove by clear and convincing evidence that the protective order and the status quo order were violated in a manner sufficient to justify disqualification of Dr. Byrne's counsel.  First, and foremost, the Court was persuaded that the Magistrate's conclusion that Dr. Byrne's counsel violated the protective order by dissemination or sharing protected information in various interviews and podcasts.  However, a review of those materials reveals that Dr. Byrne's counsel *only discussed the law applicable to the information* and not the

9

actual information. The Magistrate concluded, and this Court agreed, based on Dominion's bare assertions that Dr. Byrne's counsel actually shared and/or disseminated protected information. This led the Court to make the factual findings that protected information was divulged during these interviews. This is in fact erroneous. Nowhere in the podcasts and interviews did Dr. Byrne's counsel disclose protected information, or otherwise violate the provisions of the protective order. Her carefully guarded statements deferred to the protective order and status quo order, while addressing the legal implications and status concerning the existence of the protected information.

Despite the demonstrations of Dr. Byrne's counsel at the hearing on his objection to the Magistrate's order, Dominion managed to convince the Court on allegations that are not in fact supported by the evidence. In fact, "referring" to many different pieces of evidence of alleged criminal acts is *not* the dissemination or disclosure of protected information – there is no such "information" in the statement. During the Joe Oltmann show, the interview was specifically prefaced on the grounds that Dr. Byrne's counsel was "not going to get into the any evidence or anything else for a couple reasons, one of which is [there's] still [a] protection order in place and although information. Of a crime, crimes, not crime, crimes being committed did happen. There is an investigation that is open. We cannot discuss

those things in this because [Dr. Byrne's counsel] herself is under that protection order."  Further into the interview, Dr. Byrne's counsel again clarified that the "law enforcement investigation[s]…underway…contain evidence of numerous criminal acts."  Again, this is a statement that is effectively a legal conclusion *about the evidence*, not what the evidence is or includes.

Referring to evidence of a crime and disclosing such evidence are distinct actions, particularly in the context of a protective order. Referring to evidence generally means mentioning or alluding to the existence of certain evidence without revealing its specific content or details.  Later, in the same interview, Dr. Byrne's counsel again confirmed that her statements to the press had been that the information contained "facts and evidence," of crimes.  This is not the same as disclosing the substance and content of that evidence.

Disclosing actual evidence, on the other hand, involves revealing the actual content or details of the evidence, which can violate a protective order if the evidence is protected.  In the case of *Static Media LLC v. Leader Access. LLC*, 38 F.4th 1042, 1046-47 (Fed. Cir. 2022), for example, the court found that there was no clear and convincing evidence that the protective order was violated by the mere act of disclosing the existence of information.  As with the contents of the interviews / podcasts under consideration here, the necessary precautions were taken to ensure

compliance with the protective order and the ground rules were established that the discussion of evidence of alleged criminal conduct was not violating the protective order.  *Id*.  Referring to the existence of the evidence, as much as referring to the evidence itself, without disclosing or otherwise detailing its substance or contents cannot serve as the basis for a violation.  Here, however, the Court accepted the Magistrate's findings without considering the nuance and Dr. Byrne's counsel's actual compliance in this regard with the protective order and status quo orders during this time period.

When this Court analyzed the statements made after the status quo order entered by the Magistrate, it acknowledged that Dr. Byrne's counsel stated that the "file contained evidence," referring to a quote from Dr. Byrne's counsel published by ABC News.  Again, this was not "disclosure," but rather a reference to the information.  The Court nonetheless concluded on the basis of this information that Dr. Byrne's counsel had violated the status quo order.  This was not and is not "clear and convincing" evidence.

Adding a layer of prejudice to the underlying matter, Dominion consistently highlighted the criminal case against Dr. Byrne's counsel in Michigan, implicating her in wrongdoing when no crime has been committed.  On Sunday, October 20th, Dr. Byrne's counsel was made aware of exculpatory evidence in her case.  The

special prosecutor misled the grand jury that indicted her on the basis of testimony from Michigan's Director of Elections.  Literally on the eve of the trial, evidence was discovered that the Secretary of State and Director of Elections lied to the grand jury by misrepresenting their authority under Michigan law.  See **ATTACHMENT A, Exhibit 4**.  In a motion filed by another attorney being prosecuted, it is detailed that this evidence proves that the grand jury's indictment was based on the perjured testimony of Brater, and was used to mislead the grand jury and secure an indictment.  *Id*.

Ms. Lambert was the opposing attorney prosecuting many civil matters and working on behalf of law enforcement in Michigan, when the Attorney General (her opposing counsel) weaponized her office, pierced attorney client privilege on her files, and used the Michigan Director of Elections along with a special prosecutor to obtain an indictment against Ms. Lambert.

On the eve of trial, Ms. Lambert received an exculpatory document signed by the Michigan Director of Elections indicating (1) that he had misrepresented the law to the grand jury and (2) that he knew all along that Ms. Lambert had not done anything illegal.  Since then Ms. Lambert has received 8 more exculpatory documents.  All of these were wrongfully withheld from the defense and only just discovered.  Ms. Lambert has maintained all along that she had never done anything

illegal, and now has the proof that the Attorney General and special prosecutor set up the entire prosecution by having the Michigan Director of Elections lie to the grand jury.

The additional exculpatory evidence was hidden by the prosecution in the Michigan litigation despite being requested by counsel for the defense, and it was discovered just as the prosecution's trial was getting underway. The trial has now been postponed upon the presentation of this evidence to the trial court.

The fact that Dominion used the prosecution of Dr. Byrne's counsel in Michigan to further its narrative, which was based on no violation of the law, and further no violation of the protective order or the status quo order constitutes prejudice to Dr. Byrne and his counsel sufficient to seek relief from the Court's order disqualifying her. Moreover, Dominion knows that Ms. Lambert is involved as counsel in other cases against it.

A motion for relief will be granted where newly discovered evidence is presented that bears upon the underlying reasons and justification for the order. Rule 60(b)(2) provides for relief based on newly discovered evidence that could not have been discovered with reasonable diligence in time for the court to consider. See, e.g., *Gilbert v. West Caribbean Airways*, 715 F.3d 1290, 1294 (11 CA 2013). By its very nature, the rule seeks to strike a delicate balance between two countervailing

14

impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done *in light of all the facts*." *Id*. (internal citation omitted).

In the instant case, the factual underpinnings of the Magistrate's ruling, which this Court adopted, were inaccurate and indeed, in the case of the Michigan prosecution based on fraud and the unlawful suppression of evidence.

This Court's order was also based on the incorrect conclusion that governmental entities and law enforcement agencies are included as "entities" within the meaning of the protective order.  As discussed at length in Dr. Byrne's objection, the initial disclosure of the information was only to law enforcement and official governmental parties conducting legitimate criminal investigations into matters at both state and federal levels involving Dominion.  The party claiming that a protective order has been violated to disqualify counsel must show by "clear and convincing" evidence that the order has in fact been violated.  The burden remains on that party throughout the course of the proceedings.

The basis for the initial conclusions that Dr. Byrne's counsel violated the protective order was on the basis that there is no exception which would permit the turning over of information to law enforcement during active *criminal* investigations into the conduct of one of the litigants, here, Dominion.  However, this Court did

not articulate or address the arguments that public interest would compel the release of information concerning potential crimes to law enforcement conducting active investigations into conduct that preceded the entry of a protective order. The Court also did not start from the prima facie presumption that all discovery material is preliminarily accessible for the protection of public health, safety, and welfare, and certainly for national security concerns. Finally, that there is no case that found violation of a protective order when evidence discovered in a civil suit is turned over to law enforcement is quite telling. The common-sense and ethical thing to do in such a situation is to actually notify law enforcement. There is no "attorney-client" privilege, or other ethical obligation by and between counsel for one party and the opposing side. The overriding ethical obligation is to turn over evidence of crimes, especially those that threaten national security, to law enforcement and governmental entities that have the immediate power and authority to investigate and prosecute criminal acts to serve their primary goal of keeping the public safe.

In this vein the Court's conclusion that law enforcement agencies and legislative members are "entities" within the meaning of the protective order is only relevant if the public interest exception is not present. Where law enforcement and legislative members are involved the duty and obligation to turn over the evidence of criminal activity overrides any definition in the protective order. To hold

16

otherwise would mean that no one ostensibly bound by a protective order could ever report a crime to law enforcement upon learning of such evidence. This proves Dr. Byrne's initial point that Dominion "secured" through subterfuge a protective order that is wildly (ostensibly universally) broad in its scope – such protective orders do not exist – underlying Dominion's flawed protective order is the actual proof needed to understand why Dominion sought to exclude *all information* from the public's view – where traditionally all information shared and revealed in civil litigation enjoys the prima facie presumption that it is absolutely subject to public disclosure. Compounded here is the fact that the information that Dominion seeks to hide is critical to the preservation of the Constitutional Republic of the United States. No wonder they sought absolute and total blackout of this information.

With the presumption of public disclosure as a prima facie starting point where a motion to disqualify is brought for improper, ulterior motives (here both to hide criminal activity from the public, who have utmost interest in free and fair elections *and* to disqualify their most knowledgeable and formidable opposition counsel), coupled with the fact that there are legitimate ongoing criminal investigations into Dominion, the Court clearly erred in granting Dominion's motion.

There is a further public interest exception, which the Court also did not address in its order.  However, there is a long-established common-law right of public access to documents that are of extreme public concern and interest.  This "tradition of accessibility" is significant where the public interest in future elections is concerned.  The right to public access is part of the rules itself, because the presumption is all litigation, and discovery is subject to public view and access.

If this were not the case, cases like those involving Agent Orange, tobacco companies, and Teflon would never have been exposed to the public.  See *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 145-46 (2d Cir.), *cert. denied*, 484 U.S. 953, 108 S. Ct. 344, 98 L. Ed. 2d 370 (1987), *aff'g* 104 F.R.D. 559, 567 (E.D.N.Y. 1985) and *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789 (1st Cir. 1988) (explaining the right of private citizens to access discovery material relevant to public health and safety).  The issues concerning the integrity of national elections, and those statements made by Dr. Byrne that are allegedly defamatory, are now actually corroborated by the information contained in Dominion's information.  The fact that the Magistrate failed to even rule on Dr. Byrne's motion to lift the protective order, ruled on an "emergency" motion to disqualify filed in March on August 13, 2024, just before two critical depositions were to be taken by Dr. Byrne's counsel, the foremost leading expert advocate and attorney in the country, who has

all the knowledge concerning Dominion's voting machine systems, their flaws, and the collusion and involvement by foreign nationals and foreign elements directly in federal elections, is telling. Dominion's only way to prevent the truth from being further exposed was to remove Dr. Byrne's counsel. The fact that this was done on the eve of the most important depositions and discovery events for his case is an indictment of the Magistrate's willingness to bend to the will of Dominion.

The Constitution demands that elections be fair, transparent, and lawfully conducted, and indeed, as discussed herein, it is the duty of the judiciary to ensure that information bearing on the fundamental constitutional right to vote inherent in every citizen be protected. Moreover, the performance of traditionally governmental functions, which include elections and the means by which elections are conducted, are even more of a significant public concern because, after all, it is supposed to be the people who decide by vote who represents their will, and those serving the people must be held to a higher standard when it comes to the election process. Dominion cannot simply say that it has no hand in the conducting of elections given the communications and information discovered to date.

Finally, throughout the pendency of Dominion's motion to disqualify Dr. Byrne's counsel and in multiple pleadings Dr. Byrne implored the court to stay or adjourn discovery as to his case because he was effectively without counsel after the

Magistrate's disqualification order. Rather than acknowledge that Dr. Byrne and his counsel were in this unique position, the Magistrate and Dominion proceeded as if Dr. Byrne's fundamental rights to due process and fair litigation are non-existent. Since August 13, when the Magistrate entered her order and before the 14 days had expired to file an objection, the Magistrate steamrolled this case over Dr. Byrne's rights knowing full well that she had removed his legal representation. Among other things, the Magistrate requested dispositive and critical proceedings to be held,[1] issued onerous orders to compel Dr. Byrne (without counsel) to comply under impossible timelines; ordered him to disclose information that violates his rights to confidentiality and privilege with his attorneys (without identified presence of counsel), and sought to invade protected work product;[2] made decisions regarding

---

[1] On August 13, 2024, the same day the Magistrate issued her opinion and order, she placed a "Minute Order" on the record stating: "The Parties shall appear for a virtual discovery status hearing on **August 20, 2024,** at 10:30 AM before Magistrate Judge Moxila A. Upadhyaya. **By August 16, 2024**, the Parties shall file one joint status report that lists the current remaining discovery disputes, the Parties' efforts to resolve them, and the order in which the Parties seek Court intervention to resolve the disputes. As part of this joint status report, the Parties shall update the Court on which if any disputes related to the Discovery Protocol they have resolved, and which disputes remain. SO ORDERED. Signed by Magistrate Judge Moxila A. Upadhyaya on 08/13/2024. (lchk) (Entered: 08/13/2024)."

[2] Among other things, the Magistrate's order required Dr. Byrne and undersigned to submit "sworn affidavits" by 5:00 p.m. Tuesday, August 20, 2024,detailing: "[t]he date of any fee agreement between Lambert and Byrne and the scope of representation or, if no such agreement exists, the date on which Lambert and Byrne understand that a lawyer/client relationship had formed; [a]an accounting from Byrne's outside vendor showing what documents Byrne and or Lambert accessed, on what date, and whether they were downloaded; [a] complete and accurate list of all Dominion-produced documents and information Lambert received and the method and

litigation and discovery that were irreversible and prejudicial (all the while Dr.
Byrne's legal defense and representation were, again, non-existent); colluded to
inform (ex parte via email) Dr. Byrne's prior counsel that certain proceedings are
occurring (a severe ethical violation in itself because these attorneys withdrew from
representing Dr. Byrne and Dr. Byrne chose to retain other counsel), bent to the will
of Dominion to rush through onerous requirements regarding handing of the
discovery material (Docket No. 128 (Notice of filing of order), made oral orders on
the record knowing full well that Dr. Byrne was not represented by counsel, and
scheduled final resolutions of discovery protocol (without Dr. Byrne's input or
presence) to be completed by Friday, August 23.[3]  All of this took place despite the

---

date of access; [a]n account of every step Lambert has already undertaken or that is underway to
determine the scope of the breach and to ensure it is not continuing; and [a]n accounting attesting
(i) to whom Lambert and/or Byrne leaked, released, or otherwise disclosed documents or
information protected by the Protective Order (including in court filings in any cases outside of
this case); (ii) how and when they provided it; (iii) every occasion on which they did so; (iv) for
each such instance, what specifically was leaked, released, or otherwise disclosed; and, if any of
those individuals signed an Undertaking pursuant to the Protective Order. If so, Lambert and Byrne
shall attach the Undertakings to their affidavits."  The Magistrate also ordered Dr. Byrne and
undersigned to "provide a detailed privilege log setting forth all sufficient detail of the
communication to allow Dominion to assess the claim of privilege…to the extent Lambert or
Byrne claim any of the material above is protected by the attorney-client privilege or work product
doctrine." (Docket No. 125).

[3]  After the August 20, 2024 "virtual discovery status hearing," held after the Magistrate
disqualified Dr. Bryne's counsel with immediate effect, and thus when Dr. Byrne was ostensibly
not being represented by counsel, the Magistrate ordered the "Parties to submit final Discovery
Protocol Order incorporating [the] Court's oral rulings no later than August 23, 2024."  Again,
Dr. Byrne ostensibly had no counsel when these "oral rulings" were made on the record without
him being present.

fact that Dr. Byrne advised the Magistrate on more than one occasion of his intention to exercise his rights to file an objection and specifically sought extensions, stays, and abeyances of these proceedings pending this Court's resolution. (Docket No. 127, Motion for Extension of Time; Docket No. 129, Motion for Stay and Abey pending filing of Objection).

This Court did not provide relief or address these blaring violations of Dr. Byrne's rights to have counsel of his choice present and able to represent him during the entire course of the litigation. One recognized reason for relief under Rule 60 is a party's inability to present his claim or defense due to some "extraordinary circumstances." Fed. R. Civ. Proc. 60(b)(6). See also, *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002). Indeed, "a party merits relief under Rule 60(b)(6) if he demonstrates extraordinary circumstances which prevented or rendered him unable to prosecute his case." *Id*. (internal quotations, alterations, and citations omitted). The fact that discovery continued to the great prejudice of Dr. Byrne, while his lawyer was not able to represent him, during the pendency of his motion objecting to the Magistrate's disqualification order, and where he specifically objected to the continuance on several occasions is another extraordinary circumstance warranting relief.

CONCLUSION AND REQUESTED RELIEF

"The attorney is the client's choice" and "disqualification is wasteful and time-consuming." See *Koller by and through Koller v. Richardson-Merrell, Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984). The only time counsel should be disqualified is "where there is…a serious question as to counsel's ability to act as a zealous and effective advocate for the client, see, e.g., *Groper v. Taff*, 717 F.2d 1415, 1418 (D.C. Cir. 1983); *Yablonski v. UMW*, 448 F.2d 1175, 1179 (D.C. Cir. 1971), or a substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party, cf. *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 501 F. Supp. 326, 329 (D.C. Cir. 1980), or prior responsibility as a government official, see *Kessenich v. Commodity Futures Trading Com.*, 221 U.S. App. D.C. 314, 684 F.2d 88, 97 (1982). "A court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976).

In the instant case, mistakes of fact and therefore incorrect factual findings were made by the Magistrate, which were compounded by the improper injection into these proceedings by Dominion of a criminal prosecution against Dr. Byrne's

counsel in Michigan, which was based on perjured testimony before a grand jury. Ms. Lambert has had the justice system weaponized against her and has beaten sanctions, grievances, and malicious prosecutions. Ms. Lambert is not asking the court to weigh in on those cases, but to see how Dominion has used these matters to deceive and sway the court in their effort to remove her from representing Dr. Byrne.

The Court did not have a full picture of the facts, and indeed, as demonstrated, the statements attributed to Dr. Byrne's counsel to the media and during interviews discussed the existence of evidence, not the substance or content thereof. This was not a violation of the protective order, or the status quo order entered by the Magistrate. Further, the Court erred in its conclusion that law enforcement and government officials were "entities" included within the scope of the protective order. The Court made this conclusion without analyzing or addressing Dr. Byrne's arguments that disclosure to these entities, which were conducting legitimate investigations met a well-established and recognized exception, which provides that information gleaned in discovery is prima facie available when the public's interest and national security are at stake. Finally, the Court erred in its relief without addressing the continuance by the Magistrate of the discovery proceedings, despite Dr. Byrne's multiple objections and requests for a stay or adjournment so that he could have legal representation during the course of the underlying litigation.

WHEREFORE, for the foregoing reasons, Defendant requests relief from the Court's order disqualifying Dr. Byrne's chosen counsel.

Respectfully submitted,

/s/ Stefanie Lambert

_____
Stefanie Lambert Juntilla
Law Offices of Stefanie L. Lambert, PLLC
400 Renaissance Drive, FLOOR 26
Detroit, MI 48243
Dated: November 15, 2024    attorneylambert@protonmail.com

25

<u>CERTIFICATE OF SERVICE</u>

I, Stefanie Lambert, hereby certify that on November 15, 2024, true and correct copies of the forgoing were served via email on counsel of record for every party in *US Dominion, et al. v. Patrick Byrne*, Case No. 1:21-cv-02131 (CJN).

Respectfully submitted,

/s/ Stefanie Lambert

_____
Stefanie Lambert Juntilla
Law Offices of Stefanie L. Lambert, PLLC
400 Renaissance Drive, FLOOR 26
Detroit, MI 48243

Dated: November 15, 2024          attorneylambert@protonmail.com

26