# ATTACHMENT A

# STATE OF MICHIGAN
## 6th CIRCUIT COURT IN THE
## COUNTY OF OAKLAND

**PEOPLE OF THE**                                  Case No. 2023-285759-FH
**STATE OF MICHIGAN,**

        Plaintiff,                              Hon. JEFFERY S. MATIS

*v.*

**STEFANIE LAMBERT,**

        Defendant.

_____/

**PROSECUTING ATTORNEY**          **HARTMAN LAW FIRM, PLC**
Dale J. Hilson (P57726)            Daniel J. Hartman (P52632)
Muskegon Prosecutor               Attorney for Defendant
Attorney for the People           PO BOX 307
990 Terrace Street, Fl. 5         Petoskey, MI 49770
Muskegon, MI 49442                (2310 348-5100
(231) 724-6435

_____/

# ATTACHMENT A

# STATE OF MICHIGAN

## IN THE 44th DISTRICT COURT FOR THE COUNTY OF OAKLAND

PEOPLE OF THE STATE OF MICHIGAN

      Plaintiff,                         Case No. 2024-24-00973-FY

v.

MATTHEW SCOTT DePERNO          HON. DEREK W. MEINECKE

      Defendant.

_____/

| | |
|---|---|
| Dale J. Hilson (P57726) | Michael J. Cronkright (P52671) |
| Tim Maat (P48691 | CRONKRIGHT LAW, PLLC |
| Heather Bloomquist (P80117) | Attorney for Defendant Matthew DePerno |
| MICHIGAN ATTORNEY GENERAL | 4601 W. Saginaw, Ste. J2A |
| SPECIAL PROSECUTOR | Lansing, MI 48917 |
| 990 Terrace St, Fl 5 | (517) 881-4643 |
| Muskegon, MI 49442 | Michael@cronkrightlaw.com |
| (231) 724-6435 | |
| HilsonDa@co.muskegon.mi.us | |
| MaatTi@co.muskegon.mi.us | |
| BloomquistHe@co.muskegon.mi.us | |

_____/

## DEFENDANT'S MOTION TO DISMISS CASE

      NOW COMES Defendant MATTHEW S. DePERNO, by and through his attorney,

MICHAEL J. CRONKRIGHT and CRONKRIGHT LAW, PLLC, moves this Court to dismiss

the indictment for the following reasons:

      1.      Matthew DePerno is a Michigan Citizen, an attorney licensed to practice law in

the State of Michigan, and at times relevant to this matter, was the attorney of record for William

Bailey who filed *William Bailey v Antrim County and Secretary of State Jocelyn Benson*, Antrim

County Circuit Court, Case No. 2020-9238-CZ on November 23, 2020 (the "Antrim litigation").

      2.      The Antrim litigation commenced after significant misapplication of votes in

favor of Joseph Biden were detected. The Antrim litigation was filed on November 23, 2020.

This Antrim Trial Court entered a "Decision and Order Regarding Plaintiff's Motion for an Ex Parte Temporary Restraining Order, Show Cause Order, and Preliminary Injunction" on December 4, 2020 (the "Antrim Order"). [Exhibit 1].

3.    Secretary of State Jocelyn Benson ("SOS Benson") moved to intervene on December 9. 2020. The motion was granted on December 20, 2020 and SOS Benson became a party defendant.

4.    Michigan Attorney General Dana Nessel ("AG Nessel") entered her appearance in the Antrim litigation through two of her Assistant Attorney Generals on December 09, 2020[1] Those Assistant Attorney Generals were Heather Meingast[2] and Eric Grill. It is beyond dispute that at this point, AG Nessel became opposing counsel to Mr. DePerno in the Antrim litigation.

5.    As set forth herein, Mr. DePerno has been indicted based on facts and circumstances that occurred while the Antrim litigation was pending.[3]

6.    During the pendency of the Antrim litigation, Mr. Bailey conducted discovery that was deemed relevant to issues raised in the complaint, relying on both the general civil court rules regarding discovery and on the order of the Antrim Trial Court which specifically authorized plaintiff Bailey to conduct a forensic investigation. The Antim Trial Court placed no limits on discovery other than by giving direction on the dissemination of proprietary materials obtained.[4]

---

[1]    Attorney General Nessel's original filing was a Motion to Intervene as Party Defendant.

[2]    Heather Meingast is currently the Division Chief for the Civil Rights and Elections Division for the Michigan Attorney General's office.

[3]    The People of the State of Michigan v Matthew DePerno, Oakland County Circuit Court, Case No. 23-285729-FH

[4]    See Antrim Order.

7.      During the Antrim litigation, Mr. Bailey filed 20 expert reports with the Antrim Trial Court regarding various aspects and progress of the forensic investigation.[5] The underlying investigation into the facts and substance of these reports were conducted by experts in the fields of computer science and computer forensics who were named on Mr. Bailey's expert witness lists. During the Antrim litigation, Mr. Bailey filed an expert witness list on December 30, 2020, and a First Amended Expert Witness List on April 8, 2021.[6]

8.      It is undisputed that Mr. DePerno served all discovery requests and activity (including subpoenas) on opposing counsel. The expert witness reports presented in detail the discovery conducted. Mr. DePerno properly filed all proofs of service regarding discovery with the Antrim Trial Court and served them on opposing counsel on that same date.

9.      It is also undisputed that SOS Benson and AG Nessel received and reviewed each expert report, but never filed a motion with the Antrim Trial Court claiming or arguing that Mr. Bailey or Mr. DePerno had exceeded the authority granted by the Antrim Trial Court to conduct a forensic investigation.

10.     The Antrim litigation was dismissed on procedural grounds on May 19, 2021. That decision was appealed to the Michigan Court of Appeals.[7] The plaintiff, Mr. Bailey, filed his Application for Leave to Appeal in the Michigan Supreme Court on June 02, 2022.[8] The Application was denied on December 09, 2022, thus ending the litigation. AG Nessel's involvement (as opposing counsel to Mr. DePerno) in the Antrim litigation was from December 9, 2020, until at least December 9, 2022, when the Supreme Court denied the Application for

---

[5]      https://www.depernolaw.com/all-expert-reports.html

[6]      James Penrose, Ben Cotton, Doug Logan, and Jeffrey Lenberg were all contacted during the investigation, Cotton and Lenberg were granted immunity.

[7]      COA Case No. 357838

[8]      MSP Case No. 164463

Leave. The entirety of the known investigation regarding the instant case occurred within that two-year window.

11.     On July 15, 2021, Mr. DePerno announced he was running for the position of Michigan Attorney General.

12.     On September 16, 2021, Mr. DePerno was officially endorsed by President Donald J. Trump. On September 17, 2021, AG Nessel announced that Mr. DePerno was the "clear front runner for the GOP nominee to challenge me next year."

13.     Throughout the Attorney General race, ending on November 8, 2022, AG Nessel repeatedly used the outcome of the Antrim litigation as a political weapon; accusing Mr. DePerno of multiple crimes, domestic terrorism, insurrection, and attempting to overturn the 2020 election. She claimed that Mr. DePerno illegally gained **undue possession of voting machines** in violation of MCL 168.932(b).

14.     Pursuant to MCL 168.932:

> Sec. 932. A person who violates 1 or more of the following subdivisions is guilty of a felony:
>
>          * * * *
>
> (b) A person not duly authorized by law shall not, during the progress of any election or after the closing of the polls and before the final results of the election have been ascertained, break open or violate the seals or locks of any ballot box or voting machine used or in use at that election. A person shall not willfully damage or destroy any ballot box or voting machine. **A person shall not obtain undue possession of that ballot box or voting machine.** A person shall not conceal, withhold, or destroy a ballot box or voting machine, or fraudulently or forcibly add to or diminish the number of ballots legally deposited in the box or the totals on the voting machine. A person shall not aid or abet in any act prohibited by this subdivision.

15.     Mr. DePerno has entered a plea of "not guilty" and vehemently denies any wrongdoing.

16.     On October 24, 2022, DJ Hilson "assigned as Special Prosecutor *on behalf of* the Office of Attorney General, acting for and in behalf of the People of the State of Michigan" filed a petition to impanel a citizen's grand jury in Oakland County. The grand jury heard testimony in this matter for three days from March 6, 2023 through March 8, 2023.

17.     Although working out of the Muskegon Count Prosecutor's Office, DJ Hilson, Tim Maat, and Heather Bloomquist are all acting on behalf of the Office of Attorney General and are referred to herein as the "Prosecution."

18.     During the grand jury, the Prosecution failed to present exculpatory evidence, willfully influenced the grand jury, failed to inform the grand jury on the proper law, threatened to indict certain witnesses (including local clerks), and presented facts in such a way to not properly conform to the law.

19.     Although they presented three days of testimony during the grand jury, the Prosecution was unclear on the law, the interpretation of MCL 168.932(b), or its meaning. Therefore, on March 9, 2023, Mr. Hilson filed a "Complaint for Declaratory Judgment" in Oakland County Circuit Court, Case No. 23-199245-CZ and asked the court to tell him what the law means.

20.     The Prosecution asked Judge McMillen to provide an opinion that "'undue possession' is possession that is not authorized by the Secretary of State or by court order."

21.     On July 12, 2023, Judge Phyllis McMillen issued an "Opinion and Order" (the "McMillen Order") granting the Prosecution's request and holding that "'undue possession' is possession that is not authorized by the Secretary of State or by court order." [Exhibit 2].

22.     On July 19, 2023, the grand jury returned indictments against Ms. Lambert, Mr. DePerno, and former state representative Daire Rendon. [Exhibit 3].

23.    The indictments allege, primarily, that Ms. Lambert and Mr. DePerno (both attorneys) committed the criminal act and conspiracy to obtain ***undue possession of voting machines*** in violation of MCL 168.932(b) during the pending Antrim litigation.

24.    The crux of the indictments allege that no person is permitted to access ***voting machines*** without the express authorization of the Secretary of State or a court order.

25.    The Prosecution has since moved the Oakland County Circuit Court to remand this case to the District Court to conduct a preliminary hearing to correct the deficiencies made during the grand jury.

26.    This motion asks this Court to dismiss the indictment because the Prosecution cannot, as a matter of law, prove that Mr. DePerno obtained ***undue possession*** of a voting machine. As detailed in the accompanying brief: (1) Mr. DePerno was operating under the Antrim Order which permitted him to conduct a forensic investigation without limit ***OR*** (2) SOS Benson granted authorization to local clerks to release all voting equipment after audits were concluded on February 12, 2021 and her office acknowledge that local clerk have the prerogative to do so.

27.    Indeed, Mr. DePerno has recently come into possession of exculpatory evidence that was hidden by the Prosecution. (the "Brater Letter). [Exhibit 3]. This newly discovered exculpatory evidence was not presented to the grand jury, it was not turned over to Judge McMillen during the declaratory action, and it was not turned over as discovery in this case.

28.    This newly discovered exculpatory evidence must now be addressed by this District Court regarding the issue of ***undue possession***.

29.    It was Mr. Hilson who brought the declaratory action seeking an opinion of the law. Judge McMillen then gave Mr. Hilson an opinion on the law consistent with his request.

30.     As a legal matter, Mr. DePerno does not concede (1) that the McMillen Opinion is binding on his case because he was not a party or (2) that the McMillen Opinion is correct. However, the Prosecution does. Nevertheless, for the purposes of this motion, **IF** the McMillen Opinion is correct (as the Prosecution claims), then the Brater Letter **PROVES** beyond any doubt that the Prosecution cannot meet the probable cause standard at the preliminary hearing to bind over this case.

31.     Bind over is only proper if the district court finds evidence regarding each element of the crime. *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000).

32.     The Brater letter demonstrates definitively, as detailed in the accompanying brief, that at the time of the alleged offenses the local clerks had authority to authorize possession or, put another way, the Secretary of State had granted permission. Therefore, as a matter of law, it is impossible for the Prosecution to demonstrate probable cause, let alone prove the alleged offense beyond a reasonable doubt.

WHEREFORE, Mr. DePerno respectfully requests that the Court grant his Motion and enter an order dismissing this case with prejudice.

.

Respectfully submitted

CRONKRIGHT LAW, PLLC

Dated: October 20, 2024

_____
Michael J. Cronkright (P52671)
Attorneys for Matthew DePerno

**STATE OF MICHIGAN**

**IN THE 44ᵗʰ DISTRICT COURT FOR THE COUNTY OF OAKLAND**

PEOPLE OF THE STATE OF MICHIGAN

       Plaintiff,                       Case No. 2024-24-00973-FY

v.

MATTHEW SCOTT DePERNO           HON. DEREK W. MEINECKE

       Defendant.

_____/

| | |
|---|---|
| Dale J. Hilson (P57726) | Michael J. Cronkright (P52671) |
| Tim Maat (P48691 | CRONKRIGHT LAW, PLLC |
| Heather Bloomquist (P80117) | Attorney for Defendant Matthew DePerno |
| MICHIGAN ATTORNEY GENERAL | 4601 W. Saginaw, Ste. J2A |
| SPECIAL PROSECUTOR | Lansing, MI 48917 |
| 990 Terrace St, Fl 5 | (517) 881-4643 |
| Muskegon, MI 49442 | Michael@cronkrightlaw.com |
| (231) 724-6435 | |
| HilsonDa@co.muskegon.mi.us | |
| MaatTi@co.muskegon.mi.us | |
| BloomquistHe@co.muskegon.mi.us | |

_____/

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

1.  Standard of Review .................................................................................................................. 1

2.  Chronology of events .............................................................................................................. 2

3.  Indictment ................................................................................................................................ 3

4.  MCL 168.932 ........................................................................................................................... 5

5.  Grand jury testimony of Jonathan Brater ............................................................................... 6

6.  Antrim Order ........................................................................................................................... 7

7.  Undue Possession .................................................................................................................. 11

    (A)    Recounts; Release of Voting Equipment memos ....................................................... 12

    (B)    Tabulators are part of the "electronic voting system" ................................................ 15

    (C)    SOS Benson extended release of security through audits ........................................... 16

    (D)    Relevant testimony .................................................................................................... 18

    (E)    Brater Letter .............................................................................................................. 20

    (F)    Rules in effect for November 2020 general election; Release of voting equipment ....... 21

8.  *Brady* violation ................................................................................................................... 22

9.  Retroactive application is unconstitutional ............................................................................ 24

<u>**BRIEF IN SUPPORT OF MOTION TO DISMISS**</u>

Defendant MATTHEW DePERNO, by and through his attorney, MICHAEL J. CRONKRIGHT and CRONKRIGHT LAW, PLLC, files this brief in support of motion to dismiss with prejudice.

**1.     <u>Standard of Review</u>**

The 14th Amendment of the United States Constitution states in pertinent part that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law.

The Michigan counterpart states in pertinent part that:

> No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law. MI Const. 1963 art. 1 § 17.

The preliminary examination is a screening method used to determine whether a felony has been committed. The function of a preliminary examination is "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v Duncan*, 388 Mich 489, 499; 201 NW2d 629 (1972). This system ensures that felony charges without merit are not allowed to continue against a defendant. *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003). The district court can only bind over a defendant for trial if it appears after the preliminary examination that a felony has been committed and that there is probable cause to believe that the defendant committed the crime. MCL 766.13. However, the inquiry is not limited to whether the prosecution has presented evidence on each element of the offense. Rather, the district court is required to make his or her determination "after an examination of the whole matter." *People v Gadient,* 185 Mich App 280, 285; 460 NW2d 896 (1990). Even if the prosecution presents some evidence on each element, the district court may still find, on an examination of the whole matter, there is insufficient evidence that the offense

charged has been committed or that there is probable cause to believe that the defendant committed it, then the district court should decline to bind the defendant over on the offense charged. *People v Stafford,* 434 Mich 125, 133; 450 NW2d 559 (1990). This determination "after an examination of the whole matter" includes consideration of witness credibility. *People v Yost*, 468 Mich 122, 128; 659 NW2d 604 (2003); *People v Yamat,* 475 Mich 49; 714 NW2d 335 (2006); *People v Goecke*, 457 Mich 442, 469-470; 579 NW2d 868 (1998); *People v. Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009).

2.    **Chronology of events**

In this case, as a matter of law, the Prosecution cannot satisfy the "probable cause" burden for the following simple reasons:

- In February 19, 2019, SOS Benson issued her guidance and rules through Chapter 16 of the Election Officials' Manual [Exhibit 5] which stated that "voting devices (tabulators) and ballot containers, used and unused ballots, programs, test decks, accuracy test results, edit listings and any other related materials for *30-days* after the certification of the primary or election."

- The November 2020 election was certified on November 23, 2020.[1]

- In May 2019, SOS Benson issued her "Document Retention Schedule" [Exhibit 6] which stated that "Electronic Voting Systems" shall be released "30 days following the canvass and certification of the election." The document defined "electronic voting systems" to "include voting devices" which necessarily includes tabulators. *Id*.

- On December 1, 2020, SOS Benson issued a memorandum titled "Recounts, Release of Voting Equipment" [Exhibit 7] which stated that security of voting equipment "will be released once all post-election audits are completed."

- On December 1, 2020, Lori A. Bourbonais, Director of Elections Administration Division, sent an email reminding all clerks that "voting equipment" will be released according to the December 1, 2020 memorandum. [Exhibit 8].

---

[1]    "Michigan board certifies Nov. 3 election, cementing Biden victory."

https://www.detroitnews.com/story/news/politics/2020/11/23/michigan-election-state-canvassers-certification/6390475002/

- On December 4, 2020, Evan Cruse from the Michigan House of Representatives sent an email [Exhibit 9] to Felicia Owens (MDOS) asking about the memorandum dated December 1, 2020. The email was forwarded to Jenita Moore, the legislative liaison for SOS Benson who instructed Mr. Cruse to review the 12/01/2020 memorandum.

- On January 4, 2021, Lori A. Bourbonais, sent an email reminding all clerks that "access to these machines and materials may not be provided" until all audits are complete. [Exhibit 10].

- On February 12, 2021, SOS Benson issued a New Update stating that "security of voting equipment, ballots, and other supplies from the November 3 General Election is now released." [Exhibit 11]. That same day she issued a press release titled "Statewide election audit process affirms presidential election." [2] [Exhibit 12].

- Based on testimony of witnesses at the grand jury and all police reports, Michael Lynch[3] did not allegedly obtained permission from local clerks to look at tabulators until March 20, 2021 (at the earliest) which was ***more than 30 days after certification of the election and after all audits were completed and after security was officially released on voting equipment by SOS Benson***.

- On May 20, 2021, Jonathan Brater, Director of Michigan Bureau of Elections authored and sent a letter advising Karen Brewster, the Cheboygan County Clerk, that "[i]f you or municipal clerks choose to conduct additional reviews of your voting systems, that is your prerogative." [Ex 4].

- On July 15, 2021, Mr. DePerno announced he was running for the position of Michigan Attorney General. [Exhibit 13, page 1].

- On July 18, 2021, knowing that Mr. DePerno was likely to be her opponent, AG Nessel vowed to prosecute Mr. DePerno, stating: "[u]nless these attorneys are really held accountable there's no incentive for them to stop doing what they are doing. They have to be penalized in a way where they can never again enter into a court of law and make these types of unsupported, and frankly dangerous, claims." [Ex 13, page 2].

- On September 16, 2021, Mr. DePerno was officially endorsed by President Donald J. Trump. [Ex 13, page 3].

- On September 17, 2021, AG Nessel announced that Mr. DePerno was the "clear front runner for the GOP nominee to challenge me next year." [Ex 13, page 4].

---

2    https://www.michigan.gov/sos/resources/news/2021/03/02/more-than-250-audits-confirm-accuracy-and-integrity-of-michigans-election

3    Stefanie Lambert's private investigator

- On February 5, 2022, SOS Benson referred a complaint to AG Nessel asking her to investigate Mr. DePerno.

- Throughout the campaign for Michigan Attorney General, AG Nessel used her investigation against Mr. DePerno as a campaign talking point during the election. On February 11, 2022, Dana Nessel authored and posted a tweet referring to Mr. DePerno as an "insurrectionist." [Ex 13, page 5]. On May 17, 2022 she stated that Mr. DePerno was "busy fomenting domestic terrorism and supporting those who traffic in hate." [Ex 13, page 5]. On May 18, 2022, Dana Nessel authored and posted a tweet stating "On 1/6/21 my opponent Matthew DePerno was in DC plotting to overturn our election and encouraging the insurrection." [Ex 13, page 6]. The tweet included a picture of people allegedly armed at the US Capitol. This was blatantly false and misleading. In fact, Mr. DePerno was neither at or near the US Capitol on January 6, 2021. On June 23, 2022, AG Nessel posted a tweet and video claiming that Mr. DePerno "was willing to sacrifice our republic to prolong Trump's power." [Ex 13, page 7].

- On August 5, 2022, AG Nessel's realized she had a conflict of interest and requested a special prosecutor be appointed.

- On September 9, 2022, DJ Hilson accepted the appointment of special prosecutor acting on behalf of the Attorney General's office.

- On October 24, 2022, DJ Hilson requested a grand jury.

- The grand jury heard testimony on March 6, 2023 through March 8, 2023.

- March 9, 2023, the Prosecution filed a "Complaint for Declaratory Judgment" in Oakland County Circuit Court, Case No. 23-199245-CZ and asked the court to tell him what the law means.

- On July 12, 2023, Judge Phyllis McMillen issued the McMillen Order granting the Prosecution's request and holding that "undue possession" is possession that is not authorized by the Secretary of State or by court order.

- On July 19, 2023, the grand jury returned indictments against Ms. Lambert, Mr. DePerno, and former state representative Daire Rendon.

Never during this process did any government actor discuss, reveal, or disclose the Brater Letter or its significance as exculpatory evidence that completely exonerates Mr. DePerno.

## 3.  **Indictment**

The grand jury returned indictments against Ms. Lambert, Mr. DePerno, and former state representative Daire Rendon on July 19, 2023. The indictment against Mr. DePerno states:

6

**COUNT I – Undue Possession of a Voting Machine, MCL 168.932(b);**

MATTHEW DEPERNO did obtain undue possession of a ballot box or voting machine, contrary to MCL 168.932(b).

**COUNT II – Conspiracy to Commit Undue Possession of a Voting Machine, MCL 168.932(b);**

MATTHEW DEPERNO did lawfully conspire, combine, confederate and agree together with one another and/or other unknown persons to commit the following listed offense, contrary to MCL 750.157a; Undue Possession of a Ballot Box or Voting Machine, contrary to MCL 168.932(b).

**COUNT III – Conspiracy to Commit Unauthorized Access to a Computer or Computer System in violation of MCL 752.795;**

MATTHEW DEPERNO did unlawfully conspire, combine, confederate and agree together with one another and/or other unknown persons to commit the following listed offense, contrary to MCL 750.157a; to intentionally and without authorization or by exceeding valid authorization access or cause access to be made to a computer program, computer, computer system, or computer network that is intended to acquire, alter, damage, delete, or destroy property or otherwise use the services of a computer program, computer, computer system, or computer network; contrary to MCL 752.795 and MCL 752.797(2)(a).

**COUNT IV – Willfully Damaging a Voting Machine, MCL 168.932(b);**

MATTHEW DEPERNO did willfully damage or destroy a ballot box or voting machine, contrary to MCL 168.932(b).

[Ex 3], *Indictment*

**4.    <u>MCL 168.932</u>**

Pursuant to MCL 168.932:

Sec. 932. A person who violates 1 or more of the following subdivisions is guilty of a felony:

* * * *

(b) A person not duly authorized by law shall not, during the progress of any election or after the closing of the polls and before the final results of the election have been ascertained, break open or violate the seals or locks of any ballot box or voting machine used or in use at that election. A person shall not willfully damage or destroy any ballot box or voting machine. ***A person shall not obtain undue possession of that ballot box***

*or voting machine.* A person shall not conceal, withhold, or destroy a ballot box or voting machine, or fraudulently or forcibly add to or diminish the number of ballots legally deposited in the box or the totals on the voting machine. A person shall not aid or abet in any act prohibited by this subdivision.

**5.    Grand jury testimony of Jonathan Brater**

Pursuant to MCL 168.32, the Secretary of State is authorized "to appoint a Director of Elections to whom is delegated the powers to perform the duties of the Secretary of State respecting the supervision and administration of election laws." *Davis v Secretary of State*, 333 Mich App 588, 598; 963 NW2d 653 (2020). During the grand jury, Jonathan Brater testified that he is "the director of the Bureau of Election, which is part the Michigan Department of State, so the Bureau of Elections works for the Secretary of State, who is the chief election officer of the State of Michigan and the Bureau of Elections, which I run, is responsible for other things, enforcing and instructing election officials on the requirements of the Michigan election law."

Therefore, Mr. Brater stands in the shoes of the Secretary of State and what he says is the official position of the Secretary of State and can be relied up by others as the law of the land. Mr. Brater confirmed this when he stated "In Michigan our elections are run by locally-appointed or elected city, township, or county clerks, and so those individuals don't report directly to the Secretary of State but when they are enforcing the Michigan election law they do have to follow the instructions of the Secretary of State under the Michigan election law and I am vested with the authority of the Secretary of State as the Bureau of Elections to also provide those instructions." Mr. Brater further testified that he provides "a very extensive curriculum of training and instruction . . . accreditation training . . . continuing education . . . training materials . . . additional materials . . . instruction guides, memoranda, and other items as needed over the court of the year." He acknowledged that the city or townships hold title to the election equipment.

6.    **Antrim Order**

**The Antrim Order permitted broad discovery to conduct a forensic investigation. Therefore, is compliance with Judge McMillen's ruling, Mr. DePerno had a valid court order.**

On November 23, 2020, Mr. DePerno filed the lawsuit of *Bill Bailey v Antrim County*[4] along with a motion for a temporary restraining order. Plaintiff Bailey's motion asked for the following relief: "to take a forensic image of the 22 precinct tabulators and conduct an investigation of those images, thumb drives, related software, and the Clerk's "master tabulator." On December 9, 2020, SOS Benson filed a motion to intervene. The motion was granted on December 20, 2020 and SOS Benson became a party defendant.

On December 4, 2020, The Antrim Trial Court issued the Antrim Order. [Ex 1]. The order states that "For the reasons stated herein, the Court finds that Plaintiff has met the necessary requirements for issuance of a preliminary injunction and thus, Plaintiff's Motion for an Ex Parte Restraining Order, Show Cause Order and Preliminary Injunction is granted." *Antrim Order*, at 4. The court then stated:

> IT IS FURTHER ORDERED, pursuant to MCR 2.302(C), that to protect the respective interests of the parties, this Decision and Order shall also serve as a Protective Order restricting use, distribution or manipulation of the forensic images and/or other information gleaned from the forensic investigation without further order of this Court.

A "forensic investigation" is "the process of using scientific methods and techniques to analyze physical evidence to solve a crime or civil dispute." A forensic investigation, as granted and permitted by the court involves multiple steps: (1) identification of the matter to be investigated,

---

[4]    *William Bailey v Antrim County*, Antrim County Circuit Court, Case No. 2020-9238-CZ

(2) preservation and collection of the data, (3) analysis and testing, (4) documentation, and (5) presentation.[5]

Bailev Antrim County et al was a civil case. Mr. DePerno was involved in civil discovery, which commenced immediately. Civil discovery rules are governed by subchapter 2.300 of the Michigan Court Rules. Rule 2.302 permits parties to obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending actions, whether it related to the claims or defense of the party seeking discovery or to the claim or defenses of another party." MCR 2.302(B)(1). A requesting party need only show that the information sought is relevant. *Yates v Keane*, 184 Mich App 80, 82, 457 NW 2d 693 (1990). A party is even entitled to inadmissible evidence if good cause for discovery is shown. Good cause is established where the moving party shows that the information "is, or might lead to, admissible evidence, is material to the moving party's trial preparation, or is for some other reason necessary to promote the ends of justice." *Yates*, supra at 82, citing *Haglund v Van Dorn Co.*, 169 Mich App 524, 528; 426 NW 2d 690 (1988). Relevant evidence is evidence "having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Michigan courts have recognized that the court rules implement "an open, broad discovery policy . . . ." *Reed Dairy Farm v Consumers Powers Co*., 227 Mich App 614, 616; 576 NW2d 709 (1998); *Daniels v Allen Industries, Inc.*, 391 Mich 398, 403; 216 NW2d 762 (1974). Discovery rules are to be liberally construed to further the ends of justice. *Daniels*, supra, at 403. The modern tendency is to broaden the scope of discovery when necessary to **facilitate preparation**, to guard against

---

[5]    https://www.exterro.com/basics-of-digital-forensics/chapter-2-the-forensic-investigation-process

surprise, and to expedite justice. *Fassihi v St. Mary's Hospital*, 121 Mich Ap 11, 15; 328 NW2d 132 (1982).

Thus, Mr. DePerno was permitted to conduct broad ranging discovery to complete his forensic investigation, which was pursuant to a valid court order without any restrictions other than the basic rules cited above. Expert witnesses were obtained. An expert witness was filed. MRE 703 states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. The facts or data must be in evidence – or, in the court's discretion, be admitted in evidence later." In a forensic investigation, it is the expert who leads the investigation. In this case, the matter to be investigated was identified, which was the electronic voting system in Michigan. A motion was filed and granted, allowing the plaintiff to conduct a forensic investigation. The forensic images were collected on December 4, 2020 by Sullivan Stickler and the chain of custody was preserved. Experts then began to collect additional data through the broad discovery process, analyze, and present reports. Twenty reports were prepared and filed.[6]

The Antrim Trial Court specifically ordered the county tabulators to be made available. The order did not exclude expert comparison with other electronic voting systems to formulate opinions, and in fact, nowhere did the court limit use or prevent other tabulators from being analyzed to compare with the election management system results. Five sets of interrogatories and requests for documents were served on SOS Benson. In response, SOS Benson stated that she did not have more than basic knowledge of tabulators and Mr. Bailey should "ask the manufacturers," and that she could not help produce tabulators in discovery because she did not

---

[6]    https://www.depernolaw.com/all-expert-reports.html

possess them. She claimed she lacked custody or control over information related to the 2020 election, including tabulators.

SOS Benson and AG Nessel received and read all 20 expert reports. They never filed a motion to challenge discovery actions relevant to the reports, including the review of tabulators. To the contrary, as will be shown in the next section, SOS Benson and AG Nessel understood that county and local clerks have authority to investigate election fraud. MCL 168.520 grants local clerks the authority to conduct their own investigation:

> "If a township or city clerk has knowledge that or in any ward or precinct of the township or city, the clerk has the power and duty to make a full investigation of the facts concerning the registration and to ascertain whether any name has been illegally or fraudulently registered. A township or city clerk is authorized and empowered to call upon the police department of the city or the sheriff of investigation, and the police department and the sheriff are required to render assistance if the clerk makes a request for assistance, ***and to furnish the clerk at his or her request with all available assistance in making the investigation. A township or city clerk is further authorized and empowered if he or she considers it necessary or advisable to appoint assistant examiners for the purpose of the investigation.***"

Likewise, MCL 41.65 states:

> "The township clerk of each township shall have custody of *all the records, books, and papers* of the township, when no other provision for custody is made by law. The township clerk shall file and safely keep all certificates of oaths and other papers required by law to be filed in his or her office and shall record those items required by law to be recorded".

Based on the above, Mr. DePerno had broad authority to conduct discovery. The Antrim Order did not limit his ability to conduct discovery, subject to any opposing party's right to seek to quash discovery. This Court should conclude that the work conducted by the expert witnesses and their authority to conduct a forensic investigation was done pursuant to the Antrim Order.

7.    **Undue Possession**

**SOS Benson, Ms. Bourbonais, and Mr. Brater released all election equipment, including tabulators, from security on February 12, 2021. The release of security was the authorization by SOS Benson to local clerks who then had the authority and permission to conduct their own investigation. The Brater Letter emphatically confirms this authorization.**

In response to the Prosecution's declaratory action, Judge McMillen concluded the following regarding MCL 168.932(b): "'[a] person shall not obtain undue possession of that ballot box or voting machine' *means that an individual cannot possess a ballot box or voting machine without authorization from the Secretary of State or a valid court order*." [Ex 2]. To get to that conclusion, Judge McMillen went through the following progression:

1.    Pursuant to MCL 168.21, "[t]he secretary of state shall be the chief election officer of the state and shall have supervisory control over local election officials in the performance of their duties under the provisions of this act." *McMillian Opinion*, at 5.

2.    Pursuant to MCL 168.31, "the Secretary of State has the obligation to make rules and instructions for the conduct of elections." *Id*.

3.    Pursuant to MCL 168.32, the Secretary of State is authorized "to appoint a Director of Elections to whom is delegated the powers to perform the duties of the Secretary of State respecting the supervision and administration of election laws." *Id*. (citing *Davis v Secretary of State*, 333 Mich App 588, 598; 963 NW2d 653 (2020).

4.    "It is the duty of local election officials to follow the instructions of the Secretary of State. *Id*. (citing *Secretary of State v Berrien Co Bd of Election Comm'rs*, 373 Mich 526, 530-531; 129 NW2d 864 (1964) ("Berrien County").

5.    "The duty of local election officials to follow the directives of the Secretary of State exists even where the directives relate to rules for the use of voting equipment that is owned by the local government." *Id*.

6.    Pursuant to MCL 168.31a(2), the Secretary of State shall "engage in audits and to supervise local election officials in conducting audits." *Id*. at 6.

7.    "Authorization to release the physical voting equipment under any purported "audit" must be supervised by the Secretary of State and cannot be initiated by a private citizen." *Id*. at 7.

8.    Pursuant to MCL 168.847:

> The secretary of state may authorize the release of all ballots, ballot boxes, voting machines, and equipment after 30 days following certification of an election by the board of state canvassers in a precinct other than a precinct in which 1 or more of the following occur:
>
> (a) A petition for recount has been filed with the board of state canvassers.
>
> (b) A petition has been filed pursuant to [MCL 168.879].
>
> (c) A court of competent jurisdiction has issued an order restraining interference with ballots, ballot boxes, voting machines, and equipment.

 *Id*.

9. The Secretary of State can create rules and guidance. *Id*.

10. Thus, the language "A person shall not obtain undue possession of that ballot box or voting machine" means that an individual cannot possess a ballot box or voting machine without authorization from the Secretary of State or a valid court order. *Id*.

The question in our case is whether a local clerk could grant access to voting equipment; or put a different way, did the Secretary of State give authorization to local clerks to grant access to voting equipment. As we follow Judge McMillen's opinion, the answer is "yes" local clerk can grant access after the expiration of a certain time (i.e. 30 days after the vote is certified or audits are complete) and "yes" SOS Benson did, in fact, authorize the local clerks to grant access. Based on the evidence in this case, there is no way for the Prosecutors to show that authorization was not granted. Therefore, as a matter of law, there was no "undue possession." To the contrary, there was an express grant of permission by both the Secretary of State and by the local clerks. Mr. DePerno is entitled to rely on that grant of authority.

### (A). Recounts; Release of Voting Equipment memos

We know that SOS Benson has supervisory control over local election officials. MCL 168.21. SOS Benson has the obligation to make rules and instructions for the conduct of elections. MCL 168.31. SOS Benson was authorized to appoint Jonathan Brater as the Director

of Elections who was delegated the powers to perform the duties of SOS Benson respecting the supervision and administration of election laws. MCL 168.32. Local election officials must follow the instruction regarding the use of voting equipment that is owned by the local government.

Ruth Johnson was the Michigan Secretary of State from January 1, 2011 through January 1, 2019. She had supervisory control over the elections from 2011-2018. Jocelyn Benson has been the Michigan Secretary of State from January 1, 2019 through present. She has had supervisory control over the elections from 2019-present. In accordance with her duty to make rules and instructions, Ruth Johnson issued a series of memorandum titled "Recounts; Release of Voting Equipment." [Exhibit 14].[7] These memos all contained similar language setting forth the rule that "voting equipment" is released under the Rules for Electronic Voting Systems, R 168.790(18)[8] except in those local areas where there is a recount. Security for those local areas is released later at the direction of the Secretary of State. On December 1, 2020, SOS Benson issued a similar memo regarding the November 2020 election. [Ex 7]. She adopted the same procedure and rules as Ruth Johnson.

In addition, all prior Secretaries of State have issued guidance and rules through their "Election Officials' Manual" which is updated from time to time. SOS Benson issued her guidance and rules in February 2019 for the 2020 election, including Chapter 16[9] titled "Pre &

---

[7]    These memos were produced during the Antrim litigation by the Secretary of State on February 8, 2021 and relied on by Mr. DePerno as the official position of the Secretary of State.

[8]    (18) The clerk in charge of the election shall secure the container containing the programs, test deck, accuracy test results, and other related materials, and the original edit listing until 30 days following the certification of the election if a recount has not been requested or until a date prescribed by the secretary of state.

[9]    The present version is now Chapter 17.

Post Election Information" which was in effect for the 2020 general election. [Ex 5]. Chapter 16

of the Election Official's Manual states:

> **The following outlines the federal and state provisions governing the retention of election ballots, voting equipment and related materials.**
>
> - ***State Retention Requirements:*** During the ballot retention period specified under Michigan election law, local election officials must ensure that the seal of record used to secure 1) voting devices/tabulators and 2) ballot containers containing the used and unused ballots, programs, test decks, accuracy test results, edit listings and any other related materials *remain intact.*
>
>   The seals may be broken only after security is released by the proper authority. Ballot security for the August primary and November general election is under the authority of the Secretary of State. The Secretary of State notifies the county clerk of each county in writing after the primary and general election when ballot security is released under Michigan election law. Further ballot retention and security provisions apply to partisan ballots used in the August primary and November general election as discussed under "Federal retention requirements."
>
> Rules for Electronic Voting Systems require election official to secure 1) voting devices (tabulators) and 1) [sic] ballot containers, used and unused ballots, programs, test decks, accuracy test results, edit listings and any other related materials for *30-days* after the certification of the primary or election. The retention period is extended if a recount is in progress, a defect in the ballot or voting equipment is being investigated, the destruction of the ballots is stayed by an order of the court, or the Secretary of State orders the extension of the retention period. Michigan election law provides the following allowance:
>
>   "Unless a petition for recount has been filed and the recount has not been completed, ballots, ballot labels, programs, test results, and other sealed materials may be released from their original seal after 7 days following the final determination of the board of canvassers with respect to the election at which the ballots were voted. However, the released materials shall be secured and preserved for the time period required by this act and the rules promulgated by the secretary of state."
>
> The above provision of law was enacted to accommodate situations where electronic voting equipment subject to the 30-day retention period explained above must be readied for an upcoming election. Essentially, the provision allows an election official responsible for the security of optical scan ballots, ballot labels, programs, test results and associated materials to break the original seal of record after seven days and transfer the materials involved to sealed ballot bags for the duration of the retention period.

- ***Federal Retention Requirements:*** If the office of President, U.S. Senator or Representative in Congress appears on the ballot, federal law requires that all documents relating to the election – including, ballots and programs used to tabulate optical scan ballots – be retained for 22 months. To comply with this requirement, the Department of State's Bureau of Elections recommends that ballots and programs relating to federal elections be stored in *sealed ballot bags* in a secure place during the 22-month retention period. This will free the city or township's ballot containers for use in other elections. The documents subject to the federal retention requirements must not be transferred to ballot bags for extended retention until after the retention requirements specified under Michigan election law have been fulfilled.

For retention time frames for other election materials, see the Retention Schedule in the Appendix.

The Retention Schedule is attached. [Ex 6]. In short, the Retention Schedule states that tabulators are part of the electronic voting system.

**(B).    Tabulators are part of the "electronic voting system"**

The Retention Schedule states that "Electronic Voting Systems" shall be retained for "30 days following the canvass and certification of the election." The definition section of Chapter 16 includes the following:

**219    Electronic Voting Systems**

These systems are used to conduct select school district elections and special elections that are administered by the county clerk per an agreement. They include voting devices, ballot containers, optical scan ballots, etc.

**307    Ballots (State and Local Offices)**

These records document votes in elections for state and local offices, some school district elections, and special elections in which candidates for federal offices did not appear on the ballot (including proof ballots, sample ballots, uncounted ballots, unused ballots, counted absentee ballots, provisional ballots, challenged ballots, spoiled ballots, and ballots rejected for exposure). They include voting devices/tabulators, ballot containers containing optical scan ballots, programs, edit listings, etc. **Note: this series also applies to unused ballots for federal, state and local offices.**

MCL 168.794(f) defines "electronic voting system" as "a system in which votes are recorded and counted by electronic tabulating equipment." MCL 168.794(e) defines "electronic tabulating

17

equipment" as "an apparatus that electronically examines and counts votes recorded on ballots and tabulates the results." MCL 168.794(i) defines "voting device" as "an apparatus that contains the ballot label and allows the voter to record his or her vote.

It is not disputed that the tabulators at issue in this case are "electronic tabulating equipment." It is also undisputed that the term "ballots" includes "voting devices/tabulators, ballot containers containing optical scan ballots, *programs*, edit listings, etc."

**(C).**     **SOS Benson extended release of security through audits**

By rule, SOS Benson extended the hold period until post-election audits were complete. The following dates and events are relevant:

- 12/01/2020:    Benson issued a memorandum stating that the Board of State Canvassers completed its canvass on November 23, 2020. [Ex 7]. The memorandum also stated that post-election audits shall commence. Further, "election equipment" was released as follows:

  > ***Ballots, programs and related materials:*** The security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials will be released once all post-election audits are completed

- 12/01/2020: Lori Bourbonais, Director of the Elections Administration Division, sent an email to all county clerks with the 12/01/2020 memo attached. She stated: "Attached please find the Recount/Release of Security Memo for voting equipment used in the November 3, 2020 General Election and the Post-Election Procedure Audit List. Please let me know if you have any questions." [Ex 8]. The email included the list of precincts that were part of the statewide "audit."

- 12/03/2020:    Benson tweeted the memorandum [Ex 7] stating, "FACT CHECK: Michigan's election will be audited, and all materials needed for audits are preserved,

including printouts of all data on e-pollbooks. The BOE memo sent to clerks is the same

post-election memo that has been sent for year."



- 12/04/2020:    Evan Cruse from the Michigan House of Representatives sent an email [Ex 9] to Felicia Owens (MDOS) asking about the memorandum dated December 3, 2020. The response stated he should review the 12/01/2020 memorandum. On December 4, 2020. The email was forwarded to Jenita Moore, the legislative liaison for SOS Benson who instructed Mr. Cruse to review the 12/01/2020 memorandum.

- 01/04/2021:    Lori Bourbonais sent an email [Ex 10] stating that tabulators cannot be released by local clerks for *UNTIL* audits are complete and deferring to local counsel:

    County/City/Township Clerks and Election Directors:

We are aware that some clerks have been contacted by an attorney or group claiming to be a part of the Rudy Giuliani legal team. It is our understanding that they are requesting access to tabulators or other election material used for the November 3, 2020 election. As a reminder, security of election materials for the November election has not yet been released and will not be released until after all audits are completed. Under law, access to these machines and materials may not be provided at this time. If an attorney or group requests to speak to you regarding the election, machines, or materials, you should confer with your city, township, or county counsel regarding the request.

Lori A. Bourbonais
Director, Elections Administration Division
Michigan Bureau of Elections

- 02/12/2021: SOS Benson issued a News Update stated, "[s]ecurity of voting equipment, ballots, and other supplies from the November 3, General Election is now released." [Ex 11].

- 02/12/2021: SOS Benson issued a press release titled "Statewide election audit process affirms presidential election." [10] [Ex 12].

- 05/20/2021: Jonathan Brater, Director of Michigan Bureau of Elections authored and sent a letter advising Karen Brewster, the Cheboygan County Clerk, that "[i]f you or municipal clerks choose to conduct additional reviews of your voting systems, that is your prerogative." [Ex 4].

**(D)    Relevant testimony**

In this case, SOS Benson published her rules for release of voting equipment. She stated that voting equipment shall be released after all audits are complete. The crux of the indictment alleges that Lambert and DePerno obtained "unauthorized possession of a voting machine." The evidence produced by the Prosecution and the testimony during the grand jury and relevant for

---

[10]    https://www.michigan.gov/sos/resources/news/2021/03/02/more-than-250-audits-confirm-accuracy-and-integrity-of-michigans-election

this motion shows that **IF** Lambert and DePerno obtained "unauthorized possession of a voting

machine" **AS ALLEGED**, then the following facts apply[11]:

- LOCATION #1: Richfield Twp, Roscommon County

  - ES&S tabulators
  - Quantity: 2
  - Date obtained: 03/21/21
  - Date election certified: 11/12/20

- LOCATION #2: Roscommon Twp, Roscommon County

  - ES&S tabulators
  - Quantity: 1 or 3
  - Date obtained: 03/20/21
  - Date election certified: 11/12/20

- LOCATION #3: Denton Twp, Roscommon County

  - ES&S tabulators
  - Quantity: 1
  - Date obtained: 03/21/21
  - Date election certified: 11/12/20

- LOCATION #4: Irving Twp, Barry County

  - Dominion tabulators
  - Quantity: 1
  - Date obtained: 03/21/21
  - Date election certified: 11/12/20

- LOCATION #5: Lake Twp, Missaukee County

  - Dominion tabulators
  - Quantity: 1
  - Date obtained: 03/18/21
  - Date election certified: 11/09/20

Although Mr. DePerno denies any allegations of wrongdoing, he acknowledges that the evidence

presented by the Prosecutors during the grand jury demonstrates that the township clerks, county

clerks, or county supervisors willingly handed the tabulators to Mr. Lynch, the private

---

[11]     Notwithstanding this argument, Mr. DePerno continues to maintain that he was not
involved in the acquisition of any voting equipment.

investigator hired by Ms. Lambert. There is no allegation or evidence that anyone broke into any government office and stole election equipment. Nevertheless, all testimony confirms that the alleged possession occurred well ***AFTER*** the voting equipment was released.

### (E). <u>Brater Letter</u>

Perhaps the most damning piece of evidence in this case, which was not presented to the grand jury and which was not produced during discovery, is a letter dated May 20, 2021 and written by Jonathan Brater, director of Michigan Bureau of Elections to the Cheboygan County Clerk. The letter emphatically states:

> You are receiving this letter because the Bureau of Elections has been informed that the Cheboygan County Board of Commissioners may attempt to allow an unqualified third party to gain access to voting equipment in Cheboygan County, purportedly to conduct a "forensic audit." The Board no authority to require you or any municipal clerk to provide external access to voting equipment maintained by your offices, and neither you nor municipal clerks in Cheboygan County should provide this access.
>
> The Michigan Election Law entrusts clerks with choosing and maintaining their voting systems and does not provide any authority for county commissions to take control of this equipment. MCL 168.37a states that "a county clerk, in consulting with each city and t township clerk in the county" will " determine which electronic voting system will be used in the county[.]" Custody, programming, and review and testing of election equipment is entrusted to qualified election officials, not county commissioners.
>
> * * * *
>
> ***If you or municipal clerks choose to conduct additional reviews of your voting systems, that is your prerogative.*** However, as we advised in the February 12, 2021 news update and our April 20, 2021 email to county clerks and election directors, only election officials, licensed vendors, or accredited voting system test laboratories ***should*** be granted access to voting equipment. If you are interested in having any type of physical review of your voting system, you should contact an EAC-accredited voting systems test laboratory (VSTL).

[<u>Ex 4</u>].

This letter, dated May 20, 2021, was the Bureau of Elections official position regarding a local clerk's authority to release voting equipment and have it tested. First, Mr. Brater explained to the Cheboygan clerk that she need not listen to the county commissioner because the clerk holds the authority and control, not the county commissioners. He then explained that it is the clerks who are entrusted with maintaining their voting systems. He then stated that "***If you or municipal clerks choose to conduct additional reviews of your voting systems, that is your prerogative***" but if they exercise that authority then they ***should*** use and accredited laboratory. The modern view is that the term "should" generally denotes discretion and should not be construed as "shall." 3 Norman J. Singer, *Sutherland Statutory Construction* § 57.03 (5th Ed.1992). The term "should" is used to make recommendations or suggestions, while "must" or "shall" are used to express a requirement or necessity.

### (F).   Rules in effect for November 2020 general election; Release of voting equipment

In summary, the following rules applied for the November 2020 election:

- SOS Benson has supervisory control over local election officials. MCL 168.21.

- SOS Benson has the obligation to make rules and instructions for the conduct of elections. MCL 168.31.

- SOS Benson was authorized to appoint Jonathan Brater as the Director of Elections who was delegated the powers to perform the duties of SOS Benson respecting the supervision and administration of election laws. MCL 168.32.

- Local election officials must follow the instruction regarding the use of voting equipment that is owned by the local government.

- SOS Benson issued Chapter 16 of the "Election Official's Manual" titled "Pre & Post Election Information" which was updated in February 2019 which was in effect for the 2020 general election.

- Chapter 16 states that "Electronic Voting Systems" shall be secured for *30-days* after the certification of the primary or election.

➢ "Electronic voting system" is defined as "a system in which votes are recorded and counted by electronic tabulating equipment."[12]

➢ "Electronic tabulating equipment" is defined as "an apparatus that electronically examines and counts votes recorded on ballots and tabulates the results."[13]

➢ "Voting device" is defined as "an apparatus that contains the ballot label and allows the voter to record his or her vote."[14]

➢ Optical scan tabulators (at issue in this case) are "electronic tabulating equipment" which are part of the "electronic voting system."

• SOS Benson's 12/1/2020 memo [Ex 7] released "election equipment" once all post-election audits were completed.

• Lori Bourbonais's 1/4/2021 reminded clerks that "access to these machines and materials may not be provided" until post-election audits are completed. [Ex 10].

• SOS Benson released security on "voting equipment" [Ex 11] on February 12, 2021.

In accordance with the above records from the Secretary of State, all voting equipment was "released once all post-election audits are completed." Benson confirmed that the audits were completed on February 12, 2021. In accordance with Judge McMillen's opinion and order, local clerks received authorization from Benson to release voting equipment on February 12, 2021 and likewise, any individual *could* thereafter "possess a ballot box or voting." This is also confirmed by the email from Lori A. Bourbonais [Ex 10] and the Brater Letter [Ex 4]

## 7.   ***Brady* violation**

The Brater Letter was not discussed during the grand jury. It was not an exhibit to the grand jury. It was not given to Judge McMillen during the declaratory action. Mr. DePerno initially requested discovery on July 21, 2023 [Exhibit 15]. The prosecution produced discovery

---

[12]    MCL 168.794(f)

[13]    MCL 168.794(e)

[14]    MCL 168.794(i)

on August 31, 2023. The Brater Letter was not included in the discovery materials. Mr. DePerno sent an additional discovery requests on May 21, 2024 [Exhibit 16]. No discovery materials have been produced in response to that request. The Brater Letter was not produced in discovery in this case, the grand jury proceeding, or any ancillary proceeding. In short, it was hidden. Mr. DePerno found the letter on October 12, 2024 while researching this motion and brief.

In *Brady v United States*, 373 US 83; 82 S.Ct 1194 (1963) the Court held that the prosecution's suppression of evidence favorable to an accused upon request violates due process when the evidence is material to either guilt or punishment, irrespective of the prosecution's good or bad faith. The United States Supreme Court articulated the essential components of a *Brady* violation in a three-factor test: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching, (2) the prosecution must have suppressed that evidence, either willfully or inadvertently, and (3) prejudice must have ensued, that is, the evidence must be material. According to *Brady*, the government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good or bad faith. Evidence is favorable to the defense when it is either exculpatory or impeaching. To establish materiality, the defendant must show a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This standard is less than a "preponderance." In assessing the materiality of the evidence, courts must consider the suppressed evidence collectively, rather than piecemeal. This test was later articulated in *Strickler v Greene*, 527 US 263 (1999): (1) the prosecution has suppressed evidence (2) that is favorable to the accused and (3) viewed in its totality, material.

Each element is satisfied in this case. The Prosecution has decided to hide exculpatory evidence or evidence that can be used for impeachment. This evidence has been vital to Mr. DePerno's defense. Indeed, the Brater Letter requires immediate dismissal because it exonerates Mr. DePerno completely.

## 8.    **Retroactive application is unconstitutional**

At the time in question, during discovery in the Antrim litigation and in the winter and spring of 2020-2021, Mr. DePerno operated according to his interpretation of the Antrim Order and guidance issued by SOS Benson. The order gave him broad authority to conduct a forensic investigation. But perhaps more importantly, without diminishing the first, the guidance issued by SOS Benson was that voting equipment would be released from her authority following the conclusion of the audits. After that occurred, according to rule, local clerks would have authority to do what they want: ***"that is your prerogative."***

However, much later and to score political point against her political opponent, AG Nessel chose to ignore the facts and guidance when she changed the interpretation of a statute and the rules retroactively. One of the main principals in our criminal justice system is that changes to a statute or rule, by default, operate prospectively. An ***ex post facto law*** is a law that retroactively changes the legal consequences (or status) of actions that were committed, or relationships that existed, before the enactment of the law. In criminal law, it may criminalize actions that were legal when committed; it may aggravate a crime by bringing it into a more severe category than it was in when it was committed; it may change the punishment prescribed for a crime, as by adding new penalties or extending sentences; it may extend the statute of limitations; or it may alter the rules of evidence in order to make conviction for a crime likelier than it would have been when the deed was committed.

An ***ex post facto*** **law** may not be used to criminalize an **act** previously not considered to be a criminal offense. The U.S. Constitution forbids this practice in Article 1, Section 9, Clause 3 (with respect to federal laws) and Article 1, Section 10 (with respect to state laws). The prohibition on *ex post facto* application has deep roots in American jurisprudence: *ex post facto* laws have historically been "the favorite and most formidable instruments of tyranny." The Federalist No. 84 (Hamilton) (Rossiter ed., 1961), pp. 511-512. In In *Beazell v. Ohio*, 269 U.S. 167 (1925), the Supreme Court defined the scope of the constitutional *ex post facto* through the following restrictions:

> "It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto."

In this case, SOS Benson issued guidance and rules on release of voting equipment ***BEFORE*** Michael Lynch obtained access to voting equipment. SOS Benson continued to issue the same guidance for many months ***AFTER*** Michael Lynch obtained access to voting equipment. But when Mr. DePerno became AG Nessel's political opponent, the Prosecution indicted him based on a new interpretation of the law. This is *ex post facto* and it is unconstitutional.

WHEREFORE, for the reasons stated herein, Mr. DePerno respectfully requests that the Court grant his Motion to dismiss with prejudice.

Respectfully submitted

CRONKRIGHT LAW, PLLC

Dated: October 20, 2024

_____

Michael J. Cronkright (P52671)
Attorneys for Matthew DePerno

**STATE OF MICHIGAN**

**IN THE 44th DISTRICT COURT FOR THE COUNTY OF OAKLAND**

PEOPLE OF THE STATE OF MICHIGAN

        Plaintiff,                    Case No. 2024-24-00973-FY

v.

MATTHEW SCOTT DePERNO          HON. DEREK W. MEINECKE

        Defendant.

_____/

Dale J. Hilson (P57726)                Michael J. Cronkright (P52671)
Tim Maat (P48691                    CRONKRIGHT LAW, PLLC
Heather Bloomquist (P80117)       Attorney for Defendant Matthew DePerno
MICHIGAN ATTORNEY GENERAL      4601 W. Saginaw, Ste. J2A
SPECIAL PROSECUTOR            Lansing, MI 48917
990 Terrace St, Fl 5               (517) 881-4643
Muskegon, MI 49442           Michael@cronkrightlaw.com
(231) 724-6435
HilsonDa@co.muskegon.mi.us
MaatTi@co.muskegon.mi.us
BloomquistHe@co.muskegon.mi.us
_____/

**APPENDIX**

**EXHIBITS - MOTION TO DISMISS AND BRIEF IN SUPPORT**

1. Order Granting TRO

2. McMillen Order

3. Indictment

4. Brater Letter

5. Chapter 16 Pre & Post Election Information

6. Document Retention Schedule

7. Recount Release of Security Memo – November 2020 General

8.  Bourbonais Email – December 1, 2020

9.  Evan Cruse Email

10. Bourbonais Email – January 4, 2021

11. February 12, 2021 News Update

12. Statewide Election Audit Process Affirms Presidential Election Outcome

13. Twitter

14. Ruth Johnson Memos

15. Discovery Request – July 21, 2023

16. Discovery Request – May 21, 2024

# EXHIBIT 1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF ANTRIM

_____

WILLIAM BAILEY,

                Plaintiff,

v                                          File No. 2020009238CZ
                                         HON. KEVIN A. ELSENHEIMER

ANTRIM COUNTY,

                Defendant.
_____/

Matthew S. DePerno (P52622)
Attorney for Plaintiff

Haider A. Kazim (P66146)
Attorney for Defendant
_____

DECISION AND ORDER REGARDING
PLAINTIFF'S MOTION FOR AN EX PARTE TEMPORARY RESTRAINING ORDER,
SHOW CAUSE ORDER AND PRELIMINARY INJUNCTION

      The above captioned Plaintiff is a resident of Central Lake Township, Antrim County, Michigan. Plaintiff voted in person in the most recent election held November 3, 2020. Subsequently, Plaintiff filed a complaint on November 23, 2020, including the following counts: (1) constitutional right to accuracy and integrity of elections; (2) violation of "purity of elections clause;" (3) election fraud [pursuant to] MCL 600.4545(2) and MCL 158.861; (4) common law election fraud; (5) equal protection violation; and (6) statutory election law violations. Along with his complaint, the Plaintiff also filed a Motion for an Ex Parte Restraining Order, Show Cause Order and Preliminary Injunction. The proposed order, submitted by Plaintiff, would permit Plaintiff to take forensic images from the 22 precinct tabulators and investigate those images, thumb drives, software and the County Clerk's "master tabulator."[1] Additionally, the order would

---

[1] Defendant asserts that there is no "master tabulator" and that the Dominion tabulator in its possession is the same type used by the individual precincts.

prohibit destruction of evidence relating to the November 3, 2020 election and prohibit turning on the Dominion tabulators or connecting the tabulators to the internet.

The Court heard oral arguments on the Plaintiff's motion on December 3, 2020, and took the matter under advisement. For purposes of this Decision and Order, the Court adopts the Defendant's statement of facts as to the events leading up to and immediately after the election. Moreover, the Defendant has agreed to preserve and protect all records in its possession used to tabulate votes in Antrim County, to not turn on the Dominion tabulator in its possession and to not connect the Dominion tabulator in its possession to the internet.[2] Therefore, the only remaining issue to be considered by the Court is whether the Plaintiff is permitted to obtain the requested forensic images.

Injunctive relief is generally considered an extraordinary remedy that issues where justice requires, there is an inadequate remedy at law, and there is a real and imminent danger of irreparable injury.[3] A preliminary injunction requires a particularized showing of irreparable harm; an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural.[4] To determine whether an injury constitutes irreparable harm, as would support a preliminary injunction the injury is evaluated in light of the totality of the circumstances affecting, and the alternatives available to, the party seeking injunctive relief.[5] The irreparable-harm factor is considered an indispensable requirement for a preliminary injunction.[6] In determining whether to issue a preliminary injunction, the trial court must evaluate whether: (1) the moving party made the required demonstration of irreparable harm, (2) the moving party showed that it is likely to prevail on the merits, (3) the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, and (4) there will be harm to the public interest if an injunction is issued.[7]

First, Plaintiff asserts that he will suffer irreparable harm via the loss of his constitutional right to have his vote counted if the temporary restraining order and preliminary injunction are not granted. Specifically, in the recent election, the Village of Central Lake included a proposed

---

[2] According to Defendant, it only retains possession of one Dominion tabulator machine. The remaining Dominion tabulator machines are in the custody, control and/or possession of the 22 individual precincts.
[3] *Mich AFSCME Council 25 v Woodhaven-Brownstone School Dist*, 293 Mich App 143; 809 NW2d 444 (2011).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Detroit Fire Fighters Ass'n v City of Detroit*, 482 Mich 18; 753 NW2d 579 (2008).

initiated ordinance to authorize one marihuana retailer establishment within the village on the ballot. There were 524 votes cast regarding this proposal, with 262 for and 262 against. According to the tabulation on November 3, 2020, with the votes tied the proposal failed. However, when the ballots were retabulated on November 6, 2020, the result went from a tied vote to the proposal passing by one vote.[8] According to the Clerk of Central Lake Township and the ASOG Forensic Report, three ballots were damaged when they were retabulated. Allegedly the damaged ballots were manually re-filled out and re-run through the tabulation machine, yet the final numbers do not reflect that the damaged/cured ballots were included. Plaintiff argues that failure to include the damaged ballots in the retabulation resulted in the marihuana proposal passing and violated his constitutional right to have his vote counted. The temporary, let alone total, loss of a constitutional right constitutes irreparable harm which cannot be adequately remedied by an action at law.[9] As such, the Court finds that Plaintiff has met the requirement for irreparable harm.

Second, Plaintiff asserts that he is likely to prevail on the merits of his claim because, pursuant to the Michigan Constitution and by statute, his right to vote was violated and he is entitled to have the results of the recent election audited in order to ensure its accuracy and integrity. Defendant counters that Plaintiff is not likely to succeed on the merits of his claims because he lacks standing to bring the constitutional claims and his statutory claims are inapplicable.

A litigant has standing whenever there is a legal cause of action, but even if no legal cause of action is available, a litigant may have standing if he or she has a special injury or right or substantial interest that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant.[10] While the Defendant argues that Plaintiff has failed to allege an injury in fact, the Court disagrees. As discussed above, assuming that Plaintiff's ballot was one of those damaged during the retabulation, failure to include his vote on the marihuana proposal potentially resulted in passage of the ordinance. Moreover, failure to include the Plaintiff's ballot would amount to the loss of his right to vote, which is an injury specific to Plaintiff. As the Court has determined that

---

[8] See Declaration of Judith L. Kosloski.
[9] *Garner v Mich State Univ*, 185 Mich App 750; 462 NW2d 832 (1990).
[10] *Lansing School Ed. Ass'n v Lansing Bd of Ed.*, 487 Mich 349, 372; 792 NW2d 686 (2010).

the Plaintiff has standing to bring the constitutional claims, it is unnecessary to analyze whether the Plaintiff will succeed on the merits of his statutory claims.[11]

Third, Plaintiff asserts he will suffer greater harm than the Defendant if the injunction is not granted as he will lose his constitution freedom to vote, whereas the Defendant has a duty to ensure the election process is conducted without fraud. Defendant argues that granting the Plaintiff's request for preliminary injunction would violate the License Agreement with Dominion and essentially force Antrim County to commit breach of contract. The Plaintiff is entitled to have his vote counted and the Defendant has a duty to maintain an accurate and secure election. The Court believes that Defendant's duty to ensure that no eligible Antrim County voter is disenfranchised outweighs its potential duties or obligations under the Licensing Agreement. Moreover, MCR 2.302(C) allows for protective orders that trade secrets or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way. Thus, any forensic investigation into the Dominion voting equipment can be limited to safeguard the company's intellectual property through a protective order.

Finally, Plaintiff asserts the public interest weighs in favor of granting temporary injunctive relief because confidence in the integrity of our electoral process is essential to the functioning of our participatory democracy. Defendant claims that harm to the public interest, via reverse engineering of Dominion software (presumably for malicious purposes), outweighs any potential harm to the Plaintiff. The Court believes that confirming the accuracy, integrity and security of the electoral process is a greater public interest at this juncture than the potential future misuse of reverse engineered data. Therefore, the public interest weighs in favor of granting the Plaintiff's preliminary injunction.

For the reasons stated herein, the Court finds that Plaintiff has met the necessary requirements for issuance of a preliminary injunction and thus, Plaintiff's Motion for an Ex Parte Restraining Order, Show Cause Order and Preliminary Injunction is granted.

---

[11] MCL § 600.4545(1) applies whenever it appears that material fraud or error has been committed at any election at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township or municipality thereof. Defendant argues that this statute is inapplicable because any fraud or error would not have affected the outcome of the election.

IT IS ORDERED that Antrim County maintain, preserve and protect all records in its possession used to tabulate votes in Antrim County, to not turn on the Dominion tabulator in its possession and to not connect the Dominion tabulator in its possession to the internet.

IT IS FURTHER ORDERED, pursuant to MCR 2.302(C), that to protect the respective interests of the parties, this Decision and Order shall also serve as a Protective Order restricting use, distribution or manipulation of the forensic images and/or other information gleaned from the forensic investigation without further order of this Court.

IT IS SO ORDERED.

12/04/2020
05:11PM

KEVIN A. ELSENHEIMER, CIRCUIT COURT JUDGE, P49293

HONORABLE KEVIN A. ELSENHEIMER
Circuit Court Judge

# EXHIBIT 2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

PEOPLE OF THE STATE OF MICHIGAN,

                Plaintiff,

v

STEFANIE LAMBERT JUNTTILA,

                Defendant.

_____/

Case No. 23-199245-CZ
Hon. Phyllis C. McMillen

OPINION AND ORDER
At a session of Court
Held On

July 12, 2023

      This matter is before the Court on Plaintiff's Complaint for Declaratory Judgment. The Court heard oral argument on July 7, 2023.

## I.    FACTS AND PROCEEDINGS[1]

      Plaintiff, the People of the State of Michigan, acting through the Special Prosecutor on behalf of the Attorney General of the State of Michigan, filed this action seeking a declaratory judgment to obtain a legal determination as to the applicable legal standards concerning the crime of undue possession of a voting machine and to clarify the legal prohibitions contained in MCL 168.932(b).

      Defendant, Stefanie Lambert Junttila, filed an Answer to the Complaint in which she denies that the Court has jurisdiction to hear this action, denies that there is an actual

---

[1] A more detailed explanation of the factual background is contained in this Court's Opinion and Order denying Defendant's motion for summary disposition, entered June 6, 2023.

FILED   Received for Filing   Oakland County Clerk   7/12/2023 10:44 AM

controversy, and alleges that the Special Prosecutor has violated multiple laws and rules in bringing this action.[2]

## II.    DECLARATORY JUDGMENTS GENERALLY

MCR 2.605 governs declaratory judgments. MCR 2.605(A)(1) provides, "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

Generally, an actual controversy exists where a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights. *Shavers v Attorney General*, 402 Mich 554, 588–589; 267 NW2d 72 (1978); *Durant v State of Michigan, Dep't of Ed (On Remand)*, 238 Mich App 185, 204–205; 605 NW2d 66 (1999). "[W]hat is essential to an 'actual controversy' under the declaratory judgment rule is that plaintiff plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised." *Shavers*, 402 Mich at 589; *Fieger v Comm'r of Ins*, 174 Mich App 467, 470–471; 437 NW2d 271 (1988).

The Court of Appeals has stated that the purpose of a declaratory judgment is

> to enable the parties to obtain adjudication of rights *before an actual injury occurs,* to settle a matter *before it ripens into a violation of the law* or a breach of contract, or to avoid multiplicity of actions by *affording a remedy for declaring in expedient action the rights and obligations of all litigants.* [*UAW v Central Mich Univ Trustees*, 295 Mich App 486, 496; 815 NW2d 132 (2012) (citation omitted; emphasis in original)]

---

[2] Defendant previously filed a motion for summary disposition in lieu of an answer to the complaint, arguing that this Court lacks subject matter jurisdiction to enter a declaratory judgment; Plaintiff lacks the legal capacity to sue; the Attorney General has already tried and failed to bring these charges before a court; and the Special Prosecutor cannot change the language of the statute to suit his client's interests. The motion also asked the Court to sanction the prosecutor for violating court rules and the Michigan Rules of Professional Conduct. The Court addressed these arguments in its June 6, 2023 opinion and order.

### III.    ANALYSIS

The "Michigan Election Law", MCL 168.1 *et seq.*, includes a list of felonies related to elections at MCL 168.932, which provides in relevant part:

> (b) A person not duly authorized by law shall not, during the progress of any election or after the closing of the polls and before the final results of the election have been ascertained, break open or violate the seals or locks of any ballot box or voting machine used or in use at that election. A person shall not willfully damage or destroy any ballot box or voting machine. *A person shall not obtain undue possession of that ballot box or voting machine.* A person shall not conceal, withhold, or destroy a ballot box or voting machine, or fraudulently or forcibly add to or diminish the number of ballots legally deposited in the box or the totals on the voting machine. A person shall not aid or abet in any act prohibited by this subdivision. [emphasis added]

"If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written. In other words, when statutory language is unambiguous, judicial construction is not required or permitted because the Legislature is presumed to have intended the meaning it plainly expressed." *People v Weeder*, 469 Mich 493, 497; 674 NW2d 372 (2004) (citations omitted).

A.    <u>Plaintiff's Arguments</u>

According to Plaintiff, the language of MCL 168.932(b) is clear and unambiguous, and its plain meaning provides for multiple, distinct felony violations as follows:

- A person not duly authorized by law shall not, during the progress of any election or after the closing of the polls and before the final results of the election have been ascertained, break open or violate the seals or locks of any ballot box or voting machine used or in use at that election.

- A person shall not willfully damage or destroy any ballot box or voting machine.

- A person shall not obtain undue possession of that ballot box or voting machine.

- A person shall not conceal, withhold, or destroy a ballot box or voting machine, or fraudulently or forcibly add to or diminish the number of ballots legally deposited in the box or the totals on the voting machine.

- A person shall not aid or abet in any act prohibited by this subdivision.

Plaintiff argues that this plain meaning is further supported by the legislative history of the statute. The initial version of MCL 168.932(b) was written as a single sentence, where the time limitation of "during the progress of any election or primary election or after the closing of the polls and before the ballots are counted and the result ascertained" applied to the undue possession provision. The statute was later amended in 1957 to be distinct phrases separated by semi-colons, thus removing the applicability of the time limitation to the other phrases. Then, in 1995, the Legislature further delineated the phrases as separate offenses by making each phrase into a separate and distinct sentence, each with its own subject, verb, and prohibited conduct. See *In re MCI Telecommunications Complaint*, 460 Mich 396, 415; 596 NW2d 164 (1999) ("Where the Legislature has considered certain language and rejected it in favor of other language, the resulting statutory language should not be held to explicitly authorize what the Legislature explicitly rejected."). Thus, Plaintiff asserts that the time limitation, "during the progress of any election or after the closing of the polls and before the final results of the election have been ascertained" does *not* apply to the prohibited conduct of "A person shall not obtain undue possession of that ballot box or voting machine".

Plaintiff further asserts that "undue possession" must be that which is not allowable by law, and the only lawful authority that can be given for the possession of voting machines is by the Secretary of State or court order. Specifically, Plaintiff alleges

4

that a local election official under the direct supervision of the Secretary of State does not have the authority to release voting machines independently.

Pursuant to MCL 168.21, "[t]he secretary of state shall be the chief election officer of the state and shall have supervisory control over local election officials in the performance of their duties under the provisions of this act." And, "the Legislature [has] granted the Secretary a broad measure of discretion in conducting and supervising elections." *Davis v Secretary of State*, 333 Mich App 588, 598; 963 NW2d 653 (2020). The Secretary of State has the obligation to make rules and instructions for the conduct of elections. MCL 168.31. "Under MCL 168.32, the Legislature authorized a Bureau of Elections within the office of the Secretary of State and authorized the Secretary of State to appoint a Director of Elections to whom is delegated the powers to perform the duties of the Secretary of State respecting the supervision and administration of election laws." *Davis*, 333 Mich App at 598. Further, it is the duty of local election officials to follow the instructions of the Secretary of State. See *id.*, citing *Secretary of State v Berrien Co Bd of Election Comm'rs*, 373 Mich 526, 530-531; 129 NW2d 864 (1964) ("*Berrien County*") ("Under MCL 168.31, local election officials must follow the Secretary of State's instructions regarding the conduct of elections.").

The duty of local election officials to follow the directives of the Secretary of State exists even where the directives relate to rules for the use of voting equipment that is owned by the local government. In *Berrien County, supra*, the local election officials asserted that "because the voting machines are the property of the people of the township it was beyond the power of the [Secretary of State] to order or direct the manner of their use and competent for the township board to direct, as they did by resolution adopted, use

of the voting machines" in a manner contrary to the Secretary of State's instruction. The Supreme Court rejected that contention, holding that it was the duty of the local election officials to follow the instructions received by the Secretary of State despite the local election officials' resolution. *Id*. at 530-531.

Further, in 2021-2022, the Michigan Constitution provided, "Every citizen of the United States who is an elector qualified to vote in Michigan shall have the following rights:…(h) The right to have the results of statewide elections audited, in such manner as prescribed by law, to ensure the accuracy and integrity of elections." Art. § 4, Sec (1)(h).[3]

Michigan Election Law allows for the Secretary of State to engage in audits and to supervise local election officials in conducting audits. MCL 168.31a(2), effective December 28, 2018, provides:

> (1) In order to ensure compliance with the provisions of this act, after each election the secretary of state may audit election precincts.
>
> (2) The secretary of state shall prescribe the procedures for election audits that include reviewing the documents, ballots, and procedures used during an election as required in section 4 of article II of the state constitution of 1963. The secretary of state and county clerks *shall* conduct election audits, including statewide election audits, as set forth in the prescribed procedures. The secretary of state shall train and certify county clerks and their staffs for the purpose of conducting election audits of precincts randomly selected by the secretary of state in their counties. An election audit must include an audit of the results of at least 1 race in each precinct selected for an audit. A statewide election audit must include an audit of the results of at least 1 statewide race or statewide ballot question in a precinct selected for an audit. An audit conducted under this section is not a recount and does not change any certified election results. The secretary of state *shall* supervise each county clerk in the performance of election audits conducted under this section….[emphasis added]

It is noteworthy that the Secretary of State's involvement in a supervisory capacity of local audits is not discretionary, but mandatory, as indicated by the use of the word

---

[3] Michigan voters in the November 2022 election decided to expand and clarify this audit provision, but the changes did not become effective until December 24, 2022, after the events at issue in this case.

"shall". Neither the Constitution nor the statute allows for an individual voter to conduct an independent audit. *Bailey v Antrim Co*, 341 Mich App 411, 423; 990 NW2d 372 (2022), lv den, 982 NW2d 175 (2022). Thus, authorization to release the physical voting equipment under any purported "audit" must be supervised by the Secretary of State and cannot be initiated by a private citizen.

Further, MCL 168.799a(4) requires that following the final determination by the board of canvassers following an election, the original seal may be removed from an election program, but "shall be secured and preserved for the time period required by this act and the rules promulgated by the secretary of state." Again, indicating that secured storage is incumbent upon the local election official, and the device must be preserved until the Secretary of State or its rules allow for the removal from the secured location.

Additionally, Michigan Election Law provides the Secretary of State with the discretion to release voting machines and equipment under certain circumstances. MCL 168.847 provides:

> The secretary of state may authorize the release of all ballots, ballot boxes, voting machines, and equipment after 30 days following certification of an election by the board of state canvassers in a precinct other than a precinct in which 1 or more of the following occur:
> (a) A petition for recount has been filed with the board of state canvassers.
> (b) A petition has been filed pursuant to [MCL 168.879].
> (c) A court of competent jurisdiction has issued an order restraining interference with ballots, ballot boxes, voting machines, and equipment.

Mich Admin Code R 168.772 provides, in relevant part:

> (3) Where the board of county commissioners provides for the purchase and use of an electronic voting system in a county, the county clerk shall have custody of the devices and be responsible for their maintenance, repair, and preparation for elections.
> (4) Where the legislative body of a city, township, or village provides for the purchase and use of an electronic voting system, the clerk of the city,

> township, or village shall have custody of the devices and be responsible
> for their maintenance, repair, and preparation for elections.

Thus, a clerk shall have custody and shall be responsible for three specific actions: maintenance, repair, or preparation for elections. Nowhere in this code does the rule allow for a clerk to be independently responsible for an audit. Nor does it allow for a clerk to unilaterally relinquish the custody of a voting machine, when read in conjunction with MCL 168.847 which only provides the Secretary of State with discretion to release voting machines. Particularly, under the plain language of this rule when coupled with the Constitution and the Michigan Election Law, a clerk does not have authorization under this provision to relinquish custody for purposes of an audit.

In sum, looking at the Michigan Constitution, Michigan Election Law, and Michigan Administrative Code, it is clear that "undue possession" means possession not authorized by the Secretary of State or valid court order, such as a search warrant. Thus, the language "A person shall not obtain undue possession of that ballot box or voting machine" means that an individual cannot possess a ballot box or voting machine without authorization from the Secretary of State or a valid court order.

Plaintiff asks the Court to enter a declaratory judgment finding that

(1) the prohibition against the undue possession of voting machines is not limited to events that occur "during the progress of any election or after the closing of the polls and before the final results of the election have been ascertained"; and

(2) "undue possession" is possession that is not authorized by the Secretary of State or by court order.

B.    <u>Defendant's Arguments</u>

In her Answer to the Complaint, Defendant asserts that Plaintiff is seeking relief outside the Michigan Court Rules, and particularly the civil and criminal rules of procedure, and in doing so is violating several sections of the Michigan Rules of Professional Conduct and the United States and Michigan Constitutions. Defendant further states that this Court does not have jurisdiction to provide the relief wrongfully requested by Plaintiff. Defendant asserts that Plaintiff is wrongfully using this action, and this Court, in an attempt to undermine the adversarial legal system of the State of Michigan and the United States.

Defendant denies that there is an "actual controversy" existing between the prosecutor and the Defendant, or the Plaintiff and Defendant, within the meaning of the jurisprudence of the State of Michigan or the United States, or MCR 2.605. Defendant notes that the prosecutor admits in the Complaint that he is acting on his own behalf, or on behalf of the Attorney General of the State of Michigan, and not on behalf of the People of the State of Michigan. Defendant admits that the Secretary of State for the State of Michigan has the obligation to make rules and instructions for the conduct of elections. In response to the remaining allegations in the Complaint regarding the interpretation of the relevant statutes, Defendant's answer states:

Defendant denies an actual controversy between the Plaintiff and Defendant, or the prosecutor and defendant (see paragraph 10 of plaintiff's complaint wherein which the prosecutor admits he is acting on his own behalf, or on behalf of the Attorney General of the State of Michigan, and not on behalf of the people of the State of Michigan.)

Defendant further states in response that whether the plain language of the statute is clear and unambiguous or ambiguous, then the prosecutor/attorney general's claims in representing themselves in this action rather than the People of the State of Michigan (see paragraph 10, infra), should be set forth in an action on their own behalf against Defendant and then file an action to request a declaratory judgment, rather than abuse the power of office and the citizens of this state.

Defendant denies that the Court should enter a declaratory judgment as to the "two points of law" referred to in the Complaint, and asserts that Plaintiff failed to articulate the "two points of law". Moreover, Defendant asserts that if the language of the statutes and regulations is indeed plain and unambiguous as alleged in the Complaint, then the prosecutor admits that no controversy exists. And further, the prosecutor admits that bringing this action is an attempt to obtain a judgment on the definition of the law when no case or controversy exists presently between the prosecutor and Defendant.

Moreover, the prosecutor admits he wants an explanation of the law to have this Court perform the function of his position in a sealed grand jury proceeding of which he previously stated Defendant was not the subject. What is more, the prosecutor admits that he wants this Court, which he knows is the Court presiding over the grand jury, and which he anticipates will preside over any criminal proceeding in the future relative to the

10

outcome of the grand jury proceeding, to make determinations of the law to relieve the
grand jury of its duty, as well as to have a preordained outcome in any potential criminal
action in the future. The timing of the prosecutor's actions supports Defendant's position.
Indeed, if the prosecutor is truly seeking a declaratory statement of the law, he would not
have initiated the grand jury proceeding, assured Defendant she was not the subject of
same, and then immediately brought a declaratory action feigning a "controversy".
Rather, the prosecutor would have informed Defendant of the prosecuting attorney's
intent to bring a grand jury, and then filed the declaratory action.

Defendant asks the Court to deny Plaintiff's request for relief and dismiss the
action. Defendant further alleges that Plaintiff has violated MCL 767.19f(1), which
provides:

> Except as otherwise provided by law, a person shall not publish or make
> known to any other person any testimony or exhibits obtained or used, or
> any proceeding conducted, in connection with any grand jury inquiry. A
> person who violates this subsection is guilty of a misdemeanor punishable
> by imprisonment in the county jail for not more than 1 year or by a fine of
> not more than $1,000.00, or both.

Defendant asks the Court to find and hold Plaintiff in contempt and refer Plaintiff to the
Attorney Grievance Commission of the State Bar of Michigan. Defendant argues that
Plaintiff has publicly disclosed the "secret" grand jury proceedings in a *Detroit Free
Press* article on June 29, 2023, in which he not only violated this statute but also
implicated this Court's participation in an attempt to trap Defendant in civil proceedings
by making her litigate this case, waive her rights and privileges and potentially those of
her clients. Defendant also alleges that Plaintiff should be held in contempt for abusing
the process and powers of this Court by attempting to violate Defendant's constitutional
and civil rights, by seeking through these "civil declaratory judgment" proceedings to

11

maliciously prosecute Defendant and to further violate her rights, which conduct is actionable under both Michigan law and the United States Code, e.g., MCL 691.1407 and 42 USC § 1983.

C.    Findings

The Court finds that Plaintiff is entitled to a declaration as to the interpretation of the statute. The Court agrees with Plaintiff that the statutory interpretation set forth in the Complaint is supported by the plain language of the statutes. Defendant does not dispute that the statutory language is clear and unambiguous, and has not offered any contrary interpretation of the statutes.

Regarding Defendant's arguments that this Court lacks jurisdiction to hear this matter, and that there is no actual controversy, the Court has already addressed these arguments in its June 6, 2023 Opinion and Order and will not re-address them here.

Regarding Defendant's assertion that the prosecutor has violated MCL 767.19f(1), there is no evidence that the prosecutor has disclosed any testimony, exhibits, or proceeding in violation of the statute. Defendant's assertion that the Special Prosecutor has violated the Michigan Court Rules, federal and state laws and Constitutions, and the Michigan Rules of Professional Conduct are without merit. Defendant's allegations that this action is a "trap" or that it is causing her to waive her rights and privileges and potentially those of her clients are without merit.

/ / /

/ / /

WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that

(1) the prohibition in MCL 168.932(b) against the undue possession of voting machines is not limited to events that occur "during the progress of any election or after the closing of the polls and before the final results of the election have been ascertained"; and

(2) for purposes of MCL 168.932(b), "undue possession" is possession that is not authorized by the Secretary of State or by court order.

This Order resolves the last pending claim and closes the case.

IT IS SO ORDERED.

*Phyllis McMillen*

Phyllis McMillen, Circuit Judge

# EXHIBIT 3

STATE OF MICHIGAN

IN THE 6ᵗʰ CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THE PEOPLE OF THE
STATE OF MICHIGAN,                       File No. 2022-196860-PZ

  Plaintiff,                  Hon. PHYLLIS MCMILLEN

vs.

MATTHEW DEPERNO,

  Defendant.

## INDICTMENT

In the 6ᵗʰ Judicial Circuit Court for the County of Oakland, term 2023, the People of the

state of Michigan v MATTHEW DEPERNO,

The grand jury of the county of Oakland presents that on or about January 13, 2021

through February 3, 2022, in the County of Oakland, that MATTHEW DEPERNO, did the

following:

**COUNT I – Undue Possession of a Voting Machine, MCL 168.932(b);**

MATTHEW DEPERNO did obtain undue possession of a ballot box or voting machine, contrary

to MCL 168.932(b).

**COUNT II – Conspiracy to Commit Undue Possession of a Voting Machine, MCL
168.932(b);**

MATTHEW DEPERNO did unlawfully conspire, combine, confederate and agree together with

one another and/or other unknown persons to commit the following listed offense; contrary to

MCL 750.157a: Undue Possession of a Ballot Box or Voting Machine, contrary to MCL

168.932(b).

1

**COUNT III – Conspiracy to Commit Unauthorized Access to a Computer or Computer System, MCL 752.795**

MATTHEW DEPERNO did unlawfully conspire, combine, confederate and agree together with one another and/or other unknown persons to commit the following listed offense; contrary to MCL 750.157a: to intentionally and without authorization or by exceeding valid authorization access or cause access to be made to a computer program, computer, computer system, or computer network that is intended to acquire, alter, damage, delete, or destroy property or otherwise use the services of a computer program, computer, computer system, or computer network; contrary to MCL 752.795 and MCL 752.797(2)(a).

**COUNT IV - Willfully Damaging a Voting Machine, MCL 168.932(b);**

MATTHEW DEPERNO did willfully damage or destroy a ballot box or voting machine, contrary to MCL 168.932(b).

Date: 7-19-23

A TRUE BILL.

FOREPERSON

SPECIAL PROSECUTOR &
MUSKEGON COUNTY PROSECUTOR

By:    D.J. HILSON (P57726)
       *Prosecuting Attorney*

BUSINESS ADDRESS & TELEPHONE:
Hall of Justice, Fifth Floor
990 Terrace Street
Muskegon, MI   49442
(231) 724-6435

2

# EXHIBIT 4



**STATE OF MICHIGAN**
**JOCELYN BENSON, SECRETARY OF STATE**
**DEPARTMENT OF STATE**
LANSING

May 20, 2021

Karen Brewster
Cheboygan County Clerk
*by e-mail*

Dear Clerk Brewster:

You are receiving this letter because the Bureau of Elections has been informed that the
Cheboygan County Board of Commissioners may attempt to allow an unqualified third party to
gain access to voting equipment in Cheboygan County, purportedly to conduct a "forensic
audit." The Board has no authority to require you or any municipal clerk to provide external
access to voting equipment maintained by your offices, and neither you nor municipal clerks in
Cheboygan County should provide this access.

The Michigan Election Law entrusts clerks with choosing and maintaining their voting systems
and does not provide any authority for county commissions to take control of this equipment.
MCL 168.37a states that "a county clerk, in consultation with each city and township clerk in the
county" will "determine which electronic voting system will be used in the county[.]" Custody,
programming, and review and testing of election equipment is entrusted to qualified election
officials, not county commissions.

Interest in granting access to unqualified third parties to conduct a "forensic audit" may stem
from misplaced reliance on ongoing misinformation— which has been repeatedly,
comprehensively, and definitively debunked—regarding both Dominion Voting Systems and the
error that occurred in the initial reported unofficial results in Antrim County. As you know, the
Bureau of Elections in cooperation with the Antrim County Clerk and a number of local election
clerks conducted a public hand count of every paper ballot cast for President in Antrim County,
which confirmed that the ballot tabulators counted ballots accurately.

Statewide, more than 1,300 clerks of both parties participated in at least one election audit this
year. A report on the results of the audits, which found no examples of intentional misconduct, is
publicly available.[1] Suggestions of tampering with election results are baseless. The Department
of Justice, FBI, Department of Homeland Security, and Cybersecurity and Infrastructure Security
Agency "investigated multiple public claims that one or more foreign governments owned,
directed, or controlled election infrastructure used in the 2020 federal elections; implemented a

---

[1] https://www.michigan.gov/documents/sos/BOE_2020_Post_Election_Audit_Report_04_21_21_723005_7.pdf.

Letter to County Karen Brewster
May 20, 2021
Page 2

scheme to manipulate election infrastructure; or tallied, changed, or otherwise manipulated vote counts. The Departments found that those claims were not credible."[2]

If you or municipal clerks choose to conduct additional reviews of your voting systems, that is your prerogative. However, as we advised in the February 12, 2021 news update and our April 20, 2021 email to county clerks and election directors, only election officials, licensed vendors, or accredited voting system test laboratories should be granted access to voting equipment. If you are interested in having any type of physical review of your voting system, you should contact an EAC-accredited voting systems test laboratory (VSTL).

Please let me know if you have any further questions.

Sincerely,

Jonathan Brater, Director
Michigan Bureau of Elections

---

[2] https://www.dhs.gov/news/2021/03/16/joint-statement-departments-justice-and-homeland-security-assessing-impact-foreign.

# EXHIBIT 5

# CHAPTER 16 PRE & POST ELECTION INFORMATION

## TABLE OF CONTENTS

Mandatory Election Publications ................................................................................................ 1

Required Postings & Reporting .................................................................................................. 3

Optional Election Publications .................................................................................................. 3

Procedure for Handling Provisional Envelope Ballots Returned to Clerk's Office for Review ................... 4

Processing & Tabulating of Valid Provisional Envelope Ballots ................................................. 6

Tie Votes .................................................................................................................................. 8

Document Retention and Public Availability of Voted Ballots.................................................... 8

Post-Election Access to Voted Ballots ...................................................................................... 10

## MANDATORY ELECTION PUBLICATIONS

***Notice of Voter Registration:*** A Notice of Registration must be published in a local newspaper at least 30 days prior to the election. Arranging for the publication of the notice is the responsibility of the city clerk or township clerk. (MCL 168.498(2)) Notices must contain the following information:

- Days and hours that the clerk will be at the clerk's office or other designated place to receive registrations before an election.

- The offices to be filled that will appear on the ballot and if applicable, a brief description of any ballot proposals which will appear on the ballot, information on where voters can obtain the full text of any ballot proposals.

- The Bureau of Elections also recommends including a list of other voter registration agencies and that the mail-in registration form can be used and found at mi.gov/vote.

- Local jurisdictions may enter into agreements to publish joint Notices of Registration to contain costs. Such agreements may be coordinated by the county clerk at the county clerk's discretion.

**Notice of Election:** A Notice of Election must be published in a local newspaper prior to any upcoming election. Arranging for the publication of the notices is the responsibility of the city clerk or township clerk and must include: *(MCL 168.653a)*

- The publication must appear no later than the seventh calendar day before the election involved.

- The date of the election and the hours that the polls will be open (7:00 a.m. through 8:00 p.m.).

- A listing of the offices which will be elected or nominated at the election. (The names of the candidates seeking nomination or election to the offices do *not* need to be included in the notice.)

- A brief description of any ballot proposals which will appear on the ballot. (If presenting a bond proposal, the development of the proposal description in close consultation with the bond counsel is recommended.)

- Information on where voters can obtain the full text of any ballot proposals which will appear on the ballot.

- A listing of the polling place locations. A statement regarding the accessibility of the polling place locations and the availability of voting instructions in alternative formats (audio and Braille) must be included with the listing.

While not required by law, it is recommended that the notice include information on how and where an elector may obtain an absent voter ballot for the election.

- If the Notice of Election is for an election on a millage increase, the notice must include a statement of the amount by which the total tax rate limitation is increased and the number of years by which the increase would be effective. (MCL 211.203)

- Local jurisdictions may enter into agreements to publish joint Notices of Election to contain costs. Such agreements may be coordinated by the county clerk at the county clerk's discretion.

**Notice of Public Logic and Accuracy Test:** A Notice of Public Logic and Accuracy Test must be published in a local newspaper prior to any upcoming election. Arranging for the publication of the notice is the responsibility of the city clerk or township clerk. (MCL 168.798(1))

- The publication must appear at least 48 hours prior to the conduct of the test. The test must be

conducted no later than the fifth day prior to the primary or election.

- A Notice of Public Logic and Accuracy Test must include the name of the jurisdiction conducting the election and the test, the date of the election, the date and time of the test, the location of the test, and a statement regarding the purpose of the test (i.e., "The Public Accuracy Test is conducted to demonstrate that the computer program used to tabulate the votes cast at the election meets the requirements of law").

*Samples of the Notice of Registration, Notice of Election and Notice of Public Accuracy can be found in the Appendix.

## REQUIRED POSTINGS & REPORTING

**Weekend Hours of Operation Prior to Election Day**: Beginning January 1, 2019, a city or township clerk must be available at his or her office to issue and receive absent voter ballots for any combination of at least eight hours on the Saturday, Sunday, or both before election day. At least 30 days prior to the election, the clerk must post and must notify the Bureau of Elections of the hours of operation for the weekend immediately preceding the election. (MCL 168.761b)

**Additional Locations and Hours:** A city or township clerk may designate additional locations and hours of operation for the purpose of issuing and receiving absent voter ballots. At least 30 days prior to the election, the clerk must post and notify the Bureau of Elections of the additional locations and hours of operation preceding the election. The additional locations would also have to allow challengers in the same manner as allowed under law in a polling place on election day. (MCL 168.761b(3))

## OPTIONAL ELECTION POSTINGS

The following optional notices may be better suited for a press release.

***Notice of Filing Deadline:*** A Notice of Filing Deadline may be published in a local newspaper prior to any upcoming election. The publication of such notice is at the discretion of the local clerk. The notice may include information on candidate qualifications, filing requirements (including number of required signatures) and any upcoming filing deadlines for offices appearing on the ballot.

***Notice to Absent Voters:*** A Notice to Absent Voters may be published in a local newspaper prior to any upcoming election. The publication of such notice is at the discretion of the local clerk. The notice may include the deadline to apply for an absentee ballot, and contact information for the election official accepting absentee ballot applications.

# PROCEDURE FOR HANDLING PROVISIONAL ENVELOPE BALLOTS RETURNED TO CLERK'S OFFICE FOR REVIEW

Within 6 days after the election, the city or township clerk must evaluate each Provisional Envelope ballot voted by the jurisdiction's voters to determine if the ballot can be counted. Call the QVF Help Desk; they can assist with research if necessary. The Provisional Ballot Form is designed to guide the precinct board on recording all of the information needed by the clerk to determine whether an Envelope ballot can be counted. When making this determination, the city or township clerk is <u>not</u> permitted to open the *Provisional Ballot Form* envelope holding the ballot.

## MISSING REGISTRATION: **Determining the validity of a Provisional Envelope ballot issued to an elector whose name did not appear in the ePollbook or on the QVF Precinct List.** All of the information needed to determine the validity of a Provisional Envelope ballot issued to such an elector is recorded on the *Provisional Ballot Form* completed by the precinct board.
**The provisional envelope ballot can be counted if:**

* A valid voter registration application for the elector is located and the registration application was submitted by the elector on or before 8:00 p.m. election day;

OR

* The elector completed the *Provisional Ballot Form* properly by:

    * Signing the affidavit and confirming registration prior to 8:00 p.m. on election day.
    * Completing the voter registration form portion of the Provisional Ballot Form
    * Showing an acceptable form of photo ID[1]
    * Showing an acceptable form of proof of residency[2]

---

[1] Acceptable IDENTIFICATION documents include: Michigan Driver's License, Michigan Personal Identification Card, other government-issued photo identification card or a photo identification card issued by a Michigan university or college.

[2] Acceptable proof of RESIDENCY documents include: Any of the above identification documents OR a current utility bill, current bank statement, current paycheck or government check or any other government document.

In either case, ensure that the Provisional Envelope ballot was voted in the proper precinct. Only Provisional Envelope ballots processed in the proper precinct are valid.

## Submission of picture ID and residence confirmation document during 6-day evaluation period permitted.

- In an instance where the elector was unable to identify himself or herself with acceptable form of picture ID[1] and/or an acceptable form of proof of residency[2] (see above), the ballot can be counted if the voter is able to produce the required document(s) during the 6-day evaluation period. The voter can appear in person in the city or township clerk's office to show the document(s), fax the document(s) to the clerk or mail a copy of the document(s) to the clerk.  The document(s) must reach the city or township clerk no later than the sixth calendar day after the date of the election.

- In any instance where a Provisional Envelope ballot is counted because the voter was able to produce the required picture ID[1] and/or residence confirmation[2] document(s) during the 6-day evaluation period, the clerk must enter a notation on the *Provisional Ballot Form* completed when the voter was issued the Provisional Envelope ballot in the polls.

## The provisional envelope ballot cannot be counted if:

- The elector was unable to identify him or herself at the polls or during the 6-day evaluation period by showing an acceptable form of picture ID[1] and/or an acceptable form of proof of residency[2].  Both ID and residency must be verified before a Provisional Envelope ballot can be counted.

## Important note regarding electors who voted in wrong precinct:

In any situation where a Provisional Envelope ballot has been issued to a voter who 1) appeared to vote in the wrong precinct and 2) declined to travel to his or her proper precinct to vote, you must make every effort to accurately confirm that the voter did, in fact, vote in the wrong precinct before rejecting the Provisional Envelope ballot as invalid. The evaluation must include a check of the QVF street index to verify that the voter was not assigned to the wrong precinct in error.  If a check of the street index reveals that a voter in this situation actually voted in the **proper precinct**, the Provisional Envelope ballot must be counted.

## FEDERAL ID REQUIREMENT: Determining the validity of a Provisional Envelope ballot issued to an elector subject to the federal identification requirement.

- The Provisional Envelope ballot can be counted if during the 6-day Provisional Envelope ballot evaluation period the elector provides an acceptable form of picture ID[1] **OR** an acceptable form of proof of residency[2] (see above). Only one of these forms is necessary to meet the federal ID requirement. The voter can appear in person in the city or township clerk's office to show the required ID, fax the required ID to the clerk or mail a copy of the required ID to the clerk. In an instance where a Provisional Envelope ballot is counted because the voter was able to produce the required ID during the 6-day evaluation period, the clerk must enter a notation on the *Provisional Ballot Form*.

- The Provisional Envelope ballot cannot be counted if the voter fails to provide the proper identification to satisfy the federal ID requirement during the 6-day evaluation period.

## MICHIGAN VOTER IDENTIFICATION REQUIREMENT: **Determining the validity of a Provisional Envelope ballot issued to a voter because questions over the voter's identity remained after an inspection of the picture identification produced by the voter.**

- The Provisional Envelope ballot can be counted if the elector **appears in person** and provides a Michigan Driver's License or a Michigan Personal Identification Card during the 6-day evaluation period. Voters can also show any of the following forms of picture identification as long as they are current: a driver's license or personal identification card issued by another state; a federal or state-government issued photo identification; a U.S. passport; a military identification card with photo; a student identification with photo from a high school or an accredited institution of higher education; or a tribal identification with photo. In all cases, the picture identification must resolve the questions over the voter's identity which prompted the issuance of a Provisional Envelope ballot to the voter.

- The Provisional Envelope ballot cannot be counted if the voter fails to personally appear in the clerk's office during the 6-day evaluation period and provide an acceptable form of picture ID.

## PROCESSING & TABULATING OF VALID PROVISIONAL ENVELOPE BALLOTS

Using two people of differing political parties:

- If the Provisional Envelope ballot can be counted, remove the ballot from the *Provisional Ballot Form* and remove the stub from the ballot. Do not remove the ballot from its secrecy sleeve during this step.

- Place the ballot in a ballot container.

- After you have placed all of the valid Provisional Envelope ballots that can be counted in the container, remove the ballots and count the valid votes on the ballots.

- After counting the valid votes on the ballots, document the votes cast using a tally sheet. After completing the tally sheet, submit it to the county canvassing board. The form must be transmitted to the canvassing board no later than the 7th day after the election so the valid votes can be added to the canvass.

- After recording the valid votes on the ballots that can be counted, seal the counted ballots into an approved ballot container, attaching a ballot tag to the seal which indicates that the container holds the provisional envelope ballots returned after the election which were determined valid and counted. Retain the *Provisional Ballot Forms* in a separate secure place in your office.

- Register each voter who completed a *Provisional Ballot Form* regardless if the ballot was determined valid or invalid, envelope or affidavit, and associated voter history as necessary.

Reporting: No later than the 7th day after the election, the city or township clerk must complete a "Provisional Ballot Report" in the eLearning Center. The Provisional Ballot Report documents the number of provisional ballots which were 1) Affidavit ballots 2) Envelope ballots 3) the number of Envelope ballots determined valid and counted 4) the number of Envelope ballots determined invalid and not counted and 5) the number of Affidavits of Voter Not in Possession of Picture ID that were signed. A Provisional Ballot Report Worksheet is provided in the Appendix I.

Free Access System: All voters who were issued a provisional ballot must have access to a free informational system which the voters can use to obtain information on whether their ballot counted, and, if the ballot was not counted, the reason why the ballot was not counted. (HAVA refers to such systems as "free access systems.") A Notice to Voter must be distributed to each voter issued a provisional ballot as it advises the voter of his or her right to obtain this information.

To ensure compliance with this requirement, all city and township clerks must be prepared to handle inquiries from voters who were issued Envelope ballots. When handling such inquiries the clerk has an obligation to advise the voter on whether his or her Envelope ballot was counted or was not counted. If the voter's Envelope ballot was not counted, the clerk must explain the reason why and the actions the voter can take to ensure that the next time the voter wishes to participate in an election, his or her ballot will count.

The free-access system may be "a telephone number that does not require a toll charge, a toll-free telephone number, an internet website, or a mailed notice." If a mailed notice is employed, the notice must be sent to each and every voter who was issued an Envelope ballot.

TIE VOTES: In those rare instances where it is revealed through the canvass that two candidates are tied for nomination or election to an office certified by the canvassing board, the tie is determined by a drawing. (A tie vote on a ballot question defeats the ballot question; a tie breaking procedure is not followed.) As an initial step, the canvassing board sets a date when the tied candidates and all interested parties can assemble to participate in the drawing. Upon the establishment of a date, the canvassing board sends notice of the meeting to the candidates and interested parties. At the meeting, the county clerk handling the procedure writes the word "ELECTED" on a slip of paper and the words 'NOT ELECTED" on an identical slip of paper. Both of the slips are folded so that the words written on them cannot be seen and the two slips are indistinguishable from one another. Each candidate then draws one of the slips from a box. The candidate who draws the slip which bears the word "ELECTED" is deemed legally elected to the office involved. (MCL 168.851; 852)

- If an affected candidate fails to appear at the meeting, the county clerk or local clerk handling the procedure has the authority to appoint any person present to draw a slip for the absent candidate. If both candidates fail to appear at the meeting, persons are appointed to draw a slip for both of the candidates.

- If the office of county clerk is involved, the drawing must be conducted before the county sheriff.

- The defeated candidate may petition for a recount of the votes cast on the office if he or she feels that a mistake has occurred in the canvass of the votes.

- It is recommended that a written record of the drawing be kept by the county clerk or local clerk handling the procedure.

## DOCUMENT RETENTION AND PUBLIC AVAILABILITY OF VOTED BALLOTS

***Canvass Documents:*** Michigan election law requires the Board of County Canvassers to seal all Statement of Votes forms and Poll Books in envelopes upon the completion of the canvass. Red paper seals may be used to comply with the security requirement.

*Retention of Secured Ballots:* **The following outlines the federal and state provisions governing the retention of election ballots, voting equipment and related materials.**

- ***State Retention Requirements:*** During the ballot retention period specified under Michigan election law, local election officials must ensure that the seal of record used to secure 1) voting devices/tabulators and 2) ballot containers containing the used and unused ballots, programs, test decks, accuracy test results, edit listings and any other related materials *remain intact.*

  The seals may be broken only after security is released by the proper authority. Ballot security for the August primary and November general election is under the authority of the Secretary of State. The Secretary of State notifies the county clerk of each county in writing after the primary and general election when ballot security is released under Michigan election law. Further ballot retention and security provisions apply to partisan ballots used in the August primary and November general election as discussed under "Federal retention requirements."

Rules for Electronic Voting Systems require election official to secure 1) voting devices (tabulators) and **1)** ballot containers, used and unused ballots, programs, test decks, accuracy test results, edit listings and any other related materials for *30-days* after the certification of the primary or election. The retention period is extended if a recount is in progress, a defect in the ballot or voting equipment is being investigated, the destruction of the ballots is stayed by an order of the court, or the Secretary of State orders the extension of the retention period. Michigan election law provides the following allowance:

> "Unless a petition for recount has been filed and the recount has not been completed, ballots, ballot labels, programs, test results, and other sealed materials may be released from their original seal after 7 days following the final determination of the board of canvassers with respect to the election at which the ballots were voted. However, the released materials shall be secured and preserved for the time period required by this act and the rules promulgated by the secretary of state."

The above provision of law was enacted to accommodate situations where electronic voting equipment subject to the 30-day retention period explained above must be readied for an upcoming election. Essentially, the provision allows an election official responsible for the security of optical scan ballots, ballot labels, programs, test results and associated materials to break the original seal of record after seven days and transfer the materials involved to sealed ballot bags for the duration of the retention period.

- ***Federal Retention Requirements:*** If the office of President, U.S. Senator or Representative in Congress appears on the ballot, federal law requires that all documents relating to the election – including, ballots and programs used to tabulate optical scan ballots – be retained for 22 months. To comply with this requirement, the Department of State's Bureau of Elections recommends that ballots and programs relating to federal elections be stored in *sealed ballot bags* in a secure place during the 22-month retention period. This will free the city or township's ballot containers for use in other elections. The documents subject to the federal retention requirements must not be transferred to ballot bags for extended retention until after the retention requirements specified under Michigan election law have been fulfilled.

For retention time frames for other election materials, see the Retention Schedule in the Appendix.

## POST-ELECTION ACCESS TO VOTED BALLOTS

The Freedom of Information Act (FOIA) provides access to public records. Based on Attorney General Opinion No. 7247, issued on May 13, 2010, FOIA applies to voted ballots. While the opinion notes that voted ballots are not available for public inspection during specific times immediately after an election unless the Board of State Canvassers concurs, all ballots used in an election must be made available following the completion of the canvass, any requested recounts, or a court ordered date, whichever is later.

The opinion goes on to state that Rule 168.790(19) that empowers the Board of State Canvassers as the official source to grant access to ballots cannot operate to totally exempt ballots from FOIA. Only a statute can exempt a document from FOIA, not an administrative rule.

When a federal office is on the ballot there is a 22-month ballot retention period. This requirement comes from the Voting Rights Act, a federal law. The Department of Justice permits access to ballots during this time period but only if the review is conducted under more stringent constraints. The purpose of the 22-month retention is to preserve ballots as evidence in the event of a civil or criminal trial. To maintain the purity of the chain of custody, it is imperative that no one, other than an election official or their staff, handles the ballots or be left alone in a room with the ballots.

POST-ELECTION AUDITS: PA 271 of 2012 instructed the Secretary of State to develop an election audit program that details the documents to be inspected and the procedures used in preparation for and during an election. The post-election audit process thoroughly reviews procedures performed

before, during, and after the conduct of an election. Precincts are selected randomly after most elections. The Bureau of Elections posts the list of precincts selected in the News Update the week following an election. Information collected as part of the post-election audit process is used as an educational tool for all levels of election administration. Assignments are made in the eLearning Center to reinforce deficiencies found of the local and/or county clerks.

***Audit Process:*** Following the canvass of an election, counties and Bureau of Elections staff will conduct a thorough review of pre-election and election day documents to determine if procedures were properly followed according to state law and established procedure.

***Selection Process***: The Bureau of Elections will randomly select precincts for counties following each election and may select additional precincts to be audited at the state level.

***Focus of the Audit:*** Election notices, election inspector appointments and training, e-Pollbook security, test deck procedures, military and overseas voter applications, and a review of the pollbook and ballot containers used on election day will be the primary focus of the audit.

***Audit Findings:*** Discrepancies and deficiencies found as a result of the post-election audit will be used as training points for the local clerk who is participating in the audit as well as aid in the determination of future training needs to be provided at both the county and state level.

For more information, refer to the Post-Election Audit Manual & Checklist found in the eLearning Center or on the Information for Election Administrators webpage.

## EAC SURVEY REPORTING REQUIREMENTS: Biennially, the Election Assistance Commission (EAC) requires local clerks to report data the relates to NVRA, the MOVE Act, and other election related items. QVF tracks much of this data when entered properly. The following is an overview of the data collection requirements of this survey. At the end of every even year, the Bureau of Elections will request this data through a survey in the eLearning Center.

## NVRA REPORTING – VOTER REGISTRATION: The National Voter Registration Act (NVRA) of 1993 requires data collection regarding voter registration activity. After every General Election, the Federal Election Assistance Commission (FAC) sends a survey to each state to collect this data. The Qualified Voter File (QVF) has been designed to collect a substantial amount of this data simply through regular data entry. However, not all data is captured and care must be taken to enter the data into QVF correctly.

**Items QVF tracks automatically when entered into the system:**

- Number of new voter registrations
- Location where the voter registered to vote
- Address changes within a jurisdiction
- Rejected applications if able to enter into QVF
- Cancellations
- Confirmation cards sent
- Duplicate registrations (except SOS Branch Office forms)
- Confirmation cards returned
- Result of returned confirmation card (cancellation, address change, undeliverable, etc.)

**Items QVF does not track automatically and requires manual tracking by the Clerk:**

- Invalid or rejected applications if unable to enter into QVF

## MOVE Reporting – Absentee Ballots

In addition to voter registration statistics, the EAC also requires reporting of absentee ballot activity for the November general election. Use of QVF is required by all Clerks for tracking absentee ballot activity. If properly utilized, the system will automatically track much of the reporting necessary to complete the EAC survey.

**Items QVF tracks automatically when entered into the system:**

- number of absentee ballots distributed to all voters
- number of absentee ballots distributed to military, overseas civilian and domestic civilian voters
- number of absentee ballots distributed to military and overseas voters by regular mail, email or fax
- number of absentee ballots distributed to military and overseas voters requested via the FPCA
- number of absentee ballots returned by all voters in time to be counted
- number of absentee ballots returned by military and overseas voters
- Number of Federal Write-in Absentee Ballots (FWAB's) returned by military and overseas voters in time to be counted.

# EXHIBIT 6

# Document Retention Schedule

The following lists the length of time election records and materials must be retained. It merits note that the retention schedules are separated into two categories: Election Administration, County Records, and City/Township/Village Records. This listing follows the State of Michigan's General Schedule #23 unless a new law has changed the retention period. Changes from General Schedule #23 are highlighted in yellow.

## Election Administration

| Item # | Item | Retention Period |
|--------|------|------------------|
| 100 | Bureau of Elections Correspondence | Creation date + 2 years |
| 101 | Transitory Correspondence | 30 days after receipt |
| 102 | Post Election Reports | Day after November General Election + 2 years |
| 103 | Certification | While serving as an election official |

## County Records

| Item # | Item | Retention Period |
|--------|------|------------------|
| 200 | Affidavits of Candidacy | Until the election is held + 2 years |
| 201 | Affidavits of Constitutional Qualification | Until the election is held + 2 years |
| 202 | Affidavits of Identity | Until the election is held + 2 years |
| 203A | Applications to Vote | Until the election is held + 6 years |
| 204 | Apportionment | From the first election that the plan was in effect + 11 years |
| 205 | Ballots (Select School District Elections) | Until 30 days after the canvass of the election is completed, or<br><br>• until a recount is completed,<br><br>• until a court order or a Secretary of State order to suspend destruction is lifted, or<br><br>• until an investigation into defective ballots or voting equipment is completed |
| 206 | Board of County Canvassers Meeting Materials | Permanent |

| 207A | Campaign Finance Statements of Organization – Committees Receiving Less Than $50,000 | Until the official date of dissolution + 5 years |
|---|---|---|
| 207B | Campaign Finance Statements of Organization – Committees Receiving More Than $50,000 | Until the official date of dissolution + 15 years |
| 208A | Campaign Finance Reporting – Committees Receiving Less Than $50,000 | Creation Date + 5 years |
| 208B | Campaign Finance Reporting – Committees Receiving More Than $50,000 | Creation Date + 15 years |
| 209 | Candidate Filing Fee Refunds | Until Audit |
| 210 | Candidate Listing | Until the election is held + 2 years |
| 211 | Certificates of Acceptance | Until the term of office expires |
| 212 | County Election Commission Meeting Materials | Permanent |
| 213 | County Election Results | Permanent |
| 214 | Declaration of Intent | Until the election is held + 2 years |
| 215 | Election Challengers | Until the election is held + 2 years |
| 216 | Election Inspector Certificates | Creation date + 2 years |
| 217 | Election Inspector Training | Retain the most current training materials (older materials may be kept for reference purposes) |
| 218 | Election Notices | Until canvass of the election is completed + 2 years |
| 219 | Electronic Voting Systems | 30 days following the canvass and certification of the election |
| 220 | Nominating and Qualifying Petitions | Until January 1 following the election |
| 221 | Nominating Petition Record | Until petitions are disposed of + 2 years |
| 222 | Oaths of Office – Election Officials | Until canvass of the election is completed + 2 years |

| 223 | Poll Books | Until canvass of the election is completed + 2 years |
| 224 | Precinct Delegates | Until the election is held + 2 years |
| 225 | Precinct Tabulation Data | Until the election is held + 2 years |
| 226A | Preliminary Accuracy Testing – Federal Offices | Until the election is held + 2 years |
| 226B | Preliminary Accuracy Testing – State and Local Offices | Until the election is held + 30 days |
| 227A | Proof Ballots – State and Local Offices | Until the election is held + 30 days |
| 227B | Proof Ballots – Federal Offices | Until the election is held + 22 months |
| 228 | Proposal Petitions | Until canvass of the election is completed + 2 years |
| 229 | Recalls | Creation date + 2 years |
| 230 | Recounts | Until the recount is completed + 2 years |
| 231A | Sample Ballots – State and Local Offices | Until the election is held + 30 days |
| 231B | Sample Ballots – Federal Offices | Until the election is held + 22 months |
| 232 | School Election Coordinating Committee | Expiration + 6 years |
| 233 | Statement of Vote | Until the election is held + 2 years |
| 234 | Tally Sheets/Books | Until the election is held + 2 years |
| 235 | Tie votes | Until the tie vote is broken + 2 years |
| 236 | Voting Equipment Acquisition | Life of equipment + 6 years |

*Election Document Retention Schedule*
*Provided by the Michigan Bureau of Elections*
*Updated as May 2019*

**City and Township Records**

| Item # | Item | Retention Period |
|---|---|---|
| 300 | Absentee Ballot Envelopes | Until the election is held + 2 years |
| 301 | Absentee Voter List | Until the election is held + 2 years |
| 302 | Application for Absentee Ballot | Until the election is held + 6 years |
| 303 | Applications to Vote | Until the election is held + 6 years |
| 304 | Affidavits of Identity | Until the election is held + 2 years |
| 305 | Affidavit of Voter Unable to Meet Photo ID Requirement | Until the election is held + 6 years |
| 306 | Ballots – Federal Offices | Until canvass of the election is completed + 22 months |
| 307 | Ballots – State and Local Offices<br><br>(Note: This series also applies to <u>unused ballots</u> for federal, state and local offices) | Until 30 days after the canvass of the election is completed, or<br><br>• until a recount is completed,<br><br>• until a court order or a Secretary of State order to suspend destruction is lifted, or<br><br>• until an investigation into defective ballots or voting equipment is completed |
| 308 | Candidate Listing | Until the election is held + 2 years |
| 309 | Declaration of Intent | Until January 1 following the election |
| 310 | Election Notices | Until canvass of the election is completed + 2 years |
| 311 | Election Inspector Applications | While the person is eligible for appointment as an inspector |
| 312 | Election Inspector Certificates | Creation date + 2 years |
| 313 | Election Inspector Training | Retain the most current training materials<br><br>(older materials may be kept for reference purposes) |

| 314 | Electronic Voting Systems | Until 30 days after the canvass of the election is completed, or<br><br>• until a recount is completed,<br><br>• until a court order or a Secretary of State order to suspend destruction is lifted, or<br><br>• until an investigation into defective ballots or voting equipment is completed |
|---|---|---|
| 315 | Federal Post Card Application | Creation date + 6 years |
| 316 | Local Election Commission Meeting Materials | Permanent |
| 317 | Local Election Results | Permanent |
| 318 | Nominating and Qualifying Petitions | Until January 1 following the election |
| 319 | Nominating Petition Record | Until petitions are disposed of + 2 years |
| 320 | Oaths of Office – Election Officials | Until the election is held + 2 years |
| 321 | Precinct Maps | Only retain current precinct maps<br><br>(Any outdated maps should be sent to Archives of Michigan for permanent preservation) |
| 322A | Preliminary Accuracy Testing – Federal Offices | Until the election is held + 2 years |
| 322B | Preliminary Accuracy Testing – State and Local Offices | Until the election is held + 30 days |
| 323 | Proposal Petitions | Until canvass of the election is completed + 2 years |
| 324 | QVF Precinct Lists | Until the election is held + 2 years |
| 325 | School Election Coordinating Committee | Expiration + 6 years |
| 326 | Statement of Vote | Until the election is held + 2 years |
| 327 | Tally Sheets/Books | Until the election is held + 2 years |
| 328 | Tie votes | Until the tie vote is broken + 2 years |
| 329 | Voter Identification Cards – Returned | Until the voter's registration is cancelled |

| 330A | Voter Registration Applications | Until the master card is generated |
| 330B | Voter Registration Applications of those that register in-person with their local clerk in the final 14 days before an election, including election day, *who do not provide* residency verification with a Driver's License or Personal ID. | Until the election is held + 6 years |
| 331 | Voter Registration Master Cards – Originals | Until cancelled + 5 years |
| 332 | Voter Registration Master Cards – Duplicates | Until cancelled + 2 years |
| 333 | Voter Registration Cards – Voided | Creation date + 2 years |
| 334 | Voter Registration Cards – Change of Address | Until the official voter registration record is updated |
| 335 | Voting Equipment Acquisition | Life of the equipment + 6 years |

| Item # | Title and Description |
| --- | --- |

**Administration**

**100   Bureau of Elections Correspondence**
This correspondence is received from the Bureau of Elections and pertains to policy or housekeeping issues. This correspondence may exist in a variety of formats, including memos, letters, notes, and electronic mail messages. This does not include the Election News and the News You Can Use newsletters that are published and retained by the Bureau.

**101   Transitory Correspondence**
Transitory correspondence is any form of written communication with a short-term interest that has no documentary value. This type of correspondence has limited administrative and evidential value that is lost soon after the communication is received. **Transitory messages do not set policy, establish guidelines or procedures, certify a transaction or become a receipt.** Examples of transitory correspondence include letters of transmittal that do not add information to the transmitted materials, routine requests for information that require no administrative action, policy decision, special compilation or research. This type of record also includes invitations to work-related events, notifications of an upcoming meeting, and similar records.

**102   Post Election Reports**
The Secretary of State is required to submit a post election report to the Elections Assistance Commission detailing the State of Michigan's compliance with the National Voting Rights Act and the Help America Vote Act. Clerks are required to create and maintain data on an ongoing basis that is compiled for this report.

**103**    **Certification**
The Bureau of Elections provides training to election officials. Officials take a self-administered accreditation exam, and receive a certificate upon successful completion of the exam.

## County Records

**200**    **Affidavits of Candidacy**
These are filed by incumbent judges seeking ballot access for re-election.

**201**    **Affidavits of Constitutional Qualification**
These forms are filed by candidates for judicial positions.

**202**    **Affidavits of Identity**
These forms are filed by all candidates for elected office, including precinct delegates.

**203**    **Applications to Vote**
These forms are completed and signed by voters at the polls. They are used to confirm that the voter has a valid registration in the jurisdiction, and they are used to verify the identity of the voter. County clerks only maintain these records for select elections. MCL 168.811

**204**    **Apportionment**
These records document the re-apportionment of the Board of Commissioner district boundaries after a census is completed. These files may include correspondence, litigation materials, minutes of apportionment commission meetings, maps, district descriptions, demographic information, etc.

**205**    **Ballots (Select School District Elections)**
These records document votes in select school district elections and special elections that are administered by the county clerk per an agreement. They include ballots, counted absentee ballots, provisional ballots, challenged ballots, unused ballots, spoiled ballots, and ballots rejected for exposure, ballot containers containing optical scan ballots, etc.

**206**    **Board of County Canvassers Meeting Materials**
These files include agendas, minutes, and supporting documentation (such as transcripts, correspondence, certificates of election, challenges) that were reviewed by the board during its meetings.

**207A**    **Campaign Finance Statements of Organization—Committees Receiving Less Than $50,000**
These records document the creation of committees supporting the election/re-election of candidates for local offices (or groups supporting/opposing local ballot questions) whose campaign committee received less than $50,000 in the election cycle.

**207B**    **Campaign Finance Statements of Organization—Committees Receiving More Than $50,000**
These records document the creation of committees supporting the election/re-election of candidates for local offices (or groups supporting/opposing local ballot questions) whose campaign committee received more than $50,000 in the election cycle.

**208A**    **Campaign Finance Reporting--Committees Receiving Less Than $50,000**
These records document the campaign finance activities of candidates for local offices (or groups supporting/opposing local ballot questions) whose campaign committee received less than $50,000 in the election cycle.  They may include campaign finance reports (regular

reports during the election cycle and annual reports, as required), amendments, receipts for late filing fee charges, correspondence, other statements and reports.

**208B**        **Campaign Finance Reporting--Committees Receiving More Than $50,000**
These records document the campaign finance activities of candidates for local offices (or groups supporting/opposing local ballot questions) whose campaign committee received more than $50,000 in the election cycle.  They may include campaign finance reports (regular reports during the election cycle and annual reports, as required), amendments, receipts for late filing fee charges, correspondence, other statements and reports.

**209**        **Candidate Filing Fee Refunds**
After the primary is held some candidates are eligible for a refund of their filing fee.

**210**        **Candidate Listing**
This register is used to log when a candidate files an Affidavit of Identity.

**211**        **Certificates of Acceptance**
After a person is elected to a school board they have to file a certificate of acceptance with the school district. A copy is sent to the county clerk (MCL 168.309).

**212**        **County Election Commission Meeting Materials**
These files include agendas, minutes, resolutions and supporting documentation that was reviewed by the commission during its meetings.

**213**        **County Election Results**
These records (also known as the "canvass of votes") document the final outcome of elections, as determined by the Board of County Canvassers.

**214**        **Declaration of Intent**
These forms are submitted by individuals who seek nomination or election to an office with write-in votes. Votes for write-in candidates who do not file a Declaration of Intent will not be counted.

**215**        **Election Challengers**
An organization or group that intends to appoint election challengers must submit a notarized statement to the clerk of the jurisdiction that states the reason why the right to make the appointments is claimed. These records will include the statement, a copy of the identification card to be used by the challengers, and the approval or denial (and possibly appeal documents).

**216**        **Election Inspector Certificates**
Election inspectors must attend training every two years. These certificates document who attended training.

**217**        **Election Inspector Training**
These records include materials developed by the Bureau of Elections and the county clerk to train election inspectors.

**218**        **Election Notices**
Clerks must publish a notice in local newspapers notifying the public of the registration requirements, of upcoming elections and of public accuracy tests of voting equipment. These records will include a copy of the notice, the affidavit of publication and the bill from the newspaper.

**219**     **Electronic Voting Systems**
These systems are used to conduct select school district elections and special elections that are administered by the county clerk per an agreement. They include voting devices, ballot containers, optical scan ballots, etc.

**220**     **Nominating and Qualifying Petitions**
All candidates (both partisan and non-partisan) for countywide offices must file nominating or qualifying petitions with the clerk. These petitions contain signatures of registered voters living within the office's jurisdiction stating that they want to have the candidate's name placed on the ballot. These records may be returned to the candidate or destroyed as requested by candidate at the end of their retention period.

**221**     **Nominating Petition Record**
This record lists which candidates submitted nominating petitions for each election cycle. It contains the office, candidate, filing date, determination date, number of signatures required and filed, date the petitions were returned or destroyed, and the date of the election.

**222**     **Oaths of Office—Election Officials**
This affidavit is signed by election officials who serve on Absent Voter Counting Boards, as Election Inspectors, etc. who affirm that they will lawfully fulfill the duties to which they have been appointed. Poll watchers who observe the action of the absent voter counting board must also take and sign an oath of secrecy.

**223**     **Poll Books**
These books identify which registered voters participated in an election. They identify which voters were issued provisional ballots and which voters were challenged. This record includes Absent Voter Poll Books that identify which absent voters were mailed ballots. These books are received from cities and townships for maintenance by the county clerk. MCL 168.811

**224**     **Precinct Delegates**
These records document the certification of election results for precinct delegates and notification to political parties. They may include tally sheets, certificates of election, lists, etc.

**225**     **Precinct Tabulation Data**
This data documents the programming (burning) of removable data storage devices for precinct tabulators. It will include definitions, vote totals, an audit of voting activity. The data may be transferred to other storage media for retention.

**226A**   **Preliminary Accuracy Testing**
These records document tests of voting equipment prior to the election.  They include data containing voting formulas for the election that is used to test the equipment's accuracy, Voter Assist Terminal (VAT)testing, test ballots, test decks, documents and certification, edit listings, etc.

**226B**   **Preliminary Accuracy Testing (State and Local Offices)**
These records document tests of voting equipment prior to the election.  They include data containing voting formulas for the election that is used to test the equipment's accuracy, VAT testing, test ballots, test decks, documents and certification, edit listings, etc.
.

**227A**   **Proof Ballots (State and Local Offices)**
Proof ballots are produced to proofread the wording and formatting of each style of ballot that will be used in the election. They are reviewed by the candidates, Bureau of Elections and the County Election Commission prior to printing. These records may include hard copy or electronic proof ballots (one of each style) and related correspondence.

**227B**      **Proof Ballots (Federal Offices)**
Proof ballots are produced to proofread the wording and formatting of each style of ballot that will be used in the election. They are reviewed by the candidates, Bureau of Elections and the County Election Commission prior to printing. These records may include hard copy or electronic proof ballots (one of each style) and related correspondence.

**228**       **Proposal Petitions**
Groups or individuals wishing to place a question on the countywide ballot for an upcoming election must also submit petitions. These petitions contain signatures of registered voters living within the jurisdiction stating that they want to have the proposal placed on the ballot.

**229**       **Recalls**
Voters may initiate a recall of elective officers in the state. These records will contain petition language submissions, clarity review documents, public meeting notices, signed petitions, signature challenges, petition review notices, correspondence, etc.

**230**       **Recounts**
These records document the administration of election recounts. They may include tally sheets, application forms, financial documents, petitions, counter petitions, objections, sign-in sheets, correspondence, and personnel records for the workers, etc.

**231A**      **Sample Ballots (State and Local Offices)**
These ballots are produced and marked "sample" for posting for public information.

**231B**      **Sample Ballots (Federal Offices)**
These ballots are produced and marked "sample" for posting for public information.

**232**       **School Election Coordinating Committee**
The school election coordinating committee identifies the duties and responsibilities of parties that administer school elections. Their agreements are renewed every two years. These records may include meeting records, agreements, maps, resolutions, correspondence, etc.

**233**       **Statement of Vote**
These documents are certified on Election Day by election inspectors.  They summarize the votes for write-in candidates and the number of ballots issued (used and unused). The statement may be part of the poll book. MCL 168.811

**234**       **Tally Sheets/Books**
These documents are used to calculate the number of write-in votes.  These sheets may be part of the poll book. MCL 168.811

**235**       **Tie Votes**
These records document that proper procedures were followed when breaking a tie vote. These records include notices, sign-in sheets, and the name slips, etc.

**236**       **Voting Equipment Acquisition**
These records document the acquisition and maintenance of voting equipment. They include contracts, HAVA grants, maintenance agreements, serial numbers, resolutions, correspondence, etc.

**City, Township and Village Records**

**300**       **Absentee Ballot Envelopes**
These envelopes were used to transmit absentee ballots. Envelopes containing valid ballots will be opened and emptied so the ballot can be counted (see items #304-305).

Invalid/rejected ballots remain inside the envelope, and the envelope may remain sealed. In this case, the ballot is not counted. MCL 168.811

**301    Absentee Voter List**
This list identifies which voters in each precinct were mailed absentee ballots. It contains the name of the voter, address where the ballot was mailed, date the application was received, date the ballot was mailed, date the ballot was received, etc. This record includes the absentee ballots information posting. The list may be part of the poll book. MCL 168.811

**302    Application for Absentee Ballot**
These applications are submitted by voters wishing to receive an absentee ballot for upcoming primary and/or general elections. These records also include "emergency" absentee ballot requests. MCL 168.811

**303    Applications to Vote**
These forms are completed and signed by voters at the polls. They are used to confirm that the voter has a valid registration in the jurisdiction, and they are used to verify the identity of the voter. MCL 168.811

**304    Affidavits of Identity**
These forms are filed by all candidates for elected office, including precinct delegates.

**305    Affidavit of Voter Unable to Meet Photo ID Requirements**
This form is signed by voters who do not possess photo identification when attending the polls.

**306    Ballots (Federal Offices)**
These records document votes in elections where the office of U.S. President, U.S. Senate, or Representative in Congress appears on the ballot (including proof ballots, sample ballots, uncounted ballots, counted absentee ballots, provisional ballots, challenged ballots, spoiled ballots, and ballots rejected for exposure). They include optical scan ballots and the programs used to tabulate them, and Federal Write-In Absentee Ballots. Optical scan ballots shall be stored in sealed ballot bags in a secure place during this retention period, after the retention requirements specified under Michigan law have been met (see item #305 and 311).

**307    Ballots (State and Local Offices)**
These records document votes in elections for state and local offices, some school district elections, and special elections in which candidates for federal offices did not appear on the ballot (including proof ballots, sample ballots, uncounted ballots, unused ballots, counted absentee ballots, provisional ballots, challenged ballots, spoiled ballots, and ballots rejected for exposure). They include voting devices/tabulators, ballot containers containing optical scan ballots, programs, edit listings, etc. **Note: this series also applies to unused ballots for federal, state and local offices.**

**308    Candidate Listing**
This register is used to log when a candidate files an Affidavit of Identity.

**309    Declaration of Intent**
These forms are submitted by individuals who seek nomination or election to an office with write-in votes. Votes for write-in candidates who do not file a Declaration of Intent will not be counted.

**310    Election Notices**
Clerks must publish a notice in local newspapers notifying the public of the registration requirements, of upcoming elections and of public accuracy tests of voting equipment. These

records will include a copy of the notice, the affidavit of publication and the bill from the newspaper.

**311**     **Election Inspector Applications**
These applications are submitted by people who are interested in serving as election inspectors. Inspectors are appointed by the local election commission.

**312**     **Election Inspector Certificates**
Election inspectors must attend training every two years. These certificates document who attended training.

**313**     **Election Inspector Training**
These records may include materials developed by the Bureau of Elections, the county clerk and the local clerk to train election inspectors.

**314**     **Electronic Voting Systems**
These records document elections for state and local offices, some school district elections, and special elections. They include voting devices, ballot containers, optical scan ballots, programs, edit lists, etc.

**315**     **Federal Post Card Application**
These voter registration/absent voter ballot applications are produced and distributed by the federal government to permit eligible individuals to vote while outside of the country.

**316**     **Local Election Commission Meeting Materials**
These files include agendas, minutes, resolutions and supporting documentation that was reviewed by the commission during its meetings.

**317**     **Local Election Results**
These records (also known as the "canvass of votes") document the final outcome of elections, as determined by the Board of County Canvassers.

**318**     **Nominating and Qualifying Petitions**
All candidates (both partisan and non-partisan) for local offices must file nominating or qualifying petitions with the clerk. These petitions contain signatures of registered voters living within the office's jurisdiction stating that they want to have the candidate's name placed on the ballot. These records may be returned to the candidate or destroyed as requested by candidate at the end of their retention period.

**319**     **Nominating Petition Record**
This record lists which candidates submitted nominating petitions for each election cycle. It contains the office, candidate, filing date, determination date, number of signatures required and filed, date the petitions were returned or destroyed, and the date of the election.

**320**     **Oaths of Office—Election Officials**
This affidavit is signed by election officials who serve on Absent Voter Counting Boards, as election inspectors, etc. who affirm that they will lawfully fulfill the duties to which they have been appointed. Poll watchers who observe the action of the absent voter counting board must also take and sign an oath of secrecy. These oaths may be part of the poll book.

**321**     **Precinct Maps**
These maps define the boundaries of precincts within a jurisdiction.  Superseded maps should be sent to the Archives of Michigan for permanent preservation.

**322A**      **Preliminary Accuracy Testing (Federal Offices)**
These records document tests of voting equipment prior to the election.  They include data containing voting formulas for the election that is used to test the equipment's accuracy, VAT testing, test ballots, test decks, documents and certification, edit listings, etc.

**322B**      **Preliminary Accuracy Testing (State and Local Offices)**
These records document tests of voting equipment prior to the election.  They include data containing voting formulas for the election that is used to test the equipment's accuracy, VAT testing, test ballots, test decks, documents and certification, edit listings, etc.

**323**      **Proposal Petitions**
Groups or individuals wishing to place a question on the local ballot for an upcoming election must also submit petitions. These petitions contain signatures of registered voters living within the jurisdiction stating that they want to have the proposal placed on the ballot.

**324**      **QVF Precinct Lists**
These lists are generated from the Qualified Voter File to identify who is registered to vote at each precinct within the jurisdiction. MCL 168.811

**325**      **School Election Coordinating Committee**
The school election coordinating committee identifies the duties and responsibilities of parties that administer school elections. Their agreements are renewed every two years. These records may include meeting records, agreements, maps, resolutions, correspondence, etc.

**326**      **Statement of Vote**
These documents are certified on Election Day by election inspectors.  They summarize the votes for write-in candidates and the number of ballots issued (used and unused). The statement may be part of the poll book. MCL 168.811

**327**      **Tally Sheets/Books**
These documents are used to calculate the number of write-in votes.  These sheets may be part of the poll book. MCL 168.811

**328**      **Tie Votes**
These records document that proper procedures were followed when breaking a tie vote.

**329**      **Voter Identification Cards—Returned**
These voter identification cards were returned by the post office as undeliverable.

**330A**      **Voter Registration Applications**
Applications to become a registered voter are received in a variety of ways. The information from the application is entered into QVF and a master card is generated.

**330B**      **Voter Registration Applications**
Applications of those that register in-person with their local clerk in the final 14 days before an election, including election day, ***who do not provide*** residency verification with a Driver's License or Personal ID, must be retained according to the retention schedule.

**331**      **Voter Registration Master Cards—Originals**
These cards identify who is registered to vote in elections. The signatures on the cards are used to verify the identity of the voter. Per MCL 168.514, the registration records, if combustible, shall be destroyed by burning.

**332**      **Voter Registration Master Cards—Duplicates**
These cards identify who is registered to vote in elections. Per MCL 168.514, if the original card is reproduced in accordance with the Records Reproduction Act (MCL 24.401-24.406), the original becomes the duplicate record, and the reproduction becomes the original.

**333**      **Voter Registration Cards—Voided**
Clerks will void a voter registration application if the application's deficiency cannot be resolved. A notice of rejection is sent to the applicant. Per MCL 168.514, the registration records, if combustible, shall be destroyed by burning.

**334**      **Voter Registration Cards--Change of Address**
Clerks may receive written notice signed by the voter that he/she has changed addresses. The address change may need to be communicated to a village clerk. These records also include Election Day Change of Address Notices, and Address Confirmation Notices.

**335**      **Voting Equipment Acquisition**
These records document the acquisition and maintenance of voting equipment. They include contracts, HAVA grants, maintenance agreements, serial numbers, resolutions, correspondence, etc.

# EXHIBIT 7



STATE OF MICHIGAN
**BUREAU OF ELECTIONS**
LANSING

## MEMORANDUM

DATE:        December 1, 2020
TO:          County Clerks
FROM:        Michigan Bureau of Elections
SUBJECT:     Recounts; Release of Voting Equipment

Please be advised of the following:

**STATE RECOUNTS:** The Board of State Canvassers completed its canvass of the November 3, 2020 general election on November 23, 2020.  The deadline for filing a petition for a recount with the Secretary of State elapsed on November 30, 2020.  The following lists the recount requests received by the Secretary of State by the recount petition filing deadline:

- 71st State House District:  Eaton County

**CONDUCT OF LOCAL RECOUNTS:** Recounts requested for local offices that overlap the district listed above may not proceed until clearance is received through this office.  Recounts requested for local offices that do not overlap the district listed above may proceed at this time.

**DEADLINE FOR COMPLETION OF RECOUNTS:**  After a general election, each requested recount must be completed no later than 30 days after 1) the deadline for filing a counter petition or 2) the first date the recount may lawfully begin (MCL 168.875).

**CONDUCT OF POST-ELECTION AUDITS:**  If a recount has been requested involving a precinct that has been selected for a post-election audit, the audit may not begin until after the recount has been completed.  All other post-election audits may proceed at this time.  All of the resources you will need to conduct post-election audits may be found at this link:   Post-Election Audit Resources.

The post-election procedure audit includes a hand count of the ballots for the U.S. Senate race in each precinct selected for audit. Additionally, we will be conducting a state-wide Risk Limiting Audit of the Presidential race.

**RELEASE OF VOTING EQUIPMENT:** The security of ballots and election equipment is released as follows:

Bailey v Antrim County                                                    MDOS_0005094
No. 20-9238-CZ

***Ballots, programs and related materials:*** The security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials will be released once all post-election audits are completed.

***E-Pollbook laptops and flash drives:*** The EPB software and associated files must be deleted from all devices by the seventh calendar day following the final canvass and certification of the election (November 30, 2020) unless a petition for recount has been filed and the recount has not been completed, a post-election audit is planned but has not yet been completed, or the deletion of the data has been stayed by an order of the court or the Secretary of State.

**FEDERAL BALLOT RETENTION REQUIREMENT:** If the office of President, U.S. Senator or U.S. Representative in Congress appears on the ballot (all appeared on the November 3, 2020 general election ballot), federal law requires that all documents relating to the election -- including optical scan ballots and the programs used to tabulate optical scan ballots -- be retained for 22 months from the date of the certification of the election. To comply with the requirement, the Bureau of Elections recommends that optical scan ballots and the programs relating to federal elections be stored in **sealed ballot bags** in a secure place during the 22-month retention period. The documents subject to the federal retention requirement must not be transferred to ballot bags for extended retention until after they are released under Michigan election law as detailed in this memo.

## Questions?

If you have any questions, please contact us via email at elections@michigan.gov, or by phone at (517) 335-3234 or (800) 292-5973.

2

## Post-Election Procedure Audit Precinct List - November 3, 2020 Election

| COUNTY | JURISDICTION | PRECINCT | ADDRESS1 | ADDRESS2 |
|---|---|---|---|---|
| | Genesee County, FLINT CITY | 1-3 | 6031 DUPONT ST | FLINT MI 48505 |
| Audit Being | Genesee County, THETFORD TOWNSHIP | 1 | 12167 N. LEWIS RD. | CLIO MI 48420 |
| Conducted by | Lake County, YATES TOWNSHIP | 19 | 6437 SOUTH NELSON ROAD | IDLEWILD MI 49642 |
| the State | Shiawasee County, VERNON TOWNSHIP | 1 | 6801 S DURAND ROAD | DURAND MI 48429 |
| | Wayne County, REDFORD TOWNSHIP | 19 | 26555 WESTFIELD | REDFORD MI 48239 |
| ALCONA COUNTY | HAWES TOWNSHIP | 1 | 2120 W. TRASK LAKE RD. | BARTON CITY MI 48705 |
| ALGER COUNTY | MUNISING CITY | 1 | 301 E. SUPERIOR STREET | MUNISING MI 49862 |
| | LEIGHTON TOWNSHIP | 2 | 4451 12TH ST | WAYLAND MI 49348 |
| ALLEGAN COUNTY | SALEM TOWNSHIP | 2 | 3003 142ND AVENUE | DORR MI 49323 |
| | SOUTH HAVEN CITY | 3-2 | 539 PHOENIX STREET | SOUTH HAVEN MI 49090 |
| ALPENA COUNTY | LONG RAPIDS TOWNSHIP | 1 | 5310 M=65 NORTH | LACHINE MI 49753 |
| ANTRIM COUNTY | CUSTER TOWNSHIP | 1 | 2949 ALDEN HWY | BELLAIRE MI 49615 |
| ARENAC COUNTY | ARENAC TOWNSHIP | 1 | 2596 STATE ROAD | STANDISH MI 48658 |
| BARAGA COUNTY | LANSE TOWNSHIP | 1 | 126 N MAIN ST | LANSE MI 49946 |
| | CASTLETON TOWNSHIP | 1 | 915 REED STREET | NASHVILLE MI 49073 |
| BARRY COUNTY | HASTINGS CITY | 3 | 309 E WOODLAWN AVENUE | HASTINGS MI 49058 |
| | WOODLAND TOWNSHIP | 1 | 156 S. MAIN STREET | WOODLAND MI 48897 |
| | BAY CITY CITY | 4-1 | 1012 FREMONT AVENUE | BAY CITY MI 48708 |
| BAY COUNTY | MONITOR TOWNSHIP | 6 | 2483 MIDLAND RD | BAY CITY MI 48706 |
| | PINCONNING TOWNSHIP | 1 | 1751 E CODY-ESTEY ROAD | PINCONNING MI 48650 |
| BENZIE COUNTY | JOYFIELD TOWNSHIP | 1 | 5490 BENZIE HWY | BENZONIA MI 49616 |
| | BENTON CHARTER TOWNSHIP | 1 | 1725 TERRITORIAL ROAD - SUITE B | BENTON HARBOR MI 49022 |
| | BRIDGMAN CITY | 1 | 9765 MAPLE STREET | BRIDGMAN MI 49106 |
| BERRIEN COUNTY | BUCHANAN CITY | 1 | 302 N RED BUD TRAIL | BUCHANAN MI 49107 |
| | PIPESTONE TOWNSHIP | 1 | 7185 ELM ST | EAU CLAIRE MI 49111 |
| | ST JOSEPH CHARTER TOWNSHIP | 4 | 3590 LINCOLN AVE | ST JOSEPH MI 49085 |
| | BRONSON TOWNSHIP | 1 | 207 N. MATTESON STREET | BRONSON MI 49028 |
| BRANCH COUNTY | CALIFORNIA TOWNSHIP | 1 | 1019 COPELAND RD | MONTGOMERY MI 49255 |
| | COLDWATER CITY | 4-1 | 235 E. GARFIELD AVENUE | COLDWATER MI 49036 |
| | BATTLE CREEK CITY | 4-8 | 1079 RIVERSIDE DRIVE | BATTLE CREEK MI 49015 |
| | CLARENDON TOWNSHIP | 1 | 21947 R DRIVE SOUTH | HOMER MI 49245 |
| CALHOUN COUNTY | BURLINGTON TOWNSHIP | 1 | 215 W LEROY ST | BURLINGTON MI 49029 |

Counties in red include a jurisdiction with an audit to be conducted by the State. Please see list on first page.

|  | EMMETT TOWNSHIP | 3 | 6892 D DRIVE N | BATTLE CREEK MI 49014 |
|---|---|---|---|---|
|  | MARSHALL CITY | 1 | 201 SOUTH GRAND | MARSHALL MI 49068 |
|  | CALVIN TOWNSHIP | 1 | 18727 MT. ZION ROAD | CASSOPOLIS MI 49031 |
| CASS COUNTY | DOWAGIAC CITY | 2 | 302 S FRONT STREET | DOWAGIAC MI 49047 |
|  | LA GRANGE TOWNSHIP | 1 | 58253 M-62 | CASSOPOLIS MI 49031 |
| CHARLEVOIX COUNTY | EVANGELINE TOWNSHIP | 5 | 2746 WILDWOOD HARBOR ROAD | BOYNE CITY MI 49712 |
|  | BEAUGRAND TOWNSHIP | 1 | 1999 OLD MACKINAW ROAD | CHEBOYGAN MI 49721 |
| CHEBOYGAN COUNTY | NUNDA TOWNSHIP | 1 | 12991 SOUTH STRAITS HIGHWAY | WOLVERINE MI 49799 |
|  | WILMOT TOWNSHIP | 1 | 14980 OLD STURGEON ROAD | WOLVERINE MI 49799 |
| CHIPPEWA COUNTY | RUDYARD TOWNSHIP | 1 | 18725 S MACKINAC TR | RUDYARD MI 49780 |
| CLARE COUNTY | WINTERFIELD TOWNSHIP | 1 | 8987 COOK AVE | MARION MI 49665 |
|  | EAGLE TOWNSHIP | 1 | 14318 MICHIGAN STREET | EAGLE MI 48822 |
| CLINTON COUNTY | GREENBUSH TOWNSHIP | 1 | 1 3/4 MILE OFF US27 ON FRENCH RD | SAINT JOHNS MI 48879 |
|  | ST JOHNS CITY | 2 | 515 N. LANSING | ST JOHNS MI 48879 |
| CRAWFORD COUNTY | GRAYLING CITY | 1 | 1020 CITY BOULEVARD | GRAYLING MI 49738 |
|  | BRAMPTON TOWNSHIP | 1 | 9019 BAY SHORE DR | GLADSTONE MI 49837 |
| DELTA COUNTY | ESCANABA TOWNSHIP | 1 | 8189 P.5 ROAD | GLADSTONE MI 49837 |
|  | FORD RIVER TOWNSHIP | 1 | 3845 K RD | BARK RIVER MI 49807 |
| DICKINSON COUNTY | BREITUNG TOWNSHIP | 1 | 3850 MENOMINEE ST, QUINNESEC | QUINNESEC MI 49876 |
|  | CHARLOTTE CITY | 1-1 | 111 E. LAWRENCE AVE. | CHARLOTTE MI 48813 |
|  | CHESTER TOWNSHIP | 1 | 4785 MULLIKEN ROAD | CHARLOTTE MI 48813 |
| EATON COUNTY | DELTA CHARTER TOWNSHIP | 6 | 4538 ELIZABETH ROAD | LANSING MI 48917 |
|  | GRAND LEDGE CITY | 3 | 220 LAMSON ST | GRAND LEDGE MI 48837 |
|  | ROXAND TOWNSHIP | 1 | 100 IONIA ST | MULLIKEN MI 48861 |
|  | HARBOR SPRINGS CITY | 1 | 160 ZOLL ST | HARBOR SPRINGS MI 49740 |
| EMMET COUNTY | PETOSKEY CITY | 1-1 | 1106 CHARLEVOIX AVE | PETOSKEY MI 49770 |
|  | WEST TRAVERSE TOWNSHIP | 1 | 8000 S  M-119 HWY | HARBOR SPRINGS MI 49740 |
|  | CLAYTON TOWNSHIP | 2 | 4410 S. SEYMOUR RD | SWARTZ CREEK MI 48473 |
|  | CLIO CITY | 1 | 505 W. VIENNA ST. | CLIO MI 48420 |
|  | DAVISON TOWNSHIP | 1 | 10135 LAPEER RD | DAVISON MI 48423 |
|  | FENTON CITY | 5 | 600 N. ADELAIDE | FENTON MI 48430 |
| GENESEE COUNTY | FLINT TOWNSHIP | 5 | 4133 CALKINS RD | FLINT MI 48532 |
|  | GAINES TOWNSHIP | 1 | 9255 GRAND BLANC RD | GAINES MI 48436 |
|  | GENESEE TOWNSHIP | 6 | 3515 N BELSAY RD | FLINT MI 48506 |
|  | GRAND BLANC TOWNSHIP | 6 | 4455 E. COOK ROAD | GRAND BLANC MI 48439 |

Counties in red include a jurisdiction with an audit to be conducted by the State. Please see list on first page.

| | | | | |
|---|---|---|---|---|
| | MOUNT MORRIS TOWNSHIP | 9 | 6041 BALLARD DR. | MT MORRIS MI 48458 |
| | VIENNA TOWNSHIP | 4 | 2136 WEST VIENNA ROAD | CLIO MI 48420 |
| GLADWIN COUNTY | GRIM TOWNSHIP | 1 | 6399 BAY-GLADWIN LINE | BENTLEY MI 48613 |
| GOGEBIC COUNTY | BESSEMER TOWNSHIP | 1 | N10338 MILL STREET | RAMSAY MI 49959 |
| | BLAIR TOWNSHIP | 3 | 2121 COUNTY RD 633 | GRAWN MI 49637 |
| GRAND TRAVERSE COUNTY | GARFIELD TOWNSHIP | 4 | 2650 LAFRANIER ROAD | TRAVERSE CITY MI 49684 |
| | GREEN LAKE TOWNSHIP | 1 | 9394 10TH ST | INTERLOCHEN MI 49643 |
| | ARCADA TOWNSHIP | 1 | 3290 W. TYLER RD. ALMA | ALMA MI 48801 |
| GRATIOT COUNTY | HAMILTON TOWNSHIP | 1 | 7853 FILLMORE RD-ITHACA | ITHACA MI 48847 |
| | NORTH STAR TOWNSHIP | 1 | 2840 E. BUCHANAN RD. ITHACA | ITHACA MI 48847 |
| | AMBOY TOWNSHIP | 1 | 14840 GRASS LAKE RD | CAMDEN MI 49232 |
| HILLSDALE COUNTY | LITCHFIELD TOWNSHIP | 1 | 9596 HOMER RD. | LITCHFIELD MI 49252 |
| | READING CITY | 1 | 113 S MAIN STREET | READING MI 49274 |
| | CALUMET TOWNSHIP | 9 | 310 HECLA ST | CALUMET MI 49913 |
| HOUGHTON COUNTY | HANCOCK CITY | 1 | 399 QUINCY STREET | HANCOCK MI 49930 |
| | HANCOCK TOWNSHIP | 1 | 54660 HWY M203 | HANCOCK MI 49930 |
| | HURON TOWNSHIP | 1 | 7951 PIONEER DRIVE | PORT HOPE MI 48468 |
| HURON COUNTY | SHERIDAN TOWNSHIP | 1 | 4615 BARRIE RD | UBLY MI 48475 |
| | SHERMAN TOWNSHIP | 1 | 4599 S RUTH RD | RUTH MI 48470 |
| | ALAIEDON TOWNSHIP | 1 | 2021 W. HOLT ROAD | MASON MI 48854 |
| | AURELIUS TOWNSHIP | 1 | 1939 SOUTH AURELIUS RD | MASON MI 48854 |
| | DELHI CHARTER TOWNSHIP | 3 | 5780 W HOLT ROAD | HOLT MI 48842 |
| | EAST LANSING CITY | 12 | 49 ABBOTT RD | EAST LANSING MI 48823 |
| INGHAM COUNTY | LANSING CITY | 4-33 | 2000 LEWTON PLACE | LANSING MI 48911 |
| | LANSING TOWNSHIP | 2 | 2200 LAKE LANSING RD | LANSING MI 48912 |
| | LESLIE CITY | 1 | 602 W. BELLEVUE ST. | LESLIE MI 49251 |
| | MERIDIAN TOWNSHIP | 6 | 5151 MARSH ROAD | OKEMOS MI 48864 |
| | VEVAY TOWNSHIP | 1 | 780 EDEN ROAD | MASON MI 48854 |
| | WILLIAMSTON CITY | 1 | 3845 VANNETER ROAD | WILLIAMSTON MI 48895 |
| | EASTON TOWNSHIP | 1 | 720 N BELLAMY ROAD | IONIA MI 48846 |
| IONIA COUNTY | KEENE TOWNSHIP | 1 | 8505 POTTERS ROAD | SARANAC MI 48881 |
| | ODESSA TOWNSHIP | 1 | 3862 LAUREL DRIVE | LAKE ODESSA MI 48849 |
| IOSCO COUNTY | BALDWIN TOWNSHIP | 1 | 1119 MONUMENT ROAD | TAWAS CITY MI 48763 |
| IRON COUNTY | CRYSTAL FALLS CITY | 1 | 401 SUPERIOR AVENUE | CRYSTAL FALLS MI 49920 |
| | BROOMFIELD TOWNSHIP | 1 | 2889 S ROLLAND RD | REMUS MI 49340 |

Counties in red include a jurisdiction with an audit to be conducted by the State. Please see list on first page.

| ISABELLA COUNTY | ROLLAND TOWNSHIP | 1 | 8803 SW COUNTY LINE ROAD | BLANCHARD MI 49310 |
|---|---|---|---|---|
| | UNION TOWNSHIP | 1 | 2010 S LINCOLN RD | MT PLEASANT MI 48858 |
| | LEONI TOWNSHIP | 1 | 915 FIFTH ST | MICHIGAN CENTER MI 49254 |
| | RIVES TOWNSHIP | 2 | 2800 WEST BERRY ROAD | RIVES JUNCTION MI 49277 |
| JACKSON COUNTY | SANDSTONE TOWNSHIP | 3 | 297 N. UNION ST. | PARMA MI 49269 |
| | SPRING ARBOR TOWNSHIP | 1 | 122 STAR ROAD | SPRING ARBOR MI 49283 |
| | SUMMIT TOWNSHIP | 8 | 2829 PARK DR | JACKSON MI 49203 |
| | BRADY TOWNSHIP | 2 | 7520 EAST U AVENUE | VICKSBURG MI 49097 |
| | CHARLESTON TOWNSHIP | 1 | 1499 SOUTH 38TH ST | GALESBURG MI 49053 |
| | COOPER TOWNSHIP | 4 | 8824 DOUGLAS AVENUE | KALAMAZOO MI 49009 |
| | GALESBURG CITY | 1 | 200 E MICHIGAN AVE | GALESBURG MI 49053 |
| KALAMAZOO COUNTY | KALAMAZOO CITY | 14 | 930 LAKE ST | KALAMAZOO MI 49001 |
| | OSHTEMO TOWNSHIP | 8 | 6407 PARKVIEW AVENUE | KALAMAZOO MI 49009 |
| | PAVILION TOWNSHIP | 3 | 7510 EAST Q AVE | SCOTTS MI 49088 |
| | PORTAGE CITY | 4 | 9420 PORTAGE ROAD | PORTAGE MI 49002 |
| | RICHLAND TOWNSHIP | 3 | 5350 NORTH SPRINKLE ROAD | KALAMAZOO MI 49004 |
| | TEXAS TOWNSHIP | 4 | 6726 TEXAS DRIVE | KALAMAZOO MI 49009 |
| KALKASKA COUNTY | OLIVER TOWNSHIP | 1 | 5472 KNISS RD. SE | KALKASKA MI 49646 |
| | BYRON TOWNSHIP | 1 | 8350 BYRON CENTER AVENUE | BYRON CENTER MI 49315 |
| | CALEDONIA TOWNSHIP | 6 | 7638 BROADMOOR AVE SE | CALEDONIA MI 49316 |
| | CANNON TOWNSHIP | 6 | 8331 MYERS LAKE AVENUE | ROCKFORD MI 49341 |
| | CASCADE TOWNSHIP | 10 | 8899 CASCADE RD SE | ADA MI 49301 |
| KENT COUNTY | EAST GRAND RAPIDS CITY | 3-5 | 1961 LAKE DRIVE SE | GRAND RAPIDS MI 49506 |
| | GRAND RAPIDS CHARTER TOWNSHIP | 1 | 1836 EAST BELTLINE NE | GRAND RAPIDS MI 49525 |
| | GRANDVILLE CITY | 5 | 4122 44TH ST | GRANDVILLE MI 49418 |
| | OAKFIELD TOWNSHIP | 3 | 10300 14 MILE RD. | ROCKFORD MI 49341 |
| | PLAINFIELD TOWNSHIP | 4 | 4383 PLAINFIELD AVENUE NE | GRAND RAPIDS MI 49525 |
| | WYOMING CITY | 3-26 | 2100 44TH STREET SW | WYOMING MI 49509 |
| KEWEENAW COUNTY | HOUGHTON TOWNSHIP | 1 | 5059 4TH | MOHAWK MI 49950 |
| LAKE COUNTY | PEACOCK TOWNSHIP | 10 | 4480 W 4 MILE RD | IRONS MI 49644 |
| | LAPEER CITY | 1-2 | 1310 N. MAIN ST. | LAPEER MI 48446 |
| LAPEER COUNTY | MAYFIELD TOWNSHIP | 2 | 1900 N SAGINAW ROAD | LAPEER MI 48446 |
| | NORTH BRANCH TOWNSHIP | 1 | 6771 ELM STREET | NORTH BRANCH MI 48461 |
| LEELANAU COUNTY | SUTTONS BAY TOWNSHIP | 1 | 310 S ELM STREET | SUTTONS BAY MI 49682 |
| | ADRIAN CITY | 3 | 602 N DEAN ST | ADRIAN MI 49221 |

Counties in red include a jurisdiction with an audit to be conducted by the State. Please see list on first page.

MDOS_0005089

| LENAWEE COUNTY | BLISSFIELD TOWNSHIP | 1 | 299 E. ADRIAN STREET | BLISSFIELD MI 49228 |
|---|---|---|---|---|
| | TECUMSEH CITY | 1-4 | 101 E RUSSELL RD | TECUMSEH MI 49286 |
| | BRIGHTON CHARTER TOWNSHIP | 3 | 10711 SPENCER ROAD | BRIGHTON MI 48114 |
| | MARION TOWNSHIP | 2 | 2877 W. COON LAKE RD. | HOWELL MI 48843 |
| LIVINGSTON COUNTY | OCEOLA TOWNSHIP | 5 | 3125 GOLF CLUB RD | HOWELL MI 48843 |
| | PUTNAM TOWNSHIP | 3 | 3280 W M-36 | PINCKNEY MI 48169 |
| | TYRONE TOWNSHIP | 2 | 10235 WHITE LAKE ROAD | FENTON MI 48430 |
| LUCE COUNTY | LAKEFIELD TOWNSHIP | 1 | 26344 COUNTY ROAD 98 | MCMILLAN MI 49853 |
| MACKINAC COUNTY | HENDRICKS TOWNSHIP | 1 | N5115 HIAWATHA TRAIL | NAUBINWAY MI 49762 |
| | CENTER LINE CITY | 5 | 8830 TEN MILE RD. | CENTER LINE MI 48015 |
| | CHESTERFIELD TOWNSHIP | 7 | 32900 24 MILE ROAD | NEW BALTIMORE MI 48047 |
| | CLINTON TOWNSHIP | 11 | 35200 LITTLE MACK | CLINTON TOWNSHIP MI 48035 |
| | HARRISON TOWNSHIP | 2 | 34641 JEFFERSON | HARRISON TOWNSHIP MI 48045 |
| MACOMB COUNTY | MACOMB TOWNSHIP | 23 | 18500 24 MILE ROAD | MACOMB MI 48042 |
| | NEW BALTIMORE CITY | 5 | 51880 WASHINGTON | NEW BALTIMORE MI 48047 |
| | ROSEVILLE CITY | 12 | 18851 MCKINNON | ROSEVILLE MI 48066 |
| | ST CLAIR SHORES CITY | 4 | 23401 JEFFERSON | SAINT CLAIR SHORES MI 48080 |
| | SHELBY CHARTER TOWNSHIP | 24 | 54045 SCHOENHERR | SHELBY TOWNSHIP MI 48315 |
| | STERLING HEIGHTS CITY | 20 | 39600 ATKINSON DR | STERLING HEIGHTS MI 48313 |
| MANISTEE COUNTY | ONEKAMA TOWNSHIP | 1 | 5435 MAIN STREET | ONEKAMA MI 49675 |
| | MARQUETTE CITY | 1 | 300 W. SPRING STREET | MARQUETTE MI 49855 |
| MARQUETTE COUNTY | REPUBLIC TOWNSHIP | 1 | 279 KLOMAN AVENUE | REPUBLIC MI 49879 |
| | SANDS TOWNSHIP | 1 | 987 SOUTH M 553 | GWINN MI 49841 |
| | BRANCH TOWNSHIP | 1 | 6688 E. FIRST STREET | WALHALLA MI 49458 |
| MASON COUNTY | RIVERTON TOWNSHIP | 1 | 2122 W. HAWLEY ROAD | SCOTTVILLE MI 49454 |
| | VICTORY TOWNSHIP | 1 | 4411 N. STILES ROAD | SCOTTVILLE MI 49454 |
| MECOSTA COUNTY | MECOSTA TOWNSHIP | 1 | 19729 11 MILE RD | BIG RAPIDS MI 49307 |
| MENOMINEE COUNTY | HOLMES TOWNSHIP | 1 | W7258 CHEESE FACTORY RD | DAGGETT MI 49821 |
| | HOPE TOWNSHIP | 1 | 5244 N HOPE RD | HOPE MI 48628 |
| MIDLAND COUNTY | JEROME TOWNSHIP | 4 | 737 W. BEAMISH | SANFORD MI 48657 |
| | LEE TOWNSHIP | 2 | 1485 W OLSON RD | MIDLAND MI 48640 |
| MISSAUKEE COUNTY | MCBAIN CITY | 1 | 110 W EUCLID ST | MCBAIN MI 49657 |
| | BEDFORD TOWNSHIP | 1 | 8165 DOUGLAS RD | LAMBERTVILLE MI 48144 |
| | FRENCHTOWN TOWNSHIP | 1 | 7447 N TELEGRAPH RD | MONROE MI 48162 |
| MONROE COUNTY | MILAN CITY | 1 | 45 NECKEL CT | MILAN MI 48160 |

Counties in red include a jurisdiction with an audit to be conducted by the State. Please see list on first page.

| | | | | |
|---|---|---|---|---|
| | PETERSBURG CITY | 1 | 24 EAST CENTER STREET | PETERSBURG MI 49270 |
| | RAISINVILLE TOWNSHIP | 1 | 96 IDA MAYBEE ROAD | MONROE MI 48161 |
| | CRYSTAL TOWNSHIP | 1 | 217 WEST PARK STREET | CRYSTAL MI 48818 |
| MONTCALM COUNTY | FAIRPLAIN TOWNSHIP | 1 | 8383 GROW ROAD | GREENVILLE MI 48838 |
| | MONTCALM TOWNSHIP | 1 | 1880 S. GREENVILLE ROAD | GREENVILLE MI 48838 |
| MONTMORENCY COUNTY | ALBERT TOWNSHIP | 1 | 4360 HANSEN AVE | LEWISTON MI 49756 |
| | FRUITPORT TOWNSHIP | 1 | 213 W OAK ST. | FRUITPORT MI 49415 |
| | MONTAGUE TOWNSHIP | 1 | 8915 WHITBECK RD | MONTAGUE MI 49437 |
| MUSKEGON COUNTY | MUSKEGON TOWNSHIP | 4 | 16 N. QUARTERLINE RD | MUSKEGON MI 49442 |
| | NORTON SHORES CITY | 1-1 | 3920 AIRLINE ROAD | MUSKEGON MI 49444 |
| | WHITEHALL TOWNSHIP | 1 | 7644 DURHAM | WHITEHALL MI 49461 |
| | BIG PRAIRIE TOWNSHIP | 1 | 2815 S ELM | WHITE CLOUD MI 49349 |
| NEWAYGO COUNTY | CROTON TOWNSHIP | 1 | 6431 S ELM AVE | NEWAYGO MI 49337 |
| | GRANT TOWNSHIP | 1 | 1617 E 120TH ST | GRANT MI 49327 |
| | BLOOMFIELD TOWNSHIP | 8 | 1153 EXETER RD | BLOOMFIELD HILLS MI 48302 |
| | CLAWSON CITY | 1 | 240 NAHMA | CLAWSON MI 48017 |
| | FARMINGTON HILLS CITY | 20 | 27500 SHIAWASSEE | FARMINGTON HILLS MI 48336 |
| | FERNDALE CITY | 4 | 2521 BERMUDA ST | FERNDALE MI 48220 |
| OAKLAND COUNTY | NOVI CITY | 2 | 41415 W. NINE MILE ROAD | NOVI MI 48375 |
| | OAKLAND CHARTER TOWNSHIP | 3 | 4325 BANNISTER RD | ROCHESTER MI 48306 |
| | OAK PARK CITY | 15 | 23561 ROSEWOOD | OAK PARK MI 48237 |
| | OXFORD TOWNSHIP | 2 | 22 W BURDICK STREET | OXFORD MI 48371 |
| | PONTIAC CITY | 5-13 | 1051 ARLENE | PONTIAC MI 48342 |
| | TROY CITY | 5 | 6710 CROOKS | TROY MI 48098 |
| OCEANA COUNTY | WEARE TOWNSHIP | 1 | 6506 N OCEANA DR | HART MI 49420 |
| OGEMAW COUNTY | LOGAN TOWNSHIP | 1 | 4507 E M-55 | PRESCOTT MI 48756 |
| ONTONAGON COUNTY | HAIGHT TOWNSHIP | 1 | US-45 SOUTH | BRUCE CROSSING MI 49912 |
| OSCEOLA COUNTY | BURDELL TOWNSHIP | 1 | 310 S NEILSON | TUSTIN MI 49688 |
| OSCODA COUNTY | ELMER TOWNSHIP | 1 | 863 W. KITTLE RD., MIO, MI | MIO MI 48647 |
| OTSEGO COUNTY | HAYES TOWNSHIP | 1 | 71 HAYES TOWER RD | GAYLORD MI 49735 |
| | ALLENDALE TOWNSHIP | 4 | 6561 LAKE MICHIGAN DR | ALLENDALE MI 49401 |
| | CROCKERY TOWNSHIP | 1 | 17431 112TH AVE. | NUNICA MI 49448 |
| | FERRYSBURG CITY | 1 | 17290 ROOSEVELT ROAD | FERRYSBURG MI 49409 |
| | GEORGETOWN TOWNSHIP | 3 | 4466 BAUER RD | HUDSONVILLE MI 49426 |
| OTTAWA COUNTY | GRAND HAVEN TOWNSHIP | 4 | 14932 MERCURY DR | GRAND HAVEN MI 49417 |

Counties in red include a jurisdiction with an audit to be conducted by the State. Please see list on first page.

| | | | | |
|---|---|---|---|---|
| | HOLLAND CITY | 4-10 | 517 W 32ND STREET | HOLLAND MI 49423 |
| | HOLLAND TOWNSHIP | 11 | 4055 112TH AVENUE | HOLLAND MI 49424 |
| | HUDSONVILLE CITY | 3-1 | 4950 32ND AVENUE | HUDSONVILLE MI 49426 |
| | PARK TOWNSHIP | 6 | 480 152ND AVE. | HOLLAND MI 49424 |
| | TALLMADGE TOWNSHIP | 3 | 0-1451 LEONARD STREET NW | GRAND RAPIDS MI 49544 |
| PRESQUE ISLE COUNTY | BEARINGER TOWNSHIP | 1 | 17034 TOWN HALL HWY. | MILLERSBURG MI 49759 |
| ROSCOMMON COUNTY | NESTER TOWNSHIP | 1 | 7855 MAPLE VALLEY ROAD | ST HELEN MI 48656 |
| | BIRCH RUN TOWNSHIP | 2 | 11105 DIXIE HWY | BIRCH RUN MI 48415 |
| | FRANKENMUTH TOWNSHIP | 1 | 218 W GENESEE ST | FRANKENMUTH MI 48734 |
| SAGINAW COUNTY | JAMES TOWNSHIP | 1 | 6060 SWAN CREEK RD | SAGINAW MI 48609 |
| | RICHLAND TOWNSHIP | 1 | 1180 N. HEMLOCK RD. | HEMLOCK MI 48626 |
| | SAGINAW CITY | 10 | 1300 MALZAHN ST | SAGINAW MI 48602 |
| | BURTCHVILLE TOWNSHIP | 3 | 4000 BURTCH ROAD | BURTCHVILLE MI 48059 |
| | FORT GRATIOT TOWNSHIP | 2 | 3985 KEEWAHDIN | FORT GRATIOT MI 48059 |
| ST CLAIR COUNTY | GREENWOOD TOWNSHIP | 1 | 9025 YALE ROAD | AVOCA MI 48006 |
| | KENOCKEE TOWNSHIP | 1 | 4420 KILGORE ROAD | AVOCA MI 48006 |
| | ST CLAIR CITY | 2 | 415 N NINTH ST | SAINT CLAIR MI 48079 |
| | COLON TOWNSHIP | 1 | 132 N BLACKSTONE AVE | COLON MI 49040 |
| ST JOSEPH COUNTY | MENDON TOWNSHIP | 1 | 136 W. MAIN | MENDON MI 49072 |
| | STURGIS CITY | 1 | 201 N NOTTAWA STREET | STURGIS MI 49091 |
| | DELAWARE TOWNSHIP | 1 | 7979 MAPLE GROVE RD. | MINDEN CITY MI 48456 |
| SANILAC COUNTY | LEXINGTON TOWNSHIP | 1 | 7227 HURON AVE., LEXINGTON | LEXINGTON MI 48450 |
| | WASHINGTON TOWNSHIP | 1 | 2520 HYDE ROAD | CARSONVILLE MI 48419 |
| SCHOOLCRAFT COUNTY | GERMFASK TOWNSHIP | 1 | 8093 PINE ST | GERMFASK MI 49836 |
| | DURAND CITY | 1 | 215 W. CLINTON ST. | DURAND MI 48429 |
| SHIAWASSEE COUNTY | NEW HAVEN TOWNSHIP | 1 | 2705 E. EASTON RD. | OWOSSO MI 48867 |
| | PERRY TOWNSHIP | 2 | 2770 W. ELLSWORTH RD. | PERRY MI 48872 |
| | AKRON TOWNSHIP | 1 | 4280 BAY CITY FORESTVILLE ROAD | UNIONVILLE MI 48767 |
| TUSCOLA COUNTY | VASSAR TOWNSHIP | 1 | 5450 W SAGINAW RD | VASSAR MI 48768 |
| | WISNER TOWNSHIP | 1 | 7894 M-25 | AKRON MI 48701 |
| | ANTWERP TOWNSHIP | 3 | 24821 FRONT AVE | MATTAWAN MI 49071 |
| VAN BUREN COUNTY | PAW PAW TOWNSHIP | 1 | 114 N. GREMPS ST. | PAW PAW MI 49079 |
| | SOUTH HAVEN TOWNSHIP | 1 | 09761 BLUE STAR HIGHWAY | SOUTH HAVEN MI 49090 |
| | ANN ARBOR CITY | 2-8 | 1001 GREEN ROAD | ANN ARBOR MI 48105 |
| | LYNDON TOWNSHIP | 1 | 17751 N. TERRITORIAL RD. | CHELSEA MI 48118 |

Counties in red include a jurisdiction with an audit to be conducted by the State. Please see list on first page.

| | | | | |
|---|---|---|---|---|
| | MANCHESTER TOWNSHIP | 1 | 275 SOUTH MACOMB STREET | MANCHESTER MI 48158 |
| | NORTHFIELD TOWNSHIP | 1 | 8877 MAIN ST | WHITMORE LAKE MI 48189 |
| WASHTENAW COUNTY | PITTSFIELD CHARTER TOWNSHIP | 1 | 6201 W MICHIGAN AVE | ANN ARBOR MI 48108 |
| | SCIO TOWNSHIP | 8 | 1293 N. ZEEB RD | ANN ARBOR MI 48103 |
| | SUPERIOR TOWNSHIP | 5 | 3040 NORTH PROSPECT | YPSILANTI MI 48198 |
| | YORK TOWNSHIP | 1 | 11220 STONY CREEK RD | MILAN MI 48160 |
| | YPSILANTI CITY | 1-3 | 301 S. HAMILTON | YPSILANTI MI 48197 |
| | YPSILANTI TOWNSHIP | 1 | 1800 PACKARD | YPSILANTI MI 48197 |
| | CANTON TOWNSHIP | 10 | 50400 CHERRY HILL RD | CANTON MI 48188 |
| | DEARBORN CITY | 43 | 19501 OUTER DR | DEARBORN MI 48124 |
| | DETROIT CITY | 3-177 | 19955 FENELON | DETROIT MI 48234 |
| | GROSSE POINTE FARMS CITY | 3 | 90 KERBY | GROSSE POINTE FARMS MI 48236 |
| WAYNE COUNTY | GROSSE POINTE PARK CITY | 7 | 15430 KERCHEVAL | GROSSE POINTE PARK MI 48230 |
| | LINCOLN PARK CITY | 6 | 1360 LAFAYETTE | LINCOLN PARK MI 48146 |
| | MELVINDALE CITY | 3 | 3201 OAKWOOD BLVD | MELVINDALE MI 48122 |
| | NORTHVILLE TOWNSHIP | 6 | 16141 WINCHESTER | NORTHVILLE MI 48168 |
| | PLYMOUTH TOWNSHIP | 6 | 44401 W ANN ARBOR TRL | PLYMOUTH MI 48170 |
| | ROMULUS CITY | 11 | 38207 BARTH ROAD | ROMULUS MI 48174 |
| | CADILLAC CITY | 3 | 411 S. LAKE STREET | CADILLAC MI 49601 |
| WEXFORD COUNTY | CHERRY GROVE TOWNSHIP | 1 | 4830 E M-55 | CADILLAC MI 49601 |
| | LIBERTY TOWNSHIP | 1 | 7478 N 41 RD, MANTON | MANTON MI 49663 |

Counties in red include a jurisdiction with an audit to be conducted by the State. Please see list on first page.

# EXHIBIT 8

Message

| | |
|---|---|
| **From**: | Bourbonais, Lori (MDOS) [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FAD332E9DDBB420891077C90724CAB2C-BOURBONAIS LORI] |
| **Sent**: | 12/1/2020 9:21:11 AM |
| **To**: | Bourbonais, Lori (MDOS) [bourbonaisl@michigan.gov] |
| **CC**: | Brater, Jonathan (MDOS) [braterj@michigan.gov]; Dougan, Kristi (MDOS) [dougank@michigan.gov]; Pierce, Carol (MDOS) [piercec1@michigan.gov]; Cleary, Charamy (MDOS) [clearyc@michigan.gov]; Millard, Riley (MDOS) [millardr1@michigan.gov]; McAlpine, Joshua (MDOS) [mcalpinej@michigan.gov]; Garety, Colleen (MDOS) [garetyc@michigan.gov]; Valles, Lydia (MDOS) [vallesl@michigan.gov]; Foster, David (MDOS) [fosterd2@michigan.gov]; Williams, Theresa (MDOS) [williamst9@michigan.gov] |
| **BCC**: | brndleyb@ocmi.us; ggeiger@ioniacounty.org; seller@alcona-county.net; mfroberg@algercounty.gov; bgenetski@allegancounty.org; friedrib@alpenacounty.org; guys@antrimcounty.org; rrockwell@arenaccountygov.com; goodreauw@baragacounty.org; ppalmer@barryco.org; luczakc@baycounty.net; dolney@benzieco.net; styler@berriencounty.org; tkubasiak@countyofbranch.com; kahinkley@calhouncountymi.gov; monicam@cassco.org; borthsc@charlevoixcounty.org; kaminskik@charlevoixcounty.org; clerk@cheboygancounty.net; cmaleport@chippewacountymi.gov; martinl@clareco.net; zukerd@clinton-county.org; smoore@crawfordco.org; clerk@deltacountymi.gov; clerkdolly@dickinsoncountymi.gov; dbosworth@eatoncounty.org; skanine@emmetcounty.org; jgleason@co.genesee.mi.us; k.hulme3840@gmail.com; gpelissero@gogebiccountymi.gov; bscheele@gtcountymi.gov; athompson@gratiotmi.com; mkast@co.hillsdale.mi.us; countyclerk@houghtoncounty.net; Neall@co.huron.mi.us; BByrum@ingham.org; nhuebel@ioscocounty.org; jkezerle@ironmi.org; mlux@isabellacounty.org; akirkpatrick@co.jackson.mi.us; tasnow@kalcounty.com; dhill@kalkaskacourt.org; Lisa.Lyons@kentcountymi.gov; clerk@keweenawcountymi.gov; ppacola@co.lake.mi.us; tspencer@lapeercounty.org; mcrocker@co.leelanau.mi.us; roxann.holloway@lenawee.mi.us; ehundley@livgov.com; lucoclrk@lighthouse.net; macclerk@lighthouse.net; fred.miller@macombgov.org; jnowak@manisteecountymi.gov; ltalsma@mqtco.org; cakelly@masoncounty.net; mpurcell@co.mecosta.mi.us; mkleiman@menomineeco.com; amanary@co.midland.mi.us; clerk@missaukee.org; sharon_lemasters@monroemi.org; kmillard@montcalm.us; cneilsen@montcounty.org; watersna@co.muskegon.mi.us; Jasonv@co.newaygo.mi.us; brownlr@oakgov.com; Aanderson@oceana.mi.us; klackingg@ocmi.us; spreiss@ontonagoncounty.org; oscclerk1@osceolacountymi.com; jwinton@oscodacountymi.com; sdefeyter@otsegocountymi.gov; jroebuck@miottawa.org; piclerk@picounty.org; stevensonm@roscommoncounty.net; mhanley@saginawcounty.com; countyclerk@sanilaccounty.net; clerk@schoolcraftcounty.us; cwilson@shiawassee.net; jdeboyer@stclaircounty.org; oswaldl@stjosephcountymi.org; jfetting@tuscolacounty.org; roehms@vbco.org; kestenbauml@ewashtenaw.org; aconn@allegancounty.org; sreitz@berriencounty.org; jwatts@berriencounty.org; cransbottom@countyofbranch.com; tloew@calhouncountymi.gov; drostj@charlevoixcounty.org; dfulcher@co.genesee.mi.us; enoel@ingham.org; JCrews@mijackson.org; sojosh@kalcounty.com; gerrid.uzarski@kentcountymi.gov; jbridgman@livgov.com; michael.grix@macombgov.org; laura_attard@monroemi.org; pezetje@co.muskegon.mi.us; hilaryd@co.newaygo.mi.us; amandah@co.newaygo.mi.us; rozellj@oakgov.com; sdaitch@miottawa.org; cmefford@saginawcounty.com; ABowen@shiawassee.net; ckliemann@stclaircounty.org; golembiewskie@ewashtenaw.org; emcrae@waynecounty.com; doden@waynecounty.com; gmahar@waynecounty.com; jredmond@waynecounty.com |
| **Subject**: | Recount/Release of Security Memo and Post-Election Procedure Audit List |
| **Attachments**: | Post Election Procedure Audit List Nov 2020.pdf; Recount Release of Security Memo Nov 2020 General.pdf |

County Clerks and Election Directors:

Attached please find the Recount/Release of Security Memo for voting equipment used in the November 3, 2020 General Election and the Post-Election Procedure Audit List.  Please let me know if you have any questions.

Lori A. Bourbonais
Director, Elections Administration Division
Michigan Bureau of Elections

MDOS_0005085

# EXHIBIT 9

Message

| | |
|---|---|
| **From**: | Moore, Jenita (MDOS) [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=5A7AFEFB87D8497D988BA5707A0D5F90-MOORE JENITA] |
| **Sent**: | 12/7/2020 9:11:32 AM |
| **To**: | ECruse@house.mi.gov |
| **Subject**: | FW: Boe memorandums |
| **Attachments**: | recounts release memo nov general 11-26-14.pdf; Recount Release Memo Nov 2016 general 1-10-17.pdf; Recount Release Memo August Primary 8-25-14.pdf; Recount Release Memo August 2016 Primary 8-24-16.pdf; 11-22-17 Release of Security Memo November.pdf; 9-14-17 Release of Security Memo August 8 2017 Primary.pdf |

Good Morning Evan,

Your email has been forward to me for assistance by Felicia since I handle these types of inquiries. Attached per your request are the memos we believe you looking for. Please let me know if you are in need of additional information.

**Jenita Moore**
*Legislative Liaison*
Michigan Department of State
Secretary of State Jocelyn Benson
**Direct:** 517-335-6579
**Cell:** 517-490-7593
MooreJ5@Michigan.gov



LET'S **STAY SAFE** TOGETHER

---

**From:** Evan Cruse <ECruse@house.mi.gov>
**Sent:** Friday, December 4, 2020 1:27 PM
**To:** Owens, Felicia (MDOS) <OwensF@michigan.gov>
**Subject:** Re: Boe memorandums

**CAUTION: This is an External email. Please send suspicious emails to** abuse@michigan.gov

https://twitter.com/MichSoS/status/1334511851120496642?s=20

Even if this doesn't work this is in regards to the memorandum sent from the BOE to clerks in over how to handle release of voting equipment.

If we could receive a copy of the same letter prior to 2018 that would be great.

Thanks!

**From:** Owens, Felicia (MDOS) <OwensF@michigan.gov>
**Sent:** Friday, December 4, 2020 1:24:17 PM
**To:** Evan Cruse <ECruse@house.mi.gov>
**Subject:** RE: Boe memorandums

# EXHIBIT 10

| Message | |
|---|---|
| **From**: | Elections [elections@co.muskegon.mi.us] |
| **Sent**: | 1/4/2021 4:56:24 PM |
| **To**: | Bourbonais, Lori (MDOS) [bourbonaisl@michigan.gov]; Brater, Jonathan (MDOS) [braterj@michigan.gov]; Tarrant, David (MDOS) [tarrantd2@michigan.gov] |
| **CC**: | Waters, Nancy [WatersNa@co.muskegon.mi.us]; Hill, Mary [HillMa@co.muskegon.mi.us] |
| **Subject**: | FW: Online Form Submittal: FOIA Request for Public Records |
| **Importance**: | High |

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Hi, Lori, Jonathan, and Dave,

Happy New Year.

We got the call today for a forensic audit form or petition form for the November 3rd election from the Muskegon GOP and the FOIA request below.   Any direction will be welcomed.

We did received the following direction from Lori on 12/22/2020:

County/City/Township Clerks and Election Directors:

We are aware that some clerks have been contacted by an attorney or group claiming to be a part of the Rudy Giuliani legal team. It is our understanding that they are requesting access to tabulators or other election material used for the November 3, 2020 election.  As a reminder, security of election materials for the November election has not yet been released and will not be released until after all audits are completed. Under law, access to these machines and materials may not be provided at this time. If an attorney or group requests to speak to you regarding the election, machines, or materials, you should confer with your city, township, or county counsel regarding the request.

Lori A. Bourbonais
Director, Elections Administration Division
Michigan Bureau of Elections



Thank you,

**Jeanne Pezet**
Elections Coordinator
990 Terrace Street, 1st Floor
Muskegon, MI 49442
(231) 724-6425
Elections@co.muskegon.mi.us
Visit Our Website: www.co.muskegon.mi.us/407/County-Clerk

# EXHIBIT 11

3/3/23, 8:52 AM          2/12/2021 News Update - Statewide Audit Process Demonstrates the Excellence of County and Local Election Officials, Release of...



**Michigan Secretary of State's Office**

Subscribe to updates from Michigan Secretary

Email Address                                    e.g. name@exar
[Subscribe]

Share Bulletin

**2/12/2021 News Update - Statewide Audit Process Demonstrates the Excellence of County and Local Election Officials, Release of Security, Conditional Approval for May 4 Ballots and more**

Michigan Secretary of State sent this bulletin at 02/12/2021 11:23 AM EST

Having trouble viewing this email? View it as a Web page.



**Michigan Bureau of Elections**
**News Update**
for Election Administration

February 12, 2021

In this issue:

- Statewide Audit Process Demonstrates the Excellence of County and Local Election Officials
- Release of Security
- BOE Conditionally Approving Ballot Format for May 4, 2020
- May 4 "Opt-out" Jurisdictions
- BOE Closed



### Statewide Audit Process Demonstrates the Excellence of County and Local Election Officials

Thank you for participating in Michigan's largest statewide audit exercise to date. County and local clerks from more than 1,300 local jurisdictions – more than had ever participated in such an audit anywhere – took part in hand counting more than 18,000 ballots that were randomly selected throughout the state to review the vote cast for president. The overwhelming participation of election clerks and staff is a testament to their commitment to election transparency and security, and the outcome provided strong additional evidence that voting machines counted ballots accurately.

Of the 18,162 ballots randomly selected for retrieval in the audit (from 5.57 million ballots cast in the state), 18,084 were retrieved. Statewide and in the state's three largest counties, the samples were all within one percentage point of the tabulated totals for each candidate. In the statewide sample, Biden received votes on 50 percent of all ballots reviewed while Trump received 48 percent. In Wayne County, Biden received 68 percent while Trump received 31 percent. In Oakland County, Biden received 57 percent while Trump received 41 percent, and in Macomb County, Biden received 44 percent and Trump received 54 percent.

More than 99 percent of ballots were retrieved for a nearly complete sample. The sample was not completed because 21 jurisdictions did not retrieve ballots, so the audit is being considered a pilot exercise. More detail will be coming soon, including a full Bureau of Elections report. The preliminary data affirm that Michigan's election was conducted securely and fairly thanks to the tireless and excellent work of election clerks.

 **Release of Security**

Security of voting equipment, ballots, and other supplies from the November 3 General Election is now released. Remember, federal election ballots must be retained under seal in a ballot bag or an approved ballot container for 22 months. While jurisdictions should consult with city, township, or county counsel regarding any pending court orders, subpoenas, or records requests regarding these materials, please note that only election officials, licensed vendors, or accredited voting system test laboratories should be granted access to voting equipment. Please see the Final Release of Security Memo, which was issued to County Clerks, for additional details related to the release of voting equipment and election materials.

 **BOE Conditionally Approving Ballot Format for May 4, 2020 Election**

The Bureau of Elections is accepting ballots for conditional approval as to form for the May 4, 2020 election. This is part of an effort to help counties, local jurisdictions and vendors have more lead time to have absent voter ballots available for voters starting 40 days before May 4. Counties with May elections should submit ballots to Carol

https://content.govdelivery.com/accounts/MISOS/bulletins/2c0ec2f

### May 4 "Opt-out" Jurisdictions



Since the passage of Proposal 18-3, local jurisdictions may no longer "opt-out" of the issuance of absent voter ballots for an election. Clerks in opt-out jurisdictions must be available to issue absent voter ballots and provide voter registration for all elections, regardless of local clerk duties established in current school election coordinating committee plans. While local jurisdictions may continue to opt-out of polling place functions, clerks for each jurisdiction with voters in the special school election must:

- Issue all absent voter ballots, including military and overseas voters, beginning 45 days prior to an election.

- Post and notify the BOE of the eight hours the clerk will be open the Saturday and/or Sunday prior to an election.

- Be open from 7 a.m. to 8 p.m. on Election Day to process same day voter registration and issue absent voter ballots to those voters if they choose not to go to the polls.

Some jurisdictions that have issued AV ballots for these elections but opted out of the polling place operations have placed the return address for the clerk who is processing the AV ballot on election day on their AV envelopes. This practice may continue; however, the voter may also return the ballot to their local clerk. Arrangements will need to be made to deliver the voted absentee ballots to the processing clerk.

Pierce at Pierce01@Michigan.gov. Please note that under the Michigan Constitution, the Michigan Legislature may add proposed constitutional amendments to the ballot as late as March 5. The BOE is not aware of any efforts to add constitutional amendments to the May ballot at this time but cannot guarantee that the Michigan Legislature will not do so. BOE approval of ballot format will therefore be conditional on no additional state-level measures being added to the ballot.

 **BOE Closed**

The Bureau of Elections will be closed on Monday, February 15 in observance of President's Day.

**Helpful Links**

ACCOUNT REQUEST

Dates & Deadlines

eLearning Center

MigovBOE YouTube

Questions?  Please contact the Bureau of Elections at 1-800-292-5973 or elections@michigan.gov.

The Bureau of Elections News Update will always be sent to the Clerk and Deputy Clerk email accounts.  If other election administrators would like to receive this newsletter as well use the Subscribe link below to have it sent directly to another email account.

It is recommended that you add misos@govsubscriptions.michigan.gov and MISOS@public.govdelivery.com to your safe senders list.

---



Questions?
Contact Us

SUBSCRIBER SERVICES:
Subscribe | Help
Powered by



Privacy Policy | Cookie Statement | Help

# EXHIBIT 12



**SOS**

# Statewide election audit process affirms presidential election outcome

**_Demonstrates excellence of local election officials,_**
**_accuracy of vote-counting machines_**

Secretary of State Jocelyn Benson announced today that a statewide election audit process affirmed Michigan's vote-counting machines are accurate and Joe Biden won the state's Nov. 3, 2020 presidential election.

"This statewide audit process affirms what election officials on both sides of the aisle have said since November – that Michigan's election was conducted securely and fairly, and the results accurately reflect the will of the voters. I congratulate our election clerks for carrying out the most successful election in our state's history, and thank them for affirming the integrity of our elections by participating in this process," said Benson. "The work of elected leaders now is to tell voters the truth and move forward with nonpartisan election policy to advance the will of Michigan voters, who have demonstrated clearly and unequivocally that they want our elections to continue to be secure, strong and accessible."

Hundreds of Republican, Democratic and nonpartisan municipal and county clerks from more than 1,300 local jurisdictions – more than had ever participated in such an audit anywhere – took part in Michigan's statewide auditing exercise, hand counting more than 18,000 ballots that were randomly selected throughout the state.

In the hand count, President Biden received more votes than former president Donald Trump, and the percentage of votes for each candidate was within fractions of a percentage point of machine-tabulated totals. In the state's three largest counties, each of which uses a different voting machine vendor, the audit results were also all within one percentage point of the November results. Although a random sample of 18,000 ballots would not be expected to exactly match the percentages of votes cast

for candidates out of all 5.5 million ballots, the closeness in percentages between the hand-reviewed ballots and the machine-tabulated totals provides strong additional evidence of the accuracy of the machine count.

In the statewide sample, Biden received votes on 50 percent of all ballots reviewed while Trump received 48 percent. In Wayne County, which uses Dominion machines, Biden received 68 percent, while Trump received 31 percent. In Oakland County, which uses Hart machines, Biden received 57 percent while Trump received 41 percent, and in Macomb County, which uses ES&S machines, Biden received 44 percent and Trump received 54 percent.

The audit exercise was conducted by generating a statewide manifest that included the number of ballots cast in every jurisdiction, and then using a randomly generated (by rolling 10-sided dice) 20-digit number to select 18,162 of them. Clerks then retrieved ballots that had been selected in their jurisdictions and shared if it had a vote for president and, if so, who it was for. Clerks retrieved a total of 18,084 ballots total. Twenty-one clerks did not retrieve 78 ballots in their jurisdictions, meaning the sample was 78 ballots short of a complete sample. For this reason, the audit is being considered a pilot exercise.

Secretary Benson's **Advancing the Vote, Protecting Democracy** legislative agenda would require a statewide risk-limiting audit to be carried out prior to state certification of the election – which would both speed and simplify the process, as clerks would be able to retrieve the randomly selected ballots while the election canvass in ongoing. Current law does not allow such audits to take place until after certification. Candidates can request hand recounts of all ballots prior to certification, but neither presidential candidate chose to do so in 2020.

The Bureau of Elections is compiling a full report of the results, which will be published upon completion. Risk-limiting audits are considered the gold standard of post-election audits and provide an extra layer of security when partnered with the traditional audit methods already utilized by election officials. The Bureau of Elections and local clerks across the state began piloting the audits in 2018 and 2019, and also conducted a pilot of the 2020 presidential primary. The process was conducted with the assistance of VotingWorks, a nonprofit, nonpartisan organization. It also drew upon the advice of the Election Security Advisory Commission and an audit task force composed of election clerks.

###

# EXHIBIT 13

# Exhibit 13



Dana Nessel
@danannessel

Current status of @MIGOP.



II | GIF | ALT

Matthew S. DePerno, Esq. ✔ @mdeperno · Jul 15, 2021

IT IS OFFICIAL: I am running for Michigan Attorney General next year. One of my first interviews to discuss why I am running to defeat our current AG will be on "Your Defending Fathers" with @TruckerRandy at 9:15 am.

Listen online at yourdefendingfathers.com

Constitutional Attorney Matt DePerno Announces Run For Michigan Attorney General



FOR IMMEDIATE RELEASE - July 14, 2021 - Kalamazoo, MI - It's official. Matt DePerno is running for Attorney General in Michigan. DePerno is a constitutional Attorney practicing law in Michigan for 26 years and will work to serve the people of Michigan by providing transparency of government functions.

DePerno represents Bill Bailey in the case of Bailey v. Antrim County and Secretary of State Benson, which was filed to ensure that every vote cast in the state of Michigan was counted correctly, and to ensure transparency in elections in the United States.

DePerno will engage in impartial criminal investigations and will follow and enforce the law. He is committed to being a servant of the people in the role of Michigan State Attorney General. He reveres the honor and responsibility the same as any duly American representative must in this American Republic.

Follow Matt DePerno on Twitter: https://twitter.com/mdeperno
Matt DePerno's Website: https://matthewdeperno.com/
Media Contact: press@matthewdeperno.com

7:14 AM · Jul 15, 2021

Exhibit 13 | Page 1

 **Dana Nessel**
@dananessel

Unless these attorneys are really held accountable there's no incentive for them to stop doing what they're doing. They have to be penalized in a way where they can never again enter into a court of law and make these types of unsupported, and frankly dangerous, claims.



**Acyn** @Acyn · Jul 16, 2021
Nessel:... these attorneys have to be disbarred

> BREAKING NEWS
MICHIGAN AG TO INVESTIGATE FALSE CLAIMS ABOUT ELECTION

8:03 PM · Jul 16, 2021

💬 102        ↻ 398        ♡ 1.8K        🔖 9        📤

✦ See similar posts        →

Exhibit 13 | Page 2

 **Election Wizard** ✔
@ElectionWiz

· · ·

BREAKING: Donald J. Trump endorses @mdeperno for Michigan Attorney General.

← **Post**



- September 16, 2021 -

### Endorsement of Matt DePerno

Super Lawyer Matthew DePerno is running for Attorney General in the Great State of Michigan. He has defended the Constitution for 20 years, and has been on the front lines pursuing fair and accurate elections, as he relentlessly fights to reveal the truth about the Nov. 3rd Presidential Election Scam.

Dana Nessel, the Radical Left, and the RINOs are targeting Matt because he gets results and has exposed so much Voter Fraud in Antrim County, and many more places, in the 2020 Election. He will never give up, and that's why they absolutely cannot stand him!

Matt will properly enforce the laws for everyone—unlike what the out-of-control Radical Left Prosecutors are doing now. He will always defend our under siege Second Amendment, loves our Military and our Vets, and will restore Law and Order in the face of rampant and record-setting crime in Michigan. Matt DePerno has my Complete and Total Endorsement. He will never let you down!

6:40 PM · Sep 16, 2021

Exhibit 13 | Page 3

**Dana Nessel**
@dananessel

•••

This makes DePerno the clear front runner for the GOP nominee to challenge me next year. Our state is very much in danger of being taken over by the lunatic fringe if voters decide not to turn out in 2022.

Support democracy here:



8:27 AM · Sep 17, 2021

💬 23          🔁 21          ♡ 110          🔖          ⬆️

✦ See similar posts                                              →

Exhibit 13 | Page 4



**Dana Nessel**
@dananessel

···

Once again, I ask the Republican candidates for MI Attorney General to state their position on this matter. Time to stop allowing Republicans to label themselves the party of "law and order." They are, instead, the party of lawlessness, insurrection, and anarchy.

1:41 PM · Feb 11, 2022

💬 55          ⟲ 179          ♡ 644          🔖 1          ⬆

 See similar posts                    →

---

**Dana Nessel**
@dananessel

···

While my opponent has been busy fomenting domestic terrorism and supporting those who traffic in hate, I've been prosecuting hate crimes and domestic terrorism.

#HateWontWin
#NoHateInMyState



cbsnews.com

6:16 PM · May 17, 2022

Exhibit 13 | Page 5



**Dana Nessel**
@danannessel                                                              ...

On 1/6/21 my opponent Matthew DePerno was in DC plotting to overturn
our election and encouraging the insurrection. He is uniquely
UNQUALIFIED to be Michigan's top cop.



We've watched dangerous radicals — and even MAGA Republicans — Stoke racially, ethnically, politically, and religiously motivated violence and intimidation.

1:24

3:30 PM · May 18, 2022

Exhibit 13 | Page 6



**Dana Nessel**
@dananessel

...Someone who was willing to sacrifice our republic to prolong Trump's power, or you can vote for me, the person who insisted it wasn't her job to pick election winners & losers but simply to safeguard the will of Michigan voters.



BUT OUR ATTORNEY GENERAL IS FIGHTING BACK    0:09 / 1:38

7:31 PM · Jun 23, 2022

Exhibit 13 | Page 7

# EXHIBIT 14



STATE OF MICHIGAN
RUTH JOHNSON, SECRETARY OF STATE
DEPARTMENT OF STATE
LANSING

MEMORANDUM

DATE:       August 25, 2014
TO:         County Clerks
FROM:       Michigan Department of State, Bureau of Elections
SUBJECT:    Recounts; Release of Voting Equipment

Please be advised of the following:

**STATE RECOUNTS:** The Board of State Canvassers completed its canvass of the August 5, 2014 primary election on Friday, August 22, 2014. The deadline for filing a petition for a recount with the Secretary of State elapsed today, Monday, August 25, 2014. The following lists the recount request received by the Secretary of State by the recount petition filing deadline:

- 29th State House District (Republican Party): Oakland County

**CONDUCT OF LOCAL RECOUNTS:** Recounts requested for local offices that overlap the district listed above may <u>not</u> proceed until clearance is received through this office. Recounts requested for local offices that do not overlap the district listed above may proceed at this time.

**DEADLINE FOR COMPLETION OF RECOUNTS:** Michigan election law, MCL 168.875, provides that all recounts "shall be completed for a primary election not later than the twentieth day … immediately following the last day for filing counter petitions or the first day that recounts may lawfully begin."

In view of the fact that absent voter ballots must be available for the November 4, 2014 general election no later than September 20, 2014, all county canvassing boards are urged to complete any requested recounts no later than <u>Friday, September 5, 2014</u> if possible.

**RELEASE OF VOTING EQUIPMENT:** The security of ballots and election equipment -- except in those districts listed above -- is released as follows:

***Ballots, programs and related materials:*** The security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials is released under the Rules for Electronic Voting Systems, R 168.790(18), as of September 24, 2014 <u>except in those</u>

Bailey v Antrim County                                                   MDOS_0000712
No. 20-9238-CZ

areas where local recounts extend beyond September 24, 2014.  Optical scan ballots and materials involved in local recounts which extend beyond September 24 can be released by the Board of County Canvassers upon the successful completion of the recount.

***AutoMARK flashcards:***  The security of the AutoMARK flashcards is released as of September 24, 2014.  (The AutoMARK flashcards are not subject to the federal retention requirements explained below.)

***E-Pollbook laptops and flash drives:***  The EPB software and associated files must be deleted from all devices by the seventh calendar day following the final canvass and certification of the election (August 29, 2014) unless a petition for recount has been filed and the recount has not been completed or the deletion of the data has been stayed by an order of the court or the Secretary of State.

***Important note:***  Ballots and election equipment involved in the recounts to be conducted by the Board of State Canvassers will be released under a later notice issued by this office.


**"EARLY RELEASE" OPTION IF NO STATE OR LOCAL RECOUNTS ARE PENDING:**  Michigan election law, MCL 168.799a(4), provides the following:

> "Unless a petition for recount has been filed and the recount has not been completed, ballots, ballot labels, programs, test results, and other sealed materials may be released from their original seal after 7 days following the final determination of the board of canvassers with respect to the election at which the ballots were voted.  However, the released materials shall be secured and preserved for the time period required by this act and the rules promulgated by the secretary of state."

A jurisdiction that wishes to take advantage of the above retention procedures to free electronic voting equipment for the upcoming November 4 general election may break the seals on the materials any time after August 29, 2014 and then seal the materials in an approved ballot container through September 24, 2014.  Programs contained on memory devices may be downloaded to disk during the transfer of the materials to free the memory devices for the upcoming election.

**FEDERAL BALLOT RETENTION REQUIREMENT:** If the office of President, U.S. Senator or U.S. Representative in Congress appears on the ballot (the offices of U.S. Senator and U.S. Representative in Congress appeared on the August 5 primary ballot), federal law requires that all documents relating to the election -- including optical scan ballots and the programs used to tabulate optical scan ballots -- be retained for 22 months.  (The AutoMARK flashcards are not subject to the 22-month federal retention period.)  To comply with the requirement, the Department of State's Bureau of Elections recommends that optical scan ballots and the programs relating to federal elections be stored in sealed ballot bags in a secure place during the 22-month retention period.  The documents subject to the federal retention requirement must not be transferred to ballot bags for extended retention until after they are released under Michigan election law as detailed in this memo.

2

MDOS_0000713

**REMINDER: 2012 ELECTION LAW CHANGES**:  As a reminder, PA 271 of 2012 (effective August 15, 2012) made several changes to the required retention of certain election materials, including:

- Shortening the minimum retention period for original registration cards to five years (from ten years) after the date of cancellation.
- Lengthening the amount of time that Applications to Vote and AV Ballot Applications must be preserved from two to six years.
- Requiring that all Affidavits from Voters not in Possession of Photo ID be retained for six years.

## Questions?

If you have any questions, please do not hesitate to contact this office via email at elections@michigan.gov, or by phone at (517) 373-2540 or (800) 292-5973.

3



**STATE OF MICHIGAN**
RUTH JOHNSON, SECRETARY OF STATE
**DEPARTMENT OF STATE**
LANSING

MEMORANDUM

DATE:        November 26, 2014
TO:          County Clerks
FROM:        Michigan Department of State, Bureau of Elections
SUBJECT:     Recounts; Release of Voting Equipment

Please be advised of the following:

**STATE RECOUNTS:** The Board of State Canvassers completed its canvass of the November 4, 2014 general election on Monday, November 24, 2014. The deadline for filing a petition for a recount with the Secretary of State elapsed on Wednesday, November 26, 2014. The following lists the recount requests received by the Secretary of State by the recount petition filing deadline:

- 20th District State Senate: Kalamazoo County
- 19th District Court: Wayne County, City of Dearborn

**CONDUCT OF LOCAL RECOUNTS:** Recounts requested for local offices that overlap the districts listed above may <u>not</u> proceed until clearance is received through this office. Recounts requested for local offices that do not overlap the districts listed above may proceed at this time.

**DEADLINE FOR COMPLETION OF RECOUNTS:** After a general election, each requested recount must be completed no later than 30 days after 1) the deadline for filing a counter petition or 2) the first date the recount may lawfully begin (MCL 168.875).

**CONDUCT OF POST-ELECTION AUDITS:** If a recount has been requested involving a precinct that has been selected for a post-election audit, the audit may not begin until after the recount has been completed. All other post-election audits may proceed at this time.

**RELEASE OF VOTING EQUIPMENT:** The security of ballots and election equipment -- except in those districts listed above -- is released as follows:

***Ballots, programs and related materials:*** The security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials is released under the Rules for Electronic Voting Systems, R 168.790(18), as of December 26, 2014 <u>except in those areas where local recounts extend beyond December 26, 2014</u>. Optical scan ballots and materials involved in local recounts which extend beyond December 26 can be released by the Board of County Canvassers upon the successful completion of the recount.

***AutoMARK flashcards:*** The security of the AutoMARK flashcards is released as of December 26, 2014. (The AutoMARK flashcards are <u>not</u> subject to the federal retention requirements explained below.)

Bailey v Antrim County
No. 20-9238-CZ

MDOS_0000707

***E-Pollbook laptops and flash drives:*** The EPB software and associated files must be deleted from all devices by the seventh calendar day following the final canvass and certification of the election (i.e., December 1, 2014) unless a petition for recount has been filed and the recount has not been completed, a post-election audit is planned but has not yet been completed or the deletion of the data has been stayed by an order of the court or the Secretary of State.

***Important note:*** Ballots and election equipment involved in the recounts to be conducted by the Board of State Canvassers will be released under a later notice issued by this office.

**FEDERAL BALLOT RETENTION REQUIREMENT:** If the office of President, U.S. Senator or U.S. Representative in Congress appears on the ballot (the offices of U.S. Senator and U.S. Representative in Congress appeared on the November 4 general election ballot), federal law requires that all documents relating to the election -- including optical scan ballots and the programs used to tabulate optical scan ballots -- be retained for 22 months.  (The AutoMARK flashcards are <u>not</u> subject to the 22-month federal retention period.)  To comply with the requirement, the Department of State's Bureau of Elections recommends that optical scan ballots and the programs relating to federal elections be stored in <u>sealed ballot bags</u> in a secure place during the 22-month retention period.  The documents subject to the federal retention requirement must not be transferred to ballot bags for extended retention until after they are released under Michigan election law as detailed in this memo.

**REMINDER:  2012 ELECTION LAW CHANGES**:  As a reminder, PA 271 of 2012 (effective August 15, 2012) made several changes to the required retention of certain election materials, including:

- <u>Shortening</u> the minimum retention period for <u>original registration cards</u> to <u>five years</u> (from ten years) after the date of cancellation.
- <u>Lengthening</u> the amount of time that <u>Applications to Vote</u> and <u>AV Ballot Applications</u> must be preserved from two to <u>six years</u>.
- Requiring that all <u>Affidavits from Voters not in Possession of Photo ID</u> be retained for <u>six years</u>.

**Questions?**

If you have any questions, please do not hesitate to contact this office via email at <u>elections@michigan.gov</u>, or by phone at (517) 373-2540 or (800) 292-5973.



STATE OF MICHIGAN
**BUREAU OF ELECTIONS**
LANSING

MEMORANDUM

DATE:       August 24, 2016
TO:         County Clerks
FROM:       Michigan Department of State, Bureau of Elections
SUBJECT:    Recounts; Release of Voting Equipment

Please be advised of the following:

**STATE RECOUNTS:** The Board of State Canvassers completed its canvass of the August 2, 2016 primary election on Monday, August 22, 2016. The deadline for filing a petition for a recount with the Secretary of State elapsed today. The following lists the recount requests received by the Secretary of State by the recount petition filing deadline:

- 2nd State House District (Democratic Party): Wayne County
- 46th State House District (Republican Party): Oakland County
- 92nd State House District (Democratic Party): Muskegon County
- 96th State House District (Democratic Party): Bay County

**CONDUCT OF LOCAL RECOUNTS:** Recounts requested for local offices that overlap the districts listed above may not proceed until clearance is received through this office. Recounts requested for local offices that do not overlap the districts listed above may proceed at this time.

**DEADLINE FOR COMPLETION OF RECOUNTS:** Michigan election law, MCL 168.875, provides that all recounts "shall be completed for a primary election not later than the twentieth day … immediately following the last day for filing counter petitions or the first day that recounts may lawfully begin."

In view of the fact that absent voter ballots must be available for the November 8, 2016 general election no later than September 24, 2016, all county canvassing boards are urged to complete any requested recounts no later than **Friday, September 9, 2016**.

**RELEASE OF VOTING EQUIPMENT:** The security of ballots and election equipment -- except in those districts listed above -- is released as follows:

*Ballots, programs and related materials:* The security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials is released under the Rules for Electronic Voting Systems, R 168.790(18), as of September 23, 2016 except in those areas where local recounts extend beyond September 23, 2016. Optical scan ballots and

Bailey v Antrim County
No. 20-9238-CZ

MDOS_0000715

materials involved in local recounts which extend beyond September 23 can be released by the Board of County Canvassers upon the successful completion of the recount.

***AutoMARK flashcards:***  The security of the AutoMARK flashcards is released as of September 23, 2016.  (The AutoMARK flashcards are <u>not</u> subject to the federal retention requirements explained below.)

***E-Pollbook laptops and flash drives:***  The EPB software and associated files must be deleted from all devices by the seventh calendar day following the final canvass and certification of the election (August 29, 2016) unless a petition for recount has been filed and the recount has not been completed or the deletion of the data has been stayed by an order of the court or the Secretary of State.

***Important note:***  Ballots and election equipment involved in the recounts to be conducted by the Board of State Canvassers will be released under a later notice issued by this office.

**"EARLY RELEASE" OPTION IF NO STATE OR LOCAL RECOUNTS ARE PENDING:**  Michigan election law, MCL 168.799a(4), provides the following:

> "Unless a petition for recount has been filed and the recount has not been completed, ballots, ballot labels, programs, test results, and other sealed materials may be released from their original seal after 7 days following the final determination of the board of canvassers with respect to the election at which the ballots were voted.  However, the released materials shall be secured and preserved for the time period required by this act and the rules promulgated by the secretary of state."

A jurisdiction that wishes to take advantage of the above retention procedures to free electronic voting equipment for the upcoming November 8 general election may break the seals on the materials any time after August 29, 2016 and then seal the materials in an approved ballot container through September 23, 2016.  Programs contained on memory devices may be downloaded to disk during the transfer of the materials to free the memory devices for the upcoming election.

**FEDERAL BALLOT RETENTION REQUIREMENT:** If the office of President, U.S. Senator or U.S. Representative in Congress appears on the ballot (the office of U.S. Representative in Congress appeared on the August 2 primary ballot), federal law requires that all documents relating to the election -- including optical scan ballots and the programs used to tabulate optical scan ballots -- be retained for 22 months.  (The AutoMARK flashcards are <u>not</u> subject to the 22-month federal retention period.)  To comply with the requirement, the Bureau of Elections recommends that optical scan ballots and the programs relating to federal elections be stored in <u>sealed ballot bags</u> in a secure place during the 22-month retention period.  The documents subject to the federal retention requirement must not be transferred to ballot bags for extended retention until after they are released under Michigan election law as detailed in this memo.

2

MDOS_0000716

**REMINDER - RECOUNT FEES REFUNDED FOR *UNCRECOUNTABLE* PRECINCTS:**  As a reminder, PA 406 of 2014 instituted changes to the required recount fees.  In addition to the per-precinct fee change ($25 or $125, depending on the vote differential), note  the following:

MCL 168.867:

> *(7) If a precinct referred to in the petition is determined "not recountable" as provided in section 871(3) or, subject to subsection (8), if a precinct referred to in the petition is not recounted due to the withdrawal of the petition, the money deposited for the recount of that precinct shall be refunded to the petitioner.*

> *(8) If the votes cast on the ballots voted in a precinct have been examined and recounted, the withdrawal of the petition shall not result in a refund of the money deposited for the recount of that precinct.*

### Questions?

If you have any questions, please do not hesitate to contact this office via email at elections@michigan.gov, or by phone at (517) 373-2540 or (800) 292-5973.

3

MDOS_0000717



STATE OF MICHIGAN
**BUREAU OF ELECTIONS**
LANSING

MEMORANDUM

DATE:        January 10, 2017
TO:          County Clerks
FROM:        Michigan Bureau of Elections
SUBJECT:     Recounts; Release of Voting Equipment

Please be advised of the following:

**STATE RECOUNTS:** The Board of State Canvassers completed its canvass of the November 8, 2016 general election on November 28, 2016.  The deadline for filing a petition for a recount with the Secretary of State elapsed on November 30, 2016.  A request for a statewide recount for the office of President of the United States was filed by Jill Stein on November 30; the recount began on December 5 and was halted by court order on December 7.  Dr. Stein's recount request was subsequently withdrawn on December 13, 2016.  The Board of State Canvassers certified the original election results as official on December 13, 2016.  No other state-level recounts were conducted.

**CONDUCT OF LOCAL RECOUNTS:** On December 8, 2016, you received approval from this office to proceed with local recounts.  After a general election, each requested recount must be completed no later than 30 days after 1) the deadline for filing a counter petition or 2) the first date the recount may lawfully begin (MCL 168.875).  Given these requirements, local recounts were required to be completed by January 9, 2017.

**CONDUCT OF POST-ELECTION AUDITS:**  On December 9, 2016 you received approval from this office to proceed with post-election audits.  Counties that participated in the presidential recount are **not required** to complete post-election audits for the November 8, 2016 general election.  Note, however that the State will be reviewing materials from select jurisdictions that participated in the recount.  (See the next section and footnote below.)  Counties whose Presidential recount had not yet started are still required to conduct audits, and have until January 31, 2017 to complete them.

**RELEASE OF VOTING EQUIPMENT:** The security of ballots and election equipment -- **except in those jurisdictions on the attached list[1]** -- is released as follows:

---

[1] The State will be conducting a further review of materials from select jurisdictions that had a higher proportion of unrecountable precincts during last month's Presidential recount.  Counties involved include Branch, Cass, Ionia and Wayne.  See attached.

Bailey v Antrim County                                        MDOS_0000709
No. 20-9238-CZ

**Ballots, programs and related materials:**  The security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials is released under the Rules for Electronic Voting Systems, R 168.790(18), as of Thursday, January 12, 2017.

**AutoMARK flashcards:**  The security of the AutoMARK flashcards is released as of January 12, 2017.  (The AutoMARK flashcards are not subject to the federal retention requirements explained below.)

**E-Pollbook laptops and flash drives:**  The EPB software and associated files must be deleted from all devices unless a petition for recount has been filed and the recount has not been completed or the deletion of the data has been stayed by an order of the court or the Secretary of State.

**FEDERAL BALLOT RETENTION REQUIREMENT:** If the office of President, U.S. Senator or U.S. Representative in Congress appears on the ballot (the office of President and U.S. Representative in Congress appeared on the November 8, 2016 general election ballot), federal law requires that all documents relating to the election -- including optical scan ballots and the programs used to tabulate optical scan ballots -- be retained for 22 months.  (The AutoMARK flashcards are **not** subject to the 22-month federal retention period.)  To comply with the requirement, the Bureau of Elections recommends that optical scan ballots and the programs relating to federal elections be stored in **sealed ballot bags** in a secure place during the 22-month retention period.  The documents subject to the federal retention requirement must not be transferred to ballot bags for extended retention until after they are released under Michigan election law as detailed in this memo.

**REMINDER - RECOUNT FEES REFUNDED FOR _UNCRECOUNTABLE_ PRECINCTS:**  As a reminder, PA 406 of 2014 instituted changes to the required recount fees.  In addition to the per-precinct fee change ($25 or $125, depending on the vote differential), note  the following:

MCL 168.867:

> *(7) If a precinct referred to in the petition is determined "not recountable" as provided in section 871(3) or, subject to subsection (8), if a precinct referred to in the petition is not recounted due to the withdrawal of the petition, the money deposited for the recount of that precinct shall be refunded to the petitioner.*

> *(8) If the votes cast on the ballots voted in a precinct have been examined and recounted, the withdrawal of the petition shall not result in a refund of the money deposited for the recount of that precinct.*

### Questions?

If you have any questions, please do not hesitate to contact this office via email at elections@michigan.gov, or by phone at (517) 373-2540 or (800) 292-5973.

Attachment

2

**November 8, 2016 General Election**

**Jurisdictions Subject to Extended Security for Election Materials**

The security of ballots and election equipment is **not** released for the following jurisdictions until authority is provided by the Bureau of Elections:

| Branch County: | Cass County: | Ionia County: | Wayne County: |
|---|---|---|---|
| Batavia Township | Dowagiac City | Boston Township | Dearborn City |
| Bronson City | Ontwa Township | Ionia Township | Detroit City |
| Coldwater Township | Porter Township | Lyons Township | Grosse Pointe Farms City |
| Gilead Township | | North Plains Township | Huron Township |
| Noble Township | | Ronald Township | Inkster City |
| Quincy Township | | Sebewa Township | Livonia City |

3

Bailey v Antrim County
No. 20-9238-CZ



STATE OF MICHIGAN
BUREAU OF ELECTIONS
LANSING

MEMORANDUM

DATE:       September 14, 2017
TO:         County Clerks – Alger, Luce, Marquette, Schoolcraft, and Wayne
FROM:       Michigan Department of State, Bureau of Elections
SUBJECT:    Release of Voting Equipment

Please be advised of the following:

The Wayne County Board of Canvassers completed its canvass of the August 8, 2017 special primary election in the 1st State Senate District on August 16, 2017.  The Board of State Canvassers completed its canvass of the August 8, 2017 special primary election in the 109th State House District on August 17, 2017.  No recount requests were filed in these districts.

**RELEASE OF VOTING EQUIPMENT:** The security of ballots and election equipment is released as follows:

***Ballots, programs and related materials:***  In Wayne County, the security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials is released under the Rules for Electronic Voting Systems, R 168.790(18), as of September 15, 2017.  In Alger, Luce, Marquette, and Schoolcraft Counties, the security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials is released under the Rules for Electronic Voting Systems, R 168.790(18), as of September 16, 2017.

***AutoMARK flashcards (Alger, Luce, and Schoolcraft):***  The security of the AutoMARK flashcards is released as of September 16, 2017.

***E-Pollbook laptops and flash drives:***  The EPB software and associated files must be deleted from all devices by the seventh calendar day following the final canvass and certification of the election (August 23, 2017, 1st State Senate District or August 24, 2017, 109th State House District) unless a petition for recount has been filed and the recount has not been completed or the deletion of the data has been stayed by an order of the court or the Secretary of State.

**"EARLY RELEASE" OPTION IF NO STATE OR LOCAL RECOUNTS ARE PENDING:** Michigan election law, MCL 168.799a(4), provides the following:

> "Unless a petition for recount has been filed and the recount has not been completed, ballots, ballot labels, programs, test results, and other sealed materials may be released from their original seal after 7 days following the final

Bailey v Antrim County
No. 20-9238-CZ

MDOS_0000720

determination of the board of canvassers with respect to the election at which the ballots were voted. However, the released materials shall be secured and preserved for the time period required by this act and the rules promulgated by the secretary of state."

A jurisdiction that wishes to take advantage of the above retention procedures to free electronic voting equipment for the upcoming November 7 election may break the seals on the materials any time after August 23, 2017 (1st State Senate District) or August 24, 2017 (109th State House District) and then seal the materials in an approved ballot container through September 14 or 15, 2017, respectively. Programs contained on memory devices may be downloaded to disk during the transfer of the materials to free the memory devices for the upcoming election.

### Questions?

If you have any questions, please do not hesitate to contact this office via email at elections@michigan.gov, or by phone at (517) 373-2540 or (800) 292-5973.

Bailey v Antrim County
No. 20-9238-CZ

MDOS_0000721



STATE OF MICHIGAN
BUREAU OF ELECTIONS
LANSING

MEMORANDUM

DATE:       November 22, 2017
TO:         County Clerks – Alger, Luce, Marquette, Schoolcraft, and Wayne
FROM:       Michigan Department of State, Bureau of Elections
SUBJECT:    Recounts; Release of Voting Equipment

Please be advised of the following:

The Wayne County Board of Canvassers completed its canvass of the November 7, 2017 special general election in the 1st State House District on November 15, 2017. The Board of State Canvassers completed its canvass of the November 7, 2017 special general election in the 109th State House District on November 16, 2017. No recount requests were filed with the Secretary of State in these districts.

**CONDUCT OF LOCAL RECOUNTS:** You may proceed with local recounts. After a general election, each requested recount must be completed no later than 30 days after 1) the deadline for filing a counter petition or 2) the first date the recount may lawfully begin (MCL 168.875).

**CONDUCT OF POST-ELECTION AUDITS:** If a recount has been requested involving a precinct that has been selected for a post-election audit, the audit may not begin until after the recount has been completed. All other post-election audits may proceed at this time.

**RELEASE OF VOTING EQUIPMENT:** The security of ballots and election equipment is released as follows:

***Ballots, programs and related materials:*** In Wayne County, the security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials is released under the Rules for Electronic Voting Systems, R 168.790(18), as of December 15, 2017, except in those areas where local recounts extend beyond December 15, 2017. In Alger, Luce, Marquette, and Schoolcraft Counties, the security of all optical scan ballots, programs, test decks, accuracy test results, edit listings and any other related materials is released under the Rules for Electronic Voting Systems, R 168.790(18), as of December 16, 2017, except in those areas where local recounts extend beyond December 16, 2017.

***E-Pollbook laptops and flash drives:*** The EPB software and associated files must be deleted from all devices by the seventh calendar day following the final canvass and certification of the election (November 22, 2017, 1st State House District or November 23, 2017, 109th State House District) unless a petition for recount has been filed and the recount has not been completed, a

Bailey v Antrim County
No. 20-9238-CZ

MDOS_0000718

post-election audit is planned but has not yet been completed, or the deletion of the data has been stayed by an order of the court or the Secretary of State.

## Questions?

If you have any questions, please do not hesitate to contact this office via email at elections@michigan.gov, or by phone at (517) 373-2540 or (800) 292-5973.

2

# EXHIBIT 15

# STATE OF MICHIGAN

## IN THE OAKLAND COUNTY CIRCUIT COURT

PEOPLE OF THE STATE OF MICHIGAN

                              Case No. 2023-285729-FH
           Plaintiff,              Hon. Jeffrey Matis

v.

MATTHEW DEPERNO,

           Defendant.

| | |
|---|---|
| DALE J. HILSON (P57726) | PAUL J. STABLEIN (P42544) |
| Muskegon County Prosecutor | Paul Stablein, P.L.L.C. |
| Special Assistant Attorney General | Attorney for Defendant |
| Muskegon County Prosecutor's Office | 33 Bloomfield Hills Pkwy., Ste 242 |
| 990 Terrace St Floor 5 | Bloomfield Hills, MI 48304 |
| Muskegon, MI 49442-3395 | Tel. (248) 540-1600 / Fax (248) 642-7878 |
| | Email:  PaulStablein@StableinLaw.com |

## APPEARANCE, DEMAND FOR DISCOVERY AND DEMAND FOR SPEEDY TRIAL BY JURY

TO: THE CLERK OF THE COURT

      Please enter my appearance on behalf of Defendant, MATTHEW DEPERNO.  In addition, the Defendant demands the following of the prosecuting official:

1.       Copies of the complaint and warrant, or other charging document.  Const 1963, art 1, § 20.

2.       Copies of all statements, admissions and/or confessions made by the Defendant.

3.       Any written or recorded statement, **including all audio, video or other electronically recorded statements**, of a witness that pertains to the case.

4.       Copies of <u>ALL</u> police reports and personal notes of all police officers. *Bay Cnty. Prosecutor v Bay Cnty. Dist Judge*, 109 Mich App 476, 485; 311 NW2d 399 (1981); MCR 6.201(B)(2).

5.       Copies of any affidavit, warrant, and return pertaining to a search or seizure in connection with the case.  MCR 6.201(B)(4).

6.      Names and addresses of all *res gestae* witnesses, whether the prosecution intends to call the same. MCL 767.40a; *People v Canales,* 243 Mich App 571, 577; 624 NW2d 439 (2000).

7.      Compliance with the Michigan Rules of Professional Conduct; including the duty of the Prosecutor to ensure that the Defendant receives a fair trial. *People v Dane*, 59 Mich 550; 26 NW 781 (1886); *People v Guenther*, 188 Mich App 174, 469 NW2d 59 (1991).

8.      A Speedy Trial by Jury; Const 1963, art1, § 20.

9.      Compliance with MRE 404(b)(2) which requires reasonable notice in advance of trial of the general nature of any other crimes, wrongs, or acts the prosecution intends to use at trial and the rationale for admitting such evidence.

10.     Compliance with MCR 6.201(A) including providing the Defendant with the following within 21 days:

   a.      the names and addresses of all lay and expert witnesses whom the prosecution may call at trial; in the alternative, the prosecution may provide the name of the witness and make the witness available to the defendant for interview; the witness list may be amended without leave of the court no later than 28 days before trial;

   b.      any written or recorded statement, including electronically recorded statements, pertaining to the case by a lay witness whom the party may call at trial;

   c.      the curriculum vitae of an expert the prosecution may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion;

   d.      any criminal record that the prosecution may use at trial to impeach a witness;

   e.      a description or list of criminal convictions, known to the prosecuting attorney, of any witness whom the prosecution may call at trial; and

   f.      a description of and an opportunity to inspect any tangible physical evidence that the prosecution may introduce at trial, including any document, photograph, or other paper, with copies to be provided.

11.     Compliance with MCR 6.201(B) "Information Know to the Prosecuting Attorney," including providing the Defendant with the following within 21 days:

   a.      any exculpatory information or evidence known to the prosecuting attorney;

    b.        any police report and interrogation records concerning the case, except so much of a report as concerns a continuing investigation;

    c.        any written or recorded statements by a defendant, codefendant, or accomplice pertaining to the case, even if that person is not a prospective witness at trial;

    d.        any affidavit, warrant, and return pertaining to a search or seizure in connection with the case; and

    e.        any plea agreement, grant of immunity, or other agreement for testimony in connection with the case;

12.    Any and all test results or laboratory reports completed or prepared.

13.    All prior transcripts concerning this matter.

Respectfully submitted,

Dated: July 21, 2023

/s/Paul J. Stablein
PAUL J. STABLEIN (P42544)
PAUL STABLEIN, P.L.L.C.
Attorney for Defendant
33 Bloomfield Hills Pkwy. Ste 242
Bloomfield, MI 48304
Tel. (248) 540-1600 / Fax (248) 642-7878
Email: PaulStablein@StableinLaw.com

## **PROOF OF SERVICE**

The undersigned hereby states that on **Friday, July 21, 2023**, he served the Appearance, Demand for Discovery and Demand for Speedy Trial by Jury upon the Oakland County Circuit Court by email to lynchr@oakgov.com and upon Dale J. Hilson, Special Assistant Attorney General, by email to HilsonDa@co.muskegon.mi.us.

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

/s/Paul J. Stablein
Paul J. Stablein
Attorney for Matthew Deperno

# EXHIBIT 16

**STATE OF MICHIGAN**
**ROYAL OAK 44th DISTRICT COURT**

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff,

v.

MATTHEW SCOTT DEPERNO,

      Defendant.

_____

Dale J. Hilson (P57726)
Muskegon County Prosecuting Attorney
990 Terrace St Fl 5
Muskegon, MI 49442-3395
(231) 724-6435 Telephone
(231) 724-6685 Facsimile
hilsonda@co.muskegon.mi.us

Michael J. Cronkright (P52671)
Cronkright Law, PLLC
4601 W. Saginaw, Ste J2A
Lansing, MI 48917
(517) 881-4643 Telephone
(517) 913-6123 Facsimile
michael@cronkrightlaw.com

_____

Case No. 2024-00973-FY
Honorable Derek Meinecke

**APPEARANCE, DEMANDS,**
**PROOF OF SERVICE**

**TO:    CLERK OF THE COURT AND**
        **MUSKEGON COUNTY PROSECUTOR**

     Please enter the Appearance of Michael J. Cronkright (P52671) and Cronkright Law, PLLC, for and on behalf of the above-named Defendant. Defendant stands mute to the charges. Defendant waives arraignment. Defendant herein makes the following demands:

1.   A speedy trial by jury, pursuant to MCL 768.1, MCR 6.004(A), Art 1, Sec 20, Mich Const of 1963 and the 6th and 14th Amendments, US Constitution.

2.   Copies of Complaint and Warrant (Art 1, Sec. 20, Mich Const of 1963; MSA 28.968) and Information, including specific references to state laws or city ordinance provisions under which the Defendant stands charged.

3.   Copies within a reasonable time, pursuant to MCR 6.201, of all statements, admissions,

1

confessions, remarks and/or gestures, whether signed or unsigned, allegedly made by the Defendant.

4. Copies of any civil infraction citations prepared in regards to this case.

5. Copies pursuant to MCR 6.201, of all written reports, including, but not limited to, the following:

   A. All investigative and police reports, notes and summaries, accident reports, witness statements, copies of any photo line-ups, etc. People v Dellabonda, 256 Mich 486 (1933); Bay County Prosecuting Attorney v Bay County District Judge, 109 Mich App 476 (1981); City of Harbor Springs v McNabb, 150 Mich App 583 (1986) (fundamental fairness requires production of police report in misdemeanor case).

   B. All recognition of rights forms and advice of rights forms, whether signed or unsigned.

   C. All documents, test results, photographs, articles and physical evidence in regard to this case.

   D. Any book, paper, document, photograph, digital image, video or tangible objects or physical evidence intended to be offered into evidence or that relates to the testimony of any witness.

6. Names and addresses of all witnesses, pursuant to MCR 6.201, including res gestae witnesses. People v Smith, 257 Mich 319.

   A. Any written or recorded statement by a lay witness whom the prosecuting attorney intends to call at trial.

   B. Any criminal record that the party intends to use at trial.

   C. Any information known to the prosecuting attorney, pursuant to MCR 6.201 (B), such as:

      i. Any exculpatory information or evidence known to the prosecuting attorney;

      ii. Any police report concerning the case;

      iii. Any written or recorded statement(s) by a co-defendant(s) or accomplice(s), even if that person(s) is not a prospective witness(es) at trial;

      iv.   Any affidavit, warrant, and return pertaining to a search and seizure in connection with the case;

      v.   Any plea agreement, grant of immunity, or other agreement for testimony in connection with the case.

7.   All scientific or other expert or technical evidence.

8.   The curriculum Vitae of any expert witness who will be called at a trial or hearing, or whom has been consulted in this case, along with any written reports produced by the expert witness, or a written description of the substance of the proposed expert witnesses testimony opinions, along with a clear description of the scientific basis of the expert's witness's opinions, including by not limited to a complete list of any scientific journal articles and authoritative treatises relied upon by the expert witness.

9.   The Defendant demands that the prosecution endorse on the complaint and warrant and produce at the trial in this case all res gestae witnesses.

10.  Notice pursuant to MCR 6.201 of the fact that the prosecution intends to and/or will impeach the Defendant by evidence of conviction of prior crimes or intends to and/or will introduce evidence of prior crimes of the Defendant.

11.  The criminal arrests and convictions of any of persons the prosecution intends to call or may call as a witness at the trial of this case, pursuant to MCR 6.201.

12.  Copies of all search warrants, affidavits in support thereof and returns thereof issued in connection with the investigation of this case, whether or not such warrants were ever executed, pursuant to MCR 6.201.

13.  Names and addresses of all accomplices, aiders and abettors, pursuant to MCR 6.201.

14.  The Defendant demands a pretrial conference, a formal hearing, if relevant; a preliminary examination, if relevant; and a jury trial.

15.  All relevant information for proper preparation of defense. People v Walton, 71 Mich App 478 (1976).

16.  Compliance with the Michigan Rules of Professional Conduct and Canons, including, but not limited to MRPC 3.4, MRPC 3.8, and MRPC 8.4.

17.  All evidence known, or which may become known, to the prosecuting attorney or any law enforcement agency or officer associated with the present case, favorable to the Defendant and material either to his guilt/ innocence or punishment. See, *Brady v. Maryland*, 373 US 83, 87 (1963); *US v. Bagley*, 473 US 667 (1985) and *Kyles v. Whitley*,

514 US 419 (1995).

18. It is to be understood that this request is continuing and the information and documentation furnished is expected to be timely furnished in order to allow defense counsel to properly prepare for any scheduled proceedings.

19. It should be understood that the Defendant will oppose the admissibility of any testimony, physical or tangible evidence, statements, reports or any other evidence offered by the Prosecutor where the Prosecutor has failed to comply with these demands and/or the provisions of MCR 6.201.

Respectfully submitted,

Dated: May 21st, 2024

_____
Michael J. Cronkright (P52671)

### PROOF OF SERVICE

The undersigned hereby declares that he served the Plaintiff with a copy of the document entitled **"Appearance, Demands and Proof of Service"** by delivering same to said recipient at Clinton County Prosecutor's office listed above, on May 21st, 2024, at or after 8:00 a.m., via hand-delivery, e-mail and/or first class mail, postage fully prepaid.  The undersigned affirms that, upon knowledge, information and belief, the factual averments set forth herein are accurate and correct.

Respectfully submitted,

Dated: May 21st, 2024

_____
Michael J. Cronkright (P52671)