**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | No. 1:21-cv-02131-CJN-MAU |
| *Plaintiffs*, | ) ) | Judge Carl J. Nichols |
| v. | ) ) | Hon. Magistrate Moxila A. Upadhyaya |
| PATRICK BYRNE, | ) ) ) | |
| *Defendant*. | ) | |

**OPPOSITION TO DEFENDANT PATRICK BYRNE'S
<u>MOTION FOR RELIEF FROM ORDER (DOCKET NO. 144)</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................4

III.   LEGAL STANDARD .............................................................................................5

IV.   ARGUMENT ..........................................................................................................6

      A.    Mr. Byrne Does Not Present Any Intervening Change in the Law. ........................7

      B.    Ms. Lambert's Criminal Indictment Had No Bearing on Her Disqualification. ....................................................................................................8

      C.    The Court Did Not Misconstrue Ms. Lambert's Media Appearances. .................10

      D.    Mr. Byrne Otherwise Presents the Same Baseless Arguments That Have Now Twice Been Rejected........................................................................................12

           1.    There is No Law Enforcement Exception to the Protective Order. ...............................................................................................13

           2.    There is No Public Interest Exception Under the Protective Order. ...............................................................................................14

           3.    Mr. Byrne's Repeated Attacks on Magistrate Judge Upadhyaya are Offensive and Baseless. ...............................................................15

V.    CONCLUSION.....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
  821 F.2d 139 (2d Cir. 1987) ................................................................................ 14

*Akel v. United States Dep't of Just.*,
  No. CV 20-3240 (RDM), 2023 WL 2585667 (D.D.C. Mar. 21, 2023) ............................. 1, 6

*Alexander v. F.B.I. (Alexander II)*,
  186 F.R.D. 99 (D.D.C. 1998) ........................................................................ 2, 8, 15

*Ali v. Carnegie Inst. of Washington*,
  309 F.R.D. 77 (D.D.C. 2015) ............................................................................... 1

*America v. Preston*,
  No. CIV.A. 03-1807 PLF, 2007 WL 8055550 (D.D.C. Feb. 12, 2007) ......................... 2, 13

*Anand v. U.S. Dep't of Health & Hum. Servs.*,
  No. CV 21-1635 (CKK), 2022 WL 4231630 (D.D.C. July 12, 2022) ................................ 6

*Bisig v. Time Warner Cable, Inc.*,
  940 F.3d 205 (6th Cir. 2019) ................................................................................. 6

*Bond v. Utreras*,
  585 F.3d 1061 (7th Cir. 2009) .............................................................................. 15

*Ciralsky v. CIA*,
  355 F.3d 661 (D.C. Cir. 2004) ............................................................................... 1

*Cmty. Dental Servs. v. Tani*,
  282 F.3d 1164 (9th Cir. 2002) ............................................................................... 6

*Colella v. Androus*,
  No. CV 20-813 (RC), 2023 WL 3751195 (D.D.C. May 4, 2023) ................................... 6

*Galbert v. W. Caribbean Airways*,
  715 F.3d 1290 (11th Cir. 2013) .............................................................................. 6

*Guo v. Clark Hill PLC*,
  No. CV 19-3195 (JEB), 2021 WL 8999890 (D.D.C. Nov. 9, 2021) ................................ 6

*Koller By & Through Koller v. Richardson-Merrell Inc.*,
  737 F.2d 1038 (D.C. Cir. 1984) ..................................................................... *passim*

*Murray v. Metro. Life Ins. Co.*
   583 F.3d 173 (2d Cir. 2009)..........................................................................7

*Pub. Citizen v. Liggett Grp., Inc.*,
   858 F.2d 775 (1st Cir. 1988)......................................................................14

*SEC v. TheStreet.com*,
   273 F.3d 222 (2d Cir. 2001)......................................................................15

*Singh v. George Washington Univ.*,
   383 F. Supp. 2d 99 (D.D.C. 2005) .........................................................1, 6

*Static Media LLC v. Leader Accessories LLC*,
   38 F.4th 1042 (Fed. Cir. 2022) .............................................................11, 12

*Stewart v. Panetta*,
   826 F.Supp.2d 176 (D.D.C. 2011) .............................................................6

*Stough v. Mayville Cmty. Sch.*,
   138 F.3d 612 (6th Cir. 1998) ......................................................................6

## I.    INTRODUCTION

US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion"), respectfully file this opposition to Defendant Patrick Byrne's motion for reconsideration of the Court's Order affirming the disqualification of his counsel, Stefanie Lambert.  Dkt. No. 148.

Mr. Byrne's motion is a plainly improper attempt at a do-over; and should be swiftly denied as such.  *See, e.g.*, *Akel v. United States Dep't of Just.*, No. CV 20-3240 (RDM), 2023 WL 2585667, at *8 (D.D.C. Mar. 21, 2023) (finding that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again" (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005))). Indeed, the Court should deny Mr. Byrne's motion for at least the following independent reasons.

Before delving into the substance, Mr. Byrne's motion is procedurally improper and can be denied on this basis alone.  Mr. Byrne, via Ms. Lambert, brought the instant motion under Rule 60(b), which "dictate[s] when a party may obtain reconsideration of a *final judgment*." *Ali v. Carnegie Inst. of Washington*, 309 F.R.D. 77, 80 (D.D.C. 2015), *aff'd*, 684 F. App'x 985 (Fed. Cir. 2017) (emphasis added).  Rule 60(b) does not apply to interlocutory orders such as the disqualification order; instead, Rule 54(b) governs reconsideration of interlocutory orders.  *Id.* While the Court may, in its discretion, construe Mr. Byrne's motion as under Rule 54(b), it is telling that in a motion to avoid disqualification Mr. Byrne and Ms. Lambert cannot follow basic Court rules.

Assuming the Court chooses to consider Mr. Byrne's motion under Rule 54(b), Mr. Byrne fails to meet his burden to show "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (quoting *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)).

1

*First*, Byrne cites no intervening change in law. To the contrary, Mr. Byrne and Ms. Lambert continue to ignore well-settled law. For example, they ignore that in the absence of an attorney-client conflict, disqualification is appropriate "in cases of truly egregious misconduct likely to infect future proceedings." *Koller By & Through Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984), *vacated on other grounds sub nom. Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985). They also ignore that compliance with protective orders is not optional and that, to modify a protective order, a party ordinarily must make "a showing of good cause." *Alexander v. F.B.I. (Alexander II)*, 186 F.R.D. 99, 100 (D.D.C. 1998). Rather than acknowledge this black letter law, they—again—argue that something different is required, relying on the same unsuccessful arguments they already made before both Magistrate Judge Upadhyaya and Judge Nichols. This is plainly improper. *See America v. Preston*, No. CIV.A. 03-1807 PLF, 2007 WL 8055550, at *1 (D.D.C. Feb. 12, 2007) (rejecting motion for reconsideration of interlocutory order because "the defendant merely repeats the same arguments that the Court has already rejected").

*Second*, Mr. Byrne's argument about so-called recently discovered "exculpatory evidence" attacks nothing more than a strawman. Mot. at 6. While Dominion cited Ms. Lambert's Michigan criminal indictment in seeking her disqualification, Dominion's argument did not concern Ms. Lambert's innocence or guilt but instead concerned the open bench warrant in that case for her failure to comply with the court's orders. Dkt. No. 75 at 14, 21. And whether Ms. Lambert is innocent of the underlying crime does not excuse her from following the court's orders. Regardless, the Court did not rely on the indictment in disqualifying her. *See* Dkt. No. 144, Order at 2–5. Nor did Magistrate Judge Upadhyaya. *See* Dkt. No. 126, Mem. Op. at 25–27, 54–55 (outlining Ms. Lambert's prior election-related conduct without citing the Michigan indictment).

Instead, this Court disqualified Ms. Lambert because she intentionally leaked Dominion's discovery materials in violation of the Protective Order. Dkt. No. 144, Order at 3. And because, after having been given a second chance, she repeatedly violated the Court's rules and orders. *Id.* at 3–5. So, leaving aside that the purported "exculpatory evidence" does not prove Ms. Lambert is innocent of the most recent crimes she has been charged with, the so-called new evidence is neither here nor there because the indictment was never a basis for her disqualification.

*Third*, Mr. Byrne fails to show the Court committed clear error. Mr. Byrne's main argument is that the Court misinterpreted Ms. Lambert's post-Status Quo Order media interviews. Mot. at 10–12. The Court did no such thing. The Court has had the transcripts of these interviews since at least May 17, 2024 (*see* Dkt. No. 102-1), and "watched the interviews and verified that the transcripts are accurate." Dkt. No. 144, Order at 4 n.3. Mr. Byrne has never claimed that the transcripts Dominion provided to the Court are inaccurate—nor has he ever presented competing transcripts. These transcripts speak for themselves. And this Court, as well as Magistrate Judge Upadhyaya, were both perfectly capable of reviewing them and seeing them for what they are.

In sum, Mr. Byrne and Ms. Lambert come to this Court with none of the proper grounds for revising this Court's *de novo* review of Magistrate Judge Upadhyaya's 61-page Memorandum Opinion. *See* Dkt. No. 144, Order at 2 (declining to decide the "standard of review" of the disqualification order because the Court "would affirm that decision even if it were reviewing the disqualification *de novo*"). Instead, Mr. Byrne continues to refuse to take accountability for his actions or those of Ms. Lambert, instead regurgitating failed arguments about made-up exceptions to the Protective Order that find no support in caselaw or the Protective Order, and leveling baseless accusations against officers of this Court. These arguments were unconvincing the first time, and remain so now. His motion should be denied without oral argument.

3

## II.     BACKGROUND

The Court is well-versed in the facts and procedure leading up to Mr. Byrne's motion for reconsideration.  Briefly, on March 15, 2024, Dominion moved for Ms. Lambert's disqualification after learning that Ms. Lambert filed Dominion's discovery materials publicly in her Michigan criminal case and also leaked the materials to a Michigan sheriff, Sheriff Dar Leaf, who posted the materials on X.  Dkt. No. 75.  What followed Dominion's motion was a robust procedure where Mr. Byrne and Ms. Lambert had more than sufficient opportunity to justify Ms. Lambert's conduct. Indeed, before disqualifying Ms. Lambert, Magistrate Judge Upadhyaya held two hearings, reviewed over 2,500 pages of briefs and exhibits, and provided Ms. Lambert with a period of 148 days to demonstrate that she could in fact abide by this Court's rules and orders.

At every turn, Ms. Lambert failed to present any justification for her past conduct.  Worse yet, the record is replete with evidence demonstrating Mr. Byrne and Ms. Lambert's ongoing non-compliance with this Court's Protective and Status Quo Orders.  Dominion incorporates that extensive record by reference.[1]

After giving Ms. Lambert roughly five months to show she could comply with the Court's rules and orders, on August 13, 2024, Magistrate Judge Upadhyaya disqualified Ms. Lambert, in a thorough and well-reasoned 61-page Memorandum Opinion.  Magistrate Judge Upadhyaya found that "the record clearly shows that Ms. Lambert deliberately violated multiple court rules

---

[1] *See* Dkt. No. 75, Mot. to Disqualify (Mar. 15, 2024); Dkt. No. 78, Hearing (Mar. 18, 2024); Dkt. No. 82, Reply in Support of Mot. to Disqualify (Mar. 22, 2024); Dkt. No. 102, Supp. Decl. of D. Brook (May 17, 2024); Dkt. No. 103, Hearing (May 16, 2024); Dkt. No. 105, Resp. to Order of Court (May 21, 2024); Dkt. No. 108, Mot. to Enforce (July 5, 2024); Dkt. No.. 113, Suppl. Br. in Support of Mot. to Disqualify (July 23, 2024); Dkt. No. 135, Opp. to Byrne's Objection to Mem. Op. (Sept. 11, 2024); Dkt. No. 145, Hearing (Oct. 17, 2024); Ex. 1, Oct. 17, 2024, Hearing Tr. Except that Magistrate Judge Upadhyaya denied two of Dominion's motions for leave to file supplements, which had alerted the Court to even more recent misconduct, including physical threats levied by Byrne himself.  Dkt. 126, Mem. Op. at 30 (denying Dkt. Nos. 118 & 122).  Magistrate Judge Upadhyaya explained: "Despite the severity of the conduct alleged therein, the Court denies Dominion's latest motions to supplement in the interests of ending the ongoing cycle of alleged misconduct by resolving this underlying Motion."  *Id.*  Dominion therefore does not rely on or incorporate by reference those filings.

and orders and continues to do so despite having had ample warning of the consequences and assuring the Court she would comply," and that "[b]ecause Lambert's 'truly egregious misconduct' has already and will undoubtedly continue to 'infect future proceedings,' this is the rare case in which disqualification is warranted." Dkt. No. 126, Mem. Op. at 3 (quoting *Koller*, 737 F.2d at 1056).

Mr. Byrne, through Ms. Lambert, objected to Magistrate Judge Upadhyaya's disqualification order. Dkt. Nos. 133, 134. After another round of full briefing, on October 17, 2024, the Court held yet another hearing on this issue. *See* Minute Order of Oct. 17, 2024; Ex. 1, Oct. 17, 2024, Hearing Tr. On October 22, the Court entered an Order affirming Ms. Lambert's disqualification, explaining:

> [A]fter it became clear that Lambert had engaged in egregious violations of the Protective Order, she should have taken every step possible to show that those would remain isolated incidents. Instead, she violated the Status Quo Order and, at best, skirted around the edges of the Protective Order. That conduct—combined with Lambert's view, expressed both before Judge Upadhyaya and now before this Court during the October 17, 2024 hearing, that she was entitled to leak discovery materials because she believed doing so to be in the public interest—creates a real and continuing risk that Lambert might again leak confidential information. Judge Upadhyaya thus correctly concluded that Lambert's continued violations were "likely to infect future proceedings," *Koller*, 737 F.3d at 1056, and that no sanction short of disqualification would suffice.

Dkt. No. 144, Order at 5.

Mr. Byrne now moves for reconsideration. Dkt. No. 148.

### III.    LEGAL STANDARD

Mr. Byrne brought his motion under Rule 60(b) even though that rule applies to final judgments, orders, or proceedings—not interlocutory orders such as the disqualification order Mr.

Byrne challenges.[2]  Instead, "reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b)."  *Colella v. Androus*, No. CV 20-813 (RC), 2023 WL 3751195, at *2 (D.D.C. May 4, 2023).  While Rule 54(b) admittedly presents "a lower bar" than Rule 60(b), *Guo v. Clark Hill PLC*, No. CV 19-3195 (JEB), 2021 WL 8999890, at *1 (D.D.C. Nov. 9, 2021), the bar is still high because, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again," *Akel*, 2023 WL 2585667, at *8 (quoting *Singh*, 383 F. Supp. 2d at 101).  Accordingly, courts limit reconsideration of interlocutory orders "only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Anand v. U.S. Dep't of Health & Hum. Servs.*, No. CV 21-1635 (CKK), 2022 WL 4231630, at *1 (D.D.C. July 12, 2022) (quoting *Stewart v. Panetta*, 826 F.Supp.2d 176, 177 (D.D.C. 2011)).  "The party seeking reconsideration bears the burden of demonstrating that it is warranted."  *Akel*, 2023 WL 2585667, at *9.

## IV.    ARGUMENT

Even construing Mr. Byrne's motion as one properly brought under Rule 54(b), the motion should be denied because Mr. Byrne presents no reason for the Court to reconsider its prior decision.  Mr. Byrne does not cite, for example, an intervening change in law.  Instead, Mr. Byrne ignores existing and controlling law.  Nor does Mr. Byrne cite new evidence that bears on the issues.  Instead, he points to purported evidence relating to Ms. Lambert's criminal indictment that had no bearing on her disqualification.  Finally, Mr. Byrne points to no clear error by Judge Nichols

---

[2] The out-of-circuit cases Ms. Lambert cites on Rule 60(b) (*see* Mot. at 7–8, 14–15, 22) either did not actually concern Rule 60(b), *see Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019); *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998); or did not concern an interlocutory order but instead a final judgment or order, *see Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1292 (11th Cir. 2013); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002).

or Magistrate Judge Upadhyaya. Instead, he regurgitates the same arguments the Court already rejected, including the argument that Ms. Lambert did not violate the Status Quo Order in several media appearances.

**A.      Mr. Byrne Does Not Present Any Intervening Change in the Law.**

Mr. Byrne cites no intervening change in law. Instead, Mr. Byrne and Ms. Lambert continue to ignore well-settled law.

As he did in his earlier briefing (Dkt. No. 134, Objection at 9), Mr. Byrne continues to misstate the standard for disqualification by arguing that "the case for disqualification essentially disappears" where there is no conflict of interest. Mot. at 8–9. Both this Court and Magistrate Judge Upadhyaya correctly rejected this argument. Dkt. 144, Order at 2; Dkt. 126, Mem. Op. at 49–50. For good reason, as the law clearly provides for removal "in cases of truly egregious misconduct likely to infect future proceedings." *Koller*, 737 F.2d at 1056.

Mr. Byrne presents no reason to revisit those rulings. Indeed, the only "new" case Mr. Byrne cites relating to disqualification is the 2009 Second Circuit decision in *Murray v. Metro. Life Ins. Co.* Leaving aside that this out-of-circuit precedent is neither an intervening change in law nor controlling precedent, the Second Circuit in *Murray* did not hold, much less imply, that disqualification is improper when an officer of the Court repeatedly and intentionally violates court orders and otherwise fails to show she can conform her conduct to a court's rules and orders. *See* 583 F.3d 173, 177–80 (2d Cir. 2009). Instead, the Court held that disqualification was improper on the facts of that case because the plaintiffs failed to show that there was a conflict of interest, or that the witness-advocate rule required disqualification due to the harm continued representation would pose to "the integrity of the judicial system." *Id.* at 177, 180. That is not controlling here— both because *Murray* did not concern a situation where counsel repeatedly flouted the court's rules and orders, and because Ms. Lambert's continued involvement in this case is "likely to infect future

proceedings." Dkt. No. 144, Order at 5 (quoting *Koller*, 737 F.3d at 1056).

Mr. Byrne also continues to ignore the rule that "[o]nce the court has entered a protective order, it may be modified upon a showing of good cause." *Alexander II*, 186 F.R.D. at 100. Instead, Mr. Byrne's repeats his arguments challenging the original entry of the Protective Order, which of course he stipulated to (Dkt. No. 45), including his arguments for purported law enforcement and public interest exceptions. Mot. at 5, 15–16, 24. However, if Mr. Byrne and Ms. Lambert believed the Protective Order went too far, the answer was not to blatantly violate the Protective Order but rather to seek the Court's guidance or move to modify the Protective Order upon a showing of good cause. Mr. Byrne and Ms. Lambert did neither before publicly disseminating all of Dominion's discovery materials.

In sum, rather than cite any intervening change in law, Mr. Byrne and Ms. Lambert ignore the appropriate legal standards governing disqualification and compliance with protective orders. Their continued refusal to acknowledge the appropriate standards only bolsters the Court's decision to disqualify Ms. Lambert.

### B. Ms. Lambert's Criminal Indictment Had No Bearing on Her Disqualification.

Mr. Byrne argues that reconsideration is necessary because Ms. Lambert uncovered "exculpatory evidence" on October 20, 2024, relating to her criminal indictment for allegedly tampering with voting machines following the 2020 Presidential Election. Mot. at 6. According to Mr. Byrne, this evidence shows that Dominion "provided the court with false and misleading information" by citing Ms. Lambert's indictment in moving for her disqualification. *Id.*

Leaving aside that Mr. Byrne does not actually describe the contents of this purported

"exculpatory evidence,"[3] Mr. Byrne fails to identify what relevance Ms. Lambert's criminal indictment actually has on the issues. Indeed, while Dominion cited Ms. Lambert's criminal indictment in moving for her disqualification, Dominion's argument did not concern the fact that Ms. Lambert may have committed a crime; instead, the argument concerned the open bench warrant in that case for her failure to comply with the court's orders (Dkt. No. 75 at 14, 21), which is relevant whether or not she is innocent of the underlying crime. Regardless, neither this Court nor Magistrate Judge Upadhyaya relied on Ms. Lambert's criminal indictment in disqualifying her. *See* Dkt. No. 144, Order at 2–5; Dkt. No. 126, Mem. Op. at 25–27, 54–55 (outlining Ms. Lambert's prior election-related conduct without citing the Michigan indictment).

For example, during the October 17 hearing, the Court did not ask questions about the circumstances of Ms. Lambert's Michigan indictment or about the fact she was indicted. Instead, the Court asked both sides questions about Ms. Lambert's pre- and post-Status Quo Order *conduct in this case*. *See, e.g.*, Ex. 1, Oct. 17, 2024, Hearing Tr. at 5:21–8:9, 38:6–39:9.

And this Court ultimately affirmed Magistrate Judge Upadhyaya's disqualification of Ms. Lambert specifically because of Ms. Lambert's conduct during both periods. Because Ms. Lambert initially violated the Protective Order by intentionally disseminating Dominion's discovery materials. And because after the Court entered the Status Quo Order, Ms. Lambert proved unwilling to follow the Court's rules and orders and instead discussed Dominion's discovery materials with the media, encouraged others to discuss the materials, failed to engage in reasonable efforts to remove the materials from her Michigan criminal docket, and failed to object

---

[3] For good reason: The Michigan criminal court denied Lambert's *Brady* motion, and her criminal trial is going forward even in the face of such purported evidence. *See* Danielle Ferguson, *Last-Minute Letter Delays Mich. Atty's Voting Machine Trial*, Law360 (Oct. 21, 2024), available at https://www.law360.com/articles/1892101?scroll=1&related=1 ("Judge Matis denied Lambert's request for the case to be dismissed based on a *Brady* violation, finding the prosecution did not have the letter and didn't intentionally hide it from Lambert. However, he couldn't say Monday whether the letter would have benefited her at trial, saying a jury would need to decide that.").

to a subpoena for the materials (that she appears to have served on herself), among other serious offenses. *See* Dkt. No. 144, Order at 3–5. Indeed, as the Court explained, "after it became clear that Ms. Lambert had engaged in egregious violations of the Protective Order, she should have taken every step possible to show that those would remain isolated incidents." *Id.* But "[i]nstead, she violated the Status Quo Order and, at best, skirted around the edges of the Protective Order." *Id.* at 5. "*That conduct*—combined with Lambert's view, expressed both before Judge Upadhyaya and now before this Court during the October 17, 2024 hearing, that she was entitled to leak discovery materials because she believed doing so to be in the public interest—creates a real and continuing risk that Lambert might again leak confidential information." *Id.*; *see also* Dkt. No. 125, Mem. Op. at 56 ("In her short time as counsel in this case, Lambert has caused exponential harm that cannot be undone. The Court's only meaningful option to mitigate the specific risk of future harm Lambert poses is by removing her from this case.").

Accordingly, any purported "exculpatory evidence" from Ms. Lambert's Michigan criminal case presents no reason to revisit Ms. Lambert's disqualification.

### C.    The Court Did Not Misconstrue Ms. Lambert's Media Appearances.

Mr. Byrne argues that the Court committed clear error in interpreting Ms. Lambert's post-Status Quo Order media appearances. He argues that Ms. Lambert did not disclose Dominion's discovery materials in her interviews with ABC News or FrankSpeech because all she did was discuss the materials at a high level of generality. Mot. at 10–12.[4]

This argument is baseless. The Status Quo Order required Ms. Lambert to "immediately

---

[4] Mr. Byrne notably does not address Ms. Lambert's other violations of the Protective and Status Quo Orders—including, as the Court has pointed out, when Ms. Lambert (1) made only half-hearted effort at sealing Dominion's discovery materials that she publicly filed in her Michigan case; (2) encouraged a podcast host to interview the person to whom she leaked Dominion's discovery materials; and (3) failed to object to a subpoena to produce Dominion's confidential discovery materials. Dkt. No. 144, Order at 2–5.

desist from sharing, distributing, providing access to or *discussing* any discovery material." Dkt. No. 77, Status Quo Order at 1 (emphasis added). Obviously, discussing Dominion's discovery materials at a high level of generality *is* discussing Dominion's discovery materials.

And, of course, the Court did not misconstrue Ms. Lambert's media interviews. The Court has the interview transcripts and "watched the interviews and verified that the transcripts are accurate." Dkt. No. 144, Order at 4 n.3. As those interviews reflect, Ms. Lambert did much more than simply discuss the existence of Dominion's discovery materials. Instead, she cited the materials to ABC News in support of her baseless accusation that a specifically identified Dominion employee committed "perjury," and that Dominion otherwise has engaged in specific federal crimes. Dkt. No. 82 at 14 & n.2. She also discussed the volume of purported evidence of criminal activity, claiming on the FrankSpeech podcast that, upon review of Dominion's materials, she "was immediately able to spot a number of different criminal pieces of evidence . . . a lot, ok? Not just one document or two." Dkt. No. 102-1 at 23. Not only does this conduct obviously amount to "sharing" and "discussing" Dominion's discovery materials, Dkt. No. 77, Status Quo Order at 1, it amounts to specific disclosures about the purported contents of those materials.

And the fact that Ms. Lambert believes she did not disclose or share Dominion's discovery materials—because she apparently did not disclose enough details—only buttresses the Court's conclusion that, if Ms. Lambert is allowed to remain as counsel in this case, she will continue to attempt to "skirt[] around the edges of the Protective Order." Dkt. No. 144, Order at 5.

Mr. Byrne also misstates the holding of *Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1048 (Fed. Cir. 2022). Mot. at 11. *Static Media* did not concern, as Mr. Byrne argues, whether "a protective order [is] violated by the mere act of disclosing the existence of information." *Id.* Instead, *Static Media* concerned whether the parties followed the proper

procedures for disclosing confidential materials, *see* 38 F.4th at 1046–47 ("Before disclosing the deposition transcripts to Mr. Hecht, Mr. Lee did exactly what was required to ensure that Mr. Hecht would abide by the protective order."); or otherwise disclosed such materials for an appropriate "use," such as in forming a joint defense strategy, *id.* at 1047–49. Of course, Ms. Lambert did not follow the proper procedures for disclosing Dominion's discovery materials, such as by obtaining the Court's or Dominion's permission. Nor did she make an appropriate use of Dominion's discovery materials, such as by using the materials only in this litigation as the Protective Order requires.

Finally, while Mr. Byrne focuses on Ms. Lambert's ABC News and FrankSpeech interviews, he ignores her other violations of the Status Quo Order. That includes, as the Court pointed out, when Ms. Lambert encouraged "[a podcast] host to invite onto the show the sheriff to whom she had provided access to the discovery database," Dkt. No. 144, Order at 4–5 (citing Dkt. No. 102-1 at 22); and when she "failed to confirm that she would object to [a] subpoena" for Dominion's discovery materials that was served on her even after being reminded that the Protective Order required her to do so, *id.* (citing Dkt. No. 108 at 3–4). So, even if the Court misconstrued Ms. Lambert's ABC News and FrankSpeech interviews, which it did not, there are more than enough other violations of the Protective and Status Quo Orders that the Court relied upon that have gone unrebutted by Mr. Byrne.

In sum, the Court committed no error in reviewing Ms. Lambert's post-Status Quo Order medial interviews.

### D. Mr. Byrne Otherwise Presents the Same Baseless Arguments That Have Now Twice Been Rejected.

Otherwise, Mr. Byrne regurgitates many of the same arguments he previously made. Each of these arguments—already made, and already rejected—do not justify reconsideration. *See*

*America*, 2007 WL 8055550, at *1 (rejecting motion for reconsideration of interlocutory order because "the defendant merely repeats the same arguments that the Court has already rejected"). Dominion nevertheless responds to each in turn.

### 1. There is No Law Enforcement Exception to the Protective Order.

Mr. Byrne presents a reframed version of his twice-rejected argument that the Protective Order recognizes an implied law enforcement exception. In particular, Mr. Byrne argues that Ms. Lambert did not leak Dominion's discovery materials to an "entity" within the meaning of the Protective Order because she leaked the materials to law enforcement. Mot. at 5, 15–16, 24.

Leaving aside, as the Court previously pointed out, that such a law enforcement "exception would not excuse [Ms. Lambert for] having filed the documents on a public docket," Dkt. No. 144, Order at 3, Mr. Byrne cites no authority for the proposition that a government entity like a sheriff's office is not an entity within the meaning of the Protective Order. Nor does Mr. Byrne cite any authority for the proposition that he and Ms. Lambert have unyielding authority to disseminate discovery materials whenever they subjectively perceive the materials contain evidence of a crime—despite being specifically asked for this authority at two hearings before Magistrate Judge Upadhyaya. Dkt. No. 78, March 18, 2024, Hearing Tr. at 18:17–18, 30:3–5; Dkt. No. 103, May 16, 2024, Hearing Tr. at 36:1–4, 46:21–23. And despite being asked by this Court at a third hearing to explain why she believed her conduct was appropriate. Ex. 1, Oct. 17, 2024, Hearing Tr. at 8:11–12, 23:3–10.

Moreover, the lack of authority aside, Mr. Byrne's "entity" argument rests on the same fiction that a protective order cannot prohibit a person from "report[ing] a crime to law enforcement." Mot. at 16–17. As the Court pointed out, nothing prevented Ms. Lambert from first "seek[ing] approval from the Court" before disseminating Dominion's discovery materials. Dkt. No. 144, Order at 3. That is all she needed to do before reporting a purported crime.

Accordingly, Mr. Byrne's reframed argument for a law enforcement exception to the Protective Order provides no basis for the Court to reconsider its disqualification of Ms. Lambert. If anything, Ms. Lambert's tortured reading of the Protective Order only further demonstrates that her disqualification needs to remain in effect.

## 2.    There is No Public Interest Exception Under the Protective Order.

Mr. Byrne argues that the Court failed to address his argument for a "public interest" exception to the Protective Order. Mot. at 15–16. But the Court did address this argument, twice—and rejected it, twice. Magistrate Judge Upadhyaya explained that "Lambert cite[d] no authority for [her] broad and significant assertions" that there was a "public interest exception" to the Protective Order. Dkt. No. 126, Mem. Op. at 44. This Court further explained that "[t]o the extent Lambert believed the public had a right to access the discovery materials, she was required to seek approval from the Court for that disclosure." Dkt. No. 144, Order at 3.

Mr. Byrne presents no reason to revisit these conclusions. Mr. Byrne cites nothing in the Protective Order granting him and Ms. Lambert sweeping authority to unilaterally disclose Dominion's discovery materials whenever and to whomever they please so long as *they* believe the information is of public interest. For good reason: the Protective Order plainly prohibits disclosure of "*[a]ny* Discovery Material produced in the Litigation" to "*any* person or entity," and plainly prohibits receiving parties from "mak[ing] any Discovery Material public *except as permitted by this Order and in this Litigation*." Dkt. No. 79 at ¶ 1.

Nor does Mr. Byrne cite a single authority supporting his public interest exception, despite being given ample opportunity. Instead, Mr. Byrne repeatedly argues that "all litigation and discovery is subject to public view and access." Mot. at 18 (citing *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139 (2d Cir. 1987); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775 (1st Cir. 1988)).

For starters, this argument is nothing more than an attack on the initial entry of the

Protective and Status Quo Orders. The argument does not excuse Ms. Lambert's decision to intentionally violate both orders.

Regardless, Mr. Byrne is misstating the law. As Dominion previously explained (Dkt. No. 135 at 28–29), *Agent Orange* and *Public Citizen* "were based on a prior version of Rule 5(d) of the Federal Rules of Civil Procedure" and "have been superseded by the 2000 amendment to" that rule. *Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009); *SEC v. TheStreet.com*, 273 F.3d 222, 233 n.11 (2d Cir. 2001). The current rule is that "the public has no constitutional, statutory (rule-based), or common-law right of access to unfiled discovery." *Bond*, 585 F.3d at 1073. As Dominion also pointed out (Dkt. No. 135 at 28–29), once a protective order is entered, "there is a strong presumption against the modification of a protective order," and it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *TheStreet.Com*, 273 F.3d at 230; *see also Alexander II*, 186 F.R.D. at 100 ("Once the court has entered a protective order, it may be modified upon a showing of good cause."). Unsurprisingly, Mr. Byrne ignores all this adverse authority.

In sum, Mr. Byrne's regurgitated argument for a public interest exception to the Protective Order provides no basis for the Court to reconsider its disqualification of Ms. Lambert.

### 3.    Mr. Byrne's Repeated Attacks on Magistrate Judge Upadhyaya are Offensive and Baseless.

Finally, Mr. Byrne again levels baseless attacks on this Court. Mot. at 19–22.

*First*, Mr. Byrne baselessly accuses Magistrate Judge Upadhyaya of purposely timing Ms. Lambert's disqualification to maximize the harm it would cause Mr. Byrne. According to Mr. Byrne, it "is telling" that Magistrate Judge Upadhyaya disqualified Ms. Lambert "just before two critical depositions were to be taken by Dr. Byrne's counsel." Mot. at 18–19. This timing, Mr. Byrne argues, "is an indictment of the Magistrate's willingness to bend to the will of

Dominion." *Id.*

Obviously, Magistrate Judge Upadhyaya did not time the disqualification order to maximally harm Mr. Byrne. And the accusation that Magistrate Judge Upadhyaya has a "willingness to bend to the will of Dominion" is baseless and offensive.

*Second*, Mr. Byrne accuses Magistrate Judge Upadhyaya of "steamroll[ing]" over Mr. Byrne's rights by refusing to stay this matter while his challenges to the disqualification order were pending. Mot. at 20–22.

Magistrate Judge Upadhyaya clearly did no such thing. Instead, she denied Mr. Byrne's motion to stay discovery because it was baseless, explaining that Mr. Byrne failed to show any hardship caused by Ms. Lambert's disqualification because Mr. Byrne is entitled to retain new counsel or proceed *pro se*. Second Minute Order of Aug. 23, 2024. Notably, Mr. Byrne is more than capable of doing either: He is a Dartmouth-educated Marshall Scholar with a PhD from Stanford and the former CEO of a major international corporation, Dkt. No. 36, Answer at ¶ 9; and he has gloated about having "unlimited funds" to litigate this case (Dkt. No. 142-2). Thus, any prejudice Mr. Byrne has suffered from his refusal to comply with the disqualification order and retain new counsel or proceed *pro se* is entirely of his own making.

In sum, Mr. Byrne's baseless attacks, via Ms. Lambert, on Magistrate Judge Upadhyaya only bolsters the Court's decision to disqualify Ms. Lambert.

## V.    CONCLUSION

Dominion fully acknowledges that disqualification is rarely warranted and should be granted (absent a conflict of interest) only "in cases of truly egregious misconduct likely to infect future proceedings." *Koller*, 737 F.2d at 1056. But those were exactly the circumstances presented to the Court. For that reason, and the reasons explained above, the Court should deny Mr. Byrne's motion for reconsideration.

Dated: December 2, 2024

Respectfully submitted,

By:     */s/Davida Brook*
        Laranda Walker (D.C. Bar No. TX0028)
        Mary K. Sammons (D.C. Bar No. TX0030)
        Jonathan Ross (D.C. Bar No. TX0027)
        Elizabeth Hadaway (*Admitted pro hac vice*)
        **SUSMAN GODFREY L.L.P.**
        1000 Louisiana St., Suite 5100
        Houston, TX 77002
        Tel: (713) 651-9366
        Fax: (713) 654-6666
        lwalker@susmangodfrey.com
        ksammons@susmangodfrey.com
        jross@susmangodfrey.com
        ehadaway@susmangodfrey.com

        Stephen Shackelford, Jr. (D.C. Bar No. NY0443)
        Eve Levin (D.C. Bar No. 1672808)
        Mark Hatch-Miller (*Admitted pro hac vice*)
        Christina Dieckmann (*Admitted pro hac vice*)
        George R. El-Khoury (*Admitted pro hac vice*)
        **SUSMAN GODFREY L.L.P.**
        One Manhattan West, 50th Floor
        New York, NY 10001
        Tel: (212) 336-8330
        sshackelford@susmangodfrey.com
        elevin@susmangodfrey.com
        mhatch-miller@susmangodfrey.com
        cdieckmann@susmangodfrey.com
        gel-khoury@susmangodfrey.com

        Davida Brook (D.C. Bar No. CA00117)
        **SUSMAN GODFREY L.L.P.**
        1900 Avenue of the Stars, Suite 1400
        Los Angeles, CA 90067
        Tel: (310) 789-3100
        dbrook@susmangodfrey.com

        Edgar Sargent (*Admitted pro hac vice*)
        Katherine Peaslee (*Admitted pro hac vice*)
        **SUSMAN GODFREY L.L.P.**
        401 Union Street, Suite 3000

17

Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com
kpeaslee@susmangodfrey.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/Davida Brook*