# EXHIBIT 1

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

US DOMINION, INC., et al.,         Civil Action
        Plaintiffs,            No. 1:21-2131

      vs.                   Washington, D.C.
                               October 17, 2024

PATRICK BYRNE,

       Defendant.             10:58 a.m.
_____ /


### TRANSCRIPT OF MOTION HEARING
### BEFORE THE HONORABLE CARL J. NICHOLS
### UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiffs:**      **Christina Dieckmann**
                             SUSMAN GODFREY LLP
                              One Manhattan West, Ste 50th Fl
                              New York, NY  10001
                              cdieckmann@susmangodfrey.com

                              **Davida Brook**
                              SUSMAN GODFREY LLP
                              1900 Avenue of the Stars, Ste 1400
                              Los Angeles, CA 90067
                              dbrook@susmangodfrey.com


**For the Defendant:**      **Stefanie Lambert Junttila**
                              LAW OFFICE OF STEFANIEA LAMBERT PLLC
                              400 Renaissance Center, Ste Fl 26
                              Detroit, MI 48243
                              attorneylambert@protonmail.com


**Reported By:**          **Lorraine T. Herman, RPR, CRC**
                              Official Court Reporter
                              U.S. District & Bankruptcy Cts.
                              333 Constitution Avenue NW
                              Washington, D.C. 20001
                              lorraine_herman@dcd.uscourts.gov


\*\*\* Proceedings recorded by stenotype shorthand.
\*\*\* Transcript produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3     civil case year 2021-2131, *US Dominion, Inc., et al. v.*

4     *Patrick Byrne.*

5          Counsel, please come forward and introduce

6     yourselves for the record, beginning with the plaintiffs.

7          **MS. BROOK:**  Good morning, Your Honor.  May it

8     please the Court, Davida Brook on behalf of the Dominion

9     plaintiffs.  And with me today is my colleague, Christina

10    Dieckmann.

11          **THE COURT:**  Good morning, Counsel.

12          **MS. LAMBERT:**  Good morning, Your Honor.  Stefanie

13    Lambert Junttila, on behalf of Dr. Byrne.

14          **THE COURT:**  Counsel.

15          We are here on Mr. Byrne's objections to the

16    magistrate judge, a memorandum opinion and order

17    disqualifying counsel; that is, I guess, Dr. Byrne's

18    objection.

19          So, Ms. Lambert, why don't you come up and make

20    your argument.

21          **MS. LAMBERT:**  Thank you, Judge.

22          **THE COURT:**  I apologize.  Do you prefer,

23    Ms. Lambert?  Ms. Lambert --

24          **MS. LAMBERT:**  Ms. Lambert, Your Honor.

25          **THE COURT:**  Thank you.

1          **MS. LAMBERT:**  Your Honor, my client, Dr. Byrne,

2    has been very clear from the beginning that he has replaced

3    his prior legal counsel, due to my unique experience as an

4    attorney.

5          I am a former prosecutor.  I was a prosecutor for

6    a long time doing complex criminal litigation on behalf of

7    the Wayne County Prosecutor's Office.  I have significant

8    trial experience doing very complex criminal cases.

9          I was then in private practice and became an

10   election law specialist.  I have unique experience regarding

11   election law matters and how election equipment works, which

12   is exactly why he hired my firm to represent him on this

13   case.

14         Throughout the process, Your Honor, the timing of

15   Dominion's supplemental request to remove me as counsel, it

16   was done in a key timeframe --

17         **THE COURT:**  So, I read your papers.  I understand

18   you have an argument about the timing of this and whether

19   you had the opportunity to respond to supplemental filings

20   and the like.  But I think you should start at the top,

21   which is, How did the magistrate judge get it wrong here?

22         **MS. LAMBERT:**  Sure, Your Honor.

23         I brought with me today, to satisfy the Court's

24   question as to my fitness to practice, a certificate from

25   the Michigan State Bar.

1      **THE COURT:** That's not what my question is.

2      **MS. LAMBERT:** Sure.

3      **THE COURT:** We are here on your appeal,

4      effectively, from what the magistrate judge decided.  What

5      did she get wrong and why?

6      **MS. LAMBERT:** Your Honor, she was misled by

7      Dominion's counsel.

8      **THE COURT:** How?

9      **MS. LAMBERT:** Okay.

10     The magistrate, while I appreciate she can only

11     make the best decision in every moment, I was not able

12     to — be considered and she cited in her opinion specific

13     facts that Dominion put forth in its supplemental briefing,

14     that I was not able to respond to nor was a hearing held on.

15     **THE COURT:** So you had an opportunity to tell me

16     how she got it wrong.  I've read your filings.  Walk me

17     through, with specificity, what she got wrong and why.

18     **MS. LAMBERT:** Sure.

19     There was substantial weight given to Dominion's

20     incorrect allegations regarding statements made regarding my

21     client.  I'll start with that.

22     While my client does not have a gag order on this

23     case, he is a very, very successful businessman, and he has

24     right to free speech.  He made many statements, and they

25     misled the Court on what his statements specifically were.

1    And if there is an allegation to my client violating the

2    Court Order --

3            **THE COURT:**  Again, just tell me — how about this.

4            **MS. LAMBERT:**  Sure.

5            **THE COURT:**  Point me, with specific findings,

6    let's start with facts, findings by the magistrate judge,

7    here, that you say were incorrect.

8            **MS. LAMBERT:**  Sure.

9            Dominion cited in its brief that I made violations

10   of the protective order by making statements on podcasts or

11   public statements; and that is false.

12           I believe that I did cite that in my brief for the

13   Court, where I specifically said that I cannot violate the

14   protective order, and I will not make statements.  So that's

15   a material misstatement of fact by Dominion that the

16   magistrate relied upon.  I think that is very, very

17   significant.

18           It was done during a key time, when we were in the

19   middle of depositions.  And depositions were canceled

20   because I was being so effective in those depositions.

21           **THE COURT:**  Did you provide, or did someone

22   working on behalf of Mr. Byrne provide, people outside of

23   the litigation with passwords that allowed them access to

24   discovery materials?

25           **MS. LAMBERT:**  Your Honor, not people.  Law

1    enforcement did a --

2         **THE COURT:**  They are people.  Did those people,

3    those law enforcement persons...

4         So you are admitting today, that someone acting on

5    behalf of Mr. Byrne, perhaps you, provided to certain law

6    enforcement officials passwords that enabled them to access

7    the database containing confidential materials produced by

8    Dominion?

9         **MS. LAMBERT:**  Your Honor, not outside people.

10        **THE COURT:**  I said law enforcement.

11        **MS. LAMBERT:**  Right.  So I can --

12        **THE COURT:**  To whom --

13        **MS. LAMBERT:**  -- answer this in two parts.

14        **THE COURT:**  How about this.  To whom did you

15   provide access to the database containing materials produced

16   by Dominion?

17        **MS. LAMBERT:**  The only access that has been

18   provided is anyone working for my office, which Dr. Byrne is

19   entitled to when he hires my office, to have a team working

20   under me, working on his case in order to provide an

21   effective defense.  That was done.  And then when it was

22   reported to law enforcement, the very, very serious law

23   violations, a chain of custody backup, I was told, needed to

24   take place to prove that it actually came directly from

25   Dominion.

1          And this is not fictitious.  There's a current

2     indictment --

3          **THE COURT:**  You didn't really answer my question.

4          **MS. LAMBERT:**  Oh, okay.

5          **THE COURT:**  Did you, or someone acting on your

6     behalf, provide to the sheriff, whose name I don't recall,

7     or someone else not in this case, direct access to the

8     database containing Dominion discovery materials?

9          **MS. LAMBERT:**  Within my office, yes.  I had

10     individuals working on this matter.  I did provide access to

11     law enforcement to do what I was told was a chain of custody

12     backup.  That did take place to protect chain of custody of

13     the evidence of criminal acts that are — some are currently

14     under indictment.

15          **THE COURT:**  Am I right, and you acknowledge, I

16     think, that you did not seek permission from me or the

17     magistrate judge to provide that access?  Correct?

18          **MS. LAMBERT:**  I don't believe that I can,

19     Your Honor.  And the reason, I believe --

20          **THE COURT:**  I didn't ask "can".  You did not ask.

21          When I ask the questions, I need direct answers.

22          Do you admit that that access, that you just said

23     and acknowledged you provided, you did not ask me or the

24     magistrate for permission before providing that access.

25          **MS. LAMBERT:**  That answer requires two parts,

1    Your Honor.

2             **THE COURT:**  Just answer my question first.  Did

3    you ask for permission before you did so?

4             **MS. LAMBERT:**  As I disclosed when I was here

5    before the magistrate in March, I told her I did not ask

6    permission.  So I've already admitted that.

7             **THE COURT:**  I'm asking my own questions.  I need

8    direct answers.

9             Okay.  So the answer is, No, you did not.

10             **MS. LAMBERT:**  Right.

11             **THE COURT:**  Now you can tell me why you think that

12    that's okay.

13             **MS. LAMBERT:**  Right.

14             And I told her.  And she said if there's going to

15    be any further disclosure to law enforcement or Congress, to

16    come back and ask for permission, and that I agreed to.

17    Then subsequent briefs were filed by Dominion.

18             I did ask permission.  I was demonstrating to the

19    magistrate where she was misled by Dominion in the

20    supplemental briefs, that I didn't have an opportunity to

21    argue.  I filed motions to lift the protective orders.  So

22    my actions were consistent with what took place at the

23    hearing in March of '24.

24             I filed motions to lift, that were not heard.  I

25    was requested by the Michigan legislature, by the Montana

1    legislature, I think by Arizona -- I was requested to

2    provide the documentation because they had ongoing

3    investigations into Dominion, and I filed those requests

4    with the Court.  They were not heard.

5         So I took several steps, after that hearing, to

6    demonstrate to the magistrate that I was complying.  The

7    supplemental briefing -- it was my impression, since we were

8    in the heart of these intense depositions, that the Court

9    would see through exactly what Dominion was doing.

10         In my opinion, Dominion was jumping up and down,

11    doing anything it could, to get Dr. Byrne's specialized

12    attorney, that understood the unique questions to ask in the

13    depositions, removed.

14         **THE COURT:**  Okay.  So let's go back to the top.

15         Tell me again, the other errors that you believe

16    the magistrate judge made here.

17         **MS. LAMBERT:**  Your Honor, she went through the

18    brief that Dominion filed, the second and third, and made

19    factual findings that were false.  And so I'd love to be

20    able to respond to those in writing, but she didn't grant

21    leave to do so.

22         **THE COURT:**  No.  No.  Wait.  Wait.  We are here.

23         **MS. LAMBERT:**  Right.

24         **THE COURT:**  You're telling me how she got things

25    wrong --

1

2          **MS. LAMBERT:**  Right.

3          **THE COURT:**  -- factually and legally.

4          Start with factual.  Tell me what her fact

5   findings are that were incorrect.

6          **MS. LAMBERT:**  Those briefs, Your Honor, did not

7   allege that I, as the attorney, violated -- but for a

8   misstatement, that I had violated the protective order on a

9   podcast or some other public-speaking media event.  That was

10  false.  I said on those podcasts and media events that I

11  can't violate the protective order.  So that's the analysis

12  with regard to Dr. Byrne's counsel.  Okay?

13         They made many, many statements about my client's

14  statements.  I don't believe my client violated the

15  protective order in any way.  But nonetheless, that's not

16  the standard to remove his attorney.  If Dr. Byrne has

17  violated some type of order, let's set a contempt hearing

18  and bring Dr. Byrne in.

19         **THE COURT:**  Okay.  So let me make sure I

20  understand it.  Your principle argument about the magistrate

21  judge's opinion is that she erred in how she interpreted

22  your appearances on certain podcasts.

23         **MS. LAMBERT:**  I don't believe she looked at them.

24  I think she relied upon what Dominion represented, which was

25  a material misstatement of fact.

1      **THE COURT:** Right. I understand that. I

2  understand that's your position. My question is, what else

3  did she err in making findings about your conduct?

4      **MS. LAMBERT:** Your Honor, I believe that if law

5  enforcement requests something of a law office, okay,

6  whether it's by search warrant or other means, as it relates

7  to a criminal investigation that it's conducting, it

8  violates the principles of a criminal investigation, because

9  notifying, especially publicly, a court impedes that

10 office's ability to investigate.

11      **THE COURT:** That's an argument about why what you

12 did was not prohibited by the protective order or was

13 otherwise justified.

14      My question is, with respect to the "what

15 happened" facts -- not the arguments, the facts -- what did

16 Magistrate Judge Upadhaya get wrong about your conduct? On

17 the facts.

18      **MS. LAMBERT:** She relied upon what Dominion

19 represented with regards to my client. She stated that I

20 came on the case in order to violate the protective order

21 and disseminate Dominion's documents, which couldn't be

22 further from the truth.

23      When Dominion filed this case, it was designed to

24 silence. At the time it was filed, there were many criminal

25 investigations already ongoing as it relates to the Dominion

1    employees and former Dominion employees.  There are

2    currently 23, Your Honor, employees with Dominion currently,

3    that were with Smartmatic.  There's a Smartmatic indictment

4    out of Florida, currently pending with the DOJ, that

5    involves four individuals that are tied to and still working

6    with the same Dominion employees that have filed this case.

7         **THE COURT:**  Right.

8         So your argument boils down to the proposition

9    that if you had strong evidence or evidence of criminal

10   conduct, that you needn't not have come to me, to have me

11   approve your disclosure to law enforcement, because you are

12   free to do so under the protective order without coming to

13   me, even ex parte.

14        **MS. LAMBERT:**  Your Honor, at that point, I

15   believed that it was not covered by the protective order;

16   and that it was my ethical obligation, and it was not a

17   violation of the protective order.

18        In March I told the judge, even though I don't

19   agree with it, that I would come to lift the protective

20   order in the future, if that's what the Court ordered me to

21   do.  And then I subsequently demonstrated that I would do

22   exactly that by filing multiple motions to lift the

23   protective order.  They weren't heard by the magistrate.

24   They weren't docketed and they weren't even considered.  So

25   at that point I demonstrated I would follow exactly what the

1    Court ordered.

2          **THE COURT:**  I understand you have an argument

3    about how your subsequent conduct, perhaps, makes

4    disqualification a hasher-than-necessary remedy.

5          My question goes to your original view, which I

6    guess you still hold, which is that the protective order, as

7    it was framed and entered by me, by the way, did not require

8    you to seek approval before disclosing this information.

9    Because you did that and you think that that was appropriate

10   under the protective order.

11         And the corollary to that is that you must have

12   believed that if you came to me and disclosed supposedly

13   criminal conduct, that I would not have permitted its

14   disclosure to law enforcement.

15         **MS. LAMBERT:**  I don't agree with that, Your Honor

16   and I'd like to explain.

17         It's not that I don't think the Court would have

18   permitted disclosure to law enforcement.  I don't know how

19   the Court could have heard the matter without disclosing it

20   to the criminals that were being investigated.  So that's

21   why there's a separation between a civil action and a

22   criminal action.  Because once a criminal is informed that

23   they are under investigation, evidence starts to disappear,

24   there is obstruction of justice.  Many of these Dominion

25   employees, they've represented to Congress and otherwise

1    that this is a U.S.-based company, and that's false.  The

2    U.S. part of this is a front.  This is an international

3    company.  It's Canadian.  It's Serbian.  It's Chinese.  It's

4    Venezuelan.  Okay?  So lots of evidence would have

5    disappeared.

6           In my opinion, this is possibly the most

7    significant criminal action that has ever taken place in

8    U.S. history.  So it's not that I didn't believe the Court

9    would --

10          **THE COURT:**  That can't possibly be true.

11          **MS. LAMBERT:**  Well --

12          **THE COURT:**  Worse than killing people?  Worse than

13   genocides?

14          **MS. LAMBERT:**  The vote is sacred.  If it's not a

15   US-based company — I don't want to — unless the Court would

16   like to hold a hearing on what is actually happening within

17   Dominion and how the elections are being conducted, I'd be

18   happy to explain that.  But I don't think the Court wants to

19   go there.

20          There is a very serious federal investigation that

21   has started with money laundering and bribery, as it relates

22   to these Dominion employees.  I believe --

23          **THE COURT:**  Do you have any experience in

24   defamation suits?

25          **MS. LAMBERT:**  I do, Your Honor.

1          **THE COURT:**  What is that?

2          **MS. LAMBERT:**  I've worked as a civil attorney with

3    other attorneys for a number of years.

4          **THE COURT:**  Have you been lead counsel in any

5    defamation suit before this one?

6          **MS. LAMBERT:**  No.

7          **THE COURT:**  This is -- I mean, I am getting to the

8    ultimate question of why, or a question about why it's so

9    critical for you to represent Dr. Byrne here.  This is a

10   defamation case.

11         **MS. LAMBERT:**  That's correct.  And truth is a

12   defense, Your honor.

13         **THE COURT:**  Yes.

14         **MS. LAMBERT:**  It's an affirmative defense.

15         **THE COURT:**  Yes.

16         **MS. LAMBERT:**  And without understanding the

17   technicality of a subspecialty of how election equipment

18   works and how this organization works, which happens to be

19   committing very serious crimes, which I have a lot of

20   experience with as a former prosecutor, Dr. Byrne can't

21   provide that truth defense.

22         My questions were key.  They were so key in these

23   depositions, the day following John Poulus's deposition,

24   Goran Obradovich, a lead engineer for Dominion, the

25   deposition was canceled.  They feigned that he's sick.  He's

1       in Serbia.  He's their lead engineer.  The lead engineer

2       that we have admissions remoted in to the United States

3       election equipment and made modifications prior to

4       certification for November 2020.  That is critical.

5               There have been admissions that there was vote

6       changing.  I have been able to accomplish a lot in these

7       depositions for Dr. Byrne that a jury will hear.  And I

8       understand.  And I am able, as a very serious trial

9       attorney, to win the case for Dr. Byrne.

10              **THE COURT:**  Are there other errors that the

11      magistrate judge made that you would like to point me to?

12              **MS. LAMBERT:**  Uh, I --

13              **THE COURT:**  Specific errors.

14              **MS. LAMBERT:**  The most outrageous error that I

15      believe the magistrate came to -- as a result of being

16      misled.  Right?  I think the magistrate was trying to make

17      the best decision that she could possibly make in each

18      moment.  This is a complex case, with many attorneys.  And

19      to be fair to her, she doesn't have the discovery.  She

20      doesn't have the facts.  She didn't attend the

21      depositions -- was that I came on the case with Dr. Byrne to

22      disseminate the information, as if that was my purpose

23      taking the case.  And that couldn't be further from the

24      truth.

25              **THE COURT:**  Can you point me to where, in her

1    memorandum opinion, she finds that fact or says that it was

2    salient to her decision?

3            **MS. LAMBERT:**  She made that statement in her

4    order, Your Honor.

5            **THE COURT:**  I know.  I want you to point me to

6    where.  I know you are saying that.

7            **MS. LAMBERT:**  Yeah.

8            **THE COURT:**  I want you to point me specifically to

9    what the magistrate judge found on this question and where

10   she said "it was a salient part of her decision."

11           **MS. LAMBERT:**  Could we take a break so that I can

12   find it in the documents?  I have three binders.

13           **THE COURT:**  You can try right now.

14           **MS. LAMBERT:**  Okay.

15           **THE COURT:**  I want you to point me to a specific

16   statement, by the magistrate, in the very memorandum opinion

17   and order you are appealing from, that makes the finding you

18   just described and says why it's salient to her decision.

19           I'm not saying it's not the case.  I just --

20           **MS. LAMBERT:**  Sure.

21           **THE COURT:**  -- want you to direct me to it.

22           **MS. LAMBERT:**  It's not in this binder.  Do you

23   mind if I pull it up electronically?  It would be faster.

24           **THE COURT:**  Sure.  Sure.

25           **MS. LAMBERT:**  While I do that, if I may add to

1    that that, that to me is extremely significant because it's

2    showing that as a result of being misled, she has such a

3    bias against Dr. Byrne's counsel.

4        I stood before the magistrate and I said that I

5    would follow her rules and I did.  I filed motions to lift

6    the protective order.  All right?

7        Without giving me a chance to respond, that to me

8    is an outrageous conclusion in her order.  Right?  That, I

9    think, while I think it is significant, Your Honor, guides

10   and gives weight to every other statement that she made.

11       So every other reason that she believed that I had

12   subsequently violated the protective order after standing

13   here in March, that was her basis of thinking that I had

14   done so after being misled by Dominion.

15       **THE COURT:**  Okay.

16       **MS. LAMBERT:**  I will pull up the order right now.

17       (Pause in the proceedings.)

18       **MS. LAMBERT:**  I don't know why my internet won't

19   work in this courtroom, Your Honor.

20       But I think the fact that it was said in the

21   order, carries weight with every other statement that the

22   magistrate relied upon.  And every statement that the

23   magistrate relied upon was utilized from the second and

24   third supplemental briefing, while we were in the heart of

25   depositions.  And I thought that the magistrate would

1    clearly understand, with the motions to lift the protective

2    order filed, that this was antics by Dominion to try and

3    remove me from the case because I was effective.

4         These depositions were key.  I was ready to depose

5    ElectionSource, which is Dominion's contractor in Michigan,

6    where I am intimately familiar with each and every one of

7    the ElectionSource actors, their roles, and what they did in

8    Michigan.

9         In Michigan, ElectionSource provided to the clerk

10   in Antrim County on November 4th, 2020, the version of

11   events as to why the vote flipping occurred.  It was not the

12   Clerk's version of events.  It was provided by Dominion.

13   And we know from Dominion now, in this discovery, that

14   Dominion helped create and modify the expert report that was

15   filed to explain the vote flipping.

16        Then the Secretary of State went and republished

17   it.  The Secretary of State's interrogatories in Michigan

18   said, when she's asked how the tabulations work, I only have

19   a basic knowledge.  You have to ask the vendor and the

20   manufacturer.

21        So the Secretary of State that directs and

22   controls elections in Michigan doesn't even understand how

23   the election equipment works.  It's the expert reports that

24   I'm familiar with, in all of my litigation and

25   representation of commissioners, of law enforcement and

1    private citizens and civil litigation as it relates to

2    elections, as to why I understand and can ask the key

3    questions for Dr. Byrne's truth and affirmative defense,

4    which I've already won.

5              We already have Dominion conceding that they do

6    flip votes.  The votes can change.  And they've actually

7    designed it through their Adjudication software.

8              **THE COURT:**  Can we go back to my core question,

9    which is what if any other errors in the magistrate judge's

10   memorandum opinion and order do you say she made?

11             **MS. LAMBERT:**  Every single statement was relied

12   upon from the second and third supplemental brief.  Her

13   error was not holding a hearing and allowing me explain if

14   she thought I had violated any of the terms and conditions

15   set forth from the March 2024 hearing.

16             I followed exactly what the magistrate said to do.

17   I filed motions to lift those protective orders and they

18   weren't heard.

19             **THE COURT:**  So that is about whether and to what

20   extent you complied with, I'll call it, as it's been called

21   here, "the status quo order."  What about her findings about

22   conduct that occurred before that order?

23             **MS. LAMBERT:**  Her findings were based upon being

24   misled by Dominion in those briefings.  And that's clear

25   when she states that I came on the case to disseminate the

1    documents on behalf of Mr. Byrne, which is outrageous and

2    false.  I stated that in March.  And if she — and I know

3    that that's false because if it was so serious that she

4    thought that that's why I came on the case, I would have

5    been disqualified the day that I was here.

6            She allowed me to conduct and hold depositions of

7    many Dominion employees, from the time of that hearing

8    through the supplemental briefing.

9        **THE COURT:**  So beyond that statement, which you

10   haven't been able to point me to specifically — I think I

11   know what you are talking about, but you haven't been able

12   to quote it for me, what specific fact finding or findings

13   of fact did she make with respect to the period before the

14   entry of the status quo order that were incorrect?

15       **MS. LAMBERT:**  She made numerous comments about my

16   client's statements.  And Dominion misled the Court with

17   numerous comments based upon my client.  First of all, my

18   client does not speak for me.  I speak for my client.  So

19   that's a legal error.  If she thought that my client had

20   violated an order, she needs to bring him in and hold a

21   contempt hearing or put a gag order on the case.  Neither

22   one exists.  He has freedom of speech.

23           So as a result of my actions and what she believed

24   she was relying solely upon what took place in March, which

25   she was satisfied at the time.  She did not remove me from

1    the case.  We held numerous depositions.  And throughout

2    that process, Dominion participated in unethical behavior.

3    There were ex parte communications that took place by email

4    to the Court.  I addressed those.

5            I thought that I was handling it professionally

6    and that she would see through Dominion's behavior

7    throughout that process.

8            **THE COURT:**  So, again, what specific finding did

9    she make with respect to your or Dr. Byrne's conduct, before

10   the status quo order was entered that was wrong.

11           **MS. LAMBERT:**  That I had gone on a podcast and

12   violated the protective order, which is false.  That podcast

13   clearly stated I can't violate the protective order.  I

14   can't talk about that.

15           **THE COURT:**  Okay.

16           **MS. LAMBERT:**  That's what I said.

17           **THE COURT:**  Beyond the podcast, anything else that

18   she got wrong about your conduct or Mr. Byrne's conduct in

19   the pre-status-quo-order period?

20           **MS. LAMBERT:**  Correct.  It's false.

21           **THE COURT:**  No, anything else?

22           What other findings did the magistrate judge make

23   with respect to your or Dr. Byrne's conduct before the

24   status quo order was entered that are wrong.

25           **MS. LAMBERT:**  Well, the one that we've already

1     addressed.  The fact --

2               **THE COURT:**  That's why I said "what other".

3               **MS. LAMBERT:**  That I couldn't find a case stating,

4     essentially, in my opinion, that water is wet.  Right?  I

5     have to report criminal acts.

6               When I was before the magistrate, I gave an

7     outrageous example and she didn't like it.  But I am happy

8     to give it to this Court.

9               **THE COURT:**  I can imagine.  I understand the

10    point, yeah.

11              **MS. LAMBERT:**  My example was, There is a

12    protective order.  We are dealing with documents.  If

13    Dominion had given me a severed head in the box and said it

14    is part of the protective order, am I supposed to bring the

15    box with the head to the Court?  I have to turn it in to the

16    police.  The police have to do an investigation.  By putting

17    this Court in a position to impede, guide or potentially

18    stop a criminal investigation, would be wrong.

19              And that's why, just as a general principle, all

20    contracts.  Right?  There can never be a clause in a

21    contract that says, We waive criminal liability.  That's an

22    invalid clause.  And the reason for that is because you can

23    never impede a criminal investigation.  That's separate.

24    That is something that would be separate from this Court,

25    that this Court couldn't be involved in.

1       **THE COURT:**  So I take it that the argument you are

2  making today is — and I realize I am going to characterize

3  it in a particular way you may not completely agree with,

4  but I think in general you are going to agree with it — that

5  you disagree with the magistrate judge's findings with

6  respect to the pre-status-quo-order period.

7       But even if you didn't have those disagreements;

8  that once the magistrate judge entered the status quo order,

9  the record reflects your attempt to comply with it in all

10  respects.  And as a result, because of that more-recent,

11  more-appropriate conduct, the magistrate judge here should

12  not have disqualified you.  But if she did was going to do

13  anything, she should have done something less.  Is that fair

14  or am I mischaracterizing one of your arguments?

15       **MS. LAMBERT:**  I think that that is close.  And I

16  think that the Court is identifying that the magistrate

17  thought that.  Because she spoke to Dominion at that hearing

18  and said, Disqualification is the highest burden.  And, you

19  know, she's never seen --

20       **THE COURT:**  I'm just trying to understand your

21  argument.

22       **MS. LAMBERT:**  Right.

23       I think the Court is very close.

24       **THE COURT:**  Okay.  Tell me how I got it wrong.

25       **MS. LAMBERT:**  Right.

1          I think that relying upon the misrepresentations

2     in the second and third supplemental briefing, she then

3     changed what we had discussed.  And she was ordering with

4     the status conference order in March.  And she did it to

5     prevent --

6          **THE COURT:**  So you think the magistrate judge

7     misinterpreted her own order by being misled by Dominion

8     about what she had intended.  And as a result, she what, she

9     held you to a higher standard than she should have under her

10    own order?

11         **MS. LAMBERT:**  No.  She did not — if it was so

12    egregious she would have removed me immediately.  But as a

13    result of being misled --

14         **THE COURT:**  It seems to me that what she did, she

15    had before her a set of facts, and she tried to take a step

16    that was less drastic than disqualification, which was to

17    try to see if she could impose further restrictions on

18    parties and counsel, and made an effort at that, and

19    ultimately concluded that that was unsuccessful because of

20    the conduct that happened thereafter.

21         **MS. LAMBERT:**  And that worked because we held

22    depositions.  I was effective in the depositions.  And their

23    second and third supplemental briefing, that I think, you

24    know, gave her certain impressions that were false, that I

25    didn't have an opportunity to respond to, were then relied

1    upon.  And then she went back and made different

2    justifications based upon --

3         **THE COURT:**  Right.  And just so the record is

4    clear, those second and third supplemental briefs that you

5    say you didn't have a chance to respond to, you of course

6    had the opportunity to brief here all the errors that were

7    made by the magistrate judge.

8         What, specifically, did the magistrate judge

9    conclude in her memorandum, opinion and order, that was

10   incorrect, in your view, because of the second and third

11   supplemental briefs?

12        **MS. LAMBERT:**  I listed those in my brief before

13   this Court.  So they are in the written brief.  But I'll

14   give an outrageous example.  My client made some type of

15   statement on some podcast that I don't even think I've ever

16   seen, because he speaks frequently.  He's a public speaker.

17   And it related to Colorado and the Tina Peters' case, in

18   which I had filed a motion to lift the protective order.

19        In that matter, Mike Lindell, who is a

20   co-defendant in this case, had served subpoenas for all 62

21   counties in Colorado that used the Dominion equipment.

22        Right after those subpoenas were served, Dominion

23   notified each and every clerk in Colorado that they needed

24   to do something called a "trusted build."  Tina Peters

25   asked, Will this trusted build delete the data that I am

1    required to preserve by federal law?  And she was told, No,

2    it would not.  She had it preserved before the trusted build

3    and after.  And sure enough, it deleted all of the data.

4         So Dominion, illegally, conspired to delete all of

5    the evidence that would be used in an affirmative defense in

6    the State of Colorado, and there's documents in the motion

7    to lift the protective order, that I asked to lift the

8    protective order, because they were exculpatory to Tina.

9    Dominion was the impetus of the investigation into Tina

10   Peters, because they knew she had the only copy of the

11   evidence.

12        And, in fact, at Tina Peters' sentencing, the A.G.

13   and the local prosecutor said that Dominion didn't have

14   anything to do with it.  There's documentation showing to

15   the contrary.  That's actually false.  That's a lie.  Tina

16   Peters didn't get to use any of the Dominion documentation,

17   showing the conspiracy to go after her in her trial.  We

18   never got to have a hearing on that.

19        So Dr. Byrne did not talk about those documents.

20   He made wild statements about, The truth will come out, or

21   something like that.  He never violated a protective order.

22   But they are not my statements.  They are my client's

23   statements.

24        **THE COURT:**  So I take it you are making two

25   points.  One is, The magistrate judge was wrong to find that

1    Dr. Byrne did something with respect to this Colorado

2    situation that he didn't do.

3         **MS. LAMBERT:**  He did not speak specifically about

4    Tina's document or Dominion's documents at all.

5         **THE COURT:**  And what did the magistrate judge find

6    that you thought was incorrect in that regard?

7         **MS. LAMBERT:**  She didn't hear the motion to lift.

8         **THE COURT:**  No.  No.  No.

9         What did she say in the opinion and what finding

10   did she make that was wrong, in light of your view of the

11   record?

12        **MS. LAMBERT:**  That Dr. Byrne put me on the case to

13   disseminate documents.

14        **THE COURT:**  That is talking about, What did she

15   find with respect to Dr. Byrne's statements about Colorado

16   that was incorrect?

17        **MS. LAMBERT:**  She made statements regarding

18   Mr. Byrne, and I in conjunction, that that was our goal.

19        **THE COURT:**  I know you are making — I think you

20   are making two points.  One is magistrate judge made certain

21   findings that were wrong; and then, second, or really more

22   of an argument, is that Mr. Byrne's conduct should not be

23   conflated with yours.

24        **MS. LAMBERT:**  Correct.

25        **THE COURT:**  I understand that.  I get that second

1  point.  I am trying to figure out the first one, which is,

2  again, What finding did the magistrate judge make, regarding

3  Mr. Byrne's conduct, vis-à-vis the Peters' Colorado

4  situation that was wrong?  The finding?

5          **MS. LAMBERT:**  I don't think she specifically

6  commented on the substance.

7          **THE COURT:**  So that's your best argument for a

8  finding that was incorrect with respect to the

9  post-status-quo-order conduct?

10          **MS. LAMBERT:**  Your Honor, it's very difficult

11  because she was clearly — made comments about the

12  post-status-quo conduct filed in the second and third brief.

13          **THE COURT:**  I have opinion here.

14          **MS. LAMBERT:**  Yes.

15          **THE COURT:**  You are challenging this opinion.

16  This opinion has 22, 23 pages citing of facts citing to the

17  record.

18          **MS. LAMBERT:**  Sure.

19          **THE COURT:**  It doesn't matter to me what might

20  have been said in some brief.  What might have been said in

21  some hearing.  What matters to me is whether this opinion

22  has a factual basis and is legally supported.  I'm trying to

23  get at, What is the problem with the factual findings here.

24          I asked you and keep asking you, What are the

25  specific problems you have with the findings of fact?

1      **MS. LAMBERT:**  Any finding of fact that I

2  subsequently violated a status quo order is false.

3      **THE COURT:**  How?

4      **MS. LAMBERT:**  Because I didn't.  I filed motions

5  to lift the protective order.  I didn't make any statements

6  following the hearing.  It didn't happen.

7      **THE COURT:**  Okay.  And that gets to, I take it,

8  your point that relying on Dr. Byrne's actions, is

9  inappropriate, because those are not your actions.

10      **MS. LAMBERT:**  Correct.

11      **THE COURT:**  Because there are five pages of

12  findings about conduct after the May hearing --

13      **MS. LAMBERT:**  Correct.

14      **THE COURT:**  -- by the magistrate.

15      So you're not actually specifically disagreeing

16  with any of these findings, at least not in a concrete way.

17  You're principally saying, Most of this or at least some of

18  this is conduct by Dr. Byrne, your client; and that conduct

19  should not be imputed to you, for purposes of

20  disqualification.

21      **MS. LAMBERT:**  Correct.

22      And the magistrate makes a statement in her

23  opinion that said I couldn't be his babysitter, which is

24  true.  I am not his babysitter.  I am his attorney.  I am

25  here to argue to the jury, truth as a defense, which we will

1   win.  We've already won in the depositions.

2            His conduct, his statements, if the magistrate has

3   issue with them, she can bring him here for a contempt

4   hearing.  Those should not be held against me.  I put in my

5   brief that I did not violate her status quo order; and that

6   Dominion misled her.  So, you know, I'm understanding she

7   relied upon being misled, but I needed an opportunity to

8   respond to her, and that would have been important.  But now

9   we are here, and I am able to represent that to this Court.

10           **THE COURT:**  All right.  Thank you, Counsel.

11           **MS. LAMBERT:**  Thank you.

12           **THE COURT:**  I will hear from Dominion now.

13  Ms. Brook.

14           **MS. BROOK:**  Good afternoon, Your Honor.

15           **THE COURT:**  It's still morning.

16           **MS. BROOK:**  Morning.

17      (Brief pause.)

18           May it please the Court.  Davida Brook of Sussmann

19  Godfrey, on behalf of the plaintiffs.

20           Your Honor, if I may be honest, I've been

21  struggling a bit with how to approach today's argument

22  before you.  I struggle because I'm frustrated.  Frustrated

23  because we are deep into 2024 and yet individuals like

24  Ms. Lambert and her client, Patrick Byrne, are still using

25  the court system to propagate lies about my client, lies

1    that they know will be believed, and lies that they know

2    will cause very serious harm to good Americans.

3              I struggle because I am sad, sad that someone that

4    took the same oath that I did, that many of us in this room

5    did, to uphold the laws and to protect our constitution,

6    would behave in the way that she has behaved in this case.

7              And I struggle, Your Honor, because I'm angry.

8    I'm angry that in order to set the record straight, my

9    client has had to be revictimized, all over again.  That's

10   not the way the judicial process is supposed to work.  But,

11   Your Honor, I am also hopeful.  I'm hopeful because as

12   Magistrate Judge Upadhaya recognized, Ms. Lambert's actions

13   have consequences, and they will not be tolerated by our

14   justice system.

15             Rather, although Dominion has acknowledged, and

16   acknowledged from day one, that disqualification of an

17   attorney is an incredibly rare result and one that should

18   not be granted with any frequency, the facts here

19   necessitate it.

20             Magistrate Judge Upadhaya issued an incredibly

21   detailed, 61-page decision, that she only published after

22   giving Ms. Lambert 148 days to show that she could right the

23   ship and follow this Court's orders, after her initial and

24   egregious breach.  As detailed in our briefing, Ms. Lambert

25   used those 148 days to do the exact opposite.

1          I heard the Court, that it has reviewed the

2     papers, so I will not go through in detail all the ways in

3     which we believe that Ms. Lambert violated both the initial

4     protective order and the status quo order, to say nothing of

5     the general rules of this court and professional

6     responsibility.

7          Instead, I will try to just focus on, exactly what

8     the Court was trying to focus on, which is that now in this

9     latest round of briefing, another 60-some pages and a full

10    argument before there Court, Ms. Lambert cannot and really

11    does not say a thing about how Judge Upadhaya got it wrong.

12         So turning to just what's been said today and

13    maybe a couple notes about the latest round of briefing, I

14    was listening to Ms. Lambert's argument, and giving her

15    every benefit of the doubt.  I counted seven or so,

16    so-called errors with Judge Upadhyaya's orders.

17         The first was that Dominion misled Judge Upadhyaya

18    that Ms. Lambert said things on a podcast she didn't say.

19    That podcast is part of the record.  Everyone who wants to,

20    can have an opportunity to review it.  We contend it's

21    pretty straightforward; that if you go on a podcast, the

22    purpose of which you know is to talk about the leaked

23    documents, and then the podcast host says to you, We have

24    evidence from Dar Leaf and way more that has not been

25    released, and Ms. Lambert responds, and then he goes,

1    Stephanie, I didn't get it from you.  I got it

2    through — pause — Twitter/X.

3           And Ms. Lambert does nothing to stop him to say,

4    Sir, you are not allowed to talk about this.  The Court has

5    instructed me to do everything in my power to prevent the

6    further discussion and dissemination of these materials.

7    What does she do instead?  She says, I encourage you to go

8    talk to Dar Leaf, because his hands aren't tied.

9           The Court can make its own determination as to

10   whether or not that action, those words, were in compliance

11   with the magistrate judge status quo order.  We contend they

12   were not.  But also, Your Honor, it doesn't matter.  Whether

13   or not she made that statement on the podcast or not, is not

14   necessary to upholding the magistrate judge's order, as she

15   listened dozen of instances in which Ms. Lambert has shown a

16   total and complete disregard for orders and rules of this

17   court.

18          The next objection I heard were very general

19   allegations.  Nothing specific about how what we said, what

20   Dominion put into the record about Mr. Byrne's statements

21   were somehow false.  Again, they were all so general that I

22   can't respond to them with any real specificity myself.  But

23   the one that she did get into a little business of

24   specificity on, this one regarding Ms. Peters in Colorado.

25   I will say, first of all, that came from a supplemental

1   brief that the magistrate judge was clear in her order.  She

2   was not considering and did not rely on.

3          **THE COURT:**  I recall.

4          **MS. BROOK:**  And what was at issue, and the reason

5   that Dominion brought that particular statement by Mr. Byrne

6   to this Court's attention is because he called for the use

7   of piano wires and blow torches against federal judicial

8   officers.

9          The next specific objection that I heard were

10  process arguments.  We filed these supplemental briefs.  A

11  second and a third.  There wasn't another hearing.  She had

12  no right to respond, et cetera, et cetera.  It's all belied

13  by the readily available facts on the record.

14         Judge Upadhyaya bent over backwards, as she

15  detailed in her order, to give Mr. Byrne and Ms. Lambert

16  every opportunity to file surreply after surreply, even

17  after she said no more surreplies would be allowed.  Every

18  time she had an opportunity to file one of those briefs, I

19  waited with baited breath, clicked on the ECF-link.  What

20  are they going to say?  What is going to be in them?

21  Nothing.  Nothing actually contesting the specific facts

22  that Dominion had put into this record.  The same is with

23  the briefing before Your Honor today, nothing about specific

24  facts that they claim are wrong.

25         I will say too, the one specific thing brought up

1    today was aired, discussed, fully vetted by Judge Upadhyaya

2    at a hearing that Ms. Lambert attended and argued.  So she

3    did have an opportunity to address that with the Court.

4         The next thing I heard were these accusations of

5    ex parte communications.  I won't spend long on that other

6    than to point Your Honor to Judge Upadhyaya's order,

7    Page 20, Footnote 12, where she explains very clearly, as

8    Ms. Lambert well knows, what she was talking about was

9    simple instance in which the Court, on the record, told

10   Dominion, with Ms. Lambert there, You filed this as a letter

11   versus a motion, do it the other way around or maybe I have

12   it reversed.

13        **THE COURT:**  Right.  You're too used to litigating

14   in New York City, kind of thing.

15        **MS. LAMBERT:**  Apologies.

16        And then the last — there are two more things.

17   Sorry.  Another thing we heard over and over again was this

18   was surreptitiously done at a particularly important moment

19   in the case to inflict the post possible harm on Mr. Byrne.

20   False.

21        We filed — Dominion filed its motion within days

22   of learning that Ms. Lambert existed in this case and had

23   done the wrong that she admits she did.  There can be no

24   argument that we sat on it or waited to some key moment.

25   And to blame the magistrate judge for giving her nearly 150

1    days to cure her activity to somehow use that against this

2    court is astonishing to me.

3            In my personal view, I wish she would have ruled

4    much more quickly.  But what she clearly did is she gave

5    Ms. Lambert and Mr. Byrne an opportunity to show they could

6    do better going forward and they failed that test

7    repeatedly.

8            Next we heard this reference to Judge Upadhyaya

9    apparently finding that Ms. Lambert was only introduced into

10   this case, brought into this case, for the express purpose

11   of leaking documents.  I think Your Honor knows what

12   language counsel was referring to.  I have it hear and I am

13   very familiar with it.  Because when I read it, I remembered

14   taking note that she did not make that finding.  She was

15   very careful not to, let alone rely on it.  It's at the very

16   beginning of her order, in the introduction, Page 3.  She

17   says, Lambert's repeated misconduct raises the serious

18   concern that she became involved in this litigation for the

19   sheer purpose of gaining access to and publicly sharing

20   Dominion's protected discovery.  But she doesn't find

21   anywhere that that is, in fact, the case.

22           **THE COURT:**  My reading of the opinion, tell me if

23   you disagree with this, is that she made no such finding of

24   fact.

25           **MS. BROOK:**  Agree.

1          **THE COURT:**  And did not rely on that

2     not-found-fact in her conclusions.

3          **MS. BROOK:**  Agree, Your Honor.

4          That, I believe, summarizes any of the factual

5     inaccuracies.

6          **THE COURT:**  Let me ask you this question.

7     Everyone agrees that disqualification is a drastic remedy.

8     And the way I was thinking about this case is, perhaps, had

9     that been the first thing that Magistrate Judge Upadhaya had

10    done, that might have been aggressive, but clearly didn't.

11    She attempted to fix the problem through the status quo

12    order.  So it's not as if disqualification was the first

13    choice.  There was, as you say, a lot of process.

14          Having said that, I think a way of thinking about

15    Ms. Lambert's argument is, Okay.  Stuff happened before the

16    status quo order.  Status quo order happens and let's look

17    at the record after that.  And when we think about the

18    record, post-status-quo order, it's important to distinguish

19    in your mind, Judge Nichols, between what I, Ms. Lambert

20    did, and what my client did.  And you can't really or

21    shouldn't conflate those two things for purposes of thinking

22    about whether disqualification is warranted here.

23          What's your response to that proposition, which is

24    really, at least the way I framed it, and I realize that

25    there are assumptions baked into it and the like.  It's

1    really not about whether or not there were early violations.

2    Let's just almost stake that.  It's, Okay.  Magistrate Judge

3    Upadhaya did get involved, did enter the status quo order.

4    And let's see how the parties and counsel behave thereafter.

5    And I think Ms. Lambert's argument or at least the way I

6    would be thinking about it is, Well, after the status quo

7    order, Ms. Lambert's actions were less problematic than they

8    might have been before.  And that may or may not be true

9    with respect to Dr. Byrne, but you shouldn't combine them.

10         **MS. BROOK:**  So I will feel compelled to address

11    some of the assumptions baked in, but to start by just

12    answering your question directly.

13              **THE COURT:**  Okay.

14         **MS. BROOK:**  It's hard to compete with

15    Ms. Lambert's conduct pre-status-quo order.  I think that

16    conduct in and of itself requires disqualification, which I

17    realize is a severe result.  But her conduct, her unique,

18    specific conduct, post-status quo order absolutely

19    reinforces that decisions.  And there were numerous things

20    that Dominion pointed out that Ms. Lambert did, perhaps with

21    the help of Mr. Byrne, but that Ms. Lambert did that again,

22    despite 2500 pages of briefing, she has not disputed.

23              To name just a few, right, she 100 percent ignored

24    the Court's order to take down the publicly filed documents

25    that Ms. Lambert filed in her case.  They are still up

1    there.  And the only excuse we got is that her attorney

2    says, He can't do it because, Woe is him.  They are too

3    salacious.  They are too important.  So file them under

4    seal.  The Court still has them.  So she did that.  She

5    submitted her verification late.  But let's get into the

6    real stuff that the Court did consider.  I am trying to get

7    my supplements correct.

8            She helped orchestrate the improper service of

9    John Poulus with a deposition, completely improper,

10   subpoena, as he was walking into a deposition in this case.

11   She colluded with other individuals to have these various

12   subpoenas served on her, so that she could circumvent the

13   Court's protective order.  She still, to this day, has not

14   filed a proper objection to any of those subpoenas, despite

15   Dominion's repeated request to do so, and despite the

16   Court's interim orders telling her to do so.

17           It just keeps going, Your Honor.  As I was

18   preparing for today's oral argument, I was looking again at

19   the exhibits that Ms. Lambert attaches to this motion, the

20   motion that we are on today.  Exhibits 1, 2 and 3 are

21   letters from state senators or legislators or the like,

22   asking for Mr. Poulus's transcript from his deposition.

23   Because, again, she just keeps going, trying to find ways to

24   circumvent the protective order, even after the status quo

25   order.

1          And we've already discussed in our briefing why

2    those letters are plainly improper or, frankly, don't

3    necessitate her giving this deposition — giving the

4    deposition transcript to these folks, without first coming

5    to this Court and following the process.

6          But what I noticed today is they were clearly all

7    written by the same person.  Not only do they include almost

8    the same language, they include the same typo, Your Honor.

9    Despite coming from, I think, the State of Michigan, the

10   State of Arizona and the State of Montana, they were clearly

11   written in conjunction.  Same person.  Someone was giving a

12   template.  And they literally include the same typo.  The

13   date of compliance is December, date, year and the space is

14   missing between the date and the year, and it's missing in

15   all of them.  So she just keeps going.

16         Yes, she's getting cleverer about how to

17   circumvent the protective order.  But it's clear that her

18   intent is not to follow this Court's rules.  When you

19   combine that with the truly egregious misconduct that

20   happened before the status quo order, there is no other

21   possible solution.

22         I don't — I genuinely, honestly, don't know how I

23   can go forward and litigate this case if she's on the other

24   side.  Every single email I write, every question I ask at a

25   deposition, every time I ask one of my clients to put

1    themselves out there, I am going to be concerned for,

2    frankly, their physical safety.

3            I was mentioned, not by name because he couldn't

4    bother to remember it.  I was mentioned by Mr. Byrne in his

5    rant, in the same rant where he talks about piano wires and

6    blow torches, suggested I not be so emotional in court.  I

7    probably failed that test today.

8            But I do want to take a second to go back to the

9    original misdeed, Your Honor, if I can.  Because that's her

10    other argument.  This general, I had a right to expose

11    criminal activity.  Of course Dominion disagrees with

12    everything she has said factually about what Dominion has or

13    has not done.  I will say it for the record.

14            But the idea that she felt compelled to share

15    certain documents with law enforcement; and that that's why

16    she did what she did, is not believable.  It's not

17    believable because, one, she did not tell the other

18    attorneys she was working with before she did it.

19            It's not believable because, two, she herself

20    filed --

21        **THE COURT:**  Do you mean attorneys at her firm or

22    attorneys at Dr. Byrne's former counsel, who withdrew, as I

23    understand it, essentially the day that they determined that

24    there had been a disclosure.

25        **MS. BROOK:**  I mean the latter, Your Honor.  But

1    those attorneys were Mr. Byrne's then counsel when she

2    hatched the plan to give up these documents and she withheld

3    it from them too.

4            Two, she filed the documents publicly.  Why does

5    she need — these two things just don't match.  If you needed

6    to give the documents to law enforcement for an

7    investigation, why then did you file them publicly in your

8    own case?

9            Three, and this one is critical.  She didn't say,

10   Dar Leaf, here is the email.  It shows that they did X, Y

11   and Z.  Have it.  That's not what she did.  She gave Dar

12   Leaf, and I believe many others, access to the entire

13   document repository, a user name and a password so that they

14   could sift through it at their will.

15           That is not what she is saying she did.  That is

16   not finding a "severed head" and handing it over.  That's

17   literally handing over the entire document database.  It

18   doesn't comport with what she claims was her good-faith

19   basis for doing this.

20           **THE COURT:**  I am not suggesting this is a

21   particularly material question, but I was curious about it,

22   in any event.

23           As I recall, there were a number of tweets about

24   the database, perhaps there were communications about the

25   password, the user name and the like.  Does whoever hosts

1    the database know how many or can they find out how many

2    unauthorized accesses there were?

3         **MS. BROOK:**  It's a great question, Your Honor, and

4    it is one that we asked Ms. Lambert, literally the first day

5    we found out about the breach.  We said, Can you please work

6    with your data vendor to give us an accounting of who logged

7    in when and what was downloaded when?

8         Because to this day I still don't know what

9    Sheriff Dar Leaf and others have.  I know what they've

10   posted online.  But there is very good reason to believe

11   that's not the full scope of what they have in their

12   possession and they refused.  The McGlinchey firm

13   disappeared.  And they said, you know, We are not in this

14   anymore.

15        Even though the protective order requires that you

16   provide that kind of accounting, it's in it, so you ask for

17   further violations of the protective order.  This is one we

18   call out in our brief.  She won't give it to us.

19        So, yes, it's possible.  But, Your Honor, it would

20   not be sufficient in this case and here's why.  Let me say

21   why.

22        **THE COURT:**  No.  No.  I am mostly curious but,

23   yeah.  Okay.

24        **MS. BROOK:**  The way she did this, it's not like

25   she gave sheriff Dar Leaf his own password.

1          **THE COURT:**  I understand.

2          **MS. BROOK:**  She gave him her password.

3          **THE COURT:**  Right.

4          **MS. BROOK:**  So even when we get that accounting,

5     which I hope we get as part of this order, I won't be able

6     to know, Were these documents downloaded by Ms. Lambert?

7     Were they downloaded by one of associates?  Were they

8     downloaded by the Tina Peters' attorneys who subpoenaed

9     everybody?  Where they downloaded by Sheriff Dar Leaf?

10    Patrick Colbeck?  Mike Lindell?  I don't know.

11         **THE COURT:**  Right.  You'd know that someone using

12    that user name downloaded documents on a particular time.  I

13    suppose if one really cared one could find out IP addresses

14    and the like, but I understand the point.

15         **MS. BROOK:**  Even that, Your Honor, is difficult.

16    Mr. Byrne uses a particular email service provider that is

17    known for having difficult-to-trace IP addresses and all of

18    that.

19              In any event, Your Honor, yes, we asked for that

20    information.  We asked for the same information Your Honor

21    asked Ms. Lambert today, which the Court did not get a

22    straight answer to, which is, Who is the complete list of

23    folks who initially received access to these documents?  And

24    then, frankly, I'd love to know, because I believe

25    Ms. Lambert knows some of it, Who else has it now?

1    Obviously she doesn't know who of the hundreds of thousands

2    of Twitter users downloaded this, because it's up there

3    still available for download.  But I guarantee you she knows

4    other individuals who have made a point of downloading it.

5        **THE COURT:**  Ms. Lambert suggested, maybe even more

6    than suggested, as you heard, part of the plaintiff's effort

7    here, plaintiff's effort here is to get her removed from the

8    case because of how certain depositions went.  And I just

9    wanted to make sure you had an opportunity to respond to

10   that point.

11       **MS. BROOK:**  Thank you, Your Honor.

12       I have attended depositions that Ms. Lambert

13   questioned at.  I can assure you that the reason we moved,

14   and the reason that we want this relief has nothing to do

15   with her success at those depositions.  Is it has nothing to

16   do with her so-called expertise in election law or election

17   systems.

18       Ms. Lambert has not bothered to show up to a

19   single deposition in person.  She has not asked a single

20   question in person.  She zooms in.  I believe there is only

21   one deposition where she even bothered to come on camera for

22   her questioning; and that was only after I sent her an email

23   in advance requiring that she do so, because previously she

24   was just a black box.

25       As to the more general allegations of the fact

1    that we took down depositions, in response to her

2    questioning, it's the exact opposite.  It was either the

3    night of or the day after Magistrate Judge Upadhyaya issued

4    her order, disqualifying Ms. Lambert effective immediately,

5    Dominion did email all counsel to say, Hey there is a couple

6    remaining Dominion depositions left.

7            Most of them had happened by that point, but there

8    were a couple left.  We said, We need to push these out so

9    that Mr. Byrne has an opportunity to get counsel, if he

10   wants counsel.  That's why we pushed some of them out.  Not

11   because she had done such a good job that we were scrambling

12   to come up with a new strategy.

13           What happened was, the other defendants objected,

14   because they wanted to wrap things up.  So we ended up

15   wrapping things up on a very tight schedule and invited

16   Mr. Byrne to join all of those depositions, should he want

17   to do so, or invited him to have his old attorneys join

18   those depositions, if he wanted to do so or, of course, get

19   new attorneys.

20           And I know the Court knows this, but for the

21   record, we are not dealing here with an indigent defendant,

22   who cannot find a replacement attorney should he want one,

23   even for the short period of time while his appeal is

24   pending.

25           Mr. Byrne claims to be worth hundreds of millions,

1    if not a billion of dollars.  He has bragged publicly about

2    how he is funding various election litigations all over this

3    country, and he had every opportunity, had he wanted to, to

4    simply get another attorney in there to cover some of these

5    depositions or move to stay the case.

6            **THE COURT:**  This is a question I should know the

7    answer to but I'm, perhaps, blissfully ignorant about it.

8    Where does the case or where does discovery stand,

9    generally, across the matters?

10           **MS. BROOK:**  So the parties worked really hard in

11   this case, as I think the Court does know and was involved

12   in some of the earlier decisions, to coordinate depositions

13   and document production so that it would only have to happen

14   once versus five times.  And that took a lot of work.  And

15   it's largely worked.  And with some exceptions.

16           All of the depositions of Dominion individuals are

17   pretty much wrapped or will be wrapped by the end of this

18   month.  All of the depositions, again with some exceptions,

19   of the OAM parties, and I believe the Powell and Defending

20   the Republic parties are largely done.

21           There are some additional depositions of Giuliani,

22   My Pillow/Mike Lindell and then, of course, Patrick Byrne,

23   that will need to happen.  And the Court has ordered that

24   those take place by December 13th, 2024.

25           So we would like to wrap up all of those

1    depositions by December 13th, 2024.  There's a number that

2    need to happen, including of Mr. Byrne, who as I preview, I

3    think is going to say, I can't come to sit for a deposition

4    in the United States of America and refuse to do so.  But

5    that will be a fight for another day.

6              **THE COURT:**  We will cross that bridge.

7              **MS. BROOK:**  But that's where we are at.  Discovery

8    is nearly wrapped up.  There are some straggler discovery

9    that needs to take place.  The Court, literally just -- is

10   it this week or last week?  Days are hard.  This week or

11   last week ordered it be rapped up by December 13th, 2024.

12   And we submitted that schedule to Magistrate Judge Upadhaya

13   last night.

14             **THE COURT:**  Thank you.  Anything else you'd like

15   to add?

16             **MS. BROOK:**  I'll just reiterate, Your Honor.  We

17   have understand the severity of the relief that we are

18   requesting for, here.  But I really do believe that what we

19   have before us is an attorney who is unable or, frankly,

20   unwilling to follow the rules of this court, to follow the

21   orders of this court, who has already irreparably harmed

22   these litigations.  And who's continued involvement in these

23   cases will necessarily cause future harm, if she's allowed

24   to stay on the docket.

25             **THE COURT:**  Thank you, Counsel.

1          Ms. Lambert.

2          **MS. LAMBERT:**  Thank you, Your Honor.

3          There are a number of things that I would like to

4    respond to.  She admits during the podcast that I said the

5    words "my hands were tied."  I did not discuss --

6          **THE COURT:**  Who is the "she" in your statement?

7          **MS. LAMBERT:**  Ms. Brook.  Right?

8          **THE COURT:**  Okay.

9          **MS. LAMBERT:**  She addressed that with the Court

10   today.  So she is admitting I said, "My hands were tied."

11         I have many clients with election-related causes,

12   some with Dominion.  And the Court should know that I

13   believe that Dominion has brilliantly siloed its law

14   offices.  While it uses national firms, in some litigation

15   it uses firms that are able to ethically walk in, without

16   access to discovery on this case, to a courtroom and say,

17   This is all conspiracy theory.  There is nothing here.  And,

18   you know, they make allegations without having access to

19   these documents.  That's why Dr. Byrne knows that I am the

20   correct attorney for his case, because I understand how all

21   of the puzzle pieces fit together.

22         The other co-defendants' attorneys, and I am not

23   going to state them by name, have offered to write

24   affidavits.  I believe that's not in their clients' best

25   interest, so I didn't do that for this Court.  They believe

1    I'm necessary on this case, not just for my client's

2    benefit, but for their clients' benefit.  And they are

3    willing to tell this Court that the depositions have been

4    extremely effective.

5           I don't show up in person, Your Honor.  I am a

6    mother of three children.  I believe that I can hold the

7    depositions in a much more effective fashion by Zoom.  I am

8    one attorney.  These other offices have multiple attorneys

9    attending these depositions.  And while they've had years to

10   prepare for them, I am holding them by myself.  I have

11   multiple devices set up.

12          And on one day, Your Honor, there was a deposition

13   of three different Dominion employees that I took in

14   one day.  So I was listening on one device, holding the

15   deposition on another, all in the same room.  And I didn't

16   ask anyone to reschedule.  I managed to do all of that.

17          I've been harassed by the Dominion --

18          **THE COURT:**  Wait.  Are you saying you were

19   deposing three different people at the same time?

20          **MS. LAMBERT:**  They took place throughout the day.

21   I took a different time slot throughout the day.  And I

22   coordinated that with the other co-defendants' attorneys.

23   And I managed to do all of it without one complaint to the

24   magistrate or changing the schedule.

25          I've been mistreated in these depositions.  Every

1    single time I log in, the Dominion attorneys are demanding

2    what documents I'm referring to.  And I just professionally

3    say, I'm not required to tell you what I'm doing right now.

4    I'm asking your client questions.  I haven't complained to

5    the magistrate.  But I am telling the Court this so the

6    Court can understand what's really been happening.  It's

7    just that Dominion does not want me on these cases.  And I

8    will give you one example.

9            **THE COURT:**  That is clear.

10           **MS. LAMBERT:**  Right.

11           Your Honor, I held on a different matter,

12   different client, it's confidential, a mock trial.  Someone

13   in my office had set my setting for that mock trial to "The

14   Prosecutor" because that was my role.

15           Fifteen minutes of a deposition was interrupted

16   with inappropriate behavior by Sussmann Godfrey yelling at

17   me that my title was "The Prosecutor," while I was trying to

18   change the admin settings to "Ms. Lambert" for the

19   deposition.

20           I don't want to bring this childish stuff to this

21   Court, but I am trying to set the tone of what's actually

22   been taking place.  I am an experienced attorney.  I know

23   that Courts can see through and identify exactly what's

24   happening.  You know, there's been a number of

25   mischaracterizations by counsel here.

1          For example, the sheriff tweeting.  The sheriff

2     doesn't just tweet.  He publicly asked Congress to act.  And

3     he did that, it's my understanding, because he wanted

4     everyone to know if Congress was actually working.  We

5     turned very serious information in to Congress, and he

6     wanted everyone to know if Congress was actually going to

7     work.  And I believe Congress is working.  And I've

8     heard -- especially the testimony that was provided by

9     Dominion in January of 2020 to Congress.  This is why this

10    is so significant.

11         Our legislature and our government can only remedy

12    problems with our United State's election system if the

13    information is accurate.  For whatever reason, and it's

14    negligent in my opinion, for over 20 years we've allowed

15    exclusive vendor control.  So when a vendor needs to tell

16    Congress how the company is functioning and how things work,

17    and when there's dishonesty that prevents our government

18    from actually having the appropriate oversight, we have a

19    massive problem in this country.

20         So that is why the sheriff has done that.  There's

21    been numerous accusations regarding my attorney's remedy

22    with the sheriff's affidavit that was filed publicly.  And

23    if the Court has questions of my attorney, please feel free

24    to have him come here and explain that to the Court.

25         You know, again, she made statements that

1    Dr. Byrne made a number of different statements --

2              **THE COURT:**  In this court, at least, we refer to

3    opposing counsel by name.

4              **MS. LAMBERT:**  I apologize, Your Honor.

5              Ms. Brook made numerous statements regarding my

6    client allegedly saying something about piano wire and

7    whatever.  I can just represent to this Court, one, I was

8    not aware he was going to make any statements; and, two,

9    he's a funny guy.  He very rarely means exactly what he is

10   saying --

11             **THE COURT:**  That didn't strike me as very funny.

12             **MS. LAMBERT:**  It doesn't sound very funny.

13             **THE COURT:**  It wasn't very funny.

14             **MS. LAMBERT:**  Right.  Right.

15             However, there's — I can assure you, from what I

16   know of my client, there's no malicious, negative intent of

17   any sort, while it might be inappropriate, I can agree with

18   that.  And I think he probably made a public apology to that

19   effect, but I had no control over that.

20             Again, once again, we are talking about what

21   Dr. Byrne has done after the March hearing.  Right?  Not

22   what I have done.  What I have done is I've held

23   depositions, multiple each day, by Zoom.  Sometimes I don't

24   have my camera on because I'm flipping through my notes, my

25   documents, in order to ask the really relevant questions.

1          And why are they complaining about Mr. Poulus

2     receiving a subpoena?  He's entitled to be subpoenaed.  He's

3     the CEO of Dominion.  If he's needed to appear in a court

4     somewhere in the United States, why should he be prevented

5     and put into hiding?  That's not part of this case.  That's

6     not part of this protective order.

7          If Ms. Brook doesn't want to have her name

8     mentioned every, she probably shouldn't appear on such high

9     and significant litigation in federal court.  My name is

10    mentioned.  As a result of this litigation, I get constant

11    death threats.  I'm not complaining.  I get, through my

12    website on a regular basis, from the extent of, "I want to

13    come into your house and execute you and your family" to

14    just unkind remarks.  It's routine.  It comes with the job.

15    I am Dr. Byrne's attorney on this important case.  I assure

16    the Court I have already won it in the depositions.  It's

17    very important for Dr. Byrne that I stay on it.  I will

18    follow any orders from this Court, and I have done that.

19    And I am hoping in the future that the motions to lift the

20    protective order are heard.

21          With regards to what prior counsel did or did not

22    do and what our relationship was, I'm sorry I can't respond

23    to that, because that's protected by attorney/client

24    privilege.  I have information related to that, but I'm not

25    going to violate the sacred attorney/client privilege

1    Dr. Byrne has.

2              So with that, I'm happy to answer any further

3    questions the Court might have.

4              **THE COURT:**  Counsel for Dominion, obviously,

5    walked through conduct by you after entry of the status quo

6    order.  Do you want to respond to the specific things that

7    counsel identified that you had done, rather than Dr. Byrne?

8              **MS. LAMBERT:**  Sure.

9              With regards to the letters from different states'

10   legislatures [sic], I did not write those.  It's my

11   understanding that there's a massive investigation into

12   Dominion that involves numerous states.  So communications

13   taking place between different state senators or

14   representatives, I'm sure that exists and is going on, as it

15   should.  Because Dominion does business in those states.

16   Dominion has testified before those legislatures.  And

17   Dominion, in their opinion, have lied as to how the company

18   operates and how it's conducting elections.  So that is — or

19   those legislatures to decide how they want to proceed on

20   that.

21             I've provided those letters to this court.  I've

22   had additional inquiries as to whether or not I'm going to

23   provide the transcript.  I have not provided the transcript.

24   I did communicate — she says that I failed to file an

25   objection.  I did communicate --

1            **THE COURT:**  You said "she".

2            **MS. LAMBERT:**  I'm sorry, Your Honor.  Ms. Brook.

3            Ms. Brook sent a letter by email, ex parte, to the

4    magistrate and indicated that I failed to object and it was

5    some emergency, as if I was going to disseminate the

6    transcripts, which I did not.  And I responded by stating

7    that I would file a motion to lift the protective order,

8    which I did.  That was the legal mechanism to address that

9    and I did that.

10            **THE COURT:**  Okay.  Thank you very much.

11            **MS. LAMBERT:**  Thank you.

12            **MS. BROOK:**  Anything you would like to respond to

13    briefly?

14            **MS. BROOK:**  Very briefly, Your Honor.

15            Just three points, Your Honor.  I'll be brief.

16            As to Lambert's post status quo misconduct -- and

17    I am specifically saying Ms. Lambert's post-status-quo

18    misconduct -- I'll just refer the Court to Pages 16 through

19    23 of our brief, where we literally enumerate it in

20    bullet-point format.

21            The only things I heard Ms. Lambert say by her

22    rebuttal, that I don't believe had already been addressed so

23    I will limit my remarks to those, were two things having to

24    do with depositions in this case.

25            One was that we have apparently mistreated her

1  because we asked her what documents she was using in a

2  deposition.  It's significant, Your Honor, for this reason.

3  I won't get into the ad hominem attacks.

4        These are depositions taking place at a time when

5  Ms. Lambert, pursuant to this Court's status quo order, was

6  barred from accessing the documents.  So, as she conceded

7  just now, she was looking at documents.  It was plain from

8  her questioning she was looking at documents.  So, yes, my

9  colleagues asked her, Ms. Lambert, can you please let us

10  know, which documents you are looking at?

11        As the Court knows, customarily when you are

12  looking at a document, you would mark it as an exhibit in a

13  deposition, read in the Bates' label or say, This is a

14  *Washington Post* article.  She did not do any of that.

15  Instead, she would just refer to these unnamed, unidentified

16  documents.  We had good reason to believe that was a further

17  violation of the status quo order.  So, yes, we asked her

18  politely what documents she was looking at.  And as she

19  accurately represented to the court, she refused to answer

20  those questions.

21        The second point she made about the depositions

22  was this prosecutor issue.  As this Court knows, Dominion's

23  employees have been the subject of years of incredibly

24  serious and horrific threats on their lives, on their

25  children's lives, on their families' lives.  Many of them

1    have suffered trauma and continue to suffer that trauma.

2    And when an attorney who they well know -- and they know who

3    Ms. Lambert is trying to use every means possible to get

4    their information out there, to make their names, their

5    emails, their phone numbers public, as she did again with

6    her filing before the Court to this day, when she attached a

7    slew of their bios, comes on with a black box that says

8    "Prosecutor."  That can be very intimidating to a layperson,

9    especially a layperson with a specific background of the

10   Dominion employees that Ms. Lambert was being given the

11   opportunity to depose.  So we asked her to fix that before

12   we proceeded with the questioning.

13            That's it, Your Honor.

14            **THE COURT:**  Thank you, Counsel.

15            I am going to take the objection under advisement.

16   I realize that, as we talked about, the case is steaming

17   ahead, full steam, and it's going to complete soon.  So I

18   have no intention of holding up my determination on the

19   objection.  So you will hear from me pretty darn soon, I

20   hope.  And then we'll go from there.  Okay?

21            **MS. LAMBERT:**  Your Honor, may I respond to the

22   documents during the deposition very briefly?

23            **THE COURT:**  Sure.

24            **MS. LAMBERT:**  Your Honor, during the deposition

25   this was designed to delay and interrupt each question.  At

1    one point I was reading from, not Dominion's discovery, I

2    was reading from a publicly available document.  It's called

3    the Williamston [sic] Tennessee EAC Report from 2022.  This

4    report is significant because it found that Dominion's

5    erroneous source code caused an inaccurate vote tally.

6         The clerk in that case had found that the machine

7    tape did not machine her hand count.  And she counted again.

8    The machine tape continued to match the machine tape.  The

9    hand count continued to match the hand count.  So she called

10   the Secretary of State.  The Secretary of State was not able

11   to reconcile why this was happening.  So the EAC was

12   notified.  Most concerningly, our election assistant

13   commission was unable to also figure out why this could

14   possibly happen where the vote tally was inaccurate from the

15   hand count to the machine tape.

16        Dominion disclosed — and it's part of the

17   conclusion in the Williamston [sic] Tennessee EAC analysis

18   that the root-cause analysis was erroneous source code used

19   by Dominion.  So I was using that document, that was not

20   provided in discovery, to ask questions of each of the

21   deponents as to what they knew about that and what their

22   explanation was.

23        Throughout that line of questioning, I was

24   continuously interrupted and harassed as to what I might be

25   looking at.

1           I think it's horrifying that I am being asked to

2    represent my client and depose these critical, critical

3    witnesses for this case without looking at anything.  But

4    because I know the material so well, I am able to do that,

5    in a large extent.  But I need to be able to ask the

6    critical questions, and I've been doing just that.  Which is

7    why other defense attorneys, representing these

8    co-defendants have said, You cannot go anywhere.  We need

9    you on this case.

10           Thank you.

11           **THE COURT:**  Thank you.

12           Thank you, everyone.  As I said before, the matter

13    is submitted, taken under advisement, and you will hear from

14    me shortly.

15           Thank you.

16        (Proceedings concluded at 12:28 p.m.)

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3            I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9        October 21, 2024        /s/  Lorraine T. Herman
                **DATE**                **Lorraine T. Herman**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK: [1]** 2/2
**MS. BROOK: [20]** 2/7 31/14 31/16 35/4 37/25 38/3 39/10 39/14 42/25 44/3 44/24 45/2 45/4 45/15 46/11 48/10 49/7 49/16 57/12 57/14
**MS. LAMBERT: [95]**
**THE COURT: [112]**

**'**

**'24 [1]** 8/23

**/**

**/s [1]** 62/9

**1**

**100 percent [1]** 39/23
**10001 [1]** 1/13
**10:58 [1]** 1/7
**12 [1]** 36/7
**12:28 p.m [1]** 61/16
**13th [3]** 48/24 49/1 49/11
**1400 [1]** 1/16
**148 [2]** 32/22 32/25
**150 [1]** 36/25
**16 [1]** 57/18
**17 [1]** 1/5
**1900 [1]** 1/16
**1:21-2131 [1]** 1/3

**2**

**20 [2]** 36/7 53/14
**20001 [1]** 1/23
**2020 [3]** 16/4 19/10 53/9
**2021-2131 [1]** 2/3
**2022 [1]** 60/3
**2024 [7]** 1/5 20/15 31/23 48/24 49/1 49/11 62/9
**21 [1]** 62/9
**2131 [2]** 1/3 2/3
**22 [1]** 29/16
**23 [3]** 12/2 29/16 57/19
**2500 [1]** 39/22
**26 [1]** 1/19

**3**

**333 [1]** 1/23

**4**

**400 [1]** 1/19
**48243 [1]** 1/20
**4th [1]** 19/10

**5**

**50th [1]** 1/13

**6**

**60-some [1]** 33/9
**61-page [1]** 32/21
**62 [1]** 26/20

**9**

**90067 [1]** 1/16

**A**

**A.G [1]** 27/12
**a.m [1]** 1/7
**ability [1]** 11/10
**able [13]** 4/11 4/14 9/20 16/6 16/8 21/10 21/11 31/9 45/5 50/15 60/10 61/4 61/5
**about [55]** 3/18 5/3 6/14 10/13 10/20 11/3 11/11 11/16 13/3 15/8 20/19 20/21 20/21 21/11 21/15 22/14 22/18 25/8 27/19 27/20 28/3 28/14 28/15 29/11 30/12 31/25 33/11 33/13 33/22 34/4 34/19 34/20 35/23 36/8 38/8 38/14 38/17 38/22 39/1 39/6 41/16 42/5 42/12 43/21 43/23 43/24 44/5 48/1 48/7 54/6 54/20 55/1 58/21 59/16 60/21
**above [1]** 62/5
**above-entitled [1]** 62/5
**absolutely [1]** 39/18
**access [14]** 5/23 6/6 6/15 6/17 7/7 7/10 7/17 7/22 7/24 37/19 43/12 45/23 50/16 50/18
**accesses [1]** 44/2
**accessing [1]** 58/6
**accomplish [1]** 16/6
**accounting [3]** 44/6 44/16 45/4
**accurate [1]** 53/13
**accurately [1]** 58/19

**accusations [2]** 36/4 53/21
**acknowledge [1]** 7/15
**acknowledged [3]** 7/23 32/15 32/16
**across [1]** 48/9
**act [1]** 53/2
**acting [2]** 6/4 7/5
**action [5]** 1/3 13/21 13/22 14/7 34/10
**actions [6]** 8/22 21/23 30/8 30/9 32/12 39/7
**activity [2]** 37/1 42/11
**actors [1]** 19/7
**acts [2]** 7/13 23/5
**actually [10]** 6/24 14/16 20/6 27/15 30/15 35/21 52/21 53/4 53/6 53/18
**ad [1]** 58/3
**add [2]** 17/25 49/15
**additional [2]** 48/21 56/22
**address [3]** 36/3 39/10 57/8
**addressed [4]** 22/4 23/1 50/9 57/22
**addresses [2]** 45/13 45/17
**Adjudication [1]** 20/7
**admin [1]** 52/18
**admissions [2]** 16/2 16/5
**admit [1]** 7/22
**admits [2]** 36/23 50/4
**admitted [1]** 8/6
**admitting [2]** 6/4 50/10
**advance [1]** 46/23
**advisement [2]** 59/15 61/13
**affidavit [1]** 53/22
**affidavits [1]** 50/24
**affirmative [4]** 15/14 20/3 27/5
**after [18]** 9/5 18/12 18/14 26/22 27/3 27/17 30/12 32/21 32/23 35/16 35/17 38/17 39/6 40/24 46/22 47/3 54/21 56/5
**afternoon [1]** 31/14
**again [16]** 5/3 9/15 22/8 29/2 32/9 34/21

**36/17 39/21 40/18 40/23 48/18 53/25 54/20 54/20 59/5 60/7
**against [4]** 18/3 31/4 35/7 37/1
**aggressive [1]** 38/10
**agree [7]** 12/19 13/15 24/3 24/4 37/25 38/3 54/17
**agreed [1]** 8/16
**agrees [1]** 38/7
**ahead [1]** 59/17
**aided [1]** 1/25
**aired [1]** 36/1
**al [2]** 1/3 2/3
**all [30]** 18/6 19/24 21/17 23/19 24/9 26/6 26/20 27/3 27/4 28/4 31/10 32/9 33/2 34/21 34/25 35/12 41/6 41/15 45/17 47/5 47/16 48/2 48/16 48/18 48/25 50/17 50/20 51/15 51/16 51/23
**allegation [1]** 5/1
**allegations [4]** 4/20 34/19 46/25 50/18
**allege [1]** 10/7
**allegedly [1]** 54/6
**allowed [6]** 5/23 21/6 34/4 35/17 49/23 53/14
**allowing [1]** 20/13
**almost [2]** 39/2 41/7
**alone [1]** 37/15
**already [10]** 8/6 11/25 20/4 20/5 22/25 31/1 41/1 49/21 55/16 57/22
**also [3]** 32/11 34/12 60/13
**although [1]** 32/15
**am [36]** 3/5 7/15 15/7 16/8 19/6 23/7 23/14 24/2 24/14 26/25 29/1 30/24 30/24 30/24 31/9 32/3 32/11 37/12 40/6 42/1 43/20 44/22 50/19 50/22 51/5 51/7 51/10 52/5 52/21 52/22 55/15 55/19 57/17 59/15 61/1 61/4
**America [1]** 49/4
**Americans [1]** 32/2
**analysis [3]** 10/11 60/17 60/18

**A**

**Angeles [1]** 1/16
**angry [2]** 32/7 32/8
**another [6]** 33/9 35/11 36/17 48/4 49/5 51/15
**answer [9]** 6/13 7/3 7/25 8/2 8/9 45/22 48/7 56/2 58/19
**answering [1]** 39/12
**answers [2]** 7/21 8/8
**antics [1]** 19/2
**Antrim [1]** 19/10
**any [21]** 8/15 10/15 14/23 15/4 20/9 20/14 27/16 30/1 30/5 30/16 32/18 34/22 38/4 40/14 43/22 45/19 54/8 54/17 55/18 56/2 58/14
**anymore [1]** 44/14
**anyone [2]** 6/18 51/16
**anything [8]** 9/11 22/17 22/21 24/13 27/14 49/14 57/12 61/3
**anywhere [2]** 37/21 61/8
**Apologies [1]** 36/15
**apologize [2]** 2/22 54/4
**apology [1]** 54/18
**apparently [2]** 37/9 57/25
**appeal [2]** 4/3 47/23
**appealing [1]** 17/17
**appear [2]** 55/3 55/8
**appearances [2]** 1/11 10/22
**appreciate [1]** 4/10
**approach [1]** 31/21
**appropriate [3]** 13/9 24/11 53/18
**approval [1]** 13/8
**approve [1]** 12/11
**are [65]**
**aren't [1]** 34/8
**argue [2]** 8/21 30/25
**argued [1]** 36/2
**argument [18]** 2/20 3/18 10/20 11/11 12/8 13/2 24/1 24/21 28/22 29/7 31/21 33/10 33/14 36/24 38/15 39/5 40/18 42/10
**arguments [3]** 11/15 24/14 35/10

**Arizona [2]** 9/4 11/10
**around [1]** 36/11
**article [1]** 58/14
**as [60]** 3/3 3/15 3/24 8/4 10/7 11/6 11/25 13/6 14/21 15/2 15/20 16/8 16/15 16/22 18/2 19/11 20/1 20/2 20/20 21/23 23/19 24/10 25/8 25/12 30/25 32/11 32/24 34/9 34/14 35/14 36/7 36/10 38/12 38/13 40/10 40/17 42/22 43/23 45/5 46/6 46/25 48/11 49/2 54/11 55/10 56/14 56/17 56/22 57/5 57/16 58/6 58/11 58/12 58/18 58/22 59/5 59/16 60/21 60/24 61/12
**ask [19]** 7/20 7/20 7/21 7/23 8/3 8/5 8/16 8/18 9/12 19/19 20/2 38/6 41/24 41/25 44/16 51/16 54/25 60/20 61/5
**asked [15]** 19/18 26/25 27/7 29/24 44/4 45/19 45/20 45/21 46/19 53/2 58/1 58/9 58/17 59/11 61/1
**asking [4]** 8/7 29/24 40/22 52/4
**assistant [1]** 60/12
**associates [1]** 45/7
**assumptions [2]** 38/25 39/11
**assure [3]** 46/13 54/15 55/15
**astonishing [1]** 37/2
**attached [1]** 59/6
**attaches [1]** 40/19
**attacks [1]** 58/3
**attempt [1]** 24/9
**attempted [1]** 38/11
**attend [1]** 16/20
**attended [2]** 36/2 46/12
**attending [1]** 51/9
**attention [1]** 35/6
**attorney [20]** 3/4 9/12 10/7 10/16 15/2 16/9 30/24 32/17 40/1 47/22 48/4 49/19 50/20 51/8 52/22 53/23 55/15 55/23 55/25 59/2

**attorney's [1]** 59/21
**attorney/client [2]** 55/23 55/25
**attorneylambert [1]** 1/20
**attorneys [14]** 15/3 16/18 42/18 42/21 42/22 43/1 45/8 47/17 47/19 50/22 51/8 51/22 52/1 61/7
**available [3]** 35/13 46/3 60/2
**Avenue [2]** 1/16 1/23
**aware [1]** 54/8

**B**

**babysitter [2]** 30/23 30/24
**back [5]** 8/16 9/14 20/8 26/1 42/8
**background [1]** 59/9
**backup [2]** 6/23 7/12
**backwards [1]** 35/14
**baited [1]** 35/19
**baked [2]** 38/25 39/11
**Bankruptcy [1]** 1/22
**Bar [1]** 3/25
**barred [1]** 58/6
**based [5]** 14/1 14/15 20/23 21/17 26/2
**basic [1]** 19/19
**basis [4]** 18/13 29/22 43/19 55/12
**Bates' [1]** 58/13
**be [44]** 4/12 8/15 9/19 11/21 14/10 14/17 15/18 16/19 16/23 17/23 23/18 23/20 23/24 23/25 27/5 28/22 30/19 30/23 31/4 31/20 32/1 32/9 32/13 32/18 35/17 35/20 36/23 39/6 39/8 42/1 42/6 44/20 45/5 47/25 48/17 49/5 49/11 54/17 55/2 55/4 57/15 59/8 60/24 61/5
**became [2]** 3/9 37/18
**because [52]** 5/20 9/2 11/8 12/11 13/9 13/22 18/1 19/3 21/3 23/22 24/10 24/17 25/19 25/21 26/10 26/16 27/8 27/10 29/11 30/4 30/9 30/11 31/22 31/23 32/3

**32/23 34/8 34/8 35/6 37/13 40/2 40/23 42/3 42/9 42/17 42/19 44/8 45/24 46/2 46/8 46/23 47/11 47/14 50/20 52/14 53/3 54/24 55/23 56/15 58/1 60/4 61/4
**been [29]** 3/2 6/17 15/4 16/5 16/6 20/20 21/5 21/10 21/11 29/20 29/20 31/8 31/20 33/12 34/9 38/9 38/10 39/8 42/24 51/3 51/17 51/25 52/6 52/22 52/24 53/21 57/22 58/23 61/6
**before [27]** 1/9 7/24 8/3 8/5 13/8 15/5 18/4 20/22 21/13 22/9 22/23 23/6 25/15 26/12 27/2 31/22 33/10 35/23 38/15 39/8 41/20 42/18 49/19 56/16 59/6 59/11 61/12
**beginning [3]** 2/6 3/2 37/16
**behalf [8]** 2/8 2/13 3/6 5/22 6/5 7/6 21/1 31/19
**behave [2]** 32/6 39/4
**behaved [1]** 32/6
**behavior [3]** 22/2 22/6 52/16
**being [12]** 5/20 13/20 14/17 16/15 18/2 18/14 20/23 25/7 25/13 31/7 59/10 61/1
**belied [1]** 35/12
**believable [3]** 42/16 42/17 42/19
**believe [25]** 5/12 7/18 7/19 9/15 10/14 10/23 11/4 14/8 14/22 16/15 33/3 38/4 43/12 44/10 45/24 46/20 48/19 49/18 50/13 50/24 50/25 51/6 53/7 57/22 58/16
**believed [5]** 12/15 13/12 18/11 21/23 32/1
**benefit [3]** 33/15 51/2 51/2
**bent [1]** 35/14
**best [4]** 4/11 16/17 29/7 50/24
**better [1]** 37/6

**B**

**between [4]** 13/21 38/19 41/14 56/13
**beyond [2]** 21/9 22/17
**bias [1]** 18/3
**billion [1]** 48/1
**binder [1]** 17/22
**binders [1]** 17/12
**bios [1]** 59/7
**bit [1]** 31/21
**black [2]** 46/24 59/7
**blame [1]** 36/25
**blissfully [1]** 48/7
**blow [2]** 35/7 42/6
**boils [1]** 12/8
**both [1]** 33/3
**bother [1]** 42/4
**bothered [2]** 46/18 46/21
**box [4]** 23/13 23/15 46/24 59/7
**bragged [1]** 48/1
**breach [2]** 32/24 44/5
**break [1]** 17/11
**breath [1]** 35/19
**bribery [1]** 14/21
**bridge [1]** 49/6
**brief [15]** 5/9 5/12 9/18 20/12 26/6 26/12 26/13 29/12 29/20 31/5 31/17 35/1 44/18 57/15 57/19
**briefing [12]** 4/13 9/7 18/24 21/8 25/2 25/23 32/24 33/9 33/13 35/23 39/22 41/1
**briefings [1]** 20/24
**briefly [3]** 57/13 57/14 59/22
**briefs [7]** 8/17 8/20 10/6 26/4 26/11 35/10 35/18
**brilliantly [1]** 50/13
**bring [5]** 10/18 21/20 23/14 31/3 52/20
**Brook [9]** 1/15 2/8 31/13 31/18 50/7 54/5 55/7 57/2 57/3
**brought [4]** 3/23 35/5 35/25 37/10
**build [3]** 26/24 26/25 27/2
**bullet [1]** 57/20
**bullet-point [1]** 57/20
**burden [1]** 24/18

**business [2]** 34/20 56/15
**businessman [1]** 4/23
**BYRNE [40]** 1/6 2/4 2/13 3/1 5/22 6/5 6/18 10/16 10/18 15/9 15/20 16/7 16/9 16/21 21/1 27/19 28/1 28/12 28/18 30/18 31/24 35/5 35/15 36/19 37/5 39/9 39/21 42/4 45/16 47/9 47/16 47/25 48/22 49/2 50/19 54/1 54/21 55/17 56/1 56/7
**Byrne's [17]** 2/15 2/17 9/11 10/12 18/3 20/3 22/9 22/18 22/23 28/15 28/22 29/3 30/8 34/20 42/22 43/1 55/15

**C**

**CA [1]** 1/16
**call [2]** 20/20 44/18
**called [7]** 20/20 26/24 33/16 35/6 46/16 60/2 60/9
**came [8]** 6/24 11/20 13/12 16/15 16/21 20/25 21/4 34/25
**camera [2]** 46/21 54/24
**can [32]** 4/10 6/11 7/18 7/20 8/11 16/25 17/11 17/13 20/2 20/6 20/8 23/9 23/20 23/22 31/3 33/20 34/9 36/23 41/23 42/9 44/1 44/5 46/13 51/6 52/6 52/23 53/11 54/7 54/15 54/17 58/9 59/8
**can't [10]** 10/11 14/10 15/20 22/13 22/14 34/22 38/20 40/2 49/3 55/22
**Canadian [1]** 14/3
**canceled [2]** 5/19 15/25
**cannot [4]** 5/13 33/10 47/22 61/8
**cared [1]** 45/13
**careful [1]** 37/15
**CARL [1]** 1/9
**carries [1]** 18/21
**case [49]** 2/3 3/13 4/23

6/20 7/1 9/9 9/10 10/20
12/6 15/10 16/9 16/18 16/21 16/23 17/19 19/3 20/25 21/4 21/21 22/1 23/3 26/17 26/20 28/12 32/6 36/19 36/22 37/10 37/10 37/21 38/8 39/25 40/10 41/23 43/8 44/20 46/8 48/5 48/8 48/11 50/16 50/20 51/1 55/5 55/15 57/24 59/16 60/6 61/3 61/9
**cases [3]** 3/8 49/23 52/7
**cause [3]** 32/2 49/23 60/18
**caused [1]** 60/5
**causes [1]** 50/11
**cdieckmann [1]** 1/14
**Center [1]** 1/19
**CEO [1]** 55/3
**certain [6]** 6/5 10/22 25/24 28/20 42/15 46/8
**certificate [1]** 3/24
**certification [1]** 16/4
**certify [1]** 62/4
**cetera [2]** 35/12 35/12
**chain [3]** 6/23 7/11 7/12
**challenging [1]** 29/15
**chance [2]** 18/7 26/5
**change [2]** 20/6 52/18
**changed [1]** 25/3
**changing [2]** 16/6 51/24
**characterize [1]** 24/2
**childish [1]** 52/20
**children [1]** 51/6
**children's [1]** 58/25
**Chinese [1]** 14/3
**choice [1]** 38/13
**Christina [2]** 1/12 2/9
**circumvent [3]** 40/12 40/24 41/17
**cite [1]** 5/12
**cited [2]** 4/12 5/9
**citing [2]** 29/16 29/16
**citizens [1]** 20/1
**City [1]** 36/14
**civil [5]** 1/3 2/3 13/21 15/2 20/1
**claim [1]** 35/24
**claims [2]** 43/18 47/25
**clause [2]** 23/20 23/22

clear [6] 3/2 20/24
26/4 35/1 41/17 52/9
**clearly [8]** 19/1 22/13 29/11 36/7 37/4 38/10 41/6 41/10
**clerk [3]** 19/9 26/23 60/6
**Clerk's [1]** 19/12
**cleverer [1]** 41/16
**clicked [1]** 35/19
**client [23]** 3/1 4/21 4/22 5/1 10/14 11/19 21/17 21/18 21/18 21/19 26/14 30/18 31/24 31/25 32/9 38/20 52/4 52/12 54/6 54/16 55/23 55/25 61/2
**client's [4]** 10/13 21/16 27/22 51/1
**clients [2]** 41/25 50/11
**clients' [2]** 50/24 51/2
**close [2]** 24/15 24/23
**co [4]** 26/20 50/22 51/22 61/8
**co-defendant [1]** 26/20
**co-defendants [1]** 61/8
**co-defendants' [2]** 50/22 51/22
**code [2]** 60/5 60/18
**Colbeck [1]** 45/10
**colleague [1]** 2/9
**colleagues [1]** 58/9
**colluded [1]** 40/11
**Colorado [8]** 26/17 26/21 26/23 27/6 28/1 28/15 29/3 34/24
**COLUMBIA [1]** 1/2
**combine [2]** 39/9 41/19
**come [11]** 2/5 2/19 8/16 12/10 12/19 27/20 46/21 47/12 49/3 53/24 55/13
**comes [2]** 55/14 59/7
**coming [3]** 12/12 41/4 41/9
**commented [1]** 29/6
**comments [3]** 21/15 21/17 29/11
**commission [1]** 60/13
**commissioners [1]** 19/25

**C**

**committing [1]** 15/19
**communicate [2]** 56/24 56/25
**communications [4]** 22/3 36/5 43/24 56/17
**company [5]** 14/1 14/3 14/15 53/16 56/17
**compelled [2]** 39/10 42/14
**compete [1]** 39/14
**complained [1]** 52/4
**complaining [2]** 55/1 55/11
**complaint [1]** 51/23
**complete [3]** 34/16 45/22 59/17
**completely [2]** 24/3 40/9
**complex [3]** 3/6 3/8 16/18
**compliance [2]** 34/10 41/13
**complied [1]** 20/20
**comply [1]** 24/9
**complying [1]** 9/6
**comport [1]** 43/18
**computer [1]** 1/25
**computer-aided [1]** 1/25
**conceded [1]** 58/6
**conceding [1]** 20/5
**concern [1]** 37/18
**concerned [1]** 42/1
**concerningly [1]** 60/12
**conclude [1]** 26/9
**concluded [2]** 25/19 61/16
**conclusion [2]** 18/8 60/17
**conclusions [1]** 38/2
**concrete [1]** 30/16
**conditions [1]** 20/14
**conduct [26]** 11/3 11/16 12/10 13/3 13/13 20/22 21/6 22/9 22/18 22/18 22/23 24/11 25/20 28/22 29/3 29/9 29/12 30/12 30/18 30/18 31/2 39/15 39/16 39/17 39/18 56/5
**conducted [1]** 14/17
**conducting [2]** 11/7

**conference [1]** 25/4
**confidential [2]** 6/7 52/12
**conflate [1]** 38/21
**conflated [1]** 28/23
**Congress [9]** 8/15 13/25 53/2 53/4 53/5 53/6 53/7 53/9 53/16
**conjunction [2]** 28/18 41/11
**consequences [1]** 32/13
**consider [1]** 40/6
**considered [2]** 4/12 12/24
**considering [1]** 35/2
**consistent [1]** 8/22
**conspiracy [2]** 27/17 50/17
**conspired [1]** 27/4
**constant [1]** 55/10
**constitution [2]** 1/23 32/5
**containing [3]** 6/7 6/15 7/8
**contempt [3]** 10/17 21/21 31/3
**contend [2]** 33/20 34/11
**contesting [1]** 35/21
**continue [1]** 59/1
**continued [3]** 49/22 60/8 60/9
**continuously [1]** 60/24
**contract [1]** 23/21
**contractor [1]** 19/5
**contracts [1]** 23/20
**contrary [1]** 27/15
**control [2]** 53/15 54/19
**controls [1]** 19/22
**coordinate [1]** 48/12
**coordinated [1]** 51/22
**copy [1]** 27/10
**core [1]** 20/8
**corollary [1]** 13/11
**correct [10]** 7/17 15/11 22/20 28/24 30/10 30/13 30/21 40/7 50/20 62/4
**could [11]** 9/11 13/19 16/17 17/11 25/17 32/22 37/5 40/12 43/14

**couldn't [6]** 11/21 16/23 23/3 23/25 30/23 42/3
**counsel [26]** 2/5 2/11 2/14 2/17 3/3 3/15 4/7 10/12 15/4 18/3 25/18 31/10 37/12 39/4 42/22 43/1 47/5 47/9 47/10 49/25 52/25 54/3 55/21 56/4 56/7 59/14
**count [4]** 60/7 60/9 60/9 60/15
**counted [2]** 33/15 60/7
**counties [1]** 26/21
**country [2]** 48/3 53/19
**County [2]** 3/7 19/10
**couple [3]** 33/13 47/5 47/8
**course [4]** 26/5 42/11 47/18 48/22
**court [73]**
**Court's [8]** 3/23 32/23 35/6 39/24 40/13 40/16 41/18 58/5
**courtroom [2]** 18/19 50/16
**Courts [1]** 52/23
**cover [1]** 48/4
**covered [1]** 12/15
**CRC [1]** 1/21
**create [1]** 19/14
**crimes [1]** 15/19
**criminal [16]** 3/6 3/8 7/13 11/7 11/8 11/24 12/9 13/13 13/22 13/22 14/7 23/5 23/18 23/21 23/23 42/11
**criminals [1]** 13/20
**critical [6]** 15/9 16/4 43/9 61/2 61/2 61/6
**cross [1]** 49/6
**Cts [1]** 1/22
**cure [1]** 37/1
**curious [2]** 43/21 44/22
**current [1]** 7/1
**currently [4]** 7/13 12/2 12/2 12/4
**custody [3]** 6/23 7/11 7/12
**customarily [1]** 58/11

**D**

**D.C [2]** 1/4 1/23
**Dar [7]** 33/24 34/8 43/10 43/11 44/9 44/25 45/9
**Dar Leaf [2]** 33/24 34/8
**darn [1]** 59/19
**data [3]** 26/25 27/3 44/6
**database [6]** 6/7 6/15 7/8 43/17 43/24 44/1
**date [4]** 41/13 41/13 41/14 62/9
**Davida [3]** 1/15 2/8 31/18
**Davida Brook [1]** 31/18
**day [15]** 15/23 21/5 32/16 40/13 42/23 44/4 44/8 47/3 49/5 51/12 51/14 51/20 51/21 54/23 59/6
**days [5]** 32/22 32/25 36/21 37/1 49/10
**dbrook [1]** 1/17
**dcd.uscourts.gov [1]** 1/24
**dealing [2]** 23/12 47/21
**death [1]** 55/11
**December [4]** 41/13 48/24 49/1 49/11
**December 13th [3]** 48/24 49/1 49/11
**decide [1]** 56/19
**decided [1]** 4/4
**decision [6]** 4/11 16/17 17/2 17/10 17/18 32/21
**decisions [2]** 39/19 48/12
**deep [1]** 31/23
**defamation [3]** 14/24 15/5 15/10
**defendant [4]** 1/7 1/18 26/20 47/21
**defendants [2]** 47/13 61/8
**defendants' [2]** 50/22 51/22
**Defending [1]** 48/19
**defense [8]** 6/21 15/12 15/14 15/21 20/3 27/5

**D**

**defense... [2]** 30/25 61/7
**delay [1]** 59/25
**delete [2]** 26/25 27/4
**deleted [1]** 27/3
**demanding [1]** 52/1
**demonstrate [1]** 9/6
**demonstrated [2]** 12/21 12/25
**demonstrating [1]** 8/18
**deponents [1]** 60/21
**depose [3]** 19/4 59/11 61/2
**deposing [1]** 51/19
**deposition [19]** 15/23 15/25 40/9 40/10 40/22 41/3 41/4 41/25 46/19 46/21 49/3 51/12 51/15 52/15 52/19 58/2 58/13 59/22 59/24
**depositions [37]** 5/19 5/19 5/20 9/8 9/13 15/23 16/7 16/21 18/25 19/4 21/6 22/1 25/22 25/22 31/1 46/8 46/12 46/15 47/1 47/6 47/16 47/18 48/5 48/12 48/16 48/18 48/21 49/1 51/3 51/7 51/9 51/25 54/23 55/16 57/24 58/4 58/21
**described [1]** 17/18
**designed [3]** 11/23 20/7 59/25
**despite [4]** 39/22 40/14 40/15 41/9
**detail [1]** 33/2
**detailed [3]** 32/21 32/24 35/15
**determination [2]** 34/9 59/18
**determined [1]** 42/23
**Detroit [1]** 1/20
**device [1]** 51/14
**devices [1]** 51/11
**did [86]**
**didn't [24]** 7/3 7/20 8/20 9/20 14/8 16/20 23/7 24/7 25/25 26/5 27/13 27/16 28/2 28/7 30/4 30/5 30/6 33/18 34/1 38/10 43/9 50/25 51/15 54/11

**Dieckmann [2]** 1/12 2/10
**different [9]** 26/1 51/13 51/19 51/21 52/11 52/12 54/1 56/9 56/13
**difficult [3]** 29/10 45/15 45/17
**direct [4]** 7/7 7/21 8/8 17/21
**directly [2]** 6/24 39/12
**directs [1]** 19/21
**disagree [2]** 24/5 37/23
**disagreeing [1]** 30/15
**disagreements [1]** 24/7
**disagrees [1]** 42/11
**disappear [1]** 13/23
**disappeared [2]** 14/5 44/13
**disclosed [3]** 8/4 13/12 60/16
**disclosing [2]** 13/8 13/19
**disclosure [5]** 8/15 12/11 13/14 13/18 42/24
**discovery [11]** 5/24 7/8 16/19 19/13 37/20 48/8 49/7 49/8 50/16 60/1 60/20
**discuss [1]** 50/5
**discussed [3]** 25/3 36/1 41/1
**discussion [1]** 34/6
**dishonesty [1]** 53/17
**disputed [1]** 39/22
**disqualification [9]** 13/4 24/18 25/16 30/20 32/16 38/7 38/12 38/22 39/16
**disqualified [2]** 21/5 24/12
**disqualifying [2]** 2/17 47/4
**disregard [1]** 34/16
**disseminate [5]** 11/21 16/22 20/25 28/13 57/5
**dissemination [1]** 34/6
**distinguish [1]** 38/18
**DISTRICT [4]** 1/1 1/2 1/10 1/22

**do [45]** 2/22 7/1 7/22 9/21 12/12 12/21 12/21 14/23 14/25 17/22 17/25 20/5 20/10 20/16 23/16 24/12 26/24 27/14 28/2 32/25 34/5 34/7 36/11 37/6 40/2 40/15 40/16 41/7 42/8 42/21 46/14 46/16 46/23 47/17 47/18 49/4 49/18 50/25 51/16 51/23 55/22 56/6 57/24 58/14 61/4
**docket [1]** 49/24
**docketed [1]** 12/24
**document [7]** 28/4 43/13 43/17 48/13 58/12 60/2 60/19
**documentation [3]** 9/2 27/14 27/16
**documents [29]** 11/21 17/12 21/1 23/12 27/6 27/19 28/4 28/13 33/23 37/11 39/24 42/15 43/2 43/4 43/6 45/6 45/12 45/23 50/19 52/2 54/25 58/1 58/6 58/7 58/8 58/10 58/16 58/18 59/22
**does [12]** 4/22 21/18 33/11 34/3 34/7 43/4 43/25 48/8 48/8 48/11 52/7 56/15
**doesn't [11]** 16/19 16/20 19/22 29/19 34/12 37/20 43/18 46/1 53/2 54/12 55/7
**doing [7]** 3/6 3/8 9/9 9/11 43/19 52/3 61/6
**DOJ [1]** 12/4
**dollars [1]** 48/1
**DOMINION [77]**
**Dominion's [12]** 3/15 4/7 4/19 11/21 19/5 22/6 28/4 37/20 40/15 58/22 60/1 60/4
**don't [24]** 2/19 7/6 7/18 10/14 10/23 12/18 13/15 13/17 13/18 14/15 14/18 18/18 26/15 29/5 41/2 41/22 41/22 43/5 44/8 45/10 51/5 52/20 54/23 57/22
**done [17]** 3/16 5/18

6/24 8/4 24/13 36/18 36/23 38/10 42/13 47/11 48/20 53/20 54/21 54/22 54/22 55/18 56/7
**doubt [1]** 33/15
**down [4]** 9/10 12/8 39/24 47/1
**download [1]** 46/3
**downloaded [7]** 44/7 45/6 45/7 45/8 45/9 45/12 46/2
**downloading [1]** 46/4
**dozen [1]** 34/15
**Dr [2]** 28/15 30/18
**Dr. [29]** 2/13 2/17 3/1 6/18 9/11 10/12 10/16 10/18 15/9 15/20 16/7 16/9 16/21 18/3 20/3 22/9 22/23 27/19 28/1 28/12 30/8 39/9 42/22 50/19 54/1 54/21 55/17 56/1 56/7
**Dr. Byrne [20]** 2/13 3/1 6/18 10/16 10/18 15/9 15/20 16/7 16/9 16/21 27/19 28/1 28/12 39/9 50/19 54/1 54/21 55/17 56/1 56/7
**Dr. Byrne's [9]** 2/17 9/11 10/12 18/3 20/3 22/9 22/23 30/8 42/22
**drastic [2]** 25/16 38/7
**due [1]** 3/3
**during [4]** 5/18 50/4 59/22 59/24

**E**

**EAC [3]** 60/3 60/11 60/17
**each [6]** 16/17 19/6 26/23 54/23 59/25 60/20
**earlier [1]** 48/12
**early [1]** 39/1
**ECF [1]** 35/19
**ECF-link [1]** 35/19
**effect [1]** 54/19
**effective [7]** 5/20 6/21 19/3 25/22 47/4 51/4 51/7
**effectively [1]** 4/4
**effort [3]** 25/18 46/6 46/7

## E

**egregious [3]**  25/12 32/24 41/19
**either [1]**  47/2
**election [12]**  3/10 3/11 3/11 15/17 16/3 19/23 46/16 46/16 48/2 50/11 53/12 60/12
**election-related [1]**  50/11
**elections [4]**  14/17 19/22 20/2 56/18
**ElectionSource [3]**  19/5 19/7 19/9
**electronically [1]**  17/23
**else [6]**  7/7 11/2 22/17 22/21 45/25 49/14
**email [7]**  22/3 41/24 43/10 45/16 46/22 47/5 57/3
**emails [1]**  59/5
**emergency [1]**  57/5
**emotional [1]**  42/6
**employees [10]**  12/1 12/1 12/2 12/6 13/25 14/22 21/7 51/13 58/23 59/10
**enabled [1]**  6/6
**encourage [1]**  34/7
**end [1]**  48/17
**ended [1]**  47/14
**enforcement [14]**  6/1 6/3 6/6 6/10 6/22 7/11 8/15 11/5 12/11 13/14 13/18 19/25 42/15 43/6
**engineer [3]**  15/24 16/1 16/1
**enough [1]**  27/3
**enter [1]**  39/3
**entered [4]**  13/7 22/10 22/24 24/8
**entire [2]**  43/12 43/17
**entitled [3]**  6/19 55/2 62/5
**entry [2]**  21/14 56/5
**enumerate [1]**  57/19
**equipment [5]**  3/11 15/17 16/3 19/23 26/21
**err [1]**  11/3
**erred [1]**  10/21
**erroneous [2]**  60/5 60/18
**error [3]**  16/14 20/13

**errors [6]**  9/15 16/10 16/13 20/9 26/6 33/16
**especially [3]**  11/9 53/8 59/9
**essentially [2]**  23/4 42/23
**et [4]**  1/3 2/3 35/12 35/12
**et cetera [2]**  35/12 35/12
**ethical [1]**  12/16
**ethically [1]**  50/15
**even [14]**  12/13 12/18 12/24 19/22 24/7 26/15 35/16 40/24 44/15 45/4 45/15 46/5 46/21 47/23
**event [3]**  10/9 43/22 45/19
**events [3]**  10/10 19/11 19/12
**ever [2]**  14/7 26/15
**every [18]**  4/11 18/10 18/11 18/21 18/22 19/6 20/11 26/23 33/15 35/16 35/17 41/24 41/24 41/25 48/3 51/25 55/8 59/3
**everybody [1]**  45/9
**everyone [5]**  33/19 38/7 53/4 53/6 61/12
**everything [1]**  34/5 42/12
**evidence [8]**  7/13 12/9 12/9 13/23 14/4 27/5 27/11 33/24
**ex [4]**  12/13 22/3 36/5 57/3
**ex parte [4]**  12/13 22/3 36/5 57/3
**exact [2]**  32/25 47/2
**exactly [8]**  3/12 9/9 12/22 12/25 20/16 33/7 52/23 54/9
**example [5]**  23/7 23/11 26/14 52/8 53/1
**exceptions [2]**  48/15 48/18
**exclusive [1]**  53/15
**exculpatory [1]**  27/8
**excuse [1]**  40/1
**execute [1]**  55/13
**exhibit [1]**  58/12
**exhibits [2]**  40/19

**existed [1]**  36/22
**exists [2]**  21/22 56/14
**experience [5]**  3/3 3/8 3/10 14/23 15/20
**experienced [1]**  52/22
**expert [2]**  19/14 19/23
**expertise [1]**  46/16
**explain [5]**  13/16 14/18 19/15 20/13 53/24
**explains [1]**  36/7
**explanation [1]**  60/22
**expose [1]**  42/10
**express [1]**  37/10
**extent [3]**  20/20 55/12 61/5
**extremely [2]**  18/1 51/4

## F

**fact [15]**  5/15 10/4 10/25 17/1 18/20 21/12 21/13 23/1 27/12 29/25 30/1 37/21 37/24 38/2 46/25
**facts [12]**  4/13 5/6 11/15 11/15 11/17 16/20 25/15 29/16 32/18 35/13 35/21 35/24
**factual [5]**  9/19 10/4 29/22 29/23 38/4
**factually [2]**  10/3 42/12
**failed [4]**  37/6 42/7 56/24 57/4
**fair [2]**  16/19 24/13
**faith [1]**  43/18
**false [13]**  5/11 9/19 10/10 14/1 21/2 21/3 22/12 22/20 25/24 27/15 30/2 34/21 36/20
**familiar [3]**  19/6 19/24 37/13
**families' [1]**  58/25
**family [1]**  55/13
**fashion [1]**  51/7
**faster [1]**  17/23
**federal [4]**  14/20 27/1 35/7 55/9
**feel [2]**  39/10 53/23
**feigned [1]**  15/25
**felt [1]**  42/14

**few [1]**  63/23
**fictitious [1]**  7/1
**Fifteen [1]**  52/15
**fight [1]**  49/5
**figure [2]**  29/1 60/13
**file [6]**  35/16 35/18 40/3 43/7 56/24 57/7
**filed [25]**  8/17 8/21 8/24 9/3 9/18 11/23 11/24 12/6 18/5 19/2 19/15 20/17 26/18 29/12 30/4 35/10 36/10 36/21 36/21 39/24 39/25 40/14 42/20 43/4 53/22
**filing [2]**  12/22 59/6
**filings [2]**  3/19 4/16
**find [10]**  17/12 23/3 27/25 28/5 28/15 37/20 40/23 44/1 45/13 47/22
**finding [12]**  17/17 21/12 22/8 28/9 29/2 29/4 29/8 30/1 37/9 37/14 37/23 43/16
**findings [15]**  5/5 5/6 9/19 10/5 11/3 20/21 20/23 21/12 22/22 24/5 28/21 29/23 29/25 30/12 30/16
**finds [1]**  17/1
**firm [3]**  3/12 42/21 44/12
**firms [2]**  50/14 50/15
**first [9]**  8/2 21/17 29/1 33/17 34/25 38/9 38/12 41/4 44/4
**fit [1]**  50/21
**fitness [1]**  3/24
**five [2]**  30/11 48/14
**fix [2]**  38/11 59/11
**Fl [2]**  1/13 1/19
**flip [1]**  20/6
**flipping [3]**  19/11 19/15 54/24
**Florida [1]**  12/4
**focus [2]**  33/7 33/8
**folks [2]**  41/4 45/23
**follow [7]**  12/25 18/5 32/23 41/18 49/20 49/20 55/18
**followed [1]**  20/16
**following [3]**  15/23 30/6 41/5
**Footnote [1]**  36/7

## F

foregoing [1] 62/4
format [1] 57/20
former [4] 3/5 12/1 15/20 42/22
forth [2] 4/13 20/15
forward [3] 2/5 37/6 41/23
found [5] 17/9 38/2 44/5 60/4 60/6
four [1] 12/5
framed [2] 13/7 38/24
frankly [4] 41/2 42/2 45/24 49/19
free [3] 4/24 12/12 53/23
freedom [1] 21/22
frequency [1] 32/14
frequently [1] 26/16
front [1] 14/2
frustrated [2] 31/22 31/22
full [3] 33/9 44/11 59/17
fully [1] 36/1
functioning [1] 53/16
funding [1] 48/2
funny [4] 54/9 54/11 54/12 54/13
further [8] 8/15 11/22 16/23 25/17 34/6 44/17 56/2 58/16
future [3] 12/20 49/23 55/19

## G

gag [2] 4/22 21/21
gaining [1] 37/19
gave [6] 23/6 25/24 37/4 43/11 44/25 45/2
general [7] 23/19 24/4 33/5 34/18 34/21 42/10 46/25
generally [1] 48/9
genocides [1] 14/13
genuinely [1] 41/22
get [23] 3/21 4/5 9/11 11/16 27/16 28/25 29/23 34/1 34/23 39/3 40/5 40/6 45/4 45/5 45/21 46/7 47/9 47/18 48/4 55/10 55/11 58/3 59/3
gets [1] 30/7

getting [2] 3/7 4/16
Giuliani [1] 48/21
give [8] 23/8 26/14 35/15 43/2 43/6 44/6 44/18 52/8
given [3] 4/19 23/13 59/10
gives [1] 18/10
giving [7] 18/7 32/22 33/14 36/25 41/3 41/3 41/11
go [11] 9/14 14/19 20/8 27/17 33/2 33/21 34/7 41/23 42/8 59/20 61/8
goal [1] 28/18
GODFREY [4] 1/12 1/15 31/19 52/16
goes [2] 13/5 33/25
going [7] 8/14 24/2 24/4 24/12 35/20 35/20 37/6 40/17 40/23 41/15 42/1 49/3 50/23 53/6 54/8 55/25 56/14 56/22 57/5 59/15 59/17
gone [1] 22/11
good [10] 2/2 2/7 2/11 2/12 31/14 32/2 43/18 44/10 47/11 58/16
good-faith [1] 43/18
Goran [1] 15/24
got [9] 4/16 4/17 9/24 22/18 24/24 27/18 33/11 34/1 40/1
government [2] 53/11 53/17
grant [1] 9/20
granted [1] 32/18
great [1] 44/3
guarantee [1] 46/3
guess [2] 2/17 13/6
guide [1] 23/17
guides [1] 18/9
guy [1] 54/9

## H

had [42] 3/19 4/15 7/9 9/2 10/8 12/9 18/11 18/13 20/14 21/19 22/11 23/13 25/3 25/8 25/15 26/6 26/18 26/20 27/2 27/10 32/9 35/11 35/18 35/22 36/22 38/8 38/9 42/10 42/24 46/9

47/7 47/11 48/3 48/24 51/9 52/13 54/19 56/7 56/22 57/22 58/16 60/6
hand [4] 60/7 60/9 60/9 60/15
handing [2] 43/16 43/17
handling [1] 22/5
hands [3] 34/8 50/5 50/10
happen [5] 30/6 48/13 48/23 49/2 60/14
happened [6] 11/15 25/20 38/15 41/20 47/7 47/13
happening [4] 14/16 52/6 52/24 60/11
happens [2] 15/18 38/16
happy [3] 14/18 23/7 56/2
harassed [2] 51/17 60/24
hard [3] 39/14 48/10 49/10
harm [3] 32/2 36/19 49/23
harmed [1] 49/21
has [40] 3/2 3/2 4/23 6/17 10/16 14/7 14/21 18/2 21/22 29/16 29/22 31/2 32/6 32/9 32/15 33/1 33/24 34/4 34/15 39/22 40/4 40/13 42/12 42/12 42/13 45/25 46/14 46/15 46/18 46/19 47/9 48/1 48/23 49/21 50/13 53/20 53/23 54/21 56/1 56/16
hasher [1] 13/4
hasher-than-necessary [1] 13/4
hatched [1] 43/2
have [86]
haven't [3] 21/10 21/11 52/4
having [5] 38/14 45/17 50/18 53/18 57/23
he [35] 3/2 3/12 4/23 4/23 4/24 6/19 21/22 26/16 27/20 27/21 28/2 28/3 33/25 35/6 40/2 40/10 42/3 42/5 47/9 47/16 47/18 47/22 48/1

48/2 48/3 48/5 53/2 53/3 53/3 53/5 54/8 54/9 54/9 54/18 55/4
he's [8] 15/25 15/25 16/1 26/16 54/9 55/2 55/2 55/3
head [3] 23/13 23/15 43/16
hear [6] 16/7 28/7 31/12 37/12 59/19 61/13
heard [15] 8/24 9/4 12/23 13/19 20/18 33/1 34/18 35/9 36/4 36/17 37/8 46/6 53/8 55/20 57/21
hearing [19] 1/9 4/14 8/23 9/5 10/17 14/16 20/13 20/15 21/7 21/21 24/17 27/18 29/21 30/6 30/12 31/4 35/11 36/2 54/21
heart [2] 9/8 18/24
held [7] 4/14 22/1 25/9 25/21 31/4 52/11 54/22
help [1] 39/21
helped [2] 19/14 40/8
her [66]
here [28] 2/15 3/21 4/3 5/7 8/4 9/16 9/22 15/9 18/13 20/21 21/5 24/11 26/6 29/13 29/23 30/25 31/3 31/9 32/18 38/22 43/10 46/7 46/7 47/21 49/18 50/17 52/25 53/24
here's [1] 44/20
herman [5] 1/21 1/24 62/3 62/9 62/9
herself [1] 42/19
Hey [1] 47/5
hiding [1] 55/5
high [1] 55/8
higher [1] 25/9
highest [1] 24/18
him [8] 3/12 21/20 31/3 34/3 40/2 45/2 47/17 53/24
hired [1] 3/12
hires [1] 6/19
his [16] 3/3 4/25 6/20 10/16 30/23 30/24 30/24 31/2 31/2 34/8 40/22 42/4 44/25 47/17

# H

his... [2] 47/23 50/20
history [1] 14/8
hold [5] 13/6 14/16 21/6 21/20 51/6
holding [4] 20/13 51/10 51/14 59/18
hominem [1] 58/3
honest [1] 31/20
honestly [1] 41/22
honor [56] 2/2 2/7 2/12 2/24 3/1 3/14 3/22 4/6 5/25 6/9 7/19 8/1 9/17 10/6 11/4 12/2 12/14 13/15 14/25 15/12 17/4 18/9 18/19 29/10 31/14 31/20 32/7 32/11 34/12 35/23 36/6 37/11 38/3 40/17 41/8 42/9 42/25 44/3 44/19 45/15 45/19 45/20 46/11 49/16 50/2 51/5 51/12 52/11 54/4 57/2 57/14 57/15 58/2 59/13 59/21 59/24
HONORABLE [1] 1/9
hope [2] 45/5 59/20
hopeful [2] 32/11 32/11
hoping [1] 55/19
horrific [1] 58/24
horrifying [1] 61/1
host [1] 33/23
hosts [1] 43/25
house [1] 55/13
how [33] 3/11 3/21 4/8 4/16 5/3 6/14 9/24 10/21 13/3 13/18 14/17 15/17 15/18 19/18 19/22 24/24 30/3 31/21 33/11 34/19 39/4 41/16 41/22 44/1 44/1 46/8 48/2 50/20 53/16 53/16 56/17 56/18 56/19
However [1] 54/15
hundreds [2] 46/1 47/25

# I

I'd [4] 9/19 13/16 14/17 45/24
I'll [6] 4/21 20/20 26/13 49/16 57/15 57/18
I'm [24] 8/7 17/19
9/24 24/20 29/22 31/6 31/22 32/7 32/8 32/11 48/7 51/1 52/2 52/3 52/3 52/4 54/24 55/11 55/22 55/24 56/2 56/14 56/22 57/2
I've [13] 4/16 8/6 15/2 20/4 26/15 31/20 51/17 51/25 53/7 54/22 56/21 56/21 61/6
idea [1] 42/14
identified [1] 56/7
identify [1] 52/23
identifying [1] 24/16
ignorant [1] 48/7
ignored [1] 39/23
illegally [1] 27/4
imagine [1] 23/9
immediately [2] 25/12 47/4
impede [2] 23/17 23/23
impedes [1] 11/9
impetus [1] 27/9
important [6] 31/8 36/18 38/18 40/3 55/15 55/17
impose [1] 25/17
impression [1] 9/7
impressions [1] 25/24
improper [3] 40/8 40/9 41/2
imputed [1] 30/19
inaccuracies [1] 38/5
inaccurate [2] 60/5 60/14
inappropriate [3] 30/9 52/16 54/17
INC [2] 1/3 2/3
include [3] 41/7 41/8 41/12
including [1] 49/2
incorrect [8] 4/20 5/7 10/5 21/14 26/10 28/6 28/16 29/8
incredibly [3] 32/17 32/20 58/23
indicated [1] 57/4
indictment [3] 7/2 7/14 12/3
indigent [1] 47/21
individuals [6] 7/10 12/5 31/23 40/11 46/4 48/16

inflict [1] 36/19
information [8] 13/8 16/22 45/20 45/20 53/5 53/13 55/24 59/4
informed [1] 13/22
initial [2] 32/23 33/3
initially [1] 45/23
inquiries [1] 56/22
instance [1] 36/9
instances [1] 34/15
instead [3] 33/7 34/7 58/15
instructed [1] 34/5
intended [1] 25/8
intense [1] 9/8
intent [2] 41/18 54/16
intention [1] 59/18
interest [1] 50/25
interim [1] 40/16
international [1] 14/2
internet [1] 18/18
interpreted [1] 10/21
interrogatories [1] 19/17
interrupt [1] 59/25
interrupted [2] 52/15 60/24
intimately [1] 19/6
intimidating [1] 59/8
introduce [1] 2/5
introduced [1] 37/9
introduction [1] 37/16
invalid [1] 23/22
investigate [1] 11/10
investigated [1] 13/20
investigation [10] 11/7 11/8 13/23 14/20 23/16 23/18 23/23 27/9 43/7 56/11
investigations [2] 9/3 11/25
invited [2] 47/15 47/17
involved [4] 23/25 37/18 39/3 48/11
involvement [1] 49/22
involves [2] 12/5 56/12
IP [2] 45/13 45/17
irreparably [1] 49/21
is [143]
issue [3] 31/3 35/4 58/22
issued [2] 32/20 47/3
it [120]

it's [52] 1/6 1/7 13/17 14/3 14/3 14/3 14/3 14/8 14/14 15/8 15/14 17/18 17/19 17/22 18/1 19/23 20/20 22/20 29/10 31/15 33/20 35/12 37/15 38/12 38/18 38/25 39/2 39/14 41/14 41/17 42/16 42/19 44/3 44/16 44/19 44/24 46/2 47/2 48/15 52/6 52/12 53/3 53/13 55/14 55/16 56/10 56/18 58/2 59/17 60/2 60/16 61/1
its [6] 4/13 5/9 13/13 34/9 36/21 50/13
itself [1] 39/16

# J

January [1] 53/9
January of [1] 53/9
job [2] 47/11 55/14
John [2] 15/23 40/9
join [2] 47/16 47/17
judge [39] 1/10 2/16 2/21 3/21 4/4 5/6 7/17 9/16 11/16 12/18 16/11 17/9 22/22 24/8 24/11 25/6 26/7 26/8 27/25 28/5 28/20 29/2 32/12 32/20 33/11 33/16 33/17 34/11 35/1 35/14 36/1 36/6 36/25 37/8 38/9 38/19 39/2 47/3 49/12
judge's [4] 10/21 20/9 24/5 34/14
judicial [2] 32/10 35/7
jumping [1] 9/10
Junttila [2] 1/18 2/13
jury [2] 16/7 30/25
just [32] 5/3 7/22 8/2 17/18 17/19 23/19 24/20 26/3 33/7 33/12 39/2 39/11 39/23 40/17 40/23 41/15 43/5 46/8 46/24 49/9 49/16 51/1 52/2 52/7 53/2 54/7 55/14 57/15 57/18 58/7 58/15 61/6
justice [2] 13/24 32/14
justifications [1] 26/2
justified [1] 11/13

71

# K

**keep [1]** 29/24
**keeps [3]** 40/17 40/23 41/15
**key [7]** 3/16 5/18 15/22 15/22 19/4 20/2 36/24
**killing [1]** 14/12
**kind [2]** 36/14 44/16
**knew [2]** 27/10 60/21
**know [39]** 13/18 17/5 17/6 18/18 19/13 21/2 21/11 24/19 25/24 28/19 31/6 32/1 32/1 33/22 41/22 44/1 44/8 44/9 44/13 45/6 45/10 45/11 45/24 46/1 47/20 48/6 48/11 50/12 50/18 52/22 52/24 53/4 53/6 53/25 54/16 58/10 59/2 59/2 61/4
**knowledge [1]** 19/19
**known [1]** 45/17
**knows [8]** 36/8 37/11 45/25 46/3 47/20 50/19 58/11 58/22

# L

**label [1]** 58/13
**Lambert [43]** 1/18 1/19 2/13 2/19 2/23 2/23 2/24 31/24 32/22 32/24 33/3 33/10 33/18 33/25 34/3 34/15 35/15 36/2 36/8 36/10 36/22 37/5 37/9 38/19 39/20 39/21 39/25 40/19 44/4 45/6 45/21 45/25 46/5 46/12 46/18 47/4 50/1 52/18 57/21 58/5 58/9 59/3 59/10
**Lambert's [9]** 32/12 33/14 37/17 38/15 39/5 39/7 39/15 57/16 57/17
**language [2]** 37/12 41/8
**large [1]** 61/5
**largely [2]** 48/15 48/20
**last [4]** 36/16 49/10 49/11 49/13
**late [1]** 40/5
**latest [2]** 33/9 33/13
**latter [1]** 42/25
**laundering [1]** 14/21
**law [22]** 1/9 3/10 3/11

5/23 6/3 6/3 6/10 6/21 6/22 7/11 8/15 11/4 11/5 12/11 13/14 13/18 19/25 27/1 42/15 43/6 46/16 50/13
**laws [1]** 32/5
**layperson [2]** 59/8 59/9
**lead [4]** 15/4 15/24 16/1 16/1
**Leaf [7]** 33/24 34/8 43/10 43/12 44/9 44/25 45/9
**leaked [1]** 33/22
**leaking [1]** 37/11
**learning [1]** 36/22
**least [5]** 30/16 30/17 38/24 39/5 54/2
**leave [1]** 9/21
**left [2]** 47/6 47/8
**legal [3]** 3/3 21/19 57/8
**legally [2]** 10/3 29/22
**legislators [1]** 40/21
**legislature [3]** 8/25 9/1 53/11
**legislatures [3]** 56/10 56/16 56/19
**less [3]** 24/13 25/16 39/7
**let [5]** 10/19 37/15 38/6 44/20 58/9
**let's [7]** 5/6 9/14 10/17 38/16 39/2 39/4 40/5
**letter [2]** 36/10 57/3
**letters [4]** 40/21 41/2 56/9 56/21
**liability [1]** 23/21
**lie [1]** 27/15
**lied [1]** 56/17
**lies [3]** 31/25 31/25 32/1
**lift [14]** 8/21 8/24 12/19 12/22 18/5 19/1 20/17 26/18 27/7 27/7 28/7 30/5 55/19 57/7
**light [1]** 28/10
**like [16]** 3/20 13/16 14/16 16/11 23/7 27/21 31/23 38/25 40/21 43/25 44/24 45/14 48/25 49/14 50/3 57/12
**limit [1]** 57/23
**Lindell [3]** 26/19 45/10 48/22

**line [1]** 60/22
**link [1]** 35/19
**list [1]** 45/22
**listed [1]** 26/12
**listened [1]** 34/15
**listening [2]** 33/14 51/14
**literally [5]** 41/12 43/17 44/4 49/9 57/19
**litigate [1]** 41/23
**litigating [1]** 36/13
**litigation [8]** 3/6 5/23 19/24 20/1 37/18 50/14 55/9 55/10
**litigations [2]** 48/2 49/22
**little [1]** 34/23
**lives [3]** 58/24 58/25 58/25
**LLP [2]** 1/12 1/15
**local [1]** 27/13
**log [1]** 52/1
**logged [1]** 44/6
**long [2]** 3/6 36/5
**look [1]** 38/16
**looked [1]** 10/23
**looking [8]** 40/18 58/7 58/8 58/10 58/12 58/18 60/25 61/3
**lorraine [5]** 1/21 1/24 62/3 62/9 62/9
**Los [1]** 1/16
**lot [4]** 15/19 16/6 38/13 48/14
**lots [1]** 14/4
**love [2]** 9/19 45/24

# M

**machine [5]** 60/6 60/7 60/8 60/8 60/15
**made [28]** 4/20 4/24 5/9 9/16 9/18 10/13 16/3 16/11 17/3 18/10 20/10 21/15 25/18 26/1 26/7 26/14 27/20 28/17 28/20 29/11 34/13 37/23 46/4 53/25 54/1 54/5 54/18 58/21
**magistrate [55]** 2/16 3/21 4/4 4/10 5/6 5/16 7/17 7/24 8/5 8/19 9/6 9/16 10/20 11/16 12/23 16/11 16/15 16/16 17/9 17/16 18/4 18/22 18/23

18/25 20/9 20/16 22/22 23/6 24/5 24/8 24/11 24/16 25/6 26/7 26/8 27/25 28/5 28/20 29/2 30/14 30/22 31/2 32/12 32/20 34/11 34/14 35/1 36/25 38/9 39/2 47/3 49/12 51/24 52/5 57/4
**make [18]** 2/19 4/11 5/14 10/19 16/16 16/17 21/13 22/9 22/22 28/10 29/2 30/5 34/9 37/14 46/9 50/18 54/8 59/4
**makes [3]** 13/3 17/17 30/22
**making [6]** 5/10 11/3 24/2 27/24 28/19 28/20
**malicious [1]** 54/16
**managed [2]** 51/16 51/23
**Manhattan [1]** 1/13
**manufacturer [1]** 19/20
**many [13]** 4/24 10/13 10/13 11/24 13/24 16/18 21/7 32/4 43/12 44/1 44/1 50/11 58/25
**March [9]** 8/5 8/23 12/18 18/13 20/15 21/2 21/24 25/4 54/21
**mark [1]** 58/12
**massive [2]** 53/19 56/11
**match [3]** 43/5 60/8 60/9
**material [4]** 5/15 10/25 43/21 61/4
**materials [5]** 5/24 6/7 6/15 7/8 34/6
**matter [8]** 7/10 13/19 26/19 29/19 34/12 52/11 61/12 62/5
**matters [3]** 3/11 29/21 48/9
**may [9]** 2/7 17/25 24/3 30/12 31/18 31/20 39/8 39/8 59/21
**maybe [3]** 33/13 36/11 46/5
**McGlinchey [1]** 44/12
**me [55]** 2/9 3/15 3/23 4/15 4/16 5/3 5/5 6/20 7/16 7/23 8/11 9/15 9/24 10/4 10/19 12/10

**M**

me... **[39]** 12/10 12/13 12/20 13/7 13/12 16/11 16/25 17/5 17/8 17/15 17/21 18/1 18/7 18/7 19/3 20/13 21/6 21/10 21/12 21/18 21/25 23/13 24/24 25/12 25/14 28/12 29/19 29/21 31/4 34/5 37/2 37/22 38/6 44/20 52/7 52/17 54/11 59/19 61/14
mean **[3]** 15/7 42/21 42/25
means **[3]** 11/6 54/9 59/3
mechanism **[1]** 57/8
media **[2]** 10/9 10/10
memorandum **[5]** 2/16 17/1 17/16 20/10 26/9
mentioned **[4]** 42/3 42/4 55/8 55/10
MI **[1]** 1/20
Michigan **[8]** 3/25 8/25 19/5 19/8 19/9 19/17 19/22 41/9
middle **[1]** 5/19
might **[7]** 29/19 29/20 38/10 39/8 54/17 56/3 60/24
Mike **[3]** 26/19 45/10 48/22
millions **[1]** 47/25
mind **[2]** 17/23 38/19
minutes **[1]** 52/15
mischaracterizations **[1]** 52/25
mischaracterizing **[1]** 24/14
misconduct **[4]** 37/17 41/19 57/16 57/18
misdeed **[1]** 42/9
misinterpreted **[1]** 25/7
misled **[13]** 4/6 4/25 8/19 16/16 18/2 18/14 20/24 21/16 25/7 25/13 31/6 31/7 33/17
misrepresentations **[1]** 25/1
missing **[2]** 41/14 41/14
misstatement **[3]** 5/15

mistreated **[2]** 51/25 57/25
mock **[2]** 52/12 52/13
modifications **[1]** 16/3
modify **[1]** 19/14
moment **[4]** 4/11 16/18 36/18 36/24
money **[1]** 14/21
Montana **[2]** 8/25 41/10
month **[1]** 48/18
more **[10]** 24/10 24/11 28/21 33/24 35/17 36/16 37/4 46/5 46/25 51/7
more-appropriate **[1]** 24/11
more-recent **[1]** 24/10
morning **[6]** 2/2 2/7 2/11 2/12 31/15 31/16
most **[5]** 14/6 16/14 30/17 47/7 60/12
mostly **[1]** 44/22
mother **[1]** 51/6
motion **[9]** 1/9 26/18 27/6 28/7 36/11 36/21 40/19 40/20 57/7
motions **[8]** 8/21 8/24 12/22 18/5 19/1 20/17 30/4 55/19
move **[1]** 48/5
moved **[1]** 46/13
Mr **[1]** 5/22
Mr. **[22]** 2/15 6/5 21/1 22/18 28/18 28/22 29/3 34/20 35/5 35/15 36/19 37/5 39/21 40/22 42/4 43/1 45/16 47/9 47/16 47/25 49/2 55/1
Mr. Byrne **[14]** 6/5 21/1 28/18 35/5 35/15 36/19 37/5 39/21 42/4 45/16 47/9 47/16 47/25 49/2
Mr. Byrne's **[6]** 2/15 22/18 28/22 29/3 34/20 43/1
Mr. Poulus **[1]** 55/1
Mr. Poulus's **[1]** 40/22
Ms **[8]** 2/23 32/12 33/25 34/15 46/12 46/18 47/4 57/21
Ms. **[46]** 2/19 2/23 2/24

10/8 10/9 31/13 31/24 32/22 32/24 33/3 33/10 33/14 33/18 34/3 34/24 35/15 36/2 36/8 36/10 36/22 37/5 37/9 38/15 38/19 39/5 39/7 39/15 39/20 39/21 39/25 40/19 44/4 45/6 45/21 45/25 46/5 50/1 50/7 52/18 54/5 55/7 57/2 57/3 57/17 58/5 58/9 59/3 59/10
Ms. Brook **[6]** 31/13 50/7 54/5 55/7 57/2 57/3
Ms. Lambert **[33]** 2/19 2/23 2/24 31/24 32/22 32/24 33/3 33/10 33/18 34/3 35/15 36/2 36/8 36/10 36/22 37/5 37/9 38/19 39/20 39/21 39/25 40/19 44/4 45/6 45/21 45/25 46/5 50/1 52/18 58/5 58/9 59/3 59/10
Ms. Lambert's **[6]** 33/14 38/15 39/5 39/7 39/15 57/17
Ms. Peters **[1]** 34/24
much **[4]** 37/4 48/17 51/7 57/10
multiple **[4]** 12/22 51/8 51/11 54/23
must **[1]** 13/11
my **[77]**
My Pillow/Mike **[1]** 48/22
myself **[1]** 34/22 51/10

**N**

name **[10]** 7/6 39/23 42/3 43/13 43/25 45/12 50/23 54/3 55/7 55/9
names **[1]** 59/4
national **[1]** 50/14
nearly **[2]** 36/25 49/8
necessarily **[1]** 49/23
necessary **[3]** 13/4 34/14 51/1
necessitate **[2]** 32/19 41/3
need **[8]** 7/21 8/7 43/5 47/8 48/23 49/2 61/5 61/8
needed **[5]** 6/23 26/23

needn't **[1]** 12/10
needs **[3]** 21/20 49/9 53/15
negative **[1]** 54/16
negligent **[1]** 53/14
Neither **[1]** 21/21
never **[5]** 23/20 23/23 24/19 27/18 27/21
new **[4]** 1/13 36/14 47/12 47/19
New York **[1]** 36/14
next **[4]** 34/18 35/9 36/4 37/8
NICHOLS **[2]** 1/9 38/19
night **[2]** 47/3 49/13
no **[21]** 1/3 8/9 9/22 9/22 15/6 22/21 25/11 27/1 28/8 28/8 28/8 35/12 35/17 36/23 37/23 41/20 44/22 44/22 54/16 54/19 59/18
nonetheless **[1]** 10/15
not **[119]**
not-found-fact **[1]** 38/2
note **[1]** 37/14
notes **[2]** 33/13 54/24
nothing **[9]** 33/4 34/3 34/19 35/21 35/21 35/23 46/14 46/15 50/17
noticed **[1]** 41/6
notified **[2]** 26/23 60/12
notifying **[1]** 11/9
November **[2]** 16/4 19/10
now **[10]** 8/11 17/13 18/16 19/13 31/8 31/12 33/8 45/25 52/3 58/7
number **[6]** 15/3 43/23 49/1 50/3 52/24 54/1
numbers **[1]** 59/5
numerous **[7]** 21/15 21/17 22/1 39/19 53/21 54/5 56/12
NW **[1]** 1/23
NY **[1]** 1/13

**O**

OAM **[1]** 48/19
oath **[1]** 32/4

**O**

**object [1]** 57/4
**objected [1]** 47/13
**objection [7]** 2/18 34/18 35/9 40/14 56/25 59/15 59/19
**objections [1]** 2/15
**obligation [1]** 12/16
**Obradovich [1]** 15/24
**obstruction [1]** 13/24
**obviously [2]** 46/1 56/4
**occurred [2]** 19/11 20/22
**October [2]** 1/5 62/9
**offered [1]** 50/23
**office [7]** 1/19 3/7 6/18 6/19 7/9 11/5 52/13
**office's [1]** 11/10
**officers [1]** 35/8
**offices [2]** 50/14 51/8
**Official [2]** 1/22 62/3
**officials [1]** 6/6
**Oh [1]** 7/4
**okay [21]** 4/9 7/4 8/9 8/12 9/14 10/12 10/19 11/5 14/4 17/14 18/15 22/15 24/24 30/7 38/15 39/2 39/13 44/23 50/8 57/10 59/20
**old [1]** 47/17
**once [4]** 13/22 24/8 48/14 54/20
**one [34]** 1/13 15/5 19/6 21/22 22/25 24/14 27/25 28/20 29/1 32/16 32/17 34/23 34/24 35/18 35/25 41/25 42/17 43/9 44/4 44/17 45/7 45/13 45/13 46/21 47/22 51/8 51/12 51/14 51/14 51/23 52/8 54/7 57/25 60/1
**one attorney [1]** 51/8
**one complaint [1]** 51/23
**one day [2]** 51/12 51/14
**one deposition [1]** 46/21
**one device [1]** 51/14
**one example [1]** 52/8
**one exists [1]** 21/22
**one is [3]** 27/25 28/20

**one of [4]** 19/6 24/14 41/25 45/7
**one really [1]** 45/13
**one regarding [1]** 34/24
**one specific [1]** 35/25
**one that [3]** 22/25 34/23 44/4
**One was [1]** 57/25
**one we [1]** 44/17
**ongoing [2]** 9/2 11/25
**online [1]** 44/10
**only [13]** 4/10 6/17 19/18 27/10 32/21 37/9 40/1 41/7 46/20 46/22 48/13 53/11 57/21
**operates [1]** 56/18
**opinion [19]** 2/16 4/12 9/10 10/21 14/6 17/1 17/16 20/10 23/4 26/9 28/9 29/13 29/15 29/16 29/21 30/23 37/22 53/14 56/17
**opportunity [15]** 3/19 4/15 8/20 25/25 26/6 31/7 33/20 35/16 35/18 36/3 37/5 46/9 47/9 48/3 59/11
**opposing [1]** 54/3
**opposite [2]** 32/25 47/2
**oral [1]** 40/18
**orchestrate [1]** 40/8
**order [89]**
**ordered [4]** 12/20 13/1 48/23 49/11
**ordering [1]** 25/3
**orders [8]** 8/21 20/17 32/23 33/16 34/16 40/16 49/21 55/18
**organization [1]** 15/18
**original [2]** 13/5 42/9
**other [24]** 9/15 10/9 11/6 15/3 16/10 18/10 18/11 18/21 20/9 22/22 23/2 36/5 36/11 40/11 41/20 41/23 42/10 42/17 46/4 47/13 50/22 51/8 51/22 61/7
**others [2]** 43/12 44/9
**otherwise [2]** 11/13 13/25
**our [13]** 28/18 32/5

49/9    32/13 32/24 41/4 44/8
53/11 53/11 53/12 53/17 55/22 57/19 60/12
**out [13]** 12/4 27/20 29/1 39/20 42/1 44/1 44/5 44/18 45/13 47/8 47/10 59/4 60/13
**outrageous [5]** 16/14 18/8 21/1 23/7 26/14
**outside [2]** 5/22 6/9
**over [9]** 32/9 35/14 36/17 36/17 43/16 43/17 48/2 53/14 54/19
**oversight [1]** 53/18
**own [6]** 8/7 25/7 25/10 34/9 43/8 44/25

**P**

**PROCEEDINGS [1]** 2/1
**p.m [1]** 61/16
**page [3]** 32/21 36/7 37/16
**Page 20 [1]** 36/7
**Page 3 [1]** 37/16
**pages [5]** 29/16 30/11 33/9 39/22 57/18
**papers [2]** 3/17 33/2
**part [9]** 14/2 17/10 23/14 33/19 45/5 46/6 55/5 55/6 60/16
**parte [4]** 12/13 22/3 36/5 57/3
**participated [1]** 22/2
**particular [4]** 24/3 35/5 45/12 45/16
**particularly [2]** 36/18 43/21
**parties [5]** 25/18 39/4 48/10 48/19 48/20
**parts [2]** 6/13 7/25
**password [4]** 43/13 43/25 44/25 45/2
**passwords [2]** 5/23 6/6
**PATRICK [5]** 1/6 2/4 31/24 45/10 48/22
**pause [3]** 18/17 31/17 34/2
**pending [2]** 12/4 47/24
**people [7]** 5/22 5/25 6/2 6/2 6/9 14/12 51/19
**percent [1]** 39/23

**perhaps [6]** 6/5 13/3 38/8 39/20 43/24 48/7
**period [4]** 21/13 22/19 24/6 47/23
**permission [6]** 7/16 7/24 8/3 8/6 8/16 8/18
**permitted [2]** 13/13 13/18
**person [5]** 41/7 41/11 46/19 46/20 51/5
**personal [1]** 37/3
**persons [1]** 6/3
**Peters [4]** 26/24 27/10 27/16 34/24
**Peters' [4]** 26/17 27/12 29/3 45/8
**phone [1]** 59/5
**physical [1]** 42/2
**piano [3]** 35/7 42/5 54/6
**pieces [1]** 50/21
**Pillow [1]** 48/22
**place [12]** 6/24 7/12 8/22 14/7 21/24 22/3 48/24 49/9 51/20 52/22 56/13 58/4
**plain [1]** 58/7
**plainly [1]** 41/2
**plaintiff's [2]** 46/6 46/7
**plaintiffs [5]** 1/3 1/12 2/6 2/9 31/19
**plan [1]** 43/2
**please [6]** 2/5 2/8 31/18 44/5 53/23 58/9
**PLLC [1]** 1/19
**podcast [11]** 10/9 22/11 22/12 22/17 26/15 33/18 33/19 33/21 33/23 34/13 50/4
**podcasts [3]** 5/10 10/10 10/22
**point [20]** 5/5 12/14 12/25 16/11 16/25 17/5 17/8 17/15 21/10 23/10 29/1 30/8 36/6 45/14 46/4 46/10 47/7 57/20 58/21 60/1
**pointed [1]** 39/20
**points [3]** 27/25 28/20 57/15
**police [2]** 23/16 23/16
**politely [1]** 58/18
**position [2]** 11/2 23/17
**possession [1]** 44/12

# P

**possible [4]** 36/19 41/21 44/19 59/3
**possibly [4]** 14/6 14/10 16/17 60/14
**post [8]** 29/9 29/12 36/19 38/18 39/18 57/16 57/17 58/14
**post-status [1]** 39/18
**post-status-quo [3]** 29/12 38/18 57/17
**post-status-quo-order [1]** 29/9
**posted [1]** 44/10
**potentially [1]** 23/17
**Poulus [2]** 40/9 55/11
**Poulus's [2]** 15/23 40/22
**Powell [1]** 48/19
**power [1]** 34/5
**practice [2]** 3/9 3/24
**pre [3]** 22/19 24/6 39/15
**pre-status-quo [1]** 39/15
**pre-status-quo-order [2]** 22/19 24/6
**prefer [1]** 2/22
**prepare [1]** 51/10
**preparing [1]** 40/18
**preserve [1]** 27/1
**preserved [1]** 27/2
**pretty [3]** 33/21 48/17 59/19
**prevent [2]** 25/5 34/5
**prevented [1]** 55/4
**prevents [1]** 53/17
**preview [1]** 49/2
**previously [1]** 46/23
**principally [1]** 30/17
**principle [2]** 10/20 23/19
**principles [1]** 11/8
**prior [3]** 3/3 16/3 55/21
**private [2]** 3/9 20/1
**privilege [2]** 55/24 55/25
**probably [3]** 42/7 54/18 55/8
**problem [3]** 29/23 38/11 53/19
**problematic [1]** 39/7
**problems [2]** 29/25 53/12

**proceed [1]** 36/19
**proceeded [1]** 59/12
**proceedings [4]** 1/25 18/17 61/16 62/5
**process [7]** 3/14 22/2 22/7 32/10 35/10 38/13 41/5
**produced [3]** 1/25 6/7 6/15
**production [1]** 48/13
**professional [1]** 33/5
**professionally [2]** 22/5 52/2
**prohibited [1]** 11/12
**propagate [1]** 31/25
**proper [1]** 40/14
**proposition [2]** 12/8 38/23
**prosecutor [8]** 3/5 3/5 15/20 27/13 52/14 52/17 58/22 59/8
**Prosecutor's [1]** 3/7
**protect [2]** 7/12 32/5
**protected [2]** 37/20 55/23
**protective [37]** 5/10 5/14 8/21 10/8 10/11 10/15 11/12 11/20 12/12 12/15 12/17 12/19 12/23 13/6 13/10 18/6 18/12 19/1 20/17 22/12 22/13 23/12 23/14 26/18 27/7 27/8 27/21 30/5 33/4 40/13 40/24 41/17 44/15 44/17 55/6 55/20 57/7
**protonmail.com [1]** 1/20
**prove [1]** 6/24
**provide [11]** 5/21 5/22 6/15 6/20 7/6 7/10 7/17 9/2 15/21 44/16 56/23
**provided [9]** 6/5 6/18 7/23 19/9 19/12 53/8 56/21 56/23 60/20
**provider [1]** 45/16
**providing [1]** 7/24
**public [5]** 5/11 10/9 26/16 54/18 59/5
**public-speaking [1]** 10/9
**publicly [9]** 11/9 37/19 39/24 43/4 43/7 48/1 53/2 53/22 60/2

**published [1]** 32/21
**pull [2]** 17/23 18/16
**purpose [4]** 16/22 33/22 37/10 37/19
**purposes [2]** 30/19 38/21
**pursuant [1]** 58/5
**push [1]** 47/8
**pushed [1]** 47/10
**put [8]** 4/13 21/21 28/12 31/4 34/20 35/22 41/25 55/5
**putting [1]** 23/16
**puzzle [1]** 50/21

# Q

**question [19]** 3/24 4/1 7/3 8/2 11/2 11/14 13/5 15/8 15/8 17/9 20/8 38/6 39/12 41/24 43/21 44/3 46/20 48/6 59/25
**questioned [1]** 46/13
**questioning [5]** 46/22 47/2 58/8 59/12 60/23
**questions [12]** 7/21 8/7 9/12 15/22 20/3 52/4 53/23 54/25 56/3 58/20 60/20 61/6
**quickly [1]** 37/4
**quo [28]** 20/21 21/14 22/10 22/19 22/24 24/6 24/8 29/9 29/12 30/2 31/5 33/4 34/11 38/11 38/16 38/16 38/18 39/3 39/6 39/15 39/18 40/24 41/20 56/5 57/16 57/17 58/5 58/17
**quote [1]** 21/12

# R

**r. [1]** 55/15
**r. Byrne's [1]** 55/15
**raises [1]** 37/17
**rant [2]** 42/5 42/5
**rapped [1]** 49/11
**rare [1]** 32/17
**rarely [1]** 54/9
**rather [2]** 32/15 56/7
**read [4]** 3/17 4/16 37/13 58/13
**readily [1]** 35/13
**reading [3]** 37/22 60/1 60/2
**ready [1]** 19/4

**real [2]** 34/23 40/6
**realize [4]** 24/2 38/24 39/17 59/16
**really [11]** 7/3 28/21 33/10 38/20 38/24 39/1 45/13 48/10 49/18 52/6 54/25
**reason [10]** 7/19 18/11 23/22 35/4 44/10 46/3 46/14 53/13 58/2 58/16
**rebuttal [1]** 57/22
**recall [3]** 7/6 35/3 43/23
**received [1]** 45/23
**receiving [1]** 55/2
**recent [1]** 24/10
**recognized [1]** 32/12
**reconcile [1]** 60/11
**record [16]** 2/6 24/9 26/3 28/11 29/17 32/8 33/19 34/20 35/13 35/22 36/9 38/17 38/18 42/13 47/21 62/5
**recorded [1]** 1/25
**refer [3]** 54/2 57/18 58/15
**reference [1]** 37/8
**referring [2]** 37/12 52/2
**reflects [1]** 24/9
**refuse [1]** 49/4
**refused [2]** 44/12 58/19
**regard [2]** 10/12 28/6
**regarding [8]** 3/10 4/20 4/20 28/17 29/2 34/24 53/21 54/5
**regards [3]** 11/19 55/21 56/9
**regular [1]** 55/12
**reinforces [1]** 39/19
**reiterate [1]** 49/16
**related [3]** 26/17 50/11 55/24
**relates [4]** 11/6 11/25 14/21 20/1
**relationship [1]** 55/22
**released [1]** 33/25
**relevant [1]** 54/25
**relied [8]** 5/16 10/24 11/18 18/22 18/23 20/11 25/25 31/7
**relief [2]** 46/14 49/17
**rely [3]** 35/2 37/15

**R**

rely... [1] 38/1
relying [3] 21/24 25/1 30/8
remaining [1] 47/6
remarks [2] 55/14 57/23
remedy [4] 13/4 38/7 53/11 53/21
remember [1] 42/4
remembered [1] 37/13
remoted [1] 16/2
remove [4] 3/15 10/16 19/3 21/25
removed [3] 9/13 25/12 46/7
Renaissance [1] 1/19
repeated [2] 37/17 40/15
repeatedly [1] 37/7
replaced [1] 3/2
replacement [1] 47/22
report [4] 19/14 23/5 60/3 60/4
reported [2] 1/21 6/22
Reporter [2] 1/22 62/3
reports [1] 19/23
repository [1] 43/13
represent [5] 3/12 15/9 31/9 54/7 61/2
representation [1] 19/25
representatives [1] 56/14
represented [4] 10/24 11/19 13/25 58/19
representing [1] 61/7
Republic [1] 48/20
republished [1] 19/16
request [2] 3/15 40/15
requested [2] 8/25 9/1
requesting [1] 49/18
requests [2] 9/3 11/5
require [1] 13/7
required [2] 27/1 52/3
requires [3] 7/25 39/16 44/15
requiring [1] 46/23
reschedule [1] 51/16
respect [9] 11/14 21/13 22/9 22/23 24/6 28/1 28/15 29/8 39/9
respects [1] 24/10
respond [15] 3/19 4/14

9/20 18/7 25/25 26/5 31/8 34/22 35/12 46/9 50/4 55/22 56/6 57/12 59/21
responded [1] 57/6
responds [1] 33/25
response [2] 38/23 47/1
responsibility [1] 33/6
restrictions [1] 25/17
result [9] 16/15 18/2 21/23 24/10 25/8 25/13 32/17 39/17 55/10
reversed [1] 36/12
revictimized [1] 32/9
review [1] 33/20
reviewed [1] 33/1
right [34] 4/24 6/11 7/15 8/10 8/13 9/23 10/2 11/1 12/7 16/16 17/13 18/6 18/8 18/16 23/4 23/20 24/22 24/25 26/3 26/22 31/10 32/22 35/12 36/13 39/23 42/10 45/3 45/11 50/7 52/3 52/10 54/14 54/14 54/21
role [1] 52/14
roles [1] 19/7
room [2] 32/4 51/15
root [1] 60/18
root-cause [1] 60/18
round [2] 33/9 33/13
routine [1] 55/14
RPR [1] 1/21
ruled [1] 37/3
rules [5] 18/5 33/5 34/16 41/18 49/20

**S**

sacred [2] 14/14 55/25
sad [2] 32/3 32/3
safety [1] 42/2
said [32] 5/13 6/10 7/22 8/14 10/10 17/10 18/4 18/20 19/18 20/16 22/16 23/2 23/13 24/18 27/13 29/20 29/20 30/23 33/12 33/18 34/19 35/17 38/14 42/12 44/5 44/13 47/8 50/4 50/10 57/1 61/8 61/12
salacious [1] 40/3

salient [3] 17/2 17/16 17/18
same [12] 12/6 32/4 35/22 41/7 41/8 41/8 41/11 41/12 42/5 45/20 51/15 51/19
sat [1] 36/24
satisfied [1] 21/25
satisfy [1] 3/23
say [21] 5/7 20/10 26/5 28/9 33/4 33/11 33/18 34/3 34/25 35/20 35/25 38/13 42/13 43/9 44/20 47/5 49/3 50/16 52/3 57/21 58/13
saying [8] 17/6 17/19 30/17 43/15 51/18 54/6 54/10 57/17
says [9] 17/1 17/18 23/21 33/23 34/7 37/17 40/2 56/24 59/7
schedule [3] 47/15 49/12 51/24
scope [1] 44/11
scrambling [1] 47/11
seal [1] 40/4
search [1] 11/6
second [13] 9/18 18/23 20/12 25/2 25/23 26/4 26/10 28/21 28/25 29/12 35/11 42/8 58/21
Secretary [5] 19/16 19/17 19/21 60/10 60/10
see [5] 9/9 22/6 25/17 39/4 52/23
seek [2] 7/16 13/8
seems [1] 25/14
seen [2] 24/19 26/16
senators [2] 40/21 56/13
sent [2] 46/22 57/3
sentencing [1] 27/12
separate [2] 23/23 23/24
separation [1] 13/21
Serbia [1] 16/1
Serbian [1] 14/3
serious [9] 6/22 14/20 15/19 16/8 21/3 32/2 37/17 53/5 58/24
served [3] 26/20 26/22 40/12
service [2] 40/8 45/16

see [7] 10/17 20/15 25/15 32/8 51/11 52/13 52/21
setting [1] 52/13
settings [1] 52/18
seven [1] 33/15
several [1] 9/5
severe [1] 39/17
severed [2] 23/13 43/16
severity [1] 49/17
share [1] 42/14
sharing [1] 37/19
she [166]
she's [5] 19/18 24/19 41/16 41/23 49/23
sheer [1] 37/19
sheriff [7] 7/6 44/9 44/25 45/9 53/1 53/1 53/20
sheriff's [1] 53/22
ship [1] 32/23
short [1] 47/23
shorthand [1] 1/25
shortly [1] 61/14
should [14] 3/20 24/11 24/13 25/9 28/22 30/19 31/4 32/17 47/16 47/22 48/6 50/12 55/4 56/15
shouldn't [3] 38/21 39/9 55/8
show [4] 32/22 37/5 46/18 51/5
showing [3] 18/2 27/14 27/17
shown [1] 34/15
shows [1] 43/10
sic [3] 56/10 60/3 60/17
sick [1] 15/25
side [1] 41/24
sift [1] 43/14
significant [9] 3/7 5/17 14/7 18/1 18/9 53/10 55/9 58/2 60/4
silence [1] 11/24
siloed [1] 50/13
simple [1] 36/9
simply [1] 48/4
since [1] 9/7
single [5] 20/11 41/24 46/19 46/19 52/1
Sir [1] 34/4
sit [1] 49/3

**S**

situation [2]  28/2 29/4
slew [1]  59/7
slot [1]  51/21
Smartmatic [2]  12/3 12/3
so [96]
so-called [2]  33/16 46/16
software [1]  20/7
solely [1]  21/24
solution [1]  41/21
some [22]  7/13 10/9 10/17 26/14 26/15 29/20 29/21 30/17 33/9 36/24 39/11 45/25 47/10 48/4 48/12 48/15 48/18 48/21 49/8 50/12 50/14 57/5
somehow [2]  34/21 37/1
someone [8]  5/21 6/4 7/5 7/7 32/3 41/11 45/11 52/12
something [7]  11/5 23/24 24/13 26/24 27/21 28/1 54/6
Sometimes [1]  54/23
somewhere [1]  55/4
soon [2]  59/17 59/19
sorry [3]  36/17 55/22 57/2
sort [1]  54/17
sound [1]  54/12
source [2]  60/5 60/18
space [1]  41/13
speak [3]  21/18 21/18 28/3
speaker [1]  26/16
speaking [1]  10/9
speaks [1]  26/16
specialist [1]  3/10
specialized [1]  9/11
specific [15]  4/12 5/5 16/13 17/15 21/12 22/8 29/25 34/19 35/9 35/21 35/23 35/25 39/18 56/6 59/9
specifically [9]  4/25 5/13 17/8 21/10 26/8 28/3 29/5 30/15 57/17
specificity [3]  4/17 34/22 34/24
speech [2]  4/24 21/22

spend [1]  36/5
spoke [1]  24/17
stake [1]  39/2
stand [1]  48/8
standard [2]  10/16 25/9
standing [1]  18/12
Stars [1]  1/16
start [5]  3/20 4/21 5/6 10/4 39/11
started [1]  14/21
starts [1]  13/23
state [12]  3/25 19/16 19/21 27/6 40/21 41/9 41/10 41/10 50/23 56/13 60/10 60/10
State's [2]  19/17 53/12
stated [3]  11/19 21/2 22/13
statement [12]  17/3 17/16 18/10 18/21 18/22 20/11 21/9 26/15 30/22 34/13 35/5 50/6
statements [21]  4/20 4/24 4/25 5/10 5/11 5/14 10/13 10/14 21/16 27/20 27/22 27/23 28/15 28/17 30/5 31/2 34/20 53/25 54/1 54/5 54/8
states [8]  1/1 1/10 16/2 20/25 49/4 55/4 56/12 56/15
states' [1]  56/9
stating [2]  23/3 57/6
status [29]  20/21 21/14 22/10 22/19 22/24 24/6 24/8 25/4 29/9 29/12 30/2 31/5 33/4 34/11 38/11 38/16 38/16 38/18 39/3 39/6 39/15 39/18 40/24 41/20 56/5 57/16 57/17 58/5 58/17
stay [3]  48/5 49/24 55/17
Ste [3]  1/13 1/16 1/19
steam [1]  59/17
steaming [1]  59/16
Stefanie [2]  1/18 2/12
STEFANIEA [1]  1/19
stenotype [1]  1/25
step [1]  25/15
Stephanie [1]  34/1

steps [1]  6/5
still [9]  12/5 13/6 31/15 31/24 39/25 40/4 40/13 44/8 46/3
stood [1]  18/4
stop [2]  23/18 34/3
straggler [1]  49/8
straight [2]  32/8 45/22
straightforward [1]  33/21
strategy [1]  47/12
strike [1]  54/11
strong [1]  12/9
struggle [3]  31/22 32/3 32/7
struggling [1]  31/21
stuff [3]  38/15 40/6 52/20
subject [1]  58/23
submitted [3]  40/5 49/12 61/13
subpoena [2]  40/10 55/2
subpoenaed [2]  45/8 55/2
subpoenas [4]  26/20 26/22 40/12 40/14
subsequent [2]  8/17 13/3
subsequently [3]  12/21 18/12 30/2
subspecialty [1]  15/17
substance [1]  29/6
substantial [1]  4/19
success [1]  46/15
successful [1]  4/23
such [4]  18/2 37/23 47/11 55/8
suffer [1]  59/1
suffered [1]  59/1
sufficient [1]  44/20
suggested [3]  42/6 46/5 46/6
suggesting [1]  43/20
suit [1]  15/5
suits [1]  14/24
summarizes [1]  38/4
supplemental [14]  3/15 3/19 4/13 8/20 9/7 18/24 20/12 21/8 25/2 25/23 26/4 26/11 34/25 35/10
supplements [1]  40/7
supported [1]  29/22

suppose [1]  45/13
supposed [2]  23/14 32/10
supposedly [1]  13/12
sure [15]  3/22 4/2 4/18 5/4 5/8 10/19 17/20 17/24 17/24 27/3 29/19 46/9 56/8 56/14 59/23
surreplies [1]  35/17
surreply [2]  35/16 35/16
surreptitiously [1]  36/18
SUSMAN [2]  1/12 1/15
susmangodfrey.com [2]  1/14 1/17
Sussmann [2]  31/18 52/16
system [3]  31/25 32/14 53/12
systems [1]  46/17

**T**

tabulations [1]  19/18
take [12]  6/24 7/12 17/11 24/1 25/15 27/24 30/7 39/24 42/8 48/24 49/9 59/15
taken [2]  14/7 61/13
taking [5]  16/23 37/14 52/22 56/13 58/4
talk [5]  22/14 27/19 33/22 34/4 34/8
talked [1]  59/16
talking [3]  21/11 28/14 36/8 54/20
talks [1]  42/5
tally [2]  60/5 60/14
tape [4]  60/7 60/8 60/8 60/15
team [1]  6/19
technicality [1]  15/17
tell [11]  4/15 5/3 8/11 9/15 10/4 24/24 37/22 42/17 51/3 52/3 53/15
telling [3]  9/24 40/16 52/5
template [1]  41/12
Tennessee [2]  60/3 60/17
terms [1]  20/14
test [2]  37/6 42/7
testified [1]  56/16
testimony [1]  53/8

# T

**than [9]** 13/4 14/12 14/12 25/9 25/16 36/6 39/7 46/6 56/7

**Thank [15]** 2/21 2/25 31/10 31/11 46/11 49/14 49/25 50/2 57/10 57/11 59/14 61/10 61/11 61/12 61/15

**that [404]**

**that's [37]** 4/1 5/14 8/12 10/11 10/15 11/2 11/11 12/20 13/20 14/1 15/11 20/24 21/3 21/4 21/19 22/16 23/2 23/19 23/21 23/23 27/15 27/15 29/7 32/9 42/9 42/15 43/11 43/16 44/11 47/10 49/7 50/19 50/24 55/5 55/5 55/23 59/13

**their [19]** 16/1 19/7 20/7 25/22 42/2 43/14 44/11 50/24 51/2 56/17 58/24 58/24 58/25 59/4 59/4 59/4 59/5 59/7 60/21

**them [18]** 5/23 6/6 10/23 31/3 34/22 35/20 39/9 40/3 40/4 41/15 43/3 43/7 47/7 47/10 50/23 51/10 51/10 58/25

**themselves [1]** 42/1

**then [17]** 3/9 6/21 8/17 12/21 19/16 25/2 25/25 26/1 28/21 33/23 33/25 36/16 43/1 43/7 45/24 48/22 59/20

**theory [1]** 50/17

**there [43]** 4/19 5/1 11/24 12/1 13/24 14/19 14/20 16/5 16/5 16/10 22/3 23/11 23/20 30/11 33/10 35/11 36/10 36/16 36/23 38/13 38/25 39/1 39/19 40/1 41/20 42/1 42/24 42/23 43/24 44/2 44/10 46/2 46/20 47/5 47/7 48/4 48/21 49/8 50/3 50/17 51/12 59/4 59/20

**there's [13]** 7/1 8/14 12/3 13/21 27/6 27/14

49/14 52/24 53/17 53/20 54/15 54/16 56/11

**thereafter [2]** 25/20 39/4

**these [29]** 9/8 13/24 14/22 15/22 16/6 19/4 30/16 34/6 35/10 36/4 40/11 41/4 43/2 43/5 45/6 45/23 47/8 48/4 49/22 49/22 50/19 51/8 51/9 51/25 52/7 58/4 58/15 61/2 61/7

**they [58]** 4/24 6/2 9/2 9/4 10/13 12/23 12/24 12/24 13/23 15/22 15/25 19/7 20/5 20/17 26/13 26/23 27/8 27/10 27/22 27/22 32/1 32/1 32/13 34/11 34/21 35/20 35/24 37/5 37/6 39/7 39/25 40/2 40/3 41/6 41/7 41/8 41/10 41/12 42/23 43/10 43/13 44/1 44/11 44/12 44/13 45/7 45/9 47/14 50/18 50/25 51/2 51/20 55/1 56/19 59/2 59/2 60/21

**they've [4]** 13/25 20/6 44/9 51/9

**thing [6]** 33/11 35/25 36/4 36/14 36/17 38/9

**things [13]** 9/24 33/18 36/16 38/21 39/19 43/5 47/14 47/15 50/3 53/16 56/6 57/21 57/23

**think [34]** 3/20 5/16 7/16 8/11 9/1 10/24 13/9 13/17 14/18 16/16 18/9 18/9 18/20 21/10 24/4 24/15 24/16 24/23 25/1 25/6 25/23 26/15 28/19 29/5 37/11 38/14 38/17 39/5 39/15 41/9 48/11 49/3 54/18 61/1

**thinking [5]** 18/13 38/8 38/14 38/21 39/6

**third [9]** 9/18 18/24 20/12 25/2 25/23 26/4 26/10 29/12 35/11

**this [122]**

**those [36]** 5/20 6/2 6/3 9/3 9/20 10/6 10/10 20/17 20/24 22/4 24/7

30/9 31/4 32/25 34/10 35/18 38/21 40/14 41/2 43/1 46/15 47/16 47/18 48/24 48/25 56/10 56/15 56/16 56/19 56/21 57/23 58/20

**though [2]** 12/18 44/15

**thought [7]** 18/25 20/14 21/4 21/19 22/5 24/17 28/6

**thousands [1]** 46/1

**threats [2]** 55/11 58/24

**three [6]** 17/12 43/9 51/6 51/13 51/19 57/15

**through [15]** 4/17 9/9 9/17 20/7 21/8 22/6 33/2 34/2 38/11 43/14 52/23 54/24 55/11 56/5 57/18

**throughout [6]** 3/14 22/1 22/7 51/20 51/21 60/23

**tied [4]** 12/5 34/8 50/5 50/10

**tight [1]** 47/15

**time [13]** 3/6 5/18 11/24 21/7 21/25 35/18 41/25 45/12 47/23 51/19 51/21 52/1 58/4

**timeframe [1]** 3/16

**times [1]** 48/14

**timing [2]** 3/14 3/18

**Tina [7]** 26/17 26/24 27/8 27/9 27/12 27/15 45/8

**Tina's [1]** 28/4

**title [1]** 52/17

**today [12]** 2/9 3/23 6/4 24/2 33/12 35/23 36/1 40/20 41/6 42/7 45/21 50/10

**today's [2]** 31/21 40/18

**together [1]** 50/21

**told [7]** 6/23 7/11 8/5 8/14 12/18 27/1 36/9

**tolerated [1]** 32/13

**tone [1]** 52/21

**too [5]** 35/25 36/13 40/2 40/3 43/3

**took [10]** 8/22 9/5 21/24 22/3 32/4 47/1

48/14 51/13 59/20 51/21

**top [2]** 3/20 9/14

**torches [2]** 35/7 42/6

**total [1]** 34/16

**trace [1]** 45/17

**transcript [7]** 1/9 1/25 40/22 41/4 56/23 56/23 62/4

**transcription [1]** 1/25

**transcripts [1]** 57/6

**trauma [2]** 59/1 59/1

**trial [5]** 3/8 16/8 27/17 52/12 52/13

**tried [1]** 25/15

**true [4]** 14/10 30/24 39/8 62/4

**truly [1]** 41/19

**trusted [3]** 26/24 26/25 27/2

**truth [7]** 11/22 15/11 15/21 16/24 20/3 27/20 30/25

**try [4]** 17/13 19/2 25/17 33/7

**trying [10]** 16/16 24/20 29/1 29/22 33/8 40/6 40/23 52/17 52/21 59/3

**turn [1]** 23/15

**turned [1]** 53/5

**turning [1]** 33/12

**tweet [1]** 53/2

**tweeting [1]** 53/1

**tweets [1]** 43/23

**Twitter [2]** 34/2 46/2

**Twitter/X [1]** 34/2

**two [11]** 6/13 7/25 27/24 28/20 36/16 38/21 42/19 43/4 43/5 54/8 57/23

**type [2]** 10/17 26/14

**typo [1]** 41/8 41/12

# U

**U.S [3]** 1/22 14/2 14/8

**U.S. [1]** 14/1

**U.S.-based [1]** 14/1

**Uh [1]** 16/12

**ultimate [1]** 15/8

**ultimately [1]** 25/19

**unable [2]** 49/19 60/13

**unauthorized [1]** 44/2

**under [9]** 6/20 7/14 12/12 13/10 13/23 25/9

**U**

**under... [3]** 40/3 59/15 61/13
**understand [18]** 3/17 10/20 11/1 11/2 13/2 16/8 19/1 19/22 20/2 23/9 24/20 28/25 42/23 45/1 45/14 49/17 50/20 52/6
**understanding [4]** 15/16 31/6 53/3 56/11
**understood [1]** 9/12
**unethical [1]** 22/2
**unidentified [1]** 58/15
**unique [4]** 3/3 3/10 9/12 39/17
**UNITED [6]** 1/1 1/10 16/2 49/4 53/12 55/4
**United State's [1]** 53/12
**United States [2]** 16/2 55/4
**unkind [1]** 55/14
**unless [1]** 14/15
**unnamed [1]** 58/15
**unsuccessful [1]** 25/19
**unwilling [1]** 49/20
**up [19]** 2/19 9/10 17/23 18/16 35/25 39/25 43/2 46/2 46/18 47/12 47/14 47/14 47/15 48/25 49/8 49/11 51/5 51/11 59/18
**Upadhaya [7]** 11/16 32/12 32/20 33/11 38/9 39/3 49/12
**Upadhyaya [5]** 33/17 35/14 36/1 37/8 47/3
**Upadhyaya's [2]** 33/16 36/6
**uphold [1]** 32/5
**upholding [1]** 34/14
**upon [13]** 5/16 10/24 11/18 18/22 18/23 20/12 20/23 21/17 21/24 25/1 26/1 26/2 31/7
**us [8]** 1/3 2/3 14/15 32/4 44/6 44/18 49/19 58/9
**US-based [1]** 14/15
**use [4]** 27/16 35/6 37/1 59/3

**used [5]** 26/21 27/5 32/25 36/13 60/18
**user [3]** 43/13 43/25 45/12
**users [1]** 46/2
**uses [3]** 45/16 50/14 50/15
**using [4]** 31/24 45/11 58/1 60/19
**utilized [1]** 18/23

**V**

**various [2]** 40/11 48/2
**vendor [4]** 19/19 44/6 53/15 53/15
**Venezuelan [1]** 14/4
**verification [1]** 40/5
**version [2]** 19/10 19/12
**versus [2]** 36/11 48/14
**very [32]** 3/2 3/8 4/23 4/23 5/16 5/16 6/22 6/22 14/20 15/19 16/8 17/16 24/23 29/10 32/2 34/18 36/7 37/13 37/15 37/15 44/10 47/15 53/5 54/9 54/11 54/12 54/13 55/17 57/10 57/14 59/8 59/22
**vetted [1]** 36/1
**view [4]** 13/5 26/10 28/10 37/3
**violate [6]** 5/13 10/11 11/20 22/13 31/5 55/25
**violated [11]** 10/7 10/8 10/14 10/17 18/12 20/14 21/20 22/12 27/21 30/2 33/3
**violates [1]** 11/8
**violating [1]** 5/1
**violation [2]** 12/17 58/17
**violations [4]** 5/9 6/23 39/1 44/17
**vis [2]** 29/3 29/3
**vis-à-vis [1]** 29/3
**vote [6]** 14/14 16/5 19/11 19/15 60/5 60/14
**votes [2]** 20/6 20/6
**vs [1]** 1/4

**W**

**Wait [3]** 9/22 9/22 51/18

**waited [2]** 33/19 36/24
**waive [1]** 23/21
**walk [2]** 4/16 50/15
**walked [1]** 56/5
**walking [1]** 40/10
**want [15]** 14/15 17/5 17/8 17/15 17/21 42/8 46/14 47/16 47/22 52/7 52/20 55/7 55/12 56/6 56/19
**wanted [6]** 46/9 47/14 47/18 48/3 53/3 53/6
**wants [3]** 14/18 33/19 47/10
**warrant [1]** 11/6
**warranted [1]** 38/22
**was [152]**
**Washington [3]** 1/4 1/23 58/14
**wasn't [2]** 35/11 54/13
**water [1]** 23/4
**way [13]** 10/15 13/7 24/3 30/16 32/6 32/10 33/24 36/11 38/8 38/14 38/24 39/5 44/24
**Wayne [1]** 3/7
**ways [2]** 33/2 40/23
**we [71]**
**we'll [1]** 59/20
**we've [4]** 22/25 31/1 41/1 53/14
**website [1]** 55/12
**week [4]** 49/10 49/10 49/10 49/11
**weight [3]** 4/19 18/10 18/21
**well [6]** 14/11 22/25 36/8 39/6 59/2 61/4
**went [4]** 9/17 19/16 26/1 46/8
**were [52]** 4/25 5/7 5/18 5/19 8/17 8/22 8/24 9/4 9/7 9/19 10/5 11/24 12/3 13/20 15/22 15/22 18/24 19/4 20/23 21/14 22/3 25/24 25/25 26/6 26/22 27/8 28/21 34/10 34/12 34/18 34/21 34/21 35/9 36/4 39/1 39/7 39/19 41/6 41/10 43/1 43/23 43/24 44/2 45/6 45/7 45/7 47/8 47/11 50/5 50/10 51/18 57/23

**weren't [4]** 12/23 12/24 12/24 20/18
**West [1]** 1/13
**wet [1]** 23/4
**what [86]**
**what's [5]** 33/12 38/23 52/6 52/21 52/23
**whatever [2]** 53/13 54/7
**when [22]** 5/18 6/19 6/21 7/21 8/4 11/23 19/18 20/25 23/6 37/13 38/17 41/18 43/1 44/7 44/7 45/4 53/15 53/17 58/4 58/11 59/2 59/6
**where [15]** 5/13 8/19 16/25 17/6 17/9 19/6 36/7 42/5 45/9 46/21 48/8 48/8 49/7 57/19 60/14
**whether [9]** 3/18 11/6 20/19 29/21 34/10 34/12 38/22 39/1 56/22
**which [35]** 3/11 3/21 6/18 10/24 11/21 13/5 13/6 15/18 15/19 19/5 20/4 20/9 21/1 21/9 21/24 22/12 25/16 26/18 29/1 30/23 30/25 33/3 33/8 33/22 34/15 36/9 38/23 37/16 45/5 45/21 45/22 57/6 57/8 58/10 61/6
**while [10]** 4/10 4/22 17/25 18/9 18/24 47/23 50/14 51/9 52/17 54/17
**who [17]** 26/19 33/19 42/22 44/6 45/8 45/22 45/23 45/25 46/1 46/4 47/22 49/2 49/19 49/21 50/6 59/2 59/2
**who's [1]** 49/22
**whoever [1]** 43/25
**whom [2]** 6/12 6/14
**whose [1]** 7/6
**why [31]** 2/19 3/12 4/5 4/17 8/11 11/11 13/21 15/8 15/8 17/18 18/18 19/11 20/2 21/4 23/2 23/19 41/1 42/15 43/4 43/7 44/20 44/21 47/10 50/19 53/9 53/20 55/1 55/4 60/11 60/13 61/7
**wild [1]** 27/20

## W

**will [27]**  5/14 16/7
18/16 26/25 27/20
30/25 31/12 32/1 32/2
32/13 33/2 33/7 34/25
35/25 39/10 42/13
43/14 48/17 48/23 49/5
49/6 49/23 52/8 55/17
57/23 59/19 61/13
**Williamston [2]**  60/3
60/17
**willing [1]**  51/3
**win [2]**  16/9 31/1
**wire [1]**  54/6
**wires [2]**  35/7 42/5
**wish [1]**  37/3
**withdrew [1]**  42/22
**withheld [1]**  43/2
**within [3]**  7/9 14/16
36/21
**without [9]**  12/12
13/19 15/16 18/7 41/4
50/15 50/18 51/23 61/3
**witnesses [1]**  61/3
**Woe [1]**  40/2
**won [3]**  20/4 31/1
55/16
**won't [5]**  18/18 36/5
44/18 45/5 58/3
**words [2]**  34/10 50/5
**work [7]**  18/19 19/18
32/10 44/14 48/14 53/7
53/16
**worked [4]**  15/2 25/21
48/10 48/15
**working [9]**  5/22 6/18
6/19 6/20 7/10 12/5
42/18 53/4 53/7
**works [4]**  3/11 15/18
15/18 19/23
**Worse [2]**  14/12 14/12
**worth [1]**  47/25
**would [33]**  9/9 12/19
12/21 12/25 13/13
13/17 14/4 14/9 14/15
16/11 17/23 18/5 18/25
21/4 22/6 23/18 23/24
25/12 27/2 27/5 31/8
32/6 35/17 37/3 39/6
44/19 48/13 48/25 50/3
57/7 57/12 58/12 58/15
**wrap [2]**  47/14 48/25
**wrapped [3]**  48/17
48/17 49/8

**wrapping [1]**  47/15
**write [3]**  41/24 50/23
56/10
**writing [1]**  9/20
**written [3]**  26/13 41/7
41/11
**wrong [18]**  3/21 4/5
4/16 4/17 9/25 11/16
22/10 22/18 22/24
23/18 24/24 27/25
28/10 28/21 29/4 33/11
35/24 36/23

## Y

**yeah [3]**  17/7 23/10
44/23
**year [3]**  2/3 41/13
41/14
**years [4]**  15/3 51/9
53/14 58/23
**yelling [1]**  52/16
**yes [9]**  7/9 15/13 15/15
29/14 41/16 44/19
45/19 58/8 58/17
**yet [1]**  31/23
**York [2]**  1/13 36/14
**you [143]**
**you'd [2]**  45/11 49/14
**you're [4]**  9/24 30/15
30/17 36/13
**your [91]**
**Your Honor [48]**  2/2
2/7 2/12 2/24 3/1 3/14
3/22 4/6 6/9 7/19 8/1
9/17 11/4 12/2 12/14
13/15 14/25 17/4 18/9
18/19 29/10 31/20 32/7
35/23 36/6 37/11 38/3
40/17 41/8 42/9 42/25
44/3 44/19 45/15 45/19
45/20 46/11 49/16 50/2
51/12 52/11 54/4 57/2
57/14 57/15 59/13
59/21 59/24
**yours [1]**  28/23
**yourselves [1]**  2/6

## Z

**Zoom [2]**  51/7 54/23
**zooms [1]**  46/20