UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| U.S. DOMINION, INC., et al.,<br><br>    *Plaintiffs / Counter-Defendants*,<br><br>v<br><br>PATRICK BYRNE,<br><br>    *Defendant*. | Civil Action 1:21-cv-02131 (CJN) |

---

### DEFENDANT, PATRICK BYRNE'S REPLY TO DOMINION'S MEMORANDUM IN OPPOSITION (DOCKET NO. 151) TO HIS MOTION FOR RELIEF (DOCKET NO. 148) FROM ORDER (DOCKET NO. 144)

    Defendant, Dr. Patrick Byrne, files this Reply to Dominion's opposition memorandum to Dr. Byrne's request for relief from the Court's ruling of October 22, 2024, which affirmed the Magistrate's disqualification order.

    Undersigned counsel, who lives and works in Michigan, was required by Michigan law to disclose suspected criminal activity to law enforcement. See MCL 750.149. This provision, entitled "Compounding or concealing offense; Penalty" provides:

1

> Any person having knowledge of the commission of any offense punishable with death, or by imprisonment in the state prison, who shall take any money, or any gratuity or reward, or any engagement therefor, upon an agreement or understanding, express or implied, to compound or conceal such offense, or not to prosecute therefor, or not to give evidence thereof, shall, when such offense of which he or she has knowledge was punishable with death, or imprisonment in the state prison for life, is guilty of a felony; and where the offense, of which he or she so had knowledge, was punishable in any other manner, he or she is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00.

Further, one cannot draft or propose a protective order or contract that would ever prohibit the disclosure of a crime to authorities.  Such agreements would be considered void and unenforceable as they are contrary to public policy.  If it were otherwise, any corporation or entity could conceal crimes or enter into such sweeping protective orders to avoid criminal investigation and prosecution.

The Michigan Supreme Court has clearly stated that any contract whose consideration is to conceal a crime or stifle a prosecution is repugnant to public policy and therefore void.  See, e.g., *Case v Smith*, 107 Mich 416; 65 NW 279 (1895).

Additionally, the Michigan Court of Appeals has reinforced this principle, noting that contracts intended to conceal a crime or prevent prosecution violate public policy and are void. Furthermore, MCL 750.149, already noted, also criminalizes agreements to conceal an offense or not to prosecute, reflecting a strong public policy against such contracts.  See also, *Rivera v SVRC Indus*, 338 Mich App

663; 980 NW2d 777 (2021). Therefore, courts have consistently held that agreements construed to bar a party from reporting another party's alleged misconduct to law enforcement authorities for investigation and possible prosecution violate public policy and are therefore unenforceable. See, e.g., *Fomby-Denson v Dep't of the Army*, 247 F3d 1366 (CA Fed, 2001), *Cosby v American Media, Inc*, 197 F Supp 3d 735 (ED Pa, 2016), and *Lachman v Sperry-Sun Well Surveying Co*, 457 F2d 850 (CA 10, 1972).

In *Fomby*, *supra*, the federal circuit emphasized that enforcing such agreements would violate a well-defined and dominant public policy, citing multiple precedents that support the principle that agreements to conceal information relevant to the commission of a crime are not favored by the law. Accord *Cosby*, *supra*. Similarly, in *Lachman*, *supra*, the Tenth Circuit held that it is public policy to encourage the disclosure of criminal activity and declined to enforce a non-disclosure agreement that would have prevented the reporting of a possible crime. Accord *Fomby-Denson*, *supra*.

Additionally, the Restatement (First) of Contracts and other secondary authorities also support the view that contracts or agreements aimed at concealing or compounding a crime are illegal and contrary to public policy. *Cosby*, *supra.* Therefore, any contract or agreement that by design seeks to prohibit the disclosure

of a crime to authorities would be unenforceable under both Michigan and federal law. Furthermore, as an aside, not even attorney-client privilege would prevent the disclosure of suspected criminal activity.

Undersigned had not only a duty, but an absolute right to report the suspected criminal activity to law enforcement in Michigan. This is not a figment of undersigned's imagination. Those with whom Dominion has associated have been indicted recently. Additionally, some Smartmatic people still work for Dominion. On August 8, 2024, JUAN ANDRES DONATO BAUTISTA, ROGER ALEJANDRO PINATE MARTINEZ, JORGE MIGUEL VASQUEZ, and ELIE MORENO were indicted by the United States Department of Justice. (**ATTACHMENT 1**, DOJ Press Release and Smartmatic Indictment). In 2005, Smartmatic purchased Sequoia. In 2009 Dominion purchased Sequoia. There is little difference given the overlap and involvement by and between Dominion and Smartmatic given the number of former Smartmatic employees now working for Dominion. Dominion has at least 23 employees from Smartmatic and Sequoia including but not limited to Paul Chavez-Casanova (Software Developer III), Cheryl Holmes (Customer Relations Manager- FL, LA & MI), Rakhi Mediratta Chaudhari (Software Product Specialist), David Moreno (Director of Product Strategy), Sheree Noell (Director of Sales), Eric Coomer (Director of Product Strategy), Waldeep

Singh (Executive Vice President of Sales). (**ATTACHMENT 2**, Smartmatic Involvement).

While objecting on procedural grounds, Dominion brings up this Court's wide discretion to reconsider its prior interlocutory orders. Dr. Byrne points out a decision by a district court to disqualify counsel is always a "final order" with respect to *that* decision. Dr. Byrne cites *Koller By and Through Koller v. Richardson-Merrell, Inc.*, 737 F.2d 1038 (D.C. Cir. 1981), a case cited by Dominion, which actually points this out. See, specifically, i*d*. at 1417, stating that "an order granting disqualification in a civil case is, as a practical matter, *effectively unreviewable* on appeal from a final judgment on the merits." Further, as Dr. Byrne has previously pointed out, the Court of Appeals in *Koller* actually ordered reinstatement of the counsel in that case precisely because the reasons for seeking removal were done for strategic, tactical or other advantage, and not for the very narrow conflict scenario for which removal or disqualification of counsel is reserved.

Clearly, then, whether Dr. Byrne's motion was for reconsideration or relief from the Court's order, the Court must rule on the issue in order to advance the proponent's cause because of the harm done in removing a litigant's counsel in the middle of a case. Under Rule 54, this would be a manifest injustice because undersigned has worked on other lawsuits related to Dominion and only undersigned

has the unique knowledge required to represent Dr. Byrne. This is not an insignificant point. Undersigned has intimate knowledge of the facts and circumstances surrounding Dominion's actions and conduct nationwide. She is currently and has been involved in a multitude of cases involving Dominion, and in which Dominion's actions and conduct concerning their product is implicated – all pertinent factually and legally – to Dr. Byrne's defense in this defamation case. This is why Dominion has orchestrated an attempt to have undersigned removed from this case. Not only is undersigned the most experienced and qualified attorney for Dr. Byrne, which is why she is his counsel of choice, but she also has profound knowledge of Dominion's actions and conduct in this and many other cases. The Court needs to be aware of the deception and underhanded manner in which Dominion has acted in this regard.

In its memorandum in opposition, Dominion give only short shrift to Dr. Byrne's substantive argument concerning this Court's conclusion that law enforcement entites are *included* in the sweeping and gratuitous "blanket" protective order procured by Dominion in the beginning of this case precisely because they wanted to hide the extensive criminal activity that they and their employees and former employees have been engaged in throughout the course of this litigation and well before. The Court erred in its conclusion to include governmental entities

(including law enforcement) among the entities with which information covered by the protective order *could not be shared under any circumstance.*

Clearly, a litigant cannot purposefully use civil litigation to hide the scope of criminal activity. Simply by procuring a sweeping protective order, which goes against the default that all discovery is public information, Dominion has succeeded not only in hiding this activity, but also in directly (and indirectly through collaboration with state prosecutors) attacking those that know and expose the truth.

In a defamation suit with such high stakes, and where truth is a defense, it is beyond doubt that the strategy and tactic to remove undersigned as counsel for Dr. Byrne is the consequence of her knowledge and experience, and, most importantly, in her ability to mount the defense Dr. Byrne's needs.

Further, contrary to Dominion's references to the interviews and podcasts in which undersigned participated, there was no statement by undersigned that violated the protective order, or the status quo order. Indeed, the references to those orders were only made where undersigned confirmed that she was not able to divulge certain information as a result. Everything that was discussed by undersigned dealt with law and the application of the law, not the facts or any violation of the protective order.

Finally, Dominion has engaged in unprecedented obstruction both in this case, and nationally. Indeed, Dominion collaborated with the Michigan Attorney General to hide information in the Antrim County case in which undersigned was involved, and the Attorney General targeted experts and attorneys conducting legitimate litigation discovery in that case in order to prevent evidence and transparency.

Moreover, the coordination with Michigan goes further, because it was calculated to have undersigned detained during the hearing in which she appeared before the Magistrate in this case, all on the basis of a malicious and politically motivated prosecution that began with Dominion and the Michigan Attorney General in the Antrim County case in Michigan. In the latter case, the attorneys, including undersigned, retained experts in the course of litigation, involving, among others, Dominion. The Attorney General then sought to prosecute undersigned and other attorneys working on the case and vowed in July 2021 to weaponize her department to go after all attorneys bringing litigation against Dominion and others in Michigan. An assistant Attorney General was recorded saying that the prosecution had to find crimes and bring charges in Oakland County because it was a more favorable forum and stating that they had to find a crime, even if there were going after legal acts that the AG could allege were done in an illegal manner. The AG targeted opposing counsel while they were litigating the Antrim County case,

never bringing anything to the court's attention, and all the while coordinating with Dominion, who undersigned had announced was being sued.

The Michigan Attorney General orchestrated and communicated with Dominion as undersigned traveled to Washington for the hearing on Dr. Byrne's matter. While she was driving to Washington, undersigned got a call from the press asking if she was in fact going to go to the hearing in this court. She had already filed an appeal disputing the fingerprint order (alleged contempt of which was the basis for the detention), which order did not comply with the three prongs of the law, that to be legitimate, she would have to have been charged by information, arrested, or convicted at trial. None of these three things had happened, and undersigned was appropriately handling the matter by appealing it, and it never occurred to her that the Michigan Attorney General would misrepresent the court order that was on appeal, and work with Dominion to have a security officer in the hallway to orchestrate her detention here in Washington. Moreover, undersigned had not rented a hotel room and planned to return home to Michigan that evening.

Further, Dominion pretends that it only mentioned undersigned's criminal case in Michigan in passing, but in fact it has used this on multiple occasions in this court to sway the judges and shape the tenor of the proceedings to the great prejudice of undersigned, another example of manifest injustice in using the disqualification

9

process for the ulterior and wrongful motive to eliminate qualified counsel from representing Dr. Byrne. Dominion has brought the district court's attention to this in at least 22 separate instances. (See, Docket No. 75, pp. 14, ll. 4-9, and footnote; p. 22, ll. 3-5; Docket No. 82, p. 10, footnote, p. 12, ll. 11-13, p. 15, ll. 13-16; Docket No. 102, p. 5, ll. 1-3; Docket No 122, p. 6, ll. 7-8; Docket No. 126, p. 8, ll. 17-18, p. 9, ll. 1-2 and footnote, p. 15, footnote, p. 33, ll. 9-14, p. 36, ll. 10-15, p. 37, ll. 1-4 and 17-19; p. 40, ll. 8-11, p. 45, ll. 19-20; Docket No. 135, p. 5, ll. 26, p. 6, ll. 1-6, p. 20, ll. 6-9, and p. 30, ll. 15-19).

This is just yet another instance in which Dominion is not being straightforward and honest with the court in its efforts to strategically remove undersigned from the case.

What is most remarkable, and warrants consideration by the Court above all else, is that the criminal prosecution orchestrated as a weaponization of the Michigan Attorney General against her opposing counsel, has crumbled. The judge had canceled the trial. The judge will rule on a motion to quash the indictment and has ordered the State to comply with a subpoena and turn over hundreds, perhaps thousands of documents that were withheld concerning the intricacies of the political prosecution of undersigned and other attorneys in Michigan. These documents and evidence is likely to contain additional information concerning Dominion that would

further evidence its collusion not only in the Michigan cases, but also in its efforts to have undersigned removed as counsel. These new circumstances warrant consideration of undersigned's request that the court grant relief from its prior order.

WHEREFORE, for all of the foregoing reasons, Dr. Byrne requests relief from the Court's order disqualifying his chosen counsel and that she be reinstated to represent him in this matter.

Respectfully submitted,

/s/ Stefanie Lambert

_____
Stefanie Lambert Juntilla
Law Offices of Stefanie L. Lambert, PLLC
400 Renaissance Drive, FLOOR 26
Detroit, MI 48243

Dated: December 9, 2024                  attorneylambert@protonmail.com

<u>CERTIFICATE OF SERVICE</u>

I, Stefanie Lambert, hereby certify that on December 9, 2024, true and correct copies of the forgoing were served via email on counsel of record for every party in *US Dominion, et al. v. Patrick Byrne*, Case No. 1:21-cv-02131 (CJN).

    Respectfully submitted,

    /s/ Stefanie Lambert

    _____
    Stefanie Lambert Juntilla
    Law Offices of Stefanie L. Lambert, PLLC
    400 Renaissance Drive, FLOOR 26
    Detroit, MI 48243

Dated: December 9, 2024    attorneylambert@protonmail.com