EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) | Civil Action No. 1:21-cv-02131-CJN-MAU |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Judge Carl J. Nichols |
| v. | ) | |
| | ) | |
| PATRICK BYRNE, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STATUS REPORT

Pursuant to the Court's October 31, 2025, Minute Order, Plaintiffs submit this Status Report addressing whether the stay in this matter should be lifted in light of the issuance of the mandate from the Court of Appeals, what motions remain live for resolution, and the sequence of next events.

**Plaintiffs' Position**

Plaintiffs respectfully request that the Court lift the stay. The Court ordered on March 15, 2025, "that the case be stayed pending issuance of the Court of Appeals' mandate." That has now occurred: The D.C. Circuit mandate issued on June 17, 2025. Dkt. 160. And the Supreme Court denied Mr. Byrne's petition for certiorari on November 10, 2025. This case can therefore now proceed.

Plaintiffs further submit that the next steps in this case should proceed as follows: *First*, Defendant Byrne and his former counsel Stefanie Lambert should be directed to comply with Magistrate Judge Upadhyaya's August 13, 2024, Order requiring them to provide sworn affidavits regarding their misconduct that resulted in Ms. Lambert's disqualification from this matter. Dkt.

125 at 2–3; *see also* Dkt. 146. They have failed to do so to date, and their affidavits will likely furnish important information that bears on how the case should proceed. *Second*, the Court should enter Dominion's proposed document destruction protocol. *See* Dkt. 128. Magistrate Judge Upadhyaya's August 13, 2024, Disqualification Order authorized Dominion to propose a document destruction protocol with respect to Ms. Lambert by August 20, 2024. *See* Dkt. 125 at 3. When the Court stayed Ms. Lambert and Mr. Byrne's deadline to submit their affidavits, the Court also stated that, "[u]pon the District Court's resolution of any objections to the August 13, 2024 Order, the Court will consider Plaintiffs' proposal at ECF No. 128." *See* Second Minute Order of Aug. 23, 2024. Those objections have been resolved, and Dominion's proposed protocol (Dkt. 128) is thus now ready for consideration. *Third*, Plaintiffs respectfully request that Magistrate Judge Upadhyaya set a hearing on Dominion's other pending discovery motions. Those motions include: (a) Dominion's July 2, 2024, motion to compel regarding Byrne's refusal to produce key documents and other miscellaneous search issues, *see* Ex. A; and (b) Dominion's November 13, 2024, motion regarding Defendant Byrne's complete failure to respond to Dominion's Third Interrogatories, *see* Ex. B. Plaintiffs believe that the adjudication of these motions will impact whether any further discovery is necessary before dispositive motions and, if so, on what schedule. (Discovery concerning Plaintiffs—as opposed to concerning Defendant Byrne—is complete.). That includes whether Plaintiffs will further pursue Mr. Byrne's deposition, which Mr. Byrne failed to attend on December 5, 2024. *See* Dkt. 155-1 at 3-8 & Ex. 12.

On November 12, 2025, Dominion's counsel emailed Mr. Byrne a version of this Status Report, informed him of today's deadline, and requested that Mr. Byrne provide his position by 5:00 pm EST on November 13, 2025. In the afternoon of November 14, 2025, the date this Status Report was due, Mr. Byrne's new counsel, Peter Ticktin, entered his appearance on the docket.

Mr. Ticktin's associate then emailed counsel for Dominion requesting a seven-day extension to file the Status Report because Mr. Ticktin was traveling. Dominion consented to the extension but informed Mr. Ticktin and his associate that if the Court did not grant the extension before 7:00 pm this evening, Dominion would be filing this Status Report. Thus, while Dominion consents to Mr. Byrne's request for an extension, Dominion files this Status Report to comply with the Court's deadline.

Dated: November 14, 2025

Respectfully submitted,

*/s/ Davida Brook*
Davida Brook (D.C. Bar No. CA00117)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
dbrook@susmangodfrey.com

Laranda Walker (D.C. Bar No. TX0028)
Mary K. Sammons (D.C. Bar No. TX0030)
Jonathan Ross (D.C. Bar No. TX0027)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
jross@susmangodfrey.com

Stephen Shackelford, Jr. (D.C. Bar No. NY0443)
Eve Levin (D.C. Bar No. 1672808)
Christina Dieckmann (*Admitted pro hac vice*)
George El-Khoury (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Tel: (212) 336-8330
sshackelford@susmangodfrey.com
elevin@susmangodfrey.com
cdieckmann@susmangodfrey.com
gel-khoury@susmangodfrey.com

Edgar Sargent (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/ Davida Brook*

EXHIBIT A

| | |
|---|---|
| **From:** | Laranda Walker (via Dominion list) |
| **To:** | upadhyaya_chambers@dcd.uscourts.gov; hope_kashatus@dcd.uscourts.gov |
| **Cc:** | AttorneyLambert; Dominion Simplelist |
| **Subject:** | US Dominion, Inc., et al v. Byrne; Civil Action No. 1:21-cv-02131—Discovery Disputes |
| **Date:** | Tuesday, July 2, 2024 9:20:05 AM |
| **Attachments:** | Dominion-Byrne (No. 121-cv-02131) Discovery Dispute #1[1].pdf |
| | Dominion-Byrne (No. 1-21-cv-02131) Discovery Dispute #2[1].pdf |

---

EXTERNAL Email

Judge Upadhyaya and Chambers,

Dominion respectfully seeks the Court's assistance in resolving the discovery disputes outlined in the attached two documents.  Dominion provided Ms. Lambert with a draft of the attached documents on June 6 and has asked her numerous times to provide her client's positions for inclusion in same.  Ms. Lambert has not done so, nor has she engaged substantively with Dominion on any of these issues or provided a date certain by which she will commit to doing so.

Kind regards,

**Laranda Moffett Walker | Partner**
**Susman Godfrey LLP**
1000 Louisiana St. | Suite 5100 | Houston, Texas 77002
**HOUSTON • LOS ANGELES • SEATTLE • NEW YORK**
Office:  713.653.7842
Mobile:  225.485.4533

My Bio

To unsubscribe from this list please go to https://simplelists.susmangodfrey.com/confirm/?u=6ngEIjHEeTnZf7vtjRwwgQ8lQqCQUfKm

<u>**Judge Upadhyaya Discovery Dispute Template**</u>

*Instructions: Parties shall provide succinct statements answering the questions below for each dispute they seek to raise with the Court. The Parties shall submit one joint document. Submissions shall not exceed three pages per dispute without leave of the Court.*

<u>**DISPUTE # 1**</u>

**(1) The request at issue (<u>by requesting party</u>). Please state the text of the request as it was served, the number of the request (ex: RFP No. X; Interrogatory No. X), and date served.**

Dominion identified the following deficiencies in its May 9, 2024 letter:

- <u>**First**</u>, Mr. Byrne has not proposed any document custodians other than himself, even though members of his staff and other individuals worked for him on matters directly related to the defamatory statements.
- <u>**Second**</u>, Mr. Byrne has failed to confirm that he has searched all locations where non-duplicative, responsive information may be stored. For example, Dominion provided Mr. Byrne's counsel with a list of email accounts it understands Mr. Byrne uses and asked counsel to confirm that they have searched these and any other email accounts in Mr. Byrne's possession, custody, or control; Mr. Byrne's counsel has not confirmed. Nor has Mr. Byrne's counsel confirmed that they have searched phones, Apps, or other non-email locations where non-duplicative, responsive information may be located.
- <u>**Third**</u>, despite the Parties' agreement to an April 26, 2024, interim substantial completion deadline, it is clear from Mr. Byrne's prior counsel's representations that they had additional documents to produce, and obvious gaps and omissions in Mr. Byrne's document production, that Mr. Byrne's document production is not substantially complete. This is true for emails and mobile data (indeed Mr. Byrne has produced only three text messages and no other responsive text message or other App mobile data).
- <u>**Fourth**</u>, it is unclear whether Mr. Byrne will produce all non-duplicative, responsive information in response to several categories of documents Dominion requested, specifically, communications and documents called for in Dominion's Requests for Production Nos. 10, 12, 14, 47, 51, 52, 53, 54, 55, 56, 62, 63, 88, 90, 91, 92, 93, 94. Dominion has sought to resolve any disputes about these missing documents, asking Mr. Byrne to produce the requested documents, or, if he is refusing to produce responsive documents, confirm and provide a basis for same. Dominion has also suggested additional search terms for certain categories of requests to help further ensure that relevant documents and communications are captured.
- <u>**Fifth**</u>, some entries on Mr. Byrne's privilege log do not appear to reflect privileged information; other entries do not provide sufficient information to even assess a claim of privilege.

**(2) The objection to the request (<u>by responding party</u>). Please give the full text of the objection, if any, and date objection was made.**

1

**(3) Whether the discovery requested is in the responding party's possession, custody or control.  If not, explain why (<u>by responding party</u>).**

**(4) Brief Explanation for why the information/items requested are being sought, including why it is relevant to a party's claims or defenses (<u>by requesting party</u>).**

- With respect to the first, second, and third issues described above, Dominion seeks to ensure that Mr. Byrne has complied with his obligation to search for all responsive documents and information in his possession, custody, and control; and produced all non-duplicative, non-privileged, responsive documents and information located through those searches. To this end, Mr. Byrne should confirm he has collected and searched WhatsApp, Facebook, Instagram, Snapchat, Twitter, LinkedIn, Telegram, Signal, Confide, Slack, Teams, Yammer, Jabber, Google Chat, and any other electronic communication application he regularly used during the relevant time period.
- As to the fourth issue, Dominion seeks clarity on whether Mr. Byrne has produced certain documents he agreed to produce and whether he is refusing to produce other documents Dominion requested (and if so, why).
- As required under the parties' agreed protocol, and in accordance with Fed. Rule Civ. P. 26(b), Dominion seeks additional information about the basis of the asserted privilege for some entries on Mr. Byrne's privilege log so that Dominion can assess the privilege claims.

**(5) Brief explanation for why the information/items should not be compelled (<u>by responding party</u>).**

**(6) Brief description of meet and confer efforts, including date and manner in which meet and confer took place (<u>by each party</u>).**

<u>Dominion's Description</u>
- May 9, 2024, 20-page letter, with attachments, from E. Hadaway (Dominion's counsel)[1] to S. Lambert (Mr. Byrne's counsel) detailing deficiencies in Mr. Byrne's production and asking Ms. Lambert to confer within the next 7 days or otherwise respond and provide a date within the next 14 days by which she will remedy the deficiencies;
- May 13, 2024, email from E. Hadaway to S. Lambert seeking confirmation that Ms. Lambert received the May 9 deficiency letter;

---

[1] At the Court's direction, Dominion will provide a copy of the letter and its attachments via Dropbox.

- May 13, 2024, email from S. Lambert to E. Hadaway stating that she would respond to the May 9 deficiency letter the following day;
- May 21, 2024, follow-up email from L. Walker (Dominion's counsel) to S. Lambert asking for a date by which Ms. Lambert would cure the deficiencies identified or dates and times between then and May 31 to confer;
- May 22, 2024, email from S. Lambert to L. Walker stating that she would respond to the May 9 letter on May 24;
- June 6, 2024, email from L. Walker to S. Lambert again asking Ms. Lambert to, no later than close of business, June 10, 2024, provide substantive responses to the identified deficiencies, dates and times within the next 7 days for a Zoom conference, or Mr. Byrne's inserts to include in a submission to the Court;
- June 11, 2024, 8:33 a.m., email from L. Walker to S. Lambert following up on June 6 email after receiving no response and asking Ms. Lambert to advise before 3:00 p.m. if she would like to include her client's inserts in a submission to the Court;
- June 11, 2024, email response from S. Lambert to L. Walker, stating that she was available to discuss the discovery dispute on Thursday (June 13);
- June 11, 2024, email from L. Walker to S. Lambert providing availability for a phone or Zoom conference on Thursday, June 13, and asking that, in advance of the call, Ms. Lambert provide written, substantive responses to the issues laid out in Dominion's May 9 letter to allow for a more productive discussion;
- June 11, 2024, email from S. Lambert to L. Walker confirming the June 13 Zoom conference and stating that she would not provide a written response in advance of the conference but that she is "sure that the meeting on Thursday will be productive";
-  June 13, 2024, email from S. Lambert to L. Walker stating that she needs to move the meeting to Friday;
- June 13, 2024, email from L. Walker to S. Lambert agreeing to accommodate Ms. Lambert's request and move their Zoom conference to 11:00 Central on Friday
- June 14, 2024, Zoom conference between L. Walker and S. Lambert; Ms. Lambert commits to providing substantive responses, in writing, to the issues outlined in Dominion's May 9 deficiency letter no later than close of business on Tuesday, June 18; Dominion's counsel explains that if Dominion does not receive substantive responses per their agreement, it will need to seek the Court's assistance in resolving the disputes;
- June 18, 2024; rather than providing substantive responses as promised, S. Lambert informs L. Walker that "Mr. Byrne's previous attorney has provided additional information and files. I'm going to review and provide you with an update tomorrow."
- June 24, 2024, 7:56 a.m., email from L. Walker to S. Lambert stating that because Ms. Lambert did not provide substantive responses on June 18 as promised or provide an update on June 19 as promised, Dominion would need to submit the disputes to the Court to avoid continued delays; and asking Ms. Lambert to provide her client's inserts to this submission by close of business;
- June 24, 2024, email from S. Lambert to L. Walker, stating that she did not receive files from prior counsel until June 20 and that she could not address Dominion's discovery

concerns until after depositions that week taking place the week of June 24 were concluded; and suggesting that she needed an additional week after the depositions;

- June 24, 2024, email from L. Walker to S. Lambert stating that Dominion cannot afford continued delays given where the parties are in the discovery process and that if Ms. Lambert could not provide substantive responses to the issues Dominion in its May 9 letter by close of business on June 28, it would need to raise the issues with the Court;

- June 28, 2024, email from S. Lambert to L. Walker stating that because of depositions in the case she had not had time to address Dominion's discovery concerns but would do so "as quickly as possible"

**(7) Brief discussion of case law, if applicable and necessary to resolve dispute (<u>by each party</u>).**

**<u>Dominion's Position</u>**:

Rule 34(a) of the Federal Rules of Civil Procedure permit a party to serve upon another party a request to produce any designated documents which are in the responding party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A party responding to a Rule 34 production request "cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (quoting 10A Federal Procedure, Law Ed. § 26:377, p. 49 (1988)). In turn, a party withholding responsive information must provide a privilege log that complies with the federal rules. Fed. R. Civ. P. 26(b)(5).

<u>Judge Upadhyaya Discovery Dispute Template</u>

*Instructions: Parties shall provide succinct statements answering the questions below for each dispute they seek to raise with the Court. The Parties shall submit one joint document. Submissions shall not exceed three pages per dispute without leave of the Court.*

**DISPUTE # 2**

**(1) The request at issue (<u>by requesting party</u>). Please state the text of the request as it was served, the number of the request (ex: RFP No. X; Interrogatory No. X), and date served.**

- **Request for Production No. 60**: Copies of your federal and state income tax returns for years 2020, 2021, 2022, and 2023 (once available). [Served 5/24/23]

- **Request for Production No. 61**: Copies of all financial statements prepared by you or on your behalf during November 1, 2020, to the present. [Served 5/24/23]

- **Request for Production No. 76**: All documents and communications concerning financial contributions made by or to THE AMERICA PROJECT. [Served 8/24/23]

- **Request for Production No. 77**: All documents and communications concerning financial contributions made by or to YOU, THE AMERICA PROJECT, or any other for- or non-profit organization in which you hold a title or control, in whole or in part, in connection with litigation involving claims about DOMINION; its current or former employees; alleged, actual, or potential fraud in the 2020 PRESIDENTIAL ELECTION; allegations that voting systems had deleted, lost, changed, or compromised votes; or any defamation lawsuits concerning your statements about Dominion or Smartmatic. [Served 8/24/23]

- **Request for Production No. 80**: Documents sufficient to show the expenditure of "90% of my fortune" on Your efforts to uncover electoral fraud in the 2020 Presidential Election by Dominion and/or Smartmatic, as represented by You at 26:43-26:50 of the video in the Byrne September 26 Tweet. [Served 10/26/23]

- **Request for Production No. 84**: Documents sufficient to show Your assets, net worth, financial condition, and source of income as of the date of this Request. [Served 10/26/23]

**(2) The objection to the request (<u>by responding party</u>). Please give the full text of the objection, if any, and date objection was made.**

**(3) Whether the discovery requested is in the responding party's possession, custody or control. If not, explain why (<u>by responding party</u>).**

1

**(4) Brief Explanation for why the information/items requested are being sought, including why it is relevant to a party's claims or defenses (by requesting party).**

The Requests for Production at issue seek financial information related to the defamatory statements. Financial motive to lie is well-recognized evidence of actual malice. S*ee Harte-Hanks Communc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989). Moreover, Dominion specifically pled this issue in its complaint (Compl. ¶¶ 10, 124], and Mr. Byrne has not articulated any valid reason why Dominion should not be entitled to this discovery. To the contrary, Mr. Byrne has repeatedly put his finances at issue, claiming, for example, he has spent significant sums of his personal fortune to uncover election fraud by Dominion, and fund efforts to get rid of Dominion. Beyond actual malice, Mr. Byrnes's fundraising for and financial expenditures into efforts to harm Dominion also pertain to his willful, reckless conduct worthy of the imposition of punitive damages.

**(5) Brief explanation for why the information/items should not be compelled (by responding party).**

**(6) Brief description of meet and confer efforts, including date and manner in which meet and confer took place (by each party).**

**Dominion's Description**
- May 9, 2024, 20-page letter from E. Hadaway (Dominion's counsel) to S. Lambert (Mr. Byrne's counsel) detailing deficiencies in Mr. Byrne's production and asking Ms. Lambert to confer within the next 7 days or otherwise respond and provide a date within the next 14 days by which she will remedy the deficiencies;
- May 13, 2024, email from E. Hadaway to S. Lambert seeking confirmation that Ms. Lambert received the May 9 deficiency letter;
- May 13, 2024, email from S. Lambert to E. Hadaway stating that she would respond to the May 9 deficiency letter the following day;
- May 21, 2024, follow-up email from L. Walker (Dominion's counsel) to S. Lambert asking for a date by which Ms. Lambert would cure the deficiencies identified or dates and times between then and May 31 to confer;
- May 22, 2024, email from S. Lambert to L. Walker stating that she would respond to the May 9 letter on May 24;
- June 6, 2024, email from L. Walker to S. Lambert again asking Ms. Lambert to, no later than close of business, June 10, 2024, provide substantive responses to the identified deficiencies, dates and times within the next 7 days for a Zoom conference, or Mr. Byrne's inserts to include in a submission to the Court.

2

- June 11, 2024, 8:33 a.m., email from L. Walker to S. Lambert following up on June 6 email after receiving no response and asking Ms. Lambert to advise before 3:00 p.m. if she would like to include her client's inserts in a submission to the Court;
- June 11, 2024, email response from S. Lambert to L. Walker, stating that she was available to discuss the discovery dispute on Thursday (June 13);
- June 11, 2024, email from L. Walker to S. Lambert providing availability for a phone or Zoom conference on Thursday, June 13, and asking that, in advance of the call, Ms. Lambert provide written, substantive responses to the issues laid out in Dominion's May 9 letter to allow for a more productive discussion;
- June 11, 2024, email from S. Lambert to L. Walker confirming the June 13 Zoom conference and stating that she would not provide a written response in advance of the conference but that she is "sure that the meeting on Thursday will be productive";
- June 13, 2024, email from S. Lambert to L. Walker stating that she needs to move the meeting to Friday;
- June 13, 2024, email from L. Walker to S. Lambert agreeing to accommodate Ms. Lambert's request and move their Zoom conference to 11:00 Central on Friday
- June 14, 2024, Zoom conference between L. Walker and S. Lambert; Ms. Lambert commits to providing substantive responses, in writing, to the issues outlined in Dominion's May 9 deficiency letter no later than close of business on Tuesday, June 18; Dominion's counsel explains that if Dominion does not receive substantive responses per their agreement, it will need to seek the Court's assistance in resolving the disputes;
- June 18, 2024; rather than providing substantive responses as promised, S. Lambert informs L. Walker that "Mr. Byrne's previous attorney has provided additional information and files. I'm going to review and provide you with an update tomorrow."
- June 24, 2024, 7:56 a.m., email from L. Walker to S. Lambert stating that because Ms. Lambert did not provide substantive responses on June 18 as promised or provide an update on June 19 as promised, Dominion would need to submit the disputes to the Court to avoid continued delays; and asking Ms. Lambert to provide her client's inserts to this submission by close of business;
- June 24, 2024, email from S. Lambert to L. Walker, stating that she did not receive files from prior counsel until June 20 and that she could not address Dominion's discovery concerns until after depositions that week taking place the week of June 24 were concluded; and suggesting that she needed an additional week after the depositions;
- June 24, 2024, email from L. Walker to S. Lambert stating that Dominion cannot afford continued delays given where the parties are in the discovery process and that if Ms. Lambert could not provide substantive responses to the issues Dominion in its May 9 letter by close of business on June 28, it would need to raise the issues with the Court;
- June 28, 2024, email from S. Lambert to L. Walker stating that because of depositions in the case she had not had time to address Dominion's discovery concerns but would do so "as quickly as possible"

**(7) Brief discussion of case law, if applicable and necessary to resolve dispute (<u>by each party</u>).**

<u>Dominion's Position</u>

In a defamation action, a plaintiff often proves actual malice through circumstantial evidence, rather than "from the mouth of the defendant," because defendants "are prone to assert their good-faith belief in the truth of their publications." *Herbert v. Lando*, 441 U.S. 153, 170 (1979). Circumstantial evidence of actual malice comes in many forms, including the kind at issue here—evidence that the defendant had a financial motive to lie about the plaintiff. *See Harte-Hanks*, 491 U.S. at 668. The type of financial documents Dominion seeks are also relevant to punitive damages, and Dominion is entitled to pursue this evidence even at this stage where, as here, the documents are otherwise relevant. *See*, *e.g.*, *Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943-DLF-ZMF, 2021 WL 1209300, *10 (Mar.31, 2021) ("Information relevant to [ ] damages may be discoverable in advance of judgment under the broad discovery envisioned by the Federal Rules of Civil Procedure" (quoting *In re ULLICO Inc. Litig.*, No. 03-cv-1556, 2006 WL 2398743, at *1 (D.D.C. June 20, 2006)); *Freeman v. Giuliani*, No. 21-3354 (BAH), 2023 WL 5600316 (Aug. 30, 2023).

EXHIBIT B

| From: | Elizabeth Hadaway (via Dominion list) |
| --- | --- |
| To: | Upadhyaya Chambers; Rebecca DiPietro |
| Cc: | Patrick Byrne; Dominion SG Simplelist (dominion@simplelists.susmangodfrey.com) |
| Subject: | US Dominion, et al. v. Patrick Byrne No. 1:21-cv-02131 (CJN) |
| Date: | Wednesday, November 13, 2024 10:48:15 AM |
| Attachments: | 2024-08-30 Dominion-Byrne Dominion"s 3rd ROGS to Byrne (Nos. 11-17).pdf |
| | US Dominion Inc. et al v. Byrne; Civil Action No. 121-cv-02131Discovery Disputes.msg |

EXTERNAL Email

Dear Judge Upadhyaya and Chambers,

The parties seek the Court's assistance in resolving a 3rd dispute relating to Mr. Byrne: Specifically, Mr. Byrne's failure to respond to Dominion's 3rd set of interrogatories. Dominion emailed Mr. Byrne on October 1 regarding this dispute. To date, Mr. Byrne has not provided any response.

Dominion also notes that it previously submitted Disputes 1 and 2 on July 2, 2024, and those disputes remain pending resolution by Your Honor. That correspondence with attachments is attached hereto for reference. Dominion would appreciate the Court's guidance on all three disputes as they involve discovery Dominion is entitled to review in advance of Mr. Byrne's depositions, currently noticed for December 5**.**

**Parties to dispute:** Dominion and Patrick Byrne

**Issue:** Whether and when Mr. Byrne should be required to respond to Dominion's third set of interrogatories, having waived his objections.

**Dominion's Position:** Dominion served its third set of interrogatories on Mr. Byrne on August 30, 2024 (attached). Mr. Byrne did not respond to the interrogatories and did not request an extension. Mr. Byrne has waived objections by failing to timely respond. FRCP 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). On October 1, Dominion's counsel reached out to Mr. Byrne and requested responses by October 4. Hearing nothing for two weeks, on October 23, Dominion reached out to Mr. Byrne again asking for responses by October 31. Dominion followed up once more on November 11 and informed Mr. Byrne it would present the dispute to the Court on November 12 at 10am ET.

**Mr. Byrne's Position:** None provided.

Thank you,

**Elizabeth Hadaway | Susman Godfrey LLP**
o.  713.653.7856  |  c.  512.431.7965
ehadaway@susmangodfrey.com
1000 Louisiana St. | Suite 5100 | Houston, Texas 77002
**HOUSTON  •  LOS ANGELES  •  SEATTLE  •  NEW YORK**

To unsubscribe from this list please go to https://simplelists.susmangodfrey.com/confirm/?u=Qb9VpBBqdzUPLVKXxUka3Xj0sSfbJOje

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:21-cv-02131 (CJN) |
| PATRICK BYRNE, | ) ) | |
| Defendant. | ) ) ) ) ) | |

## PLAINTIFFS' THIRD SET OF INTERROGATORIES TO DEFENDANT PATRICK BYRNE

Under Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation ("Dominion"), by and through their undersigned counsel, request that Defendant Patrick Byrne answer the following interrogatories in accordance with the definitions and instructions contained herein within thirty (30) days of receipt.

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any Request, whether capitalized or not.

1.     "2020 Presidential Election" means and refers to the U.S. Presidential Election that occurred on November 3, 2020, and includes but is not limited to the voting process surrounding the election (including early voting and mail in voting); the election itself; the

electoral college, the certification by the electoral college and any discussions or disputes about the electoral college or around the certification of Joseph Biden as President (including those incidents arising on January 6, 2021), up to and through the departure of President Trump from office on January 20, 2021 and the inauguration of Joseph Biden; and any disputes arising out of the election and/or its aftermath and related issues, such as certification and allegations of election irregularities and/or fraud, irregularities, vote switching, voting machine algorithms flipping, inserting, or dumping votes, or other issues that occurred either before the 2020 Presidential Election or after, and any allegations or continued discussions or disputes about the 2020 election.

2.      "This lawsuit" refers to the case captioned *US Dominion, Inc., et al. v. Patrick Byrne, et al.*, Case No. 1:21-cv-02131 (CJN).

3.      "Assess" means to assess in any way, including to analyze, examine, investigate, explore, probe, confirm, or evaluate.

4.      "Communication" or "Communications" means a communication in any form, including, without limitation, notes, complaints, diaries, journals, datebooks, reports, calendars, telephone messages, letters, email messages, instant messages (such as, but not limited to, Signal, Cisco Jabber, IBM Sametime, Wickr, ICQ, Kik, BBM, Gchat, iMessage, Telegram, WhatsApp, Slack, and similar types of messages), cell phone text messages (SMS messages and MMS messages), voicemail messages, Slack messages or other internal messaging system communications, social media communications or posting on sites including but not limited to Facebook, Twitter, YouTube, Instagram, Gab, or Parler (including any direct messages), website postings, internet chat-room postings, lists, correspondence, drawings, designs, telegrams, manuals, summaries or records of personal conversations, logs, minutes or records of meetings, minutes of any other type, transcripts of oral testimony or statements, affidavits, or summaries

2

of investigations. For avoidance of doubt, the term "Communications" includes internal communications with any entity that employs or is affiliated with Patrick Byrne, as well as communications with third parties.

5.    "Complaint" means the Complaint filed on August 10, 2021 in this lawsuit and any subsequently filed amended complaint.

6.    "Defamatory Statements" means and refers to the statements in Paragraph 153 of the Complaint filed in this lawsuit.

7.    When asked to "Describe" an instance, activity, or communication:

    a.  State all Persons involved in the instance, activity, or communication;

    b.  State the nature, purpose, and exact content of the instance, activity, or communication;

    c.  The date on which the instance, activity, or communication occurred;

    d.  The method or means through which the instance, activity, or communication occurred; and

    e.  The result of the instance, activity, or communication on any aspect of the Defamatory Statement, including its publication or republication.

For communications, please also (f) identify all those You understand to have heard or viewed the communication and (g) describe any republications of the communication.

8.    "Document" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic matter, however produced or reproduced, including, but not limited to: any letter, correspondence, or communication of any sort; electronic mail, either sent or received; file, print, negative, or photograph; sound or video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex,

telegram, or cable; summary, report, or record of any telephone conversation, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act, or activity; projection, work paper or draft; computer output or input; data processing card; opinion or report of any consultant; request, order, invoice, or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping; press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, check stubs or register, canceled check, deposit slip, charge slip, tax return, or requisition; file, study, graph, or tabulation; and all other writings and recordings of whatever nature, whether signed, unsigned or transcribed, and any other data compilation from which information can be obtained or translated. The term "document" also shall mean: the original and/or any non-identical original or copy, including those with any marginal note or comment or showing additions, deletions, or substitutions; drafts; attachments to or enclosures with any document; and any other documents referred to or incorporated by reference in the document. The term "document" also specifically includes all electronic documents, electronic Communications, and other "electronically stored information" (whether stored electronically or in the form of a hard-copy, print-out, or otherwise) and all attachments thereto.

9.      "Dominion" means and refers to US Dominion, Inc., and its subsidiaries Dominion Voting Systems, Inc. and Dominion Voting Systems, and any and all representatives or individuals You understood to be acting on Dominion's behalf.

10.      "Donald Trump" means and refers to the 45th President of the United States.

11.      "Electronically stored information" or "ESI" refers to any portion of data available on a computer or other device capable of storing electronic data. "Electronically stored

information" includes, but is not limited to, e-mail, spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing electronically stored information include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and any other forms of online or offline storage, whether on or off company premises. ESI includes instant messages (such as but not limited to Signal, Cisco Jabber, IBM Sametime, Wickr, ICQ, Kik, BBM, Gchat, iMessage, Telegram, WhatsApp, Slack, and similar types of messages), cell phone text messages (SMS messages and MMS messages), voicemail messages, and similar types of messages. ESI includes any records of such communications or messages, including phone records. ESI includes any social media communication (such as but not limited to Twitter, Facebook, Instagram, YouTube, Parler, Gab, and Periscope), including any direct messages.  For any document kept in electronic form, the term "document" includes any metadata associated with the document.

12.    "Identify" or "identity" when used in reference to:

    a.    an individual person, means to state his or her full name, present or last known business or home address, present or last known business or professional affiliation, business or professional affiliation during the time period covered by your answers to these interrogatories, applicable job title or role, and relationship to You;

    b.    a business firm or entity, means to state the type of entity (e.g., corporation, partnership, etc.), its full name and principal place of business, including full address;

5

c.    a document, means to state the date it was authored or originated, the identity of its author or originator, the identity of each person to whom the original or copy was addressed or delivered or who otherwise received a copy of the document, the nature of the document, (e.g., letter or memorandum, etc.), and its present location or custodian. If any document was, but is no longer, in your possession, custody, or subject to your control, state what disposition was made of it, the date thereof, the identity of the person or persons responsible for making the decision as to such disposition, the identity of the person or persons responsible for carrying out such disposition, the reason for the disposition, the content of the document, and the location of any copies of the document;

d.    a meeting, event, or oral communication, means to state the date, time, and location of the meeting, event, or communication, the means of communication (e.g., telephone, luncheon meeting, etc.), the identity of each person at the meeting or event or party to or recipient of the communication, the identity of the person who initiated the meeting, event, or communication, and the substance of the matters discussed at the meeting or event, or during the communication.

13.    "OTHER DDC DEFENDANTS" means and refers to Sidney Powell, Powell P.C., Defending the Republic, Michael Lindell, My Pillow, Inc., Herring Networks Inc. d/b/a One America News Network, Robert Herring, Sr., Charles Herring, Chanel Rion, Christina Bobb, and Rudolph Giuliani, including their employees, agents, representatives, and anyone else who You believed to be acting on their behalf.

6

14.    "Participate" means and includes to act, join, draft, edit, review, investigate, research, publish, approve, or make any decision affecting the contents of or decision to do something.

15.    "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

16.    "Patrick Byrne" means the person Patrick Byrne.

17.    "Social Media" means and refers to the Twitter, Facebook, YouTube, and Instagram accounts operated by You, including but not limited to the Twitter account @PatrickByrne.

18.    "Trump Administration" means and refers to Donald Trump, and/or (1) any of his agents, staff members, appointees, employees, campaign, campaign employees, advisors, attorneys, and family members, and (2) government agents, government staff members, government appointees, government employees, government advisors, and government attorneys while Donald Trump served in his capacity as President of the United States.

19.    "Trump Campaign" means and refers to the entity Donald Trump for President 2020 and any individual who You understood to be speaking on behalf of the campaign to re-elect Donald Trump to a second term as President of the United States in 2020, and any agents, staff members, appointees, employees, advisors, family members, or attorneys during the time period January 1, 2020 through January 20, 2021, including, but not limited to, Jared Kushner, Ivanka Trump, Bill Stepien, Jason Miller, Stephen Miller, Justin Clark, Matt Morgan, Donald Trump, Jr., Eric Trump, Lara Trump, Kimberly Guilfoyle, Katrina Pierson, Boris Ephsteyn, Michael Roman, Kayleigh McEnany, Gary Michael Brown, and Katherine Freiss.

20.    "You" and "Your" means Patrick Byrne, and any Person purporting to act on Patrick Byrne's behalf.

21.    The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine, or neutral form shall include every gender.

## **INSTRUCTIONS**

1.      Each Interrogatory shall be answered separately and under oath, in accordance with Rule 33 of the Federal Rules of Civil Procedure. No Interrogatory shall be left blank. If the answer to any Interrogatory is no, none or unknown, such response should be written.

2.      In answering these Interrogatories, you shall furnish all information available to you at the time of answering and shall supplement your answers in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.  The Interrogatories are continuing in nature, up to and during the course of trial. If You obtain additional information responsive to these Interrogatories, You shall promptly supplement Your responses.

3.      If you do not answer an Interrogatory, in whole or in part, because of a claim of privilege or the work product doctrine, state the following: (a) the nature of the privilege or reason for withholding which you contend applied; (b) the factual basis for your assertion of privilege or the reason for withholding; (c) the type of document (e.g., letter, memorandum, telex, etc.); (d) all authors and addressees; (e) all indicated and blind copies; (f) all persons to whom the document was distributed, shown or explained; (g) the document's date; and (h) a summary description of the document's subject matter.

4.      In the event that any document requested to be identified by any Interrogatory has been destroyed or discarded, such document shall be identified by stating all of the information requested in subparagraphs (c) through (h) of Instruction 3 and, in addition, (i) its date, manner, and reason for destruction or discard, (j) the persons who authorized and carried out such destruction or discard, and (k) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

## INTERROGATORIES

**INTERROGATORY NO. 11**:

Identify every Communication You have had with any of the OTHER DDC DEFENDANTS, including their agents, employees, and anyone you understood to be acting on their behalf, concerning DOMINION, the 2020 Presidential Election, or this lawsuit, between September 1, 2020 and the present.

**INTERROGATORY NO. 12**:

Identify your Analytics from Twitter (X) on number of impressions for the following Tweets:

https://twitter.com/PatrickByrne/status/1342897929279987714?s=20.

**INTERROGATORY NO. 13**:

Web traffic report from Google Analytics or similar showing web traffic and video views (as applicable) to any webpages on the Defendant's website, sidneypowell.com, that have hosted the at-issue statements, including specifically the below web pages. Metrics should include the full range of data including, pageviews, video completes, and others.

1. https://www.deepcapture.com/2020/11/election-2020-was-rigged-the-evidence/
2. https://www.deepcapture.com/2020/12/antrim-county-computer-forensic-report/
3. https://www.deepcapture.com/2021/01/november-3-december-23-all-the-presidents-teams/
4. https://www.deepcapture.com/2021/01/how-djt-lost-the-white-house-chapter-2-was-there-foreign-interference-in-this-election-you-make-the-call/
5. https://web.archive.org/web/20210220160932/https://www.deepcapture.com/2021/01/how-djt-lost-the-white-house-chapter-2-was-there-foreign-interference-in-this-election-you-make-the-call/
6. https://www.deepcapture.com/2021/02/how-djt-lost-the-white-house-chapter-4-the-christmas-doldrums-december-23-noon-january-6/
7. https://www.deepcapture.com/2021/02/the-deep-rig-how-election-fraud-cost-donald-j-trump-the-white-house-by-a-man-who-did-not-vote-for-him-or-what-to-send-friends-who-ask-why-do-you-doubt-the-integrity-of-election-2020-4-99/

**INTERROGATORY NO. 14**:

Identify Web traffic report from Google Analytics, Adobe Analytics, or similar showing web traffic to deepcapture.com from 2020 – 2022.

10

**INTERROGATORY NO. 15**:

Identify sales numbers and any other relevant metrics of distribution for Your book, *The Deep Rig:*

*How Election Fraud Cost Donald J. Trump the White House, By a Man Who did not Vote for Him*.

**INTERROGATORY NO. 16**:

Identify any broadcast viewership / TV ratings and any relevant online views for Your documentary,

*The Deep Rig*, including at https://www.loom.com/share/36db4fc626df467b82f1fb9def1949af.

**INTERROGATORY NO. 17**:

Identify every Person that You, including your agents, representatives, and lawyers, have

disclosed Documents produced in the Dominion litigation.

**INTERROGATORY NO. 18**:

Identify every Communication You had with Persons identified in No. 17 regarding Dominion,

this litigation, or Documents produced in the Dominion litigation.

Dated: August 30, 2023                     Respectfully submitted,

                                           /s/ *Laranda Walker*
                                           Laranda Walker (D.C. Bar No. TX0028)
                                           Mary K. Sammons (D.C. Bar No. TX0030)
                                           Jonathan Ross (D.C. Bar No. TX0027)
                                           Elizabeth Hadaway (*pro hac vice*)
                                           **SUSMAN GODFREY L.L.P.**
                                           1000 Louisiana St., Suite 5100
                                           Houston, TX 77002
                                           Tel: (713) 651-9366
                                           Fax: (713) 654-6666
                                           lwalker@susmangodfrey.com
                                           ksammons@susmangodfrey.com
                                           jross@susmangodfrey.com
                                           ehadaway@susmangodfrey.com

11

Stephen Shackelford, Jr.
(D.C. Bar No. NY0443)
Eve Levin (D.C. Bar No. 1672808)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
sshackelford@susmangodfrey.com
elevin@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
dbrook@susmangodfrey.com

Edgar Sargent (*pro hac vice*)
Katherine Peaslee (*pro hac vice)*
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 516-3880
kpeaslee@susmangodfrey.com
esargent@susmangodfrey.com

Thomas A. Clare, P.C. (D.C. Bar No. 461964)
**CLARE LOCKE LLP**
10 Prince Street
Alexandria, VA 22314
(202) 628-7400
tom@clarelocke.com

*Attorneys for Plaintiffs*

12

## CERTIFICATE OF SERVICE

I, Davida Brook, hereby certify that on August 30, 2023, a true and correct copy of the foregoing document was served via email on counsel of record for every party in *US Dominion, Inc., et al. v. Patrick Byrne, et al.*, Case No. 1:21-cv-02131 (CJN).

/s/ Davida Brook
Davida Brook
**SUSMAN GODFREY LLP**

13