UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. DOMINION, INC., et al., *Plaintiffs / Counter- Defendants*, v PATRICK BYRNE, *Defendant*. | Civil Action 1:21-cv-02131 (CJN) |

DEFENDANT'S MOTION TO FULLY LIFT PROTECTIVE ORDER
OR IN THE ALTERNATIVE, TO AT THE VERY LEAST, PERMIT
COMPLIANCE WITH SUBPOENA TO PRODUCE IN
ERIC COOMER V. JOSEPH OLTMANN ET AL, CASE NO. 20-CV-34319

The Defendant, Patrick Byrne, by and through his undersigned attorneys, pursuant to F.R.Civ.P. and Local Civil Rule (LCvR) 7, hereby files his Motion to Fully Lift the Protective Order in the above styled case Or In The Alternative, To, At The Very Least, Permit Compliance With a Subpoena To Produce In *Eric Coomer V. Joseph Oltmann et al*, Case No. 20-CV-34319 to Permit Compliance with Subpoena to Produce in *Eric Coomer v. Joseph Oltmann et al*, Case No. 20-cv-34319.

### Background

On June 16, 2023, this Court entered an Order [DE 46] pursuant to the Plaintiff's Motion for a Protective Order which required that documents produced

by the Plaintiff were to be Confidential or "Attorneys' Eyes Only."

Subsequent to the discovery being produced, due to the fact that some of the content provided by the Plaintiff were documents which proved that the Plaintiff was guilty of crimes to the highest order, including but not limited to sedition by massively manipulating the election data/tally of the votes across the country, were provided to law enforcement by Dr. Byrne's counsel, Ms. Lambert.

Since that time, many of those documents were provided by law enforcement to Congress, the Office of the Director of National Intelligence, the Department of Homeland Security, the Federal Bureau of Investigations, the Department of Justice, the Department of War.  The documents are currently under government investigation, due to transparent, public government referrals by the law enforcement personnel who had possession of the documents.

The United States Government has taken serious action as a result of the law enforcement referral including the Department of War which apparently neutralized computers in Belgrade, Serbia on November 2, 2024, so that they could not change the result of the November 5, 2024 Presidential Election.

Moreover, at that time, the United States Secretary of Defense apparently ordered an investigation as to China's access to the Microsoft cloud and US critical infrastructure, which includes election equipment, and numerous open investigations that include but are not limited to the Department of Justice,

2

Homeland Security, Federal Bureau of Investigations, and the Director of National Intelligence.

As a result of the fact that the incriminating documents in the case *sub judice*, are now in the public, they are being used by all accounts for any purpose by others in other cases, while the attorneys in the above styled cases are the only ones in America who are restricted from using the incriminating documents which have already been made public or which had been provided to law enforcement.

Moreover, and key to this motion, on November 4, 2025, one of the Defendants in a different lawsuit brought by Eric Coomer, the 2020 head of the Plaintiff, U.S. DOMINION, INC., issued a Subpoena to Produce was served by co-Defendant, Joseph Oltmann on Ms. Lambert, Patrick Byrne's former counsel in the case at bar. A true and correct copy of the Subpoena to Produce is attached hereto and marked as Exhibit "1."

The Subpoena to Produce requests documents and communications between Eric Coomer and Dominion employees and contractors subject to the abovementioned Protective Order in the instant case. [DE 46].

Dr. Byrne's prior counsel's office is in possession of relevant documents that support Joe Oltmann in his defense against Eric Coomer, including but not limited to, documents detailing an ongoing 25-year conspiracy involving Eric Coomer, Dominion employees and contractors, working with and for Venezuela, Serbia, and

3

China to illegally access US voting equipment to modify election and tally data prior to the certification of US election contests.

Venezuela under Maduro was not just exporting cocaine and fentanyl. They were also exporting election manipulation to 72 countries around the world, including the United States.

Smartmatic was founded by two Venezuelans, Antonia Mugica and Roger Pinate in 2000. The Venezuelan government, through CNE, provided substantial financial support to Smartmatic. Smartmatic was funded by Venezuela.

In 2006, United States government officials approved VISAs for Venezuelan Smartmatic and oil engineers to enter the US for the purposes of modifying and manipulating US election equipment. The Venezuelans started with the Sequoia brand equipment in Chicago, Illinois. They continued work for Smartmatic, Sequoia, and then Dominion for the 2020 Presidential Election. Ronald Morales and David Moreno were just two of these Venezuelans. Ronald Morales' direct supervisor was Eric Coomer, and Eric Coomer's direct supervisor was David Moreno.

In 2010, Dominion purchased Sequoia and obtained the Venezuelan modified equipment as well as more than 30 Smartmatic/Sequoia engineers and employees to work for Dominion. The Dominion brand name was just a new shell to conceal Venezuela, Serbia, and China's access to the US election equipment and data. By

4

2020, Staple Street had a 75.2% interest in US Dominion, and the Dominion management team owned the remaining interest.

Leading up to the 2020 election, Ronald Morales, Eric Coomer, David Moreno, and others on behalf of Dominion methodically implemented VPN access throughout the United States to facilitate remote access to the election equipment. The purpose of the access was to modify the election data prior to certification. Certain contractors were even given access on their personal laptops in violation of Dominion protocol.

Ronald Morales, under Eric Coomer's direction and supervision, worked with Goren Obradovic and other Serbians to ensure VPN access to the ballot images for the 2020 election.  Additionally, detailed programming took place such as modifications to adjudication (vote tally changes) without EAC approval, source code changes past certification without disclosures, honest service fraud running old versions yet misleading municipalities with splash screens displaying the expected version, implementing and distributing versions incapable of counting write-in candidates with no disclosure to state or municipal government.

Morales, Coomer, and Moreno kept the customer front facing side of Dominion ignorant of the ongoing criminal organization, and utilized a business structure to limit remote access, programming, unauthorized server access, etc. to the back of the office involving the same individuals from Venezuela, Serbia, and

China for over 20 years.

The back of the office routinely joked about their criminal operation, even in the emails to each other. The Dominion versions were referred to as Venezuela 5.0, and when 50,000 voting machines and 582 computers went up in flames in Venezuela on March 9, 2020, John Poulos and Eric Coomer thought it was hilarious and joked about Mugica running around with a jerry can.

Dominion and its employees consist of the same equipment, organization, and individuals in place 20 years ago with Smartmatic. In 2024, the first domino toppled. David Moreno's family and co-workers were indicted in 2024, and On October 16, 2025, the US Department of Justice filed a superseding indictment, Case No. 24-20343, indicting Juan Andres Donato Bautista, Roger Alejandro Pinate Martinez, Jorge Miguel Vasquez, Elie Moreno, and SGO Corporation Limited, a/k/a "Smartmatic" with criminal charges. Roger Pinate, Jorge Vasquez, and Smartmatic were charged with Count One, Conspiracy to Violate the Foreign Corrupt Practices Act (18 U.S.C. § 371). Roger Pinate, and Jorge Vasquez were charged with Count Two, Foreign Corrupt Practices Act (15 U.S.C. § 78dd-2). Juan Bautista, Roger Pinate, Jorge Vasquez, Elie Moreno, and Smartmatic were charged with Count Three, Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(h)). Juan Bautista, Roger Pinate, Jorge Vasquez, Elie Moreno, and Smartmatic were charged with Counts Four-Six, International Laundering of Monetary Instruments (18 U.S.C.

§ 1956(a)(2)(A)).

The superseding indictment details the use of personal email accounts to facilitate the illegal acts and communications. The Taiwan factory, money laundering, use of personal emails to conduct back-office business has not changed under Dominion. Eric Coomer, ericdcoomer@gmail.com, was just one of the Dominion employees who used his personal email address for the off the record conversations. The Defendant's prior counsel confronted Poulos with the law violations during his deposition, and when he was backed in a corner on FARA violations and others, he refused to admit that he was the CEO of Dominion, said he would go back and check the status, and stormed out of the unfinished deposition.

Eric Coomer was the "heavy lift" for Dominion. In 2020, alone, he pushed for adjudication to be utilized in states that did not have laws permitting adjudication. He made modifications to adjudication for months including just days prior to the November 3, 2020, election after certification was provided and logic and accuracy tests were completed. Coomer wore multiple hats in 2020, and not only was he the Director of Product and Strategy, but he requested engineering status to make modifications to adjudication prior to the 2020 election.

Most importantly, when Dominion was caught vote shifting and deleting batches, Coomer clammed up. He was placed on paid leave status and refused to make statements to assist Dominion and J. Alex Halderman with expert reports to

7

defend Dominion.  Dominion fed the vote shifting version of events to Halderman and he put the version in the Halderman Report, but Dominion/Halderman's excuses was proven to be false Plaintiff experts Jeffrey Lenberg and James Penrose.  Coomer has now listed Halderman as his expert in 20-CV-34319, and the evidence requested by subpoena is needed to show it was Dominion that fed the bogus events to Halderman, and Coomer that was instrumental in the VPN remote access, unauthorized server access, etc to set the vote shifting events in motion.

## Discussion

The fact of the matter is that the crimes by the Plaintiff should not be protected.  This Court should never be in a position where it is aiding and abetting a criminal by hiding the evidence of the criminal's crimes.  Now that the documents have been produced and it proves that the Plaintiff participated in implementing and concealing remote access, including foreign access to the US election equipment and data, and this Court must permit those documents to be made public.  This is not a minor infraction which is involved.  It is literally the fixing of a Presidential Election and the take-over of our country for 4 years by an illegal regime.

With all of this said, the Plaintiff in *Eric Coomer v. Joseph Oltmann et al*, Case No. 20-cv-34319 has added a new wrinkle.  He is now seeking the documents which were provided in the above styled case, and which are evidence of the Plaintiff's conduct.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

This means that this Court has 2 choices. First, it can close its eyes to the fact that U.S. DOMINION, INC., Smartmatic, and U.S. Dominion Inc.'s former operator, Eric Coomer are all able to continue to bring false claims against those who are attempting to make their criminality public and expose the biggest crime perpetrated in American history. The Second option is for this Court to refuse to be a part of protecting and concealing serious acts with national security implications.

Now that U.S. DOMINION, INC. appears to have been sold, it is not providing the documents which were provided in the above styled lawsuits. There is no reason under the sun that defendants of U.S. DOMINION, INC. and its counterparts should be deprived of the evidence which has been provided in the current cases before this Court, and yet, is not available to the defendants in sister courts.

As the Second Circuit noted in the aforementioned case: "[a] plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order *has the burden* of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question ***should not receive judicial protection and therefore would be open to the public for inspection***. . . . Any other conclusion effectively would negate the good cause requirement of rule 26(c).

Thus, "as a general proposition, pretrial discovery must take place in the

9

public unless compelling reasons exist for denying the public access to the proceedings." See, e.g., *American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978), cert. denied, 440 U.S. 971, 99 S. Ct. 1533, 59 L. Ed. 2d 787 (1979); accord *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 101 F.R.D. 34, 38-41 (C.D. Cal. 1984); Note, Nonparty Access to Discovery Materials in the Federal Courts, 94 Harv. L. Rev. 1085, 1085-86 (1981).

Rule 26(c) thus lends support to the right of access.

After the tobacco litigation and agent orange litigation cases, protective orders, even where they are entered by a district court are not everlasting and unmodifiable. In fact, they are widely subject to exceptions under many circumstances, including the aforementioned public/national security/public health and welfare interests; constitutional reasons, and common law exceptions, that still exist. See, also, *United States v. Bulger*, 283 F.R.D. 46, 51 (D. Mass. 2012).

Where, as here, a liberal and broadly applied "protective order" has been entered, the party in whose favor the request for protection was granted is required in every single instance to bear the burden of showing that good cause exists *not to modify the protective order*. Id. **"Orders typically made without a particularized showing to support the claim for protection. . . [require good cause] wherever a claim under an order is challenged."**

In the instant case, the materials subject to the subpoena from the case of *Eric Coomer v. Joe Oltmann et al,* are necessary to Oltmann's defense in *Eric Coomer v. Oltmann*, Case No. 20-cv-3439, District of Colorado. The requested documents detail the events of Coomer, and his network as described in this motion.

WHEREFORE, Mr. Byrne respectfully requests that this honorable court set aside the protective order or, in the alternative, at the very least, to permit his prior counsel to comply with the subpoena by Joseph Oltmann, and for such further and other relief as this Honorable Court may deem just and proper.

## COMPLIANCE WITH LOCAL RULE 7(m)

Counsel for Defendant has discussed the anticipated motion with opposing counsel in a good-faith effort to determine whether there is an opposition to the relief sought, and whether there are any narrow areas of disagreement. Counsel for Plaintiff opposes the motion and seeks to have everything in this motion filed under the protective order.

*Peter Ticktin*
Peter Ticktin

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 5, 2026, the foregoing document, was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

*/s/ Peter Ticktin*
Peter Ticktin, Esquire
Florida Bar No. 887935
Serv512@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Attorney for Patrick Byrne*