| | |
|---|---|
| DISTRICT, COUNTY OF DENVER, COLORADO<br>Court Address:<br>1437 Bannock Street<br>Denver, Colorado 80202 | |
| Plaintiff:<br><br>ERIC COOMER<br><br>Defendants:<br><br>DONALD J. TRUMP FOR PRESIDENT, INC., SIDNEY POWELL, P.C., RUDOLPH GIULIANI, JOSEPH OLTMANN, FEC UNITED, SHUFFLING MADNESS MEDIA, INC. dba CONSERVATIVE DAILY, JAMES HOFT, TGP COMMUNICATIONS, LLC, dba THE GATEWAY PUNDIT, MICHELLE MALKIN, ERIC METAXAS, CHANEL RION, HERRING NETWORKS, INC. dba ONE AMERICA NEWS NETWORK, and MEWSMAX MEDIA, INC. | ▲COURT USE ONLY▲<br><br>Case # 20-CV-34319<br><br>Div.  409 |
| **Attorney for Defendants Joseph Oltmann, FEC United, Inc., and Shuffling Madness Media, Inc.**<br>  Andrea M. Hall    Atty. Reg. #:  036410<br>  THE HALL LAW OFFICE, LLC<br>  P.O. Box 42, Eaton, CO 80615<br>  (970) 419-8234   andrea@thehalllawoffice.com | |
| **SUBPOENA TO PRODUCE** | |

To:  Stephanie Lambert, Esq., attorney for Patrick Byrne

    Stefanie Lambert Junttila
    Law Office of Stefanie L. Lambert PLLC
    400 Renaissance Drive, 26th Floor
    Detroit, MI 48243

**You are ordered to produce** See Attached Exhibit A.

**Date and Place of Production:**
The Hall Law Office, LLC, P.O. Box 42, Eaton, CO 80615; andrea@thehalllawoffice.com. Undersigned counsel will produce a flash drive having sufficient storage capacity or access to a secure file transfer site for uploading responsive documents upon request. Production is due fourteen days from service of this Subpoena.

1

Dated this 4th day of November, 2025   /s/ Andrea M. Hall
_____
Andrea M. Hall, No. 036410
ATTORNEY FOR DEFENDANTS

---

## WAIVER OF SERVICE

I declare under oath that, I am 18 years or older and not a party to the action and that I received and accept service of this Subpoena.

_____

## VERIFICATION

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

Executed on the _____ day of _____, _____

At _____

(city or other location, and state OR country)

_____       _____
Printed name of Recipient          Signature of Recipient

## **EXHIBIT A**

### DEFENDANTS JOSEPH OLTMANN, FEC UNITED, SHUFFLING MADNESS MEDIA, INC. "OLTMANN DEFENDANTS"
### REQUESTS FOR PRODUCTION TO NONPARTY

This Exhibit A is incorporated by reference into the Subpoena to Produce Documents, Information, or Objects, or to Permit Inspection of Premises in a Civil Action, dated November 4, 2025, and issued to Stephanie Lambert, Esq. (the "**Subpoena**").

This Subpoena is served on you by the undersigned counsel for Oltmann Defendants to obtain information relevant to the claims and defenses in the litigation brought by Plaintiff Eric Coomer, a former employee of Dominion Voting Systems, Inc., who held the position of Director of Product Strategy and Security.

Pursuant to this Subpoena, please produce the documents, records, information, things, or objects described herein for inspection and copying in accordance with Rule 45 of the Colorado Rules of Civil Procedure and the Instructions and Definitions provided below. All responsive materials should be produced at the time, date, and place set forth in the Subpoena (secure electronic file transfer is acceptable), or by other mutually agreeable means.

The parties in this litigation have stipulated to a protective order governing the handling of confidential information produced in discovery. (*See* Order, *Coomer v. DONALD J. TRUMP FOR PRESIDENT, INC., et al.,* 2020-CV-034319, Denver County, Denver, Colorado) A copy of the court order approving and incorporating the parties' protective order—referred to by the Court as a "Stipulated Confidentiality Order"—is attached. Any confidentiality designations made pursuant to the Stipulated Confidentiality Order may be challenged, and Defendant reserves all rights with respect thereto.

Finally, although this Subpoena is directed to Stephanie Lambert, attorney for Patrick Byrne, the Subpoena is intended to cover all responsive documents and materials within your possession, custody, or control.

Thank you in advance for your prompt attention to this matter. We welcome your call to discuss the Subpoena and its Requests further.

## INSTRUCTIONS

These Requests are subject to the following Instructions.

A. Unless otherwise specified, these Requests generally seek the production of documents, records, information, things, or objects created, modified, or otherwise related to the time period from January 1, 2017, through the date of service of the subpoena (the "**Relevant Time Period**").

B. In complying with the Subpoena, these Requests call for the production of all responsive documents, information, things, or objects that are in your possession, custody, or control, whether held by you or your past or present agent, employee, or representative acting on your behalf. These Requests also call for all responsive documents, information, or objects that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents, information, things, or objects that you have placed in the temporary possession, custody, or control of any third party.

C. The Subpoena and its Requests are static in nature, seeking documents and information in your possession, custody, or control as of the compliance date. However, if any responsive document is not produced because it has not yet been located or discovered, it must be produced promptly upon subsequent location or discovery, provided it was within your possession, custody, or control as of the compliance date.

D. No documents or information requested herein should be destroyed, modified, removed, transferred, or otherwise made inaccessible. If you have knowledge that any document or information requested herein has been destroyed, discarded, or lost, please identify the document or information requested and provide an explanation of the destruction, discarding, loss, or disposal, and the date at which the document or information was destroyed, discarded, or lost.

E. All responsive documents and information are to be produced as they are kept in the usual course of business, including any labels, file markings, or similar identifying features, or shall be organized and labeled to correspond to the categories of documents requested herein.

F. If there are no documents or information in response to a particular Request or subpart thereof, please state so in writing. If you withhold any responsive documents or information or categories thereof based on any objection or claim of privilege or other protection, please state so in writing and identify the basis for such withholding.

G. If your response indicates that any document was once in your possession, custody, or control but is no longer, please provide a statement that includes: (1) the identification of the document; (2) the current location of the document; (3) the identity of the person or entity who has control of the document; (4) a description of how the document was lost, destroyed, or transferred; and (5) the identification of each person responsible for or

4

|   |   |
|---|---|
|   | with knowledge of the loss, destruction, or transfer of the document from your possession, custody, or control. |
| H. | Each Request contemplates production of all documents in their entirety. If only a portion of a document is responsive to one or more Requests, the document shall be produced in its entirety. |
| I. | Examples of responsive items set out in any Request should not be construed to limit the scope of the Request. |
| J. | If you object to any Request on any ground other than privilege, you must specify: (1) the part of the Request that is objectionable and respond and allow inspection of materials responsive to the remainder of the Request; and (2) whether any responsive materials are being withheld on the basis of an objection. |
| K. | If you assert that a responsive document contains both privileged and non-privileged information, you must produce the non-privileged portions of the document. Any portion withheld must be clearly marked by stamping "REDACTED" in a manner that does not obscure the remaining, unredacted text. |
| L. | If you believe any responsive document is protected or partially protected by a privilege, please provide a privilege log that includes: (1) the reason for withholding the document; (2) a statement detailing the basis for the claim of privilege, work product, or other ground for nondisclosure; and (3) a brief description of the document, including: (a) the date of the document; (b) the number of pages, attachments, and appendices; (c) the names of the author(s) or preparer(s), along with their employment and titles; (d) the names of all individuals who were sent, shown, carbon copied (cc'd), or blind carbon copied (bcc'd) on the document, or who have had access to or custody of the document, including their identifications; (e) the current custodian; and (f) the subject matter of the document, and if applicable, identification of any meeting or conversation referred to in the document. Your privilege log must be produced on the date of compliance with this Subpoena. |
| M. | If you withhold any responsive documents on the basis of a protective order entered in another proceeding, or confidentiality designation made pursuant to such an order, please so state and identify each such document or category of documents withheld with sufficient specificity to permit evaluation of the basis for withholding. This identification must include: (1) the title of the case in which the protective order was entered; (2) the case number; (3) the record or docket number of the applicable protective order; (4) the date, scope, and relevant provisions of the applicable protective order; (5) the names of both the designating party and the producing party of the confidential information; and (6) a description of the document or category of documents being withheld. |
| N. | With respect to Electronically Stored Information ("**ESI**"), such electronic discovery should be produced as follows, unless otherwise agreed: |

  1. Documents that exist as ESI should be produced in a non-proprietary electronic format and include both text data and image data. Documents that do not exist in electronic form may be produced in

their original paper format or converted to electronic form and produced as ESI.

2. ESI should be produced as static images by converting native files into a standard image format that can be viewed and printed on standard computer systems. Static images must be provided in Tagged Image File Format (TIFF) at a resolution of no less than 300 dpi. All images must render the complete content of the original document, including visible track changes, hidden text or content, comments, notes, hidden slideshows, or columns, subject to any redactions.

3. File types that do not convert cleanly to TIFF format—such as Microsoft Excel spreadsheets, image, audio, or video files, or any other file unsuitable for TIFF production—must be produced in native. When producing files in native format, native files should be named with a unique production number and include the original filename in the FILENAME metadata field.

4. If load files are created during TIFF conversion, or can be generated without undue burden or cost, they should be produced along with corresponding document-level extracted text and metadata. Load files should indicate proper document breaks and family relationships, and be delivered in delimited text format containing all available metadata fields.

5. ESI should be produced with the following metadata fields, and the original metadata should not be modified:

    BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENEDDATE, ENDTIME, AUTHOR, FROM, CC, TO BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

6. ESI may be produced via portable storage media (e.g., CD, DVD, or flash drive) or through a secure electronic file transfer site. ESI may be transmitted in an encrypted container; however, individual files within that container should not be separately encrypted. Decryption keys or passwords should be produced separately at the time of production.[1]

7. All production sets should include Bates numbers endorsed on the bottom right corner of each page, without obscuring any portion of the underlying content.

8. Non-responsive family members must be produced alongside responsive documents to preserve family integrity. If privilege is asserted over any subset of documents within a family, the privileged document(s) should be replaced with a Bates-stamped slipsheet stating

---

[1] A flash drive having sufficient storage capacity or access to a secure file transfer site for uploading responsive documents can be provided upon request.

       "Document Withheld as Privileged" or some equivalent message. Such documents must also be included on the privilege log.

9. For any questions, further discussion, or clarification regarding these ESI protocols, please contact the undersigned.

## DEFINITIONS

These Requests are subject to the following Definitions.

A. **"Relevant time period"** means the period from June 24, 2022 through the date of production.

B. "**2020 presidential election**" shall mean the U.S. Presidential Election that occurred on November 3, 2020, and all voting by any means (including in-person, or mail-in voting) for that election.

C. The word "**action**" refers to the instant case captioned *Coomer v. DONALD J. TRUMP FOR PRESIDENT, INC., et al.,* 2020-CV-034319.

D. The words "**and**" and "**or**" shall mean shall be construed disjunctively or conjunctively to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

E. The word "**any**" shall be construed to include "**all**" and vice versa.

F. "**Communication**" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including, without limitation, written, oral, or electronic transmissions.

G. The term "**Complaint**" refers to the original and any amended complaint or petition filed by Plaintiff in this action. Please contact the requesting attorney if you would like a copy of the Complaint.

H. "**Concerning**" shall mean referring, relating to, discussing, describing, depicting, reflecting, regarding, containing, analyzing, studying, reporting, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

I. The phrase "**Coomer's and Dominion Other Lawsuits**" means and refers to any or all of the following lawsuits initiated by Plaintiff Eric Coomer:

    1. *Eric Coomer v. Patrick Byrne, et al.*
       Court:   U.S. District Court for the Middle District of Florida
        Case No. 8:2024-CV-00008

    2. *Dominion Voting Systems Corporation  v. Patrick Bryne, et al.*
       Court: U.S. District Court for the District of Washinton D.C.
       Case No.: 1:21-CV-02131

J. The term "**document**" shall be given the broadest interpretation permitted, and it shall mean all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including

without limitation correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, certificates, drawings, plans, interoffice and intra-office communications, or offers, notations in any form made of conversations, telephone calls, meetings or other communications; bulletins, printed matter (including newspapers, magazines and other publications, and articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, invoices, ledgers, worksheets (and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation photographs, charts, graphs, and microfiche, microfilm, videotape, or film recordings) and electronic, mechanical or electrical records or representations of any kind (including without limitation tapes, cassettes, discs, recordings), or transcriptions thereof. Documents also include, but are not limited to, electronic mail or email, text messages, facsimiles, instant messages (IMs), calendars, diaries, appointment books, agendas, journals, drafts, voicemail messages, post cards, post-it notes, reports, logs, message slips, invoices, checks, paystubs, letters, memoranda, agreements, contracts, tax returns, bank statements, video recordings, audio recordings, computer programs, printouts, and all other written, graphic, or electronic materials of any nature whatsoever. A draft or non-identical copy of a document is a separate document within the meaning of this term. Any copy containing thereon or having attached thereto any alterations, notes, comments or other written material not included in the originals or copies referred to in the preceding sentence shall be deemed a separate document within the foregoing definition. A document includes all appendices, schedules, exhibits, and other attachments.

K. **"Donald Trump"** means and refers to the 45th and 47th President of the United States, and at times candidate for President of the United States.

L. The word "**each**" shall be construed to include "**every**" and vice versa.

M. "**Eric Coomer**" or "**Coomer**" refers to the Plaintiff Eric Coomer.

N. **"Dominion"** means Dominion Voting Systems Corporation, a Colorado Corporation, recently acquired by Liberty Vote Corporation, a Missouri Corporation.

O. **"State Street Capital"** means the New York private equity firm and majority investor in Dominion Voting Systems Corp. since July, 2018.

P. **"Liberty Vote Corp"** means the Missouri Corporation headquartered in St. Louis, which acquired Dominion Voting Systems Corp. on or about October 9, 2025.

Q. To "**identify**" means the following.

   1. To identify, when used in reference to a person, means to state: (a) a person's name; (b) the person's present or last known address and telephone number; (c) if a business, governmental entity, or association, the nature of the organization; and (d) if an individual, the person's place of employment and position.

8

2. To identify, when used in reference to a document, means to specify the document in sufficient detail to permit the undersigned to locate, identify and retrieve the record, which may include, but is not necessarily limited to, stating: (a) its date, or if it bears no date, the date when it was prepared; (b) the name and address of the person or persons who prepared it; and (c) the present location of the document and the name, address, and telephone number of its custodian.

3. To identify, with respect to communications, means to give, to the extent known, (a) a description of the substance of the communication; (b) the form of the communication (e.g., telephone, facsimile, email, text message, etc.); (c) the identity of all parties to and/or present at the time of the communication, as well as the full name, present or last known address, and the current or last known place of employment of each person; (d) the identity of the person whom you contend initiated the communication; and (e) the time, date, and place of the communication.

R. The term "**including**" shall mean "including, but not limited to."

S. "**Joseph Oltmann**" or "**Oltmann**" refers to the Defendant Joseph Oltmann.

T. "**FEC United**" refers to the Defendant FEC United.

U. "**Shuffling Madness Media, Inc.**" or "**Shuffling**" or "**SMM**" refers to the Defendant Shuffling Madness Media, Inc.

V. The term "**person**" where used herein includes human beings, corporations, limited liability companies, partnerships, associations, joint ventures, government agencies (federal, state, or local), or any other organization cognizable at law; and where an employee, contractor, or worker performs some task about which an inquiry is made in these Requests, as part of his or her employment or work, "person(s)" includes both the employing and employed person(s).

W. The term "**present**" means the date on which you comply with this Subpoena, including the production of documents, materials, objects, or things in response thereto.

X. "**Trump Administration**" means and refers to Donald Trump, and/or any of his agents, staff members, appointees, employees, members of the cabinet, or officials within any executive department or agency, including but not limited to advisors, attorneys, and family members.

Y. "**Trump Campaign**" means and refers to the entity Donald Trump for President Inc. and any individual who you understood to be speaking on behalf of the campaign to re-elect Donald Trump to a second term as President of the United States, and/or any of its agents, staff members, employees, advisors, surrogates, or attorneys at or during the time period referenced in any individual Request, including but not limited to, Bill Stepien, Boris Epshteyn, Christina Bobb, Donald Trump Jr., Eric Trump, Gary Michael Brown, Ivanka Trump, Jared Kushner, Jason Miller, Justin Clark, Katherine Friess, Katrina Pierson, Kayleigh McEnany,

9

           Kimberly Guilfoyle, Lara Trump, Mark Meadows, Matt Morgan, Michael Roman, Rudy Giuliani, Sidney Powell, or Stephen Miller.

Z.     The pronouns "**you**," "**your**," "**yours**," or "**yourself**," and the like, as used herein, refer to Stephanie Lambert, as attorney for Patrick Byrne, your co-counsel, Mr. Byrne, and any member of the defense team, their employees, agents, consultants, attorneys, accountants, and any other representatives or individuals acting or purporting to act on your, or their, behalf.

AA.    Any word in the singular form shall also be construed as plural and vice versa.

BB.    The masculine form shall also be construed to include the feminine and vice-versa.

## REQUESTS FOR PRODUCTION

1. All documents and communications from the Relevant Time Period—regardless of author, sender, or recipient—that concern, refer, relate, or otherwise pertain to Eric Coomer.

2. All documents and communications from the Relevant Time Period sent to, from, copying, or involving Eric Coomer, the subject matter or content of which concerns:

    a. The 2020 presidential election or the results thereof;

    b. Donald Trump, Donald J. Trump, Donald John Trump, the Trump Administration, Trump Campaign, Donald Trump Campaign, Donald J. Trump Campaign, and Donald John Trump Campaign;

    c. Issues, problems, errors, irregularities, or perceived abnormalities with the adjudication feature of any Dominion voting machine used in the 2020 presidential election, including internal investigations, root cause analyses, bug reports, customer complaints, or communications with governmental entities;

    d. Instances where any Dominion voting machine or software malfunctioned, produced unexpected results, or was subject to investigation, whether in the United States or abroad;

    e. Security features or vulnerabilities of any Dominion voting machine, component, or software, including patches, updates, and any known or suspected security breaches;

    f. Audits, testing, or evaluations (internal, third party, or governmental entity) of Dominion voting machines, including performance reviews, security assessments, penetration testing, or risk analyses; or

      g. Remote access to Dominion voting machines, including but not limited to technical capabilities, security features or vulnerabilities, software or firmware updates, remote troubleshooting capabilities or procedures, and access logs or policies.

3. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and John Poulos.

4. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Ronald Morales.

5. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and David Moreno.

6. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Heider Garcia.

7. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Pat Bolen.

8. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Sheree Noell.

9. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Donetta L. Davidson.

10. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Zach Parkinson.

11. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Kay Stimson.

12. All text messages, iMessages, slack messages, or other communications from the Relevant Time Period sent via any text messaging service, ephemeral messaging application, or work-related instant messaging platform (including but not limited to Signal, WhatsApp, Telegram, Slack Microsoft Teams, Google Chat, or Skype) between Eric Coomer and any director, officer, or employee of Dominion.

13. All documents and communications concerning Eric Coomer's role in designing, developing, engineering, testing, investigating, or modifying any Dominion voting machine, software, or adjudication-related feature.

14. All documents and communications concerning Eric Coomer's international connections/relationships in designing, developing, engineering, testing, investigating, working with, or modifying any Dominion voting machine, software, or adjudication-related feature.

15. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or

Telegram) between any Dominion employee or investor, or correspondence with Serbia or foreign coders, etc.

--- END ---