**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) | Civil Action No. 1:21-cv-02131-CJN-MAU |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| PATRICK BYRNE, | ) ) | |
| Defendant. | ) ) | |

## JOINT STATUS REPORT

**Plaintiffs' Position**

For nearly two years, Defendant Byrne and his former counsel have kept this case at a standstill because of what Magistrate Upadhyaya described as "truly egregious misconduct," Dkt. 126 at 3, and this Court similarly described as "egregious violations" of binding orders, Dkt. 144 at 5. After former counsel Stefanie Lambert's initial breach in March 2024, the parties spent months litigating the consequences of that violation and the ensuing cascade of further noncompliance by both Lambert and Byrne, derailing the orderly progress of the case and consuming resources of both Plaintiffs and this Court. And when that serial misconduct compelled Magistrate Judge Upadhyaya to take the "extraordinary" step of disqualifying Lambert in August 2024, Dkt. 126 at 2, Byrne responded with a barrage of meritless motions for reconsideration and appeals, which in turn resulted in an additional stay that remains in place to this day, a year and a half after Lambert's disqualification. Those challenges have been rejected, and the time has come to restore this case to the regular course.

1

Plaintiffs are concerned, however, that the language and conduct exhibited by Defendant's new attorney, Peter Ticktin, will make that impossible, at least without this Court's prompt intervention. Specifically, Byrne and his counsel's recent communications and conduct exhibit a familiar disregard for the Court's orders, to say nothing for professional norms, as reflected in Byrne and Lambert's earlier misconduct.

*First*, it appears that despite having been lead counsel in this matter for at least the past 57 days—to say nothing of signing one of the appeals concerning Lambert's misconduct as far back as 125 days ago—Byrne's new lawyer has not taken it upon himself to read all—or even any—of the previous orders issued in this case by this Court. This includes the orders relating to Lambert and Byrne's past misconduct that provide specific instructions about how Byrne and any new counsel must conduct themselves going forward. Indeed, despite repeated requests that counsel confirm that both he and Byrne have read and understood their obligations under the Court's binding orders, counsel has repeatedly refused to provide Plaintiffs that basic assurance, and all indications suggest they have not. Nor did Plaintiffs' request for this assurance come out of the blue. Counsel's statements in the days preceding the filing of this report evince either unfamiliarity with, or indifference to, those orders. *See, e.g.*, Ex. B at 2–5 (assuming he or his colleagues should be able to access Dominion's documents, despite two governing orders prohibiting access absent Court authorization); Ex. A at 5 (refusing to provide signed undertakings for personnel in his office who intend to access Dominion's documents); Ex. B at 1 (asking only days before this report was due that Plaintiffs' counsel send him the orders and evading the question whether he had previously reviewed them). As of the time of the parties' meet-and-confer on the morning of January 9, 2026—just one day before this report was due—he exhibited virtually no knowledge of the

2

substance of the Court's orders regarding these issues at all.[1] This refusal is unacceptable, and will no doubt lead to future problems in this case.

*Second*, Stefanie Lambert, long since disqualified from this case, remains involved in unknown ways in Byrne's defense. *See* Ex. C at 2 (current counsel cc'ing Lambert on emails relating to this case). Plaintiffs understand that Lambert may have played some role in the transition to new counsel, but the result of this Court's many orders (unsuccessfully appealed to the Court of Appeals and Supreme Court) cannot be that she now litigates in the shadows on behalf of Byrne while someone else affixes their signature. To that end, Plaintiffs simply asked what her ongoing role was. Defendant refuses to answer. *See* Ex. A at 5, Ex. B at 2-3 & Ex. C at 1 (posing this question, which remains unanswered). During the parties' January 9 meet-and-confer, defense counsel was asked directly whether Lambert continues to represent Byrne in connection with this action. Counsel responded that he was "not exactly sure what their relationship is" or "where [it] falls exactly," yet also freely admitted that she is "absolutely" and "of course" still involved in Byrne's defense in this matter. Most troubling, counsel refused to say whether Lambert's role is confined to transitioning the matter to new counsel or whether it includes ongoing involvement on a prospective basis. This is a familiar playbook. As Judge Upadhyaya previously observed, it is "undisputed" that Lambert was "working with Byrne and his team for some time" before she filed her appearance in this case, accessed Plaintiffs' discovery material months before her appearance, and leaked Plaintiffs' documents before filing her appearance in this case. Dkt. 126 at 7–8 ("[Plaintiffs] did not even know Lambert was involved in this case until after she had released countless [of Plaintiffs'] discovery documents . . . and inflicted damage [Plaintiffs] could not

---

[1] This utter unfamiliarity with the content of these orders is even more unacceptable considering that present counsel filed Byrne's petition for certiorari with the Supreme Court to review the disqualification order.

undo."). Once the prohibition on access to Plaintiffs' discovery material is lifted, experience teaches that Lambert—still in the wings—will pick up where she left off.

*Third*, counsel's recent communications and conduct in connection with this status report exhibit the same animus toward Plaintiffs (and their counsel), disregard for professional norms, and disregard for the Court's orders reflected in Lambert's earlier misconduct.

On October 31, 2025, this Court ordered the parties to file a joint status report. As Plaintiffs' prior filings recount, Dkt. 163, Dkt. 165 & Exs. 1–3, Byrne's new counsel delayed seeking an extension of that deadline until the day it was due, Dkt. 162, failed to timely provide Byrne's portion of the joint submission (necessitating Plaintiffs' filing separately), Dkt. 163, and then—after the extension was granted *nunc pro tunc*—filed his status report individually without properly coordinating first with Dominion, Dkts. 164, 165. Among other things, Byrne's status report asserted vaguely that a conflict had arisen involving Scott Leiendecker, the founder of a company that acquired Plaintiffs' parent company during the pendency of the stay.

On November 26, 2025, the Court continued the stay in this matter for 45 days to allow Defendant's new counsel to familiarize himself with the case and directed the parties to file, by January 10, 2026, a joint status report addressing four specific points: (1) whether the stay should be lifted; (2) what motions remain live; (3) whether a conflict of interest exists regarding Scott Leiendecker; and (4) the sequence of next events.

A familiar pattern thereafter played out. On January 6, 2026—41 days into the 45-day continuance allotted by this Court, and mere days before the Joint Status Report was due—Byrne's counsel (having ignored Plaintiffs' request for a meet-and-confer) issued via email a series of irrelevant and burdensome demands, including demands to reopen document discovery, that he claimed he required "[b]efore we are able to form an opinion as to Dr. Byrne's position for the

4

Joint Status Report." Ex. A at 7. Byrne's counsel then followed up this email with another, which, among other things, admitted that he "**ha[s] no idea of the specificities and [is] not able to fully articulate**" the conflict he is alleging. *Id.* at 4. Plaintiffs encourage the Court to read Exhibit A, this email exchange, in full. It contains, among other things, the following attacks on Plaintiffs' counsel, which do nothing to move this litigation forward, and are contrary to the D.C. Bar's standards for civility in professional conduct:

- "I can understand that you think you can sit in judgment, considering that you are representing a company which was so important in that it was instrumental in taking over the United States for 4 years[.]" *Id.*

- "I guess I come from an old school, as I am from a different world, one which existed long ago, when Presidential Elections were not fixed, and when people like your client who did such horrible wrongs did not sue for defamation." *Id.* at 6.

- "BTW, are you watching to see the evidence of your client's wrongdoing, and today's information?  You know, I am sure, that your firm is implicated in the wrongdoing and had its security clearance revoked.  This is part of what makes me wonder how it is that you are threatening those who are representing a good, decent, American, who unearthed your client's activities.  Let's not forget who the real criminal is here." *Id.*

And when counsel finally agreed to meet and confer, he was unable to articulate his positions on two of the four topics the Court asked the parties to address. Byrne and his counsel are entitled to their own views, but those views do not license noncompliance with the Court's orders, delay in restoring this case to its orderly course, or unprofessionalism.

These developments confirm the need for prompt enforcement of the Court's existing orders—both to protect Plaintiffs from further misconduct and to identify and remediate the violations that have already occurred—and to return this litigation to an orderly course.

**The essential first step, after lifting the stay in this case, is to set a new compliance date for Judge Upadhyaya's order requiring Byrne and Lambert to submit sworn affidavits supplying information regarding their discovery breaches.** The Court entered the Order

requiring the sworn affidavits nearly a year and a half ago, Dkt. 126, and Plaintiffs filed their motion requesting the Court set a new deadline for compliance more than a year ago, Dkt. 146. The Court should require Byrne and Lambert to comply no later than January 30, 2026.  In addition, in light of the recent conduct described above, the Court should direct the submission of supplemental affidavits from Byrne and current counsel Peter Ticktin addressing the questions Plaintiffs' counsel has put to him via email but he has refused to answer:

1. Whether present counsel and Byrne have reviewed all the Court's orders regarding Lambert and the protective order;

2. Whether he, Byrne, and all other individuals assisting in this matter have abided by and will continue to abide by the Court's orders regarding Lambert and the protective order—including not assisting in the distribution or publication of the previously leaked discovery materials;

3. What was the last date on which Lambert acted as Byrne's lawyer in any way on this matter;

4. Whether he or anyone else assisting in this matter has accessed any of the Dominion documents produced in this litigation;

5. And if so: which documents, who accessed them, when, how (e.g., via a discovery platform, via access provided by Lambert, via Dar Leaf's publication, or via some other means), whether they were shared with anyone and, if so, who and when.

Finally, the Court should order that all attorneys working with Byrne on any issue related to this case provide Plaintiffs signed undertakings.

Taking these steps will hopefully begin to close this unfortunate chapter, ensure that harm to Plaintiffs is mitigated to the extent possible and does not continue, and finally begin to place the case back on track. These issues, and the specific questions the Court posed to Plaintiffs, are addressed below.

## I.    The Stay Should Be Lifted. (Question 1)

The stay should be lifted immediately. Plaintiffs brought this suit four and a half years ago, seeking to set the record straight in the wake of Defendant's false and profoundly damaging claims

about them. Beginning in March 2024, however, the parties—and the Court—were diverted from the merits and instead forced to expend considerable resources confronting the serious breaches committed by Byrne and his now-disqualified counsel, Stefanie Lambert. In recognition of the gravity of the decision to disqualify Lambert, the Court then stayed this case pending Byrne's appeal of that order, which he took all the way to the United States Supreme Court, adding another fourteen months of delay. He filed this appeal even though binding precedent inarguably established the disqualification order was not immediately appealable. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 426 (1985) ("[W]e conclude that orders disqualifying counsel in a civil case are not collateral orders subject to immediate appeal . . . ."). Those appeals finally came to an end upon the Supreme Court's denial of Byrne's petition for certiorari on November 10, 2025, two months ago. The rationale for the stay has thus long since expired, and Byrne should be required to answer for his actions.

Byrne's submission offers only one meritless reason to keep the stay in place. Byrne asserts that his counsel lacks access to Plaintiffs' discovery because of prior orders restricting access absent court authorization, and he asks both for authorization and an additional 60 days to review the materials. *See* Dkt. 77; 08/23/2024 Minute Order. Both requests should be denied. Access should not be granted *at a minimum* until Byrne and Lambert submit the sworn affidavits already ordered, counsel answers the questions identified above, and the Court and Plaintiffs know enough about the prior breaches to ensure they will not recur and that all appropriate remedies sought and sanctions imposed. Plainly, the protective measures the Court ordered to safeguard Plaintiffs should not be relaxed before they have even been fully satisfied.

In any event, the Court should not continue the stay—particularly given the 45-day continuance already afforded. Counsel did not raise any access concern until January 8—two days

before the status report was due and 43 days into the stay—writing, "I have a problem in that I never received the production of documents in this case. Can you please get all of the discovery which has already occurred to me?" Ex. B at 3-5. And he did not understand that his access was barred by Court orders until the January 9 meet-and-confer; Plaintiffs' counsel had to walk him through the operative orders. Counsel also did not provide the signed undertakings required for reviewing discovery until January 6, 2026. *See* Ex. D at 1. (Counsel has subsequently refused to provide undertakings for other members of his team. *See* Ex. A at 5.) Had Byrne desired to diligently pursue renewed access, he would have raised these issues weeks ago, and complied with the Court's affidavit order.

Moreover, there is no urgency in Byrne's counsel regaining access to these documents, as fact discovery as to Dominion is closed. Rather, what Byrne's counsel should be focused on, and what notably his communications are silent on, are the many gaps in Byrne's production that have all already been brought to this Court.

Byrne's persistent delay tactics have derailed the orderly progress of this case. He has successfully leveraged his and his counsel's own discovery misconduct into a nearly two-year-long sideshow. The case should return to a normal track.

## II.    What Motions Remain Live and What the Next Steps Should Be (Questions 2 & 4)

Plaintiffs propose the Court set the following immediate steps and address the following live motions that will shape the remainder of discovery and case management.

*Compliance with August 13, 2024, affidavits order.* Magistrate Judge Upadhyaya's August 13, 2024, Order (Dkt. 125, 126) granted Plaintiffs' motion for protective relief, disqualified Lambert, and required sworn affidavits from Byrne and Lambert addressing the scope of their breach and related issues. They have not complied. Those affidavits are essential to assessing the

extent of the violations and to fashioning appropriate remedies and sanctions. (As the Court noted in its disqualification order, "the full scope of Byrne's actions is not yet known," and Dominion "reserved its right to seek additional sanctions against Byrne" conduct." Dkt. 126 at 2 & n.2; *see also id.* at 11.) In their absence, the Court and Plaintiffs remain unable to determine, among other things, the full scope of the breaches, Byrne's role in them, and what, if any, efforts have been undertaken to mitigate their effects or to comply with the Court's orders.

Plaintiffs moved on November 1, 2024, to set new deadlines for these affidavits and to enter a destruction protocol. Dkt. 146. The motion remains ripe. The Court should grant the motion for a deadline for compliance and direct Lambert and Byrne's immediate compliance. As indicated above, given new counsel's apparent disregard for these orders, and refusal to answer key questions via the meet-and-confer process, he too should be required to submit an affidavit on the same schedule.

*Document destruction protocol*. The August 13, 2024, Order authorized Plaintiffs to propose a document destruction protocol by August 20, 2024, which Plaintiffs filed. Dkt. 128. After the District Court resolved Byrne's objections and affirmed Lambert's disqualification on October 22, 2024, the protocol became ripe for entry. The protocol is essential to balancing the need to preserve certain documents related to Lambert and Byrne's breaches—and therefore relevant to determining any future sanctions, actual malice, and punitive damages—against the need for Plaintiffs to ensure that Lambert cannot and will not improperly share their confidential documents again. The Court should enter Plaintiffs' proposed protocol now.

*Hearing on pending discovery motions*. Plaintiffs request a hearing to resolve the following pending discovery disputes, both previously raised with Magistrate Judge Upadhyaya and fully ripe for resolution: (i) Plaintiffs' July 2, 2024, motion to compel addressing Byrne's refusal to

produce key documents and search issues; and (ii) Plaintiffs' November 13, 2024, motion concerning Byrne's failure to respond to Plaintiffs' Third Interrogatories (served August 30, 2024). *See* Exs. E & F. Resolution will determine whether additional discovery is necessary—including what to do about Byrne's deposition, which he failed to attend on December 5, 2024. (Discovery as to Plaintiffs is long since complete, with Lambert having been permitted to attend and ask questions at all depositions of Plaintiffs in this matter.)

*Improper motion to set aside protective order.* Instead of using this time to familiarize themselves with existing orders (including the several denying previous requests to wholesale lift the protective order in this case), or run down Byrne's own missing documents, on January 5, 2026, new counsel and Byrne filed a motion to "fully lift" the protective order. Dkt. 166. (Byrne apparently seeks to litigate new motions *he* brings while keeping the remainder of the case—including motions brought by Plaintiffs months ago, and the enforcement of this Court's existing orders—stayed.) This is the third time Byrne, who agreed to the operative protective order, has argued to set it aside in its entirety so that his various agents may provide documents to various third parties. Dkt. 90, 116. This motion is yet another thinly veiled attempt to funnel Plaintiffs' documents into the public domain and expose its employees to further harassment and threats,[2] and raises obvious questions about whether Byrne and his new counsel intend to litigate this case going forward as it should be. *Cf.* Dkt. 126 at 3 ("Lambert's repeated misconduct raises the serious concern that she became involved in this litigation for the sheer purpose of gaining access to and publicly sharing [Plaintiffs'] protected discovery."). For what it is worth, the motion rests on two meritless premises: *first*, the false assertion that Plaintiffs rigged the 2020 Presidential Election, an

---

[2] As Magistrate Judge Uphadyaya observed, "Lambert and Byrne's actions . . . led to serious threats to [Plaintiffs] and [their] employees." Dkt. 126 at 24.

allegation that has been repeatedly rejected and that—as this Court and Magistrate Judge Upadhyaya have reminded Byrne many times—affords no license to disregard valid confidentiality protections; and *second*, the bootstrapped claim that because Lambert leaked Plaintiffs' documents and some may now have been shared with third parties as a result, the Court should lift the order that her conduct violated. The Court should summarily deny the motion without requiring Plaintiffs to expend the resources to respond to yet another one of these plainly improper requests. If the Court does not do so, Plaintiffs will file their opposition on January 20, 2026, and consider moving for all time and costs associated with its drafting.

*Corporate name changes and caption update*. Plaintiffs have informed Byrne's counsel that the name of Plaintiff US Dominion, Inc. is now Liberty Vote Holdings Inc., and Dominion Voting Systems, Inc. is now Liberty Vote USA Inc.; Dominion Voting Systems Corporation's name remains unchanged. After the stay is lifted, Plaintiffs will move to amend the caption solely to reflect these name changes.

Byrne's submission identifies an additional October 14, 2024, motion to stay discovery as currently pending. Dkt. 141. The first time Defendant identified this as a still-pending motion was in a 5:48 PM ET email on Friday, January 9 (the day before the Saturday filing deadline for the joint report). While the Court has not formally resolved the motion, the motion should be denied for the reasons explained in Dominion's opposition, namely, that it was improperly filed by his then-disqualified counsel; it provided no basis to stay discovery at the time; and the Court already denied a substantially similar stay motion. Dkt. 142. It should additionally be denied because the deadlines it seeks to stay have now elapsed, and the motion is therefore moot.

*Finally*, Byrne's submission suggests that the sequence of next steps in the case should include submitting a new discovery plan, meaning, apparently, reopening fact discovery into

Plaintiffs. Plaintiffs oppose that request. Fact discovery as to Plaintiffs is over. Setting aside Byrne's long record of delay and lack of diligence in discovery, his repeated and unsuccessful attempts to push fact discovery deadlines (including after Lambert's disqualification), and his submission's total failure to address the standards governing untimely motions to extend discovery deadlines—none of the rationales his submission offers remotely justify reopening fact discovery.

Start with relevance. Two of Byrne's proffered developments—an indictment of third parties and an open letter purportedly written by an incarcerated Venezuelan official—concern Smartmatic, a competitor company that is not a party here. Materials about Smartmatic do not establish anything about Plaintiffs. His third purported development—the United States' seizure of Nicolás Maduro—fares worse. Whatever its news value, it has no connection to the claims or defenses in this action.

Nor can Byrne credibly complain that he has received anything less than a full and fair opportunity to participate in fact discovery. Plaintiffs produced documents to him on a scale that dwarfs by orders of magnitude what he produced in return, and—despite the pending disqualification battle—he and his counsel were permitted to, and did in fact, participate in depositions of Plaintiffs' witnesses. He has had every meaningful opportunity to develop whatever factual record he thought mattered. What he seeks now is not completion of discovery, nor to reopen discovery as to issues relevant to this case, but rather to use this ongoing litigation to create new distractions that he thinks benefit his overarching narrative.[3]

---

[3] If the Court is inclined to entertain Byrne's request to reopen fact discovery, Plaintiffs request a full opportunity to brief the issue.

The highly irregular course of discovery in this matter has already imposed immense burdens on Plaintiffs—to say nothing of Magistrate Judge Upadhyaya and the Court. It should not be reopened.

### III. No Conflict of Interest Has Even Been Alleged Regarding Scott Leiendecker. (Question 3)

Defendant has not articulated anything resembling a coherent conflict theory regarding Scott Leiendecker. Byrne's prior filings gesture at corporate name changes and speculate about an "alter ego," but they identify no conflict. Susman Godfrey represents the Plaintiffs, as it has throughout this litigation. That two Plaintiffs adopted new corporate names following a transaction does not create a conflict.

What Defendant offers in lieu of a coherent theory of conflict is conjecture untethered to any recognizable conflict principle. As best Plaintiffs can tell from his most recent submission, Byrne's theory is premised on the baseless speculation that "significant criminal and civil conduct by the Plaintiff" occurred (and then that misconduct was subsequently concealed during the acquisition of Plaintiffs' parent company). *See infra* at 19. That is not a conflict theory; it is a cascade of speculation and make-believe.

The scattershot demands counsel has lodged for information he claims he needs to investigate his conflict theory—among other things, "any and all sale documents regarding the sale of Dominion," "[t]he law office and attorney names that handled the sale of Dominion," "the name of the escrow agent that handled the sale of Dominion," and "Documents reflecting any financial or personal interests Leinendecker [*sic*] may have that could influence the case" (Ex. A at 4–5)—underscore that this is not a good-faith inquiry into a potential, non-speculative conflict. It is an animus-driven fishing expedition.

**Defendant's Position**

The Defendant, Patrick Byrne, by through his undersigned counsel, respectfully submits the following statement in response to the Courts Minute Order dated November 26, 2025, which directed the parties to file a Joint Status Report addressing four topics identified by the Court: (1) whether the stay should be lifted, (2) what motions remain live that the Court should rule on, (3) whether a conflict of interest exists regarding Scott Leinendecker, and (4) what the sequence of next events in this case should be.

**Prefatory Statement:**

It is a shame when the attorneys for one of the parties seek only to malign their opposing counsel with *ad hominem* attacks. Frankly, the statements made by the Plaintiff's attorneys are a complete surprise following a polite, even friendly conference on Zoom, in which the Plaintiff's attorneys lulled the undersigned into thinking that we would be working together, cooperatively.

It is true that there were disagreements as to whether the undersigned was answerable to the Plaintiff as to their inquiries of what discussions were had with Dr. Byrne and Stefanie Lambert, exactly what the relationship is between Dr. Byrne and Stefanie Lambert, etc.

Although the undersigned was taken aback, by the audacity to ask for this information, the undersigned did advise that he was also the attorney for Patrick Byrne in *Eric Coomer v. Patrick Byrne et al., Civil Case No. 8:24-cv-00008-TPB-SPF, Middle District of Florida* in which the trial judge followed the disqualification of Ms. Lambert in the above styled action, and was wise enough to realize that replacement counsel would need to rely on Ms. Lambert and work with her. This was memorialized in an endorsed order:

> ENDORSED ORDER: "Plaintiff's Emergency Motion for Protective Order Pursuant to Federal Rule of Civil Procedure 26(c)" (Doc. 190) is granted in part and denied in part. The motion sought to preclude attorney Stefanie Lambert Junttila ("Lambert") from

> attending depositions or accessing confidential information covered
> by the protective order entered in this case (Docs. [162-1]; 163)
> unless and until the Court granted her special motion for admission
> as counsel for Byrne. The Court effectively granted the motion in
> part at the February 20, 2025, case management conference in this
> matter by staying all depositions until Lambert's motion for special
> admission could be determined. By separate order the Court has now
> denied Lambert's motion for admission. The Court will not at this
> time restrict Lambert's attendance at depositions or her receipt of
> confidential information other than as provided in the protective
> order but will impose one additional requirement. If Byrne has
> provided or intends to provide Lambert with any confidential
> documents or information, Byrne is directed to file with the Court
> the signed undertaking by Lambert required by the protective order.
> Failure by Byrne or Lambert to complete the signed undertaking as
> ordered could subject one, or both, to sanctions including contempt
> of court. Signed by Judge Thomas P. Barber on 6/10/2025. (EKB)
> (Entered: 06/10/2025)

The undersigned explained that this Court would probably also have the wisdom to realize that a disqualified counsel is not barred from helping her client, especially in a case where it was necessary to learn so much so quickly.

Moreover, Eric Coomer was the head of the U.S. Division of Dominion, at the time that Dominion rigged the 2020 Election, and the evidence in Coomer's case is going to be the same in this regard to the evidence in the instant case.  It is axiomatic that there is no way to divide the assistance between the 2 cases as to where Stefanie Lambert's assistance would end in one and start in the other.

As to the quotes which were used to supposedly show that the undersigned is not civil, the undersigned is reminded of the words of Harry Truman, who said, "They think I give them Hell, but all I do is tell the truth, and they think it is Hell."

According to the undersigned, the election in 2020 was rigged by the Plaintiff and Eric Coomer.  Recently, the President of the United States made it public that there is a truckload of evidence of this.  More and more information is coming out, and the attorneys for the Plaintiff are

15

either    aware    of    this    or    they    are    in    complete    denial.

The reason that they are attacking the undersigned, as they have, is because they believe that the U.S. District Court judges in the District of Columbia are biased against the belief that the 2020 Presidential Election was rigged, and will be the last to wake up once the evidence is produced to them.

Apparently, the Plaintiff's counsel underestimates the high level of the judges of this Court, who may be of one opinion at this time, having not seen the evidence of the Plaintiff's criminal activities. However, once this Court sees that there were actually phone chips in Dominion's machines' motherboards, which actually communicated to a central source on the evening of November 3, 2020, and the early hours of November 4, 2020, and once they see the evidence of the way that Dominion machines determined the outcome of that election, they will not turn a blind eye to the greatest scheme and attack against the United States, in history.

The importance of what the Plaintiff did, and the actual treason committed by it was on the highest level. It is expected that the Courts who were misled, before, will be able to realize that they were wrongfully persuaded.

Instead, the Plaintiffs claim that the mention of the truth is a lack of civility. Such a position is an extreme of audacity.

**Whether the Stay Should Be Lifted**

The Defendant respectfully submits that the stay should not be lifted at this time. The Defendant's counsel has yet to receive access to any of the "3,655,190 documents" that the Plaintiff, Dominion, has claimed it has produced in discovery, or the case file for Dr. Byrne. However, pursuant to the Court's August 23, 2024 minute entry which states,

> with respect to all Dominion-produced documents contained in the
> repositories of ediscovery vendors iDiscovery Solutions and

Innovative Driven, iDiscovery Solutions and Innovative Driven, those vendors shall continue not to allow any person access to such documents unless specifically authorized by this Court.

Therefore, the Defendant's counsel requires that the Court issue an Order authorizing ediscovery vendors iDiscovery Solutions and Innovative Driven, iDiscovery Solutions and Innovative Driven to authorize Dominion produced documents to the Defendant's counsel. Without the case file, including all documents produced in discovery, the Defendant's counsel cannot confidently assess the factual landscape of this case, understand what discovery has been conducted to date, or determine what additional discovery might still be required.

As such, the stay should remain in effect for an additional 60 days. This will allow sufficient time for the Defendant's counsel to obtain and review the case file and discovery materials, and to assess recent developments relevant to the defense.

Furthermore, the volume and significance of the materials involved require additional time for review and analysis.

In light of the above, the Defendant respectfully requests an additional 60 days to review the case file and discovery materials before the stay is lifted. This time will ensure that the Defendant's counsel is fully prepared to engage effectively in the next stages of this litigation.

**Motions Remaining Live for the Court's Ruling**

As of the date of this filing, the following motions remain pending:

On July 2, 2024, a Letter of Discovery Dispute was lodged. [DE 163-1, 2].

On September 30, 2024, a Motion to Stay Discovery was filed, which remains pending. [DE 141].

On November 1, 2024, a Motion to Set Deadline for Stefanie Lambert and Patrick Byrne to Submit Affidavits and to Enter Document Destruction Protocol was filed, which remains

pending.  [DE 146].

On January 5, 2026, a Motion to Set Aside Fully Lift the Protective Order in the above styled case or in the Alternative, to, at the Very Least, Permit Compliance with a Subpoena to Produce was filed and remains pending.  [DE 166].  Given its potential impact on discovery and case strategy, resolution of this motion is essential to advancing the litigation, and its outcome will significantly impact the scope and direction of future discovery efforts.

**Whether a Conflict of Interest Exists Regarding Scott Leinendecker**

The Defendant maintains considerable concern regarding Scott Leinendecker's acquisition of Dominion Voting Systems, Inc. (now Liberty Vote) and the potential conflict of interest arising from this transaction.  Efforts to obtain key information from the Plaintiff to assess the scope and implications of this issue have been met with either silence or ridicule, despite repeated requests. Specifically, the Plaintiff has not provided details including: (1) Sale documents related to Dominion's acquisition; (2) The identity of the law firm and attorneys facilitating the sale; (3) The name of the escrow agent responsible for handling the transaction; (4) The name of Scott Leinendecker's attorney; (5) Documentation of any financial or other interests that Leinendecker may have which could influence these proceedings; and/or (6) Corporate disclosure statements detailing any parent corporations or publicly held companies owning 5% or more of Liberty Vote's stock.

Nonetheless, publicly available information suggests that the Election Assistance Commission has classified this transaction as a purchase by Leinendecker/Liberty, and Mr. Leinendecker has represented himself as the owner of Liberty, which now encompasses Dominion.

The Defendant, Patrick Byrne, is gravely concerned that substantial liabilities may have been hidden or misrepresented in this acquisition, particularly given the ongoing allegations of

significant criminal and civil conduct by the Plaintiff, Dominion.  Determining what Mr. Leinendecker was told during the sale negotiations, what indemnifications were provided, how the liabilities were addressed, and who was responsible for related representations is essential to analyzing potential conflicts of interest and broader implications for this case.

The Defendant therefore renews the request for the Plaintiff to produce these materials so that this issue can be adequately resolved.  Those materials are necessary for the Defendant to determine whether a conflict of interest exists and to evaluate its implications on this case.

**Sequence of Next Events in the Case**

The Defendant proposes the following sequence of steps for advancing this litigation in a manner that ensures fairness and efficiency:

After counsel has reviewed the voluminous discovery documents already produced and resolved the outstanding issues, the parties should jointly submit an updated discovery plan.  This plan should specify any additional discovery necessary to address the newly identified issues, including facts relevant to the Defendant's defense of truth.

Recent reports, public statements, and events, indicate that new evidence and witnesses essential to Dr. Byrne's defense are available.

On October 16, 2025, SGO Corporation d/b/a Smartmatic was indicted for conspiracy to violate the Foreign Corrupt Practices Act, violation of the Foreign Corrupt Practices Act, conspiracy to engage in money laundering, and money laundering in *USA v. Donato Bautista et al*., Case No. 1:24-cr-20343-KMW, Southern District of Florida.

On December 2, 2025, a letter was released by, former Director of Military Intelligence and a Deputy in the National Assembly under Nicolas Maduro, Hugo Carvajal Barrio, stating that, "regime operatives maintain relationships with election officials and voting-machine companies

inside your country.  I do not claim that every election is stolen, but I state with certainty that elections can be rigged with the software - and has been used to do so."  Mr. Carvajal Barrios' allegation that Venezuelan intelligence agents have interacted with election machine companies, such as the Plaintiff, to manipulate election outcomes is newly discovered evidence, that must be verified and investigated by the Defendant as it relates to the core of Dr. Byrne's defense of absolute truth.  A copy of Hugo Carvajal Barrios' signed letter regarding the involvement of Maduro regime operatives with U.S. elections companies involvement is attached hereto and marked as Exhibit "G."  Recent military and law enforcement operations in Venezuela to seize Maduro, alive, stand as a strong indicator that Mr. Carvajal Barrios' allegations have merit, and must be thoroughly explored through discovery before the litigation proceeds.

**Conclusion**

For the foregoing reasons, the Defendant urges the Court to maintain the stay for an additional 60-day period, to issue a ruling on the Motion for Relief from the Protective Order, and to compel the Plaintiff to produce necessary information regarding the Scott Leinendecker transaction.  Prompt resolution of these preliminary matters will allow the parties to proceed in an organized, efficient manner without prejudice to either side.

Dated: January 10, 2026                    Respectfully submitted,

By:    */s/ Davida Brook*
       Davida Brook (D.C. Bar No. CA00117)
       **SUSMAN GODFREY L.L.P.**
       1900 Avenue of the Stars, Suite 1400
       Los Angeles, CA 90067
       Tel: (310) 789-3100
       dbrook@susmangodfrey.com

       Laranda Walker (D.C. Bar No. TX0028)
       Mary K. Sammons (D.C. Bar No. TX0030)
       Jonathan Ross (D.C. Bar No. TX0027)
       **SUSMAN GODFREY L.L.P.**
       1000 Louisiana St., Suite 5100
       Houston, TX 77002
       Tel: (713) 651-9366
       lwalker@susmangodfrey.com
       ksammons@susmangodfrey.com
       jross@susmangodfrey.com

       Stephen Shackelford, Jr. (D.C. Bar No. NY0443)
       Eve Levin (D.C. Bar No. 1672808)
       Christina Dieckmann (*Admitted pro hac vice*)
       George El-Khoury (*Admitted pro hac vice*)
       **SUSMAN GODFREY L.L.P.**
       One Manhattan West, 50th Floor
       New York, NY 10001
       Tel: (212) 336-8330
       sshackelford@susmangodfrey.com
       elevin@susmangodfrey.com
       cdieckmann@susmangodfrey.com
       gel-khoury@susmangodfrey.com

       Edgar Sargent (*Admitted pro hac vice*)
       **SUSMAN GODFREY L.L.P.**
       401 Union Street, Suite 3000
       Seattle, WA 98101
       Tel: (206) 516-3880
       esargent@susmangodfrey.com

       *Attorneys for Plaintiffs*

       */s/ Peter Ticktin*
       Peter Ticktin, Esquire
       Florida Bar No. 887935
       Serv512@LegalBrains.com

21

THE TICKTIN LAW GROUP
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of January 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/ Eve Levin*
Eve Levin