IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) |
| | Civil Action No. 1:21-cv-02131-CJN-MAU |
| Plaintiffs, | ) ) |
| | Judge Carl J. Nichols |
| v. | ) ) |
| PATRICK BYRNE, | ) **JURY TRIAL DEMANDED** |
| | ) ) |
| Defendant. | ) ) |

**PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTIFFS' MOTION TO AMEND CASE CAPTION**

Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation ("Plaintiffs") respectfully file this Reply in support of their Motion to Amend Case Caption. Dkt. 169.

Plaintiffs' Motion is straightforward. It seeks to update the case caption to reflect the new legal names of two plaintiff entities: (1) US Dominion, Inc. changed its name to Liberty Vote Holdings Inc.; and (2) Dominion Voting Systems, Inc. changed its name to Liberty Vote USA Inc. Dkt. 169-2, Ex. A. Notably, Defendants My Pillow, Inc. and Mike Lindell have not opposed the same request in related litigation before this Court. *See US Dominion, Inc. et al. v. My Pillow, Inc., et al.*, No. 1:21-cv-445-CJN-MAU, Dkt. 250.

Defendant Patrick Byrne, however, attempts to take issue with this simple request. Dkt. 172, Opp. Specifically, he claims: (1) The evidence Plaintiffs provided in support of their Motion suffers from "contradictions and ambiguities" that he argues show Plaintiffs seek to substitute a party, not amend the case caption; (2) Plaintiffs are improperly trying to dismiss Dominion Voting Systems Corporation; and (3) It would unfairly prejudice Byrne if Plaintiffs are

1

able "to shed the negative associations with the 'Dominion' brand." *Id.* at 3-6. All three arguments fail.

Regarding (1), this is a variation of the same misplaced and irrelevant corporate structure issues Byrne previously raised in the Joint Status Report that the Court declined to entertain. Dkt. 167, Jt. Status Rpt. at 18-19. Simply put, Byrne presents no evidence of a party substitution, and he fails to contradict the Delaware Secretary of State records that show two of the plaintiff entities did indeed change their names in the manner set forth in Plaintiffs' Motion. Regarding (2), Plaintiffs are not seeking dismissal of Dominion Voting Systems Corporation, which will remain a party in this case, on the case caption, and in pleadings. Finally, regarding (3), this argument is almost too ironic to address. But suffice it to say Byrne does not have a right to try to capitalize on the "significant reputational baggage" he himself caused to be associated with the Dominion name, and regardless, that issue is for evidentiary objections before and during trial. The Court should grant Plaintiffs' routine motion.

**I.    Plaintiffs' Routine Motion Does Not Seek Party Substitution.**

Byrne's party-substitution argument—that the Liberty Vote entities are wholly distinct from the Dominion entities, and thus can only be brought in through a substantive motion to add a party—is meritless. He does not dispute the authenticity or legal effect of the Certificates of Amendment. Dkt. 169-2, Ex. A. Nor could he credibly do so. These Certificates of Amendment are from the Delaware Secretary of State and are attachments to the Certificates of Incorporation of US Dominion, Inc. and Dominion Voting Systems, Inc. Ex. B at 6 (pdf pagination); Ex. D at 9 (pdf pagination). The Certificates of Amendment demonstrate that two of the plaintiff entities changed their names: (1) US Dominion, Inc. changed its name to Liberty Vote Holdings Inc; and

(2) Dominion Voting Systems, Inc. changed its name to Liberty Vote USA Inc. Ex. B at 6 (pdf pagination); Ex. D at 9 (pdf pagination).

Further refuting Byrne's party-substitution argument, the Delaware Secretary of State reports the same unique, seven-digit identification numbers for (1) US Dominion, Inc. and Liberty Vote Holdings Inc. (File No. 6944838), *see* Exs. B-C; and (2) Dominion Voting Systems, Inc. and Liberty Vote USA Inc. (File No. 4706613), *see* Exs. D-E. This publicly available information irrefutably demonstrates that US Dominion, Inc. and Liberty Vote Holdings Inc. are not distinct entities—they are just different names of the same entity. And that the same is true of Dominion Voting Systems, Inc. and Liberty Vote USA Inc. The fact that their names changed following changes in ownership and control of the entities do not impact Plaintiffs' Motion in any way.

In attempt to foment uncertainty about Plaintiffs' corporate structure, Byrne cites two documents—a screenshot of an EAC webpage (Exhibit A), and a California Secretary of State Memorandum (Exhibit B)—that were not authored by Plaintiffs, are not official records of Plaintiffs' status or names, and do not purport to provide a precise explanation of Plaintiffs' corporate structure or history.

**Exhibit A (EAC Website):** The EAC webpage states—in a bare parenthetical notation— the following:

> Dominion Voting Systems Corp
> (This company was purchased by
> Liberty Vote USA Inc. )

Dkt. 172-1, Ex. A.

As an initial matter, this parenthetical does not even refer to the plaintiff entities whose names have changed—US Dominion, Inc. and Dominion Voting Systems, Inc. Instead, it refers to

3

"Dominion Voting Systems Corp," which is not at issue in Plaintiffs' Motion. As the Motion states, "Dominion Voting Systems Corporation has not changed its name." Dkt. 169, Mot. at 1.

And unlike the Delaware Secretary of State's Office—which is an original source of information about Plaintiffs' corporate structure—the EAC webpage is not an authoritative source for such information. Instead, the webpage concerns voting systems, testing standards, and certification dates of Dominion Voting Systems Corporation and other voting system companies. Dkt. 172-1, Ex. A. The webpage notes the "purchase[]" as an afterthought and provides no further elaboration whatsoever. And to clarify Plaintiffs' corporate structure, Liberty Vote USA Inc.—the entity listed on the EAC webpage—did not purchase any Dominion entity. Instead, Liberty Vote USA Inc. is the new name of Plaintiff Dominion Voting Systems, Inc. Ex. D at 9 (pdf pagination).

**Exhibit B (California Secretary of State Memorandum):** The California Secretary of Statement Memorandum does not support Byrne's theory of improper party substitution. Dated October 17, 2025, the Memorandum informed county election officials about Liberty Vote Corporation's acquisition of Dominion and explained to them that the acquisition did not affect California certification or compliance. Dkt. 172-2, Ex. B. This Memorandum was not authored by Plaintiffs and does not purport to provide an analysis of Plaintiffs' corporate structure. It does not speak to this issue at all.

Simply put, Byrne's party-substitution argument lacks merit. It requires the Court to ignore irrefutably authentic, original sources of information concerning Plaintiffs' status, in favor of sources that do not purport to explain these issues in any detail.

## II.    Plaintiffs Are Not Dropping Dominion Voting Systems Corporation.

Byrne's argument that Plaintiffs are dropping Dominion Voting Systems Corporation (Dkt. 172, Opp. at 4-5) is also meritless. As Plaintiffs' Motion makes clear, "Dominion Voting

4

Systems Corporation has not changed its name," Dkt. 169, Mot. at 1, and will remain on the case caption and in pleadings, Dkt. 169-1, Addendum A (proposed case caption reflecting Dominion Voting Systems Corporation). Tacitly acknowledging this reality, Byrne nevertheless argues that Plaintiffs "seek[] to **effectively** remove [Dominion Voting Systems Corporation] from the caption by implication"—because, according to Byrne, "Liberty Vote USA Inc. … now owns Dominion Voting Systems Corporation." Dkt. 172, Opp. at 4-5 (emphasis added). But again: Liberty Vote USA Inc. does not own Dominion Voting Systems Corporation. And even if that were true, the presence of a parent corporation in a lawsuit with a subsidiary does not "effectively" drop the subsidiary. Both are still separate entities.

**III.     Byrne's Claims of Undue Prejudice Are Meritless.**

Byrne's fallback argument—that he would suffer "substantial unfair prejudice" if the case caption is amended to accurately reflect Plaintiffs' names—is likewise meritless. *See* Dkt. 172, Opp. at 5. Given the history of this case, it is unsurprising that Byrne seeks to advantage off his efforts in destroying Dominion and creating the "negative associations" he wants to submit to the jury. *Id.* But leaving aside the numerous reasons it is improper for a party to capitalize off the other's "significant reputational baggage," *id.*, Byrne's argument provides no basis to maintain an inaccurate case caption. At most, his arguments about the relevance of Dominion's reputation are suited for evidentiary motions or objections before and during trial.

**IV.     Byrne's Opposition Raises Serious Questions About His Compliance with the Court's Orders.**

As Plaintiffs have previously alerted the Court, they remain concerned with Byrne's, and his former attorney Stefanie Lambert's, ongoing compliance with this Court's orders. Specifically, despite clear orders to the contrary, it appears as though Byrne is still relying on Lambert to litigate this case for him—albeit in the shadows. *See* Dkt. 167, Jt. Status Rpt. at 3 ("Stefanie Lambert, long

since disqualified from this case, remains involved in unknown ways in Byrne's defense."); *see also* Dkt. 167-3, Ex. C at 2 (current counsel cc'ing Lambert on emails relating to this case). When Plaintiffs asked Byrne's new counsel, Peter Ticktin, to clarify Lambert's role, he refused to answer. *See* Dkt. 167, Jt. Status Rpt. at 3. In light of this, Plaintiffs requested the Court to set a new compliance date for Judge Upadhyaya's Order requiring Byrne and Lambert to submit sworn affidavits supplying information regarding their discovery breaches, and to further direct Ticktin and Byrne to submit supplemental affidavits answering questions about Lambert's role. *Id.* at 5-6. Plaintiffs renew those requests here.

Recently, Plaintiffs learned from Byrne's Opposition to this Motion that it appears Lambert is still involved in drafting Byrne's briefs. This, of course, raises serious concerns about whether she is likewise still involved in other aspects of this case.

Specifically, in preparing this Reply, Plaintiffs uncovered that the metadata of Byrne's Opposition shows that the document was authored by "Stefanie Lambert," as reflected below.



This prompted further investigation. Since the Court lifted the stay in this matter, Lambert also appears as the author of Byrne's Motion to Fully Lift Protective Order (Dkt. 166)—a recycled motion she filed twice before her disqualification, *see* Dkt. Nos. 87 & 90 (first motion); Dkt. Nos.

110 & 116 (second motion).[1]

[Document Properties dialog screenshot showing: File: Dkt. 166 - Motion to Lift Protective Order.pdf; Author: Stefanie Lambert; Created: 1/5/26, 8:21:34 PM; Modified: 1/5/26, 8:30:52 PM; Application: Microsoft® Word for Microsoft 365]

This information—coupled with Ticktin's election to copy Lambert on emails about this case, decision to recycle her previously raised but lost motions and arguments, and refusal to answer questions about her ongoing involvement—is concerning to say the least. Indeed, it raises questions about whether Ticktin and Byrne are complying with this Court's rules and orders.

Again, on August 13, 2024, this Court **disqualified** Lambert from serving as counsel to Byrne in this matter "**effective immediately**." Dkt. 125, Order at 3. The Court's ruling followed extensive findings that Lambert had "deliberately violated multiple court rules and orders" and shown "blatant disregard for this Court and her obligations." Dkt. 126, Mem. Op. at 1-2, 61. The Court found that Lambert's "truly egregious misconduct" had "already and will undoubtedly continue to 'infect future proceedings.'" *Id.* at 3. The history of "Lambert's repeated misconduct" was so egregious that it "raise[d] the serious concern that she became involved in this litigation for the sheer purpose of gaining access to and publicly sharing Dominion's protected discovery." *Id.*

To the extent Byrne and his new counsel are trying to evade this Court's clear orders by laundering Lambert's involvement, that would clearly be improper. As such, Plaintiffs renew their request for the following:

---

[1] By Minute Order dated January 16, 2026, the Court stayed Plaintiffs' deadline to respond to Byrne's Motion to Fully Lift Protective Order (Dkt. 166). Byrne's Motion should be denied.

First, Byrne's new counsel, Peter Ticktin, must clearly identify, in a statement filed with this Court, Lambert's ongoing role in this matter, including by answering the following specific questions that Plaintiffs previously posed to him:

1. Whether present counsel and Byrne have reviewed all the Court's orders regarding Lambert and the protective order;

2. Whether he, Byrne, and all other individuals assisting in this matter have abided by and will continue to abide by the Court's orders regarding Lambert and the protective order—including not assisting in the distribution or publication of the previously leaked discovery materials;

3. What was the last date on which Lambert acted as Byrne's lawyer in any way on this matter;

4. Whether he or anyone else assisting in this matter has accessed any of the Dominion documents produced in this litigation;

5. And if so: which documents, who accessed them, when, how (e.g., via a discovery platform, via access provided by Lambert, via Dar Leaf's publication, or via some other means), whether they were shared with anyone and, if so, who and when.

Dkt. 167, Jt. Status Rpt. at 6.

Second, Lambert and Byrne's recent misconduct elevates the need for Dominion to receive the sworn affidavits this Court long ago ordered them to serve addressing the scope of their discovery breaches and other misconduct. Dkt. 125; *see also* Dkt. 146 (Plaintiffs' November 1, 2024, motion to set new deadlines for these affidavits). This deadline was stayed while Byrne's challenges to the disqualification order ran their course. *See* Second Minute Orders of Mar. 25, 2025 & Aug. 23, 2024. But all challenges have been exhausted, and it is time for Byrne and Lambert to comply with the Court's nearly 19-month Order.

Unfortunately, Byrne and Lambert will not comply with the Court's Order unless the Court sets a date certain for them to do so. Indeed, on January 27, 2026, counsel for Plaintiffs emailed Byrne's new counsel, asking that they confirm Byrne and Lambert would comply with the Court's August 13, 2024, Order by a date certain. Ex. F. To date they have not responded this email. It is

clear the Court's intervention is necessary.

*   *   *

For the foregoing reasons, Plaintiffs respectfully request that their Motion to Amend Case Caption be granted. Plaintiffs' further request that the Court order: (1) Peter Ticktin, within 14 days, to answer each question identified above about Stefanie Lambert's involvement in this matter; and (2) Patrick Byrne and Stefanie Lambert, within 14 days, to comply with the Court's Dkt. 125 Order requiring them to submit sworn affidavits addressing the scope of their discovery breach and related issues.

Dated: February 27, 2026

Respectfully submitted,

*/s/Davida Brook*
Davida Brook (D.C. Bar No. CA00117)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
dbrook@susmangodfrey.com

Laranda Walker (D.C. Bar No. TX0028)
Mary K. Sammons (D.C. Bar No. TX0030)
Jonathan Ross (D.C. Bar No. TX0027)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
jross@susmangodfrey.com

Stephen Shackelford, Jr. (D.C. Bar No. NY0443)
Eve Levin (D.C. Bar No. 1672808)
Christina Dieckmann (*Admitted pro hac vice*)
George El-Khoury *(Admitted pro hac vice)*
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Tel: (212) 336-8330
sshackelford@susmangodfrey.com

        elevin@susmangodfrey.com
        cdieckmann@susmangodfrey.com
        gel-khoury@susmangodfrey.com

Edgar Sargent (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

        */s/Davida Brook*
        Davida Brook