IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.: 1:21-cv-02131-CJN-MAU

US DOMINION, INC.,
DOMINION VOTING
SYSTEMS, INC., and
DOMINION VOTING
SYSTEMS CORPORATION.,

        Plaintiffs,

v.

PATRICK BYRNE,

        Defendant.

_____/

**MS. LAMBERT'S APPEAL OF MAGISTRATE JUDGE'S UPDADHYAYA'S MARCH 31, 2026 ORDER, R. 175.**

Nonparty attorney Stefanie Lambert, pursuant to 72 of the Federal Rules of Civil Procedure files this, her appeal of Magistrate Judge Upadhyaya's March 31, 2026 Order (ECF 175), and states as follows:

**INTRODUCTION**

Nonparty attorney Stefanie Lambert, formerly counsel for Defendant Patrick Byrne, respectfully appeals pursuant to Federal Rule of Civil Procedure 72(a) to the Magistrate Judge's March 31, 2026 Order granting Plaintiffs' motion to set deadlines for affidavits and to enter a protocol for transfer of documents. The March 31 Order imposes sweeping compelled production and compelled testimonial obligations on Ms. Lambert, including requirements that she produce broad categories of documents and communications to Plaintiffs, serve a detailed privilege log and

1

a sworn affidavit attesting to its accuracy, and certify compliance by affidavit. Ms. Lambert objects because the March 31 Order is contrary to law and compels actions that conflict with core privilege protections and counsel's ethical duties.

**QUESTIONS PRESENTED**

Whether the Magistrate Judge exceeded her constitutional and statutory authority by issuing as a final order-rather than as a recommendation for de novo review-relief that is dispositive in effect, including compelled sworn affidavits from counsel, wholesale document production, adjudication of privilege claims, and a comprehensive sequestration and access-denial regime that materially affects the defendant's ability to prepare his defense.

Whether the March 31, 2026 Order violates the attorney-client privilege and work-product doctrine by requiring production of overbroad categories of documents that necessarily sweep in protected attorney-client communications and litigation strategy, and by requiring a detailed privilege log that itself compels disclosure of protected strategy and mental impressions.

Whether the March 31, 2026 Order effects an unconstitutional seizure of defense materials in violation of the Fifth Amendment Due Process Clause by requiring transfer of documents to the opposing party and sequestration by third-party vendors while denying the defendant and his counsel access to materials essential to litigation, without notice, opportunity to be heard, or articulated standards for regaining access.

Whether the March 31, 2026 Order violates Federal Rules of Civil Procedure 37 and 26 by imposing sanctions-like restrictions on access to litigation materials without findings of non-compliance, lack of substantial justification, or consideration of narrower, less restrictive alternatives.

Whether the defendant waived his right to object to the opposing party's motion when a

court-ordered stay prevented former counsel from filing into the docket and may have suspended the deadline for filing an opposition, and whether procedural default can justify the imposition of extraordinary relief without merits analysis and findings.

Whether the Magistrate Judge properly enforced an interlocutory disqualification order that is not final and not ripe for enforcement, given that the D.C. Circuit dismissed the defendant's appeal for lack of appellate jurisdiction.

Whether the March 31, 2026 Order improperly compels the defendant and former counsel to take actions that Ms. Lambert contends violate federal law by requiring return of documents to the parties she contends committed crimes, thereby obstructing, and hindering Ms. Lambert's access to the documents containing evidence of criminal acts, and interfering with Ms. Lambert as a chain of custody witness.

Whether the March 31, 2026 Order improperly compels current counsel to disclose protected information about attorney-client relationships, the division of labor among counsel, drafting involvement, and document access, thereby forcing counsel to testify against his own client and violating the work-product doctrine.

Whether the March 31, 2026 Order places Ms. Lambert is a position where she is unable to defend herself on the bar grievance submitted to this instant Court by Judge Upadhyaya.

## STATEMENT OF THE CASE

This matter arises from a defamation action brought by Liberty Vote Holdings Inc., Liberty Vote USA Inc., and Dominion Voting Systems Corporation against Patrick Byrne in the United States District Court for the District of Columbia. Stefanie Lambert served as counsel for Defendant Byrne in this litigation until her disqualification on August 13, 2024.

On August 13, 2024, the District Court entered an order disqualifying Attorney Stefanie

3

Lambert as counsel for Defendant Patrick Byrne based on her admission that she gave the Dominion discovery documents, containing evidence of criminal acts, to law enforcement. The disqualification order required Lambert and Byrne to provide a full accounting in the form of sworn affidavits detailing information relating to disclosure or release of documents or information protected by the Protective Order. The order also required Dominion to propose a *destruction* protocol for handling documents.

On August 23, 2024, the District Court issued a stay of the deadline for Lambert and Byrne to submit their affidavits to allow Byrne the opportunity to pursue his objections to the disqualification order. Byrne subsequently filed objections to the disqualification order, which the District Court denied. Byrne then filed a motion seeking relief from the District Court's order upholding Lambert's disqualification, which the District Court also denied.

Byrne appealed to the United States Court of Appeals for the District of Columbia Circuit. During the appellate proceedings, Dominion filed a Motion to Dismiss for Lack of Jurisdiction, arguing that an order disqualifying counsel in a civil case is not a final judgment on the merits of litigation and therefore the appellate court lacked jurisdiction. The D.C. Circuit agreed with this argument and dismissed Byrne's appeal for lack of appellate jurisdiction. The United States Supreme Court subsequently denied Byrne's petition for certiorari. The appellate process is not final, and Mr. Byrne intends to pursue on appeal the removal of his counsel of choice, once there is a final order in the instant case.

On November 1, 2024, Dominion filed a motion in the District Court requesting that the court set a new deadline for Lambert and Byrne to comply with the disqualification order and requesting that the court enter Dominion's proposed document destruction protocol. Byrne's opposition was due by November 15, 2024. Byrne did not file an opposition to this motion because

4

he is not an attorney, nor does he desire to appear pro se. Morover, Mr. Byrne was pursing an appeal related to the removal of his counsel of choice.

On March 31, 2026, Magistrate Judge Moxila A. Upadhyaya issued the Order that is the subject of this appeal. The Magistrate Judge treated Dominion's motion as conceded finding Byrne had not filed a timely opposition. The Magistrate Judge lifted the stay that had been imposed on August 23, 2024, based on the reasoning that Byrne and Lambert had exhausted their rights to appeal. The appeal is not exhausted, the Court of Appeals merely dismissed the appeal as there is no final order in the instant case.

The March 31, 2026 Order imposed multiple requirements: Lambert and Byrne must file affidavits by April 13, 2026, detailing information relating to disclosure or release of documents protected by the Protective Order. Lambert must produce to Dominion by April 13, 2026 all Dominion Litigation Documents, all documents and communications in any way discussing or referencing Dominion Litigation Documents or their contents, and all documents and communications in any way discussing or referencing Dominion on this matter. Electronic documents must be transferred to e-discovery vendors and sequestered with access denied to Lambert, Byrne, or anyone associated with them unless specifically authorized by the court. Lambert must provide a detailed privilege log and a sworn affidavit for any documents claimed to be protected by attorney-client privilege or work-product doctrine. Current counsel Peter Ticktin must respond by April 10, 2026, regarding whether Lambert is still playing a role in the litigation, whether Lambert drafted or edited any of Byrne's filings since Ticktin entered his appearance, and whether Ticktin accessed Dominion-produced documents.

## STATEMENT OF FACTS

5

Background of the Disqualification

The disqualification of Ms. Lambert was based on Ms. Lambert's admission that she provided the Dominion discovery documents, containing evidence of criminal acts, to law enforcement. Judge Upadhyaya determined alleged violations of protective order provisions governing the handling and dissemination of discovery materials produced by Dominion.

The Stay and Appellate Proceedings

Following the August 13, 2024 disqualification order, the District Court on August 23, 2024 stayed the deadline for Lambert and Byrne to submit affidavits. This stay was entered specifically to allow Byrne the opportunity to pursue his objections to the disqualification order through the appellate process.

During the period when the stay was in effect, Ms. Lambert contends she was prevented from filing objections into the docket. The D.C. Circuit dismissed Byrne's appeal, determining that it lacked jurisdiction because an order disqualifying counsel in a civil case is not a final judgment on the merits of litigation.  This jurisdictional dismissal confirms that the disqualification order remains interlocutory rather than final.

Privilege Assertions and Client Authority

Patrick Byrne has asserted attorney-client privilege and work-product doctrine protections with respect to communications and materials related to his representation by Lambert and other counsel. Byrne has not waived these protections. Ms. Lambert maintains an obligation to invoke the attorney-client and work-product privilege on behalf of Mr. Byrne as her former client.

Ms. Lambert's Characterization of the Documents

Ms. Lambert has stated to the Court that the Dominion discovery documents contain what she characterizes as evidence of the most serious crimes committed in the history of the United

States. Ms. Lambert contends that requiring her to return these documents to Dominion would violate federal obstruction statutes and would hinder her ability as a chain of custody witness to access the documents. Further, now Ms. Lambert will need to defend herself before this Court's ethics committee due to Judge Upadhyaya's referral.

Related Proceedings

Stefanie Lambert is currently assisting in a related case, Eric Coomer v. Patrick Byrne, et al., Case No. 8:24-cv-00008, pending in the United States District Court for the Middle District of Florida. The Honorable Thomas Barber presides over that case. Judge Barber is aware of Magistrate Judge Upadhyaya's disqualification of Lambert in the Dominion case and has issued an order allowing Lambert to assist counsel of record in the Eric Coomer case, including at depositions. This permission was granted after Judge Barber considered the disqualification order issued by Magistrate Judge Upadhyaya.

Mr. Byrne's Government Service

Mr. Byrne contends he has worked for the Central Intelligence Agency and he has performed work for various U.S. government agencies. He contends he was declared a "national asset" and has a mandatory, lifetime reporting obligations to various government agencies.

Executive Order Regarding Opposing Counsel

On April 9, 2025, the President of the United States issued an Executive Order regarding Susman Godfrey, counsel for Dominion in this matter. The Executive Order directed that the Director of National Intelligence and other relevant heads of executive departments and agencies take steps to suspend active security clearances held by individuals at Susman Godfrey, pending a review of whether such clearances are consistent with the national interest. EXHIBIT 1.

**STANDARD OF REVIEW**

7

Under Rule 72(a), the District Judge must modify or set aside any portion of a magistrate judge's order on a non-dispositive matter that is clearly erroneous or is contrary to law. Fed.R.Civ.P. 72.

To the extent the March 31 Order is dispositive in effect, imposes sanctions-like relief, or adjudicates core privilege issues in a manner that materially affects substantive rights, it exceeds the magistrate judge's authority to enter as a final order and must be reviewed and addressed by the District Judge. When a magistrate judge is assigned a dispositive matter, the magistrate judge must submit a recommended disposition to the district judge for de novo review, not a final order. Fed.R.Civ.P. 72.

The question of whether an order is dispositive in effect is a legal question reviewed de novo. *Baylor v. Mitchell Rubenstein & Assocs., P.C.,* 429 U.S. App. D.C. 221, 227-28, 857 F.3d 939, 945-46 (2017). The distinction between dispositive and non-dispositive matters reflects a fundamental principle that matters affecting the core rights and substantive positions of the parties require the direct involvement and independent judgment of the district court. Id.

Questions regarding the application of attorney-client privilege and work-product doctrine are reviewed de novo. Constitutional claims regarding due process are reviewed de novo. Questions regarding whether a party has waived a right are legal questions reviewed de novo. *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). The question of whether an order is final and ripe for enforcement is reviewed de novo.

## SUMMARY OF ARGUMENT

The March 31, 2026 Order cannot stand because it is fundamentally defective on multiple independent grounds.

The Order is dispositive in effect and should have been submitted as a recommendation to

8

the district judge for de novo review, not entered as a final order by the magistrate judge. The Order comprises extraordinary components that materially affect core rights: compelled sworn affidavits from counsel, wholesale production of materials, adjudication of privilege claims, and a comprehensive sequestration and access-denial regime. These are not routine pretrial matters amenable to magistrate judge resolution but require the direct involvement and independent judgment of the district court. The Order contains no substantive findings explaining why these extraordinary measures are necessary or proportionate.

The Order violates attorney-client privilege and work-product protections by requiring production of overbroad categories of documents that necessarily sweep in protected communications and litigation strategy. The requirement that Ms. Lambert produce all documents and communications in any way discussing or referencing Dominion Litigation Documents or Dominion on this matter is facially overbroad and encompasses internal attorney-client communications, litigation strategy discussions, and work-product materials. The privilege log requirement across this overbroad universe predictably compels disclosure of protected strategy and mental impressions. The Order contains no finding that Mr. Byrne has intentionally waived privilege or work-product protections, and only the client can waive such protections.

The sequestration and access-denial regime effects an unconstitutional seizure of defense materials by denying Ms. Lambert and Mr. Byrne access to materials essential to litigation without notice, opportunity to be heard, or articulated standards for regaining access. The regime creates a fundamental asymmetry where the opposing party receives production and may review materials while the defense is locked out and must petition the court for permission to review its own materials. The Order lacks express findings of bad faith or willful misconduct, fails to consider narrower alternatives, and was entered without a full opportunity for the defense to be heard.

The Order violates the Federal Rules of Civil Procedure by imposing sanctions-like restrictions without the procedural predicates and safeguards required. It imposes severe restrictions on access to litigation materials without findings of non-compliance and lack of substantial justification. It requires production of materials that may be protected by privilege. It was not entered pursuant to a properly noticed motion with consideration of less restrictive alternatives.

Byrne did not waive his right to object to Dominion's motion. The record establishes that a court-ordered stay was in place specifically to allow objections to the disqualification order, and Ms. Lambert contends she was prevented from filing into the docket during the relevant period. Waiver requires intentional relinquishment of a known right. *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Mere non-filing when a stay is in place and filing restrictions may exist cannot constitute such conduct. Moreover, procedural default cannot justify the imposition of extraordinary relief without merits analysis and findings.

The magistrate judge erred in enforcing an interlocutory disqualification order that is not final and not ripe for enforcement. The D.C. Circuit's dismissal of the appeal for lack of jurisdiction is dispositive evidence that the disqualification order is not a final judgment. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430-31, 105 S. Ct. 2757, 2761 (1985) The circuit court determined that it lacked jurisdiction to review the order because the order was not final. This jurisdictional holding confirms that the disqualification order remains interlocutory. The magistrate judge's reliance on exhaustion of appellate rights as a substitute for finality is legally unsound.

Ms. Lambert contends the Order compels her and Mr. Byrne to take actions that violate federal law by requiring return of documents she characterizes as containing evidence of serious crimes to the parties she contends committed those crimes. She contends this would hinder

10

cooperation with government investigations and expose her to criminal liability.

Compelled Testimony from Counsel. The Order improperly compels Ms. Lambert to provide sworn affidavits regarding her own conduct, knowledge, and communications, and compels current counsel Ticktin to disclose information about attorney-client relationships, drafting involvement, and document access. These requirements force counsel to testify under oath about matters protected by attorney-client privilege and work-product doctrine.

## ARGUMENT

I.    **The Magistrate Judge Exceeded Her Statutory Authority by Issuing an Order That Is Dispositive in Effect Without District Judge Review**

The authority of a magistrate judge to enter binding orders in civil cases is strictly circumscribed by statute and rule. Under the statutory framework, a magistrate judge may be assigned to hear and decide non-dispositive pretrial matters and enter final orders. Jurisdiction, powers, and temporary assignment. In contrast, when a magistrate judge is assigned a dispositive matter-one that materially affects a party's claim or defense-the magistrate judge must submit a recommended disposition to the district judge, not a final order. Fed.R.Civ.P. 72. The district judge must then conduct de novo review of any part of the magistrate judge's recommendation that is properly objected to.

The distinction between these two categories reflects a fundamental principle that matters affecting the core rights and substantive positions of the parties require the direct involvement and independent judgment of the district court. *Baylor v. Mitchell Rubenstein & Assocs., P.C.* 429 U.S. App. D.C. 221, 227-28, 857 F.3d 939, 945 (2017). A magistrate judge's authority to enter final orders is limited to matters that do not cross this threshold.

The Order Is Dispositive in Effect

The Order entered by Magistrate Judge Upadhyaya on March 31, 2026 is dispositive in

11

effect because it imposes coercive relief that materially affects Defendant Byrne's claims and defenses and implicates core rights. The Order cannot be characterized as routine discovery management or scheduling housekeeping. Rather, it comprises multiple components that individually and collectively constitute extraordinary relief requiring heightened judicial process and district court involvement.

The Order requires both Byrne and former counsel Stefanie Lambert to submit sworn affidavits by April 13, 2026. This requirement compels testimony from counsel-a form of coercive relief that goes beyond the scope of non-dispositive discovery management. Compelling a party's counsel to provide sworn testimony regarding their own conduct, knowledge, and communications implicates the attorney-client relationship, the attorney's professional obligations, and potentially the attorney's own legal interests. Such compulsion is not a routine pretrial matter and materially affects the defense's ability to prepare its case.

The Order requires Lambert to produce broad categories of materials, including all Dominion Litigation Documents and communications referencing those documents or Dominion. The Order further requires privilege logging and a sworn affidavit attesting to the log. These requirements do not constitute simple discovery disputes resolvable through routine discovery orders. Instead, they require the magistrate judge to adjudicate privilege claims and to compel production from counsel of materials that may be subject to attorney-client privilege or work product protection.

The adjudication of privilege claims is inherently a matter that affects the substantive rights of the parties. When a party asserts privilege, the resolution of that assertion determines what information must be disclosed and what remains protected. That determination materially affects the parties' ability to prepare their cases and protect confidential communications. Such

12

adjudication cannot be delegated to a magistrate judge as a final order; it requires de novo district court review. *Baylor v. Mitchell Rubenstein & Assocs., P.C.* 429 U.S. App. D.C. 221, 227-28, 857 F.3d 939, 945 (2017).

The order requires that electronic materials be sequestered with third-party vendors with access barred to Lambert, Byrne, and their associates absent court authorization. This sequestration and access-denial mechanism is not a standard discovery measure. It is extraordinary relief that restricts a party's and counsel's access to materials relevant to the case. Such restrictions materially affect the parties' ability to prepare their defense and communicate with counsel. They constitute coercive relief that requires heightened judicial process and cannot be imposed by a magistrate judge as a final order without district court authorization and de novo review.

The order requires current counsel Peter Ticktin to respond by April 10, 2026 regarding Lambert's role, drafting, and Ticktin's access to Dominion-produced documents. This requirement compels current counsel to provide information about the prior attorney's conduct and about counsel's own access to materials. Such compulsion affects the attorney-client relationship and the attorney's professional obligations. It is not a routine discovery matter but rather a coercive measure that requires district court involvement.

The Order contains no substantive findings explaining why these extraordinary measures are necessary or proportionate to any identified problem. The Order does not explain why sequestration is required, why access must be denied to counsel and party, or why compelled affidavits from counsel are necessary. The absence of such findings further demonstrates that the order exceeds the magistrate judge's authority. Importantly, Judge Upadhyaya's Order sets a dangerous precedent of punishment if a party provides evidence of criminal acts to law enforcement.

13

<u>The Order Should Be Treated as a Recommendation Requiring De Novo Review</u>

If the Order is to be treated as anything other than a nullity, it must be treated as a recommended disposition requiring de novo review by the district judge. Fed.R.Civ.P 72. Under that framework, the district judge must conduct de novo review of the magistrate judge's recommendation. The parties must be afforded the opportunity to submit full briefing and to be heard before the district court before any coercive measures are imposed.

The de novo standard requires the district court to make its own independent determination regarding whether the extraordinary relief proposed by the magistrate judge is appropriate. That process has not yet occurred. The Defendant Byrne and his counsel have not had the opportunity to present full arguments to the district court regarding the propriety of the sequestration, access denial, privilege adjudication, and compelled affidavits. The district court has not made independent findings justifying these measures.

## II. Procedural Default Cannot Justify Extraordinary Remedies Without Merits Analysis and Findings

The magistrate judge's reliance on procedural default to grant Dominion's motion fundamentally misunderstands the limits of the concession doctrine. While local rules may provide that failure to timely oppose a motion can result in the motion being treated as conceded, this procedural consequence does not eliminate the court's independent obligation to ensure that it possesses authority to grant the relief sought and that such relief complies with the Federal Rules of Civil Procedure, applicable privilege protections, and constitutional due process requirements.

The concession of a motion is a procedural default that affects the parties' burden of presentation, not a substantive waiver of the court's gatekeeping function. When a party fails to oppose a motion, the court may treat the motion as conceded, but this does not transform an otherwise unauthorized or improper remedy into a permissible one. The court must still determine

14

whether the relief requested falls within its authority and whether granting it would violate established procedural rules or constitutional protections.

The Relief Imposed Requires Merits Analysis

The remedies imposed by the magistrate judge's order are qualitatively different from routine matters that might be resolved by default, such as scheduling orders or deadline extensions. The Order compels affidavits, which constitute testimony under oath. It mandates production of materials that may be privileged or protected. It imposes sequestration with access restrictions that effectively sanction the defense by preventing counsel and associates from accessing materials necessary to prepare the case.

The compelled affidavits and disclosures function as a form of discovery sanction or contempt-like remedy. They restrict the defense's ability to prepare its case by sequestering materials and limiting access to counsel. These restrictions cannot be imposed by default. They require the court to make findings that the defense has engaged in conduct warranting such restrictions, that the restrictions are proportionate to any violation, and that they are consistent with the Federal Rules and due process.

The sequestration with access restrictions is perhaps the most extraordinary remedy. It effectively prevents the defense from accessing materials necessary to prepare its case unless the court grants authorization. That is a severe restriction that implicates due process concerns regarding the right to counsel and the right to prepare a defense. Such a restriction cannot be imposed by default. It requires explicit findings that the defense has engaged in conduct warranting such a severe remedy, that the remedy is necessary to prevent harm, and that it is proportionate to any violation.

The Order Granted Relief Beyond What Procedural Default Can Support

The scope of relief granted by the magistrate judge far exceeds what could reasonably be justified by the defense's failure to file a timely opposition. The concession doctrine operates within defined limits: it permits the court to treat a motion as conceded and to grant the relief requested in the motion, but it does not permit the court to grant relief that exceeds the scope of proper judicial authority.

The magistrate judge's order imposed multiple, interconnected restrictions that collectively constitute a comprehensive regime of control over the defense's materials, communications, and ability to prepare its case. The combination of compelled affidavits, broad production, privilege log with sworn verification, sequestration with access restrictions, and compelled disclosures by current counsel suggests an order that is not merely granting discovery but imposing what amounts to a sanctions regime.

Even if the defense's failure to respond could justify granting the relief explicitly requested in the motion, it cannot justify the court exceeding its authority or imposing relief that is not properly supported by the motion itself. The doctrine of ultra vires-action beyond the court's authority-is not waived by procedural default.

### III. The Order Violates Attorney-Client Privilege and Work-Product Doctrine

The March 31 Order requires production of materials that are protected by attorney-client privilege and work-product doctrine. In federal proceedings, the common law as interpreted by United States courts governs a claim of privilege. The attorney-client privilege protects confidential communications between attorney and client made for the purpose of obtaining or providing legal advice. Work-product protection shields materials prepared in anticipation of litigation or for trial.

16

The Production Categories Are Overbroad and Necessarily Sweep in Protected Materials

The magistrate Order requires Lambert to produce all Dominion Litigation Documents, all documents and communications discussing or referencing such documents, and all documents and communications discussing or referencing Dominion on the matter. This language is extraordinarily broad. It encompasses not only documents directly related to Dominion's claims but also any communication that mentions Dominion, including internal attorney-client communications, litigation strategy discussions, and work-product materials.

If Lambert discussed litigation strategy with Byrne regarding how to respond to Dominion's claims, such communications would be protected by attorney-client privilege. Yet the Order's language would capture these protected materials. If Lambert prepared internal memoranda analyzing Dominion's legal theories or developing defense strategies, such materials would be protected by work-product doctrine. Nonetheless, the Order would require production of these materials. If Lambert communicated with other members of the defense team about litigation strategy, such communications would be protected by attorney-client privilege and work-product doctrine. Yet the Order would require production.

The breadth of this requirement necessarily sweeps in protected communications. The Order attempts to address this concern by requiring a privilege log and sworn affidavit. However, the requirement to produce a privilege log for materials that discuss or reference Dominion is itself problematic.

The Privilege Log Requirement Compels Disclosure of Protected Strategy

A privilege log must describe the materials with sufficient detail to allow assessment of the privilege claim, but it cannot disclose the privileged content. When the universe of potentially privileged materials is as broad as all documents and communications discussing or referencing

Dominion, the privilege log itself becomes a vehicle for disclosing protected strategy and communications. The attorney must describe the materials in sufficient detail that the opposing party can assess the privilege claim, but in doing so, the attorney necessarily reveals the substance of the protected communications.

For example, if Lambert prepared a memorandum analyzing Dominion's legal theories and developing defense strategies, a privilege log entry might need to describe the subject matter of the memorandum in sufficient detail to permit assessment of the privilege claim. That description, while necessary to allow assessment of the privilege claim, reveals the substance of the protected work product.

The Order does not appear to be tailored to the legitimate purposes of discovery. The overbroad language suggests the order is designed to compel disclosure of the defense's entire case file, not to remedy a specific violation.

The Order Violates Federal Rule of Evidence 502

The Order impermissibly compels disclosure without establishing that any valid waiver of privilege or work-product protection has occurred. When disclosure is made in a federal proceeding and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information only if the waiver is intentional, the disclosed and undisclosed communications or information concern the same subject matter, and they ought in fairness to be considered together.

The order contains no finding that Byrne or counsel intentionally waived any privilege or protection. Absent such intentional waiver, the order cannot compel disclosure on the theory that waiver has occurred. Moreover, the order does not establish that any subject-matter waiver condition is satisfied-that is, that disclosed and undisclosed materials concern the same subject

18

matter and ought in fairness to be considered together.

Additionally, only the client can waive privilege. The Order's demand that former counsel Lambert produce materials and provide a detailed privilege log and sworn affidavit does not constitute a waiver by the client, Byrne. Compelling Lambert to produce materials and attest to privilege claims does not transform such production into a knowing, voluntary relinquishment of the privilege by the party entitled to assert it.

The Order Compels Current Counsel to Disclose Protected Information

The Order's requirement that current counsel Peter Ticktin answer questions about Lambert's ongoing role, whether she drafted or edited filings, and whether Ticktin accessed Dominion-produced documents constitutes an additional and distinct violation of work-product protection. These compelled statements concern the internal organization of the defense team, the division of labor among counsel, the drafting and editing of legal filings, and the access to and handling of litigation documents. These matters are quintessentially work-product territory-they reveal the mental impressions, litigation strategy, and internal decision-making processes of counsel.

Compelling Ticktin to provide testimony about these matters effectively converts current counsel into a witness against his own client. That violates the principle that work-product protection shields not only the tangible materials prepared in anticipation of litigation but also the thought processes and strategic decisions of counsel. When counsel is forced to testify about his own role, his colleague's role, and the handling of litigation materials, the privilege is breached at its core.

**IV. The Order Effects an Unconstitutional Seizure of Defense Materials and Violates Due Process**

The March 31, 2026 magistrate Order imposes a regime that strips the defense of access to

19

its own litigation materials and forces counsel to seek court permission to review documents necessary to litigate the case. This extraordinary deprivation operates as a discovery sanction without the procedural predicates, findings, or safeguards mandated by the Federal Rules of Civil Procedure. The Order violates due process by depriving the defense of access to materials essential to the adversarial process without notice, opportunity to be heard, or any articulated standard for regaining access.

This requirement by Judge Upadhyaya to initially "destroy" the Dominion discovery, or return it to the very organization Ms. Lambert asserts its documents are evidence of criminal acts, is a violation of 18 U.S.C 1512, 18 U.S.C 1519, as well as other crimes. Judge Upadhyaya cannot legitimize, through an official court order, destruction of evidence of a crime, order witness tampering, or hinder the ability of Ms. Lambert or Mr. Byrne to maintain chain of custody of criminal evidence. Mr. Byrne has worked for the Central Intelligence Agency, and has performed work for various US government agencies, and all US government branches.  Mr. Byrne was declared a "national asset" by President Obama, and he has many obligations of "lifetime reporting obligation" to these various government agencies and government branches that he has and is performing work.

The Sequestration Order Functions as an Improper Discovery Sanction

The Order's practical effect is to impose a severe sanction on the defense by denying access to materials in the defense's possession or control. That sanction regime lacks the procedural safeguards that govern discovery sanctions.

The imposition of sanctions is not automatic or discretionary without limits. The Rules contemplate that sanctions must be imposed only after proper notice, an opportunity to respond, and a finding that the predicate for sanctions-a violation of the Rules-has occurred. The central

requirement is that any sanction must be just, which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation.

The order here contains no express findings of bad faith or willful misconduct in connection with the coercive restrictions imposed. Without such findings, the order cannot be justified as a sanction under the Rules framework. Moreover, the order was entered after treating Dominion's motion as conceded, meaning the defense was not afforded a meaningful opportunity to be heard on the merits of the motion or to contest the factual predicates for such a severe remedy.

The Regime Violates Due Process

The defense's interest in access to its own litigation materials-documents in its possession or control, necessary to mount a defense-constitutes a property interest protected by due process. The sequestration order deprives the defense of this interest by barring access to Byrne, Lambert, and anyone associated with them unless the court authorizes access.

The severity of this deprivation demands a correspondingly robust procedural safeguard. Due process requires notice and an opportunity to be heard that is commensurate with the gravity of the interests at stake. Here, the defense received no notice that such a drastic measure was being considered, no opportunity to present evidence or argument before the order was entered, and no articulated standard or procedure by which access might be regained. The Order provides no timeline, no criteria, and no mechanism for the defense to demonstrate that access should be restored. This absence of procedural regularity violates the fundamental fairness guaranteed by due process.

Furthermore, the regime creates an asymmetry that undermines the adversarial process itself. The opposing party receives the production and may review, analyze, and use the materials

21

in preparing its case. The defense, by contrast, is locked out and must petition the court for permission to review its own materials. This asymmetry is not justified by any articulated concern about the defense's conduct; it is simply imposed as a condition of the sequestration order. Such asymmetry is fundamentally at odds with the principle that both parties to litigation should have equal access to the evidence necessary to prepare their cases.

<u>Ms. Lambert will have to defend herself before the Court due to Judge Upadhyaya's referral</u>

Judge Upadhyaya referred Ms. Lambert for review before the Court's grievance committee. Ms. Lambert will need to defend herself, and why she gave the Dominion discovery documents to law enforcement.

**V. Byrne Did Not Waive His Right to Object**

The March 31, 2026 Order rests on a fundamental misunderstanding of what constitutes waiver in federal civil procedure. The magistrate judge treated the absence of an opposition filing as a concession of Dominion's motion, but this conclusion ignores controlling law on the nature of waiver and the factual circumstances that made filing either impossible or imprudent.

Waiver is not a passive concept. Waiver and forfeiture are distinct legal concepts: forfeiture is the failure to make timely assertion of a right, while waiver is the intentional relinquishment or abandonment of a known right. *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). The distinction matters profoundly here. Mere non-filing-particularly when a stay is in place and filing restrictions may exist-cannot constitute the express, affirmative, decisive, and unequivocal conduct necessary to establish waiver. Maalouf v. Islamic Republic of Iran.

<u>The Stay and Filing Restrictions Preclude Finding of Intentional Waiver</u>

The record establishes that a stay was entered specifically to allow objections to the

disqualification order. This stay created a legal framework within which the parties were operating. Additionally, Ms. Lambert contends she was not permitted to file into the docket during the relevant period. These circumstances fundamentally alter the analysis. When a party is operating under a stay designed to preserve rights, and when filing restrictions may have prevented submission of opposition, the absence of a filing cannot reasonably be characterized as intentional relinquishment of a known right.

The magistrate judge's Order does not address whether the filing deadline was suspended by the stay, whether filing was practically possible given the asserted restrictions on Lambert's access to the docket, or whether the circumstances permitted Byrne and Lambert to make a deliberate choice to forgo opposition. Without resolving these threshold questions, the court cannot properly infer waiver from non-filing. The order treats silence as concession without examining whether that silence was the product of legal constraint rather than voluntary abandonment.

Here, the circumstances go beyond excusable neglect-they involve affirmative legal barriers to filing. When a stay is in place and filing restrictions exist, the failure to file is not a matter of neglect but a matter of legal impossibility or constraint.

### VI. The Disqualification Order Is Not Final and the Magistrate Judge Erred in Enforcing an Interlocutory Order

The magistrate judge's rationale for lifting the stay rests on a critical error: the premise that because Byrne and Lambert sought appellate review of the disqualification order and that review was denied, they have exhausted their appellate rights and the disqualification order is now enforceable. That reasoning conflates appellate exhaustion with finality and misapplies the law governing interlocutory orders.

The D.C. Circuit's dismissal of the appeal for lack of jurisdiction is itself dispositive evidence that the disqualification order is not a final judgment. The circuit court did not reach the

merits of the disqualification; instead, it determined that it lacked jurisdiction to review the order because the order was not final.   This jurisdictional holding confirms that the disqualification order remains interlocutory-that is, it does not finally determine the parties' rights and is not ripe for appellate review as a matter of law.

The Supreme Court has held that orders disqualifying counsel in civil cases are not collateral orders subject to immediate appeal. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430-31, 105 S. Ct. 2757, 2761 (1985). The Supreme Court's denial of certiorari does not transform an interlocutory order into a final judgment. Denial of certiorari is a discretionary act that reflects no judgment on the merits and carries no implication that the lower court's reasoning was correct. The fact that appellate review was sought and denied does not alter the legal status of the underlying order. An order that was interlocutory when the D.C. Circuit reviewed it remains interlocutory after certiorari is denied.

The magistrate judge's reliance on exhaustion as a substitute for finality is unsound. Exhaustion of appellate remedies is a procedural concept distinct from finality. A party may exhaust available appellate remedies and still be subject to an interlocutory order that is not final. The magistrate judge appears to have reasoned that because no further appellate review is available, the disqualification order must now be enforced. But that reasoning inverts the proper legal framework. Finality is a prerequisite to enforcement, not a consequence of exhaustion.

The Stay Was Entered to Preserve Rights Pending Appellate Consideration

The stay that preceded the magistrate judge's March 31, 2026 Order was entered to allow objections to the disqualification order. That stay served a critical function: it preserved the status quo and protected the parties' ability to challenge the disqualification through available appellate channels. The stay was not a temporary measure pending a final determination of finality; it was a

protective order acknowledging that the disqualification order's status remained contested.

When the D.C. Circuit dismissed the appeal for lack of jurisdiction, the proper response was not to treat that dismissal as a final resolution of the disqualification question. Rather, the dismissal meant that appellate review was not available at that stage-a conclusion that reinforces, rather than undermines, the interlocutory nature of the order. The magistrate judge's decision to lift the stay based on appellate exhaustion effectively punishes the parties for seeking review and then treats the unavailability of further review as a reason to enforce an order that was never finally determined.

This reasoning is circular and unjust. The magistrate judge has used the D.C. Circuit's jurisdictional holding as a springboard for enforcement, rather than as a signal that the order remains interlocutory and subject to challenge in the district court.

<u>The Related Florida Case Demonstrates the Need for Precision in Handling Disqualification Issues</u>

The related case of Eric Coomer v. Byrne in the Middle District of Florida provides instructive context. In that case, Judge Thomas Barber, with full awareness of the D.D.C. disqualification order, permitted Lambert to assist counsel of record. That permission reflects a judicial recognition that the handling of disqualification issues and the role of counsel must be addressed with precision and care, not through sweeping orders entered by default.

Judge Barber's decision to permit Lambert's assistance, despite knowledge of the D.D.C. disqualification, illustrates that disqualification orders do not automatically and universally prevent counsel from participating in related matters. The decision reflects a careful, fact-specific analysis of the circumstances. By contrast, the magistrate judge's March 31, 2026 Order treats the disqualification as a basis for extraordinary enforcement measures-lifting a stay and treating a motion as conceded-without the careful analysis that the Florida court applied.

25

**VII. The Order Compels Actions That Ms. Lambert Contends Violate Federal Law**

Ms. Lambert contends that the March 31 Order compels her and Mr. Byrne to commit acts that violate federal law. Ms. Lambert has stated to the Court that the Dominion discovery documents contain what she characterizes as evidence of serious crimes. The March 31 Order requires Ms. Lambert and Mr. Byrne to return the documents to the parties she contends committed the crimes.

Ms. Lambert contends this requirement violates federal obstruction statutes. Tampering with a witness, victim, or an informant, Destruction, alteration, or falsification of records in Federal investigations and bankruptcy. She contends that a court cannot legitimize through an official court order the destruction of evidence of a crime, witness tampering, or hindrance of the ability of a party to cooperate with the United States government in its open and ongoing investigations and cases.

The circumstances are particularly acute given that Susman Godfrey, counsel for Dominion, has had its security clearances suspended by Executive Order, with the President declaring the firm to be undermining critical American interests and priorities. Ms. Lambert contends it defies logic to give documents she characterizes as evidence of criminal acts to attorneys whose security clearances have been suspended.

Mr. Byrne contends he has worked for the Central Intelligence Agency and has performed work for various U.S. government agencies and all U.S. government branches. He contends he was declared a national asset and has many obligations of lifetime reporting obligation to various government agencies. Ms. Lambert contends that requiring him to return documents that he contends contain evidence of serious crimes would hinder his ability to fulfill these obligations and would expose him to criminal liability under federal obstruction statutes.

26

Without adopting or conceding any characterization of the documents' contents, Ms. Lambert objects that the March 31 Order compels actions that she contends expose her to criminal and ethical risk, and the Order should be vacated or modified to ensure compliance obligations do not require unlawful conduct and are consistent with preservation duties and privilege protections. Not only does the March 31 Order expose Ms. Lambert criminal and ethical risk, it exposes Judge Upadhyaya as well. Recently, several judges have been arrested, charged, and convicted of interfering with the federal government and its official proceedings. On December 18, 2025, Judge Hannah Dugan was found guilty of felony count 18 USC §1505 obstruction of proceedings for "endeavoring to influence, obstruct, or impede agency proceedings." *USA v Hannah Dugan*, case no. 25-cr-00089. On February 28, 2025, Magistrate Judge Jose Joel Cano was arrested, and charged with tampering with evidence in violation of 18 U.S.C. §1512(c)(1). *USA v Jose Cano*, case no. 25-mj-00868.

Here, Dominion's Motion to Set Deadline for Stefanie Lambert and Patrick Byrne to Submit Affidavits and to Enter Document Destruction Protocol, was filed on November 1, 2024. R. 146. In the March 31 Order Judge Upadhyaya reiterates that she "required Dominion to propose a destruction protocol" that would require Ms. Lambert and Mr. Byrne to destroy the Dominion discovery documents. R. 175, PgID 1. This is unlawful. Ms. Lambert was clear that Dominion's own discovery contained evidence of the most significant crimes committed in US history. It would be unlawful for Ms. Lambert, a chain of custody witness, to be forced to return the very documents and evidence of the crimes to the Dominion criminal organization, by and through their attorneys, Susman Godfrey, a firm determined by the President of the United States to be a national security risk.

27

There are public, ongoing investigations, and criminal cases related to Dominion and its agents and employees.  Four Smartmatic individuals were indicted on August 8, 2024. Almost simultaneously, Ms. Lambert was disqualified, by Judge Upadhyaya, just five days after the United States Department of Justice unsealed an indictment against Roger Alejandro Pinate Martinez, Jorge Miguel Vasquez, Juan Andres Donato Bautista, and Elie Moreno, case no. 24-cr-20343. The four Smartmatic individuals were charged with bribery and money laundering that involved a slush fund and fraudulent contracts. The four charged Smartmatic individuals then laundered money through Asia, Europe, and United States.

Subsequently, on October 16, 2025, the United States Department of Justice superseded the 24-cr-20343 indictment, and charged Roger Alejandro Pinate Martinez, Jorge Miguel Vasquez, Juan Andres Donato Bautista, and Smartmatic SGO Corporation Limited with violations of the Foreign Corrupt Practices Act, money laundering, international money laundering. Smartmatic SGO, Bizta Corp., Sequoia, Dominion, and now KnowInk and Liberty Vote have participated in two decades of identity laundering. These organizations roll from one shell to another just when they need to destroy documents and conceal their crimes.

In 2006, US Congresswoman, Carole Maloney, reported "US" Sequoia to the US government for a CFIUS investigation. Rather than provide the required documents to the US government, Sequoia was then acquired by Dominion. The Dominion discovery documents reflect that much of the criminal organization remained the same in the transfer from Sequoia to Dominion. Engineers, contractors and employees from Sequoia transferred to Dominion. Including the employees and contractors from Venezuela. The Venezuelans were critical to implementing the technology at Dominion, and continuing development with the international Dominion organization that includes China, Serbia, Taiwan, Canada, etc. It was the Venezuelans

who coordinated internationally to give access, live during an election, remotely to local jurisdictions by VPN. Eric Coomer recently testified and confirmed the remote access to local jurisdictions. EXHIBIT 2.

Prior to Dominion, Seqouia/Smartmatic operated in the United States utilizing the Venezuelan created technology. Sequioa routinely brought Venezuelans to the United States in addition to the ones living and working here for the company. EXHIBIT 3. Smartmatic/Sequoia's big secrete requiring concealment from the US government was that the Venezuelan government owned almost 30% of Smartmatic. EXHIBIT 4.

Smartmatic and Bitza share the same shareholders. EXHIBIT 5, and EXHIBIT 6. Bitza and Smartmatic both utilized the Smartmatic Automatic Electoral Solution (SAES) technology. EXHIBIT 7. Now, the charges have come full circle as they are unsealed one-by-one. Recently Hugo Carvajal, case no. 11-cr-00205, was extradited to the United States and gave multiple proffers. The public letter to the President confirmed that the Venezuelan government is currently able to interfere with the elections in the United States. EXHIBIT 8.

Following Carvajal's proffers, Nicolas Maduro Moros, was apprehended by the US military and faces terrorism charges, case no. 11-cr-00205.  Shortly thereafter, the United States government executed search warrants in Fulton County, Georgia, and the United States announced that it has seized Dominion brand election equipment from jurisdictions including Puerto Rico. The Director of National Intelligence has recently testified before Congress, and her officed has prepared a classified report related to the security of the United States and its elections. These are just the publicly announced cases and investigations.

### VIII. The Order Improperly Compels Testimony from Counsel

The March 31 Order compels Ms. Lambert to provide sworn affidavits regarding her own

29

conduct, knowledge, and communications. This requirement forces Ms. Lambert to testify under oath about matters that are protected by attorney-client privilege and work-product doctrine. Such compulsion violates the principle that counsel should not be forced to become a witness against their own client and implicates Ms. Lambert's ethical obligations to preserve privilege protections.

The Order also compels current counsel Peter Ticktin to provide information about Lambert's ongoing role, whether she drafted or edited filings, and whether Ticktin accessed Dominion-produced documents. R. 175. This requirement forces current counsel to disclose information about the defense team's internal organization and litigation strategy, thereby converting counsel into a witness against his own client.

These compelled statements concern the internal organization of the defense team, the division of labor among counsel, the drafting and editing of legal filings, and the access to and handling of litigation documents. These matters reveal the mental impressions, litigation strategy, and internal decision-making processes of counsel. When counsel is forced to testify about his own role, his colleague's role, and the handling of litigation materials, the privilege is breached at its core.

Ms. Lambert has an obligation to invoke attorney-client privilege and work-product protections on behalf of Mr. Byrne, and Mr. Byrne has not waived those protections. The Order's compelled production regime is therefore contrary to law to the extent it requires production of privileged or protected materials, or forces Ms. Lambert to choose between contempt exposure and violation of privilege and ethical duties. Lastly, Ms. Lambert, has prepared a 28 U.S.C. § 455 motion that she intends to file forthwith.

Without adopting or conceding any characterization of the documents' contents, Ms. Lambert objects that the March 31 Order compels actions that she contends expose her to criminal

30

and ethical risk, and the Order should be vacated or modified to ensure compliance obligations do not require unlawful conduct and are consistent with preservation duties and privilege protections.

## CONCLUSION

For the foregoing reasons, Stefanie Lambert respectfully requests that the District Judge vacate the March 31, 2026 Order as to Ms. Lambert to permit appeal of Judge Upadhyaya's August 13, 2024 Order following final order in this instant case.

Respectfully submitted,

/s/ Stefanie Lambert
Stefanie Lambert Junttila
400 Renaissance Drive, 26th Floor
Detroit, MI 48243
(313) 410-6872
StefanieLambert.com
AttorneyLambert@protonmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 15, 2026, the foregoing document, was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

/s/ Stefanie Lambert
Stefanie Lambert Junttila
400 Renaissance Drive, 26th Floor
Detroit, MI 48243
(313) 410-6872
StefanieLambert.com
AttorneyLambert@protonmail.com

31