**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LIBERTY VOTE HOLDINGS INC., LIBERTY VOTE USA INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | Civil Action No. 1:21-cv-02131-CJN-MAU |
| Plaintiffs, | ) ) | Judge Carl J. Nichols |
| v. | ) ) | |
| PATRICK BYRNE, | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO BYRNE'S AND LAMBERT'S APPEALS OF
THE COURT'S MARCH 31, 2026 ORDER**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................1

II.   BACKGROUND .................................................................................................2

      A.    The parties agreed to a robust Protective Order...........................................2

      B.    Lambert and Byrne repeatedly violate the Protective and Status Quo
            Orders...........................................................................................................2

      C.    Magistrate Judge Upadhyaya disqualifies Lambert in a detailed 61-
            page Memorandum Opinion. ........................................................................6

      D.    Lambert and Byrne repeatedly challenge the Disqualification Order,
            including up to the Supreme Court. .............................................................7

      E.    Ticktin enters the case and immediately picks up where Lambert left
            off...................................................................................................................9

      F.    Lambert and Byrne disobey the Court's March 31, 2026 Order. ..............18

III.  LEGAL STANDARD.........................................................................................20

IV.   ARGUMENT......................................................................................................21

      A.    Byrne's and Lambert's "appeals" are procedurally improper and
            should be denied on that basis alone...........................................................21

      B.    The arguments raised by Byrne and Lambert are meritless........................24

            1.    The Order falls squarely within the Magistrate's authority. .......................25

            2.    The Order does not violate Byrne's or Lambert's constitutional
                  rights. ..........................................................................................29

            3.    The Order does not require violation of the attorney-client or
                  work product privilege..................................................................31

            4.    The Order complies with the Federal Rules of Civil Procedure...............36

            5.    Lambert's additional arguments for reversal fail........................38

      C.    The Court should exercise its inherent and statutory authority
            to sanction Byrne and his counsel for their willful, ongoing
            violations of court orders. ...........................................................................39

V.    CONCLUSION...................................................................................................44

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. F.B.I.*,
   186 F.R.D. 102 (D.D.C. 1998)..................................................................................................32

*Avery Dennison Corp. v. Four Pillars*,
   190 F.R.D. 1 (D.D.C. 1999)....................................................................................................32

*Bagwell v. U.S. Dep't of Justice*,
   311 F. Supp. 3d 223 (D.D.C. 2018) ........................................................................................36

*Baylor v. Mitchell Rubenstein & Associates, P.C.*,
   130 F. Supp. 3d 326 (D.D.C. 2015) ........................................................................................26

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*,
   857 F.3d 939 (D.C. Cir. 2017) ................................................................................................26

*Biden v. Byrne*,
   2025 WL 2429688 (C.D. Cal. Aug. 5, 2025)....................................................................16, 17

*Burkhart v. Washington Metro. Area Transit Auth.*,
   112 F.3d 1207 (D.C. Cir. 1997).........................................................................................20, 25

*Campaign Legal Ctr. v. Iowa Values*,
   710 F. Supp. 3d 35 (D.D.C. 2024)......................................................................................20, 25

*Cannon v. Loyola Univ. of Chicago*,
   676 F. Supp. 823 (N.D. Ill. 1987) ...........................................................................................29

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)...................................................................................................................39

*Coomer v. Donald J. Trump for President Inc. et al.*,
   No. 2020CV34319 (Denv. Dist. Ct. Apr. 3, 2026) .................................................................17

*Coomer v. Byrne, et al.*,
   No. 8:24-cv-00008-TPB-SPF (M.D. Fla. June 10, 2025).......................................................29

*Cromartie v. District of Columbia*,
   729 F. Supp. 2d 281 (D.D.C. 2010)........................................................................................22

*Danzy v. IATSE Loc. 22*,
   2021 WL 5416630 (D.D.C. Nov. 19, 2021) ...........................................................................20

*Dir. of Office of Thrift Supervision v. Ernst & Young*,
  795 F. Supp. 7 (D.D.C. 1992) ...................................................................................32

*F.T.C. v. Boehringer Ingelheim Pharm., Inc.*,
  778 F.3d 142 (D.C. Cir. 2015) .................................................................................35

*Footbridge Ltd. Tr. v. Zhang*,
  2007 WL 1794106 (D.D.C. June 19, 2007) .............................................................23

*Fox v. Am. Airlines, Inc.*,
  389 F.3d 1291 (D.C. Cir. 2004) ...............................................................................22

*Gable v. United States*,
  319 F. Supp. 3d 37 (D.D.C. 2018) ...........................................................................23

*Glob. Glass Techs., Inc. v. Rsch. Frontiers, Inc.*,
  2025 WL 2088421 (M.D. Fla. July 25, 2025) .........................................................15

*GS Holistic, Inc. v. Zaidal Blue Sky Investments Corp.*,
  2024 WL 6881982 (M.D. Fla. Oct. 23, 2024) .........................................................15

*GS Holistic, LLC v. Vaportoke Inc. d/b/a Colo. Vape & Toke, et al.*,
  No. 23-cv-01513-RMR-NRN (D. Colo. Jan. 12, 2024) ...........................................16

*Hall v. Dep't of Homeland Sec.*,
  219 F. Supp. 3d 112 (D.D.C. 2016) ...................................................................39, 41

*In re LeFande*,
  297 F. Supp. 3d 1 (D.D.C. 2018) .............................................................................26

*In re Smith*,
  76 F.3d 335 (10th Cir. 1996) ...................................................................................29

*Jinks-Umstead v. England*,
  227 F.R.D. 143 (D.D.C. 2005) ...........................................................................35, 36

*Judicial Watch, Inc. v. U.S. Dep't of Justice*,
  391 F. Supp. 3d 43 (D.D.C. 2019) ...........................................................................33

*Kaplan v. Hezbollah*,
  213 F. Supp. 3d 27 (D.D.C. 2016) ...........................................................................23

*Klayman v. Jud. Watch, Inc.*,
  628 F. Supp. 2d 84 (D.D.C. 2009) ...........................................................................20

*Koehler v. Grant*,
  213 B.R. 567 (B.A.P. 8th Cir. 1997) ........................................................................29

*Koller By and Through Koller v. Richardson-Merrell, Inc.*,
    737 F.2d 1038 (D.C. Cir. 1984) ................................................................6, 8, 9, 43

*LaPrade v. Kidder Peabody & Co., Inc.*,
    146 F.3d 899 (D.C. Cir. 1998) ..............................................................................40

*Medgyesy v. Medgyesy*,
    988 F. Supp. 2d 843 (N.D. Ill. 2013) ....................................................................20

*Merritt v. International Brotherhood of Boilermakers*,
    649 F.2d 1013 (5th Cir. 1981) ..............................................................................27

*ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC*,
    951 F.3d 41 (1st Cir. 2020) ...................................................................................27

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*,
    2023 WL 2228173 (E.D. Cal. Feb. 24, 2023) .......................................................34

*Richardson-Merrell, Inc. v. Koller*,
    472 U.S. 424 (1985) ................................................................................................9

*Robertson v. Cartinhour*,
    883 F. Supp. 2d 121 (D.D.C. 2012) ......................................................................40

*Robinson v. Ergo Sols., LLC*,
    4 F. Supp. 3d 181 (D.D.C. 2014) ....................................................................22, 23

*Rogers v. Amalgamated Transit Union, Loc. 689 (Rogers II)*,
    2017 WL 1628867 (D.D.C. May 1, 2017) .............................................................22

*Rogers v. Amalgamated Transit Union Local 689 (Rogers I)*,
    2017 WL 476632 (D.D.C. Jan. 4, 2017) ...............................................................22

*Rowe v. PChange LLC*,
    2025 WL 2803859 (D.D.C. Oct. 2, 2025) .......................................................22, 24

*Sec. & Exch. Comm'n v. VTR, Inc.*,
    410 F. Supp. 1309 (D.D.C. 1975) .........................................................................31

*Slate v. Am. Broad. Companies, Inc.*,
    802 F. Supp. 2d 22 (D.D.C. 2011) ........................................................................26

*Smith v. D.C.*,
    249 F. Supp. 3d 106 (D.D.C. 2017) ......................................................................20

*Susman Godfrey LLP v. Executive Office of the President*,
    789 F. Supp. 3d 15 (D.D.C. 2025) ........................................................................41

*Tex. v. Holder,*
2012 WL 13070059 (D.D.C. May 21, 2012) ............................................................32

*The Florida Bar v. Ticktin,*
14 So. 3d 928 (Fla. 2009) ....................................................................................14

*Trump v. Clinton.,*
640 F. Supp. 3d 1321 (S.D. Fla. 2022) ...............................................................15

*Twelve John Does v. District of Columbia,*
117 F.3d 571 (D.C. Cir. 1997) ............................................................................22

*United States ex rel. Barko v. Halliburton Co.,*
2015 WL 13670876 (D.D.C. Jan. 10, 2015) ........................................................33

*United States ex rel. Barko v. Halliburton Co.,*
74 F. Supp. 3d 183 (D.D.C. 2014) ......................................................................34

*United States v. ISS Marine Services, Inc.,*
905 F. Supp. 2d 121 (D.D.C. 2012) .....................................................................35

*United States v. Legal Services for New York City,*
100 F. Supp. 2d 42 (D.D.C. 2000) ......................................................................34

*US Dominion, Inc. v. Fox News Network, LLC,*
2023 WL 2730567 (Del. Super. Ct. Mar. 31, 2023). ...........................................38

*US Dominion, Inc. v. Newsmax Media, Inc.,*
2025 WL 1092289 (Del. Super. Ct. Apr. 9, 2025) ...............................................38

*Walker v. Carter,*
2016 WL 6820554 (S.D.N.Y. Feb. 4, 2016) ........................................................31

**Statutes**

28 U.S.C. § 636 ...........................................................................................................25

28 U.S.C. § 1927 .............................................................................................39, 40, 41

**Rules**

Fed. R. Civ. P. 26 .............................................................................................32, 35, 37

Fed. R. Civ. P. 37 .......................................................................................................36

Fed. R. Civ. P. 72 .............................................................................................20, 25, 26

L. Civ. R. 7 .........................................................................................................9, 22, 23, 24

L. Civ. R. 72.2..................................................................................................................20

**Constitional Provisions**

U.S. Const. Amend. V ........................................................................................................30

**Other Authorities**

56 Am. Jur. 2d Motions, Rules, and Orders § 57 (2025)...................................................34

## I.    INTRODUCTION

For the past two years, Dominion has been forced to litigate, and this Court has been forced to hear and adjudicate, a point that should go without saying: Court Rules and Orders are not optional. They must be followed. This includes the court-ordered Protective Order that both Byrne and his prior counsel, Stefanie Lambert, have repeatedly violated. This includes the Status Quo Order that Lambert (and likely Byrne) openly and admittedly violated after her prior misconduct was raised with the Court. This includes the Disqualification Order that Byrne has now appealed (and lost) all the way up to the Supreme Court—yet which his new counsel Peter Ticktin apparently interprets as allowing Lambert to continue representing Byrne, so long as she does so from the shadows. And this includes the Magistrate Judge's March 31 Order setting a new deadline for Byrne and Lambert to submit the affidavits required by her Disqualification Order and entering a document destruction protocol ("March 31 Order," or "the Order").

Byrne and his counsel have shown at every turn that they have no regard for judicial resources or this Court's authority, and their instant objections to the Magistrate Judge's March 31 Order continue that problematic trend. Those filings make arguments without citing any supporting legal authority (because they have none); repeatedly mischaracterize the record (claiming, for instance, they had no opportunity to litigate the remedies set forth in the Disqualification Order that was affirmed by this Court—twice); and repeat dangerous rhetoric about Dominion, its counsel, and this Court. The Court should overrule Byrne's and Lambert's objections.

And the Court should not stop there. Given the extraordinary conduct demonstrated by Byrne and his lawyers (both past and present), the Court should award Dominion its costs and attorneys' fees for responding to their most recent objections. The Court should also set a new deadline for Byrne and Lambert to submit their respective affidavits and accompanying document production (along with any privilege log), and impose a daily fine on each of them for each day

1

they fail to comply with the new deadline. And given his demonstrated disregard for court orders in this case, his embrace of the rhetoric Lambert used to justify her own violations, and his extensive history of misconduct in other matters, the Court should enter an Order to Show Cause why Byrne's latest counsel, Peter Ticktin, should not be disqualified as counsel in this case.

## II.    BACKGROUND

### A.    The parties agreed to a robust Protective Order.

Dominion filed this defamation action on August 10, 2021. ECF No. 1. After the Court denied Byrne's motion to dismiss (ECF No. 34), the case proceeded to discovery. Given the nature of voting machine information and the personal security concerns for Dominion employees—many of whom have been and continue to be the subject of vicious threats following the defamation campaign at issue in this suit—Dominion negotiated, and the Court entered, a strict Protective Order in this case. Among other things, the Protective Order provides, with certain enumerated exceptions, that all discovery material produced in the litigation (whether stamped confidential or not) will be used "solely for purposes of this Litigation and no Receiving Party will provide Discovery Material to any person or entity (including for any other litigation) or make any Discovery Material public except as permitted by this Order and in this Litigation." ECF No. 79 at ¶ 1. The Protective Order also explicitly provides for the availability of sanctions in the event of a violation. *Id*. at ¶ 29. Notably, Byrne never objected to this or any other provision in the Protective Order. Instead, on June 8, 2023, Dominion and Byrne jointly moved the Court to enter the Protective Order in this case, with Byrne expressly agreeing to abide by it. ECF No. 45.

### B.    Lambert and Byrne repeatedly violate the Protective and Status Quo Orders.

Before March of 2024, Dominion produced many millions of pages of documents to the Defendants across all consolidated cases. To the best of Dominion's knowledge, for several years all Defendants and their counsel, which included Byrne's prior counsel at McGlinchey Stafford

PLLC, had the opportunity to review these files and adhered to the governing Protective Order.

Then, on March 11, 2024, Dominion was alerted by Byrne's then-counsel—who thereafter promptly withdrew from the case—that Byrne had retained Stefanie Lambert and that "Confidential Discovery Material produced by Dominion in this case has been disclosed in a public filing in Michigan by Stefanie Lambert." ECF No. 75-8, Ex. 7.

But that was not all. As Magistrate Judge Upadhyaya found in her detailed, 61-page Memorandum Opinion, Lambert not only publicly filed several of Dominion's confidential discovery documents in her own Michigan criminal case, but she also provided a Michigan sheriff with *unrestricted access to the entire Dominion discovery database*. ECF No. 126, Mem. Op. at 9, 12-13, 45-46. The Michigan sheriff then freely (and repeatedly) posted Dominion discovery documents on Twitter (now known as X). *Id.* at 12-13. Across the various motions and hearings that followed, Lambert did not deny any of this. She instead asserted she was "entitled" to do it, without prior Court authorization, because doing so was in the "public interest" and, according to Lambert, the documents showed the commission of a crime. ECF No. 76 at 24, 26, 28-29. She likened the situation to "[j]ust as if Dominion had provided to me documents along with a dead body." ECF No. 78, Mar. 18, 2024, Hearing Tr. at 18:11-15.

On March 15, 2024, Dominion filed an emergency motion to disqualify Lambert. In this motion, Dominion noted that Lambert had represented that she violated the Protective Order *at the direction of Patrick Byrne*, but that Dominion lacked sufficient information at that time to seek sanctions against Byrne—though it reserved the right to do so. ECF No. 75 at 23. Accordingly, Dominion's disqualification motion requested that the Court direct both Lambert and Byrne to file affidavits detailing specific information regarding their handling of Dominion's documents. ECF No. 75 at 18-19, 23.

Three days after Dominion filed its motion, Magistrate Judge Upadhyaya held an in-person hearing attended by, among others, Dominion's counsel, Lambert, and Byrne's prior counsel from the McGlinchey firm. *See* Minute Entry, Mar. 18, 2024. During the March 18 hearing, Lambert "did not dispute that"—without informing Dominion, its counsel, or the Court—"she: (1) signed an Undertaking verifying that she would comply with the Protective Order; (2) gained access to Dominion's Litigation Documents; and (3) disseminated those documents in the manner Dominion alleged." ECF No. 126, Mem. Op. at 12. Among other questions, Magistrate Judge Upadhyaya asked Lambert for her "best authority for th[e] proposition" she could unilaterally leak Dominion's discovery materials without first seeking guidance from the Court because Lambert thought there was evidence of a crime. ECF No. 78, Mar. 18, 2024, Hearing Tr. at 18:17-18. Lambert had "no authority to cite to the Court," arguing that "it's essentially asking me to find authority that water is wet." *Id.* at 30:3-5. Magistrate Judge Upadhyaya informed Lambert that the Court must "at least try to stop any further dissemination by you or your client while this issue is taken up and while we hear further argument." *Id.* at 31:11-14.

On March 19, 2024, the Court entered the Status Quo Order (ECF No. 77), requiring, among other directives, that Lambert and Byrne immediately cease disseminating documents and preserve all relevant materials. The Status Quo Order also required Lambert to undertake every reasonable effort to seal the Michigan filings. Between then and her disqualification, the Court gave Lambert 148 days—nearly five months—to demonstrate she could comply with its orders. ECF No. 126, Mem. Op. at 14-18, 19-24, 56, 60-62. Unfortunately for all, she did the opposite.

Specifically, during the intervening period, Lambert discussed Dominion's discovery materials in media interviews in violation of the Status Quo Order's prohibition against "sharing, distributing, providing access to or discussing any discovery material." ECF No. 77 at ¶ 1; ECF

No. 126, Mem. Op. at 14-18, 19-24. She did not seal the publicly filed documents in Michigan. ECF No. 144, Order at 4. She failed to object to subpoenas as required by Paragraph 26 of the Protective Order, "despite Dominion's repeated request to do so, and despite the Court's interim orders telling her to do so." ECF No. 151-2, Tr. at 40:13-16, ECF No. 126, Mem. Op. at 20-21. She orchestrated the improper service of a deposition subpoena on Dominion's CEO as he was walking into a deposition in this case. ECF No. 151-2, Tr. at 40:8-13. And she colluded with third parties to create new avenues for disseminating Dominion's protected materials in defiance of the Court's orders. ECF No. 126, Mem. Op. at 60-61. These are just some of the violations Dominion knows about, to say nothing of the potential violations Lambert was able to carry out in secret.

Meanwhile, following the Status Quo Order, Byrne himself publicly declared his contempt for this Court's authority. In a video posted on April 2, 2024, Byrne stated:

> I'm affirmatively saying, I don't care. I have it now. I have it on my machine. I'm not in the country. This stuff doesn't get unsealed, I'm just going to make it public. You can throw me in jail.

ECF No. 102-3 at 11.

On May 16, 2024, Magistrate Judge Upadhyaya held a second hearing on Dominion's emergency motion to disqualify. Minute Entry, May 16, 2024; ECF No. 103, May 16, 2024, Hearing Tr. During the hearing, Lambert "did not dispute either the underlying conduct or the authenticity of any of the documents Dominion cited in its presentation" chronicling Lambert's breaches of the Protective and Status Quo Orders. ECF No. 126, Mem. Op. at 18. Magistrate Judge Upadhyaya again asked Lambert for "legal authority supporting your position that you could bypass the order that Judge Nichols set and the order of this Court and give access to documents to a third party not involved in the case." ECF No. 103, May 16, 2024, Hearing Tr. at 36:1-4. Lambert again offered no authority but stated, "[i]n my opinion, this is a request that I find a case

5

that says water is wet." *Id.* at 46:21-23. Lambert also admitted during the hearing that she failed to preserve evidence of Byrne's more recent breaches of the Protective and Status Quo Orders—and in fact specifically instructed him to delete certain relevant posts on X, which he in fact deleted. ECF No. 126, Mem. Op. at 34-35.

The day after the May 16, 2024 hearing—at which Byrne expressly affirmed under oath that he understood and would comply with the Court's orders—he again violated those orders by sharing social media posts that included Dominion's litigation documents. ECF No. 126, Mem. Op. at 19-20; ECF No. 105. Again, these are just some of the violations Dominion knows about, to say nothing of the misconduct Lambert and Byrne carried out in secret.

**C.      Magistrate Judge Upadhyaya disqualifies Lambert in a detailed 61-page Memorandum Opinion.**

On August 13, 2024, after reviewing over 2,500 pages of briefs and exhibits, holding two multi-hour hearings, and providing Lambert with a multi-month period in which she could have demonstrated her ability to abide by this Court's orders, Magistrate Judge Upadhyaya issued her Memorandum Opinion (ECF No. 126) and accompanying Disqualification Order (ECF No. 125) disqualifying Lambert "effective immediately," *id.* at 3. The Court's findings were unequivocal:

> [T]he record clearly shows that Lambert deliberately violated multiple court rules and orders and continues to do so despite having had ample warning of the consequences and assuring the Court she would comply. ***Lambert's repeated misconduct raises the serious concern that she became involved in this litigation for the sheer purpose of gaining access to and publicly sharing Dominion's protected discovery.*** Because Lambert's "truly egregious misconduct" has already and will undoubtedly continue to "infect future proceedings," this is the rare case in which disqualification is warranted.

ECF No. 126, Mem. Op. at 3 (quoting *Koller By and Through Koller v. Richardson-Merrell, Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984) (emphasis added)). And:

> Lambert's blatant disregard for this Court and her obligations is unending; her actions have already severely infected this proceeding. There is no doubt that they would continue to do so if she were permitted to remain counsel in this case. This

6

Court cannot allow such intentional, dangerous, and relentless misconduct to continue.

*Id.* at 61-62.

Of particular relevance here, the August 13, 2024, Disqualification Order required both Lambert and Byrne to provide a full accounting—in the form of sworn affidavits—detailing the scope of their unauthorized disclosures: to whom they leaked documents; when, how, what specifically was disclosed; every occasion on which they leaked documents; and whether recipients had signed undertakings pursuant to the Protective Order. ECF No. 125, Disqualification Order at 2. The Court's Order also authorized Dominion to propose a document destruction protocol to ensure that the history of Lambert's and Byrne's misconduct could be better understood and contained. *Id.* at 3.

On August 20, 2024, Dominion proposed such a protocol. ECF No. 128. ***Byrne and Lambert never responded to it***.

### D.    Lambert and Byrne repeatedly challenge the Disqualification Order, including up to the Supreme Court.

On August 23, 2024, the Court stayed the affidavit deadline to permit Byrne to pursue his objections to the Disqualification Order. Minute Order, Aug. 23, 2024. The Court was clear, however, that the case was not stayed, explaining that Byrne must either proceed *pro se* or retain new counsel, as Byrne "himself has previously identified at least one other 'highly qualified' lawyer who is working with Defendant in this matter." *Id*. The Court also ordered that, "[u]pon the District Court's resolution of any objections to the August 13, 2024 Order, the Court will consider Plaintiffs' [document destruction] proposal at ECF No. 128." *Id.* Again, at no point did the Court stay Byrne's requirement to respond to Dominion's proposed document destruction protocol.

Byrne then filed objections (ECF Nos. 133, 134), and on October 17, 2024, the District

Court held a hearing. Minute Order and Entry for Proceedings, Oct. 17, 2024. On October 22, 2024, this Court denied the objections in full, noting that Lambert engaged in "egregious" conduct, including by violating the Status Quo Order and, "at best, skirt[ing] around the edges of the Protective Order." ECF No. 144, Order at 5. This Court further found that Lambert's conduct, "combined with Lambert's view, expressed both before Judge Upadhyaya and now before this Court during the October 17, 2024 hearing, that she was entitled to leak discovery materials because she believed doing so to be in the public interest—creates a real and continuing risk that Lambert might again leak confidential information." *Id.* at 5. The Court concluded that "Judge Upadhyaya thus correctly found that Lambert's continued violations were 'likely to infect future proceedings,' *Koller*, 737 F.2d at 1056, and that no sanction short of disqualification would suffice." *Id*. Notably, the Court stated that it "would affirm that decision even if it were reviewing the disqualification de novo." *Id.* at 2.

Now that Byrne's objections were resolved, Dominion moved to set a deadline for Byrne and Lambert to submit their court-ordered affidavits and to enter Dominion's proposed document destruction protocol. ECF No. 146. Byrne and Lambert never responded to this motion.

Instead, Lambert moved for reconsideration of Judge Nichols's affirmance of the Disqualification Order (ECF No. 148). As Dominion explained in its opposition, the motion was "a plainly improper attempt at a do-over" in which Byrne and Lambert "continue[] to refuse to take accountability for [Byrne's] actions or those of Ms. Lambert, instead regurgitating failed arguments about made-up exceptions to the Protective Order that find no support in caselaw or the Protective Order, and leveling baseless accusations against officers of this Court." ECF No. 151, Opp. at 1, 3. On December 13, 2024, Judge Nichols denied the motion, finding that "the October order correctly applied that presumption [against disqualification], finding that disqualification

was warranted only because this is the rare case involving 'truly egregious misconduct likely to infect future proceedings.'" ECF No. 154, Order at 1 (quoting *Koller*, 737 F.2d at 1056).

Byrne then appealed to the D.C. Circuit, despite unequivocal U.S. Supreme Court precedent that disqualification orders in civil cases are not immediately appealable. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 440 (1985). On March 24, 2025, a panel of the D.C. Circuit dismissed the appeal for lack of appellate jurisdiction, holding that Byrne's "interlocutory appeal seeks review of an order disqualifying his counsel in a civil case, but such orders 'are not collateral orders subject to appeal as "final judgments" within the meaning of 28 U.S.C. § 1291.'" Order, No. 24-7195 (D.C. Cir. Mar. 24, 2025) (quoting *Richardson-Merrell*, 472 U.S. at 440).

The following day, this Court stayed the matter pending the D.C. Circuit's issuance of the mandate. Minute Order, Mar. 25, 2025.[1]

Byrne then petitioned for rehearing *en banc.* On June 9, 2025, the full D.C. Circuit denied rehearing. Per Curiam Order, No. 24-7195 (D.C. Cir. June 9, 2025). Byrne then filed a petition for certiorari—with Peter Ticktin of The Ticktin Law Group, Byrne's current counsel, as the only counsel on the brief. Petition, No. 25-281 (U.S. Sep. 8, 2025). On November 10, 2025, the Supreme Court denied the petition.

To summarize: Magistrate Judge Upadhyaya, Judge Nichols (twice), the D.C. Circuit (twice), and the Supreme Court have either rejected Byrne's and Lambert's challenges to the Disqualification Order or declined to hear them. The Disqualification Order stands.

**E.     Ticktin enters the case and immediately picks up where Lambert left off.**

For over a year after Lambert's disqualification, Byrne had no counsel of record. In yet one

---

[1] To be clear, the Court entered this stay 217 days after Dominion filed the document destruction protocol (ECF No. 128) and 144 days after Dominion moved for the protocol to be entered (ECF No. 146). Under Local Civil Rule 7(b), Byrne's deadline to respond to both was 14 days.

more example of his willingness to violate this Court's orders, Byrne did not retain new counsel or proceed *pro se*, as the Disqualification Order required him to do, by September 13, 2024. ECF No. 125, Disqualification Order at 3. Instead, Lambert continued to file motions in Byrne's name, including a motion to stay discovery (ECF No. 141) that the Court noted was "filed without authorization" specifically because she is not authorized to practice law in this case. Minute Order, Feb. 2, 2026.

On October 31, 2025, the Court ordered the parties to file a Joint Status Report by November 14, 2025. *See* Minute Order, Oct. 31, 2025. The Court specifically ordered the parties to "address whether the stay should be lifted in light of the issuance of the [ECF No. 160] Mandate from the Court of Appeals, what motions remain live that the Court should rule on, and what the sequence of next events in this case should be." *Id.*

The day the Joint Status Report was due, Peter Ticktin filed a Notice of Appearance (ECF No. 161). His associate immediately requested a seven-day extension because Ticktin was traveling and had purportedly not yet familiarized himself with the case (ECF No. 162; ECF No. 163 at 2-3)—a statement that appears to be at odds with the fact he was sole counsel of record on Byrne's petition for certiorari to the U.S. Supreme Court. *See* Petition, No. 25-281 (U.S. Sep. 8, 2025). Dominion consented to the extension, but because the motion had not been granted by the time the deadline came to pass (Ticktin sought the extension the very day of the deadline), Dominion filed its own Status Report. ECF No. 163 at 2-3. On November 18, 2025, the Court granted Byrne's extension request *nunc pro tunc*. Minute Order, Nov. 18, 2025.

On November 21, 2025, Ticktin filed Byrne's Status Report—unilaterally, as opposed to the joint status report the Court ordered. ECF No. 164. Ticktin admitted he was "in the process of familiarizing" himself with the case and requested a 60-day extension of the stay. ECF No. 164 at

10

1-2. In his very first filing, Ticktin advanced the same conspiracy theories Lambert had championed—raising questions about Dominion's corporate identity, an alleged "alter ego" theory, and a purported conflict of interest involving Dominion's counsel and its new owner— none of which bore any relationship to the status report the Court had ordered. *Id.* at 2-3. In addition, Ticktin refused to cooperate with Dominion on a joint status report as the Court had ordered. *See* ECF No. 165 at 1.

On November 26, 2025, the Court continued the stay for an additional 45 days to allow Ticktin "to familiarize himself with this case." Minute Order, Nov. 26, 2025. The Court also ordered the parties to file "a Joint Status Report on or before January 10, 2026, that addresses (1) whether the stay should be lifted, (2) what motions remain live that the Court should rule on, (3) whether a conflict of interest exists regarding Scott Leinendecker, and (4) what the sequence of next events in this case should be." *Id*. The Court "reminded" Byrne that, "consistent with the [ECF No. 15] Standing Order, motions for extensions of time should be filed at least four days prior to a deadline" and "that this status report shall be a joint one, meaning that the Parties shall meet and confer before its filing to discuss the topics above." *Id.*

What followed was a disturbing escalation in this litigation that suggests Ticktin is, like Lambert, with his client's express approval more loyal to a personal agenda than abiding by the rules of this Court, and sees his job in this litigation as one of publicizing Dominion's documents and operating as a vessel for Lambert's continued participation. In the January 10, 2026 Joint Status Report (ECF No. 167), Dominion detailed some of that evidence.

*First*, at the parties' January 9, 2026 meet and confer, Ticktin exhibited "virtually no knowledge of the substance of the Court's orders"—despite being Byrne's counsel on his appeal for at least 124 days, being lead counsel of record in this case for at least 57 days, and receiving

an extension of the stay to familiarize himself with this case. ECF No. 167 at 2-3.

*Second*, Dominion identified that Ticktin was copying Lambert on emails relating to this case. ECF No. 167 at 3; ECF No. 167-3, Ex. C at 1-2. When asked during the January 9 meet and confer whether Lambert continues to represent Byrne, Ticktin admitted she is "absolutely" and "of course" still involved in Byrne's defense—yet he was "not exactly sure what their relationship is" or "where [it] falls exactly," and refused to say whether her role extends beyond transitioning the matter to include ongoing, prospective involvement. ECF No. 167 at 3. As Dominion warned, "[t]his is a familiar playbook." *Id*. Magistrate Judge Upadhyaya had previously observed that it was "'undisputed'" Lambert worked with Byrne "'for some time'" before filing her appearance, accessed Dominion's discovery material months before her appearance, and leaked Dominion's documents before filing her appearance. ECF No. 126, Mem. Op. at 7-8. Dominion cautioned that "[o]nce the prohibition on access to Plaintiffs' discovery material is lifted, experience teaches that Lambert—still in the wings—will pick up where she left off." ECF No. 167 at 4.

*Third*, Ticktin's communications exhibited the same concerning mindset that characterized Lambert's earlier statements, meaning a belief that she had the right, even the duty, to usurp this Court's orders and instead do what she thought best. In emails to Dominion's counsel in the days preceding the January 10 filing, Ticktin wrote: "I can understand that you think you can sit in judgment, considering that you are representing a company which was so important in that it was instrumental in taking over the United States for 4 years"; "I guess I come from an old school, as I am from a different world, one which existed long ago, when Presidential Elections were not fixed"; and "Let's not forget who the real criminal is here." ECF No. 167-1, Ex. A at 4-6. This rhetoric is indistinguishable in substance and tone from Byrne's own false public statements and Lambert's courtroom assertions—and raises serious concerns, confirmed by Ticktin's most recent

12

filings, that he's simply here to pick up where Lambert left off.

*Fourth*, on January 5, 2026—five days before the Joint Status Report was due and 40 days into the 45-day stay the Court had granted for Ticktin to familiarize himself with the case—Ticktin filed a Motion to Fully Lift the Protective Order (ECF No. 166). This motion was "the third time Byrne, who agreed to the operative protective order, has argued to set it aside in its entirety so that his various agents may provide documents to various third parties." ECF No. 167 at 10 (citing ECF Nos. 90, 116). In other words, rather than use time to familiarize himself with this Court's orders, including the orders regarding Lambert's disqualification, understand the discovery landscape, or address the outstanding affidavit obligations, Ticktin's first substantive act was to recycle a motion Byrne—via Lambert—had already filed and lost twice—and apparently to let her participate in the drafting of it. *See* ECF No. 173 at 6-7 ("Since the Court lifted the stay in this matter, Lambert also appears as the author of Byrne's Motion to Fully Lift Protective Order (Dkt. 166)—a recycled motion she filed twice before her disqualification....").

More recently, Ticktin confirmed that he is indeed allowing Lambert to litigate this case from the shadows. On April 10, 2026, in his response to the Court's March 31, 2026 Order (ECF No. 175), Ticktin made the following assertions:

- Lambert "does provide valuable insight and information which is necessary to the undersigned" and "is helpful in related cases in other courts." ECF No. 176 at 2.

- Lambert "was not removed due to any information she received, but rather because she allegedly transferred documents provided by the Plaintiffs to a sheriff's office" (*id.* at 2-3)—a characterization that minimizes the Court's findings of repeated, deliberate, and continuing violations.

- "[I]n the event that the undersigned [Ticktin] needed or wanted Ms. Lambert to draft

or edit a document, he would do so, as there is nothing wrong with the undersigned receiving such help." *Id.* at 3.

Perhaps most shocking, while Ticktin claimed that he himself had not yet accessed any Dominion-produced documents, he stated: "others in his office may have done so." *Id.* This admission flies in the face of the Court's Status Quo and Disqualification Orders, which provide **no** person is authorized to access Dominion-produced documents absent prior authorization by this Court. ECF No. 77 at ¶¶ 1-2 & 4-6; ECF No. 125, Disqualification Order at 2.[2]

Ticktin's actions (and inactions) since joining this case speak for themselves. Ticktin sees "nothing wrong" with Lambert—a lawyer this Court disqualified for "truly egregious misconduct" and "blatant disregard for this Court and her obligations"—continuing to function as counsel in this case. He likewise has not taken the time to familiarize himself with this Court's rulings. Or, to the extent he has, he apparently pays them little to no regard.

What makes this even more concerning is that Peter Ticktin's conduct here is part of a broader pattern he and his law firm have for violating court rules, orders, and norms, including in other cases involving similar issues. For example:

**Florida Bar Suspensions.** Public sources indicate that Ticktin has had his law license suspended by the Florida State Bar on at least two prior occasions. *See The Florida Bar v. Ticktin*, 14 So. 3d 928 (Fla. 2009) (affirming ninety-one day suspension); *see also* Ex. 1, Foreclosure

---

[2] Dominion is concerned that, despite Ticktin's representations to the contrary, he has in fact accessed Dominion-produced documents, including because (1) in Byrne's petition for certiorari to the Supreme Court, Ticktin (falsely) characterized what he claimed "[t]he discovery revealed," Petition at ii n.1, No. 25-281 (U.S. Sep. 8, 2025); and (2) in Byrne's November 21, 2025 Status Report, Ticktin suggested that Dominion produced its documents in "a scrambled manner," ECF No. 164 at 4. It is not clear how Ticktin could honestly make these representations without first reviewing Dominion's productions. He has also never expressly made clear that he did not access any of the improperly leaked Dominion documents. Meaning—he may have reviewed Dominion's documents that had been laundered through Lambert's misconduct

14

Attorney Practices Coming Under Fire, CBS News, Miami (Nov. 9, 2010), available at https://www.cbsnews.com/miami/news/foreclosure-attorney-practices-coming-under-fire/.

**Rule 11 Sanctions.** In *Glob. Glass Techs., Inc. v. Rsch. Frontiers, Inc.*, the Middle District of Florida imposed Rule 11 sanctions against Ticktin and the Ticktin Law Group in the amount of $320,819.88 "based on Mr. Ticktin's failure to properly investigate the[] claim[s]" he brought against the defendant. 2025 WL 2088421, at *1 (M.D. Fla. July 25, 2025), *reconsideration and reh'g denied*, 2025 WL 2902944 (M.D. Fla. Sept. 23, 2025). The Court declined to impose a "nominal" sanction of $25,000 because "it would effectively greenlight this conduct in the future for firms, like the Ticktin Law group, which could simply build a nominal sanction cost into the cost of doing business in this fashion." *Id.* at *6.

**Sanctions in *Trump v. Clinton*.** Ticktin and others were sanctioned more than $1 million in *Trump v. Clinton* because, as the Southern District of Florida found, "[e]very claim was frivolous, most barred by settled, well-established existing law. These were political grievances masquerading as legal claims. This cannot be attributed to incompetent lawyering. It was a deliberate use of the judicial system to pursue a political agenda." 640 F. Supp. 3d 1321, 1332 (S.D. Fla. 2022), *aff'd*, 161 F.4th 671 (11th Cir. 2025).

**Dismissal for Failure to Comply with Court Orders.** In *GS Holistic, Inc. v. Zaidal Blue Sky Investments Corp.*, the Court dismissed an action prosecuted by Ticktin's associate David Perry—who is working with Ticktin on this case—for failing to appear at a final pretrial conference after being previously warned. 2024 WL 6881982, at *1 (M.D. Fla. Oct. 23, 2024), *reconsideration denied sub nom. GS Holistic, LLC v. Zaidal Blue Sky Invs. Corp*, 2024 WL 6881981 (M.D. Fla. Dec. 5, 2024), *aff'd sub nom. GS Holistic, LLC v. Zaidal Blue Sky Invs. Corp*, 2026 WL 184410 (11th Cir. Jan. 23, 2026). The Court explained:

15

The Ticktin Law Group has an extensive, well-documented history of violating court orders, the Federal Rules of Civil Procedure, and the Local Rules. At least two judges in this district have described one former Ticktin attorney—Gabrielle Alexa Penalta—as careless due to her persistent failure to follow the Local Rules. *Imiracle (HK) Limited v. Okie Smoky LLC, et al.*, 3:22-cv-1389-MMH-MCR, Dkt. 40 at 2-3 (J. Howard) (describing Ms. Penalta as "exceedingly careless," noting that she had incurred "countless orders to show cause" based on a host of violations); *Imiracle (HK) Limited v. Puff Paradise, LLC et al.*, 8:22-cv-2909-SCB-JSS, Dkt. 22 (J. Bucklew) (noting that Ms. Penalta "ha[d] been cautioned numerous times by the judges of the Middle District about her carelessness in prosecuting her cases."). Because counsel has persistently violated the Local Rules, multiple courts in this district have dismissed cases handled by the Ticktin Law Group. *GS Holistic, LLC v. Kinder Combs 7 LLC*, 3:22-cv-1206-TJC-LLL, Dkt. 20 at 3 (dismissing six cases handled by the Ticktin Law Group in a single order); *Imiracle (HK) Limited v. Angry Pitbull Vap & Smoke Shop, Inc., et al.*, 8:22-cv-2857-JLB-SPF, Dkt. 23 (dismissing a case for failure to prosecute).

**Admonishments in Colorado.** In *GS Holistic v. Vaportoke, Inc.*, the District of Colorado admonished Ticktin and the Ticktin Law Group for their repeated noncompliance with procedural requirements and court orders, explaining that their "failure to conduct litigation consistent with the rules had been demonstrated in other districts across the country." Order at 3, *GS Holistic, LLC v. Vaportoke Inc. d/b/a Colo. Vape & Toke, et al.*, No. 23-cv-01513-RMR-NRN (D. Colo. Jan. 12, 2024), ECF No. 39 (attached as Ex. 2). The court expressed concern that "the lawyers who are appearing in this Court and signing documents are not the ones doing, or even reviewing, the work." *Id.* at 6. The court expressed frustration that their failure to adhere to the rules was not curbed by the court's previous admonishments of Ticktin:

Mr. Ticktin professed errors when he appeared at the Show Cause Hearing, and promised they would be corrected. More errors occurred. The appearance of a new Colorado lawyer on the case suggested there would be improvements in the conduct. That has not happened. Something must be done to reduce the chaos and ensure that justice is served in an orderly fashion consistent with the Court's rules and orders.

*Id.*

**Pro Hac Vice Revoked in California.** In *Biden v. Byrne*, the Central District of California

16

revoked Ticktin's *pro hac vice* admission one week after reluctantly granting it. 2025 WL 2429688, at *2-3 (C.D. Cal. Aug. 5, 2025). The court noted that "Mr. Ticktin's history of prioritizing political pursuits over his ethical obligations, combined with his lack of transparency to the Court, 'suggests ... that he will not abide by the Court's rules and practices.'" *Id.* at *2 (citation omitted). The court found that Ticktin "omitted key information" when opposing the plaintiff's application to reconsider granting Ticktin *pro hac vice* admission, "raise[ing] serious concerns about his candor and reinforc[ing] the Court's apprehension that his involvement in this case would undermine 'the orderly administration of justice.'" *Id.* (citation omitted).

**Out-of-State Admission Denied in Colorado.** After reviewing Ticktin and his firm's history, the District Court of Denver found that Ticktin and his firm "have exhibited behaviors constituting a troubling pattern that demonstrates a lack of regard to the integrity of the judicial process. Even more disturbing is that this pattern has repeated itself in numerous jurisdictions over the span of years." Order at 9, *Coomer v. Donald J. Trump for President Inc. et al.*, No. 2020CV34319 (Denv. Dist. Ct. Apr. 3, 2026) (attached as Ex. 3). "Based on this demonstrable pattern of disregard for the integrity of the judicial process, the Court does not hesitate in finding that the applicants' participation in this matter would be a significant danger to the integrity of these proceedings, including to the overall fairness of the resolution of this dispute." *Id.*

**Motions for Sanctions and Order to Show Cause Proceedings in Florida.** In the Middle District of Florida, former Dominion employee Eric Coomer has filed motions for sanctions and orders to show cause detailing troubling conduct that occurred in connection with Coomer's deposition in a related defamation case. Just before Coomer's January 27, 2026 deposition, Ticktin allegedly physically assaulted Coomer's counsel, shoving him twice in the hotel lobby, the second time after raising his fist, as captured on hotel surveillance video. *See* Plaintiff's Motion for

17

Sanctions and For Order to Show Cause at 9-10, *Coomer v. Byrne, et al.*, No. 8:24-cv-00008-TPB-SPF (M.D. Fla. Feb. 6, 2026), ECF No. 281 (attached as Ex. 4). Ticktin then told the presiding judge that it was *he* who had been assaulted, a claim the motion says the surveillance footage clearly contradicts. *Id.* at 11-12.

Ticktin and his law firm's demonstrated history of misconduct raises the same "serious concern" Magistrate Judge Upadhyaya expressed about Lambert in the Disqualification Order: Whether Byrne hired Ticktin "for the sheer purpose of" violating court rules and orders. ECF No. 126, Mem. Op. at 3. Indeed, Ticktin blithely acknowledges that violations may already have occurred: his recent filing in this matter notes that others in his office "may have" accessed Dominion's produced documents in this case, despite unequivocal Court order barring them from doing so absent Court permission (which they have never sought). ECF No. 176 at 3; *see* ECF No. 77 at ¶¶ 1-2 & 4-6; ECF No. 125, Disqualification Order at 2.

### F.    Lambert and Byrne disobey the Court's March 31, 2026 Order.

As recited above, on August 20, 2024, Dominion proposed a document destruction protocol. ECF No. 128. On November 1, 2024, Dominion filed a motion (ECF No. 146) requesting that the Court set a new deadline for Lambert and Byrne to comply with the Disqualification Order's affidavit requirements and enter the previously proposed document destruction protocol. At no point did Byrne or Lambert respond to any of these motions—including after both Dominion and Byrne, in the January 9, 2026 Joint Status Report, each identified these "live motions" as ripe for the Court's consideration, and despite Byrne filing his own motion for affirmative relief during this time. ECF No. 167 at 8-10, 17-18.

On March 31, 2026, Magistrate Judge Upadhyaya granted Dominion's motion, treating it as conceded. ECF No. 175. The court-ordered relief included the following:

- "Lambert and Byrne must file their affidavits in compliance with the Disqualification

18

Order (ECF No. 125) by 5:00 p.m. ET on April 13, 2026," *id.* at 2;

- By no later than April 13, 2026, Lambert must produce to Dominion all Dominion Litigation Documents, all documents and communications in any way discussing or referencing Dominion Litigation Documents or their contents; and all documents and communications in any way discussing or referencing Dominion or this matter, *id.* at 3;

- To the extent Lambert withholds any documents based on a claim of privilege, Lambert must provide a detailed privilege log and sworn affidavit for any privilege claims by April 13, 2026, *id.* at 4;

- Lambert must certify compliance by affidavit by April 14, 2026, *id.* at 4; and

- Ticktin must provide answers to specific questions regarding Lambert's involvement and his own access to Dominion's document production by April 10, 2026, *id.*

On April 10, 2026, Ticktin nominally responded to the questions posed by the Magistrate Judge, but his filing made clear his disregard for the Court's Disqualification Order—asserting that, notwithstanding Lambert's disqualification, "in the event that [Ticktin] needed or wanted Ms. Lambert to draft or edit a document [for this litigation], he would do so, as there is nothing wrong with the undersigned receiving such help"—and confessing that individuals in his office "may" have accessed Dominion's document production, notwithstanding the Court's prohibition on them doing so absent permission that they did not have. ECF No. 176 at 3. And on April 13, 2026—the date the affidavits, document production, and privilege log were due—neither Lambert nor Byrne complied. Instead, they filed one-page "Notice[s] of Intent to File Objection" (ECF Nos. 177, 178), asserting that the affidavits would be "covered by the Objections which will be timely in their own right." ECF No. 177 at 1; ECF No. 178 at 1. Neither Lambert nor Byrne sought a stay or an extension (nor did Ticktin, who should have counseled his client to do so), and they did not file

19

the affidavits or certifications as required. Rather, Lambert and Byrne, through Ticktin, simply announced they would object—and treated that announcement as a substitute for compliance.

Byrne, through Ticktin, filed an appeal of the March 31 Order on April 14, 2026. ECF No. 179. The next day, without seeking an extension, Lambert filed her own appeal. ECF No. 180.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 72(a) and Local Rule 72.2 empower courts to refer resolution of non-dispositive matters to a magistrate judge. *Smith v. D.C.*, 249 F. Supp. 3d 106, 109-10 (D.D.C. 2017). "The D.C. Circuit has defined 'dispositive motion' to 'include[ ] a motion that, if granted, would result either in the determination of a particular claim on the merits or elimination of such a claim from the case.'" *Campaign Legal Ctr. v. Iowa Values*, 710 F. Supp. 3d 35, 47 (D.D.C. 2024) (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997)). Motions to disqualify counsel, motions regarding protective orders, and motions governing the production of documents fall squarely within the realm of "nondispositive" matters. *Id.* at 54 ("A motion for a protective order is plainly a nondispositive motion...."); *Medgyesy v. Medgyesy*, 988 F. Supp. 2d 843, 845 (N.D. Ill. 2013) (collecting cases treating motions for disqualification of counsel as non-dispositive). If a party objects to a magistrate judge's decision on a non-dispositive matter, the district judge "can only modify or set aside any part of the order that is 'clearly erroneous or is contrary to law.'" *Danzy v. IATSE Loc. 22*, 2021 WL 5416630, at *2 (D.D.C. Nov. 19, 2021) (quoting Fed. R. Civ. P. 72(a)). To find clear error, the court must be "left with the definite and firm conviction that a mistake has been committed." *Klayman v. Jud. Watch, Inc.*, 628 F. Supp. 2d 84, 94 (D.D.C. 2009) (citations omitted). "A party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a).

20

## IV.    ARGUMENT

### A.    Byrne's and Lambert's "appeals" are procedurally improper and should be denied on that basis alone.

Byrne's and Lambert's objections (which they style as appeals) are procedurally improper—first, because much of what they object to derives from the fully adjudicated Disqualification Order (ECF Nos. 125, 126); and second, because they conceded Dominion's motion to set a new deadline to comply with the Disqualification Order and to enter a document destruction protocol.

Starting with the fully adjudicated Disqualification Order, as recited above, Magistrate Judge Upadhyaya first imposed the affidavit, document sequestration, and privilege log requirements in that Order on August 13, 2024. ECF No. 125, Disqualification Order at 2-3. This Court upheld the Disqualification Order twice—first on October 22, 2024, and again on December 13, 2024. ECF Nos. 144, 154. Byrne then unsuccessfully appealed to the D.C. Circuit and filed a petition for rehearing *en banc*. Byrne—with Ticktin now representing him—took the Disqualification Order to the U.S. Supreme Court, which denied his petition for certiorari.

The Disqualification Order—with its substantive obligation to produce sworn affidavits, sequester documents, and produce a privilege log concerning Lambert's and Byrne's discovery breaches—has been fully adjudicated. What remained of the Disqualification Order was purely straightforward: setting a date for compliance and confirming a protocol with respect to Dominion's documents. The March 31 Order set that date. ECF No. 175. And Byrne and Lambert concede that scheduling orders are within a Magistrate Judge's authority and can be resolved by default. ECF No. 179 at 15-16, 21 (acknowledging that a Magistrate Judge may decide "pretrial matters" such as "scheduling orders or deadline extensions," including "by default"); ECF No. 180 at 11, 15 (same).

21

Turning next to Byrne and Lambert's concession, Byrne and Lambert never opposed Dominion's November 1, 2024 motion to set a deadline for their court-ordered affidavits and to enter the proposed document protocol. ECF No. 146. Fourteen months after that motion was filed, Byrne affirmatively informed the Court in his portion of the Joint Status Report that the motion was "Live for the Court's Ruling," still offering no opposition. ECF No. 167 at 17-18. Two months later, Magistrate Judge Upadhyaya appropriately treated the motion as conceded. ECF No. 175.

Magistrate Judge Upadhyaya acted well within her discretion in treating the motion as conceded. Under Local Civil Rule 7(b), "[i]f [an opposing] memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." LCvR 7(b). "This rule is not some obscure technicality; it is regularly enforced in this district." *Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 181, 187 (D.D.C. 2014) (citing *Cromartie v. District of Columbia*, 729 F. Supp. 2d 281, 285 (D.D.C. 2010), *aff'd*, 479 F. App'x 355 (D.C. Cir. 2012)). "And the D.C. Circuit has repeatedly affirmed enforcement of this rule as an appropriate exercise of district court authority and discretion." *Id.* (citing *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294-95 (D.C. Cir. 2004) ("This court has yet to deem such a straightforward application of Local Rule 7(b) an abuse of discretion and ... we see no reason for doing so here."); *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule."). "Deadlines are not meaningless. Lawyers cannot file pleadings when it is convenient for them to do so, and repeatedly missing deadlines will have consequences." *Rogers v. Amalgamated Transit Union, Loc. 689 (Rogers II)*, 2017 WL 1628867, at *2 (D.D.C. May 1, 2017). Courts in this district apply this rule to sanctions motions. *See Rowe v. PChange LLC*, 2025 WL 2803859, at *3 (D.D.C. Oct. 2, 2025) (treating motion for attorneys' fees as conceded under Local Civil Rule 7(b)); *Rogers v.*

22

*Amalgamated Transit Union Local 689 (Rogers I)*, 2017 WL 476632, at \*1 (D.D.C. Jan. 4, 2017) (same); *Robinson*, 4 F. Supp. 3d at 187 (D.D.C. 2014) ("Robinson's motion for attorney's fees was a perfect candidate for enforcement of Local Rule 7(b).").

The notion—that Byrne and Lambert can sit silent for 14 months; then file their own affirmative motion for relief related to the Protective Order; then inform the Court that Dominion's motion is "Live for the Court's Ruling"; and then, only after the Court rules on Dominion's motion, file over 70 pages' worth of objections asserting they never had the opportunity to be heard and that Magistrate Judge Upadhyaya exceeded her authority—is absurd. The notion offends the orderly administration of this Court's docket, and it flies in the face of the procedural mechanisms available to a party. If a party wishes to preserve objections, the Federal Rules and Local Rules provide straightforward mechanisms for doing so: file an opposition making the objection you wish to preserve. *Footbridge Ltd. Tr. v. Zhang*, 2007 WL 1794106, at \*2 (D.D.C. June 19, 2007) (objections to a magistrate judge's ruling are not "a vehicle for presenting theories or arguments that could have been advanced earlier" (citation omitted)); *Gable v. United States*, 319 F. Supp. 3d 37, 40 (D.D.C. 2018) ("[A]n objecting party is not permitted to present new initiatives to the district judge, as the district court may review only those issues that the parties have raised in their objections to the Magistrate Judge's report." (citation omitted); *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 43 (D.D.C. 2016) (similar).

Byrne and Lambert's arguments concerning their concession are meritless.

*First*, their argument that a "stay" prevented them from objecting to Dominion's motion is false. *See* ECF No. 179 at 13-14; ECF No. 180 at 22-23. Dominion first proposed the document destruction protocol on August 20, 2024. ECF No. 128. On August 23, 2024, the Court stayed "the deadline for Lambert and Byrne to submit their affidavits" to allow Byrne to pursue objections.

23

Minute Order, Aug. 23, 2024. The stay applied to the affidavit deadline. It did not stay the case. It did not stay Byrne's obligation to respond to motions. And it instructed Byrne on his two options: proceed *pro se* or have the other "highly qualified" lawyer he was working with appear in this matter. *Id.* The Court's Minute Order also stated that, "[u]pon the District Court's resolution of any objections to the August 13, 2024 Order, the Court will consider Plaintiffs' [document destruction] proposal at ECF No. 128." *Id.* Thus, after Judge Nichols denied Byrne's objection, Dominion promptly moved on November 1, 2024, to set a new deadline for the affidavits and to enter a document destruction protocol. ECF No. 146. Under Local Civil Rule 7(b), Byrne's opposition was due within fourteen days, on November 15, 2024. He filed nothing in response until his present objection.

*Second*, Byrne and Lambert's arguments about the distinction between "waiver" and "forfeiture" miss the point. ECF No. 179 at 34; ECF No. 180 at 22. Byrne and Lambert knew about Dominion's motion, had the means to respond, had multiple opportunities to respond to it, and chose not to. Byrne himself informed the Court that the motion was "Live" and ready to be adjudicated. ECF No. 167 at 17-18. If that is not an intentional relinquishment or abandonment of a known right, then nothing is.

*Third*, Byrne and Lambert cite no law for the proposition that Magistrate Judge Upadhyaya had an independent obligation to assess the merits of Dominion's motion after it went conceded, and courts have held the opposite. *Rowe*, 2025 WL 2803859, at *3 (treating motion as conceded and rejecting that "the Court should have set out its findings under Rules 52(a) and 54(d)(2)(c)").

**B.     The arguments raised by Byrne and Lambert are meritless.**

This Court can dispose of Byrne's and Lambert's objections based on their procedural impropriety alone. On their merits, their arguments fare no better. The Court should overrule their objections and affirm the March 31 Order.

### 1.     The Order falls squarely within the Magistrate's authority.

Byrne and Lambert argue that the March 31 Order exceeds Magistrate Judge Upadhyaya's statutory authority. ECF No. 179 at 15-19; ECF No. 180 at 11-13. They are incorrect: the March 31 Order falls squarely within the category of matters appropriately referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A). Section 636(b)(1)(A) authorizes the designation of magistrate judges to "hear and determine any pretrial matter," with certain enumerated exceptions that do not apply here.[3] Similarly, Federal Rule of Civil Procedure 72's requirement that "dispositive" motions be reviewed *de novo* does not apply given the relief set forth in the March 31 Order, none of which "result either in the determination of a particular claim on the merits or elimination of such a claim from the case.'" *Campaign Legal Ctr.*, 710 F. Supp. 3d at 47 (quoting *Burkhart*, 112 F.3d at 1215). Rather, the portions of the Order challenged by Byrne and Lambert (1) direct compliance with the affidavit requirement of the Magistrate Judge's prior Disqualification Order, ECF No. 175, Order at p.2, (2) prescribe procedures and requirements related to the handling of litigation documents and communications, as well as privilege logging of such documents, *id*. at ¶¶ 2-6, and (3) require counsel to provide information to the Magistrate Judge so that she can confirm her own orders have been and are being followed, *id*. at ¶ 10.

This Court has already (twice) reviewed and affirmed the Disqualification Order, which required the same affidavits from Byrne and Lambert that they now claim exceed the Magistrate Judge's authority to order. ECF Nos. 144, 154. As for the March 31 Order's provisions regarding the handling of discovery documents—including requirements that documents be sequestered,

---

[3] These are: "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A).

access restricted, and/or logged on a privilege log—those fall within the heartland of non-dispositive issues commonly addressed by magistrate judges. *See, e.g., Slate v. Am. Broad. Companies, Inc.*, 802 F. Supp. 2d 22, 25-26 (D.D.C. 2011), *aff'd*, 584 F. App'x 2 (D.C. Cir. 2014) (reviewing magistrate judge's order sequestering produced hard drives and limiting discovery under "clearly erroneous or contrary to law" standard); *Baylor v. Mitchell Rubenstein & Associates, P.C.*, 130 F. Supp. 3d 326, 328, 330-36 (D.D.C. 2015), *aff'd*, 857 F.3d 939 (D.C. Cir. 2017) (affirming magistrate judge's order requiring the creation of a privilege log and applying privilege doctrines under "clearly erroneous or contrary to law" standard). And Magistrate Judge Upadhyaya is plainly entitled to require confirmation from counsel that the Court's orders have been followed. *See, e.g., In re LeFande*, 297 F. Supp. 3d 1, 5-6 (D.D.C. 2018), *aff'd*, 919 F.3d 554 (D.C. Cir. 2019) (affirming magistrate judge's contempt order, imposed after counsel refused to comply with magistrate judge's order to provide sworn testimony, under "clearly erroneous or contrary to law" standard).

Byrne and Lambert nevertheless argue that the March 31 Order is "dispositive" such that Fed. R. Civ. P. 72 requires *de novo* review. As this Court found to be the case with Magistrate Judge Upadhyaya's Disqualification Order, the March 31 Order would stand under a *de novo* review standard. ECF No. 144, Order at 2. That said, Byrne and Lambert cite no authority supporting their characterization of the March 31 Order as "dispositive." Rather, in *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, the D.C. Circuit held that the Federal Rules of Civil Procedure's provision allowing district courts to "refer a motion for attorney's fees to a magistrate judge under Rule 72(b) ***as if it were a dispositive pretrial matter***" does in fact require that motions for attorneys' fees be treated as dispositive matters. 857 F.3d 939, 945-47 (D.C. Cir. 2017) (quoting Fed. R. Civ. P. 54(d)(2)(D)) (emphasis added). No similar provision of the Federal Rules dictates

26

the characterization of the relief ordered here. In *ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC*, the First Circuit found an order appointing a receiver sufficiently "dispositive" to require *de novo* review because the magistrate judge granted the underlying motion only after making a "preliminary determination" that was "central to the merits of the foreclosure action itself." 951 F.3d 41, 49 (1st Cir. 2020). By contrast, Magistrate Judge Upadhyaya's March 31 Order does not depend on any finding related to the merits of this litigation—to the contrary, it seeks to end a years-long sideshow sparked by Byrne's and his counsel's litigation conduct. And *Merritt v. International Brotherhood of Boilermakers* **rejected** an argument that the magistrate judge lacked authority to award costs and attorneys' fees in connection with a motion to compel discovery. 649 F.2d 1013, 1016 (5th Cir. 1981).

Byrne and Lambert cite no authority for their apparent view that the Magistrate Judge had to draft an entirely new set of factual findings in conjunction with the March 31 Order. *See supra* §IV(A). More to the point, their complaint that the Order lacks any findings or explanation regarding the relief set forth therein ignores that the Magistrate Judge already entered a "lengthy and thoughtful opinion" addressing **exactly** this (namely, "that Lambert violated both the Protective Order and the Status Quo Order" and that "no lesser sanction" than those set forth in her Disqualification Order was appropriate). ECF No. 144, Order at 2. The only additional relief provided by the March 31 Order consists of procedures regarding the handling of Dominion's litigation documents in light of the findings set forth in the Magistrate Judge's prior opinion. *Compare* ECF No. 125, *with* ECF No. 175. Indeed, it is unclear what new findings Byrne and Lambert believe the Magistrate Judge should have made given that Dominion's motion underlying the March 31 Order was uncontested. *See* ECF Nos. 128, 146, 175.

Byrne and Lambert argue that the Magistrate Judge's March 31 Order improperly seeks to

enforce a "not final" order. ECF No. 179 at 36-39; ECF No. 180 at 23-25. Byrne and Lambert confuse the concept of "finality" as a basis for appellate review with the concept of enforceability. That an order is not "final" for appeal does not mean the trial court cannot *enforce* that order during the duration of litigation. An order disqualifying counsel would be entirely meaningless if not enforceable until final judgment. Indeed, this Court affirmed the Magistrate Judge's Disqualification Order on the basis that "Lambert's continued violations were 'likely to infect future proceedings'" and as such "no sanction short of disqualification would suffice." ECF No. 144, Order at 5 (citation omitted). The only way to prevent Lambert's violations from infecting the rest of this action is to enforce the Magistrate Judge's Disqualification Order *now*—not after the action concludes. Unsurprisingly, neither Byrne nor Lambert cites any caselaw supporting the notion that a court cannot enforce its own interlocutory orders. That is plainly not the law. And the request for affidavits is not simply some formality: As Dominion flagged in its very first motion regarding these issues, it still does not have a full picture of the scope of Byrne's misuse of its documents. ECF No. 75 at 23. It has expressly reserved the right to seek further sanctions against Byrne himself once it has the requisite information. *Id*.

Byrne and Lambert's reliance on a text order in *Coomer v. Byrne*, No. 8:24-cv-00008-TPB-SPF (M.D. Fla.), is misplaced. ECF No. 179 at 39-41; ECF No. 180 at 25. Prior to issuing the text order Byrne and Lambert cite, the Middle District of Florida *denied* Lambert's *pro hac vice* motion "based on the undisputed findings by the court in the *Dominion* case," which the Middle District of Florida found were "problematic" and of such a nature as to justify taking the "[t]he highly unusual step of denying a party the counsel of his choosing." Order at 4, 7-8, *Coomer*, No. 8:24-cv-00008-TPB-SPF (M.D. Fla. June 10, 2025), ECF No. 214 (attached as Ex. 5). That court's findings—which agree that Lambert's conduct is deeply problematic—provide no refuge to

28

Lambert. While the court entered a text order on the same allowing Lambert to attend depositions and receive confidential materials, the court's text order was expressly limited and conditional— e.g., "*at this time*" and so long as Lambert executed an undertaking and abided by the court's orders. Endorsed Order, *Coomer*, 8:24-cv-00008-TPB-SPF (M.D. Fla. June 10, 2025), ECF No. 216 (emphasis added). That posture is markedly different from this one. Lambert was already given the opportunity in this matter to possess confidential materials and abide by this Court's orders—and she failed at every step. Indeed, the Middle District of Florida was not faced with the same direct, repeated, and unending violations of its own orders. And significantly, Lambert was never admitted as counsel in that case to begin with. Contrary to Byrne's and Lambert's suggestion, courts have repeatedly held that once an attorney is disqualified, that attorney may not then participate in the proceedings behind the scenes. *Koehler v. Grant*, 213 B.R. 567, 571 (B.A.P. 8th Cir. 1997) ("Once disqualified, Koehler was categorically precluded from acting on Grant's behalf."); *Cannon v. Loyola Univ. of Chicago*, 676 F. Supp. 823, 829 (N.D. Ill. 1987) (disqualified attorney could not assist his former client "in any manner": he could not "privately advise" her, nor could he "draft a paper for her *pro se* signature," nor could "he give her *any* advice regarding her representation" (emphasis in original)); *see also In re Smith*, 76 F.3d 335, 336 (10th Cir. 1996) (attorney who assisted *pro se* litigants with their briefs after he had been suspended was in violation of his suspension order). This is all the truer here where Lambert continues to resist the Court's clear orders.

The Magistrate Judge acted well within her authority by issuing the March 31 Order. The Court should overrule Byrne's and Lambert's objections claiming otherwise.

### 2.    The Order does not violate Byrne's or Lambert's constitutional rights.

Byrne and Lambert claim, again without citations to any caselaw, that the March 31 Order

29

constitutes an "Unconstitutional Seizure of Defense Materials" and violates Byrne's right to due process. ECF No. 179 at 29, 31-32; ECF No. 180 at 19-22. As indicated by the failure to provide any supporting authority, these assertions are baseless.

The Fifth Amendment to the United States Constitution provides that "No person shall ... be deprived of life, liberty, or property, without due process of law." The crux of Byrne's Fifth Amendment argument appears to be that by ordering "all Dominion-produced documents contained in the repositories of the e-discovery vendors" associated with this matter be sequestered such that individuals may only access those documents if "specifically authorized by this Court," the March 31 Order (1) deprives Byrne of materials in which he has a property interest, and (2) impermissibly hinders his ability to litigate this case. With respect to the former, Byrne does not explain how he could claim a property interest in ***Dominion's*** documents—when those documents were produced to Byrne solely for the purpose of litigating this case, may not be used by Byrne (or his counsel) for any purpose outside of this case, cannot be disclosed to third parties by Byrne (or his counsel), and must be returned or destroyed at the conclusion of this litigation. ECF No. 79 at ¶¶ 1, 25. As to Byrne's point regarding his ability to fairly litigate his defense, his claim of prejudice would be more credible had his counsel ***actually sought permission from the Court to access the sequestered documents***. Byrne's new counsel, Ticktin, has never done so—despite counsel for Dominion advising Ticktin that, in order to access Dominion's discovery materials produced in this case, he must seek leave of court. *See* ECF No. 167-2 at 3-4.

The March 31 Order does not preclude all access to Dominion's documents; it imposes oversight on that access in light of Byrne's and his prior counsel's pattern of misusing confidential Dominion documents produced in litigation. ECF No. 175; *see also* ECF No. 126, Mem. Op. at 61-62. Such control measures fall well within the court's mandate to manage discovery. *See, e.g.,*

*Walker v. Carter*, 2016 WL 6820554, at *2 (S.D.N.Y. Feb. 4, 2016) ("A magistrate judge has broad discretion to manage discovery disputes."). They certainly do not violate due process.

Byrne and Lambert's claim that the Magistrate Judge issued the March 31 Order without notice and opportunity to be heard defies explanation. The March 31 Order orders compliance with the Disqualification Order that Byrne briefed countless times to Magistrate Judge Upadhyaya and twice before this Court—and then the appellate court, and then the Supreme Court. Suffice it to say, Byrne has been heard. As for the rest of the relief ordered by the Magistrate Judge—*i.e.*, the relief related to document sequestration, destruction, and transfer—Dominion filed its proposed document destruction protocol on August 20, 2024. ECF No. 128. That filing proposed the same procedures set forth in the Magistrate Judge's March 31 Order. *Compare* ECF No. 128-2 at 1-2, *with* ECF No. 175, Order at ¶¶ 2-6. On November 1, 2024, Dominion filed a motion before the Magistrate Judge for entry of its proposed protocol. ECF No. 146. In the sixteen months between Dominion's motion and the Magistrate Judge's March 31 Order, Byrne ***never*** responded to Dominion's proposed protocol. ECF No. 175, Order at p.2. And Byrne affirmatively identified Dominion's (unanswered) motion to enter a document destruction protocol to the Court as "Live for the Court's Ruling." ECF No. 167 at 17-18.

In short, Byrne and Lambert had ample opportunity to be heard with respect to the relief ordered on March 31 by the Magistrate Judge. They opted not to say anything. Their silence does not transform the Order into a due process violation. *See Sec. & Exch. Comm'n v. VTR, Inc.*, 410 F. Supp. 1309, 1313 (D.D.C. 1975) ("VTR's failure to avail itself of these opportunities does not alter the fact that it received 'suitable notice and adequate opportunity to appear and be heard,' which is all that due process requires.").

> **3.    The Order does not require violation of the attorney-client or work product privilege.**

31

Contrary to Byrne's and Lambert's assertions, the March 31 Order does not compel disclosure of any documents over which they might choose to claim attorney-client or work product privilege. ECF No. 179 at 24-28; ECF No. 180 at 16-19. Rather, after listing the categories of documents to be produced, the Order states that "[t]o the extent Lambert or Byrne claim any of the aforementioned documents or communications are protected from disclosure by the attorney-client privilege or work-product doctrine," Lambert shall serve a privilege log with sufficient detail to allow Dominion to assess the privilege claim. ECF No. 175, Order at ¶ 6.

Privilege logs are "the universally accepted means of asserting privileges in discovery in the federal courts." *Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1 (D.D.C. 1999). The Federal Rules of Civil Procedure require that, in order to withhold documents on the basis of an asserted privilege, a party must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). In line with this rule, the March 31 Order directs Lambert to provide a log with "sufficient detail of the materials to allow Dominion to assess the claim of privilege." ECF No. 175, Order at ¶ 6(i). Doing so does not require any privilege waiver.

Caselaw provides further guidance on what sort of detail is "sufficient" to assess a privilege claim. Specifically, courts in this District have found that such logs must include at least:

> (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.

*Tex. v. Holder*, 2012 WL 13070059, at *2 (D.D.C. May 21, 2012) (quoting *Alexander v. F.B.I.*, 186 F.R.D. 102, 106 (D.D.C. 1998)); *see also Dir. of Office of Thrift Supervision v. Ernst & Young*, 795 F. Supp. 7, 11-12 (D.D.C. 1992) (ordering privilege log that "shall state the basis upon which

32

the privilege is claimed, identify the specifications of the Subpoena to which the withheld document is responsive, and state the subject matter, number of pages, author, date created, and the identities of all persons to whom the original or any copies of the document were shown or provided"). None of this information discloses the substance of any attorney-client communication. It is necessary, however, for Dominion to evaluate whether any potential privilege claims asserted by Byrne and Lambert have merit. In short, Byrne and Lambert's complaint that requiring a privilege log sufficient to assess their privilege assertions will necessarily require disclosure of protected materials is wholly unfounded.

Byrne and Lambert's further assertions that requiring Byrne's new counsel, Ticktin, to provide information regarding Lambert's and Ticktin's compliance with the Court's prior orders violates work-product protection are equally baseless. ECF No. 179 at 28-29; ECF No. 180 at 29-30. "[T]he attorney work-product doctrine protects documents that were prepared in anticipation of litigation by an attorney or an attorney's agent." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 391 F. Supp. 3d 43, 50 (D.D.C. 2019), *aff'd sub nom. Judicial Watch, Inc. v. United States Dep't of Justice*, 806 F. App'x 5 (D.C. Cir. 2020). Like the attorney-client privilege, "work-product protection shields documents and tangible things from discovery, but does not stop disclosure of underlying facts." *United States ex rel. Barko v. Halliburton Co.*, 2015 WL 13670876, at *3 (D.D.C. Jan. 10, 2015).

None of the information the Order requires Ticktin to provide falls within the protection of the work product privilege. The Order requires disclosure of "whether Lambert is still playing a role in this litigation and, if so, the specific role she is playing," as well as "[w]hether she has drafted, edited, or had any role in the preparation or filing of any of Byrne's filings since Ticktin entered his appearance." ECF No. 175, Order at ¶¶ 10(i), (ii). Leaving aside that Byrne has

33

arguably waived any supposed privilege over responsive information by publicly filing responses (ECF No. 176), the fact of consultation with Lambert on an issue is not privileged, *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 189 (D.D.C. 2014) ("[T]he mere fact of consultation with a lawyer about an issue is generally neither privileged nor protected."); *see also United States v. Legal Services for New York City*, 100 F. Supp. 2d 42, 45 (D.D.C. 2000), *order aff'd and remanded*, 249 F.3d 1077 (D.C. Cir. 2001) (attorney-client privilege typically does not protect "the general purpose of legal work performed" by an attorney). This is all the more true given that Lambert has been disqualified from serving as Byrne's counsel. Information regarding the role she continues to play, if any, is necessary to understanding whether the purpose of that disqualification—preventing Lambert's misconduct from infecting the remainder of the proceedings—is being undermined. The Magistrate Judge is entitled to ensure compliance with her own orders. *Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*, 2023 WL 2228173, at *38 (E.D. Cal. Feb. 24, 2023) ("In requiring such a filing, the Court is exercising its inherent authority to monitor compliance with its own orders."); 56 Am. Jur. 2d Motions, Rules, and Orders § 57 ("[A] court has inherent judicial authority to enforce its own orders....").

The Order also requires Ticktin to disclose "[w]hether Ticktin has accessed any of the documents Dominion has produced in this litigation and, if so, where he obtained access to those documents." ECF No. 175, Order at ¶ 10(iii). Ticktin has provided a partial response, claiming that Ticktin himself has "not yet accessed any Dominion-produced production, though others in his office may have done so"—despite a Court Order barring access absent this Court's authorization (which has never been sought or granted). ECF No. 176 at 3. It is not clear from Ticktin's response whether he himself disclaims having accessed any Dominion-produced documents or only disclaims accessing the full "production" housed by third-party vendors. (For

instance, it is not clear from his response whether he has accessed documents provided by Lambert to, and published by, Sheriff Dar Leaf.) Either way, Byrne cites no authority supporting the proposition that whether counsel has reviewed a party's litigation documents and how he accessed them is protected or privileged. ECF No. 179 at 28-29; *see United States v. ISS Marine Services, Inc.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012) ("It is the proponent of the work-product protection that bears the burden" of demonstrating that it applies). Rather, Byrne generally cites Federal Rule of Civil Procedure 26, which provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," and which further requires that if production of such material is nevertheless ordered, a court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(A)-(B). Ordering Ticktin to provide information about the facts of his involvement in this litigation does not require the production of any document or thing prepared for litigation; and whether and how he has accessed documents does not disclose any protected mental impressions or theories. That information is related to an attorney's thoughts in **some** manner— *i.e.*, the fact that Ticktin necessarily had to think about how he was accessing documents—does not itself render information protected: "Where an attorney's mental impressions are those that 'a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything worthy of the description "legal theory,"' those impressions are not opinion work product." *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 153 (D.C. Cir. 2015).

Byrne's reliance on *Jinks-Umstead v. England*, 227 F.R.D. 143 (D.D.C. 2005), does not help him. ECF No. 179 at 28-29. To the contrary, that case **rejected** a party's claim of work product protection, holding that facts regarding when a plaintiff and her counsel learned certain

35

information related to the litigation "simply is not protected by the work-product doctrine." *Jinks-Umstead*, 227 F.R.D. at 153. Similarly, facts regarding whether and how Ticktin has accessed Dominion's information are not themselves protected work product. This is particularly so in light of the Magistrate Judge's Order, predating Ticktin's appearance in this case, restricting access to Dominion's documents absent court authorization. ECF Nos. 77, 125. The work product privilege is intended to safeguard "the integrity of the adversary trial process itself." *Bagwell v. U.S. Dep't of Justice*, 311 F. Supp. 3d 223, 234 (D.D.C. 2018) (citation omitted). It would be anathema to that purpose to allow Byrne and his counsel to violate court orders and withhold the information necessary to assess the violation.[4]

### 4.    The Order complies with the Federal Rules of Civil Procedure.

Byrne complains that the March 31 Order violates Federal Rule of Civil Procedure 37 because, according to Byrne, it imposes a "sanction" absent "express findings of bad faith or willful misconduct" and without affording Byrne "a meaningful opportunity to be heard." ECF No. 179 at 30-31; *see also* ECF No. 180 at 20-21 (similar, but without invoking Rule 37). Byrne is incorrect on both fronts. First, requiring compliance with the Court's prior Disqualification Order does not impose any new sanction. To be sure, disqualification of counsel constitutes a sanction, but the Magistrate Judge's Disqualification Order has already been litigated, repeatedly. *See* ECF Nos. 144, 154; *see also* ECF No. 175, Order at pp.1-2; ECF No. 126, Mem. Op. at 57 ("The Court has now held two multi-hour hearings and reviewed over 2,500 pages of briefs and exhibits related to the violations of the Protective and Status Quo Orders and Lambert's other misconduct."). As for the document protocol proposed by Dominion and implemented by the

---

[4] Byrne and Lambert argue that the Magistrate Judge did not offer any findings to support a privilege waiver under Federal Rule of Evidence 502. ECF No. 179 at 27-28; ECF No. 180 at 18-19. This misses the point: the Order does not require waiver of any potential privilege at all.

36

March 31 Order, Byrne had an opportunity to respond to Dominion's motion to enter that protocol and declined to do so. ECF No. 175, Order at p.2. Second, the relief ordered here is supported by the Court's detailed findings regarding Lambert's "bad faith" and willful and ongoing misconduct. *See* ECF No. 126, Mem. Op. at 40-43, 56-61.

Byrne further criticizes the Order for purportedly violating Rule 26 by failing to consider more "narrowly tailored protective measure[s]" than sequestration of Dominion's documents. ECF No. 179 at 32-33; *see also* ECF No. 180 at 2, 9 (similar). Once again, Byrne's argument doubly fails. First, Byrne mischaracterizes the relief provided in the March 31 Order. Again, that Order does not purport to "exclude the defense from access to materials necessary to litigate," ECF No. 179 at 33, but rather imposes a prerequisite to accessing Dominion's litigation materials—namely, court approval—in an effort to ensure the Court's prior Orders are followed. Byrne's new counsel has never even ***requested*** the requisite approval to access Dominion's documents. Second, Byrne cannot criticize the Magistrate Judge for failing to consider alternatives to Dominion's proposed document protocol when Byrne had months to submit alternatives and declined to offer any. *See* ECF No. 175, Order at p.2.

Byrne's suggestion that the Magistrate Judge should have "enforced a protective order with specific conditions on use and dissemination" (ECF No. 179 at 33) is deeply ironic: that is exactly what the Magistrate Judge's March 31 Order does. Byrne's prior counsel repeatedly and willfully violated the stipulated protective order. *See generally* ECF Nos. 126, 144, 154. And the relief set out in the March 31 Order seeks to ensure that the protective order is not rendered a complete dead letter. While Byrne claims the Order lacks an explanation for its requirements, ECF No. 179 at 33, he again ignores the detailed reasoning set forth in the Magistrate Judge's Memorandum Opinion regarding disqualification, which accompanied the original order directing Dominion to propose

37

the document protocol effectuated by the March 31 Order. ECF Nos. 125, 126.

### 5.    Lambert's additional arguments for reversal fail.

Absent any valid argument on the merits, Lambert argues that the Court cannot compel her to return Dominion's documents because the documents contain evidence of "the most significant crimes committed in US history" and, accordingly, she has an "obligation" to disregard the Court's prior orders. ECF No. 180 at 26-29. In making her fantastical claims, she goes so far as suggesting that Magistrate Judge Upadhyaya could be subject to criminal arrest. ECF No. 180 at 27. The central thesis of her claims—that Dominion is a criminal organization that conspired to steal the 2020 election—is the same one that Lambert has repeatedly raised in this litigation and elsewhere. *See, e.g.,* ECF No. 126, Mem. Op. at 9-10, 15, 44. It is the same claim that has been repeatedly debunked. *See, e.g., US Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 2730567, at *21 (Del. Super. Ct. Mar. 31, 2023.) ("***The evidence developed in this civil proceeding demonstrates that is CRYSTAL clear that none of the Statements relating to Dominion about the 2020 election are true.***") (emphasis in original); *US Dominion, Inc. v. Newsmax Media, Inc.*, 2025 WL 1092289, at *17 (Del. Super. Ct. Apr. 9, 2025) (granting "summary judgment in Dominion's favor regarding falsity" of lies Newsmax published about Dominion and the 2020 Election); ECF No. 113-10, Ex. 10 (statement by Michigan Attorney General that "[b]ased on a thorough review of all relevant material, it is clear a criminal investigation [into Dominion CEO John Poulos] is not warranted"); ECF No. 1 at ¶¶ 58-70 (cataloguing audits, recounts, and public statements confirming that the 2020 election was not stolen). Lambert's renewed attempt to justify the misconduct that led to her disqualification—in addition to being procedurally improper—fails for all the same reasons the Magistrate Judge has already explained in the Disqualification Order affirmed by this Court. ECF No. 126, Mem. Op. at 43-49; ECF No. 144, Order at 5. Nor do her baseless claims of criminality

38

provide any basis for ignoring the Court's March 31 Order to return Plaintiffs' documents.

**C.    The Court should exercise its inherent and statutory authority to sanction Byrne and his counsel for their willful, ongoing violations of court orders.**

Byrne and Lambert—and now Ticktin—have repeatedly demonstrated a wholesale disregard for the litigation process and for the Court's orders. Their instant objections to the Magistrate Judge's March 31 Order represent a frivolous attempt to evade compliance with reasonable protocols implemented by the Magistrate Judge as a consequence of Byrne's and his counsel's own litigation misconduct. Accordingly, Dominion respectfully requests that the Court award Dominion its costs and attorneys' fees incurred by responding to these objections. Dominion further requests that the Court enter a final deadline for Byrne and Lambert to comply with the March 31 Order—affidavits they were first directed to provide in August 2024—and impose a daily fine should Byrne and Lambert fail to submit fully compliant affidavits and the requisite document production and any accompanying privilege log by that deadline. Finally, in light of his continuation (and facilitation) of Lambert's improper behavior and his own history of litigation misconduct, Dominion respectfully requests that the Court enter an Order to Show Cause why Ticktin should not be disqualified.

*First*, Byrne and Lambert should be ordered to pay Dominion's costs and attorneys' fees related to responding to their instant objections. A federal court has the "inherent authority to impose sanctions necessary to achieve the orderly and expeditious disposition of cases before it." *Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112, 119 (D.D.C. 2016), *aff'd sub nom. Hall v. Dettling*, 2017 WL 2348158 (D.C. Cir. May 17, 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991)). Courts also have authority under 28 U.S.C. § 1927 to sanction attorneys "who so multiplies the proceedings in any case unreasonably and vexatiously." Before ordering sanctions under § 1927, a court must find "evidence of recklessness, bad faith, or improper motive"

39

by the offending attorney. *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 906 (D.C. Cir. 1998) (citation omitted). Bad faith "can be proven indirectly through evidence of objective actions that lead to an inference of subjective intent—such as filing a document that lacks a colorable basis in law or fact." *Robertson v. Cartinhour*, 883 F. Supp. 2d 121, 129 n.26 (D.D.C. 2012), *aff'd*, 554 F. App'x 3 (D.C. Cir. 2014).

Both Byrne's and Lambert's conduct rise to the level of bad faith such that this Court's inherent authority—and, in the case of Lambert, its power under § 1927—support imposition of Dominion's attorneys' fees and costs for responding to their baseless appeals. As explained above, the March 31 Order does two things: (1) it sets a deadline for submission of affidavits ordered in August 2024 as part of the Magistrate Judge's Disqualification Order, and (2) enters a document protocol pursuant to Dominion's uncontested motion. *See* ECF No. 175. Having already objected to the Disqualification Order, lost the objection, and appealed that loss all the way to the Supreme Court, Byrne and Lambert have no possible good faith basis for challenging it now. *See Robertson*, 883 F. Supp. 2d at 129 (sanctions "clearly warranted" where an attorney "defied the Court by pursuing baseless claims and arguments"). And as for the document protocol, neither Byrne nor Lambert contested Dominion's proposal embodied in the March 31 Order. To the contrary, without ever filing *any* response or alternative, Byrne flagged Dominion's entry of a document protocol as a pending motion ready for the Magistrate Judge's review. ECF No. 167 at 17-18. Having openly waived their opportunity to respond, their objections at this juncture are plainly frivolous.

However, the evidence of recklessness and bad faith goes much further than the legal shortcomings of their filings. Both Byrne and Lambert have a demonstrated history of brazenly flouting court orders. *Supra* §II(A)-(C), (F). Furthermore, Lambert's recent filing repeats the same *ad hominem* attacks on Dominion that Byrne and Lambert have expounded since the outset of this

40

litigation, despite their lack of any factual support or legal relevance. ECF No. 180 at 26-29; *Hall*, 219 F. Supp. 3d at 120 (sanctioning attorney under § 1927 where his "filings did not merely seek the advancement of meritless positions, but they were also composed of largely irrelevant diatribes" against the opposing party "that 'utterly' lacked any 'colorable basis' in law"). Lambert goes so far as to cite an irrelevant Executive Order entered against Dominion's counsel—which has been permanently enjoined as unconstitutional, *Susman Godfrey LLP v. Executive Office of the President*, 789 F. Supp. 3d 15, 58 (D.D.C. 2025)—and suggests Magistrate Judge Upadhyaya could be criminally prosecuted for her orders. ECF No. 180 at 27. Lambert has no colorable, good faith basis for continuing to inject debunked, dangerous rhetoric about Dominion into the public record, much less spurious claims of criminality on the part of Magistrate Judge Upadhyaya.

Dominion has been highly prejudiced by Byrne and Lambert's extended bad faith litigation conduct. And their latest challenges demonstrate that Byrne and his counsel have no intention of reforming. The Court should exercise its inherent and statutory authority to require them to pay Dominion's costs and attorneys' fees for responding to this most recent iteration of their abuse of the litigation process.

*Second*, the Court should fix a new deadline for the submission of Byrne's and Lambert's affidavits and the accompanying document production and privilege logs, and should impose a presumptive daily fine on each of Byrne and Lambert in the amount of $5,000 in the event they fail to fully comply with that deadline, absent a showing of good cause for any delay. *See Hall*, 219 F. Supp. 3d at 119 (actions that demonstrate "bad faith or an egregious disrespect for the Court or judicial process" may incur sanctions, "including contempt citations, fines" and "such other orders and sanctions as the court finds necessary" (citation omitted)). Once again, Byrne and Lambert have a history of violating judicial orders and demonstrating complete disregard for the

41

Court. *See supra* §II(A)-(C), (F).

Byrne's instant appeal and related filings illustrate the point. As Dominion recently noted in another brief: despite her disqualification as Byrne's counsel, Lambert appeared as the author in the metadata of briefs filed by Byrne after her disqualification. ECF No. 173 at 6-7. The metadata for Byrne and Ticktin's recent filings—specifically, Byrne's notice of intent to file objections (ECF No. 177), his appeal of the March 31 Order (ECF No. 179), and Ticktin's response to the Court's March 31, 2026 Order (ECF No. 176)—now lists the author as "Richard P. Astley." As the Court might know, "Richard P. Astley" is the singer featured in a popular meme that involves hiding a link to one of Astley's songs in an unexpected place, commonly referred to as a "Rick Roll."[5] By changing the filing's metadata to "Rick Roll" anyone investigating its authorship, Ticktin, Lambert, and Byrne are thumbing their noses at Dominion and this Court.

This litigation is not a joke. The harm suffered by Dominion's employees as a consequence of Byrne and Lambert's conduct is not funny. And of course, this Court's orders are not a joke. The Court has invested substantial resources to fairly adjudicate this case. Given the ample evidence of Byrne's and Lambert's bad faith conduct with respect to the Disqualification Order and their repeated attempts to evade the corresponding relief embodied in the March 31 Order, *see supra* §II(D), (F)—now being carried on by Ticktin—the Court should set a final deadline for submission of their respective affidavits and impose a presumptive daily sanction of $5,000 for each of them for yet further delay in complying.

The $5,000 per individual per day sanction is necessary to ensure Byrne's and Lambert's future compliance with this Court's orders because Byrne, by his own admissions, is a billionaire with "unlimited funds" and has "more money than God behind [him]." Indeed, in a rant about

---

[5] *See* https://en.wikipedia.org/wiki/Rickrolling.

Dominion's counsel—a rant that included Mafia-style threats featuring piano wires and blowtorches for anyone, including judicial officers, who defy him—Byrne told his audience:

> In fact, I'm going to say something because they raised something in court in D.C. Dominion has some female attorney who got all choked up in court. I want to tell that woman, try to be less emotional.... The Dominion has—Dominion, you should talk to Goldman Sachs. Goldman Sachs thought they were going to make me back down. I went $35 million. I spent 34 million fighting them. ***By the way, I now have unlimited funds.*** I'm over here in Baku, Azerbaijan. There are a lot of people who don't want to see the United States fall. I'll put it that way. ***I've got more money than God behind me. You want to fight it out, Dominion? I'll fight this out. I've got people behind me with more money than God.*** And they don't want to see the US fall, so, you know, you make your own call.

Ex. 6 at 135:13-136:17.

*Third*, the Court should enter an Order to Show Cause why Peter Ticktin should not be disqualified. The bar for disqualification is undoubtedly high: a court must find "truly egregious misconduct likely to infect future proceedings." *Koller*, 737 F.2d at 1056. Ticktin's conduct meets that standard. As described in detail above, during his tenure on this case Ticktin has made clear that he will continue in the footsteps of his disqualified predecessor. *See supra* §II(E). Indeed, he has openly admitted that he sees no problem with allowing Lambert to litigate this case in the background, ECF No. 176, notwithstanding her "egregious" conduct, "blatant disregard" for the Court, and consequent disqualification, ECF No. 126, Mem. Op. at 3, 61. As for his part, Ticktin has made no effort to litigate this case on the merits. Ticktin kicked off his tenure in this case by leveling unprofessional accusations at Dominion's counsel and making vague claims of a "conflict of interest" without any articulable basis for doing so. ECF No. 167-1, Ex. A at 4-6 (Ticktin email to Dominion's counsel stating, "I can understand that you think you can sit in judgment, considering that you are representing a company which was so important in that it was instrumental in taking over the United States for 4 years"; "I guess I come from an old school, as I am from a different world, one which existed long ago, when Presidential Elections were not fixed"; and

43

"Let's not forget who the real criminal is here"). For all his complaints regarding the document sequestration requirements, he has never actually sought permission to access them. Rather, his strategy has been one of accusations, misdirection, and delay. Notably, however, while no one in Ticktin's office currently has **permission** to view Dominion's document production, Ticktin openly admits that they may have done so anyway. ECF No. 176 at 3.

None of this should come as a surprise. His extensive history of misconduct before other courts detailed above strongly suggests that, should he remain counsel in this case, he is no more likely than Byrne's prior counsel to comply with the Court's orders—including those regarding confidential handling of Dominion's litigation documents. *See supra* §II(E).

Byrne has repeatedly, through his counsel, abused judicial process; and it appears he retained Ticktin as someone with and through whom he could continue that pattern. Every indication is that Ticktin's conduct has and will infect the judicial process in exactly the same manner as Lambert. The Court should enter an Order to Show Cause why Ticktin should not similarly be disqualified.

## V.    CONCLUSION

For the foregoing reasons, the Court should overrule Byrne's and Lambert's objections and affirm the Magistrate Judge's March 31 Order. The Court should additionally award Dominion its costs and attorneys' fees for responding to those appeals; set a final date for submission of the affidavits, document production, and privilege logs (if any) required by the March 31 Order; impose a presumptive $5,000 daily fine on each of Byrne and Lambert for failure to comply with that deadline absent a showing of good cause; and enter an Order to Show Cause why Peter Ticktin should not be disqualified as counsel in this case.

44

Dated: May 5, 2026                          Respectfully submitted,

                                   By:    */s/ Davida Brook*
                                          Davida Brook (D.C. Bar No. CA00117)
                                          **SUSMAN GODFREY L.L.P.**
                                          1900 Avenue of the Stars, Suite 1400
                                          Los Angeles, CA 90067
                                          Tel: (310) 789-3100
                                          dbrook@susmangodfrey.com

                                          Stephen Shackelford, Jr. (D.C. Bar No. NY0443)
                                          Eve Levin (D.C. Bar No. 1672808)
                                          George El-Khoury *(Admitted pro hac vice)*
                                          **SUSMAN GODFREY L.L.P.**
                                          One Manhattan West, 50th Floor
                                          New York, NY 10001
                                          Tel: (212) 336-8330
                                          sshackelford@susmangodfrey.com
                                          elevin@susmangodfrey.com
                                          gel-khoury@susmangodfrey.com

                                          Jonathan Ross (D.C. Bar No. TX0027)
                                          **SUSMAN GODFREY L.L.P.**
                                          1000 Louisiana St., Suite 5100
                                          Houston, TX 77002
                                          Tel: (713) 651-9366
                                          jross@susmangodfrey.com

                                          Edgar Sargent (*Admitted pro hac vice*)
                                          Katherine Peaslee (*Admitted pro hac vice*)
                                          **SUSMAN GODFREY L.L.P.**
                                          401 Union Street, Suite 3000
                                          Seattle, WA 98101
                                          Tel: (206) 516-3880
                                          esargent@susmangodfrey.com
                                          kpeaslee@susmangodfrey.com

                                          *Attorneys for Plaintiffs*

45

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/ Davida Brook*
Davida Brook

46