IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.: 1:21-cv-02131-CJN-MAU

LIBERTY VOTE HOLDINGS
INC. et al.,

       Plaintiffs,

v.

PATRICK BYRNE,

       Defendant.

_____/

**DEFENDANT'S REPLY IN SUPPORT OF
OBJECTION TO THE MAGISTRATE JUDGE'S ORDER**

The Defendant, Patrick Byrne, by and through undersigned counsel, hereby files this, his Reply in Support of Objection to the Magistrate Judge's March 31, 2026 Order, and states:

**Introduction**

The March 31, 2026 Order issued by Magistrate Judge Moxila A. Upadhyaya exceeds her statutory authority, violates the Fifth Amendment Due Process Clause, breaches attorney-client privilege and work product protections, and fails to comply with the Federal Rules of Civil Procedure. The Plaintiffs' Opposition (DE 183) does not cure these fundamental defects. For the independent reasons set forth below, this Court should vacate the March 31 Order and deny the Plaintiffs' request for

sanctions.

## Statement of Facts

The March 31 Order imposes a comprehensive regime of coercive measures affecting Byrne's ability to defend himself and communicate with counsel. The Order requires sworn affidavits from Byrne and Lambert detailing their handling of Dominion's documents. [DE 175]. The Order mandates that Lambert produce all documents and communications discussing or referencing Dominion Litigation Documents or Dominion on this matter.

The Order requires sequestration of electronic documents with third-party vendors (iDiscovery Solutions and Innovative Driven) with access denied to Byrne, Lambert, and anyone associated with them unless specifically authorized by the court. *Id*. The Order provides no standards, timeline, or procedure for seeking such authorization.

The Order requires Lambert to provide a detailed privilege log with sworn affidavit for any documents claimed to be protected by attorney-client privilege or work product doctrine. The Order compels current counsel Ticktin to disclose whether Lambert is still playing a role in the litigation, whether she drafted or edited any of Byrne's filings, and whether Ticktin accessed Dominion-produced documents. The underlying Disqualification Order was based on Lambert's violations of protective and status quo orders, including publicly filing Dominion's

2

confidential discovery documents, providing unrestricted access to Dominion's discovery database to a Michigan sheriff, discussing confidential information in media interviews, and colluding with third parties to disseminate protected materials. [DE 126].

## Argument

### A. Byrne's Objection is Procedurally Proper and Triggers De Novo Review

1. The March 31 Order Is Dispositive in Effect

The Plaintiffs argue that the March 31 Order is a nondispositive matter within the magistrate's authority. This characterization is incorrect. The Order is dispositive in effect because it materially impairs Byrne's substantive rights and operates as coercive sanctions or injunctive relief.

The statutory framework distinguishes between two categories of pretrial matters. Pursuant to 28 U.S.C. § 636, magistrate judges may hear and determine nondispositive pretrial matters, with district court review limited to whether the order is clearly erroneous or contrary to law. By contrast, when a magistrate judge is assigned a pretrial matter dispositive of a claim or defense, the magistrate must enter only a recommended disposition, not a final order, and the district judge must determine de novo any part properly objected to. F.R.Civ.P. 72.

The D.C. Circuit has explained that this distinction is rooted in constitutional concerns about Article III judicial power. *Baylor v. Mitchell Rubenstein & Assocs.,*

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

*P.C.,* 429 U.S. App. D.C. 221, 228, 857 F.3d 939, 946 (2017).  A dispositive motion is one that, if granted, would result either in the determination of a particular claim on the merits or elimination of such a claim from the case.  *Campaign Legal Ctr. v. Values*, 710 F. Supp. 3d 35, 47 (D.D.C. 2024).

The March 31 Order is dispositive in effect for several independent reasons.

First, the Order mandates sequestration of materials and denial of access via vendors.  Such access restrictions are akin to injunctive relief-they affirmatively restrict a party's ability to use or access information.  Injunctive relief is expressly listed as a dispositive matter that magistrate judges cannot finally determine.  28 U.S.C. § 636.  The Order does not merely restrict disclosure to third parties; it restricts Byrne's own access to discovery materials necessary to prepare his defense.  This is not a standard protective order but rather an extraordinary restriction that materially impairs Byrne's ability to litigate.

Second, the Order compels current counsel Ticktin to make disclosures about Lambert's role, drafting activities, and document access.  This implicates attorney-client privilege and counsel's professional obligations-matters that affect the fundamental conduct of litigation and cannot be finally decided by a magistrate without de novo review.  Compelling counsel to provide testimony regarding their own conduct and the conduct of prior counsel is not a routine pretrial matter but rather an extraordinary measure that affects core rights.

4

Third, the Order requires a privilege log and sworn affidavit, which is not a mere procedural scheduling matter but a substantive requirement that affects the scope of discovery and the assertion of privilege.  When a party asserts privilege, the resolution of that assertion determines what information must be disclosed and what remains protected.  Such adjudication materially affects the parties' ability to prepare their cases and protect confidential communications.

Fourth, the Order mandates production of all documents and communications discussing or referencing Dominion Litigation Documents or Dominion on this matter.  This extends beyond typical discovery scheduling and imposes affirmative obligations that affect the parties' substantive rights.  The breadth of these categories necessarily sweeps in protected materials and requires adjudication of privilege claims.

These measures are not merely procedural scheduling directives.  They are coercive orders that restrict access, compel disclosures, and impose affirmative obligations that have a direct and substantial effect on Byrne's ability to defend himself.  Under the D.C. Circuit's framework, such orders are functionally dispositive and fall outside the magistrate's authority to finally determine.  *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 429 U.S. App. D.C. 221, 228-29, 857 F.3d 939, 946-47 (2017).

5

2. <u>Local Rule Concession Cannot Supply Magistrate Authority</u>

The Plaintiffs argue that because Byrne failed to oppose Dominion's motion, the motion was properly treated as conceded under L.R. 7(b). This argument conflates two distinct concepts: whether a party has conceded the merits of a motion, and whether a magistrate judge possesses authority to enter a particular order.

A local rule may permit a court to treat an unopposed motion as conceded for purposes of deciding the motion on the merits. However, concession of a motion does not grant a magistrate judge authority to enter an order that exceeds the bounds of federal statute. The magistrate's authority is defined by 28 USC § 636, not by whether a party opposed a motion. Even if Dominion's motion was conceded, the magistrate could only enter an order that was within the magistrate's statutory authority.

Federal courts have an independent obligation to ensure that they possess jurisdiction and that judicial officers act within their delegated authority. This obligation cannot be waived by party silence or concession. The authority of a magistrate judge is a matter of federal law that implicates the structural separation of powers between Article III judges and magistrate judges. *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 429 U.S. App. D.C. 221, 228, 857 F.3d 939, 946 (2017). Parties cannot waive these structural protections through silence.

6

### 3. Byrne Did Not Waive His Right to Object

The Plaintiffs argue that Byrne waived his right to object by failing to oppose Dominion's motion. This argument fails because Byrne's failure to oppose constitutes forfeiture, not waiver, and because the procedural posture precludes any inference of intentional waiver.

The distinction between waiver and forfeiture is critical. Waiver requires express, affirmative, decisive, and unequivocal conduct demonstrating intentional relinquishment of a known right. *In re United States*, 143 F.4th 411, 432 (D.C. Cir. 2025). Forfeiture, by contrast, is merely the failure to make timely assertion of a right. *United States v. Olano*, 507 U.S. 725, 732-34, 113 S. Ct. 1770, 1777 (1993). Waiver must be knowing and voluntary, made with knowledge of the relevant facts.

Byrne's failure to oppose Dominion's motion constitutes forfeiture, not waiver. Byrne did not affirmatively relinquish the right to challenge the magistrate's authority; Byrne simply failed to oppose the motion. Moreover, the August 23, 2024 stay was entered specifically to preserve Byrne's appellate rights. This stay created a legal framework within which the parties were operating. The procedural posture-with a stay in place designed to preserve rights-precludes any inference that Byrne's silence constituted intentional relinquishment of a known right.

Even if Byrne's silence could be characterized as waiver, parties cannot waive the statutory limits on magistrate authority. These limits are structural protections

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

designed to ensure that certain matters are decided by Article III judges. *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 429 U.S. App. D.C. 221, 228, 857 F.3d 939, 946 (2017). The magistrate's authority is not a personal right of the parties; it is a structural protection that implicates the separation of powers. Byrne cannot waive this protection through silence, and Dominion cannot rely on Byrne's silence to expand the magistrate's authority beyond statutory bounds.

**B. The March 31 Order Violates Due Process and the Federal Rules of Civil Procedure**

1. <u>The Order Violates Due Process by Imposing Severe Restrictions Without Adequate Procedural Safeguards</u>

The Fifth Amendment provides that no person may be deprived of property without due process of law. The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976).

The March 31 Order operates as a severe coercive measure that directly impairs Byrne's fundamental right to defend himself and to communicate with counsel. The Order sequesters documents with vendors, denies access to Byrne and counsel absent court authorization, compels affidavits and production, requires privilege logs with affidavits, and compels disclosures by current counsel. These measures are not merely procedural housekeeping; they directly impair Byrne's ability to prepare his defense.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

2.  Prior Notice of Disqualification Does Not Constitute Adequate Notice.

The Plaintiffs argue that Byrne had notice via earlier filings regarding disqualification and prior protective orders.  This argument conflates notice of one legal regime with notice of a fundamentally different and more restrictive regime. Prior notice that Lambert might be disqualified does not provide notice that documents would be sequestered with vendors, that access would be denied to Byrne and counsel, that current counsel would be compelled to make disclosures, that affidavits would be compelled, or that a privilege log would be required with supporting affidavits.

The March 31 Order imposes a new and substantially more restrictive regime than any prior order.  Due process requires notice of the specific deprivation at issue, not merely notice of a general category of potential restrictions.  The Order provides no clear statement of what access restrictions apply, under what circumstances access may be sought, what timeline applies, or what standards the court will apply in considering access requests.

3.  The "Seek Leave to Access" Mechanism Does Not Satisfy Due Process

The Plaintiffs suggest that Byrne's ability to seek court authorization for access satisfies due process.  This argument is insufficient.  First, the opportunity to seek leave to access is not a substitute for due process before the initial deprivation. Due process requires notice and opportunity to be heard before deprivation occurs,

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

not merely an opportunity to petition for relief after deprivation has been imposed.

Second, the Order provides no standards, timeline, or procedure for seeking access. Without clear standards, Byrne cannot meaningfully exercise the right to seek access, and the court cannot consistently apply the Order. This creates an arbitrary and standardless regime that fails to provide the procedural regularity due process demands.

Third, the Order effectively reverses the presumption regarding access to documents. Ordinarily, discovery is presumed to be available unless a protective order is narrowly tailored to protect against specific harms. The March 31 Order reverses this presumption, denying access unless the court grants permission. This reversal, without clear standards or findings supporting such a dramatic shift, violates due process.

4. The Order Lacks Findings Supporting Deprivation

The March 31 Order does not contain findings explaining why the severe restrictions are necessary or proportionate to any identified harm. Due process requires that when a court imposes severe restrictions on fundamental rights, the court must make specific findings explaining the necessity and proportionality of the restriction. The Order does not explain why sequestration with vendors is necessary, what specific harm would result from allowing Byrne or counsel to access documents, why less restrictive alternatives would be inadequate, or what standards

10

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

will govern future access requests.

**C. The Court Should Avoid Construing or Enforcing the Protocol in a Manner That Compels "Concealment" or "Cover Up" of Potential Evidence**

Section 1519 criminalizes knowingly altering, destroying, mutilating, concealing, or covering up records or documents with intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of a federal department or agency, or in relation to or contemplation of such a matter.  18 USC § 1519.

The Supreme Court has recognized that § 1519 reaches acts intended to impede a federal investigation or proceeding even where the investigation is not on the verge of commencement.  *Pugin v. Garland*, 599 U.S. 600, 605, 143 S. Ct. 1833, 1840 (2023).

Against that statutory backdrop, the March 31 Order's protocol should not be construed or enforced to require conduct that would amount to conceal[ing] or cover[ing] up records or documents within the meaning of § 1519.  The Order requires Lambert to produce broad categories of documents and communications to Dominion and then sequester electronic materials with third-party vendors under an access-denial regime.  If the practical effect of that regime is to remove materials from the defense's access and place them under the control of Dominion and/or vendors in a manner that impairs availability for any federal investigative purpose,

11

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

the Court should avoid that construction because it would place counsel and parties in tension with § 1519's prohibition on concealment or cover-up undertaken with obstructive intent.  18 U.S.C. § 1519.

Even if the Court's intent is civil discovery management, the Court should ensure the protocol does not compel steps that could be characterized as concealment or cover-up of records "in relation to or contemplation of" a federal matter.  18 U.S.C. § 1519.  The Supreme Court's discussion of § 1519 underscores that the statute is aimed at preventing the destruction or concealment of evidence that would frustrate official inquiries.  *Pugin v. Garland*, 599 U.S. 600, 605, 143 S. Ct. 1833, 1840 (2023).  Accordingly, any "removal" or "destruction" concept embedded in the protocol should be clarified to preserve evidence and maintain availability for lawful processes, rather than to eliminate or hide it.  *Id*.

### D. The Protocol Also Risks Impairing the "Availability" of Records for Use in an "Official Proceeding" Under 18 U.S.C. § 1512(c)(1)

Section 1512(c)(1) imposes liability on anyone who corruptly alters, destroys, mutilates, or conceals a record, document, or other object with intent to impair the object's integrity or availability for use in an official proceeding. 18 U.S.C. § 1512(c)(1); *See also United States v. Riley*, 468 U.S. App. D.C. 235, 240, 115 F.4th 604, 609 (2024).  The Supreme Court has emphasized that, for § 1512, an "official proceeding need not be pending or about to be instituted at the

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

time of the offense." *Pugin v. Garland*, 599 U.S. 600, 605, 143 S. Ct. 1833, 1840 (2023).   Thus, where a protocol requires removal, transfer, sequestration, or destruction of documents, the Court must ensure it does not compel conduct that impairs the integrity or availability of records for use in an official proceeding, including one not yet pending.  *Id*.  The March 31 Order requires production to Dominion and then sequestration with vendors under an access-denial regime.  If the protocol is implemented in a way that results in records becoming unavailable to lawful process (including potential proceedings), the Court should modify or clarify the protocol to avoid any implication that it is directing concealment or impairment of availability.  *United States v. Riley*, 468 U.S. App. D.C. 235, 240, 115 F.4th 604, 609 (2024).

**E.  The Court Should Clarify That Preservation Is Required**

Because § 1519 expressly covers "destroy[ing]" and "conceal[ing]" records with obstructive intent, and § 1512(c)(1) covers "conceal[ing]" records with intent to impair availability for an official proceeding, the Court should expressly clarify that the protocol is a preservation-and-control mechanism, not a destruction or concealment directive.  *United States v. Riley*, 468 U.S. App. D.C. 235, 240, 115 F.4th 604, 609 (2024).

The March 31 Order already contains preservation language (incorporating the Status Quo Order's preservation requirement).  However, the protocol's produce

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

to dominion plus sequester plus no access absent court authorization structure creates a risk that the defense will be deprived of meaningful access while Dominion receives the materials, which could be argued to impair availability in practice. To avoid any construction that could be viewed as compelling concealment or impairment of availability, the Court should modify the protocol to ensure: 1) preservation of all materials in a forensically sound manner; 2) continued availability for lawful process, including any official proceeding; and 3) clear, prompt procedures for access requests so that sequestration does not function as practical unavailability.

Accordingly, to the extent Dominion seeks removal or destruction of documents, which in parallel relate to Byrne's defense of truth, the Court should deny that request or modify it to ensure the protocol cannot be implemented in a manner that would be understood as directing concealment, cover-up, or impairment of availability of records that could be relevant to federal investigative or proceeding-related purposes.

### F. The Order Fails to Comply with Federal Rules of Civil Procedure 26 and 37

<u>Rule 26(c) Requires Good Cause and Narrow Tailoring</u>

F.R.Civ.P. 26 permits courts to issue protective orders upon a showing of good cause to protect a party or person from annoyance, embarrassment, oppression,

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

or undue burden or expense. The good cause standard requires an individualized balancing of the interests present in a particular case. Critically, protective orders must be narrowly tailored to protect against the specific harm identified.

The March 31 Order denies access to Byrne, counsel, and associates absent court authorization-a near-total access denial-yet provides no findings explaining why a standard protective order with confidentiality designations would be inadequate. The Order does not articulate what specific harm it seeks to prevent through the access-denial regime. Without identification of the harm, the court cannot perform the individualized balancing required by Rule 26(c).

Rule 37 Requires Findings of Willfulness, Prejudice, and Proportionality

The March 31 Order, by imposing severe restrictions on access to documents and compelled disclosures, operates as a sanction under F.R.Civ.P. 37. The central requirement of Rule 37 is that any sanction must be just, which requires that the district court consider whether lesser sanctions would be more appropriate for the particular violation. *Bonds v. District of Columbia*, 320 U.S. App. D.C. 138, 93 F.3d 801, 807-08 (1996).

The March 31 Order does not contain findings addressing the Rule 37 predicates necessary to justify severe sanctions. The Order does not find that Byrne or counsel willfully or in bad faith violated any prior order. The Order does not explain what prejudice Dominion has suffered or would suffer from allowing Byrne

15

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

or counsel to access documents.  The Order does not explain why lesser sanctions would be inadequate.  The Order does not explain how the severe access-denial regime is proportionate to any identified violation.

Dismissal and other litigation-ending sanctions are sanctions of last resort to be applied only after less dire alternatives have been explored without success or would obviously prove futile.  *Bonds v. District of Columbia*, 320 U.S. App. D.C. 138, 93 F.3d 801, 807-08 (1996).  The March 31 Order imposes what amounts to a litigation-ending sanction-denial of access to documents necessary to prepare a defense-without the findings required by Rule 37 and without consideration of lesser alternatives.

### G. The March 31 Order Violates Attorney-Client Privilege and Work Product Doctrine

1. <u>The Production Requirements Are Overbroad and Sweep in Protected Materials</u>

The attorney-client privilege protects confidential communications between attorney and client made for the purpose of obtaining or providing legal advice. F.R.E. 501.  The work product doctrine protects materials prepared in anticipation of litigation or for trial.  F.R.Civ.P. 26(b)(3); *See also Upjohn Co. v. United States*, 449 U.S. 383, 398 n.7, 101 S. Ct. 677, 687 (1981).

The March 31 Order requires Lambert to produce all documents and communications discussing or referencing Dominion Litigation Documents and all

16

documents and communications discussing or referencing Dominion on this matter. This language is extraordinarily overbroad and necessarily sweeps in protected attorney-client communications, litigation strategy discussions, and work product materials.

If Lambert discussed litigation strategy with Byrne regarding how to respond to Dominion's claims, such communications are protected by attorney-client privilege. The Order's language would capture those protected materials. If Lambert prepared internal memoranda analyzing Dominion's legal theories or developing defense strategies, such materials are protected by work product doctrine. The Order would require production of those materials. If Lambert communicated with other members of the defense team about litigation strategy, such communications are protected by attorney-client privilege and work product doctrine. The Order as it stands would require production.

2. The Privilege Log Requirement Compels Disclosure of Protected Strategy

A privilege log must describe materials with sufficient detail to allow assessment of privilege claims without disclosing privileged content. However, when the universe of potentially privileged materials is as broad as all documents discussing or referencing Dominion, the privilege log itself becomes a vehicle for disclosing protected strategy. The attorney must describe materials in sufficient detail to permit assessment of the privilege claim, but in doing so, necessarily reveals

17

the substance of protected communications.

For example, if Lambert prepared a memorandum analyzing Dominion's legal theories and developing defense strategies, a privilege log entry might need to describe the subject matter of the memorandum in sufficient detail to permit assessment of the privilege claim. That description, while necessary to allow assessment of the privilege claim, reveals the substance of the protected work product.

3. Compelled Counsel Disclosures Violate Work Product Protection

The March 31 Order compels current counsel Ticktin to answer questions about Lambert's ongoing role, whether she drafted or edited filings, and whether Ticktin accessed Dominion-produced documents. These matters are quintessentially work product territory-they reveal the mental impressions, litigation strategy, and internal decision-making processes of counsel. *Wilderness Soc'y v. United States DOI*, 344 F. Supp. 2d 1, 17 (D.D.C. 2004).

Compelling Ticktin to provide testimony about these matters effectively converts current counsel into a witness against his own client. Work product protection shields not only the tangible materials prepared in anticipation of litigation but also the thought processes and strategic decisions of counsel. When counsel is forced to testify about his own role, his colleague's role, and the handling of litigation materials, the privilege is breached at its core.

18

### 4. The Order Lacks Findings Supporting Privilege Waiver

The Order does not contain findings that any valid waiver of privilege or work product protection has occurred. F.R.E. 502 provides that when disclosure is made in a federal proceeding and waives the attorney-client privilege or work product protection, the waiver extends to undisclosed communications only if the waiver is intentional, the disclosed and undisclosed communications concern the same subject matter, and they ought in fairness to be considered together.

The Order contains no finding that Byrne or counsel intentionally waived any privilege or protection. Absent such intentional waiver, the Order cannot compel disclosure on the theory that waiver has occurred. Moreover, the Order does not establish that any subject-matter waiver condition is satisfied. The Order simply demands production across an expansive universe of materials without any predicate finding of waiver.

### H. Sanctions Against Byrne Are Improper

The Plaintiffs request that the Court award costs and attorneys' fees, impose daily fines, and enter an Order to Show Cause regarding Ticktin's disqualification. These requests should be denied because sanctions cannot rest on an invalid order and because Byrne pursued lawful objections.

Courts have inherent authority to sanction bad-faith conduct, but such authority must be exercised with restraint and proportionality. *Chambers v. NASCO,*

19

*Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132 (1991). Sanctions must be proportionate to the offense and calibrated to achieve legitimate purposes.

Byrne's objections to the March 31 Order are not frivolous; they raise substantial questions about magistrate authority, privilege violations, due process, and Federal Rules compliance. Byrne pursued lawful objections through proper channels. The fact that those objections may ultimately be unsuccessful does not render them frivolous or warrant sanctions.

Moreover, sanctions cannot rest on an invalid order. If the March 31 Order is ultra vires, unconstitutional, or violates the Federal Rules, sanctions imposed to enforce that order are themselves invalid. The Court should deny the Plaintiffs' request for sanctions and reject the Order to Show Cause regarding Ticktin's disqualification.

## I. Plaintiff's Request for Order to Show Cause is Unfounded

The Plaintiffs have requested that the Court enter an Order to Show Cause as to why Ticktin should not be disqualified as counsel in this case. The Plaintiffs base their argument on alleged facilitation of Stefanie Lambert's involvement, and statements that Lambert provides valuable insight.

Ms. Lambert provides useful background knowledge and insight that the undersigned values, including in related matters where similar issues arise. Her assistance has been recognized as appropriate in other proceedings. However, Ms.

20

Lambert has no decision-making authority in this case; the undersigned alone is responsible for all strategy and filings. She was not removed due to any information she obtained, but based on allegations that she transferred certain documents to a sheriff's office. Her continued informal input does not implicate any "fruit of the poisonous tree" concern, and it is common and ethically appropriate for former counsel to share general guidance. Ms. Lambert has not drafted or edited filings in this case, and any assistance would remain subject to the undersigned's independent judgment and responsibility. The Ticktin has not reviewed Dominion's document production and is unaware of its specific contents, though similar materials may have been produced in related litigation.

Disqualification analysis generally requires identifying an applicable professional-conduct rule violation and then showing that the violation justifies disqualification in light of prejudice, unfair advantage, and available alternatives.

The Plaintiffs' request relies largely on generalized assertions about tone, associations, and alleged conduct in other matters, rather than a specific, case-linked violation that threatens these proceedings in a way disqualification is designed to prevent.

Even accepting the Plaintiffs' assertions that Lambert provided "insight" or may have drafted or edited materials, the Plaintiffs still must show concrete prejudice or a substantial risk of unfair advantage in this case.

21

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

The Plaintiffs have not shown that any alleged behind-the-scenes involvement necessarily taints the litigation in a manner that cannot be addressed through narrower, case-management remedies.

Disqualification is not a generalized fitness inquiry or a punitive sanction for alleged past conduct elsewhere.  Absent a demonstrated, case-specific threat to the integrity of this proceeding, prior disputes in other courts do not supply the required basis to disqualify counsel in this case.

Disqualification is a drastic, disfavored remedy because it deprives a party of counsel of choice and can be misused for tactical advantage.  *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 43 (D.D.C. 2004), See also *Hueter v. Kruse*, 610 F. Supp. 3d 60, 73 (D.D.C. 2022).

Under D.C. Circuit standards, disqualification is warranted only in rare circumstances, typically where counsel's conduct creates a serious risk to the fairness and integrity of the proceedings or a substantial possibility of unfair advantage that cannot be cured by lesser measures  *Steinbuch v. Cutler*, 463 F. Supp. 2d 4, 8 (D.D.C. 2006).  Nothing here suggests any serious risk to the fairness and integrity of proceedings, or any possibility of unfair advantage.  The Plaintiffs' allegations do not justify initiating a disqualification track via an order to show cause.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

## <u>Conclusion</u>

For the foregoing reasons, Dr. Byrne respectfully requests that this Court to vacate the March 31, 2026 Order in its entirety; alternatively, remand the matter to the District Court for *de novo* review under Federal Rule of Civil Procedure 72(b); order that any production requirements be limited to specific materials identified with particularity and subject to proper privilege protections; order that Dr. Byrne and his counsel be afforded full access to materials in their possession or control; deny Dominion's requests for costs, fees, daily fines, and an Order to Show Cause regarding counsel disqualification; and grant such other and further relief as this Honorable Court may deem just and proper.

Dr. Byrne further asserts that all materials subject to attorney-client privilege and work-product protection remain privileged and protected, and that nothing in this brief or any prior filing constitutes a waiver of such protections.

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2026, the foregoing document, was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

> */s/ Peter Ticktin*
> Peter Ticktin, Esquire
> Florida Bar No. 887935
> Serv512@LegalBrains.com
> Serv514@LegalBrains.com
> Serv600@LegalBrains.com
> **THE TICKTIN LAW GROUP**
> 270 SW Natura Avenue
> Deerfield Beach, Florida 33441
> Telephone: (561) 232-2222
> *Attorney for Patrick Byrne*

24