IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

US DOMINION, INC.,                                    HON. CARL NICHOLS
DOMINION VOTING                                      CASE NO.: 1:21-cv-02131
SYSTEMS, INC., and
DOMINION VOTING
SYSTEMS CORPORATION.,

          Plaintiffs,

v.

PATRICK BYRNE,

          Defendant.

_____/

## MOTION FOR PERMISSION TO COMPLY WITH SUBPOENA TO PRODUCE , ECF 166

Introduction

Eric Coomer, separated from Dominion Voting Inc. in December 2020. Subsequently, Coomer sued Mr. Joseph Oltmann for defamation seeking to extort more than 23 million in damages from Mr. Oltmann, *Eric Coomer v. Donald J. Trump for President, et al.,* case no. 2020-cv-034319. On April 3, 2026, Coomer filed an amended expert disclosure indicating his intent to testify as his own expert with his proposed testimony attached. Exhibit A. Coomer's proposed testimony is contradicted by his own emails with his Dominion team contained in the Dominion discovery documents. Coomer intends to testify at the July 20, 2026 trial to the following:

> "**Remote access/Chicago allegation**. Dominion does not support remote access. It would require the jurisdictions to physically provide that access. The election management system is on a local network that is not connected to the internet. There has been no evidence provided that the jurisdictions have been compromised such that remote access into the election management system has occurred. In Chicago, in March 2020, during the height of Covid, Dr. Coomer was on site for three and a half weeks providing Tier 1 support. At

1

the end of three weeks, it was determined that it was not safe for Dr. Coomer to remain onsite during canvassing. The Board of Elections met and agreed that they would configure remote VPN access to the EMS application for Dr. Coomer to troubleshoot the system as if he was onsite. This does not give access to the hard drives or database. This security measure was a temporary pandemic measure that ultimately was never used." Exhibit A, P. 5.

It appears that Coomer's attorneys have not reviewed the Dominion discovery and have merely relied upon Coomer's representations. As a result, false statements have been filed in a court document in violation of Colo. RPC 3.3. It is unethical to permit a client to provide false evidence at trial, including expert testimony. Mr. Oltmann is entitled to impeach Coomer with the Dominion discovery documents and use them to present an affirmative truth defense. Colorado Rule of Evidence 607 addresses admissibility of impeachment evidence, and the Dominion documents are probative of Coomer's truthfulness or untruthfulness of his credibility.

Undersigned is a non-party, and was served with a subpoena by Joseph Oltmann requiring production of the Dominion documents for use in case no. 2020-cv-034319. Following service of the subpoena, Patrick Byrne filed Defendant's Motion to Set Aside, Fully Lift the Protective Order in the Above Styled Case, or In the Alternative, To, At the Very Least Permit Compliance With A Subpoena to Produce, is currently pending before this Honorable Court, ECF 166.

Undersigned respectfully requests that this Court grant her permission to produce the Dominion discovery documents to Mr. Oltmann, and Cain & Skarnulis PLLC for use at trial. The Dominion discovery documents are not only necessary for impeachment, and an affirmative truth defense, but they are needed to impeach Coomer with his prior testimony under oath. Coomer first testified on June 14, 2022, before a Georgia grand jury, convened for the purpose of obtaining an indictment against President Donald J. Trump. Mr. Coomer was asked by a grand juror, "I'm going to ask you, did you rig the 2020 election campaign?" Eric Coomer testified, "No, I didn't, and nor would I have been able to." The grand juror wanted clarification, and asked, "What does that mean,

2

I wouldn't have been able to…"  Eric Coomer gave a false response. He stated, "I don't have the access. I don't have the ability to explain any of these vulnerabilities. And it's not me – I mean, counties, and states run elections. Dominion just builds hardware and software. We do not run elections. So I don't have – and nor do I have even the technical capability to be able to, you know, compromise all of the security and processes that are in place that would be needed to affect an election." Simply put, Eric Coomer misled the grand jury that he did not have access to the 2020 election systems and data, and even if he did, that he does not have the skillset necessary to manipulate the data. Exhibit B.

Four years later, Coomer changed his testimony at his deposition on January 27, 2026, in *Eric Coomer v Patrick Byrne*, case no. 24-cv-00008. Coomer now admits to having access, and testified at length regarding his qualifications and capabilities. Coomer testified that he "wrote code" for various Sequoia products and these products were integrated into Dominion's "Democracy Suite" and that the code "developed for Sequoia product would fall under Smartmatic's control" since "Smartmatic owned Sequoia. It was a wholly owned subsidiary." Exhibit C.

Coomer's 2026 testimony is supported by the Smartmatic/Sequoia/Dominion shell history. The programming at Smartmatic/Sequoia was conducted by Coomer with his team that included Venezuelan employees.  Ronald Morales, Craig Short, David Moreno were a few of the people working with Coomer's team.  The Smartmatic/Sequoia programming and the Smartmatic/Sequoia employee network was absorbed by Dominion at the time of acquisition that followed the US government CFIUS investigation into Smartmatic/ Sequoia. At Dominion, Coomer changed job titles but remained a critical player in the background accessing code, election equipment, databases, servers, making modifications within the systems prior to certification of

the elections. Coomer, a confessed skinhead, and drug addict, was necessary cog in the Dominion operation along with Coomer's Smartmatic/Sequoia network that continued the covert operation under the Dominion shell. Exhibit D. The Dominion discovery documents demonstrate this, and the documents are essential to Mr. Oltmann's truth defense at trial, and his ability to impeach Coomer with his examination. The Dominion discovery documents refute Coomers proposed trial testimony that:

- "The election management system is on a local network that is not connected to the internet;"
- "There has been no evidence provided that the jurisdictions have been compromised such that remote access into the election management system has occurred;"
- "Dominion does not support remote access. It would require the jurisdictions to physically provide that access;"
- "The Board of Elections met and agreed that they would configure remote VPN access to the EMS application for Dr. Coomer to troubleshoot the system as if he was onsite. This does not give access to the hard drives or database. This security measure was a temporary pandemic measure that was ultimately never used."

<u>Argument</u>

<u>Eric Coomer intends to testify that "The election management system is on a local network that is not connected to the internet"</u>

Coomer, and his team, created VPN, virtual private networks, by connecting their Dominion devices, and personal devices, to the Election Management Systems (EMS) which created a connection between the EMS internet, and their devices. Coomer's access was not new in 2020. Coomer complained, in 2020 by email, that his old password for remote access no longer worked, and that he needed the new password.

<u>Eric Coomer intends to testify that "There has been no evidence provided that the jurisdictions have been compromised such that remote access into the election management system has occurred"</u>

Coomer, and his team, planned the remote access into the EMS, and planned step-by-step with the foreign nationals the method to erase the log files in the databases which removed all

traces of access. Ronald Morales emailed Coomer and asserted that the VPN will be a cleaner connection between Dominion and the County network. Coomer's team worked with the foreign nationals to make engineering changes to the log files moving the log files to the Network Attached Storage. Additionally, they implemented a script that utilized the SQL server to reuse and overwrite the log files within the EMS and prevented the log files from being loaded into the database. This was to ensure Coomer his team's access would go undetected by the municipalities.

After the 2020 election, the most hotly contested election in history, Coomer, and his team, actively prevented the US government from obtaining evidence of compromise and remote access. Jerome Lovato at the EAC, asked Coomer's team the week after the Nov. 3, 2020, election to provide a list of all malfunctions that took place during the election. Lovato wanted the root cause of each malfunction, and how it was resolved. Lovato informed Dominion that the EAC intended to provide the malfunction information to Congress. Coomer's team conspired, internally, to advise Dominion employees that they should not respond to the Lovato and asserted that the EAC was not entitled obtain a full list of malfunctions.

Moreover, Coomer's team is aware that Dominion's golden image is stored in the Serv-U MFT server. Dominion was notified by SolarWinds support that Microsoft located a vulnerability in the Serv-U MFT server. The very vulnerability discovered by Microsoft is the method used by Dominion to access the Remote Accessible Vote by Mail. Dominion complained that it lost access to the RAVBM when the vulnerability was patched. Coomer by email in 2020, acknowledged that the trunk code had been modified during the certification review process of the Chicago certification process. Coomer's team gave foreign nationals, including Serbians remote access to the Dominion servers.

SolarWinds investors filed a class action lawsuit after the December 2020 breach was disclosed and the lawsuit was settled by SolarWinds for $26 million. Microsoft subsequently disclosed that it had discovered threat actors targeting SolarWinds Serv-U.

Eric Coomer intends to testify that "Dominion does not support remote access. It would require the jurisdictions to physically provide that access" and "The Board of Elections met and agreed that they would configure remote VPN access to the EMS application for Dr. Coomer to troubleshoot the system as if he was onsite. This does not give access to the hard drives or database. This security measure was a temporary pandemic measure that was ultimately never used."

In 2020, Coomer requested a virtual machine that he could download to obtain access, in 2020, to the election equipment in Chicago that included the Election Management System (EMS), the server containing the election results. Additionally, Coomer requested access to monitor the Listener that Dominion configured with Serbia to transmit the ballot images.  Coomer was provided with access to the EMS, Listener, the remote computer, and the Chicago server credentials by Ronald Morales, a Venezuelan Dominion employee. Eric Coomer demanded remote access to the ballot images, and to download the images with David Moreno. They conspired to upload it to the Dominion office infrastructure.  Coomer accomplished obtaining access to EMS, servers, the Listener/ballot images, ICCs and the results files.   Additionally, Eric Coomer needed the new password to monitor the listener because the old password, from past elections did not work. Ronald Morales gave Eric Coomer access along with instructions to remote into the servers and the ICC stations.

Coomer coordinated with his team, mostly the old Smartmatic/Sequoia crew that included David Moreno, Ronald Morales, and Craig Short, to access the election data from the back-facing side of the office. Some of the Dominion employees, including Craig Short, obtained access with their own laptops, and were using their personal devices to access the Dominion network, the and

VPNs. Front-facing Dominion employees found it concerning that there was no way to see what was happening on these personal laptops and could not understand why Dominion equipment was not being used.

It does not stop there. Coomer used the phone VPN to guide Chicago staff on WinEDS and the official results files while he conceal Dominion's involvement with modifications prior to certification. Coomer remotely accessed the equipment, including the Election Event Designer, and made modifications related to duplicate votes. Coomer did this in numerous locations including San Mateo, CA. Eric Coomer requested Thanh Hoang to gain access to results files and images from the EMS and ICC stations while election results were being tallied prior to certification. These are just a few examples of remote access, supported by Eric Coomer and Dominion, and use of the remote access to make modifications prior to certification of election results.

And there is more. Coomer's team remotely modified the Michigan export of results on November 4, 2020, and Xen and other foreign nationals made changes to the ICC, and ICP in Michigan and Pennsylvania. Coomer's team was involved with adjudication and other tally related matters prior to certification. The foreign nationals had 24 hours shifts around the clock prior to certification. The foreign nationals had an Election Situation Report on November 4, 2020 and worked with Coomer's team in the U.S. to address missing results from places including Chicago and Santa Barbara. Batches were stuck, results failed to load, and many other reasons requiring Coomer and his team to gain access prior to certification. Coomer and Morales' team were responsible for enabling ballot image processing via the Listener in 2020. Coomer is listed on Patent US 8,864,026 B2, as an "inventor" with Dominion Voting Systems, Inc as the "Assignee" for "Ballot Image Processing System and Method for Voting Machines." The patent abstract states,

7

"A ballot processing system and method process paper ballots, such as by optically scanning or reading those ballots. The ballot image processing system after determining whether each of the voting marks is valid or not, associates audit data with the ballot that corresponds to the decision regarding each voting mark." Coomer monitored the Listeners and ballot images for the 2020 election. Coomer is also an inventor on Patent US 9,202,113, B3 with Dominion Voting Systems, Inc as the "Assignee" of the "Ballot Adjudication in Voting System Utilizing Ballot Images." The abstract on the patent states "Methods, systems, and devices are described for adjudication votes made on voter-marked paper ballots. Voter-marked paper ballots may be scanned to obtain optical image data of the voter-marked paper ballots. The optical image may be analyzed to determine the votes contained in the ballot for tabulation purposes. One or more votes on the ballot may be identified as requiring adjudication by an election official. Adjudication, information, according to various embodiments, is appended to the optical images of the voter-marked paper ballots such that the image of the ballot and the image of the adjudication information may be viewed in an optical image. The optical image may be stored in a file format that allows the ballot image and the appended adjudication information to be viewed using readily available image viewers.

Coomer and his team from Smartmatic/Sequoia were critical players at Dominion and they covertly monitored ballot images, results files, and data, and accessed the data to modify it without any trace left in the log file. Contrary to his testimony before the Georgia grand jury, Coomer not only had the access, but he also had the capability to modify election results. Mr. Oltmann, and Coomer's attorneys should be immediately provided with the document production compelled by subpoena, ECF 166.

8

Conclusion

Undersigned respectfully requests that this Honorable Court give her permission to comply with Mr. Oltmann's subpoena to produce Dominion discovery documents that Mr. Oltmann will use for impeachment purposes, and to put forth an affirmative defense. Undersigned sought concurrence to comply with Mr. Oltmann's subpoena and has not received a response from Dominion at the time of filing.

Date: June 17, 2026                                          Respectfully submitted,

                                                            /s/ Stefanie Lambert
                                                            Stefanie Lambert Junttila
                                                            AttorneyLambert@protonmail.com
                                                            400 Renaissance Drive, 26th Floor
                                                            Detroit, MI 48243
                                                            (313) 410-6872
                                                            StefanieLambert.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 17, 2026, the foregoing document, was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

                                                            /s/ Stefanie Lambert
                                                            Stefanie Lambert Junttila
                                                            AttorneyLambert@protonmail.com
                                                            400 Renaissance Drive, 26th Floor
                                                            Detroit, MI 48243
                                                            (313) 410-6872
                                                            StefanieLambert.com

9