EXHIBIT A

| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | SERVED ONLY April 3, 2026 8:48 AM<br>FILING ID: 26D89AA842656 5:46 PM<br>CASE NUMBER 2020CV34319 3A52CF5D6<br>CASE NUMBER: 2020CV34319 |
|---|---|
| ERIC COOMER, Ph.D.,<br>Plaintiff<br><br>vs.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC., et al.,<br>Defendants | ▲ COURT USE ONLY ▲<br><br>Case Number 2020cv034319<br><br>Division Courtroom 409 |
| **Attorneys for Plaintiff**<br>Charles J. Cain, No. 51020<br>ccain@cstrial.com<br>Bradley A. Kloewer, No. 50565<br>bkloewer@cstrial.com<br>Ashley N. Morgan, No. 61713<br>amorgan@cstrial.com<br>**CAIN & SKARNULIS PLLC**<br>P. O. Box 1064<br>Salida, Colorado 81201<br>719-530-3011/512-477-5011 (Fax)<br><br>Thomas M. Rogers III, No. 28809<br>trey@rklawpc.com<br>David M. Beller, No. 35767<br>david@rklawpc.com<br>**RECHTKORNFELD PC**<br>1600 Stout Street, Suite 1400<br>Denver, Colorado 80202<br>303-573-1900 | |

**PLAINTIFF ERIC COOMER, PH.D.'S AMENDED NON-RETAINED EXPERT WITNESS DISCLOSURE PURSUANT TO C.R.C.P. 26(a)(2)**

Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), by and through undersigned counsel, pursuant to C.R.C.P. 26(a)(2), hereby makes the following amended expert witness disclosure:

1

EXHIBIT A

## I. RESERVATION OF RIGHTS

1. Dr. Coomer reserves the right to amend or supplement his expert witness disclosures with additional designations of experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties. Further, Dr. Coomer reserves the right to amend or supplement the testimony and opinions, and the bases therefor, of each of his designated experts as discovery continues and additional information becomes available.

2. Dr. Coomer reserves the right to call as adverse experts, any experts designated by any Defendant and hereby designates same herein by reference. This reservation is without waiver to Dr. Coomer's right to challenge the qualifications, methodology, or opinions of any expert proffered by any Defendant. Dr. Coomer also reserves the right to elicit, by way of cross-examination, opinion testimony from experts designated and called by any Defendant.

3. Dr. Coomer reserves the right to call undesignated rebuttal expert witnesses whose testimony cannot reasonably be foreseen until the presentation of evidence at trial.

4. Dr. Coomer reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate the same as a consulting expert, who cannot be called by opposing counsel.

5. Dr. Coomer reserves the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the Court and/or jury to determine material issues of fact, and which would not be violative of any existing Court Order or the Colorado Rules of Civil Procedure.


EXHIBIT A

6.      Dr. Coomer reserves whatever additional rights he might have with regard to expert witnesses, pursuant to the Colorado Rules of Civil Procedure, the Colorado Rules of Civil Evidence, the case law construing same, and the rulings of the trial court.

7.      Plaintiff reserves all privileges.

## II.    TESTIFYING EXPERTS

No amended information.

## III.   NON-RETAINED EXPERTS

1.      Dr. Eric Coomer
c/o Cain & Skarnulis PLLC
P. O. Box 1064
Salida, Colorado 81201
719-530-3011

Dr. Coomer is the Plaintiff in this case.  He is an expert in election software technology, specifically as it related to his former employer, Dominion Voting Systems.

In addition to testifying to the facts of this case, Dr. Coomer is expected to testify regarding his work with Dominion Voting Systems, where he served as Director of Strategy and Security.  In this regard, Dr. Coomer is expected to testify regarding both Dominion's and the relevant jurisdictions' practices and procedures to ensure secure and accurate vote tallies, including during the 2020 presidential election.  He will also testify regarding his own contributions toward transparency of the adjudication process, the implausibility of Defendants' claims, the falsity and impossibility of the allegations against him, the trauma he has endured as the subject of Defendants' malicious campaign, and the damages he has suffered by being made the face of a made up national conspiracy.  In addition to his own knowledge and experience, Dr. Coomer will rely on documents he has produced in this litigation.

Dr. Coomer has substantial experience in US elections.  He is expected to prove fact-based and opinion testimony about some of the numerous conspiracy theories surrounding the 2020 elections, many of which have been promoted by the Defendants.  Examples include:

**Election reporting.**  There are various conspiracy theories suggesting nefarious reporting of elections such as jurisdictions sending results to Scytl (a reporting company) in a foreign country, where the results are supposedly altered and then transmitted back to the United States.  This is closely related to the "New York times" glitch where people were watching results on the website and saw vote totals went up and down for certain candidates.  Claims

EXHIBIT A

regarding unofficial results, even if true, are irrelevant. It is the official result that are what are used by the jurisdictions. Official reporting errors can occur and are corrected but they do not alter the actual vote total. It often takes days or sometimes weeks to get a certified result through canvassing.

**Adjudication.** Neither Dr. Coomer nor Dominion invented adjudication. This process has existed for decades. The parameters for adjudication are defined by the relevant state jurisdiction and laws. The concept of adjudication is to ensure that the voter's intent is accounted for. Voters make errors in filling out ballots, but the intent of a voter is still clear. For example, a voter may check an oval instead of darkening the circle. Dominion's digital adjudication system provides enhancements to what was a manual process. This is a ballot by ballot process. There is no "bulk adjudication." The system does not allow that to occur. There are claims of jurisdictions having high rates of adjudication. This is due to the jurisdictions requirements which vary. For example, in a case of an overvote, the adjudication system would flag that ballot for adjudication. Write in candidates are also often candidates for adjudication. Some counties, such as in Maricopa, in the 2020 election set wide parameters for adjudication. This resulted in higher adjudication rates. These rates were dictated solely by the decision made by election officials.

**Antrim County.** There was a conspiracy theory that, due to Dominion's adjudication system, votes were switched from Trump to Biden. This is patently false. Antrim County did not use Dominion's adjudication system. The cause of the error in reporting was due to the configuration of the election ballot by the county because a specific contest was inadvertently omitted, again by the county. The tabulators read the ballot correctly, but the reporting system did not. Once the reporting system was reconfigured correctly, the imported results matched the results on the poll tapes and the ballots themselves.

**General conspiracy theories.** There are claims that multiple states stopped counting ballots at the same time. This is factually untrue. Jurisdictions often stop releasing results during the early morning because the election officials do not work 24 hours a day. Scanning of ballots still occurs overnight. These are often reported after an overnight pause. Mail-in ballots often favored Biden during the 2020 election. Day of voting often favored Trump. Overnight, mostly mail-in ballots are counted. When the reports are released in the morning, it reflects the mail-in vote and weighed heavily in favor of Biden. This shift toward Biden was expected prior to the election.

**Duplicate ballot scans.** Based on video from jurisdictions, allegations were made about ballots being scanned multiple times. Rudy Giuliani made such an allegation about Shae Moss and Ruby Freeman in Georgia. Sometimes ballot scanning can have an error in reading the ballot within the scanning of a batch of ballots. Sometimes the scanner may jam. These ballots are not being double counted. Jurisdictions have a chain of custody for batches of ballots that prevent ballots from being double counted. The relevant jurisdiction is aware of the number of batches of ballots that are processed in total. An alleged double

EXHIBIT A

counting would cause a mismatch showing excess batches and would be corrected during canvassing.

**Remote access/Chicago allegation.**  Dominion does not support remote access.  It would require the jurisdictions to physically provide that access.  The election management system is on a local network that is not connected to the internet.  There has been no evidence provided that the jurisdictions have been compromised such that remote access into the election management system has occurred.  In Chicago, in March 2020, during the height of Covid, Dr. Coomer was onsite for three and a half weeks providing Tier 1 support.  At the end of three weeks, it was determined that it was not safe for Dr. Coomer to remain onsite during canvassing.  The Board of Elections met and agreed that they would configure remote VPN access to the EMS application for Dr. Coomer to troubleshoot the system as if he was onsite.  This does not give access to the hard drives or database.  This security measure was a temporary pandemic measure that ultimately was never used.

**PID controllers and nuclear decay.**  A simple example of a PID controller is a thermostat.  There have been statements by Joe Oltmann that the election results are controlled by a PID controller.  This is nonsensical.  There is a finite set of ballots.  The vast majority of ballots (approx. 80%) are counted within the first 48 hours of the election.  Graphically this can look similar to a PID controller being used on a thermostat or nuclear decay.

**Source code manipulation.**  Every single line of Dominion's code is reviewed by an independent testing lab which creates a "golden image" stored by the lab.  Dominion does not provide the source code to the end-user, only to the testing labs. The suggestion that Dr. Coomer could have inserted malicious code into an election system is both factually false but also would be detected during the code review process.  This fact is ignored by various conspiracy theorists when they suggest a rogue Dominion employee inserted malicious code into the system in order to rig the election.  Further, as a matter of fact, Dr. Coomer did not write source code for Dominion.

**Stored procedures.**  This relates to code that is compiled at the database level.  There have been allegations that stored procedures are not code reviewed.  This is false.  When the system starts up, it validates the stored procedure code.  If anything is changed, the system shuts down.

**Trusted build/log sizes.**  A trusted build is the final version of the application that is generated by the testing authority. It is how you install the system for an end user.  It is "trusted" because it comes from a trusted vendor.  Many states, as a security precaution, require a trusted build for the upcoming election.  Before installing a trusted build, a backup of the prior system's data is often required by the jurisdiction's legal requirements.  When installing a trusted build, you ensure that there is no remaining data from the prior election.  The trusted build includes default settings, including log sizes.  The jurisdiction determines the size of the log.  If the log size is not configured, the log can write until it fills the entire hard drive.  Thus, as part of the creation of the application, the log size is limited.  During

5

EXHIBIT A

installation, the log size can be modified so that the jurisdiction can manage the log size. Larger counties tend to use larger log sizes. Small jurisdictions tend to use smaller log sizes. Data management protocols are determined by the counties, not Dr. Coomer or Dominion. There are conspiracy theories that Dominion purposefully set the log to purposefully overwrite election data. This is false. Dominion provides information to the jurisdiction on how they can manage their own data protocols along with default log settings. Another conspiracy theory is that the trusted build violates state record retention law because it overwrites election data that is required to be preserved. This is false. The policy and procedures direct the end users to make an archive or backup of the data. The data is preserved. For example, Tina Peters was arrested because she conspired with an imposter to make a backup of the election system in Mesa County which was publicly released. Tina Peters' conduct increased the likelihood that the system could be hacked in the future when these images were released publicly.

**"Anecdotal" evidence.** There are many anecdotal claims by poll workers of all types. For example, a worker may say they saw batches of votes that were 100% for Biden. These are inherently unreliable rumors. The batch reports reflect the actual tabulation, not an anecdotal narrative. Another example is mail-in ballots without folds. Can this occur? Yes. For example, uniformed and overseas votes can fax in their votes. They may not have physical access to a ballot and can fax in their votes. The jurisdiction can transfer their selections to an official ballot. Another example is a ballot that comes in the mail that is damaged. The jurisdiction will duplicate the damaged ballot because it cannot be tabulated. In this example, the damaged mail-in ballot is preserved but the official mail-in ballot does not have folds. This is not election fraud and, furthermore, has nothing to do with Dr. Coomer.

**Phantom ballots.** One of Joe Oltmann's pet conspiracy theories is that you can use voter registration information to create phantom ballots. There are a host of reasons why this is practically impossible. Voter registration systems have date stamps. If you wanted to create phantom ballots, it would need to be done in real time during the election. The person who is the subject of the phantom ballot may end up actually voting. Additionally, voters are tied to a particular ballot style depending on where they live. Thus, you would need to know the ballot style that corresponds to the voter. Thus, you could not simply pre-fill a generic ballot to use for a specific voter. In Maricopa County, for example, there are in excess of 100,000 ballot styles. A person seeking to engage in a phantom ballot campaign would have to know the ballot style that the phantom voter would have been assigned and that ballot would need to somehow be generated outside of the official printing of ballots (including a secrecy sleeve and postmarked envelope). This is practically impossible and would further be subject to signature verification. Furthermore, this theory would require that a person would have to have real time access to the voter registration system in order to update the voter's status in the voter registration system of the particular jurisdiction *before polls closed*. Essentially, the allegation of a phantom ballot campaign is functionally impossible and has never been proven.

EXHIBIT A

**Donald Trump.** President Trump, both as a candidate and during his presidency, has claimed numerous times that both the 2016 and 2020 election either would be rigged or were in fact rigged. President Trump has never, to my knowledge, articulated a theory of election rigging let alone provided any proof.

Dr. Coomer intends to review Defendants' expert witness disclosures and provide rebuttal testimony. To date, no Defendant has produced a report from a qualified expert that provides evidence that Dr. Coomer or Dominion were involved or participated in rigging the 2020 election. Dr. Coomer is cognizant of the consistently expanding body of false theories surrounding the 2020 presidential election and reserves the right to respond to any other false claims of election rigging not expressly described above.

2.    Dr. Jared Finkell, MD
       10 Downing Street, Suite 1U
       New York, New York 10014
       212-675-0675

Dr. Finkell is a psychiatrist who specializes in evaluating and managing anxiety disorders, mood disorders, ADHD, and other issues pertaining to identity, interpersonal relationships, and professional achievement.

Dr. Finkell is expected to testify consistent with his sworn testimony in related proceeding *Coomer v. Lindell et. al.*, disclosed in this proceeding at EC 002894-3007 and 005027-5096. That testimony and associated documentation are incorporated herein by reference. Specifically, his testimony is expected to address the impact of the lies spread by Defendants on Plaintiff's mental health and well-being. He is expected to also address the psychological trauma that has resulted from Defendants' conduct, including the lasting effects of the lies at issue in this dispute. This will include his diagnosis of Dr. Coomer with adjustment disorder with mixed anxiety and depressed mood, Dr. Coomer's lack mental health treatment prior to the events giving rise to this dispute, and his prescription of medications to address Dr. Coomer's anxiety and panic attacks.

EXHIBIT A

Respectfully submitted this 3rd day of April 2026.

_/s/ Bradley A. Kloewer_
Charles J. Cain, No. 51020
Bradley A. Kloewer, No. 50565
Ashley N. Morgan, No. 61713
Thomas M. Rogers III, No. 28809
David M. Beller, No. 35767

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff Eric Coomer, Ph.D. Amended Non-Retained Expert Witness Disclosure Pursuant to C.R.C.P. 26(a)(2) has been served on all parties receiving notice through CCE on this 3rd day of April 2026.

_/s/ Bradley A. Kloewer_
Bradley A. Kloewer, No. 50565

8