IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIBERTY VOTE HOLDINGS INC., LIBERTY VOTE USA INC., and DOMINION VOTING SYSTEMS CORPORATION, | Civil Action No. 1:21-cv-02131 (CJN) (MAU) |
| | Judge Carl J. Nichols |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| PATRICK BYRNE, | |
| Defendant. | |

_______________________________/

**DEFENDANT PATRICK BYRNE'S REPLY IN SUPPORT OF HIS MOTION FOR EXTENSION OF TIME TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

The Defendant, Patrick Byrne, by and through his undersigned counsel, hereby files this his Reply in Support of his Motion for Extension of Time to File Opposition to Plaintiffs' Motion for Default Judgment [ECF No. 200], and states:

The most important thing about the Plaintiffs' Response is what the Response does not say. [ECF No. 201]. The Response does not oppose the requested fourteen days. The Response does not claim that fourteen days would prejudice the Plaintiffs. The Response does not ask this Court to deny the Motion. In fact, the Response does not ask this Court for anything at all.

Instead, the Response devotes its pages to undersigned counsel. So the one question actually before the Court, whether Dr. Byrne should have until September 10, 2026 to be heard on the gravest motion a civil defendant can face, goes unaddressed.

Some context shows why the fourteen days matter. On August 13, 2026, the Plaintiffs moved for a default judgment against Dr. Byrne. [ECF No. 198]. The motion and its supporting

memorandum run fifty-two pages. The motion arrived with the Declaration of Davida Brook and eighteen exhibits, one hundred sixty-five pages in all. [ECF No. 198].

Five of those exhibits were filed under seal as slip sheets. The Plaintiffs served the native versions of those five exhibits by email on August 13, 2026, and delivered them to the Court on USB drives. Letter from Davida Brook to the Court (Aug. 13, 2026).

The exhibits are not light reading. Among them are video recordings that run more than ninety minutes in all, five transcripts, and seven screenshots of posts on X. The Plaintiffs' theory is that the recordings and the posts show Dr. Byrne disclosing documents covered by the protective order and describing what those documents say. Testing that accusation is slow work, and the work has two halves. First, counsel must watch every minute, read every transcript line by line, and write down each statement and each document the Plaintiffs say was a disclosure. Secondly, for every one of them, counsel must find where the same statement or the same document had already appeared in public, from a source other than Dr. Byrne, before Dr. Byrne spoke, and then obtain that source independently and put it in front of the Court, so that the Court is not asked to take counsel's word for who published what first. A statement or a document that the public already had from someone else stands on a very different footing under the protective order. The only way to know which ones those are is to look, statement by statement and posting by posting.

The Plaintiffs' motion does not seek an ordinary ruling. The motion asks this Court to end the case, to hold Dr. Byrne liable for defamation without a trial, and to proceed directly to damages. Under Local Civil Rule 7(b), Dr. Byrne had fourteen days to answer it.

Within those fourteen days, the ground moved. On August 24, 2026, the Secretary of Homeland Security, Markwayne Mullin, sent a letter to the White House Transparency Task

Force addressing what the Secretary called "known weaknesses in the election infrastructure supply chain." The Secretary named the three vendors holding more than eighty percent of the market, Dominion among them, wrote that their representatives "have acknowledged that their voting machines have parts made in China," and announced that states must conduct "random post-election manual counts of paper ballots" to receive full federal election-security grant awards. Letter from Markwayne Mullin, Secretary of Homeland Security, to the White House Transparency Task Force at 1-2 (Aug. 24, 2026).

The Secretary's letter is the development the Motion referenced when it told the Court that Homeland Security and the President had issued relevant orders that the opposition needed to address. [ECF No. 200]. The Secretary writes that he acted "[u]nder the leadership of President Trump" in directing the Department to prioritize election security and in conditioning the grant awards on hand counts. Letter at 2. The letter goes to the subject matter of this defamation case, Dr. Byrne's opposition must address it, and the letter is attached to the Opposition as its Exhibit B.

Additionally, undersigned counsel spent that week in a multi-day arbitration out of state. The proceeding was American Arbitration Association Case No. 01-25-0002-6732, heard before Arbitrator Hon. Rob Bare in Reno, Nevada. The parties to the arbitration are private and are not named here. The arbitrator set the multi-day arbitration in October 2025, ten months before the Plaintiffs filed their motion, and the setting was firm. The Motion called the proceeding a trial, and in every practical sense it was one, days of evidence presented before an arbitrator rather than a judge. However, an arbitration is a private proceeding. It sits on no public docket, which is why the Motion did not cite one.

So on August 27, 2026, before the deadline expired, Dr. Byrne moved for fourteen



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

additional days, through and including September 10, 2026. [ECF No. 200]. This is the first extension Dr. Byrne has sought of this deadline; the two earlier extension motions the Plaintiffs' Response lists concerned a status report and the reply on the disqualification motion. [ECF No. 201 at 1] (citing ECF Nos. 162, 197).

Dr. Byrne asks for the extended time to thoroughly ensure that any and all documents discussed, often for a few seconds, are addressed.

**The Response Opposes Nothing and Identifies No Prejudice**

Judge Nichols's Standing Order requires an extension motion to state the opposing party's position. Standing Order § 9(b)(vi) [ECF No. 15 at 4]. The Motion explained that counsel had sought the Plaintiffs' concurrence and would supplement with the Plaintiffs' position once the Plaintiffs gave one. [ECF No. 200]. The Plaintiffs have now placed their position on the docket themselves. [ECF No. 201]. This Reply addresses that position, so a separate supplement would only add paper.

That position, read from end to end, contains no opposition to the fourteen days, no claim of prejudice, and no request for relief.

Nor could the Response have claimed prejudice. No trial date is set; the Plaintiffs' own motion asks the Court to "schedule" one. Mot. at 45. The extension moves a single opposition deadline by fourteen days and touches nothing else. This case was filed on August 10, 2021. [ECF No. 1]. Fourteen days, in a case now in its sixth year, on the most consequential motion in it, costs the Plaintiffs nothing.

**The Law Reserves Default Judgment for the Unresponsive Party, and Dr. Byrne Is Responding**

Because Dr. Byrne moved before the original deadline expired, the Court may extend the



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

time for good cause. F.R.Civ.P. 6(b)(1)(A). Good cause here includes work that no lawyer can compress. The video exhibits must be watched in full. The transcripts must be read line by line. And every statement and every document the Plaintiffs identify as a disclosure must be traced to the public source that anticipated it, and that source must be independently retrieved and preserved, before counsel can responsibly tell this Court whether anything Dr. Byrne said or displayed was protected at all.

The tracing is not a formality. It is the labor the accusation forces. Each statement the Plaintiffs quote and each document they say appeared on screen must be identified, and then located in the public record as that record stood before Dr. Byrne spoke. For these materials that record is large and scattered. It includes the public letters a nonparty county sheriff sent to Congress in 2024 describing the same subjects; that sheriff's account on X and the many document files the account posted beginning in March 2024, among them a single compilation exceeding two thousand pages that can be searched only page by page; document-sharing links on more than one platform, some of them now dead; that sheriff's further postings in July 2026 and the nonparty republications that followed them; and government records outside this litigation entirely. Determining whether a given statement or page was already public, on what date, and from whom, has required examining those sources one at a time, capturing each one with its date and its digital fingerprint so that anyone can verify it, and then setting each statement and each page beside the source that anticipated it. That work is well advanced. However, source-by-source verification on this scale cannot be done responsibly overnight, and it is a principal reason the fourteen days were sought.

That work is now done, and the Court need not take counsel's word for it, because the finished product is filed with this Reply. In the days since the Motion arrived, counsel watched



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

every minute of the video exhibits and read every transcript line against them; traced each of the twelve documents displayed on the broadcasts through the sheriff's public postings of March 2024, September 2025, and July 2026 and through the nonparty republications that followed; independently captured dozens of source postings, each preserved with its date and digital fingerprint; built seventeen comparison exhibits that set each displayed page and each broadcast statement beside the earlier public posting of the same material, and that state plainly where no earlier posting was located; obtained and verified, page by page, public-docket materials from another federal court bearing on the same documents; and analyzed the intervening federal records the Motion itself said the opposition would need to address, including the Secretary's August 24, 2026 letter, issued eleven days after the Motion was filed. The Opposition filed today is the product of that work, and its length and its exhibits show why the work could not be compressed into fourteen days.

The stakes supply the cause. The D.C. Circuit holds that "default judgments were designed to handle[] a totally unresponsive party." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 6 (D.C. Cir. 2015) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Default exists for the case in which "the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (citation omitted). These rules rest on the "strong policies favoring the resolution of genuine disputes on their merits." *Jackson*, 636 F.2d at 835.

In other words, default is for the defendant who will not show up. Dr. Byrne is showing up. Dr. Byrne has completed a comprehensive opposition to a fifty-two page motion supported by one hundred sixty-five pages of material and more than ninety minutes of video, together with exhibits that set each alleged disclosure beside the earlier public posting of the same material



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

where one exists.

If the Court denies the fourteen days, the Plaintiffs' motion for the most disfavored judgment known to civil practice would be tested against no opposition at all, while the finished Opposition sits on the docket. The law should not reach that result through a scheduling ruling.

Therefore, good cause supports the modest extension, and the Opposition filed concurrently with this Reply should be deemed timely filed.

**Counsel Answers the Response's Criticisms Directly**

The Response directs its pages at counsel rather than at the Motion. Counsel answers each point, because this Court is entitled to candor.

First, the timing. The Standing Order provides that extension motions should be filed at least four days before the deadline, and that a party who cannot comply must explain why in its motion. Standing Order § 9(a) & n.2 [ECF No. 15 at 3]. The Motion should have carried that explanation on its face, and counsel accepts responsibility for the omission. The explanation is this: the developments that generated the need arose inside the four-day window. The Secretary's letter issued on August 24, 2026, the day after the last day on which a four-day motion could have been filed. Counsel was out of state in a multi-day arbitration that week. A motion filed by August 23, 2026 could not have rested on grounds that did not yet exist.

Secondly, the conferral. Counsel's office wrote to the Plaintiffs' counsel before the Motion was filed and asked for the Plaintiffs' concurrence in a fourteen-day extension. The Plaintiffs' counsel did not consent and did not oppose; the Plaintiffs' counsel posed questions. The Motion therefore said that concurrence had been sought and that Dr. Byrne would supplement with the Plaintiffs' position. The Plaintiffs filed that position themselves the next day. [ECF No. 201]. As for the Plaintiffs' questions, the arbitration is now identified above by

forum, case number, arbitrator, and location, and the federal action is identified above. Counsel agrees that the better practice is to answer such questions before filing, and this Reply answers them.

Thirdly, the media appearances. The Response counts three interviews during the week of the deadline, none of which concerns this case. By the Response's own dates, none fell on a hearing day: the first came days before the multi-day arbitration opened, and the other two came after it closed. [ECF No. 201 at 3]. A short interview is not the drafting of an opposition to a default-judgment motion, and an attorney in a multi-day arbitration does not forfeit every hour outside the hearing room. More to the point, the interviews have nothing to do with the only question presented, which is whether fourteen days harms the Plaintiffs. The Response never claims that it does.

Fourthly, the disqualification reply. The Response notes that the Court granted seven days for a reply in support of Dr. Byrne's motion to disqualify, and that no reply was filed. That is true. Counsel elected to stand on the motion and the opposition rather than file more paper, and that motion stands submitted on ECF Nos. 193 and 195. Leave to file is not an obligation to file, no rule requires a reply, and the Plaintiffs lost nothing by its absence.

WHEREFORE, the Defendant, Patrick Byrne, respectfully requests that this Honorable Court grant his Motion for Extension of Time [ECF No. 200], extend his deadline to file his Opposition to Plaintiffs' Motion for Default Judgment [ECF No. 198] through and including September 10, 2026, deem timely filed the Opposition Dr. Byrne files concurrently with this Reply, and grant such other and further relief as this Honorable Court may deem just and proper.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Dated: September 4, 2026

Respectfully submitted,

*/s/ Peter Ticktin*

Peter Ticktin, Esquire
Florida Bar No. 887935
Serv512@LegalBrains.com
Serv514@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Attorney for the Defendant,*
*Patrick Byrne*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 4, 2026, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Peter Ticktin
Peter Ticktin



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222