IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LIBERTY VOTE HOLDINGS INC.,
LIBERTY VOTE USA INC., and
DOMINION VOTING SYSTEMS
CORPORATION,

Plaintiffs,

v.

PATRICK BYRNE,

Defendant.
_______________________________/

Civil Action No. 1:21-cv-02131 (CJN) (MAU)

Judge Carl J. Nichols

JURY TRIAL DEMANDED

**DEFENDANT PATRICK BYRNE'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

The Defendant, Patrick Byrne, by and through his undersigned counsel, hereby files this his Opposition to Plaintiffs' Motion for Default Judgment [ECF No. 198], and states:



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

## TABLE OF CONTENTS

**Legal Standard** ..................................................... **4**

**Argument** ..................................................... **6**

Default Judgment Is Reserved for the Essentially Unresponsive Party, and Dr. Byrne Is Defending This Case ..................................................... 6

The Record Does Not Contain Clear and Convincing Evidence of Willful Misconduct by Dr. Byrne Himself ..................................................... 7

Dominion's Exhibits, Grouped by What Each Actually Records, Do Not Prove a Willful Disclosure of Discovery Material ..................................................... 16

The Brook Declaration Authenticates Screenshots and Identifies No Produced Document ..................................................... 17

The May and June Exhibits Record Speech, Not Documents, About Subjects Already Public ..................................................... 18

The July Broadcasts Displayed Pages a Sheriff Had Already Published, and Some Are Subject to Freedom of Information Act ..................................................... 20

The August Posts Republished Documents Nonparties, Law Enforcement/Press Had Already Made Public, and Each Requires Its Own Proof ..................................................... 23

A Rule 37(b) Sanction Must Be Related to the Discovery the Violated Order Required, and This One Would Not Be ..................................................... 25

A Party May Not Hide Behind a Protective Order to Conceal Evidence of Ongoing Criminal Conduct of National Importance ..................................................... 28

The Judgment Dominion Seek Would End the Duty to Preserve and Start the Destruction of the Evidence Federal Agencies Are Examining ..................................................... 30

Dr. Byrne's Insults of the Magistrate Judge Are Protected Opinion That Violated No Order ..................................................... 31

Dominion Has Not Been Prejudiced ..................................................... 32

There Is No Burden on the Court, and Much of the Claimed Delay Accrued Under the Court's Own Stay ..................................................... 34

Punishment and Deterrence Cannot Justify the Ultimate Sanction Where No Lesser Sanction Has Been Tried ..................................................... 35



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

No Sanction Is Warranted on This Record, and the Graduated Framework Forecloses the Ultimate One ....... 38

No Judgment Should Enter While the Disqualification Motion Is Pending ....... 39

The Public Interest Requires a Verdict by Jury on the Merits ....... 39

**Conclusion** ....... **40**

**Certificate of Service** ....... **42**

## TABLE OF AUTHORITIES

** Authorities upon which counsel chiefly relies are marked with asterisks.*

### Cases

*Atkins v. Fischer*, 232 F.R.D. 116 (D.D.C. 2005) ....... 9, 38

* *Bonds v. District of Columbia*, 93 F.3d 801 (D.C. Cir. 1996) ....... 4, 5, 8, 24, 31, 33, 34, 35, 36, 37

* *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984) ....... 27

*Coltrane v. Wilkins*, 340 F.R.D. 476 (D.D.C. 2022) ....... 36

*Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334 (9th Cir. 1985) ....... 27

*Founding Church of Scientology v. Webster*, 802 F.2d 1448 (D.C. Cir. 1986) ....... 5

*Freeman v. Giuliani*, 691 F. Supp. 3d 32 (D.D.C. 2023) ....... 27, 34, 37

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ....... 27

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) ....... 31, 34, 37

*Halderman v. Herring Networks, Inc.*, No. 24-51057 (E.D. Mich. Jan. 24, 2025) ....... 20

* *Hammond Packing Co. v. Arkansas*, 212 U.S. 322 (1909) ....... 25, 26

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ....... 32

* *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) 4, 25, 26

*Jackson v. Beech*, 636 F.2d 831 (D.C. Cir. 1980) ....... 4, 39

*Khodorkovskaya v. Gay*, 5 F.4th 80 (D.C. Cir. 2021) ....... 32

*League of United Latin American Citizens v. Executive Office of the President*, No. 25-cv-946 (D.D.C. Apr. 24, 2025) ....... 11

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) ....... 39

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ....... 32

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) ....... 4, 6



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) ...................... 35

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ...................... 26, 32

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ...................... 17, 28, 29, 40

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ...................... 15, 17, 26, 33

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir.) ...................... 31

* *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ...................... 17, 18, 22, 28, 29, 40

*Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137 (11th Cir. 2006) ...................... 27

* *Shea v. Donohoe Construction Co.*, 795 F.2d 1071 (D.C. Cir. 1986) ...................... 5, 9, 35, 38

* *Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469 (D.C. Cir. 1995)4, 5, 7, 9, 10, 13, 15, 16, 19, 20, 23, 25

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958) ...................... 4

* *Washington Metropolitan Area Transit Commission v. Reliable Limousine Service, LLC*, 776 F.3d 1 (D.C. Cir. 2015) ...................... 4, 5, 33, 36, 37

* *Webb v. District of Columbia*, 146 F.3d 964 (D.C. Cir. 1998) .... 5, 7, 8, 20, 24, 33, 34, 36, 38, 39

**Statutes**

18 U.S.C. § 4 ...................... 10

18 U.S.C. § 1512 ...................... 30

18 U.S.C. § 1519 ...................... 30

28 U.S.C. § 455 ...................... 31, 39

**Rules**

F.R.Civ.P. 26 ...................... 28, 33

F.R.Civ.P. 37 ...................... 4, 7, 8, 25, 27, 33, 38

F.R.Civ.P. 55 ...................... 4, 6

Fed. R. Evid. 602 ...................... 18, 23

Fed. R. Evid. 801 ...................... 13

Fed. R. Evid. 901 ...................... 18, 23

**Other Authorities**

CIA Note, Summary of Select Intelligence Reporting from 2004-2020 on Venezuela's Electronic Voting Manipulation Capabilities (June 29, 2026, declassified July 1, 2026) (Exhibit F)12, 13, 14



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

CISA, ICS Advisory ICSA-22-154-01, Vulnerabilities Affecting Dominion Voting Systems ImageCast X (June 3, 2022)....................11, 39

Declaration of Patrick Byrne (Sept. 2026) (Exhibit I)....................10, 13, 16, 24, 32

Declaration of Sheriff Dar Leaf (Aug. 6, 2026) (Exhibit A)....................17, 21, 23, 28, 29, 30

Deposition of Eric Coomer, Coomer v. Byrne, No. 8:24-cv-00008-TPB-SPF (M.D. Fla.) (Jan. 27, 2026) (Exhibit H)....................15

Exec. Order No. 13,848, 83 Fed. Reg. 46,843 (Sept. 12, 2018), continued, 90 Fed. Reg. 42,697 (Sept. 3, 2025)....................11, 39

Exec. Order No. 14,248, 90 Fed. Reg. 14,005 (Mar. 25, 2025)....................11, 39

Grand Jury Testimony of Eric Coomer, Fulton County Special Purpose Grand Jury (June 14, 2022), filed Coomer v. Byrne, No. 8:24-cv-00008-TPB-SPF, ECF No. 283-1 (M.D. Fla.) (Exhibit G)....................15

Letter from Hugo Carvajal Barrios to the President of the United States (Dec. 2, 2025) [ECF No. 180-7] (Exhibit E)....................12, 13, 32

Letter from Markwayne Mullin, Secretary of Homeland Security, to the White House Transparency Task Force (Aug. 24, 2026) (Exhibit B)....................11, 17, 27, 28, 39

National Intelligence Council Memorandum, Foreign Threats to US Elections After Voting Ends in 2024 (declassified Oct. 16, 2024)....................11

Press Release, Dominion Voting Systems, Dominion Voting Systems Corporation Acquires Assets of Sequoia Voting Systems (June 4, 2010)....................14

Ralph Pezzullo, Stolen Elections: The Takedown of Democracies Worldwide (2025)....................13



**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

In January 2020, Congress required testimony of Dominion CEO, John Poulos, as part of its 2020 national security oversight of federal elections. Congress demanded Poulos, and Dominion, provide accurate disclosures advising the US government if China provided products or services to Dominion, and this demand needed to include the percentage of Chinese parts used by Dominion in the Dominion brand election equipment. When John Poulos refused to answer the question on the spot during his testimony, and Congress demanded Dominion supplement its answers in writing. Dominion provided deficient, and dishonest responses that Congress needed to fully evaluate 2020 national security concerns to further evaluate national security concerns. Now, Dominion complains the cat is out of the bag.

Following the November 3, 2020 election, Byrne exposed Dominion and its use of Chinese, and foreign employees, and contractors. Dominion doubled down and lied again. It simply could not risk exposure of its involvement with foreign vendors and employees. What Dominion's motion really asks this Court to do, help Dominion conceal the truth by protecting it from a public trial. Dominion has good reason. When it sued Byrne on for defamation over statements he made about Dominion working with China and Venezuela, and Dominion demanded a jury. [ECF No. 1]. Byrne answered, denied the material allegations, pleaded twenty-five defenses, including truth, substantial truth, opinion, and the actual-malice protections owed a public-figure plaintiff. Byrne also demanded a jury of twelve. [ECF No. 36] at 56-59.

The real purpose of Dominion's lawsuit was to silence Byrne and prevent exposure of its foreign involvement, and its lies to Congress in January 2020. Dominion used this Court conceal its documents, containing the very information demanded by Congress, and continue to subvert US government oversight. This has been the name of Dominion's game since it acquired



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Smartmatic/Sequoia. Dominion acquired Sequoia in 2009 to prevent a full CFIUS investigation. Dominion's fear of investigation into its foreign involvement returned when Donald Trump took office in 2025. Dominion immediately orchestrated a name change and shifted ownership to an American CEO, Scott Leiendecker.

Dominion brought this lawsuit for a cool 1.6 billion against Byrne, apparently as a bluff. Dominion never intended to air its dirty laundry in a public court, but Byrne has called their bluff. Byrne wants a jury trial, and he wants it now. He knows that he will prevail on the merits.

What Dominion really complains of in this motion is that it lied to Congress, and proof of its lies were turned over to law enforcement and Congress. Law enforcement referred national security concerns to Congress, and posted press releases via X, formerly known as Twitter. The referral consisted on the very information Congress compelled Dominion to provide in January 2020.

Dominion lied to Congress about its foreign vendors and employees, and filed this lawsuit to confuse and prevent federal oversight. In doing so, Dominion lied found itself in a tangled web. In its Complaint, Dominion sued Byrne for posting a picture Dominion boxes stamped with "made in China" and chastised Byrne in its Complaint that it merely uses transport bags from China, along with a small number of subcomponents. ECF 1, Pg 45. Talk about a big lie. Dominion lied to Congress, and this Court and explicitly stated that the voting machines are not made in China. ECF 1, pg 45.

No wonder Dominion was adamant that Byrne's former counsel be removed, and silenced as an attorney forever. Their own discovery documents show their voting machines go



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

straight to Shanghai for programming that is done in China, by China with cooperation from Dominion's Serbian engineers. Dominion told Congress and this Court, not to worry about China, China is not involved, just insignificant parts and bags, move along please, when all along it contracted to have the Chinese program how the vote, the QR code, is read and tallied! Specifically, Dominion had China manipulate firmware in the 402 printers to work in conjunction with its voting systems, the ICX deployed throughout the United States. ***Exhibit.

Dominion did not just lie about China, and its role in programming the Dominion brand voting systems. Dominion lied about its history, and sued Byrne for "intentionally twisting and misrepresenting" that Dominion was intertwined with Smartmatic and Venezuela. Dominion gaslit Byrne in its lawsuit declaring "Dominion and Smartmatic are competitors; neither is owned by the other." ECF 1, pg 54.

Dominion's own discovery, provided to Congress by law enforcement, revealed a secret second server from Smartmatic/Sequoia  called the "WinEDS, " Eric Coomer, Ronald Morales, and the original Smartmatic/Sequoia crew accessed by "virtual machines." These documents reveal employees from Venezuela, that oringally worked at Smartmatic/Sequoia were working for Dominion performing virtual machine exports during the 2020 election.  **Exhibit**

Byrne was right all along, and he lost his counsel of choice when she provided the evidence to law enforcement. The very evidence that Dominion was required to produce to Congress. Dominion cannot silence Byrne, and his right to speech. Numerous news outlets have covered the same law enforcement press releases subject of Dominion's motion, and several



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

arms of the federal government have announced investigations, and requirements for Dominion/Liberty leading up to the November 2026 election.

## Legal Standard

Rule 55 supplies the framework for a party who "has failed to plead or otherwise defend." F.R.Civ.P. 55(a). This Circuit has confined the remedy to its purpose: "default judgments were designed to handle[] a totally unresponsive party." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 6 (D.C. Cir. 2015) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Default exists for the case in which "the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (citation omitted).

Dominion proceed first under Rule 37(b)(2)(A)(vi), which authorizes default against a party who "fails to obey an order to provide or permit discovery." In *Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995), the court of appeals held Rule 37(b) unavailable because the district court "did not identify a discovery order that ABC violated." Where the rule applies, its "central requirement . . . is that 'any sanction must be "just,"'" which "requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation." *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)). And dismissal-level sanctions may not rest on failures "due to inability, and not to willfulness, bad faith, or any fault" of the party. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958).



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Dominion proceed second under the Court's inherent power, which "must be exercised with particular restraint." *Shepherd*, 62 F.3d at 1480. That power supports a default judgment "only if it finds, first, by clear and convincing evidence—a preponderance is not sufficient—that the abusive behavior occurred; and second, that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits." *Id.* at 1472. Dominion accepted the standard. Mot. at 28. Under either source, default is "inappropriate unless the litigant's misconduct is accompanied by 'willfulness, bad faith, or fault.'" *Wash. Metro.*, 776 F.3d at 4 (quoting *Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1458 (D.C. Cir. 1986)) (alterations omitted).

Three justifications can support a litigation-ending sanction: prejudice so severe "that it would be unfair to require him to proceed further in the case"; "an intolerable burden" on the Court; and the need "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." *Webb*, 146 F.3d at 971 (quoting *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074, 1075, 1077 (D.C. Cir. 1986)). Whatever the justification, "a default judgment must be a 'sanction of last resort,'" used only when "less onerous methods . . . will be ineffective or obviously futile," and the Court must "explain its reason for issuing a default judgment rather than a lesser sanction" with findings "supported by the record." *Id.*; *Bonds*, 93 F.3d at 808-09. "Conclusory statements are not enough." *Webb*, 146 F.3d at 971-72.

In other words, before the judgment Dominion requests may be entered, this Court must identify a discovery order that Byrne failed to follow by providing or permitting discovery or find clear and convincing proof of his own abusive conduct, find a justification satisfied on a



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

supported record, and explain why nothing less severe will do. The Motion supplies none of those findings, and its own exhibits show why none could be made on this paper record.

And on August 24, 2026, eleven days after this Motion was filed, the Secretary of Homeland Security, Markwayne Mullin, wrote the White House Transparency Task Force that three vendors holding more than 80% of the market, naming Dominion, "have acknowledged that their voting machines have parts made in China," and that to receive full federal grants the states "must demonstrate that they have conducted random post-election manual counts of paper ballots to ensure that any errors or manipulation is detected." Ex. B at 1-2, attached as Exhibit B. In other words, the department the Complaint offered as Dr. Byrne's debunker now requires the states to hand-count paper ballots behind machines it identifies as carrying Chinese-made parts. [ECF No. 1] ¶ 78. The letter is a published federal record subject to judicial notice. Fed. R. Evid. 201(b)(2).

Discovery began under a stipulated Protective Order that made a simple promise: Dominion would hand millions of pages of its internal documents to the man it was suing, and those documents would be used in this case and nowhere else. [ECF Nos. 45, 79]; [ECF No. 79] ¶ 1. In December 2023, Dr. Byrne retained a second lawyer, Stefanie Lambert. Mot. at 5. By March 2024, Dominion learned what Ms. Lambert had done with their production: she filed Dominion's documents on the public docket of her own Michigan criminal case, and she gave the login credentials for the production database to an elected Michigan sheriff, Dar Leaf, who posted thousands of pages to his account on X. Mot. at 5; [ECF No. 126 at 8-9, 12-13]. The Magistrate Judge entered a Status Quo Order directing Dr. Byrne and Ms. Lambert "to immediately desist from sharing, distributing, providing access to or discussing any discovery



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

material," and Dr. Byrne signed the verification of compliance the Order required. [ECF No. 77] ¶¶ 1, 8; [ECF No. 84 at 3]. Ordered to attend the disqualification hearing in person, he came, and at the podium he answered "I do" when asked whether he understood the Order and "Yes," twice, when asked whether he would comply. [ECF No. 103 at 61:22-62:4]; Mot. at 7-8.

On August 13, 2024, the Magistrate Judge disqualified Ms. Lambert for her own misconduct and ordered Ms. Lambert and Dr. Byrne to submit sworn affidavits accounting for the unauthorized disclosures. [ECF Nos. 125, 126]. Dominion's request for sanctions against Dr. Byrne was "expressly reserved." [ECF No. 126 at 2]; Mot. at 6, 9. That disqualification is the only sanction ever imposed in this case, and it ran against the lawyer. Ten days later, the Magistrate Judge stayed the affidavit deadline so Dr. Byrne could pursue review, and he pursued it through objections, reconsideration, appeal, rehearing *en banc*, and certiorari, denied November 10, 2025. Minute Orders, Aug. 23, 2024; [ECF Nos. 144, 154, 160]; Order, No. 25-281 (U.S. Nov. 10, 2025). Every step was lawful, and every one lost. Meanwhile, from August 13, 2024, when the Court removed his lawyer, until November 14, 2025, when present counsel appeared, Dr. Byrne had no counsel of record. [ECF Nos. 125, 161]. That is 458 days, and the discovery failures the Motion recounts fall inside that window: the Third Set of Interrogatories served August 30, 2024, the destruction-protocol motion whose response date passed with no lawyer in the case, and the deposition noticed for December 5, 2024. Mot. at 11-12, 33; [ECF No. 146].

On March 31, 2026, the Magistrate Judge lifted the stay, entered the destruction protocol, and directed the production, transfer, sequestration, and privilege-log obligations to Ms. Lambert by name. [ECF No. 175] ¶¶ 3-7. On July 1, 2026, this Court denied the appeals of that order,

ordered compliance with "all the requirements" by July 15, 2026, declined Dominion's request for sanctions, and warned that noncompliance "could certainly justify additional sanctions in the future." [ECF Nos. 179, 180]; [ECF No. 191 at 5]. On July 15, 2026, Dr. Byrne moved to disqualify the Magistrate Judge under 28 U.S.C. § 455, and that motion stands fully briefed and pending before this Court. [ECF Nos. 193, 195].

What happened next comes from Dominion's own exhibits and the Sheriff's own sworn words. On July 22, 2026, Sheriff Leaf wrote the President a letter on his office letterhead announcing that he had evidence from Dominion's internal emails, and on July 25, 2026, nonparties Patrick Colbeck and Peter Bernegger posted the letter and images of the emails themselves to X. Mot. Ex. 17 at 3-4 (CM/ECF pagination); Ex. A at 2. Twelve days later, on August 6, 2026, Dr. Byrne reposted a third account's share of the Bernegger post; the exhibit page reads "Patrick Byrne reposted" and records no words of his own. Mot. Ex. 17 at 3-4; [ECF No. 198-1] (Brook Decl.) ¶ 19. On August 7, 2026, Dr. Byrne published a post of his own, with his own commentary, attaching images of produced emails. Mot. Ex. 18; Brook Decl. ¶ 20. Two days, two different acts, treated separately throughout. One fact frames both: nonparties had posted the email chains in the August posts to the public internet before Dr. Byrne touched anything, the August 6 material by July 25, 2026, and the August 7 chain in part since March 2024. Mot. Ex. 17 at 3-4; Ex. A at 2; Exs. C-3 through C-5.

On August 13, 2026, Dominion filed this Motion. [ECF No. 198]. It asks the Court to strike all twenty-five of Dr. Byrne's defenses, to deem every element of Dominion's defamation claims established without a witness ever taking the stand, and to "enter default judgment against

him and schedule a short jury trial on damages only." Mot. at 45. It requests no lesser sanction, not even in the alternative. Mot. at 43-45.

One thing should be said plainly before the argument begins. The Motion opens with an epigraph of statements it attributes to Dr. Byrne: personal disparagement of judicial officers and proclaimed defiance of orders he contends are unlawful. Counsel defends none of that rhetoric. The lawful path for a party who contends an order is erroneous is the path pursued on his behalf: motions, objections, and review. However, the epigraph is not the Motion, and offensive words are not the elements of the sanction Dominion request.

The point of this Opposition is that Dominion are not asking to be relieved of litigating against Dr. Byrne. Their own prayer demands a jury trial against him. Mot. at 45. They are asking to be relieved of proving falsity and actual malice against him. That is the crux of the whole Motion. Dominion filed it in the same month the Secretary of Homeland Security told the White House that Dominion's machines carry Chinese-made parts. Ex. B at 1-2. Dominion demanded a jury when they filed this case. The Motion is how they leave before it arrives.

The law of this Circuit stands in the way. Default judgment is a "sanction of last resort," available only on clear and convincing evidence of Dr. Byrne's own willful misconduct, only on record-supported findings, and only after a reasoned explanation of why nothing less severe will do. *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998). In five years, no fine, no fee award, no adverse inference, no preclusion order, and no contempt finding has ever been entered against Dr. Byrne, and when Dominion asked for sanctions six weeks before filing, the



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Court said no and chose a warning. [ECF No. 191 at 5]. The Motion asks this Court to leap from that warning to the end of the case. The law does not permit the leap.

## Argument

**Default Judgment Is Reserved for the Essentially Unresponsive Party, and Dr. Byrne Is Defending This Case**

Consider the docket in the week this Motion arrived: a fully submitted disqualification motion awaiting decision, Dominion's opposition answering it, and counsel of record on every filing. [ECF Nos. 193, 195]. That is a defended case. Byrne answered the Complaint, stipulated to the Protective Order, signed the verification the Status Quo Order required, appeared personally when ordered, and has been represented by successive counsel. [ECF Nos. 36, 45, 84 at 3, 103 at 61:22-62:4, 161]. A party "fail[s] to plead or otherwise defend" when he leaves the adversary process with no way forward. F.R.Civ.P. 55(a); *Mwani*, 417 F.3d at 7. Byrne is litigating in this very briefing.

The Motion's answer is that continued litigation against Dr. Byrne is "structurally impossible." Mot. at 30. The Motion's own last page refutes that: Dominion ask this Court to empanel a jury and conduct a contested damages trial against Dr. Byrne. Mot. at 4, 45. A process that can try damages against Dr. Byrne can try liability against Dr. Byrne, particularly where discovery from Dominion "has long been complete" and every publication they sued upon was public the day it was made. Mot. at 37. The discovery whose absence Dominion call



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

disabling is state-of-mind material bearing on actual malice, and the Federal Rules answer withheld state-of-mind evidence with adverse inferences and preclusion rather than with judgment. Mot. at 33-35; F.R.Civ.P. 37(b)(2)(A)(i)-(ii). A defendant who is litigating is not a defendant beyond the reach of lesser sanctions. *Webb*, 146 F.3d at 971. There is nothing "structurally impossible" about Dominion's own discovery documents that prove the very statements that Byrne was sued for in this case. What Dominion means to say is that a trial with an affirmative truth defense will be embarrassing to Dominion, and expose each and every lie it told to the US government.

**The Record Does Not Contain Clear and Convincing Evidence of Willful Misconduct by Dr. Byrne Himself**

The Motion must prove willful misconduct by Dr. Byrne himself, by clear and convincing evidence. Mot. at 28; *Shepherd*, 62 F.3d at 1472. It is carried act by act, order by order, and party by party, not by volume or tone. Three features of this record defeat it. First, the merits-discovery failures were never the subject of any order to provide discovery. Secondly, the 2024 conduct was adjudicated as counsel's, with every sanctions question against Dr. Byrne expressly reserved. Thirdly, the 2026 Byrne statements, are protected first amendment speech, and do not violate any order.

Start with the written discovery. Rule 37(b) reaches only the failure "to obey an order to provide or permit discovery." F.R.Civ.P. 37(b)(2)(A). The Motion cites no order compelling Dr. Byrne to answer the Third Set of Interrogatories, no order compelling production from his accounts and devices, and no order compelling his attendance at the December 5, 2024 deposition. Mot. at 12, 33. Its own opening concedes those failings "are the subject of discovery



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

disputes before the Court." Mot. at 2. A dispute is not an order, and in *Shepherd* the court of appeals vacated a default because the district court "did not identify a discovery order that ABC violated." 62 F.3d at 1474. The orders that do exist in this case govern one subject: the documents that Dominion had already produced. [ECF Nos. 77, 79, 125, 175].

Rule 37(d) does not close the gap. A Rule 37(d) motion "must include a certification that the movant has in good faith conferred or attempted to confer" with the failing party, and the Motion contains none. F.R.Civ.P. 37(d)(1)(B). Rule 37(d)(3) selects from the same sanctions list, so the label changes nothing. *Webb*, 146 F.3d at 971; *Bonds*, 93 F.3d at 808. And the interrogatories and the deposition notice both issued while Byrne's appeal was pending related to the removal of his counsel of choice, Byrne had no counsel of record before the District Court, and Judge Nichols issued a stay acknowledging the appeal. These facts bears on willfulness even if it excuses nothing. F.R.Civ.P. 37(d)(1)(A); [ECF Nos. 125, 161].

Now take the 2024 disclosure to law enforcement. They were Ms. Lambert's acts: Ms. Lambert turned the Dominion discovery documents over to law enforcement, and it Ms. Lambert who gave law enforcement her login access to the document database to preserve chain of custody. Mot. at 5; [ECF No. 126 at 8-9, 12-13]. The remedy the Magistrate Judge imposed ran against counsel, and the opinion said so: "the full scope of Byrne's actions is not yet known," and "what, if any, sanction Dominion might seek against him is not before this Court at this time." [ECF Nos. 125, 126]; [ECF No. 126 at 2]. Byrne maintains a lifetime reporting obligation to law enforcement which is required by the CIA, and federal government. It was Lambert this Court found to have violated an order, and while it was Lambert that was disqualified on this case for her reports to law enforcement, it was Byrne who suffered removal



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

of his counsel of choice. A finding sufficient to disqualify a lawyer is not a finding sufficient to end a client's case. Byrne actively defended this case, and reluctantly replaced Lambert with Ticktin when higher courts declined to hear his appeal absent a final order on this case

This Circuit does not transfer an attorney's misconduct to the client by default. "When the client's only fault is his poor choice of counsel, dismissal of the action has been deemed a disproportionate sanction," and "the District Court should first attempt to sanction the attorney at fault." *Shea*, 795 F.2d at 1077-78. This Court has said it plainly: "the sins of an attorney should not be visited upon an innocent client." *Atkins v. Fischer*, 232 F.R.D. 116, 128 (D.D.C. 2005). *Shea* disfavors dismissal unless the client has been warned, "in clear and unequivocal terms, that his case is in danger of dismissal due to his lawyer's dereliction." 795 F.2d at 1078. No court has found, under any standard, that Byrne directed the public docketing or the handing over of database credentials, and no *Shea* warning was ever given: Byrne was asked whether he would comply, and he said yes. [ECF No. 103 at 61:22-62:4]. The attorney at fault was sanctioned, and *Shea* does not make that step the last one.

The purpose Dominion themselves attribute to Byrne is that "the evidence of criminal acts be provided to law enforcement." Mot. at 5-6. Providing evidence of criminal acts to law enforcement is lawful, and the recipient was an elected county sheriff. Mot. at 5. A protective order governs where produced documents may go, and this Opposition does not argue that an order may be disregarded. The point is narrower and decisive: a purpose of putting evidence of crimes in the hands of the officers empowered to investigate them is the opposite of the bad faith Dominion must prove, act by act, by clear and convincing evidence. *Shepherd*, 62 F.3d at 1472. Dr. Byrne said as much on the air, in the very broadcast the Motion leads with: "Judge can't give



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

us orders not to . . . inform law enforcement." Mot. Ex. 1 at 26:12-14. And facing the directive to destroy the documents, he said on camera: "Judge, I have lifelong intelligence obligations. I've signed contracts that say I've got lifelong obligations to do certain things." Mot. at 18 (quoting Mot. Ex. 2 at 20:30-21:00). Federal law imposes a duty of the same shape on every citizen, because concealing a federal felony from the authorities is itself a crime. 18 U.S.C. § 4. A man who carries that understanding does not read a discovery order in a civil case as a command to keep evidence of ongoing crimes from law enforcement, and Dr. Byrne has said so consistently, in public, from 2024 through 2026. Mot. Ex. 1 at 26:12-21; Mot. Ex. 3 at 9:10-25. Whether his reading is right is a question of law. Whether holding it is willful bad faith is a question of fact, and he substantiates the duty under penalty of perjury in the declaration attached as Exhibit I. Ex. I ¶¶ 3-4, 11-14. Moreover, Byrne's statements refer to Lambert's past production of documents to law enforcement.

The contents of the documents matter for the same reason. The emails and documents at issue reveal that a crime had occurred, and that the Plaintiffs perpetrated it. Law enforcement has said as much on official office letterhead, in a letter to the President that sits in this record because Dominion filed it. Mot. Ex. 17 at 3. Dominion will dispute what their own emails show, and that dispute belongs to a fact-finder, after evidence. What no screenshot can prove, without a hearing and by clear and convincing evidence, is that a man who believed he was looking at proof of the Plaintiffs' crime, and who wanted that proof in the hands of law enforcement, acted in willful bad faith toward this Court. *Shepherd*, 62 F.3d at 1478.

Nor is the national-security frame Dr. Byrne's invention. It is the United States government's. Since September 2018 the country has stood under a declared national emergency



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

because foreign interference in elections "constitutes an unusual and extraordinary threat to the national security and foreign policy of the United States"; the order's definition of "election infrastructure" expressly includes "voting machines" and "voting tabulation equipment," and the emergency was renewed on August 29, 2025. Exec. Order No. 13,848, 83 Fed. Reg. 46,843, 46,846 (Sept. 12, 2018); 90 Fed. Reg. 42,697 (Sept. 3, 2025). In June 2022, the government's own election-security agency published an advisory identifying eight exploitable vulnerabilities in Dominion's ImageCast X system, exploitable by anyone with "access to the Election Management System (EMS)." CISA, ICS Advisory ICSA-22-154-01, Vulnerabilities Affecting Dominion Voting Systems ImageCast X (June 3, 2022). CISA said it had no evidence the vulnerabilities had been exploited, and Dr. Byrne's state of mind does not require otherwise. In March 2025, the President directed the government to keep non-citizens "from being involved in the administration of any Federal election, including by accessing election equipment, ballots, or any other relevant materials used in the conduct of any Federal election." Exec. Order No. 14,248, § 6(a), 90 Fed. Reg. 14,005 (Mar. 25, 2025). Parts of that order's voter-registration provisions have been preliminarily enjoined; the provisions cited here have not. *League of United Latin Am. Citizens v. Executive Office of the President*, No. 25-cv-946 (D.D.C. Apr. 24, 2025). The Intelligence Community's declassified assessment states that "some U.S. adversaries—at a minimum China, Iran, and Russia…have the technical capability to access some U.S. election-related networks and systems." National Intelligence Council Memorandum (declassified Oct. 16, 2024), quoted in Ex. B at 1. And the Secretary of Homeland Security has written: "There is no question that election security is national security." Ex. B at 2. A man who

forms his beliefs inside that official record is standing in a category the government built. ***new order***

Then, on July 10, 2026, the White House released what the Central Intelligence Agency itself had written. A CIA Note dated June 29, 2026, declassified July 1, 2026, summarizes intelligence reporting from 2004 to 2020 on Venezuela's electronic voting manipulation capabilities. Ex. F. The Note states that Venezuelan officials "developed sustained interest and likely some capability in manipulating electronic voting systems, including Smartmatic technology"; that Venezuelan intelligence services worked with the National Electoral Council and Smartmatic "to develop plans to manipulate election results using preprogrammed voting machines"; and that reporting from September 2020 described a technique built on "creating a second set of virtual machines" that would "substitute manipulated data while making votes appear to originate from legitimate machines." Ex. F at 1-3. Candor requires the rest: the Note also records the 2006 assessment that neither Smartmatic nor Venezuela then had "the level of control or access required" to manipulate an election outside Venezuela in a predictable fashion. Ex. F at 4. That limitation turns on access, and access is the very subject of the produced emails. The White House released the Note thirteen days before the July 23, 2026 broadcast, and the July 31 broadcast opened on it. Mot. Ex. 14 at 2:6-15. So when Dr. Byrne spoke in July 2026, he spoke with the Agency's declassified reporting in one hand and Dominion's own emails in the other.

His understanding that foreign operatives work through voting-system companies also has a source on this docket. On December 2, 2025, Hugo Carvajal Barrios, the former Director of Military Intelligence of Venezuela, now in an American prison on his own guilty plea, wrote a

public letter to the President stating that "Smartmatic was born as an electoral tool of the Venezuelan regime," that "[t]he Smartmatic system can be altered—this is a fact," and that "[r]egime operatives maintain relationships with election officials and voting-machine companies inside your country." Ex. E at 2; [ECF No. 180-7]. Dr. Byrne does not offer the letter for its truth; the Court need not believe a word of it. It is offered for its effect on the man who heard it, which is not a hearsay use, and Dominion's own first exhibit records the hearing: the host read the proffer aloud with Dr. Byrne on the program. Fed. R. Evid. 801(c); Mot. Ex. 1 at 5:8-16.

Byrne's connection to the private account he credits is no secret either. Beginning in late 2020, he financed, openly and under his own name, a criminal investigation of the Venezuelan regime's election technology conducted by Gary Berntsen, a two-decade CIA operations officer and Chief of Station, and Martin Rodil, a Venezuelan-born investigator; an account of that investigation was published at book length in 2025, and Dr. Byrne describes what the investigators told him, and when, in his declaration. Ralph Pezzullo, Stolen Elections: The Takedown of Democracies Worldwide (2025); Ex. I ¶¶ 5-6, 8-10. A man who spends years and a large share of his fortune investigating what he believes is a crime against the United States is not feigning the belief; he is acting on it, in the open, and sincerity is the question willfulness asks. *Shepherd*, 62 F.3d at 1478.

The software in the emails has a corporate history, and it is written in records no one disputes. WinEDS, the election-management software into which the engineers were loading results on election morning, came to Dominion from Sequoia Voting Systems. Exs. C-1, C-4, C-6. The CIA Note records that Smartmatic acquired Sequoia in 2005, that the 2006 National

Security Threat Assessment evaluated the acquisition as a "moderate overall threat to US national security interests," and that the pressure that followed "resulted in Smartmatic divesting its ownership of Sequoia in 2007." Ex. F at 3. On June 4, 2010, Dominion acquired Sequoia's assets, the WinEDS software among them. Press Release, Dominion Voting Systems, Dominion Voting Systems Corporation Acquires Assets of Sequoia Voting Systems (June 4, 2010). Dr. Byrne's shorthand for that history, "WinEDS (nee Venezuela's 'Smartmatic SAES')," compresses it, and whether the compression is fair is a merits question. Mot. Ex. 18 at 2. What the public records establish is narrower and enough: the company Venezuela used owned the maker of WinEDS for two years, and the federal government treated that ownership as a national-security matter.

Now put the pages beside the assurances, because that comparison is what Dr. Byrne saw. Every page is in this record, reproduced in Exhibits C-1 through C-11. On October 31, 2020, Dominion's Director of Product Strategy and Security wrote of Chicago's early-vote cartridges: "we can set up the cartridges to load over night and as they 'come in' we can export and load in to wineds." Ex. C-1. On the morning of election day, the loading was failing: "Cartridge 31057 with 19944 total cards cast in a SINGLE load through the cartridge reader FAILED at 55 minutes in." Ex. C-3; Mot. Ex. 18 at 2. Dominion's Vice President of Engineering and General Manager for Europe listed the fallbacks, including "manual results entry in WinEDS." Ex. C-4. Months earlier, a Dominion employee had reported, under the subject "VPN access with City": "We were able to establish VPN connection from the new virtual machine created today." Ex. C-7. The declassified CIA Note describes the same instrument from the intelligence side: a manipulation technique built on "creating a second set of virtual machines." Ex. F at 2. Now hold the pages



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

against what the public was told: an American company, machines that could not be reached from outside networks, developers in Denver. Exs. D-2, D-5; [ECF No. 1] ¶¶ 99, 156. A layman who reads engineers reaching election equipment by VPN from virtual machines, and manual results entry in the tabulation software on election morning, while the company assures legislatures that none of it is possible, does not need malice to conclude that something is being concealed. He needs only his eyes. What the pages foreclose, on paper and without a hearing, is any clear and convincing finding that the belief was a pretext. *Shepherd*, 62 F.3d at 1478; *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986).

One more fact bears on what a reasonable person made of these emails, and it concerns the man who wrote many of them. The Director of Product Strategy and Security who signed the October 31, 2020 email is Eric Coomer, Dominion's witness on how its systems work. Ex. C-1. In June 2022, Dr. Coomer told the Fulton County special purpose grand jury that Dominion's tablets and precinct scanners "are not ever connected to the internet" and that "Dominion doesn't have any access" to vote data, which "is impossible." Ex. G at FCDA00135210-11, 135267 (public docket copy, filed unsealed, *Coomer v. Byrne*, No. 8:24-cv-00008-TPB-SPF, ECF Nos. 283-1, 329 at 8 (M.D. Fla.)). Then, in his January 27, 2026 deposition in the case he brought against Dr. Byrne, Dr. Coomer said more. Dominion's contractors, he testified, "had the ability to remote into test hardware and systems within the various Dominion offices." Asked whether they could remote into the Denver office, he answered: "Yes, for testing and quality assurance, yes." Asked whether he "did communicate with engineers in Serbia prior to the 2020 election," he answered: "Yes." And the "trusted build" Dominion installs "overwrites the data," to "replace whatever is on the system." Coomer Dep. 65:19-66:03, 86:19-87:04, 88:17-19 (Ex. H). He also



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

testified, asked whether he disliked the candidate whose election he helped administer: "Yeah, I do not like his policies or who he is as a person." *Id.* 53:10-13. A man who set the grand jury testimony beside the deposition beside the emails formed his suspicion out of the witness's own sworn words, and whether he acted in clear-and-convincing bad faith is not a question a paper record can answer. *Shepherd*, 62 F.3d at 1472, 1478.

What remains are the broadcasts and posts of May through August 2026 and the accounting affidavit. No hearing has been held on any of them, and no finding made. As to the affidavit, the obligation was imposed on August 13, 2024, stayed ten days later, and revived on March 31, 2026; this Court ordered compliance by July 15, 2026, fourteen days before Dr. Byrne moved to disqualify the judicial officer who would administer the obligation. Minute Orders, Aug. 23, 2024; [ECF Nos. 175, 179, 191, 193]. What consequence flows from that sequence is a question for a compliance proceeding, with notice, evidence, and findings. An unadjudicated question is not clear and convincing proof of willful defiance. *Shepherd*, 62 F.3d at 1478.

None of this asks the Court to approve anything. What has not happened is the finding that must precede the ultimate sanction, and the Motion does not ask the Court to make it. The Motion asks the Court to skip it.

**Dominion's Exhibits, Grouped by What Each Actually Records, Do Not Prove a Willful Disclosure of Discovery Material**

Dominion filed eighteen exhibits and a declaration. [ECF No. 198-1] (Brook Decl.) ¶¶ 3-20. The Motion treats them as one mass of misconduct. The law does not: default requires clear and convincing proof of Dr. Byrne's own willful violation, act by act, and each exhibit is offered as proof of an act. *Shepherd*, 62 F.3d at 1472. So each exhibit deserves the same three

questions. What does it actually record? Was the material it records already public, from a source other than Dominion's production, before Dr. Byrne spoke? And does it show that the document displayed was Discovery Material produced in this case, which is what the orders reach, or something else? [ECF No. 79] ¶¶ 1, 29; [ECF No. 77] ¶ 1.

A fourth point runs through every exhibit, and Byrne states it once here rather than eighteen times. The documents at issue evidence ongoing crimes of national significance. That is what law enforcement reported to the President and Congress, and what the Secretary of Homeland Security wrote to the White House. Ex. A at 2; Mot. Ex. 17 at 3; Exs. D-1 through D-6; Ex. B at 1-2. Dominion dispute it, and the dispute is for a jury. However, the character of the material bears on willfulness, on the weight a protective order carries when its enforcement would bury that evidence, and on the First Amendment interest in speech about the integrity of a national election. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-88 (3d Cir. 1994); *Hepps*, 475 U.S. at 776. Dr. Byrne does not argue that the character of the material excuses noncompliance with an order. He argues that it is evidence the Court must weigh before it decides what any violation deserves.

Seventeen comparison exhibits accompany this Opposition, built so the Court can see the point rather than take counsel's word for it. Exhibits C-1 through C-11 set each document Dr. Byrne displayed beside the earlier public posting of the same document, with the matching words boxed in red; Exhibits D-1 through D-6 set each broadcast statement, from Dominion's own certified transcripts, beside the 2024 letter in which law enforcment had already told Congress the same thing. Each exhibit states on its face where the public copy was posted, and when.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

**The Brook Declaration Authenticates Screenshots and Identifies No Produced Document**

The declaration is four pages, and its author is Dominion's counsel. Brook Decl. ¶ 1. It attaches eighteen exhibits as "true and correct" copies of transcripts, videos, screenshots, and one court order, and for two of them it adds a conclusion: the posts "disseminated documents that Plaintiffs produced, Bates-stamped, and marked confidential in this case." *Id.* ¶¶ 3-20. That is the whole of Dominion's evidence that any document Dr. Byrne displayed was Discovery Material. It identifies not one Bates number, production volume, or page by which the Court or the Defendant could test the conclusion; counsel does not say she compared the images in the posts to pages in Dominion's production, or how; and for the sixteen other exhibits the declaration draws no connection between anything shown or said and anything produced. Fed. R. Evid. 602, 901(a). The declaration authenticates the containers. It says nothing about the contents. In other words, the one witness Dominion offers does not testify that any displayed page came from Dominion's production rather than from a copy already on the public internet, and where the same pages have been public since March 2024, the source of the copy is the whole case. *Seattle Times*, 467 U.S. at 34, 37; [ECF No. 79] ¶ 1; Exs. C-1 through C-5, C-7. Byrne's public statements are not a new reveal of any sort. Byrne's discussion is limited to the law enforcement press releases that are covered by numerous new outlets.

**The May and June Exhibits Record Speech, Not Documents, About Subjects Already Public**

Exhibits 1 through 9 cover the broadcasts of May 15, May 19, and June 25, 2026, with their accompanying posts. Brook Decl. ¶¶ 3-11. No document appears on screen in any of them, and the Motion does not contend that one did; its own verbs are "allude," "describing," and "discussing." Mot. at 17-21. Describing and discussing are speech. The Status Quo Order's

prohibition on "discussing any discovery material" reaches the documents, and the Magistrate Judge has construed her orders not to reach commentary: they "do not prevent the Parties or Counsel from discussing or criticizing the case in general." [ECF No. 77] ¶ 1; [ECF No. 126 at 38 n.20]. Whether a general characterization of emails, without a page, a quotation, or a name, "discusses" Discovery Material within the meaning of that order is a question the Court has never decided, and it cannot be decided against Dr. Byrne on clear and convincing evidence from a transcript alone. *Shepherd*, 62 F.3d at 1478.

Every subject on those broadcasts was already public by law enforcement press release, and Exhibits D-1 through D-6 show it side by side. The Chinese-made motherboard and firmware are the subject of the May 6, 2024 law enforcement letter to Congressman Jordan. Ex. D-1. Remote access by employees in Serbia is the subject of his second letter of the same day, which described "Dominion employees from Serbia monitoring vote tallies live" with "real-time, administrative remote access." Ex. D-2. The claim that Dominion's executives told legislatures one thing while their emails said another is the perjury theory of his March 17, 2024 letter posted by press release. Exs. D-2, D-3. The Antrim County email and the VPN email were among the pages the law enforcement posted on its March 18, 2024 press release. Exs. C-7, D-3, D-4. The Complaint itself pleads that Dr. Byrne was speaking about Venezuelan software and Chinese components in November 2020, years before Dominion produced a page. [ECF No. 1] ¶ 153(a)-(r). Speech about subjects law enforcement had already put before Congress, from documents he had already posted in a press release, is not the disclosure of a secret.

Byrne does not soften the worst of these transcripts. On May 19 he said he was under order not to answer the host's question "but I'm going to do it anyway," and on June 25 he said,

"Screw you, judge. I'm ignoring your orders." Mot. Ex. 3 at 5:14-19; Mot. Ex. 7 at 9:14-22. Byrne's statement did not violate an order, and bravado is not an element of the sanction, and an insult proves none of the elements. *Webb*, 146 F.3d at 971. What the May 19 transcript adds about Ms. Lambert, read in full, is purpose: sending the material to law enforcement, on the stated ground that "this is national security," after applications to this Court to permit exactly that had, in Byrne's account, gone unanswered. Mot. Ex. 3 at 9:10-25. Purpose is a fact for a hearing. The June 25 clip's two factual statements come from public proceedings: a deposition in another case that, on his account, was made public by agreement, and correspondence a federal court had described in a published order seventeen months before the broadcast. Mot. Ex. 7 at 4:1-8; *Halderman v. Herring Networks, Inc.*, No. 24-51057, Op. & Order at 12 (E.D. Mich. Jan. 24, 2025). The rest of this group is other people's words or headlines over video, displaying no document. Mot. Exs. 5, 6, 9, 13.

Exhibit 10 stands alone: it is a June 29, 2026 order of the Middle District of Florida in *Coomer v. Byrne*, imposing fee sanctions over a deposition altercation in that case. Mot. Ex. 10 at 1, 17-23. Nothing in it is Discovery Material, and nothing in it is an order of this Court; conduct at a deposition in Tampa is not evidence that Dr. Byrne willfully violated the Protective Order in Washington. *Shepherd*, 62 F.3d at 1472, 1474. What the exhibit does establish helps the Defendant: it records that Byrne moved in this Court to lift or modify the Protective Order and that the motion remains pending. Mot. Ex. 10 at 3 n.2.

**The July Broadcasts Displayed Pages a Sheriff Had Already Published, and Some are Subject to Freedom of Information Act**



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

The document conduct the Motion alleges begins on July 23, 2026. Mot. at 24. The frames of Dominion's own video exhibits show what was displayed across the July 23 and July 31 broadcasts: the October 31, 2020 "Chicago EV tabulators" email; the November 3, 2020 "Chicago EV loading metrics" chain; a March 2020 "Chicago stats" chain; the March 30, 2020 "VPN access with City" email; two emails from February 2011 exchanged with the office of Louisiana's Commissioner of Elections; a photographed technical note referring to a tablet at "Shanghai customs"; a former employee's public LinkedIn profile; and a page of Liberty Vote's public website. Mot. Exs. 12, 15 (videos); Exs. C-1 through C-11 (reproducing the frames). Byrne said on the air why he was showing them: "Some of these I'm under order from a federal judge not to show," and "[o]ur answer is this is national security." Mot. at 24-25 (quoting Mot. Ex. 11 at 12:15-22, 20:23-21:21).

Sort the displayed items by what the record shows about their public history. The October 31, 2020 chain and the VPN email were posted by law enforcement press release on March 18, 2024, in a compilation twenty-eight months before the broadcast. Exs. C-1, C-2, C-7. Pages of the November 3, 2020 chain appeared in the same March 2024 compilation, and the law enforcement press release posted the chain again on July 24, 2026, a week before the July 31 broadcast, with a letter to the President announcing the release; Exs. C-3 through C-6; Ex. A at 2; Mot. Ex. 17 at 3. The photographed Shanghai note was on September 4, 2025, ten months before the broadcast, and the copy he posted bears a production label. Ex. C-10. One page displayed on July 31 settles the question of copies for that page by identity rather than inference: the production label printed at its foot is the label printed on page 71 of the compilation the Sheriff posted on March 18, 2024. Ex. C-4. The label proves the point rather than undermining



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

it: the page sat published to the world, by a nonparty, long before Dr. Byrne displayed it. Seattle Times, 467 U.S. at 34.

Three items stand on a second, independent ground: the two 2011 Louisiana emails and the March 2020 "Chicago stats" chain are connected to Dominion's production by no evidence at all, and the 2011 emails carry no production stamp as displayed. Exs. C-8, C-9, C-11; Brook Decl. ¶¶ 13-14. The 2011 emails are, on their faces, records exchanged with a state agency. A page must be Discovery Material produced in this case before displaying it can violate an order that governs Discovery Material, and that showing is Dominion's to make, page by page. [ECF No. 79] ¶¶ 1, 29. For these pages Dominion have not attempted it. The LinkedIn profile and the company web page are public internet pages, not discovery.

Dominion will answer that Dr. Byrne announced he was showing documents he was under order not to show. A speaker's bravado is not a substitute for Dominion's proof of what the page was and where the copy came from; the legal character of a page is a fact the exhibits must prove, not a status the speaker can confer on it. The Protective Order's own first paragraph preserves the use of material "lawfully obtained independently of this Litigation," and Seattle Times protects the same thing. [ECF No. 79] ¶ 1; 467 U.S. at 34. Which copy was on the screen, the one Dominion produced or the one the Sheriff published, is the question the Motion never asks, and its own redaction note concedes that the frames cannot answer it: "Plaintiffs added redactions in these screen captures to avoid further dissemination." Mot. at 25. Undersigned counsel cannot close that gap either: the Court has not granted undersigned counsel access to the Dominion discovery repository, which is necessary to respond to this motion and prepare for trial, so counsel has no way to verify whether any email shown on a broadcast is a

document Dominion produced. Counsel's hands a tied, making him ineffective in this regard. Given law enforcement's press release of the same October 31, 2020 chain, it is entirely possible that the emails displayed on the July broadcasts were obtained from third parties, including from law enforcement. Ex. A at 2. A record that cannot say which copy a speaker held cannot prove disclosure of Discovery Material by clear and convincing evidence. Shepherd, 62 F.3d at 1478.

The August Posts Republished Documents Nonparties, Law Enforcement/Press Had Already Made Public, and Each Requires Its Own Proof

Exhibit 17, Dominion's own filing, is the best evidence in the record for the Defendant. It establishes that the Sheriff sent a letter to the President dated July 22, 2026 and informed the public by press release; that Mr. Colbeck published the letter and Mr. Bernegger published the pages on July 25, 2026; and that Dr. Byrne's only act on August 6 was to repost, twelve days later, what two nonparties had already provided to the government, including a press release, with no words of his own. Mot. Ex. 17 at 3-4; Brook Decl. ¶ 19. Dominion filed the Sheriff's letter themselves, and they cannot now ask the Court to treat the man who reposted it as the one who made it public. As filed, the images in the exhibit are reproduced at a resolution at which no stamp can be read, and the declaration supplies no number. Mot. Ex. 17 at 4; Fed. R. Evid. 602, 901(a).

The August 7 post is a separate act, and Dr. Byrne treats it as one: an original post, his own commentary, attaching two legible pages of the November 3, 2020 chain. Mot. Ex. 18 at 2; Brook Decl. ¶ 20. Three things are true of those pages. First, they belong to a chain government nonparties had posted to the public internet through press release in part since March 18, 2024

and again on July 24, 2026, and the post's cartridge-failure message sat at page 72 of the March 2024 compilation. Exs. C-3 through C-6. Secondly, as displayed in Dominion's own exhibit, no production stamp is visible on the pages. Mot. Ex. 18 at 2. Thirdly, the same chain has sat on the public docket of this Court, in legible form, since Dominion filed Exhibit 18 on August 13, 2026 without a seal. Dominion cannot both file the emails on the public docket and describe them as secrets whose exposure requires the end of the case.

This argument has a limit, and Dr. Byrne states it himself. Prior publication did not repeal any order, and a party can violate an order by republishing material that others made public. What the public status of the documents changes is what remains for a sanction to measure: the willfulness of passing along what the whole world could already read, the harm two posts added to a disclosure nonparties had completed weeks earlier, and the fit between that increment and a judgment ending the case. Bonds, 93 F.3d at 808-09; Webb, 146 F.3d at 971. Each is a question of evidence, and none has been heard. The person who takes a secret and the person who repeats what is no longer secret have not done the same thing.

Run the eighteen exhibits through the three questions and Dominion's Motion comes apart. Exhibits 1 through 9 record speech about subjects law enforcement had put before Congress in 2024. Exhibit 10 is another court's order about other conduct. Exhibits 11 through 18 display documents, and for every item displayed one of two things is true: either a nonparty had already posted the same document to the public internet before Dr. Byrne displayed it, or nothing beyond counsel's conclusory declaration connects the displayed page to Dominion's production. Exs. C-1 through C-11. Not one exhibit identifies the copy on the screen as the

copy Dominion produced. That is the showing the orders require and the Motion never makes. [ECF No. 79] ¶¶ 1, 29; Shepherd, 62 F.3d at 1478.

A Rule 37(b) Sanction Must Be Related to the Discovery the Violated Order Required, and This One Would Not Be

Even if an order in this case supplies the Rule 37(b) predicate, the rule imposes a second limit the Motion never confronts: "Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." Insurance Corp. of Ireland, 456 U.S. at 707. The second standard is where the rule touches the Constitution: a court may treat a party's suppression of proof as an admission that the defense the proof would have tested lacks merit, and that presumption presumes only "the want of merit in the asserted defense" the withheld proof concerned. Hammond Packing Co. v. Arkansas, 212 U.S. 322, 350-51 (1909); Ins. Corp. of Ireland, 456 U.S. at 706. In other words, a discovery sanction may decide what the withheld discovery would have proven. It may not decide the rest of the case.

Measure the fit using Dominion's own description of what they lost. The withheld material, they say, consists of communications "that would show what he knew and disregarded and with whom he coordinated his publications," because "actual malice is an inquiry into a defendant's state of mind," and the overdue affidavit matters because its absence "prejudices Plaintiffs' ability to prove actual malice." Mot. at 33-34. Three times on two pages, the claim at issue is actual malice. Dominion's own theory of prejudice reaches no further than state of mind.

The judgment they demand would decide far more: falsity, defamatory meaning, publication, and injury, and it would strike the pleaded defenses that the statements are true, substantially true, opinion, not "of and concerning" Dominion, and statements of third parties. [ECF No. 36] at 56-59. The relief reaches past the only presumption that authorizes it. Not to mention, the real malice is that these very documents show Byrne stated the truth all along.

The orders confirm the mismatch. The Protective Order's sanctions paragraph is triggered by one thing: violation "by releasing, leaking, or otherwise disclosing Confidential or Attorneys' Eyes Only Discovery Material to persons or entities not entitled to such Discovery Material under this Order." [ECF No. 79] ¶ 29. And this Court has already characterized the March 31, 2026 Order in the second standard's own language: it "was not dispositive of any claim or defense" and "concerns ensuring compliance with Magistrate Judge Upadhyaya's earlier orders . . . rather than resolving any of Byrne's claims or defenses." [ECF No. 191 at 3]. A sanction for violating those orders may reach the subject they govern. It cannot resolve elements of claims the Court has already held they do not touch. Ins. Corp. of Ireland, 456 U.S. at 707. A failure to file an affidavit accounting for past disclosures supports no inference about the truth or falsity of the statements Dominion sued upon. Neither does a repost. Hammond Packing, 212 U.S. at 350-51.

The elements of this claim make the second standard constitutional bedrock. The Constitution requires that "the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages," and that actual malice be proven with "convincing clarity." Hepps, 475 U.S. at 776; New York Times Co. v. Sullivan, 376 U.S. 254, 285-86 (1964). Presumed and punitive damages are unavailable "at least when liability is not based on a showing of knowledge



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

of falsity or reckless disregard for the truth." Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974). And judges "must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'" Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 511 (1984). A discovery sanction that deems those elements established asks the Court to do by presumption what the Constitution requires be done by proof. And falsity is now contested in fact: the Complaint shrinks the China connection to a parenthetical about microchips, while the Secretary of Homeland Security treats it as a supply-chain risk serious enough to audit a national election. [ECF No. 1] ¶¶ 99, 156; Ex. B at 1-2. A dispute of that size is what juries are for.

Freeman v. Giuliani, 691 F. Supp. 3d 32 (D.D.C. 2023), does not hold otherwise: three features supplied there what is missing here, a spoliation predicate under Rule 37(e)(2), orders compelling the very discovery withheld together with an unpaid monetary sanction, and the defendant's own stipulations conceding liability. Id. at 40-41, 61-63. Courts applying the second standard set aside sanctions that reach past it. Fjelstad v. Am. Honda Motor Co., 762 F.2d 1334, 1342 (9th Cir. 1985) (withheld material supported no presumption "that the denials in its answer to the complaint are untrue"); Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1152 (11th Cir. 2006) (stricken defenses "had no apparent relationship with the discovery abuse"). At a minimum, the second standard confines any sanction to the subject the violated order governed, the handling of Dominion's produced documents, and it forecloses a judgment that resolves the elements of a defamation claim.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

**A Party May Not Hide Behind a Protective Order to Conceal Evidence of Ongoing Criminal Conduct of National Importance**

The Motion tells the story as a closed episode: a 2024 breach, a 2026 relapse, and nothing left but punishment. The record is in the present tense. Law enforcement declared that his office preserved the documents, "has made numerous referrals to Congress, Homeland Security, the Department of Justice, and other government offices," and "is cooperating with investigations." Ex. A at 2. Dominion's own first exhibit records that DHS passed the evidence that law enforcement provided to the FBI. Mot. Ex. 1 at 3:17-25. And on August 24, 2026, the Secretary of Homeland Security directed that the midterm elections proceed under random hand counts of paper ballots, in a letter naming Dominion and the Chinese-made parts in its machines. Ex. B at 1-2. Whatever these proceedings find, they are proceeding now.

That present tense matters because of what a protective order is for. Rule 26(c) authorizes protection, on good cause, against "annoyance, embarrassment, oppression, or undue burden or expense" in discovery, and Seattle Times upheld such orders precisely because they are "limited to the context of pretrial civil discovery" and do "not restrict the dissemination of the information if gained from other sources." F.R.Civ.P. 26(c)(1); Seattle Times, 467 U.S. at 37. So a party cannot hide behind a protective order to prevent disclosure of its own suspected criminal conduct, least of all conduct of national importance. Among the circumstances that weigh against confidentiality are that it "is being sought over information important to public health and safety" and that "the case involves issues important to the public." Pansy, 23 F.3d at 787-88. A protective order is a shield for a litigant's privacy. It is not a hiding place for evidence of crimes. Not to mention evidence that the very statements that Defendant is sued for are true.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

The Sheriff examined Dominion's internal emails and declared under penalty of perjury that they "contained evidence of national security concerns, and criminal acts," and he advised the President that remote access to United States election equipment "went undetected by clerks across the country." Ex. A at 2; Mot. Ex. 17 at 3. Dominion dispute every characterization, and the dispute is theirs to litigate. What Dominion cannot dispute is that the statements exist, that federal officers hold the documents, and that Dominion's own filings put all of it in this record.

The authentication gap and the national significance together impale the Motion on a fork. Either Dominion can prove the displayed emails are their produced documents, or they cannot. If they cannot, the disclosure case fails for want of evidence. If the documents are authentic, then on the face of the public record they are evidence bearing on suspected crimes of national significance, held by federal law enforcement, and the policy governing protective orders would call for modification in the interest of public transparency, not for ending the case of the man who spoke about it. Seattle Times, 467 U.S. at 34; Pansy, 23 F.3d at 787-88. Authentic or not, the Motion fails.

This argument claims less than it may appear to. Dr. Byrne does not contend that a protective order lapses because its subject interests law enforcement. The Magistrate Judge described the lawful channel, and the Motion quotes her doing so: requests concerning "Congress or the DOJ or law enforcement" go through "the mechanism in the protective order." Mot. at 8. Dr. Byrne contends that applications invoking that channel went unanswered, and that contention has never been tested. Mot. Ex. 3 at 9:10-25. What the ongoing investigations foreclose is not a finding of violation. It is the leap from violation to the ultimate sanction, on paper, while the agencies still hold the referred material.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

The Judgment Dominion Seek Would End the Duty to Preserve and Start the Destruction of the Evidence Federal Agencies Are Examining

What happens to the documents on the day after the judgment Dominion request is already written into the orders of this case. The Protective Order provides that within sixty days after notice of a judgment "finally disposing of the Litigation," and upon Dominion's written request, every person holding Confidential or Attorneys' Eyes Only Discovery Material must make a good-faith effort to return it to Dominion or destroy it, and certify the destruction in writing. [ECF No. 79] ¶ 25. A default judgment followed by a short damages trial ends the Litigation. The day it ends, the sixty-day clock starts, the preservation obligations of this case run out, and the only copies of these emails any order of this Court requires anyone to keep are the copies Dominion keep for themselves. Meanwhile, the referred material sits with federal agencies, and a grand jury returned a superseding indictment against Smartmatic's parent in October 2025. Ex. A at 2; Mot. Ex. 10 at 3 n.3.

Congress has made it a felony to destroy a document "with the intent to impair the object's integrity or availability for use in an official proceeding," or to impede "the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. §§ 1512(c)(1), 1519. Those statutes state a national policy, and the policy is simple: while federal investigations run, the evidence is preserved. Dr. Byrne accuses no one, and the Court need find no intent. The point is structural. Dominion stipulated to the destruction moved for the destruction protocol, obtained it, and now move for the one order that would set the end the case and destroy the documents that are subject to government investigation. [ECF No. 79] ¶ 25; [ECF Nos. 128, 175]; Mot. at 45.

What Dominion really wants is the evidence of its foreign involvement destroyed, and a judgment issues an end date. Therefore, if the Court grants any part of the Motion, Dr. Byrne asks that the order expressly preserve every preservation obligation now in force, and stay the operation of Paragraph 25 of the Protective Order and of the destruction protocol, until the investigations reflected in this record conclude. Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 108 (2017); Bonds, 93 F.3d at 808.

**Dr. Byrne's Insults of the Magistrate Judge Are Protected Opinion That Violated No Order**

Strip the Motion of its quotations of Dr. Byrne's rhetoric and see what remains. The Motion opens with an epigraph of his insults and returns to them page after page. But an insult is not an element. No order in this case even purports to restrict criticism of the Court; the Magistrate Judge has construed her orders not to reach it, and she "did not fault or prohibit Byrne from making statements related to issues presently before this Court, about the Court, Dominion, or this litigation generally." [ECF No. 126 at 38 n.20]. The rhetoric violated no order, the Motion does not contend that it did, and the Motion quotes it anyway, at length, asking the Court to feel rather than to find.

The quotations mix two kinds of statements. Some are assertions about the Magistrate Judge's prior representation of Venezuelan interests, and their kernel is not an invention: before taking the bench, the Magistrate Judge appeared as lead counsel for the Bolivarian Republic of Venezuela, during the government of Nicolas Maduro, in *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir.). [ECF No. 193 at 6]. Those facts belong to the pending motion under 28 U.S.C. § 455, and this Opposition does not re-argue them; what Byrne made of them on a webcast was compressed, coarse, and his opinion The rest are epithets, and



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

the Constitution has a category for them: a statement is protected unless it can "reasonably [be] interpreted as stating actual facts" about its subject, a rule that preserves the "imaginative expression" and "rhetorical hyperbole" of public debate. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)); *accord Khodorkovskaya v. Gay*, 5 F.4th 80 (D.C. Cir. 2021). Nobody hears a litigant call his case "an abortion of a case" and understands him to be reporting facts. Mot. Ex. 3 at 9:12. Debate about official conduct "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Sullivan*, 376 U.S. at 270.

The record hands the Court a controlled comparison. On the same subject, Dr. Byrne produced two statements: through counsel, a motion that rests on appearance alone and disclaims any contention of actual bias, and on a webcast, the same substance without a pleading's discipline or its manners. [ECF No. 193 at 4, 12]. The distance between the two is the distance between a brief and a shout, and the First Amendment covers both. A man who believed the Maduro regime had reached American elections, and who then learned that the judicial officer administering discovery in his case had once appeared in federal court for that individual and government, experienced the discovery as injustice and spoke with passion. Ex. E at 2; [ECF No. 193 at 6]; Ex. I ¶ 15. The feeling may be mistaken, and the innocent explanation is real: a lawyer's arguments are her client's, and Byrne's own motion says so. [ECF No. 193 at 12].

**Dominion Has Not Been Prejudiced**

Dominion come to this Motion with their proof in hand. Discovery from Dominion "has long been complete," and every publication they sued upon was public the day it was made. Mot. at 37. The first *Shea* justification asks whether misconduct has "severely hampered" the



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

movant's case, and delay that merely prolongs litigation "is not a sufficient basis for establishing prejudice." *Webb*, 146 F.3d at 971; *Wash. Metro.*, 776 F.3d at 5 (citation omitted).

The Motion's three categories of claimed prejudice each map onto a remedy short of judgment. State-of-mind discovery bearing on actual malice maps onto an adverse-inference instruction; the overdue accounting affidavit maps onto an order compelling it on a date certain, backed by contempt; and the alleged continuing disclosure of produced documents has remedies that live outside a merits judgment: contempt, the destruction protocol already entered, and enforcement against the persons who hold the materials. Mot. at 33-35; F.R.Civ.P. 37(b)(2)(A)(i)-(ii); [ECF No. 175]. On that third category, Dominion's own exhibits show what a judgment would not accomplish: the documents were contained in law enforcement press releasees, and a judgment against Byrne retrieves nothing, removes nothing, and restrains nobody. Mot. Ex. 17 at 3-4. The mismatch between the harm claimed and the remedy demanded is the surest sign that the Motion seeks punishment rather than protection. *Bonds*, 93 F.3d at 808.

The nature of the pages narrows the claimed injury further. What the record shows on its face is 2020 global employee coordination demonstrated by Dominion's emails, 2011 logistics correspondence exchanged with a state elections office, an email that is subject to state Freedom of Information Act requirements, and a photographed firmware note; no page whose commercial value the Motion or the Brook Declaration even asserts. Exs. C-1 through C-11. The Motion's real theory of harm is reputational: the posts were used, it says, "to suggest that Plaintiffs' internal emails proved government-backed election fraud." Mot. at 32-33. Rule 26(c) protects property and privacy; whether statements about Dominion are false and defamatory is the question the defamation trial exists to answer. F.R.Civ.P. 26(c)(1); *Hepps*, 475 U.S. at 776. A

sanction must be proportioned to the harm proven, and harm this unquantified, resting on no declaration of injury at all, cannot carry the most severe sanction the rules allow; it leaves nothing on which to measure even a calibrated fee award, which *Goodyear* confines to expenses the misconduct caused. *Bonds*, 93 F.3d at 808-09; *Goodyear*, 581 U.S. at 108. *Giuliani* does not close the gap: that defendant produced virtually nothing and the court found the plaintiffs "severely hampered," Byrne has answered, denied, and pleaded twenty-five defenses, and Dominion's affirmative case is complete. 691 F. Supp. 3d at 59, 61-63; [ECF No. 36] at 56-59; Mot. at 37. Moreover, the very documents and information Dominion claims are reputational harm, should have been disclosed when demanded by Congress in January 2020. Dominion has not been harmed. It was just caught subverting US government oversight of its involvement with China, and it does not want further exposure that will take place at the public trial it demanded when filing this lawsuit.

**There is No Burden on the Court, and Much of the Claimed Delay Accrued Under the Court's Own Stay**

The courtroom time this case has consumed is two hearings before the Magistrate Judge in the spring of 2024 and argument on the disqualification objections. [ECF Nos. 78, 103]; Mot. at 36. Everything else has moved on the papers, and a docket that moves on the papers is not a docket forced "to modify its own docket and operations in order to accommodate the delay." *Webb*, 146 F.3d at 971 (citation omitted). Of the period the Motion counts, Byrne appealed removal of his counsel of choice, and Judge Nicholas stayed the lower court proceedings until March 31, 2026, acknowledging the appeal. [ECF Nos. 125, 161, 175 at 1-2]. Time that elapsed under the Court's own stay and in appellate courts is not delay a litigant inflicted on this Court.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

*Shea*, 795 F.2d at 1075. No trial date has been set, and Dominion themselves demand a jury trial on damages, so the Court will impanel a jury under either party's proposal. Mot. at 4, 45. The difference between the trial Dominion demand and the trial the law contemplates is not the burden on the Court. It is the burden of proof on Dominion. Byrne requests an Order scheduling trial at a date certain the Court sees fit.

**Punishment and Deterrence Cannot Justify the Ultimate Sanction Where No Lesser Sanction Has Been Tried**

The sanctions ledger of this case contains a single entry: the August 13, 2024 disqualification of Byrne's former attorney, Ms. Lambert. [ECF Nos. 125, 126]. The third *Shea* justification authorizes sanctions for deterrence, and the interest is real. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). However, deterrence is a reason to sanction, not a reason to select the ultimate sanction over every lesser one, and a sanction resting on deterrence alone "must be supported by a finding of flagrant or egregious misconduct by the defendant," itself "supported by the record." *Bonds*, 93 F.3d at 809. Insults directed at the Court and at Dominion violate no order, so whatever remains must stand or fall on the document conduct alone, proven act by act. [ECF No. 126 at 38 n.20]. Byrne does not pretend this Court has said nothing critical about him. The July 1, 2026 Order called his procedural contentions "frivolous." [ECF No. 191 at 4 & n.2]. A characterization of losing arguments is not a clear and convincing, act-by-act finding of willful violation, and the same order declined to sanction him. [ECF No. 191 at 5].

Dominion say "lesser sanctions were tried." Mot. at 43. The docket says otherwise. Against Byrne the record contains no fine, no fee award, no adverse inference, no preclusion, no



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

contempt finding, and no evidentiary hearing. There is no past history of a graduated response, and it did not name the end of the case. A court in this District has walked this ladder: in *Coltrane v. Wilkins*, 340 F.R.D. 476, 481-84 (D.D.C. 2022), the defendant had violated two orders compelling discovery and missed three hearings, and the court still *denied* default, imposed issue-related sanctions and fees, and cautioned that further disregard "will result in a default judgment," distinguishing a default-granting case because there "the Court had previously sanctioned the defendant to no avail." *Id.* at 482. Here, there is no prior sanction against Byrne that could have failed.

Dominion will lean on the sentence that a court has "no duty to impose" a lesser sanction before entering default. Mot. at 43 (quoting *Wash. Metro.*, 776 F.3d at 7). True, and it does not carry them. The duty the court of appeals kept is the duty to explain, with findings "supported by the record," why nothing less severe will do. *Webb*, 146 F.3d at 971-72; *Bonds*, 93 F.3d at 809. An explanation needs a record, this record contains no lesser sanction tried against Byrne, no financial evidence, and no compliance measure tested and failed. A futility finding written on this record would be a prediction, and predictions are what *Webb* forbids. The Motion's answer is that lesser sanctions would be futile because Byrne is wealthy and defiant. Mot. at 43-45. Wealth does not immunize fines, and coercive contempt exists to escalate them until they coerce; this Circuit has rejected the premise that courts are "powerless" without the default weapon. *Shepherd*, 62 F.3d at 1478.

The Motion's own escalation story defeats its futility story. The Motion reports that another court entered a default judgment against Byrne five weeks before this Motion was filed, and argues that his conduct continued anyway. Mot. at 44. Byrne disputes this default, and is



**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

appealing the ruling. Moreover, that default judgment did contain a violation of any protective order, and protective orders were entered in that case. In that matter, Byrne had fired his attorney for good cause, and desired a trial on the merits. A plaintiff who wanted compliance would ask for the remedy that compels it. Dominion ask for the remedy that ends their burden of proof. The Supreme Court draws the same line: inherent-power sanctions imposed through civil procedures "must be compensatory rather than punitive in nature," and a judgment entered to punish defiance, where the movant's affirmative case is intact, is punishment untethered from remedy. *Goodyear*, 581 U.S. at 108 (citation omitted); *Bonds*, 93 F.3d at 808.

Dominion's single authority for the futility of fines says the opposite of what the Motion reports. The Motion quotes a *Giuliani* footnote that escalating fines "will do little more than delay the resolution of this defamation case." Mot. at 45. The sentence continues: "this defamation case that heads to trial solely on the issue of damages." *Giuliani*, 691 F. Supp. 3d at 63 n.10. The footnote presupposes the default the same opinion was entering. A footnote that assumes the default cannot supply the reason for entering one.

Dominion's remaining authorities mark the boundary of the remedy they seek, and this case sits outside it. Every defaulted party in their cases had stopped litigating, ignored an order compelling the very discovery withheld, or disregarded a sanction already imposed: in *Giuliani*, default followed orders compelling production, an unpaid sanction, and the defendant's own stipulations, and in *Washington Metropolitan*, the defendant produced nothing and ignored an order compelling production. 691 F. Supp. 3d at 40-41, 61-63; 776 F.3d at 3, 6. As for the pages devoted to undersigned counsel's history in other courts, judgment against a client is not a remedy for a lawyer's record in other cases, and the allegations about conduct in this case stand



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

referred to the Magistrate Judge. *Shea*, 795 F.2d at 1077-78; *Atkins*, 232 F.R.D. at 128; [ECF No. 191 at 5].

**No Sanction Is Warranted on This Record, and the Graduated Framework Forecloses the Ultimate One**

Issue-related sanctions "are fundamentally remedial rather than punitive and do not preclude a trial on the merits," so a district court "may impose issue-related sanctions whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue." *Shepherd*, 62 F.3d at 1478. The graduated framework the law requires runs from a compliance order with a date certain, through coercive civil contempt and fees under F.R.Civ.P. 37(b)(2)(C), to adverse-inference instructions and issue-related preclusion. F.R.Civ.P. 37(b)(2)(A)(i)-(ii); *Webb*, 146 F.3d at 971. Byrne concedes no violation, and no measure on that ladder is warranted here, because each requires what the Motion skips: a violation found on evidence, an injury identified, and findings fitting remedy to wrong. Dominion's prayer disposes of the entire ladder in a single paragraph of prediction. Mot. at 44-45; *Webb*, 146 F.3d at 971-72.

Fee-shifting has an element the Motion ignores. Rule 37(b)(2)(C) reaches only expenses "caused by the failure" to obey, and none at all where "the failure was substantially justified or other circumstances make an award of expenses unjust." F.R.Civ.P. 37(b)(2)(C). Whether any failure occurred is contested above; if one is found, the justification sits in the orders themselves: the Magistrate Judge construed them to leave commentary free, the Protective Order's first paragraph leaves independently obtained material free, and no evidence answers which copy any speaker held. [ECF No. 126 at 38 n.20]; [ECF No. 79] ¶ 1. And Dominion identify no expense



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

any failure caused, and the officer who would administer an award is the subject of a pending disqualification motion; an award now would be unjust on the rule's own terms. [ECF No. 193].

**No Judgment Should Enter While the Disqualification Motion Is Pending**

The Motion is built on obligations administered by the Magistrate Judge whose disqualification under 28 U.S.C. § 455 is pending and undecided. [ECF No. 193]. Deciding that motion first costs Dominion nothing but sequence; rulings touched by a successful § 455 challenge invite vacatur and appeal. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862-64 (1988). Filing the motion excused no obligation; this Opposition asks for sequence, not absolution. The sequencing point is the Court's own: in the order that denied the appeals, this Court declined to impose sanctions and explained that the Magistrate Judge "is best positioned to adjudicate those issues in the first instance." [ECF No. 191 at 5].

**The Public Interest Requires a Verdict by Jury on the Merits**

Default judgment exists for "a totally unresponsive party," and its corollary is that genuine disputes belong to the merits. *Jackson*, 636 F.2d at 836; *Webb*, 146 F.3d at 971. The subject of this case is the machinery that counts the nation's votes, a subject two Presidents, the Intelligence Community, CISA, and the Secretary of Homeland Security have addressed as a matter of national security, most recently by directing that the 2026 midterm elections be audited by hand-counted paper ballots. Exec. Order No. 13,848; Exec. Order No. 14,248, § 6(a); Ex. B at 1-2. So far as counsel can determine, no court has been asked to end such a case by default while the machinery itself is the subject of executive orders, federal referrals, and a directive moving a national election to paper. This courtroom is one of the few places where the



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

underlying documents could be tested under oath, in public, and a trial answers the doubt whichever way the merits come out.

The confidentiality designations point the same way. A protective order exists to guard privacy and competitively valuable information, and the public-interest factors run against secrecy where the information matters to the public. *Seattle Times*, 467 U.S. at 37; *Pansy*, 23 F.3d at 787-88. The pages at issue show no source code, no pricing, and no customer lists, and the Motion's stated theory of harm is reputational. Exs. C-1 through C-11; Mot. at 32-33. Reputation is what the defamation trial is for. A default would end the case on paper, brand the statements false without proof, and hand the destruction protocol the last word. The remedy for disputed speech about a public subject is proof, and Dominion pleaded falsity and demanded the jury that can hear it. [ECF No. 1].

## **Conclusion**

Dominion opened their Motion with Dr. Byrne's words. The Court should close it with the law's. Dominion filed its lawsuit against Byrne in an effort to intimidate and silence him knowing his claims related to its foreign vendors and employees was true. Dominion failed to amend its Complaint or supplement its responses to Congress, and now hopes this Court will shield it from a public trial. The Motion should be denied. Dominion chose this forum, pleaded falsity, and demanded a jury. The Court should hold Dominion to all three.

WHEREFORE, the Defendant, Patrick Byrne, respectfully requests that this Honorable Court enter an Order: denying Dominion's Motion for Default Judgment [ECF No. 198];



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

deferring its ruling until this Court has resolved Dr. Byrne's Motion to Disqualify Magistrate Judge Moxila A. Upadhyaya [ECF No. 193].

Dated: September 10, 2026 Respectfully submitted,

*/s/ Peter Ticktin*
Peter Ticktin, Esquire
Serv512@LegalBrains.com
Telephone: (561) 232-2222
**The Ticktin Law Group**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
*Attorney for the Defendant,*
*Patrick Byrne*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 10, 2026, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF electronic filing system.

*/s/ Peter Ticktin*

Peter Ticktin



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222