# APPENDIX A

2023 WL 8697830
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

SMARTMATIC USA CORP., et al., Plaintiffs,
v.
HERRING NETWORKS, INC., Defendant.

Civil Action No. 1:21-cv-02900-CJN-MAU
|
Signed December 16, 2023

**Attorneys and Law Firms**

Joel Erik Connolly, Pro Hac Vice, Nicole Wrigley, Caitlin Kovacs, Pro Hac Vice, Julie Loftus, Pro Hac Vice, Kathleen Watson Moss, Pro Hac Vice, Lauren Tortorella, Pro Hac Vice, Lee Muench, Pro Hac Vice, Michael Elliot Bloom, Pro Hac Vice, Olivia Elizabeth Sullivan, Pro Hac Vice, Emily Newhouse Dillingham, Benesch, Friedlander, Coplan & Aronoff LLP, Chicago, IL, James Richard Bedell, Pro Hac Vice, Benesch, Friedlander, Coplan & Aronoff LLP, Cleveland, OH, Michael A. Vatis, Benesch, Friedlander, Coplan & Aronoff LLP, New York, NY, for Plaintiffs.

Blaine C. Kimrey, Bryan Clark, Brian Ledebuhr, Jeanah Park, Julia Koechley, Vedder Price P.C., Chicago, IL, Carl C. Butzer, Pro Hac Vice, Jonathan D. Neerman, Minoo Sobhani Blaesche, Pro Hac Vice, Jackson Walker L.L.P., Dallas, TX, Charles L. Babcock, Pro Hac Vice, Bethany Pickett Shah, Pro Hac Vice, Joel Glover, Pro Hac Vice, John K. Edwards, Pro Hac Vice, Nancy W. Hamilton, Pro Hac Vice, William Stowe, Pro Hac Vice, Jackson Walker L.L.P., Houston, TX, Brian Keith McCalmon, Vedder Price P.C., Washington, DC, R. Trent McCotter, Boyden Gray PLLC, Washington, DC, for Defendant.

## MEMORANDUM OPINION [1]

MOXILA A. UPADHYAYA, United States Magistrate Judge

***1** Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic" or "Plaintiffs") sue Defendant Herring Networks, Inc., d/b/a One America News Network ("OANN" or "Defendant") alleging injury arising from OANN's coverage of Smartmatic's role in the 2020 U.S. election. *See generally* ECF No. 1. Before the Court is OANN's Motion for Recusal. (ECF Nos. 78 & 79). Plaintiffs oppose the Motion. For the following reasons, OANN's Motion is denied.

## FACTUAL BACKGROUND

### Parties

Smartmatic is an election technology and software company. *See* ECF No. 1 at 3; ECF No. 36 at 5. According to Smartmatic, it provided election technology and software for Los Angeles County, California in the 2020 U.S. election. *See* ECF No. 1 at 3. Smartmatic claims no other state or county used Smartmatic's technology or software in the 2020 election, and that Smartmatic played no part in counting or tabulating votes in Los Angeles County in the 2020 election cycle. *See id.*

OANN operates a cable news channel, website (OANN.com), and social media accounts on Facebook, Instagram, and X, the platform formerly known as Twitter. *See* ECF No. 1 at 4; ECF No. 36 at 7–8. OANN's content is also available on YouTube, Rumble, and KlowdTV. *See* ECF No. 1 at 4; ECF No. 36 at 7–8. Smartmatic alleges that, despite knowing that Joe Biden won the 2020 U.S. presidential election, OANN falsely reported to its viewers that the election had been stolen from Donald Trump and that Smartmatic voting machines had switched votes cast from Trump to Biden. *See* ECF No. 1 at 1–2. Smartmatic alleges that OANN has damaged Smartmatic's reputation and brand by casting it as a corrupt company whose technology and software were used to steal the 2020 U.S. election. *See id.* at 3. Smartmatic claims defamation (Count I) and injurious falsehood (Count II) based on OANN's alleged false statements. *See id.* at 187, 189.

OANN argues that Smartmatic was already "suffering reputational problems globally and in the United States" for more than a decade before the 2020 U.S. election. ECF No. 36 at 278–79. OANN also asserts that it diligently and ethically reported on issues of significant public concern. *See id.* at 296–97. OANN denies that it caused any harm to Smartmatic's reputation and disputes Smartmatic's claim to any damages. *See id.* at 5, 272.

### Referral to this Court for Discovery

On May 31, 2023, the District Judge referred this case to me for the resolution of all discovery disputes. *See* May 31, 2023 docket entry. On June 5, 2023, OANN submitted a letter to my Chambers, purporting to informally raise the issue of my potential recusal in this matter. So as to allow the public access to any discussion regarding OANN's request for my recusal, I placed OANN's letter on the docket, invited Smartmatic to respond, and set a public hearing on the matter. ECF No. 75. On June 30, 2023, Smartmatic filed a statement in opposition to OANN's letter. ECF No. 77. Thereafter, on July 6, 2023, OANN filed a formal Motion for Recusal. ECF Nos. 78 & 79. Smartmatic filed a Motion to Strike and Opposition to OANN's Motion on July 17, 2023.[2] ECF Nos. 83 & 84. On July 18, 2023, I held a hearing on OANN's Motion. ECF No. 91. OANN submitted a supplement on July 19, 2023, to which Smartmatic replied on July 21, 2023. ECF No. 87; ECF No. 88.

**The *Rusoro Mining* Case**

***2** OANN seeks my recusal based on my appearance in a case when I was in private practice at the law firm of Venable LLP ("Venable"): *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, USCA Case No. 18-7044 (D.C. Cir. Feb. 22, 2019) ("*Rusoro Mining*"). *Rusoro Mining* was a commercial arbitration case in which Plaintiff, a Canadian mining company, sought confirmation of an arbitral award against the government of Venezuela for the expropriation of plaintiff's mining assets. *See* *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, 300 F. Supp. 3d 137, 141 (D.D.C. 2018). After the District Court granted plaintiff's petition to confirm the award, Venezuela appealed. Neither Venable nor I was involved in the underlying arbitration or District Court proceedings.

The law firm of Arnold & Porter (which represented Venezuela in the District Court) entered its appearance on behalf of Venezuela in the D.C. Circuit on May 21, 2018 on instruction from the administration of Nicolas Maduro. *See* ECF No. 1732031 in *Rusoro Mining* (USCA Case No. 18-7044). Arnold & Porter represented Venezuela for approximately 10 months in the D.C. Circuit on instruction from the Maduro government. According to Arnold & Porter, it began to take instruction from the Guaidó government in January 2019 when former President Trump recognized Juan Guaidó as interim president of Venezuela. Arnold & Porter argued that, because the U.S. president had recognized Juan Guaidó as the rightful representative of Venezuela, only Guaidó could assert Venezuela's interests in U.S. courts. *See* ECF No. 1773036 in *Rusoro Mining* (18-7044).

On February 22, 2019, Venable entered its appearance in the Circuit on behalf of the government of Venezuela. *See* ECF No. 1774483 in *Rusoro Mining* (18-7044). Although OANN surmises that I was the "lead" attorney on this matter, some clarification is necessary. I was designated as "lead" attorney as required on the electronic docket because I was an attorney in the D.C. office credentialed to electronically file documents in the D.C. Circuit. *See* ECF No. 91 at 6:9–16.

The upshot of the February 22, 2019 filing was to raise objections to Arnold & Porter's position as to which firm —Venable or Arnold & Porter—was the proper counsel to speak on behalf of the government of Venezuela in the appeal when there were two competing factions within that foreign government. *See* ECF No. 1774487 in *Rusoro Mining* (18-7044). The filing also included Maduro's position that he "vigorously disputes that Mr. Guaidó is the President of the Republic, and asserts that he [Maduro] remains the rightful leader of the Republic." *Id.* at 2. I was counsel on two filings after the February 22 filing: (1) a March 6, 2019 motion for extension of time; and (2) the March 11, 2019 notice of Venable's withdrawal. *See* ECF Nos. 1776418 & 1776958 in *Rusoro Mining* (18-7044). The latter two filings did not contain any substantive legal or factual arguments. Ultimately, the question of which firm would represent Venezuela in the appeal from the arbitration confirmation award became moot when Venable filed its notice of withdrawal on March 11, 2019.

**Allegations in This Case**

I assume the Parties are sufficiently familiar with the factual allegations in this case and, accordingly, will not repeat them at length here except where relevant to resolve the Motion. In support of its Motion, OANN generally argues that the *Rusoro Mining* case is "inextricably connected to OAN's challenged broadcasts that concern the illegitimacy of the Maduro regime and reports of election irregularity in Venezuela." ECF No. 79 at 19. OANN cites to a number of allegations by Smartmatic, including that OANN spread "disinformation" themes such as: (i) "Smartmatic is a Venezuelan company that was founded and funded by corrupt dictators from socialist and communist countries"; and (ii) "Smartmatic's election technology and software were designed to rig and fix elections and have been used to fix, rig and steal elections


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

before." ECF No. 79 at 5 (citing ECF No. 1, Compl. ¶ 107).[3] OANN also relies on several claims in Smartmatic's Complaint that are specific to Venezuela: "(i) 'Smartmatic is partially owned by the Maduro regime'; (ii) 'the technology is controlled by allies of Venezuela's Maduro regime'; (iii) 'reports found Maduro allies were meddling in the latest U.S. election through a company called Smartmatic'; (iv) 'The [Organization of American States] says any election that involves Maduro is a sham and must not be recognized by any civilized country'; and (v) 'Smartmatic has faced controversy in the past with allegations of rigging the 2013 election in Venezuela to favor socialist President Nicolas Maduro.' " *Id.* (citing ECF No. 1, Compl. ¶ 218). OANN also generally references Smartmatic's claims that OANN "aired broadcasts that referenced its connections to Venezuela, prior election irregularities, and the Maduro regime." *Id.* (citing ECF No. 1, Compl. ¶¶ 95–98, 101–03, 106–08, 119–21, 131–32, 171, 184, 196, 218, 227).

***3** OANN also points to discovery requests that reference Venezuela, Maduro, and Smartmatic's role in non-U.S. elections. These include Smartmatic's requests for "evidence of deleted, lost, changed, or compromised votes for ... 'any other election' "; documents to show OANN's statements were "substantially true, accurate, and not misleading"; and search terms that include "Venezuela" and "Maduro." *Id.* at 6 (citing Ex. 1, C. Butzer Decl. at 1, 2, referencing Pls.' RFP Nos. 52, 38). OANN requested any communications concerning "Nicholas Maduro or anyone working for him" and other requests about Smartmatic's involvement in Venezuelan elections. *Id.* at 6–7. OANN reports there are several pending discovery disputes related to "foreign elections in which Smartmatic software or equipment was used." *Id.* at 7 (citing Ex. 1, C. Butzer Decl., referencing Def's RFP Nos. 380, 18, 26–28, 37, 40, 80).

Smartmatic agrees with OANN that "Maduro is a subject of discovery" and claims it will prove "OANN's statements about Smartmatic having a relationship with Maduro were factually inaccurate. Smartmatic is not owned by the Maduro regime. Its technology is not controlled by allies of the Maduro regime. Maduro's allies did not meddle in the 2020 U.S. election through Smartmatic. Smartmatic did not rig the 2013 election in Venezuela for Maduro." ECF No. 83 at 19. Smartmatic argues, however, that its defamation claims against OANN focus on the "defendant's publication and republication of the false accusation that Smartmatic rigged the 2020 U.S. election." ECF No. 77 at 1. Smartmatic clarifies that none of the allegedly defamatory statements involve the 2018 Venezuelan election and argues that OANN's attempt to show "Smartmatic participated in the 2018 Election is both riddled with factual inaccuracies and a complete red herring." *Id.* at 16. OANN now claims Smartmatic was "heavily involved" in the 2018 Venezuelan election, ECF No. 79 at 9, even though it previously claimed Smartmatic "ceased operations in Venezuela" following issues in Venezuela's 2017 election, ECF No. 36 at 290–91.[4]

## STANDARD OF REVIEW

OANN seeks recusal under three sections of the statute: 28 U.S.C. §§ 455(a), (b)(1), and (b)(2). Section 455(a) mandates "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b)(1) requires a judge to recuse "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Section 455(b)(2) requires a judge to recuse "[w]here in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it."

***4** As both parties acknowledged at the hearing on this Motion, and as the D.C. Circuit has held, recusal must be limited to "truly extraordinary cases." *See* *Doe v. Rogers*, 498 F. Supp. 3d 59, 77 (D.D.C. 2020) (quoting *Cobell v. Kempthorne*, 455 F.3d 317, 332 (D.C. Cir. 2006)). "The D.C. Circuit has recognized that a motion to recuse should not be 'lightly granted.' " *United States v. Nixon*, 267 F. Supp. 3d 140, 146 (D.D.C. 2017) (quoting *United States v. Pollard*, 959 F.2d 1011, 1023 (D.C. Cir. 1992)).

Judges are presumed to be capable of carrying out their sworn duties faithfully and impartially. *See e.g.*, *Philip Morris USA Inc. v. United States Food & Drug Admin.*, 156 F. Supp. 3d 36, 43, 49–50 (D.D.C. 2016). Because judges are presumed to be impartial, the Court must begin its analysis of a recusal request with a presumption against disqualification. *See* *SEC v. Bilzerian*, 729 F. Supp. 2d 19, 22 (D.D.C. 2010); *United States v. Ali*, 799 F.3d 1008, 1017 (8th Cir. 2015) ("A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise.") (citation omitted). To overcome this

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

presumption, the moving party must demonstrate by clear and convincing evidence that a judge has conducted herself in a manner supporting disqualification. *See Walsh v. FBI*, 952 F. Supp. 2d 71, 75 (D.D.C. 2013); *Nixon*, 267 F. Supp. at 147. "[T]he grounds asserted in a recusal motion must be scrutinized with care, and judges should not recuse themselves solely because a party claims an appearance of partiality." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001).

"To deter unhappy litigants from abusing the recusal statute and to promote faith in the judicial system, courts have emphasized that a judge has *as much an obligation not to recuse himself where there is no reason to do so as he does to recuse himself when proper*." *Bilzerian*, 729 F. Supp. 2d at 22 (citing *United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994)) (emphasis added); *see also Miller v. Merit Sys. Prot. Bd.*, No. 23-cv-00015 (CJN), 2023 WL 5321727, at *1 (July 3, 2023). "The burden this presumption places on parties seeking recusal is necessary in light of the grave threats that potential abuses of this potent statutory tool pose to the judicial system. One of those threats is ... to manufacture recusal to delay proceedings." *Bilzerian*, 729 F. Supp. 2d at 22. Even when there is "no specific fear that the moving party is attempting to manipulate the court," judges must safeguard the proper use of § 455 so that "the recusal process itself does not become a tool to undermine the legitimacy of the judicial system." *Nixon*, 267 F. Supp. 3d at 146.

## ANALYSIS

OANN does not claim that I have any actual bias in this case and does not question my impartiality, integrity or commitment to fairness in this case or generally. ECF No. 79 at 1, n.1, 20. Rather, OANN argues that my prior representation in *Rusoro Mining* created an *appearance* of impartiality under § 455(a) which requires recusal. *Id.* Although OANN concedes that its arguments under §§ 455(b)(1) and (b)(2) are weaker, it does not withdraw them. ECF No. 91 at 17:15–22. As such, the Court will address all three bases for OANN's Motion, beginning with those grounds which OANN admits are the weakest.

### I. 28 U.S.C. § 455(b)(1)

***5** Under § 455(b)(1), a judge must recuse where "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

OANN does not claim bias, but asserts in a three-paragraph argument that I "*likely* ha[ve] personal knowledge of disputed facts at issue in this litigation" based upon my involvement in the appeal in the *Rusoro Mining* case. ECF No. 79 at 19 (emphasis added). OANN also speculates, with no support to this or any other record, that my alleged "personal knowledge regarding the disputed evidentiary facts —including Venezuela's elections, their legitimacy, or the technology used—is another independent basis requiring recusal." ECF No. 79 at 20. OANN's arguments are without merit.

I have confirmed on the record that I have no personal knowledge about any of the allegations or disputed evidentiary facts in this case. OANN argues that, because the sole substantive filing in which I relayed legal arguments on behalf of Venable's client in the *Rusoro Mining* case cited a *New York Times* article that discussed the 2018 election in Venezuela, I must have personal knowledge of disputed facts at issue in *this* litigation. Not only is this inaccurate (as stated above), this unsupported statement is insufficient to meet OANN's high burden. None of the statements in the February 22, 2019 Response to Motion to Stay discuss OANN, voting technology used in any election, or the Venezuelan government's connection (or lack thereof) with any voting machine company. Nor does OANN cite any authority to support its claim that § 455(b)(1) requires my recusal in this circumstance. As such, recusal is not warranted under § 455(b)(1). *See Nixon*, 267 F. Supp. 3d at 147 (holding that a "judge should not grant a motion for recusal that is 'based upon conclusory, unsupported or tenuous allegations' ") (quoting *In re Kaminski*, 960 F.2d 1062, 1065 n.3 (D.C. Cir. 1992) (per curiam)).

### II. 28 U.S.C. § 455(b)(2)

Section 455(b)(2) requires a judge to recuse "[w]here in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it." 28 U.S.C. § 455(b)(2).

In another conclusory argument, OANN claims that § 455(b)(2) requires my recusal because I " 'served as [a] lawyer in the issues in controversy' while in private practice." *See* ECF No. 79 at 18 (quoting 28 U.S.C. § 455(b)(2)) (alteration in original). Apparently referring to OANN's "challenged broadcasts that concern the illegitimacy of the Maduro regime

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

and reports of election regularity," OANN claims without any support that I "likely had privileged conversations" concerning "these issues ..." ECF No. 79 at 19. Again, OANN fails to offer any factual support for its arguments, and none exists. None of the issues in the *Rusoro Mining* appeal during my representation had anything to do with OANN's (or any) broadcasts. Moreover, the factual "issues in controversy" in this case are not the same as the legal issue raised during my representation in the *Rusoro Mining* appeal—namely, which law firm was the rightful representative of Venezuela in the D.C. Circuit.

***6** The only legal authority upon which OANN relies for its argument under § 455(b)(2) is inapposite. *See* ECF No. 79 at 18 (discussing *In re Rodgers*, 537 F.2d 1196, 1198 (4th Cir. 1976)). In that case, the judge's former law partner represented a client that sought to purchase a particular racetrack and supported a bill to consolidate one-mile racetracks in Maryland. *See id.* at 1197–98. The petitioners who sought the judge's recusal attempted to acquire the same racetrack and were charged with using unlawful means to secure passage of the same bill. *See id.* at 1198. The Fourth Circuit found that the judge's former law partner and one of his clients "will undoubtedly testify" *before the judge* "about the events that took place before the judge withdrew from his law firm." *Id.* The court held that the judge should have recused under § 455(b)(2).

In *Rodgers*, there was no question that the judge would have been called upon to adjudicate the same issues that arose while he was in private practice. There is no such connection here. OANN argues that my former representation in *Rusoro Mining* is "inextricably connected" to the issues in this case – "the illegitimacy of the Maduro regime and reports of election integrity in Venezuela." ECF No. 79 at 19. This is incorrect. The matters in controversy in this case are OANN's alleged statements about Smartmatic related to the 2020 U.S. election. The portion of the Complaint to which OANN cites to support its assertion, ECF No. 1 ¶ 218, has no mention of the 2018 election in Venezuela. Further, the only substantive *Rusoro Mining* filing during my representation contains no reference to Smartmatic and its role in election administration, either in the United States or in Venezuela.

Because my prior representation in *Rusoro Mining* does not constitute the same matter in controversy, Section 455(b)(2) does not require my recusal. *See Philip Morris*, 156 F. Supp. 3d at 46–49 (finding an attenuated connection, and even substantial overlap in subject matters, insufficient to mandate recusal).

### III. 28 U.S.C. § 455(a)

28 U.S.C. § 455(a) requires that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

As stated above, OANN does not base its request for recusal on any claim of actual bias on my part. *See e.g.*, ECF No. 79 at 16 ("... OAN has no reason to believe that Judge Upadhyaya's [sic] is actually biased against it (or Plaintiffs)."); *id.* at 20 ("OAN does not question Judge Upadhyaya's integrity or commitment to impartially ruling on matters brought before her."). Rather, OANN claims that I should recuse under § 455(a) because of two factors which might create the appearance of partiality: 1) my involvement in the *Rusoro Mining* appeal; and 2) the fact that one of my former law partners represented a party in Venezuela which OANN alleges somehow contributed to the Maduro administration. ECF No. 79 at 13 (internal citations omitted).

When considering whether recusal is required under Section 455(a), the Court must determine whether a " 'reasonable and informed observer would question the judge's impartiality.' " *S.E.C. v. Loving Spirit Found., Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001)); *see also Sao Paulo State of the Federative Republic of Brazil v. Am. Tobacco Co., Inc.*, 535 U.S. 229, 232–33 (2002) (per curiam) (holding that the perspective must be from a reasonable person knowing all the circumstances); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860–61 (1988). This analysis requires an objective assessment of the appearance, not just the reality, of bias or prejudice. *See Liteky v. United States*, 510 U.S. 540, 548 (1994). Although OANN seeks to have the Court apply a more relaxed standard, [5] the reasonable person in this context is a "fully informed third-party observer who 'understand[s] all the relevant facts' and has 'examined the record and the law.' " *United States v. Cordova*, 806 F.3d 1085, 1092 (D.C. Cir. 2015) (quoting *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008)) (internal quotation marks omitted) (alteration in original). "The Court must consider how the facts would appear to a well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *Nixon*, 267 F. Supp. 3d at 148 (internal quotations omitted). This third-party observer is

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

to presume judges are ordinarily able to set aside their interests and faithfully and impartially perform their duties. *See Armenian Assembly of America, Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 91 (D.D.C. 2011). "Thus, as Justice Kennedy has observed, 'under 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute.' " *Philip Morris*, 156 F. Supp. 3d at 49–50 (quoting *Liteky*, 510 U.S. at 558 (Kennedy, J., concurring)).

***7** Applying this standard, I find that a reasonable and fully-informed observer would not question my impartiality in this case based on my involvement in the *Rusoro Mining* appeal. I was counsel in the *Rusoro Mining* appeal for approximately 17 days, from February 22, 2019 through March 11, 2019. *See generally Rusoro Mining* (18-7044) docket; ECF No. 91 at 6:17–7:1. My representation in the *Rusoro Mining* case was brief and limited to that period of time. *See id.* During my involvement in that case, there was no litigation or adjudication about any voting technology used in the 2020 U.S. election (which had not yet occurred), Smartmatic or otherwise; OANN; any voting technology used in the Venezuelan 2018 election; or the Maduro administration's alleged involvement in any voting company or technology.

Moreover, during the representation, there was no development of facts or evidentiary issues on appeal. *See* ECF No. 91 at 7:2–9. I was not involved in any discovery or fact development at any time. *See id.* I was not involved in this case after Venable withdrew on March 11, 2019. *See id.* I have no personal knowledge of any facts in this case. *See id.* at 7:10–15. I have no personal knowledge of any facts relating in any way to any elections in Venezuela at any time, any voting machines used in those elections, or the ownership of any voting technology companies. Apart from my involvement in *Rusoro Mining* as stated, I have no connection past or present, personal or professional, to Venezuela. *See id.* I have no connection to any party or lawyer in this case. *See id.*

When examined closely, OANN's argument for recusal boils down to an argument that I should recuse because both cases have something to do with Venezuela and Maduro. It is insufficient, however, for OANN to simply assert that I must recuse because my prior representation asserted a position on behalf of Venezuela and some of the statements in this case also relate to Venezuela.

Despite OANN's attempt to create a meaningful overlap between the two cases, that connection does not exist. During the time I was involved in *Rusoro Mining*, one legal issue was raised: which firm—Venable or Arnold & Porter—spoke on behalf of the government following the 2018 Venezuelan election given both Maduro and Guaido's claims of victory? The legal issue had nothing to do with Smartmatic, OANN, OANN's allegedly defamatory statements, or the 2020 U.S. election. The crux of this case is Smartmatic's challenge to statements OANN made regarding Smartmatic's alleged involvement in the 2020 U.S. election. Significantly, the actual outcome of the 2018 [6] Venezuelan election is not a disputed issue at trial. I will not be asked to rule upon the outcome of or any disputed issues relating to the 2018 Venezuelan election, and neither party has claimed as much. Neither the Maduro government nor any other entity acting on behalf of the government of Venezuela is a party to this suit, and no party has alleged that he or anyone acting on his behalf would be a witness in this case. The question at issue during the time I was involved in the *Rusoro Mining* appeal is not a legal issue in this case, and this case is not a proxy dispute over the legitimacy of the Venezuelan government. It is also noteworthy that, in all of the pleadings and discovery requests OANN cites, there is no specific mention of the 2018 Venezuelan election. Other courts looking at circumstances closer than this one have held that recusal was unwarranted under Section 455. *See Philip Morris USA, Inc.*, 156 F. Supp. 3d at 49–54 (denying request for recusal where, among other things, judge's former law firm represented party that advocated for the administrative action in dispute); *United States v. DeTemple*, 162 F.3d 279, 286-88 (4th Cir. 1998) (affirming denial of recusal motion where judge and his former law firm had represented creditor in Chapter 11 case underlying charge of bankruptcy fraud against defendant); *Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1165 (5th Cir. 1982) (affirming denial of recusal motion where judge owned a tract of land in the disputed area and had previously represented defendant in unrelated matter).

***8** Accordingly, despite OANN's assertion, it is not likely that my "prior representation ... takes a position that itself is in contention in this very litigation." *See* ECF No. 79 at 13. Considering this tenuous connection, if any, between the two matters, a reasonable and informed observer would not doubt my ability to continue exercising my duties with fairness and impartiality. *See e.g.*, *Armenian Assembly of America, Inc.*, 783 F. Supp. 2d at 90 (collecting cases holding 455(a) did not require recusal even when a judge previously represented

a witness or party in an unrelated matter; the case involved a judge's alma mater; or the judge previously belonged to organizations that advocated for positions advanced by a party to the instant case).

Finally, OANN makes a half-hearted argument for recusal because one of my former law partners represented companies which allegedly were a "high-level" contributor to Maduro. As OANN correctly points out, I was not involved in any of these cases. OANN also concedes that this basis alone would not warrant my recusal. *See* ECF No. 91 at 12:14 ("But that's surely not the central focus of our argument here."), 36:13–17 ("And as I've said before, if it was only about your partner's representation, we wouldn't be here...").

Section 455(a) does not warrant recusal here. This client of my former law firm partner is not a party to this case. Nor is he alleged to have an interest in the outcome of this case. There is no overlap in any way between the two cases. This alleged connection does not come close to what is required under § 455(a). *See Philip Morris USA Inc.*, 156 Supp. 3d at 51 (finding § 455(a) did not mandate recusal when a judge's former law firm represented an anti-tobacco campaign and the plaintiffs before the court were tobacco companies).

After careful consideration of the parties' arguments, and guided by the principle that judges have as much a duty to deny a recusal request when it is not required as to grant it when the law demands, OANN's motion is **DENIED**.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 8697830

## Footnotes

1 On December 8, 2023, the Court issued this Memorandum Opinion under seal in light of the fact that certain materials referenced in the Parties' respective briefs were filed under seal. *See* ECF Nos. 133 & 134. The Parties have met and conferred and represented to the Court that no redactions to this Memorandum Opinion are necessary. *See* ECF No. 148.

2 In its Opposition to OANN's Motion for Recusal, Smartmatic seeks to strike OANN's Motion as purportedly violating Fed. R. Civ. P. 12(f) and LCvR 5.4(c)(3). ECF No. 83 at 4–5. Smartmatic argues that the Motion impermissibly "expands" on the letter OANN sent to Chambers and somehow makes "an end run around the Federal Rules." *Id.*

Smartmatic's Motion is denied. There is nothing in the Rules or the Scheduling Order which prevents OANN from filing a formal Motion for Recusal. In fact, the Court does not disagree with OANN that there is a benefit to having a more fulsome articulation of the arguments in support of OANN's recusal request. Any alleged prejudice that Smartmatic may have suffered is cured because Smartmatic had the opportunity to file an Opposition to OANN's Motion (and subsequent supplemental brief) and be fully heard during the hearing on the Motion.

3 The Court presumes OANN meant to cite Paragraph 170, which is the only paragraph with this precise quote. These allegations are in the context of Smartmatic's overall allegations that OANN falsely stated and implied that: Smartmatic's election technology and software were widely used in the 2020 election; Smartmatic "fixed, rigged, and stole the 2020 U.S. election for Joe Biden and Kamala Harris and the Democratic Party"; Smartmatic's election technology and software "were compromised or hacked during the 2020 U.S. election and sent votes to foreign countries to be compromised or hacked"; Smartmatic was "founded and funded by corrupt dictators from socialist and communist countries"; and Smartmatic's "election technology and software were designed to and have fixed, rigged, and stolen elections before." *See* ECF No. 1 at 84–115.

4 In its Motion for Recusal, OANN argues that Smartmatic subsidiaries maintained a presence in Venezuela through "at least, 2020" and that "Smartmatic machines were used in the 2018 election." ECF No. 79 at 2–3 ("As we shall see, there is substantial evidence that Smartmatic was involved in that fraudulent election."). Yet OANN's Amended Answer alleges: "[o]ne or more Smartmatic entities continued to operate in Venezuela for another decade after the controversial Chávez elections in 2004 and 2005. And in 2017, one or more Smartmatic entities found themselves embroiled in yet another controversy, and the *Miami Herald* reported that Smartmatic founder Mr. Mugica admitted that the 2017 election had been 'tampered with.' *Smartmatic has since ceased operations in Venezuela, reporting in its 2017 financial statements that the Venezuelan government had 'abrupt[ly] call[ed] off of the Venezuela project.'* " ECF No. 36 at 290–91 (emphasis added) (alteration in original).

5 OANN claims the analysis under Section 455(a) must be from the perspective of an "average citizen" who is not fully informed. ECF No. 87 (citing *In re Hawsawi*, 955 F.3d 152, 157 (D.C. Cir. 2020)). Without citing any authority, OANN claims that that average citizen "is not someone who is knowledgeable about the law or dives into the nuances of the record." ECF No. 87.

OANN is wrong. As stated above, the Supreme Court and the D.C. Circuit have held that the analysis centers on a reasonable person who is informed and knows all the relevant facts circumstances. *See, e.g.*, *Liljeberg*, 486 U.S. at 847, 848 (1988) (holding that a § 455(a) violation "is established when a reasonable person, *knowing the relevant facts*, would expect that a judge knew of circumstances creating an appearance of partiality...") (emphasis added). The Court rejects OANN's attempt to create a new, less stringent standard.

6 The Parties dispute whether Smartmatic was even operating in Venezuela after 2017. First, OANN claimed Smartmatic ceased to be involved in Venezuelan elections post-2017, *see* ECF No. 36 at 290–91, but now it claims Smartmatic was involved in the 2018 Venezuelan election, *see* ECF No. 79 at 8–11. *See supra* note 4. As far as the Court is aware, OANN has not sought to amend its Answer and change or clarify its prior assertion. Even assuming Smartmatic was operating in Venezuela in 2018, however, this premise alone does not require recusal because the issues in the two cases are not the same.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.