**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LIBERTY VOTE HOLDINGS INC.,<br>LIBERTY VOTE USA INC., and<br>DOMINION VOTING SYSTEMS<br>CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK BYRNE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br>Civil Action No. 1:21-cv-02131-CJN-MAU<br><br><br>Judge Carl J. Nichols<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT PATRICK BYRNE'S URGENT MOTION FOR CLARIFICATION OF THE SEPTEMBER 11, 2026 MINUTE ORDER, OBJECTION TO THE SEALING OF ECF NO. 204, AND FOR A LIMITED EXTENSION OF TIME**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................1

ARGUMENT ....................................................................................................1

I. The Court's September 11, 2026, Order Was Clear and No Clarification Is Necessary. ....................................................................................................1

II. Mr. Byrne's Motion Contains Demonstrably False Facts and Confirms that Default Judgment Is the Only Appropriate Remedy....................................................7

III. Mr. Byrne's Objection to Continued Sealing Is Without Merit..............................8

A. The Exhibits Are Not Judicial Records. ......................................................8

B. The *Hubbard* Factors Support Continued Sealing......................................9

1. Need for Public Access. ......................................................................10

2. Previous Public Access. ......................................................................11

3. Identity of the Party Objecting to Disclosure. ......................................11

4. Strength of Any Property and Privacy Interests Asserted. ....................12

5. The Possibility of Prejudice to those Opposing Disclosure...................14

6. Purpose for Which the Documents Were Introduced. ...........................14

CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*A.B. v. U.S. Dep't of Just.*,
2019 WL 13111106 (D.D.C. Mar. 7, 2019) .......... 13

*Cable News Network, Inc. v. Fed. Bureau of Investigation*,
984 F.3d 114 (D.C. Cir. 2021) .......... 14

*EEOC v. Nat'l Children's Ctr., Inc.*,
98 F.3d 1406 (D.C. Cir. 1996) .......... 10

*Hamen v. Islamic Republic of Iran*,
318 F. Supp. 3d 194 (D.D.C. 2018) .......... 13

*Herron v. Fannie Mae*,
2016 WL 10677615 (D.D.C. June 20, 2016) .......... 8, 9

*Horowitz v. Peace Corps*,
428 F.3d 271 (D.C. Cir. 2005) .......... 13, 14

*In re Chodiev*,
2021 WL 1795423 (D.D.C. Mar. 23, 2021) .......... 11

*In re Press Application for Access to Jud. Recs.*,
2023 WL 8254630 (D.D.C. Nov. 29, 2023) .......... 12

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
879 F.2d 873 (D.C. Cir. 1989) .......... 14

*S.E.C. v. Am. Int'l Grp.*,
712 F.3d 1 (D.C. Cir. 2013) .......... 8, 9

*Tavoulareas v. Washington Post Co.*,
111 F.R.D. 653 (D.D.C. 1986) .......... 12

*True the Vote, Inc. v. Internal Revenue Serv.*,
2024 WL 2803332 (D.D.C. May 31, 2024) .......... 10

*United States v. El-Sayegh*,
131 F.3d 158 (D.C. Cir. 1997) .......... 8

*United States v. Hubbard*,
650 F.2d 293 (D.C. Cir. 1980) .......... *passim*

## INTRODUCTION

Plaintiffs respectfully submit this opposition to Defendant Patrick Byrne's "Urgent Motion for Clarification of the September 11, 2026 Minute Order, Objection to the Sealing of ECF No. 204, and for a Limited Extension of Time." Dkt. 207. Simply put, no clarification is necessary—Mr. Byrne knows what the Court's September 11, 2026, order required of him, but has—repeatedly—chosen not to comply with it. Furthermore, this Court should reject Mr. Byrne's effort to unseal documents—the contents of the documents are irrelevant to Plaintiffs' pending motion for default judgment; Mr. Byrne has used the documents to propagate lies about Plaintiffs, causing Plaintiffs and their employees to be harassed and threatened; and the only reason the documents have been made public is that Mr. Byrne and his attorneys leaked them in violation of this Court's orders.

## ARGUMENT

### I. The Court's September 11, 2026, Order Was Clear and No Clarification Is Necessary.

Mr. Byrne's motion is the latest in a long series of efforts to disobey this Court's orders. The filing only further demonstrates—as Plaintiffs detail in their pending motion for default judgment, and as Mr. Byrne has made crystal clear in his own words on multiple occasions—that he will not follow court orders with which he disagrees.

The Court's September 11, 2026, order was clear. After Mr. Byrne violated the Protective Order and Status Quo Order by publicly filing Plaintiffs' Bates-stamped documents in support of his opposition to Plaintiffs' default-judgment motion, Dkt. 204, Plaintiffs promptly emailed the Court to obtain temporary relief from Mr. Byrne's unilateral conduct, Dkt. 207-2, Ex. 2. The Court then directed the Clerk of Court to maintain Mr. Byrne's filing under seal and directed Mr. Byrne to "file appropriately redacted versions" of his opposition brief and supporting exhibits by September 14, 2026. Minute Order, Sept. 11, 2026. Mr. Byrne responded with a motion for

clarification late in the evening of his deadline. Dkt. 207. The crux of his motion is that he does not understand what needs to be redacted because, he claims, he "drew every exhibit from the press and from the public record." *Id.* at 3.

Nonsense. The "public record" Mr. Byrne relies on consists of the leaks that ***he and his former counsel acting at his direction*** coordinated.[1] As Judge Nichols and Magistrate Judge Upadhyaya previously held, and as Plaintiffs recently reminded Mr. Byrne in an email to this Court copying his counsel of record, this leak violated both the Protective Order and Status Quo Order and does not furnish a basis for Mr. Byrne to continue to publicly disseminate the documents he previously leaked. Dkt. 207, Ex. 2. In other words, there is ***no document-laundering exception*** to the Protective and Status Quo Orders, meaning a party cannot circumvent these orders by first leaking documents and then claiming they are public. *See* Dkt. 126, Mem. Op. at 20 ("In other words, because the documents were already in the public domain due to Lambert's own unilateral actions, Lambert argued that they were no longer subject to the strictures of the Protective Order. In making the argument, Lambert relied on an exception to the Protective Order that did not exist.

---

[1] *See* Dkt. 207-1, Ex. 1 (source chart identifying Sheriff Dar Leaf as the source of Exhibits A, C-1 through C-11, D-1 through D-6, I, J); Dkt. 204-1 (Ex. A) (Letter of Sheriff Dar Leaf describing Plaintiffs' Bates-stamped documents), Dkt. 204-3 (Ex. C-1) (DOM_DC00370344, posted on X by Sheriff Dar Leaf on March 18, 2024), Dkt. 204-4 (Ex. C-2) (DOM_DC00370344, posted on X by Sheriff Dar Leaf on March 18, 2024), Dkt. 204-5 (Ex. C-3) (DOM_DC00370399, posted on X by Sheriff Dar Leaf on March 18, 2024, and July 24, 2026); Dkt. 204-6 (Ex. C-4) (DOM_DC0037039[], posted on X by Sheriff Dar Leaf on March 18, 2024); Dkt. 204-7 (Ex. C-5) (DOM_DC00370400, posted by Sheriff Dar Leaf on March 18, 2024); Dkt. 204-9 (Ex. C-7) (DOM_DC01435893, posted by Sheriff Dar Leaf on X on March 18, 2024); Dkt. 204-12 (Ex. C-10) (DOM_DC01459733, posted by Sheriff Dar Leaf on X on September 4, 2025); Dkt. 204-17 (Ex. D-3) (DOM_DC04245227, attached to a March 17, 2024, letter of Sheriff Dar Leaf); Dkt. 204-18 (Ex. D-4) (DOM_DC01435893, posted to X by Sheriff Dar Leaf on March 18, 2024); Dkt. 204-25 (Ex. I) (DOM_DC01459733, posted by @RasmussenReports on August 20, 2026, and attached to an August 20, 2026, letter of Sheriff Dar Leaf); Dkt. 204-27 (Ex. J) (DOM_DC00369777-9791, DOM_DC00369872-9874, DOM_DC00370184-0200, posted to X by Sheriff Dar Leaf on July 24, 2026).

Nothing in the Court's Status Quo or Protective Orders shields a Party from sanctions for reposting or sharing documents already made public due to that Party's own violation of those Orders."); Dkt. 144, Order at 2-3 ("It is true that Lambert's misconduct during the status quo period was not as egregious as her initial violations, at least insofar as she did not leak any new documents. But during that period, the bar for compliance had become higher; for good reason, the Status Quo Order imposed additional obligations.").

Yet once again, Mr. Byrne has purposefully defied court orders and in so doing forced the parties to engage in additional briefing on another dispute that was already decided by the Court. The burden these types of disputes have caused the Court and Plaintiffs is real. Mr. Byrne's filing required the Court to vacate deadlines while this dispute plays out, thereby prolonging this already five-year-old lawsuit. Minute Order, Sept. 15, 2026. And it is not as if Mr. Byrne is raising meritorious arguments. It is simply not credible that Mr. Byrne and his experienced counsel are unaware of this Court's rulings. Plaintiffs cited Judge Upadhyaya's ruling in the email that Mr. Byrne attached to his motion, Dkt. 207-2, Ex. 2, and Mr. Ticktin is the attorney who represented Mr. Byrne in his petition for certiorari challenging this Court's disqualification rulings, *see* Petition, No. 25-281 (U.S. Sept. 8, 2025). Mr. Ticktin, in fact, included Judge Nichols's ruling in the appendix in support of Mr. Byrne's certiorari petition. *See* App'x at 6a, No. 25-281 (U.S. Sept. 8, 2025). Nor is it credible that Mr. Byrne and his counsel cannot determine which portions of his opposition brief and which of his exhibits are subject to the Protective Order and Status Quo Order without having regained access to Plaintiffs' documents through proper channels. *Contra* Opp. at 3-4. As Plaintiffs identify in footnote 1 of this response, the documents Mr. Byrne filed and described in his opposition brief are clearly marked with Plaintiffs' Bates stamps. The issue, instead, is that Mr. Byrne refuses to recognize the legitimacy of this Court's rulings. He has said

so himself: "Screw you, Judge. I'm ignoring your orders." Dkt. 198-8, Ex. 7 at 9:14-22. And if Mr. Byrne was genuinely concerned about the public's right of access, he would have followed the Court's procedures for filing materials marked confidential, which required him to file the at-issue documents under seal, confer with Plaintiffs about what needed to be sealed, file a motion to seal any documents marked confidential by Plaintiffs, and then separately file a public version redacting any information designated confidential or attorneys' eyes only. Dkt. 79, Am. Protective Order at ¶¶ 12-15; LCvR 5.1(h)(1); LCvR 7(m). Those materials would then remain sealed unless and until the Court ordered otherwise. Dkt. 79, Am. Protective Order at ¶ 14. If Mr. Byrne believed the materials should not remain sealed, he could have objected to continued sealing by providing Plaintiffs written notice. *Id.* ¶ 15. Mr. Byrne did none of that. Instead, he and his counsel unilaterally devised their own approach: publicly file Bates-stamped documents containing confidential discovery materials without any attempt to file under seal or to provide appropriately redacted public versions, and then ignore what this Court previously said about Mr. Byrne's contrived document-laundering exception to the Protective Order and Status Quo Order.

If there were any doubt about whether his motives lie with complying with or clarifying this Court's orders, his actions have since demonstrated that his goals could not be further from seeking to comply with or clarify anything. Instead, while his motion has been pending, he has on multiple occasions caused to be broadcast the very motion this Court ordered be sealed.

***First***, on September 11, 2026, just hours after this Court ordered his opposition brief be sealed, Mr. Byrne posted on X a media appearance on *The Absolute Truth* during which he discussed the opposition brief that the Court ordered be sealed—***while*** it appeared on screen. Ex. A (X post sharing Ex. B).




Ex. B at 21:02.[2] During this media appearance, he purported to identify the contents of Plaintiffs' internal emails that he received in discovery and leaked in 2024. *See id.* at 20:00-:50, 25:00-:20. He further emphasized his refusal to follow the orders of an "Indian magistrate" and accused Plaintiffs' counsel of engaging in "lawfare" and some "Bolshevik method to get default judgments from crooked judges." *See id.* at 27:26-28:05, 29:15-29:30, 29:55-31:00. This post remains public.

***Second***, on September 17, 2026, Mr. Byrne shared a third-party's video displaying the opposition brief that was ordered to be sealed, calling it "Good journalism."

---

[2] https://x.com/PatrickByrne/status/2098543317281562756. Plaintiffs applied redactions to this screenshot to avoid further dissemination of a document this Court ordered be maintained under seal. The document was not redacted in the original video.




Ex. C (X post sharing Ex. D).[3]

***Third***, later that same day, Mr. Byrne shared the full version of the same third-party's video displaying Mr. Byrne's opposition brief that was ordered to be maintained under seal, stating: "Finally, some intelligent Journalist are digging through the filing and realizing the significance and Ludacris nature of what's going on in my fight with Dominion." Ex. H (X post sharing Ex. I).[4]

Simply put, these are not the actions of a party who genuinely seeks clarification. They are the acts of a party intent on violating this Court's orders no matter what.

Because there is nothing to clarify in the Court's September 11, 2026, Order, the Court should deny Mr. Byrne's motion, order Mr. Byrne to file an appropriately redacted version of his

[3] https://x.com/PatrickByrne/status/2100664133108548039.

[4] https://x.com/PatrickByrne/status/2100756127017214257.

opposition brief, and set a new deadline for Plaintiffs to respond to the pending motion for default judgment.

## II. Mr. Byrne's Motion Contains Demonstrably False Facts and Confirms that Default Judgment Is the Only Appropriate Remedy.

Separate from his failure to follow the Court's September 11, 2026, Order requiring him to refile certain documents under seal, Minute Order, Sept. 11, 2026, Mr. Byrne's motion once again rests on misrepresentations, outright lies, and distractions.

***First***, Mr. Byrne's motion claims that "[o]n June 5, 2026, undersigned counsel conferred by email with counsel for Dominion and requested that access to the hosted repositories be restored." Dkt. 207 at 3. This is false. Plaintiffs have no record of any such communication. Plaintiffs' counsel emailed Mr. Byrne's counsel for that communication, and he has not responded. Ex. E; Brook Decl. ¶ 7.[5]

***Second***, Mr. Byrne's motion also claims that he "asked Dominion to identify every page or exhibit in the Corrected Opposition that Dominion contends is Discovery Material under the Amended Protective Order and every page Dominion agrees came from the press or another public source." Dkt. 207 at 5-6. This too is false. The September 14, 2026, email from Mr. Byrne's counsel to Plaintiffs' counsel stated, "Dr. Byrne intends to file a Motion for Clarification," and the only question he asked was, "Do you oppose the relief sought?" Ex. F. At no point did Mr. Byrne's counsel ask Plaintiffs to identify which documents needed to be sealed.

---

[5] It also doesn't matter. ***First***, it is obvious that Mr. Byrne and his counsel are in possession of the documents, in violation of this Court's orders. They filed them. ***Second***, if Mr. Byrne's counsel really wanted legitimate access to Plaintiffs' documents, the correct procedure for obtaining access is to seek permission from this Court. *See* Dkt. 77, Status Quo Order at p.1 & ¶ 8 (setting forth procedures for the handling of discovery materials "until further Order of the Court"); Minute Order, Aug. 23, 2024 (restricting access to Plaintiffs' discovery materials "unless specifically authorized by this Court"). Mr. Byrne's counsel previously recognized the need to seek access from the Court, Dkt. 167, Joint Status Rpt. at 16-17, but he never formally moved for such access.

***Third***, Mr. Byrne claims that Plaintiffs' decision to email (rather than formally move) this Court, copying his counsel, to request the Court seal his default-judgment opposition and exhibits was improper. Mot. at 3-6. Not so. Of course, Plaintiffs agree that the ordinary sealing procedure is the better one: the party seeking to publicly file confidential documents contact the other party to meet and confer and then, if there is any opposition, file the documents under seal and separately object to continued sealing in writing. Dkt. 79, Am. Protective Order at ¶¶ 12-15; LCvR 5.1(h)(1); LCvR 7(m). The problem is this: it was ***Mr. Byrne*** who ignored the ordinary procedure entirely by opting to unilaterally file Plaintiffs' discovery materials publicly on the docket in violation of the Protective Order. There was thus nothing improper about Plaintiffs' Friday-afternoon email to the Court, with Mr. Byrne's counsel copied, seeking urgent relief before the weekend. Dkt. 207-2, Ex. 2.

## III. Mr. Byrne's Objection to Continued Sealing Is Without Merit.

Mr. Byrne's objection to sealing is without merit. ***First***, the exhibits likely will not be judicial records. And ***second***, the *Hubbard* factors overwhelmingly support sealing.[6]

### A. The Exhibits Are Not Judicial Records.

"[T]he common law right of access extends only to 'judicial records.'" *Herron v. Fannie Mae*, 2016 WL 10677615, at *1 (D.D.C. June 20, 2016) (quoting *United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997)). "[N]ot all documents filed with courts are judicial records." *S.E.C.*

[6] Plaintiffs specifically object to the public disclosure of the following exhibits, as well as any references to these exhibits in Mr. Byrne's opposition: Dkt. 204-3 (Ex. C-1) (DOM_DC00370344), Dkt. 204-4 (Ex. C-2) (DOM_DC00370344), Dkt. 204-5 (Ex. C-3) (DOM_DC00370399); Dkt. 204-6 (Ex. C-4) (DOM_DC0037039[]); Dkt. 204-7 (Ex. C-5) (DOM_DC00370400); Dkt. 204-9 (Ex. C-7) (DOM_DC01435893); Dkt. 204-12 (Ex. C-10) (DOM_DC01459733); Dkt. 204-17 (Ex. D-3) (DOM_DC04245227); Dkt. 204-18 (Ex. D-4) (DOM_DC01435893); Dkt. 204-25 (Ex. I) (DOM_DC01459733); Dkt. 204-27 (Ex. J) (DOM_DC00369777-9791, DOM_DC00369872-9874, DOM_DC00370184-0200).

*v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013). "Just as a document would not be a public record when it does not eventuate in any official action or decision, whether something is a judicial record depends on the role it plays in the adjudicatory process." *Id.* (cleaned up). If the court "never relie[s] on the filings when it" issues its decision, then the filings are not judicial records to which the right of public access attaches. *Herron*, 2016 WL 10677615, at *2 ("The briefs and exhibits related to Plaintiff's Partial Motion for Summary Judgment—*see* Dkts. 147, 150 and 156—are not 'judicial records' because the Court denied Ms. Herron's motion as moot and never relied on the filings when it entered judgment in favor of Defendants on all claims.").

The exhibits Mr. Byrne filed will likely not be judicial records because they are not relevant to the issue the Court must decide—namely, whether Mr. Byrne's serial violations of court orders and admitted intent to violate any order with which he disagrees justify default judgment. Mr. Byrne claims that the documents are relevant to whether he violated the Protective Order and Status Quo Order because they show he disseminated documents he had previously leaked to Sheriff Dar Leaf some years ago. But Mr. Byrne knows that the Court has already rejected his document-laundering exception to the Protective Order and Status Quo Order, Dkt. 126 at 20; Dkt. 144 at 3, and as explained below, even if Mr. Byrne's defense had merit, the substantive content of each document is still irrelevant—as all that would matter is whether the documents he previously leaked are the same documents he more recently leaked. The documents themselves are thus irrelevant to what the Court will decide and there is thus no reason for the Court to rely on them. They likely will not be judicial records.

### B. The *Hubbard* Factors Support Continued Sealing.

In any event, the *Hubbard* factors support sealing. Those factors include "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents;

(3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980)).

**1. Need for Public Access.** There is no need for the public to access these records. As explained above and below, they are not relevant to the issues the Court must decide. *True the Vote, Inc. v. Internal Revenue Serv.*, 2024 WL 2803332, at *6 (D.D.C. May 31, 2024) ("There is a need for public access in those instances where the documents at issue are specifically referred to in the trial judge's public decision." (cleaned up)). The public has overwhelming access to these proceedings, too, as all of the Court's hearings and orders have been public. *Hubbard*, 650 F.2d at 317 (holding that the need for public access was only "modestly served" because the public had access to most proceedings).

Mr. Byrne waves the flag of election integrity and insists the public needs access to documents that purportedly "concern the supply chain and foreign-touch points of voting equipment used in American elections, including materials the public discussion has tied to China and to routing through Shanghai." Mot. at 13. That is unsupported rhetoric. Mr. Byrne never identifies a single Bates-stamped document in Plaintiffs' production that demonstrates what he claims. He cannot, because the documents do not show what he says they show. His invocation of election integrity is a generalized, politically charged assertion. And while this case does concern Mr. Byrne's claims about whether Plaintiffs specifically stole the 2020 Presidential Election, Plaintiffs' default-judgment motion does not. Moreover, the relevant inquiry is "on the public value of the withheld information, not the public's interest in the overarching subject matter to

which that information may relate," *In re Chodiev*, 2021 WL 1795423, at *4 (D.D.C. Mar. 23, 2021), and Mr. Byrne has made no showing about the value of the withheld information and there is none.

**2. Previous Public Access.** Mr. Byrne says these documents are already public. They are—because he and his counsel put them there, in flagrant violation of this Court's Protective Order. That is not a basis for unsealing. As *Hubbard* makes clear, "previous access has been considered relevant to a determination whether more liberal access should be granted to materials formerly properly accessible on a limited basis through ***legitimate public channels***." 650 F.2d at 318 (emphasis added). Unlawful disclosures are not legitimate public channels. A party who violates a protective order does not get to bootstrap his own misconduct into a basis for unsealing.

Mr. Byrne also notes that Plaintiffs filed portions of two documents in support of their default-judgment motion. Dkt. 198, Exs. 17-18. That is only partially true, but it is irrelevant. Plaintiffs filed Exhibits 17 and 18, which only show portions of documents that ***Mr. Byrne leaked***, at a resolution so low that the documents either are not legible or are hardly legible. And as the producing party, Plaintiffs were well within their rights to file those exhibits. A considered, low-resolution, limited filing by the party that owns the documents—in an effort to show ***Mr. Byrne's unlawful disclosures***—has nothing in common with the wholesale document dump Mr. Byrne engineered in defiance of this Court's orders, and continues to advance through his latest unsealing request. This factor does not favor unsealing.

**3. Identity of the Party Objecting to Disclosure.** The third *Hubbard* factor considers who has objected to disclosure and the identity of that person. *Hubbard*, 650 F.2d at 319. Plaintiffs are private corporations, not government officials. That matters. The presumption of transparency is "accentuated" when a government entity is a party, because "public attention can act as a strong

corrective to government abuses of power." *In re Press Application for Access to Jud. Recs.*, 2023 WL 8254630, at *4 (D.D.C. Nov. 29, 2023) (citations omitted). Plaintiffs have objected to disclosure at every stage of this litigation—vigorously and for good reason, as explained below in the context of the fourth *Hubbard* factor.

**4. Strength of Any Property and Privacy Interests Asserted.** There is nothing to argue about here. These documents are confidential. They consist of internal business communications and emails. The Protective Order, which Mr. Byrne himself stipulated to, provides that all "Discovery Material produced in the Litigation will be used ... solely for purposes of this Litigation and no Receiving Party will provide Discovery Material to any person or entity ... or make any Discovery Material public except as permitted by this Order…." Dkt. 79, Am. Protective Order at ¶ 1. Plaintiffs produced millions of pages in reliance on the Protective Order. That reliance is itself "a significant factor in determining whether to lift a seal on discovery materials." *Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653, 659 (D.D.C. 1986). The only reason any of these materials are publicly available today is that Mr. Byrne put them there—unlawfully.

Plaintiffs' confidentiality interest is not theoretical. The documents may not contain trade secrets in the traditional sense. But the documents contain the names, phone numbers, and email addresses of Plaintiffs' current and former employees, and Mr. Byrne has weaponized these documents to spread lies, damage Plaintiffs' reputation, and inspire people to do real harm to Plaintiffs and their employees. As the Court observed after Mr. Byrne first began leaking Plaintiffs' documents:

> As Lambert and Byrne continue to promote the dissemination of Dominion's Litigation Documents and other discovery, threats persist:







Dkt. 126, Mem. Op. at 25 (citing Dkt. 113 at 7; Dkt. 113-7). Plaintiffs received voicemails calling for their employees to be "jailed and hanged." Dkt. 96 at 12. An armed individual showed up at Plaintiffs' offices. Dkt. 75 at 3-4. These threats persist. In response to Mr. Byrne's recent leaks of Plaintiffs' documents, one individual on X posted, "Ya' know… if you don't hang them this time… they'll just keep doing it." Ex. G.[7] And in response to a video that Mr. Byrne shared on X about Plaintiffs' counsel's September 11, 2026, email to the Court—a video that displayed the brief the Court ordered be sealed, *see* Exs. H-I—commenters called for criminal prosecutions for "treason," "capital punishment," and "death" by "hanging or firing squad," Ex. J.

Unsealing these documents will further embolden Mr. Byrne to lie about the contents of Plaintiffs' documents, and it will generate more of the same: more harassment, more threats, more harm. The fourth factor weighs decisively in favor of maintaining the seal. *A.B. v. U.S. Dep't of Just.*, 2019 WL 13111106, at *3 (D.D.C. Mar. 7, 2019) (allowing a party to proceed pseudonymously because "any public interest in disclosing the identity of the plaintiff is significantly outweighed by the deadly threat that such disclosure would entail"); *Hamen v. Islamic Republic of Iran*, 318 F. Supp. 3d 194, 198 (D.D.C. 2018) ("Given the gravity of harm that could result if the witness's identity and testimony are made public, this factor weighs strongly in favor of sealing the witness's testimony."); *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005)

[7] https://x.com/dun51708/status/2083404438643908908.

("If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time.'" (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989))).

**5. The Possibility of Prejudice to those Opposing Disclosure.** Mr. Byrne will suffer no prejudice by maintaining these documents under seal. Meanwhile, as explained above in the context of the fourth *Hubbard* factor, Plaintiffs will suffer significant prejudice due to Mr. Byrne's sensational disclosures of Plaintiffs' documents. *Hubbard*, 650 F.2d at 320-21 (explaining "[t]he possibility of prejudice to the defendants by sensational disclosure is a factor which may weigh in favor of denying immediate public access").

**6. Purpose for Which the Documents Were Introduced.** The sixth *Hubbard* factor is the "single most important" element in the analysis. 650 F.2d at 321. Mr. Byrne purports that he introduced these materials to argue the documents he disseminated were already made public some years ago after he leaked them. Opp. at 14. But ***Mr. Byrne knows*** that the Court has already rejected his document-laundering exception to the Protective Order and Status Quo Order. Dkt. 126, Mem. Op. at 20; Dkt. 144, Order at 2-3. These documents thus serve no legitimate purpose and will not impact the Court's decision on Plaintiffs' default-judgment motion. *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 120 (D.C. Cir. 2021) (holding that when "a sealed document didn't affect a judicial decision, it can be the 'most important' element cutting ***against*** disclosure" (emphasis in original)). It is clear that Mr. Byrne introduced these documents for no reason other than to continue his campaign of spreading disinformation about Plaintiffs. But Plaintiffs do not forfeit their privacy and reputational interests by seeking justice in civil courts. *Cf. Hubbard*, 650 F.2d at 321 (holding that the defendants do not "impair the very privacy rights they seek to vindicate" by arguing in criminal proceeding the government

unlawfully seized their documents). And if Mr. Byrne's document-laundering exception had any merit (it does not), the substantive content of these documents is collateral to that issue. A comparison of the documents against Mr. Byrne's public representations may bear on whether a given statement constituted a new disclosure. But only the ***act of comparison*** matters—what the documents substantively say does not. The Court can perform that comparison without exposing the documents' contents to the public.

* * *

The *Hubbard* factors overwhelmingly support maintaining these documents under seal. There is no legitimate need for public access to documents that are irrelevant to the Court's decision on Plaintiffs' default-judgment motion, and the prior "public access" Mr. Byrne invokes is nothing more than the fruit of his own unlawful disclosures. Plaintiffs—private corporations, not government actors—have vigorously objected to disclosure at every stage, and their property, privacy, and safety interests are compelling: these confidential internal business communications contain employees' personal information, and Mr. Byrne's prior leaks have already generated harassment and threats against Plaintiffs and their employees. And the reason Mr. Byrne introduced the documents cuts decisively against disclosure: Mr. Byrne introduced these exhibits not to advance any legitimate litigation objective but to relitigate his discredited document-laundering theory and to further his extrajudicial campaign of disinformation against Plaintiffs.

## CONCLUSION

For the reasons explained above, the Court should deny Mr. Byrne's motion for clarification, deny his objection to continued sealing of the documents identified in footnote 6 of this opposition, order Mr. Byrne to file an appropriately redacted version of his opposition brief, and set a new deadline for Plaintiffs to respond to the pending motion for default judgment.

Dated: September 21, 2026

Respectfully submitted,

By: */s/Davida Brook*
Davida Brook (D.C. Bar No. CA00117)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
dbrook@susmangodfrey.com

Stephen Shackelford, Jr. (D.C. Bar No. NY0443)
Eve Levin (D.C. Bar No. 1672808)
George El-Khoury *(Admitted pro hac vice)*
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Tel: (212) 336-8330
sshackelford@susmangodfrey.com
elevin@susmangodfrey.com
gel-khoury@susmangodfrey.com

Jonathan Ross (D.C. Bar No. TX0027)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
jross@susmangodfrey.com

Edgar Sargent (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of September 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/Davida Brook*
Davida Brook