IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No. 1:21-cv-02131-CJN-MAU

LIBERTY VOTE HOLDINGS, INC.,
LIBERTY VOTE USA, INC., and
DOMINION VOTING SYSTEMS
CORPORATION,

Plaintiffs,

v.

PATRICK BYRNE,

Defendant.
_________________________________/

**DEFENDANT PATRICK BYRNE'S CORRECTED REPLY IN SUPPORT OF HIS URGENT MOTION FOR CLARIFICATION OF THE SEPTEMBER 11, 2026 MINUTE ORDER, OBJECTION TO THE SEALING OF ECF NO. 204, AND FOR A LIMITED EXTENSION OF TIME**

The Defendant, Patrick Byrne, by and through his undersigned counsel, hereby files his Corrected Reply in Support of His Urgent Motion for Clarification of the September 11, 2026, Minute Order, Objection to the Sealing of ECF No. 204, and for a Limited Extension of Time [ECF No. 207], and states:

## Introduction

This Court is well aware that its Protective Order is concealing evidence of criminal acts of the highest degree, nothing less than treason by the Plaintiff against the United States. As such, this Court has 2 choices: either follow legal precedent and dissolve the Protective Order or protect the Plaintiff from exposure of its criminal acts and be a part of the effort to conceal evidence of its

crimes.

Dominion, now called "Liberty Vote," knew of its crimes, and evidence of its crimes that were memorialized in its emails at the time it filed the above styled lawsuit and requested Dr. Byrne to stipulate to its proposed protective order. Dr. Byrne never consented to concealing Dominion's crimes.

The First Amendment of the US Constitution, precedent of the United States Supreme Court, federal whistleblower law, 18 U.S.C. § 4, public need for national security and safety, and the crime-fraud exception, all permit Dr. Byrne to speak freely about Dominion, its crimes, and his criticism of this Court assisting Dominion to conceal the crimes using the Protective Order and sealing the docket. Dominion ignored all of this in its Response.

Time is critical, and Dr. Byrne has a lifetime reporting obligation due to his work with the U.S. government and intelligence agencies. A federal election will take place in one month, and the U.S. government should have access to all critical evidence. The U.S. Department of War issued a directive to the U.S. military aimed at Dominion, and its foreign conspiracy to interfere in U.S. elections. Today, the U.S. Department of Homeland Security announced that it has many election investigations underway.

This Court is on notice. Orders that continue to silence, delay, disrupt, or interfere with criminal investigations and national security operations are nothing less than the commission of the crime of obstruction of justice, 18 U.S.C. § 1512, and Misprision of a Felony, 18 U.S.C. § 4. This Court is not immune to prosecution, and it has no authority to immunize Dominion.

With this said, the undersigned is of the position that the last thing it ever wants to see is a misguided judge go over a line from judgment to criminal activity. Yet, he is greatly concerned that this Court will not take heed, and thereby find itself in jeopardy.

**Free Speech and Public Access**

The First Amendment of the United States Constitution states in part that Congress shall make no law: "abridging the freedom of speech or of the press. . ." U.S. Const. amend. I. This is true even if the press is reporting on documents that were improperly leaked.

The United States Supreme Court ruled in *New York Times Co. v. United States,* 403 U.S. 713, 714 (1971) that even though the classified Pentagon Papers had been illegally and inappropriately leaked by Daniel Ellsberg, the court could not prevent newspapers from publishing or discussing the papers. The Court ruled that once a document was in the public sphere or acquired by a party, a gag order or injunction carries a heavy presumption of unconstitutionality. This presumption that gagging speech, even speech about illegally leaked documents, is not permissible was reiterated by the U.S. Court of Appeals.

The Court held that a TRO blocking a newspaper from publishing information to protect a person's privacy is unconstitutional, even if the FBI had inappropriately released logs of an illegal wiretap to the newspaper. The Court held that the lower court erred in gagging speech. *In re Providence Journal Co*., 820 F.2d 1342, 1344–46 (1st Cir. 1986). It is clear, it's unconstitutional to prevent public reporting even if the information was, illegally, or inappropriately, released to the press.

First Amendment rights related to protective orders are broad. The United States Supreme Court clarified that a protective order does not prevent speech, or sharing of information, if the speech relates to independent press and sources. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984). Moreover, the United States Court of Appeals elaborated in that once protective-ordered discovery materials are actually admitted and used as evidence during a public trial, the traditional "good cause" standard used to seal pre-trial discovery under Fed. R. Civ. P. 26(c) no longer



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

suffices. *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 530 (1st Cir. 1993). Additionally, the Court of Appeals made clear that information that a party possesses purely through court compelled discovery is distinguished from information filed with the court to influence a judicial decision. The Court held that while there can be a "good cause" standard to shield pre-trial discovery exchanges, any discovery materials that are actually filed in connection with a non-discovery motion , such as a summary judgment motion, cross the line into "judicial records" triggering a much higher First Amendment and common-law right of public access. This was again clarified by the Court in *Leucadia, Inc. v. Applied Extrusion Technologies, Inc*., 998 F.2d 157, 161–65 (3d Cir. 1993). In *Leucadia*, id., the Court addressed the boundaries of what constitutes discovery materials and held that protective orders shield only unfiled discovery or discovery attached to purely standard discovery motions, such as motions to compel. The Court held there is a presumptive right of public access applies directly to any material attached to pretrial motions that require a merits-based judicial decision.

Most importantly, precedent prevents pre-trial protective orders from receiving a blanket pass to hide information from the public once those documents are integrated into court briefs or opinions. The Court noted that because the public funds the judiciary, the public has a right to see the evidence that forms the basis of a judge's ruling, distinguishing the pure private, out-of-court nature of the discovery phase highlighted. *Baxter Int'l, Inc. v. Abbott Labs*., 297 F.3d 544, 545–47 (2002).

**Pre-trial Protective Orders are Impermissible if used to Secret Evidence of Crimes**

A civil protective order cannot legally hide evidence from federal investigation or subpoena investigating criminal conduct or fraud. The public interest in investigating crimes always overrides a civil court's protective order. *In re Grand Jury Subpoena,* 836 F.2d 1468, 1475–



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

77 (4th Cir. 1988).

Moreover, a judge can review lawyer-client documents in camera and analyze the crime-fraud exception. However, the attorney-client privilege disappears when a client abuses the relationship to cover up a crime. *Clark v. United States*, 289 U.S. 15 (1933). While the crime fraud exception is usually used to strip away attorney-client privilege, courts expand it to the litigation process itself. If a party uses their attorneys to draft a protective order or file a sealed motion specifically to advance or conceal an ongoing crime or fraud, those internal communications lose confidential status and do not qualify for a protective order.

This precedent dates back to the 1800s when the U.S. Supreme Court held that a court of justice will not enforce a contract that grows immediately out of an illegal act. *Armstrong v. Toler*, 24 U.S. 258, 267–68 (1826). If the core of a civil contract involves the suppression of information about a crime, the legal system will treat the contract as tainted and refuse to enforce it. The Court reiterated this point again approximately 60 years later, that any agreement with the purpose to obstruct or circumvent the law is fundamentally void against public policy and unenforceable in a court of law. *McMullen v. Hoffman*, 174 U.S. 639, 654 (1899).

Recently, the U.S. Supreme Court held that a protective order cannot criminally or civilly immunize a party from hiding evidence of a crime, nor can it legally penalize a whistleblower for handing over evidence of criminal activity to law enforcement. *Department of Homeland Security v. MacLean*, 574 U.S. 383, 391–94 (2015).

**Pre-Trial Protective Orders Cannot Prevent the Report of Crimes**

Misprision of a Felony, 18 U.S.C. §4, is a felony carrying a three-year penalty. A person, company, or court, can be charged with Misprision of a Felony if they have knowledge a felony took place, and took an active step to hide the crime.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Likewise, Obstruction of Justice, 18 U.S.C. §1512, is a felony carrying up to a 20-year penalty. It is illegal to urge a witness to hide or destroy evidence under federal investigation.

Moreover, the Whistleblower Protection Act, and 50 U.S.C. §3001 establish duties, responsibilities, and protections for reporting crimes, and insight into actual or potential threats to the U.S. homeland, the American people, and national interests both home and abroad.

These public safety interests and protections were solidified by the U.S. Court of Appeals for the Second Circuit. The Second Circuit held that the public had a right, to the information and that pre-trial discovery is presumptively a public process. That Court supported its opinion by noting that if the public did not have an inherent right to access of litigation documents that a party would not need the protective order in the first place. If a party wants to continue hiding its information, it has an ongoing burden to demonstrate "good cause." *In re "Agent Orange" Prod. Liab. Litig*., 821 F.2d 139, 145–48 (2d Cir. 1987), *cert. denied sub nom. Dow Chem. Co. v. Ryan,* 484 U.S. 953 (1987*).* The Court further held that society had a right to know the medical data, toxicity studies, and government correspondence due to the veterans' interest in health, safety, and medical care.

**The Court cannot gag Dr. Byrne, Prevent Public Access, or Government Review of Dominion's Documents**

There is a federal election in approximately 30 days. The Department of Homeland Security and the Department of War announced their directives to pursue evidence of foreign interference of the federal election, and to secure the election. Every patriotic citizen, especially judges who have taken their oaths to protect the Constitution of the United States are required to provide any and all evidence they possess, and yet, the judges in the case at bar appear to be interfering with these investigations, notwithstanding that the undersigned is making it very clear



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

that this Court is assisting in the hiding of evidence of this very crime.

Dr. Byrne has requested six times to set aside the Protective Order. Dr. Byrne requested the Protective Order be set aside to comply with subpoenas from the Arizona Legislature, the Montana Legislature, and the Michigan Legislature. Dr. Byrne had requested the protective order be set aside to timely provide exculpatory evidence to Tina Peters, on criminal trial, where Dr. Byrne asserted Dominion was the impetus to request Mrs. Peters from being framed when it learned she had a copy of the Mesa Dominion data that it believed was wiped by a "trust build." Dr. Byrne had requested the protective order be set aside because the Dominion discovery emails showed evidence of Dominion's crimes, and the public and the government needed access. Dr. Byrne requested the protective order be set aside to permit compliance with Joe Oltmann's subpoena. Mr. Oltmann is presently being sued by Dominion's former employee, Eric Coomer, with whom Dominion (Liberty) has a related party confidentiality agreement. This Court ignored Dr. Byrne and promptly removed his former counsel when she filed the Motions to Set Aside the Protective Orders. Amazingly and not typical of any other federal court, Dr. Byrne's motions sat ignored on the docket for years, and when the undersigned filed two of Dr. Byrne's Motions to Set Aside the Protective Order, this Court stayed the first one for 9 months and prevented Dominion from filing a Responsive brief. When a second Motion to Set Aside the Protective Order was filed, it was ignored for months.

This Court has failed to conduct any hearing or ask to see the basis to set aside the protective order in camera. This was nothing short of an apparent dereliction of duty. When an attorney informs the Court of serious national security breaches, criminal acts which are so serious that they warrant the death penalty, and related litigation, a Court should act promptly. Just yesterday, with no opportunity to oppose this Court's presumptuous allegations Dr. Byrne's



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

motions were denied as "frivolous" by a minute order.

Now, one month out from a federal election, the DOW is acting. Our Secretary of War, Pete Hegseth, issued a directive on September 22, 2026, advising how the government will handle foreign interference in the upcoming election. Exhibit 1. The Dominion and Liberty Vote documents are necessary for the DOW to review immediately.

Dr. Byrne has worked in one capacity or another for the federal government since he was in his 20s. He has reporting obligations that are lifelong, and he cannot be silenced by this court when he needs to report evidence of crimes.

Moreover, the undersigned, does not have any of the documents provided in discovery in the case *sub juris*, and beseeched this to correct the hamstringing by the Plaintiff. This Court was aware, back in January of 2026, that the Plaintiff was refusing to provide him with discovery to prepare for his client's trial. Exhibit 9. This Court took no action in the past 9 months to order the Defendants to provide the undersigned with discovery. Hence, the undersigned is flying blind, and in order to prepare this brief for his client, he gathered as much information as possible from the press. The press reports with the Dominion emails provided by former counsel to law enforcement show foreign influence and interference. The very influence the DOW stands ready to address.

Law Enforcement had conducted a press release following its referrals to Congress, the FBI, Homeland Security, and to the Director of National Intelligence. Undersigned reviewed these press documents and it is clear that Dominion, now Liberty Vote, is utilizing a Chinese vendor, to program the ICX in conjunction with Serbian engineers. Specifically, Dominion admits in its emails that its ICX touchscreens, the equipment that works in conjunction with the 402 printers are programmed in China. On March 24, 2020, Yu Chun Lu, of Hewlett Packard wrote to Nenad

Matic, and Djordje Matijevic of Dominion's Serbia office, and copied Mujahatulla Shaik, Wenjie Zhao, Sivalingham Kadarkarai of its vendor, Hewlett Packard. Yu Chun Lu states "Meanwhile the tablet arrives at Shanghai customs, we are waiting for customs clearance now, expecting next week to get the tablet." Yu Chun Lu requested that the Serbians should "Please help us test and let us know the results" referring the functioning of the ICX with the 402 printer. At the bottom of the email, Dominion's Chinese vendor provided updated firmware to Serbia advising that the "FDU tool can update the fw (firmware) from 001.1903A, 001.1906A, 002.1924A, 002.1936B, and 002.2002B." The subject line of the email from Dominion's Chinese vendor is titled "Dominion Voting FW (Firmware) update latest issued. Exhibit 2. Most troubling, is that the 402 printers are not Election Assistance Commission certified because Dominion represented that they were "commercial off the shelf." Exhibit 3 at 40. In January, 2020, Dominion lied about its involvement with China to Congress, and minimized its use of supplies just like it did in the instant Complaint. Dominion made fun of Dr. Byrne for his post of a picture of large cardboard boxes marked Dominion and "made in China." Dominion chastised him stating that only a small number of parts and its transport bags come from China. That whopper of a lie, the concealment of Chinese vendors modifying programming and firmware, has both criminal and civil penalties, including Major Fraud against the United States in violation of 18 U.S.C. §1031, Wire Fraud, 18 U.S.C. §1343, False Statements/Concealing a Material Fact 18 U.S.C. §1001, the Export Control Reform Act (ECRA), and the False Claims Act. Most importantly, these are ongoing crimes. Liberty advertises on its website that is continuing use of the ICX and printers. Ex. 2 at 3 (DOM_DC01459733) from press filing.

The undersigned's review of Dominion's criminal activity is not limited to China. The press has reported law enforcement's press release detailing Dominion's March 30, 2020, email



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

from Ronald Morales, a Venezuelan who worked for the indicted company Smartmatic, established VPN remote connectively for Eric Coomer, which Eric Coomer used on November 3, 2020, to access the election results during the election. Specifically, Ronald Morales stated in his March 30, 2020 email to Eric Coomer, and Nicole Nolette, that "we were able to establish VPN connection from the new virtual machine created today, so tomorrow we are going to work to make the necessary changes that can allow us to reach the EMS (Election Management Server, also known as the main server) from the VPN connection. Ex. 2 at 4.

The undersigned learned from press reports that Dominion's internal employees, including Eric Coomer, used their concealed administrative privileges to access the results during the election as interlopers between the receipt of the election results and the people who ultimately were given the results, by use of a WinEDS server. On November 3, 2020, Eric Coomer sent an email to Serbian and Venezuelan engineers informing them that he might not be able to read the results through the Smartmatic/Sequioa server that was not supposed to exist in 2020. That server was concealed and unknown to the government because Dominion had lied and represented that it had terminated use of its "legacy equipment." Dominion used it because it needed to in order to use the original Smartmatic methods and programming. Coomer wrote "Chicago EV (Early Voting) metrics" and described "We may have a situation. We already have several cartridges with roughly 20,000 cards cast and may not be able to read these results into WinEDS. To alleviate any doubt that Dominion and Coomer were hands on with the live results prior to certification Coomer stated "I'm now trying to load the largest cartridge we have by itself in WinEDS." Martijin Punt attempted to intervene and advised that he too was accessing the raw results. Punt suggested use of the Dominion "splitter tool" to "split the results files." Mark McKinney joined the conversation and suggested "manual results entry into WinEDS" again the Smartmatic server



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

that was not supposed to exist in 2020. Exhibit 5 at 5-6 (DOM_DC00370196-197).

Dominion knew all of this was illegal, and that is exactly why Coomer lied under oath in 2022. Coomer testified when asked about rigging 2020 that he did not have access nor did he have the technical capability to do so. Exhibit 6. Subsequently, Coomer admitted that he had access, that VPN was prepared in advance, and that he believes it was Ronald Morales that provided his virtual machine. Exhibit 7. Coomer continues to deny Dominion's use of WinEDS in 2020, which is obviously false when his emails contained in discovery are reviewed. Exhibit 5.

Coomer, and Dominion have repeatedly stated that it's the local governments who run their elections. The local governments have no knowledge of Chinese vendors working with Serbian engineers to program equipment that is falsely represented as commercial off the shelf and from Texas, Venezuelan engineers with remote access via VPN and "virtual machines," WinEDS, or "splitter tools" used live during an election prior to exporting the results to the known server, the EMS. This too is critical for immediate government review. If Dominion lied in 2020 about its use of the Smartmatic servers, it is likely there are servers concealed for use one month from now.

There is no good cause to continue a protective order that was obtained for the sole purpose of concealing Dominion's crimes. This Court must address these national security, and permit the documents to be provided to the U.S. government for criminal investigations. The September 29, 2026 Minute Order determining Dr. Byrne's motions "frivolous" with no analysis, in camera or otherwise, of his reasons to set aside the protective order. Dominion knew what was contained in its files when it filed this lawsuit, and this protective order grew out of its ongoing illegal activity.

Dr. Byrne enjoys protection under the Federal whistleblower laws due to his work for the intelligence community, and the only limitation on his reporting or Free Speech is limited to classified documents.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

**National Security Concerns**

Pete Hegseth Order September 22, 2026, directs the Department of War (DoW) to prioritize advanced intelligence and cyber capabilities to protect the 2026 U.S. midterm elections from foreign interference. Specifically, the DoW has directed the "Defense Intelligence Enterprise (DIE) to execute collection and production on foreign threats to our election, in accordance with the law, regulation, Executive direction, and DoW policies and directive. Exhibit 1

Court must dissolve its own protective order now that it is aware of crimes. Protecting a person or company from public embarrassment of a committed crime does not constitute good cause.

**The Hubbard Factors Require Transparency**

The documents and the court docket in this case must be public in light of the six *Hubbard* factors. The United States Court of Appeals in *United States v. Hubbard,* 650 F.2d 293 (1980) established six facts for the court to decide whether to seal or unseal judicial records by balancing the public's right to open government against private confidentiality interests.

The first *Hubbard* factor requires analysis of the general public's interest and need to understand the judicial proceedings and inspect the documents. This lawsuit involves one the largest election vendors in the United States. The preamble of the U.S. Constitution states that the authority of the government comes from its citizens, and the government is elected by "We the People of the United States…" U.S. Const. pmbl. The framers intended the people to elect its government and for the process to be transparent to the people. Transparency is not a political issue nor is it one that should be controlled by a mere representation from Dominion that it has intellectual property in its emails. Law enforcement press releases have demonstrated this is false. The emails contain evidence of a massive foreign conspiracy, and the public has a right to access

this information.

The second *Hubbard* factor requires analysis of whether the documents have already been made accessible or remain entirely private. The Dominion discovery documents provided under protective order were provided by Dr. Byrne's former counsel, Stefanie Lambert to law enforcement. Subsequently, law enforcement referred the evidence to Congress, Homeland Security, the Federal Bureau of Investigations, the Director of National Intelligence, and other relevant government offices. Law enforcement provided transparency to the public through press releases. It is impossible to get this genie back in the bottle. Many hale Lambert a hero, while this Court has referred her for disbarment for providing the Dominion emails to law enforcement. Either way, many of the Dominion discovery documents were made public by law enforcement, and sealing the documents on the docket or issuing a gag order on evidence that the population is able to review and discuss from independent sources is not logical.

The third *Hubbard* factor requires analysis of whether the party objects to disclosure of the documents. Here, Dominion objects. The documents demonstrate the most serious crimes committed in the history of the United States, and Dominion might want to hide the crimes and its embarrassment but are not legally entitled to do so.

The fourth *Hubbard* factor requires analysis of the legal strength of private, financial, or personal confidentiality tied to the documents. The documents contain evidence of criminal acts. There is no legal authority that can conceal the evidence of the ongoing crimes.

The fifth *Hubbard* factor analyses the harm or disadvantage to the parties opposing disclosure. Dominion lied when it sued Dr. Byrne claiming just a few parts and its transport bags come from China. This was a sham lawsuit. Dominion knew all along that the same court that will not assist current counsel in obtaining the discovery documents, would have never allowed the



**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

documents concealed under protective order to be admitted into evidence at a trial. The plan appears cooked in advance. Dominion is not harmed by the real truth contained in its documents, its just merely caught lying.

The sixth *Hubbard* factor requires analysis of how and why the documents were introduced into the court proceedings. The documents subject to this motion for clarification are obtained by undersigned from the press. He has no discovery, and is flying blind for his client. Dominion filed a Motion for Default Judgment and Dr. Byrne responded using the press sources. The court must consider these exhibits as they are highly relevant to his arguments. The court has already deemed them to have significant weight, that they are Dominion's evidence, when it ordered redactions and sealing.

**Misprison of a Felony and Obstruction of Justice**

The Agent Orange cases require public transparency of the Dominion emails, and the protective order must be shattered since it was derived by Dominion's desire to conceal its crimes. The Court cannot participate in this concealment any longer. The court has taken Dominion at its word that the documents contain intellectual property, and good cause, to make them confidential. It simply is not true. They contain evidence of Chinese vendors, making Dominion guilty of fraud on the court when it filed its Complaint. The protective order was merely to be for pre-trial discovery, and if Dominion filed this lawsuit in good faith, it would have known that these emails with China would be admitted at trial. If Dominion was honest, it would have nothing to hide. Instead, its focus has been on preventing undersigned from obtaining discovery to prepare for trial, and silencing Dr. Byrne when he comments on press posts about Dominion and its crimes.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

**Conclusion**

This Court should not gag or silence Dr. Byrne. He has every right to express his belief that the press reports demonstrate that Dominion has committed crimes. All of Dr. Byrne's public statements refer to the press and its coverage of Dominion and criminal activity. Mor the only person in America who cannot use the information which is public. Dr. Byrne respectfully requests this Honorable Court to clarify its September 11, 2026 Order by ruling that the Court cannot require censorship of Dr. Byrne speech related to his comments on press statements, press releases, or his statements about Dominion's past and ongoing crimes.

Dated: October 1, 2026

Respectfully submitted,

*/s/ Peter Ticktin*
Peter Ticktin, Esquire
Florida Bar No. 887935
Serv512@LegalBrains.com
Serv514@LegalBrains.com
Serv600@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Attorney for Patrick Byrne*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2026, I will electronically file the foregoing with the Clerk of Court through the Court's CM/ECF system, which will send notice to all counsel of record.

*/s/ Peter Ticktin*
Peter Ticktin, Esquire



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

**<u>Index of Exhibits</u>**

Exhibit 1: DoW Memoramdum Sept 22, 2026

Exhibit 2: Rassmussen Post X post 8-20-2024 Sherrif Letter re: Shanghai and VPN

Exhibit 3. EAC Dominion Voting Systems D-Suite 5.17 Test Report

Exhibit 4. Liberty Vote ImageCast X Brochure 2025

Exhibit 5. 2026-07-24 Dar Leaf Letter to President and Docs

Exhibit 6. Georgia Grand Jury Testimony Transcript – Eric Coomer Page 43

Exhibit 7. Eric Coomer Deposition Transcript Excerpts Vol I and Vol III
Coomer v Donald J Trump for President, Inc., et al. 20-cv-34319

Exhibit 8. 2026-09-30 Declaration of Patrick Byrne

Exhibit 9. 2026-01-08 Email to Plaintiff's counsel asking for Discovery Documents



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222